UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOOG INC.,

                     Plaintiff,

      v.                                              Case No. 1:22-cv-00187-LJV-JJM

SKYRYSE, INC., ROBERT ALIN PILKINGTON,
MISOOK KIM, and DOES NOS. 1-50,

                     Defendants.

# MOOG'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANT PILKINGTON AND KIM'S
# MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR
# <u>VENUE OR, IN THE ALTERNATIVE, FOR A CHANGE OF VENUE</u>

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Moog Inc.*
Rena Andoh
Travis J. Anderson (*pro hac vice*)
Tyler E. Baker (*pro hac vice motion filed*)
Kazim A. Naqvi (*pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
212.653.8700

**HODGSON RUSS LLP**
*Attorneys for Moog Inc.*
Robert J. Fluskey, Jr.
Melissa N. Subjeck
Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

## **TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................1

ARGUMENT ..................................................................................................................7

POINT I.         PILKINGTON AND KIM ARE SUBJECT TO PERSONAL
JURISDICTION DUE TO THEIR EMPLOYMENT WITH MOOG
AND THEIR WRONGFUL CONDUCT DIRECTED TOWARD
MOOG IN NEW YORK.  IN ANY EVENT, THEY HAVE
FORFEITED THEIR JURISDICTIONAL DEFENSE GIVEN
THEIR ACTIVE LITIGATION IN THIS CASE. ..........................................7

    A.    Pilkington and Kim are subject to jurisdiction in New York *via* their
work for a New York-based company. ........................................................7

    B.    Pilkington and Kim forfeited their objection to personal jurisdiction by
agreeing to relief against them, requesting that this Court "so order"
stipulations, and engaging in expedited discovery. ...................................12

POINT II.        VENUE IS PROPER IN THE WESTERN DISTRICT OF
NEW YORK AND NEITHER PILKINGTON NOR KIM EVEN
ATTEMPTS TO SHOW THAT LITIGATING IN THIS COURT
WILL CAUSE ANY BURDEN ON THEM. ................................................14

    A.    Venue is proper in the Western District of New York because Pilkington
and Kim committed wrongful acts in this District. ...................................14

    B.    As with their personal jurisdiction defense, Pilkington and Kim have
waived any objections to venue by litigating in this Court........................16

POINT III.      IN THE ALTERNATIVE, MOOG REQUESTS DISCOVERY
ON JURISDICTION AND VENUE AND AN EVIDENTIARY
HEARING......................................................................................................17

POINT IV.      Neither dismissal nor transfer under 28 U.S.C. § 1406 is
appropriate....................................................................................................17

    A.    There is no basis for dismissal given the substantial contacts between
Defendants and the claims with this District.............................................17

    B.    Pilkington and Kim provide no evidence of the burden that litigating in this
District would impose and, as such, they cannot sustain the high burden
required to justify transfer of this action to the Central District
of California. ...............................................................................................19

CONCLUSION..............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Federal Cases**

*Altman v. Lib. Equities Corp.*,
      322 F. Supp. 377 (S.D.N.Y. 1971) ..................................................................16

*Argent Funds Grp., LLC v. Schutt*,
      2006 WL 2349464 (D. Conn. June 27, 2006).............................................15

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California*,
      480 U.S. 102 (1987)........................................................................................11

*Bates v. C & S Adjusters, Inc.*,
      980 F.2d 865 (2d Cir. 1992)........................................................................14, 16

*Buffalo Newspress Inc. v. Adlife Mktg. & Comms. Co., Inc.*,
      2019 WL 3886725 (W.D.N.Y. Aug. 19, 2019) ......................................22

*Calder v. Jones*,
      465 U.S. 783 (1984).........................................................................................10

*Carr-Stock v. Orthotic Rehab. Prods.*,
      832 F. Supp. 2d 229 (W.D.N.Y. 2011) ......................................................20

*Chloe v. Queen Bee of Beverly Hills, LLC*,
      616 F.3d 158 (2d Cir. 2010).......................................................................11, 21

*Corporacion Mexicana de Manteniniemto Integral, S. De. R.L. De C.V v. Pemex-*
      *Exploracion Y Produccion*,
      832 F.3d 92 (2d Cir. 2016).........................................................................12, 13

*Daros v. Tokoyo*,
      2005 WL 1229734 (E.D.N.Y. May 23, 2005) ..........................................18

*Dentsply Int'l Inc. v. Dental Brands for Less LLC*,
      2016 WL 868335 (S.D.N.Y. Mar. 4, 2016) ...............................................20

*Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*,
      722 F.3d 81 (2d Cir. 2013)........................................................................7, 17

*Dubin v. United States*,
      380 F.2d 813 (5th Cir. 1967), *superseded by statute as stated in Franco v.*
      *Mabe Trucking Co.*, 991 F.3d 616 (5th Cir. 2021) ................................18

**TABLE OF AUTHORITIES - cont'd**

PAGE

*Elite Licensing, Inc. v. Thomas Plastics, Inc.*,
  2003 WL 473669 (S.D.N.Y. Feb. 21, 2003)...........................................................22

*Fifth Ave. of Long Island Realty v. Caruso Mgmt. Co.*,
  2009 WL 412126 (E.D.N.Y. Feb. 17, 2009)...........................................................19

*Fritz v. Realpage, Inc.*,
  2021 WL 3700434 (W.D.N.Y Aug. 20, 2021) .........................................................20

*Hamilton v. Atlas Turner, Inc.*,
  197 F.3d 58 (2d Cir. 1999).............................................................................12, 13

*Hart v. Crab Addison, Inc.*,
  2014 WL 2865899 (W.D.N.Y. June 24, 2014).........................................................19

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,
  138 F. Supp. 2d 449 (S.D.N.Y. 2000)...................................................................15

*Int'l Controls & Meas Corp v. Honeywell Int'l, Inc.*,
  2013 WL 4805801 (N.D.N.Y. Sept. 9, 2013) .........................................................20

*Kirk v. New York State Dep't of Educ.*,
  2008 WL 819632 (W.D.N.Y. Mar. 25, 2008)..........................................................14

*Krape v. PDK Labs, Inc.*,
  194 F.R.D. 82 (S.D.N.Y. 1999) .........................................................................17

*LeCroy Corp. v. Hallberg*,
  2010 WL 3958761 (S.D.N.Y. Oct. 4, 2010)........................................9, 11, 16, 20, 21

*In re Lehman Bros. Holdings Inc.*,
  594 B.R. 33 (S.D.N.Y. 2018)............................................................................20

*Lewis v. Madej*,
  2015 WL 6442255 (S.D.N.Y. Oct. 23, 2015) .....................................................11, 21

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013).................................................................................7

*MacDermid, Inc. v. Deiter*,
  702 F.3d 725 (2d Cir. 2012)...............................................................................10

