UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOOG INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>      Defendants. | Case No. 1:22-cv-00187 |

**DEFENDANTS ROBERT ALIN PILKINGTON AND MISOOK KIM'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION OR IMPROPER VENUE OR,
IN THE ALTERNATIVE, FOR CHANGE OF VENUE TO THE
<u>CENTRAL DISTRICT OF CALIFORNIA</u>**

LOCKE LORD LLP
Joseph N. Froehlich
Brookfield Place,
200 Vesey Street, 20th Floor
New York, NY  10281-2101
212-415-8600

Mitchell J. Popham (admitted *pro hac vice*)
Rory S. Miller (admitted *pro hac vice*)
William C. Mullen (admitted *pro hac vice*)
300 S. Grand Ave., Suite 2600
Los Angeles, CA 90071
213-485-1500

*Attorneys for Defendants
Alin Pilkington and Misook Kim*

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ................................................................................................................ 1

II. THE INDIVIDUAL DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO CHALLENGE PERSONAL JURISDICTION AND VENUE............................................ 1

III. MOOG'S ARGUMENTS FAIL TO SATISFY ITS BURDEN TO PROVE PERSONAL JURISDICTION WITH RESPECT TO EACH CLAIM ASSERTED ........ 4

    A.    Moog Cannot Reach Back in Time to Amass Sufficient Minimum Contacts................................................................................................................ 4

    B.    Downloading Information from a New York Server Does Not Establish Personal Jurisdiction ............................................................................................. 5

    C.    Merely Working for a Company Based Elsewhere Does Not Give Rise to Personal Jurisdiction in the State where the Company is Headquartered.............. 7

IV. THE PROPER VENUE FOR THIS CASE IS THE CENTRAL DISTRICT OF CALIFORNIA ................................................................................................................. 9

V. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Coffey v. Mesa Airlines, Inc.*,
   812 Fed. App'x 657 (9th Cir. 2020) ...................................................................8

*Darby Drug Co., Inc. v. Zlotnick*,
   573 F. Supp. 661 (E.D.N.Y. 1983) .....................................................................7

*Datskow v. Teledyne, Inc.*,
   899 F.2d 1298 (2d Cir. 1990)..............................................................................4

*Dogan v. Harbert Constr. Corp.*,
   507 F. Supp. 254 (S.D.N.Y. 1980) .....................................................................7

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
   907 F.2d 911 (9th Cir. 1990) ..............................................................................4

*Fiedler v. First City Nat'l Bank*,
   807 F.2d 315 (2d Cir. 1986)................................................................................7

*Hamilton v. Atlas Turner, Inc.*,
   197 F.3d 58 (2d Cir. 1999)..................................................................................3

*Index Fund, Inc. v. Hagopian*,
   107 F.R.D. 95 (S.D.N.Y. 1985) ..........................................................................3

*irth Solutions, LLC v. Apex Data Solutions and Servs., LLC*,
   2019 WL 283831 (W.D.N.Y. Jan. 22, 2019)...................................................6, 7

*Klinghoffer v. S.N.C. Achille Lauro*,
   937 F.2d 44 (2d Cir. 1991)...............................................................................4, 5

*MacDermid, Inc. v. Deiter*,
   702 F.3d 725 (2d Cir. 2012)................................................................................6

*Martinez v. Picker Int'l, Inc.*,
   635 F. Supp. 658 (D.P.R. 1986)..........................................................................2

*Mattel Inc. v. Greiner & Hausser GMbH*,
   354 F.3d 857 (9th Cir. 2003) ..............................................................................5

*McFarlane v. Esquire Mag.*,
   74 F.3d 1296 (D.C. Cir. 1996) ............................................................................4

*Moog, Inc. v. Newport Aeronautical, Inc.*,
  2016 WL 3444238 (W.D.N.Y. June 23, 2016) ..................................................................1, 10

*Noonan v. Winston Co.*,
  135 F.3d 85 (1st Cir. 1998) ...........................................................................................................4

*Peeq Media LLC v. Buccheri*,
  2016 WL 5947295 (S.D.N.Y. Oct. 13, 2016) ...........................................................................8, 9

*Plunkett v. Valhalla Inv. Servs., Inc.*,
  409 F. Supp. 2d 39 (D. Mass. 2006) ............................................................................................2

