**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MOOG, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON,<br>MISOOK KIM, and DOES NOS. 1-50,<br><br>                    Defendants. | Civil Action No. 1:22-cv-00187-LJV-<br>JJM |

<u>**AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SKYRYSE'S**</u>
<u>**MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE**</u>

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...............................................................................................1

II.   FACTUAL BACKGROUND ..............................................................................2

III.  LEGAL STANDARDS .......................................................................................5

IV.   ARGUMENT ......................................................................................................6

    A.   Moog's Complaint Should Be Dismissed for Lack of Personal Jurisdiction. ............6

        1.   Moog Cannot Establish General Jurisdiction. .................................7

        2.   Moog Cannot Establish Specific Jurisdiction. ................................7

            a)   The Alleged California-Based Conduct Does Not Support Jurisdiction. .................................................................7

            b)   The Alleged New York Contacts Do Not Support Jurisdiction. .................................................................9

    B.   Moog's Complaint Should Be Dismissed for Improper Venue. ............................11

    C.   Alternatively, This Matter Should Be Transferred to the Central District of California. ..............................13

        1.   Moog Could Have Filed This Action in the Central District of California. ..............................14

        2.   The Balance of Factors Weighs in Favor of Transfer. ...............15

            a)   California Is Home to Multiple Party and Non-Party Witnesses. .................................................................17

            b)   California Is Far More Convenient for Defendants and No More Inconvenient for Plaintiff. .................................................................19

            c)   Defendants' Documents and Evidence Are More Easily Accessed from California. .................................................................20

            d)   The Locus of Operative Facts Is in California. ..............................21

            e)   Key Witnesses Cannot Be Compelled to Testify in a New York Trial. .................................................................22

            f)   The Relative Means of the Parties Favors Transfer. ......................23

g)    Both Forums Have Familiarity with the Governing Law, Rendering this Factor Neutral. ........................................................24

h)    Plaintiff's Choice of Forum Is of Diminished Importance. .............24

i)    Trial Efficiency and Interests of Justice Warrant Transfer. .............25

V.    CONCLUSION .......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*1800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
  860 F. Supp. 128 (S.D.N.Y. 1994)........................................................................23

*Aerotel, Ltd. v. Sprint Corp.*,
  100 F. Supp. 2d 189 (S.D.N.Y. 2000)...................................................................24

*Alexander Interactive, Inc., v. Leisure Pro Ltd.*,
  2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014)......................................................22

*Astor Holdings, Inc. v. Roski*,
  2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) ...........................................................12

*Best Van Lines v. Walker*,
  490 F.3d 239 (2d Cir. 2007)....................................................................................5

*Blauschild v. Tudor*,
  31 F. Supp. 3d 527 (E.D.N.Y. 2014) ..............................................................11, 12

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
  137 S. Ct. 1773 (2017).............................................................................................6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................................................9

*In re CenturyLink, Inc. Sec. Litig.*,
  2014 WL 1089116 (S.D.N.Y. Mar. 18, 2014) ......................................................13

*Cheeseman v. Carey*,
  485 F. Supp. 203 (E.D.N.Y. 1980) .......................................................................13

*Citibank, N.A. v. Affinity Processing Corp.*,
  248 F. Supp. 2d 172 (E.D.N.Y. 2003) ..................................................................24

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000)....................................................................15

*Cold Spring Harbor Lab'y v. Ropes & Gray LLP*,
  762 F. Supp. 2d 543 (E.D.N.Y. 2011) .............................................................12, 13

*In re Cuyahoga Equip. Corp.*,
  980 F.2d 110 (2d Cir. 1992)..................................................................................15

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)................................................................................6

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
928 F. Supp. 2d 735 (S.D.N.Y. 2013)...............................................23, 24

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*,
865 F.2d 513 (2d Cir. 1989)...................................................................17

*Gulf Ins. Co. v. Glasbrenner*,
417 F.3d 353 (2d Cir. 2005)...............................................................6, 11

*Hernandez v. Graebel Van Lines, Inc.*,
761 F. Supp. 983 (E.D.N.Y. 1991) ........................................................24

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
331 F. Supp. 3d 130 (S.D.N.Y. 2018)...................................................7, 9

*Houlihan Lokey Howard & Zukin Cap., Inc. v. Protective Grp., Inc.*,
2005 WL 3367044 (S.D.N.Y. Dec. 12, 2005) .........................................21

*Ikon Office Solutions, Inc. v. Rezente*,
2010 WL 395955 (E.D. Pa. Feb. 3, 2010) ..............................................22

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
419 F. Supp. 2d 395 (S.D.N.Y. 2005)....................................................17

*Jet Blue Airways Corp. v. Helferich Patent Licensing, LLC*,
960 F. Supp. 2d 383 (E.D.N.Y 2013) .....................................................18

*Kiss My Face Corp. v. Bunting*,
2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003).......................................17

*Knight v. Standard Chartered Bank*,
531 F. Supp. 3d 755 (S.D.N.Y. 2021).....................................................10

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F. Supp. 3d 385 (S.D.N.Y. 2014).......................................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013).....................................................................8

*In re Magnetic Audiotape Antitrust Litig.*,
334 F.3d 204 (2d Cir. 2003).....................................................................5

*McShan v. Omega Louis Brandt et Frere, S.A.*,
536 F.2d 516 (2d Cir. 1976).....................................................................9

*Millennium, L.P. v. Hyland Software, Inc.,*
2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003) ....................................................21

*Moog, Inc. v. Newport Aeronautical, Inc.,*
2016 WL 3444238 (W.D.N.Y. June 23, 2016) ............................................ *passim*

*N.Y. Mar. & Gen. Ins. Co. v. Lafarge N. Am., Inc.,*
599 F.3d 102 (2d Cir. 2010) ..............................................................................14, 15

*New Son Yeng Produce, LLC v. A & S Produce, Inc.,*
2009 WL 2568566 (E.D.N.Y. Aug. 19, 2009) ....................................................13

*Pausch Med. GmbH v. Pausch LLC,*
2015 WL 783365 (S.D.N.Y. Feb. 24, 2015) ........................................................15

*Romano v. Banc of Am. Ins. Servs.,*
528 F. Supp. 2d 127 (E.D.N.Y. 2007) ..................................................................23

*Rosen v. Ritz-Carlton Hotel Co. LLC,*
2015 WL 64736 (S.D.N.Y. Jan. 5, 2015) ............................................................21

*Sentegra, LLC v. ASUS Comput. Int'l,*
2016 WL 3093988 (S.D.N.Y June 1, 2016) ....................................................18, 21

