UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOOG INC.,

Plaintiff,

v.

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and DOES NOS.
1-50,

Defendants.

_____

Case No.: No. 22-cv-00187

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION TO COMPEL DISCLOSURES</u>

**SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP**
*Attorneys for Moog Inc.*
Rena Andoh
Travis J. Anderson (*pro hac vice*)
Tyler E. Baker (*pro hac vice*)
Kazim A. Naqvi (*pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
212.653.8700

**HODGSON RUSS LLP**
*Attorneys for Moog Inc.*
Robert J. Fluskey, Jr.
Melissa N. Subjeck
Reetuparna Dutta
Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

**<u>TABLE OF CONTENTS</u>**

Page

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................3

        A.      The March 11 Order and Turnover of Devices and Data to Neutral Vendor iDS on April 1 ................................................................................3

        B.      Skyryse's Disclosures Regarding Possession of Non-Public Moog Data and Spoliation of Evidence ........................................................................4

        C.      Skyryse Refuses to Answer Moog's Questions For Additional Information .........6

        D.      Skyryse's Turnover of Additional Devices and Data to iDS After April 1 .............9

        E.      Skyryse's Failure to Provide Any Timeline to Comply with its Obligations Under the March 11 Order ........................................................10

        F.      Skyryse's Failure to Provide Any Timeline to Comply with its Discovery and Disclosure Obligations .......................................................10

III.    LEGAL STANDARD ........................................................................................11

IV.     SKYRYSE'S SEVERAL VIOLATIONS OF THE MARCH 11 ORDER .......12

        A.      Failure to Turn Over Moog Non-Public Information By April 1 ...........12

        B.      Failure to Preserve Relevant Devices and Data ....................................12

        C.      Improperly Turning Over Segregated Moog Files to iDS Instead of Moog ..........15

V.      A FORMAL DISCLOSURE PROCESS IS REQUIRED ................................15

VI.     SKYRYSE MUST COMPLETE ITS TURNOVER OF MOOG NON-PUBLIC INFORMATION BY A DATE CERTAIN ........................................16

VII.    SKYRYSE MUST SUPPLEMENT ITS DISCOVERY RESPONSES ...........17

VIII.   REQUESTED RELIEF ......................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Alter v. Rocky Point Sch. Dist.*
No. 13-1100 (JS) (AKT), 2014 WL 4966119 (E.D.N.Y. Sept. 30, 2014) ............................ 13

*Bank of Mongolia v. M&P Global Financial Services, Inc.*
2009 WL 10682131 (S.D. Fla. Dec. 22, 2009) ........................................................... 14

*Chevron Corp. v. Salazar*
275 F.R.D. 437 (S.D.N.Y. 2011) .............................................................................. 13

*EM Ltd. v. Republic of Argentina*
695 F.3d 201 (2d Cir. 2012) .................................................................................... 11

*Grand Cent. P'ship, Inc. v. Cuomo*
166 F.3d 473 (2d Cir. 1999) .................................................................................... 12

*Halabu Holdings, LLC v. Old Nat'l Bancorp*
No. 20-10427, 2020 WL 12676263 (E.D. Mich. June 9, 2020) .............................. 13

*ID Ventures, LLC v. Chubb Custom Ins. Co.*
2018 WL 8807125 (E.D. Mich. Oct. 12, 2018) ...................................................... 14

*Mirra v. Jordan*
No. 13-CV-5519 (AT) (KNF), 2016 WL 889683 (S.D.N.Y. Feb. 23, 2016) .......................... 11

*Scott-Iverson v. Indep. Health Ass'n, Inc.*
No. 13-CV-451A(F), 2016 WL 787961 (W.D.N.Y. Mar. 1, 2016) ........................................ 12

*Shim-Larkin v. City of New York*
No. 16CV6099AJNKNF, 2019 WL 5198792 (S.D.N.Y. Sept. 16, 2019) ........................ 13, 14

*Matter of Skanska USA Civ. Se. Inc.*
No. 3:20-CV-05980-LC/HTC, 2021 WL 4953239 (N.D. Fla. Aug. 5, 2021) ........................ 14

*The Bank of New York v. Meridien Biao Bank Tanzania Ltd.*
171 F.R.D. 135 (S.D.N.Y. 1997) .............................................................................. 13

*Union Home Mortg. Corp. v. Jenkins*
2021 WL 1110440 (N.D. Ohio Mar. 23, 2021) ...................................................... 14

