UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOOG, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>SKYRYSE, INC., ROBERT ALIN<br>PILKINGTON, MISOOK KIM, and DOES NOS.<br>1-50.<br><br>                    Defendants. | Case No. 1:22-cv-00187-LJV-JJM |

**DEFENDANT SKYRYSE, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCLOSURES**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     SKYRYSE HAS SUBSTANTIALLY COMPLIED WITH THE MARCH 11
        STIPULATED ORDER...........................................................................................2

        A.      Relevant Provisions of the Stipulated Order.............................................3
        B.      Skyryse's Substantial Compliance with the Delivery Provisions of the
                Stipulated Order ........................................................................................4
        C.      Skyryse's Substantial Compliance with the Preservation Provisions of
                the Stipulated Order ..................................................................................9

III.    MOOG IS NOT ENTITLED TO AN ORDER COMPELLING SKYRYSE TO
        PROVIDE DISCOVERY THAT MOOG DID NOT PROPERLY REQUEST OR
        THAT SKYRYSE ALREADY PRODUCED. ........................................................19

        A.      The Court should deny Moog's attempt to take more "discovery about
                discovery" through 27 unauthorized, unserved interrogatories. ...........20
        B.      The Court should deny as moot Moog's request for the production of data
                Skyryse already has produced...................................................................22

IV.     MOOG'S DEMAND FOR SUPPLEMENTAL DISCOVERY RESPONSES
        SHOULD BE DENIED AS MOOT. .......................................................................23

V.      CONCLUSION......................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Coleman v. Atl. Richfield Co.*,
  No. 6:07-CV-06117 EAW, 2016 WL 9453807 (W.D.N.Y. July 14, 2016) ............................7

*Cotton v. Costco Wholesale Corp.*,
  No. 12-2731-JW, 2013 WL 3819974 (D. Kan. July 24, 2013)................................................19

*Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*,
  No. 3:12-cv-1058-SI, 2018 WL 6305665 (D. Or. Dec. 3, 2018).............................................19

*Lujan v. Cabana Mgmt., Inc.*,
  284 F.R.D. 50 (E.D.N.Y. 2012) ..................................................................................................6

*Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
  280 F.R.D. 147 (S.D.N.Y. Feb. 15, 2012) ..................................................................................6

*Sriram Krishnan v. Cambia Health Sols., Inc. & Regence BCBS of Oregon*,
  No. 2:20-cv-574-RAJ, 2021 WL 3129940 (W.D. Wash. July 23, 2021) ...............................18

*United Realty Advisors, LP v. Verschleiser*,
  No. 14-CV-5903 (JGK), 2019 WL 4889420 (S.D.N.Y. Oct. 3, 2019).....................................7

## I.      INTRODUCTION

Moog's motion to compel various disclosures is deeply flawed and should be denied in its entirety. For example, Moog continues to decry alleged violations of the parties' March 11, 2022 Stipulated Order, even though Moog itself acknowledges the facts confirming Skyryse's substantial and continuing compliance with that stipulation. Moog also demands that Skyryse answer under oath dozens of written questions that Moog raised in a letter, impermissibly trying to take discovery about discovery through unauthorized interrogatories. Moog unnecessarily moves the Court to order Skyryse to supplement certain discovery responses, knowing Skyryse already had agreed to do so during the expedited discovery process. And Skyryse has now done so, months before the preliminary injunction hearing will take place. None of Moog's requests for relief has merit, and the Court should deny them and reject Moog's tactical efforts to manufacture alleged violations under the false guise of exigency when neither exists.

Although Moog's tactics are improper, Skyryse understands and responds herein to Moog's inquiry into an important topic: the unauthorized deletion of potentially relevant evidence at Skyryse, which Skyryse only recently discovered. Skyryse describes with this submission the results of its ongoing investigation into the issue, mooting Moog's demands for relief. As explained below, although Skyryse has collected and preserved millions of potentially relevant files in connection with this action, its investigation to date has confirmed that one employee acted without Skyryse's knowledge or authority and against the company's explicit orders by deleting 44 potentially relevant files from Skyryse's systems. Skyryse has terminated his employment, and is making the contents of that employee's Skyryse-issued laptop and his personal USB drive available for Moog's inspection, along with deleted files Skyryse was able to recover. Aside from the

1

44 files deleted in violation of Skyryse's explicit instructions, Skyryse is not aware of other instances in which information known to be potentially relevant has been deleted from Skyryse's computers or systems.

Respectfully, the Court should deny Moog's motion because it seeks relief to which Moog is not entitled and is rendered moot by the disclosures and discovery that Moog knew Skyryse had been working toward providing.

## II.   SKYRYSE HAS SUBSTANTIALLY COMPLIED WITH THE MARCH 11 STIPULATED ORDER.

As Skyryse has made clear from the start, it has never wanted, needed, or tried to obtain any alleged trade secret information from Moog. But Skyryse understands the gravity of Moog's trade secret misappropriation claims against it, and against individual defendants Alin Pilkington and Misook Kim, two former Moog engineers who actively worked at Skyryse for approximately four months and two-and-a-half months, respectively. Accordingly, just four days after this lawsuit was filed, Skyryse stipulated to the preliminary relief Moog claimed it needed. Skyryse agreed through a March 11, 2022 stipulation that potentially relevant evidence would be preserved, that any alleged non-public Moog information would be delivered to Moog, and that a neutral, third-party forensics firm would be entrusted with taking custody of any electronically stored information that reflects both Skyryse's and Moog's allegedly confidential information. (*See* ECF 25 and 28, hereafter the "Stipulation" or "Stipulated Order.")

