# Exhibit B

**Gabriel S. Gross**
Direct Dial: +1.650.463.2628
gabe.gross@lw.com

140 Scott Drive
Menlo Park, California 94025
Tel: +1.650.328.4600  Fax: +1.650.463.2600
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

File No. 072290-0003

# LATHAM&WATKINS LLP

May 26, 2022

VIA EMAIL

Rena Andoh
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
*randoh@sheppardmullin.com*

Re:   *Moog Inc. v. Skyryse, Inc. et al.*, No. 22-cv-187 (W.D.N.Y.)

Dear Ms. Andoh:

We write regarding the serious deficiencies in Moog's responses to Skyryse's discovery requests, served on April 13, 2022 pursuant to the parties' March 17, 2022 stipulation (Dkts. 33, 36). We address some of Moog's fundamental violations below regarding its failure to produce documents and provide sufficient answers to interrogatories, and Skyryse reserves all of its rights and remedies. We are available to meet and confer with you or any of your colleagues tomorrow at 1 p.m., 2 p.m., and 3 p.m. ET about these urgent issues. Please confirm your availability.

## A.   Moog's Deficient Document Production

First, Moog has produced only 32 documents, all apparently from the personnel files of Individual Defendants Alin Pilkington and Misook Kim. But Moog agreed to produce non-privileged documents responsive to *all 15* of Skyryse's Requests for Production, which call for many more and different types of documents and communications than these few. Moog must immediately produce all documents responsive to all of Defendants' First Set of Requests for Production (Nos. 1-15). In supplementing its production, for example, Moog must produce all communications with or referencing defendants Kim and Pilkington since November 11, 2021, as required by Request for Production No. 4. This would include, for example, any emails or other communications between Moog employees and Pilkington or Kim in this time frame, regardless of form or format.

## B.   Moog's Deficient Interrogatory Responses and Repeated Failures to Identify Its Alleged Trade Secrets

Second, as we have explained to Moog on many occasions, Moog's failure to identify its alleged trade secrets (e.g., in response to Interrogatory No. 1) is a violation of a plaintiff's most basic discovery obligations in a trade secret case. Interrogatory No. 1 requires Moog to "Identify,

Rena Andoh
May 26, 2022
Page 2

for each Defendant, each alleged Trade Secret that You contend that Defendant misappropriated." Moog has not come close to sufficiently answering this interrogatory. And Moog's repeated refusal to do so not only prejudices Skyryse's ability to conduct its own investigation, to determine whether any alleged trade secrets are located on any Skyryse systems, to provide appropriate discovery on an expedited basis, and to prepare for the Preliminary Injunction hearing, but also renders all of Skyryse's responses to Interrogatory Nos. 2-9 deficient. Those subsequent interrogatories require information about every alleged trade secret that Moog was supposed to have identified, but failed to identify, in response to Interrogatory No. 1.

In response, Moog states merely that "Pursuant to Federal Rule of Civil Procedure 33(d), Moog will make its trade secrets at issue in this case available for inspection by Defendant." Not only is this a misapplication of Rule 33(d), which requires you to "specify the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," but it also fails to respond to the substance of Skyryse's request. Skyryse requested and is entitled to a *written identification* of each of Moog's alleged trade secrets, not a vague pledge to allow some still undisclosed alleged trade secrets to be inspected later.[1]

Moog cannot seriously contend that it does not know which of its own alleged trade secrets are at issue in this case. Moog told the Court that its investigation revealed that defendant Kim copied "136,994 files from her Moog work computer onto an external hard drive" on November 19, 2021. (Dkt. 96-13). Moog also prepared a spreadsheet that shows by file name and file type each and every file that Moog alleges Ms. Kim copied. Moog even claims to know the exact breakdown of these files by type, including for example, how many are "spreadsheets," how many are "plain text" or "Misc." files, among others. Moog knows where these files are located on its own servers, and knows what their contents are. But despite having had such granular data about each and every file that it alleges was taken since long before it filed this lawsuit, Moog has refused to identify what, if any, information within these files purportedly constitutes its trade secrets. Of course, not everything in every one of these files could legitimately be alleged to be trade secrets, and Moog is required at least to identify what in those files it alleges to be secret and not generally available to the public.

