

**Rob Fluskey**
Partner
Direct Dial: 716.848.1688
Direct Facsimile: 716.819.4718
*rfluskey@hodgsonruss.com*

June 24, 2022

***Via ECF***

Hon. Jeremiah J. McCarthy
United States Magistrate Judge
Robert H. Jackson U.S. Courthouse
2 Niagara Square
Buffalo, New York 14202

      Re:    *Moog Inc. v. Skyryse, Inc., et al.* (Case No. 1:22-cv-00187)

Dear Judge McCarthy:

      Hodgson Russ LLP and Sheppard Mullin represent plaintiff Moog Inc.  I write jointly with Latham & Watkins, counsel to defendant Skyryse, Inc.

      On June 16, 2022, the Court ordered the parties to confer and jointly identify which sealed filings can be unsealed, in whole or in part, by June 24, 2022.  Dkt. 164.  Moog and Skyryse conferred to discuss the sealed material.  The parties reached consensus on most of the material currently under seal.  As discussed below, only two docket entries remain in dispute.  For those entries, the parties have set forth their respective positions in Section III of this letter.

I.      **DOCKET ENTRIES TO UNSEAL**

      The parties agree that the following docket entries should be unsealed in their entirety:

- April 8 transcript **(ECF 71)**;

- April 26 transcript **(ECF 95)**;

- Moog's Memorandum of Law in Support of Motion for Forensic Protocol **(ECF 96-13)**;

- May 5 transcript **(ECF 104)**;

- Decision & Order Adopting Forensic Protocol **(ECF 109)**;

- Andoh Declaration **(ECF 118-1)**;

- Moog's Memorandum of Law in Support of Motion for Scheduling Order **(ECF 118-12)**;



June 24, 2022
Page 2

- Moog's Memorandum in Opposition to Skyryse's Motion to Dismiss/Transfer Venue **(ECF 133)**;

- Moog's Memorandum of Law in Support of Motion to Compel Disclosures **(ECF 142-12)**; and

- Moog's Memorandum in Opposition to Individual Defendants' Motion to Dismiss **(ECF 153)**.

## II.   DOCKET ENTRIES TO REMAIN UNDER SEAL

The parties jointly request that the Court maintain the seal (and redactions where applicable) over the following docket entries.[1]

- Complaint **(ECF 1)**;

- Complaint Ex. E **(ECF 1-5)**;

- Complaint Ex. F **(ECF 1-6)**;

- Moog's Memorandum of Law in Support of the Motion for TRO/PI **(ECF 4-1)**;

- Hunter Declaration **(ECF 4-2)**;

- Hunter Ex. C **(ECF 4-5)**;

- Hunter Ex. D **(ECF 4-6)**;

- Schmidt Declaration **(ECF 4-8)**;

- Stoelting Declaration **(ECF 4-9)**;

- Stoelting Ex. C **(ECF 4-12)**;

- Stoelting Ex. D **(ECF 4-13)**;

- Lopez Declaration **(ECF 4-16)**;

- Bagnald Ex. A **(ECF 4-19)**;

---

[1]   The parties reserve their right to seek unsealing of these docket entries at a future date and to challenge confidentiality designations as set forth in the Protective Order (ECF 89).



June 24, 2022
Page 3

- Moog's Memorandum of Law in Support of Motion for Expedited Discovery **(ECF 6-1)**;

- Moog's April 19 letter to Judge McCarthy **(ECF 74)**;

- Ex. D to Moog's April 19 letter **(ECF 74-4)**; and

- Exs. A, E, & F to the Gross Declaration **(ECF Nos. 166-3, 166-7, and 166-8)**.

- Portions of Skyryrse's May 4 letter to Moog **(ECF 96-9, 118-6, 142-5)** at p. 5 and p. 13-15

## III.   **Material in Dispute**

The following docket entries remain in dispute:

- The remaining portions of Skyryse's May 4 letter to Moog **(ECF 96-9, 118-6, 142-5)**; and

- Skyryse's Memorandum of Law in Opposition to Moog's Motion to Compel **(ECF 156)**.

