UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

MOOG INC.,

Plaintiff,

v.

SKYRYSE, INC., ROBERT ALIN PILKINGTON,
MISOOK KIM, and DOES NOS. 1-50,

Defendants.

Case No.: No. 22-cv-00187

## PLAINTIFF'S OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO CLAW BACK MATERIALS

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................................... 1

II.  THE INDIVIDUAL DEFENDANTS' ACTIONS HAVE NO LEGAL BASIS............... 2

    A.   The Individual Defendants Fail to Justify Their Unilateral "Self-Help"............... 2

    B.   No Fifth Amendment Privilege Has Been Asserted ............................................. 3

    C.   The Individual Defendants' Improperly Continue to Attempt to Re-Litigate this Court's Order Regarding Moog's Trade Secret Identification .......... 5

    D.   No Legal Authority Has Been Provided to Permit a Clawback of Already-Produced Materials Under a Hypothetical Privilege Assertion ............................ 5

        1.   The Protective Order Does Not Save Individual Defendants................... 6

        2.   Moog is Extremely Prejudiced ................................................................ 7

    E.   No Legal Authority Has Been Provided That Moog's Communications with the FBI Justify a Clawback of Already Produced Materials......................... 8

    F.   The Individual Defendants' Own Timeline of Events Confirms They Have Waived Any Fifth Amendment Privilege (Which Has Not Been Asserted).......... 9

        1.   The Individual Defendants Were Aware of Criminal Proceedings Before They Hypothetically Asserted a Fifth Amendment Privilege ...........................................................................................10

        2.   The Individual Defendants' Cited Authority is Inapplicable .................12

            a.   The Individual Defendants' Waiver Cases are Not Applicable................................................................................12

            b.   The Individual Defendants' Clawback Cases are Inapposite........14

III.  CONCLUSION.......................................................................................17

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*
   No. 08 CV 3235 (ENV), 2010 WL 11623469 (E.D.N.Y. Aug. 27, 2010) ............................ 6

*Brock v. Gerace*
   110 F.R.D. 58 (D.N.J. 1986) ...................................................................................13

*Burt Hill, Inc. v. Hassan*
   No. CIV.A. 09-1285, 2010 WL 55715 (W.D. Pa. Jan. 4, 2010) ...........................................12

*Caramadre - Gellis v. Casey*
   338 F. Supp. 651 (S.D.N.Y. 1972) ........................................................................... 4

*Cartier, a Div. of Richemont N. Am., Inc. v. Micha, Inc.*
   No. 06 CIV/. 4699 DC, 2008 WL 2061386 (S.D.N.Y. May 12, 2008) ..................................13

*Colorado v. Spring*
   479 U.S. 564 (1987) ...............................................................................................12

*In re DG Acquisition Corp.*
   151 F.3d 75 (2d Cir. 1998) ...............................................................................14, 16

*In re DG Acquisition Corp.*
   208 B.R. 323 (Bankr. S.D.N.Y. 1997) ...................................................................13, 14

*Emspak v. United States*
   349 U.S. 190 (1955) ...............................................................................................12

*Fisher v. United States*
   425 U.S. 391 (1976) ...............................................................................................15

*In re Gorsoan Ltd.*
   No. 17-CV-5912 (RJS), 2020 WL 3172777 (S.D.N.Y. June 15, 2020) .........................11, 12

*HSH Nordbank AG New York Branch v. Swerdlow*
   259 F.R.D. 64 (S.D.N.Y. 2009) ...............................................................................15

*Klein v. Harris*
   667 F.2d 274 (2d Cir. 1981) ....................................................................................13

*Mackey v. U.S.*
   411 F.2d 504 (7th Cir. 1969) ................................................................................3, 5

*Maness v. Meyers*
   419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975) ........................................................14

*Miranda v. Arizona*
    384 U.S. 436 (1966)..................................................................................................12

*Nealy v. U.S. Surgical Corp.*
    587 F. Supp. 2d 579 (S.D.N.Y. 2008) ........................................................................ 9

*Pearson Education, Inc. v. Kumar*
    2010 WL 2230574 (S.D.N.Y. May 27, 2010), judgment vacated on other grounds,
    523 Fed. Appx. 2013 (Jun. 20, 2013)......................................................................... 8

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*
    No. 96CIV.7590(DAB)(JCF), 1997 WL 736726 (S.D.N.Y. Nov. 26, 1997) .......................15

