UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOOG INC.,

                                                             **REPORT, RECOMMENDATION AND ORDER**
                             Plaintiff,              **[FILED UNDER SEAL]**

v.                                                                1:22-CV-187-LJV-JJM

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and
DOES NOS. 1–50.

                             Defendants.
_____

        The parties' familiarity with the relevant factual and procedural history of this case is presumed. After hearing oral argument on August 25, 2022, I announced from the bench my decision regarding several motions [47, 48, 228, 229 and 247][1] which have been referred to me by District Judge Lawrence J. Vilardo for initial consideration [29, 221]. This Report, Recommendation and Order confirms and explains that decision.

**A.     Motions Relating to Dismissal or Transfer of Venue [47, 48, 247 and 248]**

        Defendants seek dismissal of the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(2) and (3) for lack of personal jurisdiction and improper venue or, in the alternative, for transfer of venue to the Central District of California pursuant to 28 U.S.C. §1404(a). Regardless of whether later portions of the case may be subject to dismissal or transfer, the only question which must be decided at this time is which court should handle proceedings up to and including a decision on Moog's preliminary injunction motion.

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

That question is clearly answered by the parties' March 16, 2022 Stipulation and Proposed Order (the "Stipulated Order") [33], which I approved on March 18, 2022 [36]. The Stipulated Order provided that defendants, all of whom were represented by counsel, "consent to the jurisdiction and venue of the Court for purposes of this stipulated Order". [33], ¶14. It established "procedures regarding expedited discovery, and briefing and hearing schedule on Moog's Motion for Preliminary Injunction" (id. at 1), provided a mechanism for my resolving discovery disputes (id., ¶9), and scheduled the preliminary injunction hearing "for July 6, 2022, or 14 days after Moog's Reply in Support of it Motion for Preliminary Injunction is filed, whichever is later, subject to the Court's availability" (id., ¶6).

"[A] consent decree or order is to be construed for enforcement purposes basically as a contract." United States v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975). Since "terms in [a] contract must be assumed to have the same meaning throughout", United States v. Prevezon Holdings, Ltd., 289 F. Supp. 3d 446, 453 (S.D.N.Y. 2018), the phrase "the Court" as used in ¶6 of the Stipulated Order ("subject to the Court's availability") has the same meaning as "the Court" as used in ¶14 ("Defendants consent to the jurisdiction and venue of the Court for purposes of this stipulated Order"). Indeed, there would be no point to scheduling a hearing "subject to the Court's availability" if the hearing was not to be held here. See Buffalo Laborers Welfare Fund v. Aria Contracting Corp., 2015 WL 12806604, *3 (W.D.N.Y. 2015), adopted, 2016 WL 7035060 (W.D.N.Y. 2016) ("[t]he parties will not be presumed to have entered into a meaningless writing"). In fact, during a conference on July 15, 2022, Skyryse's attorney recognized that fact: "We are, unless [Moog is] successful in . . . mov[ing] the hearing, which we may object to, three months away from a hearing *in front of Judge Vilardo* where they are going

to ask Judge Vilardo to impose very significant injunctive relief on Skyryse". [204] at 10 (emphasis added).

Skyryse now moves for leave to file a Supplemental Reply [247], arguing that the parties' negotiations indicate that defendants did not intend for the preliminary injunction hearing to be held in this court. However, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it . . . . [T]he instrument must be construed as it is written, and not as it might have been written". United States v. Armour & Co., 402 U.S. 673, 682 (1971). Since I find no ambiguity in the language of the Stipulated Order, "testimony of prior negotiations is incompetent to change the same". Cluett, Peabody & Co v. Sayles Finishing Plants, 52 F. Supp. 214, 217 (N.D.N.Y. 1943). See also 11 Williston on Contracts, §33:26 (4th ed.) ("if the parties have integrated their agreement into a single written memorial, then all prior negotiations and agreements regarding the same subject matter, whether oral or written, are excluded from consideration").

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006). Having consented to litigate Moog's preliminary injunction motion in this court, defendants cannot now be heard to argue that it should be determined by a different court, since "[w]hatever inconvenience the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting". Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas, 571 U.S. 49, 64 (2013).

