1  Douglas E. Lumish (SBN 183863)
     doug.lumish@lw.com
2  Gabriel S. Gross (SBN 254672)
     gabe.gross@lw.com
3  Arman Zahoory (SBN 306421)
     arman.zahoory@lw.com
4  Ryan T. Banks (SBN 318171)
     ryan.banks@lw.com
5  **LATHAM & WATKINS LLP**
   140 Scott Drive
6  Menlo Park, CA 94025
   Telephone: (650) 328-4600
7  Facsimile: (650) 463-2600

8  Attorneys for Defendant Skyryse, Inc.

9
   Anthony D. Green
10    Green.A@wssllp.com
   Alexander A. Truitt
11    Truitt.A@wssllp.com
   **WINGET, SPADAFORA &**
12 **SCHWARTZBERG, LLP**
   45 Broadway – 32nd Floor
13 New York, NY 10006
   Telephone: (212) 221-6900
14 Facsimile: (212) 221-6989

15 Attorneys for Defendants Misook Kim and
16 Robert Alin Pilkington

Rena Andoh (*admitted pro hac vice*)
  randoh@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Lai L. Yip (SBN 258029)
  lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

Travis J. Anderson (SBN 265540)
  tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691

Kazim A. Naqvi (SBN 300438)
  knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

Robert J. Fluskey (*pro hac vice* forthcoming)
  rfluskey@hodgsonruss.com
**HODGSON RUSS LLP**
140 Pearl Street, Suite 100
Buffalo, NY 14202
Telephone: (716) 856-4000
Facsimile: (716) 819-4718

Attorneys for Plaintiff Moog Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOOG INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS.1-50,<br><br>          Defendants. | Civil Action No. 2:22-cv-09094-GW-MAR<br><br>**JOINT STATUS REPORT** |

At the Court's direction on December 20, 2022 (Dkts. 299, 329), Plaintiff Moog, Inc. ("Moog") and Defendants Skyryse, Inc. ("Skyryse"), Robert Alin Pilkington, and Misook Kim (collectively, the "Individual Defendants") hereby respectfully submit this joint status report.

## I.  NATURE OF THE CASE

### A.  MOOG'S POSITION

Moog commenced this action on March 7, 2022 in the Western District of New York ("WDNY") to stop: 1) the illegal taking and use of its trade secrets and the misappropriation of sensitive US government technical data developed by Moog; and 2) the raiding of Moog employees to exploit such information and unfairly compete. (Dkt. 1, ¶ 1.) At the time the Complaint was filed, Moog had discovered that prior to leaving Moog to join Skyryse, defendant Misook Kim had stolen over 136,000 files of Moog's most sensitive and proprietary data relating to its flight control software (including over 43,000 source code files) that took over 15 years to develop. (*Id.*) Since the filing of the Complaint, Moog has discovered additional acts of misappropriation by current and former Skyryse personnel, including a massive theft of files by former Moog employee Alin Pilkington – who also departed for Skyryse immediately after his theft – such that the volume of stolen data *exceeds 1.4 million files related to at least 20 Moog flight control programs (including several sensitive government programs)*. The extent of misappropriation in this case, as confirmed by forensic analysis and discovery, is staggering. Skyryse has also unfairly competed with Moog by hiring over 20 former Moog employees to harm a competitor and gain access to confidential and proprietary Moog information.

### 1.  The Parties

Founded in 1951 in East Aurora, New York, Moog is a publicly traded (NYSE: MOG.A, MOG.B) aerospace and defense company. It has annual sales of approximately $3 Billion and a world-wide workforce of over 13,000. (*Id.*, ¶ 10.) Moog has developed and supplies the flight control systems for some of the most common commercial aircrafts used today. (*Id.*)

Skyryse is a venture-backed tech aviation start-up company founded by CEO Mark Groden in 2016. (*Id.*, ¶ 11.) Before joining Skyryse, Pilkington was employed by Moog from July 30, 2012 to November 12, 2021, with his most recent position as Software Manager. (*Id.*, ¶

12.) Before joining Skyryse, Kim was employed by Moog from January 21, 2013 to December 18, 2021, with her most recent position as Software Engineer. (*Id*., ¶ 13.)

### 2. Moog's Complaint

Moog and Skyryse began a business relationship in 2018, and entered into multiple NDAs to share limited proprietary information with each other. (*Id*., ¶¶ 56-66.) During these initial discussions, Moog would provide the helicopter flight control systems, and Skyryse would install and implement this technology into its business plan to offer public autonomous helicopter transportation. (*Id*., ¶ 60.) The Parties worked together until December 2019, when Skyryse announced it was offering autonomous flight as part of its own flight control operating system it was developing (called FlightOS). (*Id*., ¶ 77.) Because Skyryse pivoted to a core Moog business (flight control software development), the Parties' relationship ended. (*Id*., ¶ 86.)

Skyryse raised $200 million in Series B fundraising culminating on October 27, 2021. (*Id*., ¶ 87.) Over the next six months, Skyryse engaged in a targeted campaign to poach at least 20 former Moog employees, including key Moog personnel with intimate knowledge of Moog's flight control software.  (*Id*., ¶¶ 87-93.) Moog discovered that on November 19, 2021, one week after her manager Pilkington's departure, Kim copied onto an external hard drive 136,994 proprietary Moog files consisting of nearly all source code, documentation, and planning documents related to 12 Moog programs (including several sensitive military programs). (*Id*., ¶¶ 108-121.) Kim also specifically copied Pilkington's Moog files (i.e., Pilkington's "branch" of work in Moog's source code repository). (*Id*., ¶¶ 122-123.) When Moog later demanded that Kim return the hard drives used in the data theft, Kim returned two separate hard drives, both of which had been completely wiped clean. (*Id*., ¶¶ 130-132.) Forensic analysis confirmed that Kim attempted to cover her tracks by re-naming one device to mimic a different device, using yet another electronic device to steal Moog data, and deleting its contents such that they were unrecoverable from that device. (*Id*., ¶¶ 131-141.)

