**LATHAM & WATKINS LLP**
  Douglas E. Lumish (SBN 183863)
  *doug.lumish@lw.com*
  Gabriel S. Gross (SBN 254672)
  *gabe.gross@lw.com*
  Arman Zahoory (SBN 306421)
  *arman.zahoory@lw.com*
  Ryan T. Banks (SBN 318171)
  *ryan.banks@lw.com*
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and Counterclaimant*
*Skyryse, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>                    Plaintiff,<br><br>                    v<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>                    Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**DEFENDANT SKYRYSE, INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |
| SKYRYSE, INC.,<br><br>                    Counterclaimant,<br><br>                    v<br><br>MOOG INC.,<br><br>                    Counterclaim-Defendant. | REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL |

## INTRODUCTION

Skyryse is a young, innovative company in El Segundo, California that has been revolutionizing the general aviation industry since its founding in 2016. With seventy-eight employees today, Skyryse has pioneered advanced, highly automated and autonomous flight technologies. Skyryse's innovations have the incredible potential to reduce general aviation fatalities and make flying easier, safer, and more affordable. Skyryse has never wanted or needed trade secrets from Moog, a seventy-year-old, 13,000-employee company that has been doing business the same way for decades. Quite the contrary, it was Moog that first approached Skyryse to try to learn about Skyryse's groundbreaking, highly automated flight systems and technologies, an area where Moog had failed to keep up and was quickly losing ground.

Desperate to stay relevant and competitive, Moog tried to get into this cutting-edge field by partnering with and promising to supply components to Skyryse. In the process, Moog gained access to vast amounts of Skyryse's valuable, confidential, and trade secret technologies and business information. Then, armed with Skyryse's confidential information and strategies, Moog used false pretenses to abandon Skyryse, put an end to their collaboration, and begin competing directly against it. Moog also knew it was losing the war for talent, as a number of its engineers had left Moog to pursue better opportunities with more exciting and modern companies like Skyryse. And Moog tried, through unsuccessful scare tactics that it knew had no legal basis, to stop its own at-will employees from daring to leave Moog and join Skyryse.

This is the backdrop against which Moog filed this lawsuit last March, without any advance notice or effort to cooperate with Skyryse. Moog claimed to have learned that two of its engineers, Alin Pilkington and Misook Kim, while working at Moog and before they joined Skyryse, made copies of files they "easily accessed" at Moog. Moog didn't reach out to Skyryse to discuss these two engineers or try resolving any problems it saw with their hiring. Instead, Moog chose to wage an all-out war through litigation in an effort to crush its smaller competitor. Moog accused Mr. Pilkington

2

DEFENDANT SKYRYSE, INC.'S ANSWER,
DEFENSES, AND COUNTERCLAIMS

1  and Ms. Kim of misappropriating alleged trade secrets and it sued Skyryse too,

2  advancing a fantastical conspiracy theory. The conspiracy Moog concocted—without

3  a factual basis—is that Skyryse secretly and nefariously directed Mr. Pilkington to go

4  and instruct Ms. Kim to use her employee credentials to access Moog's computer

5  systems, copy thousands of files indiscriminately, and deliver them to Skyryse "for

6  the advancement of Skyryse's business." Starting with this far-fetched theory, Moog

7  leveled a host of other baseless claims against Skyryse, all predicated on the alleged

8  misappropriation of some unspecified trade secrets.

9      Nearly a year into this lawsuit, Moog has yet to explain (even confidentially in

10  the discovery process) what its purported trade secrets are. Skyryse does not know

11  what it is accused of misappropriating, even though Moog has claimed for nearly a

12  year to know in granular detail the names, types, and locations of every file allegedly

13  copied. Indeed, Moog has gone to great lengths to delay identifying its own trade

14  secrets and refused to help Skyryse locate any such alleged trade secrets so that

15  Skyryse can ensure they never actually made it to the company or are rooted out if

16  they did. At the same time, Moog has inflicted massive discovery obligations and

17  expense on Skyryse and the individual defendants.  All of this speaks volumes about

18  Moog's true motivation for this lawsuit.

19      Skyryse's goal was never litigation, but Moog's lawsuit forced Skyryse to take

20  a close look at Moog's behavior and to defend its rights vigorously. As will be shown

21  in this lawsuit, it was Moog, not Skyryse, that acted improperly and in violation of the

22  law and its contractual obligations. Under the ruse of a collaboration, Moog violated

23  Skyryse's trust and confidence, breached its confidentiality obligations to Skyryse,

24  misappropriated Skyryse's trade secrets, interfered with its business, and unlawfully

25  leveraged Skyryse's confidential information to compete directly against it. Through

26  its counterclaims Skyryse seeks to recover for this unlawful conduct to the full extent

27  under the law and obtain a court order putting a stop to Moog's illicit tactics for good.

28

1    **<u>DEFENDANT SKYRYSE, INC.'S ANSWER TO</u>**

2    **<u>PLAINTIFF MOOG INC.'S COMPLAINT</u>**

3    Pursuant to Rules 7, 8, and 12 of the Federal Rules of Civil Procedure,

4   Defendant Skyryse, Inc. ("Skyryse" or "Defendant"), by and through its undersigned

5   counsel, responds to the allegations in Moog Inc.'s ("Moog" or "Plaintiff") complaint

6   (the "Complaint"). Skyryse denies all factual allegations set forth in the Complaint

7   unless expressly admitted. Any admission herein is limited to the express language of

8   the response and shall not be deemed an implied admission of additional facts. Skyryse

9   need not admit or deny legal conclusions or arguments. Skyryse does not repeat the

10   headings set forth in the Complaint. To the extent any headings require a response,

11   including to the extent any headings contain any factual allegations, they are denied.

12   Skyryse further answers the Complaint as follows:

13    1.    Skyryse denies the allegations in Paragraph 1.

14    2.    Skyryse denies the allegations in Paragraph 2.

15    3.    Skyryse admits only that Moog purports to bring an action for

16   misappropriation of trade secrets pursuant to the federal Defend Trade Secrets Act,

17   state and common law misappropriation, unfair competition, tortious interference with

18   economic advantage, breach of fiduciary duty, aiding and abetting breach of fiduciary

19   duty, conspiracy, and unjust enrichment, and denies the remaining allegations in

20   Paragraph 3. Skyryse denies that it has engaged in conduct establishing any of these

21   causes of action. Except as expressly admitted, denied.

22    4.    Skyryse denies the allegations in Paragraph 4. Further answering,

23   Skyryse asserts that Counts V, VI, and IX asserted against Skyryse fail to state a claim

24   upon which relief can be granted, including because they are preempted by the

25   California Uniform Trade Secrets Act, Cal. Civil Code §§ 3426 *et seq*., which provides

26   the exclusive remedy for trade secret misappropriation and preempts other state law

27   claims, which as here, are based on the same underlying facts.

28    5.    Skyryse lacks information or knowledge sufficient to form a belief as to

1  the truth of the allegations in Paragraph 5, and therefore, unless otherwise expressly

2  admitted herein, denies them.

3       6.     Skyryse denies the allegations in Paragraph 6.

4       7.     Skyryse denies the allegations in Paragraph 7.

5       8.     Skyryse denies the allegations in Paragraph 8.

6       9.     Skyryse admits only that Moog purports to seek injunctive relief and to

7  recover damages in this Action, and denies the remaining allegations in Paragraph 9.

8       10.    Skyryse lacks information or knowledge sufficient to form a belief as to

9  the truth of the allegations in Paragraph 10, and therefore, unless otherwise expressly

10  admitted herein, denies them.

11       11.    Skyryse admits only that it is a privately held Delaware corporation that

12  was founded by Mark Groden in 2016 that has its principal place of business at

13  777 Aviation Boulevard, El Segundo, California, that one of Skyryse's goals is to

14  build advanced, highly automated flying systems, including for already-developed

15  aircraft, that Skyryse has received funding from various sources, and that certain

16  former Moog personnel chose to leave Moog and work for Skyryse instead. Skyryse

17  otherwise lacks information or knowledge sufficient to form a belief as to the truth of

18  the remaining allegations in Paragraph 11 regarding Moog's knowledge, and therefore

19  denies those allegations.

20       12.    Skyryse lacks information or knowledge sufficient to form a belief as to

21  the truth of the allegations in Paragraph 12, and therefore, unless otherwise expressly

22  admitted herein, denies them.

23       13.    Skyryse lacks information or knowledge sufficient to form a belief as to

24  the truth of the allegations in Paragraph 13, and therefore, unless otherwise expressly

25  admitted herein, denies them.

26       14.    Skyryse lacks information or knowledge sufficient to form a belief as to

27  the truth of the allegations in Paragraph 14, and therefore, unless otherwise expressly

28  admitted herein, denies them.

1    15.    Skyryse denies the allegations in Paragraph 15.

2    16.    Paragraph 16 states legal conclusions to which no response is required.

3    To the extent a response is required, Skyryse admits only that federal courts have

4    jurisdiction over certain trade secret claims under 28 U.S.C. § 1331, and also that there

5    is diversity of citizenship between Moog and Skyryse. Skyryse otherwise denies the

6    remaining allegations contained in Paragraph 16.

7    17.    Paragraph 17 states legal conclusions to which no response is required.

8    To the extent a response is required, Skyryse admits only that 28 U.S.C. § 1367

9    provides federal courts supplemental jurisdiction to hear state law and common law

10   claims in certain circumstances. Skyryse otherwise denies the allegations contained in

11   Paragraph 17.

12   18.    Paragraph 18 states legal conclusions to which no response is required.

13   To the extent a response is required, Skyryse denies the allegations in Paragraph 18

14   that federal and state courts in New York have personal jurisdiction over Skyryse.

15   Skyryse otherwise denies the remaining allegations contained in Paragraph 18.

16   19.    Paragraph 19 states legal conclusions to which no response is required.

17   To the extent a response is required, Skyryse denies the allegations contained in

18   Paragraph 19, including that venue was proper in the Western District of New York.

19   20.    Skyryse lacks information or knowledge sufficient to form a belief as to

20   the truth of the allegations in Paragraph 20, and therefore, unless otherwise expressly

21   admitted herein, denies them.

22   21.    Skyryse lacks information or knowledge sufficient to form a belief as to

23   the truth of the allegations in Paragraph 21, and therefore, unless otherwise expressly

24   admitted herein, denies them.

25   22.    Skyryse lacks information or knowledge sufficient to form a belief as to

26   the truth of the allegations in Paragraph 22, and therefore, unless otherwise expressly

27   admitted herein, denies them.

28   23.    Skyryse lacks information or knowledge sufficient to form a belief as to

1   the truth of the allegations in Paragraph 23, and therefore, unless otherwise expressly
2   admitted herein, denies them.

3       24.   Skyryse lacks information or knowledge sufficient to form a belief as to
4   the truth of the allegations in Paragraph 24, and therefore, unless otherwise expressly
5   admitted herein, denies them.

6       25.   Skyryse lacks information or knowledge sufficient to form a belief as to
7   the truth of the allegations in Paragraph 25, and therefore, unless otherwise expressly
8   admitted herein, denies them.

9       26.   Skyryse lacks information or knowledge sufficient to form a belief as to
10  the truth of the allegations in Paragraph 26, and therefore, unless otherwise expressly
11  admitted herein, denies them.

12      27.   Skyryse lacks information or knowledge sufficient to form a belief as to
13  the truth of the allegations in Paragraph 27, and therefore, unless otherwise expressly
14  admitted herein, denies them.

15      28.   Skyryse lacks information or knowledge sufficient to form a belief as to
16  the truth of the allegations in Paragraph 28, and therefore, unless otherwise expressly
17  admitted herein, denies them.

