

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

MOOG INC.,

                    Plaintiffs,

        vs.                              Case No.
                                         CV 22-9094-GW

SKYRYSE, INC., et al,

                    Defendants.
_____/


                    REPORTER'S TRANSCRIPT OF
                    TELEPHONIC STATUS CONFERENCE
                    Monday, January 23, 2023
                         8:30 a.m.
                    LOS ANGELES, CALIFORNIA


_____

                TERRI A. HOURIGAN, CSR NO. 3838, CCRR
                  FEDERAL OFFICIAL COURT REPORTER
                  350 WEST FIRST STREET, ROOM 4311
                  LOS ANGELES, CALIFORNIA  90012
                         (213) 894-2849


                    UNITED STATES DISTRICT COURT

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4         SHEPPARD MULLIN RICHTER and HAMPTON
          BY:  RENA ANDOH
5              Attorney at Law
          30 Rockefeller Plaza
6         New York, New York  10112

7

     **FOR THE DEFENDANT:**  SKYRYSE, INC.
8
          LATHAM and WATKINS LLP
9         BY:  DOUGLAS E. LUMISH
               Attorney at Law
10        140 Scott Drive
          Menlo Park, California  94025
11

12   **FOR THE DEFENDANT:**  ROBERT ALIN PILKINGTON

13        WINGET SPADOFORA and SCHWARTZBERG LLP
          BY:  ANTHONY D. GREEN
14             Attorney at Law
          45 Broadway, 32nd Floor
15        New York, New York  10006

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1        **LOS ANGELES, CALIFORNIA; MONDAY, JANUARY 23, 2023**

2                                **8:30 a.m.**

3                                **--oOo--**

4

5

6

7              THE COURTROOM DEPUTY:  Please remain seated and come

8     to order.  This United States District Court is again in

9     session.

10             THE COURT:  Let me call the matter of *Moog, Inc.,*

11    *versus Skyryse*.

12                  For the plaintiff, we have?  Is there someone for

13    the plaintiff?

14                  Is there anybody who is supposed to appear?

15             THE COURTROOM DEPUTY:  They should be appearing on

16    the line.

17                  Ms. Andoh, are you there?

18             THE COURT:  Let me ask counsel for the defense on

19    the phone, is there a defense counsel?

20                  So it's an issue we're having here.  Give me a

21    second.

22             THE COURTROOM DEPUTY:  Okay.

23             THE COURT:  On the matter of *Moog Inc., versus*

24    *Skyryse*.

25                  For the plaintiff, we have?

```
1              THE COURTROOM DEPUTY:  I don't know what it is.

2              THE COURT:  Do we have anybody for the defense?

3              MR. LUMISH:  Yes, Your Honor.  This is Doug Lumish

4    speaking for Skyryse and several other folks that we identified

5    before the call started.

6              THE COURT:  Let me ask again, is there anybody here

7    for the plaintiff?

8              MS. ANDOH:  Sorry, Your Honor.  This is Rena Andoh

9    for plaintiff.  I misunderstood your instruction.  Thank you.

10             THE COURT:  We are here for a status conference.  I

11   saw the status conference report.

12                  Let me ask just a couple of questions.  There was

13   a proposed order that was filed on or about March the 11th of

14   2022, it's Docket Number 25.  That proposed order and

15   stipulation was signed off by the Judge; is that correct?

16             MS. ANDOH:  Yes, Your Honor.

17             THE COURT:  Okay.  And I guess the parties in the

18   joint status report were basically informing me of the

19   positions of both sides and the past procedures that were done

20   by the Court in the Eastern District of New York prior to the

21   matter being transferred to here.

22                  Let me just ask, there was in the report -- the

23   joint status report is Docket No. 341 -- there is a listing for

24   four, I guess, pending motions, and then the parties were also

25   indicating their intention in regards to certain other motions.
```

1          What I would just simply do is ask about the

2    scheduling of the -- putting back on calendar the pending

3    motions that previously were filed.

4          Is that something that needs to be done?

5          MS. ANDOH:  So, Your Honor, it depends.  So the --

6    sorry, this is Ms. Andoh speaking for Moog.

7          The current status of discovery is such that most

8    discovery in the case has been stayed pending the completion of

9    Moog identifying its trade secrets in line with an order that

10   was issued by the Court back in August.

11          So most of these motions that are pending were

12   suspended by that order and are still suspended at this time

13   because the trade secret identification has not yet occurred.

14          So I think that from Moog's perspective, what we

15   really need to do is complete our trade secret identification,

16   which we just actually received additional materials that we

17   needed for that process last week from a third party.

18          So we are certainly in position to issue that

19   trade secret identification pursuant to a timeline set by the

20   Court, and at that point, we would argue that the pending

21   motions can then be addressed.

22          THE COURT:  Let me ask, I presume that earlier there

23   was a confidentiality agreement signed off on by everybody; is

24   that correct?

25          MS. ANDOH:  That is right, Your Honor.

1          THE COURT:  Let me ask Moog, how long is it going to

2   take for those trade secret identifications to be provided to

3   defendants?

4          MS. ANDOH:  So, Your Honor, I think if the Court is

5   willing to give us the right to supplement, because there are

6   still outstanding discovery that has not been made fully

7   available yet; for example, we just received a number of third

8   party productions from Skyryse's employee represented by Latham

9   on Friday, so if we're able to produce based on what we already

10  have, I believe we could submit the trade secret identification

11  document within the next three to four weeks.

12          I think what we would ask is that we would be

13  able to retain the right to supplement it, again, because we're

14  still waiting for certain materials to be made fully available

15  to us so we can complete that process.

16          THE COURT:  All right.  Let me hear a response from

17  the defense.  What does the defense say about all of that?

18          MR. LUMISH:  Good morning, Your Honor.  This is Doug

19  Lumish speaking only for Skyryse.  There is separate counsel

20  for the individual defendants.

21          I think we agree in large part, which is -- I'm

22  not happy to say there hasn't been a lot of that in this case

23  -- we do think that the first thing should happen is a trade

24  secret identification, and that really everything else should

25  be held in abeyance until that happens.

