**LATHAM & WATKINS LLP**
Douglas E. Lumish (SBN 183863)
 doug.lumish@lw.com
Gabriel S. Gross (SBN 254672)
 gabe.gross@lw.com
Arman Zahoory (SBN 306421)
 arman.zahoory@lw.com
Ryan T. Banks (SBN 318171)
 ryan.banks@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and*
*Counterclaimant Skyryse, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>      Plaintiff,<br><br>v<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>      Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**DEFENDANT SKYRYSE, INC.'S NOTICE OF MOTION AND MOTION FOR A TEMPORARY STAY** |
| SKYRYSE, INC.,<br><br>      Counterclaimant,<br><br>v<br><br>MOOG INC.,<br><br>      Counterclaim-Defendant. | Complaint filed: March 7, 2022<br><br>Hearing:    April 13, 2023<br>Time:      8:30 a.m.<br>Judge:     Hon. George H. Wu<br>Location: Courtroom 9D 9th Floor |

1  **TO THE ABOVE-CAPTIONED COURT, AND TO ALL PARTIES**

2  **AND THEIR COUNSEL OF RECORD:**

3  **PLEASE TAKE NOTICE** that at 8:30 a.m. on April 13, 2023, or as soon

4  thereafter as the matter may be heard before the Honorable Judge George H. Wu in

5  Courtroom 9D of the United States District Court, Central District of California,

6  located at 350 West 1st Street, Los Angeles, California 90012, Defendant and Coun-

7  terclaimant Skyryse, Inc. will and hereby does move the Court for a six-month stay

8  of this action in light of the government's parallel investigation.

9  This Motion is made on the grounds that:

10  - Proceeding with the civil action at this time, in light of the parallel in-

11  vestigation by the U.S. Attorney's Office ("USAO"), would squarely

12  implicate Defendants Pilkington and Kim's Fifth Amendment rights

13  and could cause severe prejudice to Skyryse, which may be deprived of

14  discovery essential to its defenses in this case.

15  - All five *Keating* factors weigh in favor of a temporary stay: (**1**) it would

16  not unfairly prejudice Moog, which has, at best, minimal interest in

17  "proceeding expeditiously with this litigation," given that it received

18  the emergency injunctive relief it claimed to need a year ago, and has

19  yet to renew its motion for a preliminary injunction; (**2**) the risk of bur-

20  den and prejudice to Skyryse is severe absent a stay; (**3**) a temporary

21  stay would promote the efficient use of judicial resources and minimize

22  the risk of inconsistent outcomes; (**4**) a stay would serve the interests of

23  non-parties, including the government, third-party witnesses, and com-

24  petitors; and (**5**) a stay would serve the public's interest in the expedi-

25  tious resolution of any resulting criminal proceedings.

26

27

28

1       This Motion is based on this Notice, the accompanying Memorandum of

2   Points and Authorities, the concurrently filed Declaration of Arman Zahoory ("Za-

3   hoory Decl.") and the exhibits attached thereto, the pleadings and records on file

4   herein, and upon all other arguments and evidence that may be presented to this

5   Court.

6       This motion is made following multiple conferences of counsel pursuant to

7   L.R. 7-3, including conferences which took place on January 10 and February 22,

8   2023.

9   Dated:  March 15, 2023                Respectfully submitted,

10                                      LATHAM & WATKINS LLP

11

12                                      By */s/ Gabriel S. Gross*

13                                        Douglas E. Lumish (SBN 183863)

                                      Gabriel S. Gross (SBN 254672)

14                                        Arman Zahoory (SBN 306421)

15                                        Ryan Banks (SBN 318171)

                                      Menlo Park, California 94025

16                                        Telephone: (650) 328-4600

17                                        Facsimile: (650) 463-2600

                                      Email: doug.lumish@lw.com

18                                        gabe.gross@lw.com

19                                        arman.zahoory@lw.com

                                      ryan.banks@lw.com

20                                      Attorneys for Defendant and Counter-

21                                      claimant, Skyryse, Inc.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   BACKGROUND ....................................................................................3

    A.    Initiation of this Action and the Parallel Government Investigation ...............................................................................3

    B.    Venue Transfer and Other Relevant Developments ...........................5

III.  LEGAL STANDARDS ...........................................................................7

IV.   THE COURT SHOULD STAY THIS ACTION TEMPORARILY WHILE THE PARALLEL GOVERNMENT INVESTIGATION IS PENDING. .................................................8

    A.    Proceeding with this civil action would squarely implicate Defendants' Fifth Amendment and due process rights. .......................................................................................8

    B.    A temporary stay will not unfairly prejudice Moog. ........................12

    C.    The burden on and prejudice to Skyryse would be severe absent a stay. ...............................................................................14

    D.    A temporary stay would promote the efficient use of judicial resources. ...............................................................................17

    E.    A stay would serve the interests of the government, non-party witnesses, and the industry. ......................................................20

    F.    A stay would serve the public interest. ..............................................21

V.    CONCLUSION ......................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*De La O v. Arnold-Williams*,
No. 04-cv-0192, 2005 WL 8158924 (E.D. Wash. June 21, 2005) ..............11, 12

*Fed. Sav. & Loan Ins. Corp. v. Molinaro*,
889 F.2d 899 (9th Cir. 1989) ..............................................................7

*Javier H. v. Garcia-Botello*,
218 F.R.D. 72 (W.D.N.Y. 2003) ..........................................................8

*Jones v. Conte*,
No. 04-5412-SI, 2005 WL 1287017 (N.D. Cal. Apr. 19, 2005).........8, 10, 19, 22

*Keating v. Office of Thrift Supervision*,
45 F.3d 322 (9th Cir. 1995) ....................................................7, 12, 16

*LiButti v. United States*,
107 F.3d 110 (2d Cir. 1997) ..............................................................17

*McCormick v. Rexroth*,
No. 09-cv-4188-JF, 2010 WL 934242 (N.D. Cal. Mar. 15, 2010).....................8

*Micron Tech., Inc. v. United Microelectronics Corp.*,
No. 17-cv-06932-MMC, 2019 WL 3037542 (N.D. Cal. July 11, 2019).....*passim*

