1  Grant B. Gelberg (SBN 229454)
   Grant.Gelberg@halpernmay.com
2  Kevin H. Scott (SBN 274605)
   Kevin.Scott@halpernmay.com
3  Alyssa L. Titche (SBN 313296)
   Alyssa.Titche@halpernmay.com
4  Catherine Thompson (SBN 313391)
   Catherine.Thompson@halpernmay.com
5  HALPERN MAY YBARRA & GELBERG LLP
   550 South Hope Street, Suite 2330
6  Los Angeles, California 90071
   Telephone:  (213) 402-1900
7
   Attorneys for Defendant
8  MISOOK KIM

9  Rachel L. Fiset (SBN 240828)
   Rachel.Fiset@zfzlaw.com
10 Scott D. Tenley (SBN 298911)
   Scott.Tenley@zfzlaw.com
11 ZWEIBACK FISET & ZALDUENDO LLP
   315 W. 9th Street, Suite 1200
12 Los Angeles, California 90015
   Telephone:  (213) 266-5170
13
   Attorneys for Defendant
14 ROBERT ALIN PILKINGTON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>SKYRYSE, INC., et al.,<br><br>            Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**DEFENDANTS MISOOK KIM AND ALIN PILKINGTON'S NOTICE OF JOINDER AND JOINDER IN SKYRYSE, INC.'S MOTION TO STAY**<br><br>*[Declarations of Grant G. Gelberg and Rachel Fiset filed concurrently herewith]*<br><br>The Honorable George H. Wu<br><br>Hearing Date:   April 13, 2023<br>Time:           8:30 a.m.<br>Courtroom:      9D |

**TO THE COURT, ALL PARTIES, AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Misook Kim ("Ms. Kim") and Alin Pilkington ("Mr. Pilkington," collectively "Individual Defendants") hereby join Defendant Skyryse, Inc.'s ("Skyryse") Motion to Stay filed on March 15, 2023. (ECF No. 392.)

The Individiual Defendants hereby incorporate into this Joinder, by this reference, Skyryse's Motion to Stay, the complete files and records in this action, and the arguments and evidence presented at the time of hearing, and reserve the right to supplement Defendant Skyryse's Motion to Stay with facts and concerns unique to the Individual Defendants, as appropriate.

DATED: March 16, 2023            HALPERN MAY YBARRA & GELBERG LLP


By:   */s/ Grant B. Gelberg*
          GRANT B. GELBERG

Attorneys for Defendant
MISOOK KIM

DATED: March 16, 2023            ZWEIBACK, FISET & ZALDUENDO LLP


By:   */s/ Rachel L. Fiset*
          RACHEL L. FISET

Attorneys for Defendant
ALIN PILKINGTON

**ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2), I hereby attest that all signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: March 16, 2023        By:   */s/ Grant B. Gelberg*
                                        GRANT B. GELBERG

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. INTRODUCTION

Defendant Skyryse's ("Skyryse") Motion to Stay (ECF No. 392) sets out in detail the reasons why this case should be stayed pending the government's ongoing and interrelated criminal trade secrets investigation. Defendants Misook Kim ("Ms. Kim") and Robert Alin Pilkington ("Mr. Pilkington" and, collectively with Ms. Kim, the "Individual Defendants") submit this joinder to highlight the specific reasons why a stay is needed. The Individual Defendants face a Hobson's choice of whether to vigorously defend this civil action brought against them by their former employer—a large corporation with significant resources—or invoke their constitutional rights in response to an ongoing federal criminal investigation that is intertwined with this civil case. This false choice stems from Plaintiff Moog Inc.'s ("Moog") referral of this case to the U.S. Attorney's Office ("USAO") so that it could force the Individual Defendants' Fifth Amendment invocation, giving Moog an unfair and unearned tactical advantage in this case. At the same time, Moog used court processes, while this case was pending in the Western District of New York, to block the the Individual Defendant's proper Fifth Amendment assertion over the production of digital devices so that it can obtain these items and provide them to the government. This type of compelled disclosure is precisely what the Fifth Amendment prohibits. Absent a stay, the Individual Defendants' Fifth Amendment rights will be further eroded, while at the same time they will face the real threat of financial ruin because they cannot vigorously defend themselves against Moog's allegations in this action.

This danger is heightened because the government and Moog are working closely together to develop theories and obtain potential evidence. Cross-pollination of ideas, documents, and strategy abound as Moog feeds the government information it receives in civil discovery and the government then demands information from the Individual Defendants through Grand Jury subpoenas, third party subpoenas, and document preservation requests. This close coordination between Moog and the government

effectively means that the Individual Defendants must deal with the government on two fronts—one criminal and the other civil—under two different sets of discovery rules. This is unfairly prejudicial and a stay of this action is needed to protect the fundamental rights of the Individual Defendants.

