1
2
3
4
5
6
7
8
9
10
11
12
13

**LATHAM & WATKINS LLP**
Douglas E. Lumish (SBN 183863)
 doug.lumish@lw.com
Gabriel S. Gross (SBN 254672)
 gabe.gross@lw.com
Arman Zahoory (SBN 306421)
 arman.zahoory@lw.com
Ryan T. Banks (SBN 318171)
 ryan.banks@lw.com
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and*
*Counterclaimant Skyryse, Inc.*

14
15

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

16
17
18
19
20
21
22
23
24
25
26
27
28

MOOG INC.,

       Plaintiff,

       v

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and
DOES NOS. 1-50,

       Defendants.

SKYRYSE, INC.,

       Counterclaimant,

       v

MOOG INC.,

       Counterclaim-Defendant.

CASE NO. 2:22-cv-09094-GW-MAR

**DEFENDANT-**
**COUNTERCLAIMANT**
**SKYRYSE, INC.'S OPPOSITION**
**TO MOOG'S MOTION TO**
**DISMISS COUNTS 1 THROUGH**
**9**

Complaint filed: March 7, 2022
Counterclaims filed: January 30, 2023
Hearing:  April 13, 2023
Time:  8:30 a.m.
Ctrm:  9D, The Hon. George H. Wu

**REDACTED VERSION OF**
**DOCUMENT PROPOSED TO BE**
**FILED UNDER SEAL**

1
2
3

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 1

II.     LEGAL STANDARD ............................................................................ 2

III.    THE COURT SHOULD DENY MOOG'S MOTION. ....................... 2

    A.   Skyryse sufficiently alleges that Moog misappropriated Skyryse's trade secrets. ............................................................. 2

        1.   Skyryse sufficiently alleges its trade secrets. ........................... 2

        2.   Skyryse sufficiently alleges Moog's misappropriation. ........................................................... 5

    B.   Skyryse sufficiently alleges Moog breached the parties' contracts. ............................................................................. 6

        1.   The Court has personal jurisdiction over Moog. ....................... 6

        2.   Skyryse plausibly alleges Moog's breaches. ............................ 6

        3.   The forum selection provision does not require dismissal. ...................................................................... 8

    C.   Skyryse sufficiently alleges that Moog breached the implied covenant of good faith and fair dealing. ............................... 12

    D.   Skyryse sufficiently alleges that Moog breached an implied contract. ........................................................................ 16

    E.   Skyryse plausibly and with specificity alleges that Moog defrauded Skyryse. ............................................................. 18

    F.   Skyryse sufficiently alleges that Moog tortiously and intentionally interfered with Skyryse's contractual and business relationships. ......................................................... 21

    G.   Skyryse sufficiently alleges that Moog intentionally interfered with Skyryse's prospective business advantage. ....................................................................... 24

    H.   Skyryse sufficiently alleges that Moog engaged in unfair competition. ....................................................................... 26

IV.    CONCLUSION ................................................................................... 28

27
28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## CASES

4

*Allied Trend Int'l., Ltd. v. Parcel Pending, Inc.*,
   No. SACV 19-00078, 2019 WL 4137605 (C.D. Cal. June 3, 2019) ............... 17

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
   99 F. Supp. 3d 1110 (C.D. Cal. 2015)................................................................ 11

*Altman v. Liberty Equities Corp.*,
   322 F. Supp. 377 (S.D.N.Y. 1971) ..................................................................... 12

*Art Capital Group, LLC v. Carlyle Investment Management. LLC*,
   55 N.Y.S.3d 54-55 (2017) ..................................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 2

*Asics Am. Corp. v. Lutte Licensing Grp. LLC*,
   No. SACV131993JGBJPRX, 2014 WL 10538912 (C.D. Cal. Apr. 28, 2014) . 23

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013) .......................................................................................... 8, 10

*Atlantis Info. Tech., GmbH v. CA, Inc.*,
   485 F. Supp. 2d 224 (E.D.N.Y. 2007).............................................................. 14

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*,
   No. 2:17-CV-503, 2019 WL 2017541 (E.D. Va. May 7, 2019), *aff'd*, 28 F.4th
   1247 (Fed. Cir. 2022) ............................................................................................. 9

*Baymiller v. Guarantee Mut. Life Co.*,
   No. SA-CV-99-1566DOC(ANX), 2000 WL 33774562 (C.D. Cal. Aug. 3, 2000)
   .......................................................................................................................... 20

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
   No. 18-CV-00933-MMC, 2018 WL 2298500 (N.D. Cal. May 21, 2018)........... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) .................................................................................. 2

*Calif. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*,
  19-cv-02417-LHK, 2019 WL 4450842 (N.D. Cal. Sept. 17, 2019) ................. 17

*Cappello v. Walmart Inc.*,
  394 F. Supp. 3d 1015 (N.D. Cal. 2019) ............................................................ 26

*Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*,
  No. 15-CV-2926-DRH-SIL, 2016 WL 1370937 (E.D.N.Y. Apr. 6, 2016) ......... 3

*Carney v. Beracha*,
  996 F. Supp. 2d 56 (D. Conn. 2014) ................................................... 10, 11, 12

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*,
  20 Cal. 4th 163 (1999) ...................................................................................... 27

*Cent. Nat'l-Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORFF"*,
  204 F. Supp. 2d 675 (S.D.N.Y. 2002) ............................................................... 11

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
  17 N.Y.3d 269 (N.Y. App. 2011) ........................................................................ 7

*Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.*,
  No. C-12-4048-MWB, 2014 WL 3102124 (N.D. Iowa July 7, 2014) ............... 11

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ............................................................................. 20

*Damabeh v. 7-Eleven, Inc.*,
  No. 5:12-CV-1739-LHK, 2013 WL 1915867 (N.D. Cal. May 8, 2013) ........... 25

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
  893 F. Supp. 2d 395 (E.D.N.Y. 2012) ............................................................... 13

*Edwards v. Arthur Andersen LLP*,
  44 Cal. 4th 937 (2008) ....................................................................................... 27

*Enzo Biochem, Inc. v. Affymetrix, Inc.*,
  No. 04-CIV-1555-RJS, 2013 WL 6987164 (S.D.N.Y. Dec. 6, 2013) ............... 13

*Ferraro Foods, Inc. v. M/V IZZET INCEKARA*,
  No. 01-CIV-2682-RWS, 2001 WL 940562 (S.D.N.Y. Aug. 20, 2001) ....... 11, 12

*Forest Park Pictures v. Universal Television Network, Inc.*,
  683 F.3d 424 (2d Cir. 2012) ........................................................................ 17, 18

*Galvez v. Local 804 Welfare Trust Fund*,
  543 F. Supp. 316 (E.D.N.Y. 1982) ...................................................................... 21

*Garter-Bare Co. v. Munsingwear Inc.*,
  723 F.2d 707 (9th Cir. 1984) ....................................................................... 24, 26

*Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Calif., Inc.*,
  No. CV-13-0087-DOC-MLG, 2013 WL 1518240 (C.D. Cal. Apr. 10, 2013) .. 17

*Gemsa Enters., LLC v. Pretium Packaging, LLC*,
  No. SACV-21-844-JVS-JDEX, 2021 WL 4551200 (C.D. Cal. July 27, 2021) . 22

*Genasys Inc. v. Vector Acoustics, LLC*,
  No. 22-CV-152-TWR-BLM, 2022 WL 16577872 (S.D. Cal. Nov. 1, 2022) ...... 4

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999) .............................................................. 21

*Gonzales v. City of Los Angeles*,
  No. 2:20-CV-03519-JGB-MAA, 2022 WL 3573915 (C.D. Cal. July 12, 2022),
  *report and recommendation adopted*, No. 2:20-CV-03519-JGB-MAA, 2022
  WL 4042576 (C.D. Cal. Aug. 31, 2022) ....................................................... 14, 16

*Guz v. Bechtel Nat. Inc.*,
  24 Cal. 4th 317 (2000) ......................................................................................... 15

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ............................................................................... 6

*Horwitt v. Sarroff*,
  No. 3:17-CV-1902-VAB, 2019 WL 13124295 (D. Conn. May 10, 2019) .. 11, 12

*Indigo Group USA Inc. v. Polo Ralph Lauren Corp.*,
  No. 2:11-CV-05883-JHN-CW, 2011 WL 13128301 (C.D. Cal. Oct. 25, 2011)
  ............................................................................................................................. 21

*Ingels v. Westwood One Broadcasting Services, Inc.*,
  129 Cal. App. 4th 1050 (2005) ........................................................................... 26

*Intelligen Power Sys., LLC v. dVentus Tech., LLC*,
  2015 WL 3490256 (S.D.N.Y. Jun. 2, 2015) .......................................................... 7

*Invisible Dot, Inc. v. DeDecker*,
   No. 2:18-CV-08168-RGK-RAO, 2019 WL 1718621 (C.D. Cal. Feb. 6, 2019)..4

*Junction Solutions, LLC v. MBS DEV, Inc.*,
   No. 06-C-1632, 2007 WL 114306 (N.D. Ill. Jan. 9, 2007) ................................. 9

*Keyssa, Inc. v. Essential Prod., Inc.*,
   No. 17-CV-05908-HSG, 2019 WL 176790 (N.D. Cal. Jan. 11, 2019)............... 5

