Rena Andoh (admitted *pro hac vice*)
 randoh@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Lai L. Yip (SBN 258029)
 lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

Travis J. Anderson (SBN 265540)
 tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691

Kazim A. Naqvi (SBN 300438)
 knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

Attorneys for Plaintiff and
Counterdefendant Moog Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MOOG INC.,

            Plaintiff,

      v.

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM,
and DOES NOS.1-50,

            Defendants.

Case No. 2:22-cv-09094-GW-MAR

**PLAINTIFF MOOG INC.'S
NOTICE OF MOTION AND
MOTION TO ENFORCE
COMPLIANCE WITH THE
MARCH 11, 2022 STIPULATED
TRO (DKT. 25), AND FOR
MONETARY AND ADVERSE
INFERENCE SANCTIONS FOR
CONTEMPT AND SPOLIATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[*Filed concurrently with Declaration of Kazim A. Naqvi; Declaration of Bruce Pixley; Declaration of Kevin Crozier [Proposed] Order*]

Date:    April 13, 2023
Time:   8:30 a.m.
Ctrm.:   9D, The Hon. George H. Wu

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Complaint Filed:      March 7, 2022
Counterclaims Filed: January 30, 2023

1   TO THE ABOVE CAPTIONED COURT, AND TO ALL PARTIES AND

2   THEIR ATTORNEYS OF RECORD:

3   PLEASE TAKE NOTICE that at 8:30 a.m. on Thursday, April 13, 2023, or

4   as soon thereafter as this matter may be heard in Courtroom 9D of the above-

5   captioned Court, located at the United States Courthouse, 350 West 1st Street, Los

6   Angeles, CA, 90012, the Honorable George H. Wu presiding, Plaintiff and

7   Counterdefendant Moog Inc. ("Moog") will, and hereby does, move for an order:

8   1) for an adverse inference for defendant Skyryse, Inc.'s ("Skyryse") admitted

9   permanent spoliation of 32 potentially relevant files, in the form of an instruction

10   to the jury at any trial that the contents of the deleted files were unfavorable to

11   Skyryse (i.e. that they contained Moog trade secret information), and also that

12   Moog is permitted to address the spoliation at trial; 2) authorizing Moog's experts

13   to conduct a physical inspection of Skyryse's systems and electronic devices in

14   Skyryse's offices, on a mutually agreeable week within 30 days of the Court's

15   order, to locate any additional Moog non-public information that needs to be

16   excised; 3) compelling the production of the electronic devices and data sources

17   identified in Section IV.B.5 of this Motion, within 14 days of the Court's order;

18   and 4) for an award of monetary sanctions for reasonable attorneys' fees and costs

19   in the amount of $34,850, plus any additional fees incurred in the course of this

20   motion practice, against Skyryse and its counsel, jointly and severally. Moog

21   requests these orders pursuant to the Court's inherent authority, its authority to

22   issue sanctions for civil contempt, Rule 37(b), and Rule 37(e). This motion is made

23   on the following grounds:

24   On March 11, 2022, defendant Skyryse stipulated to a temporary restraining

25   order to avoid a hearing and adverse ruling on Moog's Motion for

26   TRO/Preliminary Injunction (the "TRO"). The TRO required Skyryse to, among

27   other things: 1) return to Moog all Moog non-public information in its possession,

28

custody or control by April 1, 2022; 2) immediately stop using any Moog non-public information; and 3) preserve all relevant evidence.

**First,** by Skyryse's counsel's own admission to the Court, an "alarming series of deletions" by Skyryse employees occurred after entry of the TRO. While some of the deleted evidence was later recoverable, it is undisputed that 32 files were permanently deleted by a former Moog employee and subsequent Skyryse employee, Alex Wang. And, Skyryse admits that the deleted files likely relate to Moog schematic and technical documents that Wang brought with him from Moog and used as a reference at Skyryse. These spoliated files go to the heart of Moog's misappropriation claims. Under these circumstances, Ninth Circuit law supports the imposition of sanctions in the form of a jury instruction that the spoliated files were unfavorable to Skyryse.

**Second,** the evidence of Skyryse's use of Moog non-public information after entry of the TRO is staggering. Months after its entry, Skyryse personnel continuously possessed, transferred, and used Moog non-public information at Skyryse (usually in the form of software verification documents, checklists, and templates), and shared them with third parties. So that there can be no dispute, many of the documents at issue contain the word "Moog" in the text of the documents themselves, or in the metadata. The primary purpose of the TRO was to enjoin Skyryse's use of Moog non-public information. Moog only became aware of most of these violations within the past few weeks – notwithstanding the clear language of the TRO, which requires Skyryse to turn over all Moog non-public information. Moog was forced to go through extensive motion practice in order to compel the production of the evidence that shows Skyryse's extensive violations of the TRO.  Given the flagrant and widespread violations, Ninth Circuit law supports entry of an order allowing Moog to physically inspect Skyryse's devices and systems to ensure that all of its non-public information is finally excised.

-4-

1     **Third,** and as referenced above, Skyryse has produced large volumes of

2 electronic devices and files containing Moog non-public information since the

3 April 1, 2022 turnover deadline, a pattern that has continued to the present date.

4 This includes the production of three additional Skyryse laptops laden with Moog

5 data in December 2022 following months of litigation before Magistrate Judge

6 McCarthy in which Skyryse repeatedly asserted that Moog had no need to review

7 their contents, and the production of almost 3,000 files from Skyryse computers

8 and e-mail accounts (containing massive amounts of Moog non-public

9 information) **on February 17, 2023**. Skyryse's shockingly untimely productions,

10 particularly given its prior stipulation to the Court that it would turn such

11 information over voluntarily, are inexcusable. Moog still has no assurance that all

12 of its non-public information has been returned. An award of monetary sanctions

13 is, therefore, appropriate for all the foregoing violations of the TRO.

14     This motion is made following the conference of counsel pursuant to C.D.

15 Cal. Local Rule 7-3 that took place on March 9, 2023 at 10:00 a.m.

16     This motion is based on this Notice, the accompanying Memorandum of

17 Points and Authorities, the Declaration of Kazim A. Naqvi, the Declaration of

18 Bruce Pixley, the Declaration of Kevin Crozier, all pleadings, papers and other

19 documentary materials in the Court's file for this action, those matters of which

20 this Court may or must take judicial notice, and such other matters as this Court

21 may consider in connection with the hearing on this matter.

