**EXHIBIT A**

**Kelley M. Storey**
Direct Dial: +1.202.6372317
kelley.storey@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

February 17, 2023

VIA E-MAIL AND LATHAM SECURE TRANSFER

Kazim Naqvi
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
knaqvi@sheppardmullin.com

Re:   *Moog Inc. v. Skyryse, Inc., et al.*, No. 1:22-cv-00187 (W.D.N.Y.)

Dear Kazim:

Contemporaneously with this letter, we are sending you an email containing a link that will allow you to download Skyryse's production of documents from non-party Lori Bird's personal devices and records.  The documents in this production constitute production volume BIRD_SR_001 and are bates stamped BIRD_SR_00000001 through BIRD_SR_00000992.

As you know, Skyryse does not have possession, custody, or control of non-parties' personal devices and records and is not in the practice of maintaining such records for non-parties. Consistent with its past practice and in a good-faith effort to move discovery forward, however, Skyryse asked Ms. Bird to voluntarily provide information that may be relevant to the case, which she has done, enabling Skyryse to make this production of documents with permission from her counsel.  This production should not be construed as an admission that Skyryse has possession, custody, or control over the personal devices or records of non-party employees and former employees.  Nor should it be construed as an admission that any of the documents being produced are responsive to Moog's discovery requests or relevant to the parties' claims and defenses.

In addition, as we've explained to you in the past, only Moog, and not Skyryse or Ms. Bird, is in a position to know what Moog believes is Moog Confidential Information.  This is especially true because Moog has yet to identify its own trade secrets in this action.  Accordingly, the production of these documents is not and in no way should be construed as her or any party's agreement that any of the documents in fact do contain Moog Confidential Information.  Out of an abundance of caution, documents over which Moog might assert a confidentiality interest pursuant to the Protective Order entered on May 6, 2022 have been designated as "Highly Confidential – Attorneys' Eyes Only."  Please identify by February 24, 2023, the level of protection, if any, that Moog asserts over any such documents.

By making this production, Skyryse and Ms. Bird do not intend to and do not waive any attorney-client privilege, work product, or any other privilege or protection.  To the extent that any

February 17, 2023
Page 2

**LATHAM&WATKINS** LLP

of the information produced is subject to a claim of privilege or protection, such production is inadvertent and Skyryse and Ms. Bird reserve the right to claw back such information and materials. Skyryse and Ms. Bird further reserve the right to claim additional privileges and protections with respect to the materials covered by its productions.

Very truly yours,

Kelley M. Storey

cc:     All Counsel of Record

# EXHIBIT B

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT C**

**Gabriel S. Gross**
Direct Dial: +1 (650) 463-2628
gabe.gross@lw.com

140 Scott Drive
Menlo Park, California  94025
Tel: +1.650.328.4600  Fax: +1.650.463.2600
www.lw.com

# LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

March 6, 2023

**<u>VIA E-MAIL</u>**

Rena Andoh
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
randoh@sheppardmullin.com

      Re:     *Moog Inc. v. Skyryse, Inc., et al.*, No. 2:22-cv-09094-GW-MAR (C.D. Cal.)

Dear Ms. Andoh:

      We write in response to Moog's 44-page letter dated February 21, 2023, in which you claim Skyryse is in violation of the parties' March 11 stipulation and demand a response, including the wholesale production of fourteen individuals' entire devices to Moog, within just ten days. Skyryse disagrees with your accusations but takes these issues seriously, is investigating them, and will respond to each issue shortly. Your demands for immediate responses and productions, however, are unworkable, unrealistic, and not productive.

      Your letter reflects Moog's current view of certain disputed facts based on nearly a year's worth of one-sided discovery Moog has taken before it even attempted to identify for Skyryse what Moog's alleged trade secrets are. Until February 21, 2023, Moog had not shared its view of these facts with us, or identified the purported trade secrets or non-public information it believes are subject to the March 11 stipulation (and Moog's recent trade secret identification is deficient for reasons we have addressed separately).

      Since our firm was first engaged in this matter, we have invited Moog to cooperate and participate in Skyryse's process to search for any of Moog's potentially confidential information to confirm that it had not made its way into Skyryse's systems, or if it had, to ensure it was removed. Moog repeatedly declined, making it difficult for Skyryse to discern what confidential or non-public information Moog believes is at issue. Instead, Moog spent most of the last year delaying its identification of its trade secrets, while taking discovery from dozens of sources. In the meantime, Skyryse went to great lengths to provide extensive discovery to Moog, including entire devices, source code repositories, and business records.

      After finally being forced to provide a trade secret identification by the court, on February 21 Moog served a document referring to roughly 300,000 documents it claims "reflect" its trade secrets, but still without specifying what they are or how they differ from information gen-

**LATHAM&WATKINS**LLP

erally known in the industry. That same day, you sent your 44-page letter, claiming Skyryse some-how violated the parties' stipulation by having not previously provided discovery about Moog's confidential information, which Moog had not previously identified.

These tactics make clear that Moog is less concerned about protecting its alleged trade secrets than it is about exerting maximum litigation pressure and burden on Skyryse. Nevertheless, Skyryse is investigating the issues you raised and will respond in due course. That said, we are compelled to respond to several of the inaccuracies and mischaracterizations in your letter.

