Rena Andoh (admitted *pro hac vice*)
  randoh@sheppardmullin.com.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Lai L. Yip (SBN 258029)
  lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

Travis J. Anderson (SBN 265540)
  tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691

Kazim A. Naqvi (SBN 300438)
  knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

Attorneys for Plaintiff and
Counterdefendant Moog Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC., <br><br> Plaintiff, <br><br> v. <br><br> SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS.1-50, <br><br> Defendants. | Case No. 2:22-cv-09094-GW-MAR <br><br> **PLAINTIFF AND COUNTERDEFENDANT MOOG INC.'S OPPOSITION TO DEFENDANT AND COUNTERCLAIMANT SKYRYSE, INC.'S *EX PARTE* APPLICATION TO CONTINUE HEARING ON MOOG'S MOTION TO ENFORCE COMPLIANCE WITH MARCH 11, 2022 STIPULATED TRO AND FOR** |

| | |
|---|---|
| 1 | **MONETARY AND ADVERSE** |
| 2 | **INFERENCE SANCTIONS** |
| 3 | [*Filed concurrently with Declaration of* |
| 4 | *Kazim A. Naqvi*] |
| 5 | Judge:   Hon. George H. Wu |
| 6 | Ctrm.:   9D |
| 7 | Complaint Filed:       March 7, 2022 |
| 8 | Counterclaims Filed: January 30, 2023 |

## I. **INTRODUCTION**

Skyryse burdens this Court with an "emergency" *ex parte* application (the "Application"), where there is actually no emergency at all. Skyryse claims that it seeks *ex parte* relief because it needs more time to oppose Moog's Motion to Enforce Compliance with the TRO and for Sanctions (the "Motion to Enforce"). This is specious—as Moog **already** offered to give Skyryse the lengthy continuance it seeks. In reality, Skyryse just wants to push out the hearing date on the Motion to Enforce so that its unmeritorious Motion to Stay (Dkt. 392) can be heard first. Skyryse hopes that in so doing, its Motion to Stay can be granted before Moog can obtain relief for Skyryse's ongoing and flagrant violations of the stipulated TRO. The Court should reject Skyryse's gamesmanship and deny the Application for at least three reasons.

First, there are no exigent circumstances. Moog offered to give Skyryse a lengthy continuance to file its opposition to the Motion to Enforce (an additional 21 days or more), as long as the Motion to Enforce and Motion to Stay were heard concurrently. This makes sense given that both Motions were filed just one day apart and were both properly noticed for hearing on April 13, 2023. Moog even offered to give Skyryse a much longer extension for its opposition compared to Moog's opposition. Skyryse's Application fails to reference these offers, and its submission to the Court does not include the full meet and confer e-mail thread demonstrating the full extent of the equitable offers made by Moog.

Second, Moog would be substantially prejudiced by a unilateral continuance of the hearing on the Motion to Enforce such that the Motion to Stay is heard first. Skyryse has repeatedly violated each of the core tenets of the March 11, 2022 stipulated TRO (Dkts. 25, 33) by admittedly spoliating relevant evidence, using Moog's non-public information, and failing to produce large quantities of Moog non-public information. Moog requires relief now. It would be patently unfair for Skyryse to have the opportunity to obtain a stay of the entire case before Moog's

Motion to Enforce is heard. Skyryse's intent in this is clear – it wants to have the case stayed such that Moog has no ability to seek recourse with respect to its Motion to Enforce.[1] Skyryse does not get to jump the line simply because it seeks, in contravention of the law of the case in this matter prior to transfer, a second opportunity to stay this case on the same facts as before.

