Rena Andoh (admitted *pro hac vice*)
  randoh@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Lai L. Yip (SBN 258029)
  lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

Travis J. Anderson (SBN 265540)
  tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691

Kazim A. Naqvi (SBN 300438)
  knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

Attorneys for Plaintiff and Counterdefendant Moog Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>        Plaintiff and<br>        Counterdefendant,<br><br>   v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS.1-50,<br><br>        Defendants and<br>        Counterclaimaint. | Case No. 2:22-cv-09094-GW-MAR<br><br>**PLAINTIFF MOOG INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SKYRYSE, INC.'S MOTION TO STAY AND THE INDIVIDUAL DEFENDANTS' JOINDER THERETO**<br><br>Hearing Date:  April 13, 2023<br>Time:    8:30 a.m.<br>Ctrm.:   9D, The Hon. George H. Wu<br>Complaint Filed:    March 7, 2022<br>Counterclaims Filed: January 30, 2023 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................... 7

BACKGROUND ................................................................................ 10

    A.    The Criminal Investigation & Participation in Discovery ................... 10

    B.    Moog's Communication with the FBI ................................. 12

    C.    Judge McCarthy's Stay Denial Order ............................... 13

ARGUMENT ................................................................................... 13

I.    A Stay is Still Not Warranted ....................................................... 13

    A.    Motions for Stay Are Generally Denied Pre-Indictment ..................... 16

    B.    There is No Known "Overlap" of Criminal and Civil Proceedings ...................................................................... 21

    C.    Moog Would Be Materially Prejudiced By a Stay ............................. 21

    D.    A Stay is Not Warranted Based on Defendants' Purported Interests ...................................................................... 24

        1.    The Burden on the Individual Defendants Is Minimal .............. 24

        2.    Skyryse's "Interests" are Speculative at Best ........................ 24

        3.    Skyryse Can Defend this Action if the Individual Defendants Invoke the Fifth Amendment ................................. 26

    E.    The Interests of the Court and Judicial Economy Weigh in Favor of Denying a Stay.............................................................. 27

    F.    The Interests of the Public and Third Parties Weigh in Favor of Denying a Stay ...................................................................... 28

    G.    If the Court Is Inclined to Grant a Stay, It Should Be Limited in Scope ...................................................................... 29

CONCLUSION................................................................................ 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Federal Cases

*A.I.P. v. City of Santa Ana*
No. 819CV02212JLSJDE, 2020 WL 3628658 (C.D. Cal. May 14, 2020) ........29

*Applied Materials, Inc. v. Semiconductor Spares, Inc.*
No. C95-20129RMW(EAI), 1995 WL 261451 (N.D. Cal. Apr. 26, 1995) .......22

*Arden Way Assocs. v. Boesky*
660 F. Supp. 1494 (S.D.N.Y. 1987) ............................................................28, 29

*Brock v. Tolkow*
109 F.R.D. 116 (E.D.N.Y. 1985) ...............................................................17, 18

*Cal-Cleve, Ltd. v. Wrag-Time Air Freight, Inc.*
No. CV0410543SJOJTLX, 2005 WL 8157878 (C.D. Cal. May 20, 2005)
..........................................................................................................................passim

*Carlson v. City of Redondo Beach*
No. 22000259ODWAFMX, 2020 WL 7714699 (C.D. Cal. Dec. 29, 2020) .....28

*Chao v. Fleming*
498 F. Supp. 2d 1034 (W.D. Mich, 2007) ......................................................17

*Chrysler Credit Corp. v. Country Chrysler, Inc.*
928 F.2d 1509 (10th Cir. 1991) ......................................................................15

*Danner v. Himmelfarb*
858 F.2d 515 (9th Cir. 1988) ..........................................................................15

*David Rovinsky LLC v. Peter Marco, LLC*
No. 220CV02580ODWASX, 2020 WL 5645792 (C.D. Cal. Sept. 21,
2020) ................................................................................................................18

*De La O v. Arnold-Williams*
No. CV-04-0192-EFS, 2005 WL 8158924 (E.D. Wash. June 21, 2005) ...........18

*E.I. du Pont de Nemours & Co. v. Hou*
No. CV 17-224-RGA, 2017 WL 2531940 (D. Del. June 9, 2017) ...................23

*eBay, Inc. v. Digital Point Sols., Inc.*
No. C 08-4052 JF (PVT), 2010 WL 702463 (N.D. Cal. Feb. 25, 2010)
...........................................................................................................20, 22, 28

*Est. of Limon v. City of Oxnard*
No. CV 13-01961 SS, 2013 WL 12131359 (C.D. Cal. Dec. 10, 2013) ...........30

*Est. of Morad v. City of Long Beach*
No. CV1606785MWFAJWX, 2017 WL 5187826 (C.D. Cal. Apr. 28,
2017)
...........................................................................................................16, 21

*Fed. Sav. & Loan Ins. Corp. v. Molinaro*
  889 F.2d 899 (9th Cir. 1989) ........................................................ 14, 16, 18, 28

*Fed. Trade Comm'n v. Mytel Int'l, Inc.*
  No. CV 87-7259 GHK (SS), 2016 WL 11788633 (C.D. Cal. Mar. 18,
  2016) ................................................................................................ passim

*Genentech, Inc. v. JHL Biotech, Inc.*
  No. C 18-06582 WHA, 2019 WL 1045911 (N.D. Cal. Mar. 5, 2019) ........ 23, 27

*Gen. Elec. Co. v. Liang*
  No. CV 13-08670 DDP VBKX, 2014 WL 1089264
  (C.D. Cal. Mar. 19, 2014), ........................................................ 18, 22, 23, 29

*Gran Sabana Corp. N.V. v. Kossoff*
  No. 21-CV-3154 (RA), 2021 WL 3666116 (S.D.N.Y. Aug. 17, 2021) ............. 28

*Hall v. Alternative Loan Tr. 2006-7CB*
  No. 2:13-CV-1732 KJM AC, 2013 WL 5934322 (E.D. Cal. Nov. 1, 2013) ..... 15

*Int'l Bus. Machines Corp. v. Brown*
  857 F. Supp. 1384 (C.D. Cal. 1994) ................................................... 13, 24

*Ironbridge Corp. v. Comm'r*
  528 F. App'x 43 (2d Cir. 2013) ................................................................ 27

*JHW Greentree Cap., L.P. v. Whittier Tr. Co.*
  No. 05 CIV. 2985 (HB), 2005 WL 1705244 (S.D.N.Y. July 22, 2005) ............ 21

*Keating v. Off. of Thrift Supervision*
  45 F.3d 322 (9th Cir. 1995) ............................................................... passim

*KLA-Tencor Corp. v. Murphy*
  717 F. Supp. 2d 895 (N.D. Cal. 2010) ................................................... 8, 14

*Magnetic Eng'g & Mfg. v. Dings Mfg.*
  178 F.2d 866, 868 (2d Cir. 1950) (L. Hand, J.) ......................................... 15

*Maryland v. Universal Elections, Inc.*
  729 F.3d 370 (4th Cir. 2013) .................................................................. 16

*Mendez v. City of Gardena*
  No. CV13-9042 SVW, 2014 WL 12802931 (C.D. Cal. May 30, 2014) ............ 17

*Micron Tech. Inc. v. United Microelectronics Corp.*
  No. 17-CV-06932-MMC, 2019 WL 3037542 (N.D. Cal. July 11, 2019) .... 17, 25