*Marine Midland Bank, N.A. v. Miller*,
  664 F.2d 899 (2d Cir. 1981)...............................................................................17

## <u>TABLE OF AUTHORITIES - cont'd</u>

<u>PAGE</u>

*Marquest Med. Prods., Inc. v. EMDE Corp.*,
  496 F. Supp. 1242 (D. Colo. 1980)....................................................................13, 14

*Meetings & Expositions, Inc. v. Tandy Corp.*,
  490 F.2d 714 (2d Cir. 1974)....................................................................................12

*Mercator Risk Servs., Inc. v. Girden*,
  2008 WL 5429886 (S.D.N.Y. Dec. 30, 2008) ....................................................9, 10

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)......................................................................................11

*MPD Accessories, B.V. v. Urban Outfitters, Inc.*,
  2013 WL 4399199 (S.D.N.Y. Aug. 13, 2013)........................................................20

*N.Y. Packaging II LLC v. Mustang Mktg. Grp. LLC*,
  2022 WL 604136 (E.D.N.Y. Mar. 1, 2022)............................................................15

*New Son Yeng Produce, LLC v. A & S Produce, Inc.*,
  2009 WL 2568566 (E.D.N.Y. Aug. 19, 2009).........................................................16

*Nichols v. B.D. Searle & Co.*,
  991 F.2d 1195 (4th Cir. 1993) ...............................................................................18

*Peeq Media LLC v. Buccheri*,
  2016 WL 5947295 (S.D.N.Y. Oct. 13, 2016) ...............................................8, 9, 10

*Plunkett v. Valhalla Inv. Servs., Inc.*,
  409 F. Supp. 2d 39 (D. Mass. 2006) ......................................................................13

*Prod. Grp. Int'l, Inc. v. Goldman*,
  337 F. Supp. 2d 788 (E.D. Va. 2004) .....................................................................16

*Race Safe Sys. v. Indy Racing League*,
  251 F. Supp. 2d 1106 (N.D.N.Y. 2003).................................................................19

*Reliance Ins. Co. v. Six Star, Inc.*,
  155 F. Supp. 2d 49 (S.D.N.Y. 2001)......................................................................20

*RMS Titanic, Inc. v. Geller*,
  2000 WL 306997 (D. Conn. Jan. 10, 2000)............................................................22

*S. New England Telephone Co. v. Global NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010)......................................................................................7

**<u>TABLE OF AUTHORITIES - cont'd</u>**

<u>PAGE</u>

*Sacody Tech., Inc. v. Avant, Inc.*,
   862 F. Supp. 1152 (S.D.N.Y. 1994)....................................................................16

*Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*,
   22 F.4th 103 (2d Cir. 2021) *cert. pet. filed Lloyds Banking Group PLC v.*
   *Schwab Short-Term Bond Market Fund*, No. 21-1237 ........................................7, 8

*Sec. Mut. Life Ins. Co. v. Shapiro*,
   2009 WL 2957779 (N.D.N.Y. Sept. 11, 2009) .....................................................20

*Spar, Inc. v. Info. Res., Inc.*,
   956 F.2d 392 (2d Cir. 1992)................................................................................18

*Stanifer v. Brannan*,
   564 F.3d 455 (6th Cir. 2009) ..............................................................................18

*Steuben Foods, Inc. v. Morris*,
   2002 WL 1628061 (W.D.N.Y. May 29, 2002).....................................................10

*Stewart v. Manhattan Yacht Club, Inc.*,
   2018 WL 3579849 (S.D.N.Y. July 25, 2018) ......................................................15

*Transaero, Inc. v. Chappell*,
   2014 WL 1783732 (E.D.N.Y. May 6, 2014) ...............................................8, 9, 10

*Vermont Castings, Inc. v. Evans Prods. Co.*,
   510 F. Supp. 940 (D. Vt. 1981)...........................................................................15

*Vuitton v. Rags on Wheels*,
   1992 WL 465310 (E.D. Cal. Aug. 13, 1992).......................................................12

*Weaver v. Gillen*,
   49 B.R. 70 (W.D.N.Y. May 8, 1985)...................................................................18

*Weisman Celler Spett & Modin, P.C. v. Trans-Lux Corp.*,
   2012 WL 5512164 (S.D.N.Y. Nov. 14, 2012)......................................................17

*Wyrough & Loser, Inc. v. Pelmore Labs., Inc.*,
   376 F.2d 543 (3d Cir. 1967)................................................................................12

*Zumft v. Doney Slate Co.*,
   698 F. Supp. 444 (E.D.N.Y. 1988) ......................................................................17

## TABLE OF AUTHORITIES - cont'd

PAGE

**State Cases**

*Opticare Acquisition Corp. v. Castillo,*
 25 A.D.3d 238 (2d Dep't 2005) ................................................................................9, 11

**Federal Statutes**

28 U.S.C. § 1391(b) ................................................................................................14

28 U.S.C. § 1404(a) ................................................................................................19

28 U.S.C. § 1406 ....................................................................................................17

**Rules**

Federal Rule of Civil Procedure 12(h) ..................................................................12

Federal Rule of Civil Procedure 12(b)(3) .............................................................14

**PRELIMINARY STATEMENT**

This Court has jurisdiction and venue is proper. Defendants Pilkington and Kim's motion to dismiss for personal jurisdiction and venue should be recognized for what it is: an attempt to distract from their theft of Moog data. Also conveniently ignored is their multi-year relationship with Moog—a relationship specific to New York given Moog's headquarters being located in New York, their oversight by a manager in New York, several trips to Moog's New York offices, and access to and misappropriation of confidential and trade secret information located in New York. Simply, Pilkington and Kim had every reason to expect to be haled into Court in this District given their relationship with Moog and their abuse of that relationship. Their motion should be denied.

**STATEMENT OF FACTS**

This case arises out of the massive theft of Moog's trade secrets by Defendants Kim and Pilkington—two former Moog employees—in concert with their new employer and Moog competitor, Defendant Skyryse. Specifically, Moog's Platform base flight control software, and related project-specific applications, constitute extremely valuable, sensitive, and proprietary information. (Declaration of Michael Hunter, dated Feb. 28, 2022, Dkt. 4-2 ("Hunter Dec.") ¶ 12). Platform allows Moog to be a front-runner in obtaining bids from commercial or military parties and its source code and related data is housed on a secure server at Moog's East Aurora, New York offices. (*Id*. ¶¶ 13, 25). On November 19, 2021, the day she notified Moog that she would be leaving the company to join Skyryse, Kim—at Pilkington's direction— accessed and downloaded Platform and related software to an external drive. (Hunter Dec. ¶¶ 41, 45-46, 51).