*Transaero, Inc. v. Chappell*,
  2014 WL 1783732 (E.D.N.Y. May 6, 2014) ..............................................................................9

*US Bank Nat'l Assn. v. Bank of America, N.A.*,
  916 F.3d 143 (2d Cir. 2019) ........................................................................................................8

*Walden v. Fiore*,
  571 U.S. 277 (2014) ....................................................................................................................8

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d. Cir. 2016) .......................................................................................................8

*Weinberg v. Colonial Williamsburg, Inc.*,
  215 F. Supp. 633 (E.D.N.Y. 1963) .............................................................................................2

*Wright v. Yackley*,
  459 F.2d 287 (9th Cir. 1972) ......................................................................................................2

**State Cases**

*Delfasco, LLC v. Powell*,
  30 N.Y.S.3d 513 (2016) ..........................................................................................................6, 7

*George Reiner & Co., Inc. v. Schwartz*,
  41 N.Y.2d 648 (1977) .................................................................................................................9

**Rules**

Fed. R. Civ. P. Rule 12 ...........................................................................................................1, 2, 3

Fed. R. Civ. P. Rule 12(b)(2) ............................................................................................................1

Fed. R. Civ. P. Rule 12(b)(3) ............................................................................................................1

Fed. R. Civ. P. Rule 12(h) ............................................................................................................2, 4

Fed. R. Civ. P. 12(h)(1) ....................................................................................................................1

iii

**Federal Statutes**

28 U.S.C. § 1404....................................................................................................................9

28 U.S.C. § 1406....................................................................................................................9

I.      INTRODUCTION

Moog's attempts to justify its decision to bring suit against two former employees on the far side of the continent fail to establish either that this Court has personal jurisdiction over either of these long-time California residents or that there is any justification for this case to remain in this Court as opposed to where it naturally belongs in the Central District of California.[1]

Although Mr. Pilkington and Ms. Kim were the moving parties, it is Moog's burden, not theirs, to demonstrate that personal jurisdiction exists and that the venue is proper.  Moog's arguments in its opposition fall short of meeting these burdens, often overreaching in the use of precedent or even making fundamental errors of reasoning and the law.

Ultimately, Moog cannot escape from the fact that Mr. Pilkington and Ms. Kim are both long-time California residents, worked at a Moog facility located in California and performed any complained-of acts within California, and used electronic devices that are all located within California.  Despite Moog's efforts in its opposition, there is no credible argument that this case should remain before this Court rather than proceeding before the Central District of California.

II.     **THE INDIVIDUAL DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO CHALLENGE PERSONAL JURISDICTION AND VENUE**

All that is required to preserve a challenge to personal jurisdiction or venue is that a defendant raise the defense in his or her initial *responsive* motion or pleading—a motion to dismiss or an answer.  *See* Fed. R. Civ. P. 12(h)(1) (waiver of personal jurisdictional challenge under Rule 12(b)(2) or improper venue under Rule 12(b)(3) occurs when omitted from a joinder, motion to dismiss, or answer).  Mr. Pilkington and Ms. Kim did exactly that by bringing their Rule 12 motion.  ***Any*** of their participation in expedited proceedings before the Court prior to the

---

[1] This is not the first time that Moog has improperly sought to "home town" a California-based defendant.  *See Moog, Inc. v. Newport Aeronautical, Inc.,* 2016 WL 3444238 (W.D.N.Y. June 23, 2016).

1

deadline for their Rule 12 motion does not constitute initial responsive motions or pleadings that could trigger a waiver under Rule 12(h).