*Shanghai Zhenglang Tech. Co. v. Mengku Tech. Co.,*
2020 WL 7481297 (E.D.N.Y. Dec. 18, 2020) ........................................................5

*SPV Opus Ltd. v. UBS AG,*
882 F.3d 333 (2d Cir. 2018) ................................................................................10

*Viacom Int'l, Inc. v. Melvin Simon Prods.,*
774 F. Supp. 858 (S.D.N.Y. 1991) ......................................................................21

*Walden v. Fiore,*
571 U.S. 277 (2014) ....................................................................................7, 8, 10

*Waldman v. Palestine Liberation Org.,*
835 F.3d 317 (2d Cir. 2016) ..................................................................................9

*Whitehaus Collection v. Barclay Prods., Ltd.,*
2011 WL 4036097 (S.D.N.Y. Aug. 29, 2011) ....................................................13

## STATUTES

18 U.S.C.
§ 1836(b)(1) ............................................................................................................22
§ 1839(3) ................................................................................................................22
§ 1839(5) ................................................................................................................22

28 U.S.C.

    § 1331 ...................................................................................................................14

    § 1332 ...................................................................................................................14

    § 1367 ...................................................................................................................15

    § 1391(b) ......................................................................................................6, 11, 13

    § 1391(b)(1) ..........................................................................................................14

    § 1391(b)(2) ..........................................................................................................11

    § 1404 .......................................................................................................2, 14, 15

    § 1404(a) ........................................................................................................13, 21

## RULES

Fed. R. Civ. P. 45(c)(1)(A)-(B)(ii) ...........................................................................23

## OTHER AUTHORITIES

United States District Courts – National Judicial Caseload Profile, *available at*
    http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables ..............................16

## I.   INTRODUCTION[1]

When a global company that has offices and hundreds of employees *in California* sues two of its former employees who live and work *in California* and a start-up company based *in California*, alleging that those former employees and the start-up company engaged in unlawful conduct *in California*, then the lawsuit belongs in California.  That is precisely the situation Moog faced, yet it chose to file suit here in Buffalo where it is headquartered, knowing none of the defendants has any legitimate connection to this judicial district and that they will be unduly burdened by litigating this case on the opposite side the country.  The law does not permit such forum-shopping.  Basic fairness and due process requires that this action be dismissed for lack of personal jurisdiction or for improper venue, or otherwise transferred to California in the interests of justice.

***Dismissal for Lack of Personal Jurisdiction.***  Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(2) because Moog does not allege any facts establishing personal jurisdiction over Skyryse in New York.  Skyryse is not subject to general jurisdiction in New York.  And specific jurisdiction does not exist because Skyryse did not commit any of the alleged conduct in New York, nor direct the conduct towards New York.  Moog alleges that Skyryse's hiring practices and the development of its flight system—all done entirely from its El Segundo, California office—give rise to various trade secret, contract, and related claims.  Moog further alleges that Skyryse conspired with two individual defendants who worked in Moog's Torrance, California office to download Moog files to devices located in Torrance, California, and deliver them to Skyryse's El Segundo, California office.  And although Skyryse expects the evidence will show that Moog's claims against it are overblown and baseless, any purported benefit to Skyryse from the alleged misconduct would

---

[1] Skyryse submits this Amended Memorandum pursuant to the Court's instruction (Dkt. No. 101) and for ease of reference attaches a redlined version as Exhibit A, showing the amendments made to its original Memorandum (Dkt. No. 48-1).

inure to Skyryse in California, where Skyryse conducts its business.   There is, therefore, no connection between Skyryse's alleged conduct giving rise to Moog's claims and New York. Accordingly, the claims against Skyryse should be dismissed for lack of personal jurisdiction.

   ***Dismissal for Improper Venue.***   Dismissal of the claims against Skyryse also is warranted under Federal Rule of Civil Procedure 12(b)(3) because Moog filed the case in an improper venue. Moog has not alleged that significant events or omissions material to its claims occurred in the Western District of New York.  Again, all relevant alleged conduct took place in California.

   ***Transfer in the Interest of Justice.***   In the alternative, this case should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404.  Skyryse has its principal place of business in the Los Angeles area, the individual defendants also reside in the Central District of California, and the majority of witnesses are located there.  If Moog's claims are not dismissed outright, the Central District of California is the proper venue because it has personal jurisdiction over all Defendants; it is substantially more convenient for the majority of party and non-party witnesses (including Skyryse and the individual defendants); and it would not materially inconvenience Moog.

## II.    FACTUAL BACKGROUND[2]

   Defendant Skyryse is a small company founded in 2016 and based in El Segundo, California. Compl. ¶¶ 11.  Skyryse first began developing its technology with the aim of making helicopter services widely available.  Declaration of Gonzalo Rey, ECF 48-5 ¶ 11.  Over the last six years, Skyryse has developed its FlightOS technology to bring advanced automation to flight controls and flight management systems to greatly reduce opportunities for human error and achieve unmatched

---

[2] This Motion is filed on behalf of Skyryse.  The individual defendants have filed a separate motion.

safety.  *Id.* ¶ 12.  Skyryse recently completed its Series B fundraiser, which raised $200 million in capital—for a total of $250 million raised to date.  Compl. ¶ 87; ECF 48-5 ¶ 16.  As of March 24, 2022, the company employs 71 full-time employees, with 67 of those employees based in California.  *Id.* ¶ 17.

Founded in 1951, Plaintiff Moog is a massive publicly traded corporation that operates in dozens of countries, employs over 13,000 people, and earns approximately 3 billion dollars in revenue each year.  Compl. ¶ 10; Ex. A (Moog Inc., Annual Report (Form 10-K), Oct. 2, 2021) at 5, 28.[3]  Although it has products in the aircraft space, Moog also designs, manufactures, and integrates space and defense controls, industrial systems, medical devices, motion control systems and components, control and power electronics, software, and fiber optics.  Compl. ¶ 20.  There are approximately 50 subsidiaries in the Moog corporate family.  Ex. A at Part IV, Item 15, Ex. 21, *Registrant Subsidiary Listing*, at 149.  Moog's headquarters are in East Aurora, New York, but the company has offices all over the globe, including a sizeable office in Torrance, California, outside of Los Angeles.  *See* Compl. ¶¶ 10, 13, 55.  Moog has had a presence in Torrance, California for over 25 years, and by 2019 employed over 700 employees with over 250,000 square feet at three locations.  Ex. B (Moog Inc., *Moog Inc. Celebrates 25 Years in Torrance, CA*) at 1.  Moog employs nearly as many engineers working on technology related to this case in the Los Angeles area (22) as it does in New York (29). Compl. ¶ 55.