## **Other Authorities**

Federal Rules of Civil Procedure Rule 34 .................................................................. 13

## I.    <u>INTRODUCTION</u>

On March 11, 2022, Skyryse stipulated to a TRO that required it to return by April 1 "all non-public information" belonging to Moog. (ECF 25) (the "March 11 Order"). On April 1, 2022, Skyryse sent a letter to Skyryse in which it purported to certify compliance with the March 11 Order – in fact, the first heading in the letter was "Skyryse's Compliance with the March 11 Order." Skyryse then continued to take the position that it was in full compliance with its obligations under the March 11 Order in meet and confers, letters, and submissions to the Court.

Then, during an April 26 emergency conference, Skyryse's counsel disclosed to the Court that: 1) it has found a ██████ amount of Moog non-public information at Skyryse; 2) Skyryse employees have performed an █████████████ ; and 3) more than 15 Skyryse employees have recently been terminated or placed on administrative leave. (4/26/22 Transcript (ECF 95) at 15:4, 18:12-13, 19:4-5, 20:5-21:2). It has been more than six weeks since Skyryse's disclosures, and ***Skyryse has refused to provide any further information***. Moog still does not know any critical details, including which Skyryse employees were found to have possessed Moog data (and the devices involved), which Skyryse employees deleted data (and the devices involved or the nature and scope of the spoliation), and which Skyryse employees were placed on administrative leave. Skyryse has repeatedly relied on a purported "ongoing investigation" to delay its disclosure obligations. Simultaneously, Skyryse has refused to provide information it indisputably has. Moog cannot meaningfully proceed with discovery (and a potential motion for sanctions) until Skyryse's disclosure obligations are complete. Court intervention is required to implement a formal written disclosure process.

The need for timely and final disclosures is compounded by Skyryse's admitted ongoing violations of the March 11 Order, which required Skyryse to: 1) by April 1, turn over all Moog non-public information back to Moog, or to the neutral forensics firm iDiscovery Solutions

("iDS") if the information "necessarily contain[s]" Skyryse information; and 2) preserve all evidence on Skyryse networks and electronic devices. There can be no dispute that these orders have been violated, because Skyryse has turned over additional electronic devices and hundreds of files to iDS on or after April 29 (more than four weeks late), and still has not certified that it has completed its turnover of non-public Moog information.  It is evident that Skyryse has still not turned over all Moog non-public information its possession. Skyryse has also admittedly failed to preserve evidence on its networks and electronic devices and instead has committed an ████ ████████████  And, Skyryse has sent to iDS over 11,500 files because they "may" contain, instead of "necessarily contai[n]," Skyryse information, depriving Moog of immediate access to those materials.  Skyryse has also wholesale refused to preserve its employees' personal devices that are used for work purposes, and which likely contain relevant information. All of these violations are part and parcel of Skyryse's efforts to delay discovery and prevent Moog from obtaining critical evidence solely under Defendants' control.

Finally, it is unfortunate that Moog also needs assistance from the Court to compel Skyryse to correct prior discovery responses (in light of its disclosures of spoliation and use) by a certain date. Skyryse has promised several times to providing supplemental responses, and even promised them by a date certain, May 26. Skyryse has broken its promise and still has not served any supplemental responses.  Nor will Skyryse commit to a (new) date certain for supplementing these responses.  This silence is especially concerning because the Skyryse employee who verified Skyryse's original interrogatory responses, Gonzalo Rey, is one of the at least 15 employees who were suspended by Skyryse for conduct related to its disclosures of spoliation and use to the Court.

Understanding that these issues are complex, Moog has been patient and tried for over two months to resolve these issues without burdening the Court. But, Skyryse has refused to provide

further information, and has essentially created an open-ended process whereby it controls when and how Moog obtains information that it is entitled to. Immediate relief is needed so expedited discovery can proceed and Moog can obtain the injunctive relief it requires.