Skyryse delivered tens of thousands of files—more than required by the Stipulation—to the neutral forensics firm and to Moog, as Skyryse's investigation progressed. Skyryse subsequently terminated the employment of Mr. Pilkington and Ms. Kim, and updated the Court and Moog about the same. And out of a great abundance of caution, given the seriousness of Moog's allegations, Skyryse also put on administrative leave a number of its other employees formerly

2

associated with Moog while its investigation continued. As we explain in more detail below, Skyryse has gone to great lengths to ensure its compliance with the Stipulation while it conducts a thorough, diligent investigation into Moog's allegations. And as also explained below, when Skyryse recently uncovered facts suggesting that some potentially relevant evidence in Skyryse's possession had not been properly preserved, it immediately raised it with Moog and the Court, and launched a sweeping investigation that has resulted in Skyryse terminating a third engineer and former Moog employee, ███████. Moog has returned Skyryse's extraordinary good-faith efforts and transparency with opportunism and evasiveness. Moog has pressed its procedural advantage at every turn with pressure tactics and baseless complaints of non-compliance, while hiding the ball and refusing to identify any of its alleged trade secrets to start defining the scope of reasonable discovery.

### A.    Relevant Provisions of the Stipulated Order

The Stipulated Order entered on March 11 imposes three broad categories of obligations relating generally to the Defendants' (1) non-use, (2) delivery, and (3) preservation of certain information. First, Skyryse stipulated to "refrain from using, accessing, disclosing, copying, or transmitting, for any purpose" information in its possession that Moog has characterized as "Moog non-public information." (Stipulation, ECF 25, ¶ 1; Motion, ECF 142-12 at 3.) Second, Skyryse stipulated to deliver any such Moog non-public information either (a) to Moog, or (b) to a neutral third-party forensics vendor, if such information "has been integrated, combined, inserted, modified, updated, upgraded or otherwise used by any Defendant in such a manner that such delivery necessarily includes property of any Defendant." (Stipulation, ECF 25, ¶ 2; Motion, ECF 142-12 at 3-4.) At the very outset of this case, the parties stipulated the Defendants would deliver such information to either Moog or the neutral forensics firm "[w]ithin 21 days of this Order," or by April 1, 2022. (Stipulation, ECF 25, ¶ 2.)

Third, Skyryse stipulated to take measures to preserve potentially relevant evidence. (*Id.*, ¶ 5.) Paragraph 5 breaks this obligation into two parts, first addressing the preservation of data in centralized equipment and accounts (such as Skyryse's corporate email stores and network drives) and then also, "to the extent reasonably necessary," in equipment such as laptops, USB drives, and the hard drives of desktop computers issued by Skyryse for use by any employee in the last year:

> Skyryse shall preserve and not otherwise tamper with or modify in any way [1] its email, shared network drives, desktop computers, and [2] to the extent reasonably necessary to preserve potentially relevant evidence, laptops, USB drives, databases, work-issued phones, and work issued tablets, and/or the hard drives of any desktop computers, laptops, phones, USB devices, external data storage devices, or other electronic devices issued by Skyryse for use by any employee and which was used in the last year, and produce any of its devices which received, copied, or was transferred any information or data from the four devices mentioned in Section 4 above to the Forensics Firm, for forensic imaging.

(*Id.*) The "delivery" and "preservation" provisions of the Stipulated Order are most relevant to Moog's motion.

## B.     Skyryse's Substantial Compliance with the Delivery Provisions of the Stipulated Order

Moog admits the key facts showing that Skyryse (and the other defendants) took prompt action to comply with the delivery provisions of the Stipulated Order. As Moog explains:

> On April 1, 2022, Kim and Pilkington turned over a total of 23 electronic devices to the neutral forensics firm, and Skyryse turned over Kim's Skyryse-issued laptop device, along with a hard drive containing 11,093 files pulled from Pilkington's Skyryse-issued laptop. In an April 1, 2022 cover letter, Skyryse indicated that these 11,093 files were located by searching Pilkington's Skyryse-issued laptop using the file names of the 136,994 Moog files copied by defendant Misook Kim and the 62,408 approximate hash values corresponding to those Moog files that were recoverable.

(Motion, ECF 142-12 at 4 (citations omitted).) Skyryse's compliance did not stop there. As its investigation proceeded, Skyryse continued to provide information to the neutral forensics firm, iDS, which Moog also admits: "On April 29, Skyryse turned over to iDS Pilkington's two Skyryse-

4

issued laptops and a thumb drive containing 568 additional files." (*Id.* at 9.) And as Moog acknowledges, "Skyryse also made a document production directly to Moog of data that 'ostensibly or potentially contains Moog non-public information,' including 10 Moog source code files. On May 5, Skyryse turned over additional files to iDS." (*Id.* at 9-10 (citations omitted).)

Moog has no legitimate complaint about the fact that Skyryse has made voluminous, sequential, and substantive productions of information from Defendants Pilkington's and Kim's Skyryse-issued laptops and other electronic information to Moog and to the forensics vendor. Nor could Moog argue that Skyryse was somehow wrong to provide this information in discovery, for it is responsive to Moog's requests and the Stipulated Order. Instead, Moog argues about the *timeliness* of Skyryse's productions, and leaps to the erroneous conclusion that a batch of approximately 11,500 files was "improperly" turned over to iDS rather than Moog, demanding that these files now be handed over to Moog directly. (Motion, ECF 142-12 at 16.) Neither complaint has merit.

First, Moog's complaint that the potentially relevant materials Skyryse produced "were required to be turned over to iDS by April 1" is not a persuasive ground for relief. (Motion, ECF 142-12 at 10.) Skyryse provided these materials weeks ago in a timely manner as its investigation progressed, following the procedures required by the Stipulation. This is what Skyryse told the Court and Moog it would do, after concluding there was "likely non-public information at Skyryse," the majority of which "relates to this Pilkington and Misook Kim." (Tr., ECF 95 at 17-18.) Skyryse's productions of such potentially relevant information are consistent with its ongoing duty to supplement its discovery, even if Skyryse was unable to produce all of these files at an earlier stage of its investigation within just 21 days of the entry of the Stipulated Order. (Stipulation, ECF 25, ¶ 2.)