At best, Moog has alleged in its pleading that "certain" information constitutes its trade secrets, alluding to vague categories like "source code" and "certification process documents" or

---

[1] A party may not rely on a bare disclosure of documents under Rule 33(d) as a substitute for a complete response to an interrogatory that calls for legal contentions, particularly an identification of its alleged trade secrets. *Lockheed Martin Corp. v. L-3 Commc'ns Corp.*, No. 1:05-CV-902-CAP, 2006 WL 8432941, at *1 (N.D. Ga. Oct. 27, 2006) (relying on Rule 33(d) "is a completely insufficient response to an interrogatory requesting that a plaintiff in a trade secrets case identify what information it contends is proprietary"); *see also Gamevice, Inc. v. Nintendo Co., Ltd.*, No. 18-cv-01942-RS (TSH), 2019 WL 2763008, at *2 (N.D. Cal. July 2, 2019) (if the "primary thrust" of an interrogatory asks for a party's basis for its claims, then a Rule 33(d) response is insufficient because "[t]here is no way [the requesting party] can look through a stack of documents and discover [the responding party's] contentions"). Interrogatory No. 1 requires Moog to describe the information it contends to be its trade secrets, and cannot be answered by reference to a series of documents.

**LATHAM&WATKINS**LLP

"checklists," but has yet to identify a single specific file that it contends qualifies for trade secret protection. (Complaint, ¶¶ 39, 165). Moog failed to provide even this sort of generic information in its interrogatory response, but even if it had, it would be insufficient to identify Moog's actual trade secrets. Only Moog knows *what* specific blocks of source code it alleges to be trade secrets (again, of course not all source code could be a trade secret), *what* specific certification process documents it alleges to be trade secrets, and *what* specific checklists it alleges to be trade secrets. And only Moog knows *what* information, if any, among these files was the subject of reasonable measures to maintain their secrecy, and derives independent economic value from being not generally known to or readily ascertainable by others. Still, Moog has failed to identify *any* such information about its purported trade secrets in response to Interrogatory No. 1.

Beyond the facial implausibility of Moog's claim to own over 130,000 trade secrets, which defies common sense, here (as we have discussed) the names of many of these files indicate that they are commonly known, public, or originated with third-parties, in which Moog cannot possibly have trade secret rights. For example, this list includes files with such generic and publicly used names as desktop.ini and readme.txt. These are not trade secrets that belong to Moog.

Nor can Moog maintain its farfetched position, stated in other interrogatory responses, that "Moog's trade secrets at issue in this case consist of millions of files." Moog and its counsel cannot possibly have a good-faith, evidence-supported basis to have concluded there are "millions" of items of information, each of which unto itself (a) was in fact secret and not generally available to the public, (b) was the subject of reasonable measures to be kept secret, (c) derived independent economic value from not being generally known to, and readily ascertainable through proper means by others, much less (d) that Skyryse allegedly misappropriated each one of them. If Moog had a factual basis for such an assertion, it would be incumbent on Moog to identify each of those "millions" of trade secrets with specificity in response to Interrogatory No. 1.

Moog's failure to provide such basic information about its alleged trade secrets is not merely a technical rule violation; it goes to the heart of this case and is profoundly impacting and impeding the progress of discovery. For example, as you know, Skyryse has been diligently working to collect and produce discoverable information and to investigate Moog's claims of misappropriation. To this end, Skyryse has collected a significant amount of electronically stored information (ESI) from dozens of devices containing over *30 million files*, and more than *seven terabytes* of data. In our view, as you know, the sheer volume of potentially discoverable data requires the parties to work together to create a reasonably tailored set of search terms to identify documents that are actually likely to be relevant to the parties' claims and defenses. But only Moog can identify its alleged trade secrets, which would then enable the parties to craft appropriately targeted search terms and proceed more efficiently with discovery. *See Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) ("The burden is upon the plaintiff to specify [its alleged trade secrets], not upon the defendant to guess at what they are …. Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not, and it is doubtful whether [defendant] can undertake any meaningful discovery program ….").