### A.   **Skyryse's Position**

Skyryse requests that the Court grant its narrowly tailored request to redact the names and identifying information of individual non-parties, the disclosure of which risks jeopardizing their legitimate privacy interests and subjecting non-party private citizens to unverified aspersions that could harm their reputations, while having virtually no value to the public.

The presumption to public access of court records must be balanced against countervailing factors, including specifically "[t]he privacy interests of innocent third parties," which "weigh heavily in a court's balancing equation," *U.S. v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). Despite the presumption to public access, "[c]ourts have long declined to allow public access simply to cater 'to a morbid craving for that which is sensational and impure,'" *id.* at 1051–52, and the Second Circuit has specifically warned that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring courts." *Id.* at 1051. This is especially true for "embarrassing conduct with no public ramifications," the attempted disclosure of which "will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.*; *see also id. at* 1048–49 (explaining that "[u]nlimited access to every item turned up in the course of litigation would be unthinkable" because "[r]eputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or



downright false information."). Moreover, as the Second Circuit has explained, "[d]ocuments that play no role in the in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and 'stand[] on a different footing than … a motion filed by a party seeking action by the court." *Id.* at 1050.

The Second Circuit's warnings apply with full force here and support granting Skyryse's request to redact the names and personal details of non-parties who have cooperated in Skyryse's good-faith internal investigation and who have not been proven to have committed any wrongdoing. The fact that *Moog* apparently required some of these individuals to use their own personal devices to take photos related to their work at Moog, and then failed to take reasonable steps to determine whether they any of Moog's information remained on their personal devices when they resigned from Moog, is no justification for unnecessarily exposing their personally identifiable information in this commercial dispute between competitors. Likewise, that two of these people may not have fully complied with instructions to preserve potentially relevant information does not compel publicly revealing personally identifiable information of non-parties.

Skyryse's proposed redactions fit squarely within the "exception to the presumption of access" and there is no reason to jeopardize the reputations of private citizen non-parties. *See id.* at 1052 (reversing district court's decision to unseal report where release of the information was "more likely to mislead than inform the public" because it "would circulate accusations that cannot be tested by the interested public"); *see also*, *e.g.*, *Murray v. Coleman*, No. 08-CV-6383, 2011 WL 13213358 at *3 (W.D.N.Y. Sept. 30, 2011) (sealing exhibits containing "private information as to non-parties" over plaintiff's objection that "[D]efendants have not offered a proper reason for sealing the documents"). Moreover, beyond the serious privacy concerns implicated here, the discovery-related information Plaintiff seeks to unseal would provide no value to the public or in the performance of the Court's Article III functions, and therefore lies "entirely beyond the presumption's reach." *Amodeo*, 71 F.3d at 1050. As the Court recognized in *Amadeo*, "cooperation is . . . often essential to judicial efficiency," 71 F.3d at 1050, and where release of confidential information would "cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Id.*

In addition to the concerns described above, Skyryse's California employees have privacy rights in their personal information that are protected by the state's Constitution, which further supports granting Skyryse's sealing request. *See Murphy v. Kavo America Corp.*, No. CV 11 0410 YGR, 2012 WL 1497489, *1 (N.D. Cal. Apr. 27, 2012) (granting defendant's request to seal documents where they "implicate Constitutionally-protected privacy interests of KaVo's employees and former employees" "who are not parties to this litigation" and "have privacy interests in their personal information, and in other sensitive identifying information").

June 24, 2022
Page 5

Accordingly, Skyryrse requests that the narrowly tailed redactions contained in the letter filed at ECF 96-9, 118-6, 142-5, (the same document filed three separate times), and the opposition filed at ECF 156, remain sealed.