*S.E.C. v. Caramadre*
    717 F. Supp. 2d 217 (D.R.I. 2010)............................................................................ 4

*Slainte Invs. Ltd. P'ship v. Jeffrey*
    No. 3:14-CV-1750 CSH, 2015 WL 1445331 (D. Conn. Mar. 30, 2015) .............................. 4

*Teltsher v. SEC*
    No. M-18-304, 1973 WL 388 (S.D.N.Y. Apr. 11, 1973)..................................................... 6

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*
    No. 97CIV.6124(JGK)(THK), 2000 WL 744369 (S.D.N.Y. June 8, 2000).........................15

*United States v. A & P Arora, Ltd.*
    46 F.3d 1152 (10th Cir. 1995) .................................................................................13

*United States v. Hatchett*
    862 F.2d 1249 (6th Cir. 1988) .................................................................................16

*United States v. O'Henry's Film Works, Inc.*
    598 F.2d 313 (2d Cir. 1979) ....................................................................................12

*Upstate Shredding, LLC v. Northeastern Ferrous, Inc.*
    2016 WL 865299 (N.D.N.Y. Mar. 2, 2016)................................................................... 8

<u>Other Authorities</u>

Fed. R. Civ. P. 45 ...................................................................................................13

I.    **INTRODUCTION**

The Individual Defendants have taken unprecedented actions to claw back materials that had been already produced several months ago based on a hypothetical, but not actual, invocation of Fifth Amendment privilege. The lack of legal and factual support in the Individual Defendants' Motion is highlighted by what is noticeably absent:

- The Individual Defendants still have not asserted any actual claim of Fifth Amendment privilege;

- They provide zero legal authority justifying the unilateral self-help actions they took in violation of multiple Court orders and when a briefing/hearing schedule was already in place, and given multiple opportunities to seek interim relief, either at the July 27 hearing or through emergency motion practice, they did neither;

- They provide zero legal authority that a party can claw back documents and electronic devices voluntarily produced months ago based on a hypothetical assertion of the Fifth Amendment;

- They have no valid explanation for why Moog is not entitled to keep a copy of the allegedly privileged materials under Section 16.3 of the Protective Order even if the clawback procedures were property invoked (which they were not); and

- They provide zero legal authority that Moog reporting a massive crime to the FBI and communicating with it is somehow improper or that there was a duty of disclosure;

The above facts are undisputed. One side of this dispute has submitted droves of legal authority support its positions. The other has not. With this backdrop, there is no basis for this Court toto authorize the Individual Defendants' continuing violations of multiple existing Court orders.

What is actually stated in the Individual Defendants' Motion further confirms that their actions are baseless. Instead of providing legal authority for their actions, the Individual Defendants attempt to re-litigate (for the third time) this Court's prior orders regarding Moog's forthcoming trade secret identification, hurl unsupported and paranoid statements regarding Moog's purported relationship with the FBI, wrongfully accuse Moog of bearing responsibility for somehow tricking them into complying with their black-letter discovery obligations in this litigation, and ignore the timeline of events before the Court. Because Moog has already addressed all the core legal issues in its motion filed on August 11 (ECF 228), Moog will focus most of its attention in this Opposition on the Individual Defendants' new assertions, all of which lack merit.

## II.    THE INDIVIDUAL DEFENDANTS' ACTIONS HAVE NO LEGAL BASIS

### A.    The Individual Defendants Fail to Justify Their Unilateral "Self-Help"

The subject of the instant briefing is whether the Individual Defendants were justified in unilaterally instructing iDS to withdraw access to 17 electronic devices that had been turned over on April 1 to iDS pursuant to the March 11 Order (ECF 25) and made available for review to Moog on June 30 pursuant to the Inspection Protocol ordered by this Court (ECF 96-02, 109). That the Individual Defendants violated multiple orders of this Court in taking these actions is accentuated by the Individual Defendants failing to raise the clawback issue during the July 27 hearing with the Court, and with a briefing/hearing schedule already set on the Individual Defendants' Motion to Stay (ECF 206, 214).

Moog provided legal authority and argument demonstrating why the Individual Defendants' acts of self-help (without so much as even seeking any interim relief from existing Court orders) are inappropriate. (ECF 228 at pp. 8-9). Noticeably absent from the Motion is any

legal authority or explanation how their self-help actions were justified. For this reason alone, the Motion should be denied and the status quo should be restored.