Therefore, I recommend denial of that portion of defendants' motions suggesting that this court lacks personal jurisdiction and venue for consideration of Moog's preliminary injunction motion, and I deny that portion of the motions seeking transfer of venue to the Central District of California for determination of the preliminary injunction motion,[2] as well as Skyryse's motion for leave to file a Supplemental Reply [247]. In light of that denial, Moog's motion to adjourn the August 25, 2022 oral argument [248] is also denied as moot.

However, defendants have made clear that their consent to jurisdiction and venue in this court is "for purposes of this stipulated Order only and for no other purpose", and that "[a]ny and all other challenges to jurisdiction and venue in the Western District of New York are explicitly preserved". [33], ¶14. Therefore, the question of jurisdiction and venue for the remainder of the case will be decided once Moog's preliminary injunction motion is resolved.

**B.     Motions Regarding Access to Electronic Devices [228, 229]**

Moog's motion to restore its access to Pilkington and Kim's electronic devices [228], and Pilkington and Kim's motion to "claw back" those devices based on Fifth Amendment concerns [229], are flip sides of the same coin, and will therefore be addressed together.

      **1.     The Devices Are Not Subject to a Fifth Amendment Privilege**

          **a.     Their Production Was Not Compelled**

Pilkington and Kim produced their electronic devices for inspection pursuant to Orders to which they agreed. *See* Stipulations and Proposed Orders dated March 11 and 16, 2022 [25, 33], which were subsequently approved by the court [28, 36]. They were not forced to do so.

---

[2]     "Motions to transfer venue are non-dispositive." Moog, Inc. v. Newport Aeronautical, Inc., 2016 WL 3444238, *1, n. 1 (W.D.N.Y. 2016).

*See* Tequila Centinela, S.A. de C.V. v. Bacardi & Co., 242 F.R.D. 1, 4 (D.D.C. 2007) ("this Court does not have the power to compel a party to sign a Stipulated . . . Order. A stipulation is defined as 'a voluntary agreement between opposing parties concerning some relevant point.' Black's Law Dictionary 1427 (Deluxe 7th Edition 1999)").

"[T]he Fifth Amendment protects the person asserting the privilege only from *compelled* self-incrimination." United States v. Doe, 465 U.S. 605, 610 (1984) (emphasis in original). Therefore, "[v]oluntarily produced documents . . . do not enjoy Fifth Amendment protection". United States v. Pearson, 2006 WL 8442594, *15 (N.D.N.Y. 2006); United States v. Taylor, 2007 WL 805662, *3 (D. Ariz. 2007) (same). *See also* United States v. Anderson, 79 F.3d 1522, 1529, n. 12 (9th Cir. 1996) ("Anderson . . . claims that the court did order him to comply with the subpoenas by signing the stipulated order . . . . [T]his argument ignores the fact that Anderson *agreed* to comply with the subpoenas by signing the stipulation himself") (emphasis in original).

Pilkington and Kim argue that Moog "induced [them] into the So-Ordered Stipulation while withholding . . . information [concerning the government's investigation] and before [they] even retained counsel", and do "not believe the Court would have signed the So-Ordered Stipulation without first advising [them] of their Fifth Amendment rights or affording [them] time to retain counsel. Pilkington and Kim's Memorandum of Law [237] at 7, 8. However, they *were* represented by counsel when they executed the Stipulated Order on March 16, 2022 [33], merely five days after they executed the initial Stipulation [25].

Moreover, Moog's motion for preliminary injunction clearly disclosed the possibility (indeed, the likelihood) that the government would investigate this incident. *See, e.g.,* February 28, 2022 Declaration by Moog's Software Senior Manager, Michael Hunter: "Moog is

now required to notify each of its military customers of the data theft at issue, including the US Government . . . . And based on my decades of experience in the software engineering field and staying on top of news of government contracting issues with competitors, my understanding is that the US Government often reacts strongly when its data has been compromised". [43-1], ¶66.[3]