### 3. Discovery of Additional Misappropriation After the Complaint was Filed

As Moog's internal investigation continued after the filing of the Complaint, and as it engaged in expedited discovery in this case, Moog has since discovered that ***Pilkington himself***

1   ***copied over 1.2 million Moog files upon his departure to Skyryse***, including virtually all source

2   code, documentation, and planning documents from 20 Moog programs. (Dkt. 180, pp. 6-8;

3   Dkts. 180-001 to 180-004.)  Kim and Pilkington's theft of Moog data is undisputed, and they

4   have confirmed as much in written discovery responses. (Dkts. 180-009, 180-110.)  Moog has

5   also discovered that several Skyryse personnel other than Kim and Pilkington were involved in

6   the possession, transfer, and/or use of Moog trade secrets and disclosed such trade secrets to

7   third parties. (Dkt. 283, pp. 11-12.)  Moog has also discovered various examples of Skyryse

8   directly copying Moog's software-related documents. (Dkts. 210-01, 238-01.)

9        Skyryse's claim that Moog has refused to cooperate with Skyryse's purported invitation

10  to work with Moog to remove Moog trade secrets from Skyryse's systems is false. In a letter

11  dated June 30, 2022, Moog advised Skyryse that it can only consider participating in a joint-

12  remediation effort if Skyryse provides full transparency about the nature and scope of

13  possession, transfer, or use of Moog non-public information—providing several examples of

14  how Skyryse has failed to be transparent. Skyryse never responded to Moog's letter.

15  **B.   SKYRYSE'S POSITION**

16       Moog filed this lawsuit on March 7, 2022 in the Western District of New York, not to "stop

17  [] the illegal taking and use of its trade secrets" as it contends above, but instead as a hammer with

18  which to crush Skyryse as a competitor and intimidate its own employees from joining Skyryse.

19       Skyryse is a start-up aviation company located in El Segundo, California, and is poised to

20  revolutionize the transportation and general aviation industries by bringing on-demand

21  autonomous aerial transportation to the public. By March 2017, Skyryse had flown a full-scale

22  Vertical Takeoff and Landing (VTOL) aircraft without a pilot over 70 times, demonstrating the

23  most advanced autonomous VTOL aircraft technology in the world. Moog, on the other hand, is a

24  large, multi-national corporation based in East Aurora, New York, that for decades has focused its

25  business on conventional aviation technology, including actuators and the computers that control

26  them. In 2019, Moog agreed to partner with Skyryse as part of a multi-phase relationship to help

27  develop certain aspects of Skyryse's technology. But by mid-2020, after learning about Skyryse's

28  groundbreaking technologies and business plans, Moog violated its obligations to Skyryse, put an

end to their relationship, and then used Skyryse's valuable information to pursue its own autonomous systems to compete directly with Skyryse.

Moog's case focuses on the conduct of two of its former employees, Defendants Alin Pilkington and Misook Kim, who in 2021 left Moog to go work at Skyryse, but who worked at Skyryse for only four months and two-and-a-half months, respectively. Moog alleges among other things that, under the direction of Mr. Pilkington, Ms. Kim downloaded a large number of files from Moog before leaving her job at Moog's office in Torrance, California, and brought those files with her to Skyryse as part of a conspiracy to steal some unspecified trade secrets. (Compl., Dkt. 1, ¶¶ 6, 114-15.) Moog also alleges that Skyryse engaged in a "pervasive raid" of Moog's software engineers as part of its alleged scheme to steal Moog's trade secrets. (*Id.* ¶¶ 90, 246.) At the outset, Moog simultaneously moved for preliminary relief and expedited discovery—without advance notice to Skyryse or a legitimate basis for personal jurisdiction or venue. (Dkts. 1, 4, 6.)

Skyryse has never wanted or needed any of Moog's purported trade secrets. But given the serious nature of Moog's surprise allegations, Skyryse and its counsel immediately worked in good faith with Moog to remediate what Moog perceived as the problem. In the first days of this lawsuit, Skyryse *stipulated* to the preliminary relief Moog claimed to need. (Dkts. 25, 28.) Skyryse also agreed to engage in expedited discovery and to a proposed briefing schedule for Moog's preliminary injunction motion (which has yet to briefed or heard). (Dkts. 33, 36.) Skyryse terminated its employment of Mr. Pilkington and Ms. Kim after only a few months, and out of an abundance of caution and at great cost, put numerous employees on leave while it investigated Moog's allegations. Skyryse even twice invited Moog to work directly with it to help Skyryse identify and remove any potentially non-public Moog information that might have made its way on to Skyryse's systems. Inexplicably, and belying its contention that its principal goal is to stop the alleged misappropriation, Moog rejected these offers.

In the ten months since Moog filed its complaint, Moog has received an enormous volume of invasive discovery from Defendants. Yet Moog has obstinately refused to disclose even one of its alleged trade secrets—despite claiming to know in granular detail the name and type of every file Ms. Kim allegedly copied—keeping Defendants in the dark. (*See* Compl., Dkt. 1, ¶¶ 115-20.)

Specifically, Moog has obtained thousands of pages of Skyryse business records, more than a dozen Skyryse devices and other forensic images, twenty-three of the Individual Defendants' personal devices, and documents from more than a dozen third parties. At the same time, Moog has refused to provide even basic information to permit Skyryse to prepare its defenses.

This forced Skyryse to file a motion to compel (Dkt. 166), which the court in New York granted in relevant part six months ago. (Dkt. 205.) The court ordered Moog to describe its trade secrets with particularity, and in a narrative format. (*Id*. at 6.) The court chose, however, to sequence discovery, first allowing Moog to take more discovery before identifying its trade secrets, and before allowing the defendants to take further discovery of their own. Moog has leveraged this sequencing for tactical benefit, repeatedly contending more discovery is "necessary" before identifying its own trade secrets and delaying the disclosure of its alleged trade secrets as long as possible. Thus, Skyryse's discovery efforts have been largely on hold for the past six months.

Nearly a year into this lawsuit, it is entirely unclear what alleged trade secrets are at issue or what emergency relief Moog could need, especially since Moog already received by stipulation the very relief it claimed it needed at the outset. For nearly a year now, Moog has prolonged discovery, concealed its trade secrets, and refused to cooperate with Skyryse. This is not the behavior of a company in need of urgent preliminary relief, but instead is emblematic of Moog's intent to use this lawsuit as a weapon to destroy an upstart competitor.

## C.   INDIVIDUAL DEFENDANTS' POSITION

Plaintiff commenced this action on March 7, 2022.  As against Mr. Pilkington and Mrs. Kim, the Complaint alleges several causes of action: (1) violation of 18 U.S.C. § 1836; (2) misappropriation of purported trade secrets; (3) breach of fiduciary duty; (4) aiding and abetting breach of fiduciary duty (against Mr. Pilkington only); (5) conspiracy; (6) breach of contract; (7) tortious interference with prospective economic advantage; (8) unjust enrichment; and (9) constructive trust.