18      29.   Skyryse lacks information or knowledge sufficient to form a belief as to
19  the truth of the allegations in Paragraph 29, and therefore, unless otherwise expressly
20  admitted herein, denies them.

21      30.   Skyryse lacks information or knowledge sufficient to form a belief as to
22  the truth of the allegations in Paragraph 30, and therefore, unless otherwise expressly
23  admitted herein, denies them.

24      31.   Skyryse lacks information or knowledge sufficient to form a belief as to
25  the truth of the allegations in Paragraph 31, and therefore, unless otherwise expressly
26  admitted herein, denies them.

27      32.   Skyryse lacks information or knowledge sufficient to form a belief as to
28  the truth of the allegations in Paragraph 32, and therefore, unless otherwise expressly

admitted herein, denies them.

33.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 33, and therefore, unless otherwise expressly admitted herein, denies them.

34.     Skyryse denies the allegations of Paragraph 34.

35.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 35, and therefore, unless otherwise expressly admitted herein, denies them.

36.     Skyryse admits only that flight control software must be vigorously tested and certified before it is approved by the Federal Aviation Administration ("FAA") or similar governing bodies around the world and different types of testing and analysis may be requirement. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36 regarding Moog's own business, and therefore, unless otherwise expressly admitted herein, denies them.

37.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 37, and therefore, unless otherwise expressly admitted herein, denies them.

38.     Skyryse denies the allegations in Paragraph 38.

39.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 39 that Moog has optimized SEPG documents over 20 years of working with aviation authorities around the world or why third-party companies hire Moog for software development, and therefore, unless otherwise expressly admitted herein, denies them. Skyryse otherwise denies the remaining allegations in Paragraph 39.

40.     Skyryse denies the allegations of Paragraph 40.

41.     Skyryse denies the allegations of Paragraph 41.

42.     Skyryse denies the allegations of Paragraph 42.

43.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 43, and therefore, unless otherwise expressly admitted herein, denies them.

44.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 44, and therefore, unless otherwise expressly admitted herein, denies them.

45.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 45, and therefore, unless otherwise expressly admitted herein, denies them.

46.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 46, and therefore, unless otherwise expressly admitted herein, denies them.

47.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 47, and therefore, unless otherwise expressly admitted herein, denies them.

48.     Skyryse admits only that Exhibits A and B are documents attached to the Complaint, and speak for themselves. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 48, and therefore, unless otherwise expressly admitted herein, denies them.

49.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 49, and therefore, unless otherwise expressly admitted herein, denies them.

50.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 50, and therefore, unless otherwise expressly admitted herein, denies them.

51.     Skyryse admits only that Gonzalo Rey and Sathyanarayana Achar were former Moog employees and that Mr. Achar currently works for Skyryse. Skyryse denies that Dr. Rey is currently employed by Skyryse. Skyryse otherwise lacks

information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 51, and therefore, unless otherwise expressly admitted herein, denies them.

52.     Skyryse admits only that Michael Hunter and Todd Schmidt discussed potential employment opportunities with Skyryse. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 52, and therefore, unless otherwise expressly admitted herein, denies them.

53.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 53, and therefore, unless otherwise expressly admitted herein, denies them.

54.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 54, and therefore, unless otherwise expressly admitted herein, denies them.

55.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 55, and therefore, unless otherwise expressly admitted herein, denies them.

56.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 56 and therefore, unless otherwise expressly admitted herein, denies them.

57.     Skyryse admits only that in 2018 Moog and Skyryse began exploring a potential business opportunity with each other, and that Skyryse was formed by Mark Groden in 2016. Skyryse otherwise, unless otherwise expressly admitted herein, denies the allegations of Paragraph 57.

58.     Skyryse admits only that Dr. Groden was twenty-six years old when Skyryse was founded. Skyryse denies that its founding was "a situation akin to Theranos" and objects to this allegation as immaterial and impertinent. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the remaining

1  allegations in Paragraph 58 pertaining to how others have described Dr. Groden, and

2  therefore, unless otherwise expressly admitted herein, denies them.

3       59.    Skyryse admits the allegations of Paragraph 59.

4       60.    Skyryse admits that it shared its business plan information with Moog in

5  2018, which included, among other things, a plan to offer on-demand helicopter

6  transportation to the general public, through the use of automated flight system

7  technology. Skyryse admits that "[b]ased on Skyryse's explanations about its business

8  plan, Moog believed there was real potential for opportunity." Skyryse admits that the

9  parties discussed aspects of a flight control system to install in aircrafts, including

10  helicopters. Unless otherwise expressly admitted herein, Skyryse denies the remaining

11  allegations in Paragraph 60.

12       61.    Skyryse admits only that Skyryse and Moog agreed that Skyryse would

13  own the Supplemental Type Certification ("STC") for the automated flight system

14  being built for Skyryse's flight system, and, unless otherwise expressly admitted

15  herein, denies the allegations in Paragraph 61.

16       62.    Skyryse admits only that software, hardware, or other technology that

17  goes into a helicopter may require a STC issued by the FAA, and otherwise, unless

18  otherwise expressly admitted herein, denies the allegations in Paragraph 62.

19       63.    Skyryse admits only that Skyryse's goal is to eventually offer highly

20  automated aircraft for use by the general public through its revolutionary automated

21  flight system and also that Skyryse has intended in certain cases to have a pilot on

22  board equipped with a simplified user interface who can override the automated flight

23  system and take control if needed. Unless otherwise expressly admitted herein,

24  Skyryse denies the remaining allegations in Paragraph 63.

25       64.    Skyryse admits only that Skyryse and Moog entered into a Proprietary

26  Information and Nondisclosure Agreement, attached as Exhibit C to the Complaint,

27  which document speaks for itself. Unless otherwise expressly admitted herein,

28  Skyryse denies the remaining allegations in Paragraph 64.

65.     Skyryse admits only that it participated in various funding rounds, which raised $25 million in seed and Series A funding, which it announced on or around August 28, 2018. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 65 pertaining to statements in "press articles," and therefore, unless otherwise expressly admitted herein, denies them. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 65.

66.     Skyryse admits only that Skyryse and Moog entered into a Proprietary Information and Nondisclosure Agreement, attached as Exhibit D to the Complaint, which document speaks for itself. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 66.

67.     Skyryse admits only that Skyryse and Moog entered into the NDAs, which speak for themselves. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 67.

68.     Skyryse admits only that Moog and Skyryse agreed that their business relationship would be organized into phases, and that Moog and Skyryse entered into a Statement of Work for Phase 1 ███████████████████ ███████████ (the "SOW"), certain pages of which are attached as Exhibit E to the Complaint, which document speaks for itself. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 68.

69.     Skyryse admits only that the SOW contains a Section 2, which speaks for itself. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 69.

70.     Skyryse admits only that the SOW contains a Section 3, which speaks for itself, and otherwise, unless otherwise expressly admitted herein, denies the allegations in Paragraph 70.

71.     Skyryse admits only that the SOW contains a Section 4 and a Section 4.1.1, which sections speak for themselves. Unless otherwise expressly

1    admitted herein, Skyryse denies the remaining allegations in Paragraph 71.

2         72.    Skyryse admits only that the SOW contains a Section 4.1.2, which speaks

3    for itself, and otherwise, unless otherwise expressly admitted herein, denies the

4    allegations in Paragraph 72.

5         73.    Skyryse admits only that the SOW contains a Section 9, which speaks for

6    itself, and otherwise, unless otherwise expressly admitted herein, denies the

7    allegations in Paragraph 73.

8         74.    Skyryse admits only that Moog and Skyryse entered into a "Terms and

9    Conditions of Sale" effective June 3, 2019, attached as Exhibit F to the Complaint,

10   which document speaks for itself. Unless otherwise expressly admitted herein,

11   Skyryse denies the remaining allegations in Paragraph 74.

12        75.    Skyryse denies the allegations of Paragraph 75.

13        76.    Skyryse denies the allegations of Paragraph 76.

14        77.    Skyryse admits only that it issued a press release on December 17, 2019,

15   which speaks for itself. Skyryse otherwise denies the allegations of Paragraph 77.

16        78.    Skyryse admits only that Skyryse purchased an aircraft in or around

17   October 2017, retrofitted it with Skyryse's technology, and named the aircraft "Luna."

18   Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations

19   in Paragraph 78.

20        79.    Skyryse denies the allegations of Paragraph 79.

21        80.    Skyryse admits only that it issued a press release on or around March 17,

22   2020, which speaks for itself, and otherwise denies the allegations in Paragraph 80.

23        81.    Skyryse admits only that it issued a press release on or around March 17,

24   2020, which speaks for itself, and otherwise denies the allegations in Paragraph 81.

25        82.    Skyryse admits only that on May 22, 2020, Tim Baptist sent Moog a

26   request for quote from Skyryse, attached as Exhibit G to the Complaint, which speaks

27   for itself. Skyryse lacks information or knowledge sufficient to form a belief as to the

28   truth of the remaining allegation in Paragraph 82 regarding Tim Baptist's role and

1  dates of employment at Moog, and therefore, unless otherwise expressly admitted

2  herein, denies them, and otherwise denies the remaining allegations in Paragraph 82.

3       83.    Skyryse admits only that on May 22, 2020, Skyryse sent Moog a request

4  for quote, which speaks for itself, and otherwise denies the allegations in

5  Paragraph 83, including specifically denying that Skyryse changed its entire business

6  plan and model compared to when Moog first started doing business with Skyryse.

7       84.    Skyryse admits only that on or around September 22, 2020, Moog

8  submitted a bid that was too expensive, and on information and belief was presented

9  by Moog as an unacceptable no-bid bid, in response to Skyryse's request for quote,

10 attached as Exhibit H to the Complaint, in the amount of $46,195,870, which bid

11 speaks for itself, and otherwise denies the allegations in Paragraph 84.

12      85.    Skyryse admits only that Moog's bid was too expensive and far out of

13 proportion to the work to be performed, and so, on information and belief was

14 presented by Moog as an unacceptable "no-bid bid" that Moog intended to be rejected

15 by Skyryse. Skyryse otherwise denies the allegations of Paragraph 85.

16      86.    Skyryse admits only that the Parties have not pursued any further

17 business opportunities and that the 2018 and 2019 NDAs have not been terminated.

18 Skyryse denies that it was the one who declined to continue the business relationship,

19 and otherwise denies the allegations in Paragraph 86.

20      87.    Skyryse admits only that it issued a press release on or around October

21 27, 2021, which speaks for itself. Unless otherwise expressly admitted herein, Skyryse

22 denies the remaining allegations in Paragraph 87.

23      88.    Skyryse denies the allegations of Paragraph 88.

24      89.    Skyryse denies the allegations of Paragraph 89.

25      90.    Skyryse denies the allegations of Paragraph 90.

26      91.    Skyryse admits only that some of the individuals identified in

27 Paragraph 91 have worked with Skyryse. Skyryse denies that Tony Chirico joined

28 Skyryse, and otherwise lacks information or knowledge sufficient to form a belief as

1   to the truth of the remaining allegations in Paragraph 91, and therefore, unless
2   otherwise expressly admitted herein, denies them.

3       92.   Skyryse lacks information or knowledge sufficient to form a belief as to
4   the truth of the allegations in Paragraph 92, and therefore, unless otherwise expressly
5   admitted herein, denies them.

6       93.   Skyryse denies the allegations of Paragraph 93.

7       94.   Skyryse denies the allegations of Paragraph 94.

8       95.   Skyryse admits only that Gonzalo Rey and Todd Schmidt communicated
9   regarding potential employment opportunities at Skyryse, and otherwise denies the
10  allegations of Paragraph 95.

11      96.   Skyryse admits only that Dr. Rey and Mr. Schmidt communicated
12  regarding Skyryse and potential employment opportunities at the company and
13  otherwise denies the allegations in Paragraph 96.