1          We have provided more discovery than could

2    possibly be needed already, and so we have been waiting a long

3    time for this trade secret identification.

4          We would ask Your Honor to order that occur

5    without any further delay.

6          The only concern I have is the scope of

7    supplementation.  We don't object to supplement if it's based

8    on something that wasn't already produced or that they don't

9    already have, Moog, in their possession, custody, and control.

10          But we have, for the entirety of the case, been

11    concerned about the hindsight problem that Your Honor would be

12    familiar with in the trade secret litigation, where the

13    plaintiff roots around in the defendant's discovery, then

14    identifies trade secrets with hindsight saying that is my

15    stuff, instead of going the opposite direction, which we hoped

16    would happen in this lawsuit.

17          While we wouldn't object to some level of

18    supplemental if it were based on something new that was already

19    not already produced or in their possession, we would like to

20    reserve our right to object to supplementation that goes beyond

21    that.

22          THE COURT:  All right.  Let me hear from other

23    defense counsel.  Is there any other defendant that wants to

24    say something on the record?

25          MR. GREEN:  Yes, thank you, Your Honor.  This is

1    Anthony Green on behalf of the individual defendants.

2         I'm in agreement with Mr. Lumish that we do

3    believe that the identification should happen without further

4    delay, and if there is any supplementation, there should be a

5    good basis for it, and it should be based on something that is

6    not currently in their possession, custody, and control.

7         THE COURT:  All right.  I would presume that the

8    trade secret information would be in their possession and

9    control, it's just that they don't know whether or not those

10   trade secrets are the trade secrets that are going to be

11   involved in this case.

12        Am I correct on that?

13        MS. ANDOH:  Yes, Your Honor.  This is Ms. Andoh.

14   There are a few different points on that.

15        First of all, this case is relatively unique,

16   certainly in my experience, because both, the volume of the

17   information that was taken, we're talking about 1.4 million

18   files that were stolen that are part of this case, and also the

19   nature by which they were stolen, namely, that a large number

20   of the files -- there were 130,000 of them -- were spoliated by

21   one of the individual defendants at the time she stole them.

22        So in a very strange turn of events, the most

23   complete copy of the trade secret sets that we are aware of

24   that is currently in existence is actually on a hard drive that

25   is not in Moog's possession.

1                   It actually belongs to the individual defendant,

2      Alin Pilkington, 1.2 million files, and that device is

3      currently housed at this mutual forensic center, iDS, that you

4      saw referenced in the parties' joint status report.

5                   So when we're talking about this idea of the

6      trade secrets being uniquely within Moog's possession and

7      ability, it's not necessarily as clear cut as that, and it's

8      not worth getting into the weeds on that on this particular

9      call.

10                  Again, I think that we are in a position to

11     identify what we intend to rely upon, for the most part, in

12     pursuing a preliminary injunction at this point.

13                  The order that was issued that permitted the

14     trade secret identification also made clear that this was for

15     the preliminary injunction phase of the case only, and that the

16     purpose of this, at least in part, was to try to focus on the

17     trade secrets that we would be presenting in support of a

18     preliminary injunction motion to a number and size and clarity

19     that was manageable for a Court in context with such a hearing,

20     and that it was without waiver of our right to be able to

21     supplement after the preliminary injunction fees.

22                  I will also just note that this idea of this

23     hindsight argument, that was an argument that was raised by

24     Skyryse and the individual defendants initially when they made

25     the motion for trade secret identification, and the Western

1   District rejected that in allowing us to actually have access

2   to these materials before we issued our trade secret

3   identification.

4           So I think we -- I think that we are in a

5   position to do this.  I think that we should be able to provide

6   trade secret identification on the very large volume of

7   materials, and that it will satisfy the Court.

8           MR. LUMISH:  May I say something, Your Honor?

9           THE COURT:  Sorry, is that Mr. Lumish?

10          MR. LUMISH:  Yes, sir.  Thank you, Your Honor.

11          So two points, if I might.

12          One, is this case is actually fairly conventional

13  in its fact pattern, two employees left their company and came

14  to ours.

15          They are accused of bringing hard drive work and

16  materials with them.  That is not some earth-shatteringly new

17  fact pattern that needs special treatment.  They have had

18  access to those documents for over a year.

19          They say they don't have them, but they are at

20  iDS, this neutral discovery vendor where they can fully -- they

21  Moog -- can fully inspect those documents.  They have their own

22  copies.

23          There has been over a year of opportunity to sift

24  through that and identify what they think is in our possession

25  or in the individual defendants' possession, so there is no

1    basis for any further delay.

2            The second thing I wanted to address, Your Honor,

3    was the notion that the trade secret identification should

4    somehow only be for a preliminary injunction motion.

5            We strenuously disagree with that.  We have an

6    interrogatory that is out.  It's a broad interrogatory that

7    asks for narrative, an explanation of every trade secret they

8    claim was taken by Skyryse, and I believe the individual

9    defendants have the same interrogatory.

10           We want that answered in full and not with some

11   caveat that this is the only ones we are going to seek a PI on

12   and we will tell you all of the other ones for trial at some

13   other date when we feel like it.

14           We should get a full response of that

15   interrogatory before anything happens, in our view.

16           THE COURT:  I understand the latter point, but I

17   think the plaintiff is conceding to the extent that they are

18   going to be providing you supposedly within the next three

19   weeks the trade secrets that are going to be the subject of

20   this action.

21           The only thing they are reserving is that if

22   their later discovery somehow produces additional trade

23   secrets, in which case they would supplement, but they would

24   only supplement on a basis of a motion and in that situation

25   they would utilize, I would presume, like, a Rule-16 bases for

1    allowing those additional trade secrets to be interjected into

2    the case.

3              Let me ask plaintiff's counsel, that is my

4    understanding; am I correct?

5              MS. ANDOH:  Your Honor, the way I understand the

6    order from the Western District of this case, this issue was

7    already litigated substantially.  I do not agree with

8    Mr. Lumish's assessment of what the Court's order actually

9    says.