*Mr. Dee's, Inc. v. Int'l Outsourcing Servs., LLC*,
No. 08-cv-457, 2008 WL 4853601 (E.D. Wis. Nov. 3, 2008) ..........................15

*Nationwide Life Ins. Co. v. Richards*,
541 F.3d 903 (9th Cir. 2008) ..............................................................17

*Newton v. Thomason*,
22 F.3d 1455 (9th Cir. 1994) ..............................................................7

*SEC v. Alexander*,
No. 10-cv-04535-LHK, 2010 WL 5388000 (N.D. Cal.
Dec. 22, 2010)..................................................................14, 19, 22

*SEC v. Dresser Indus., Inc.*,
   628 F.2d 1368 (D.C. Cir. 1980) ............................................................................7

*SEC v. Nicholas*,
   569 F. Supp. 2d 1065 (C.D. Cal. 2008) ................................................10, 17, 19

*Matter of Seper*,
   705 F. 2d 1499 (9th Cir. 1983) ..........................................................................11

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*,
   No. 09-cv-0954-FCD, 2009 WL 2136986 (E.D. Cal. July 15, 2009) ...........9, 15

*Waymo LLC v. Uber Techs., Inc.*,
   No. 17-cv-00939-WHA, 2017 WL 2123560 (N.D. Cal. May 15, 2017) ...........18

*Williams v. Kohl's Dept. Stores, Inc.*,
   No. 19-cv-397-JGB, 2020 WL 3882953 (C.D. Cal. June 16, 2020) .................17

*Wroth v. City of Rohnert Park*,
   No. 17-cv-05339-JST, 2018 WL 888466 (N.D. Cal. Feb. 14, 2018) ...........12, 19

*In re Zinnel*,
   No. 12-cv-00249-MCE, 2013 WL 1284339 (E.D. Cal. Mar. 28, 2013) ............20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

CASE NO. 2:22-cv-09094-GW-MAR
SKYRYSE'S NOTICE OF MOTION AND
MOTION FOR A TEMPORARY STAY

## I.     INTRODUCTION

Plaintiff Moog, Inc. started this civil action over a year ago, alleging that two of its former employees, Defendants Alin Pilkington and Misook Kim, copied a large volume of files while still working at Moog, and conspired with their new employer, Defendant Skyryse, Inc., to misappropriate these alleged trade secrets. Moog filed its complaint in the Western District of New York with no notice and demanding immediate emergency relief. Unbeknownst to Defendants at the time, Moog also had been sharing information about the same conduct alleged in its complaint with the FBI, along with its own partisan theories of the case. On Moog's referral, the United States Attorney's Office here in the Central District of California had opened an investigation into these allegations. Defendants, however, did not learn of the government's investigation or Moog's involvement in it until several months into this case, long after they had stipulated in good faith to the emergency relief Moog claimed to need: preserving and making available to Moog in discovery scores of electronic devices, mountains of information, and other "expedited discovery."

It has been nine months since Defendants learned of the government's investigation, with which Skyryse has been fully cooperating. In that time, the investigation has matured: the government has issued a series of grand jury subpoenas to Defendants and third parties, and has subpoenaed nearly all of the voluminous discovery materials produced in this case. At the same time, this civil action has progressed. As of January, Skyryse has filed its Answer and Counterclaims; discovery has proceeded for nearly a year, resulting in numerous disputes over the sufficiency of both sides' responses; and depositions are imminent as Moog threatens to renew its motion for a preliminary injunction.

As the government's investigation and the civil action have converged, Mr. Pilkington and Ms. Kim face a dilemma. They have to choose between potentially waiving their Fifth Amendment privilege against self-incrimination to defend

1    themselves in this civil action, and asserting that privilege and risking prejudice to

2    their defense in this action, and Skyryse's as well. Mr. Pilkington and Ms. Kim have

3    confirmed they will each invoke their constitutional right not to testify or provide

4    further discovery in this action. But any time Mr. Pilkington or Ms. Kim – or any

5    non-party witness – invokes the Fifth Amendment, this forecloses a valuable and

6    potentially exculpatory source of evidence to Skyryse. Worse, any adverse inference

7    the Court might grant arising from their refusal to testify in the civil action could be

8    imputed to Skyryse, which would be unable to obtain the discovery it needs to fully

9    defend itself. As long as this action continues in parallel with the government's in-

10   vestigation, the individual defendants' Fifth Amendment interests will increasingly

11   and irreconcilably collide with Skyryse's right and ability to fairly defend itself in

12   this action.

13           Courts regularly stay civil proceedings in just these circumstances, where a

14   criminal investigation implicates a defendant's Fifth Amendment rights in a pending

15   civil case, and other defendants could be cut off from obtaining crucial discovery.

16   Indeed, staying this action is the only sure way to prevent severe prejudice to Skyryse

17   while also protecting Mr. Pilkington's and Ms. Kim's Fifth Amendment rights, pro-

18   moting the efficient use of judicial resources, and advancing the interests of non-

19   parties and the public. Skyryse recognizes that there are competing interests at play,

20   including Moog's purported interest in an expeditious resolution of the civil action.

21   Skyryse therefore is not asking for an indefinite stay, but instead is requesting a tem-

22   porary one, for six months, renewable only on a showing of good cause. A six-month

23   stay will protect all parties' interests while allowing the government ample time to

24   advance its investigation. To safeguard the individual defendants' constitutional

25   rights while preventing the most draconian and unfair consequences to Skyryse,

26   Skyryse respectfully requests that the Court grant this Motion.

27

28

## II.     BACKGROUND

### A.     Initiation of this Action and the Parallel Government Investigation

Moog filed its complaint on March 7, 2022 in the Western District of New York alleging that two of its former employees, Mr. Pilkington and Ms. Kim (the "Individual Defendants"), while working at Moog, misappropriated trade secrets in a conspiracy with Skyryse, along with several other causes of action. (Dkt. 1.) At the same time, Moog moved for a temporary restraining order and preliminary injunction. (Dkts. 4, 5, 6.) Although Moog had not raised any of its concerns with Skyryse or the other Defendants before filing suit, all Defendants acted in good faith and promptly stipulated to the emergency relief Moog claimed it needed, namely to two orders on the "Production of Information, Data Preservation and Forensic Searches" and "Expedited Discovery Procedures and Briefing Schedule for Preliminary Injunction Motion."[1] (Dkts. 25, 33.)