**B.     FACTUAL BACKGROUND[1]**

**1.     Moog Is Feeding The Government Information To Use In Its Criminal Investigation**

The Individual Defendants are software engineers who worked for decades in the aviation industry. They are not executives, and they are not wealthy. Until Moog's dispute with Skyryse, both had sterling reputations in the industry and neither had ever been in trouble with the law. Since joining other former Moog employees at Skyryse, their lives have been turned upside down, and (due to Moog's efforts) they are now targets of a federal criminal investigation for the same conduct that is the subject of this action.

At the outset of this action in March 2022, the parties agreed to provide early discovery to Moog well in advance of the Rule 26(f) conference, which still has not taken place. (ECF No. 25.) When the Individual Defendants handed over their digital devices to a third party vendor under this protocol, they did not know that, at Moog's urging, the government had launched a federal criminal trade secrets investigation. Only weeks later, in June 2022, the Individual Defendants received Grand Jury subpoenas from the USAO. (Declaration of Grant B. Gelberg ("Gelberg Decl.") ¶ 2, Ex. 1; Declaration of Rachel Fiset ("Fiset Decl.") ¶ 3, Ex. 1.) The Individual Defendants immediately asserted their Fifth Amendment rights and sought the return of their devices from the third party vendor. (ECF Nos. 216, 229.) Its trap set, Moog pounced and moved the New York court for an order finding that the Individual Defendants had lost any Fifth Amendment rights over the devices. (ECF No. 228.)

---

[1] Skyryse's Motion to Stay provides a detailed factual and procedural background, which the Individual Defendants incorporate by reference. (ECF No. 392 at 7-13.)

Moog's strategy is problematic because Moog and the government are working hand in glove. On July 5, 2022, FBI Special Agent Robert Shaw ("SA Shaw") and Assistant United States Attorney Reema El-Amamy ("AUSA El-Amamy") told counsel for Ms. Kim that the government's criminal investigation largely tracked the allegations in Moog's civil complaint and referred counsel to that complaint for further information. (Gelberg Decl. ¶ 3; Fiset Decl. ¶ 4.) Following these discussions, the Individual Defendants invoked their respective Fifth Amendment rights in response to a Grand Jury subpoena. (*Id*.) On November 7, 2022, AUSA El-Amamy emailed counsel for Ms. Kim the following: "I've produced to you some pre-indictment discovery so that you can get a sense of the government's criminal investigation. This pre-indictment discovery, combined with the civil litigation in WDNY, should give you a good sense of the government's investigation and potential charges." (Gelberg Decl. ¶ 4, Ex. 2; Fiset Decl. ¶ 5, Ex. 3.) Further, a document provided to the Individual Defendants by the government referenced an Excel table from Moog that purported to list Moog files allegedly downloaded by Ms. Kim. (Gelberg Decl. ¶ 5; Fiset Decl. ¶ 5.)

    Moog's cooperation with the government in furtherance of the criminal investigation and the civil action is extensive. Based on files produced by Moog in civil discovery, Moog and the FBI coordinated on myriad issues including, but not limited to the status of filings in this Action, Moog's own forensic investigation of the Individual Defendants' alleged downloads, summaries of information Moog's counsel received from Defendants, and a timeline Moog created in conjunction with the drafting of the Complaint, among others. (Gelberg Decl. ¶ 6.) The FBI also sent Moog lists of questions to answer, requested information related to hard drives related to Ms. Kim, and sought to interview Moog employees. (*Id.*) These materials indicate the government is using the civil discovery in this action to obtain evidence for its criminal investigation that it would not otherwise be entitled to under Federal Rule of Criminal Procedure 16(b).

    Moreover, the government is using information gathered from the civil case for additional grand jury subpoenas. Moog, Skyryse, and the Individual Defendants (through

prior counsel) entered into a stipulation requiring that certain devices be turned over to the custody of third-party forensics firm iDiscovery Solutions ("iDS"). (*See* ECF No. 25.) Then, on or about February 27, 2023, iDS received a grand jury subpoena from the government demanding a list of the forensic images in iDS' possession. (Gelberg Decl. ¶ 7, Ex. 3.) Shortly thereafter, the government sent a request for the preservation of records to the Individual Defendants. (Gelberg Decl. ¶ 8.) The letter demanded preservation and confirmation of possession of the very same electronic devices listed in the Stipulation. (Gelberg Decl. ¶ 9; Fiset Decl. ¶ 7, Ex. 4.) In an email to counsel, the FBI agent described the preservation letter as "related to the Moog v. Skyryse suit." (Gelberg Decl. ¶ 8; Fiset Decl. ¶ 7, Ex. 4.)

**C.   ARGUMENT**

    **1.   The Individual Defendants Face Substantial Prejudice If This Action Is Not Stayed**

Based on the relationship between Moog and the government, any statement the Individual Defendants make in this case or any document produced by them will be provided to the government for use in its investigation. And as the government's investigation mirrors the civil case, the government will likely find any statements or productions made by the Individual Defendants relevant to its criminal investigation. Under the circumstances, the Individual Defendants have no choice but to assert their Fifth Amendment rights in response to any discovery requests. Doing so, however, will gut their ability to mount a vigorous defense in the civil case, which will have disastorous financial consequences for them and their families. *See Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("If the defendants are served with [discovery] in the civil case, they must decide whether to respond or to assert their rights under the fifth amendment. If they choose the former course, they risk providing the government with leads or evidence that may be used against them in the criminal case. If they choose the latter course, they greatly increase the chance that they be found liable in civil case for substantial sums of money.").