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (2018) ...................................................................................... 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 .......................................................................................... 25

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
   44 Cal. App. 4th 194 (1996)......................................................................... 17

*Lever Your Bus. Inc. v. Sacred Hoops & Hardwood, Inc.*,
   No. 519CV01530CASKKX, 2020 WL 2465658 (C.D. Cal. May 11, 2020) .... 17

*Lockwood Corp. v. Black*,
   501 F. Supp. 261 (N.D. Tex. 1980) ............................................................... 9

*Masimo Corp. v. Apple Inc.*,
   No. SACV20-48-JVS-JDEX, 2020 WL 4037213 (C.D. Cal. June 25, 2020) ..... 4

*Mewawalla v. Middleman*,
   601 F. Supp. 3d 574 (N.D. Cal. 2022) ......................................................... 19

*Mirmehdi v. United States*,
   689 F.3d 975 (9th Cir. 2012) ...................................................................... 28

*Moore v. Apple*,
   73 F. Supp. 3d 1191 (N.D. Cal. 2014)......................................................... 22

*Moore v. Mars Petcare U.S., Inc.*
   966 F.3d 1007 (9th Cir. 2020)..................................................................... 28

*Moses v. Apple Hospitality Reit Inc.*,
   No. 14-CV-3131 DLI SMG, 2015 WL 1014327 (E.D.N.Y. Mar. 9, 2015)....... 18

*Navigation Hldgs., LLC v. Molavi*,
   445 F. Supp. 3d 69 (N.D. Cal. 2020)............................................................. 4

*Nestle USA, Inc. v. Best Foods LLC*,
　　562 F. Supp. 3d 626 (C.D. Cal. Dec. 20, 2021) .................................................. 23

*nKlosures, Inc. v. Avalon Lodging LLC*,
　　No. CV-22-00459-RSWL-JDEX, 2022 WL 17093927 (C.D. Cal. Nov. 17,
　　2022)
　　　..................................................................................................................... 18

*Nordstrom, Inc. v. Republic of Frends, Inc.*,
　　No. 17-CV-0444-w-MDD, 2017 WL 6059158 (S.D. Cal. Dec. 6, 2017).......... 19

*O'Hearn v. Bodyonics, Ltd.*,
　　22 F. Supp. 2d 7 (E.D.N.Y. 1998)...................................................................... 14

*P&G Auditors & Consultants, LLC v. Mega International Commercial Bank Co.,
Ltd.*,
　　No. 18-CV-9232-JPO, 2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019).. 12, 13, 16

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.*,
　　50 Cal. 3d 1118 (1990).................................................................................... 23

*Penrose Computer Marketgroup, Inc. v. Camin*,
　　682 F. Supp. 2d 202 (N.D.N.Y. 2010) ............................................................ 7, 8

*Phillips v. Audio Active Ltd.*,
　　494 F.3d 378 (2d Cir. 2007) .......................................................................... 6, 11

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
　　460 F. Supp. 3d 481 (S.D.N.Y. 2020)....................................................... 15, 16

*Piper Aircraft Co. v. Reyno*,
　　454 U.S. 235 (1981) ........................................................................................ 10

*Precision Concepts, Inc. v. Bonsanti*,
　　569 N.Y.S.2d 124 (1991) ................................................................................... 8

*Primary Color Sys. Corp. v. Agfa Corp.*,
　　No. SACV-17-00761-JVS-DFMX, 2017 WL 8223379 (C.D. Cal. June 7, 2017)
　　　....................................................................................................................... 8

*Quadrant Structured Prods. Co. v. Vertin*,
　　23 N.Y.3d 549 (2014)......................................................................................... 9

*Rezner v. Bayerishe Hypo-Und Vereinsbank AG*,
　　No. C 06-02064 JW, 2011 WL 6329854 (N.D. Cal. Nov. 8, 2011) ................. 27

*Robinson & Wilson, Inc. v. Stone*,
    35 Cal. App. 3d 396 (Ct. App. 1973) ........................................................... 18, 19

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012) ............................................................................. 16

*SE. Power Grp., Inc. v. Vision 33, Inc.*,
    855 Fed. App'x 531 (11th Cir. 2021) ................................................................. 12

*Shroyer v. New Cingular Wireless Servs.*,
    622 F.3d 1035 (9th Cir. 2010) ............................................................................. 2

*SIC Metals, Inc. v. Hyundai Steel Co.*,
    No. SACV 18-00912-CPC-PLAx, 2019 WL 1883901 (C.D. Cal. Jan. 18, 2019)
    ............................................................................................................................ 23

*Space Data Corp. v. X, et al.*,
    No. 16-CV-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017).............. 5

*SuccessWare, Inc. v. ServiceTitan, Inc.*,
    No. CV-20-5179-DSF-PVCx, 2020 WL 12967998 (C.D. Cal. Sept. 10, 2020)
    ...................................................................................................................... 21, 24

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
    2 Cal. App. 4th 153 (1991) ................................................................................ 19

*Teledyne Risi, Inc. v. Martin-Baker Aircraft Co. Ltd.*,
    No. CV-15-07936-SJO-GJSX, 2016 WL 8857029 (C.D. Cal. Feb. 2, 2016)
    ................................................................................................................ 22, 25, 26

*Test-Rite Products Corp. v. Puma Indus. Co. Ltd.*,
    2015 WL 13919191 (C.D. Cal. Dec. 14, 2015) ................................................. 26

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
    487 F.3d 89 (2d Cir. 2007) ........................................................................... 16, 20

*TSI USA, LLC v. Uber Techs., Inc.*,
    No. 3:16-CV-2177-L, 2017 WL 106835 (N.D. Tex. Jan. 11, 2017), *aff'd*, No.
    3:16-CV-2177-L, 2017 WL 3209399 (N.D. Tex. June 19, 2017) ....................... 9

*UMG Recordings, Inc. v. Global Eagle Ent.*,
    No. cv-14-3466-MMM-JPRx, 2015 WL 12746208 (C.D. Cal. Oct. 30, 2015)
    ............................................................................................................................ 22

*Venkatraman v. Bank of N.Y. Mellon*,
   No. 19-CV-01386-LHK, 2019 WL 3037592 (N.D. Cal. July 11, 2019) ........... 13

*Vess v. Ciba-Geigy Corporation*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................. 20

*whiteCryption Corp. v. Arxan Tech, Inc.*,
   2016 WL 3275944 (N.D. Cal. Jun. 15, 2016) .................................... 21

*Whiteslate, LLP v. Dahlin*,
   No. 20-CV-1782-W-BGS, 2021 WL 2826088 (S.D. Cal. July 7, 2021) ............ 4

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................. 28

*Yeiser Rsch. & Dev., LLC v. Teknor Apex Co.*,
   No. 17-CV-1290-BAS-MSB, 2019 WL 2177658 (S.D. Cal. May 20, 2019) ...... 3

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................. 23

## I.      INTRODUCTION

Skyryse has brought nine distinct counterclaims against Moog, supported by plausible, detailed factual allegations. Skyryse alleges, for example, that Moog exploited a trusted business partnership to acquire Skyryse's most sensitive information; breached its confidentiality duties and stole Skyryse's trade secrets; defrauded Skyryse so it could abandon it as a partner; and used Skyryse's confidential information to unfairly compete against it. Moog's kitchen-sink motion to dismiss all nine counterclaims suffers from three fundamental flaws and must be denied.

First, from its opening page Moog prematurely tries to litigate factual disputes on their merits. Moog wrongly decries Skyryse's allegations as "false" and "spin," submits over a dozen new exhibits, and provides its own "background" and version of events that, according to Moog, "tells the true story." Skyryse rejects Moog's self-serving view of the facts, but those disputes are for trial. In this posture, the Court accepts Skyryse's allegations as true and draws all reasonable inferences in its favor. Moog's hyper-partisan, contrary view of the facts is not grounds for dismissal.

Second, Moog repeatedly fails to engage with the specific, well-pleaded facts laid out in Skyryse's counterclaims. Moog instead argues in cursory fashion that Skyryse has not pleaded "any facts" to support its claims, largely ignoring thirty pages of plausible factual averments that demonstrate the opposite.

Third, Moog gets the law wrong. It nowhere mentions *Twombly* or *Iqbal* or their progeny, establishing the now well-settled principle that a pleading that states a plausible claim for relief will overcome a motion to dismiss. Moog ignores this basic pleading standard because it knows Skyryse has easily met it. Moog also is frequently mistaken on the law, for example, confusing its own unmet discovery obligations with pleading requirements, and ignoring if not misrepresenting the case law it relies on, which often undermines its arguments. Respectfully, the Court should deny Moog's motion in full.

1

## II.     LEGAL STANDARD

On a motion to dismiss, the Court accepts allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).[1] Dismissal is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The complaint need only contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[D]etailed factual allegations" are not necessary and "a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-799 (2009).

## III.    THE COURT SHOULD DENY MOOG'S MOTION.

### A.     Skyryse sufficiently alleges that Moog misappropriated Skyryse's trade secrets.

Moog ignores Skyryse's plausible, factually supported allegations and argues that Skyryse's fourth counterclaim should be dismissed because Skyryse purportedly failed to identify its trade secrets or plead facts "showing when and how Moog misappropriated" them. (Mot. at 27-30.) Moog is wrong on the facts and the law.