22
23 Dated:  March 16, 2023        SHEPPARD MULLIN RICHTER & HAMPTON LLP

24                    By           */s/ Rena Andoh*

25                             Rena Andoh

26             Attorney for Plaintiff and Counterdefendant
                      MOOG INC.

27

28

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................. 11

II. FACTUAL AND PROCEDURAL BACKGROUND ................................ 11

   A.  Moog's Initial Filings ........................................................... 11

   B.  The Stipulated TRO ............................................................. 12

   C.  Moog Provides Substantial Additional Information Regarding its Non-Public Information ................................................... 13

   D.  Skyryse's Admission of Possession of Moog Non-Public Information and Spoliation of Evidence .................................. 14

   E.  Skyryse's Additional Historical Violations of the TRO .......... 15

   F.  Skyryse Again Falsely Certifies Compliance With the TRO in June 2022 ........................................................................... 16

   G.  Skyryse Produces Several Computers Laden With Moog Data in December 2022 ............................................................... 16

   H.  Skyryse Personnel Lori Bird Produces Substantial Evidence of Misappropriation of Moog Non-Public Information .............. 17

   I.  Hummingbird and Hyde Produce Dozens of Documents Involving Skyryse Employees and Containing Moog Non-Public Information Not Previously Produced by Skyryse ................. 18

      1.  Hummingbird's Production ......................................... 18

      2.  Hyde's Production ..................................................... 19

   J.  In February 2023, Skyryse Produces Almost 3,000 Additional Documents From Lori Bird Laden with Moog Non-Public Information ........................................................................... 20

   K.  There is Substantial Evidence of Skyryse's Use of Moog Non-Public Information After the Date of the TRO ................. 21

   L.  Moog Serves a Letter Demanding Immediate Compliance with the TRO ............................................................................. 21

III. LEGAL STANDARDS ...................................................................... 23

IV. ARGUMENT .................................................................................. 24

   A.  Moog Is Entitled to an Adverse Inference Regarding the 32 Permanently Spoliated Files ................................................. 24

| | B. | Moog is Entitled to Sanctions for Skyryse's Contempt of the TRO | 26 |
| | | 1. | Skyryse Has Consistently and Repeatedly Violated the TRO | 27 |
| | | | a. | Skyryse Has Admittedly Spoliated Relevant Evidence | 27 |
| | | | b. | Skyryse Has Produced Large Volumes of Moog Non-Public Information After April 1, 2022 | 27 |
| | | | c. | Skyryse Has Repeatedly Used Moog Non-Public Information After April 1, 2022 | 28 |
| | | 2. | Skyryse's Violations Were Not Made Based on a Good Faith Interpretation of the TRO | 28 |
| | | 3. | Moog is Entitled to Inspect Skyryse's Systems | 31 |
| | | 4. | Immediate Compliance with the TRO is Required | 32 |
| | C. | Monetary Sanctions Are Also Appropriate | 33 |
| | | 1. | Moog Should be Awarded Reasonable Attorneys' Fees and Costs for Skyryse's Contempt | 33 |
| | | 2. | In the Alternative, Moog is Also Entitled to Monetary Sanctions Under Rule 37(b) | 33 |
| V. | | CONCLUSION | 34 |

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Advantacare Health Partners v. Access IV*
   No. C 03-04496 JF, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004) ........... 25, 32

*Akiona v. United States*
   938 F.2d 158 (9th Cir. 1991) ............................................................................. 25

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*
   No. EDCV141926JAKSPX, 2016 WL 6609208 (C.D. Cal. July 12,
   2016), *report and recommendation adopted*, No.
   EDCV1401926JAKSPX, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016) ........... 33

*Colonies Partners, L.P. v. Cnty. of San Bernardino*
   No. 518CV00420JGBSHK, 2020 WL 1496444 (C.D. Cal. Feb. 27,
   2020), *report and recommendation adopted*, No. 518CV00420JGBSHK,
   2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) .................................................... 29

*Compass Bank v. Morris Cerullo World Evangelism*
   104 F.Supp.3d 1040 (S.D. Cal. 2015) ............................................................... 24

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*
   10 F.3d 693 (9th Cir. 1993) ............................................................................... 27

*FTC v. Lights of America Inc.*
   2012 WL 695008 (C.D. Cal. Jan. 20, 2012) ...................................................... 25

*Glover v. BIC Corp.*
   6 F.3d 1318 (9th Cir. 1993) ............................................................................... 25

*Halaco Engineering Co. v. Costle*
   843 F.2d 376 (9th Cir. 1988) ............................................................................. 24

*Harcourt Brace Jovancovich Legal and Prof'l Publications, Inc. v.*
   *Multistate Legal Studies, Inc.*
   26 F.3d 948 (9th Cir. 1994) ............................................................................... 33

*Henry Schein, Inc. v. Certified Bus. Supply, Inc.*
   No. SA-CV-03-1662-DOC, 2008 WL 9452685 (C.D. Cal. Aug. 20, 2008) ..... 29

*In re Hitachi Television Optical Block Cases*
  2011 WL 3563781 (S.D. Cal. Aug. 12, 2011) ................................................. 24

*Holloway v. Cnty. of Orange*
  No. SACV1901514DOCDFMX, 2021 WL 454239 (C.D. Cal. Jan. 20,
  2021) ......................................................................................................... 26

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*
  774 F.3d 935 (9th Cir. 2014) ...................................................................... 29

*Mfg. Automation & Software Sys., Inc. v. Hughes*
  No. CV 16-8962-CAS (KSX), 2018 WL 5914238 (C.D. Cal. Aug. 20,
  2018) ......................................................................................................... 26

*Michaels v. Internet Ent. Grp., Inc.*
  No. CV-98-0583DDP(CWX), 1998 WL 35242549 (C.D. Cal. Feb. 27,
  1998) ......................................................................................................... 27

*National Association of Radiation Survivors v. Turnage*
  115 F.R.D. 543 (N.D. Cal. 1987) ................................................................. 26

*Navellier v. Sletten*
  262 F.3d 923 (9th Cir. 2001) ...................................................................... 34

*Perry v. O'Donnell*
  759 F.2d 702 (9th Cir. 1985) ...................................................................... 33

*Porter v. City & Cty. of San Francisco*
  No. 16-03771-CW-DMR, 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) .......... 25

*Reinsdorf v. Skechers U.S.A. Inc.*
  296 F.R.D. 604 (C.D. Cal. July 19, 2013) ..................................................... 24

*Spallone v. United States*
  493 U.S. 265 (1990) .................................................................................. 24

*Stanley Black & Decker, Inc. v. D & L Elite Invs., LLC*
  No. 12-4516 SC, 2013 WL 3799583 (N.D. Cal. July 19, 2013) ...................... 30

*teamLab Inc. v. Museum of Dream Space, LLC*
  No. 219CV06906VAPGJSX, 2022 WL 1590746 (C.D. Cal. Mar. 10,
  2022) ......................................................................................................... 26

*WeRide Corp. v. Kun Huang*
    No. 5:18-CV-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020).........34

<u>Other Authorities</u>

Federal Rule of Civil Procedure 37 ...........................................................................24

Federal Rule of Civil Procedure 37(b) ..............................................................11, 34

Federal Rule of Civil Procedure 37(b)(2) ................................................................34

Federal Rule of Civil Procedure 37(e) ...............................................................11, 24

Federal Rule of Civil Procedure 37(e)(2) ................................................................25

## I.   INTRODUCTION

Four days after being sued for the theft and misappropriation of over 136,000 of Moog's files, defendant Skyryse stipulated to a temporary restraining order on March 11, 2022 (the "TRO") to avoid a hearing and adverse ruling on Moog's Motion for TRO/Preliminary Injunction. The TRO included basic and standard provisions to protect a trade secret plaintiff: 1) production of all Moog non-public information by April 1, 2022; 2) immediate enjoined use of Moog's non-public information; and 3) preservation of relevant evidence.  But, as further described in the Notice of Motion, Skyryse has repeatedly violated each of these core requirements by admittedly spoliating a large volume of evidence after entry of the TRO (including permanently deleting 32 potentially relevant files), extensively using and relying upon Moog non-public information after entry of the TRO, and delaying production of a large large volume of Moog non-public information until well after the April 1, 2022 production deadline (including, most recently, a large production on February 17, 2023).