*First*, Skyryse rejects Moog's claims that it has violated the March 11 stipulation. Skyryse has timely and substantially complied with the stipulation, its discovery obligations, and the court's orders. Skyryse has spent nearly a year producing incredible amounts of discovery to Moog, more than is often exchanged over the lifetime of such a case. Skyryse has provided roughly *four tera-bytes* of data in "expedited discovery" (which is equivalent to roughly 300 million pages' worth of text). This includes Skyryse turning over a number of computers and other devices and all of their contents in their entirety; making Skyryse's source code available for inspection; and running tens of thousands of search terms that Moog provided—many of which were facially irrelevant and inappropriate—in a herculean effort to collect and provide information from numerous custo-dial and non-custodial sources. Moog, on the other hand, has produced only minimal discovery to Skyryse, and has failed to supplement its interrogatory responses as required. As you know, more than seven months ago, the court in New York requested that Moog identify the discovery it claimed was *necessary* to identify its own trade secrets in this action. (Dkt. No. 205.) Magistrate Judge McCarthy then rejected the majority of Moog's positions and ordered the production of a fraction of the information Moog initially demanded. (Dkt. No. 292.) Skyryse timely provided that discovery and there is no basis to claim that production violated the March 11 stipulation.

Your letter claims that Skyryse violated the March 11 stipulation purportedly by not turn-ing over information that Moog has separately received from third parties in discovery. We disa-gree. Regardless, your letter confirms that for months Moog has sat on information relevant to its claims, rather than promptly disclosing it, for example, by supplementing Moog's discovery. As just a few examples, Skyryse's Interrogatory No. 4 required Moog to explain "all locations, both physical and electronic," where copies of its alleged trade secrets were stored and when; and In-terrogatory No. 9 required Moog to explain "how each Defendant allegedly improperly used or disclosed each alleged Trade Secret"—yet Moog has not provided such information. According to your February 21 letter, Moog apparently believes that certain of its trade secrets (which it still has not yet specified), have been in the possession of third parties like Hummingbird or Rex Hyde. But Moog hasn't supplemented its interrogatory responses to disclose any of this in a timely man-ner, which would have permitted Skyryse to investigate it earlier, preferring instead to surprise Skyryse with its 44-page letter the same day Moog served its deficient trade secret identification. In any event, we are investigating the issue and will supplement Skyryse's discovery if needed.

*Second*, while you claim "that Skyryse has still not produced large volumes of Moog non-public information in its possession, custody or control," it appears that a majority of the docu-ments that you claim Skyryse did not provide in discovery were, in fact, produced to Moog.

**LATHAM&WATKINS**LLP

*Third*, Skyryse rejects Moog's claim that it made a "bad faith production" of Lori Bird's documents, which is false. Skyryse has gone to extraordinary lengths to preserve and provide an enormous amount of discovery, as we describe above. As discovery and Skyryse's investigation has continued, it has supplemented its discovery when appropriate and as contemplated by Rule 26(e). This included providing materials from Lori Bird, an independent contractor who was never directly employed by Skyryse and did not work at Skyryse's facilities. Skyryse will continue to honor its obligation to supplement its discovery when required, and we expect the same of Moog.

As we have stated before, "Skyryse does not have possession, custody, or control of non-parties' personal devices and records and is not in the practice of maintaining such records for non-parties." Nonetheless, Skyryse has asked third parties "including Ms. Bird to voluntarily provide information that may be relevant to the case," which she has done. Skyryse has investigated your statement that some of Ms. Bird's records came from a Skyryse-issued computer. Based on Skyryse's investigation, and without waiving applicable privileges or work product protections, we have identified and resolved an inadvertent mistake by Skyryse's e-discovery vendor. Before resolving this issue, we had understood that the produced documents relating to Ms. Bird were collected from personal devices and records, but now understand that some of these documents were collected from a Skyryse-issued computer as you noted.

Regardless, you and Moog now have this discovery relating to Ms. Bird, much of which you admit is "identical" and thus duplicative of discovery Moog already obtained from other sources. Moog received this discovery before any depositions have been taken, before the parties have participated in a Rule 26(f) conference, and before any proceedings on the merits have occurred. There is no undue prejudice to Moog from Skyryse supplementing its discovery and providing additional documents. There was no "bad faith," or "attempt to pull the wool over Moog's (and the Court's eyes)," or "violation" of the March 11 stipulation as you argue—to the contrary, Skyryse disclosed and produced these documents in the early stages of this case.

*Fourth*, as of February 21, Moog claims that Reid Raithel, while working at Moog, copied certain files from his Moog laptop onto a USB drive, which you argue is evidence that "Raithel evidently misappropriated large volumes of Moog data." This appears to be another example of Moog having known about relevant, discoverable information for roughly a year, and choosing to conceal it from Skyryse until it was expedient for Moog to disclose. For example, Moog has not produced to iDS or to Skyryse the files it claims Mr. Raithel copied (which Moog should do immediately), and until February 21 did not even disclose that Mr. Raithel allegedly made such copies while working at Moog. This failure is a violation of Moog's discovery obligations, and made it impossible for Skyryse to thoroughly investigate Moog's new accusations earlier. We are investigating this issue as well, and will supplement Skyryse's discovery if needed.

**March 6, 2023**
**Page 4**

**LATHAM&WATKINS** LLP

Very truly yours,

Gabriel S. Gross

cc: All counsel of record