Finally, Skyryse does not establish why it cannot oppose Moog's Motion to Enforce within the statutory deadlines. Skyryse is represented by one of the largest law firms in the world, with eight counsel of record. All the documents addressed in the Motion to Enforce have been available to Skyryse for several months. Indeed, Moog sent Skyryse a 44-page letter more than one month ago, on February 21, 2023 (the "Letter") (Dkt. 399-1), detailing each of the issues contained in the Motion to Enforce, and identifying the vast majority of the documents cited in the Motion to Enforce. In fact, starting on February 22, 2023, Skyryse made repeated representations to Moog over the course of the last month that it has been actively investigating all of the allegations contained in the Letter – this is far from a situation where Skyryse has been caught by surprise.[2] Moog is prepared to oppose the Motion to Stay and the Individual Defendants' joinder thereto (essentially two separate motions with separate legal arguments) within the same statutory deadline faced by Skyryse. Merely desiring more time to oppose a motion (even though it has been offered to Skyryse) is not sufficient grounds to burden this Court with an emergency application.

Skyryse's Application should be denied in full. To the extent the Court is inclined to grant the Application, Moog respectfully requests that the hearing on Skyryse's Motion to Stay also be continued to May 15, 2023.

---

[1] Moog asserts that any stay, even if granted, should apply only to discovery, but it is clear from the Motion to Stay that Skyryse disagrees with that position.

[2] Skyryse further asserts that it needs to depose the experts that provided declarations describing the evidence in support of the Motion to Enforce – a highly unorthodox and unjustified delay tactic.

## II. FACTUAL BACKGROUND

### A. The Stipulated TRO

After being served with the Complaint and initial filings on March 8, 2022, three days later on March 11, 2022, Defendants stipulated to the form of relief that Moog sought in its Motion for TRO/Preliminary Injunction, which was entered by presiding Article III District Judge Lawrence J. Vilardo as a Court order. (Dkt. 25). The Stipulated TRO included explicit provisions requiring Skyryse to: 1) stop accessing or using Moog non-public information; 2) produce all Moog non-public information in its possession by April 1, 2022; and 3) preserve all relevant electronic devices and evidence. (Dkt. 25, §§ 1, 2, 5, 7, 9).

### B. Skyryse's Admission of Possession of Moog Non-Public Information and Spoliation of Evidence

In an April 26, 2022 Conference with the Court, Skyryse's counsel disclosed the following regarding Skyryse's possession of Moog non-public information:

- "We have discovered that there is . . . likely, [Moog] non-public information at Skyryse" (4/26/22 Transcript (Dkt. 95), 17:24-18:3);
- "we have found enough [Moog non-public information] that it does – it causes us concern" (*Id*., 18:12-13);

Regarding deletion of data, Skyryse's counsel disclosed the following:

- "since the complaint was filed certain information has been deleted." (*Id*. at 18:17-18);
- "an alarming series of deletions" (*Id*. at 19:4-5);
- "some of the information deleted may not be recoverable" (*Id*. at 19:5-6).

Skyryse's counsel further disclosed that defendants Kim and Pilkington had been terminated from Skyryse, and that 15 Skyryse employees had been placed on administrative leave. (*Id*. at 15:4, 20:5-12, 21:1-2).

Skyryse later confirmed through various filings ***that 32 deleted files were not recoverable***. (Dkt. 156, p. 12). These files were deleted by former Moog

employee and subsequent Skyryse employee Alex Wang *from his Skyryse-issued computer*. (*Id.*). The permanently deleted files are, by Skyryse's admission, clearly relevant to this case: "the investigation leads Skyryse to believe that some of Wang's deleted files likely *relate to wire and cable schematics that Wang created and brought with him from Moog and that he used as a reference while working at Skyryse*." (*Id.*, p. 13, emphasis added).

    **C.**    **Moog's February 21, 2023 Letter Demanding Immediate Compliance with the TRO**

On February 21, 2023, Moog served the "Letter". The Letter described in detail the following:

- Skyryse's historical violations of the TRO, including by spoliating potentially relevant evidence and failing to produce large volumes of Moog non-public information by the April 1, 2022 production deadline (*id.*, pp. 2-3);
- Skyryse's failure to produce electronic devices and documents containing Moog non-public information, including large volumes of documents that were produced by several third parties (and where Moog identified several hundred documents by Bates label that had not been timely produced) (*id.*, pp. 3-18);
- Several, detailed examples of Skyryse's use of Moog non-public information after entry of the TRO (including by citing to specific documents by bates label or file path) (*id.*, pp. 22-24); and
- Skyryse's failure to produce other devices and repositories containing Moog non-public information (*id.*, pp. 20-25).