*In re Mid-Atl. Toyota Antitrust Litig.*
  92 F.R.D. 358 (D. Md. 1981) .................................................................. 24

*Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*
  346 F. Supp. 3d 389 (S.D.N.Y. 2018) ....................................................... 25

*S.E.C. v. Alexander*
   No. 10-CV-04535-LHK, 2010 WL 5388000 (N.D. Cal. Dec. 22, 2010)
   .................................................................................................... 17, 25

*S.E.C. v. Glob. Express Capital Real Estate Inv. Fund, I, LLC*
   289 F. App'x 183 (9th Cir. 2008)......................................................... 14

*S.E.C. v. Musella*
   38 Fed. R. Serv. 2d 426 (S.D.N.Y. 1983) ............................................ 18

*Sartor v. Cnty. of Riverside*
   No. EDCV221410JGBSPX, 2022 WL 18278597 (C.D. Cal. Nov. 30,
   2022)................................................................................................... 14

*Sec. & Exch. Comm'n v. Blockvest, LLC*
   No. 18CV2287-GPB(BLM), 2019 WL 1510912 (S.D. Cal. Apr. 5, 2019)....... 16

*Sec. & Exch. Comm'n v. Boucher*
   No. 20-CV-1650-DMS-MSB, 2021 WL 321994 (S.D. Cal. Feb. 1, 2021)....... 21

*Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*
   No. 13-CV-5584 (RRM), 2014 WL 12987223 (E.D.N.Y. Oct. 9, 2014) ......... 18

*Sec. & Exch. Comm'n v. Plus Money, Inc.*
   No. 08CV0764 MMA (NLS), 2008 WL 11338383 (S.D. Cal. Dec. 1,
   2008)................................................................................................... 25

*Sec. & Exch. Comm'n v. Sandifur*
   No. C05-1631C, 2006 WL 1719920 (W.D. Wash. June 19, 2006) ................... 21

*SEC v. Nicholas*
   569 F. Supp. 2d 1065 (C.D. Cal. 2008)................................................ 17

*Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*
   175 F. Supp. 2d 573 (S.D.N.Y. 2001)............................................. 17, 21

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*
   No. 2:09-CV-0954 FCD EFB, 2009 WL 2136986 (E.D. Cal. July 15,
   2009)
   .................................................................................................... 17, 25

*U.S. Commodity Futures Trading Com'n v. A.S. Templeton Group, Inc.*
   297 F. Supp. 2d 531 (E.D.N.Y. 2003) ................................................. 16

*U.S. Legal Support, Inc. v. Hofioni*
   No. 2:13-CV-01770-MCE-AC, 2016 WL 615620 (E.D. Cal. Feb. 16,
   2016)................................................................................................... 23

*United States Sec. & Exch. Comm'n v. Dobkin*
   No. 5:21-CV-09285-EJD, 2022 WL 16924454 (N.D. Cal. Nov. 14, 2022)
   .............................................................................................. 16, 27, 29

*United States v. Fridman*
   337 F. Supp. 3d 259 (S.D.N.Y. 2018), *aff'd*, 974 F.3d 163 (2d Cir. 2020)........ 25

*United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*
    811 F. Supp. 802 (E.D.N.Y. 1992)..........................................................17, 18, 28

*Wroth v. City of Rohnert Park*
    Case. No. 17-cv-05339, 2018 WL 888466 (N.D. Cal. Feb. 14, 2018) ..............18

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Fifth Amendment..............................................................................................passim

28 U.S.C. § 1404(a) .................................................................................................15

Plaintiff Moog, Inc. ("Moog") hereby submits this memorandum of law in opposition to defendant Skyryse, Inc.'s ("Skyryse") motion to stay this action (ECF 392) and defendants Alan Pilkington's and Misook Kim's (together, the "Individual Defendants") joinder thereto (ECF No. 393) (Skyryse's motion and the Individual Defendants' joinder thereto collectively referred to as the "Motion").

## PRELIMINARY STATEMENT

Had this case not been recently transferred, Defendants would not have filed their Motion – they know full well that no material condition has changed since Magistrate Judge Jeremiah McCarthy denied their prior motion to stay just last fall. (*See* ECF 259 (the "Stay Denial Order").)  The prior motion to stay relied on the same grounds and same material circumstances that Defendants now advance in the instant Motion.  (*See* ECF 214, 241.)  In the Stay Denial Order, Judge McCarthy noted that there had been no indictment of any defendant, that the government's investigation remains ongoing, and the Individual Defendants had not made any affirmative, actual Fifth Amendment invocation in the civil action, rendering Defendants' collective concerns "hypothetical" and premature.  None of these facts have changed, and the transfer of an action has no effect on whether a stay is proper. The Stay Denial Order remains law of the case.

While Skyryse argues, with no legal support, "[t]hat a grand jury has yet to return an indictment weighs in favor of a temporary stay" (ECF 392 at 17), the massive weight of authority says *exactly the opposite*.  The Ninth Circuit (like the Second Circuit) is clear that where, as here, there is only a criminal investigation, but no indictment, a stay should be denied on that ground alone.  Moreover, without an indictment, the factor regarding overlap of the actions also weighs against a stay because the actual scope of any eventual criminal indictment (a necessary precursor to any criminal court case) remains hypothetical.

At bottom, the Defendants' prejudice assertion is entirely premised on the hypothetical circumstance of the Individual Defendants asserting Fifth Amendment

rights in this action, *which has not happened*.  Skyryse speculatively argues such invocation will impede its ability to defend this action, but it is not clear whether when, or how, the Individual Defendants would assert the privilege, let alone how it would bear on the parties' claims and defenses. Meanwhile, it is undisputed that: (i) the Individual Defendants have not to date invoked any Fifth Amendment rights actually available them in this action; (ii) Skyryse cannot invoke a Fifth Amendment privilege because it is not a natural person; and (iii) Skyryse has no standing to make a Fifth Amendment assertion on behalf of the Individual Defendants. Consequently, as Judge McCarthy observed, these concerns are premature.

Further, *even if* there had been a proper Fifth Amendment invocation in this action, it is perfectly "permissible to conduct a civil proceeding at the same time as a related criminal proceeding, *even if that necessitates invocation of the Fifth Amendment privilege*," and even if the trier of fact may draw adverse inferences therefrom.  *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995) (emphasis added).  Defendants' claims of unfair prejudice based on the purported "Hobson's choice" that the Individual Defendants face (ECF 393 at 3) finds no sympathy in the case law,[1] and indeed, is not an uncommon situation.  Moreover, Skyryse's attempt to manufacture prejudice is without support.  Skyryse can fully defend the action regardless of the Individual Defendants' potential indictments or Fifth Amendment invocations; Skyryse has sufficient evidence in its possession or at its disposal to defend itself and fully participate in discovery.  Indeed, the Individual Defendants turned over every electronic device they have used in 12 months before this action was filed (23 devices in total) as part of the stipulated injunction to which they agreed at the outset of the case, and those devices are

---

[1] In fact, the case law *specifically rejects* this very argument.  *KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 902–03 (N.D. Cal. 2010) (purported difficulty from defendants' "Hobson's choice" was "insufficient to justify a stay.").

available for Skyryse's review.  Skyryse has additionally not demonstrated it cannot rely on other witnesses.  Moreover, a corporate defendant's inability to depose affiliated defendants is not undue prejudice sufficient to stay an action.