Pilkington was a Moog employee working out of its Torrance, California location from 2012 until November 12, 2021.  (Compl. ¶ 12).  At the time of his departure, he was a Senior Software Manager and, from 2016 until his departure, he reported to Michael Hunter at Moog's New York facilities.  (Hunter Dec. ¶¶ 31, 34).  Kim was a Moog employee, also working out of Torrance, California, from January 21, 2013 until December 18, 2021.  (Compl. ¶ 13).  Kim was a Senior Staff Engineer who worked under Pilkington.  (Hunter Dec. ¶ 31).  While Pilkington and Kim worked in California, they had regular and substantial contact with Moog's New York headquarters—as Michael Hunter, a Moog employee based in New York, was in charge of them both, and they made a combined sixteen trips to East Aurora, New York for project and team-building purposes.  (Declaration of Michael Hunter, dated April 8, 2022 ("April Hunter Dec.") ¶ 6) (*see also* Hunter Dec. ¶ 53 (Kim emailed her resignation notice to Hunter via e-mail on November 19, 2021)).  They were also in regular email and phone communication with Moog employees in New York due to the nature of their work, which required collaboration and discussion with New York employees.  (April Hunter Dec. ¶ 7).

The acts that eventually culminated in the theft of Platform and other software began in 2018, when Skyryse and Moog (specifically, Moog's Growth and Innovation Group, which is based in New York) began to explore a business relationship.  (Declaration of Paul Stoelting, dated Feb. 28, 2022, Dkt. 4-9 ("Feb. Stoelting Dec."), ¶ 7) (Declaration of Paul Stoelting, dated April 12, 2022, Dkt. 62-1, ¶ 3).  As the discussions progressed, and to facilitate the exchange of information to evaluate the opportunity, Moog and Skyryse entered into two separate Non-Disclosure Agreements on October 24, 2018 (the "2018 NDA") and March 15, 2019 (the "2019 NDA") (collectively, the "NDAs"), both of which had New York choice of law provisions.  (Feb. Stoelting Dec. ¶¶ 12-13, Exs. A, B).  Moog and Skyryse anticipated that their

2

business relationship would be conducted in four separate phases and, while the business relationship between Moog and Skyryse did not progress beyond Phase 1, the NDAs were never terminated.  (Feb. Stoelting Dec. ¶¶ 14, 28, Ex. C).

In addition to having fostered a business relationship with Moog's Growth and Innovation Group in New York, Skyryse has also poached Moog employees—including with Pilkington's assistance, after he was himself poached.  (Hunter Dec. ¶ 34).  Gonzalo Rey—who was based in Moog's East Aurora location—was the first Moog employee to join Skyryse when he left Moog in 2017.  (*Id*.).  Achar joined Skyryse in January 2022, after advising Moog that he was retiring.  (*Id*.).  Pilkington left Moog on November 12, 2021 to join Skyryse.  (*Id*.).  Kim also left Moog on December 17, 2021 to join Skyryse.  (*Id*.).  Several additional software engineers followed suit.  Skyryse reached out to a large number of software engineers at Moog and has succeeded in poaching four employees from Moog's New York location.  (*Id*.)  While some engineers remain loyal to Moog, Skyryse has aggressively tried to recruit them as well.  For example, in August 2021, Rey contacted Hunter (a New York-based employee) and asked him to join Skyryse.  (*Id*. ¶ 36).  In November 2021, Pilkington reached out to Hunter, again asking him to join Skyryse and further advised Hunter that there was "urgency" at Skyryse.  (*Id*. ¶ 37).  Similarly, on October 13, 2021 and again on October 22, 2021, Rey contacted Schmidt (another New York-based employee) to see if he would join Skyryse as lead engineer.  (Declaration of Todd Schmidt, dated April 12, 2022, Dkt. 62-2 ("April Schmidt Dec."), ¶¶ 5-6).  Hunter and Schmidt declined Skyryse's recruiting efforts.  (April Schmidt Dec. ¶¶ 5-6) (Hunter Dec. ¶¶ 36-37).

After beginning an investigation into whether any departing Moog employees had taken or copied Moog data before their departure, Moog discovered that, on November 19, 2021, between the hours of 3:16 and 7:33 a.m., and from a remote location, former Moog employee Kim copied certain Moog data to an external hard drive.  (Declaration of Ian Bagnald, dated March 6, 2022, Dkt. 4-18 ("Bagnald Dec."), ¶¶ 8, 10).  This event took place less than one month before Kim's last day at Moog, and less than one week after Pilkington, her supervisor, left Moog for Skyryse.  (*Id.*).  Kim copied 136,994 separate files and used Pilkington's file path to copy the data onto the external hard drive.  (Bagnald Dec. ¶¶ 8, 13, 14) (Hunter Dec. ¶ 47) (Declaration of Todd Schmidt, dated Feb. 28, 2022, Dkt. 4-8 ("Schmidt Dec.") ¶ 23).

The scope of data copied by Kim is massive: she essentially copied everything that Moog's flight control software engineering teams had worked on ***over the past 15 years***. (Hunter Dec. ¶ 63) (Schmidt Dec. ¶ 27) (Lopez Dec. ¶ 14).  And all of the data copied by Kim is located on Moog's internal servers in East Aurora, New York.  (Hunter Dec. ¶ 25).  This fact was common knowledge among Moog's software engineering team that Moog's data relating to its flight control software was housed on the central servers in New York.  (April Hunter Dec. ¶ 7).

Kim actively attempted to cover-up the theft.  On her last day of employment, December 17, 2021, she signed a Moog exit form in which she "affirm[ed] that [she] did not maintain access to, or have possession of, any tangible or digital record of Moog IP—whether in hard copy or digital form—on any device, cloud, or digital storage facilities."  (Declaration of Jamie Daly, dated March 6, 2022, Dkt. 4-20 ("Daly Dec."), Ex. B).  After Moog learned of her actions, and demanded the return of the hard drive onto which she copied Moog data, Kim called Daly in New York.  (*Id.* ¶ 6).  When Daly called her back, Kim said that she had a Moog external

hard drive at her house and had taken it with her when she left Moog's employment and that she downloaded the files so that she would have them in case she needed to help current Moog employees. (*Id*. ¶ 7). Kim further said that she had not shared the files with anyone and had deleted them. (*Id*.). *This, as discovery has now shown, was a lie.*

After learning of Kim's massive theft, Moog filed its Complaint and its Motion for a Temporary Restraining Order and a Preliminary Injunction on March 7, 2022. (Dkts. 1-6). In connection with its motion for temporary relief, Moog filed a witness list, identifying (among others) the key witnesses at Moog who would testify at the preliminary injunction hearing. (Moog's Witness List, Dkt. 4-30). Of the seven Moog witnesses identified, four of them are based in New York (Michael Hunter, Todd Schmidt, Paul Stoelting, and Jamie Daly). These witnesses are critical to Moog, particularly Hunter and Schmidt as evidenced by the fact that they submitted the longest declarations in connection with Moog's moving papers. They explain the development of Platform and other flight control applications, their value, the measures taken to protect their secrecy, the extent and nature of the data copied by Kim, and the impact and irreparable harm such conduct has had on Moog. (Hunter Dec. ¶¶ 5-29, 43-46, 58-67) (Schmidt Dec. ¶¶ 5-8, 18-23, 26-32). Simply put, Hunter and Schmidt are the two Moog witnesses— based in New York—who can describe the nature and value of the trade secrets at issue in this case.