Moog attempts to evade the clear limitations on waiver contained in Rule 12 by asserting that they are not claiming that Mr. Pilkington and Ms. Kim "waived" their defenses as addressed by Rule 12(h), but that they "forfeited" them notwithstanding their compliance with that rule. (Dkt. 63 [Opposition] at p. 12.) Moog's "forfeiture" argument is not one at all reflected in the cases it cites, and is nothing more than an effort to import into Federal procedure the distinction between a "general appearance" and a "special appearance"—a distinction that has been clearly abolished in federal law for over **half a century**. *See*, *e.g.*, *Wright v. Yackley*, 459 F.2d 287, 291 & n.9 (9th Cir. 1972) (collecting cases); *Weinberg v. Colonial Williamsburg, Inc.*, 215 F. Supp. 633, 636–37 (E.D.N.Y. 1963) (rejecting as irrelevant New York state law that filing of removal petition constitutes a general appearance which waives objections to defective service and personal jurisdiction). Disposing of this distinction and similar technicalities was, in fact, the very reasons that Rule 12(h) was adopted. *See Martinez v. Picker Int'l, Inc.*, 635 F. Supp. 658, 659 (D.P.R. 1986) ("The purpose behind this rule was to dispense with the technicality of making special appearances to challenge jurisdiction or risk submission."). Thus, all of Moog's arguments based on *Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39 (D. Mass. 2006)[2], such as that Mr. Pilkington and Ms. Kim's counsel participated in a discovery conference (*after* their motion to dismiss was on file) set by Magistrate Judge McCarthy and "did not suggest that they were limiting their litigation activity in this Court given their objections based on

---

[2] The ***actual*** issue in *Plunkett* was that the defendants had ***not*** clearly asserted a defense of lack of jurisdiction in their answer; all they had done was recited that "Defendants deny the allegations contained in Paragraph 6 of Plaintiff's Complaint" regarding venue, or denied based on lack of knowledge the allegations relating to subject matter jurisdiction. *Plunkett,* 409 F. Supp. 2d at 42 n.1. Unlike those defendants, Mr. Pilkington and Ms. Kim unequivocally and expressly challenged this Court's personal jurisdiction and the propriety of venue through their Rule 12 motion.

2

jurisdiction," are of no moment. (*See* Dkt. 63 [Opposition] at p. 13.) Federal courts simply do not engage in the formalistic "reservations of rights" or "special appearances" that Moog suggests are necessary to avoid waiver of jurisdiction and venue arguments.

Similarly, the authorities Moog points to as demonstrating the existence of a separate "forfeiture" doctrine are clearly inapplicable upon review. For example, in *Hamilton v. Atlas Turner, Inc.*, the defendant actually raised a personal jurisdiction defense in its initial answer. 197 F.3d 58, 60 (2d Cir. 1999). The case then was transferred by the Multidistrict Litigation Panel from the Southern District of New York to the Eastern District of Pennsylvania for pretrial proceedings. *Id.* Over three years later, the MDL returned the case to the Southern District for trial. *Id.* Nine full months after that transfer, the defendant, for the first time, brought a motion to effectuate the personal jurisdiction defense included in its four-year-old answer. *Id.* at 61. The Second Circuit noted that the defendant ignored ample opportunities to litigate the defense, both before the Eastern District of Pennsylvania and the Southern District of New York, all while consuming the parties' time and court resources in litigating the matter. *Id.* at 62–63.

The non-controversial point of the cases cited by Moog is simple: to ensure that the enumerated defenses are asserted at the earliest procedurally proper time. *See also*, *e.g.*, *Index Fund, Inc. v. Hagopian*, 107 F.R.D. 95 (S.D.N.Y. 1985). The *Hamilton* court made this clear, concluding that "[i]n sum, [the defendant] participated in pretrial proceedings but never moved to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer." *Hamilton,* 197 F.3d at 62.

Unlike the *Hamilton* defendant, Mr. Pilkington and Ms. Kim seized the first procedurally proper opportunity to move to dismiss for lack of personal jurisdiction and improper venue when they filed a timely Rule 12 motion. Even had their motion been untimely or otherwise deficient

(which it is not), the short period of time and the substantive nature of their challenge to jurisdiction and venue weighs heavily against forfeiture. *See Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1303 (2d Cir. 1990) ("We would be slower to find waiver by a defendant wishing to contest whether it was obliged to defend in a distant court."). The Court should decline Moog's invitation to err either by creating a "special appearance" requirement foreign to the federal court system or by making an end-run around Rule 12(h) by merely renaming "waiver" to "forfeiture."