On March 7, 2022, Moog filed this lawsuit without warning.  ECF 1.  Instead of sending Skyryse a cease-and-desist letter, Moog launched its Complaint with simultaneous motions for a temporary restraining order, a preliminary injunction, and expedited discovery.  ECFs 4, 6.

---

[3] Citations in the Format "Ex. __" refer to exhibits in the Declaration of Katherine Dominguez dated March 29, 2022 (ECF 48-2).

The core of Moog's allegations are focused on Misook Kim and Alin Pilkington, former employees of Moog's Torrance, California office, who still reside in Torrance and are employed at Skyryse's El Segundo, California office.  Compl. ¶¶ 12, 13.  Moog alleges Pilkington and Kim had access to Moog's trade secrets at the Torrance, California office.  *Id.* ¶ 53.  Moog alleges Pilkington and Kim received training about trade secrets and signed undertakings relating to trade secrets in Moog's Torrance, California office.  *Id.* ¶¶ 48-49.  Moog alleges Kim "downloaded Moog's data from her home" in Torrance, California—allegedly at Pilkington's direction (who is also based in Torrance, California).  *Id.* ¶¶ 114, 172.  Moog further alleges Kim signed her exit form when leaving the company in Torrance, California, and that she had company-issued external hard drives returned to the same office.  *Id.* ¶¶ 126, 130-32.

With respect to Skyryse, Moog alleges—solely on "information and belief"—that Kim's actions were done "in coordination with" Defendant Skyryse and that the data she copied was "delivered to" Skyryse.  Compl. ¶ 172.  Assuming these allegations to be true only for purposes of this motion, the alleged conduct could have occurred *only* in California—where Skyryse is located and operates.  ECF 48-5 ¶ 13.  Moog also alleges Skyryse has hired 16 employees from Moog's Torrance, California office.  Compl. ¶ 91.  Moog contends Skyryse's hiring of former Moog employees "primarily targeted [] Moog's Los Angeles-area office."  *Id.* ¶¶ 105-06.  Moog further points to 2018 and 2019 Non-Disclosure Agreements ("NDAs") Skyryse signed with Moog and alleges—once again "upon information and belief"—that Skyryse "used information" gained under those NDAs to "1) develop its own flight control systems and software; and 2) raid and solicit Moog's key software engineering personnel."  *Id.* ¶ 229.  Again, assuming these allegations to be true only for purposes of this motion, the alleged conduct could have occurred only in California.  In sum, the alleged acts, events, or omissions that give rise to Moog's claims all occurred in California

and not the Western District of New York.

There are only a few facts in the complaint that even tangentially involve the state of New York. Moog alleges that the parties' NDAs contained New York choice-of-law provisions (*id.* ¶ 67); that Moog performed substantial services and deliverables under both the 2018 and 2019 NDAs out of its New York headquarters (*id.*); that Moog's servers are located in New York (*id.* ¶ 112); and that Skyryse has hired four employees from Moog's New York office and recruited two others (*id.* ¶ 91, 95-99, 102). That is the sum total of the Complaint's New York-related allegations. Moog does not allege New York-based conduct by Skyryse giving rise to the claims, or that Skyryse directed its conduct to New York.

On March 11, 2022, the parties agreed to a procedure for preservation and exchange of information. Defendants were amenable to preserving and exchanging information to move the case forward (which had the effect of mooting Moog's motion for a temporary restraining order). ECF 25. On March 17, 2022, the parties agreed to a schedule for limited, mutual expedited discovery and a briefing schedule relating to Plaintiff's motion for a preliminary injunction—again, for purposes of moving the case forward. ECF 33. In both stipulations, Skyryse expressly reserved its challenges to jurisdiction and venue in the Western District of New York. ECF 25 ¶ 11; ECF 33 ¶ 14.[4]

### III.   LEGAL STANDARDS

Moog has the burden of demonstrating this Court has personal jurisdiction over Skyryse and that venue is proper in the Western District of New York. On a motion to dismiss for lack of personal

---

[4] The fact that Skyryse has been party to stipulated orders in this Court regarding Moog's temporary restraining order, preliminary injunction, and expedited discovery motions does not undermine Skyryse's motion for dismissal or transfer. *See, e.g.*, *Shanghai Zhenglang Tech. Co. v. Mengku Tech. Co.*, 2020 WL 7481297, at *4 (E.D.N.Y. Dec. 18, 2020) (finding that challenges to personal jurisdiction and venue were not waived, even where defendants submitted record evidence and participated in motion practice to defend against the plaintiff's requests for a temporary restraining order and preliminary injunction).

jurisdiction, the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). Even if jurisdiction is authorized by New York's long-arm statute, the Court must determine whether "asserting jurisdiction under that provision would be compatible with the requirements of [federal] due process." *Best Van Lines v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). The Due Process Clause prohibits courts from exercising jurisdiction over a defendant unless (1) the defendant is "at home" in the forum State and thus subject to the State's general jurisdiction, or (2) the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum," thereby allowing the court to exercise specific jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017).

The Federal Rules of Civil Procedure also authorize a court to dismiss an action where venue in that court is improper. Fed. R. Civ. P. 12(b)(3). Once a defendant raises the issue of proper venue by motion, the plaintiff bears the burden of proof to sustain venue. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). Venue is proper only in a district where defendants reside (here, the Central District of California) or where "a substantial part of the events or omissions giving rise to the claim occurred" (here, the Central District of California). 28 U.S.C. § 1391(b).

## IV.    ARGUMENT

### A.    Moog's Complaint Should Be Dismissed for Lack of Personal Jurisdiction.

Moog's claims against Skyryse should be dismissed because exercising personal jurisdiction over Skyryse would violate due process. The Due Process Clause permits jurisdiction over Skyryse in the Western District of New York only if Skyryse is "at home" in New York and thus subject to the state's general jurisdiction, or if the suit arises out of or relates to Skyryse's "contacts with the forum," thereby allowing the Court to exercise specific jurisdiction. *Bristol-Myers*, 137 S. Ct. at 1780. Moog fails to plead facts sufficient to establish general or specific jurisdiction and therefore cannot meet its burden to show the Court has jurisdiction over Skyryse.

### 1.      Moog Cannot Establish General Jurisdiction.

Skyryse is not "at home" in New York because it is incorporated in Delaware with its principal place of business in California.  Compl. ¶ 11.  Moog does not allege any facts that would make this an "exceptional case" creating general jurisdiction outside a corporation's state of incorporation or principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014).  Thus, Skyryse is not subject to general jurisdiction in New York.