Moog respectfully requests that the Court order Skyryse to, on or before June 20: 1) complete its written disclosure obligations under verification, including identification and turnover of all data and devices that have been involved in the deletion of potentially relevant data; 2) produce to Moog or iDS (if the information necessarily contains Skyryse information) all non-public Moog information in its possession, custody or control; 3) send directly to Moog the 11,093 segregated files sent to iDS on April 1 and the 568 segregated files sent to iDS on April 29; 4) serve verified supplemental responses to Moog's Interrogatories Nos. 2-10 and RFAs Nos. 1-3; and 5) provide a verification under oath certifying compliance with the March 11 Order.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The March 11 Order and Turnover of Devices and Data to Neutral Vendor iDS on April 1

On March 11, 2022, Defendants stipulated to a temporary restraining order, rather than oppose Moog's motion for same, and the stipulation was entered as a Court order.  (ECF 25).  That stipulation provides as follows:

- Defendants must "refrain from using, accessing, disclosing, copying, or transmitting" any Moog non-public information (ECF 25, § 1);

- By April 1, 2022, each Defendant must deliver to Moog all Moog non-public information in each Defendant's possession, custody or control or, if such information has been integrated or used by any Defendant in such a manner that such delivery "necessarily includes property of any Defendant," then "such information shall be given to a third-party

forensics firm . . . for forensic imaging in lieu of providing such information directly to Plaintiff" (*Id.*, § 2);

- Skyryse "shall preserve and not otherwise tamper with or modify" its email, network drives, desktop computers, laptops, or other electronic devices (*Id.*, § 5); and

- "Each party shall preserve all evidence in that party's possession, custody, or control relevant to any party's claim or defense in this action, including electronically stored information" (*Id.*, § 9);

On April 1, 2022, Kim and Pilkington turned over a total of 23 electronic devices to the neutral forensics firm, and Skyryse turned over Kim's Skyryse-issued laptop device, along with a hard drive containing 11,093 files pulled from Pilkington's Skyryse-issued laptop. (Andoh Dec., Exs. A, B).  In an April 1, 2022 cover letter, Skyryse indicated that these 11,093 files were located by searching Pilkington's Skyryse-issued laptop using the file names of the 136,994 Moog files copied by defendant Misook Kim and the 62,408 approximate hash values corresponding to those Moog files that were recoverable. (*Id.*, Ex. B). While Skyryse complained that certain of the file names were "generic" and resulted in files that allegedly contain public information, at no point has Skyryse taken the position that any of the 11,093 Pilkington files necessarily include Skyryse property, which could be the only basis to turn them over to iDS instead of Moog.  (*Id.*). Skyryse also stated unequivocally that it had complied with the March 11 Order in full.  (*Id.*).

**B.**   **Skyryse's Disclosures Regarding Possession of Non-Public Moog Data and Spoliation of Evidence**

Moog has raised concerns over Skyryse's compliance with the March 11 Order with this Court since early April. During an April 8, 2022 Conference scheduled at Moog's request regarding issues related to the March 11 Order, Skyryse represented to the Court: "we're happy to

be transparent about what we're doing because we feel that strongly that we don't want the [Moog] material . . . " (ECF 71 at 14:4-8). Skyryse's conduct and correspondence with Moog has shown, unfortunately, that it has been anything but transparent in this case.

On April 25 and 26, Skyryse made several disclosures to Moog and the Court regarding Skyryse's possession of Moog data, deletion of data by Moog employees, and Skyryse placing 15 employees on administrative leave. In an April 26, 2022 Conference with the Court, Skyryse's counsel disclosed the following regarding Skyryse's possession of Moog data:

Regarding deletion of data, Skyryse's counsel disclosed the following:



**C.      Skyryse Refuses to Answer Moog's Questions For Additional Information**

At Skyryse's invitation, on April 27, 2022, Moog sent a letter to Skyryse with a list of questions regarding Skyryse's disclosures specifically targeted to pieces of information that Skyryse already had in its possession, custody or control. (Andoh Dec., Ex. C at pp. 3-6).  Moog also requested that Skyryse provide a date certain when it would correct its prior discovery responses. (*Id*. at p. 6).

On May 4 at 1:29 a.m., Skyryse served a response letter that provided limited information in response to Moog's questions. (Andoh Dec., Ex. D).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ Skyryse also committed to supplementing its responses to Moog's Interrogatories Nos. 2-10 and RFAs Nos. 1-3. (*Id*.). However, Skyryse failed to indicate when its investigation and disclosures would be complete, corrected discovery responses would be served, and any additional imaged devices would be turned over to iDS. Skyryse also did not answer fully or at all each of the following questions in Moog's April 27 letter:

- Which specific Skyryse electronic devices (individuals' devices and servers) have had search term hits to date?  Please specifically identify them (including by USB serial number if available).

    - Who are the Skyryse employees that had search term hits on their electronic devices?