Moog frequently argues that Skyryse "violated the March 11 Order" by producing information after the stipulated deadline of April 1 (which was less than a month after this lawsuit was filed). (Motion, ECF 142-12 at 12.) But there has been no violation. Skyryse has substantially complied with the Stipulation, turning over the vast quantity of discoverable information it had located on April 1 and then supplementing seasonably in the coming weeks as it learned there was more discoverable information to produce. That the magnitude, scope, and ongoing nature of Skyryse's investigation necessitated producing additional information after the April 1 stipulated deadline does not amount to a violation of a Court order.[1]

Moog has not even tried to make a fact-based showing that it has been unduly prejudiced by the timing of Skyryse's voluminous productions to iDS, instead making only vague complaints about delay and fairness. This is insufficient. Nor could Moog demonstrate any prejudice, for this case remains in its earliest stages, the preliminary injunction motion will not be heard for at least another four months, and Skyryse stipulated to the preliminary relief Moog claims to have needed, eliminating any purported urgency.

By making significant rolling productions of electronically stored information, including on April 1, 29, and May 5, Skyryse has substantially complied with the Stipulated Order. *Cf., Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) ("An omission or delay in disclosure is harmless where there is 'an absence of prejudice' to the offended party.") (quoting *Ritchie Risk– Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y.

---

[1] Skyryse's investigation has been enormous by any measure, requiring the collection over 30 million files and more than seven-and-a-half terabytes of data in the search for potentially relevant and discoverable information. The magnitude and scope of the investigation has been greatly exacerbated by Moog's (1) deliberate refusal to identify any of its alleged trade secrets, contrary to law and in blatant defiance of Skyryse's interrogatories, and (2) insistence that Skyryse use more than one hundred thousand search terms that Moog knows include generic, third-party, and publicly known terms that "hit" on plainly irrelevant documents. *See infra* at 7-8.

Feb. 15, 2012)); *United Realty Advisors, LP v. Verschleiser*, No. 14-CV-5903 (JGK), 2019 WL 4889420, at *1 (S.D.N.Y. Oct. 3, 2019) (denying as having "no merit" motion to strike disclosure after deadline where "plaintiffs have not indicated that they were prejudiced in any way by the two-week delay"); *Coleman v. Atl. Richfield Co.*, No. 6:07-CV-06117 EAW, 2016 WL 9453807, at *18 (W.D.N.Y. July 14, 2016) (denying motion to preclude evidence produced "after the close of fact discovery" where moving party had "not demonstrated any prejudice from the disclosure"). Accordingly, the Court should deny Moog's demand for verification of compliance with the Stipulation. (*See* Motion at 18 ("Requested Relief" item 6).)

Second, Moog has the facts wrong when it demands that Skyryse "send directly to Moog" a batch of approximately 11,500 files that are now in iDS's custody, erroneously arguing that the Stipulated Order requires it. (Motion, ECF 142-12 at 3.) The Stipulated Order requires no such thing. As Moog admits, "these 11,093 files were located by searching Pilkington's Skyryse-issued laptop using the file names of the 136,994 Moog files copied by defendant Misook Kim and the 62,408 approximate hash values corresponding to those Moog files that were recoverable." (*Id.* at 4.) To locate these files (and 568 non-human-readable files found on other Skyryse repositories and computers), Skyryse used as search terms file names and hash values Moog had provided. This was part of Skyryse's good-faith effort to ensure its compliance with the Stipulation and provide Moog access to information it claimed to need. And Skyryse did this despite learning— and explaining to Moog—that Moog's file names and hash values include thousands of terms arising from public and third-party sources, making them unreliable as search terms and likely to "hit" on documents having nothing to do with this case. (Andoh Decl., Ex. B, ECF 142-3 at 2.)

When Skyryse turned over roughly 11,500 documents resulting from these searches to iDS, it explained the situation to Moog: "Because both [search term] lists Moog supplied are wildly

overbroad—containing thousands of entries of information that is not proprietary to Moog—we suspect the vast majority (if not all) of the 11,093 files are not subject to production under the March 11 order, which requires only '*non-public* information ... of Plaintiff' to be returned to Moog or delivered to iDS. But because it is not feasible for Skyryse to evaluate conclusively all 11,093 files from the Pilkington Laptop by today's April 1, 2022 delivery deadline, in an abundance of caution Skyryse delivered all 11,093 files to iDS," along with the 568 non-human-readable files. (*Id.* (citations omitted).) Skyryse made clear it was "not *required* under the March 11 Order" to turn over any of these files, which it had not determined contain any "non-public information belonging to Moog." (*Id.*) At Moog's request, Skyryse explained that it also had searched these files using the keyword "'Moog' [with wildcard]," which resulted in 103 "hits," the file names of which Skyryse itemized and provided to Moog. (Motion, ECF 142-12 at 7.)

Moog knows all of this. Yet it argues in its motion that "at no point has Skyryse taken the position that any of the 11,093 Pilkington files necessarily include Skyryse property, which could be the only basis to turn them over to iDS instead of Moog." (*Id*. at 4.) Not so. Skyryse explained that these files were found on *Skyryse*-issued computers and repositories and "hit" on unreliable search terms that Moog insisted on using. Skyryse explained it could not conclusively ascertain that they included *any* Moog non-public information, but produced them to iDS anyway. (Andoh Decl., Ex. B, ECF 142-3 at 2.) The only logical conclusion from these facts (which Skyryse shared two months ago) is that these files from Skyryse's repositories contain Skyryse's information. In addition, as Skyryse's investigation has continued, its counsel have reviewed a sample of these documents that *do* contain Skyryse's information. Moog's counsel can confirm this for themselves, for the Court granted Moog the forensic protocol it requested, permitting its counsel to inspect the

files in iDS's custody without restrictions, for example, as to topic or search terms. (Order, ECF 109; Forensic Protocol, ECF 96-2.)