Even Moog recognizes the problem it has created with the extreme scope and breadth of discovery, when doing so is expedient for Moog. For example, in response to at least three of Skyryse's interrogatories regarding, among other things, the development of Moog's alleged trade

Rena Andoh
May 26, 2022
Page 4

**LATHAM&WATKINS**LLP

secrets, where they are stored, and under what circumstances they have been disclosed, Moog responded that the interrogatories are "overbroad and unduly burdensome" because "Moog's trade secrets at issue in this case consist of millions of files." *See* Moog's Responses to Interrogatory Nos. 3, 4, and 8. Setting aside Moog's hyperbole about "millions" of trade secrets, the over-breadth and burdensome nature of discovery will remain a problem—even for Moog—until it identifies the trade secrets that are actually at issue in the case. Even as Moog has complained about discovery being "overbroad and unduly burdensome," it has sought expansive and nearly limitless discovery from Skyryse, while refusing to identify its alleged trade secrets or provide targeted search terms to make Skyryse's review manageable. Moog cannot have it both ways.

Accordingly, Moog must immediately provide a complete response to Interrogatory No. 1 and identify each of its alleged trade secrets with particularity. This will facilitate more effective and efficient discovery, and will allow the parties to have a meaningful discussion about methods such as using effective search terms, to focus their efforts. Moog also must supplement its responses to any interrogatories that hinge on the identification of its trade secrets, including at least Interrogatory Nos. 3, 4, and 8.

    **C.**    **Moog's Violations of Rule 33(d)**

In addition to the plain deficiencies in Moog's responses to Interrogatory Nos. 1, 3, 4, and 8, Moog also invoked Rule 33(d) in its responses to Interrogatory Nos. 1-8 and 10 (all but one of Skyryse's interrogatories), yet failed to identify any documents as required by the Rule. *See* Fed. R. Civ. P. 33(d)(1) (The party invoking Rule 33(d) must "specify the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.").

In response to these nine interrogatories, Moog responded that: "Pursuant to Federal Rule of Civil Procedure 33(d), Moog will produce on or before April 27, 2022 documents sufficient" to respond to all or portions of Skyryse's interrogatories. To date, Skyryse has not received documents sufficient to respond to these interrogatories, nor has Moog supplemented its interrogatory responses to cite the documents which it contends respond to Skyryse's interrogatories. Rule 33(d) does not entitle Moog to treat Skyryse's interrogatories as requests for production and leave Skyryse to guess which documents in Moog's production are relevant to each interrogatory. *See Humphrey v. Landers*, No. 905CV0931TJMDRH, 2007 WL 9747279, at *2 (N.D.N.Y. June 22, 2007) ("Rule 33(d) requires a party producing documents in response to an interrogatory to identify in their answers to the interrogatories specifically which documents contain the answer."). To the extent that Moog was waiting to produce and identify relevant documents "pursuant to an agreed upon Stipulated Protective Order," as stated in their responses to Interrogatory Nos. 1-8 and 10, a Protective Order was entered three weeks ago on May 6, 2022 (Dkt. 89), but we have yet to receive your supplemental responses.

To comply with its discovery obligations Moog must provide supplemental responses – including an identification of relevant documents incorporated into Moog's responses pursuant to Rule 33(d) – to Skyryse's Interrogatories by Tuesday, May 31, 2022.

4

LATHAM & WATKINS LLP

*   *   *

Please confirm that by Tuesday, May 31, Moog will remedy the deficiencies described above.

Very truly yours,

Gabriel S. Gross
of Latham & Watkins LLP

cc: Counsel of record

US-DOCS\132197010.3