**B.  <u>Moog's Position</u>**

The proposed redactions to Skyryse's May 4, 2022 letter to counsel and the redactions applied to Skyryse's Opposition to Plaintiff's Motion to Compel Disclosures, dated June 14, 2022 (Dkt. 156), conceal the names of certain Skyryse employees.  Counsel for Skyryse asserts that these redactions relate to the "personal and private details of individual third parties . . . including employment details," claiming that the "reputations" of these non-party employees "could be affected" by Moog's accusations.  While it is true that "[t]he privacy interests of *innocent* third parties . . . should weigh heavily in a court's balancing equation" when considering a request to seal (see *U.S. v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995) (emphasis added)), those privacy interests are not implicated here for three reasons: this is not a criminal matter; the employees are not "innocent"; and no private "personnel information" or "personally identifiable information" would be disclosed.  Under Skyryse's approach, the names of non-parties substantively involved in a litigation could be concealed.  That is not the law.

The May 4 letter and the Opposition address Skyryse's investigation of employee wrongdoing.  Among the disclosures made in these documents are the retainer of a Moog-issued device by a Skyryse employee and, in at least one instance, the deletion of potentially relevant files by a Skyryse employee *after* the employee received a litigation hold notice, and *after* the employee was explicitly "instructed by counsel not to delete information potentially relevant to this action."  Dkt. 156 at 15.  In its redacted Opposition, Skyryse further admits that other anonymized employees possessed photos and videos taken during their work at Moog, possessed composition notebooks with work-related notes from Moog, may be in possession of Python code written during their time at Moog, and "reviewed some Moog code" at the instruction of individual Defendant Pilkington using "what he understood to be Mr. Pilkington's personal USB hard drive."  Dkt. 156 at 20-21.  Disclosure of those involved in spoliation – actual or potential – does not warrant sealing.

The employees' identities do not merit the Court's continued protection. There is a presumption of public access to judicial documents and this presumption "can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).  Although employees may "have privacy interests in their personnel information, and in other sensitive identifying information such as dates of birth" (*Murphy v. Kavo America Corp*., No. CV 11 0410 YGR, 2012 WL 1497489, *1 (N.D. Cal. Apr. 27, 2012)), this interest does not extend to the names of employees who engaged in the same kind of wrongful conduct at issue in this litigation.  As *Amodeo* explains, "[f]inancial records of a wholly owned business, family affairs,



June 24, 2022
Page 6

illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Amodeo*, 71 F.3d at 1051.  But that is not the kind of information Skyryse seeks to redact here.  There is no personnel or private information at issue, such as social security numbers, contact or residence information, bank account information, etc.—merely just the names of Skyryse employees.  Skyryse's proposed redactions serve to conceal the identity of individuals who have admitted to improperly maintaining, accessing, and disposing of Moog's information.

To the extent that Skyryse claims reputational harm to itself or its employees as justification for redacting the employees' identities, that argument also fails.  As set forth in Moog's May 24 letter, the Second Circuit is unambiguous that "[t]he potential for a negative impact on a party's future business or social status does not outweigh the presumption of access."  *Saadeh v. Kagan*, No. 20-CV-1945, *2 (PAE)(SN), 2021 WL 965334 (S.D.N.Y. Mar. 15, 2021) (refusing to seal complaint and collecting cases); *see also Badinelli v. Tuxedo Club*, No. 15-cv-06273 (VB), 2018 WL 6411275, at *2 (S.D.N.Y. Dec. 6, 2018) (recognizing that "[p]rotection against the possibility of future adverse impact on employment does not overcome the presumption of public access"); *Lytle v. JPMorgan Chase*, 810 F.Supp.2d 616, 626 (S.D.N.Y. Sept. 1, 2011) (refusing to redact the names of individuals whose conduct had been investigated even though "the conduct at issue may be potentially embarrassing to these employees (and JPMC) and may negatively impact their career prospects").  Any reputational harm and liability that Skyryse and its employees may incur from disclosure does not warrant the continued sealing of these documents.The parties thank the Court in advance for its guidance on these issues.

Respectfully submitted,

s/Rob Fluskey

Rob Fluskey

cc:      All Counsel of Record