### B.    No Fifth Amendment Privilege Has Been Asserted

The most critical part of this entire dispute is that the Individual Defendants *have not in fact asserted any Fifth Amendment Privilege in connection with this action*. They instead claim they are entitled to clawback hundreds of thousands of produced documents based on a hypothetical assertion of privilege because they need additional information to determine whether to actually invoke the privilege in this action or not. (Mot. at p. 10).  This is not the law.

First, as a threshold issue, the Fifth Amendment does not require a criminal investigation as a pre-requisite and is not retroactive.  *See Mackey v. U.S.*, 411 F.2d 504, 508 (7th Cir. 1969) (noting that "the scope of the privilege against self-incrimination did not warrant retroactive application.") (citing *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 416 (1966)). Therefore, the real issue that the Individual Defendants are facing is that they did not invoke the Fifth Amendment in this action, and instead voluntarily produced materials as a matter of course and pursuant to Court orders from which they did not seek contemporaneous relief.  Now, the Individual Defendants are trying to have the ultimate cake while eating it too.  They are attempting the legally unsupported trifecta of:

1.   Refusing to assert the Fifth Amendment in this action in order to avoid conceding any adverse inference;

2.   Asserting the Fifth Amendment in the criminal investigation over materials they already voluntarily produced in this action; and

3.   Trying to claw back materials they voluntarily produced in this action to cover their tracks regarding their assertion of the Fifth Amendment in the criminal investigation.

The Individual Defendants' conduct is deeply troubling for many reasons, a key one of which is the lack of any actual invocation of Fifth Amendment privilege in this action. Every single one of the Individual Defendants' arguments (clawback, waiver, etc.) are predicated on an actual assertion and claim of affirmative privilege. That has not occurred here. Any protections under the Fifth Amendment are only invoked when the privilege has actually been asserted. *See Slainte Invs. Ltd. P'ship v. Jeffrey*, No. 3:14-CV-1750 CSH, 2015 WL 1445331, at \*6 (D. Conn. Mar. 30, 2015) ("because the Fifth Amendment privilege is not self-executing, *Defendant must invoke it in order to receive its protection*") (emphasis added). Indeed, a party cannot obtain protections under the Fifth Amendment without asserting it in order to avoid an adverse inference in a civil case. *See S.E.C. v. Caramadre*, 717 F. Supp. 2d 217, 222 (D.R.I. 2010) (holding "the Fifth Amendment protects a party from self-incrimination; it does not protect someone from having to invoke the right to avoid self-incrimination in the first place" and "there is no pre-incrimination right not to have to use the Fifth Amendment except as a measure of last resort").

If the Individual Defendants want any protection from self-incrimination, they must affirmatively invoke the privilege and live with the consequences that attach to it. *See Caramadre - Gellis v. Casey*, 338 F. Supp. 651, 653 (S.D.N.Y. 1972) ("Any witness in a civil or criminal trial who is himself under investigation or indictment is confronted with the dilemma of choosing to testify or to invoke his privilege against self-incrimination. Nevertheless*, he must make the choice despite any extra-legal problems and pressures that might follow*.") (emphasis added). Moreover, any invocation of the Fifth Amendment will not cover prior disclosures, such as production of the seventeen computing devices – first to iDS on April 1, and then to Moog on June 29. . *See Mackey*, 411 F.2d at 508.

**C.**      **The Individual Defendants' Improperly Continue to Attempt to Re-Litigate this Court's Order Regarding Moog's Trade Secret Identification**

Confusingly, a large portion of the Motion argues that Moog must identify its trade secrets now and that its failure to do so is "dilatory." (Mot. at pp. 3-5, 10). Moog's August 11 Motion addresses in detail why this is an improper attempt to re-litigate the Court's ruling on Skyryse's Motion to Compel, and why no further trade secret identification is needed to properly invoke the Fifth Amendment. (ECF 228 at pp. 18-19).

However, there is one astounding accusation that must be addressed. The Individual Defendants argue: "To date, Plaintiff refuses to comply with the Court's order, citing the same pretextual objections raised prior to Skyryse's motion." (Mot. at p. 5). But, this Court has already determined after substantial motion practice that Moog "need[s] to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure, particularly in view of Skyryse's admission that some of that information may now have been deleted." (ECF 205 at p. 3). Accusing Moog of violating the Court's order, when it expressly provides that Moog must first get full access to the iDS devices (which Individual Defendants are not preventing), is highly improper. This is even more striking coming from the Individual Defendants who have not disputed that they stole 1.4 million files from Moog and are continuing to violate multiple Court orders.