While Pilkington and Kim suggest that their "Fifth Amendment rights only became a known issue once the AUSA informed the Individual Defendants they were the subject of a criminal investigation" (Pilkington and Kim's Memorandum of Law [229-14] at 20), the allegations in Moog's Complaint and preliminary injunction motion made their potential criminal exposure obvious from the outset of this case. *See* Complaint [1], ¶1 ("Moog seeks judicial relief to stop the illegal taking and use of its trade secrets and the misappropriation of sensitive US Government technical data developed by Moog"); id. at 35 ("[f]orensic analysis of Kim's external hard drives and laptop devices reveals deliberate data wiping and additional theft"); ¶174 ("as a result of Defendants' collective actions, Skyryse now has Moog's trade secret, confidential, and proprietary information from theft of over 136,000 files"); ¶259 ("Pilkington and Kim used [their] position of trust and confidence to orchestrate a scheme to copy and steal over 136,000 files of Moog's data shortly after Pilkington left Moog and a few weeks before Kim did"); Moog's Memorandum of Law [4-1] at 6 ("[d]efendants stole Moog's data multiple times, used and manipulated multiple devices to escape detection, and erased their tracks so Moog cannot determine what happened to its stolen data"). In fact, the Stipulated Order expressly contemplated the possibility of invoking the Fifth Amendment. *See* [33], ¶3 ("[i]n the

---

[3] That Declaration, along with the Complaint and all other submissions in connection with the preliminary injunction motion, was personally served on Pilkington and Kim on March 8, 2022. [13, 14].

event that any witness knows prior to their noticed deposition that the witness will invoke the Fifth Amendment . . .").

In any event, Pilkington and Kim have never sought to rescind the orders requiring production of their devices. Although they suggest in passing that Moog's "wrongful conduct in this action is sufficient good cause" to modify the orders (Pilkington and Kim's Memorandum of Law [237] at 8, n. 6), the "mere mention in a footnote does not amount to raising an argument". Rowley v. City of New York, 2005 WL 2429514, *6 (S.D.N.Y. 2005); United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir. 1993) ("[w]e do not consider an argument mentioned only in a footnote to be adequately raised"). Accordingly, I find that Pilkington and Kim voluntarily produced their devices for inspection.

### b. Their Production Was Not Testimonial

The Fifth Amendment "protects a person only against being incriminated by his own compelled testimonial communications", and the "production of documents does not compel oral testimony". Doe, 465 U.S. at 610-11; Fisher v. United States, 425 U.S. 391, 410-11 (1976) ("however incriminating the contents of the [documents] might be, the act of producing them . . . would not itself involve testimonial self-incrimination").

However, the act of production can be considered to be testimonial when it "implicitly communicate[s] statements of fact'". United States v. Hubbell, 530 U.S. 27, 36 (2000). Thus, "[b]y producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic". Id. Yet "[i]n many instances, the production of documents may implicate no testimonial assertions at all", such as where "the existence and location of the papers were a foregone conclusion". Braswell v. United States, 487 U.S. 99, 129 (1988).

For example, in Burt Hill, Inc. v. Hassan, 2010 WL 55715 (W.D. Pa. 2010), the defendants, former employees of the plaintiff, asserted a Fifth Amendment privilege over the production of external storage devices ("ESDs") and hard-copy documents, all of which were contained on those devices, believing that the plaintiff would attempt to show that they "used the ESDs to 'access and store [the plaintiff's] confidential and propriety business information . . . in violation of the CFAA [the Computer Fraud and Abuse Act]'". Id., *1.

In rejecting the defendants' assertion of privilege, the court reasoned: "How Defendants can show that their production would be testimonial is difficult to imagine. Defendants have made repeated offers to Plaintiff that it can have access to view the allegedly protected documents in a secure location . . . . Through their conduct, Defendants have admitted the existence of allegedly privileged materials, and that such materials are within their possession or control. Likewise, it seems highly implausible that Defendants can, in good faith, object to the authenticity of documents they have offered for Plaintiff's viewing." Id.

Just as in Burt Hill, Pilkington and Kim have repeatedly admitted that the devices in question are theirs, and not only agreed to make those devices available for inspection, but did so. See Pilkington and Kim's Memorandum of Law [237] at 11 ("the Individual Defendants were not aware of the USAO Investigation at the time they delivered their devices to iDS"); Pilkington and Kim's Memorandum of Law [229-14] at 13 ("[t]he Individual Defendants already produced their twenty-three electronic devices to iDS").