Mr. Pilkington and Mrs. Kim filed motions to dismiss for lack of personal jurisdiction and improper venue. In addition, they filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Plaintiff's conspiracy, tortious interference with prospective economic advantage, and unjust

enrichment causes of action.  *See* Dkt. No. 131.  On December 15, 2022, the United States

District Court for the Western's District of New York granted the branch of Mr. Pilkington and

Mrs. Kim's request to transfer venue to this Court.  *See* Dkt. No. 297.  Mr. Pilkington and Mrs.

Kim's Fed. R. Civ. P. 12(b)(6) motion is fully briefed and pending.

Mr. Pilkington and Mrs. Kim object to Plaintiff's insistence on using what was supposed

to be a joint report as a piece of advocacy.  This matter is still in the pre-answer phase.  There

have been no depositions and no findings of fact.  Most of what Plaintiff misrepresents as

established fact are mere allegations, many of which have no bearing on this matter as they do

not appear in Plaintiff's complaint.  As discussed throughout this report, investigation into

Plaintiff's allegations is severely hampered by Plaintiff's refusal to specifically identify which

alleged files contain purported trade secrets or identify what such trade secrets are.  Contrary to

Plaintiff's misrepresentation of written discovery responses, no party has admitted to possessing

Plaintiff's purported trade secrets, nor would it be possible for any party to knowingly make such

admission as Plaintiff refuses to provide such information.

## II.        PROCEDURAL POSTURE

### A.        MOOG'S POSITION

#### 1.        The March 2022 Stipulations

On March 11, 2022, Defendants stipulated to the preliminary relief sought by Moog in its

TRO/PI Motion (the "March 11 Order"). (Dkts. 25, 28.) The order provides, in relevant part:

- Defendants shall not use, access or disclose any Moog non-public information. (*Id*., § 1.)
- By April 1, 2022, Defendants must deliver to Moog all Moog non-public information in their possession; if such information "necessarily includes property of any Defendant," then it shall be sent to neutral forensics firm iDiscovery Solutions ("iDS") for imaging. (*Id*., § 2.)
- Defendants shall preserve all devices and potentially relevant evidence. (*Id*., §§ 4-6.)
- The hearing on Moog's pending Motion for Preliminary Injunction ("PI Motion") is scheduled for May 9, 2022. (*Id*., § 6.)
- The March 11 Order shall "remain in effect until a hearing on Plaintiff's Motion for Preliminary Injunction takes place and a final ruling on the merits is issued." (*Id*., § 12.)

On March 17, 2022, the Parties stipulated to an order regarding expedited discovery procedures (the "March 17 Order"). (Dkts. 33, 36.) The order provided, among other things, limits and procedures for written discovery and depositions and clarified that the procedures therein are "solely for the purposes of expedited discovery, and do not apply to discovery conducted following the hearing on Moog's Motion for Preliminary Injunction." (*Id*., § 13.) The March 17 Order also scheduled the hearing on Moog's PI Motion for July 6, 2022. (*Id*., § 10.)

**2.    The April 26 Disclosures Regarding Possession of Moog Data and Spoliation**

In an April 26, 2022 conference, Skyryse's counsel made disclosures regarding Skyryse's possession of Moog non-public information, spoliation of evidence, termination of Kim and Pilkington, and placement of 15 employees on administrative leave. As examples, Skyryse's counsel stated that the amount of Moog non-public information it has discovered in its own systems "causes us concern" (4/26/22 Transcript (Dkt. 95), 18:12-13); that since the complaint was filed, there was an "alarming series of deletions" at Skyryse (*id*., 18:17-18, 19:4-5); and that 15 Skyryse employees had been placed on administrative leave because they had "been identified as having possessed Moog information, and individuals who had both evidence of deletion on their devices, and file name hits." (*Id*., 15:4, 20:5-12). As a result of these disclosures, Skyryse withdrew its Rule 12(b)(6) Motion to Dismiss on April 25, 2022, which had claimed that Moog's allegations were baseless. (Dkt. 79.) Notably, the motion did **<u>not</u>** assert that Moog's identification of its trade secrets was insufficient as a matter of law.

**3.    The Protective Order and Inspection Protocol**

The Parties had a dispute regarding the procedures to govern the inspection of electronic devices and data produced through neutral forensic vendor iDS. Skyryse demanded that Moog only be permitted to run certain, limited search terms against the produced devices and data, whereas Moog demanded full access to the produced devices and data under strict and detailed confidentiality and security procedures. On May 13, 2022, the WDNY entered Moog's proposed protocol as an addendum to the existing Protective Order (the "Inspection Protocol"), holding that it "gives Moog the best opportunity to discover what information was taken from Moog and/or spoliated by defendants." (Dkts. 96-02, 109.)

The Inspection Protocol has governed the protocols by which all Parties' counsel and their experts review the devices and information produced through iDS. To date, the Individual Defendants have produced 23 devices and Skyryse has produced 30 devices and forensic images through iDS. Moog first received access to Defendants' iDS devices on June 30, 2022.

**4.     The Parallel Government Investigation**

The United States Attorney's Office ("USAO") has opened an investigation relating to Moog's trade secret misappropriation claims in this case. The USAO has subpoenaed all parties for documents. To ensure transparency and compliance with discovery obligations, Moog proposed that all Parties produce to each other the documents produced to the USAO pursuant to subpoena. (Dkt. 234, p. 8; Dkt. 266, p. 22.)  Skyryse refused this proposal, and all Defendants claim they are entitled to receive Moog's production to the USAO, but not vice versa.

**5.     Discovery and Discovery Disputes**

Moog has expended considerable efforts to move this case along and obtain information and discovery from Defendants regarding the possession, transfer, and use of Moog's trade secrets. Because of Defendants' obstruction, Moog has been forced to file the following motions:

- 5/10/22 – Motion for Entry of Proposed Inspection Protocol (Dkt. 96);
- 5/23/22 – Motion for Scheduling Orders (non-compliance of the March 11 Order) (Dkt. 118);
- 6/8/22 – Motion to Compel Disclosures (relating to April 26 Disclosures) (Dkt. 142);
- 6/30/22 – Motion to Compel Discovery Responses and Production of Documents (Dkt. 176);
- 8/3/22 – Motion to Compel Discovery Necessary for Trade Secret Identification (Dkt. 210);
- 8/11/22 – Emergency Clarification of Court's Order at Dkt. 216 (Dkt. 226);
- 8/11/22 – Motion to Restore Access to Individual Defendants' Devices (Dkt. 228);
- 11/7/22 – Motion for Clarification of  Order Regarding Third Party Discovery (Dkt. 283).

At a July 27, 2022 hearing, the WDNY sequenced discovery to focus on discovery necessary for Moog to complete its trade secret identification, staying all other discovery. (Dkt. 209, p. 5.)

While Skyryse complains about the volume of discovery it has produced, this is a natural consequence of the vast scale of misappropriation by Skyryse's current and former employees (over 1.4 million Moog files). Skyryse has produced 30 electronic devices and forensic images

through iDS in attempted compliance with the March 11 Order (not pursuant to discovery demands) because they contain Moog non-public information. Moog's investigation into the massive misappropriation of its data is neither "invasive" nor a "disproportional fishing expedition" as Skyryse claims, but rightful and necessary given Skyryse's own misconduct.

**B.  SKYRYSE'S POSITION**

**1.      The March 2022 Stipulations**

Four days after the lawsuit was filed, on March 11, Skyryse stipulated to the preliminary relief Moog demanded, including agreeing to deliver any alleged non-public Moog information, refrain from accessing or disclosing any alleged non-public Moog information, and preserve all potentially relevant evidence. (Dkts. 25, 28.) Skyryse also agreed to engage in discovery related to Moog's motion for a preliminary injunction pursuant to an expedited schedule requested by Moog. (Dkts. 33, 36.) Skyryse also agreed, through these stipulations, to Moog's demand to produce electronic files that potentially contain both Skyryse's and Moog's allegedly confidential information to a third-party vendor to facilitate the parties' review.

**2.      The April 26 Disclosures**

When Skyryse learned facts suggesting that some potentially relevant evidence in its possession had not been properly preserved, Skyryse's former counsel immediately disclosed those facts to Moog and the court in New York on April 26, 2022, emphasizing that they did not know all the facts and had not yet completed an investigation. Skyryse proceeded to conduct a sweeping investigation. Skyryse learned that one of its engineers, a former Moog employee, had taken steps to delete 44 potentially relevant files, without Skyryse's authorization and against its explicit instructions. Skyryse also learned that two other employees had deleted certain information on their personal devices that they had obtained in carrying out their previous jobs at Moog. Skyryse thoroughly investigated these deletions, took efforts to recover and produce the deleted files, provided a detailed report of its investigation to Moog, and terminated its relationship with all three employees. (*See, e.g.,* Dkt. 156 at 10-18). Skyryse's investigation confirmed that these unauthorized deletions were isolated incidents, to which Skyryse responded swiftly and responsibly. Nonetheless, at every turn, Moog has capitalized on comments made by Skyryse's

former counsel before Skyryse had conducted its investigation, complaining about alleged spoliation and demanding more excessive discovery about Skyryse and its counsel's investigation.

### 3. The Parallel Government Investigation

Shortly after the lawsuit was filed, upon a referral from Moog, the United States Attorney's Office for the Central District of California opened an investigation relating to the alleged facts that underlie Moog's claims. That investigation has proceeded in parallel with the civil case. To date, no charges have been brought. Skyryse has been cooperating fully in that investigation.

As further described below, Moog has refused in expedited discovery to produce its communications and documents related to the government's investigation in response to Defendants' request for "[a]ll Communications and Documents relating to *any investigation* undertaken into any allegedly misappropriated Trade Secrets." (Dkt. 179-3 at 12.)[1] Moog did not serve an equivalent document request. Yet Moog now insists that Defendants produce any documents they have provided to the government, outside the scope of permitted discovery.

### 4. Expedited Discovery

In the parties' early stipulations, they agreed to conduct *limited*, *expedited* discovery in advance of a hearing on Moog's motion for a preliminary injunction, with full discovery to follow in the ordinary course of litigation. (Dkt. 33 ¶ 2.) Despite the limited nature of this expedited discovery, Moog has turned on its head the normal process in which Moog would first be compelled to identify its alleged trade secrets before getting *any* discovery, and demanded and received virtually unbounded discovery from Skyryse, largely by contending that such expansive discovery is "necessary" to Moog identifying its own trade secrets. To date, Skyryse has delivered more than a dozen Skyryse devices and other forensic images containing more than three terabytes of data to the third party neutral forensic vendor (iDS), has made its highly proprietary source code available for Moog's inspection, and has produced many thousands of business records directly to Moog. Moog has also served subpoenas on sixteen third parties, including current and former Skyryse employees and contractors, demanding a wide range of documents from their personal devices. Skyryse (and these third parties) have cooperated and produced an enormous amount of

---

[1] All emphasis in quotations has been added unless otherwise noted.

1   discovery. Moog's fishing expedition into Skyryse's business long ago exceeded the "limited" and

2   "expedited" discovery to which the parties initially agreed.

3         **5.**     **Moog's Failure to Identify Its Alleged Trade Secrets**

4       Moog failed to sufficiently answer Skyryse's Interrogatory No. 1, requiring that Moog:

5   "[i]dentify, for each Defendant, each alleged Trade Secret that You contend that Defendant

6   misappropriated." (Dkt. 166-3 at 6-7.) Moog provided a deficient, one-sentence response, vaguely

7   pledging to "make its trade secrets at issue in this case available for inspection." (Dkt. 166-3 at 6-

8   7.) This, despite the fact that Moog claims to have conducted a forensic investigation prior to filing

9   suit that allowed it to catalog exactly which files it alleges Defendant Kim took from Moog and

10   where they are located on Moog's systems. (Compl., Dkt. 1, ¶¶ 112-13.) Moog rejected Skyryse's

11   requests to supplement that deficient response, claiming that such a request was premature and

12   that Individual Defendants should identify the trade secrets instead. (Dkt. 180 at 15, 18.)

13       The court in New York rejected these arguments and ordered Moog to "answer *in full*

14   Skyryse's Interrogatory No. 1 calling for Moog to identify *with particularity* every alleged trade

15   secret it intends to assert in this action including through a *narrative response and not solely by*

16   *invoking Rule 33(d)*" and to "identify the *specific lines of code* or programs claimed to be secret."

17   (Dkt. 205 at 4, 6.)

18       The court (over Skyryse's objection) allowed Moog to take discovery to identify which

19   trade secrets were purportedly misappropriated before making this disclosure. (*Id*. at 6 n.3.) The

20   court noted, however, that Moog would need to identify its trade secrets well before any

21   preliminary injunction hearing, because "[f]airness requires that Moog provide defendants with

22   that specific identification sufficiently in advance of the hearing to enable them to prepare a

23   defense" and "to set the proper bounds and scope of discovery." (*Id*. at 5.) All other discovery has

24   been held in abeyance until Moog identifies its trade secrets. (*Id*. at 6.)

25       At a subsequent hearing held on July 27, 2022, the court ordered Moog to file a motion

26   requesting any "discovery allegedly necessary to enable Moog to identify its trade secrets." (Dkt.

27   206.) Moog filed such a motion on stating that it would need six weeks to review the discovery it

28   requested, after which time it would identify its trade secrets. (Dkt. 210 at 14-15.) Moog's motion

was resolved on November 11, 2022. Today, nearly six months after the court's order compelling Moog to identify its alleged trade secrets, Moog still has not disclosed any of its alleged trade secrets. Moog received full access to all of the discovery the court ordered Skyryse to produce. Discovery that the court ordered the Individual Defendants to produce is forthcoming, but should not inhibit Moog's identification of any trade secrets it alleges Skyryse has misappropriated.

### 6.    Transfer to this Court

On December 15, 2022 the New York Court granted Defendants' motions to transfer (Dkts. 47, 48) and ordered that the case be transferred to this Court. (Dkt. 297 at 21, 31.)

## C.    INDIVIDUAL DEFENDANTS' POSITION

Mr. Pilkington and Mrs. Kim's Fed. R. Civ. P. 12(b)(6) motion is still pending.  This motion should be decided before party (and non-party) depositions are scheduled, or any preliminary injunction hearing occurs.

Mr. Pilkington and Mrs. Kim are continuing to review March 7, 2019 through December 31, 2020 communications as permitted under the Protective Order in this Action. This information is not relevant nor necessary to Plaintiff's trade secret identification.

The plan for limited and expedited pre-answer discovery has been defeated by Plaintiff's refusal to identify its trade secret in the manner required by the Court.  *See* Dkt. 205.  Because of prior court orders concerning the sequence of discovery, Plaintiff's refusal to identify its alleged trade secret impedes the resolution of other discovery disputes.  At this point, discovery has devolved into a one-sided affair where any issue the Defendants would like to raise is put off until Plaintiff identifies its trade secrets, yet Plaintiff continues to move the goal post on what is needed for it to identify its purported trade secrets.  Counsel respectfully submits that Plaintiff possesses (and has always possessed) the ability to identify the alleged trade secrets at issue and refuses to do so to the prejudice of defendants.  Counsel would like the Court to set a date certain by which Plaintiff must identify its trade secrets, in the manner previously ordered by the Court.

1

### III.     PENDING MOTIONS

2

**A.     MOOG'S POSITION**

3

**1.     Moog's Motion for a Preliminary Injunction (Dkt. 4)**

4        Concurrently with the filing of the Complaint and without having conducted any

5 discovery, Moog filed its PI Motion. (Dkt. 4.) As described above, Defendants stipulated to relief

6 sought in the March 11 Order in the form of a temporary restraining order until a ruling on the

7 merits on the PI Motion is issued. (Dkt. 25). Because the case was transferred before resolution

8 of the PI Motion, that motion remains pending and an evidentiary hearing in connection with the

9 same remains to be had. Since filing the Complaint, through expedited discovery, Moog has

10 discovered several additional acts of misappropriation involving additional Skyryse personnel

11 and third parties, necessitating amendment to the injunctive relief sought by the pending PI

12 Motion. Consequently, Moog intends to seek the Court's leave to amend the injunctive relief

13 sought to conform to evidence gathered through expedited discovery. Moog intends to send

14 Defendants the proposed amended injunctive relief to determine if the parties can stipulate.

15

**2.     Individual Defendants' Motion to Dismiss (Dkt. 131)**

16        On May 31, 2022, Pilkington and Kim filed, pursuant to Fed. R. Civ. P 12(b)(6) a motion

17 to dismiss counts six, nine, and ten of the Complaint for failure to state a claim upon which relief

18 can be granted. (Dkts. 131, 153.) The motion remains pending.

19

**3.     Moog's Motion to Compel (Dkt. 176)**

20        On June 30, 2022 Moog filed a motion to compel Skyryse to provide discovery responses

21 and produce documents. (Dkts. 176, 190, 195.) The motion remains pending and unresolved.

22 The three outstanding issues are Skyryse's failure to: 1) provide Court-ordered answers to

23 questions related to Skyryse's April 26 Disclosures; 2) properly respond to Moog Interrogatories

24 Nos. 6-8; and 3) produce documents in response to Moog RFPs Nos. 8-10.

25

**4.     Skyryse's Motion to Compel (Dkt. 179)**

26        On June 30, 2022, Skyryse moved to compel Moog to produce documents responsive to

27 Skyryse's RFPs Nos. 5, 11, and 15. (Dkts. 179, 187, 197.) The motion remains pending.

28

**B.      SKYRYSE'S POSITION**

**1.      Plaintiff Moog's Motion for a Preliminary Injunction (Dkt. 4)**

Moog moved for a temporary restraining order and preliminary injunction on March 7, 2022. (Dkt. 4.) Defendants immediately stipulated to the preliminary relief Moog claimed it needed. (Dkt. 25.) Moog states above that it "intends to seek the Court's leave to amend the injunctive relief sought to conform to evidence gathered through the ordered expedited discovery." Moog made substantively the same statement to the court in New York on several occasions (*see, e.g.*, Dkt. 214-3, July 15, 2022 Hearing Tr. at 24:18-25:2), yet Moog has failed to request a hearing or seek leave to file a motion requesting any additional or different relief. Moog should not be permitted to continue to use the specter of some future, unrequested hearing as the basis to demand endless discovery, and, if there is to be such a hearing, Skyryse requests that it be scheduled at the status conference. Tellingly, when Skyryse recently asked Moog what relief it contemplated seeking, in an effort to avoid another contested motion, Moog refused to answer. In all events, Skyryse disagrees that Moog is entitled to any additional or different preliminary relief, and the parties' stipulation does not provide for Moog to file a renewed or different motion.

**2.      Individual Defendants' Motion to Dismiss (Dkt. 131)**

Defendants Pilkington and Kim filed a motion to dismiss counts six, nine, and ten of the complaint for failure to state a claim upon which relief can be granted on May 31, 2022. (Dkt. 131.) The motion was fully briefed as of June 13, 2022 and remains pending.

**3.      Plaintiff Moog's Motion to Compel (Dkt. 176)**

On June 30, 2022, Moog filed a motion to compel Skyryse to supplement certain written discovery responses and produce certain documents in response to Moog's discovery requests. (Dkt. 176.) This was fully briefed. (Dkts. 176, 190, 195.) The court in New York deferred that motion until Moog identified its trade secrets (Dkt. 205 at 6), but much of the motion has since been resolved. Specifically, Skyryse has responded to Moog's Interrogatories Nos. 6-8, and additional responsive information was made available through Skyryse's source code production. Similarly, Skyryse has produced all non-privileged documents responsive to Moog's Requests for Production Nos. 8-10, which Moog sought and received as part of its motion to compel discovery

allegedly necessary for identifying trade secrets. (*Compare* Dkt. 210 at 14 (Moog's motion to compel) and Dkt. 282 (Moog letter to court providing an "update" on the "outstanding issues," excluding any mention of these requests.))

The only issue pending from Moog's June 30 motion to compel is Moog's demand that Skyryse provide "sworn responses" to questions posed in a letter from Moog's counsel, outside the discovery process. This demand should be denied for the reasons described in Skyryse's opposition (Dkt. 190 at 2-6), including because Skyryse already responded in good faith and detail to Moog's questions, and Moog has made no showing it is entitled to such unauthorized discovery.

### 4.    Defendant Skyryse's Motion to Compel (Dkt. 179)

On June 30, 2022 Skyryse filed a motion to compel Moog to produce documents responsive to Skyryse's Requests for Production Nos. 5, 11, and 15, seeking information about the efforts Moog takes or has failed to take to protect the confidentiality of its alleged trade secrets, as well as Moog's development of the technologies involved in this case. Although this discovery goes to the heart of Moog's trade secret claims, Moog has produced only a select few self-serving documents and withheld the vast majority of responsive documents, claiming that responding to requests about its own alleged trade secrets would be unduly burdensome because those trade secrets concerned "millions of files" and involved "thousands of employees." (Dkt. 179-1 at 2.) Skyryse moved to compel production on June 30, 2022. (Dkt. 197 at 1, 7; Dkt. 179-3 at 10, 18.)

The motion was fully briefed as of July 13, 2022. (Dkts. 179, 187, 197.) At the July 27, 2022 conference at which it was scheduled to be heard, the court in New York deferred argument on and resolution of the motion until Moog identified its trade secrets. (Dkt. 209, July 27, 2022 Hearing Tr. at 56:15-20; Dkt. 205 at 6.) Skyryse's motion to compel the production of documents in response to Request Nos. 5, 11, and 15 remains pending.

## C.    INDIVIDUAL DEFENDANTS' POSITION

Mr. Pilkington and Mrs. Kim's only pending motion is the Fed. R. Civ. P. 12(b)(6) motion to dismiss, directed to counts six, nine, and ten of the Complaint.

#### IV.   ANTICIPATED MOTIONS OR ISSUES

**A.   MOOG'S POSITION**

      **1.   Moog's Forthcoming Trade Secret Identification Submission**

Because of the spoliation of evidence by Kim and Pilkington after copying Moog data, Moog does not have complete information regarding the actual copies of all approximately 1.4 million Moog files that were taken.  However, throughout this case Moog has provided Skyryse with available information regarding the stolen files including: 1) a file log for each of the 136,994 files copied by Kim; 2) hash values for over 62,000 files coped by Kim (at Skyryse's request); 3) a folder log and timeline for the over 1.2 million files copied by Pilkington; and 4) 32 targeted search terms relating to Moog's source code. (Dkts. 4-18, 4-19, 180-02 to 180-04.) In response to Defendants' persistent demands that Moog fully identify all the trade secrets at issue, on May 25, 2022, the WDNY noted: "While Moog will have to identify them sufficiently in advance of the hearing to enable a proper defense, how can it be expected to do so now, when it does not yet know the full extent of what was taken?" (Dkt. 180-08.)

On June 21, 2022, Skyryse moved to compel Moog to identify in a narrative response its trade secrets in response to Skyryse's first interrogatory. (Dkt. 166.) The WDNY determined that Moog must specifically identify its trade secrets at issue in this case, but that Moog has a compelling need "to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure, particularly in view of Skyryse's admission that some of that information may now have been deleted." (ECF 205, p. 3.) The WDNY "deferred to a later date the consideration of all discovery demands and motions except those related to [Moog's trade secret identification] in response to Skyryse's Interrogatory No. 1." (Dkt. 205, p. 6.) After sequencing discovery, the WDNY issued a text order which stated, in relevant part: "Moog and Skyryse shall file any motions related to the discovery allegedly necessary to enable Moog to identify its trade secrets." (Dkt. 206.)

Moog filed that motion on August 3, 2022. (Dkt. 210.) During a November 11, 2022 conference, the WDNY granted in substantial part Moog's motion. (Dkt. 292.) WDNY later clarified that the discovery Moog was entitled to continue pursuing included any discovery

needed from third parties or nonparties relating to the trade secret identification process.  (Dkt. 291.) Skyryse produced images of three laptops containing Moog data and additional files on December 14, 2022. Third party Hummingbird Aero (to whom Skyryse disclosed Moog data) just produced documents in response to Moog's subpoena on January 17, 2023, and a number of third parties subpoenaed by Moog have agreed to produce documents but have provided none to date. Moog also has no access to an external drive that Kim used to copy Moog data (identified as device E0010 in the iDS inspection environment) because Kim has not provided the password. Nor does Moog have access to a virtual hard drive (Parallels) on Pilkington's Skyryse laptop (E0028) because Skyryse has not completed its privilege review of the drive.  The Individual Defendants have still not produced documents relevant to Moog's trade secret identification. Moog is prepared to discuss with the Court the status and timing of its trade secret identification.

### 2.    Inspection of Source Code

Moog's position is that the Inspection Protocol governs the production and review of all source code in this case. Yet, Skyryse withheld responsive source code on the grounds that the Inspection Protocol only governs source code containing a mix of Skyryse and Moog code, but code that is purportedly solely Skyryse's must be treated differently.

Skyryse demanded that its "separate" source code be inspected in-person at its counsel's office under a different protocol. After motion practice (Dkts. 211, 213, 225, 238), on November 10, 2022, and in an effort to move this case along, the WDNY adopted Skyryse's additional proposed source code protocol for Moog's inspection of Skyryse's withheld code. Moog conducted source code inspection in December 2022; however, the source code made available by Skyryse only went up to April 15, 2022. Moog's investigation indicates its proprietary data is likely to be present in Skyryse's source code after April 15.

Skyryse then demanded that it inspect Moog's code in-person at Moog's counsel's office under the separate source code protocol. This is improper because: 1) Skyryse's inspection of Moog's code is not permitted under the Court's sequencing of discovery as it is not needed for Moog to fully identify its trade secrets; 2) Moog's source code has been available for Skyryse's inspection in the iDS environment for over six months, on devices that the Individual Defendants

used to copy Moog's source code; and 3) Skyryse's demand that Moog re-create copies of all misappropriated source code that was already produced by the Individual Defendants to iDS (approximately 1.1 million files based on the definition of source code in the Protective Order) is unduly burdensome, unnecessary, and serves no legitimate litigation purpose.

### 3.      Skyryse's Claims of Spoliation

Skyryse is attempting to manufacture a spoliation claim by mischaracterizing counsel's words.  As Moog has explained, Kim wiped clean an external hard drive that Moog believes once contained 136,994 files she copied from her Moog-issued laptop.  Moreover, many weeks elapsed between when Kim copied the files (on November 19, 2021) and the copying was discovered.  Moog could not recover the exact copies of all of the files Kim copied from her Moog-issued laptop, because she deliberately deleted most of those files from the laptop after the copying.  Meanwhile, Moog cannot recreate those deleted files by simply exporting them from Moog's source code repository as of November 19, 2021 (the day she copied).  This is because the repository files are, as counsel noted at the June 1, 2022 hearing, "living files" that get checked in and out by a number of software engineers and are unlikely to be identical to the source code files that Kim copied from her laptop on November 19, 2021.  In any event, these "living files" cannot be spoliated, because by design, a source code repository retains all versions that are checked in or out throughout the life of a file.

### 4.      Individual Defendants' Failure to Produce Court-Ordered Communications

In response to Moog's Motion to Compel Discovery Necessary to Identify Trade Secrets (Dkt. 210), the WDNY ordered the Individual Defendants to produce all communications from five electronic devices produced to iDS from March 7, 2019 through December 31, 2020. (Dkt. 292.) On December 7, 2022, Individual Defendants' counsel indicated the communications would be produced the following week, but they still have not been produced. Moog may be forced to move to enforce the WDNY's order compelling production of these communications.

### 5.      ESI Protocol

Moog and Skyryse have certain disputes related to the manner and format in which documents and attendant metadata (including from the iDS environment) are to be produced in

the case. At Skyryse's suggestion, on November 1, 2022, Moog circulated a draft ESI protocol for Skyryse's review. The Parties continue to have disputes related to the draft ESI protocol. Moog may be required to file a motion to implement an ESI protocol to ensure it has access to, among other things, critically relevant metadata and reasonably usable documents.

### 6. Third Party Discovery Issues

On or around November 1, 2022, Moog served Hummingbird Aero software engineer Rex Hyde (who Moog has confirmed through discovery has disclosed Moog trade secrets to various Skyryse and Hummingbird personnel) with a subpoena for documents. After meeting and conferring and at Hyde's counsel's request, on December 2, 2022, Moog's counsel provided a narrowed scope of document requests to Hyde's counsel. He has not responded to Moog's proposal and has not produced any documents. Moog may be forced to file a motion to compel to enforce Hyde's compliance with Moog's subpoena.

On August 1, 2022, Moog served subpoenas for documents to former Moog employees and current Skyryse employees Lawrence Chow, Mario Brenes, Santiago Correa-Mejia, Cynthia Le, and John Stafford. On November 7, 2022, Skyryse's counsel (who represents these third parties) stated that these they would respond and produce documents in response to Moog's subpoenas. After multiple follow-ups, no documents have been produced. Moog may be forced to file a motion to compel to enforce these third parties' compliance with Moog's subpoenas.

### 7. Skyryse's Contemplated Motion to Stay

On August 3, 2022, the Individual Defendants moved for a stay of the civil action pending resolution of the parallel criminal investigation by the United States Attorney's Office, raising Fifth Amendment concerns. (Dkt. 214.) Skyryse filed a brief in support of the Individual Defendants' motion, and the motion was fully briefed as of August 24, 2022. (Dkts. 214, 240, 241, 250, 255, 258.) The WDNY denied the motion to stay. (Dkt. 259.) Following the transfer of this case to this Court, Skyryse requested that Moog stipulate to a stay of this civil action during the pendency of the criminal investigation. Moog advised Skyryse that the WDNY already denied a prior motion to stay, and that there had been no change in circumstances or new developments that

supported a stay now. Moog continues to be amenable to discussions with Skyryse (and Individual Defendants) regarding the terms of a proposed stay.

**B.     SKYRYSE'S POSITION**

**1.     Dispositive Motions**

Skyryse anticipates filing one or more dispositive motions to eliminate or narrow the issues for trial, including on the ground that many of Moog's causes of action are preempted by the California Uniform Trade Secrets Act. Cal. Civil Code § 3426 *et seq.*

**2.     Potential Motion Regarding Moog's Trade Secret Identification**

Skyryse anticipates needing to file a motion to enforce the order compelling Moog to provide a sufficiently particularized trade secret identification (Dkt. 205) so that this case can proceed in an orderly manner and Skyryse can receive the discovery to which it is entitled. Skyryse should not be required to provide further discovery to Moog until Moog complies with that order, provides a complete response to Skyryse's Interrogatory No. 1, and fully identifies its trade secrets.

**3.     Potential Motion Regarding the Inspection of Source Code**

Skyryse anticipates needing to move to compel Moog to comply with the Source Code Order that was entered on November 10, 2022. (Dkts. 284-6; Nov. 10, 2022 Hearing Tr. at 64:16-65.21.) The Source Code Order provides that "[a]ny Source Code produced in discovery shall be made available for inspection. . . at an office of the Producing Party's Outside Counsel." (Dkt. 284 at § 4.2.) Skyryse has made its source code available to Moog since July 14, 2022. Moog, however, has refused requests to make its own source available for inspection, as required. Moog continues to take the baseless position—already rejected by the court in New York—that the iDS Protocol alone governs the production of source code in this case. This is plainly wrong.

As the court in New York ordered, Moog's source code "shall be made available for inspection" on a stand-alone computer at Moog's counsel's offices, *not* through the iDS platform. (Dkt. 284-6 at § 4.2.)  Thus, Moog's earlier production of its source code via the iDS platform fails to comply. Moog should immediately make that code available following the process required by that order. Moog refuses to so do, arguing that complying with the order would require it to "re-create" copies of its code, which make no sense as Moog need only provide its existing code in a

compliant format. And Moog's argument that it need not comply with the order until after it identifies its trade secrets has no merit. Moog has already produced this source code (albeit in a non-compliant format), and Moog argues that its code contains alleged trade secrets (*see, e.g.*, Dkt. 180 at 4), making it necessary to understand its forthcoming trade secret identification.

Although Moog has refused to make its own code available for inspection according to the Source Code Order, it has relied on that order to demand that Skyryse make additional, recent versions of its source code post-dating April 15, 2022, available. But these more recent versions of Skyryse's code are not "necessary" to enable Moog to identify its trade secrets, and its demands for still more discovery, before it identifies its own trade secrets, are unjustified. While Skyryse is willing to supplement its discovery as required as the case proceeds, Moog is not entitled to any such production now. Moog must first identify its alleged trade secrets, as ordered by the court.

### 4. Potential Motion Regarding Moog's Deficient Discovery Responses and Potential Spoliation

Moog recently reneged on its prior agreement to produce documents responsive to Skyryse's request for "[a]ll Communications and Documents relating to any investigation undertaken into any allegedly misappropriated Trade Secrets," including documents relating to the government's investigation. (Dkt. 179-3 at 12.) Moog also appears to have failed to preserve the documents it claims were copied and misappropriated, and instead has continued to modify these "living files" since filing suit. (*See* June 1, 2022 Hearing Tr. 7:12-17.) Moog has refused to provide any information regarding these modifications, which could have significant implications if this centrally relevant evidence was not preserved. The parties have met and conferred regarding these issues while this and other discovery has been held in abeyance pending Moog's trade secret disclosure, and Skyryse plans to file motions seeking relief as soon as it is permitted to do so.

### 5. Potential Motion Regarding an ESI Protocol

Skyryse anticipates that the parties may require the Court's assistance to resolve a dispute regarding electronically stored information ("ESI"). The parties agree that a stipulated ESI Protocol is necessary but disagree on certain terms. Skyryse is hopeful that the parties can stipulate to an ESI Protocol similar to those routinely used by this Court, but intervention may be necessary.

### 6. Motion for a Stay of the Civil Action

On August 3, 2022, the Individual Defendants moved for a stay of this civil action pending resolution of the parallel criminal investigation, raising Fifth Amendment concerns. (Dkt. 214.) Skyryse filed a brief in support of the Individual Defendants' motion and further seeking a stay for purposes of judicial economy. (Dkt. 241.) The motion is fully briefed. (Dkts. 214, 240, 241, 250, 255, 258.) The court in New York denied the motion to stay without prejudice on September 8, 2022, finding that it was premature, "as Pilkington and Kim have not yet asserted a Fifth Amendment Privilege" and would not be required to testify (or determine whether or not to invoke their Fifth Amendment privilege against testifying) before Moog identified its alleged trade secrets. (Dkt. 259 at 3-4.) The court noted, however, that "[o]nce Moog identifies the trade secrets and confidential information at issue, defendants may (or may not) decide that a stay of this action is necessary to protect their interests in light of the pending criminal investigation" and "[w]hether such relief would be appropriate is a question for another day." (*Id.* at 4.)

If the civil case continues in parallel with the criminal investigation, it will be obstructed by concerns regarding self-incrimination, and Defendants Pilkington and Kim will be forced to potentially compromise their defense in this action by invoking the Fifth Amendment. Any assertion of the Fifth Amendment by the Individual Defendants will prejudice Skyryse and deprive it of its due process right to collect and present evidence necessary to defend itself against Moog's claims. Staying the civil case will ensure that Defendants are not deprived of their ability to fairly defend themselves, while also serving the Court's interest in efficiency, since disposition of the criminal case is likely to streamline the issues to be decided and the scope of discovery in this action. Defendants therefore contend that a stay of this action is warranted.

### C. INDIVIDUAL DEFENDANTS' POSITION

As discussed herein, Plaintiff has thwarted expedited discovery in this matter by refusing to identify the purported trade secrets at issue in this action. None of Plaintiff's anticipated motions should be considered until it identifies its purported trade secrets in the manner required by the Court.

1      Mr. Pilkington and Mrs. Kim intend to either file a separate motion or join with

2  defendant Skyryse in requesting that Plaintiff immediately identify its purported trade secrets

3  before any further discovery is conducted, along with other relief.

4      Once the issue concerning trade secret identification and the sequencing of discovery is

5  resolved, Mr. Pilkington and Mrs. Kim may present additional discovery disputes to the Court.

6  Presently, resolution of these discovery disputes is impeded by Plaintiff's refusal to identify its

7  trade secrets (rending it impossible to determine the responsiveness and sufficiency of Plaintiff's

8  discovery responses) and the sequencing of discovery.

9      Finally, Mr. Pilkington and Mrs. Kim may refile their motion seeking a stay of this

10  action, which was denied without prejudice on September 8, 2022.  *See* Dkt. 259.  With any

11  motion to stay, Mr. Pilkington and Mrs. Kim will advise if such request is opposed and by

12  whom.

13

14  Dated: January 19, 2023        **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

15

16                By:  */s/ Kazim A. Naqvi*
                   Counsel for Plaintiff Moog Inc.

17

18                **LATHAM & WATKINS LLP**

19                By:  */s/ Gabriel S. Gross*
                   Counsel for Defendant Skyryse, Inc.

20

21                **WINGET, SPADAFORA & SCHWARTZBERG, LLP**

22

23                By:  */s/ Alexander A. Truitt*
                   Counsel for Defendant

24                Robert Alin Pilkington
                **WINGET, SPADAFORA & SCHWARTZBERG, LLP**

25

26                By:  */s/ Alexander A. Truitt*
                   Counsel for Defendant

27                Misook Kim

28

1

## <u>**ATTESTATION**</u>

2

  Pursuant to Civil Local Rule 5-4.3.4, I, Kazim A. Naqvi, attest that concurrence in the

3

filing of this document has been obtained by all its signatories.

4

5

Dated: January 19, 2023              <u>*/s/ Kazim A. Naqvi*</u>

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28