14      97.   Skyryse admits only that Dr. Rey and Mr. Schmidt had communicated
15  regarding Skyryse, and denies the remaining allegations in Paragraph 97.

16      98.   Skyryse admits only that Dr. Rey and Mr. Schmidt communicated
17  regarding Skyryse and potential employment opportunities at the company and
18  otherwise denies the allegations in Paragraph 98.

19      99.   Skyryse lacks information or knowledge sufficient to form a belief as to
20  the truth of the allegations in Paragraph 99 and therefore, unless otherwise expressly
21  admitted herein, denies them.

22      100.  Skyryse admits only that Dr. Rey and Todd Schmidt communicated
23  regarding Skyryse and potential employment opportunities at the company and
24  otherwise denies the allegations in Paragraph 100.

25      101.  Skyryse lacks information or knowledge sufficient to form a belief as to
26  the truth of the allegations in Paragraph 101, and therefore, unless otherwise expressly
27  admitted herein, denies them.

28      102.  Skyryse admits only that Mr. Pilkington and Mr. Hunter discussed

Skyryse and potential employment opportunities at the company, and that Mr. Pilkington explained some of the pros and cons to Skyryse being a new startup. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 102, and therefore, unless otherwise expressly admitted herein, denies them.

103.    Skyryse admits only that Deb Morisie and Jorge Lopez communicated on November 15, 2021 regarding Skyryse and potential employment opportunities at the company, and that Mr. Lopez informed Ms. Morisie over text that he was not interested at that time. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 103.

104.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 104, and therefore, unless otherwise expressly admitted herein, denies them.

105.    Skyryse admits only that it has lawfully communicated with certain Moog personnel regarding potential employment opportunities at Skyryse, and denies the remaining allegations of Paragraph 105.

106.    Skyryse admits only that it has hired certain former Moog employees, but denies that "the list is expanding on a weekly basis." Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 106, and therefore, unless otherwise expressly admitted herein, denies them.

107.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 107, and therefore, unless otherwise expressly admitted herein, denies them.

108.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 108, and therefore, unless otherwise expressly admitted herein, denies them.

109.    Skyryse denies the allegations in Paragraph 109.

110.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 110, and therefore, unless otherwise expressly admitted herein, denies them.

111.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 111, and therefore, unless otherwise expressly admitted herein, denies them.

112.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 112, and therefore, unless otherwise expressly admitted herein, denies them.

113.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 113, and therefore, unless otherwise expressly admitted herein, denies them.

114.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 114, and therefore, unless otherwise expressly admitted herein, denies them.

115.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 115, and therefore, unless otherwise expressly admitted herein, denies them.

116.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 116, and therefore, unless otherwise expressly admitted herein, denies them.

117.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 117, and therefore, unless otherwise expressly admitted herein, denies them.

118.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 118, and therefore, unless otherwise expressly admitted herein, denies them.

119.    Skyryse lacks information or knowledge sufficient to form a belief as to

the truth of the allegations in Paragraph 119, and therefore, unless otherwise expressly admitted herein, denies them.

120. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 120, and therefore, unless otherwise expressly admitted herein, denies them.

121. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 121, and therefore, unless otherwise expressly admitted herein, denies them.

122. Skyryse lacks information or knowledge sufficient to form a belief as Moog's investigation. Skyryse otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 122.

123. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 123, and therefore, unless otherwise expressly admitted herein, denies them.

124. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 124, and therefore, unless otherwise expressly admitted herein, denies them.

125. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 125, and therefore, unless otherwise expressly admitted herein, denies them.

126. Skyryse admits only that Exhibit I to Moog's Complaint purports to be a document titled "Supervisor Termination Checklist" that references Misook Kim, and speaks for itself, and otherwise denies the allegations in Paragraph 126.

127. Skyryse admits that large amounts of Moog's data could have been "easily accessed" and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 127, and therefore, unless otherwise expressly admitted herein, denies them.

128. Skyryse lacks information or knowledge sufficient to form a belief as to

the truth of the allegations in Paragraph 128, and therefore, unless otherwise expressly admitted herein, denies them.

129.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 129, and therefore, unless otherwise expressly admitted herein, denies them.

130.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 130, and therefore, unless otherwise expressly admitted herein, denies them.

131.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 131, and therefore, unless otherwise expressly admitted herein, denies them.

132.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 132, and therefore, unless otherwise expressly admitted herein, denies them.

133.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 133, and therefore, unless otherwise expressly admitted herein, denies them.

134.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 134, and therefore, unless otherwise expressly admitted herein, denies them.

135.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 135, and therefore, unless otherwise expressly admitted herein, denies them.

136.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 136, and therefore, unless otherwise expressly admitted herein, denies them.

137.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 137, and therefore, unless otherwise expressly

admitted herein, denies them.

138.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 138, and therefore, unless otherwise expressly admitted herein, denies them.

139.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 139, and therefore, unless otherwise expressly admitted herein, denies them.

140.    Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 140, and therefore, unless otherwise expressly admitted herein, denies them.

141.    Skyryse denies the allegations in Paragraph 141.

142.    Skyryse denies the allegations in Paragraph 142.

143.    Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 143 relating to Moog's investments into the research and development into unmanned helicopters and in developing the Platform software, and therefore denies those allegations on that basis, and further denies the remaining allegations in Paragraph 143.

144.    Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 144 relating to Moog's use of architectural diagrams, and therefore denies those allegations on that basis, and further denies the remaining allegations in Paragraph 144.

145.    Skyryse denies the allegations in Paragraph 145.

146.    Skyryse denies the allegations in Paragraph 146.

147.    Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 147 regarding any alleged copying of Moog information by Ms. Kim, and therefore denies those allegations on that basis, and further denies the remaining allegations in Paragraph 147

148.    Skyryse denies the allegations in Paragraph 148.

149.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 149 and therefore, unless otherwise expressly admitted herein, denies them.

150.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 150, and therefore, unless otherwise expressly admitted herein, denies them.

151.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 151, and therefore, unless otherwise expressly admitted herein, denies them.

152.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 152 and therefore, unless otherwise expressly admitted herein, denies them.

153.   Skyryse admits only that it is working on flight control systems for helicopters. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 153 regarding the G280 project, and therefore, unless otherwise expressly admitted herein, denies them on that basis, and further denies the remaining allegations in Paragraph 153.

154.   Skyryse denies the allegations in Paragraph 154.

155.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 155 and therefore, unless otherwise expressly admitted herein, denies them.

156.   Skyryse admits that re-programming an airplane computer may under some, but not all, circumstances, raise security concerns. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 156, and therefore, unless otherwise expressly admitted herein, denies them.

157.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 157, and therefore, unless otherwise expressly admitted

1    herein, denies them.

2        158.    Skyryse lacks information or knowledge sufficient to form a belief as to

3    the allegations in Paragraph 158, and therefore, unless otherwise expressly admitted

4    herein, denies them.

5        159.    Skyryse denies that any alleged harm to Moog is not compensable with

6    monetary damages and that "[d]ata and information security is of paramount concern

7    in this industry." Skyryse lacks information or knowledge sufficient to form a belief

8    as to the remaining allegations in Paragraph 159 and therefore, unless otherwise

9    expressly admitted herein, denies them.

10                                       **COUNT I**

11       160.    Skyryse hereby restates and incorporates by reference its responses to the

12   allegations from Paragraphs 1 through 159, as if fully set forth herein.

13       161.    Paragraph 161 contains legal conclusions to which no response is

14   required. To the extent a response is required, Skyryse admits only that

15   18 U.S. Code § 1836(b) allows an owner of a trade secret that is misappropriated to

16   bring a civil action "if the trade secret is related to a product or service used in, or

17   intended for use in, interstate or foreign commerce." Unless otherwise expressly

18   admitted herein, Skyryse denies the remaining allegations in Paragraph 161.

19       162.    Paragraph 162 contains legal conclusions to which no response is

20   required. To the extent a response is required, Skyryse admits only that

21   18 U.S.C. § 1839(3) provides a definition of the term "trade secret," which speaks for

22   itself. Unless otherwise expressly admitted herein, Skyryse denies the remaining

23   allegations in Paragraph 162.

24       163.    Paragraph 163 contains legal conclusions to which no response is

25   required. To the extent a response is required, Skyryse admits only that

26   18 U.S.C. § 1839(5) provides a definition of the term "misappropriation," which

27   speaks for itself. Unless otherwise expressly admitted herein, Skyryse denies the

28   remaining allegations in Paragraph 163.

164. Paragraph 164 contains legal conclusions to which no response is required. To the extent a response is required, Skyryse admits only that 18 U.S.C. § 1839(6) provides a definition of the term "improper means," which speaks for itself. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 164.

165. Skyryse denies the allegations in Paragraph 165.

166. Skyryse denies the allegations in Paragraph 166.

167. Skyryse denies the allegations in Paragraph 167.

168. Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 168 and therefore, unless otherwise expressly admitted herein, denies them.

169. Skyryse admits only that it has signed NDAs with Moog in the past and otherwise denies the allegations in Paragraph 169.

170. Skyryse denies the allegations in Paragraph 170.

171. Paragraph 171 contains legal conclusions to which no response is required. To the extent a response is required, Skyryse denies the allegations in Paragraph 171.

172. Skyryse denies the allegations in Paragraph 172.

173. Skyryse denies the allegations in Paragraph 173.

174. Skyryse denies the allegations in Paragraph 174.

175. Skyryse denies the allegations in Paragraph 175.

176. Skyryse denies the allegations in Paragraph 176.

177. Skyryse denies the allegations in Paragraph 177.

178. Skyryse denies the allegations in Paragraph 178.

179. Skyryse denies the allegations in Paragraph 179.

## **COUNT II**

180. Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-179, as if fully set forth herein.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT SKYRYSE, INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS

181.   Skyryse denies the allegations in Paragraph 181.

182.   Skyryse denies the allegations in Paragraph 182.

183.   Skyryse denies the allegations in Paragraph 183.

184.   Skyryse denies the allegations in Paragraph 184.

185.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 185, and therefore, unless otherwise expressly admitted herein, denies them.

186.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 186 and therefore, unless otherwise expressly admitted herein, denies them.

187.   Skyryse denies the allegations in Paragraph 187.

188.   Paragraph 188 contains legal conclusions to which no response is required. To the extent a response is required, Skyryse denies the allegations in Paragraph 188 which fail to fully or accurately state the relevant legal standard.

189.   Skyryse denies the allegations in Paragraph 189.

190.   Skyryse denies the allegations in Paragraph 190.

191.   Skyryse denies the allegations in Paragraph 191.

192.   Skyryse denies the allegations in Paragraph 192.

## **COUNT III**

193.   Paragraph 193 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-192, as if fully set forth herein.

194.   Paragraph 194 does not assert a cause of action against Skyryse, and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 194 and therefore, unless otherwise expressly admitted herein, denies them.

195.   Paragraph 195 does not assert a cause of action against Skyryse and so

no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 196 and therefore, unless otherwise expressly admitted herein, denies them.

196.    Paragraph 196 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 196 and therefore, unless otherwise expressly admitted herein, denies them.

197.    Paragraph 197 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 197 and therefore, unless otherwise expressly admitted herein, denies them.

198.    Paragraph 198 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse denies the allegation that Mr. Pilkington and Ms. Kim misappropriated Moog's trade secrets and confidential and proprietary information for the benefit of Skyryse, including, but not limited to, by soliciting Moog employees. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 198 regarding Mr. Pilkington and Ms. Kim and therefore, unless otherwise expressly admitted herein, denies them on that basis.

199.    Paragraph 199 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 199 and therefore, unless otherwise expressly admitted herein, denies them.

200.    Paragraph 200 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 200 and therefore, unless otherwise expressly admitted herein, denies them.

201.    Paragraph 201 does not assert a cause of action against Skyryse and so

1   no response is required. To the extent a response is required, Skyryse lacks

2   information or knowledge sufficient to form a belief as to the allegations in

3   Paragraph 201 and therefore, unless otherwise expressly admitted herein, denies them.

4   ## COUNT IV

5   202.   Paragraph 202 does not assert a cause of action against Skyryse and so

6   no response is required. To the extent a response is required, Skyryse restates and

7   incorporates by reference its responses to the allegations in Paragraphs 1-201, as if

8   fully set forth herein.

9   203.   Paragraph 203 does not assert a cause of action against Skyryse and so

10   no response is required. To the extent a response is required, Skyryse lacks

11   information or knowledge sufficient to form a belief as to the allegations in

12   Paragraph 203 and therefore, unless otherwise expressly admitted herein, denies them.

13   204.   Paragraph 204 does not assert a cause of action against Skyryse and so

14   no response is required. To the extent a response is required, Skyryse lacks

15   information or knowledge sufficient to form a belief as to the allegations in

16   Paragraph 204 regarding the independent actions of Mr. Pilkington or Ms. Kim and

17   therefore denies those allegations on that basis, and specifically denies the allegations

18   relating to Skyryse in Paragraph 204.

19   205.   Paragraph 205 does not assert a cause of action against Skyryse and so

20   no response is required. To the extent a response is required, Skyryse lacks

21   information or knowledge sufficient to form a belief as to the allegations in Paragraph

22   205 and therefore, unless otherwise expressly admitted herein, denies them.

23   206.   Paragraph 206 does not assert a cause of action against Skyryse and so

24   no response is required. To the extent a response is required, Skyryse lacks

25   information or knowledge sufficient to form a belief as to the allegations in Paragraph

26   206 and therefore, unless otherwise expressly admitted herein, denies them.

27   ## COUNT V

28   207.   Skyryse restates and incorporates by reference its responses to the

allegations in Paragraphs 1-206, as if fully set forth herein.

208.   Skyryse denies the allegations in Paragraph 208.

209.   Skyryse denies the allegations in Paragraph 209.

210.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 210, and therefore, unless otherwise expressly admitted herein, denies them.

211.   Skyryse denies the allegations in Paragraph 211.

212.   Skyryse denies the allegations in Paragraph 212.

213.   Skyryse denies the allegations in Paragraph 213.

214.   Skyryse denies the allegations in Paragraph 214.

215.   Skyryse denies the allegations in Paragraph 215.

216.   Skyryse denies the allegations in Paragraph 216.

**COUNT VI**

217.   Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-216, as if fully set forth herein.

218.   Skyryse denies the allegations in Paragraph 218.

219.   Skyryse denies the allegations in Paragraph 219.

220.   Skyryse denies the allegations in Paragraph 220.

221.   Skyryse denies the allegations in Paragraph 221.

222.   Skyryse denies the allegations in Paragraph 222.

**COUNT VII**

223.   Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-222, as if fully set forth herein.

224.   Skyryse admits only that it entered into at least the NDAs with Moog dated October 24, 2018 and March 15, 2019, and otherwise, unless otherwise expressly admitted herein, denies the allegations in Paragraph 224.

225.   Skyryse admits only that Paragraph 225 purports to quote language from the 2018 and 2019 NDAs, which speak for themselves, and otherwise, unless

1  otherwise expressly admitted herein, denies the allegations in Paragraph 225.

2  226.   Skyryse admits only that Paragraph 226 purports to quote language from

3  the 2018 and 2019 NDAs, which speak for themselves, and otherwise, unless

4  otherwise expressly admitted herein, denies the allegations in Paragraph 226.

5  227.   Skyryse admits only that the NDAs contain a Section 5, which speaks for

6  itself, and otherwise, unless otherwise expressly admitted herein, denies the

7  allegations in Paragraph 227.

8  228.   Skyryse admits only that Paragraph 228 purports to quote language from

9  the 2018 and 2019 NDAs, which speak for themselves, and otherwise, unless

10  otherwise expressly admitted herein, denies the allegations in Paragraph 228.

11  229.   Skyryse denies the allegations in Paragraph 229.

12  230.   Skyryse denies the allegations in Paragraph 230.

13  ## COUNT VIII

14  231.   Paragraph 231 does not assert a cause of action against Skyryse and so

15  no response is required. To the extent a response is required, Skyryse restates and

16  incorporates by reference its responses to the allegations in Paragraphs 1-230, as if

17  fully set forth herein.

18  232.   Paragraph 232 does not assert a cause of action against Skyryse and

19  therefore no response is required from Skyryse. To the extent a response is required,

20  Skyryse lacks information or knowledge sufficient to form a belief as to the allegations

21  in Paragraph 232 and therefore, unless otherwise expressly admitted herein, denies

22  them.

23  233.   Paragraph 233 does not assert a cause of action against Skyryse and

24  therefore no response is required from Skyryse. To the extent a response is required,

25  Skyryse lacks information or knowledge sufficient to form a belief as to the allegations

26  in Paragraph 233 and therefore, unless otherwise expressly admitted herein, denies

27  them.

28

234.   Paragraph 234 does not assert a cause of action against Skyryse and therefore no response is required from Skyryse. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 234 and therefore, unless otherwise expressly admitted herein, denies them.

235.   Paragraph 235 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse denies any allegation that Ms. Kim or Mr. Pilkington engaged in wrongful activity for the benefit of Skyryse. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 235 related to the independent actions of Ms. Kim or Mr. Pilkington, and therefore, unless otherwise expressly admitted herein, denies them on that basis.

236.   Paragraph 234 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 236 and therefore, unless otherwise expressly admitted herein, denies them.

237.   Paragraph 237 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 237 and therefore, unless otherwise expressly admitted herein, denies them.

238.   Paragraph 238 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse denies any allegation that Ms. Kim usurped Moog's corporate opportunities to the benefit of Skyryse. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 238 related to the independent actions of Ms. Kim, and therefore, unless otherwise expressly admitted herein, denies them on that basis.

239.   Paragraph 239 does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks

information or knowledge sufficient to form a belief as to the allegations in Paragraph 239, and therefore, unless otherwise expressly admitted herein, denies them.

## COUNT IX

240.   Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-239, as if fully set forth herein.

241.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 241, and therefore, unless otherwise expressly admitted herein, denies them.

242.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 242, and therefore, unless otherwise expressly admitted herein, denies them.

243.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 243, and therefore, unless otherwise expressly admitted herein, denies them.

244.   Skyryse denies the allegation that Skyryse coordinated with Ms. Kim or Mr. Pilkington to copy any files from Moog. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 244, and unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 244.

245.   Skyryse denies the allegation in Paragraph 245.

246.   Skyryse denies the allegations in Paragraph 246.

247.   Skyryse denies the allegations in Paragraph 247.

248.   Skyryse denies that Skyryse has engaged in tortious actions that have interfered with any of Moog's business relationships. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 248, and unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 248.

249.   Skyryse denies the allegations contained in Paragraph 249.

250.   Skyryse denies the allegations contained in Paragraph 250.

## COUNT X

251.   Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-250, as if fully set forth herein.

252.   Skyryse denies the allegations in Paragraph 252.

253.   Skyryse denies the allegations in Paragraph 253.

254.   Skyryse denies the allegations in Paragraph 254.

255.   Skyryse denies the allegations in Paragraph 255.

## COUNT XI

256.   Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-255, as if fully set forth herein.

257.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 257 and therefore, unless otherwise expressly admitted herein, denies them.

258.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 258 and therefore, unless otherwise expressly admitted herein, denies them.

259.   Skyryse denies that it was involved in any scheme to copy or steal files or data from Moog. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 259 and therefore, unless otherwise expressly admitted herein, denies them.

260.   Skyryse admits only that it entered into NDAs with Moog, which speak for themselves, and therefore, unless otherwise expressly admitted herein, denies the allegations in Paragraph 260.

261.   Skyryse admits only that it entered into NDAs with Moog, which speak for themselves, and also that Skyryse and Moog exchanged certain information, and otherwise, unless otherwise expressly admitted herein, denies the remaining

allegations in Paragraph 261.

262.   Skyryse denies the allegations in Paragraph 262.

263.   Skyryse denies the allegations in Paragraph 263.

264.   Skyryse denies the allegations in Paragraph 264.

## SKYRYSE'S DEFENSES

By alleging the Defenses set forth below, Skyryse does not admit or concede liability on any claim brought by Moog, nor does Skyryse concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

## FIRST DEFENSE

### (Failure to State a Claim)

1.   Moog's claims are barred, in whole or in part, because Moog failed to state a claim upon which relief can be granted. For example, at least Moog's Counts V, VI, and IX are preempted by the California Uniform Trade Secrets Act, Cal. Civil Code §§ 3426 *et seq*., which provides the exclusive remedy for trade secret misappropriation under state law and preempts other state law claims, which as here, are based on the same underlying facts. Further, Moog's unfair competition claims arising out of the lawful hiring of Moog employees are brought in violation of California Business and Professions Code §16600, and Moog's unjust enrichment and constructive trust allegations are not causes of action for which relief can be granted.

## SECOND DEFENSE

### (Readily Ascertainable – California CUTSA Claim Only)

2.   Plaintiff's state law trade secret misappropriation claim, to the extent it arises out of the California Uniform Trade Secrets Act, is barred, in whole or in part, because Moog's alleged trade secrets are readily ascertainable through proper means.

**THIRD DEFENSE**

**(Failure to Qualify as Protectable Trade Secret)**

3.      Moog's claims are barred, in whole or in part, because Moog's alleged trade secrets fail to qualify for trade secret protection under the law at least because Moog's alleged trade secrets are readily ascertainable through proper means, Moog's alleged trade secrets do not derive independent economic value from not being generally known, Moog failed to take reasonable measures to keep its alleged trade secret information secret.

**FOURTH DEFENSE**

**(Independent Invention)**

4.      Moog's claims are barred, in whole or in part, by the doctrine of independent invention.

**FIFTH DEFENSE**

**(Unclean Hands)**

5.      Moog's claims are barred, in whole or in part, by the doctrine of unclean hands.

**SIXTH DEFENSE**

**(Waiver)**

6.      Moog's claims are barred, in whole or in part, by the doctrines of express and/or implied waiver.

**SEVENTH DEFENSE**

**(Acquiescence)**

7.      Moog's claims are barred, in whole or in part, by the doctrine of acquiescence.

**EIGHTH DEFENSE**

**(Estoppel)**

8.      Moog's claims are barred, in whole or in part, by the doctrine of estoppel.

## NINTH DEFENSE

### (Time-Barred)

9.      Moog's claims are time-barred.

## TENTH DEFENSE

### (Laches)

10.     Moog's claims are barred, in whole or in part, by the doctrine of laches. Moog's has inexcusably and unreasonably delayed commencement of this action to the prejudice of Skyryse.

## ELEVENTH DEFENSE

### (Adequate Remedy at Law)

11.     Moog is not entitled to a recovery of equitable relief because of the existence of an adequate remedy at law.

## TWELFTH DEFENSE

### (Preemption)

12.     Moog's claims are barred, in whole or in part, by being preempted by California's Uniform Trade Secrets Act, California Civil Code §§ 3426 *et seq.*

## THIRTEENTH DEFENSE

### (Covenant of Good Faith and Fair Dealing)

13.     Moog's claims are barred, in whole or in part, by the doctrine of the covenant of good faith and fair dealing.

## RESERVATION OF RIGHTS

Skyryse has not knowingly or intentionally waived any applicable affirmative or other defenses and reserves the right to assert and rely on such other affirmative defenses as may later become available or apparent. Skyryse further reserves the right to amend its answer and/or defenses accordingly and/or to withdraw defenses that it determines are not applicable during the course of subsequent discovery. Nothing stated herein constitutes a concession as to whether or not Plaintiff bears the burden of proof on any issue.

# PRAYER FOR RELIEF

WHEREFORE, Skyryse prays for judgment as follows:

1. That Moog take nothing against Skyryse;

2. That judgment be entered against Moog in favor of Skyryse;

3. That Skyryse be awarded the costs of suit, including attorneys' fees incurred herein; and

4. That this Court award Skyryse such other and further relief as it may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Civil Local Rule 38-1, Skyryse, Inc. hereby demands a trial by jury.

## SKYRYSE, INC.'S COUNTERCLAIMS

Skyryse brings the following counterclaims against Moog:

## NATURE OF THE ACTION

1. Aviation technology has advanced by leaps and bounds in recent years, with innovators like Skyryse making groundbreaking strides in automating flight systems. Moog could not keep up. After decades of doing things the same way, Moog knew it could not legitimately compete against the younger, more exciting, and more technologically advanced Skyryse—which was leading the industry in advanced automated flight systems and human-aircraft interfaces. Moog also knew it was losing the battle for top engineering talent to Skyryse. So starting in 2018, Moog resorted to a series of unlawful, bad-faith business practices in a desperate attempt to stay relevant and crush its much smaller competitor, Skyryse.

2. At first, Moog tried to catch up in the cutting-edge field of advanced automated flight systems by partnering with Skyryse and gaining access to its confidential, proprietary technologies and business information. Moog assured Skyryse it would be a long-term partner, promising to supply components like

1    actuators for Skyryse's aircraft, components Moog would fail to deliver. Then, once

2    it was armed with Skyryse's confidential information and business strategies, Moog

3    used false pretenses to abandon Skyryse, put an end to their collaboration, and set out

4    to unfairly compete directly against Skyryse. Moog misappropriated Skyryse's trade

5    secrets and confidential information to develop copycat technologies, defrauded

6    Skyryse, breached its contracts with Skyryse and their implied covenants of good faith

7    and fair dealing, interfered with Skyryse's business relationships, and engaged in

8    unlawful intimidation tactics to try to stop Skyryse's legitimate hiring practices.

9        3.    Skyryse brings these counterclaims to put an end to Moog's unlawful

10   tactics.

11                                    **PARTIES**

12       4.    Skyryse is a start-up aviation company founded in 2016 with its principal

13   place of business in El Segundo, California. Skyryse is poised to revolutionize the

14   transportation and general aviation industries by bringing on-demand highly

15   automated aerial transportation technologies to the public.

16       5.    Moog has been around for more than seventy years. Today, it is a large,

17   multi-national corporation with its principal place of business in East Aurora,

18   New York and, as relevant to this action, it has engineering facilities in Torrance,

19   California.

20                            **JURISDICTION AND VENUE**

21       6.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331

22   because this matter involves claims under the Defend Trade Secrets Act ("DTSA"),

23   18 U.S.C. § 1836 *et seq.*, and concerns trade secrets that relate to products and services

24   that are used in or intended for interstate or foreign commerce.

25       7.    The Court also has subject matter jurisdiction over this action under

26   28 U.S.C. § 1332 because there is complete diversity between Plaintiff and

27   Defendants, and the amount in controversy exceeds $75,000.

28

8.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), and Federal Rule of Civil Procedure 13, because these claims are so related to Skyryse's federal law claims in the action that they form part of the same case or controversy as those claims.

9.     This Court has personal jurisdiction over Moog by virtue of Moog's transacting and doing business in the State of California and this District, and committing tortious and unlawful acts and contractual breaches in the State of California and this District.  Accordingly, this Court has specific jurisdiction over Moog in connection with this action, and Moog's contacts with the State of California are continuous and systematic to such extent that Moog is subject to the general jurisdiction of the State of California and this Court.

10.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b), including because a substantial part of the events giving rise to these claims occurred in this District. Moog has offices in this District, conducted business for Skyryse in this District, stole and used Skyryse's trade secrets in this District, and interfered with Skyryse's business relationships in this District.

## A.    <u>Skyryse sets out to revolutionize the aircraft industry while Moog is forced to confront its own failure to innovate</u>.

11.    Founded by Mark Groden in 2016, Skyryse's goal is nothing short of revolutionizing general aviation. With 78 employees, today Skyryse is one of the first companies in the world that has achieved real, workable solutions to the significant challenges created by modern urban mobility, including the fact that Americans spend over nine billion hours a year in traffic.

12.    Skyryse's mission statement reflects its guiding principles: "At Skyryse, we believe it's a moral imperative to reduce, and one day, eliminate general aviation fatalities through the application of our universal flight deck. A Skyryse-enabled aircraft makes it quicker and easier to earn a pilot's license and fly safely and

1  affordably. With our technology, anyone can confidently experience the joy and

2  freedom to travel, connect with others, and experience the world around us."

3      13.     Skyryse has invested heavily in developing a vehicle-agnostic highly

4  automated system that allows for the operation of any aircraft, including vertical take-

5  off and landing ("VTOL") aircraft, without a pilot. Skyryse has made groundbreaking

6  achievements during its short history. By March 2017 it had flown a full-scale VTOL

7  aircraft without a pilot over seventy times and became one of the only companies in

8  the world approved by the FAA to fly its aircraft without a pilot onboard. This was a

9  testament to Skyryse having built some of the most advanced highly automated VTOL

10  technology in the world. By late 2017, Skyryse was well-positioned to be the first

11  company of its kind to dramatically transform the national transportation market.

12      14.     By contrast, Moog was founded in 1951 and over the past seven decades

13  has grown into a multi-national, multi-billion-dollar company with 13,000 employees.

14  For years Moog has focused its business on conventional aviation components like

15  actuators and related computers and software.

16      15.     Primarily focused on commercial and defense aviation, Moog has largely

17  ignored the general aviation market, *e.g.*, for non-scheduled personal and business

18  transport. Rather, Moog has served as a supplier of actuators and the computers to

19  original equipment manufacturers (OEMs) and other aircraft suppliers in other

20  segments of aviation.

21      16.     By 2017, while Skyryse was making technological strides that were

22  unthinkable just a few years earlier, Moog was reckoning with the fact that its legacy

23  business was rapidly slipping into obsolescence, because it had failed to keep up in

24  the modern field of advanced, highly automated flight systems.

25      17.     In January 2017, ████████████████████████████████████

26  ████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████ would force Moog to confront what

28

was already obvious within the company: Moog had failed to innovate and needed to make a change if it wanted to stay relevant and competitive.

18. ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

19.   To face these threats, Moog's ███████████████████████████

███████████████████████████████████████████████

█████████ They warned, however, that ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

20.   To stay relevant, Moog needed to shift its focus to the very type of business and technology Skyryse was already aggressively pursuing. The ████████ ████████████████████████████ where Skyryse was forging new ground ████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

21. ████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

22.   The take-home point ████████████████████████ was clear: Moog lacked essential knowledge of and expertise in advanced, highly automated flight

1   systems, especially in the field of general aviation, and needed to catch up with the

2   competition.

**B.**   **Moog tries to enter the advanced automated flight control space by**
**establishing a long-term partnership with Skyryse and gaining access to**
**Skyryse's confidential and proprietary information.**

6   23.   Seeking to join forces with a company with expertise in autonomous and

7   automated flight technologies, on August 30, 2018, Jeffrey Ehret from Moog's

8   business development group contacted Skyryse to pitch what he claimed would be a

9   "mutually beneficial" business opportunity.

10   24.   Mr. Ehret admitted Moog had not yet developed a "solution that offers

11   the ability for full autonomous flight including take-off and landing," as Skyryse had

12   already accomplished. He explained that Moog was particularly interested in the fact

13   "that [Skyryse's] strength lies in sensor fusion," ████████████████████████

14   ██████████████████. Mr. Ehret stated he "would appreciate the opportunity to talk

15   further with someone at Skyryse regarding how our two companies might explore this

16   market together utilizing our strengths."

17   25.   To facilitate the two companies' business discussions, and in order to

18   protect Skyryse's confidential and proprietary information, on October 24, 2018

19   Moog and Skyryse entered into a Proprietary Information and Nondisclosure

20   Agreement, in order to "[e]valuate business opportunities" (the "2018 NDA").

21   (Ex. A.)

22   26.   Under this NDA, Moog and Skyryse broadly defined "Proprietary

23   Information" and agreed not to disclose it to any third parties without express prior

24   written consent, and would use it "only for the limited purpose" to "[e]valuate business

25   opportunities" and "not for any other purpose." (*Id*. at §§ 1-4.)

26   27.   As the parties' discussions progressed, on March 15, 2019 Moog and

27   Skyryse entered into another confidentiality agreement, the "2019 NDA" to exchange

28   information for the more specific purpose of discussing the "integration of Moog's

flight control systems / subsystems / components and / components and associated autonomous control technologies with Skyryse's aircraft platforms and associated autonomous control technologies." (Ex. B.) Moog personnel executed additional confidentiality agreements with Skyryse, including when visiting and being admitted to Skyryse facilities.

28.   Skyryse told Moog from the start that Skyryse needed a long-term supply partner as it developed highly automated aircraft technologies that would receive FAA certification. Skyryse explained that the certification would start with an initial Supplemental Type Certificate ("STC") for a fly-by-wire tail rotor system to control the yaw axis on Skyryse's aircraft, which is a certificate issued by the Federal Aviation Administration ("FAA") when an applicant has received approval to modify an aeronautical product from its original design. Skyryse made clear that "[b]efore embarking" on such a project with Moog, Skyryse needed Moog to confirm that Skyryse would be "supported through the subsequent STCs and have an understanding of what those designs, costs, and timelines would look like."

29.   Having a long-term partner to supply components like actuators was critical to Skyryse, because each phase of Skyryse's development plans involved building on the work done and certifications achieved in a prior phase. Losing a key supply partner during such a multi-phase, long-term project could force Skyryse to restart its development efforts from scratch, which would impose a significant loss in investment and time, and disrupt Skyryse's development timelines.

30.   Skyryse knew that its development project would require flexibility and adjustments over time, and therefore asked Moog to propose a statement of work that included multiple phases and would allow the parties to update and adapt their plans as the project progressed. Skyryse's CTO explained to Moog, "I expect that we will learn more about our needs as we go and this would give us structure to negotiate changes without surprises and ample lead-time so the commercial issues don't slow down progress."

31.    On May 31, 2019 Moog and Skyryse agreed to a Statement of Work ("SOW 1") memorializing their long term, four-phase project. (Ex. C.) They made explicit that they intended "███████████████████████████████████," and that "██████████████████████████████████████████████████████ ██████████████████████████████ They memorialized their mutual intent to "████████████████████████████████████████████████████ ██████████████████████████████████"

32.    Skyryse and Moog in SOW 1 ██████████████████████████████ ████████████████████████████████████████, for example:

- ████████████████████████████████████████████████████ ████████████████████████████████████████████

- ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

- ████████████████████████████████████████████████████ ██████████████

- ████████████████████████████████████████████████████ ██████████████████████████████████

33.    Recognizing the need for flexibility over time, the parties agreed that ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████

DEFENDANT SKYRYSE, INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS

34.     Also on May 31, 2019, Skyryse ordered from Moog "███████████
████████████████████████. Skyryse placed its order through a letter from its CEO Dr. Groden to Moog's Group Director David Norman, which Skyryse and Moog would later refer to as a "purchase order" or "P.O."

35.     On June 3, 2019, Moog and Skyryse agreed upon Terms and Conditions to govern the work performed under SOW 1. (Ex. D.) Among other things, this agreement ████████████████████████████████████████
██████████████████████████████████████████████████
██.

36.     For example, ████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████

37.     The parties further agreed not to ████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████

38.     Moog also agreed ████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████

39.     Skyryse relied on these agreements and Moog's commitment to their "████████████████████████" With Moog's then-existing off-the-shelf products being inadequate to support Skyryse's aircraft development needs, Skyryse began working with Moog to design the actuators for the ████████████████████
████████████████ of Skyryse's aircraft.

43

40.     In the process, Skyryse shared valuable confidential information with Moog through many interactions, including in-person meetings at Skyryse's headquarters where Moog personnel inspected Skyryse's aircraft. Skyryse also shared highly confidential technical information, drawings, schematics, computer aided design (CAD) files, and business plans regarding Skyryse's test aircraft and certification plans and roadmaps, and Skyryse's analysis of the general aviation market and business opportunities related to urban transport.

41.     This included disclosing to Moog details of Skyryse's proprietary, highly confidential, and state-of-the art trade secret flight control technology that allows ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████. This flight control technology, which was confidentially developed over a number of years, is an essential part of Skyryse's plan to revolutionize general aviation and urban transportation. These confidential innovations result in a functional aircraft with highly complex automated flight technology without taking up vital cabin space. These innovations have uniquely positioned Skyryse to be the only company capable of offering automated flight services using small rotorcraft that also could be used for automated, hands-off-the-stick flight, certification testing, commercially viable urban transportation, and offering technology packages that can be integrated into new or existing aircraft.

42.     Skyryse also confidentially shared with Moog how this system fits directly into Skyryse's highly secret certification development plans, and gives Skyryse a unique and accelerated path to market for its aircraft—an invaluable competitive advantage. ████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ███████████████████████████████████████████.

4     43.    Skyryse also shared with Moog a confidential "Skyryse Master Plan":

5 (1) "█████████████████████████████████," (2) "█████████████████

6 ███████████████████████████," and (3) "██████████████████████

7 ███████████████████."

8     44.    Skyryse further confidentially explained how it was uniquely positioned

9 to implement the "Skyryse Master Plan" because Skyryse's aircraft designs had

10 already received experimental certification from the FAA, and Skyryse could fly test

11 flights, with a flight test engineer and a pilot as backup, accrue flight hours, and

12 acquire data necessary for further certifications.

13     45.    Skyryse also shared with Moog confidential business information and

14 strategies regarding its plans to develop automated flight systems. Skyryse explained,

15 for example, that █████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████

19 ███████████████████████████.

20     46.    Skyryse's Dr. Groden also introduced Moog's Jeff Ehret, to the CEO of

21 Erickson Inc., an American aerospace manufacturing and aviation provider and one

22 of the world's leading helicopter OEMs, to help Moog pitch its business as a fly-by-

23 wire component developer.

24 **C.**    **Moog uses false pretenses to end its partnership with Skyryse.**

25     47.    Throughout their partnership, Skyryse shared extensive amounts of

26 confidential information with Moog so Moog could develop actuators for Skyryse's

27 aircraft. In the process, Moog learned as much as it could about Skyryse's confidential

28 technologies and business plans.

48.     Unbeknownst to Skyryse, during its work under SOW 1, Moog secretly decided it would walk away from the collaboration, cut Skyryse out, and develop copycat flight technology on its own in direct competition with Skyryse.

49.     The problem for Moog was that ███████████████████████████████ ████████████████ simply because it changed its mind and now wanted to go it alone. Moog had only ███████████████████ and still owed many obligations to Skyryse as part of their long-term, "███████████████████████." Knowing this, Moog needed to come up with a plan to convince *Skyryse* to cancel the issued purchase order, and it did so through dishonest and bad-faith tactics.

50.     Even after Moog's CEO and Chairman, John Scannell, had represented to Skyryse that "[w]e look forward to continuing to work with Skyryse as you develop your business model and solve some of the technical challenges on your way to market success," Moog was internally preparing to abandon Skyryse and pursue competitive technologies on its own.

51.     Unaware it was being duped, Skyryse kept sharing confidential and proprietary information with Moog. And Skyryse worked with Moog to plan the upcoming phases of the project that would build on the work performed in Phase 1 to ultimately implement four-axis control.

52.     In the meantime, Moog began laying the groundwork to back out of the partnership.

53.     For example, seemingly hoping to slip it by Skyryse without recognizing the implications, and without discussing it with Skyryse in advance, on March 6, 2020 a Moog program administrator, Alan Kresse, wrote Skyryse claiming, "It is Moog's understanding that *Skyryse intends to cancel the referenced purchase order* associated with Phase 1 of the ███████████████████████████████." This was a false statement that made no sense to Skyryse, which had no intention to cancel anything, as the parties still were working on Phase 1 of their four-phase project.

54.     Mr. Kresse continued, "termination *must be transmitted as a formal written notification*. Moog respectfully requests that Skyryse *provide formal written notification* of the intent to cancel the purchase order no later than March 18, 2020." And again, he instructed that "formal notification from Skyryse *must be provided*." But then Moog conspicuously attempted to make the cancellation of the purchase order self-executing. Even if Skyryse failed to send the notice Moog wanted, Mr. Kresse said Moog would "assume[] that the non-response represents formal acknowledgement of cancellation and termination of the contract will be executed per section 32 of the contract terms and conditions."

55.     Skyryse's then-CTO Gonzalo Rey responded that very day, stating that Skyryse did "not intend to cancel the existing purchase order" under SOW 1. Instead, until the parties had settled on updated "[d]eliverables, schedule and cost," Skyryse "intend[ed] to continue to fully execute the existing P.O." Dr. Rey explained Skyryse would be flexible to accommodate Moog, but its "formal direction [wa]s that no change takes place at this time with the exception of jointly agreed upon schedule accommodations that help Moog avoid waste should an agreement on a better win-win be found."

56.     Moog's Group Director for Innovation and Technology, David Norman, then entered the conversation and conceded that the suggestion in Mr. Kresse's email that it was Skyryse's idea to cancel the purchase order was false. By email dated March 9, 2020, he said it was at his direction Mr. Kresse had written Skyryse with Moog's "cancellation" request. Mr. Norman claimed that this was necessary simply so Moog and Skyryse could "come to agreement on *closing out on the original SOW (Phase 1)* aimed at just the ▇▇▇▇▇▇▇▇▇ *and agreeing on a new SOW (Phase 2)*" for the work ahead.

57.     Mr. Norman assured Dr. Rey the two companies were on "our path forward" together but explained that Moog needed to get paid for work already done, even though it hadn't delivered the ▇▇▇▇▇▇▇▇▇ Skyryse had ordered: "No

DEFENDANT SKYRYSE, INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS

matter *the path forward*, Moog has put in a significant effort to this point and we've made HW [hardware] commitments in support of the Phase 1 SOW that we will need to reconcile before agreeing to Phase 2 SOW." Mr. Norman assured Dr. Rey it was "in our mutual interest to formalize *our path forward*" in a "new SOW," but Moog first had to get paid for work already performed. "This is the money part," he said.

58.     Thus, according to Moog, it needed Skyryse to provide "formal written notification" of cancellation or termination of the Phase 1 purchase order so it could get paid for services provided up to that point—the "money part"—and then Moog and Skyryse could continue with their project.

59.     A couple weeks later, Moog's Timothy Abbott got in touch with Skyryse's Gonzalo Rey to make arrangements for payment. On March 19, 2020, Mr. Abbott represented that "we are close to agreement on a revised SoW" for the next phase of work, and provided informal "takeaway numbers" for the next phase. Notably, on behalf of Moog, Mr. Abbott included the amount at which Moog and Skyryse were "close to agreement": "New Total PO Value: $4.22M." He also stated that Moog needed to be paid "$970K for work completed" from Skyryse during Phase 1.

60.     Mr. Abbott followed up on March 25, 2020 with a final figure for "work complete to date" of $970,253.37, and represented that to "*facilitate the invoicing process*, we will need you to provide a letter formally stating the intent to revise the current statement of work and allowing us to invoice you for work completed to date."

61.     Skyryse justifiably relied on Moog's representations that it needed some formal "cancellation," "termination," or "revision" of the purchase order so it could "facilitate the invoicing process" and get paid for Phase 1 work before moving on to the next phases. So on March 31, relying on the representations from Moog and its representatives, Dr. Rey sent Moog the requested "formal notification of cancellation of the Purchase Order," asked for an invoice, and confirmed that Skyryse "look[ed] forward to finalizing the modified terms of the SOW shortly." Skyryse made the

1  requested payment to Moog—without having received the ██████████

2  ███████████████—because it trusted Moog and was intent on pushing the project

3  forward.

4       62.    Despite its representations to the contrary, Moog secretly never intended

5  to continue with the project. So while Moog outwardly was messaging to Skyryse that

6  the partnership would continue, surreptitiously it was planning to use the

7  "cancellation" it coaxed out of Skyryse—along with an unreasonable and unworkable

8  quote for the next phase of work it would soon provide—to put an end to their

9  partnership.

10       63.    Skyryse, meanwhile, continued in good faith to proceed with the next

11  steps in the project. Skyryse sent Moog an updated SOW reflecting "a continuation to

12  the work Moog and Skyryse ha[d] collaborated over the past year."

13       64.    Skyryse's Senior Vice President, Tim Baptist, presented the draft SOW

14  to Moog by letter dated May 22, 2020 and requested a quote "for the general

15  parameters of a teaming agreement with Skyryse" for the next phase. In his letter,

16  Mr. Baptist explained Skyryse had "made a substantial investment in the collaborative

17  work, including by making "$1.25M in payments to Moog," and had adapted its own

18  technology to fit Moog's "constraints and properties."

19       65.    In that same letter, Skyryse shared with Moog more confidential

20  information regarding valuable business opportunities pertaining to new potential

21  consumer and commercial customers. Skyryse reminded Moog about how their

22  collaboration would "allow[] Moog to profit from the combined investment in the

23  subject FBW system beyond the Skyryse book of business."

24       66.    Rather than providing a straightforward, honest response to Skyryse's

25  request for a quote, Moog continued its pattern of deception. On June 16, 2020 Moog's

26  Tim Abbott delivered to Skyryse a quote for the next phase of work that Moog surely

27  knew Skyryse could never accept. The quote for the next phase of work was a range

28  of $47.5 to $75 million. This was an order of magnitude higher than the $4 million

"takeaway number" Moog's Mr. Abbott had provided to Skyryse's Dr. Rey when Moog was extracting payment for work it never completed. Moog's quote was so exorbitant, unreasonable, and disproportionate to the scope of the work to be done and Moog's prior representations about the cost of that work, that Moog knew and intended that Skyryse would have no choice but to reject it. Compounding the disingenuousness of its position, Moog also qualified its quote so heavily that no one could reasonably rely on it, claiming it could not "provide firm pricing" (this, after Moog's many months working with and learning from Skyryse, and after decades of experience as an aircraft component supplier).

67.   Still in the dark about Moog's true intentions to kill the partnership, Skyryse did its best to try to make the collaboration work. Skyryse updated and narrowed its proposal for the next phase trying to find a workable path forward with Moog. Moog responded on August 14, 2020 with questions, continuing to solicit confidential business information from Skyryse, which Skyryse quickly provided.

68.   Moog's David Norman even asked Skyryse's Tim Baptist for help understanding the nascent market and future business opportunities they could pursue after their development project. "Tim, Do you have a market overview you could share with us to help understand the potential future business for Moog after the Development Activity[?]" Mr. Norman wanted specifics: "Details such as how many systems and what is your price point would be helpful (at least the price point you are assuming for FCC and Actuators)." Mr. Baptist then shared Skyryse's confidential pricing plans and strategies.

69.   Meanwhile, Moog continued the charade and made more demands for the next phase of the project it knew Skyryse could not accept. Moog proposed to narrow the scope of work in the SOW so significantly that it caused Mr. Baptist to note, it "[l]ooks as if Moog has completely re-written the SOW wasting everyone's time." Skyryse's CTO, who previously worked as Moog's CTO, Gonzalo Rey, agreed: "So here we stand, having lost one year in a two year program, empty handed and

scrambling to find a replacement, while Moog [is] in possession of vast knowledge of our solution and $1.25M of Skyryse funding."

70.    It finally had become clear to Skyryse that Moog was acting in bad faith, with an improper motive, and was intent on ensuring that Skyryse never would receive the benefit of its bargain for a long-term supplier relationship with Moog.

71.    Moog acknowledged internally that its true intent was always to unilaterally end the partnership with Skyryse. As Moog's David Norman later admitted to Moog's CEO, it was Moog, not Skyryse, that simply "███████████ ████████████████████████" after starting the collaboration, because Moog "████████ ████████████████████." This demonstrates the falsity and deception of Moog assuring Skyryse that Moog would proceed with the multi-phase project, claiming it needed a cancellation notice merely "to facilitate the invoicing process," and knowingly providing an unreasonable, unworkable, sham of a quote for the next phase of work.

## D.    Moog misappropriates Skyryse's trade secrets and violates its confidentiality obligations to unfairly compete directly against Skyryse.

72.    Armed with knowledge of Skyryse's confidential information including trade secrets, and even before it had extracted itself from its partnership with Skyryse, Moog was trying to establish its own foothold in the automated flight technology space and was fully intending to compete against Skyryse.

73.    While Moog was pretending it would work in good faith with Skyryse, on information and belief Moog was actually simultaneously negotiating an agreement to purchase Genesys Aerosystems, a company with automated flight control technologies that competes directly against Skyryse.

74.    Although technologically lagging behind Skyryse, Genesys had focused on developing autopilot technology for rotorcraft, including the HeliSAS system for the Robinson R-44. As an acquisition target, Genesys presented Moog with an opportunity to take what it learned from Skyryse and exploit it for its own benefit.

75.     Using Skyryse's confidential information, including information about its state of the art optionally piloted flight control system, Moog recognized that its own " ███████████████████████████████████████," and that "███ ██████████████████████████████ including specifically ████████████ ████████, to become "████████████████." Doing so would permit Moog to "█ ██████████████████████████████████████████████ ███████████████," or exactly the space in which Skyryse was operating.

76.     Moog used Skyryse's trade secrets and other confidential information to develop plans to ██████████████████████████████████████████." Moog ██████████████████████████ the very secrets that Skyryse had shared with it in confidence regarding certification plans, including that ████████████ ███████████████████████████████████████████." In other words, Moog was using for its own competitive purposes confidential business information that took Skyryse years to develop.

77.     In fact, the very same day it filed its lawsuit against Skyryse, Moog's new subsidiary, Genesys, announced that it "started development of the 4th axis on" its "HeliSAS Autopilot and Stability Augmentation System." On information and belief, Moog has been using and exploiting confidential information it acquired from Skyryse to enable Genesys to develop a "4-Axis Autopilot System," which Genesys did not have prior to being acquired by Moog.

78.     Moog also has used Skyryse's confidential flight certification model to unfairly compete against Skyryse in attracting business from other customers. For example, Moog recently confirmed its plans to use its "████████████████ ██████████████" for the █████████████████████████████ ████████████████████████████████████████████. Mimicking Skyryse's own plans and strategies, Moog is exploiting Skyryse's confidential information to help "███████████████████████████

DEFENDANT SKYRYSE, INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS

1 ██████████████████████████████████ " as " ████████████████████

2 ██████████████████████████████ ."

3     79.    Skyryse had shared with Moog the same type of product development

4 plans and strategies confidentially three years earlier. Skyryse's CEO described to

5 Moog his plans to develop a vehicle-agnostic system ██████████████████████

6 █████████████████████████████████████████████████████████████████████

7 █████████████████████████████████████████████████████████████████████

8 █████████████████████████████████████████████████████████████████████

9 ████████████████████████████████████ . This was a manifestation of the "█

10 ██ " that Skyryse had confidentially shared with Moog.

11     80.    Moog had agreed pursuant to ████████████████████████████

12 ██████████████████████████████████████████████████████████ " that

13 Moog could not ████████████████████████████████████████████

14 ██████ . Nonetheless, after forcing an end to its partnership with Skyryse, Moog was

15 now using Skyryse's proprietary and trade secret information for its own benefit.

16 **E.    Moog engages in unlawful conduct to "████████████████ " on Skyryse and**

17 **interfere with Skyryse's lawful hiring of at-will employees.**

18     81.    By late 2021, Moog knew it was losing the battle to attract the top talent

19 in the aviation industry. Many Moog engineers were dissatisfied and were either

20 seeking or open to considering other opportunities, including at Skyryse. Hoping to

21 stop losing engineers, Moog set about trying to block Skyryse's success in recruiting

22 and put as much pressure on Skyryse as possible.

23     82.    On November 18 and 19, 2021, the Vice President of Moog's Aircraft

24 Group, David Norman ████████████████████████████████████████████

25 ██████████████████████████████████ . Mr. Norman said it

26 was "████████████████████████████████████████████████████

27 ████████████████████████ ," and acknowledged ██████████████████

28 ███████████████████████████████████████ ." Mr. Scannell responded,

1    describing Skyryse's lawful hiring of at-will Moog employees as "███████████,"

2    "███████," and challenged his executive team: "███████████████████

3    ███████"

4        83.    In response to his CEO's challenge, Mr. Norman came up with a number

5    of ideas ███████████████████████. This,

6    despite the fact that Moog's executives, including global HR executive Jamie Daly

7    and product development director Nick Bavaro, knew that ████████████

8    ████████████████████████████████"

9        84.    Among other things, Mr. Norman proposed ████████████████

10   ████████████████████████████████████

11   ████████████████. According to Moog,

12   ████████████████████████████████████

13   ████████████████████. Thus, on information and belief,

14   Mr. Norman's goal was to get Moog's employees talking and intimidate them from

15   leaving.

16       85.    Moog executives considered other ways to pressure on Skyryse and stop

17   it from engaging in lawful hiring activities. Mr. Bavaro: "████████████████

18   ████████████████████████████████████

19   ████████." "████," Ms. Daly responded, "████████████████

20   ████"—not to raise any legitimate legal claims.

21       86.    And indeed, Moog has had its lawyers send such "scare" letters with no

22   legal basis for its demands. Even after filing this lawsuit, Moog's lawyers have

23   repeatedly and cryptically accused Skyryse of wrongdoing in its hiring practices,

24   demanding that it not recruit any Moog employees. Moog has ignored Skyryse's

25   requests to discuss the issue and explain what, exactly, Moog thinks could be unlawful

26   about Skyryse's legitimate recruiting efforts.

27       87.    In yet another proposal to "███████████" on Skyryse to impede it from

28   lawfully hiring Moog employees, Mr. Norman sent an email advocating to "████████

1  ███████████████████ with other companies that work with Skyryse, in an attempt
2  to glean Skyryse's confidential information from these third parties. For example,
3  Mr. Norman confirmed that his team was "██████████████████████████████████
4  ████████████████████████████████████████████████████████████████████
5  ███████████."

                              *     *     *

## FIRST COUNTERCLAIM

### (Breach of Contract)

88.    Skyryse repeats and alleges paragraphs 1 through 87 of these
Counterclaims as if fully set forth herein.

89.    As alleged above, Skyryse and Moog entered into the 2018 NDA, the
2019 NDA, SOW 1, the Terms and Conditions, and the Purchase Order, and other
confidentiality agreements (together, the "Agreements").

90.    Skyryse materially performed its obligations under these valid and
enforceable Agreements, including by making significant monetary payments to
Moog.

91.    Moog breached its obligations to Skyryse under the Agreements,
including at least by: (1) failing to maintain the confidentiality of, and by unlawfully
using or using for impermissible purposes, Skyryse's Proprietary Information, in
violation of at least Sections 2, 3, and 5 of the 2018 and 2019 NDAs and the provisions
of other confidentiality agreements; (2) failing to comply with its obligations ██
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████ as
required under Sections 1-5, and 7-9 of SOW 1, and (3) failing to maintain the
confidentiality of, and by unlawfully using or using for impermissible purposes,
Skyryse's Proprietary ████████████████████████████████████████████
████████████ and by violating its █████████████████████ under Sections 9, 14,
20, 23, 30, 32, and 43 of the Terms and Conditions.

92.     Moog was not excused from performing all or substantially all of its duties under the Agreements, and all conditions under the contract Agreements required for Moog's performance occurred.

93.     Moog's breaches of its agreements with Skyryse have caused foreseeable damage to Skyryse, including, at least the loss of value of Skyryse's Proprietary Information and Intellectual Property, causing significant disruption, expense, and delay in implementing Skyryse's business plans, and loss of business opportunities. As a result, Skyryse is entitled to damages in an amount to be determined at trial and equitable relief.

## SECOND COUNTERCLAIM

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

94.     Skyryse repeats and alleges paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

95.     As alleged above, Skyryse and Moog entered into the Agreements.

96.     Skyryse did all or substantially all of the significant things that the Agreements required Skyryse to do.

97.     All conditions required for Moog's performance under the Agreements were met.

98.      The Agreements were all subject to an implied covenant of good faith and fair dealing that Moog would act in good faith and with reasonable effort to perform its contractual duties and to not impair Skyryse's rights to receive its rights, benefits, and reasonable expectations under the Agreements.

99.     Moog unfairly interfered with Skyryse's right to receive the benefits of at least SOW 1, the Purchase Order, the Terms and Conditions, and subsequent SOWs, and breached the implied covenants of good faith and fair dealing applicable to those agreements, at least by abusing its discretion under them and insisting that Skyryse provide a written "cancellation," "termination," or "revision" of a purchase order or statement of work in order to secure Moog's continued performance; by providing

1  Skyryse with a sham quote for services that Moog knew was unreasonable and
2  intended not to be accepted; and by actively working to unfairly compete against
3  Skyryse, rather than collaborating with it, in the field of advanced automated flight
4  systems.

5      100.   By doing so, Moog did not act fairly and in good faith, and deprived
6  Skyryse of the full benefit of the parties' bargains under the Agreements.

7      101.   Skyryse has been harmed by Moog's breach of the covenants of good
8  faith and fair dealing and is entitled to damages in an amount to be proven at trial.

9                          **THIRD COUNTERCLAIM**
10                        **(Breach of Implied Contract)**

11     102.   Skyryse repeats and alleges paragraphs 1 through 87 of these
12  Counterclaims as if fully set forth herein.

13     103.   As alleged above Skyryse and Moog and Skyryse, through their conduct
14  and relationship, as well as the circumstances described above, entered into an
15  implied-in-fact contract to engage in a ███████████████████████.

16     104.   Skyryse materially performed its obligations under this valid contract,
17  including as described above.

18     105.   Moog breached its obligations to Skyryse by failing to perform the acts
19  required under Phase 2 and subsequent Phases of the parties' implied-in-fact contract.

20     106.   Moog was not excused from performing all or substantially all of its
21  duties under the contract, and all conditions under the contract required for Moog's
22  performance occurred.

23     107.   Moog's breaches of its contract with Skyryse have caused foreseeable
24  damage to Skyryse, including, at least by causing significant disruption, expense, and
25  delay in implementing Skyryse's business plans, and loss of business opportunities.
26  As a result, Skyryse is entitled to damages in an amount to be determined at trial and
27  equitable relief.

28

## FOURTH COUNTERCLAIM

**(Trade Secret Misappropriation Pursuant to the Defend Trade Secrets Act**

**18 U.S.C. § 1836 *et seq.*)**

108.    Skyryse repeats and alleges paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

109.    Skyryse is the sole and exclusive owner of confidential trade secret information misappropriated by Moog, including but not limited to Skyryse's proprietary automated flight technologies, certification, development, and testing plans, and other financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes regarding advanced automated flight control systems, general aviation, and urban transportation.

110.    Skyryse intended to use, and continues to use, its confidential trade secret information in interstate commerce, including in connection with advanced automated flight control systems for general aviation and commercial use.

111.    Skyryse derives economic value from the fact that its confidential trade secret information is not generally known to, and not readily ascertainable through proper means by, persons who can obtain economic value from it disclosure or use, outside of Skyryse.

112.    Skyryse takes reasonable measures to protect the secrecy of such trade secrets and confidential and proprietary information, including, but not limited to (1) organizational measures; (2) technical measures; and (3) contractual measures. These measures include, among other things, that:

    a.    Skyryse requires prospective and hired employees, and other third parties, to sign confidentiality agreements before accessing any confidential or trade secret information;

    b.    Skyryse employees are made aware of the company's policies and

1    procedures regarding the confidentiality obligations of employees;

2    c.    Skyryse follows a principle of least privilege that limits access and

3          sharing of its confidential information within the company to only those

4          who need to know the information as part of the ordinary course of

5          business and in order for the employee to fulfill their role and

6          responsibilities;

7    d.    Skyryse implements technical safeguards and practices to ensure access

8          to trade secrets is limited including by making sure that information in

9          Skyryse's networks, cloud drives, and hard drives is segregated and

10         access is limited to only those employees who are specifically granted

11         access;

12   e.    Skyryse uses data security measures to prevent unauthorized access and

13         activity related to confidential information including by ensuring that

14         Skyryse's IT systems are protected by password protection, with

15         mandatory password changes required periodically, and two-factor

16         authentication, and using identity and password management systems;

17   f.    Skyryse's offices and workspaces are also secured, including with alarm

18         protection, to protect its trade secrets and other confidential information

19         including by and ensuring that access to those facilities is highly

20         restricted;

21   g.    All systems are protected from external and internal cybersecurity

22         threats;

23   h.    Skyryse took measures to protect its trade secrets and other confidential

24         information from misuse by Moog, including by providing confidential

25         information and trade secrets to Moog only after Moog agreed to strict

26         confidentiality and non-use obligations, and also by having Moog

27         personnel sign confidentiality and nondisclosure agreements when

28         visiting Skyryse.

113.   During the course of their business relationship, Moog acquired Skyryse's confidential trade secret information under circumstances giving rise to a duty to maintain the secrecy of Skyryse's confidential trade secret information, including specifically the confidentiality restrictions contained in the 2018 NDA, the 2019 NDA, and the Terms and Conditions.

114.   During Skyryse's business relationship with Moog, and after the business relationship ended, Moog improperly accessed, copied, used, and disclosed to others Skyryse's confidential trade secret information, including for Moog's own benefit and in violation of its obligations to Skyryse.

115.   As a direct and proximate result of Moog's willful, improper, and unlawful misappropriation of Skyryse's confidential trade secret information, Skyryse has suffered, and will continue to suffer, damages while Moog has been unjustly enriched, in an amount to be prove an trial.

116.   Skyryse will be irreparably harmed unless Moog is enjoined from further use and/or disclosure of Skyryse's confidential trade secret information under 18 U.S.C. § 1836(b)(3)(A).

117.   Pursuant to 18 U.S.C. § 1836(b)(3)(B), Skyryse is entitled to damages for actual loss and unjust enrichment not addressed in computing damages for actual loss, or a reasonable royalty.

118.   Moog's willful, improper, and unlawful misappropriation of Skyryse's confidential trade secret information was and continues to be willful and malicious, warranting an award of exemplary damages and reasonable attorneys' fees, as provided by 18 U.S.C. § 1836(b)(3).

## FIFTH COUNTERCLAIM

### (Fraud – Misrepresentation)

119.   Skyryse repeats and alleges paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

120.   Moog made numerous factual representations to Skyryse that were untrue when made, including by representing to Skyryse (1) that Moog would be "continuing to work with Skyryse" throughout their collaboration; (2) that the parties were on "our path forward" to Phase 2 of their collaboration and beyond; (3) that Skyryse needed to cancel, terminate, or revise a purchase order "to facilitate the invoicing process" or for other accounting purposes, to secure continued performance from Moog, or as a "means to come to agreement on closing out on the original SOW (Phase 1) aimed at just the ███████████ and agree[] on a new SOW (Phase 2)"; and (4) that Moog's "takeaway numbers," i.e., its informal estimate of its quote for work it would do in Phase 2 of the parties' collaboration was approximately $4 million.

121.   These statements were false when made, and were intended to deceive and induce Skyryse into making payment to Moog before it had provide any deliverables and ultimately into ending its collaboration with Moog, including so that Moog could move forward with its acquisition of Skyryse's competitor Genesys and compete directly with Skyryse.

122.   On information and belief, Moog knew that these representations were false when made, or Moog made these representations recklessly and without regard for their truth.

123.   Skyryse reasonably relied on Moog's misrepresentations.

124.   Skyryse was harmed by Moog's fraud, including because Skyryse would not have cancelled a purchase order or paid Moog without receiving any deliverables if it had known that Moog's representations were false and/or misleading or that Moog had omitted material facts.

125.   Skyryse was harmed by Moog's misrepresentations and Skyryse's reliance on Moog's representations and omitted material facts were a substantial factor in causing Skyryse's injuries.

## SIXTH COUNTERCLAIM

### (Tortious Interference with Contractual Relationship)

126.   Skyryse repeats and alleges paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

127.   Skyryse and Robinson Helicopter entered into various contracts pursuant to which Skyryse and Robinson would collaborate to develop a program to install Skyryse's FlightsOS flight control system in a Robinson R66 helicopter and Robinson would purchase FlightOS shipsets beginning upon FAA approval. On information and belief, Moog was aware of these contracts.

128.   Moog's conduct either prevented Skyryse's performance or made Skyryse's performance of its obligations for Robinson Helicopter more difficult.

129.   Moog intended to dispute the performance of Skyryse's contact with Robinson Helicopter or knew that disruption of performance was certain or substantially certain to occur.

130.   Moog's conduct was a substantial factor in causing Skyryse's harm.

## SEVENTH COUNTERCLAIM

### (Intentional Interference with Existing Business Relationships)

131.   Skyryse repeats and alleges paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

132.   Skyryse has invested significant time, resources, and capital to develop business relationships with suppliers and contractors with whom it conducts regular business including, but not limited to, Robinson Helicopter.

133.   Moog was aware of these business relationships.

134.   In committing the acts described above, Moog has intentionally interfered with these business relationships to "████████" on Skyryse including, among other things, using its relationships with Robinson Helicopter to learn about Skyryse's business and technologies and otherwise impede Skyryse's business plans.

135.   Moog's intentional interference has resulted in the actual disruption of Skyryse's existing and prospective business relationships.

136.   As a direct and proximate result of Moog's unlawful actions, Skyryse has suffered injuries and damages in an amount to be determined at trial.

## EIGHTH COUNTERCLAIM

### (Intentional Interference with Prospective Business Advantage)

137.   Skyryse repeats and alleges paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

138.   Skyryse has invested significant time, resources, and capital to develop confidential and proprietary information about prospective customers and market, sourcing, and opportunities for its technologies.

139.   Moog had direct knowledge of these prospective customers and of Skyryse's confidential and proprietary information about them.

140.   In committing the acts described above, Moog has intentionally interfered with these potential business relationships including, among other things by taking actions designed to interfere with or impede Skyryse's prospective business relationships and advantages.

141.   Moog's intentional interference has resulted in the actual disruption of Skyryse's prospective business relationships and advantages.

142.   In addition to interfering with Skyryse's prospective business relationships and advantages, these intentional acts by Moog are wrongful.

143.   As a direct and proximate result of Moog's unlawful actions, Skyryse has suffered injuries and damages in an amount to be determined at trial.

## NINTH COUNTERCLAIM

### (Unfair Business Practices, Bus. & Prof. Code § 17200 *et seq.*)

144.   Skyryse repeats and alleges paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

145.   As a proximate result of Moog's unfair practices and acts alleged herein, Skyryse has suffered substantial and irreparable harm.

146.   Moog has engaged in unlawful conduct, including by interfering with Skyryse's lawful hiring of California-based employees, including in violation of California Business or Professions Code § 16600 *et seq.*

147.   Moog has engaged in deceptive trade practices including by making false and misleading representations to Skyryse to induce it to take actions detrimental to its own interests, in violation of California Business or Professions Code § 17200 *et seq.*

148.   Moog has engaged in unfair conduct in violation of California Business or Professions Code § 17200 *et seq.*, including by interfering with Skyryse's business relationships, interfering with Skyryse's lawful hiring of Moog personnel, and inducing Skyryse to terminate its purchase order with Moog so that Moog could proceed with its purchase of the competitive business Genesys Aerosystems.

149.   Unless restrained, Moog will continue to engage in unlawful, unfair, or deceptive acts described above, resulting in irreparable harm to Skyryse, and Skyryse has no adequate remedy at law for Moog's continuing violation of Skyryse's rights.

150.   Pursuant to Business and Professions Code § 17203, Code of Civil Procedure §526, and this Court's equitable powers, Skyryse is entitled to an injunction restraining Moog from engaging in the unlawful, unfair, and misleading conduct described above.

151.   Moog has been unjustly enriched by its unlawful, unfair, and misleading conduct.

152.   Skyryse is entitled to the disgorgement of all profits gained by Moog as a result of the unlawful, unfair, and/or deceptive practices alleged above.

153.   Skyryse is informed and believes and thereon alleges that Moog's misconduct was willful and malicious and was taken with the deliberate intent to

1  injure Skyryse's innovative business and improve their own, thereby warranting an

2  award of exemplary damages, as provided by Civil Code § 3294(a).

3  **PRAYER FOR RELIEF**

4  WHEREFORE, Skyryse prays for relief as follows:

5  1.  Judgment against Moog and in favor of Skyryse on the claims set forth

6  in Moog's Complaint, and that each of Moog's claims be dismissed with prejudice;

7  2.  Judgment in favor of Skyryse and against Moog on the claims set forth

8  in Skyryse's Counterclaims;

9  3.  An award of damages in an amount to be determined at trial;

10  4.  Restitution for unjust enrichment;

11  5.  An order imposing a constructive trust on the monies wrongfully

12  obtained;

13  6.  Injunctive relief as permitted by law;

14  7.  Punitive damages as permitted by law;

15  8.  Statutory damages as permitted by law;

16  9.  Attorneys' fees and costs of suit incurred herein;

17  10.  Pre-judgment interest as provided by law; and

18  11.  An award of any other and further relief the Court may deem just and

19  proper.

20  **JURY DEMAND**

21  Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Civil Local

22  Rule 38-1, Skyryse, Inc. hereby demands a trial by jury on all issues so triable in its

23  Counterclaims.

24

25

26

27

28

Dated: January 30, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Gabriel S. Gross*

Douglas E. Lumish (SBN 183863)
Gabriel S. Gross (SBN 254672)
Arman Zahoory (SBN 306421)
Ryan Banks (SBN 318171)
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
gabe.gross@lw.com
arman.zahoory@lw.com
ryan.banks@lw.com

Joseph H. Lee (SBN 248046)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com

Julianne C. Osborne (SBN 342870)
Alexa Solimano (SBN 335740)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: julianne.osborne@lw.com
alexa.solimano@lw.com

Attorneys for Defendant and
Counterclaimant, Skyryse, Inc.

US-DOCS\138832021.1

DEFENDANT SKYRYSE, INC.'S ANSWER,
DEFENSES, AND COUNTERCLAIMS