10             The purpose of the trade secret identification

11   was for the preliminary injunction phase, and so we agree we

12   would not be sandbagging the defendants with any additional

13   trade secrets that we do not identify for purposes of the

14   preliminary injunction hearing, but all of the discovery that

15   is currently being conducted in this case has been limited by

16   stipulation --

17             THE COURT:  Let me stop you for a second.  I don't

18   understand that position in the sense that it seems to me --

19   this is the reason why I asked about the March 11th, 2022

20   order, because it seems to me, even though it was crouched in

21   terms of kind of almost like being a TRO-type situation, given

22   the scope of it, it seems to me if you are going to make a

23   motion for preliminary injunction, I don't know what else you

24   are going to seek -- much more than what is already covered by

25   that order in the sense that it precludes the use of certain

1  information, et cetera, et cetera.

2              And so, in essence, you would utilize that order

3  or continue that order, but identify more firmly the trade

4  secrets that are the subject matter of that order, so I kind of

5  agree with the defense.

6              I mean, in other words, once those trade secrets

7  are identified, then for purposes of litigating the preliminary

8  injunction, we have to make a determination as to whether or

9  not in fact those items are sufficiently established as trade

10 secrets, and if they are, the use of those would be limited by

11 the preliminary injunction order.

12             MS. ANDOH:  Well, Your Honor, I think there are two

13 different issues that are getting conflated here.  If I'm the

14 one that is confused, I apologize.

15             The question of what relief we're seeking in

16 conjunction with the preliminary injunction is not something

17 that is specific to this trade secret identification in that,

18 at the end of the day, the stipulated March 11 order, which we

19 would be looking for something similar to in respect to the

20 preliminary injunction, actually Moog's known public

21 information.

22             The question of what a trade secret is for

23 purposes of the misappropriate claim is a different analysis

24 than the question of what they are restricted from using as far

25 as the rest is concerned.

1          I just want to make sure we're not conflating

2     those two issues.

3          In terms of us demonstrating a likelihood of

4     success on the merits on our misappropriation claim, we're

5     prepared to move forward with the subset of the materials that

6     were stolen, identifying them as trade secrets at this point in

7     time and putting on evidence to demonstrate that

8     misappropriation.

9          Because of the volume of material involved and

10    the number of military programs involved, we have not at this

11    point in time planned to present all 20 programs in context of

12    a preliminary injunction motion.

13         Therefore, we're not doing a line-by-line

14    identification of all 20 of those programs in context with the

15    trade secret ID.

16         As we understood the point of the order, the

17    point of the order was to place defendants on sufficient notice

18    of the trade secrets that we intended to use that the

19    demonstration for likelihood of success on the merits on our

20    misappropriation claim in order to be able to obtain

21    preliminary injunctive relief.

22         It was not discussed in the Western District as

23    being a preclusive document for purposes of the entire case.

24         THE COURT:  Again, I don't know quite how to

25    respond, because again, I wasn't the judge in this case since

```
 1    its inception.
 2            It would seem to me that if you were seeking a
 3    preliminary injunction, you should be seeking a preliminary
 4    injunction on all of the trade secrets.
 5            MS. ANDOH:  We're seeking a preliminary injunction
 6    on preventing a further dissemination of all of the materials
 7    that were taken.
 8            As far as our criteria for likelihood of success
 9    on the merits, we are trying to limit the volume of the
10    material we are presenting in a preliminary injunction motion,
11    enough to demonstrate our ability to succeed on that claim.
12            THE COURT:  Let me ask, on what basis would you be
13    seeking an exclusion of dissemination of materials unless they
14    were trade secrets?
15            MS. ANDOH:  The stuff -- the 1.4 million files that
16    were stolen.  The vast majority of them were nonpublic.
17    Whether we choose to identify all of them as trade secrets for
18    the basis of our misappropriation claims, that is a different
19    issue than whether Skyryse retains the right to continue to
20    circulate our materials.  That was the position that was taken
21    from the outset of the case.
22            THE COURT:  All right.  Let me ask then, it seems to
23    me that the first thing that still would need to be done is for
24    the plaintiff to identify the trade secrets information that
25    the parties have initially discussed to some extent.
```

1          So what I would do is I would require that the

2    plaintiff provide that information to the defendants by

3    February the 20th, and thereafter, I would want the parties to

4    discuss the pending motions.

5          I will not -- at this point in time, I don't

6    think I would have -- unless the parties want to discuss

7    potential motions, but if you want to, that is fine as well.

8          I will set this matter back on calendar for March

9    the 2nd for a status conference.

10          What I want is by February the 28th -- by

11    February 27th a joint report as to scheduling of the pending

12    motions, and if there is any other motions that the parties are

13    envisioning, to give me a schedule for that as well.  I will

14    discuss that schedule with the parties on March the 2nd.

15          What I also want the parties to do is just to

16    give me what the parties feel would be the trial date in this

17    matter.  I won't necessarily be setting that on March the 2nd,

18    but I am curious what the parties are envisioning the trial

19    date for.

20          Does either side have any questions?

21          MR. LUMISH:  Your Honor, this is Doug Lumish for

22    Skyryse.  Are you ordering an identification of trade secrets

23    for February 20th?

24          THE COURT:  Yes.  With the understanding that those

25    trade secrets would be the trade secrets in this case except to

1   the extent that the plaintiff can demonstrate that there was

2   some further discovery or something else that triggered the

3   revelation of additional trade secrets information that would

4   be the subject of this case.

5                For the Court to, at this point in time, throw

6   those trade secrets in this case as opposed to some other case,

7   the motion would have to be made under standards that would be

8   similar to Rule 16.

9            MR. LUMISH:  Understood, Your Honor.  Thank you very

10  much.

11           THE COURT:  All right.  Does anyone else have

12  anything to say?

13           No?  All right.  Thank you.  Have a nice day.

14       MR. GREEN:  Thank you, Your Honor.

15       MR. LUMISH:  Thank you, Your Honor.

16       (The proceedings were concluded at 9:21 a.m.)

17                        * * *

18

19

20

21

22

23

24

25

1            **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES   )
                              )
4    STATE OF CALIFORNIA     )

5

6            I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date: 25th day of January, 2023.

17

18

19                            /s/ TERRI A. HOURIGAN

20   _____
                 TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                      Federal Court Reporter

22

23

24

25

## /

**/s** [1] - 18:19

## 1

**1.2** [1] - 9:2
**1.4** [2] - 8:17, 15:15
**10006** [1] - 2:15
**10112** [1] - 2:6
**11** [1] - 13:18
**11th** [2] - 4:13, 12:19
**130,000** [1] - 8:20
**140** [1] - 2:10
**16** [1] - 17:8

## 2

**20** [2] - 14:11, 14:14
**2022** [2] - 4:14, 12:19
**2023** [3] - 1:13, 3:1, 18:16
**20th** [2] - 16:3, 16:23
**213** [1] - 1:24
**22-9094-GW** [1] - 1:7
**23** [2] - 1:13, 3:1
**25** [1] - 4:14
**25th** [1] - 18:16
**27th** [1] - 16:11
**28** [1] - 18:9
**28th** [1] - 16:10
**2nd** [3] - 16:9, 16:14, 16:17

## 3

**30** [1] - 2:5
**32nd** [1] - 2:14
**341** [1] - 4:23
**350** [1] - 1:23
**3838** [2] - 1:22, 18:20

## 4

**4311** [1] - 1:23
**45** [1] - 2:14

## 7

**753** [1] - 18:9

## 8

**894-2849** [1] - 1:24
**8:30** [2] - 1:14, 3:2

## 9

**90012** [1] - 1:24
**94025** [1] - 2:10

**9:21** [1] - 17:16

## A

**a.m** [3] - 1:14, 3:2, 17:16
**abeyance** [1] - 6:25
**ability** [2] - 9:7, 15:11
**able** [5] - 6:9, 6:13, 9:20, 10:5, 14:20
**above-entitled** [1] - 18:12
**access** [2] - 10:1, 10:18
**accused** [1] - 10:15
**action** [1] - 11:20
**additional** [5] - 5:16, 11:22, 12:1, 12:12, 17:3
**address** [1] - 11:2
**addressed** [1] - 5:21
**agree** [4] - 6:21, 12:7, 12:11, 13:5
**agreement** [2] - 5:23, 8:2
**al** [1] - 1:8
**ALIN** [1] - 2:12
**Alin** [1] - 9:2
**allowing** [2] - 10:1, 12:1
**almost** [1] - 12:21
**analysis** [1] - 13:23
**ANDOH** [1] - 2:4, 4:8, 4:16, 5:5, 5:25, 6:4, 8:13, 12:5, 13:12, 15:5, 15:15
**Andoh** [4] - 3:17, 4:8, 5:6, 8:13
**ANGELES** [4] - 1:14, 1:24, 3:1, 18:3
**answered** [1] - 11:10
**Anthony** [1] - 8:1
**ANTHONY** [1] - 2:13
**apologize** [1] - 13:14
**appear** [1] - 3:14
**APPEARANCES** [1] - 2:1
**appearing** [1] - 3:15
**argue** [1] - 5:20
**argument** [2] - 9:23
**assessment** [1] - 12:8
**Attorney** [3] - 2:5, 2:9, 2:14
**August** [1] - 5:10
**available** [2] - 6:7, 6:14
**aware** [1] - 8:23

## B

**based** [4] - 6:9, 7:7, 7:18, 8:5
**bases** [1] - 11:25
**basis** [5] - 8:5, 11:1, 11:24, 15:12, 15:18
**behalf** [1] - 8:1
**belongs** [1] - 9:1
**beyond** [1] - 7:20
**bringing** [1] - 10:15
**broad** [1] - 11:6
**Broadway** [1] - 2:14
**BY** [3] - 2:4, 2:9, 2:13

## C

**calendar** [2] - 5:2, 16:8
**CALIFORNIA** [5] - 1:2, 1:14, 1:24, 3:1, 18:4
**California** [2] - 2:10, 18:8
**case** [19] - 5:8, 6:22, 7:10, 8:11, 8:15, 8:18, 9:15, 10:12, 11:23, 12:2, 12:6, 12:15, 14:23, 14:25, 15:21, 16:25, 17:4, 17:6
**Case** [1] - 1:7
**caveat** [1] - 11:11
**CCRR** [1] - 1:22
**center** [1] - 9:3
**Central** [1] - 18:8
**CENTRAL** [2] - 1:2
**certain** [3] - 4:25, 6:14, 12:25
**certainly** [2] - 5:18, 8:16
**CERTIFICATE** [1] - 18:1
**certify** [1] - 18:8
**cetera** [2] - 13:1
**choose** [1] - 15:17
**circulate** [1] - 15:20
**claim** [5] - 11:8, 13:23, 14:4, 14:20, 15:11
**claims** [1] - 15:18
**clarity** [1] - 9:18
**clear** [2] - 9:7, 9:14
**Code** [1] - 18:9
**company** [1] - 10:13
**complete** [3] - 5:15, 6:15, 8:23
**completion** [1] - 5:8
**conceding** [1] - 11:17
**concern** [1] - 7:6

**concerned** [2] - 7:11, 13:25
**concluded** [1] - 17:16
**conducted** [1] - 12:15
**CONFERENCE** [1] - 1:13
**conference** [4] - 4:10, 4:11, 16:9, 18:13
**confidentiality** [1] - 5:23
**conflated** [1] - 13:13
**conflating** [1] - 14:1
**conformance** [1] - 18:13
**confused** [1] - 13:14
**conjunction** [1] - 13:16
**context** [3] - 9:19, 14:11, 14:14
**continue** [1] - 13:3, 15:19
**control** [3] - 7:9, 8:6, 8:9
**conventional** [1] - 10:12
**copies** [1] - 10:22
**copy** [1] - 8:23
**correct** [5] - 4:15, 5:24, 8:12, 12:4, 18:10
**COUNSEL** [1] - 2:1
**counsel** [5] - 3:18, 3:19, 6:19, 7:23, 12:3
**COUNTY** [1] - 18:3
**couple** [1] - 4:12
**COURT** [22] - 1:1, 1:23, 3:10, 3:18, 3:23, 4:2, 4:6, 4:10, 4:17, 5:22, 6:1, 6:16, 7:22, 8:7, 10:9, 11:16, 12:17, 14:24, 15:12, 15:22, 16:24, 17:11
**Court** [11] - 3:8, 4:20, 5:10, 5:20, 6:4, 9:19, 10:7, 17:5, 18:7, 18:20
**Court's** [1] - 12:8
**COURTROOM** [1] - 3:7, 3:15, 3:22, 4:1
**covered** [1] - 15:8
**criteria** [1] - 15:8
**crouched** [1] - 12:20
**CRR** [1] - 1:22
**CSR** [2] - 1:22, 18:20
**curious** [1] - 16:18
**current** [1] - 5:7
**custody** [2] - 7:9, 8:6

**cut** [1] - 9:7
**CV** [1] - 1:7

## D

**date** [3] - 11:13, 16:16, 16:19
**Date** [1] - 18:16
**defendant** [2] - 7:23, 9:1
**DEFENDANT** [2] - 2:7, 2:12
**defendant's** [1] - 7:13
**defendants** [9] - 6:3, 6:20, 8:1, 8:21, 9:24, 11:9, 12:12, 14:17, 16:2
**Defendants** [1] - 1:9
**defendants'** [1] - 10:25
**defense** [7] - 3:18, 3:19, 4:2, 6:17, 7:23, 13:5
**delay** [3] - 7:5, 8:4, 11:1
**demonstrate** [3] - 14:7, 15:11, 17:1
**demonstrating** [1] - 14:3
**demonstration** [1] - 14:19
**DEPUTY** [4] - 3:7, 3:15, 3:22, 4:1
**determination** [1] - 13:8
**device** [1] - 9:2
**different** [4] - 8:14, 13:13, 13:23, 15:18
**direction** [1] - 7:15
**disagree** [1] - 11:5
**discovery** [9] - 5:7, 5:8, 6:6, 7:1, 7:13, 10:20, 11:22, 12:14, 17:2
**discuss** [3] - 16:4, 16:6, 16:14
**discussed** [2] - 14:22, 15:25
**dissemination** [2] - 15:6, 15:13
**District** [7] - 3:8, 4:20, 10:1, 12:6, 14:22, 18:7, 18:8
**DISTRICT** [3] - 1:1, 1:2, 1:3
**DIVISION** [1] - 1:2
**Docket** [2] - 4:14, 4:23
**document** [2] - 6:11,

14:23
**documents** [2] - 10:18, 10:21
**done** [4] - 4:19, 5:4, 15:23
**Doug** [3] - 4:3, 6:18, 16:21
**DOUGLAS** [1] - 2:9
**drive** [2] - 8:24, 10:15
**Drive** [1] - 2:10

## E

**earth** [1] - 10:16
**earth-shatteringly** [1] - 10:16
**Eastern** [1] - 4:20
**either** [1] - 16:20
**employee** [1] - 6:8
**employees** [1] - 10:13
**end** [1] - 13:18
**entire** [1] - 14:23
**entirety** [1] - 7:10
**entitled** [1] - 18:12
**envisioning** [2] - 16:13, 16:18
**essence** [1] - 13:2
**established** [1] - 13:9
**et** [3] - 1:8, 13:1
**events** [1] - 8:22
**evidence** [1] - 14:7
**example** [1] - 6:7
**except** [1] - 16:25
**exclusion** [1] - 15:13
**existence** [1] - 8:24
**experience** [1] - 8:16
**explanation** [1] - 11:7
**extent** [3] - 11:17, 15:25, 17:1

## F

**fact** [3] - 10:13, 10:17, 13:19
**fairly** [1] - 10:12
**familiar** [1] - 7:12
**far** [2] - 13:24, 15:8
**February** [4] - 16:3, 16:10, 16:11, 16:23
**FEDERAL** [1] - 1:23
**Federal** [2] - 18:6, 18:20
**fees** [1] - 9:21
**few** [1] - 8:14
**filed** [2] - 4:13, 5:3
**files** [4] - 8:18, 8:20,

9:2, 15:15
**fine** [1] - 16:7
**firmly** [1] - 13:3
**first** [3] - 6:23, 8:15, 15:23
**FIRST** [1] - 1:23
**Floor** [1] - 2:14
**focus** [1] - 9:16
**folks** [1] - 4:4
**FOR** [3] - 2:3, 2:7, 2:12
**foregoing** [1] - 18:10
**forensic** [1] - 9:3
**format** [1] - 18:12
**forward** [1] - 14:5
**four** [2] - 4:24, 6:11
**Friday** [1] - 6:9
**full** [2] - 11:10, 11:14
**fully** [4] - 6:6, 6:14, 10:20, 10:21

## G

**GEORGE** [1] - 1:3
**given** [1] - 12:21
**GREEN** [3] - 2:13, 7:25, 17:14
**Green** [1] - 8:1
**guess** [2] - 4:17, 4:24

## H

**HAMPTON** [1] - 2:4
**happy** [1] - 6:22
**hard** [2] - 8:24, 10:15
**hear** [2] - 6:16, 7:22
**hearing** [2] - 9:19, 12:14
**held** [2] - 6:25, 18:11
**hereby** [1] - 18:8
**hindsight** [3] - 7:11, 7:14, 9:23
**Honor** [20] - 4:3, 4:8, 4:16, 5:5, 5:25, 6:4, 6:18, 7:4, 7:11, 7:25, 8:13, 10:8, 10:10, 11:2, 12:5, 13:12, 16:21, 17:9, 17:14, 17:15
**HONORABLE** [1] - 1:3
**hoped** [1] - 7:15
**HOURIGAN** [4] - 1:22, 18:6, 18:19, 18:20
**housed** [1] - 9:3

## I

**ID** [1] - 14:15
**idea** [2] - 9:5, 9:22
**identification** [16] - 5:13, 5:15, 5:19, 6:10, 6:24, 7:3, 8:3, 9:14, 9:25, 10:3, 10:6, 11:3, 12:10, 13:17, 14:14, 16:22
**identifications** [1] - 6:2
**identified** [2] - 4:4, 13:7
**identifies** [1] - 7:14
**identify** [6] - 9:11, 10:24, 12:13, 13:3, 15:17, 15:24
**identifying** [2] - 5:9, 14:6
**iDS** [2] - 9:3, 10:20
**INC** [3] - 1:5, 1:8, 2:7
**Inc** [2] - 3:10, 3:23
**inception** [1] - 15:1
**indicating** [1] - 4:25
**individual** [7] - 6:20, 8:1, 8:21, 9:1, 9:24, 10:25, 11:8
**information** [7] - 8:8, 8:17, 13:1, 13:21, 15:24, 16:2, 17:3
**informing** [1] - 4:18
**injunction** [17] - 9:12, 9:15, 9:18, 9:21, 11:4, 12:11, 12:14, 12:23, 13:8, 13:11, 13:16, 13:20, 14:12, 15:3, 15:4, 15:5, 15:10
**injunctive** [1] - 14:21
**inspect** [1] - 10:21
**instead** [1] - 7:15
**instruction** [1] - 4:9
**intend** [1] - 9:11
**intended** [1] - 14:18
**intention** [1] - 4:25
**interjected** [1] - 12:1
**interrogatory** [4] - 11:6, 11:9, 11:15
**involved** [3] - 8:11, 14:9, 14:10
**issue** [4] - 3:20, 5:18, 12:6, 15:19
**issued** [3] - 5:10, 9:13, 10:2
**issues** [2] - 13:13, 14:2
**items** [1] - 13:9

## J

**JANUARY** [1] - 3:1
**January** [2] - 1:13, 18:16
**joint** [4] - 4:18, 4:23, 9:4, 16:11
**judge** [1] - 14:25
**JUDGE** [1] - 1:3
**Judge** [1] - 4:15
**judicial** [1] - 18:13

## K

**kind** [2] - 12:21, 13:4
**known** [1] - 13:20

## L

**large** [3] - 6:21, 8:19, 10:6
**last** [1] - 5:17
**LATHAM** [1] - 2:8
**Latham** [1] - 6:8
**latter** [1] - 11:16
**Law** [3] - 2:5, 2:9, 2:14
**lawsuit** [1] - 7:16
**least** [1] - 9:16
**left** [1] - 10:13
**level** [1] - 7:17
**likelihood** [3] - 14:3, 14:19, 15:8
**limit** [1] - 15:9
**limited** [2] - 12:15, 13:10
**line** [4] - 3:16, 5:9, 14:13
**line-by-line** [1] - 14:13
**listing** [1] - 4:23
**litigated** [1] - 12:7
**litigating** [1] - 13:7
**litigation** [1] - 7:12
**LLP** [2] - 2:8, 2:13
**looking** [1] - 13:19
**LOS** [4] - 1:14, 1:24, 3:1, 18:3
**Lumish** [5] - 4:3, 6:19, 8:2, 10:9, 16:21
**LUMISH** [8] - 2:9, 4:3, 6:18, 10:8, 10:10, 16:21, 17:9, 17:15
**Lumish's** [1] - 12:8

## M

**majority** [1] - 15:16
**manageable** [1] - 9:19

## March

**March** [6] - 4:13, 12:19, 13:18, 16:8, 16:14, 16:17
**material** [2] - 14:9, 15:10
**materials** [9] - 5:16, 6:14, 10:2, 10:7, 10:16, 14:5, 15:6, 15:13, 15:20
**matter** [7] - 3:10, 3:23, 4:21, 13:4, 16:8, 16:17, 18:12
**mean** [1] - 13:6
**Menlo** [1] - 2:10
**merits** [3] - 14:4, 14:19, 15:9
**might** [1] - 10:11
**military** [1] - 14:10
**million** [3] - 8:17, 9:2, 15:15
**misappropriate** [1] - 13:23
**misappropriation** [4] - 14:4, 14:8, 14:20, 15:18
**misunderstood** [1] - 4:9
**MONDAY** [1] - 3:1
**Monday** [1] - 1:13
**Moog** [7] - 3:10, 3:23, 5:6, 5:9, 6:1, 7:9, 10:21
**MOOG** [1] - 1:5
**Moog's** [4] - 5:14, 8:25, 9:6, 13:20
**morning** [1] - 6:18
**most** [4] - 5:7, 5:11, 8:22, 9:11
**motion** [8] - 9:18, 9:25, 11:4, 11:24, 12:23, 14:12, 15:10, 17:7
**motions** [9] - 4:24, 4:25, 5:3, 5:11, 5:21, 16:4, 16:7, 16:12
**move** [1] - 14:5
**MR** [9] - 4:3, 6:18, 7:25, 10:8, 10:10, 16:21, 17:9, 17:14, 17:15
**MS** [10] - 4:8, 4:16, 5:5, 5:25, 6:4, 8:13, 12:5, 13:12, 15:5, 15:15
**MULLIN** [1] - 2:4
**mutual** [1] - 9:3

## N

**namely** [1] - 8:19

**UNITED STATES DISTRICT COURT**

narrative [1] - 11:7
nature [1] - 8:19
necessarily [2] - 9:7, 16:17
need [2] - 5:15, 15:23
needed [2] - 5:17, 7:2
needs [2] - 5:4, 10:17
neutral [1] - 10:20
New [5] - 2:6, 2:15, 4:20
new [2] - 7:18, 10:16
next [2] - 6:11, 11:18
nice [1] - 17:13
NO [2] - 1:22, 18:20
nonpublic [1] - 15:16
note [1] - 9:22
notice [1] - 14:17
notion [1] - 11:3
number [4] - 6:7, 8:19, 9:18, 14:10
Number [1] - 4:14

**O**

object [3] - 7:7, 7:17, 7:20
obtain [1] - 14:20
occur [1] - 7:4
occurred [1] - 5:13
OF [6] - 1:2, 1:12, 2:1, 18:1, 18:3, 18:4
Official [1] - 18:6
OFFICIAL [2] - 1:23, 18:1
once [1] - 13:6
one [3] - 8:21, 10:12, 13:14
ones [2] - 11:11, 11:12
oOo [1] - 3:3
opportunity [1] - 10:23
opposed [1] - 17:6
opposite [1] - 7:15
order [19] - 3:8, 4:13, 4:14, 5:9, 5:12, 7:4, 9:13, 12:6, 12:8, 12:20, 12:25, 13:2, 13:3, 13:4, 13:11, 13:18, 14:16, 14:17, 14:20
ordering [1] - 16:22
outset [1] - 15:21
outstanding [1] - 6:6
own [1] - 10:21

**P**

page [1] - 18:12
Park [1] - 2:10
part [4] - 6:21, 8:18, 9:11, 9:16
particular [1] - 9:8
parties [10] - 4:17, 4:24, 15:25, 16:3, 16:6, 16:12, 16:14, 16:15, 16:16, 16:18
parties' [1] - 9:4
party [2] - 5:17, 6:8
past [1] - 4:19
pattern [2] - 10:13, 10:17
pending [7] - 4:24, 5:2, 5:8, 5:11, 5:20, 16:4, 16:11
permitted [1] - 9:13
perspective [1] - 5:14
phase [2] - 9:15, 12:11
phone [1] - 3:19
PI [1] - 11:11
PILKINGTON [1] - 2:12
Pilkington [1] - 9:2
place [1] - 14:17
plaintiff [10] - 3:12, 3:13, 3:25, 4:7, 4:9, 7:13, 11:17, 15:24, 16:2, 17:1
PLAINTIFF [1] - 2:3
plaintiff's [1] - 12:3
Plaintiffs [1] - 1:6
planned [1] - 14:11
Plaza [1] - 2:5
point [9] - 5:20, 9:12, 11:16, 14:6, 14:11, 14:16, 14:17, 16:5, 17:5
points [2] - 8:14, 10:11
position [5] - 5:18, 9:10, 10:5, 12:18, 15:20
positions [1] - 4:19
possession [8] - 7:9, 7:19, 8:6, 8:8, 8:25, 9:6, 10:24, 10:25
possibly [1] - 7:2
potential [1] - 16:7
precludes [1] - 12:25
preclusive [1] - 14:23
preliminary [18] - 9:12, 9:15, 9:18, 9:21, 11:4, 12:11, 12:14,

12:23, 13:7, 13:11, 13:16, 13:20, 14:12, 14:21, 15:3, 15:5, 15:10
prepared [1] - 14:5
present [1] - 14:11
presenting [2] - 9:17, 15:10
presume [3] - 5:22, 8:7, 11:25
preventing [1] - 15:6
previously [1] - 5:3
problem [1] - 7:11
procedures [1] - 4:19
proceedings [2] - 17:16, 18:11
process [2] - 5:17, 6:15
produce [1] - 6:9
produced [2] - 7:8, 7:19
produces [1] - 11:22
productions [1] - 6:8
programs [3] - 14:10, 14:11, 14:14
proposed [2] - 4:13, 4:14
provide [1] - 10:5, 16:2
provided [2] - 6:2, 7:1
providing [1] - 11:18
public [1] - 13:20
purpose [2] - 9:16, 12:10
purposes [4] - 12:13, 13:7, 13:23, 14:23
pursuant [2] - 5:19, 18:9
pursuing [1] - 9:12
putting [2] - 5:2, 14:7

**Q**

questions [2] - 4:12, 16:20
quite [1] - 14:24

**R**

raised [1] - 9:23
really [2] - 5:15, 6:24
Realtime [1] - 18:6
reason [1] - 12:19
received [2] - 5:16, 6:7
record [1] - 7:24
referenced [1] - 9:4
regards [1] - 4:25

regulations [1] - 18:13
rejected [1] - 10:1
relatively [1] - 8:15
relief [2] - 13:15, 14:21
rely [1] - 9:11
remain [1] - 3:7
Rena [1] - 4:8
RENA [1] - 2:4
report [6] - 4:11, 4:18, 4:22, 4:23, 9:4, 16:11
reported [1] - 18:11
REPORTER [2] - 1:23, 18:1
Reporter [2] - 18:7, 18:20
REPORTER'S [1] - 1:12
represented [1] - 6:8
require [1] - 16:1
reserve [1] - 7:20
reserving [1] - 11:21
respect [1] - 13:19
respond [1] - 14:25
response [2] - 6:16, 11:14
rest [1] - 13:25
restricted [1] - 13:24
retain [1] - 6:13
retains [1] - 15:19
revelation [1] - 17:3
RICHTER [1] - 2:4
ROBERT [1] - 2:12
Rockefeller [1] - 2:5
ROOM [1] - 1:23
roots [1] - 7:13
RPR [1] - 18:20
Rule [1] - 17:8
Rule-16 [1] - 11:25

**S**

sandbagging [1] - 12:12
satisfy [1] - 10:7
saw [2] - 4:11, 9:4
schedule [2] - 16:13, 16:14
scheduling [2] - 5:2, 16:11
SCHWARTZBERG [1] - 2:13
scope [2] - 7:6, 12:22
Scott [1] - 2:10
seated [1] - 3:7
second [3] - 3:21, 11:2, 12:17

secret [20] - 5:13, 5:15, 5:19, 6:2, 6:10, 6:24, 7:3, 7:12, 8:8, 8:23, 9:14, 9:25, 10:2, 10:6, 11:3, 11:7, 12:10, 13:17, 13:22, 14:15
secrets [24] - 5:9, 7:14, 8:10, 9:6, 9:17, 11:19, 11:23, 12:1, 12:13, 13:4, 13:6, 13:10, 14:6, 14:18, 15:4, 15:14, 15:17, 15:24, 16:22, 16:25, 17:3, 17:6
Section [1] - 18:9
seek [2] - 11:11, 12:24
seeking [5] - 13:15, 15:2, 15:3, 15:5, 15:13
seem [1] - 15:2
sense [2] - 12:18, 12:25
separate [1] - 6:19
session [1] - 3:9
set [2] - 5:19, 16:8
sets [1] - 8:23
setting [1] - 16:17
several [1] - 4:4
shatteringly [1] - 10:16
SHEPPARD [1] - 2:4
side [1] - 16:20
sides [1] - 4:19
sift [1] - 10:23
signed [2] - 4:15, 5:23
similar [2] - 13:19, 17:8
simply [1] - 5:1
situation [2] - 11:24, 12:21
size [1] - 9:18
SKYRYSE [2] - 1:8, 2:7
Skyryse [8] - 3:11, 3:24, 4:4, 6:19, 9:24, 11:8, 15:19, 16:22
Skyryse's [1] - 6:8
someone [1] - 3:12
sorry [3] - 4:8, 5:6, 10:9
SPADOFORA [1] - 2:13
speaking [3] - 4:4, 5:6, 6:19
special [1] - 10:17
specific [1] - 13:17
spoliated [1] - 8:20

**standards** [1] - 17:7
**started** [1] - 4:5
**STATE** [1] - 18:4
**States** [4] - 3:8, 18:7, 18:9, 18:14
**STATES** [1] - 1:1
**status** [7] - 4:10, 4:11, 4:18, 4:23, 5:7, 9:4, 16:9
**STATUS** [1] - 1:13
**stayed** [1] - 5:8
**stenographically** [1] - 18:11
**still** [4] - 5:12, 6:6, 6:14, 15:23
**stipulated** [1] - 13:18
**stipulation** [2] - 4:15, 12:16
**stole** [1] - 8:21
**stolen** [4] - 8:18, 8:19, 14:6, 15:16
**stop** [1] - 12:17
**strange** [1] - 8:22
**STREET** [1] - 1:23
**strenuously** [1] - 11:5
**stuff** [2] - 7:15, 15:15
**subject** [3] - 11:19, 13:4, 17:4
**submit** [1] - 6:10
**subset** [1] - 14:5
**substantially** [1] - 12:7
**succeed** [1] - 15:11
**success** [3] - 14:4, 14:19, 15:8
**sufficient** [1] - 14:17
**sufficiently** [1] - 13:9
**supplement** [6] - 6:5, 6:13, 7:7, 9:21, 11:23, 11:24
**supplemental** [1] - 7:18
**supplementation** [3] - 7:7, 7:20, 8:4
**support** [1] - 9:17
**supposed** [1] - 3:14
**supposedly** [1] - 11:18
**suspended** [2] - 5:12

**T**

**TELEPHONIC** [1] - 1:13
**terms** [2] - 12:21, 14:3
**TERRI** [4] - 1:22, 18:6, 18:19, 18:20
**THE** [27] - 2:3, 2:7,

2:12, 3:7, 3:10, 3:15, 3:18, 3:22, 3:23, 4:1, 4:2, 4:6, 4:10, 4:17, 5:22, 6:1, 6:16, 7:22, 8:7, 10:9, 11:16, 12:17, 14:24, 15:12, 15:22, 16:24, 17:11
**thereafter** [1] - 16:3
**therefore** [1] - 14:13
**third** [2] - 5:17, 6:7
**three** [2] - 6:11, 11:18
**throw** [1] - 17:5
**timeline** [1] - 5:19
**Title** [1] - 18:9
**trade** [44] - 5:9, 5:13, 5:15, 5:19, 6:2, 6:10, 6:23, 7:3, 7:12, 7:14, 8:8, 8:10, 8:23, 9:6, 9:14, 9:17, 9:25, 10:2, 10:6, 11:3, 11:7, 11:19, 11:22, 12:1, 12:10, 12:13, 13:3, 13:6, 13:9, 13:17, 13:22, 14:6, 14:15, 14:18, 15:4, 15:14, 15:17, 15:24, 16:22, 16:25, 17:3, 17:6
**TRANSCRIPT** [1] - 1:12
**transcript** [2] - 18:10, 18:12
**transferred** [1] - 4:21
**treatment** [1] - 10:17
**trial** [3] - 11:12, 16:16, 16:18
**triggered** [1] - 17:2
**TRO** [1] - 12:21
**TRO-type** [1] - 12:21
**true** [1] - 18:10
**try** [1] - 9:16
**trying** [1] - 15:9
**turn** [1] - 8:22
**two** [4] - 10:11, 10:13, 13:12, 14:2
**type** [1] - 12:21

**U**

**U.S** [1] - 1:3
**under** [1] - 17:7
**understood** [2] - 14:16, 17:9
**unique** [1] - 8:15
**uniquely** [1] - 9:6
**UNITED** [1] - 1:1
**United** [4] - 3:8, 18:7, 18:9, 18:14
**unless** [2] - 15:13, 16:6

**utilize** [2] - 11:25, 13:2

**V**

**vast** [1] - 15:16
**vendor** [1] - 10:20
**versus** [2] - 3:11, 3:23
**view** [1] - 11:15
**volume** [4] - 8:16, 10:6, 14:9, 15:9
**vs** [1] - 1:7

**W**

**waiting** [2] - 6:14, 7:2
**waiver** [1] - 9:20
**wants** [1] - 7:23
**WATKINS** [1] - 2:8
**weeds** [1] - 9:8
**week** [1] - 5:17
**weeks** [2] - 6:11, 11:19
**WEST** [1] - 1:23
**Western** [3] - 9:25, 12:6, 14:22
**willing** [1] - 6:5
**WINGET** [1] - 2:13
**words** [1] - 13:6
**worth** [1] - 9:8
**WU** [1] - 1:3

**Y**

**year** [2] - 10:18, 10:23
**York** [5] - 2:6, 2:15, 4:20