What Defendants did not know when they agreed to those stipulations was that, on Moog's referral and with Moog's cooperation, the U.S. Attorney's Office for the Central District of California had opened an investigation into the very same facts underlying this action. On June 10, 2022, months after all Defendants stipulated to expedited discovery, counsel for Moog informed the Court of the "ongoing federal investigation into *the files taken from Moog that are the subject of this lawsuit*,"[2] confirming that the government's investigation is premised on the same conduct on which Moog's Complaint is based. (Dkt. 222-7.) Around the same time, the USAO served the Individual Defendants with grand jury subpoenas and advised their coun-

---

[1] The stipulated briefing and hearing schedule for Moog's threatened preliminary injunction motion (Dkt. 33) is obsolete, as Moog has long suggested it will file, but has not yet filed, a different request for such injunctive relief.

[2] All emphasis in quotes has been added unless otherwise indicated.

1  sel that the Individual Defendants were the targets of a parallel criminal investiga-

2  tion. (*See* Dkt. 264-2 at 32:24-33:3.) It was not until later that month that Defendants

3  learned of Moog's involvement in the government's investigation.

4      Concerned about the implications of further discovery on their Fifth Amend-

5  ment rights, on August 3, 2022 the Individual Defendants filed a motion to stay this

6  action pending resolution of the parallel criminal investigation. (Dkt. 214.) The In-

7  dividual Defendants' motion described how further litigation of the civil case would

8  force them to choose between waiving their Fifth Amendment privilege against self-

9  incrimination in order to defend themselves, and asserting the privilege and risking

10  severe prejudice in this action. (Dkt. 214-1 at 16-22.) Skyryse joined that motion and

11  filed a supporting brief to highlight the prejudice it would suffer if the civil action

12  proceeded without the Individual Defendants' testimony. (Dkt. 241.) Skyryse

13  pointed out the potentially draconian consequences to Skyryse of a decision by Mr.

14  Pilkington and Ms. Kim to plead the Fifth, including that Skyryse could be subject

15  to adverse inferences in the civil case while being deprived of exculpatory testimony

16  from key witnesses. (*See id.* at 2-5.)

17      Recognizing that both the government's investigation and the civil case were

18  still in relatively early stages, Magistrate Judge McCarthy denied the motion, but

19  without prejudice. He found that Defendants' concerns about potential adverse in-

20  ferences were, at that stage, "hypothetical, as Pilkington and Kim have not yet as-

21  serted a Fifth Amendment privilege." (Dkt. 259 at 3.) Judge McCarthy deemed it in

22  all parties' interest to allow the action to continue so Moog could satisfy its obliga-

23  tion to identify its asserted trade secrets, "without (for now) requiring [Pilkington

24  and Kim] to testify." (*Id.* at 4.) The Court's order expressly left the door open for

25  Defendants to again seek a stay after more discovery had progressed, noting that

26  "[o]nce Moog identifies the trade secrets and confidential information at issue, de-

27  fendants may (or may not) decide that a stay of this action is necessary to protect

28

1   their interests in light of the pending criminal investigation," and "[w]hether such

2   relief would be appropriate is a question for another day." (*Id.*)

3       **B.**    **Venue Transfer and Other Relevant Developments**

4       In December 2022, the New York court granted Defendants' motions to trans-

5   fer venue to this Court, in the district where virtually all of the conduct alleged in

6   Moog's Complaint occurred and where the government's investigation has been un-

7   folding. (*See* Dkt. 297.) It has now been more than six months since the transferor

8   court considered the appropriateness of a stay. In that time, the government has been

9   actively pursuing its investigation, including by issuing a series of grand jury sub-

10  poenas over the past several months. For example, Skyryse and several of its current

11  and former employees have responded to grand jury subpoenas, as have other third

12  parties. Most recently, counsel for Skyryse learned that the government served a

13  grand jury subpoena on iDS, the neutral forensic vendor that the parties selected by

14  stipulation, which has been maintaining a vast amount of electronic discovery from

15  this action. (Dkt. 25, ¶¶ 2-5.) In response, the Individual Defendants asserted their

16  Fifth Amendment privilege over all potentially responsive materials received from

17  Ms. Kim and Mr. Pilkington in iDS's possession.  (Zahoory Decl. Ex. A.)

18      Meanwhile, discovery in this action has marched onward, spawning numerous

19  disputes and motions. Over the last year, in accordance with the parties' stipulation

20  and the transferor court's orders, Moog received wide-ranging and virtually un-

21  bounded discovery into Skyryse's documents and computer systems, amounting to

22  more than four terabytes of data it provided to iDS (equivalent to roughly 300 million

23  pages of text). The voluminous and one-sided nature of this discovery was the result

24  of Moog arguing it needed more information to identify its own trade secrets, which

25  Magistrate Judge McCarthy allowed before letting Defendants proceed with further

26  discovery. (Dkt. 205 at 3; *see also* Dkt. 206 (permitting Moog to file "motions re-

27

28

1   lated to the discovery allegedly necessary to enable Moog to identify its trade se-

2   crets); Zahoory Decl. Ex. B at 26:4-14, 33:19-22 (ordering discovery into additional

3   Skyryse electronic devices), 71:6-10 (allowing Moog "to serve third-party subpoe-

4   nas in order to identify the trade secrets").)

5          Despite all of this discovery, Moog still has not complied with the transferor

6   court's order compelling it to identify its alleged trade secrets with "precision and

7   specificity," and not just "by generic category," describing "the specific character-

8   istics of *each* trade secret," including "a precise identification of software elements"

9   such as "the specific lines of code or programs claimed to be secret." (Dkt. 205 at 3-

10  4.) Among other deficiencies, Moog's February 21, 2023 trade secret identification

11  describes its alleged trade secrets by generic category, and references more than

12  300,000 documents as "reflecting" its trade secrets, with no specificity as to what

13  content in those documents is or is not a trade secret. Skyryse is no closer today than

14  it was a year ago to knowing what trade secrets Moog will attempt to show it has

15  established protectable rights in, and have been misappropriated in this action.

16         Skyryse has raised Moog's deficient trade secret disclosure with Magistrate

17  Judge Rocconi and plans to file a motion to enforce the transferor court's order com-

18  pelling a particularized trade secret identification. But that is just one of many pend-

19  ing and anticipated motions, as the parties discussed at the March 2 status confer-

20  ence. They also include Skyryse's forthcoming motions to enforce the transferor

21  court's order on source code discovery; to compel supplemental interrogatory re-

22  sponses; and to compel the production of documents relating to Moog's investiga-

23  tion and cooperation with the FBI and USAO; and Moog's anticipated motions to

24  enforce compliance with the stipulated TRO and "for potential monetary and/or

25  other sanctions." (Dkt. 365 at 8-13.)

26         At this stage of the civil action, the Individual Defendants are closer than ever

27  to being required to testify at deposition. Moog has made clear that it still intends to

28

pursue a preliminary injunction, and requested a hearing be scheduled for September 2023. (Dkt. 365 at 3.) The parties' expedited discovery stipulation contemplates that each side will take depositions in advance of briefing and a hearing on the motion for a preliminary injunction. (Dkt. 33, ¶ 3.) That means Mr. Pilkington and Ms. Kim will undoubtedly be called for deposition by at least one party within the next six months. However, the Individual Defendants have confirmed that they will invoke their Fifth Amendment rights to avoid testifying when that occurs. Likewise, Skyryse understands that the Individual Defendants will broadly assert Fifth Amendment privilege and will not produce any further documents in the civil case while the government's investigation remains pending.

## III.   LEGAL STANDARDS

Following a venue transfer to a district court in the Ninth Circuit, the transferee court applies Ninth Circuit law to issues of federal law. *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994). Federal courts have inherent discretionary power to stay an action pending developments in parallel proceedings, *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)), which makes the question of whether to grant a stay a federal-law issue. This Court should therefore apply Ninth Circuit law.

In the Ninth Circuit, courts exercise their discretion to stay civil proceedings in the face of parallel criminal proceedings "in light of the particular circumstances and competing interests involved in the case," which "means the decisionmaker should consider 'the extent to which the defendant's fifth amendment rights are implicated.'" *Keating*, 45 F.3d at 324-25 (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). "In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential

prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Id.*

## IV.   THE COURT SHOULD STAY THIS ACTION TEMPORARILY WHILE THE PARALLEL GOVERNMENT INVESTIGATION IS PENDING.

A six-month stay of this action during the government's ongoing investigation is necessary to protect both the Individual Defendants' Fifth Amendment rights and Skyryse's right to a full and fair opportunity to defend itself against Moog's claims, and will not unduly prejudice Moog.

### A.   Proceeding with this civil action would squarely implicate Defendants' Fifth Amendment and due process rights.

Courts generally recognize that it is appropriate to stay a civil case pending parallel criminal proceedings because "[i]f discovery moves forward, [the] defendant will be faced with the difficult choice between asserting [his] right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the civil case." *Jones v. Conte*, No. 04-cv-5312-SI, 2005 WL 1287017, at *1 (N.D. Cal. Apr. 19, 2005) (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)). Fifth Amendment concerns particularly warrant a stay "[w]hen simultaneous civil and criminal proceedings involve 'the same or closely related facts,'" and "[s]ome courts have gone so far as to recognize the extent of the overlap as the 'most important factor.'" *McCormick v. Rexroth*, No. 09-cv-4188-JF, 2010 WL 934242, at *2 (N.D. Cal. Mar. 15, 2010) (citation omitted). Likewise, a stay is appropriate where individual Fifth Amendment concerns may "greatly prejudice" another defendant "in [its] ability to meaningfully defend itself in the civil matter," thereby threatening the civil defendant's right to due process and

a fair defense. *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, No. 09-cv-0954-FCD, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009).

           1.    <u>The overlapping facts underlying the civil action and the government's investigation put the Individual Defendants' Fifth Amendment rights squarely at issue.</u>

      The facts underlying the civil action and the government's investigation, to Skyryse's knowledge, are identical. As Moog acknowledged in a letter to the transferor court, the "ongoing federal investigation" concerns "the files taken from Moog *that are the subject of this lawsuit*" (Dkt. 222-7), and Moog has since admitted in response to the New York court's questioning that it referred the case to the government. (Zahoory Decl. Ex. C.) Since then, as the civil litigation has progressed, the government has subpoenaed virtually every piece of discovery produced by all parties. And, although Moog has failed to respond to Skyryse's discovery request for all of Moog's communications with the government, the limited discovery provided confirms Moog has kept the government informed of Moog's own investigation from the start. (*See, e.g.*, Dkt. 214-4 at 3.) The government's investigation, instigated by Moog's referral, involves "the same or closely related facts" as the present action.

      Given the overlap between the civil suit and the USAO's investigation, the impending depositions and continued discovery obligations in this case plainly implicate the Individual Defendants' Fifth Amendment rights. The Individual Defendants have already asserted the Fifth Amendment privilege in response to the subpoenas they received from the government (Dkt. 264-2 at 34:5-7) and, in this case, in connection with the electronic devices they produced to iDS. (Zahoory Decl. Ex. A; *see also* Dkt. 268 at 6-7.) Indeed, if civil discovery proceeds, and Ms. Kim or Mr. Pilkington is called for deposition, they have indicated that they will continue to invoke the Fifth Amendment and will not testify, thereby exposing them (and Skyryse) to severe and undue prejudice in the civil case. The Fifth Amendment interest is particularly strong where, as here, the Individual Defendants have not yet

testified and have therefore not waived their Fifth Amendment rights. *See Jones*, 2005 WL 1287017, at *1 ("In the current case, defendant has not submitted deposition testimony or sworn statements in any 'proceeding'; therefore, defendant retains full protection under the Fifth Amendment.").

Under such circumstances, courts have recognized that staying a civil proceeding best serves the important constitutional concerns at issue. For example, in *SEC v. Nicholas*, the court considered a motion to stay a civil enforcement action until the resolution of a pending criminal case concerning the same underlying conduct. 569 F. Supp. 2d 1065, 1067 (C.D. Cal. 2008). One defendant had already pleaded the Fifth Amendment in response to a subpoena to testify before the SEC, and represented that he would assert the privilege again when called for a civil deposition. *Id.* at 1070. Finding that "the civil and criminal cases [were] inextricably intertwined" and that allowing the civil and criminal proceedings to run in parallel would "undoubtedly implicate the Fifth Amendment rights of the parties and witnesses," the court granted a complete stay of the civil proceedings. *Id.* at 1069-70. That reasoning applies here.

2.      <u>The Individual Defendants' Fifth Amendment concerns extend to Skyryse and implicate its due process rights.</u>

The Individual Defendants are not the only ones who would be unduly prejudiced in the civil suit by their invocation of the Fifth Amendment. Skyryse would as well. Although it does not have a Fifth Amendment right against self-incrimination, the risk of prejudice to a corporation like Skyryse is substantial. This is because testimony from individuals, including Mr. Pilkington and Ms. Kim, is fundamental to Skyryse's defense, yet those witnesses undoubtedly will assert their Fifth Amendment rights as long as the criminal proceeding lasts. *See Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-cv-06932-MMC, 2019 WL 3037542, at *2 (N.D. Cal. July 11, 2019) (finding, where individual defendants in criminal action were

"likely" to be called as witnesses in parallel civil case, that "the risk of prejudice to [corporate defendants] arising from an inability to obtain testimony from individuals who have the right not to incriminate themselves is substantial"). As discussed further below, Skyryse would be unable to effectively call Mr. Pilkington and Ms. Kim as witnesses, and could also be saddled with any adverse inference drawn against the Individual Defendants in the civil action as a result of their pleading the Fifth Amendment. Because the individual defendants' Fifth Amendment interests are squarely implicated by further proceedings in this action, the likely prejudice to Skyryse's due process rights is severe. *See generally infra* at Section IV.C.

3.   The status of the government's investigation warrants a temporary stay.

That a grand jury has yet to return an indictment weighs in favor of a temporary stay. It is well established that the possibility of criminal prosecution is all that is necessary for the Fifth Amendment privilege to be invoked. *Matter of Seper*, 705 F. 2d 1499, 1501 (9th Cir. 1983). Indeed, courts regularly grant temporary stays of a civil action even when indictments have not been returned in a parallel criminal investigation. The court's decision in *De La O v. Arnold-Williams* is instructive. No. 04-cv-0192-EFS, 2005 WL 8158924 (E.D. Wash. June 21, 2005). There, defendants moved to stay a civil action in light of a government investigation concerning whether the same underlying conduct had violated federal fraud laws. *Id.* at *2. Plaintiffs opposed the stay on the grounds that "no indictments [had] been filed," but the court found that "the federal investigation is still active as the U.S. Attorney's Office sent 'grand jury letters' to two Defendants in this action" and that "a four-month stay is of sufficient length" to allow the government to proceed with the grand jury process and "discern whether indictments will be filed." *Id.* at *3, *6.

Likewise, here, the government's investigation remains active and is more mature than it was when the transferor court considered Defendants' motion to stay

six months ago. The government has subpoenaed nearly every piece of civil discovery in this case, and grand jury subpoenas were still being issued to non-parties as recently as last week. Under such circumstances, the lack of an indictment does not preclude a stay; rather, it confirms that a stay is appropriate to preserve the integrity of the proceedings while the government conducts its investigation. *See De La O*, 2005 WL 8158924, at \*6; *Wroth v. City of Rohnert Park*, No. 17-cv-05339-JST, 2018 WL 888466 (N.D. Cal. Feb. 14, 2018) (finding lack of indictment did not preclude a temporary stay because defendants "still have legitimate concerns about potential impending criminal prosecution" and temporary nature of stay would "lessen[] the prejudice to Plaintiffs").

In light of the foregoing, Skyryse respectfully requests that the Court grant a temporary stay of six months, which would protect Defendants' constitutional rights while the government proceeds with its investigation and determines whether to bring charges. A six-month stay would also prevent the Individual Defendants from being forced to plead the Fifth Amendment to avoid testifying at depositions in the civil action, and likely in connection with Moog's renewed preliminary injunction motion, which Moog has indicated it plans to file by September. (Dkt. 365.) After six months' time, the stay would expire unless a party successfully moves to renew it upon a showing of good cause (for example, if the government's investigation remains active and the Individual Defendants' and other witnesses' Fifth Amendment rights are still at issue).

## B.    A temporary stay will not unfairly prejudice Moog.

In determining whether a stay is appropriate in light of the particular circumstances, courts in the Ninth Circuit consider "the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay." *Keating*, 45 F.3d at 25. Here, Moog's conduct confirms that this factor weighs in favor of granting a stay.

Moog has, at best, minimal interest in "proceeding expeditiously with this lit-igation" at this stage, *id.*, for several reasons. First, Moog promptly received by stip-ulation the very "emergency" relief it claimed to need upon filing its lawsuit with no notice to Defendants. (Dkt. 25, 33.) Just days after Moog filed this suit, Defendants stipulated in good faith to Moog's requested emergency relief, including by agreeing to "refrain from using, accessing, disclosing, copying, or transmitting, for any pur-pose, any non-public information" belonging to Moog. (Dkt. 25.)

Second, Moog's litigation conduct over the past year underscores its lack of urgency in moving the case forward, despite what it may claim today. Moog made every argument at its disposal to delay identifying its alleged trade secrets as long as possible, until this Court ordered it to finally make that disclosure, a year after it had filed suit. Until then, Moog was content to wait as Defendants (and third parties) produced terabytes of data in discovery, not knowing what Moog would claim is, and is not, a trade secret. And, when Moog did finally provide a trade secret identi-fication, it did not come close to complying with the Court's order to define its trade secrets "with particularity," all but guaranteeing further disputes and motions over this essential aspect of any trade secret case. *Supra* at 6. Moog's long-delayed (and facially deficient) trade secret identification, combined with its willingness to take a year's worth of discovery first, betrays any sense of urgency in resolving this case.

Third, despite threatening to do so for months before two courts, Moog has yet to renew its motion for a preliminary injunction. Even as it shared with this Court its plans to file a new motion for injunctive relief, Moog betrayed its lack of urgency, asking the Court to delay scheduling a hearing on that motion for another six months. (Dkt. 365 at 3.)

Any possible prejudice to Moog if a stay is granted is minimal. Skyryse seeks a temporary, six-month stay, which will not be renewed unless good cause is shown. A temporary stay minimizes the risk that witnesses' memories might fade, which is

further mitigated by the government's active investigation (and any related proceedings), which will preserve witnesses' testimony. *See Micron Tech.*, 2019 WL 3037542, at *3 (finding "risk of fading memories" lessened where "key witnesses in the civil case are likely to be called as key witnesses in the criminal case, thereby preserving their testimony"). Moreover, there is no significant risk of documentary evidence being lost, given the parties' stipulation requiring the preservation of electronically stored information. (Dkt. 25 at ¶¶ 1-9; Dkt. 28.) Any concern that relevant evidence will be lost is also mitigated by the fact that an active criminal proceeding will "ensure the retention of important evidence and documents." *SEC v. Alexander*, No. 10-cv-04535-LHK, 2010 WL 5388000, at *4 (N.D. Cal. Dec. 22, 2010).

Finally, Moog itself has proposed staying the civil action while the government's investigation proceeds. In a draft stipulated preliminary injunction that Moog proposed to all parties on March 1, 2023, Moog seeks in part virtually the same relief it obtained on an emergency basis through the parties' earlier stipulation (Dkt. 25) and proposes that "the Parties agree to stay all discovery in the case, pending resolution of the ongoing parallel criminal proceedings." While the vagueness and over-reaching nature of that proposal, as currently written, is not acceptable to Skyryse for other reasons, Moog's willingness to stay civil proceedings on its own terms underscores the lack of prejudice it would experience from a stay.

## C. The burden on and prejudice to Skyryse would be severe absent a stay.

While the risk of prejudice to Moog resulting from a stay is minimal, Skyryse would suffer severe and undue prejudice absent a stay. Skyryse will be unable to fully and fairly defend itself in this action as long as the government's investigation remains active. Moog's complaint is centered on allegations of misconduct by the Individual Defendants when they worked at Moog. (*See, e.g.*, Dkt. 1 ¶ 172 ("Kim copied and delivered to Pilkington and Skyryse the data files that she copied from

Moog containing Moog's trade secrets and confidential and proprietary information.").) Skyryse has never wanted, needed, or tried to obtain any of Moog's alleged trade secret information from Mr. Pilkington or Ms. Kim, neither of whom worked for Skyryse for longer than six months, or from any other source. Consequently, Skyryse's defense will rely on discovery from the Individual Defendants, including their testimony and any further document productions. If Ms. Kim and Mr. Pilkington invoke their Fifth Amendment rights and do not testify or produce additional documents, as they have indicated is their intent as long as the government's investigation remains open, *supra* at 7, Skyryse will be unable to obtain crucial exculpatory discovery.

The government's investigation is likely to implicate the Fifth Amendment rights of other witnesses whose testimony would also be valuable to Skyryse's defense. Courts have found that a corporation is "greatly prejudiced in [its] ability to meaningfully defend itself in the civil matter" where it is unable to obtain testimony from current or former officers or employees who have pleaded the Fifth Amendment. *Taylor*, 2009 WL 2136986, at *3; *see also Micron Tech.*, at *2 (citing *Mr. Dee's, Inc. v. Int'l Outsourcing Servs., LLC*, No. 08-cv-457, 2008 WL 4853601, at *1 (E.D. Wis. Nov. 3, 2008)). Moog's scattershot complaint implicates numerous former Moog employees whose testimony is likely to be important to Skyryse's defense, but who also might invoke their right against self-incrimination. For example, Moog's Complaint tries to place blame on senior executives who left Moog for Skyryse (and who no longer work at Skyryse), including Gonzalo Rey and Tim Baptist, whom Moog accuses of being "well aware of the value Moog placed on its trade secrets" and of working to recruit Moog employees to join Skyryse. (Dkt. 1 ¶¶ 93-98, 170.) Skyryse's defense is likely to require their testimony given Moog's allegations about their conduct. Given the considerable overlap in issues between the civil

1    action and the government's investigation, there is a high likelihood that those indi-

2    viduals, too, may plead the Fifth Amendment to avoid providing civil discovery and

3    testimony.

4         The court's opinion in *Micron Technology, Inc. v. United Microelectronics*

5    *Corp.* is illuminating. No. 17-cv-06932-MMC, 2019 WL 3037542 (N.D. Cal. July

6    11, 2019). There, the court considered two corporate defendants' motion to stay a

7    civil action for trade secret misappropriation pending resolution of a criminal case

8    based on the same allegations. *Id.* at *1. Just as Moog's accusations against Skyryse

9    are based on the actions of Mr. Pilkington and Ms. Kim, the corporate defendants'

10   alleged wrongful acts in *Micron Technology* were coextensive with the actions of

11   individual defendants, whom the court found were likely to be called as witnesses

12   along with other "officers and employees" of the corporate defendants. *Id.* at *2. The

13   court observed that the corporate defendants "undoubtedly will need to rely on tes-

14   timony from" those individuals, "who undoubtedly will assert their respective priv-

15   ileges against self-incrimination as long as the criminal case is ongoing." *Id.* Ac-

16   cordingly, the court found that "the risk of prejudice to [the corporate defendants]

17   arising from an inability to obtain testimony from individuals who have the right not

18   to incriminate themselves is substantial." *Id.* The court also noted that without a stay,

19   the corporate defendants "would be put in the position of having to publicly dis-

20   close" in civil court filings "the basis of their respective defenses," which disclosures

21   "would likely be in excess of that to which the government would be entitled under

22   the Federal Rules of Criminal Procedure." *Id.* at *3. In light of the significant preju-

23   dice to and burden upon the corporate defendants, along with the other *Keating* fac-

24   tors, the court granted the stay. Likewise, Skyryse would suffer substantial prejudice

25   from its inability to obtain testimony and other discovery from the Individual De-

26   fendants and non-party witnesses who are likely to invoke their Fifth Amendment

27   rights while the government's investigation is ongoing.

28

Equally, if not more, prejudicial to Skyryse is the possibility that, if a stay is not granted and the Individual Defendants or other non-party witnesses invoke the Fifth Amendment, any adverse inference drawn against them in the civil case would also be imputed to Skyryse, either directly or indirectly by a jury that may struggle to disentangle the defendants at trial. In civil proceedings, unlike in a criminal case, a party's invocation of his or her Fifth Amendment rights may result in an adverse inference against that party. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008). Additionally, courts have found that any such adverse inference drawn against a party invoking the privilege could also be imputed to a co-party. *See Williams v. Kohl's Dept. Stores, Inc.*, No. 19-cv-397-JGB, 2020 WL 3882953, at *20-22 (C.D. Cal. June 16, 2020) (citing *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997)). Here, an adverse inference held against Skyryse would be exceedingly prejudicial, particularly because the Individual Defendants' invocation of the Fifth Amendment would prevent Skyryse from obtaining potential exculpatory evidence in discovery. Granting a stay of the civil proceedings is the only way to avoid such a draconian outcome.

Skyryse is likely to be greatly prejudiced in its ability to meaningfully defend itself if the civil action proceeds at this time. This factor weighs in favor of a stay.

### D.   A temporary stay would promote the efficient use of judicial resources.

Staying the civil action temporarily will conserve judicial resources and expedite resolution of the civil case when it resumes. Where discovery in a civil action is complex, heavily disputed, and likely to require substantial judicial resources, courts regularly stay those proceedings pending resolution of a parallel criminal proceeding. *See Nicholas*, 569 F. Supp. 2d at 1069 (granting stay where civil discovery would "require the devotion of substantial resources both by the parties, in reviewing documents, propounding and responding to discovery, and taking and defending

1   depositions, and by the Court in resolving the myriad of disputes that are likely to

2   arise"). Here, a stay is particularly appropriate given the complexity of discovery in

3   this action and the numerous disputes that have already arisen. (*See* Dkt. 365 (de-

4   scribing at least three fully briefed motions and ten anticipated discovery motions).)

5   Both Moog and Skyryse already have contacted Magistrate Judge Rocconi's cham-

6   bers to resolve a total of four discovery disputes, with others brewing. Resolving all

7   of these disputes will require the Court to expend substantial resources, which

8   weighs in favor of a stay pending the government's investigation.

9        As heavily contested as discovery has been to date, the parties' discovery dis-

10   putes will only proliferate as the Individual Defendants, and potentially other wit-

11   nesses, continue to assert their Fifth Amendment privileges. *See, e.g.*, *Waymo LLC*

12   *v. Uber Techs., Inc.*, No. 17-cv-00939-WHA, 2017 WL 2123560, at *5 (N.D. Cal.

13   May 15, 2017) (noting in a civil trade secret case that "[t]he history of this litigation

14   has been and continues to be wrought with contentious discovery disputes" caused

15   in part by individual defendant having "broadly asserted his Fifth Amendment priv-

16   ilege in these proceedings"). Indeed, the Individual Defendants' invocation of the

17   Fifth Amendment has already triggered discovery disputes. On July 29, 2022, the

18   Individual Defendants instructed iDS to suspend access to the twenty-three elec-

19   tronic devices they had produced, in an effort to avoid inadvertent waiver of their

20   Fifth Amendment privileges. (Dkt. 229-13.) Moog subsequently filed an emergency

21   motion to restore access to the iDS protocol, while the Individual Defendants sepa-

22   rately moved the Court to sustain their decision to claw back their devices. (Dkt.

23   228, 229.) That dispute is only an example of the types of challenges that are likely

24   to arise if the civil suit and the government's investigation continue in parallel. Stay-

25   ing the action while the investigation plays out would stave off such disputes and

26   conserve judicial resources.

27

28

1   Furthermore, a stay will ensure that the common underlying issues can be ef-

2   ficiently litigated without the risk of inconsistent outcomes. Since there is overlap

3   between the alleged conduct underlying the civil action and the government's inves-

4   tigation, issues of fact resolved in any resultant criminal proceeding may bear di-

5   rectly on this civil action. Under such circumstances, courts have found that a stay

6   of the civil case is warranted to avoid competing proceedings resulting in potentially

7   inconsistent treatment of the same issues of fact. For example, in *Nicholas*, the court

8   found the threat of inconsistent outcomes was "particularly acute . . . if the Court

9   and/or the jury is asked to resolve issues that are common between both actions."

10  569 F. Supp. 2d at 1070. Noting that "collateral estoppel in the criminal case may

11  expedite the resolution of the civil case," the court determined that "any law and

12  motion with respect to the underlying issues, conduct and charges should be litigated

13  in a single proceeding, not competing ones." *Id.* at 1070-71. Accordingly, the court

14  granted a stay of the civil action, which is the appropriate outcome here as well.

15  After the government's investigation and any related criminal proceedings

16  have been resolved, the parties will be able to litigate the civil case in a more stream-

17  lined and efficient manner. *See Jones*, 2005 WL 1287017, at *2 ("Staying the case

18  makes efficient use of judicial resources by 'insuring that common issues of fact will

19  be resolved and subsequent civil discovery will proceed unobstructed by concerns

20  regarding self-incrimination.'"); *Wroth*, 2018 WL 888466, at *3 ("The resolution of

21  the criminal matter may narrow the scope of civil discovery."). A stay is especially

22  conducive to the efficient use of judicial resources given that, despite a year tran-

23  spiring, this civil action is still in its early stages with Moog having only recently

24  attempted to identify its trade secrets, and no trial date having been set. *See Alexan-

25  der*, 2010 WL 5388000, at *5 (finding that staying "a parallel civil proceeding in its

26  early stages may prove more efficient in the long-run" because disposition of the

27

28

criminal action may "narrow the issues and streamline discovery in the civil proceeding"). Skyryse filed its Answer and counterclaims less than two months ago (Dkt. 350), Moog has yet to admit or deny the allegations in Skyryse's counterclaims, and discovery for many months has been confined in sequence and content by orders of the transferor court. Under these circumstances, justice will be best served by allowing the government's investigation to play out so that when this action does resume, it can proceed without threatening the Individual Defendants' constitutional rights and without depriving Skyryse of its ability to fairly defend itself.

Staying this action temporarily while the government's investigation proceeds will maximize judicial efficiency, ensure consistent outcomes, and expedite the resolution of the civil action when it resumes. This factor weighs in favor of a stay.

### E.   A stay would serve the interests of the government, non-party witnesses, and the industry.

The interests of third parties, including the government, would be served by a temporary stay of this action while the government investigation proceeds.

*First*, the government's interests would be served by a stay. The government "has an interest in an unimpeded criminal investigation that favors a stay." *In re Zinnel*, No. 12-cv-00249-MCE, 2013 WL 1284339, *8 (E.D. Cal. Mar. 28, 2013). While Skyryse understands that the government plans to take no formal position on this Motion, a stay of the civil action would prevent, at least temporarily, witnesses in both sets of proceedings being required to testify twice or potentially giving inconsistent testimony, either of which could unnecessarily complicate the government's investigation. Staying the civil action temporarily will allow the government to control discovery in the criminal proceeding without these complications, and will permit it sufficient time to complete the grand jury process and decide whether to seek an indictment.

*Second*, a stay would serve the interests of non-party witnesses in both the civil and the criminal proceedings. Moog has issued civil subpoenas to numerous third parties, including Hummingbird Aero, LLC and its employee Mr. Hyde, former Skyryse employees Mr. Rey and Mr. Baptist, and third-party contractor Ms. Bird. Given their alleged involvement in the conduct underlying the Complaint and the parallel government investigation, these entities and individuals are also potential witnesses in any criminal case. Their Fifth Amendment rights may therefore be implicated if the civil action is not stayed, just as the Individual Defendants' rights are. Even if their constitutional rights are not directly at issue, these individuals certainly have an interest in streamlining the proceedings and in limiting the number of times they may be called to testify. A stay of the civil action would promote these interests.

*Third*, to the extent that this case implicates the interests of competitors and other participants in the highly automated and autonomous aircraft industry, those interests will be advanced by the pending criminal investigation, no less than by the civil action. Given Moog's allegations about Defendants' purportedly unfair business practices in the "unmanned aircraft market" (Dkt. 1 ¶ 8), companies that currently compete in that market may have an interest in the resolution of Moog's claims. However, in such circumstances, at least one court has found that the interests of non-party competitors are "advanced by the pending criminal prosecution, which seeks to protect both the public's interest in protecting . . . trade secrets as well as the integrity of the [relevant] market." *Micron Tech.*, 2019 WL 3037542, at *3.

**F.      A stay would serve the public interest.**

In addition to the interests of the government and other non-parties, the interests of the public at large would be served by a stay of the civil case. Where there are parallel criminal and civil proceedings, courts generally recognize that the public has a stronger interest in the integrity and efficient resolution of the criminal matter.

1  *See Alexander*, 2010 WL 5388000, at *6 (finding "the criminal case is of primary
2  importance to the public," while the civil case "is not of an equally pressing nature");
3  *Jones*, 2005 WL 1287017, at *2 ("the public's interest in the integrity of the criminal
4  case is entitled to precedence over the civil litigant"). The civil proceeding is sec-
5  ondary in importance particularly in this case, where Moog has already received the
6  preliminary relief it claimed to need by stipulation, and copious relevant evidence
7  has been preserved. The public's interest in the integrity of the government's inves-
8  tigation and any subsequent criminal proceedings, and in safeguarding the Fifth
9  Amendment rights of the defendants, should take a higher priority over pressing the
10  civil action forward for its own sake. This factor weighs in favor of a temporary,
11  renewable stay.

12  **V.     CONCLUSION**

13  For the foregoing reasons, Skyryse respectfully requests that the Court grant
14  a temporary stay of this action for six months, without prejudice to any party seeking
15  to renew the stay if there is good cause to do so.

16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| 1 | Dated:  March 15, 2023 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Gabriel S. Gross*
    Douglas E. Lumish (SBN 183863)
    Gabriel S. Gross (SBN 254672)
    Arman Zahoory (SBN 306421)
    Ryan Banks (SBN 318171)
    Menlo Park, California 94025
    Telephone: (650) 328-4600
    Facsimile: (650) 463-2600
    Email: doug.lumish@lw.com
    gabe.gross@lw.com
    arman.zahoory@lw.com
    ryan.banks@lw.com

    Joseph H. Lee (SBN 248046)
    650 Town Center Drive, 20th Floor
    Costa Mesa, California 92626
    Telephone: (714) 540-1235
    Facsimile: (714) 755-8290
    Email: joseph.lee@lw.com

    Julianne C. Osborne (SBN 342870)
    Alexa Solimano (SBN 335740)
    505 Montgomery Street, Suite 2000
    San Francisco, California 94111
    Telephone: (415) 391-0600
    Facsimile: (415) 395-8095
    Email: julianne.osborne@lw.com
    alexa.solimano@lw.com

    Kelley M. Storey (Admitted *Pro Hac Vice*)
    555 Eleventh Street NW, Suite 1000
    Washington, D.C. 20004
    Telephone: (202) 637-2200
    Facsimile: (202) 637-2201
    Email: kelley.storey@lw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cassandra M. Baloga (Admitted *Pro Hac Vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: cassandra.baloga@lw.com

*Attorneys for Defendant and Counter-claimant Skyryse, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant and Counterclaimant Skyryse, Inc., certifies that this brief contains **6,999** words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 15, 2023                    LATHAM & WATKINS LLP
                                          By */s/ Gabriel S. Gross*
                                            Gabriel S. Gross

                                          *Attorneys for Defendant and Counter-claimant Skyryse, Inc*