Under these circumstances, Courts have broad discretion to stay a civil action pending the outcome of criminal proceedings. *See*, *e.g.*, *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980); *see also Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995); *Brock*, 109 F.R.D. at 120-21 ("A stay of civil discovery until after criminal proceedings are complete will enable them to defend the civil case vigorously without fear of subsequent prosecution. . . . 'While a stay . . . may cause some inconvenience and delay to the [government], protection of defendant[s'] constitutional rights against self-incrimination is the more important consideration.'") (citation omitted); *see also Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998).

This is particularly so where, as here, the denial of a stay could, among other things, "'impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case.'" *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) (citation omitted). The court must make the determination whether to stay the civil action "in the light of the particular circumstances of the case." *Dresser Indus.*, 628 F.2d at 1375; *see also Keating*, 45 F.3d at 324.

Courts in the Ninth Circuit weigh six factors to determine whether a stay of a civil action in lieu of criminal proceedings is warranted: (1) "the extent to which the potential criminal defendant's Fifth Amendment rights are implicated"; (2) "the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay"; (3) "the burden which any particular aspect of the proceedings may impose on defendants"; (4) "the convenience of the court in the management of its cases, and the efficient use of judicial resources"; (5) "the interests of persons not parties to the civil litigation"; and, (6) "the interest of the public in the pending civil and criminal litigation." *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, No. CIV. 2:09-cv-0954 FCD EFB, 2009 WL 2136986, at *2 (E.D.

Cal. July 15, 2009) (granting potential criminal defendant's motion to stay) (citing *Keating*, 45 F.3d at 324-35). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993); *see also Walsh Sec.,* 7 F. Supp. 2d at 527; *Taylor, Bean & Whitaker Mortg.*, 2009 WL 2136986, at *2.

As discussed in depth in Skyryse's Motion, each of these factors supports a stay. The Individual Defendants will not repeat these arguments, but underscore for the Court how squarely their respective Fifth Amendment rights are implicated by Moog's claims. Moog instigated the criminal investigation and it is working hand-in-hand with the government by, among other things, obtaining information from Moog and then using that information to take investigative steps related to the "Moog v. Skyryse suit." (Gelberg Decl. ¶ 8; Fiset Decl. ¶ 7, Ex. 4.) Under these unusual circumstances, the Individual Defendants have no choice but to assert their constitutional rights.

Beyond the implication of their Fifth Amendment rights, the Individual Defendants are further prejudiced by fighting on two fronts—this civil action and the criminal investigation—that are aligned and cooperating with each other. Unless the case is stayed, Moog will use the Individual Defendants' exercise of their constitutional rights against them, which could leave them penniless. The Individual Defendants have been unemployed for nearly one year as a result of these proceedings. A stay will allow the Individual Defendants to use their limited resources to address the criminal investigation. Addressing the criminal investigation first will likely narrow or resolve many of the issues in dispute, which promotes efficiency for the parties and the Court.

Moog will not be prejudiced by a stay. Moog has already taken voluminous discovery and pertinent electronic devices are in the custody of iDS. Therefore, there is no risk that evidence might be lost if civil discovery is stayed. Nor can Moog realistically argue that the Indivdiual Defendants pose any risk to its business. The Individual Defendants no longer work at Skyryse and they are not competing with Moog, further reducing the risk that a stay will unfairly prejudice Moog.

The prejudice to the Individual Defendants is compounded by Moog's efforts to limit the scope of their respective Fifth Amendment invocations. (*See* ECF No. 228.) Moog's strategy in the civil litigation—to force the Individual Defendants to invoke but then attempt to vitiate that invocation in court—has potentially far reaching consequences for the the Individual Defendants, as any information the Individual Defendants are compelled to provide in this case will be handed over by Moog to the government. The result will be the government gaining access to evidence it could not obtain by subpoena or under Federal Rule of Criminal Procedure 16. Accordingly, a stay is the only means to protect the rights of the Individual Defendants.

## D.  CONCLUSION

In light of the foregoing, the Individual Defendants respectfully request that the Court grant Skyryse's motion to stay these proceedings pending the outcome of the ongoing criminal investigation.

DATED: March 16, 2023    HALPERN MAY YBARRA & GELBERG LLP

By:    */s/ Grant B. Gelberg*
          GRANT B. GELBERG

Attorneys for Defendant
MISOOK KIM

DATED: March 16, 2023    ZWEIBACK, FISET & ZALDUENDO LLP

By:    */s/ Rachel L. Fiset*
          RACHEL L. FISET

Attorneys for Defendant
ALIN PILKINGTON

## ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2), I hereby attest that all signatories listed

above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: March 16, 2023   By: _*/s/ Grant B. Gelberg*_
                            GRANT B. GELBERG