#### 1.     Skyryse sufficiently alleges its trade secrets.

Skyryse's counterclaims describe in ample factual detail examples of trade secrets Moog misappropriated, after Skyryse had confidentially entrusted Moog with them. These include:

- Skyryse's proprietary, confidential flight control technology that allows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Counter-claims, ¶¶ 40-41, 109-112)

---

[1] Unless otherwise noted, emphasis has been added and internal quotation marks and citations omitted.

- Skyryse's proprietary, confidential flight control technology ███████ ████████████████████████████████████████████. (*Id.*, ¶ 40-41, 45.)

- █████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id.*, ¶¶ 40, 42-43.)

- Skyryse's proprietary, confidential development plan █████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████ (*Id.*, ¶¶ 40-43.)

- Skyryse's proprietary, confidential "Master Plan" to develop a vehicle-agnostic system by using ████████████████████████████████████. (*Id.*, ¶¶ 40, 79.)

(*See also* Counterclaims, ¶¶ 40-45, 79, 109-112.)

This is more than sufficient to allege Skyryse's trade secrets. As Moog admits, "specificity as to the precise trade secrets misappropriated is not required" in a pleading. (*See* Dkt. 180 at 11, citing *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-CV-2926-DRH-SIL, 2016 WL 1370937, at *3 (E.D.N.Y. Apr. 6, 2016) (holding that "claim that plaintiff's proprietary program 'enhanced' fraud detection, enabled 'customization and automation of the claims management process,' monitored employee efficiency and detected fraudulent prescriptions was sufficient.").) At the pleading stage, the Defend Trade Secrets Act does not require "a plaintiff to first disclose trade secrets before being able to receive discovery from the defendant." *Yeiser Rsch. & Dev., LLC v. Teknor Apex Co.*, No. 17-CV-1290-BAS-MSB, 2019 WL 2177658, at *4 (S.D. Cal. May 20, 2019).

Moog ignores the law and never engages with the facts above, and instead complains that Skyryse has long objected "that Moog's trade secret claims failed to satisfy the particularity requirement." (Mot. at 29.) Moog confuses its own unfulfilled discovery obligations with pleading standards. A year into this lawsuit, Moog

still has failed to comply with a court order requiring it to identify its own trade secrets with particularity *in response to an interrogatory*.[2] (Dkt. 205.) But Moog's discovery failures have nothing to do with the sufficiency of Skyryse's pleading.

Moog relies on *Navigation Holdings*, but that court rejected a similar argument to Moog's, saying the law does not require plaintiffs to "distinguish the trade secrets they allege were misappropriated from the more nebulous larger bucket of confidential information" in their pleadings. *Navigation Hldgs., LLC v. Molavi*, 445 F. Supp. 3d 69, 75-76 (N.D. Cal. 2020). Instead, the plaintiffs sufficiently alleged "two categories of trade secrets" in their pleading: a set of "client information" and "a specialized process for anodizing unfinished alloy tubes." *Id.* at 76. Skyryse has described its trade secrets in more detail, and not in "broad and conclusory terms." *Id.*

The other cases Moog cites are distinguishable. Each violated the rule against using mere "catchall language" to allege trade secrets unlimited in scope—unlike Skyryse's allegations. *Supra* at 2-3; *see Masimo Corp. v. Apple Inc.*, No. SACV20-48-JVS-JDEX, 2020 WL 4037213, at *4 (C.D. Cal. June 25, 2020) ("Although the plaintiff need not define every minute detail, '[t]he Ninth Circuit has rejected the use of 'catchall' language"); *Invisible Dot, Inc. v. DeDecker*, No. 2:18-CV-08168-RGK-RAO, 2019 WL 1718621, at *6 (C.D. Cal. Feb. 6, 2019) (dismissing claim where alleged trade secrets were "without limitation"); *Whiteslate, LLP v. Dahlin*, No. 20-CV-1782-W-BGS, 2021 WL 2826088, at *6 (S.D. Cal. July 7, 2021) (finding trade secret allegations did "not constitute more than 'catchall phrases'"); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (dismissing claim where trade secrets were defined categorically using overly broad phrases such as "design review templates" and "source code files"); *Genasys Inc. v. Vector Acoustics, LLC*, No. 22-CV-152-TWR-

---

[2] Skyryse separately has raised this issue with Magistrate Rocconi.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

SKYRYSE'S OPPOSITION TO
MOOG'S MOTION TO DISMISS

1  BLM, 2022 WL 16577872, at *10 (S.D. Cal. Nov. 1, 2022) (dismissing claim where

2  "Plaintiff relies on conclusory buzzwords pulled from CUTSA and DTSA").

3                      2.      **Skyryse sufficiently alleges Moog's misappropriation.**

4        Skyryse makes plausible factual allegations describing Moog's misappropri-

5  ation, even identifying Moog documents reflecting it. (*See, e.g.*, Counter-

6  claims, ¶¶ 75-80, 108-118.) Yet Moog claims that "Skyryse does not allege any facts

7  describing what trade secrets Moog misappropriated, who was involved in the mis-

8  appropriation, and how they were used at Moog." (Mot. at 30.) Moog is wrong.

9        First, Skyryse alleges specific facts about its trade secrets as described above.

10 Skyryse also alleges that it shared its confidential information with Moog, including

11 during meetings at Skyryse's headquarters where Moog personnel inspected

12 Skyryse's aircraft. (*Id.*, ¶ 40.) After obtaining Skyryse's confidential information

13 and business strategies, Moog used false pretenses to abandon Skyryse, put an end

14 to their collaboration, and set out to unfairly compete directly against Skyryse with

15 copycat technologies. (*Id.*, ¶ 2.) Moog's own documents show the very secrets that

16 Skyryse had shared with Moog in confidence regarding certification plans.

17 (*Id.*, ¶¶ 75-79.)

18       These detailed factual allegations are more than sufficient.[3] *Keyssa, Inc. v.*

19 *Essential Prod., Inc.*, No. 17-CV-05908-HSG, 2019 WL 176790, at *3 (N.D. Cal.

20 Jan. 11, 2019) (denying motion to dismiss where complaint identified "various mar-

21 keting materials for the products that highlight the allegedly-misappropriated tech-

22 nology"). Moog's reliance on *Space Data Corp. v. X*, *et al*. is misplaced because

23 there plaintiff's "conclusory assertions" were "not supported by adequate factual al-

24 legations." No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb.

25 16, 2017).

26

27 [3] Moog itself argued that as plaintiff, it was "not required to allege exactly how

28 Skyryse misused Moog's trade secret" at the pleading stage, and now tries to hold
Skyryse to a different standard. (*See* Dkt. 61 at 8.)

**B.**   **Skyryse sufficiently alleges Moog breached the parties' contracts.**

1.   **The Court has personal jurisdiction over Moog.**

Skyryse alleges sufficient facts supporting personal jurisdiction over Moog. Moog employs hundreds of people in Torrance and entered several contracts with the El Segundo-based Skyryse. (Counterclaims, ¶¶ 5, 9-10, 25-27, 31.) Jurisdiction is established "by virtue of Moog's transacting and doing business in the State of California and this District, and committing tortious and unlawful acts and contractual breaches" in this state and district. (*Id.*, ¶ 9.) *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).

Moog does not dispute any of this. Instead, Moog argues "this Court lacks jurisdiction and venue to adjudicate" Skyryse's breach of contract counterclaim based solely on a forum selection provision in the Terms & Conditions (T&C) of one contract between the parties. (Mot. at 4, 32.) But Moog ignores black-letter law (including its own cited caselaw) that parties cannot deprive a court of personal jurisdiction through contract. (*See id.*, at 31 citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) (explaining that a "jurisdiction-conferring clause … does not deprive" a party "of the right to sue in another [forum] having personal jurisdiction over the defendant").) The Court should reject Moog's jurisdictional challenge.

2.   **Skyryse plausibly alleges Moog's breaches.**

Moog ignores Skyryse's detailed allegations to claim that Skyryse has not alleged any facts showing Moog's breach (Mot. at 32). Skyryse alleges the parties entered into at least two NDAs "in order to protect Skyryse's confidential and proprietary information" (Counterclaims, ¶ 25), and that those NDAs restricted Moog's ability to use or disclose Skyryse's "broadly defined 'Proprietary Information." (*Id.*, ¶¶ 25-27.) Moog and Skyryse also entered into an SOW under which Moog agreed to deliver hardware to Skyryse (*id.*, ¶ 31-34) and terms and conditions with additional restrictions on the use of Skyryse's "Foreground IP." (*Id.*, ¶ 35-36.)

1  Skyryse alleges that Moog breached its obligations, including by using Skyryse's

2  confidential and Proprietary Information for its own future business plans

3  (*id.*, ¶¶ 72-80), and by failing to ███████████████████████,

4  even after demanding and receiving payment for a significant portion of the work.

5  (*Id.*, ¶¶ 2, 57.) Skyryse's allegations state a valid breach claim. *See, e.g., Penrose*

6  *Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 212-13 (N.D.N.Y.

7  2010) (upholding breach claim where plaintiff generally alleged "that [defendant]

8  breached the non-disclosure agreement" when he "utilized the highly confidential

9  and trade secret information"); *Intelligen Power Sys., LLC v. dVentus Tech., LLC*,

10  2015 WL 3490256, at *4-5 (S.D.N.Y. Jun. 2, 2015) (upholding breach claim where

11  plaintiff performed by "paying its deposit" and defendant failed "to deliver the prod-

12  uct as promised").

13  　　　　Ignoring all this, Moog argues that Skyryse purportedly (1) pleaded no facts

14  that Moog improperly used confidential information; (2) failed to identify any trade

15  secret or confidential information Moog misappropriated; and (3) "cancelled

16  SOW1" so "Moog was thereby released of any obligation." (Mot at 32.) These ar-

17  guments lack merit.

18  　　　　Skyryse alleges in detail that Moog's internal documents reflect that it used

19  Skyryse's confidential information for improper purposes. (*Id.*, ¶¶ 75-79.) As just

20  one example, this confidential information includes Skyryse's "Foreground IP" re-

21  lating to Skyryse's confidential certification plans. (*Id.*, ¶ 80; *see also, e.g., id.*,

22  ¶¶ 75-79, 109.) And, Moog's claim that it was "released of any obligation for all the

23  deliverables under SOW1" (Mot. at 32) ignores Skyryse's allegation that *Moog de-*

24  *frauded Skyryse* to induce it to "cancel" the SOW (Counterclaims, ¶¶ 53-62), which

25  renders any such release invalid. *Centro Empresarial Cempresa S.A. v. Am. Movil,*

26  *S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (N.Y. App. 2011) (finding release invalid when

27  based on fraud).

28

1  Moog's authority is inapposite. *Precision Concepts, Inc. v. Bonsanti* is irrele-
2  vant because it did not involve a claim for breach of contract. 569 N.Y.S.2d 124,
3  125-27 (1991). *Art Capital Group, LLC v. Carlyle Investment Management. LLC* is
4  also inapplicable because plaintiff failed to "identify what confidential information
5  was allegedly misused," and because the conduct underlying the claim was permit-
6  ted under the parties' agreement. 55 N.Y.S.3d 54-55 (2017). Skyryse, by contrast,
7  alleges in detail the confidential information divulged to Moog (Counterclaims, ¶¶
8  41-46) and how Moog's development plans reflect its unauthorized use of Skyryse's
9  confidential information. (*Id.*, ¶¶ 72-80); *Penrose*, 682 F. Supp. at 212-13.

10  ### 3.    The forum selection provision does not require dismissal.

11  Moog separately moves to dismiss Skyryse's breach of contract claim under
12  Rule 12(b)(3) for improper venue. Moog's motion must be denied. To begin, the
13  existence of a forum selection clause is irrelevant to the Rule 12(b)(3) analysis,
14  which considers only whether venue is proper under the relevant statutes. *See Atl.*
15  *Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 55-60 (2013)
16  ("If venue is proper under federal venue rules, it does not matter for the purpose of
17  Rule 12(b)(3) whether the forum-selection clause points to a [different] forum.").
18  This alone is sufficient basis to deny Moog's motion. *Primary Color Sys. Corp. v.*
19  *Agfa Corp.*, No. SACV-17-00761-JVS-DFMX, 2017 WL 8223379, at *2 (C.D. Cal.
20  June 7, 2017) (denying 12(b)(3) motion to dismiss). To the extent the Court finds
21  Moog has properly raised venue arguments under Section 1404(a)—which it has
22  not—Moog's motion still must be denied for at least three reasons.

23  ### a.    The forum selection clause is inoperative.

24  First, the forum selection clause is inoperative because it did not survive ter-
25  mination. When the parties intended a provision to survive termination, they in-
26  cluded language saying so. For example, Section 23 of the T&C, on the use of tech-
27  nical information, states that "*this clause shall survive* the expiration, completion, or

28

termination of this Agreement"; Section 32 identifies payment obligations that survive termination; and Section 43 states that its non-competition restrictions survive past the effective period. (Ex. D §§ 23, 32, 43.) The parties chose to omit similar language from the forum selection clause, which thus did not survive the contract's termination. *Quadrant Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549, 560 (2014) (explaining where "parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission"). It would be "difficult to accept the proposition that legal professionals negotiating what clauses would survive a contract's termination would go through the work of analyzing the contract for terms that they intended to survive and omit the choice of forum clause, unless they did not intend that it survive." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-CV-503, 2019 WL 2017541, at *6 (E.D. Va. May 7, 2019), *aff'd*, 28 F.4th 1247 (Fed. Cir. 2022). Numerous courts facing similar facts about expired forum selection clauses reached the same conclusion.[4] The forum selection clause is no longer in effect.

### b. Enforcing the forum selection clause would be unreasonable.

Second, courts routinely decline to enforce forum selection clauses in similar circumstances where doing so would be contrary to public interest in factors such as

---

[4] S*ee, e.g.*, *TSI USA, LLC v. Uber Techs., Inc.*, No. 3:16-CV-2177-L, 2017 WL 106835, at *5 (N.D. Tex. Jan. 11, 2017), *aff'd*, No. 3:16-CV-2177-L, 2017 WL 3209399 (N.D. Tex. June 19, 2017) ("omission of the Forum-Selection Clause from the Survival Clause therefore suggests that the parties did not intend for the Forum-Selection Clause to survive termination"); *Junction Solutions, LLC v. MBS DEV, Inc.*, No. 06-C-1632, 2007 WL 114306, at *4-5 (N.D. Ill. Jan. 9, 2007) (finding forum-selection clause did not survive termination where omitted from survival clause); *Lockwood Corp. v. Black*, 501 F. Supp. 261, 264 (N.D. Tex. 1980) (finding forum-selection clause terminated when contract was cancelled).

minimizing court congestion, having localized disputes decided at home, and judicial economy. *See, e.g.*, *Atl. Marine*, 571 U.S. at 63 n.6; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981). Applying these concepts, forum selection clauses that lead to inefficient, non-localized, piecemeal litigation should not be enforced. Moog and Skyryse collectively have asserted seventeen claims against one another, many of them arising out of the same business relationship and agreements. Skyryse alleges Moog breached several contracts, only one of which contains a forum selection clause. The events underlying Skyryse's claims occurred in this district, and Moog's claims against Skyryse also arose in this district. (*See* Dkt. 297 at 26-27 (noting that the conduct at the "heart of many of Moog's claims occurred in California, where all the defendants reside").) It would be unreasonable and inefficient to enforce a forum selection clause to sever two of fifteen claims and transfer them back to New York.

Moog's own conduct confirms that it would be unreasonable to resolve some of the parties' claims in New York and others here. In opposing Defendants' motion to transfer, Moog filed six opposition briefs and presented arguments at two hearings. (Dkts. 62, 63, 133, 239, 251, 270, 271, 294.) In these extensive proceedings *Moog never invoked the forum selection clause* to try to keep any claims in New York.[5] If the forum selection clause had the power Moog now contends, one would have expected Moog to say so in its oppositions to the transfer motion.

No authority requires the Court to sever and transfer just two of Skyryse's claims because of a forum selection clause. For example, in *Carney v. Beracha*, the court explained that "in order for a forum selection clause to be sufficient grounds to grant a motion to dismiss, it must be mandatory and cover *all claims* involved in

---

[5] Moog of course knew about the T&C's forum selection clause, having invoked that contract in its complaint and claimed that Skyryse breached a contract incorporated by it. (Complaint, ¶¶ 74, 224-30, Ex. F.)

the dispute," unlike here where Skyryse alleges breaches of other contracts and several tort claims. 996 F. Supp. 2d 56, 71 (D. Conn. 2014). The *Carney* court denied dismissal because a number of the "transactions at issue" were not covered by the forum selection clause and enforcing it would have been "unreasonable, because it would require piecemeal litigation in multiple fora and, in some cases, might require multiple courts to adjudicate claims covering only portions of each transaction." *Id.*; *see also Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.*, No. C-12-4048-MWB, 2014 WL 3102124 at *3 (N.D. Iowa July 7, 2014) (denying transfer because it would be "inappropriate to require 'piecemeal' resolution of CVL's claims against AudioNow in two fora"); *Horwitt v. Sarroff*, No. 3:17-CV-1902-VAB, 2019 WL 13124295, at *13-14 (D. Conn. May 10, 2019) (denying transfer because severing related claims would be unreasonable).

Moog relies heavily on *Phillips*, 494 F.3d at 383, but ignores that the court there stated that the presumption of enforcing a forum selection clause is "rebutted" by a party "making a sufficiently strong showing that 'enforcement would be unreasonable or unjust," as Skyryse has done. *Id.* at 383-84. *Central National-Gottesman* is also of no use to Moog because that court agreed that the plaintiff showed "that the forum selection clause in the bill of lading is unreasonable." *Cent. Nat'l-Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORFF"*, 204 F. Supp. 2d 675, 683-84 (S.D.N.Y. 2002). Moog's reliance on *Almont Ambulatory Surgery* is also misplaced because the court there too declined to enforce the mandatory forum selection clause, as should the Court here. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1162-1165 (C.D. Cal. 2015).

### c.   **Moog waived the forum selection clause.**

Third, Moog waived any right it might have had under the forum selection clause by taking "actions that are inconsistent with it." *Ferraro Foods, Inc. v. M/V IZZET INCEKARA*, No. 01-CIV-2682-RWS, 2001 WL 940562, at *3 (S.D.N.Y. Aug. 20, 2001). In particular, when a party fails "to raise a venue objection within

the context of a section 1404(a) motion," as Moog failed to do in opposing Skyryse's transfer motion, that failure "constitutes waiver of that particular objection." *Altman v. Liberty Equities Corp.*, 322 F. Supp. 377, 379 (S.D.N.Y. 1971).

As mentioned above, the parties spent nearly nine months litigating a transfer motion relating to Moog's claims arising out of *the same contracts* and same business relationship at issue in Skyryse's counterclaims. Not once did Moog argue that the forum selection clause required any of its claims to remain in New York. In fact, Moog conceded that "Moog could have filed" its claims for breach of contract "in the Central District of California." (Dkt. 62 at 9, 25.) Moog cannot now selectively enforce that same provision against Skyryse. *See, e.g.*, *Horwitt*, 2019 WL 13124295, at *13-14; *Carney*, 996 F. Supp. 2d at 71; *Ferraro Foods, Inc.*, 2001 WL 940562, at *3; *SE. Power Grp., Inc. v. Vision 33, Inc.*, 855 Fed. App'x 531, 535-36 (11th Cir. 2021).

### C.   Skyryse sufficiently alleges that Moog breached the implied covenant of good faith and fair dealing.

Skyryse alleges in its second counterclaim that Moog deprived Skyryse of its expected benefits under their agreements, including by inducing Skyryse to end part of their relationship under false pretenses and then providing Skyryse with a sham quote for subsequent work that Moog knew was unreasonable and intended Skyryse to reject. (Counterclaims, ¶ 99.) Moog also surreptitiously purchased Skyryse's competitor Genesys to sidestep its non-compete obligations, and used Skyryse's sensitive information to secretly work with Genesys to unfairly compete with Skyryse. (*Id.*, ¶¶ 73-77.) These allegations are sufficient to state an implied covenant claim.

For example, in *P&G Auditors & Consultants, LLC v. Mega International Commercial Bank Co., Ltd.*, the court upheld an implied covenant claim based on highly similar factual allegations:

> [The] complaint alleges breaches based on (a) improperly purporting to terminate the Agreement, thereby depriving P&G of its expected benefit of the bargain; (b) obtaining P&G's most sensitive items under false pretenses and then secretly sharing [the] same with P&G's competitor Navigant; (c) surreptitiously working behind P&G's back with its rival to subvert the contract and blame P&G without basis; and (d) intentionally acting to cost P&G business with other clients.

No. 18-CV-9232-JPO, 2019 WL 4805862, at *6 (S.D.N.Y. Sept. 30, 2019);[6] *see also Enzo Biochem, Inc. v. Affymetrix, Inc*., No. 04-CIV-1555-RJS, 2013 WL 6987164, at *7 (S.D.N.Y. Dec. 6, 2013) (denying summary judgment where plaintiff alleged that defendant provided "artificially high sales forecasts"); *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 409-10 (E.D.N.Y. 2012) (upholding implied covenant claim where "defendant, 'for [its] own self-interested reasons,' offers a competing program directly to the retailers").

Moog raises a number of meritless arguments in response. Moog first argues that Skyryse's claim "sounds in tort" because it "is not tied to any particular contractual provision," and is therefore is precluded by the two-year statute of limitation. (Mot. at 33.) But Skyryse alleges that Moog deprived it of the benefits of the parties' agreement, which means the claim arises in contract, and the statute of limitations is four years. *Venkatraman v. Bank of N.Y. Mellon*, No. 19-CV-01386-LHK, 2019 WL 3037592, at *7 (N.D. Cal. July 11, 2019). Skyryse need not identify a particular contractual provision that was breached to state an implied covenant claim that sounds in contract. *Dorset Indus.*, 893 F. Supp. 2d at 407 ("New York does not require that a breach of the duty of good faith and fair dealing be tied to a specific contractual provision."). And in any event, to the extent Skyryse's claim sounds in tort, the two-year statute of limitations was tolled when Moog filed its Complaint

---

[6] Although the *P&G* court dismissed the improper termination allegation as duplicative of plaintiff's breach claim, the allegations underlying Skyryse's counterclaim are distinguishable because, unlike the defendant in *P&G*, Moog did not have a right to terminate the T&C. (Counterclaim, ¶ 49.)

1  and therefore provides no basis for dismissal. *See Gonzales v. City of L.A.*, No. 2:20-

2  CV-03519-JGB-MAA, 2022 WL 3573915, at *4 (C.D. Cal. July 12, 2022), *report*

3  *and recommendation adopted*, No. 2:20-CV-03519-JGB-MAA, 2022 WL 4042576

4  (C.D. Cal. Aug. 31, 2022) ("As the Complaint was filed before the Counterclaims'

5  two-year statute of limitations had expired, the Counterclaims are not time-barred.").

6       Moog next argues that Skyryse's implied covenant claim should be dismissed

7  as duplicative of its breach of contract counterclaim. (Mot. at 34.) Moog squarely

8  contradicts itself, having also argued that Skyryse's implied covenant "claim is *not*

9  tied to any particular contractual provision or Moog's alleged breach thereunder."

10  (*Id.* at 33.) But Moog is also just wrong; Skyryse's implied covenant claim arises

11  out of actions Moog took, which are neither expressly permitted nor prohibited by

12  the agreements, but deprived Skyryse of its benefits under them. This includes de-

13  priving Skyryse of its benefits under Section 4 of SOW 1, under which Moog agreed

14  "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and engage "'▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮." (Counterclaims, ¶¶ 31, 98-100.) These terms are subject to an implied cov-

17  enant that required Moog to work with Skyryse in good faith on successive phases.

18  (*Id.*, ¶¶ 31-33, Ex. C at § 9.) Moog breached that obligation, for example, by fraud-

19  ulently inducing Skyryse to "cancel" one part of their work, claiming it was "merely

20  'to facilitate the invoicing process," and by providing Skyryse with a sham quote

21  Skyryse would have no choice but to reject, so Moog could back out of their rela-

22  tionship. (*Id.*, ¶¶ 48-62, 72.)

23       Skyryse's claims are significantly different from those dismissed in the cases

24  cited by Moog, which were duplicative of breach of contract claims. *Atlantis Info.*

25  *Tech., GmbH v. CA, Inc*., 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) (dismissing

26  implied covenant claim where "allegations set forth in support of the claims are al-

27  most identical"); *O'Hearn v. Bodyonics, Ltd*., 22 F. Supp. 2d 7, 11 (E.D.N.Y. 1998)

28  (dismissing claim where "breach of that duty is merely a breach of the underlying

contract"); *Guz v. Bechtel Nat. Inc*., 24 Cal. 4th 317, 352 (2000) (explaining that a "breach of the contract may also constitute a breach of the implied covenant of good faith and fair dealing" but "a claim that merely realleges that breach as a violation of the covenant is superfluous").

Moog raises three additional arguments,[7] but they merely reflect disagreements with factual allegations that the Court must accept as true.[8] Moog first argues that Skyryse's claim fails because Skyryse "*expressly agreed* to cancel the purchase order for SOW1 and pay Moog for work completed." (Mot. at 34.) But Skyryse alleges the opposite: Moog fraudulently induced it into cancelling the purchase order to deprive Skyryse of the benefits of the parties' agreement. (Counterclaims ¶¶ 48-71); *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am*., 460 F. Supp. 3d 481, 499 (S.D.N.Y. 2020) (upholding implied covenant claim where defendant tricked plaintiffs "into substantially eliminating" their rights under contract).

Moog then argues that the claim should be dismissed because "Moog did not provide any 'sham' quote." (Mot. at 34.) Again, Moog simply disputes Skyryse's factual allegations, which must be accepted as true: Moog dishonestly and in bad faith provided a sham quote it knew and intended that Skyryse would have to reject. (Counterclaims, ¶¶ 66-72.)

Finally, Moog claims "Skyryse expressly contracted that Moog had no obligation to enter into any additional SOW for Phases 2-4." (Mot. at 34.) Again, this is just Moog's view of disputed facts, or at best its own partisan interpretation of the SOW, which the Court must reject because Skyryse's allegations must be accepted

---

[7] Moog also argues that Skyryse's implied covenant claim should be dismissed for lack of jurisdiction and venue. Those arguments fail for the reasons described in Section III.B.3.

[8] Moog improperly relies on the incorporation by reference doctrine to "to insert their own version of events into the complaint to defeat otherwise cognizable claims." (Dkt. 360-1); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-1003 (2018) ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.")

1    as true. In any event, Moog is wrong: each provision it cites reflects an agreement

2    "███████████████████████████████████████████████████

3    ███████████████████████████████████████████████." (Counter-

4    claims, Ex. C, § 4; *see also id.*, §§ 5, 9.) None of these provisions states that "Moog

5    had *no obligation*" to continue with its work for Skyryse, as Moog claims. Instead,

6    they reflect that the parties agreed to specific parameters of future work that would

7    be "███████████████████████████████." This is enforceable un-

8    der New York and California law. *Tractebel Energy Mktg., Inc. v. AEP Power Mktg.,*

9    *Inc.*, 487 F.3d 89, 97-98 (2d Cir. 2007) ("fact that the contract anticipates that the

10   parties will have to negotiate these details in the future does not render the contract

11   unenforceable"); *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 790 (9th Cir.

12   2012). Moog's conduct depriving Skyryse of the benefits of its contracts constitutes

13   a breach of the implied covenant of good faith and fair dealing, as Skyryse has suf-

14   ficiently alleged. *Pilkington*, 460 F. Supp. 3d at 499; *P&G*, 2019 WL 4805862, at *6.

15   **D.    Skyryse sufficiently alleges that Moog breached an implied**
16          **contract.**

17         Skyryse alleges as a third counterclaim that "through their conduct and rela-

18   tionship," Moog and Skyryse "entered into an implied-in-fact contract to engage in

19   a ██████████████████████████." (Counterclaims, ¶ 103.) Moog acknowledges

20   that California law applies, but asserts that the claim is time-barred and should be

21   dismissed because it is insufficiently pleaded. Each argument fails.

22         First, Moog fails to acknowledge that the statute of limitations began to toll

23   when Moog filed its complaint on March 7, 2022, which is well within two years.

24   *Gonzales*, 2022 WL 3573915, at *4.

25         Second, contrary to Moog's arguments, Skyryse sufficiently alleges facts re-

26   flecting the parties' mutual intent to engage in a long-term business relationship for

27   the development of the R-44. (Counterclaims, ¶ 103.) These include promises by

28

Moog's personnel, including its CEO, that the parties would work together to "develop [Skyryse's] business model and solve some of the technical challenges on [Skyryse's] way to market success" (*id.*, ¶ 50), and other senior Moog executives who described "the path forward" for "Phase 2 SOW" (*id.,* ¶ 57), and that the parties were "close to agreement on a revised SoW" for future work to which they had committed and agreed would be subject to change. (*Id.,* ¶ 59.) These detailed allegations stand in stark contrast to the facts of the case on which Moog relies, where an implied contract was not found because the plaintiff had "not pled the most rudimentary terms" of the agreements. *Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Calif., Inc.*, No. CV-13-0087-DOC-MLG, 2013 WL 1518240, at *4 (C.D. Cal. Apr. 10, 2013).

Third, Moog incorrectly argues that this claim should be dismissed because "an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." (Mot. at 36.) But Skyryse is entitled to "alternatively plead both an implied contract claim and an express contract claim even though they are inconsistent theories." *Calif. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, 19-cv-02417-LHK, 2019 WL 4450842, at *4 (N.D. Cal. Sept. 17, 2019); *see also Lever Your Bus. Inc. v. Sacred Hoops & Hardwood, Inc.*, No. 519CV01530CASKKX, 2020 WL 2465658, at *5 (C.D. Cal. May 11, 2020) (upholding "breach of an implied contract claim" alleging "the same breach that forms the basis for [the] breach of an express contract claim"). Moog's citations to *Lance Camper* and *Allied Trend* are, thus, inapplicable because neither involved pleadings with alternative claims. *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996); *Allied Trend Int'l., Ltd. v. Parcel Pending, Inc.* No. SACV 19-00078 AG-JDEX, 2019 WL 4137605, at *3 (C.D. Cal. June 3, 2019).

The other cases Moog relies on do not require a different result. *Forest Park Pictures v. Universal Television Network, Inc.* is of no use to Moog because the

Second Circuit reversed dismissal of the implied-in-fact claim despite plaintiff not identifying the contract's definite terms. 683 F.3d 424, 435 (2d Cir. 2012). Similarly, *nKlosures, Inc. v. Avalon Lodging LLC* does not help Moog because the Court upheld plaintiffs' implied contract claim. No. CV-22-00459-RSWL-JDEX, 2022 WL 17093927, at *8 (C.D. Cal. Nov. 17, 2022). Finally, *Moses v. Apple Hospitality Reit Inc.*, No. 14-CV-3131 DLI SMG, 2015 WL 1014327, at *4 (E.D.N.Y. Mar. 9, 2015) and *Robinson & Wilson, Inc. v. Stone*, 35 Cal. App. 3d 396, 399 (Ct. App. 1973) are both inapplicable because neither involved implied contract claims.

### E.    Skyryse plausibly and with specificity alleges that Moog defrauded Skyryse.

Skyryse alleges plausibly and with particularity that Moog defrauded Skyryse, in support of its fifth counterclaim. Moog fraudulently induced Skyryse to terminate the parties' relationship (when Moog itself had no contractual right to do so) so Moog could obtain payment despite failing to provide deliverables, obtain more of Skyryse's confidential business information, and use that information as it acquired Skyryse's competitor Genesys to unfairly compete with Skyryse. (Counterclaims, ¶¶ 48-77.) Moog argues that the fraud claims should be dismissed because the identified statements are not actionable, Skyryse has not alleged reliance, and Skyryse failed to comply with Rule 9(b). All three arguments fail.

First, Skyryse alleges false statements by Moog with particularity. For example:

- On March 9, 2020, Moog's David Norman falsely represented to Skyryse's CTO, Gonzalez Rey, that Skyryse *needed to cancel the agreement* so the parties could "come to an agreement on closing out on the original SOW (Phase 1) … and *agreeing on a new SOW* (Phase 2)." (Counterclaims, ¶¶ 56-58.)

- On March 25, 2020, Moog's Timothy Abbott falsely stated to Skyryse's Mr. Rey that Skyryse needed to provide Moog with a formal letter "stating the intent to *revise* the current statement of work" in order to "*facilitate the invoicing process.*" (*Id.*, ¶ 60.)

- On March 19, 2020, Mr. Abbott falsely claimed to Mr. Rey that the parties were "close to an agreement on a revised SoW" and provided "takeaway numbers" that were at best misleading and deceptive. (*Id.*, ¶ 59.)

Skyryse also alleges that, despite its representations to the contrary, Moog secretly never intended to continue with the project (*id.*, ¶¶ 62, 66), as later confirmed by Mr. Norman who acknowledged internally that Moog's true intent was always to unilaterally end the partnership with Skyryse. (*Id.*, ¶ 71.) As he admitted to Moog's CEO, it was Moog, not Skyryse, that simply "█████████████████ ██████████" even though Moog had no termination rights. (*Id.*)

These false statements and representations constitute actionable fraud. *Nordstrom, Inc. v. Republic of Frends, Inc*., No. 17-CV-0444-w-MDD, 2017 WL 6059158, at *4 (S.D. Cal. Dec. 6, 2017) (upholding fraud claim based on "representation to Nordstrom that the change from Republic of Frends to Family of Frends was only a name change, when in reality" it constituted an attempt to "exploit the pre-existing relationship between Republic and Nordstrom"); *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 596-97 (N.D. Cal. 2022) (upholding fraud claims based on, *inter alia*, defendant's promises that it planned "to grow Xpanse into an independent, publicly traded company").

Moog misrepresents the law, arguing that "statements of future action" are "unactionable." (Mot. at 26.) But Moog's own cited authority states the opposite, namely that "broken promises of future conduct may, however, be actionable." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158-59 (1991) ("making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform"). That is exactly the case here.

Second, Moog argues that "Skyryse's fraud claim fails for lack of reasonable reliance" because "there was no contractual obligation whatsoever to proceed to Phase 2." (Mot. at 26-27.) That is wrong for two reasons. First, Skyryse pleaded that

1    it reasonably relied on Moog's false assurances in making a nearly $1 million pay-

2    ment to Moog before it had "received the ███████████████████████████████"

3    and then never received them. (Counterclaims, ¶ 61.) Skyryse also alleges that after

4    relying on Moog's false statements, Skyryse had "lost one year in a two year pro-

5    gram, empty handed and scrambling to find a replacement, while Moog [is] in pos-

6    session of vast knowledge of our solution and $1.25M of Skyryse funding."

7    (*Id*., ¶ 69.) And second, even on the merits, Moog fails to cite any contractual pro-

8    vision to support its disputed theory that it had no obligation to proceed to Phase 2,

9    which is belied by the terms of the SOW, under which Moog agreed "█████████

10   ██████████████████████████" to "███████████████████████████████

11   ██████." (*Id*., ¶ 31.)[9]

12        Third, Moog makes a throwaway argument that Skyryse's fraud allegations

13   fail to meet Rule 9(b)'s particularity requirement. (Mot. at 27.) But Moog simply

14   ignores Skyryse's specific allegations about who said what, when, and how, which

15   are more than sufficient. (Counterclaims, ¶¶ 56-60.) This is why its reliance on *Vess*

16   *v. Ciba-Geigy Corporation*, which describes Rule 9(b)'s requirement that a plaintiff

17   plead the "particulars of when, where, or how" is misplaced. 317 F.3d 1097, 1106

18   (9th Cir. 2003).

19        Moog's remaining case law is distinguishable. Moog cites to *Coastal Ab-*

20   *stract*, but that case did not involve fraud claims and instead analyzed "liability under

21   either the Lanham Act or the California law of defamation." *Coastal Abstract Serv.*,

---

23   [9] As a legal matter, that the work to be performed was "███████████████" does not

24   undermine the enforceability of SOW1. New York law is clear that in such "exten-

25   sive and complex" agreements, it may necessary that "practical details will require
     refinement as the project begins to take shape." *Tractebel*, 487 F.3d at 97-98. This

26   makes Moog's reliance on *Baymiller* misplaced. That case involved statements that

27   were "contradicted by the express language of the" agreement. *Baymiller v. Guar-*
     *antee Mut. Life Co*., No. SA-CV-99-1566DOC(ANX), 2000 WL 33774562, at *4

28   (C.D. Cal. Aug. 3, 2000). Here, the opposite is true, and to the extent Moog disa-
     grees, this is a merits dispute and not grounds for dismissal.

SKYRYSE'S OPPOSITION TO
MOOG'S MOTION TO DISMISS

1  *Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). *Glen Holly* actually

2  supports Skyryse's position because this Court determined that defendant's state-

3  ment regarding present intentions about future conduct, that it "was in a position to

4  deliver 24–frame software for the V.I.P. editing system," constituted "an actionable

5  assertion of fraud." *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086,

6  1097 (C.D. Cal. 1999). *Galvez v. Local 804 Welfare Trust Fund* is distinguishable

7  because unlike here, the plaintiff did not allege that the statements were untrue when

8  made or that the speaker had knowledge of the falsity. 543 F. Supp. 316, 318

9  (E.D.N.Y. 1982). *Indigo Group USA Inc. v. Polo Ralph Lauren Corp.* is also distin-

10  guishable because that case involved "nonactionable expressions of opinion."

11  No. 2:11-CV-05883-JHN-CW, 2011 WL 13128301, at *3 (C.D. Cal. Oct. 25, 2011).

### F. Skyryse sufficiently alleges that Moog tortiously and intentionally interfered with Skyryse's contractual and business relationships.

14  Skyryse makes detailed allegations describing how Moog tortiously and in-

15  tentionally interfered with existing contractual and business relationships, in support

16  of Skyryse's sixth and seventh counterclaims. For example, Moog took steps to "███

17  ████████████████████████," knowing it was a Skyryse customer

18  and "███████████" to "████████████████," glean

19  confidential information about Skyryse, and "███████" on Skyryse. (Counter-

20  claims, ¶ 87.) These allegations alone are sufficient to state a claim for tortious in-

21  terference of contract. *See whiteCryption Corp. v. Arxan Tech, Inc.*, 2016 WL

22  3275944, at *4-5 (N.D. Cal. Jun. 15, 2016) (upholding interference with contract

23  claim where counterclaimant alleged that counter-defendant induced counterclaim-

24  ant's customer to disclose confidential counterclaimant's confidential information).

25  They are also sufficient to state a claim for intentional interference with business

26  relationships, including because they raise the inference that Moog took steps to in-

27  terfere with other business relationships. *SuccessWare, Inc. v. ServiceTitan, Inc.*, No.

28

1    CV-20-5179-DSF-PVCx, 2020 WL 12967998, at *9 (C.D. Cal. Sept. 10, 2020) (up-

2    holding "interference with existing business relationships" claim where party "al-

3    lege[d] interference with its relationships with existing customers" and explaining it

4    was unnecessary "to identify specific customers who switched").

5         Moog's arguments to the contrary lack merit. Moog first argues that Skyryse's

6    "sixth counterclaim fails because it has not identified a specific contract that was

7    purportedly interfered with . . . by its data, terms, or otherwise." (Mot. at 38.) But

8    such allegations are not required for Skyryse to allege tortious interference with con-

9    tract because Skyryse need only identify "the third party . . . with whom they con-

10   tracted and the nature and extent of their relationship." *UMG Recordings, Inc. v.*

11   *Global Eagle Ent.*, No. cv-14-3466-MMM-JPRx, 2015 WL 12746208, at *22, 1115

12   (C.D. Cal. Oct. 30, 2015); *Moore v. Apple*,73 F. Supp. 3d 1191, 1203 (N.D. Cal.

13   2014) (rejecting argument that a "[p]laintiff must identify a specific contract term or

14   language").

15        Skyryse has adequately described the nature of its relationship with Robinson:

16   "Skyryse and Robinson would collaborate to develop a program to install Skyryse's

17   FlightOS flight control system in a Robinson R66 helicopter and Robinson would

18   purchase FlightOS shipsets beginning upon FAA approval." (Counterclaims, ¶ 127.)

19   Moog knew of Skyryse's relationship with Robinson since at least as early as No-

20   vember 2021 when Mr. Norman confirmed for Moog's CEO that ███████████ "█

21   ████████████" (*Id.*, ¶ 87.) Both cases cited by Moog are distinguishable.

22   They involved plaintiffs that, unlike Skyryse, failed to identify the particular entity

23   with which they had a relationship. *See, e.g.*, *Teledyne Risi, Inc. v. Martin-Baker*

24   *Aircraft Co. Ltd.*, No. CV-15-07936-SJO-GJSX, 2016 WL 8857029, at *5 (C.D. Cal.

25   Feb. 2, 2016) (dismissing claim where plaintiff "failed to allege any third-party con-

26   tract or relationship"); *Gemsa Enters., LLC v. Pretium Packaging, LLC*, No. SACV-

27   21-844-JVS-JDEX, 2021 WL 4551200, at *6 (C.D. Cal. July 27, 2021) (dismissing

28   claim based on "dealings with various unnamed others").

1    Moog next argues, without legal authority, that Skyryse's sixth counterclaim
2    fails to allege that Moog "intended to interfere with or disrupt" Skyryse's contract
3    with Robinson. (Mot. at 38.) But Moog ignores the allegations describing Moog's
4    intent (Counterclaims, ¶ 129), which Skyryse is permitted to allege generally. *See*
5    Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's
6    mind may be alleged generally"). There is also no requirement to allege specific
7    intent under California law. *SIC Metals, Inc. v. Hyundai Steel Co.*, No. SACV 18-
8    00912-CPC-PLAx, 2019 WL 1883901, at *3 (C.D. Cal. Jan. 18, 2019) (denying mo-
9    tion to dismiss even though plaintiffs did "not offer factual allegations to support
10   their contention that Hyundai specifically intended to induce R-Techo's breach").

11   Moog also argues that Skyryse's sixth counterclaim should be dismissed be-
12   cause Skyryse fails to allege how the contracts were breached, that its relationship
13   with Robinson was harmed, or that damages resulted. But there is no requirement
14   under California law that Skyryse "allege an actual or inevitable breach of contract."
15   *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1129 (1990). An
16   interference claim arises if the plaintiff pleads that its "performance is made more
17   costly or burdensome." *Id.*; *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d
18   626, 633 (C.D. Cal. Dec. 20, 2021) (finding pleading sufficient based on "mere 'dis-
19   ruption of the contractual relationship'" without breach). Skyryse meets this stand-
20   ard because it has alleged sufficient facts to create a plausible inference that Moog's
21   actions made Skyryse or Robinson's performance more difficult. (Counterclaims, ¶¶
22   87, 126-136.)

23   Moog's arguments regarding damages miss the point because Skyryse's alle-
24   gations regarding harm are sufficient at this stage, before Skyryse has been permitted
25   to take discovery. *Asics Am. Corp. v. Lutte Licensing Grp. LLC*, No.
26   SACV131993JGBJPRX, 2014 WL 10538912, at *7 (C.D. Cal. Apr. 28, 2014)
27   (denying motion to dismiss interference claim because "general allegations of dam-
28   ages [are] sufficient at the motion to dismiss stage").

Moog makes only a single halfhearted argument against Skyryse's seventh counterclaim. Specifically, Moog claims Skyryse's counterclaim for intentional interference with business relationships should be dismissed because it "is not a recognized standalone cause of action in the Ninth Circuit." (Mot. at 37.) Moog again is wrong on the law. As this Court explained in *SuccessWare*, a party states a claim for intentional interference with existing business relationships where it alleges "interference with its relationships with existing customers." 2020 WL 12967998, at *9. Skyryse "need not identify specific third parties with whom it was negotiating," so long as it alleged "ongoing relationships with its customers and" that defendant "induced or attempted to induce these customers to" take actions "to the detriment of" plaintiff. *Id*. Skyryse has more than met this standard.

### G.   Skyryse sufficiently alleges that Moog intentionally interfered with Skyryse's prospective business advantage.

Skyryse's eighth counterclaim is supported by detailed allegations describing Moog's coordinated course of conduct to induce Skyryse to terminate the parties' relationship so Moog could unlawfully take Skyryse's confidential information, develop a copycat business, and steal Skyryse's business opportunities. Moog took steps to "████████" on Skyryse and its existing and prospective business relationships with customers such as Robinson in order to cause Skyryse harm. (Counterclaims, ¶¶ 87, 134.) Moog's own Ninth Circuit authority makes clear that this is sufficient to state a claim for intentional interference with prospective economic advantage. *Garter-Bare Co. v. Munsingwear Inc.*, 723 F.2d 707, 716 (9th Cir. 1984) (finding allegations that defendant "announced abandonment of the research and development under its Agreement" with plaintiff and "its simultaneous development" and "merchandising" of the relevant process "lead to inevitable inferences of damage to [plaintiff's] ability to enter into any other profitable relationships").

Moog's arguments miss the mark. Moog first argues that Skyryse's claim should be dismissed because Skyryse "does not identify any specific or particular

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

prospective business relationships." (Mot. at 40.) Not so. Skyryse identifies its relationship with Robinson Helicopter as a customer with whom it is working to develop future business plans, with which Moog interfered. (Counterclaims, ¶ 132.) This makes Skyryse's claim nothing like those dismissed in *Damabeh* and *Teledeyne*, where plaintiffs alleged interference with the marketplace as a whole. *Teledyne Risi, Inc v. Martin-Baker Aircraft Co. Ltd*., 2016 WL 8857029, at *6 (dismissing claim where defendant "interfered with the economic relationship between Teledyne and the sequencer marketplace as a whole"); *Damabeh v. 7-Eleven, Inc*., No. 5:12-CV-1739-LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (dismissing claim where plaintiff alleged defendant "interfered 'with employees and customers'" without identifying them).

Moog further asserts, without legal authority, that Skyryse's claim should be dismissed because Skyryse fails to allege: (1) Moog's knowledge of the third parties; (2) intentional conduct by Moog; (3) disruption of the relationships; and (4) resulting harm. Moog is wrong in all respects. As to Moog's first and second points, Skyryse alleges that Moog was aware that Robinson was "███████████████████" (*id.*, ¶ 87), and also that Moog fraudulently induced Skyryse to terminate the SOW so that Moog could abandon the parties' "████████████████████████" and use Skyryse's confidential technology to create a copycat business with Genesys to steal Skyryse's prospective customers, one of whom is Robinson. (Counterclaims, ¶¶ 48-71.) *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (requiring only "that the defendant knew that the interference was certain or substantially certain to occur as a result of its action"). As to Moog's third and fourth points, those arguments not only ignore the allegations above, they also ignore the Ninth Circuit precedent Moog itself cites, where a defendant's "abandonment of the research and development under its Agreement with [plaintiff], added to its simultaneous development" and commercialization of the relevant process, created "inevitable inferences of damage to [plaintiff's] ability to enter into any other profitable

1   relationships." *Garter-Bare*, 723 F.2d at 716. As Skyryse alleges, Moog engaged in

2   just such conduct.

3       **H.**    **Skyryse sufficiently alleges that Moog engaged in unfair**

4               **competition.**

5       Skyryse's detailed allegations supports its ninth counterclaim under all three

6   prongs of California's unfair competition law.

7       *Unlawful* – Skyryse alleges that Moog violated California law by tortiously

8   interfering with Skyryse's contractual relationships. (Counterclaims, ¶¶ 126-30.)

9   This is sufficient to state a claim under the UCL's unlawful prong. *Test-Rite Prod-*

10   *ucts Corp. v. Puma Indus. Co. Ltd.*, 2015 WL 13919191, at *6 (C.D. Cal. Dec. 14,

11   2015) (finding UCL claim survives when based on "intentional interference with

12   contract"). Moog cites *Ingels v. Westwood One Broadcasting Services, Inc.*, but that

13   case does not require a different result because, unlike Skyryse, the plaintiff failed

14   to allege any unlawful conduct. 129 Cal. App. 4th 1050, 1060 (2005).

15       *Unfair* – Skyryse sufficiently alleges that Moog engaged in unfair conduct.

16   As Moog's cited authority explains, the "'unfair' prong of the UCL" creates a cause

17   of action for a business practice that is unfair even if not proscribed by some other

18   law when the conduct "offends an established public policy or when the practice is

19   immoral, unethical, oppressive, unscrupulous or substantially injurious to consum-

20   ers." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023-24 (N.D. Cal. 2019).

21   Moog engaged in a course of unfair conduct to secure payment for work it failed to

22   complete, and to deceptively induce Skyryse to cancel part of the parties' business

23   relationship so Moog could use Skyryse's confidential and proprietary information

24   to create a copycat business with Genesys. (Counterclaims, ¶¶ 48-74.) *Teledyne*

25   *Risi, Inc.*, a case on which Moog relies, confirms that this is more than sufficient to

26   state a claim. 2016 WL 8857029, at *6 (C.D. Cal. Feb. 2, 2016) (upholding UCL

27   claim where "[p]laintiff asserts that Defendant violated California's unfair business

28

competition laws by using Teledyne's confidential and proprietary information to create a separate sequencer and cut Teledyne out of the JSF program").

Moog also took affirmative steps to interfere with the mobility of its California-based employees because it was so " ████████ " legitimately against Skyryse, which was offering " ████████ ." (Counterclaims, ¶ 82.) Moog contacted these employees so they would " ████████████████████ ████████ " from leaving Moog, despite knowing the employees " ████ ████████████████████ " and that Moog did not " ████████████ ." (*Id.*, ¶¶ 84-85.) Such conduct plainly violates California's strong public policy supporting employee mobility. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008) (explaining how California "courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility"). Moog cites *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone* for the non-controversial proposition that "[i]njury to a competitor is not equivalent to injury to competition." 20 Cal. 4th 163, 187 (1999). But Moog ignores that its executive team's scheme to " ████ " on Skyryse and inhibit the lawful hiring of California-based employees directly harmed those employees whose mobility was impaired, not just Skyryse. *Rezner v. Bayerishe Hypo-Und Vereinsbank AG*, No. C 06-02064 JW, 2011 WL 6329854, at *6 (N.D. Cal. Nov. 8, 2011) ("[W]here the pleading states a *prima facie* case of harm stemming from an apparently unfair business practice, dismissal on the pleadings is generally inappropriate, as the court cannot weigh the utility of the defendant's conduct ….").

***Fraudulent*** – Moog argues that "Skyryse's UCL claim fails under the 'fraudulent' prong because it alleges no facts demonstrating that Moog is likely to mislead consumers at large." (Mot. at 41.) Moog ignores Skyryse's allegation that on March 7, 2022, Moog and its new subsidiary, Genesys, announced *to the public* that Genesys had "started development of the 4th axis on" its "HeliSAS Autopilot and

1  Stability Augmentation System." (Counterclaims, ¶ 77.) This deceptively suggested
2  to consumers that it was Moog and Genesys that had "started development of the 4th
3  axis on" for the Robinson R44 helicopter, when in fact it was Skyryse that developed
4  and pioneered these advances, and Moog had been using and exploiting confidential
5  information it acquired from Skyryse to enable Genesys to develop that system.
6  (*Id.*, ¶¶ 74-77.) Moog's statement, directed to the public at large and to Robinson
7  Helicopter users in particular, sufficiently alleges the who, what, where, and when
8  of Moog's fraudulent statements to consumers at large. *Moore v. Mars Petcare U.S.,*
9  *Inc.* 966 F.3d 1007, 1017 (9th Cir. 2020) (finding "fraudulent" prong satisfied when
10 complaint pleads a probability that consumers "acting reasonably in the circum-
11 stances, could be misled"); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39
12 (9th Cir. 2008) ("Whether a practice is deceptive [under the UCL fraudulent prong]
13 is generally a question of fact" which "usually cannot be made on demurrer" or mo-
14 tion to dismiss.). This makes Moog's cited authority inapplicable.

15 **IV.    CONCLUSION**

16      For the reasons described above, Skyryse respectfully requests that Moog's
17 motion be denied in its entirety. To the extent any part of the motion is granted,
18 Skyryse requests leave to amend. *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th
19 Cir. 2012) ("requests for leave to amend should be granted with extreme liberality").

20
21
22
23
24
25
26
27
28

Dated: March 16, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/Gabriel S. Gross*

    Douglas E. Lumish (SBN 183863)
    Gabriel S. Gross (SBN 254672)
    Arman Zahoory (SBN 306421)
    Ryan Banks (SBN 318171)
    Menlo Park, California 94025
    Telephone: (650) 328-4600
    Facsimile: (650) 463-2600
    Email: doug.lumish@lw.com
    gabe.gross@lw.com
    arman.zahoory@lw.com
    ryan.banks@lw.com

    Joseph H. Lee (SBN 248046)
    650 Town Center Drive, 20th Floor
    Costa Mesa, California 92626
    Telephone: (714) 540-1235
    Facsimile: (714) 755-8290
    Email: joseph.lee@lw.com

    Julianne C. Osborne (SBN 342870)
    Alexa Solimano (SBN 335740)
    505 Montgomery Street, Suite 2000
    San Francisco, California 94111
    Telephone: (415) 391-0600
    Facsimile: (415) 395-8095
    Email: julianne.osborne@lw.com
    alexa.solimano@lw.com

    Kelley M. Storey (Admitted *Pro Hac Vice*)
    555 Eleventh Street NW, Suite 1000
    Washington, D.C. 20004
    Telephone: (202) 637-2200
    Facsimile: (202) 637-2201
    Email: kelley.storey@lw.com

| | |
|---|---|
| 1 | Cassandra M. Baloga (Admitted *Pro Hac Vice*) |
| 2 | |
| 3 | 1271 Avenue of the Americas |
| | New York, New York 10020 |
| 4 | Telephone: (212) 906-1200 |
| | Facsimile: (212) 751-4864 |
| 5 | Email: cassandra.baloga@lw.com |
| 6 | |
| 7 | Attorneys for Defendant and Counter- |
| 8 | claimant, Skyryse, Inc. |
| 9 | |
| 10 | |

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant-Counterclaimant Skyryse, Inc., certifies that this brief contains 8,981 words, which:

__ complies with the word limit of L.R. 11-6.1.

X complies with the word limit set by court order dated February 14, 2023.

Dated: March 16, 2023

LATHAM & WATKINS LLP

By */s/Gabriel S. Gross*
Gabriel S. Gross
Attorney for Defendant-Counterclaimant