After receiving the benefit of stipulating to the TRO—avoiding a hearing it was sure to lose—Skyryse has been shirking its obligation to comply. Moog has exhausted its non-judicial options to enforce Skyryse's compliance and now seeks the Court's intervention. Moog does not make this motion lightly. Moog asks that, in addition to the other relief requested above, that the Court should use its inherent authority, power to issue contempt sanctions, and authority under Rules 37(b) and 37(e) to award Moog reasonable attorneys' fees and costs in connection with this Motion, in the amount of $34,850.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Moog's Initial Filings

On March 8, 2022, Skyryse was served with Moog's Complaint and initial filings, which contained, among other things, a motion for TRO and preliminary

injunction.  The initial filings contained the following information regarding Moog's non-public information:

- A breakdown of the commercial and military program classifications, and the various categories of documents, amongst the 136,994 Moog files copied by defendant Misook Kim. (Dkts. 1, ¶ 115; 4-18, ¶ 13; 4-2, ¶¶ 43-44; 4-8, ¶¶ 19-20).

- A file log containing the file name, file path, external hard drive involved, encryption status, folder/hard drive name and location, file size, date and time of copying, and other unique identifiers *for each of the 136,994 files copied by Kim on November 19, 2021*. (Dkt. 4-18, Ex. A).

The Court noted the initial filings "identify with a fair level of specificity what the problem areas are." (Dkt. 170 (6/1/22 Hrg. Tr.) at 5:10-13).

## B.    The Stipulated TRO

Upon being served with the initial papers, counsel for Skyryse immediately contacted counsel for Moog, and the ensuing discussions culminated in an agreement to stipulate to interlocutory relief that would then be so-ordered by the Court, in exchange for taking the TRO hearing off calendar.  On March 11, 2022, the stipulated TRO was filed, and it was entered by presiding Article III District Judge Lawrence J. Vilardo as a Court order.  (Dkt. 25)  It provides, in relevant part:

- Defendants must "refrain from using, accessing, disclosing, copying, or transmitting" any Moog non-public information (Dkt. 25, § 1);

- By April 1, 2022, each Defendant must deliver to Moog all Moog non-public information in each Defendant's possession, custody or control or, if such information has been integrated or used by any Defendant in such a manner that such delivery "necessarily includes property of any Defendant," then "such information shall be given to a third-party forensics firm

[iDiscovery Solutions ("iDS")] . . . for forensic imaging in lieu of providing such information directly to Plaintiff" (*id.*, § 2);

- Skyryse "shall preserve and not otherwise tamper with or modify" its email, network drives, desktop computers, laptops, or other electronic devices and data sources containing "potentially relevant evidence" (*id.*, § 5);

- "Any of Plaintiff's non-public information, documents, records, files, or data in any Defendant's possession, custody, or control (if any) shall not be used or reviewed by Defendants" (*id.*, § 7); and

-  "Each party shall preserve all evidence in that party's possession, custody, or control relevant to any party's claim or defense in this action, including electronically stored information" (*id.*, § 9).

Notably, the TRO is not limited to Moog's trade secrets.  Nor does the TRO include any language that Defendants' obligations therein are predicated on Moog first further identifying its "non-public information" to any extent. Rather, the intent was to ensure that none of the materials taken from Moog would be used since they were not rightfully in Skyryse's possession in the first place.

On April 1, 2022, Kim and Pilkington produced 23 electronic devices to iDS, and Skyryse turned over Kim's Skyryse-issued laptop device, along with a hard drive containing 11,093 files pulled from Pilkington's Skyryse-issued laptop. (Dkt. 142-2). Skyryse also stated unequivocally that it had complied with the TRO in full. (Dkt. 142-3).

### C.    Moog Provides Substantial Additional Information Regarding its Non-Public Information

Before and shortly after the April 1, 2022 turnover deadline, and without any obligation to do so, Moog provided additional information to Skyryse regarding its non-public information at issue. On March 23, 2022, at Skyryse's request, Moog provided a log with MD5# values for approximately 62,000 files from Kim's Moog-issued laptop that may correspond to certain of the 136,994 files that Kim

copied from that laptop on November 19, 2021. (Dkt. 180-3). On April 4, 2022, having newly discovered a separate theft by Pilkington consisting of approximately 1.3 million additional Moog files, Moog provided Defendants' counsel with a log showing, among other things, folders copied by Pilkington and the timeline of his related conduct (the "Pilkington Folder Log"). (Dkt. 180-4 at p. 4). On April 12, 2022, Moog's counsel also provided *a list of 32 highly-specific and targeted search terms* to help identify Moog non-public information, primarily source code. (Dkt. 180-5).

### D.  Skyryse's Admission of Possession of Moog Non-Public Information and Spoliation of Evidence

In an April 26, 2022 Conference with the Court, Skyryse's counsel disclosed the following regarding Skyryse's possession of Moog non-public information:

- "We have discovered that there is . . . likely, [Moog] non-public information at Skyryse" (4/26/22 Transcript (Dkt. 95), 17:24-18:3);
- "we have found enough [Moog non-public information] that it does – it causes us concern" (*Id*., 18:12-13);
- Skyryse found a "significant number of hits" from the "list of file names and hash values" provided by Moog. (*Id*., 19:17-24).

Regarding deletion of data, Skyryse's counsel disclosed the following:

- "since the complaint was filed certain information has been deleted." (*Id*. at 18:17-18);
- "an alarming series of deletions" (*Id*. at 19:4-5);
- "some of the information deleted may not be recoverable" (*Id*. at 19:5-6).

Skyryse's counsel further disclosed that Kim and Pilkington had been terminated from Skyryse, and that 15 Skyryse employees had been placed on administrative leave. (*Id*. at 15:4, 20:5-12, 21:1-2).

Regarding the spoliated files, Skyryse initially refused to provide any further information. Only after Moog filed a motion to compel disclosures did ***Skyryse***

1    *later confirm through various filings that 32 deleted files were not recoverable*.

2    (Dkt. 156, p. 12).  These files were deleted by former Moog employee and

3    subsequent Skyryse employee Alex Wang *from his Skyryse-issued computer*.

4    (*Id*.). The permanently deleted files are, by Skyryse's admission, clearly relevant to

5    this case: "the investigation leads Skyryse to believe that some of Wang's deleted

6    files likely *relate to wire and cable schematics that Wang created and brought*

7    *with him from Moog and that he used as a reference while working at Skyryse*."

8    (*Id*., p. 13, emphasis added).

9         **E.    Skyryse's Additional Historical Violations of the TRO**

10             Skyryse stipulated to a Court order to turn over all Moog non-public

11   information on or before April 1, 2022. Unfortunately, throughout the pendency of

12   this case, Skyryse has continued to produce Moog non-public information only

13   upon demand by Moog, and often only after protracted motion practice, ***including***

14   ***the production of almost 3,000 files as recently as February 17, 2023***. In

15   summary, Skyryse has produced the following documents containing Moog non-

16   public information between the turnover deadline and June 16, 2022:

17   - On April 29, 2022, Skyryse turned over to iDS Pilkington's two Skyryse-
18     issued laptops and a thumb drive containing 568 additional files. (Dkt. 142-
19     6).  Skyryse also made a document production directly to Moog of data that
20     "ostensibly or potentially contains Moog non-public information," including
21     10 Moog source code files. (*Id*.).

22   - On May 5, 2022, Skyryse turned over additional files from "Skyryse's
23     Gitlab source code repository" which were identical hits on the search terms
24     provided by Moog on April 12, 2022. (Dkt. 142-7).

25   ///

26   ///

27   ///

28   ///

**F.      Skyryse Again Falsely Certifies Compliance With the TRO in June 2022**

During a June 16, 2022 conference with the Court, Skyryse's counsel again certified that it had complied with the TRO:

> **Court:** I understand Skyryse's position to be that they already have turned over, at least to IDS, everything that may contain Moog information and also Skyryse information. Is that your position, Mr. Gross?
>
> **Skyryse's Counsel:** That's right, your Honor. I think you've got it correct and I'm not aware of anything else in Skyryse's possession, custody or control to be turned over to IDS. ***We've complied with the stipulation***. (6/16/22 Hrg. Tr. at 19:7-14, emphasis added).

Those representations have been proven false.  Skyryse adamantly resisted Moog's demands to produce the laptops of several additional Skyryse employees who had worked for Moog.  In many instances, Moog had forensic evidence showing that those employees had accessed and used Moog non-public information following their departures to Skyryse.  Moog was forced to file a motion to compel on August 3, 2022, which took several months to resolve. (Dkt. 210). The Court ultimately ruled that Skyryse was required to produce three of those laptops (as well as other file and connection logs) on November 10, 2022.  (Dkt. 293).

**G.      Skyryse Produces Several Computers Laden With Moog Data in December 2022**

On December 2, 2022, Skyryse produced to iDS images of those three laptops – specifically, those issued to its personnel Sathya Achar, Eric Chung, and Tri Dao. Moog's investigation has confirmed that Moog non-public information exists on all three of those laptops, and therefore these devices and data were required to have been turned over by April 1, 2022. (Pixley Dec. ¶¶ 8-21). For example, over 250 documents were found on Achar's laptop as having "Moog" listed in the company metadata field or in the text of the document itself (including

designations as Moog proprietary data). (*Id*., ¶¶ 8-9). At least 11 Requirements Based Test (RBT) documents were located on Chung's laptop, showing a creation date of June 2015 (when Chung worked at Moog), and some of these documents included the following print header: "*DO NOT TRANSMIT OUTSIDE OF MOOG USA OR TO Non-U.S. PERSONS*" (*Id*., ¶¶ 10-19).

## H.   Skyryse Personnel Lori Bird Produces Substantial Evidence of Misappropriation of Moog Non-Public Information

On October 25, 2022, Moog served a subpoena for documents to former Moog employee and current or former Skyryse contractor/employee Lori Bird. (Naqvi Dec. ¶ 3). On November 17, 2022, Bird produced approximately 90 documents in response to the subpoena. (*Id*.).  Her production, along with several others, confirms that Ms. Bird frequently possessed, received, accessed, transmitted, and used Moog non-public information (including proprietary source code documents and software development checklists and templates) during her tenure at Skyryse, including using her Skyryse e-mail account and Skyryse laptop. (Pixley Dec, ¶¶ 40-43) (Crozier Dec., ¶¶ 37-46, Exs. C-1 to C-6).

For example, on December 18, 2021, Pilkington (while employed by Skyryse), e-mailed Lori Bird no less than ***89 documents*** comprising Moog software checklists, standards, development plans, and other related documents. (Pixley Dec, ¶¶ 40-43). They all contain "Moog" on their face or in their metadata, and some of them have "MOOG PROPRIETARY AND CONFIDENTIAL INFORMATION" legends. (*Id*.).

Further, in her responses to Moog's subpoena for production of documents, Ms. Bird unambiguously stated that several categories of documents responsive to Moog's subpoena would be in the possession of Skyryse through Bird's Skyryse-issued laptop and/or e-mail account. (Naqvi Dec., Ex. B, pp. 27-44). Bird then indicated that she no longer had access, and that Skyryse would be able to provide

1    those materials to Moog.  To date, Skyryse has not produced, either to Moog or to

2    iDS, Bird's Skyryse-issued laptop or any image thereof. (Pixley Dec, ¶¶ 32, 45).

3        **I.**    **Hummingbird and Hyde Produce Dozens of Documents Involving**

4            **Skyryse Employees and Containing Moog Non-Public**

5            **Information Not Previously Produced by Skyryse**

6            **1.**    **Hummingbird's Production**

7        On October 25, 2022, Moog served a subpoena for documents to

8    Hummingbird. (Naqvi Dec., ¶ 4). On January 17, 2023, Hummingbird produced

9    120 documents in response to the subpoena. (*Id.*). The production is littered with

10   evidence of Skyryse employees (using Skyryse e-mail accounts and devices)

11   possessing, disclosing to third parties, accessing, and using Moog non-public

12   information, which is addressed further in the concurrently-filed Pixley and

13   Crozier Declarations. (Pixley Dec. ¶¶ 22-33; Crozier Dec. ¶¶ 19-29, Exs. A-1 to A-

14   12). The documents at issue contain several examples of Skyryse personnel (using

15   Skyryse e-mail addresses) exchanging software development, verification, and

16   checklist documents that: 1) contain "Moog" in their face or in their metadata;

17   and/or 2) are copied from corresponding Moog documents based on identical

18   structure or word-for-word copying of numerous sections. (*Id.*). As one example,

19   on December 17, 2021, Hummingbird personnel Rex Hyde asks Lori Bird (using a

20   Skyryse e-mail address ███████████████████████

21   ███████████████████████████████ and then Hyde sends her the referenced

22   documents. (Pixley Dec., ¶ 29, Ex. G). In another example, Bird asks Pilkington

23   which Moog program would be the best to "pilfer" from. (*Id.*, ¶ 42, Ex. K).

24       Most alarmingly, as of February 17, 2023, almost one year after the April 1,

25   2022 turnover deadline in the TRO, Skyryse had not produced (either directly to

26   Moog or through iDS) at least 92 documents which were produced by

27   Hummingbird and that involve Skyryse e-mail addresses. (Pixley Dec., ¶ 33). And,

28   some of the documents produced by Hummingbird involving Skyryse e-mail

accounts **have still not been produced by Skyryse to this day**. (*Id*.,  ¶¶ 23-24, Exs. A-B).

### 2.  Hyde's Production

On October 25, 2022, Moog served a subpoena for documents to Hummingbird employee Rex Hyde. (Naqvi Dec., ¶ 5). On February 6, 2023, Hyde produced 196 documents in response to the subpoena. (*Id*.). Again, the production is littered with numerous examples of Skyryse employees (using Skyryse e-mail accounts and devices) possessing, disclosing to third parties, accessing, and using Moog non-public information. (Pixley Dec. ¶¶ 34-39, Exs. I-J; Crozier Dec. ¶¶ 30-38, Exs. B-1 to B-7). This includes many examples where Skyryse and Hummingbird personnel are exchanging software development plans, checklists, and templates that contain "Moog" on their face or in their metadata. (*Id*.).

Most alarmingly, as of February 17, 2023, Skyryse had not produced (either directly to Moog or through iDS) at least 88 documents which were produced by Hyde and that involve Skyryse employees and e-mail addresses. (Pixley Dec., ¶ 39).

To date, Skyryse has not produced any electronic devices belonging to the following personnel who were implicated in Hummingbird's and Hyde's production as possessing, transferring, or using Moog non-public information: Lori Bird, Chris Smith, Hussein Khimji, Stephen Wang, Ian Young, Reid Raithel, Ilan Paz, Norman Butler, Amir Hallajpour, Diane Li, Paul Kapuan, Thusa Dinh, Glenn Shintaku, and David Lee. (*Id*., ¶¶ 32, 38).

Of further concern is that, as reflected in Skyryse's May 4, 2022 letter, it did not issue litigation hold notices to the following individuals until April 21, 2022 at the earliest (more than six weeks after this case was filed): Lori Bird, Hussein Khimji, Stephen Wang, Ilan Paz, Norman Butler, Amir Hallajpour, Diane Li, Thusa Dinh and David Lee. (Dkt. 169-1, pp. 8-9). Given Skyryse's prior

1  admissions of spoliation, this raises further concerns that potentially relevant
2  evidence was spoliated after the filing of this lawsuit.

3  **J.    In February 2023, Skyryse Produces Almost 3,000 Additional**
4  **Documents From Lori Bird Laden with Moog Non-Public**
5  **Information**

6  Without any advanced notice or warning, on February 17, 2023 at 9:08 p.m.
7  PT (the business day before Moog's trade secret identification was due for
8  service), Skyryse produced 2,920 documents (totaling 24,821 pages) from Lori
9  Bird. (Naqvi Dec., Ex. A). In its cover letter, and in a transparent attempt to
10  obfuscate what really happened, Skyryse claimed it "does not have possession,
11  custody or control of non-parties' personal devices and records" but that "Skyryse
12  asked Ms. Bird to voluntarily provide information that may be relevant to the case,
13  which she has done, enabling Skyryse to make this production of documents with
14  permission from her counsel." (*Id*.).

15  Critically, ***only two of the over 230 e-mails from this production were from***
16  ***Bird's personal e-mail account*** (BIRD_SR_00000466, 536)*. *(Pixley Dec., ¶ 44).
17  ***All other e-mails involved her Skyryse e-mail account***. Moreover, the metadata
18  associated with the production shows that at least 2,300 documents originate from
19  Bird's Skyryse-issued Mac laptop (consistent with Bird's subpoena responses).
20  (*Id*., ¶ 45). Thus, contrary to Skyryse's cover letter, this was not a production from
21  Bird's personal devices or involving her personal e-mail accounts. ***This was a***
22  ***massive production of materials from Skyryse devices and e-mail accounts that***
23  ***was required to be produced by April 1, 2022 pursuant to the TRO.***

24  Skyryse evidently did not perform anywhere near a complete and adequate
25  search in attempted compliance with the TRO, because it apparently did not search
26  Bird's Skyryse-issued computer or e-mail account for documents containing Moog
27  non-public information. There is no telling what other devices and materials
28  relevant to the TRO exist, but have not been produced by Skyryse.

### K.   There is Substantial Evidence of Skyryse's Use of Moog Non-Public Information After the Date of the TRO

The various document productions from Hummingbird, Hyde, Bird, and Skyryse confirm that Skyryse has liberally referred to and used Moog non-public information after March 11, 2022, in violation of Section 7 of the TRO. Several examples are described further in the concurrently filed Pixley and Crozier Declarations.  (Pixley Dec, ¶¶ 16-18; Crozer Dec. ¶¶ 58-99, Exs. D-2 to D-6, E-1 to E-5). These examples include: 1) Skyryse's continued use of Moog's MDTE software test framework after March 11, 2022 for Skyryse's copycat SDTE test framework; and 2) Skyryse's sRTOS program (continuously modified after March 11, 2022) being essentially identical to Moog's eRTOS program. (*Id*.).

### L.   Moog Serves a Letter Demanding Immediate Compliance with the TRO

On February 21, 2023, Moog served a detailed, 26-page letter describing Skyryse's ongoing violations of the TRO, and summarized all the evidence and document productions addressed above (hereafter, the "Letter"). (Naqvi Dec., Ex. B). The Letter also addressed additional devices, repositories, and source code that contain Moog non-public information, but which had not been produced by Skyryse to date, including:

- Skyryse's Google Drive repository, which was used to share large volumes of Moog non-public information with third parties (including Hummingbird);
- Skyryse's Git source code repository (showing to what additional extent Moog non-public information was used to build Skyryse code and programs), which was only made available to Moog's experts through April 15, 2022;

- Skyryse's Polarion repository (showing the extent to which Skyryse's software plans used and incorporated Moog non-public information), which has never been produced to Moog);
- Skyryse devices issued to former Moog employee and subsequent Skyryse employee Reid Raithel, who copied large volumes of Moog data on his way out the door; and
- A Mac laptop used by Misook Kim to use and transfer Moog non-public information.

(Pixley Dec., ¶¶ 46-57; Crozier Dec. ¶¶ 100-118, Exs. F-1 to F-5, G-1 to G-3, H-1). The Letter concluded with seven specific demands involving production of certain electronic devices, repositories, and source code, to be completed by March 3, 2023. (*Id*.). Skyryse responded via letter on March 6, 2023, where it did not agree to produce ***any*** of electronic devices, repositories, or other documents demanded in Moog's Letter. (Naqvi Dec., Ex. C).

For the Court's convenience, a timeline of the above-described events relevant to this motion is provided as follows:

| Date | Event |
|---|---|
| 3/8/22 | Moog serves Skyryse with the Complaint and other Initial Filings (Dkts. 1-7). |
| 3/11/22 | Stipulated TRO is filed and entered. (Dkts. 25, 28). |
| 4/1/22 | Deadline under the TRO for Defendants to produce Moog non-public information. (Dkts. 142-2; 142-3). |
| 4/26/22 | Skyryse admits to the Court that it possesses a "concern[ing] amount of Moog non-public information, and has spoliated potentially relevant evidence. (Dkt. 95). |
| 4/29/22 | Skyryse produces additional devices and files containing Moog non-public information. (Dkt. 142-6) |

| | |
|---|---|
| **5/5/22** | Skyryse produces additional files comprising Moog non-public information. (Dkt. 142-7). |
| **6/14/22** | Skyryse acknowledges that 32 spoliated files are not recoverable and are relevant to Moog's claims. (Dkt. 156, p. 12). |
| **6/16/22** | Skyryse's counsel certifies compliance with the TRO to the Court. (6/16/22 Hrg. Tr. at 19:7-14) |
| **12/14/22** | Skyryse produces images of Skyryse-issued laptops for Achar, Chung, and Dao, all of which are laden with Moog data. |
| **1/17/23** | Hummingbird produces 120 documents in response to Moog's subpoena, showing Skyryse's possession and use of Moog non-public information, the majority of which had not previously been produced by Skyryse. |
| **2/6/23** | Hyde produces 196 documents in response to Moog's subpoena, showing Skyryse's possession and use of Moog non-public information, the majority of which had not previously been produced by Skyryse. |
| **2/17/23** | Skyryse produces 2,920 documents from Ms. Bird, littered with evidence of Skyryse's possession and use of Moog non-public information. (Naqvi Dec., Ex. A). |
| **2/21/23** | Moog serves a letter demanding immediate compliance with the TRO within 10 days. (Naqvi Dec., Ex. B). |
| **3/6/23** | Skyryse serves a response letter, and does not agree to any of Moog's requests. (Naqvi Dec., Ex. C). |

## III.   LEGAL STANDARDS

The inherent authority to impose sanctions is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs

1  so as to achieve the orderly and expeditious disposition of cases." *Id*. at 49. Federal

2  courts also "have inherent power to enforce compliance with their lawful orders

3  through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990)

4  (quotations omitted). Federal Rule of Civil Procedure 37 also authorizes the Court

5  to sanction a party for violating an order requiring a party to produce documents or

6  other evidence. *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 379-80 (9th Cir.

7  1988).

8  **IV.   ARGUMENT**

9      **A.     Moog Is Entitled to an Adverse Inference Regarding the 32**

10             **Permanently Spoliated Files**

11      "Spoliation is 'the destruction or significant alteration of evidence, or the

12  failure to preserve property for another's use as evidence[,] in pending or

13  reasonably foreseeable litigation.'" *Reinsdorf v. Skechers U.S.A. Inc.*, 296 F.R.D.

14  604, 625-26 (C.D. Cal. July 19, 2013) (internal quotations omitted).

15      Pursuant to Rule 37(e), spoliation sanctions can "include assessing attorney's

16  fees and costs, giving the jury an adverse inference instruction, precluding

17  evidence, or imposing the harsh, case-dispositive sanctions of dismissal or

18  judgment." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F.Supp.3d

19  1040, 1052-53 (S.D. Cal. 2015) (citation omitted). To obtain an adverse inference

20  for spoliation, a party must show that "(1) the party with control over the evidence

21  had an obligation to preserve it at the time of destruction; (2) the evidence was

22  destroyed with a 'culpable state of mind'; and (3) the evidence was relevant to the

23  party's claim or defense." *In re Hitachi Television Optical Block Cases*, 2011 WL

24  3563781, at *5 (S.D. Cal. Aug. 12, 2011) (internal quotations omitted). A finding

25  of bad faith is not required to justify a spoliation sanction. *Glover v. BIC Corp.*, 6

26  F.3d 1318, 1329 (9th Cir. 1993).

27      All three factors for evidentiary spoliation sanctions are warranted here.

28  *First,* there can be no dispute that Skyryse had an obligation to preserve the deleted

evidence. Not only was litigation foreseeable, it was pending and the stipulated TRO had been entered. *See Advantacare Health Partners,* 2004 WL 1837997, at *7 ("Defendants had clear notice from the TRO that the files potentially were relevant to litigation. They therefore had a duty to preserve those files, justifying an evidentiary presumption against them.").

*Second,* the timing and substance of the spoliation demonstrates a "culpable state of mind." It is undisputed that the necessary culpable state of mind includes negligence. *See FTC v. Lights of America Inc.*, 2012 WL 695008 at *2 (C.D. Cal. Jan. 20, 2012). The deleted files are, by Skyryse's admission, likely related to Moog "wire and cable schematics" that Wang brought to Skyryse for reference. (Dkt. 156, p. 13). These were technical Moog files deleted by a former Moog employee and subsequent Skyryse employee after this lawsuit was filed. This leads to a more than reasonable inference that, in a case focused on the misappropriation of Moog data by former Moog employees, the deletion of evidence was purposeful to avoid discovery in this case. *See Porter v. City & Cty. of San Francisco*, No. 16-03771-CW-DMR, 2018 WL 4215602 at *3 (N.D. Cal. Sept. 5, 2018) ("Rule 37(e)(2)'s intent requirement" is satisfied when it is "reasonable to infer" that the "party purposefully destroyed evidence to avoid its litigation obligations.").

*Finally*, there can be no dispute that the 32 permanently deleted files are potentially relevant to the claims and defenses in the case. The critical inquiry is whether the Defendants had "some notice that the documents were potentially relevant." *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). As described above, the deleted evidence is indisputably relevant to Moog's claims. These are not documents touching on peripheral issues—they go to the heart of the case**,** Moog's claims for misappropriation.

Having established spoliation, the burden shifts to Skyryse to show no prejudice. *See Mfg. Automation & Software Sys., Inc. v. Hughes*, No. CV 16-8962-CAS (KSX), 2018 WL 5914238, at *11 (C.D. Cal. Aug. 20, 2018*) (* When

"spoliation is shown, the burden shifts to the guilty party to demonstrate that no prejudice resulted from the spoliation."). But, Skyryse cannot meet that burden. Thirty-two files are not recoverable and permanently deleted. Moog has been prejudiced in that it can never access these documents, or investigate how they were used by Skyryse. *See National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("Obviously, the relevance of and resulting prejudice from destruction of documents cannot be clearly ascertained because the documents no longer exist. Under the circumstances, [Defendants] can hardly assert any presumption of irrelevance as to the destroyed documents.").

Accordingly, in addition to the monetary sanctions requested below, Moog is entitled to an adverse inference regarding the 32 permanently spoliated and relevant files. The Court should issue an adverse inference to the jury at trial that the 32 permanently deleted files were unfavorable to Skyryse, and should permit Moog to address the spoliation at any trial or other evidentiary hearing. These modest sanctions are appropriate and in line with adverse inferences issued by this Court in similar circumstances. *See teamLab Inc. v. Museum of Dream Space, LLC*, No. 219CV06906VAPGJSX, 2022 WL 1590746, at *4 (C.D. Cal. Mar. 10, 2022) (instructing jury that "it may infer that the contents of the deleted messages were unfavorable to Defendants, and will also permit Plaintiff to discuss Defendants' spoliation at trial."); *See Holloway v. Cnty. of Orange*, No. SACV1901514DOCDFMX, 2021 WL 454239, at *3 (C.D. Cal. Jan. 20, 2021) (ordering instruction to the jury that included "relevant evidence was destroyed after the duty to preserve arose" and "the lost evidence was favorable to Defendants").

**B.    Moog is Entitled to Sanctions for Skyryse's Contempt of the TRO**

This is not a scenario involving one or two minor violations of the TRO. Skyryse has consistently and repeatedly violated *at least five different provisions* in the TRO since its entry. These violations undermine the primary purposes of the

TRO. Moog is forced to file this Motion and seek sanctions for contempt because after one year it has become evident that without Court intervention, Skyryse will not comply with its Court-ordered obligations. Moog cannot be kept in the dark regarding whether the TRO has been fully complied with.

"[F]ederal courts have inherent and statutory authority to punish failure to obey the terms of a temporary restraining order." *Michaels v. Internet Ent. Grp., Inc.*, No. CV-98-0583DDP(CWX), 1998 WL 35242549, at *2 (C.D. Cal. Feb. 27, 1998)**.** Courts in this circuit look at the following factors: "(1) that [a party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) "The burden then shifts to the contemnors to demonstrate why they were unable to comply.... They must show they took every reasonable step to comply." *Id.* (internal citations omitted). Skyryse's serial violations meet all the factors required for the imposition of sanctions for civil contempt.

### 1. Skyryse Has Consistently and Repeatedly Violated the TRO

#### a. Skyryse Has Admittedly Spoliated Relevant Evidence

Sections 5 and 9 of the TRO required all parties to preserve all electronic devices, e-mail servers, and networks. (Dkt. 25, §§ 5, 9). As described above, there can be no dispute that Skyryse did not comply with this order given its own counsel's disclosures on April 26, 2022 and the admitted permanent deletion of 32 potentially relevant files were not recoverable. (Dkt. 156, p. 12).

#### b. Skyryse Has Produced Large Volumes of Moog Non-Public Information After April 1, 2022

Section 2 of the TRO required Skyryse to produce to Moog or iDS, on or before April 1, 2022, all Moog non-public information in its possession, custody or control. (Dkt. 25, § 2). There can be no dispute that Skyryse repeatedly violated this provision by producing several electronic devices and documents containing

1   Moog non-public information well after April 1, 2022. This includes the

2   production of three Skyryse computers on December 2, 2022, as well as almost

3   3,000 documents from Lori Bird's Skyryse-issued laptop and e-mail address on

4   February 17, 2023, both productions laden with Moog non-public information.

5   (Naqvi Dec., Ex. A).

6            c.      **Skyryse Has Repeatedly Used Moog Non-Public**

7                    **Information After April 1, 2022**

8            Sections 1 and 7 of the TRO required Skyryse to stop using and referring to

9   Moog non-public information. (Dkt. 25, §§ 1, 7). Indeed, this was the primary

10  injunctive relief that Moog required given the volume of misappropriated data in

11  the case. The evidence of Skyryse's repeated use of Moog trade secrets after entry

12  of the TRO is staggering.

13           As described in the Pixley and Crozier Declarations, there is substantial

14  evidence that Skyryse possessed, transferred, and used Moog non-public

15  information after March 11, 2022, including by: 1) exchanging Moog non-public

16  information with third parties; and 2) building software programs and verification

17  plans that are nearly identical to corresponding Moog programs and plans. (Pixley

18  Dec, ¶¶ 16-18; Crozer Dec. ¶¶ 58-99, Exs. D-2 to D-6, E-1 to E-5). The side by

19  side comparisons of Skyryse and Moog documents in Crozier's Declaration are

20  striking.

21           2.      **Skyryse's Violations Were Not Made Based on a Good**

22                   **Faith Interpretation of the TRO**

23           The "good faith" exception to the general rule that intent is irrelevant in civil

24  contempt proceedings, by its terms, "only applies where a defendant's

25  interpretation is 'reasonable.'" *Inst. of Cetacean Rsch. v. Sea Shepherd*

26  *Conservation Soc'y*, 774 F.3d 935, 953 (9th Cir. 2014).  Where the meaning in the

27  injunction is not disputed or ambiguous, the exception does not apply.  *Id*. at 953-

28  54. Where a violation is "contrary to the plain language of the injunction," then

"[n]o reasonable interpretation of the Injunction would lead to the conclusion that the conduct was permitted." *Henry Schein, Inc. v. Certified Bus. Supply, Inc.*, No. SA-CV-03-1662-DOC, 2008 WL 9452685, at *8 (C.D. Cal. Aug. 20, 2008).

This is not a scenario involving a few ministerial violations of the TRO. Over the past year, Skyryse has repeatedly violated multiple core provisions of the TRO. While Moog could have sought contempt sanctions much earlier in the case, to avoid burdening this Court with such a motion, it tried to work with Skyryse over the past year to obtain compliance. Unfortunately, Moog has been left with no choice given Skyryse's repeated and ongoing violations.

There can be no good faith interpretation of the TRO that justifies the permanent spoliation of 32 potentially relevant files after March 11, 2022. Skyryse could have, but elected not to, implement appropriate litigation holds or anti-deletion measures on its systems and employees' electronic devices. Skyryse did not issue a litigation hold to several critical personnel (including Lori Bird) until at least six weeks into the litigation. (Dkt. 169-1, pp. 8-9). Skyryse will no doubt argue that Wang acted against the directives of Skyryse and its counsel, but, that is no defense. Corporate entities act through their employees, and Skyryse is responsible for Wang's spoliation. *See, e.g., Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 518CV00420JGBSHK, 2020 WL 1496444, at *7 (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted*, No. 518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) ("[a]n entity and employee defendants can both be under a duty to preserve, and therefore culpable for spoliation of ESI, even if one or the other is directly responsible for the destruction of evidence").

There can be no good faith interpretation that justifies Skyryse's continued use of Moog non-public information after March 11, 2022.  The primary purpose of the TRO is to put an end to Skyryse's use of Moog non-public information. *See Stanley Black & Decker, Inc. v. D & L Elite Invs., LLC*, No. 12-4516 SC, 2013 WL

3799583, at *3 (N.D. Cal. July 19, 2013) (finding "civil contempt sanctions against Defendants are appropriate" for violating terms of TRO). Skyryse evidently did not make any good faith efforts to stop its employees' use of Moog non-public information. And, Moog has limited insight into this issue because Skyryse has not produced its source code beyond April 2022 and several other critical devices and files. (Crozier Dec., ¶¶ 110-116).

There can be no good faith interpretation that justifies Skyryse's possession of large volumes of Moog non-public information after the April 1, 2022 turnover deadline, as evidenced by its serial productions containing additional evidence of Moog non-public information in its possession. Skyryse's bad faith is highlighted by its most recent production of nearly 3,000 documents from its former personnel Lori Bird on February 17, 2023, almost one year after the April 1, 2022 turnover deadline. Skyryse falsely claimed it was a personal production from Ms. Bird; however, the reality is that all but two e-mails involved Ms. Bird's Skyryse-issued laptop or e-mail account. Skyryse evidently did not search Bird's computer and e-mail account at the outset of this case to comply with the TRO.

Skyryse will likely argue that it has not violated the TRO because Moog has not sufficiently identified its trade secrets. This argument fails and is a red herring for several reasons. *First,* the stipulated TRO did not require any identification of trade secrets or non-public information before Skyryse's compliance. And, "non-public information" was intentionally used as a term in the stipulated TRO to indicate that the standard for turnover was not equivalent to trade secrets. Skyryse agreed to and stipulated to the broader language.  So, Moog's trade secret identification is irrelevant to Skyryse's compliance with the TRO. *Second,* the stipulated TRO intentionally did not contain any identification requirement by Moog by design. In order to avoid an adverse ruling and hearing on the merits of Moog's Motion for TRO/Preliminary Injunction, Skyryse agreed to turn over all Moog non-public information by April 1, 2022. Skyryse never raised a challenge

before the April 1, 2022 production deadline. It cannot now shift the burden to Moog and blame Moog for purportedly failing to identify its trade secrets almost one year after the April 1, 2022 turnover deadline. *Third,* the notion that Moog, without any access to Skyryse's employees or systems, is responsible for identifying the information that Skyryse must refrain from using is illogical. *The misappropriation at issue occurred by Skyryse's employees, using Skyryse's systems and devices*. Skyryse is the only party with familiarity with its own systems and employees to carry out its obligations under the TRO. *Fourth,* with no obligation to do so, Moog provided significant information to Skyryse to help it identify Moog non-public information (*see* Section II.C above). Even then, Skyryse could not comply with the requirements it bargained for and agreed to. *Fifth,* Skyryse clearly had an understanding of what constitutes Moog non-public information because before Moog ever served its trade secret identification, it produced dozens of electronic devices and tens of thousands of files that contain Moog non-public information. Skyryse also employed, and still employs, multiple former Moog employees who could help it identify Moog non-public information. If Skyryse truly did not know what Moog non-public information was at issue, it would have produced nothing in this case.

### 3.    Moog is Entitled to Inspect Skyryse's Systems

Given Skyryse's spoliation of evidence, failure to produce Moog non-public information on its systems, and continued use of Moog non-public information, Moog is entitled to an order authorizing Moog's experts to conduct a physical inspection of Skyryse's electronic devices and systems.

In *Advantacare*, the Court issued a preliminary injunction ordering the return of plaintiff's property in connection with misappropriation of trade secrets and unfair competition claims. *See Advantacare Health Partners v. Access IV*, No. C 03-04496 JF, 2004 WL 1837997, at *8 (N.D. Cal. Aug. 17, 2004). The Court found that not all of the computer files belonging to plaintiffs had been returned, in

1   violation of the preliminary injunction, and therefore ordered the Defendants to
2   "demonstrate compliance affirmatively." *Id*. at *9.  The Court also ordered,
3   pursuant to its power to award civil contempt sanctions, that "Plaintiffs then may
4   examine Defendants' hard drives to ensure that the files have been deleted." *Id*. at
5   *9.

6        Here, because Skyryse has proven it cannot be trusted to identify Moog's
7   non-public information, permitting physical inspection by Moog's experts is now
8   the only way to ensure that all Moog non-public information will be excised from
9   Skyryse's systems.

10              **4.    Immediate Compliance with the TRO is Required**

11       As described in Moog's February 21, 2023 Letter, there are various
12  electronic devices and repositories containing Moog non-public information that
13  have still not been produced by Skyryse as required under the TRO. As described
14  in the Letter and above, the Court should issue an order requiring the following
15  within 14 days:

16       • Production of Skyryse-issued electronic devices issued to Lori Bird,
17         Chris Smith, Hussein Khimji, Stephen Wang, Ian Young, Reid Raithel,
18         Ilan Paz, Norman Butler, Amir Hallajpour, Diane Li, Paul Kapuan, David
19         Lee, Mario Brenes, Glenn Shintaku, and Thusa Dinh;

20       • Production of Skyryse's Google Drive Account;

21       • Moog's Inspection of Skyryse's Polarion Repository;

22       • Moog's Inspection of Skyryse's source code, updated through the date of
23         the order on this Motion; and

24       • Production of Kim's Mac Laptop. (Naqvi Dec., Ex., B, pp. 25-26).

25  ///
26  ///
27  ///
28  ///

### C.     Monetary Sanctions Are Also Appropriate

#### 1.     Moog Should be Awarded Reasonable Attorneys' Fees and Costs for Skyryse's Contempt

The court also has discretion to award attorneys' fees to the moving party incurred for bringing the civil contempt motion. *Harcourt Brace Jovancovich Legal and Prof'l Publications, Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994). Attorneys' fees may be awarded even when the contempt is not "willful." *See Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985).

Moog would be justified in seeking a large amount of attorneys' fees and costs in connection with seeking Skyryse's compliance. This would include fees incurred for filing prior motions to compel and serving letters detailing Skyryse's non-compliance. However, Moog now only seeks its reasonable attorneys' fees incurred in connection with the investigation leading up to and the filing of this Motion, totaling $34,850. (Naqvi Dec. ¶ 9).[1]

#### 2.     In the Alternative, Moog is Also Entitled to Monetary Sanctions Under Rule 37(b)

To the extent the Court is not prepared to impose monetary sanctions on Skyryse for civil contempt, it should impose them under Rule 37(b)(2). This Rule permits imposition of a sanction where it is "'just'" and "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (citations omitted).

---

[1] The Court should also exercise its discretion to impose additional monetary sanctions against Skyryse as a coercive action. *See Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, No. EDCV141926JAKSPX, 2016 WL 6609208, at *27 (C.D. Cal. July 12, 2016), report and recommendation adopted, No. EDCV1401926JAKSPX, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016) (sanctioned party failed to properly institute a litigation hold, had made repeated misrepresentations to the Court, violated Court's order, and spoliated evidence, and holding that monetary sanctions can be awarded to "punish unacceptable behavior, and as a deterrent to future bad conduct.")

1    While the TRO is not a standalone discovery order, it falls under Rule 37(b)
2  because it is a restraining order or preliminary injunction that requires the
3  production of documents and other evidence. *See WeRide Corp. v. Kun Huang*, No.
4  5:18-CV-07233-EJD, 2020 WL 1967209, at *10 (N.D. Cal. Apr. 24, 2020)
5  (because the PI forbade parties from concealing, disposing, deleting, or altering
6  documents relating to confidential information, it was an "order to provide or
7  permit discovery" under Rule 37(b)). For the reasons described above warranting
8  contempt sanctions, Moog is entitled to monetary sanctions in the alternative under
9  Rule 37(b).

10 **V.    CONCLUSION**

11    For the foregoing reasons, Moog respectfully requests the following relief:

12    1.    An adverse inference for Skyryse's permanent spoliation of 32
13          potentially relevant files, in the form of an instruction to the jury at
14          any trial that the deleted files were unfavorable to Skyryse, and also
15          that Moog is permitted to address the spoliation at trial;

16    2.    An order authorizing Moog's experts to conduct a physical inspection
17          of Skyryse's systems and electronic devices in Skyryse's offices on a
18          mutually agreeable week within 30 days of the Court's order;

19    3.    An order compelling the production of the electronic devices and data
20          sources identified in Section IV.B.5 above, within 14 days; and

21    4.    An award of monetary sanctions for reasonable attorneys' fees and
22          costs in the amount of $34,850 against Skyryse and its counsel, jointly
23          and severally.

24  Dated: March 16, 2023          SHEPPARD MULLIN RICHTER & HAMPTON LLP

25                                  By    _____*/s/ Rena Andoh*_____
26                                              Rena Andoh

27                                      Attorney for Plaintiff and Counterdefendant
28                                      MOOG INC.

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Moog Inc., certifies that this

3   brief contains 6,999 words, which:

4      _X_ complies with the word limit of L.R. 11-6.1.

5      ___ complies with the word limit set by Court order dated _____.

6

7   Dated:  March 16, 2023          SHEPPARD MULLIN RICHTER & HAMPTON LLP

8                                      By   _____
                                              */s/ Rena Andoh*
9                                               Rena Andoh

10                                       Attorney for Plaintiff and Counterdefendant
                                              MOOG INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28