The next day, on February 22, 2023, Skyryse's counsel represented it was "reviewing [the] letter, looking into the issues, and will be working with our client to address them promptly." (Declaration of Kazim A. Naqvi ("Naqvi Dec."), Ex. A). In a March 6, 2023 response letter, Skyryse refused to produce any of the data

demanded by Moog, but represented that it was conducting a diligent investigation. (Dkt. 400-2).

### D.     Moog's Motion to Enforce and for Sanctions

On March 16, 2023, Moog filed its Motion to Enforce with the hearing noticed for April 13, 2023. (Dkts. 399, 400). The Motion to Enforce explained Skyryse's historical and ongoing violations of the TRO, which was described in the Letter. (*Id*.). The Motion to Enforce was also accompanied by Declarations from Moog's experts Bruce Pixley and Kevin Crozier (Dkts. 399-4, 399-5), which laid out the Moog non-public information that Skyryse had in its possession but not timely produced, and Skyryse's use of Moog non-public information after entry of the TRO. All of the documents cited or referenced in the declarations: 1) had already been produced in the litigation several months ago; or 2) were files from Moog devices produced to neutral vendor iDiscovery Solutions ("iDS") that Skyryse has had full access to for at least 8 months, but which Moog recently processed and produced to Skyryse for use in filings. The Motion to Enforce sought, among other things, adverse inference sanctions for Skyryse's spoliation, an order allowing Moog to physically inspect Skyryse's systems, as well as monetary sanctions.

On March 9, 2023, Moog's counsel met and conferred with Skyryse's counsel pursuant to L.R. 7-3, and laid out in detail the grounds for the Motion to Enforce including all the relief sought therein. (Naqvi Dec., ¶ 5).

### E.     Skyryse's Motion to Stay and the Individual Defendants' Joinder

On March 15, 2023, Skyryse filed a 31-page Motion to Stay the case with the hearing noticed for April 13, 2023. (Dkt. 392). The Parties met and conferred regarding this motion on February 22, 2023, such that it was always dual tracked with the meet and confer on Moog's Motion to Enforce. (*Id*., p. 2). On March 16, 2023, the Individual Defendants filed a 10-page joinder to the Motion to Stay, which set forth different arguments and legal authority. (Dkt. 393). The Motion

and Joinder were filed notwithstanding the fact that Defendants unsuccessfully moved to stay the case less than six months ago on August 3, 2022. (Dkts. 214, 240, 241, 250, 258, 259).

### F. Moog's Repeated and Flexible Offers to Continue Skyryse's Opposition Deadline

At 5:23 p.m. on Friday, March 17, Skyryse requested a unilateral 30-day continuance to oppose the Motion to Enforce. (Naqvi Dec., Ex. A, p. 8). Moog responded that it was prepared to provide a reasonable extension for Skyryse's opposition, as long as the hearings on the Motion to Enforce and Motion to Stay are concurrent. (*Id.*, p. 7). Moog's counsel explained that both "motions were essentially filed at the same time and both have been properly noticed for hearing on April 13, when all counsel have stated they are available" and that because of the Individual Defendants' Joinder, "Moog is required to oppose more motion material than Skyryse is required to, within the same schedule." (*Id.*). Moog initially offered a reciprocal 21-day extension for both Skyryse and Moog to file their opposition briefs. (*Id.*).

After continued refusal from Skyryse, and at Moog's insistence, the Parties telephonically met and conferred on March 21, 2023. During that conversation, Moog's counsel stated it was open to: 1) different briefing schedules on Moog's and Skyryse's Oppositions (i.e., Moog receiving a 7-day extension and Skyryse receiving a 21-day extension for opposition); and 2) granting Skyryse more than 21 days for its opposition. (*Id.*, ¶ 7). Moog's counsel emphasized that it was willing to be flexible about providing a reasonable extension as long as the hearing on the Motion to Stay and Motion to Enforce were concurrent. (*Id.*). These proposals were confirmed in writing by Moog's counsel (which Skyryse's counsel failed to include in the e-mail thread submitted to the Court). (*Id.*, Ex. A. pp. 1-3). Skyryse refused to engage further and filed the instant Application.

### III. *EX PARTE* APPLICATIONS ARE STRONGLY DISFAVORED

This District's guidance about *ex parte* applications is clear: "An *ex parte* application is a disfavored procedural device." *City of Colton v. Am. Promotional Events, Inc.*, No. CV 05-01479 JFW (EX), 2012 WL 13013224, at *1 (C.D. Cal. Mar. 7, 2012). "An *ex parte* application is a means of obtaining extraordinary relief and is appropriate in only rare circumstances." *Mikell v. Baxter Healthcare Corp.*, No. CV 13–07611 MMM (PJWx), 2014 WL 12588640, at *2 (C.D. Cal. Sep. 16, 2014). *Ex parte* applications are generally disfavored as they "contravene the structure and spirit of the Federal Rules of Civil Procedure and the Local Rules of this court." *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989). Courts will not grant *ex parte* relief unless "(1) the moving party shows that she will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures, and (2) it is established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Liang v. Nguyen*, No. CV 08–8211 PSG (JCx), 2009 WL 514073, at *2 (C.D. Cal. Feb. 29, 2009).

### IV. THE *EX PARTE* APPLICATION SHOULD BE DENIED

Skyryse's *ex parte* application should be denied for several procedural, factual, and equity reasons.

#### A. There Are No Exigent Circumstances

"*Ex parte* proceedings are exclusively reserved for emergency circumstances." *Honma Golf U.S., Ltd. v. Saddle Creek Corp.*, No. 21-cv-1131-CAB-WVG, 2021 WL 3171894, at *1 (S.D. Cal. July 26, 2021). "[A] party making an *ex-parte* application must show some justification for seeking emergency relief." *Blair v. California*, No. CV 09-4460-GW(AGRX), 2009 WL 10674870, at *1 (C.D. Cal. June 25, 2009).

Indeed, *ex parte* applications "impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are

required to make a hurried response under pressure, usually for no good reason. *In re Intermagnetics America, Inc.*, 101 B.R. at 193; *see also Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 Supp. 488, 491-92 (C.D. Cal. 1995) ("When an *ex parte* motion is filed . . . the judge drops everything," expecting that the "tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken.").

Skyryse's Application is completely unnecessary. There is no emergency requiring that "the judge drop[] everything." As described above, Skyryse sought an extension to oppose Moog's Motion to Enforce. Moog's counsel offered several different proposals to grant Skyryse the extension it sought, including a non-reciprocal briefing schedule whereby Moog would have substantially less time to oppose Skyryse's Motion to Stay than Skyryse would have in opposing Moog's Motion to Enforce. (Naqvi Dec., Ex. B). Skyryse's refusal to accept any of these proposals, or to even offer a counter-proposal, proves that it is not seeking *ex parte* relief to obtain an extension for its opposition, but instead is using that argument as a pretext to have its Motion to Stay heard well before it can be penalized for its serial and flagrant violations of the TRO.

It would be fundamentally unfair for Skyryse to receive a 30-day extension to oppose Moog's Motion to Enforce, but Moog would receive no extension at all to oppose Skyryse's Motion to Stay. Both motions were filed just one day apart, and both were properly noticed for hearing on April 13, 2023. And, because of the Individual Defendants' Joinder filed on March 16, 2023, Moog has to essentially **oppose two motions in a seven day time period**. Moog is prepared to do that if necessary, but for Skyryse to obtain a lengthy extension without Moog receiving any extension at all is not equitable. In fact, this would be the exact outcome were the Court to grant Skyryse's *ex parte* application.

Further, Skyryse's arguments that Moog's Motion to Enforce "raises new issues never raised by Moog in prior meet and confer efforts" is patently false.

(App., p. 7). Moog described the bases for its motion in a detailed, 44-page letter served to Skyryse **more than one month ago**. (Dkt. 399-1). Skyryse claimed it began "promptly" investigating these issues on February 22, 2023. (Naqvi Dec., Ex. A). During its pre-filing meet and confer, it explained to Skyryse all of the requested relief it sought in the Motion. (*Id.*, ¶ 5). All the documents relied upon in the Motion have been available to Skyryse for several months, and the spoliation disclosure regarding Tri Dao was made by Skyryse's prior counsel back in May. Moog was not required to identify every single argument or document that would be used in the Motion, and Skyryse cannot use that as a basis to claim prejudice.

Skyryse's argument that it needs to depose Moog's experts to oppose the Motion to Enforce is not supported by the law. *See* Fed. R. Civ. P. 26(b)(4) ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided."); *In re First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 613 (S.D. Cal. 2016)("A party may depose a testifying expert only after the expert report is provided.").

Finally, Skyryse is represented by one of the largest law firms in the world, with 8 counsel of record in this case. Skyryse has failed to show that it cannot oppose Moog's Motion to Enforce within the statutory deadline.

In sum, there are no unavoidable, exigent circumstances that justify the Application. If Skyryse really needed an extension to oppose Moog's Motion to Enforce, it would have accepted one of Moog's various proposals for an extension. Instead, Skyryse is abusing the *ex parte* process to jump the line with its Motion to Stay, and to block Moog from obtaining relief for its concurrently-noticed Motion to Enforce.

### B. Moog Would be Substantially Prejudiced By a One-Way Continuance

Skyryse claims Moog faces no prejudice because it allegedly "(1) obtained the preliminary relief it claimed to need over a year ago by stipulation (Dkt. 33); (2) delayed identifying its own purported trade secrets until this Court ordered it to do so over a year into this lawsuit (Dkt. 343); and (3) still having failed to file a motion for a preliminary injunction despite threatening to do so for over a year." These arguments fail for obvious reasons.

The stipulated TRO has not provided Moog the relief it initially sought because ***Skyryse has repeatedly and flagrantly violated that TRO since its entry***. As set forth in further detail in Moog's Motion to Enforce, Skyryse has serially violated each of the core tenets of the TRO by admittedly spoliating relevant evidence, using Moog's non-public information, and failing to produce large quantities of Moog non-public information. Skyryse is, tactically, claiming that the TRO provides Moog with all the relief it needs, while simultaneously and actively violating the TRO.

This underscores why a unilateral continuance would be improper. It would be patently unfair for Skyryse to potentially obtain a stay of the entire case before Moog's Motion to Enforce is heard. The Motion to Stay and Motion to Enforce were filed at essentially the same time with the same noticed hearing date. Skyryse should not be permitted to use its pending motion to stay (filed for the second time) to block Moog's Motion to Enforce from being adjudicated.

Skyryse's argument about the timing of Moog's trade secret identification is a red herring, and makes no sense. Moog fully identified its trade secrets in compliance with the Court's orders authorizing it to first take certain discovery (Dkt. 205), and then this Court's order instituting a February 21, 2023 deadline. (Dkt. 343).

Finally, Moog is unable to file a renewed preliminary injunction motion until it obtains the relief sought in its Motion to Enforce. The main purpose of the TRO was for Moog to discover the nature and extent of Moog non-public information on Skyryse's systems before obtaining specific injunctive relief. Skyryse has withheld, over the past year, substantial volumes of electronic devices and data that contain Moog non-public information and would be relevant to the additional injunctive relief to be sought by Moog. Such withholding has materially impaired Moog's ability to fully assess the scope of relief it requires in a preliminary injunction. Skyryse is improperly using its flagrant violations of the TRO as a sword to argue Moog has not moved this case along.

### III. CONCLUSION

Moog respectfully requests that Skyryse's Application be denied in full. However, to the extent the Court is inclined to grant Skyryse's Application, and for all the reasons set forth above, it should also continue the hearing on Skyryse's Motion to Stay to May 15, 2023.

Dated:  March 22, 2023         SHEPPARD MULLIN RICHTER & HAMPTON LLP

By    */s/ Rena Andoh*
       Rena Andoh

Attorney for Plaintiff and Counterdefendant
MOOG INC.