Critically, the Individual Defendants were former Skyryse employees and committed wrongdoing while employed by Skyryse. Skyryse should not benefit from a stay because its former employees' conduct was so egregious that there are now potential criminal implications.  Indeed, as the Complaint explains, Skyryse worked in concert with the Individual Defendants to commit tortious acts and that wrongdoing was done for the benefit of Skyryse. The Court's and the public's interest likewise both favor expeditious resolution of this matter.

Skyryse argues (ECF 392 at 19) that Moog will not be prejudiced by any delay because Moog has already received the emergency relief it seeks through the parties' stipulated temporary restraining order (ECF 25 (the "Stipulated TRO")) shortly following filing of the Complaint.  This argument is both a red herring and misstates the record; rather, since the filing of the Complaint, Moog has discovered substantially more wrongdoing by Defendants, including the later discovery of Pilkington's theft of over *a million* additional Moog files and serial violations of the Stipulated TRO, as well as Skyryse providing Moog trade secrets to third parties.[2] Moog therefore requires additional and more-tailored injunctive relief now that this additional wrongdoing has come to light.  A stay would prevent Moog from conducting discovery to ensure compliance with existing temporary/injunctive relief.

Laid bare, Defendants seek a stay to prevent Moog from developing the full scope of its case against Defendants through further discovery and depositions of Skyryse and third parties witnesses which, if past is prologue, inevitably will lead to

---

[2] Moog has filed a motion for to enforce the Stipulated TRO and for sanctions (the "Motion to Enforce"). (ECF 399, 400.)

disclosure of further bad facts for Defendants.  It is therefore no real surprise that Defendants rushed to seek a stay following transfer of this action, despite having failed to demonstrate to the W.D.N.Y. that a stay was warranted only a few months ago.  The instant Motion is likewise properly denied.

## BACKGROUND

### A.     The Criminal Investigation & Participation in Discovery

At the outset of this case, the Parties all entered into the Stipulated TRO.  The Individual Defendants, in compliance with the Stipulated TRO, produced 23 electronic devices to the neutral ESI vendor, iDS, on April 1, 2022.  The Individual Defendants have represented that they were served with grand jury subpoenas sometime between April and June 2022.  Moog understands the Individual Defendants received their subpoenas well-before Moog itself received a subpoena from the Government on June 24, 2022.  Indeed, the Individual Defendants admit that Pilkington "retained criminal defense counsel on or near June 16." (ECF 229-1 at 10.)

On June 10, 2022, Moog wrote to the Court seeking partial relief from the Court's seal Orders because the FBI had requested copies of unredacted transcripts of the April 26 and May 5 Court conferences as part of an *ongoing federal investigation into the files taken from Moog that are the subject of this lawsuit.*" (ECF 228-04 (emphasis added).)  Three days later, on June 13, 2022, the Individual Defendants' counsel consented to Moog's request.  (ECF 228-005.)  The Court granted Moog's unopposed request to provide the transcripts to the FBI on the same date.  (ECF 152.)

On June 24, 2022, Individual Defendants' counsel emailed all parties and iDS granting access to their devices. (ECF 240-3.)  For three of their devices, Individual Defendants' counsel asked for certain data to be excised pursuant to a privilege/privacy review and stated that once "the identified files have been excised, these devices can be made available for review." (*Id*., emphasis added.) Similarly,

after identifying four devices that may contain Skyryse data, they stated that other than "two personal files on the first device that we have identified as requiring excision, the Individual Defendants have no personal objection to these devices being made available for review." (*Id.*, emphasis added.) Thus, the Individual Defendants made several devices available for Moog's review, without any assertion of the Fifth Amendment, *after completing a privilege/privacy review* and well after being aware of the FBI investigation.

On June 29, 2022, the Individual Defendants consented to Moog's access to 17 of the devices that had been provided to iDS (the neutral vendor selected by the parties to house computing devices for review and storage in this case), and Moog accessed them.[3]  (ECF 228-008.)  At no point between June 29, 2022 and July 27, 2022 did the Individual Defendants raise any Fifth Amendment concerns.  Then, on July 27, 2022, the Individual Defendants informed the Court for the first time that they intended to seek a stay of this case because they ***might*** invoke the Fifth Amendment.  (ECF 206.)

The Individual Defendants next engaged in an outrageous act of self-help and unilaterally revoked access to the 17 devices available through iDS and refused to release the other 6 devices – which had already been physically turned over to iDS – for review, on the basis that they intended to invoke the Fifth Amendment as protection.

However, as Judge McCarthy's later Stay Denial Order made clear, there actually was no invocation of the Fifth Amendment in this action.  *See* ECF 259 at 4; *see also* ECF 253, 272.  Indeed, Moog moved to compel the Individual Defendants to provide access to the 23 devices, and that motion was granted by

---

[3] The other six devices were subject to a dispute over contents the Individual Defendants asserted were privileged, and were withheld at the time subject to resolution of that dispute.  ECF 216, 228, 229, 234, 236, 237.

1   Judge McCarthy and upheld by Judge Villardo, both of whom found that: 1) the

2   Individual Defendants' devices produced to iDS are not subject to a Fifth

3   Amendment privilege; 2) the production of such devices was not testimonial; and 3)

4   even if a Fifth Amendment privilege existed (though it did not), it had been waived.

5   (ECF 253, 272.)

6       By contrast, the Individual Defendants *have* invoked the Fifth Amendment

7   against the USAO subpoenas to the Individual Defendants and to third party iDS.

8   (ECF 228-12 at 3.)  Consequently, it is clear that the Individual Defendants have all

9   the information they need and could properly invoke the Fifth Amendment in this

10  action if they so choose.

11      **B.**     **Moog's Communication with the FBI**

12      While Defendants argue that they were duped into participating in discovery

13  and that Moog "concealed" information about the FBI and USAO (ECF 392 at 3 &

14  393 at 4), to the contrary, Moog has been cooperating with the government in a

15  routine manner consistent with any victim of a crime.  Moog has transparently

16  produced communications with the FBI and has offered to provide a mutual

17  exchange of complete document productions to the FBI (but Skyryse has refused).

18  (ECF 228-09.)  The insinuation that Moog has somehow acted improperly by

19  reporting a crime to the FBI is particularly remarkable given that the Individual

20  Defendants admittedly stole upwards of 1.4 million files from Moog.

21      Further, the Individual Defendants' after-the-fact assertions that they would

22  not have participated in discovery are belied by the fact that they consented to

23  Moog's complete access to 17 electronic devices well after both the June 10

24  correspondence between the parties regarding the FBI investigation and Pilkington's

25  retaining of criminal counsel on June 16.  *See* ECF 229 at 10; ECF 228-008; ECF

26  228-005; *see also* ECF 264-002 (Sept. 12, 2022 Tr.) at 43:18-24, 52:15-23 (Judge

27  McCarthy questioning how the Individual Defendants could have been "compelled"

28  to turn over devices when they (and their counsel) agreed to the stipulated orders,

were represented by counsel before turning any devices over, and it was "obvious" from "outset" of the case that there "was potential Fifth Amendment ramifications to the production of any evidence").

### C.   Judge McCarthy's Stay Denial Order

On September 8, 2022, Judge McCarthy issued his Stay Denial Order, denying Defendants' motions "to stay this action pending resolution of the parallel criminal investigation by the U.S. Attorney's Office for the Central District of California." (ECF 259 at 1.)  Judge McCarthy quoted case law stating "absent an indictment, a stay is an extraordinary remedy and disfavored" and found that "at this stage of the case," where no indictment had issued, Defendants' concerns were "premature" and "remain hypothetical, as Pilkington and Kim have not yet asserted a Fifth Amendment privilege." (*Id.* at 2, 3.)  Judge McCarthy also rejected Kim and Pilkington's asserted "uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit," as well as Skyryse's argument that Skyryse would be "severely prejudiced and deprived of its right to present a full and complete defense" "[i]f the Court [did] not grant a full stay of the civil case pending resolution of the criminal investigation, and the individual defendants invoke the Fifth Amendment" (*Id.* at 3.)

## ARGUMENT

### I.   A Stay is Still Not Warranted

"The contention that being forced to choose between the compulsion to testify in the civil suit in order to avoid an adverse result on the merits undermines the right to remain silent in a criminal matter, while having surface appeal will not stand analysis." *Cal-Cleve, Ltd. v. Wrag-Time Air Freight, Inc.*, No. CV0410543SJOJTLX, 2005 WL 8157878, at *3 (C.D. Cal. May 20, 2005) (denying defendants' motions to stay); *Int'l Bus. Machines Corp. v. Brown*, 857 F. Supp. 1384, 1389 (C.D. Cal. 1994) ("While the choice between testifying or invoking the

Fifth Amendment may be difficult, . . . it does not create the basis for a stay.").[4]
Here, where none of the Defendants have been indicted, "[t]he case for staying civil
proceedings is weak…." *S.E.C. v. Glob. Express Capital Real Estate Inv. Fund, I,
LLC*, 289 F. App'x 183, 191 (9th Cir. 2008) (affirming denial of motion to stay "[i]n
light of the fact that no criminal charges had been filed against [defendant] at the
time she moved for a stay"); *see Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d
899, 903 (9th Cir. 1989) (denial of stay affirmed where no indictment had been
returned).  However, the Ninth Circuit has repeatedly made clear that, even in
instances where there has been a criminal indictment (and here, there is none), "[t]he
Constitution does not ordinarily require a stay of civil proceedings pending the
outcome of criminal proceedings."  *Keating*, 45 F.3d at 326; *Sartor v. Cnty. of
Riverside*, No. EDCV221410JGBSPX, 2022 WL 18278597, at *2 (C.D. Cal. Nov.
30, 2022) ("The Ninth Circuit has held that a stay of civil proceedings pending the
outcome of 'parallel criminal proceedings' is not required by the Constitution.")
(citing *Molinaro*, 889 F.2d at 902).

Courts follow the *Keating* framework, which instructs that "[t]he decision
whether to stay civil proceedings in the face of a parallel criminal proceeding should
be made "in light of the particular circumstances and competing interests involved
in the case." *Keating*, 45 F.3d at 324 (quoting *Molinaro*, 889 F.2d at 902).  "This
means the decisionmaker should consider the extent to which the defendant's fifth
amendment rights are implicated.'"  *Id*.  In addition, the court should consider the
following factors: (1) "the interest of the plaintiffs in proceeding expeditiously with

---

[4] Again, Defendants' argument that the Individual Defendants face some unfair
"dilemma" (ECF No. 392 at 1) or "Hobson's choice" (ECF No. 393 at 3) were this
action not stayed is *expressly rejected* by the case law in these circumstances.  *Cal-
Cleve, Ltd.,* 2005 WL 8157878, at *3-4; *KLA-Tencor Corp.*, 717 F. Supp. 2d at 902–
03 ("the mere fact that defendants have been put to such a "Hobson's choice,"
[quoting defendants' papers], is insufficient to justify a stay.").

this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;" (2) "the burden which any particular aspect of the proceedings may impose on defendants;" (3) "the convenience of the court in the management of its cases, and the efficient use of judicial resources;" (4) "the interests of persons not parties to the civil litigation;" and (5) "the interest of the public in the pending civil and criminal litigation." *Id.* at 324-25.

Here, (i) no criminal indictments have issued, (ii) no one has invoked the Fifth Amendment in this action, (iii) Moog has important interests in expeditiously prosecuting its case and would suffer material prejudice were the action stayed now; (iv) Defendants are not unfairly burdened by proceeding as there is currently only a criminal investigation; (v) the Court has an important interest in progressing its docket, and judicial efficiency is not furthered by waiting for a resolution in a criminal matter that may never come;  and (vi) there are no third parties, governmental or otherwise, that have requested a stay.

Moreover, the Section 1404(a) transfer of the case from the W.D.N.Y. to this Court has no impact on the evaluation of a stay.  *Hall v. Alternative Loan Tr. 2006-7CB*, No. 2:13-CV-1732 KJM AC, 2013 WL 5934322, at *2 (E.D. Cal. Nov. 1, 2013) ("Under the law of the case doctrine, a transferee court does not directly review either the transfer order *or other rulings of the transferor court*.") (emphasis added).  Rather, a transfer leaves the action in the exact same position as it was immediately preceding the transfer: "'[W]hen an action is transferred, it remains what it was . . . , *leaving untouched what has been already done*.'"  *Danner v. Himmelfarb*, 858 F.2d 515, 521 (9th Cir. 1988) (emphasis added) (quoting *Magnetic Eng'g & Mfg. v. Dings Mfg.*, 178 F.2d 866, 868 (2d Cir. 1950) (L. Hand, J.)). "Accordingly, traditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court[.]" *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

-15-

### A.     Motions for Stay Are Generally Denied Pre-Indictment

Defendants seek a stay of this action while the criminal investigation of Kim and Pilkington, as Skyryse vaguely puts it, "advances" and "proceeds."  (ECF 392 at 2, 12.)  But where, as here, there is no indictment and no indication of when an indictment may come, the case law overwhelmingly favors denial of a stay.  *See*, *e.g.*, *Est. of Morad v. City of Long Beach*, No. CV1606785MWFAJWX, 2017 WL 5187826, at *8 (C.D. Cal. Apr. 28, 2017) ("*Keating* stays are rarely, if ever, granted where no indictment has yet been returned."); *Molinaro,* 889 F.2d at 903 ("[t]he case for staying civil proceedings is a far weaker one when no indictment has been returned"); *Sec. & Exch. Comm'n v. Blockvest, LLC*, No. 18CV2287-GPB(BLM), 2019 WL 1510912, at *2 (S.D. Cal. Apr. 5, 2019) ("Generally, stays are not granted where no indictment has been issued."); *Fed. Trade Comm'n v. Mytel Int'l, Inc.*, No. CV 87-7259 GHK (SS), 2016 WL 11788633, at *4 (C.D. Cal. Mar. 18, 2016) ("The absence of an actual indictment significantly undermines a claimed Fifth Amendment interest for purposes of a *Keating* analysis. Many courts have refused to stay civil discovery absent an indictment, despite an ongoing criminal investigation.").[5]

Defendants' position is that: (i) the Individual Defendants are the subject of a criminal investigation; (ii) the Individual Defendants "may" need to invoke their Fifth Amendment rights in this civil action; and so (iii) in order to safeguard the Individual Defendants' rights and protect Skyryse's ability to defend in the civil action, a stay is warranted.  This position is not supported by the case law or Judge

---

[5] *United States Sec. & Exch. Comm'n v. Dobkin*, No. 5:21-CV-09285-EJD, 2022 WL 16924454, at *2 (N.D. Cal. Nov. 14, 2022) ("Defendants have not been indicted, and they have not cited any case where a district court stayed a civil proceeding in the absence of a criminal indictment."); *accord Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013); *U.S. Commodity Futures Trading Com'n v. A.S. Templeton Group, Inc.*, 297 F. Supp. 2d 531, 534 (E.D.N.Y. 2003) (same).

McCarthy's prior Stay Denial Order, and tellingly, Defendants rely on several cases where stays were granted *after indictments were already issued*.  For example, in *SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008), repeatedly relied on by Skyryse (ECF 292 at 10, 17, 19), the defendants had already been indicted and the government was a party in both civil and criminal actions, which together heightened concerns as to the identical facts at issue, risk of inconsistent judgments, and judicial inefficiencies.  Likewise, Skyryse heavily relies (*see* ECF 292, *passim*) on three cases where the defendants had already been indicted.  *Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-CV-06932-MMC, 2019 WL 3037542 at *1-2 (N.D. Cal. July 11, 2019),  *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, No. 2:09-CV-0954 FCD EFB, 2009 WL 2136986 at *1 (E.D. Cal. July 15, 2009), and *S.E.C. v. Alexander*, No. 10-CV-04535-LHK, 2010 WL 5388000, at *3 (N.D. Cal. Dec. 22, 2010).[6]  None of those apply here.

As discussed, *supra*, the law is clear that where there is only an investigation, but no indictment, a stay is not warranted.  *See Mytel*, 2016 WL 11788633, at *4 (quoting *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 805 (E.D.N.Y. 1992) ("since [defendant] has yet to be indicted by any grand jury, his motion to stay may be denied *on that ground alone*.") (emphasis

---

[6] This instant case also is clearly "distinguishable from cases in which the burden on a defendant's Fifth Amendment rights is increased by the government's involvement as a party in both the civil action and the criminal investigation or criminal prosecution." *Mendez v. City of Gardena*, No. CV13-9042 SVW (AJWX), 2014 WL 12802931, at *4 (C.D. Cal. May 30, 2014); *see Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578–79 (S.D.N.Y. 2001) (same). For that reasons, the Individual Defendants' reliance on *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich, 2007) (government both civil plaintiff and brought criminal charges against the defendant, specifically emphasized by court as indicating overlap of "substantive factual and legal issues"), and *Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985) (government both civil plaintiff and criminal investigator), is similarly misplaced, as is Skyryse's reliance on *Nicholas*, 569 F. Supp. 2d 1065.

-17-

added)); *David Rovinsky LLC v. Peter Marco, LLC*, No. 220CV02580ODWASX, 2020 WL 5645792, at *5 (C.D. Cal. Sept. 21, 2020) ("there is no pending criminal proceeding, only an investigation. Without a criminal indictment, the case for staying civil proceedings is a far weaker one.") (quotations omitted); *Gen. Elec. Co. v. Liang*, No. CV 13-08670 DDP VBKX, 2014 WL 1089264, at *3 (C.D. Cal. Mar. 19, 2014) (same); *see also S.E.C. v. Musella*, 38 Fed. R. Serv. 2d 426 at *1-2 (S.D.N.Y. 1983) (where "a grand jury in this district is considering the matter" and defendants "are targets of that inquiry," but "[n]o indictment has been returned as yet," defendants' motion to stay was "contrary to established authority" and thus denied).[7]

This Court's decision in *Cal-Cleve,* 2005 WL 8157878, is startlingly similar to facts of the instant action.  The *Cal-Cleve* case stemmed from the abrupt and coordinated departures of employees of the plaintiff company to join the competitor defendant company, and the individual and corporate defendants' use of unlawful

---

[7] The limited pre-indictment cases on which Defendants rely are also distinguishable.  For example, in *Wroth v. City of Rohnert Park*, Case. No. 17-cv-05339, 2018 WL 888466 (N.D. Cal. Feb. 14, 2018), the court issued a stay in large part because the time of completing the government investigation was known, limited, and only 90 days.  *Id.* at *1.  In *De La O v. Arnold-Williams*, No. CV-04-0192-EFS, 2005 WL 8158924, at *3 (E.D. Wash. June 21, 2005), the court ordered a stay before indictments had issued, but there, the court's decisions specifically turned on the fact that "there is no evidence the Defendants have been attempting to dispose of assets" (contrasting with the *Molinaro* case), so a limited stay was not prejudicial to the plaintiffs.  Here, by contrast, there is direct evidence that Skyryse has destroyed and spoliated evidence and has continued to use Moog's nonpublic information. (*See* ECF Nos. 399, 400.)  Further, while the Individual Defendants primarily rely on the out-of-circuit authority *Brock*, 109 F.R.D. 116, that same court (E.D.N.Y.) has since declined to follow *Brock* and noted that *Brock* did not follow the weight of authority holding that pre-indictment motions to stay are generally denied.  *See Priv. Sanitation Indus.*, 811 F. Supp. at 806-07; *Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, No. 13-CV-5584 (RRM), 2014 WL 12987223, at *3 n.3 (E.D.N.Y. Oct. 9, 2014).

-18-

means to compete with the plaintiff by, *inter alia*, misappropriating plaintiff's trade secrets and confidential information. *Id.* at *1. As here, the individual defendants in *Cal-Cleve* were also the subject of an "ongoing criminal investigation" pending for about a year, and argued that "the subject matter of the ongoing criminal investigation is identical to the facts underlying the allegations in the [civil] Complaint." *Id.* at *2. "[N]o criminal charges ha[d] been brought" and "importantly, none of the Defendants ha[d] been indicted," despite law enforcement having confiscated items from the individual defendants and the corporate defendant. *Id.* at *2-3. The defendants "anticipate[d] that two or more of the Individual Defendants will invoke his/their Fifth Amendment rights if forced to respond to discovery in this case," which the corporate defendant argued would prejudice its defense. *Id.* at *3-4. Skyryse and the Individual Defendants advance the exact same arguments here.

The *Cal-Cleve* Court found the defendants' contentions "disingenuous," as none of the defendants had been indicted and "their claim that a criminal proceeding is underway is purely speculative." *Id.* at *4. Finding that "the burden on Defendants if a stay is denied is minimal," the Court further stated that "[n]ot only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." *Id.*

This Court's reasoning in *Mytel*, 2016 WL 11788633 is similarly instructive. As here, the defendants were two individuals and their corporate employer. And as here, both of the individual defendants were the subjects of an ongoing criminal investigation by the government, where criminal charges against at least one had been characterized by the investigating agency as "inevitable." *Id.* at *4. There was likely to be "near-complete overlap between the issues presented in this [civil] case and those presented in any criminal proceeding," and there was "strong" suggestion

"that information from the civil action may be used in the criminal case." *Id.*  The court nevertheless denied the stay, noting "[t]he absence of an actual indictment significantly undermines a claimed Fifth Amendment interest for purposes of a *Keating* analysis." *Id.*  The court further found that "by this point in the civil proceedings it is clear that the 'imminence' of any criminal charges . . . is speculative" and that the "Defendants' Fifth Amendment interests are only minimally implicated, if at all, because a criminal prosecution has not yet materialized." *Id.* at *5.[8]

As in *Cal-Cleve* and *Mytel*, because there has been no criminal indictment, the Individual Defendants' "Fifth Amendment interests are only minimally implicated, if at all, because a criminal prosecution has not yet materialized" and do not warrant a stay.  *Mytel*, 2016 WL 11788633, at *5.

---

[8] Even where indictment is believed to be "imminent" and Fifth Amendment concerns are present, courts have still denied a motion to stay.  In *eBay, Inc. v. Digital Point Sols., Inc.*, No. C 08-4052 JF (PVT), 2010 WL 702463, at *4 (N.D. Cal. Feb. 25, 2010), based on the fact that an indictment was expected to be "imminent" and there was factual overlap between the civil and potential criminal actions, defendants had a "significant, though not overwhelming" Fifth Amendment concern.  *Id.* at *4.  However, the parties were "not aware of any recent change in the status of the criminal investigation," even though the USAO had previously confirmed it had plans to issue an indictment soon.  *Id.*   The court found that "although Defendants face the burden of presenting their civil defense in a manner that protects the individual Defendants' Fifth Amendment rights, this burden does not outweigh eBay's interest in moving forward.... [T]he individual Defendants can invoke the Fifth Amendment, as indeed they already have, and the Court can use protective orders to prevent disclosure of testimonial evidence to the federal government."  *Id.* at 5.  "The fact that the time line for a criminal action is unclear strengthens eBay's argument that indefinite delay will harm its financial interests .... Potentially criminal conduct should not serve as a shield against a civil law suit and prevent plaintiff from expeditiously advancing its claim."  *Id.* at *6.

**B.     There is No Known "Overlap" of Criminal and Civil Proceedings**

While Skyryse argues the pending criminal investigation overlaps the civil action, this assertion is inherently speculative absent indictment.  *See, e.g.*, *Sec. & Exch. Comm'n v. Boucher*, No. 20-CV-1650-DMS-MSB, 2021 WL 321994, at *3 (S.D. Cal. Feb. 1, 2021) ("no criminal charges have yet been filed against [defendant]. Thus, any potential impact of a criminal proceeding on this case is highly speculative."); *see also JHW Greentree Cap., L.P. v. Whittier Tr. Co.*, No. 05 CIV. 2985 (HB), 2005 WL 1705244, at *1 (S.D.N.Y. July 22, 2005) (same). Indeed, courts have denied stay motions even when there was <u>*complete*</u> overlap between the subject matter of a criminal investigation and a civil lawsuit.  *See, e.g.*, *Sec. & Exch. Comm'n v. Sandifur*, No. C05-1631C, 2006 WL 1719920, at *2 (W.D. Wash. June 19, 2006) (denying pre-indictment stay where government's criminal investigation "overlaps 100% with the subject matter of the [civil] action"); *Mytel*, 2016 WL 11788633, at *4 (denying pre-indictment stay even when there was likely "near-complete overlap between the issues presented in this case and those presented in any criminal proceeding"); *Est. of Morad*, 2017 WL 5187826, at *9.

**C.     Moog Would Be Materially Prejudiced By a Stay**

As this is a pre-indictment motion for stay, "[t]here is no telling how complicated the government's investigation may be, whether the allegations of the particular civil plaintiff are merely the tip of an iceberg that will result in a lengthy and open-ended investigation, what priority the government assigns to the investigation, whether it will result in charges that will have to be litigated, or how time-consuming the resulting criminal case will be."  *Sterling Nat'l Bank*, 175 F. Supp. 2d at 577-78 (noting court had no way of knowing whether the grand jury's inquiry would expand beyond the "assumed . . . substantial overlap of issues," and that since no depositions had taken place, there was no way of "measuring with any precision what questions defendants may refuse to answer, or what damage may be done to their position in the civil case by assertions of privilege they might choose

-21-

to make"); *eBay*, 2010 WL 702463, at *3 ("[t]he fact that the time line for a criminal action is unclear strengthens [plaintiff]'s argument that indefinite delay will harm its financial interests").

Moreover, a stay of the case now would be especially prejudicial because, as Moog expressed to the Court during the March 2, 2023 status conference, Moog has evidence of continuing use of Moog non-public information by Skyryse and requires additional judicial and injunctive relief to address it.  (ECF 383 at 8:10-13.)  Indeed, where an injunction is required to prevent continued misuse of stolen intellectual property, a delay in the entry of an injunction will prejudice the plaintiff.  *See Liang*, 2014 WL 1089264, at *4 (denying motion to stay in trade secrets action because discovery was "vital to enable a plaintiff to identify the identities of potential defendants and sources of recovery and to evaluate the need for any further injunctive relief beyond that which has been ordered").

Since the filing of the Complaint in this action, and as set forth in Moog's Motion to Enforce, Moog has discovered serial violations of the Stipulated TRO by Skyryse from: 1) spoliating potentially relevant evidence; 2) using Moog non-public information after entry of the Stipulated TRO (and disclosing it to third parties); and 3) failing to produce massive amounts of devices and data containing Moog non-public information by the April 1, 2022 turnover deadline. Skyryse's argument that the Stipulated TRO is protective, when it is flagrantly violating it, cannot be countenanced. And, this argument has been rejected in prior decisions of this Court. *See Liang*, 2014 WL 1089264, at *4 (rejecting defendant's arguments in favor of stay that plaintiff 's interests were "already protected" by a prior preliminary injunction because trade secret disclosure "could have occurred prior to the injunction's issuance and because the existence of an injunction does not guarantee compliance with its terms, particularly if there is no means to verify compliance, as would appear to be the case here absent discovery."); *see also Applied Materials, Inc. v. Semiconductor Spares, Inc.*, No. C95-20129RMW(EAI), 1995 WL 261451,

at *1 (N.D. Cal. Apr. 26, 1995) (denying motion to stay even where temporary restraining order had previously issued *and* the parties stipulated to a preliminary injunction enjoining defendants, because "plaintiffs' interest in damages might not be adequately protected if these proceedings were stayed," even though "much of plaintiffs' interests in bringing these suits have no doubt been met with the preliminary injunctions.").

A stay would prevent Moog from determining the full extent of misappropriation and use of its trade secrets. *See U.S. Legal Support, Inc. v. Hofioni*, No. 2:13-CV-01770-MCE-AC, 2016 WL 615620, at *2 (E.D. Cal. Feb. 16, 2016) (in denying motion to stay, holding a stay would cause plaintiff to be "limited in its ability to determine the scope of Defendants' misappropriation and consequent liability."). Further, as observed in *Liang*, even though the Stipulated TRO has been ordered, if a stay is issued, Moog will be prevented from obtaining relief for Skyryse's serial violations of the Stipulated TRO. This is patently unfair. Though Skyryse of course expeditiously seeks an immediate stay before it is penalized for violating the Court's orders, the law plainly does not counsel for such a result. *See E.I. du Pont de Nemours & Co. v. Hou*, No. CV 17-224-RGA, 2017 WL 2531940, at *2 (D. Del. June 9, 2017) (holding prejudice to plaintiff "heavily favors denying the stay" where it has a "clear interest in having discovery occur, for it is essential for [plaintiff] to determine the magnitude and extent of [the] theft, including what [defendant] did with [plaintiff's] trade secrets."); *Genentech, Inc. v. JHL Biotech, Inc.*, No. C 18-06582 WHA, 2019 WL 1045911, at *25 (N.D. Cal. Mar. 5, 2019) (holding that complete stay would hinder plaintiff's "ability to perform third-party discovery," and that "there is a risk that [plaintiff's] trade secrets have already been disclosed to others. This risk cannot be mitigated by provisional relief."). Consequently, this factor weighs heavily against a stay.

**D.    A Stay is Not Warranted Based on Defendants' Purported Interests**

**1.    The Burden on the Individual Defendants Is Minimal**

The Individual Defendants argue they will be prejudiced without a stay because (i) Moog will automatically turn over anything they say or produce to the government, and (ii) Moog is out to financially ruin them.  (ECF 393 at 6, 8.)  While neither argument is true and both are purely speculative, neither actually counsels for a stay under the case law.  *Mytel*, 2016 WL 11788633, at *4 (where "criminal prosecution has not yet materialized," the individual "[d]efendants' Fifth Amendment interests [were] only minimally implicated"); *Cal-Cleve*, 2005 WL 8157878, at *4 (same).  Moreover, contrary to the Individual Defendants' argument (ECF 393 at 9), Moog is not trying to "force the Individual Defendants to invoke" the Fifth Amendment.  Rather, Moog is merely trying to advance its case, through proper discovery, and the Individual Defendants may invoke their constitutional rights as they see fit, *provided* the privilege is actually available for the discovery at issue.  *See* ECF 253 at 4-10, ECF 272 at 6-8 (Judge McCarthy ruling, and Judge Vilardo affirming, that Individual Defendants' "cannot assert a Fifth Amendment privilege over [their] devices" and "the production of [their] devices does not implicate the Fifth Amendment.").

**2.    Skyryse's "Interests" are Speculative at Best**

An additional consideration against a stay is when the party seeking the stay has no Fifth Amendment rights and is not the party that is indicted.  *See Int'l Bus. Machines Corp. v. Brown*, 857 F. Supp. 1384, 1389–90 (C.D. Cal. 1994) (denying corporate defendants' motion for stay as "[t]he corporate defendants . . . enjoy no Fifth Amendment privilege"); *In re Mid-Atl. Toyota Antitrust Litig.*, 92 F.R.D. 358, 360 (D. Md. 1981) (denying corporate defendant's motion to stay and finding that lack of Fifth Amendment protections for corporate defendant weighed against stay).

The only interest Skyryse raises on its own behalf is its speculative fear that the Individual Defendants *might* invoke the Fifth Amendment, which *might* deprive Skyryse of helpful evidence.  This concern about what *may* occur is not enough to justify grinding this action to a halt.  *See, e.g.*, *Cal-Cleve*, 2005 WL 8157878, at *4 (no burden warranting stay where corporate defendant feared prejudice to defense if "important corroborating evidence will be withheld" were individual defendants to assert Fifth Amendment rights); *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 412 (S.D.N.Y. 2018) (same).[9]

Moreover, were the Individual Defendants to "broadly" invoke the Fifth Amendment and refuse to provide discovery in this action, as Skyryse fears (ECF 392 at 8, 13), such an invocation would be completely improper.  *See Sec. & Exch. Comm'n v. Plus Money, Inc.*, No. 08CV0764 MMA (NLS), 2008 WL 11338383, at *3 (S.D. Cal. Dec. 1, 2008) (stating "blanket refusal to answer any question is unacceptable" under the Fifth Amendment and inappropriate to stay proceedings "based on a blanket assertion of Fifth Amendment implications"); *see also United States v. Fridman*, 337 F. Supp. 3d 259, 267 (S.D.N.Y. 2018), *aff'd*, 974 F.3d 163 (2d Cir. 2020) (same); ECF 253 at 4-10 (Judge McCarthy noting blanket assertion by the Individual Defendants would be improper and inapplicable).  Regardless, the Ninth Circuit has made clear that that the mere fact that a defendant ***may, one day, decide*** to assert their Fifth Amendment privilege in a civil case does not support a stay.  *See Keating*, 45 F.3d at 325.

---

[9] Skyryse's cases on the point do not warrant a different result, and are all cases where civil defendants were already indicted before the request for a stay.  *See Alexander*, 2010 WL 5388000, at *3; *Taylor*, 2009 WL 2136986,  at *3; *Micron Tech.*, 2019 WL 3037542, at *2.

### 3.   Skyryse Can Defend this Action if the Individual Defendants Invoke the Fifth Amendment

Even if the Individual Defendants properly invoked the Fifth Amendment in this action (which has not occurred), Skyryse has not shown why it would be unable to defend the action on its own behalf.  Skyryse complains that it would be prejudiced if the Individual Defendants assert the Fifth Amendment because it would be unable to depose them on potentially incriminating documents. (ECF 392 at 15).  Of course, this problem would also apply to Moog, but the argument fails nonetheless.

It is undisputed that Kim and Pilkington took over one million files from Moog upon their departure.  The outstanding legal questions at issue in the civil litigation, including whether the stolen files contained trade secrets and whether those trade secrets have been misappropriated by Skyryse, can be investigated and argued by the parties *even if* the Individual Defendants invoke the Fifth Amendment.  Skyryse clearly has access to its own files – including those materials imported or modified by the Individual Defendants on Skyryse devices while employed by Skyryse – where Moog's trade secrets would be used, and has no Fifth Amendment basis for refusing to produce the same.  Skyryse also has access to all 23 of the electronic devices turned over by the Individual Defendants to iDS.  Moreover, other witnesses may certainly testify on these issues.

While Moog and Skyryse both want to depose Kim and Pilkington, they are not "central" to all the issues before the Court and there is other available evidence of misappropriation aside from their testimony.  For example, Moog has already shown this Court chat messages between Pilkington and Lori Bird discussing stealing Moog data, and these communications can be authenticated by Ms. Bird. (ECF 210 at 9).  Also, the presence of Moog data on Skyryse systems, including ensuing use and misappropriation by Skyryse, can be addressed by a person most qualified from Skyryse, and the many other Skyryse employees who received Moog

data from Pilkington and Kim. (ECF 210 at 7-10; ECF 249 at 6-9). Where other witnesses or documentary evidence are available to support a party's case, a stay is not warranted.  *See Genentech*, 2019 WL 1045911, at \*25; *see also Ironbridge Corp. v. Comm'r*, 528 F. App'x 43, 47 (2d Cir. 2013) (affirming denial of stay where the movant could still support its case through testimony of other witnesses and through various other documents).  Skyryse's purported interests simply do not warrant a stay as to Skyryse.

The *Genentech* decision further makes clear that a corporate defendant's inability to elicit testimony from affiliated defendants does not justify a stay.  In *Genentech*, this Court held that a corporate defendant's argument that "it would be hampered in defending itself in the action because it would not be able to rely on key witnesses" did not warrant a stay as to the corporate defendant, even where discovery was stayed as to individual defendants.  2019 WL 1045911, at \*25.  The Court noted that "the same would be true for [plaintiff] Genentech, who would be similarly unable to build its case without these key witnesses," and that "[m]oreover, [the corporate defendant] has not shown that it cannot rely on any other witness of substance…."  *Id*.  Importantly, the Court noted that a complete stay would hinder the plaintiff's "ability to perform third-party discovery," noting that "there is a risk that [plaintiff's] trade secrets have already been disclosed to others. This risk cannot be mitigated by provisional relief." *Id*.[10]

### E.   The Interests of the Court and Judicial Economy Weigh in Favor of Denying a Stay

The Court's convenience and judicial economy "typically weigh[] against further delay, as the Court has an 'interest in clearing its docket.'"  *United States Sec. & Exch. Comm'n v. Dobkin*, No. 5:21-CV-09285-EJD, 2022 WL 16924454, at

---

[10] Skyryse also contends it will be unduly prejudiced if an adverse inference is drawn against the Individual Defendants, but that claim is several degrees even more speculative than the ones already addressed herein.

*3 (N.D. Cal. Nov. 14, 2022) (quoting *Molinaro*, 889 F.2d at 903.)  "[J]udicial efficiency is not furthered by waiting indefinitely for a resolution that may never come" (*id.* (citation omitted)) and a "court's interests typically militate in favor of resolving cases quickly, without premising workflow upon 'fortuitous events' outside of the court's control" (*Mytel*, 2016 WL 11788633, at *5).

Indeed, "convenience of the courts is best served when motions to stay proceedings are discouraged."  *United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992) (citing *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987) (denying motion to stay civil action and rejecting theory that assertion of Fifth Amendment privilege would hamper effective response to suits because of pending criminal proceeding).

Skyryse's argument that judicial efficiency would be served by a stay ignores the undisputable facts that "[t]his action has been *pending for almost a year*, and Defendants have not provided *any indication* of when the criminal investigation might be completed. As there is *no official criminal proceeding*, and it is *unknown at this time if there will ever be*, judicial efficiency is not furthered by waiting indefinitely for a resolution that may never come."  *Carlson v. City of Redondo Beach*, No. 22000259ODWAFMX, 2020 WL 7714699, at *3 (C.D. Cal. Dec. 29, 2020) (emphasis added); *see Gran Sabana Corp. N.V. v. Kossoff*, No. 21-CV-3154 (RA), 2021 WL 3666116, at *3 (S.D.N.Y. Aug. 17, 2021) (same).  Consequently, the Court's interests weigh against a stay.

### F.    The Interests of the Public and Third Parties Weigh in Favor of Denying a Stay

"[P]roceeding with the civil case will best serve the interests of the public by ensuring that aggrieved parties are made whole as rapidly as possible."  *eBay*, 2010 WL 702463, at *6 (quotations omitted).  Further, courts have found that "the interests of non-parties and the public favor resolving" a civil action "particularly where," as here, the civil plaintiff "claims to have evidence of ongoing violations."

*Mytel*, 2016 WL 11788633, at *5.  As explained, Moog has found significant and ongoing violations of the Stipulated TRO by Skyryse.

Moreover, there is no indication that this action will impair the investigatory activities of the government.  *See Arden Way Assocs.*, 660 F. Supp. at 1499.  Indeed, neither the USAO nor any other government agency has sought to intervene in this action, and "therefore it must be assumed that they consider that a threat to the public interest has not as yet ripened" at this stage of the case.  *Id.* at 1499–500.  Further, the Individual Defendants have pointed to nothing that would prevent completion of the government's investigation of the circumstances relating to the Individual Defendants' actions that might justify a stay here.  *Id.*  Instead, the public has an interest in the "speedy resolution of the controversy."  *Keating*, 45 F.3d at 326); *A.I.P. v. City of Santa Ana*, No. 819CV02212JLSJDE, 2020 WL 3628658, at *4 (C.D. Cal. May 14, 2020) (same).  Moreover, "[t]o the extent the public may have an interest in maintaining the integrity of criminal proceedings, *those interests are diminished where no such proceedings exist*."  *Dobkin*, 2022 WL 16924454, at *3 (emphasis added); *Liang*, 2014 WL 1089264, at *6 (in evaluating public's interest in integrity of criminal proceedings, "where - as here - the timing and scope of any potential indictment are unknown, the risk of an unfair criminal proceeding must be given less weight because such concerns are necessarily speculative.") (internal citations and quotations omitted).  Thus, this factor weighs against issuance of a stay.

### G.    If the Court Is Inclined to Grant a Stay, It Should Be Limited in Scope

For the reasons explained, a stay is simply improper now.  But in the event the Court is inclined to grant a stay, it should be limited in at least two important ways.

First, even were a stay to be granted as to the Individual Defendants, it should be denied as to Skyryse, as Skyryse has not articulated anything beyond conclusory

statements to show why it could not proceed with the action on its own behalf.  Any stay should not extend to parties that have not asserted and cannot assert any Fifth Amendment privilege, and are continuing to participate in discovery day after day. *See Est. of Limon v. City of Oxnard*, No. CV 13-01961 SS, 2013 WL 12131359, at *7 (C.D. Cal. Dec. 10, 2013) (denying motion for a six-month stay of all proceedings, denying stay of discovery against defendants police department and municipal employer, but granting limited stay of discovery against individual officers named in civil case).

Second, any stay granted should be limited to *discovery only*, and not otherwise impede Moog's ability to seek relief for violations of existing Court orders.  For example, as explained, Moog's Motion to Enforce (based on Skyryse's serial violations of the Stipulated TRO) is pending.  (ECF 399, 400.)  It is critical, even were discovery to be stayed, that Moog have the ability to prevent and seek redress for past and ongoing violations for which Moog is suffering irreparable harm, or otherwise be able to seek relief from the Court.  Defendants should not be permitted to evade recourse for violations of court orders.

## CONCLUSION

Every factor to be considered weighs against the imposition of a stay at this juncture, and Moog respectfully requests that the Motion be denied in its entirety.

1  Dated:       March 23, 2023

2                                    **SHEPPARD, MULLIN, RICHTER &**
3                                    **HAMPTON LLP**
                                     *Attorneys for Plaintiff Moog Inc.*
4

5                              By      /s/ Kazim A. Naqvi
6                                    Rena Andoh (admitted *pro hac vice*)
                                     30 Rockefeller Plaza
7                                    New York, New York 10112
                                     Telephone: (212) 653-8700
8

9                                    Lai L. Yip (SBN 258029)
                                     Four Embarcadero Center, 17th Floor
10                                   San Francisco, California 94111
                                     lyip@sheppardmullin.com
11                                   Telephone: (415) 434-9100

12                                   Travis J. Anderson (SBN 265540)
                                     12275 El Camino Real, Suite 100
13                                   San Diego, California 92130
                                     tanderson@sheppardmullin.com
14                                   Telephone: (858) 720-8900

15                                   Kazim A. Naqvi (SBN 300438)
                                     1901 Avenue of the Stars, Suite 1600
16                                   Los Angeles, California 90067
                                     knaqvi@sheppardmullin.com
17                                   Telephone: (310) 228-3700

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF COMPLIANCE</u>**

The undersigned, counsel of record for Moog Inc., certifies that this brief contains 7,998 words, which:

**___** complies with the word limit of L.R. 11-6.1.

**_X_** complies with the word limit set by Court order dated March 22, 2023 [ECF No. 419].

Dated:  March 23, 2023          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____
                                   */s/ Kazim A. Naqvi*
                                   Rena Andoh (admitted *pro hac vice*)
                                   Kazim A. Naqvi

                                   Attorney for Plaintiff and Counterdefendant
                                   MOOG INC.