Instead of litigating the request for temporary relief, and raising its defenses based on jurisdiction and venue, on March 11, 2022, Defendants executed the Stipulated Order, agreeing to essentially all of the substantive relief Moog sought in its moving papers. (Dkts. 25, 28). Thereafter, on March 17, 2022, all parties entered into a stipulation regarding expedited

discovery, which included providing written discovery responses on or before April 13, 2022, and production of documents on or before April 27, 2022. (Dkt. 33). On March 23, Defendants served written discovery responses. (Declaration of Rena Andoh, dated April 12, 2022 ("Andoh Dec.") ¶ 3). On March 29, Pilkington and Kim filed their motion to dismiss based on personal jurisdiction and venue. (Dkt. 47).

In connection with their motion to dismiss, Pilkington and Kim proffer two declarations. These brief declarations provide only that Pilkington and Kim are residents of California and are not residents of New York; neither Pilkington nor Kim was "stationed" outside of California while working for Moog; and they signed certain Moog-related documentation in California. (Pilkington Dec. ¶¶ 2-5) (Kim Dec. ¶¶ 2-6). Their declarations are noticeably silent as to the nature of their relationship with Moog *in New York,* their travel *to New York* in connection with their employment at Moog, and their knowledge regarding the location of Moog's data *in New York*. (*See* April Hunter Dec. ¶¶ 6-7). The declarations also fail to include any information on the witnesses or evidence they would rely upon based in California, or the circumstances that would make litigating in this District burdensome (for example, they never address whether Skyryse is paying their litigation expenses).

Notably, Kim's statements to Moog about the non-sharing of the data she stole have now been shown to be false. In connection with expedited discovery in this action, Skyryse has admitted that Kim's Skyryse-issued laptop received data from the Moog devices involved in copying over 136,000 Moog files and that it found over 11,000 files of identical Moog files on Pilkington's Skyryse-issued laptop. (Declaration of Rena Andoh, dated April 12, 2022 ("Andoh Dec.") ¶ 2 & Ex. A (Letter from R. Andoh to Hon. Judge McCarthy, dated April 7, 2022)).

Moreover, Moog also recently learned of another series of downloads by Pilkington just before departing Moog—*of over 1.2 million files of Moog data onto external hard drives*.  (*Id*.).

## ARGUMENT

**POINT I.    PILKINGTON AND KIM ARE SUBJECT TO PERSONAL JURISDICTION DUE TO THEIR EMPLOYMENT WITH MOOG AND THEIR WRONGFUL CONDUCT DIRECTED TOWARD MOOG IN NEW YORK.  IN ANY EVENT, THEY HAVE FORFEITED THEIR JURISDICTIONAL DEFENSE GIVEN THEIR ACTIVE LITIGATION IN THIS CASE.**

**A.    Pilkington and Kim are subject to jurisdiction in New York *via* their work for a New York-based company.**

To defeat a motion to dismiss on the basis of lack of personal jurisdiction, and in the absence of an evidentiary hearing, Moog need only make a *prima facie* showing of jurisdiction.  *See, e.g., Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 167-68 (2d Cir. 2013) (citation omitted); *S. New England Telephone Co. v. Global NAPs Inc*., 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted).  Pleadings and affidavits must be construed in the light most favorable to Moog, and all doubts must be resolved in its favor.  *Licci,* 732 F.3d at 167 (citation omitted); *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A*., 722 F.3d 81, 85 (2d Cir. 2013) (citation omitted).  Pilkington and Kim's attempt to avoid accountability for their wrongful actions (including through their agent, Skyryse) occurring in, and directed to, New York—should be denied.[1]

---

[1]    Personal jurisdiction encompasses three requirements: plaintiff's service of process must have been procedurally proper, there must be a statutory basis for personal jurisdiction rendering service effective, and the exercise of personal jurisdiction must comport with constitutional due process principles.  *Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*, 22 F.4th 103, 121 (2d Cir. 2021) (citation omitted) *cert. pet. filed*

Pilkington and Kim (incorrectly) claim that the factual allegations supporting personal jurisdiction are limited to the following:  Kim downloading Moog data from her home in California; Kim using a hard drive, located in and returned to Moog in California, in the process of copying Moog's trade secrets; Kim taking these actions under Pilkington's instruction; Pilkington delivering this information to Skyryse, also in California; and Kim and Pilkington breaching the Moog employee handbook governing their conduct at Moog's California facility, signed by them in California.  (Motion to Dismiss, Dkt. 47-1 ("P&K Mem."), at 3-4).

But Pilkington and Kim ignore an obvious fact:  ***they worked for a New York-based company***.  (Compl. ¶ 10).  Indeed, they *reported* to a New York-based manager and made sixteen combined trips to Moog's facilities in New York for project and team-building purposes between 2012 and 2018.  (April Hunter Dec. ¶ 6).  They were also in regular email and phone communication with employees in New York.  (*Id.*)  Out-of-state employees of New York-based companies are considered to be subject to personal jurisdiction under New York's long-arm statute.  *Peeq Media LLC v. Buccheri*, 2016 WL 5947295, at *3 (S.D.N.Y. Oct. 13, 2016) (personal jurisdiction over employee of New York company even though he worked from New Jersey home; employee regularly traveled to New York for work, routinely accessed email server and logged in remotely into software applications located in New York, and had continuous communications with employees and others in New York); *Transaero, Inc. v. Chappell*, 2014 WL 1783732, at *7 (E.D.N.Y. May 6, 2014) (personal jurisdiction over former out-of-country

---

*Lloyds Banking Group PLC v. Schwab Short-Term Bond Market Fund*, No. 21-1237. Pilkington and Kim do not challenge service of process.

employee because he "made his living by working for a New York company" over a number of years) (internal quotation omitted); *LeCroy Corp. v. Hallberg*, 2010 WL 3958761, at *3-4 (S.D.N.Y. Oct. 4, 2010) (personal jurisdiction over out-of-state employee; employee "made his living by working for a New York-based company" and "interacted with New York-based" employees); *see also Opticare Acquisition Corp. v. Castillo*, 25 A.D.3d 238, 245-46 (2d Dep't 2005) (personal jurisdiction over out-of-state branch managers because they had "systematic, ongoing relationships with a New York company, with which they were in daily contact").  And Pilkington and Kim's employment with Moog underlies each of the claims against them:  there would be no trade secrets to misappropriate, and no fiduciary duty or Employee Handbook to breach, in the absence of their employment with Moog.  *See Peeq Media*, 2016 WL 5947295, at *3; *see also Transaero, Inc*., 2014 WL 1783732, at *4*; *LeCroy Corp*., 2010 WL 3958761, at *4; *Opticare Acquisition Corp*., 25 A.D.3d at 246.

   Moreover, data regularly accessed (and ultimately stolen) by Kim and Pilkington was located in New York—a fact that was common knowledge among Moog software engineers. (April Hunter Dec. ¶ 8).  *See Mercator Risk Servs., Inc. v. Girden*, 2008 WL 5429886, at *4 (S.D.N.Y. Dec. 30, 2008) (accessing data maintained by employer in New York is relevant to jurisdiction under long-arm statute); *Opticare Acquisition Corp*., 25 A.D.3d at 245 ("[e]ven assuming none of the [former out-of-state employees] ever entered New York . . ., it defies logic and common sense to conclude that they did not transact business here, especially when the 21st Century technology undoubtedly available to them to go about their work, such as access via computer to data [employer] maintained in New York, conferred upon them the benefit of employment with a New York company. . . .").  And, after leaving Moog, Pilkington engaged in a strategic campaign, in concert with his new employer and agent Skyryse, to poach Moog

9

employees based in California *and* New York.  (Hunter Dec. ¶¶ 33-39; *see also* Compl. ¶¶ 15, 198).  For example, Pilkington actively recruited Michael Hunter—a New York-based Moog employee—to join Skyryse.  (Hunter Dec. ¶¶ 37-38).  *See Steuben Foods, Inc. v. Morris,* 2002 WL 1628061, at *3 (W.D.N.Y. May 29, 2002) (personal jurisdiction over out-of-state corporation where it projected itself into New York to recruit plaintiff's employees).

These acts further establish minimum contacts under the due process analysis.  *See*, *e.g.*, *Peeq Media,* LLC, 2016 WL 5947295, at *4; *Transaero, Inc.,* 2014 WL 1783732, at *8; *Mercator Risk Servs.*, 2008 WL 5429886, at *4; *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730-31 (2d Cir. 2012) (minimum contacts satisfied where Canada-based employee was aware that company's e-mail system and confidential, proprietary, and trade secret data was in Connecticut and used that system and its servers to retrieve and email confidential files; moreover, employee directed her tortious conduct towards a Connecticut corporation) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).  Indeed, it would seem self-evident that full-time employment with a New York-based company would naturally result in an expectation that an out-of-state defendant may be haled into court in New York.  *See Mercator Risk Servs., Inc.,* 2008 WL 5429886, at *4 (citation omitted).

Nor is the assertion of personal jurisdiction unreasonable as to Pilkington and Kim.  They cite *no* authority in support of the unreasonableness of making them take a flight to Buffalo and stay in a hotel to defend themselves in the forum where the company they worked for (*and stole from*) is based.  *See MacDermid, Inc*., 702 F.3d at 731 (although defendant former employee would have to travel to Connecticut to defend the lawsuit, "this burden alone does not render the exercise of personal jurisdiction unreasonable") (citation omitted).  This is

unsurprising.  Cases in which personal jurisdiction has been rejected due to being unreasonable are rare and involve significantly more burden, and far less connection with the forum, than is the case here.  *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113-16 (1987); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 574 (2d Cir. 1996) (assertion of jurisdiction over out-of-state defendant unreasonable where *none* of the acts serving as the basis for lawsuit occurred in forum, plaintiff was not resident of the forum, no witnesses or other evidence were located in the forum, and plaintiff's only interest in litigating in the forum was due to its more generous statute of limitations).  While Pilkington and Kim claim that New York has no "special interest" in having Moog's trade secret claims adjudicated here, this is not the case.  *See Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 173 (2d Cir. 2010) (New York has a "manifest interest in providing effective means of redress for its residents") (internal quotation omitted); *LeCroy Corp.,* 2010 WL 3958761, at *5 ("New York has an interest in adjudicating claims involving a New York-based company, and at least some of which are likely governed by New York law.  The inviolability of contract and the protection of trade secrets are fundamental substantive social policies that both public and private sectors of the several states have interests in furthering.") (*citing Opticare*, 25 A.D. at 249); *Lewis v. Madej*, 2015 WL 6442255, at *7 (S.D.N.Y. Oct. 23, 2015) ("New York has an interest in protecting its citizens and corporations from illegal conduct.") (citation omitted).

Simply, Pilkington and Kim worked for a New York company, reported to a New York manager, regularly traveled to New York in connection with their employment, accessed trade secrets held in New York, remained in regular communication with New York employees, and engaged in affirmative acts to harm their New York-based employer in New York.  They are appropriately held accountable here.

11

**B.**     **Pilkington and Kim forfeited their objection to personal jurisdiction by agreeing to relief against them, requesting that this Court "so order" stipulations, and engaging in expedited discovery.**

A party can forfeit objections to personal jurisdiction by its conduct—regardless of its compliance with the requirements of Federal Rule of Civil Procedure 12(h). *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60-61 (2d Cir 1999). This has occurred here. Prior to filing their motion to dismiss based on personal jurisdiction, Pilkington and Kim entered into *two* stipulations before this Court, essentially agreeing to Moog's request for temporary relief, and setting forth a comprehensive framework for document production, depositions, and briefing in connection with Moog's motion for a preliminary injunction. (*See* Dkts. 25, 33). Kim and Pilkington further joined in the affirmative request to this Court to "so order" these stipulations and served written discovery directed toward Moog's preliminary injunction motion. (*See, e.g.*, Dkt. 57) (Andoh Dec. ¶ 3). This should constitute a forfeiture.[2]

While the stipulations include language indicating that Pilkington and Kim consented to the jurisdiction and venue of the Court only for purposes of the stipulation and "for no other purpose," this is insufficient for preservation. (Dkts. 25 ¶ 11; 33 ¶ 14)*. See*

---

[2]     *See Corporacion Mexicana de Manteniniemto Integral, S. De. R.L. De C.V v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 100 (2d Cir. 2016) (defendant forfeited personal jurisdiction and venue by affirmatively requesting appellate court to vacate and remand decision to district court); *Wyrough & Loser, Inc. v. Pelmore Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967) (defendant waived personal jurisdiction defense by participating in preliminary injunction hearing); *Vuitton v. Rags on Wheels*, 1992 WL 465310, at *2 (E.D. Cal. Aug. 13, 1992) (defendant failed to file answer but signed stipulation to preliminary injunction against himself through which the court obtained personal jurisdiction such that default judgment was proper) (adopting report and recommendation); *see also Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (stipulation and agreement of settlement "so ordered" by a judgment is a "consent to the exercise of the court's power to compel compliance").

*Corporacion Mexicana de Manteniniemto Integral, S. De. R.L. De C.V.*, 832 F.3d at 102 (defendant abandoned its arguments regarding personal jurisdiction and venue by requesting vacatur and remand); *Hamilton*, 197 F.3d, 61-62 (personal jurisdiction defense asserted in answer forfeited by participation in extensive pre-trial proceedings).  The "equivocal" language does not clearly indicate that Pilkington and Kim intended to challenge jurisdiction and venue. *See Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39, 42, n.1 (D. Mass. 2006) (defendants "marginally" and "equivocal[ly]" asserted defense of lack of personal jurisdiction in their answer, then participated in substantive litigation activities before filing a motion on the defense).  And, in fact, before they did so challenge, they engaged in significant and substantive litigation steps in furtherance of Moog's request for a preliminary injunction, including the two stipulations *ordered by this Court* and participation in expedited discovery, including service of written discovery requests on Moog.  (Andoh Dec. ¶ 3).  Moreover, Skyryse has now had seven lawyers appear in this case, six *via pro hac vice* application.  (*See* Dkts. 21, 22, 31, 40, 50, 52). And Pilkington and Kim have now had four lawyers appear in the case, three *via pro hac vice* application.  (*See* Dkts. 38, 39, 45).  These actions are hardly consistent with a jurisdictional objection.  Pilkington and Kim also participated in an April 8, 2022 conference with Magistrate Judge McCarthy to address compliance with the Court's orders and related matters; notably, counsel did not suggest that they were limiting their litigation activity in this Court given their objections based on jurisdiction.[3]

> Pilkington and Kim cannot now "walk away" from the Court having repeatedly "submitted themselves for the presumed advantages which they obtained."  *Marquest Med.*

---

[3]      Moog has requested a transcript of the April 8, 2022 conference.

*Prods., Inc. v. EMDE Corp.*, 496 F. Supp. 1242, 1245 (D. Colo. 1980) (defendant waived

personal jurisdiction and venue defenses by stipulating to preliminary injunction and receiving

affirmative preliminary relief and waiting weeks after complaint was served to object to venue

and jurisdiction).

> **POINT II.     VENUE IS PROPER IN THE WESTERN DISTRICT OF
> NEW YORK AND NEITHER PILKINGTON NOR KIM
> EVEN ATTEMPTS TO SHOW THAT LITIGATING IN
> THIS COURT WILL CAUSE ANY BURDEN ON THEM.**

**A.     Venue is proper in the Western District of New York because Pilkington and Kim
committed wrongful acts in this District.**

The Court's role in deciding a motion to dismiss for improper venue under Rule

12(b)(3) is simply to determine whether the plaintiff's choice of venue is ***proper***, not whether

some other venue would have been better.  *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d

Cir. 1992) (court is not required to "determine the best venue").  When relying on pleadings and

affidavits, the plaintiff need only make a *prima facie* showing of venue, and the court must view

all facts in the light most favorable to the plaintiff.  *Kirk v. New York State Dep't of Educ.*, 2008

WL 819632, at *2-3 (W.D.N.Y. Mar. 25, 2008) (quotations omitted).  Here, Pilkington and

Kim's venue argument largely ignores Moog's allegations of New York-based conduct in favor

of California connections.  This is not the appropriate analysis.  Venue is proper in this district

because a "substantial part of the events" underlying the claims occurred here.  *See* 28 U.S.C. §

1391(b).  The fact that certain events connected with Moog's claims also occurred in California

is irrelevant.

Indeed, Pilkington and Kim ignore their most significant New York-based

wrongful conduct—their misappropriation of Moog's data located in New York *via* the

conspiracy with Skyryse, and wholesale download of over 136,000 files of Moog's data, including proprietary, confidential, and trade secret information. (Compl. ¶¶ 1-2, 6, 112, 115). Over 11,000 of these files were recently identified on Pilkington's Skyryse-issued computer. (Andoh Dec. ¶ 2 & Ex. A (Letter from R. Andoh to Hon. Judge McCarthy)). And Skyryse has admitted that Kim's Skyryse-issued laptop received data from the Moog devices involved in copying over 136,000 Moog files. (*Id.*). Even more egregiously, Moog has recently learned about downloads by Pilkington of over 1.2 million Moog files onto two external hard drives just before he departed Moog to join Skyryse. (*Id.*). As courts in the Second Circuit have held, "acquiring trade secrets by accessing a server in New York can be a significant event for venue purposes."[4] This action—alone—is sufficient to confer venue. And venue is proper over all claims because they are predicated upon the misappropriation of trade secrets. (Compl., Dkt. 1, ¶¶ 169, 172, 198, 204, 208, 219-20, 229, 244, 252, 262) (P&K Mem., at 3 ("That supposed misappropriation underlies each and every cause of action alleged against the individual defendants.")).[5] Moreover, Skyryse's and Pilkington's coordinated poaching attempts—calling and texting New York-based employees—also provides a basis for venue. (Hunter Dec. ¶ 34)

---

4 *See N.Y. Packaging II LLC v. Mustang Mktg. Grp. LLC*, 2022 WL 604136, at*4 (E.D.N.Y. Mar. 1, 2022) (citation omitted); *Argent Funds Grp., LLC v. Schutt*, 2006 WL 2349464, at *2 (D. Conn. June 27, 2006) (substantial events material to misappropriation claim occurred in Connecticut where non-Connecticut defendant accessed a Connecticut server to steal confidential information); *Vermont Castings, Inc. v. Evans Prods. Co.*, 510 F. Supp. 940, 945-46 (D. Vt. 1981) (letters and telephone calls initiated by agent outside Vermont and addressed to plaintiff in Vermont, was sufficient for venue) (version of venue statute at issue required venue in the district in which the claim arose).

5 Alternatively, venue is proper under the doctrine of "pendent venue" because all claims arise out of the same operative facts. *See Stewart v. Manhattan Yacht Club, Inc.*, 2018 WL 3579849, at *7 (S.D.N.Y. July 25, 2018); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000) (quotation omitted).

(April Schmidt Dec. ¶¶ 5-6).  *See Sacody Tech., Inc. v. Avant, Inc.,* 862 F. Supp. 1152, 1157

(S.D.N.Y. 1994) (venue may be satisfied by communication transmitted to or from district given

sufficient relationship between communication and claim; venue proper where at least some of

the parties' dealings took place over the phone and by correspondence and facsimile); *see also*

*Bates*, 980 F.2d at 867-68 (receipt of collection notice within district—which was mailed to

plaintiff's prior out-of-state address and then forwarded—was sufficient for venue).  As does

Kim's and Pilkington's relationship with Moog in New York during the course of their

employment from which the claims arise.  *See LeCroy*, 2010 WL 3958761, at *5 (in context of

motion to transfer venue, noting venue was proper because claims arose from defendant out-of-

state employee's relationship with plaintiff's CEO in New York pursuant to which employee was

provided with plaintiff's confidential information); *Prod. Grp. Int'l, Inc. v. Goldman*, 337 F.

Supp. 2d 788, 709-800 (E.D. Va. 2004) (venue proper for out-of-state defendant because

employer headquarters were located in Virginia and communications and visits to headquarters

were part of the "sequence of events underlying the claim").

        Simply, Pilkington and Kim are subject to venue in this Court based on their own

wrongful conduct, not merely Moog's activities here.  *Contra New Son Yeng Produce, LLC v. A*

*& S Produce, Inc.*, 2009 WL 2568566, at *4 (E.D.N.Y. Aug. 19, 2009) (New York's only

connection to the case was that plaintiff was located there and one payment was made to it in

New York).  Pilkington and Kim's motion to dismiss based on venue should be denied.

**B.    As with their personal jurisdiction defense, Pilkington and Kim have waived any objections to venue by litigating in this Court.**

        Objections to venue must be "timely and sufficient." *See Altman v. Lib. Equities*

*Corp.*, 322 F. Supp. 377, 379 (S.D.N.Y. 1971).  Thus, "[a] party can lose his right to bring a

motion challenging venue … because the court interprets his pre-trial conduct as having waived

his right to challenge venue." *Krape v. PDK Labs, Inc.*, 194 F.R.D. 82, 86 (S.D.N.Y. 1999)

(citations omitted).  As stated above, Pilkington and Kim's conduct in this case has waived any

objections to venue by actively participating in litigation in this Court.  (*See, supra*, Point I(B)).

### POINT III.    IN THE ALTERNATIVE, MOOG REQUESTS DISCOVERY ON JURISDICTION AND VENUE AND AN EVIDENTIARY HEARING.

In determining a motion to dismiss for lack of personal jurisdiction or improper

venue, this Court may permit discovery in aid of the motion or conduct an evidentiary hearing on

the motion.  *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)

(citations omitted); *see also Dorchester Fin. Sec.*, 722 F.3d at 85 (in the absence of evidentiary

hearing, error for court to resolve factual dispute regarding jurisdiction in defendant's favor);

*Weisman Celler Spett & Modin, P.C. v. Trans-Lux Corp.*, 2012 WL 5512164, at *1 (S.D.N.Y.

Nov. 14, 2012).

If the Court is inclined to find that Moog did *not* sustain its *prima facie* burden on

jurisdiction and venue, Moog respectfully requests discovery in the form of four depositions,

four interrogatories, four requests for admissions, and four requests for production of documents

to be served on each of the Defendants, followed by an evidentiary hearing on this motion.

### POINT IV.    NEITHER DISMISSAL NOR TRANSFER UNDER 28 U.S.C. § 1406 IS APPROPRIATE.

**A.    There is no basis for dismissal given the substantial contacts between Defendants and the claims with this District.**

Dismissal due to improper venue is a "severe penalty."  *Zumft v. Doney Slate Co.*,

698 F. Supp. 444, 446-47 (E.D.N.Y. 1988).  In fact, dismissal is appropriate only in

17

circumstances where the institution of a case "in an improper forum smacks of harassment or evidences some other element of bad faith on the plaintiff's part." *Weaver v. Gillen*, 49 B.R. 70, 73 (W.D.N.Y. May 8, 1985) (citing *Moore's Federal Practice,* § 0.146[5], p. 1666, (1974)). There is no basis to claim that bringing suit in this District constitutes harassment or bad faith and, in fact, there is much authority supporting venue in this District. *See, supra*, Points I, II; *cf. Daros v. Tokoyo,* 2005 WL 1229734, at *2-*3 (E.D.N.Y. May 23, 2005) (refusing plaintiff's request to transfer where there was a "lack of even a colorable basis for personal jurisdiction over the defendant in New York or proper venue in this District"; defendants resided in Texas and plaintiff was injured in Texas while riding in defendants' cab and defendants transacted no business in New York nor committed a tort in New York). Even the authorities relied upon by Pilkington and Kim have no factual similarity to the circumstances here.[6] As established above, a substantial part of the events giving rise to Moog's claims arose in New York. Thus, dismissal is unwarranted.

---

[6]     *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394-95 (2d Cir. 1992) (rejecting plaintiffs' request to transfer to venue with a longer statute of limitations; "allowing a transfer . . . would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice"); *Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967), *superseded by statute as stated in Franco v. Mabe Trucking Co.*, 991 F.3d 616 (5th Cir. 2021) (affirming transfer pursuant to plaintiff's motion); *Nichols v. B.D. Searle & Co.*, 991 F.2d 1195 (4th Cir. 1993) (denying plaintiff's motion to transfer and dismissing action because it was "obvious" there was no personal jurisdiction over defendants); *Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009) (plaintiff filed a motion to transfer venue rather than establish valid grounds for jurisdiction upon defendant filing motion to dismiss).

**B.      Pilkington and Kim provide no evidence of the burden that litigating in this District would impose and, as such, they cannot sustain the high burden required to justify transfer of this action to the Central District of California.[7]**

As an alternative to dismissal, Pilkington and Kim summarily argue (in one paragraph) that this case should be transferred to the Central District of California under 28 U.S.C. § 1404(a).  (P&K Mem. at 10).  But a plaintiff—here, Moog—has the privilege, conferred by statute, of choosing the forum.  *Race Safe Sys. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1111 (N.D.N.Y. 2003) (courts "must give significant consideration to a plaintiff's choice of venue") (citation omitted).  To overcome this privilege, Pilkington and Kim are required to establish, *by clear and convincing evidence*, a "strong case" for transfer.  *Hart v. Crab Addison, Inc.*, 2014 WL 2865899, at *3 (W.D.N.Y. June 24, 2014); *see also Fifth Ave. of Long Island Realty v. Caruso Mgmt. Co.*, 2009 WL 412126, at *7 (E.D.N.Y. Feb. 17, 2009) ("only where 'the balance of convenience and justice weigh *heavily* in favor of defendant's [requested] forum' will a court override" the plaintiff's choice of forum).  Their submission, however, barely attempts to meet this burden.  Lacking any detail, Pilkington and Kim baldly state that transfer is proper because all witnesses and evidence are in the Central District of California, and all the relevant conduct occurred in California.  Notably, Pilkington and Kim fail to submit *any admissible evidence* supporting these conclusory arguments.  This is inadequate.

Pilkington and Kim fail to identify any potential witnesses, or the content of each witness's testimony, in their moving papers.  But even if they had identified any third-party witnesses based outside this District who would be burdened by travel, that does not compel

---

[7]      Moog incorporates by reference all arguments made against transfer in response to Skyryse's motion to dismiss for personal jurisdiction and venue.

transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists.  *See Sec. Mut. Life Ins. Co. v. Shapiro*, 2009 WL 2957779, at *8 (N.D.N.Y. Sept. 11, 2009)*; Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 58-59 (S.D.N.Y. 2001) (quotation omitted); *MPD Accessories, B.V. v. Urban Outfitters, Inc.*, 2013 WL 4399199, at *10 (S.D.N.Y. Aug. 13, 2013) (deposition could be conducted *via* Skype).  And notably, as employees of Skyryse, Pilkington and Kim would be required to testify in this District.  *Dentsply Int'l Inc. v. Dental Brands for Less LLC*, 2016 WL 868335, at *2 (S.D.N.Y. Mar. 4, 2016) (witnesses were "under Defendant's control, []and would therefore be availability to testify in either venue.") (citation omitted).  Nor have they explained how any evidence or documentation located in California could not just as easily be accessed here; "in today's world of faxing, scanning, and emailing documents, the location of relevant documents is largely a neutral factor."  *Int'l Controls & Meas Corp v. Honeywell Int'l, Inc.*, 2013 WL 4805801, at *23 (N.D.N.Y. Sept. 9, 2013); *Carr-Stock v. Orthotic Rehab. Prods.*, 832 F. Supp. 2d 229, 241 (W.D.N.Y. 2011) (location of documents is "neutral factor"); *Fritz v. Realpage, Inc.*, 2021 WL 3700434, at *4 (W.D.N.Y Aug. 20, 2021) (same).

Interestingly, Pilkington and Kim fail to provide any evidence or information regarding their financial means.  *See In re Lehman Bros. Holdings Inc.*, 594 B.R. 33, 78 (S.D.N.Y. 2018) (denying motion to transfer where defendant failed to provide evidence regarding financial means).  *They conspicuously never address whether Skyryse is paying their litigation fees and expenses.  See LeCroy Corp.*, 2010 WL 3958761, at *5 (because new employer was paying litigation fees for out-of-state defendant employee, concerns about the relative means of the parties were lessened).

By contrast, this action is substantially connected to this District. As discussed above, Pilkington and Kim committed wrongful acts here. (*See*, *supra*, Point II). Moreover, Moog is a New York-headquartered company, and the key witnesses in this matter for Moog are located here: Michael Hunter, Todd Schmidt, Ian Bagnald, Paul Stoelting, and Jamie Daly. These witnesses have critical information on behalf of Moog: the development of Platform and its value to Moog, Skyryse's recruitment efforts, Kim and Pilkington's theft of Moog's data and post-departure actions, and the irreparable harm faced by Moog as a result of Defendants' actions. (Moog' Witness List, Dkt. 4-30). Hunter and Schmidt submitted the longest declarations in connection with Moog's moving papers, and they are key to explaining the development of Platform and other flight control applications, their value, the measures taken to protect their secrecy, the extent and nature of the data copied by Kim, and the impact and irreparable harm such conduct has had on Moog. (Hunter Dec. ¶¶ 5-29, 43-46, 58-67) (Schmidt Dec. ¶¶ 5-8, 18-23, 26-32). These witnesses are based in New York, and transferring to California will simply shift any burden onto them. Further, as discussed in the personal jurisdiction analysis, New York has an interest in seeing the case resolved here. *See Chloe,* 616 F.3d at 172; *LeCroy Corp.,* 2010 WL 3958761, at *5; *Lewis v. Madej*, 2015 WL 6442255, at *7 (S.D.N.Y. Oct. 23, 2015). Skyryse, Pilkington, and Kim improperly accessed Moog's data and servers located in New York and similarly poached and attempted to poach Moog's New York-based employees. (Compl. ¶ 112) (Hunter Dec. ¶ 34). And Moog's claims based on theories such as breach of contract of the 2018 and 2019 NDAs with New York choice-of-law provisions will involve state common law, which weighs against transfer to a court outside New York. *See Buffalo Newspress Inc. v. Adlife Mktg. & Comms. Co., Inc.*, 2019 WL 3886725, at *5 (W.D.N.Y.

21

Aug. 19, 2019) ("[w]here, as here, there are state law claims, the forum's familiarity with governing law supports retention of the action.") (quotation omitted).

Transferring this case to the Central District of California would also impede and interfere with Moog's ability to obtain injunctive relief. Given the gravity of the conduct at issue, any delay is irreparably harmful. The parties have already started expedited discovery and entered into stipulations ordered by this Court. The parties have even appeared before this Court to resolve discovery disputes. (Dkts. 57, 58). Transfer would unnecessarily delay the progress already made in the case. *RMS Titanic, Inc. v. Geller*, 2000 WL 306997, at *7 (D. Conn. Jan. 10, 2000) (case was "scheduled for a preliminary injunction hearing" and discovery had been "expedited"; "transfer [] could well disrupt the scheduling of hearings and delay a decision on the merits substantially"); *see also Elite Licensing, Inc. v. Thomas Plastics, Inc.*, 2003 WL 473669, at *2 (S.D.N.Y. Feb. 21, 2003) ("[t]o transfer this case now, would significantly delay the resolution of Elite's motion" and because Elite "is entitled to a timely decision on its request for emergency relief and the Court already has invested significant resources in the adjudication of the motion, it would be unjust and inefficient to transfer this action now.").

## CONCLUSION

Pilkington and Kim's attempt to avoid being held accountable in the forum in which many of their wrongful acts were aimed, and the effects thereof were felt, should fail. If Pilkington and Kim did not want to litigate here, they should not have entered into a multi-year employment relationship with Moog and then engaged in wrongful conduct toward Moog, an East Aurora-based corporation. Nor should they have voluntarily agreed to two stipulations,

22

ordered by this Court, and actively engaged in expedited discovery.  This Court should deny

Pilkington and Kim's motion to dismiss based on personal jurisdiction and refuse to transfer.

        If the Court does choose to transfer to California, Moog respectfully requests that

it ***not*** dismiss the case to ensure that the temporary restraining order—protecting Moog's trade

secrets—remains in place.  (*See* Dkt. 25, ¶ 12).

Dated:  April 12, 2022

                    **SHEPPARD, MULLIN, RICHTER &**
                    **HAMPTON LLP**
                    *Attorneys for Moog Inc.*

                    By: s/Rena Andoh
                          Rena Andoh
                          Travis J. Anderson (*pro hac vice*)
                          Tyler E. Baker (*pro hac vice filed*)
                          Kazim A. Naqvi (*pro hac vice*)
                    30 Rockefeller Plaza
                    New York, New York 10112
                    212.653.8700

                    **HODGSON RUSS LLP**
                    *Attorneys for Moog Inc.*

                    By: s/Robert J. Fluskey, Jr.
                          Robert J. Fluskey, Jr.
                          Melissa N. Subjeck
                          Pauline T. Muto
                    The Guaranty Building
                    140 Pearl Street, Suite 100
                    Buffalo, NY  14202-4040
                    716.856.4000