### III. MOOG'S ARGUMENTS FAIL TO SATISFY ITS BURDEN TO PROVE PERSONAL JURISDICTION WITH RESPECT TO EACH CLAIM ASSERTED

The vast bulk of Moog's opposition consists of repeating, in various combinations, the claim that Mr. Pilkington and Ms. Kim committed the torts they are accused of within New York because they were employed by a company headquartered in New York that operated computer servers out of New York. Confronted by the deficiencies of their own pleading, Moog stakes out a number of legally unsupportable positions in an effort to avoid dismissal.

### A. Moog Cannot Reach Back in Time to Amass Sufficient Minimum Contacts

Whether a defendant has sufficient minimum contacts is analyzed in the context of the defendant's forum-related activities at the time the lawsuit was filed since the focus is on the reasonableness of requiring a defendant to appear and defend him or herself against a lawsuit in the subject forum. *See, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) ("personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed"); *Noonan v. Winston Co.*, 135 F.3d 85, 95 (1st Cir. 1998); *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1300–01 (D.C. Cir. 1996); *but see Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) (contacts are measured at the time the claim arose rather than at filing).

Consequently, Moog's reliance on the fact that **between 2012 and 2018**—that is, between

4

three and ten years prior to the filing of this lawsuit—Mr. Pilkington and Ms. Kim, respectively, averaged either two visits or a lone visit to New York for work each year, (*see* Dkt. 63-1 [Hunter Decl.], ¶ 6), is utterly immaterial to whether this Court has jurisdiction over these claims.

*Klinghoffer* illustrates this principle well. In that case, the District Court had found that the Palestinian Liberation Organization, through its UN representative Zuhdi Terzi, was "doing business in New York" and subject to personal jurisdiction because, among other things, Mr. Terzi gave public speeches and otherwise engaged in fundraising activities in New York. *Klinghoffer*, 937 F.2d at 52. The Second Circuit reversed and remanded, noting that, although the evidence relied on by the District Court "[t]aken together . . . would suffice to meet the doing business standard" that evidence was limited to the PLO's activities prior to the end of 1987, but that "personal jurisdiction over the PLO may be lacking with respect to those complaints that were filed after 1987." *Id.* In other words, evidence that bore on activities only a year prior to the filing of a lawsuit was not sufficient to demonstrate that personal jurisdiction existed; there must be evidence of ***current*** contacts. *See also Mattel Inc. v. Greiner & Hausser GMBH*, 354 F.3d 857, 866 (9th Cir. 2003) ("the relevant contacts between the defendant and the forum state must not have been weakened by the passage of time.") (internal quotation marks omitted).

In short, Moog cannot simply point to sporadic, historical travel by Mr. Pilkington or Ms. Kim and claim that it is indicative of sufficient minimum contacts; Moog can only look to each of their ***current*** contacts with New York—contacts that are limited to (a) downloading information from servers Moog maintains in New York and (b) working for Moog, a company headquartered in New York. Neither of these, whether alone or in combination, are sufficient to show that the Court has personal jurisdiction over Mr. Pilkington or Ms. Kim.

B. **Downloading Information from a New York Server Does Not Establish Personal Jurisdiction**

5

Moog's opposition makes much of its contention that Mr. Pilkington and Ms. Kim not only affected a New York company but that they actually committed the alleged torts within New York by misappropriating data stored on Moog's New York-based computer servers. This is contrary to New York's long-arm statute, which requires that "[a] defendant must have been physically present in New York to have committed the tortious act 'within the state' for the purposes of [C.P.L.R.] § 302(a)(2)." *irth Solutions, LLC v. Apex Data Solutions and Servs., LLC,* 2019 WL 283831, at *2 (W.D.N.Y. Jan. 22, 2019) (quoting *Covanex, Inc. v. Duvvada*, 2015 WL 8375211, at *3 (W.D.N.Y. Dec. 8, 2015).

This nuance in New York's long-arm statute also distinguishes the present case from cases such as *MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012). *MacDermid* addressed Connecticut's long-arm statute that contains an explicit provision that jurisdiction arises from "us[ing] a computer . . . or a computer network . . . located within the state." *Id.* at 728 (citing Conn. Gen. Stat. § 52–59(b)(a)). The *irth Solutions* court similarly pointed to a case involving Connecticut law when it asserted that "acquiring trade secrets by accessing a server in New York ***can*** be a significant event for venue purposes." 2019 WL 283831, at *4 (citing *Argent Funds Grp., LLC v. Schutt*, 2006 WL 2349464, at *2 (D. Conn. June 27, 2006)) (emphasis added).

Instead, New York's long-arm statute looks to where the locus of the tortious act occurred, and, in cases where a defendant is accused of misappropriating data from a remote server, ***that locus is where the computer used by defendant to take the data is located.*** *Delfasco, LLC v. Powell*, 30 N.Y.S.3d 513, 516 (2016). In *Delfasco,* the defendant worked in a Tennessee based factory owned by plaintiff, a company with its principal place of business in Brooklyn. *Id.* at 515. While at that Tennessee factory, the defendant allegedly accessed various computer servers in Brooklyn and misappropriated the plaintiff's information stored thereon. *Id.*

6

The court concluded that the locus for this conduct was not where the servers were, but where the defendant was when he accessed those servers—Tennessee. Consequently, the court dismissed the case for want of personal jurisdiction. *Id.* at 516. The facts of this case are equally parallel to *Delfasco,* and the result should be equally identical. *Compare*, *e.g.*, *Fiedler v. First City Nat'l Bank*, 807 F.2d 315, 317 (2d Cir. 1986) (telephone and mail communications into New York do not constitute "transacting business"); *Dogan v. Harbert Constr. Corp.*, 507 F. Supp. 254, 261 (S.D.N.Y. 1980) ("[I]t is settled law in New York that interstate negotiations by telephone do not subject the caller to the jurisdiction of the receiver.").

Even under an "effects within the state" fairness analysis, the presence of computer servers is not dispositive, but merely one factor among many, such as "launching, marketing, and licensing" of a competing product within New York. *irth Solutions,* 2019 WL 28381 at *4. As detailed in the opening motion, the other fairness factors all weigh against Moog.

Finally, it should be noted that there is no specific allegation of the *use* of any of the supposedly confidential Moog information within New York by either Mr. Pilkington or Ms. Kim, and without such an allegation, jurisdiction in New York is inappropriate. *Darby Drug Co., Inc. v. Zlotnick*, 573 F. Supp. 661, 663–64 (E.D.N.Y. 1983) (collecting cases).

Mr. Pilkington and Ms. Kim accessing servers in New York from California does not give rise to jurisdiction in New York, no matter how many times Moog repeats its accusations.

**C.    Merely Working for a Company Based Elsewhere Does Not Give Rise to Personal Jurisdiction in the State where the Company is Headquartered**

Moog also advances the claim that the mere fact of working for a company headquartered across the continent is sufficient to allow that company to sue its current and former employees regardless of where those employees reside, where those employees worked, the extent of the employer's operations elsewhere, and without any nexus to the *particular* facts underlying any

7

claim—Moog's opposition goes so far to claim that this position is "self-evident." (Dkt. 63 [Opposition] at p. 10.) Not only is it not "self-evident," it is contrary to the law.

The United States Supreme Court has rejected efforts such as Moog's that "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden v. Fiore*, 571 U.S. 277, 289 (2014). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, ***not*** based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State" and, consequently, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286 (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) & *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also, e.g.*, *US Bank Nat'l Assn. v. Bank of America, N.A.*, 916 F.3d 143, 150 (2d Cir. 2019); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d. Cir. 2016); *cf. Coffey v. Mesa Airlines, Inc.*, 812 Fed. App'x 657 (9th Cir. 2020) ("Mere employment of a citizen from the forum state does not satisfy this factor [of purposeful availment]") (citing *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015)).

It is not surprising that the two cases Moog cites for the proposition that employment by a New York company gives rise to personal jurisdiction do not actually stand for that proposition. For example, *Peeq Media LLC v. Buccheri* addresses a situation that is much more familiar in the current pandemic era:[3] when employees work from home, where can they be said to be "working"? In that case, the Southern District of New York began its analysis by observing that "Courts in this District have held that out-of-state employees who typically (even exclusively) work from home 'transacted business in New York.'" 2016 WL 5947295, at *3 (S.D.N.Y. Oct.

---

[3] This dispute has most notably arisen where states are competing for the ability to tax the income of work-from-home employees and was litigated in *New Hampshire v. Massachusetts,* S. Ct. Docket No. 220154.

8

13, 2016); *cf. George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648 (1977) (finding business nexus for a salesman who worked from his home outside New York). Furthermore, the defendant in that case traveled from his New Jersey home to New York in person "approximately 3 to 4 times per month," *id.* at *2, and would in fact do so upon demand by executives. *Id.* at *3. In such circumstances, where an employee's primary place of work is the home rather than a specific corporate location, and where that employee can be and is summoned to a New York office multiple times a month, personal jurisdiction is appropriately found. *Id.* The other case cited by Moog, *Transaero, Inc. v. Chappell*, is substantially similar and concerns an Australian sales representative. 2014 WL 1783732, at *1–2 (E.D.N.Y. May 6, 2014).

That is not the situation for either Mr. Pilkington or Ms. Kim. They did not work from home; they worked at Moog's facility in Torrance, California. Nor were their trips to New York anywhere comparable in frequency or subject to the frequent beck-and-call from superiors, but only for scheduled "design review and project meetings." (*See* Dkt. 63-1 [Hunter Decl.], ¶ 6) Unlike the *Peeq* defendant whose workplace is amorphous, Mr. Pilkington and Ms. Kim's workplace while employed by Moog was definite: California, *not* New York. Moog must show that each Mr. Pilkington and Ms. Kim themselves—not by virtue of their employment in a substantial California location of a New York-based company—took actions demonstrating that they were purposefully availing themselves of New York law. This Moog cannot do.

## IV.   THE PROPER VENUE FOR THIS CASE IS IN CALIFORNIA

Finally, in attempting to defend the improper venue, Moog decides that its best defense is a good offense, and so asserts that neither 28 U.S.C. § 1406 (improper venue) nor § 1404 (transfer for convenience) are appropriate due to a supposed lack of evidence put forward demonstrating the facially obvious fact that being forced to defend a case on the other side of the continent from their homes is incredibly more expensive, difficult, and time-consuming than

9

proceeding before the Central District of California, where all the parties may be found, the core acts alleged in the complaint occurred, and the bulk of the physical evidence is located.

Indeed, most of Moog's opposition on this point is little more than dismissal of the reality of two individual defendants (both nearing retirement age) forced to defend themselves against claims by an S&P 600 company with nearly 11,000 employees and $2.5 billion in revenue. Moog dismissively puts aside the burden of taking flights from their homes in Los Angeles to Buffalo (a round trip of over 5,000 miles), arranging for lodging in Buffalo for both depositions and trial, transporting evidence and witnesses from California, and the like, even as it later complains that a transfer to the Central District—where this case always should have been brought—will burden Moog's own executives.  (Dkt. 63 [Opposition] at p. 21.)

Mr. Pilkington and Ms. Kim did not submit evidence of the relative burdens between them and a large corporation like Moog because the inherent unfairness and inconvenience of litigating in a faraway court in the hometown of a publicly traded company is so plainly obvious that nothing further need be shown to meet the "clear and convincing" standard for transfer.

## V.      CONCLUSION

As explained in the moving papers, Moog should ***never*** have brought this case before the Western District of New York.  Moog's opposition not only fails to overcome these arguments but demonstrates such a strained reading of precedent and so flimsy a factual justification that it is clear that Moog is obstinately refusing to learn from the *Newport Aeronautical* action.

The Court need not indulge Moog any further in its efforts to burden Mr. Pilkington and Ms. Kim with litigation a continent away, in a state they do not reside within, and where none of the ***actual*** events at issue in this case transpired.  Moog's effort to increase the burden on these individuals through pointless jurisdictional discovery should be denied, and this case should be dismissed for lack of personal jurisdiction or, in the alternative, dismissed for improper venue.

Dated: New York, New York
April 22, 2022

/s/ *Joseph N. Froehlich*

Joseph N. Froehlich
LOCKE LORD LLP
Attorneys for Defendants
Brookfield Place, 200 Vesey Street
20th Floor
New York, NY 10281-2101
212-415-8600

Mitchell J. Popham (admitted *pro hac vice*)
Rory S. Miller (admitted *pro hac vice*)
William C. Mullen (admitted *pro hac vice*)
LOCKE LORD LLP
Attorneys for Defendants
300 S. Grand Ave., Suite 2600
Los Angeles, CA 90071
213-485-1500