### 2.      Moog Cannot Establish Specific Jurisdiction.

Moog also fails to allege any basis for specific jurisdiction, which requires *Skyryse's* suit-related conduct—not Moog's—to create a substantial connection with New York.  Specific jurisdiction exists only where "the *defendant's suit-related* conduct . . . create[s] a substantial connection with the forum state."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added); *see also Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130 (S.D.N.Y. 2018) ("Importantly, this substantial connection must be created *by the actions of the defendant*." (emphasis in original)).  Moog fails to show any suit-related conduct by Skyryse that creates a substantial connection with New York sufficient to permit the exercise of personal jurisdiction here.

#### a)      The Alleged California-Based Conduct Does Not Support Jurisdiction.

Moog's allegations do not establish any suit-related conduct by Skyryse that creates a substantial connection with New York.  Rather, the alleged conduct Moog contends gives rise to its claims *all* occurred in California.

Moog's central allegations are that former employees Kim and Pilkington, both based out of Moog's Torrance, California office, conspired with Skyryse (Compl. ¶ 172, 220) to download confidential Moog data.  Kim allegedly "downloaded Moog data from her home" (*id.* ¶ 114), which is in Torrance, California (*id.* ¶ 13), as directed by Pilkington, who also lives in Torrance, California (*id.* ¶ 12).  The hard drive to which Kim allegedly downloaded Moog data was located in California

and returned to Moog's Torrance, California office.  *Id.*; ECF 4-23 ¶ 5.  To the extent Moog alleges Kim and Pilkington acted "in coordination with" Skyryse—a claim for which Moog has zero evidence—such coordination necessarily could have occurred only in California where Skyryse is headquartered and operates and Kim and Pilkington live and work.  Compl. ¶¶ 11, 172; ECF 48-5 ¶ 13.  Moog also alleges Skyryse hired 16 employees from Moog's Torrance, California office and "primarily targeted [] Moog's Los Angeles-area office" in its recruiting efforts.  Compl. ¶¶ 91, 105-06.  Each of those employees lives and works in California.  *See* ECF 48-5 ¶ 24.[5]  In addition, Moog alleges Skyryse "used information" gained under NDAs to "1) develop its own flight control systems and software; and 2) raid and solicit Moog's key software engineering personnel." Compl. ¶ 229.  Although untrue, these activities, had they occurred, could have occurred only in California—the only place where Skyryse has a physical presence.  ECF 48-5 ¶ 13.

Thus, Moog's allegations do not establish a substantial connection with New York because the alleged acts were all committed outside New York and did not target the state.  Conduct that takes place entirely outside the forum—as here—may support personal jurisdiction only if "the defendant expressly aimed its conduct at the forum." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013).  As the Supreme Court explained in *Walden*, examples of *forum*-targeting actions include entering into a "contractual relationship 'envision[ing] continuing and *wide-reaching* contacts'" into a forum state and broadly circulating products within a market in an effort to "'deliberately exploit'" the forum state's market as a whole.  *Walden*, 571 U.S. at 284 (emphasis added).  Here, there is no allegation, nor do the facts support an allegation, that Skyryse's agreements with Moog envisioned continuing or wide-reaching contacts into New York, or that

---

[5] The second individual identified in paragraph 91 of the Complaint was never hired by Skyryse. *See* ECF 48-5 ¶ 24 n.1.

Skyryse attempted to exploit New York's market as a whole.

Moog's allegations also fail to establish jurisdiction over Skyryse because the conduct alleged did not target anything broader than Moog itself. The Supreme Court has been crystal clear that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. It is not enough for Moog to allege Skyryse acted in California with knowledge that consequences might be felt by Moog at its headquarters in New York. "[M]ere knowledge that a plaintiff resides in a specific jurisdiction" is not enough to find that a defendant aimed its conduct at the forum; knowledge of the plaintiff's location is "insufficient to subject a defendant to specific jurisdiction in that jurisdiction if the defendant does nothing in connection with the tort in that jurisdiction." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 338 (2d Cir. 2016).

### b)   The Alleged New York Contacts Do Not Support Jurisdiction.

The handful of allegations in the complaint that touch on New York are also insufficient to establish personal jurisdiction over Skyryse. The vast bulk of New York-based activity Moog alleges has nothing to do with Skyryse and relates instead to Moog itself. For example, Moog alleges that *Moog* performed substantial services and deliverables under the 2018 and 2019 NDAs out of its New York headquarters. Compl. ¶ 67. But those allegations relating to what Moog did in New York, even if true, are irrelevant to jurisdiction. That is because only "*actions of the defendant*" can form the basis of specific jurisdiction. *Hitachi*, 331 F. Supp. 3d at 142.

Moog also points to New York choice-of-law provisions in the NDAs, but choice-of-law provisions do not alone suffice to establish personal jurisdiction. *McShan v. Omega Louis Brandt et Frere, S.A.*, 536 F.2d 516, 518 (2d Cir. 1976) (choice-of-law provision in a contract does not constitute a voluntary submission to personal jurisdiction in New York); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985) (minimum-contacts analysis goes further than looking at choice-of-law provisions alone). And there is nothing about the NDAs beyond the choice-of-law

provisions connecting Skyryse to New York.

Moog's allegations that Skyryse had "discussions and meetings" with Moog,[6] hired four employees from Moog's New York office, and recruited two others likewise fail to supply a basis for jurisdiction.  Compl. ¶¶ 59, 91, 95-99, 102.  A few discussions and recruiting efforts do not create a "*substantial connection*" between Skyryse and New York.  *Walden*, 571 U.S. at 284 (emphasis added).  To rely on these minimal contacts, Moog would have to show its alleged injury "was proximately caused by those contacts," which Moog cannot do and does not allege.  *SPV Opus Ltd. v. UBS AG*, 882 F.3d 333, 338 (2d Cir. 2018) ("Where the defendant has had only limited contacts with the state . . . he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts.").  There is no suggestion that Skyryse's meetings with New York-based Moog employees proximately caused Moog's alleged injuries, nor could Moog plausibly allege so.

*SPV Opus* is instructive.  There, the plaintiff sued several UBS entities over activities with European feeder funds that invested money with Bernie Madoff.  *Id.*  The plaintiff argued that by transferring money from Europe to New York, the UBS entities were subject to specific jurisdiction in New York.  *Id.* at 344-45.  The Second Circuit rejected this argument, concluding that the UBS entities' contacts with the forum "amount[ed] to a handful of communications and transfers of funds" whose connection with the purported harm was "too tenuous to support the exercise of specific jurisdiction." *Id.*[7]  The same reasoning applies here.

As in *SPV Opus*, Skyryse's "handful of communications" with Moog employees are not

_____

[6] The Complaint does not include an allegation about where the referenced discussions and meetings took place, but even presuming some occurred in New York does not change the analysis.

[7] Similarly, an employee's "singular act of modifying his employment records . . . [did] not provide the requisite substantial suit-related contacts to confer personal jurisdiction" where the "vast majority of the retaliatory actions" that gave rise to the suit "occurred abroad."  *Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 772 (S.D.N.Y. 2021).

sufficient to establish personal jurisdiction.  *SPV Opus*, 882 F.3d at 344-45.  Moog does not plead

facts showing Skyryse's limited New York contacts proximately caused its alleged injuries, nor

could it—Moog's injury, if any, could have been caused only by conduct alleged to have occurred

in California.  Because Moog has failed to meet its burden of pleading facts showing this Court has

personal jurisdiction over Skyryse, the claims against Skyryse should be dismissed.

### B.    Moog's Complaint Should Be Dismissed for Improper Venue.

Moog's Complaint should be dismissed because Moog cannot show venue is proper in the

Western District of New York.  Under 28 U.S.C. § 1391(b), venue is not proper unless all defendants

reside in the district or "a *substantial* part of the events or omissions giving rise to [Moog's] claim

occurred" in the district.  *Id.* (emphasis added).  Not all defendants reside in the Western District of

New York (indeed, none do), nor did a "substantial part" of the alleged events giving rise to Moog's

claims occur in this district.  Accordingly, venue is not proper and the case should be dismissed.

The Second Circuit has "caution[ed] district courts to take seriously the adjective

'substantial'" in § 1391(b)(2), explaining that "for venue to be proper, *significant* events or omissions

*material* to the plaintiff's claim must have occurred in the district in question, even if other material

events occurred elsewhere."  *Gulf Ins.*, 417 F.3d at 357.  Courts examining venue "must focus on

where the defendant's acts or omissions occurred" because the purpose of the statute is to "protect[]

a defendant from the inconvenience of having to defend an action in a trial court that is either remote

from the defendant's residence or from the place where the acts underlying the controversy

occurred."  *Blauschild v. Tudor*, 31 F. Supp. 3d 527, 532-33 (E.D.N.Y. 2014) (internal quotation

marks omitted).

Here, Moog cannot show that any significant events material to its claims occurred in this

district.  None of the Defendants' alleged conduct giving rise to Moog's claims took place here.  To

the contrary, the underlying conduct occurred in the Central District of California, where all three

Defendants reside.  *See supra* Part IV.A.2.  Defendant Kim was in the Central District of California when she allegedly accessed Moog's servers to download confidential material, and Defendant Pilkington was in that same district when he allegedly directed Kim to do so.  *Id.*  Although Moog's allegation that Skyryse was involved in coordinating these acts is without basis, the alleged coordination could have only occurred in the Central District of California, where Skyryse has its sole office.  *Id.*  To the extent Moog alleges Skyryse breached the parties' NDAs by misusing information—also baseless—the alleged misuse similarly could have only taken place in California. *See id.*  Moog's allegations about employee hiring also rest on significant acts in California, not New York.  *Id.*  Thus, all significant alleged acts allegedly committed by Skyryse (or the individual defendants) took place outside this district.

The few New York events alleged by Moog are neither significant nor material to its claims here.  At most, Moog alleges Skyryse hired four employees from Moog's New York office and recruited two others as part of its unfair competition claim.  But Moog alleges Skyryse "primarily targeted [] Moog's Los Angeles-area office" in its recruiting efforts.  Compl. ¶¶ 105-06.  Any New York communications are "tangential" at most to Moog's claims and cannot support venue.  *Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 559 (E.D.N.Y. 2011) (transferring venue from the Eastern District of New York to the District of Massachusetts because "Defendants did not commit any of the alleged acts or omissions" underlying the claims in the Eastern District of New York, and "any relevant communications were tangential" to the claims.).

Moog also cannot establish proper venue by relying on its allegation that its injuries, if any, were suffered in this district.  "If this were enough to confer venue, then the plaintiff's residence would always be a proper venue in tort cases . . . .  But this is conspicuously not what Congress has provided in § 1391(a)."  *Astor Holdings, Inc. v. Roski*, 2002 WL 72936, at *9 (S.D.N.Y. Jan. 17,

2002).  Indeed, "Congress amended § 1391 specifically to remove the plaintiff's home from the venue equation" because otherwise, "[a] plaintiff could always sue in its home district because, after all, home is where the wallet is." *Cold Spring*, 762 F. Supp. 2d at 559 (citation and quotation omitted) (holding "venue determination[] based solely on the location of the harm is contrary to Congress's intent in drafting section 1391(b) and the Second Circuit's directive that the venue analysis should focus on the relevant activities of the defendants"); *see also New Son Yeng Produce, LLC v. A & S Produce, Inc.*, 2009 WL 2568566, at *11 (E.D.N.Y. Aug. 19, 2009) (finding venue improper where "New York ha[d] almost no connection to the case, other than the fact that the plaintiff [was] located here"); *Cheeseman v. Carey*, 485 F. Supp. 203, 207 (E.D.N.Y. 1980) ("Section 1391(b) fails to authorize venue on the basis of plaintiffs' residence.").  The alleged location of Moog's purported injuries has no bearing on the venue determination, and does not justify keeping this case here.

Venue is improper here since none of the "events"—much less any of the "substantial" ones—giving rise to Moog's claims took place in New York.  Moog's Complaint should be dismissed.

**C.    Alternatively, This Matter Should Be Transferred to the Central District of California.**

In the alternative, if the Court does not dismiss Moog's claims against Skyryse for lack of personal jurisdiction or Moog's Complaint for improper venue, it should transfer the matter to the Central District of California.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Thus, section 1404(a) proposes a two-part test.  First, the transferee district must be one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent. . . . Second, the transfer must be in the interest of justice and

convenience of the parties and witnesses." *In re CenturyLink, Inc. Sec. Litig.*, 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18, 2014) (alterations omitted) (quoting *Whitehaus Collection v. Barclay Prods., Ltd.*, 2011 WL 4036097, at *1 (S.D.N.Y. Aug. 29, 2011)).  The party requesting transfer carries the "burden of making out a strong case for transfer" by "clear and convincing evidence." *N.Y. Mar. & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).  Here, transfer to the Central District of California satisfies both parts of this test by clear and convincing evidence.

### 1. Moog Could Have Filed This Action in the Central District of California.

Transfer to the Central District of California satisfies the first part of the § 1404 test because venue is proper in that district; the transferee court would have personal jurisdiction over all Defendants; and it would have subject matter jurisdiction over the action.

*Venue is Proper in the Central District of California.*  Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Here, all three Defendants are residents of California, and all three reside in the Central District therein.  Compl. ¶¶ 11-13.  Accordingly, venue is proper in the Central District of California.

*The Central District of California Has Personal Jurisdiction Over All Defendants.*  Both individual defendants are domiciled in the Central District of California (in Torrance, California) and therefore are subject to personal jurisdiction there. *Id.* ¶¶ 12-13.  Skyryse, meanwhile, is subject to general personal jurisdiction because its principal place of business is in California. *Id.* ¶ 11.  Thus, the Central District of California would have personal jurisdiction over all three Defendants.

*The Central District of California Has Subject Matter Jurisdiction.*  The Central District of California also would have subject matter jurisdiction over this action under diversity, federal question, and supplemental jurisdiction.  The Central District of California has subject matter jurisdiction under 28 U.S.C. § 1331 because the action arises, in part, under the Defend Trade Secrets

Act and under 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  *Id.* ¶ 16.  The Central District of California has supplemental jurisdiction over the state and common law claims under 28 U.S.C. § 1367.  *See id.* ¶ 17.  Accordingly, Moog could have filed this action in the Central District of California.

### 2.     The Balance of Factors Weighs in Favor of Transfer.

Transfer of this case to the Central District of California satisfies the second part of the § 1404 test because transferring the case there would promote justice and convenience.  *See, e.g.*, *Moog, Inc. v. Newport Aeronautical, Inc.*, 2016 WL 3444238, at *3 (W.D.N.Y. June 23, 2016).

To assess justice and convenience, courts evaluate the following factors:  "(1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [] (7) the relative means of the parties," (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice.  *Id.* (citing *N.Y. Mar.*, 599 F.3d at 112).  The list of factors is not exhaustive, *Pausch Med. GmbH v. Pausch LLC*, 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015), and "[t]here is no rigid formula for balancing these factors and no single one of them is determinative."  *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).  When conducting this balancing test, the Court has "broad discretion" and makes its determination based "on notions of convenience and fairness."  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

This District has previously evaluated the list of factors in the context of a trade secrets misappropriation and copyright infringement case brought by Moog against a California defendant in *Moog, Inc. v. Newport Aeronautical, Inc.*, 2016 WL 3444238.  Then, as now, Moog was a publicly traded company employing more than 10,000 people worldwide, engaged in the design of motion

control products for controlling military and commercial aircrafts, among other things.  *Id.* at *1. The defendant, Newport Aeronautical, Inc. ("Newport"), was a California corporation with its principal place of business in Newport Beach, California.  *Id.*  Its handful of employees were all located in the Central District of California.  *Id.*

Newport brought a motion seeking to dismiss the action or to transfer venue for convenience, to the Central District of California.  *Id.* at *2.  In evaluating the convenience of the witnesses for purposes of the transfer analysis, Magistrate Judge Leslie Foschio observed that Newport's witnesses "would be knowledgeable about the design, marketing and operation" of the product at issue, which were the "operative facts" in the case.  *Id.* at *5-6.  In so noting, Judge Foschio found that the locus of operative facts factor favored transfer.  *Id.*  The same reasoning applies here, where the locus of operative facts relating to Moog's trade secret misappropriation and breach of contract claims relates to how, if at all, Skyryse used any alleged Moog confidential information in the design and development of Skyryse's products.

Judge Foschio also evaluated the parties' arguments regarding trial efficiency and specifically considered the median time between the commencement of a civil action and trial in the Western District of New York (then 54.6 months), as compared to the Central District of California (then 20.2 months).  *Id.* at *7.  Judge Foschio reasoned that a median time to trial "more than twice as long as in the proposed transferee district . . . weighs heavily in favor of transfer."  *Id.*  The same is true today— as of September 30, 2019, the date of the most recently available statistics for the Western District of New York, the median time between the commencement of a civil action and trial in this district was 61.2 months; it was 22.1 months in the Central District of California.[8]

---

[8] *See* United States District Courts – National Judicial Caseload Profile, *available at* http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.

Judge Foschio concluded that the "factors weighing in favor of transfer include convenience of the witnesses, the locus of operative facts, the relative means of the parties, and trial efficiency. Factors weighing against [transfer] include Plaintiff's choice of forum, the location of relevant documents and access to sources of proof, the convenience of the parties, and this forum's familiarity with governing New York law." *Id.* Under those circumstances, Judge Foschio held that the balance of factors weighed in favor of transferring the action to the Central District of California and granted the defendant's change of venue motion. *Id.*

The balancing of factors in this case weighs even more heavily in favor of transfer to the Central District of California. In *Moog, Inc. v. Newport Aeronautical, Inc.*, convenience of witnesses, the locus of the operative facts, the relative means of the parties, and trial efficiency tipped the scales in favor of transfer. *Id.* All of those factors weigh in favor transfer here, too, but in addition the location of relevant evidence (including hard drives and other devices in California) and the availability of process to compel attendance of unwilling witnesses weigh in favor of transfer. Accordingly, the Court should transfer this case to the Central District of California if the Complaint is not dismissed.

a)   <b>California Is Home to Multiple Party and Non-Party Witnesses.</b>

The vast majority of witnesses in this case are in California, and the convenience of material witnesses is generally the most important factor in the transfer analysis. *See Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). The party moving for transfer "must provide the Court with a detailed list of probable witnesses who will be inconvenienced if required to testify in the current forum." *Kiss My Face Corp. v. Bunting*, 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395,

17

404 (S.D.N.Y. 2005).

Here, both individual defendants, likely the most critical witnesses in the case, reside in California (Compl. ¶¶ 12-13), as do every one of the former Moog employees currently working at Skyryse (ECF 48-5 ¶ 24). Skyryse is also headquartered in California, has its only physical presence there, and its key witnesses that will testify about the nature of Skyryse's technology, its business strategy, and other matters are located in California. *Id.* ¶¶ 10-17.

In support of this Motion, Skyryse has submitted a declaration from Gonzalo Rey, its Chief Technical Officer, describing the materiality of various witnesses' testimony who have information regarding the "design, development, and implementation" of the relevant technology, each of whom works out of Skyryse's headquarters in the Central District of California. *Id.* ¶ 28. Transfer would be more convenient for all of these witnesses.

That the key witnesses are all located in the Central District of California is particularly material here, where allegations about misappropriated source code and other technology are at the heart of Moog's claims. In trade secrets, copyright, and patent infringement cases, the key witnesses are those "knowledgeable about the design, marketing and operation" of the allegedly misappropriated technology. *Moog*, 2016 WL 3444238, at *6; *see also Sentegra, LLC v. ASUS Comput. Int'l*, 2016 WL 3093988, at *3 (S.D.N.Y June 1, 2016) ("[P]articular emphasis is placed on the convenience for witnesses testifying about the technology of allegedly infringing inventions.") (citing *Jet Blue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 398 (E.D.N.Y 2013)). The witnesses with expertise on the technology accused in this case are in California. ECF 48-5 ¶ 28.

The vast majority of the former Moog employees now working at Skyryse identified in the Complaint—all of whom are potential witnesses—are located in California as well. *See* Compl. ¶ 91

(listing 20 employees hired from Moog, with 16 hired from Moog's Torrance, California office); ECF 48-5 ¶¶ 24-25.  Many of Moog's crucial witnesses are located in California too.  Of the 12 individuals Moog listed as potential witnesses for a hearing on a preliminary injunction in this case, seven are based in California.  *See* ECF 4-30.  Skyryse anticipates calling additional witnesses, each of whom live and work in California—whether for Skyryse or Moog.  ECF 48-5 ¶¶ 27-28.

Because the large majority of likely witnesses are in California, including the most critical witnesses, this factor, which is given the most weight in the transfer analysis, weighs strongly in favor of transfer.

### b)   California Is Far More Convenient for Defendants and No More Inconvenient for Plaintiff.

Where, as here, transfer would increase the convenience of the moving party without materially imposing greater inconvenience on the non-movant, the circumstances weigh in favor of transfer.  "The convenience of the parties favors transfer when transfer would increase the convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014).

Here, transfer would vastly increase the convenience to all Defendants.  Skyryse is headquartered in California, and nearly all its crucial employees and witnesses are located there as well; none of Skyryse's employees live or work in the Western District of New York.  Compl. ¶ 11; ECF 48-5 ¶ 23.  Given the location of Skyryse's executives, relevant employees, and documents, Skyryse and its witnesses would incur significant time, expense, and inconvenience if required to appear in the Western District of New York. *Id.* ¶¶ 23-30.  Skyryse is a small company.  Requiring all these witnesses to spend time and money traveling cross-country to defend this lawsuit would burden the company and negatively impact its operations. *Id.* ¶ 30.  Moog, by contrast, is a large corporation with offices across the country, including in California.  It would be far more convenient

and less burdensome for Skyryse to litigate this action in the Central District of California—and the burden to Moog (if any) would be minimal.  *Id.*

Both individual defendants also reside in California (Compl. ¶¶ 12-13), and their ability to defend against Moog's serious allegations will be hamstrung if they are forced to litigate across the country given, among other things, the expense involved.

Transfer to the Central District of California, meanwhile, would not significantly increase inconvenience for Moog.  As noted above, many of its witnesses are located in California, and Moog has offices within the Central District of California (in Torrance, California) with a significant footprint—by 2019, 700 employees and over 250,000 square feet at three locations in Torrance— from which Moog can direct this litigation.  Ex. B at 1.  These facts mitigate any increased inconvenience to Moog (if any at all) by transfer to the Central District of California.

        **c)**      **Defendants' Documents and Evidence Are More Easily Accessed from California.**

Nearly all the important documentary and material evidence in this case is likely to be located in California and will be more easily accessed from California.  This includes the individual defendants' computers and hard drives from their time at Moog (ECF 4-23 ¶ 5), as well as their devices used while employed by Skyryse—all of which are located in the Central District of California.  Skyryse's documents, records, emails, and systems are stored, maintained, and accessed from Skyryse's El Segundo headquarters or its nearby flight hangars and laboratory space.  ECF 48-5 ¶ 19.  This includes design and development documents regarding the structure, function, and operation of the Skyryse's FlightOS.  *Id.*  Skyryse's operation and maintenance of this software and helicopter hardware on which it runs are also in the Central District of California.  *Id.* ¶ 20.  Indeed, the entirety of Skyryse's physical operations are located in California.  *Id.* ¶¶ 13-14.  Given that all the physical evidence in this case is in California, this factor weighs in favor of transfer.

Because Moog's accusations focus on activity allegedly undertaken in California and Moog accuses Skyryse of using Moog's confidential information to develop Skyryse's FlightOS, this case is similar to a patent infringement case in which "the bulk of the relevant evidence usually comes from the accused infringer" and "[c]onsequently, the place where the defendant's documents are kept weigh in favor of transfer to that location." *Sentegra*, 2016 WL 3093988, at *5 (quoting *Millennium, L.P. v. Hyland Software, Inc.*, 2003 WL 22928644, at *4 (S.D.N.Y. Dec. 10, 2003)). As in a patent infringement case, whether any alleged trade secrets were misappropriated will be best determined by review and analysis of Defendants' documents and physical evidence, and therefore the location of Defendant's documents and devices in California favors transfer there.

Even if Moog's server containing the alleged trade secrets is located in New York, Compl. ¶ 112, it does not change the analysis. *See Houlihan Lokey Howard & Zukin Cap., Inc. v. Protective Grp., Inc.*, 2005 WL 3367044, at *4 (S.D.N.Y. Dec. 12, 2005) (holding that the location of plaintiff's servers in New York is of "little importance"—"[t]he point of a virtual 'data room' is that it is electronic and can be accessed from anywhere"). Although Skyryse and the individual defendants' data is also remotely accessible, the relevant hardware is in California. ECF 48-5 ¶¶ 20, 22; *see also* Compl. ¶ 140 (alleging that one of Kim's laptops was not "factory tight").

### d)     The Locus of Operative Facts Is in California.

The fact that the alleged conduct giving rise to Moog's claims all occurred in the Central District of California also strongly weighs in favor of transfer there. Indeed, the "location of operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Rosen v. Ritz-Carlton Hotel Co. LLC*, 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015). Courts routinely transfer cases where, as here, the principal events occurred and witnesses are located in another district. *See Viacom Int'l, Inc. v. Melvin Simon Prods.*, 774 F. Supp. 858, 867 (S.D.N.Y. 1991).

As discussed throughout this Motion, the locus of operative facts in this case is in the Central

District of California.  Individual defendants Kim and Pilkington worked at the Torrance, California office of Moog.  They allegedly accessed Moog's trade secrets from its offices in Torrance, California, or at their homes in Torrance, California, and are alleged to have shared them with Skyryse at its offices in El Segundo, California.  There is no allegation in the Complaint that Kim or Pilkington ever came to New York or were in New York (at Moog's New York offices or otherwise) when they allegedly accessed and downloaded Moog's trade secrets.  And Skyryse largely hired engineers from Moog's Torrance, California office.  Moog's claim for misappropriation of trade secrets requires unauthorized acquisition, disclosure, or use.  18 U.S.C. §§ 1836(b)(1), 1839(3), (5); *Alexander Interactive, Inc., v. Leisure Pro Ltd.*, 2014 WL 4651942, at *4 (S.D.N.Y. Sept. 16, 2014) (elements of New York common law claim for misappropriation).  There is no allegation that *any of the Defendants* improperly acquired, disclosed, or used Moog's alleged trade secrets in New York; rather, all Moog's allegations of improper acquisition, disclosure, or use point to California.  *See supra* at pp. 7-8, 12.[9]  The operative facts here all occurred in California.  Because the locus of operative facts in this case is in California, this factor also strongly favors transfer.

### e)   Key Witnesses Cannot Be Compelled to Testify in a New York Trial.

The availability of process to compel the attendance of unwilling witnesses also strongly favors transfer.  In the event of a trial in the Western District of New York, critical witnesses are outside the Court's subpoena power because they are not within 100 miles of the courthouse, nor do

---

[9] The *only* New York allegation Plaintiffs offer in support of their misappropriation claim is that the allegedly misappropriated trade secrets resided on Moog's servers located in New York.  Compl. ¶ 112.  The alleged location of the data cannot overcome the alleged location of its access on a venue challenge.  *Ikon Office Solutions, Inc. v. Rezente*, 2010 WL 395955, at *3 (E.D. Pa. Feb. 3, 2010) (rejecting argument that venue was proper in Pennsylvania:  even "[a]ssuming the data that defendants accessed was stored on computers located in Pennsylvania, the defendants allegedly accessed the data from computers in California," such that "defendants allegedly gained access to and misappropriated plaintiff's confidential information and trade secrets through their computers in California").

they live in or regularly do business in the state.  Under Rule 45(c), a subpoena may only compel attendance at a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person; or . . . within the state where the person resides, is employed or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A)-(B)(ii).  "This factor is closely aligned with the first—witness convenience.  It reflects the dislocations and inequities that can arise when a court is unable to compel witnesses to testify."  *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 746 (S.D.N.Y. 2013) (citing *Romano v. Banc of Am. Ins. Servs.*, 528 F. Supp. 2d 127, 133 (E.D.N.Y.  2007)).

As explained above, Skyryse may rely on non-party witnesses who are expected to testify about the nature of Skyryse's technology, its business strategy, and other matters—who live and work in the Central District of California.  *See supra* Part IV.C.2.a; ECF 48-5 ¶¶ 28-29.  Moog may seek to rely on some of these non-party witnesses too.  And some of these witnesses may not be willing to testify voluntarily.  *Id.* ¶ 29.  Because the key witnesses overwhelmingly reside in California and only a few in New York, it is more likely that this Court will be unable to compel attendance of key witnesses at trial.  Accordingly, this factor weighs in favor of transfer.

### f)      The Relative Means of the Parties Favors Transfer.

The extreme disparity in size and resources between Moog and Skyryse also strongly favors transfer to the Central District of California.  "Where a disparity exists between the means of the parties, the court may consider the relative means of the parties in determining where a case should proceed."  *1800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994).  The relative means of the parties favors transfer to California.

Moog is a significantly larger entity than Skyryse—*more than 180 times the size of Skyryse*—and its billions of dollars in annual revenues dwarf Skyryse's limited funds.  Indeed, Moog is a "self-described world-wide corporation, operating facilities on multiple continents, with more than

10,000 employees, including many in California, and reported revenues for fiscal year 2013 of $ 2.6 billion." *Moog*, 2016 WL 3444238, at *6 (transferring case Moog filed in W.D.N.Y. to C.D. Cal. in part because "this factor tips in favor of transferring venue").  Defending this litigation in New York would be burdensome on Skyryse, a *nascent* start-up with relatively few employees and limited funding.  Accordingly, this factor favors transfer to Defendants' home forum of the Central District of California.  *See Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 177 (E.D.N.Y. 2003) (finding economic disparity between plaintiff and defendant weighed in favor of transferring venue to defendant's residence); *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) (finding the disparity in economic resources between plaintiff and defendant companies favored maintaining the action in the venue less costly to the smaller company).

g)      **Both Forums Have Familiarity with the Governing Law, Rendering this Factor Neutral.**

Both this Court and the Central District of California are familiar with and capable of resolving Moog's claims, and thus this factor is neutral.  "This factor is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Everlast World's Boxing Headquarters*, 928 F. Supp. 2d at 747.

h)      **Plaintiff's Choice of Forum Is of Diminished Importance.**

Moog's choice of forum should be accorded little weight because the allegations giving rise to this action have no significant connection to the Western District of New York.  Although a plaintiff's choice of forum is normally entitled to some deference, "where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance." *Hernandez v. Graebel Van Lines, Inc.*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991).  Here, as discussed throughout this Motion, there is no *material* or *significant* connection between Moog's

allegations and this district.  Although Moog's trade secret materials were allegedly stored on servers in this district, the alleged conduct at the heart of this case took place in California.  Accordingly, Moog's selection of the Western District of New York is entitled to little weight, such that the overall balance still weighs heavily in favor of transfer.

### i)    Trial Efficiency and Interests of Justice Warrant Transfer.

Although Skyryse has confidence in the efficiency of both the Western District of New York and the Central District of California, median time to trial in this district (as noted above) is almost three times that of the Central District of California.  In addition, the interests of justice favor transfer to California because California has a vested interest in regulating alleged tortious conduct that occurred within its borders.  Moreover, all of the former Moog employees named in the Complaint live and work in California, employees for whom California has a strong interest in protecting freedom of travel.  Although New York has some interest in protecting the alleged trade secrets that were on servers in New York, California's interest is greater and therefore favors transfer.

Skyryse has met its burden of demonstrating by clear and convincing evidence that transfer to the Central District of California is warranted.  Transfer to the Central District of California— where all defendants reside and the operative facts all took place—would increase convenience to Defendants and a number of key party and non-party witnesses without materially inconveniencing Moog, which has substantial resources and a significant presence in the proposed transferee district.

### V.    CONCLUSION

For the foregoing reasons, Skyryse respectfully requests that Moog's Complaint be dismissed or, in the alternative, the Court transfer this action to the United States District Court for the Central District of California.

Dated: May 20, 2022

/s/ Gabriel S. Gross
**LATHAM & WATKINS LLP**

Douglas E. Lumish (Admitted *Pro Hac Vice*)
Gabriel S. Gross
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
       gabe.gross@lw.com

Joseph H. Lee (Admitted *Pro Hac Vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com

Kelley M. Storey (*Admitted Pro Hac Vice*)
555 Eleventh Street NW
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: kelley.storey@lw.com


**HARRIS BEACH PLLC**
Terrance P. Flynn
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Telephone: (716) 200-5050
Email: tflynn@harrisbeach.com

*Counsel for Defendant Skyryse, Inc.*