        - Of these employees, which ones worked on Pilkington's and Kim's team?

    - What are the search terms that hit on each device?

    - How many hits for each search term on each device?

- Has Skyryse determined if any of the hits using search criteria provided by Moog constitute complete or partial portions of Moog source code? If so, what are the file names, hash values, and/or other identifiers for such data?

- Gibson Dunn stated during the conference with Judge McCarthy that the discovered Moog data "primarily relates" to Pilkington and Kim and the projects they worked on.  Please identify with specificity any discovered data or materials that were located on Skyryse's

systems that does not relate to Pilkington and Kim, and the Skyryse employee(s) whose devices the data and/or materials were discovered on.

- Which specific Skyryse electronic devices (individuals' devices and servers) that contain evidence of data or materials being deleted after the filing of this lawsuit? Please specifically identify each of them.

- Which Skyryse employees' work-issued laptops contain evidence of data or materials being deleted after the filing of this lawsuit?

- Which of these Skyryse employees worked on Pilkington's and Kim's team?

- When did the confirmed deletions of data or materials by Skyryse employees occur? For each Skyryse employee involved, please identify all dates when data and/or materials were deleted.

  o Please identify any specific items (files, documents, data, etc.) that Gibson Dunn has confirmed were deleted, which device such items were deleted from, the size/volume of the deletion, and the date on which such items were deleted.

  o If Gibson Dunn has confirmed that any source code files (partial or complete) were deleted, please identify which of the deleted items described above contained source code.

- Which Skyryse employees have been placed on administrative leave in connection with this case?

  o Which employees were placed on administrative leave due to search term hits on electronic devices?

  o Which employees were placed on administrative leave due to data deletion?

- o Which employees were placed on leave due to both search term hits and data deletion?

- o If any employee was placed on administrative leave for any other reason in connection with this litigation, please identify the employee and the reason for placing that employee on leave.

- For the Skyryse employees placed on administrative leave in connection with this case, have all of their electronic devices that were used by them in the course of their employment by Skyryse been isolated and imaged?

In response to Moog's inquiry about smartphones, Skyryse stated it ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████ (*Id*., pp. 1,

8).  Skyryse has later confirmed its position that "does not have possession, custody, or control over employees' personal devices that Skyryse did not issue," even if used for work purposes. (*Id*., Ex. I, p. 2).

Notably, ***Moog has not received any additional information*** from Skyryse regarding possession of Moog data or spoliation of Moog data since Skyryse's May 4 letter.

### D.     Skyryse's Turnover of Additional Devices and Data to iDS After April 1

On April 29, Skyryse turned over to iDS Pilkington's two Skyryse-issued laptops and a thumb drive containing 568 additional files. (Andoh Dec., Ex. E). The apparent justification for turning these separately segregated files to iDS instead of Moog is that they "may also contain or reflect Skyryse information." (*Id*.). Skyryse also made a document production directly to Moog of data that "ostensibly or potentially contains Moog non-public information," including 10 Moog

source code files. (*Id.*). On May 5, Skyryse turned over additional files to iDS. (Andoh Dec., Ex. F).   All these materials were required to be turned over to iDS by April 1.

### E.   Skyryse's Failure to Provide Any Timeline to Comply with its Obligations Under the March 11 Order

It is now more than 2 months after the April 1 turnover deadline pursuant to the March 11 Order, and Skyryse still cannot make any commitment regarding when it will complete its turnover of Moog non-public information. In its filing on May 27, Skyryse claims it has no objection to:

> "turning over to iDS **on a rolling basis** information that **Moog might allege contains its own non-public information and also Skyryse's non-public information**, and (2) producing directly to Moog **on a rolling basis** information that **Moog may contend is its own non-public information**, that Skyryse has located upon a reasonable and diligent search." (ECF 128 at p. 11) (emphasis added).

This representation is problematic because Skyryse claims it will turn over Moog's non-public information on a rolling basis, even though all such information was required to be turned over by April 1. Further, Skyryse is conflating the language and standard from the March 11 Order—Skyryse is required to turn over Moog non-public information, without ambiguity, and can only send information to iDS information that "necessarily contains" Skyryse information. To that end, since May 2 Moog has asked Skyryse on multiple occasions to immediately turn over the over 11,500 segregated files which contain Moog non-public information which were previously and improperly sent to iDS, and Skyryse has refused. (Andoh Dec., Exs. G, H).

### F.   Skyryse's Failure to Provide Any Timeline to Comply with its Discovery and Disclosure Obligations

As noted above, Skyryse has not provided any further information regarding the "alarming series of deletions" since April 26. In its May 27 filing, Skyryse represented the following:

> "Skyryse understands that Moog requires more information about any data relevant to this lawsuit that may have been deleted—and Skyryse will provide it. But

Moog's request is overly broad and premature, especially while Skyryse's investigation into the matter still is ongoing, and it has not yet had the opportunity to update the Court and Moog on what it has learned about this issue since first disclosing it to the Court, as it will." (ECF 128 at p. 12).

These are simply vague and empty promises without any timeframe.

Moog has also asked Skyryse several times when it would provide supplemental discovery responses as promised during the April 26 Conference and Skyryse's May 4 letter. The Parties met and conferred on May 13, wherein Skyryse committed to providing supplemental responses to Interrogatories Nos. 2-10[1] and RFAs Nos. 1-3[2] by May 26. Skyryse confirmed as much in a follow up May 16 e-mail. (Andoh Dec., Ex. J). Yet, on May 25, Skyryse stated it will not be providing supplemental responses by the promised May 26 date, and indicated they would be served the following week. (*Id*.). Moog waited patiently, only for Skyryse to again advise on June 3 that it would not provide any supplemental responses as promised.  (*Id*.). As of the filing of this Motion, Moog still has not received any supplemental responses.

## III.   <u>LEGAL STANDARD</u>

"A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). As such, "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519

---

[1] These interrogatories are critical to the case and Skyryse's previously verified answers are admittedly false. For example, in response to Interrogatory No. 3 (which asked Skyryse to identify locations of Moog confidential information on Skyryse systems), Skyryse stated under oath that it "has not identified locations of Moog Confidential Information on its network drives." As another example, in response to Interrogatory No. 4 (which asks Skyryse to identify its employees who maintained or possessed Moog non-public information upon beginning employment at Skyryse), Skyryse responded that "[n]o Skyryse employees have been identified who maintain or possess Moog Confidential Information."

[2] The most striking example is RFA No. 1, which asked Skyryse to admit that "Moog Confidential Information has been Used by Skyryse." In response, Skyryse neither admitted nor denied, and claimed it is "not yet in a position to admit or deny."

(AT) (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) (citing *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999)). "Courts have broad discretion to oversee the pretrial discovery process in federal civil cases and remediate actions which interfere or undermine the benefits of the discovery process." *Scott-Iverson v. Indep. Health Ass'n, Inc.*, No. 13-CV-451A(F), 2016 WL 787961, at *2 (W.D.N.Y. Mar. 1, 2016).

## IV.    SKYRYSE'S SEVERAL VIOLATIONS OF THE MARCH 11 ORDER

### A.    Failure to Turn Over Moog Non-Public Information By April 1

There can be no dispute that Skyryse has violated the March 11 Order several times. First, the March 11 Order required turnover all Moog non-public information by April 1. (ECF 25, § 2). That indisputably has not occurred, as Skyryse has turned over to iDS two additional laptops and over 500 files containing Moog non-public information on April 29 and May 5. (Andoh Dec., Exs. E, F). These materials were required to be turned over under Court order by April 1. And, Skyryse has imaged 37 additional devices involved in the possession of Moog data and/or the spoliation of data, yet none of these devices have been provided to iDS yet.  It is now June, and Skyryse has not and cannot represent that it has completed its turn over of Moog non-public information.  As a result, Skyryse's violation is continuing and has not been remedied.

### B.    Failure to Preserve Relevant Devices and Data

The March 11 Order required Skyryse to preserve its networks and electronic devices. (ECF 25, §§ 5, 9). Skyryse has admitted that has not occurred, and that an ███████████ ███████ has occurred by multiple employees. While Skyryse has prevented Moog from knowing the manner or extent of this spoliation, these disclosures on their face show violations of Skyryse's preservation requirements.

Skyryse has also evidently failed to preserve, collect, and search personal devices of its employees, even if they are used for work purposes. (Andoh Dec., Ex. I, p. 2). Skyryse has

admitted that it does not issue smartphones, so its employees almost certainly use personal phones for some work purposes (i.e., sending and receiving Skyryse e-mails).

"Rule 34 of the Federal Rules of Civil Procedure requires a party to produce documents and other tangible objects that are within the party's 'possession, custody, or control.' " *Shim-Larkin v. City of New York*, No. 16CV6099AJNKNF, 2019 WL 5198792, at \*9 (S.D.N.Y. Sept. 16, 2019).  Control, as that word is used in Rule 34, "does not require that the party have legal ownership or actual physical possession of the documents [and other tangible objects] at issue; rather, documents [and other tangible objects] are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents [and other tangible objects] from a non-party to the action." *The Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997). "Courts have repeatedly found that employers have control over their employees and can be required to produce documents [and other tangible objects] in their employees' possession." *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448 (S.D.N.Y. 2011).  Thus, Skyryse's claim that its employees' personal devices are not within its possession, custody or control is contrary to law.

Further, an employer has an obligation to preserve litigation-related information on employees' personal devices, without any showing of additional circumstances to establish control. *See, e.g., Alter v. Rocky Point Sch. Dist.*, No. 13-1100 (JS) (AKT), 2014 WL 4966119, at \*10 (E.D.N.Y. Sept. 30, 2014). Even so, the preservation of potentially relevant documents is a different context and does not implicate employee privacy and property interests like the compelled disclosure of information does.  *See Halabu Holdings, LLC v. Old Nat'l Bancorp*, No. 20-10427, 2020 WL 12676263, at \*2 (E.D. Mich. June 9, 2020).

Where, as here, even if the employer did not issue the employee the device, it can still be subject to discovery that the employer would be obligated to produce. *See Matter of Skanska USA Civ. Se. Inc.*, No. 3:20-CV-05980-LC/HTC, 2021 WL 4953239, at *4 (N.D. Fla. Aug. 5, 2021). At bare minimum, Skyryse was required to ask its employees to search for responsive data on their personal devices, something which Skyryse has not indicated it has done. *See ID Ventures, LLC v. Chubb Custom Ins. Co.*, 2018 WL 8807125, at * 2 (E.D. Mich. Oct. 12, 2018) (requiring plaintiff to ask relevant employees to search their personal email accounts for responsive documents and to provide defendant with an affidavit from each employee attesting that a search was made and all relevant documents were provided to plaintiff's counsel); *Union Home Mortg. Corp. v. Jenkins*, 2021 WL 1110440, at *9–10 (N.D. Ohio Mar. 23, 2021) (directing employer to ask current employees to search for and provide for production of all relevant emails and text messages in their personal email and cell phone accounts that are responsive and, if no documents exist, to certify as much in writing); *Bank of Mongolia v. M&P Global Financial Services, Inc.*, 2009 WL 10682131, at *7 (S.D. Fla. Dec. 22, 2009) (directing defendants to "make all reasonable efforts to obtain responsive documents" from any officer or individual employed by defendants from personal computers).

Beyond the admitted "alarming series of deletions," Skyryse has violated the March 11 Order by not preserving relevant devices under its possession, custody or control. *Shim-Larkin v. City of New York*, No. 16CV6099AJNKNF, 2019 WL 5198792, at *10 (S.D.N.Y. Sept. 16, 2019) (because the defendant's employee used his "personal cellular phone without objection from the defendant," the employer had control over the contents of Kravitz's text messages pertaining to his work-related activities, and had an obligation to take affirmative steps to preserve evidence of those DPR work-related text messages).

### C.      Improperly Turning Over Segregated Moog Files to iDS Instead of Moog

Finally, the March 11 Order is unambiguous that devices and data can only be turned over to iDS if they "necessarily contai[n]" Skyryse information. (ECF 25, § 2). Skyryse has not and cannot represent that the 11,093 Pilkington files (turned over to iDS on April 1) and the 568 additional files (turned over on April 29) "necessarily contai[n]" Skyryse information. All Skyryse has represented is that the 568 additional files "may" contain Skyryse property. That is not the standard under the March 11 Order. This is yet another example of Skyryse using iDS as a vehicle to delay Moog's access to the evidence it needs to prosecute its case.

These ongoing violations of the March 11 Order, combined with Skyryse's refusal to make good on its promise of transparency and provide any specific information regarding its possession of Moog data and spoliation of data, heighten the need for a Court-ordered disclosure process and immediate remediation by Skyryse.

## V.      A FORMAL DISCLOSURE PROCESS IS REQUIRED

Skyryse's refusal to provide information responsive to the vast majority of Moog's questions is striking. Skyryse has located ██████████ volumes of Moog data on its systems and an ███████████████████ by its employees, and yet is obfuscating all details under a never-ending "ongoing investigation." There is no additional investigation required for Skyryse to, for example, identify which of its employees have been placed on administrative leave, or which employees' devices were found to have spoliated data. It has been more than six weeks since Skyryse's disclosures began, and Moog still does not know what has been spoliated, what Moog files have been located at Skyryse, and which employees have been placed on administrative leave. Skyryse has also provided no indication if or when the electronic devices involved in the potential spoliation will be turned over to iDS for Moog's inspection.

Given the gravity of Skyryse's disclosures, their direct impact on the merits of this case, and Moog's need for injunctive relief, Skyryse cannot be rewarded for its conduct by further and open-ended delay. With an August 25 expedited discovery cut-off date, Moog requires immediate access to this information so that it can complete discovery and depositions in the few weeks remaining.

Moog respectfully requests that the Court require Skyryse to complete its disclosure process, including answering under oath all of Moog's unanswered questions in its April 27 letter, and turnover to iDS of all electronic devices involved in the deletion of data, by June 20, 2022.

## VI.   SKYRYSE MUST COMPLETE ITS TURNOVER OF MOOG NON-PUBLIC INFORMATION BY A DATE CERTAIN

Skyryse agreed as part of the March 11 Stipulated Order that it would turn over all Moog non-public information by April 1. It is now June and that process still has not completed. Skyryse's claim that it will turn over such information "on a rolling basis" will inevitably lead to further delay and yet another change to the preliminary injunction briefing and hearing schedule. It is neither fair nor appropriate for Skyryse to take control of this entire process and provide Moog's own non-public information to Moog whenever it wants. Moog respectfully requests a Court order requiring Skyryse to complete its turnover obligations of Moog's non-public information by June 20, 2022. As part of this relief, Skyryse should be ordered to produce directly to Moog the over 11,500 segregated files that were improperly sent to iDS instead of Moog because Skyryse cannot certify that each and every one of those files "necessarily contains" Skyryse information.

## VII.   <u>SKYRYSE MUST SUPPLEMENT ITS DISCOVERY RESPONSES</u>

On May 4, Skyryse committed to supplementing its responses to Moog's Interrogatories Nos. 2-10 and RFAs Nos. 1-3. (Andoh Dec., Ex.. D). Skyryse blew off its own May 26 supplementation date, and then blew off its next promise to provide the responses the following week. (*Id.*, Ex. J). It is unfortunate that a Court order is required to get Skyryse to honor its own commitments. Given the upcoming pending deadlines, Moog respectfully requests that Skyryse be ordered to serve its verified supplemental responses by June 20, 2022.[3]

## VIII.   <u>REQUESTED RELIEF</u>

Moog respectfully requests that the Court issue an order requiring Skyryse to, on or before June 20, 2022:

1.      Answer in full, via written filing and verified under oath by a Skyryse representative, all of Moog's unanswered questions in its April 27, 2022 letter;

2.      Complete its disclosure obligations, including identification and turnover of all data and devices that have been involved in the deletion of potentially relevant data;

3.      Produce to Moog or iDS (if the information necessarily contains Skyryse information) all non-public Moog information in its possession, custody or control;

4.      Send directly to Moog the 11,093 segregated files sent to iDS on April 1 and the 568 segregated files sent to iDS on April 29;

_____

[3] Given that the Parties have already agreed to a June 16, 2022 deadline to submit written discovery disputes to the Court (ECF 137), Moog respectfully requests that it be provided until June 27, 2022 to move to compel regarding Skyryse's supplemental responses to Interrogatories Nos. 2-10 and RFAs Nos. 1-3.

5.      Provide verified supplemental responses to Moog's Interrogatories Nos. 2-10 and

RFAs Nos. 1-3 (and that Moog be provided until June 27, 2022 to move to compel

on these supplemental responses, if needed); and

6.      Provide a verification under oath by a Skyryse-representative that Skyryse has

complied in full with the March 11 Order.

Dated:  New York, New York
         June 8, 2022

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Plaintiff Moog Inc.*

By:    s/Rena Andoh
      Rena Andoh
      Travis J. Anderson (admitted *pro hac vice*)
      Tyler E. Baker (admitted *pro hac vice*)
      Kazim A. Naqvi (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700

and

**HODGSON RUSS LLP**

By:    s/Robert J. Fluskey, Jr.
      Robert J. Fluskey, Jr.
      Melissa N. Subjeck
      Reetuparna Dutta
      Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000