Thus, Moog has no basis to demand that the Court order Skyryse "to produce directly to Moog the over 11,500 segregated files" that Moog wrongly claims "were improperly sent to iDS instead of Moog." (Motion, ECF 142-12 at 16.) The Stipulated Order does not require this—it only requires delivery to Moog of Moog's own allegedly "non-public information," which does not appear to be contained in these files, and it allows delivery to iDS of files in which "*any* such [Moog] non-public information," assuming it exists, "has been integrated" into Skyryse's own property. (Stipulation, ECF 25, ¶ 2.[2]) Skyryse has substantially complied with the Stipulation, and the Court should deny Moog's baseless demands for (1) delivery of these files "directly to Moog" and (2) a needless verification of compliance with the Stipulated Order. (*See* Motion, ECF 142-12 at 17-18 ("Requested Relief" items 4 and 6).)

### C. Skyryse's Substantial Compliance with the Preservation Provisions of the Stipulated Order

Skyryse acted swiftly and appropriately to comply with its obligations to preserve potentially relevant evidence. For example, as Moog knows, Skyryse issued a litigation hold notice on March 9, 2022 to thirty-five employees who may have relevant information, and followed this with additional litigation hold notices to all of the company's approximately 70 employees on April 21, 2022, and again on April 25, 2022. (Andoh Decl., Ex. D, ECF 142-5 at 7-8.) The company and its counsel also have repeatedly instructed employees in person and through less formal communications to preserve, not to delete, and to collect potentially relevant evidence starting as

---

[2] All emphasis in quotes has been added unless otherwise indicated.

early as March 8, 2022. And within four days of the filing of this suit, Skyryse stipulated to pre-serve "potentially relevant evidence" in central repositories, such as email servers and shared net-work drives, and "to the extent reasonably necessary" in other sources such as "work issued" lap-tops, tablets, and external data devices. (Stipulation, ECF 25, ¶ 5.)

Skyryse's good-faith investigation and compliance with its document preservation (and collection and production) obligations has been a serious and substantial undertaking. Skyryse enlisted large teams of outside professionals from two global law firms, a major forensics firm, and expert consultants, and to date it has collected and preserved a tremendous amount of infor-mation, encompassing approximately 30 million files. Skyryse has run searches for potentially relevant information using tens of thousands of search terms provided by Moog, though many have no utility in identifying potentially relevant information. *Supra* pages 7-8. Skyryse's counsel have interviewed dozens of employees, many on multiple occasions about their possible involvement with the facts in this action, and about steps they have taken to comply with the company's and its counsel's repeated and strict instructions to preserve potentially discoverable evidence. By any measure, Skyryse's efforts to ensure the preservation of relevant evidence have been thorough, numerous, and eminently reasonable. Skyryse has substantially complied with the preservation provisions of the Stipulated Order.

This is why it came as a surprise to Skyryse when it learned of facts indicating that poten-tially relevant information had been deleted in violation of the company's and its counsel's clear instructions. Skyryse disclosed this concern both to Moog and the Court on April 25 and 26, with caveats that it may be "premature," that "[w]e don't have anywhere near all the information," and there still was much "we just don't know." (Tr., ECF 95 at 5, 18-19.) But as Skyryse's former counsel explained, his "firm, these firms, and this client, could not possibly be taking this more

seriously and trying harder to get this right." (*Id.* at 21.) To that end, one of the actions Skyryse took was to immediately launch an investigation into the issue, including working with "a forensic firm, FTI, one of the largest and most reputable in the country that has an army of people working on this issue." (*Id.* at 5.) Skyryse also, out of an extreme abundance of caution, placed fifteen employees who were formerly associated with Moog on administrative leave, "including employ- ees who appear to have done nothing wrong." (Andoh Decl., Ex. D, ECF 142-5 at 8.) Skyryse provisionally put on leave employees who deleted *any* materials[3] during this action—even routine, work-related deletions having nothing to do with Moog or this litigation—and if Skyryse knew their files "had hits" with the overly broad and unreliable "hash values and file names that Moog provided" as search terms. (Tr., ECF 95 at 20.) *See also supra* pages 7-8.

Skyryse's investigation continued apace when Skyryse changed its counsel of record in early May. Skyryse's new counsel have been working extensively with the company and with FTI to investigate any potential deletions, and have interviewed employees who may be involved with such deletions. While it was indeed "alarming" to discover that any employee would delete poten- tially relevant evidence against the company's and its counsel's express orders not to do so (Tr., ECF 95 at 19), the investigation since has shown that the deletions of files from Skyryse's systems that Skyryse has reason to believe were potentially relevant to this case have been more contained than Moog suggests, based on the comments of Skyryse's former counsel.

The relevant, non-privileged facts center around an engineer named █████████

---

[3] Skyryse took an expansive view of what constituted a deletion, investigating instances where the possible "deletion" consisted solely of files moved the recycle bin or trash, which are fully recov- erable and so are not permanent deletions.

- ███████, a former Moog employee, without Skyryse's authorization or knowledge took steps to delete potentially relevant files after he had received a litigation hold notice, and after being instructed by counsel not to delete information potentially relevant to this action. Skyryse's forensic investigation indicates that on or around April 5 and 6, 2022, ████████ emptied 44 files from the recycle bin of his Skyryse-issued computer.

- ████████ computer (which contains Skyryse's own information) has been imaged, and Skyryse has turned the device over to the neutral forensics examiner, iDS.[4]

- To date, Skyryse's forensic investigation has been able to recover twelve of the 44 files emptied from ████████ recycle bin. The twelve recovered files appear to contain Skyryse information, and Skyryse has separately turned these files over to the neutral forensics examiner, iDS. They appear to reflect information such as interconnect diagrams and .bak backup files. The investigation to date has not indicated that these 12 files reflect Moog information.

- To date, Skyryse's forensic investigation has not been able to recover 32 of the 44 files emptied from ████████ recycle bin. For 21 of those 32 files, the investigation has provided file paths, which include file names. These 21 files have eleven unique file names, nine of which are the same as file names of nine of the recovered documents. Skyryse has attached as Exhibit A the file path information available for these 21 files.

---

[4] Skyryse is turning this device over to the neutral forensics firm in the interest of full disclosure and an out of an abundance of caution. This is not and should not be construed as an admission or concession by Skyryse that any material therein constitutes non-public Moog information, much less Moog's confidential or trade secret information, or information that is not publicly available or generally known to those in the industry.

The investigation to date has not revealed any file path information about the remaining eleven files.

- Without revealing any privileged information or waiving any applicable protections from disclosure, the investigation leads Skyryse to believe that some of ███████ deleted files likely related to wire and cable schematics that ███████ created and brought with him from Moog and that he used as a reference while working at Skyryse.[5]

- Skyryse's best understanding is that ███████ kept certain information relating to Moog on a personal USB drive. The forensic investigation included an examination of a 16 GB USB flash drive that ███████ voluntarily provided to outside counsel, and did not locate any such files. That drive has been imaged with ███████ consent and Skyryse has turned the image over to the neutral forensics examiner, iDS.[6]

- Without revealing any privileged information or waiving any applicable protections from disclosure, and in the interest of full disclosure, Skyryse's investigation further indicates on or around April 6, 2022, ███████ moved to the recycle bin of his Skyryse-issued computer 233 files related to the videogame The Witcher 3, which was installed on that machine. The investigation indicates that 114 are screen shots and the remainder includes save files, user settings, and steam files related to the videogame.

---

[5] Skyryse has no evidence suggesting that these schematics constitute or could be asserted by Moog as protectable secrets, as opposed for example, to information that is publicly available or generally known in the industry.

[6] Skyryse has turned this image over to the neutral forensics firm in the interest of full disclosure and an out of an abundance of caution. This is not and should not be construed as an admission or concession by Skyryse that any material therein constitutes non-public Moog information, much less Moog's confidential or trade secret information, or information that is not publicly available or generally known to those in the industry.

Skyryse is presently unaware of any evidence suggesting these videogame files are potentially relevant to Moog or this action.

- Skyryse's forensic investigation indicated that the 233 files were not emptied from the recycle bin of ████████ Skyryse-issued computer, and Skyryse has recovered them. Skyryse has separately produced these files to Moog.

- ████████ was put on administrative leave on April 6, 2022. After learning that he had violated the company's and its counsel's express instructions and company policies, and conducting an extensive investigation, Skyryse terminated ████████ employment effective June 14, 2022.

The discovery that ████████ violated Skyryse's and its counsel's clear instructions led Skyryse to thoroughly investigate any other possible deletions of potentially relevant evidence from Skyryse's systems, including through forensic examinations, witness interviews, and reviews of electronically stored information. This involved weeks of sorting through untold volumes of forensic information, consulting with experts, meeting with witnesses in person and remotely, and going through many iterations of that process for individual data sources and custodians. The investigation included, for each relevant employee, a forensic and human analysis of files potentially deleted from his or her Skyryse-issued machine and the surrounding circumstances.

During the process, when Skyryse received any indication that there were hard deletions of data (i.e., deletions beyond those that could be recovered from a computer's recycle bin or trash), or even recoverable deletions of a large number of files from Skyryse-issued devices, it followed up diligently with detailed forensic examination and investigation. And in each instance—with the exception of ████████ discussed above—the investigation has not indicated that potentially relevant evidence was deleted, but rather that the deletions related to irrelevant material

such as publicly available technical standards, personal tax forms, third-party files, temporary files, or application files replaced during routine software installations or upgrades that was not reasonably necessary to have preserved. With the exception of ▮▮▮▮▮, each relevant Skyryse employee appears to have followed the company's instructions and directives to preserve and not delete potentially relevant evidence from Skyryse computers and systems. Indeed, Skyryse has preserved and collected over 30 million such files.

Thus, with the exception of ▮▮▮▮▮ independent conduct in deleting 44 files by emptying them from his recycle bin—which was unknown to, unauthorized by, and expressly forbidden by Skyryse—based on the investigation to date, Skyryse has complied with both preservation obligations in paragraph 5 of the Stipulation. (Stipulation, ECF 25, ¶ 5.) First, with respect to its centralized systems and equipment, Skyryse has "preserve[d] and not otherwise tamper[ed] with or modif[ied] in any way its email, shared network drives, [and] desktop computers." (*Id.*) Second, "to the extent reasonably necessary to preserve potentially relevant evidence," Skyryse has preserved data on its "laptops, USB drives, databases, work-issued phones, and work issued tablets, and/or the hard drives of any desktop computers, laptops, phones, USB devices, external data storage devices, or other electronic devices issued by Skyryse for use by any employee and which was used in the last year." (*Id.*)

In view of Skyryse's investigation into the deletion of potentially relevant evidence, this submission outlining the same, and the forthcoming productions of additional data described herein, the Court should deny Moog's demands that Skyryse complete additional, unspecified "disclosure obligations, including identification and turnover of all data and devices that have been involved in the deletion of potentially relevant data." (Motion at 17 ("Requested Relief" item 2).) An unauthorized employee deleted 44, among millions, of potentially relevant files from Skyryse's

systems in direct violation of Skyryse's explicit instructions, and unbeknownst to Skyryse (and Skyryse has recovered twelve of them to date). Skyryse had taken numerous, reasonable, and stringent measures to avoid such a possibility and could not have reasonably predicted that ███ or any employee would engage in such conduct. Skyryse remains in substantial compliance with the Stipulated Order, and is providing Moog with the information it needs about these deletions to do any additional investigation and pursue any steps that are appropriate.

Through its investigation, Skyryse also learned that former Moog employees ███, ███████████████████████ have or had Moog-related information on personal devices or repositories, information that has not been loaded onto Skyryse systems and has not been used at Skyryse. The investigation has indicated, for example, that in performing their day-to-day duties at Moog, former Moog employees were expected to and did take photographs with their personal smartphones in order to use those photos in the course of their work at Moog, and some of those photos apparently remained on their personal devices and repositories after leaving Moog. The investigation has not revealed evidence that that these photos or other Moog information on employees' personal devices or repositories was shared with, obtained by, or used at Skyryse.

More specifically, Skyryse's investigation indicated that ███ has photos and videos on his personal phone taken during his work at Moog. Without revealing any privileged information or waiving any applicable protections from disclosure, the investigation indicated that it was common practice at Moog for certain employees, including senior managers, to use their personal smartphones to take photos, for example, of part numbers or graphs on a screen, and that it was expected of such employees to use such photos or videos in their work at Moog. The investigation indicated that ███ did not use such photos or videos during his work at Skyryse, and Skyryse is unaware of evidence that any of ███ photos or videos were shared with, obtained by, or

16

used at Skyryse. The investigation further indicated that ███████ did not delete any such photos or videos. With ████████ consent, Skyryse's outside counsel has obtained copies of his photos and videos and is in the process of producing all Moog-related photos and/or videos to Moog. ████████ was put on administrative leave on April 25 and returned to work on May 23.

The investigation also indicated that ██████████ had photos and potentially videos on his personal phone taken during his work at Moog, and that in mid-March 2022 he deleted from his personal device such files without Skyryse's authorization, in violation of Skyryse's instructions and without advising Skyryse of these actions at the time. Without revealing any privileged information or waiving any applicable protections from disclosure, the investigation indicated that ████████████ deleted files likely related to test rigs, and that he did not use those files while working at Skyryse. The investigation indicated that ████████████ deleted files likely are not recoverable. It also indicated that after reviewing one of Skyryse's litigation hold notices, he tried unsuccessfully to restore his deleted files. The investigation has not revealed evidence that any of ████████████ deleted files were shared with, obtained by, or used at Skyryse. Without revealing any privileged information or waiving any applicable protections from disclosure, the investigation also revealed that ██████████ had in his possession two composition books in which he kept various personal and work-related notes during his employment at Moog and some employment-related papers from his work at Moog. The investigation has not revealed evidence that ████████████ papers and composition books were shared with, obtained by, or used at Skyryse. ██████████ provided those papers and notebooks upon request to Skyryse's outside counsel, which has produced copies of them to Moog. ████████████ has been on administrative leave since April 25.

Without revealing any privileged information or waiving any applicable protections from disclosure, the investigation indicated that ███████ has a personal repository, likely a Dropbox cloud account, in which he may have python code he wrote while employed by Moog around 2013 or 2014. The investigation has not revealed evidence that such files were shared with, obtained by, or used at Skyryse. Without revealing any privileged information or waiving any applicable protections from disclosure, the investigation further revealed that at Mr. Pilkington's instruction, at Skyryse ███████ used what he understood to be Mr. Pilkington's personal USB hard drive and reviewed some Moog code for approximately five to ten minutes related to a demonstration of an open-source document-generation tool called Doxygen. The investigation has not indicated that ███████ subsequently accessed or used any of this Moog code or deleted potentially relevant evidence. ███████ has been on administrative leave since April 25.

Without revealing any privileged information or waiving any applicable protections from disclosure, the investigation indicated that ███████ has photos or videos on his personal phone taken during his work at Moog. The investigation has not revealed evidence that ███████ used such photos or videos during his work at Skyryse, and Skyryse is unaware of evidence that any such files were shared with, obtained by, or used at Skyryse. The investigation has not indicated that ███████ deleted such files. ███████ has been on administrative leave since April 25 and returned to work on June 14.

As Skyryse has explained to Moog, Skyryse does not issue smartphones to its employees and does not have possession, custody or control of personal devices or repositories owned by its employees. Accordingly, Skyryse is not in a position to produce such devices or repositories, but identifies this information in the interest of full disclosure. *See, e.g.*, *Sriram Krishnan v. Cambia Health Sols., Inc. & Regence BCBS of Oregon*, No. 2:20-cv-574-RAJ, 2021 WL 3129940, at *2

18

(W.D. Wash. July 23, 2021) (denying motion to compel text messages between employees' personal cell phones where "the personal cell phones were not issued by Defendants"); *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JW, 2013 WL 3819974, at \*6 (D. Kan. July 24, 2013) (denying discovery for employee text messages and emails on "personal cell phones" not issued by employer); *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, No. 3:12-cv-1058-SI, 2018 WL 6305665, at \*7 (D. Or. Dec. 3, 2018) (denying motion to compel production of personal cell records and calendar information as outside plaintiff's possession, custody or control).

These personal devices and repositories also are not encompassed by the Stipulated Order's preservation obligations. Rather, those obligations expressly apply only to Skyryse's ("its") devices and systems, and equipment and "electronic devices *issued by Skyryse* for use by any employee."[7] (ECF 25, ¶ 5.) As Skyryse also has explained to Moog, it has collected and preserved information from relevant central repositories that may be accessible via employees' personal smartphones, such as email accounts, and from Skyryse-issued computers and its Gitlab code repository. (*See, e.g.*, Andoh Decl., Exh. D, ECF 142-5 at 4-5.) In sum, Skyryse is in substantial compliance with the Stipulated Order's preservation obligations.

## III.   MOOG IS NOT ENTITLED TO AN ORDER COMPELLING SKYRYSE TO PROVIDE DISCOVERY THAT MOOG DID NOT PROPERLY REQUEST OR THAT SKYRYSE ALREADY PRODUCED.

Skyryse and its counsel, working with a top forensics firm, have been thoroughly investigating the deletion of potentially relevant evidence. As it said it would, Skyryse has now updated Moog and the Court on the status of the investigation, has turned over the data and devices involved

---

[7] Skyryse's litigation hold notices and instructions have expressly required employees to preserve pertinent information wherever it may be stored, in any format, including on smartphones and personal accounts, even though Skyryse does not maintain possession, custody, or control of such personal devices and accounts.

in ███████ deletion of potentially relevant data from Skyryse devices, and has disclosed the information it has about ███████ deleted photos and videos from his personal device. During the expedited discovery process, Skyryse also has produced enormous volumes of information potentially relevant to Moog's claims of alleged misappropriation of secrets. Accordingly, the Court should deny Moog's request for more information about the deletion of potentially relevant information, and for the production of allegedly "non-public Moog information in [Skyryse's] possession, custody or control," which Skyryse already has produced. (Motion, ECF 142-12 at 17 ("Requested Relief" items 1-3).)

A. **The Court should deny Moog's attempt to take more "discovery about discovery" through 27 unauthorized, unserved interrogatories.**

Moog asks the Court to order Skyryse to answer under oath some 27 detailed questions about Skyryse's ongoing investigation and discovery efforts. (Motion, ECF 142-12 at 7-9). This is improper and unnecessary. Moog already served its Court-ordered limit of ten interrogatories in expedited discovery, and they do not include these questions. Moog all but ignores that Skyryse responded to many key questions in detail during the course of its investigations. And with its forthcoming productions and the information provided in this submission, Skyryse has sufficiently disclosed the results of its investigation into the deletion of potentially relevant information. Nothing more is necessary or appropriate at this juncture. Moog should review the information and documents Skyryse has provided, take the depositions it is entitled to take, and otherwise prepare for the preliminary injunction hearing.

Some context about Moog's attempt to take "discovery about discovery" through these 27 written questions is useful. Although Moog knew Skyryse was investigating the potential deletion of relevant files and further information and discovery would be forthcoming, Moog demanded excessive detail into Skyryse's investigation "immediately." (Andoh Decl., Exh. C, ECF 142-4 at

3-6.) This, just one day after Skyryse's counsel candidly disclosed to the Court they had discovered the deletion of potentially relevant evidence and explained that "[w]e don't have anywhere near all the information," but the investigation was underway. (Tr., ECF 95 at 5, 18-19.)

Moog posed over thirty questions, many with dozens of subparts within them, and most objectionable for many reasons not least because they probed into attorney-client communications and work product. (Andoh Decl., Exh. C, ECF 142-4 at 3-6.) For example, Moog demanded to know the privileged, work product, and confidential reasoning behind why Skyryse, which was working closely with its attorneys, chose to put certain employees "on administrative leave in connection with this case": was it "due to search term hits on electronic devices?" "due to data deletion?" "for any other reason?" and what was that reason? (*Id.* at 5-6.) Moog also asked Skyryse's counsel at Gibson Dunn to disclose their protected conclusions and impressions, for example, about whether specific data purportedly does or "does not relate to Pilkington and Kim." Moog asked questions about deleted "data or materials," and "specific items (files, documents, data, etc.)," even if they had no relevance to this action. (*Id.* at 4-5.) Moog knew the Court had permitted a maximum of ten interrogatories per side, which Moog already had served. (ECF 33, ¶ 2; ECF 36.) Moog did not seek leave to propound additional interrogatories and did not pose any of its questions as properly served interrogatories under Rule 33.

Nonetheless, Skyryse responded in good faith in a twelve-page letter with exhibits, addressing many of Moog's questions in particular detail, and reminding Moog that Skyryse and its counsel were "continuing to investigate the issues." (Andoh Decl., Ex. D, ECF 142-5 at 1.) Skyryse corrected inaccuracies in Moog's purported understanding of the facts, and provided non-privileged information answering many of Moog's questions that fell into categories about "(1) potential Moog data in Skyryse's possession; (2) potential deletion of evidence; and (3) termination and

21

administrative leave of Skyryse employees," and addressed several other issues Moog had raised. (*Id.* at 3-12.) Moog admits that Skyryse promptly responded with detailed information (Motion, ECF 142-12 at 6-7), but now demands that the Court order Skyryse to answer "under oath all of Moog's [purportedly] unanswered questions," which Moog sets out in 27 parts. (*Id.* at 16; *see also id.* at 7-9.)

The Court should reject Moog's demand to compel further discovery about Skyryse's discovery and internal investigation as excessive, unduly burdensome, irrelevant to the parties' claims and defenses, overbroad, and disproportionate to the needs of the case. Moog offers no persuasive reason it should be entitled to essentially serve dozens of new interrogatories through a letter-writing campaign, and no legal authority supporting the relief it seeks. (*See* Motion, ECF 142-12 at 15-16.) In view of the disclosures accompanying this submission and the information Skyryse had earlier provided to Moog and is continuing to turn over, Moog has sufficient information about ▮▮▮▮▮ deletions and can explore the topic further through depositions or other permissible discovery vehicles. Respectfully, the Court should deny Moog's request to compel answers under oath to 27 questions Moog had posed in its April 27 letter. (Motion, ECF 142-12 at 17 ("Requested Relief" item 1).)

**B.     The Court should deny as moot Moog's request for the production of data Skyryse already has produced.**

Skyryse already has provided discovery relating to any allegedly "non-public Moog information in its possession, custody or control" and data relevant to ▮▮▮▮▮ deletion of 44 potentially relevant files, making Moog's motion on these points unnecessary and moot. (*See* Motion, ECF 142-12 at 17 ("Requested Relief" items 2 and 3).) Specifically, Skyryse has turned over to iDS (1) Ms. Kim's Skyryse-issued laptop, (2) 11,000 files from Mr. Pilkington's laptop, (3) a hard

drive containing 568 non-human readable files, (4) two Skyryse-issued laptops used by Mr. Pilkington, (4) a USB drive containing two source code repositories, (5) ███████ Skyryse-issued laptop and (6) USB drive, and (7) twelve recovered files that were emptied from ███████ recycle bin. Skyryse also delivered directly to Moog (8) 138 documents that Moog had voluntarily provided to Skyryse under non-disclosure agreements in 2018 and 2019 that ostensibly contain non-public Moog information (and that Skyryse lawfully had in its possession), (9) twelve documents that Mr. Pilkington appears to have emailed himself that potentially contain non-public Moog information, (10) 233 files from ███████ recycling bin related to a video game, and is in the process of producing (11) ███████ Moog-related photos and/or videos from his personal phone taken during his work at Moog. And separately, Skyryse has responded to Moog's expedited written discovery requests, supplemented its responses as appropriate, and has produced more than ten thousand additional documents to Moog and to iDS in the last two weeks. Accordingly, the Court should deny as moot Moog's request for the production of still more information "involved in the deletion of potentially relevant data" and any allegedly "non-public Moog information in [Skyryse's] possession, custody or control." (Motion, ECF 142-12 at 17 ("Requested Relief" items 2-3).)

## IV.    MOOG'S DEMAND FOR SUPPLEMENTAL DISCOVERY RESPONSES SHOULD BE DENIED AS MOOT.

Moog knew before filing its motion that Skyryse would supplement its responses to interrogatories and requests for admission, consistent with its obligations under the Federal Rules, because Skyryse told it so. As Skyryse's investigation progressed, it assessed its prior responses to each such request, and today served on Moog supplemental responses where Skyryse deemed doing so was appropriate. Accordingly, the Court should deny Moog's request for these supplementations as moot. (Motion, ECF 142-12 at 18 ("Requested Relief" item 5).) The Court also should

deny Moog's request for a special extension of time to file further motions to compel discovery, and instead take that deadline off calendar. This is because Moog itself has asked "that the June 16 deadline [for motions to compel] be set aside and that the Parties discuss this scheduling issue with the Court during the June 16 conference"—to which Skyryse has no objection. (Moog's June 13, 2022 letter to the Court submitted via email.)

## V.      CONCLUSION

For the reasons explained above, Skyryse respectfully requests that the Court deny Moog's motion to compel disclosures in its entirety, including all six itemized requests for relief.

Dated: June 14, 2022                            /s/ Gabriel S. Gross
                                                _____

**LATHAM & WATKINS LLP**

Douglas E. Lumish (Admitted *Pro Hac Vice*)
Gabriel S. Gross
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
          gabe.gross@lw.com

Joseph H. Lee (Admitted *Pro Hac Vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com

Kelley M. Storey (Admitted *Pro Hac Vice*)
555 Eleventh Street NW
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: kelley.storey@lw.com

24

**HARRIS BEACH PLLC**
Terrance P. Flynn
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Telephone: (716) 200-5050
Email: tflynn@harrisbeach.com

*Counsel for Defendant Skyryse, Inc.*

# Exhibit A

| | Name | Original File Path |
|---|---|---|
| 1 | $IXSTWY2.pdf | C:\Users\█████\Desktop\temp print\E101_A_1 - Copy.pdf |
| 2 | $IRSEQV7.pdf | C:\Users\█████\Desktop\temp print\E101_A_2 - Copy (2).pdf |
| 3 | $IJM5DJH.pdf | C:\Users\█████\Desktop\temp print\E101_A_2 - Copy.pdf |
| 4 | $IJB8VQM.pdf | C:\Users\█████\Desktop\temp print\E101_A_3 - Copy (2).pdf |
| 5 | $IKNKIA5.pdf | C:\Users\█████\Desktop\temp print\E101_A_3 - Copy.pdf |
| 6 | $IT2WX2M.pdf | C:\Users\█████\Desktop\temp print\E101_A_4 - Copy (2).pdf |
| 7 | $I9NGAHC.pdf | C:\Users\█████\Desktop\temp print\E101_A_4 - Copy.pdf |
| 8 | $IFXPV1H.pdf | C:\Users\█████\Desktop\temp print\E101_A_5 - Copy (2).pdf |
| 9 | $IY0SNMP.pdf | C:\Users\█████\Desktop\temp print\E101_A_5 - Copy.pdf |
| 10 | $IJS1HON.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS - Copy (2).pdf |
| 11 | $IPW1EUQ.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS - Copy.pdf |
| 12 | $I4L88YF.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS1 - Copy (2).pdf |
| 13 | $IQCSVQI.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS1 - Copy.pdf |
| 14 | $ILNJHVJ.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS2 - Copy (2).pdf |
| 15 | $IXY2IJO.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS2 - Copy.pdf |
| 16 | $I73DIYW.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS2.pdf |
| 17 | $IKXFKFB.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS3 - Copy (2).pdf |
| 18 | $ILONGP1.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS3 - Copy.pdf |
| 19 | $IVY49FC.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS4 - Copy (2).pdf |
| 20 | $IIE0XBH.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS4 - Copy.pdf |
| 21 | $IW8QZWC.pdf | C:\Users\█████\Desktop\temp print\E101_A_EMA_HARNESS5 - Copy (2).pdf |