**D.**      **No Legal Authority Has Been Provided to Permit a Clawback of Already-Produced Materials Under a Hypothetical Privilege Assertion**

The Individual Defendants *do not cite a single case* permitting the clawback of documents which have already been produced in civil litigation under the Fifth Amendment (which, again,

has not even been asserted here). The one case and one secondary source cited on Page 15 of the

Motion discuss an actual assertion of the Fifth Amendment (which has not occurred) to "avoid

having to answer inquiries" or "refusing to answer questions at a deposition, or requests for

admission, or to produce documents." (Mot. at p. 15). These authorities provide that an invocation

of the Fifth Amendment (which has not occurred) may protect providing *future* testimony or

responding to discovery request to provide answers or documents *after* invoking the privilege. The

law also makes clear that documents in the possession of a third party cannot be subject to a Fifth

Amendment claim of privilege.[1] Without any authority authorizing the Individual Defendants'

retroactive actions, their requested relief cannot be granted by this Court.

### 1. The Protective Order Does Not Save Individual Defendants

With no legal authority to support their position, the Individual Defendants attempt to rely

on the clawback provisions in the Protective Order (ECF 89). As explained in detail in Moog's

Motion filed on August 11, the Protective Order does not authorize the Individual Defendants'

unilateral and complete clawback. (ECF 228 at pp. 9-11). As a threshold matter, Section 11.1 of

---

[1] The Individual Defendants make further contentions that, although not directly relevant to the issues before the Court, are highly concerning. They claim that Moog will be able to provide "the Government with information the Government would not be able to obtain otherwise due to the Individual Defendants' Fifth Amendment rights." (Mot. at p. 8). They similarly claim that Moog should share "information with the Government that would otherwise be protected by the Individual Defendants' Fifth Amendment rights." (*Id*. at p. 8). If the materials are already in the possession of any third party, Fifth Amendment privilege can no longer be invoked. *See Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*, No. 08 CV 3235 (ENV), 2010 WL 11623469, at *7 (E.D.N.Y. Aug. 27, 2010) ("Financial statements and documents pertaining to Ms. Halpert's net worth that are in a third party's possession are not subject to the Fifth Amendment privilege and their production may be compelled by a non-party subpoena. The Fifth Amendment applies only to the individual, not to information that may incriminate the individual."); *Teltsher v. SEC*, No. M-18-304, 1973 WL 388, at *1 (S.D.N.Y. Apr. 11, 1973) ("it seems clear that his personal Fifth Amendment privilege could not be asserted against a subpoena directed to documents in the possession of a third party.").

the Protective Order requires a "claim of privilege" in order for a clawback and here there has been no claim of privilege. The Individual Defendants do not and cannot explain how Section 11.1 of the Protective Order is satisfied.

Section 16.3 of the Protective Order allows Moog to retain a copy of all clawed back materials to challenge the assertion of privilege, even if the clawback was properly invoked (which it was not). (ECF 89, § 16.3). This allows Moog to retain a copy of all of the images of the 23 iDS devices clawed back by the Individual Defendants while Moog and the Court assess the claim of privilege. With absolutely no defense to this provision in the very document they rely on, the Individual Defendants baldly argue "Section 16.3 is inapplicable because Plaintiff refuses to provide the information necessary to assert the privilege with any greater specificity." (Mot. at p. 13). In other words, the Individual Defendants are relying on the Protective Order to support a unilateral clawback, but are also claiming that the two provisions that directly undermine their position and allow Moog to retain copies of all clawed back materials do not apply. Either the Protective Order applies or it does not. The Individual Defendants cannot cherry pick the provisions that apply, but reject others that purportedly do not. Even if a privilege was properly asserted and the clawback was properly invoked under the Protective Order, it is unambiguous that Moog is allowed to retain copies of all clawed back materials pursuant to Section 16.3. For this additional reason, the status quo must be restored.

### 2.    Moog is Extremely Prejudiced

The Individual Defendants make the incredible statement that "Plaintiff is not prejudiced by the Individual Defendants' actions" because there "is no risk of spoliation." (Mot. at p. 14). But, this Court has ruled already that Moog is entitled to review the iDS devices before making a fulsome and complete trade secret identification which will be a substantial and onerous task given the volume of trade secrets at issue in this case. (ECF 205). The prejudice is self-evident. *See*

*Pearson Education, Inc. v. Kumar*, 2010 WL 2230574, at *2 (S.D.N.Y. May 27, 2010) (finding that "Plaintiffs would be prejudiced by a delay in entry of an injunction . . ."), judgment vacated on other grounds, 523 Fed. Appx. 2013 (Jun. 20, 2013).

**E.     No Legal Authority Has Been Provided That Moog's Communications with the FBI Justify a Clawback of Already Produced Materials**

With no legal bases for their actions, the Individual Defendants rattle off hyperbole and paranoid statements about Moog's communications with the FBI. They claim that Moog "concealed the fact that it instigated the USAO Investigation prior to filing the Complaint." (Mot. at p. 7). They go so far as to call Moog "an undeputized agent of the Government." (*Id.* at p. 8). They also claim that they would not have produced the 23 electronic devices to iDS "[h]ad Plaintiff properly disclosed that it instigated the USAO Investigation." (*Id*. at p. 18).

These accusations are unfounded and prejudicial. The Individual Defendants cite no legal authority showing that it is improper for Moog to report a theft of over 1.4 million files (many of which pertain to sensitive Government programs) to the FBI.  When the FBI has made certain requests from Moog in connection with its criminal investigation, there is nothing improper with Moog responding to those requests and providing information. *See Upstate Shredding, LLC v. Northeastern Ferrous, Inc.*, 2016 WL 865299, at *4 (N.D.N.Y. Mar. 2, 2016) (finding no fault or basis for sanctions when "Weitzman [witness] was cooperating with the FBI investigation."). And certainly the Individual Defendants are not heard to argue that Moog has an obligation to refrain from communication with law enforcement.  There certainly is no prejudice or impropriety to the Individual Defendants given that a Moog has been completely transparent regarding its communications with the FBI—it has produced all its communications with the FBI and has offered to provide a mutual exchange of complete document productions to the FBI (but Skyryse

has refused). The Individual Defendants are grasping at straws because there is no justification for their conduct.

Further, in order for Moog to have "concealed" something from the Individual Defendants, there must have been a duty of disclosure. *See Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) (a concealment claim requires a showing that a party "had a duty to disclose material information."). Noticeably, the Individual Defendants do not and cannot cite to any legal authority that Moog was required to disclose the fact that it had been communicating with the FBI before and after the Complaint was filed. Without any such authority, the Individual Defendants' conjectural and hyperbolic complaints about Moog acting as an agent of the FBI cannot be heard.

The Individual Defendants also claims that Moog advises the Government "of the trade secrets and classified information at issue" but "argues before this Court that providing any information concerning its trade secrets is impossible without complete access to all the Individual Defendants' devices" and that such positions are inconsistent. (Mot. at p. 7). There is no inconsistency whatsoever. As Moog's counsel advised the Court, it has not provided any additional information regarding its trade secrets that have not already been produced to the other parties, namely the file log showing the 136,994 files copied by defendant Kim (which was included in Moog's initial filings) and the folder log showing the folder classifications copied by Pilkington (which was provided to Defendants in April). No evidence has been submitted showing otherwise.

### F. The Individual Defendants' Own Timeline of Events Confirms They Have Waived Any Fifth Amendment Privilege (Which Has Not Been Asserted)

As a threshold matter, the Individual Defendants' waiver does not even come into play because no Fifth Amendment privilege has actually been asserted that could have been waived. Regardless, even if the privilege had been asserted, Moog's August 11 Motion explains in detail

why the Individual Defendants have expressly and unambiguously waived such a privilege. (ECF 228 at pp. 14-17). Moog provided this Court a clear timeline of events demonstrating that the Individual Defendants were aware of a criminal investigation for at least 6 weeks before attempting to clawback the materials in question. (ECF 228 at pp. 7-8).

> 1. **The Individual Defendants Were Aware of Criminal Proceedings Long Before They Hypothetically Asserted a Fifth Amendment Privilege**

There is a continued glaring omission in the Individual Defendants' claim that there has been no waiver—*they continue to refuse to disclose when they were served with grand jury subpoenas*. They just generally state that "were recently served with grand jury subpoenas by the USAO." (Mot. at p. 10). The Court cannot conclusively establish the exact date when the Individual Defendants became aware that they were the subjects of an FBI criminal investigation until they disclose the date they were served with the subpoenas. This silence is deafening.

Regardless, the Individual Defendants do not deny their receipt of the June 10 letter at issue, which expressly disclosed the FBI's request for transcripts "in connection with an ongoing federal investigation into the files taken from Moog that are the subject of this lawsuit." (ECF 228-4). Instead, they claim there was no waiver because the letter did not disclose that "Plaintiff initiated the USAO investigation" or the purported "depth of Plaintiff's relationship with the Government." (Mot. at p. 8). These are red herrings. Either the Individual Defendants were aware of the criminal investigation as of June 10 (or much earlier) or they were not. The fact that Moog had communicated with the FBI has no bearing on whether there was a waiver or not. The Individual Defendants cite no case law that they must have been apprised of Moog's communications with the FBI in order to making a knowing and voluntary waiver.

Further, the Individual Defendants admit that Pilkington "retained criminal defense counsel on or near June 16." (Mot. at p. 10). While the Individual Defendants claim they "quickly determined that the Individual Defendants could only make a broad Fifth Amendment claim," there was nothing quick about the determination. The Individual Defendants waited at least six weeks after the June 10 and June 16 dates before clawing back the materials at issue. In the middle of this period, the Individual Defendants consented to Moog's access to 17 of the 23 electronic devices turned over to iDS on June 29. Courts are unambiguous that this period of time passing between knowledge of criminal investigation and seeking protections under the Fifth Amendment privilege (which has not been asserted) constitutes a waiver. *See JEFFREY M. COHEN, Plaintiff, v. ROGER L. ALTMAN, & ROSA ALTMAN*, Defendants., No. 519CV274TJMTWD, 2022 WL 370948, at **3-4 (N.D.N.Y. Feb. 8, 2022) (where the defendants "did not assert the Fifth Amendment to resist discovery until long after the discovery process began," the court held the "assertion of the Fifth Amendment came at a point that the assertion served mostly to frustrate the discovery process." The court further cautioned: "*Courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate, or gain an unfair strategic advantage over opposing parties*.") (internal citations omitted, emphasis added); *In re Gorsoan Ltd.*, No. 17-CV-5912 (RJS), 2020 WL 3172777, at *5 (S.D.N.Y. June 15, 2020) (holding "Bullock's belated invocation of her privilege after months of negotiation smacks of 'procedural gamesmanship' and 'dilatory tactics'" and "Bullock intentionally delayed asserting her privilege for strategic advantage, resulting in significant prejudice to Gorsoan").

Finally, it bears repeating that Moog brought claims against the Individual Defendants under the Defend Trade Secrets Act ("DTSA"), which has both criminal and civil components. Therefore, the Individual Defendants, having indisputably taken 1.4 million files from Moog and

being served with a DTSA claim, should have reasonably been on notice for the potential of a criminal investigation from the date they were served with the Complaint in this action on March 8. *See In re Gorsoan Ltd.*, 2020 WL 3172777, at *5 (after a hearing in April 2018 where the court raised for the first time the prospect of referring the defendant's conduct to the DA's office for a perjury investigation, the court held that any assertion of the Fifth Amendment should have occurred "at least as of that hearing or shortly thereafter").

### 2.     The Individual Defendants' Cited Authority is Inapplicable

The cases cited by the Individual Defendants in support of their argument that a waiver did not occur are inapposite. The Individual Defendants do not cite a *single case* in which a party seeking to assert a Fifth Amendment "act of production" privilege was permitted to assert such privilege after admitting that the materials exist and are within its control.  Nor do they cite a *single case* in which a party seeking to assert a Fifth Amendment "act of production" privilege was permitted to assert such privilege after going as far as producing materials for review.  This is because the privilege does not even attach to such already produced documents under the "foregone conclusion" exception and there is thus no privilege to be waived.  *See Burt Hill, Inc. v. Hassan*, No. CIV.A. 09-1285, 2010 WL 55715, at *3 (W.D. Pa. Jan. 4, 2010).  To the extent that the privilege could somehow still be applied to the production of the devices at issue, the authority cited by the Individual Defendants does not contradict a finding that a waiver occurred.

### a.     The Individual Defendants' Waiver Cases are Not Applicable

While Defendants cite numerous cases about the caution to be exercised in waiving the Fifth Amendment privilege, each of those cases is highly distinguishable. (Mot. at pp. 15-16). *See, e.g.*, *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (upholding a written waiver); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (discussing waiver in the context of criminal interrogations); *Emspak v. United States*, 349 U.S. 190, 196 (1955) (finding no waiver where purported waiver

was based only on one equivocal answer to a deposition question); *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318 (2d Cir. 1979) (specifically addressing the privilege as applied to a custodian of corporate records).[2]  None of these situations apply here.

Further, the Individual Defendants' argument that delay in asserting the privilege is "not a sufficient reason to find waiver" is not supported by the caselaw they cite.  *In re DG Acquisition Corp.*, 208 B.R. 323, 328 (Bankr. S.D.N.Y. 1997) ("*DG I*"), merely found that failure to raise the Fifth Amendment within the 14-day time period for objections allowed by Fed. R. Civ. P. 45 is not an absolute time-bar to the assertion of the privilege.  Likewise, *United States v. A & P Arora, Ltd.*, 46 F.3d 1152 at *1 (10th Cir. 1995), does not stand for the privilege that untimeliness cannot justify waiver; the Court in that case actually decided that "[it] need not resolve th[e] sensitive question" of whether untimeliness waived the privilege.

Importantly, in *A & P Arora* the 10th Circuit noted that "[t]he Supreme Court has stated in another context (and in dicta) that the privilege against self-incrimination may be lost by not asserting it in a timely fashion.'"  *Id.* at *1-2.  The other case cited by the Individual Defendants on this point, *Brock v. Gerace*, 110 F.R.D. 58, 64 (D.N.J. 1986), also notes that "[t]he Fifth Amendment privilege can itself be "lost by not asserting it in a timely fashion."  *Id.* at 62 (holding that the privilege was not waived where "there was a *clear and timely statement by counsel of the client's refusal to answer*") (emphasis added).

---

[2] The Individual Defendants also incorrectly lay out a two part test for waiver that applies only, specifically, to "testimonial waiver" made by "statements…made under oath."  *See Cartier, a Div. of Richemont N. Am., Inc. v. Micha, Inc.*, No. 06 CIV/. 4699 DC, 2008 WL 2061386, at *2 (S.D.N.Y. May 12, 2008) (evaluating whether statements under oath at a deposition created a waiver); *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981) (evaluating whether statements under oath at trial created a waiver, and finding waiver).  No case cited by the Individual Defendants purports to apply this test to the "act of production" privilege at issue here, nor would such application be appropriate given that the test specifically requires evaluation of witness statements under oath. *See Cartier,* 2008 WL 2061386 at *2-3.

Clearly, even the caselaw cited by the Individual Defendants makes clear that a waiver of the Fifth Amendment privilege is possible based on failure to assert the privilege at the appropriate time.  The Second Circuit holds that "[t]he Fifth Amendment privilege is not self-executing; if not invoked it may be deemed to have been waived, *Maness v. Meyers*, 419 U.S. 449, 466, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), including by litigation conduct short of a 'knowing and intelligent waiver.'"  *In re DG Acquisition Corp.*, 151 F.3d 75, 80 (2d Cir. 1998) ("DG II").  Indeed, courts in this Circuit have found that "[a] waiver of the Fifth Amendment privilege against self-incrimination may be inferred from a witness' course of conduct," and that "[t]he court need not look into whether the witness was aware of the privilege and chose to waive it consciously." *DG I*, 208 B.R. at 327.  As described further in Moog's August 11 Motion, the Individual Defendants' course of conduct could not be more clear in support of a waiver. (EF 228 at pp. 14-15). They voluntarily signed the March 11 Order, produced 23 electronic devices to iDS on April 1, served written discovery responses on April 13 that contained no Fifth Amendment privilege, and they were placed on affirmative notice of the FBI investigation by the middle of June (at the latest) but did not seek to clawback the materials in question until July 29.

### b.     The Individual Defendants' Clawback Cases are Inapposite

The Individual Defendants attempt to argue that a line of caselaw regarding the clawback of inadvertently disclosed attorney-client privileged materials should apply to its disclosure of materials here, allowing them to "claw back" the devices.  These cases cannot be applied to the instant situation for two fundamental reasons: 1) here, it is the "act of production" that is privileged, rather than the contents of the materials themselves, making the privilege at issue fundamentally different with regard to whether it can be "clawed back"; and 2) the production here was not inadvertent, as it was in each of the cases cited by the Individual Defendants.

It is indisputable that the Fifth Amendment does not protect a defendant from the disclosure of incriminating contents, but only from an "act of production" that would itself amount to an admission (i.e. by admitting that the defendant in fact possessed documents where the possession itself is incriminating). *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 411 (1976). This privilege is fundamentally different from the attorney-client privilege, which protects the contents of communications, rather than the fact of the communications existence. While the contents of attorney-client privileged communications can be clawed back, the very fact of the existence of the materials in a defendant's possession, which is all that is protected by the "act of production" privilege, cannot. Tellingly, not one case cited by the Individual Defendants purports to apply a clawback provision to the "act of production" privilege. (Mot. at p. 17). *See HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 75 (S.D.N.Y. 2009) (dealing with clawback of attorney-client privileged materials with no application to the Fifth Amendment or "act of production" privilege); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97CIV.6124(JGK)(THK), 2000 WL 744369, at *4 (S.D.N.Y. June 8, 2000) (same); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96CIV.7590(DAB)(JCF), 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997) (same).

Furthermore, in each of the above-mentioned cases cited by the Individual Defendants, the materials that were sought to be clawed back were produced inadvertently. That is, the privileged contents of the documents were missed in the attorneys' review, and were produced as part of a larger production. *See, e.g.*, *HSH Nordbank*, 259 F.R.D. at 75 (nine privileged documents inadvertently produced in a production of 250,000 pages of documents).

Here, there can be no argument that the electronic devices at issue were produced accidentally or inadvertently. The devices were produced to iDS on April 1 in response to the

March 11 Order *which the Individual Defendants stipulated to*. Rather than make more targeted productions in response to the March 11 Order, the Individual Defendants elected to produce 23 electronic devices wholesale to iDS, apparently as a way to comply with their obligations with minimal effort. This is not a scenario of attorney oversight—the production of devices was knowing, voluntary, and stipulated to by the Individual Defendants. The Individual Defendants then allowed iDS to make seventeen of these devices available to Moog on June 29, almost three weeks after Moog informed the Court of the FBI investigation on June 10 – and said nothing until unilaterally revoking access to those seventeen devices on July 29.

Finally, the Individual Defendants argument that a change in circumstances occurred supporting waiver should be rejected.  As noted above, in neither of the two cases cited by the Individual Defendants on this point was a defendant permitted to "claw back" already produced materials.  (Mot. at pp. 16-18).  *See DG II*, 151 F.3d at 78 (no documents produced); *United States v. Hatchett*, 862 F.2d 1249, 1250 (6th Cir. 1988) (defendant refused to answer interrogatory).  Further, a change in circumstances was not dispositive in either case.  *See DG II*, 151 F.3d at 83 (while acknowledging there was an affidavit detailing "changed circumstances," noting that the lower court did not address changed circumstances in its decision and affirming on multiple grounds, including that the defendants were told that their invocation of the privilege was premature until in response to specific questions); *United States v. Hatchett*, 862 F.2d 1249, 1250 (6th Cir. 1988) (holding that the defendant needed to explain how the interrogatory responses raised a reasonable fear of incrimination and remanding on that ground).  Even if a change in circumstances were dispositive, no such change occurred here. There was absolutely no change in circumstance between the middle of June (at latest), when the Individual Defendants were

conclusively aware that they were the subject of FBI criminal investigation, and July 29, when the Individual Defendants clawed back the materials in question.

## III.    **CONCLUSION**

Moog respectfully requests that the Court deny the Individual Defendants' Motion in full, and issue an order restoring the status quo before July 29 (allowing Moog access to 17 of the Individual Defendants' iDS devices) pending resolution of the Individual Defendants' Motion to Stay set for hearing on September 12, 2022.


Dated: New York, New York
       August 15, 2022

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Plaintiff Moog Inc.*


By:   s/Rena Andoh
      Rena Andoh
      Travis J. Anderson (admitted *pro hac vice*)
      Lai Yip (admitted *pro hac vice*)
      Tyler E. Baker (admitted *pro hac vice*)
      Kazim A. Naqvi (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700

and

**HODGSON RUSS LLP**

By:   s/Robert J. Fluskey, Jr.
      Robert J. Fluskey, Jr.
      Melissa N. Subjeck
      Reetuparna Dutta
      Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000