Pilkington and Kim argue that Burt Hill "is inapplicable to this dispute", because in that case "the defendants already possessed sufficient information to assert their Fifth Amendment right against self-incrimination and did so while making multiple offers to allow Plaintiff's [sic] to review their electronically stored data", whereas here they "(1) do not have the

necessary information to assert their Fifth Amendment privilege because [Moog] improperly withholds such information; and (2) did not offer, but were compelled to turn over their devices pursuant to the So-Ordered Stipulation." Pilkington and Kim's Memorandum of Law [237] at 9-10.

Neither argument is persuasive. Pilkington and Kim admit that they could "make a broad Fifth Amendment claim absent complete disclosure of the trade secrets and classified information at issue", (Pilkington and Kim's Memorandum of Law [229-14] at 14), and as previously discussed, they were not compelled to enter into the "So-Ordered Stipulation". Tequila Centinela, *supra*; Anderson, *supra*.

### 2.     If a Fifth Amendment Privilege Existed, It Has Been Waived

For the reasons discussed, Pilkington and Kim have no Fifth Amendment privilege to waive. However, if they did have such a privilege, it has been waived by their voluntary production of their devices when they were clearly on notice of potential criminal exposure from the outset of this case.

Pilkington and Kim argue that §16.5 of the Protective Order [89] "completely rebuts [Moog's] waiver arguments". Pilkington and Kim's Memorandum of Law [229-14] at 21. However, by its terms, §16.5 operates only "[p]ursuant to Federal Rule of Evidence 502(d)", and by *its* terms, Rule 502 applies only "to disclosure of a communication or information covered by the attorney-client privilege or work-product protection". *See* Brown v. Barnes and Noble, Inc., 474 F. Supp. 3d 637, 645, n. 2 (S.D.N.Y. 2019), aff'd, 2020 WL 5037573 (S.D.N.Y. 2020) ("Federal Rule of Evidence 502(d) has made it possible for parties to enter into so-called 'quick peek' agreements without jeopardizing attorney-client and work product protection").

Therefore, neither Rule 502(d) nor the Protective Order protects Pilkington and Kim from waiver of a Fifth Amendment privilege.

Section 16.1 of the Protective Order allows the parties "[t]o claw back Privileged Material produced inadvertently". [89] at 22. As discussed, the devices produced for inspection by Pilkington and Kim are not subject to a Fifth amendment privilege, nor were they inadvertently produced. Therefore, Moog's motion to restore its access to those devices [228] is granted, and Pilkington and Kim's motion to claw back those devices [229] is denied.

## CONCLUSION

To summarize: (1) I recommend that defendants' motions seeking dismissal of the Complaint for lack of personal jurisdiction and/or improper venue [47, 48] be denied to the extent that they seek to prevent this court's conducting a hearing and determining Moog's preliminary injunction motion, but otherwise be deferred for consideration until the preliminary injunction motion is decided; (2) Skyryse's motion for leave to file a Supplemental Reply [247] and Moog's motion to adjourn oral argument [248] are denied; (3) defendants' motions [47, 48] seeking transfer of venue to the Central District of California pursuant to 28 U.S.C. §1404(a) are denied to the extent that they seek to prevent this court's conducting a hearing and determining Moog's preliminary injunction motion, but are otherwise deferred for consideration until the preliminary injunction motion is decided; (4) Moog's motion to compel access to Pilkington and Kim's electronic devices [247] is granted; and (5) Pilkington and Kim's motion to claw back those devices [249] is denied.[4]

---

[4] "Discovery rulings, including those regarding privilege issues, are nondispositive matters." Pearlstein v. BlackBerry Ltd., 2019 WL 5287930, *1 (S.D.N.Y. 2019) (involving clawback of allegedly privileged e-mails); Woodworth v. United States, 287 F. Supp. 3d 345, 348, n. 2 (W.D.N.Y. 2017).

L. R. Civ. P. 72(a) provides that all nondispositive orders of a Magistrate Judge "shall be effective unless and until a stay is obtained or the order is otherwise reversed or vacated by the District Judge". Recognizing the importance of the privilege issues addressed herein, and in view of the fact that Pilkington and Kim's attorney Anthony Green had previously planned a vacation for this week, my decision regarding motions [228] and [229] will take effect on September 9, 2022 at 5:00 p.m. EDT, unless further stayed by District Judge Vilardo.

Otherwise, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by September 12, 2022. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply

with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 29, 2022

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge