Rena Andoh (admitted *pro hac vice*)
  randoh@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Lai L. Yip (SBN 258029)
  lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

Travis J. Anderson (SBN 265540)
  tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691

Kazim A. Naqvi (SBN 300438)
  knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

Attorneys for Plaintiff and
Counterdefendant Moog Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC., | Case No. 2:22-cv-09094-GW-MAR |
| Plaintiff, | |
| v. | **PLAINTIFF AND COUNTERDEFENDANT MOOG INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS 1 THROUGH 9 IN DEFENDANT AND COUNTERCLAIMANT SKYRYSE INC.'S COUNTERCLAIMS** |
| SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS.1-50, | |
| Defendants. | Judge: Hon. George H. Wu<br>Date: April 13, 2022<br>Time: 8:30 a.m. |

SMRH:4892-9164-6297

-1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ctrm.:   9D

Complaint Filed:      March 7, 2022
Counterclaims Filed: January 30, 2023

**REDACTED VERSION OF
DOCUMENT PROPOSED TO BE
FILED UNDER SEAL**

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................. 10

II.   INCORPORATION BY REFERENCE .................................... 11

III.  THE COURT SHOULD DISMISS ALL COUNTERCLAIMS ........ 11

    A.    Skyryse's Fraud Claim (Count 5) Fails .......................... 11

        1.    There is No Reasonable Reliance as a Matter of Law ............. 12

        2.    The Alleged Fraud is Based on Non-Actionable Statements ................................................................. 13

        3.    Skyryse's Other Legal Authority is Not Applicable ............... 13

    B.    Skyryse's Trade Secret Misappropriation Claim (Count 4) Fails ...... 14

        1.    Skyryse Has Not Sufficiently Identified its Trade Secrets ....... 14

            a.    Skyryse's alleged "trade secrets" are actually Moog's .................................................. 15

            b.    Skyryse fails to establish independent economic value .................................................. 16

            c.    Skyryse fails to distinguish Moog's legal authority ....... 16

        2.    Skyryse Has Not Sufficiently Alleged Misappropriation ........ 17

    C.    Skyryse's Interference Claims Fail .................................. 18

        1.    The Tortious Interference with Contract Claim (Count 6) Fails ................................................................. 18

        2.    The Interference with Existing Business Relationships Claim (Count 7) Fails ............................... 20

        3.    The Interference with Prospective Business Advantage Claim (Count 8) Fails ............................... 20

    D.    Skyryse's Breach of Contract Claim (Count 1) Fails ........ 21

        1.    Dismissal or Transfer is Required ................................ 21

        2.    The Forum Selection Clause is Proper and Enforceable ......... 22

            a.    The forum selection clause is operative ........................ 22

            b.    Enforcing the forum selection clause is reasonable ....... 23

            c.    There has been no waiver ............................................. 24

        3.    Skyryse's Does not Plausibly Allege Breaches .................... 25

| | | | | |
|---|---|---|---|---|
| | | | a. | The cancellation of SOW1 ..............................................25 |
| | | | b. | Skyryse's alleged confidential information ..................26 |
| | E. | | Skyryse's Breach of the Implied Covenant (Count 2) Claim Fails ................................................................................27 | |
| | | 1. | The Claim Remains Time-Barred ...........................................28 | |
| | | 2. | The Alleged Breaches are Contradicted by the Documents Incorporated into the Counterclaims ....................28 | |
| | | 3. | Skyryse's Legal Authority is Inapposite .................................29 | |
| | F. | | Skyryse's Implied Contract Claim (Count 3) Fails ...........................31 | |
| | G. | | Skyryse's Unfair Competition Claim (Count 9) Fails .......................31 | |
| IV. | CONCLUSION | | ..............................................................32 | |

1
2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

4

<u>Federal Cases</u>

5
*AGR Fin., L.L.C. v. Ready Staffing, Inc.*
    99 F. Supp. 2d 399 (S.D.N.Y. 2000) ...........................................................22, 24

6
*Alta Bates Summit Med. Ctr. v. United of Omaha Life Ins. Co.*
7
    No. 07-04224 JSW, 2009 WL 1139584 (N.D. Cal. Apr. 28, 2009) ..................12

8
*Altman v. Liberty Equities Corp.*
9
    322 F. Supp. 377 (S.D.N.Y. 1971) ..................................................................25

10
*Ashcroft v. Iqbal*
11
    556 U.S. 662 (2009) .............................................................................17, 28, 30

12
*Asics Am. Corp. v. Lutte Licensing Grp. LLC*
13
    No. SACV131993JGBJPRX, 2014 WL 10538912 (C.D. Cal. Apr. 28, 2014).......................................................................................................19, 20

14
*Atl. Marine Constr. Co. v. United States Dist. Court*
15
    571 U.S. 49 (2013) ...........................................................................................21

16
*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*
17
    No. 2:17-CV-503, 2019 WL 2017541 (E.D. Va. May 7, 2019), *aff'd*, 28
18
    F.4th 1247 (Fed. Cir. 2022) .............................................................................23

19
*Baymiller v. Guarantee Mut. Life Co.*
20
    No. SA-CV-99-1566DOC(ANX), 2000 WL 33774562 (C.D. Cal. Aug. 3, 2000)................................................................................................................14

21
*Carney v. Beracha*
22
    996 F. Supp. 2d 56 (D. Conn. 2014) ................................................................24

23
*Cisco Sys. v. Wilson Chung*
24
    462 F. Supp. 3d 1024 (N.D. Cal. 2020) ...........................................................16

25
*Crede CG III, Ltd. v. 22nd Century Grp., Inc.*
26
    No. 16 Civ. 3103 (KPF), 2017 WL 280818 (S.D.N.Y. Jan. 20, 2017).............24

27
*Dorset Indus. v. Unified Grocers, Inc.*
28
    893 F. Supp. 2d 395 (E.D.N.Y. 2012)..............................................................30

*Enzo Biochem, Inc. v. Affymetrix, Inc.*
    No. 04-CIV-1555-RJS, 2013 WL 6987164 (S.D.N.Y. Dec. 6, 2013) .............. 30

*Ferraro Foods v. M/V Izzet Incekara*
    No. 01 Civ. 2682 (RWS), 2001 WL 940562 (S.D.N.Y. Aug. 20, 2001) .......... 25

*Garter-Bare Co. v. Munsingwear Inc.*
    723 F.2d 707 (9th Cir. 1984) ........................................................................ 21

*Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Calif., Inc.*
    No. CV-13-0087-DOC-MLG, 2013 WL 1518240 (C.D. Cal. Apr. 10,
    2013) ............................................................................................................ 31

*George v. Eatertainment S.A. v. Elmwood Ventures LLC*
    No. 1:22-cv-08047 (JLR), 2023 WL 2403618 (S.D.N.Y. Mar. 8, 2023) .......... 22

*Grant v. Aurora Loan Servs., Inc.*
    736 F. Supp. 2d 1257 (C.D. Cal. 2010) ........................................................ 29

*Image Online Design, Inc. v. Internet Corp. for Assigned Names &*
    *Numbers*, No. CV 12-08968 DDP JCX, 2013 WL 489899 (C.D. Cal. Feb.
    7, 2013) ........................................................................................................ 20

*Intelligen Power Sys., LLC v. dVentus Tech., LLC*
    2015 WL 3490256 (S.D.N.Y. Jun. 2, 2015) .................................................. 27

*Invisible Dot, Inc. v. DeDecker*
    No. 218CV08168RGKRAO, 2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) ...... 17

*Junction Solutions, LLC v. MBS DEV, Inc.*
    No. 06-C-1632, 2007 WL 114306 (N.D. Ill. Jan. 9, 2007) .............................. 23

*Keyssa, Inc. v. Essential Prod., Inc.*
    No. 17-CV-05908-HSG, 2019 WL 176790 (N.D. Cal. Jan. 11, 2019)
    ............................................................................................................. 17, 18

*Khoja v. Orexigen Therapeutics, Inc.*
    899 F.3d 988 (9th Cir. 2018) ........................................................................ 11

*Lockwood Corp. v. Black*
    501 F. Supp. 261 (N.D. Tex. 1980) .............................................................. 23

*M/A-COM Sec. Corp. v. Galesi*
    904 F.2d 134 (2d Cir. 1990) ........................................................................ 29

*Mewawalla v. Middleman*
   601 F. Supp. 3d 574 (N.D. Cal. 2022) ............................................................. 14

*Moore v. Apple*
   73 F. Supp. 3d 1191 (N.D. Cal. 2014) ............................................................. 19

*Moore v. Mars Petcare U.S., Inc.*
   966 F.3d 1007 (9th Cir. 2020) ......................................................................... 32

*Navigation Hldgs., LLC v. Molavi*
   445 F. Supp. 3d 69 (N.D. Cal. 2020) ............................................................... 16

*Nordstrom, Inc. v. Republic of Frends, Inc.*
   No. 17-CV-0444 W (MDD), 2017 WL 6059158 (S.D. Cal. Dec. 6, 2017) ....... 13

*P&G Auditors & Consultants, LLC v. Mega Int'l Commer. Bank Co.*
   18-CV-9232 (JPO), 2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019) ........... 29, 30

*Pavao v. Unifund CCR Partners*
   934 F. Supp. 2d 1238 (S.D. Cal. 2013) ............................................................ 22

*Penrose Computer Marketgroup, Inc. v. Camin*
   682 F. Supp. 2d 202 (N.D.N.Y. 2010) ............................................................. 26

*Phillips v. Audio Active, Ltd.*
   494 F.3d 378 (2d Cir. 2007) ............................................................................ 21

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*
   460 F. Supp. 3d 481 (S.D.N.Y. 2020) .............................................................. 30

*Power Integrations, Inc. v. De Lara*
   No. 20-cv-410-MMA (MSB), 2020 WL 1467406 (S.D. Cal. Mar. 26, 2020) ...................................................................................................................... 17

*Rezner v. Bayerishe Hypo-Und Vereinsbank AG*
   No. C 06-02064 JW, 2011 WL 6329854 (N.D. Cal. Nov. 8, 2011) ................. 31

*Roby v. Corporation of Lloyd's*
   996 F.2d 1353 (2d Cir. 1993) (applying NY contract law) ............................... 23

*Roots Ready Made Garments v. Gap Inc.*
   No. C 07-03363 CRB, 2008 WL 239254 (N.D. Cal. Jan. 28, 2008)
   .................................................................................................................. 13, 14

*Sateriale v. R.J. Reynolds Tobacco Co.*
    697 F.3d 777 (9th Cir. 2012) .................................................................. 30

*Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at **2-3
    (N.D. Cal. Feb. 16, 2017) ................................................................. 17, 18

*SuccessWare, Inc. v. ServiceTitan, Inc.*
    No. CV205179DSFPVCX, 2020 WL 12967998 (C.D. Cal. Sept. 10,
    2020) .............................................................................................. 19, 20

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*
    487 F.3d 89 (2d Cir. 2007) ................................................................... 14

*TSI USA, LLC v. Uber Techs., Inc.*
    No. 3:16-CV-2177-L, 2017 WL 106835 (N.D. Tex. Jan. 11, 2017), *aff'd*,
    No. 3:16-CV-2177-L, 2017 WL 3209399 (N.D. Tex. June 19, 2017) .............. 23

*UMG Recordings, Inc. v. Global Eagle Ent.*
    No. cv-14-3466-MMM-JPRx, 2015 WL 12746208 (C.D. Cal. Oct. 30,
    2015) .............................................................................................. 18, 19

*United States Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*
    No. 98 Civ 3099 (JGK), 2001 WL 300735 (S.D.N.Y. Mar. 27, 2001) ............. 21

*Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at
    *4 (N.D. Cal. Mar. 23, 2018) ............................................................... 15

*whiteCryption Corp. v. Arxan Tech, Inc.*
    2016 WL 3275944 (N.D. Cal. Jun. 15, 2016) ........................................ 19

*Williams v. Gerber Prods. Co.*
    552 F.3d 934 (9th Cir. 2008) .............................................................. 32

State Cases

*Art Cap. Grp., LLC v. Carlyle Inv. Mgmt. LLC*
    151 A.D.3d 604 (1st Dept., 2017) ....................................................... 27

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*
    17 N.Y.3d 269 (N.Y. App. 2011) ........................................................ 26

*Edwards v. Arthur Andersen LLP*
    44 Cal. 4th 937 (2008) ....................................................................... 31

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*
  50 Cal. 3d 1118 (1990)................................................................................. 19

*Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*
  12 Cal. App. 5th 200 (2017)......................................................................... 31

*Quadrant Structured Prods. Co. v. Vertin*
  23 N.Y.3d 549 (2014).................................................................................. 23

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
  2 Cal. App. 4th 153 (1991)........................................................................... 13

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Civil Procedure
  Rule 8........................................................................................................... 17
  Rule 12(b)(6) ............................................................................................... 11

U.S. Code
  Section 1404 ............................................................................................... 22
  Section 1404(a)........................................................................................... 22

## I.      INTRODUCTION

Skyryse argues Moog does not engage with the "well pleaded" allegations in the Counterclaims[1].  But in fact, it is Skyryse that refuses to acknowledge the full contents of the very documents from which it has cherry-picked misleading snippets of yet incorporated by reference in full into its pleading.  The actual contents of those documents, which are incorporated and thus reviewable on a motion to dismiss, undermine all of Skyryse's claims.  It is well-established that Skyryse cannot misleadingly plead what the documents mean and state when the plain and unambiguous contents of the incorporated documents say otherwise.

Skyryse's counterclaims are predicated on the following premises: 1) Moog had no experience with R-44 automated flight projects before meeting Skyryse, and misappropriated Skyryse's information to pursue projects; 2) Moog "agreed" in writing and otherwise to engage in a multi-phase development project with Skyryse; 3) Moog induced Skyryse to cancel SOW1 under a false pretense that the Parties' would enter into SOW2; and 4) Moog sent a "sham" quote for the same scope of work contemplated in SOW1.

The documents Skyryse relies upon for its claims show just the opposite: 1) Moog had been working on R-44 automated flight projects beginning in 2014, well before Skyryse was formed; 2) SOW1 includes at least four provisions making clear that Moog was under no obligation to continue with Phases 2-4, and indeed each subsequent phase would require mutual agreement for individual SOWs; 3) Skyryse agreed with Moog's proposal to cancel SOW1 and be paid for the work and services Moog had already performed under SOW1; and 4) the allegedly "sham" quote was for a different and larger scope of work compared to SOW1 – a clear case of comparing "apples to oranges".

---

[1] All terms not defined herein shall have the same definitions as in Moog's Motion.

1    Skyryse glaringly does not address the contents of its own incorporated
2    documents because it knows they doom its counterclaims, and instead relies on the
3    well-tread "merits dispute" argument to justify its deficient and contradicted
4    pleading.  Skyryse otherwise cites to inapposite legal authority, and provides
5    tortured misrepresentations of Moog's cases.  Skyryse's counterclaims should all
6    be dismissed with prejudice.

7    **II.   INCORPORATION BY REFERENCE**

8            Unable to reconcile the Counterclaims' allegations with the documents
9    incorporated therein, Skyryse cites to *Khoja v. Orexigen Therapeutics, Inc.*, 899
10   F.3d 988 (9th Cir. 2018) to argue Moog cannot introduce incorporated documents
11   to dispute facts. (Opp., fn. 8).  *Khoja*, however, actually prohibits exactly what
12   Skyryse attempts to do here.  *Khoja* held incorporation-by-reference "treats certain
13   documents ***as though they are part of the complaint itself***.  The doctrine prevents
14   plaintiffs from ***selecting only portions of documents that support their claims,***
15   ***while omitting portions of those very documents that weaken — or doom — their***
16   ***claims***." *Id*. at 1002-03 (emphasis added).  The court analyzed the policy concern
17   "underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion
18   by deliberately omitting references to documents upon which their claims are
19   based." *Id. Khoja* expressly allows Moog to submit for the Court's review the
20   actual documents incorporated into the Counterclaims to demonstrate why
21   Skyryse's allegations are not plausible.

22   **III.   THE COURT SHOULD DISMISS ALL COUNTERCLAIMS**

23           **A.   Skyryse's Fraud Claim (Count 5) Fails**

24           Skyryse argues it has sufficiently alleged fraud because Moog, after SOW1
25   was executed (which contains at least four provisions that it was limited to Phase 1
26   and any future work would require separate SOWs), misled Skyryse into believing
27   that the parties would continue onto Phases 2-4. (Opp., pp. 18-19).

28

1.     **There is No Reasonable Reliance as a Matter of Law**

Astoundingly, Skyryse argues "Moog fails to cite any contractual provision to support its disputed theory that it had no obligation to proceed to Phase 2, which is belied by the terms of the SOW." (Opp., p. 20). Skyryse claims in SOW1, Moog "agreed" to "  ." (*Id.*). But, there is no provision in SOW1 that shows Moog "agreed" to enter into Phases 2-4. The provision relied upon by Skyryse states: "

." (CC, Ex. C, § 4). "Intend" is not the same as "agree." This is confirmed by at least 4 other provisions in SOW1 that clarify that any engagement for future phases would require separate SOWs:

- "

." (*Id.*, § 4).

- "

." (*Id.*).

- SOW1 "

." (*Id.*, § 5).

- "

." (*Id.*, § 9).

Skyryse's fraud claims fail because the alleged misrepresentations are expressly contradicted by the ***pre-existing*** contractual provisions in SOW1, and therefore Skyryse could not reasonably rely on them as a matter of law. *See  Alta Bates Summit Med. Ctr. v. United of Omaha Life Ins. Co.*, No. 07-04224 JSW, 2009 WL 1139584, at *4 (N.D. Cal. Apr. 28, 2009) (dismissing fraud claim for failure to allege reasonable reliance because to "the extent the [insurance] policy

1    did require the disclosure of trigger diagnoses, then any reliance on conduct and/or

2    statements indicating otherwise would not have been reasonable.”).

3           **2.**       **The Alleged Fraud is Based on Non-Actionable Statements**

4           In response to Moog's primary argument regarding unactionable statements,

5    Skyryse cites one case, *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th

6    153, 158-59 (1991), to argue "broken promises of future conduct may, however, be

7    actionable." (Opp., p. 19).  In *Tarmann*, however, there was an explicit, clear

8    promise by an insurer that it "would pay Plaintiff for all such repairs …

9    immediately upon completion of those repairs." *Tarmann*, 2 Cal. App. 4th at 156.

10   Here, by contrast, Skyryse does not allege that Moog ever expressly promised it

11   would engage in Phases 2-4 and SOW1 provides the opposite.

12          This case is on all fours with *Roots Ready Made Garments v. Gap Inc.*, No.

13   C 07-03363 CRB, 2008 WL 239254 (N.D. Cal. Jan. 28, 2008)(granting motion to

14   dismiss). The alleged fraudulent statements included "Gap assured Roots that 'it

15   intended to develop a long-term relationship with Roots'" and "Ron Young assured

16   that 'Gap would attempt to find a way to continue to do business directly with

17   Roots.'" *Id.* at *6.  The Court found that "all of these statements constitute

18   'puffery' rather than actionable fraud. ***Promises to find a way to continue working***

19   ***and statements about intent to develop a long-term relationship do not constitute***

20   ***statements of fact***." *Id*. at *6 (emphasis added).  Similarly, any alleged statements

21   by Moog of an intention to pursue a long-term relationship with Skyryse are not

22   actionable misrepresentations.

23          **3.**       **Skyryse's Other Legal Authority is Not Applicable**

24          *Nordstrom, Inc. v. Republic of Frends, Inc.*, No. 17-CV-0444 W (MDD),

25   2017 WL 6059158 (S.D. Cal. Dec. 6, 2017) is distinguishable because it did not

26   involve vague statements about future work, and also pled the alleged

27   misrepresentation with specificity: "the change from Republic of Frends to Family

28

-13-

1    of Frends was only a name change, when in reality [defendants] were trying to

2    create a separate entity in Family" *Id*. at *4.

3         Similarly, in *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 596-97 (N.D.

4    Cal. 2022), the defendant allegedly promised to "transfer substantial revenue and

5    IP to Xpanse," "contribute $140 million to $150 million of revenue from FMC to

6    Xpanse," and provide "Plaintiff long-term employment at FMC and Xpanse." No

7    similar specific promises are involved here.

8         *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89 (2d Cir.

9    2007) involved a post-judgment appeal, not a motion to dismiss.  Further, the court

10   held: "the parties have agreed on all material terms of the contract and clearly

11   manifested their intent to be bound by those terms." *Id*. at 98.  There was only one

12   contract at issue, and the plaintiff sued based on implementation of certain terms

13   ***within that same contract***. Here, Skyryse claims Moog failed to enter into future

14   contracts for Phases 2-4 where none of the terms are defined.

15        In an attempt to distinguish *Baymiller v. Guarantee Mut. Life Co.*, No. SA-

16   CV-99-1566DOC(ANX), 2000 WL 33774562 (C.D. Cal. Aug. 3, 2000), Skyryse

17   claims *Baymiller* involved alleged misrepresentations that were "contradicted by

18   the express language of the" agreement. (Opp., fn. 9)  But, that is exactly what

19   happened here—the alleged statements by Moog to engage in a multi-phase

20   development project are expressly contradicted by at least four provisions in the

21   pre-existing SOW1.  Knowing this, Skyryse claims "to the extent Moog disagrees,

22   this is a merits dispute and not grounds for dismissal." (*Id*.). But, as shown in

23   *Baymiller* and similar cases, because the contract at issue is incorporated into the

24   Counterclaims by reference, such contradictory pleading ***is grounds for dismissal***.

25   **B.    Skyryse's Trade Secret Misappropriation Claim (Count 4) Fails**

26        **1.    Skyryse Has Not Sufficiently Identified its Trade Secrets**

27        Skyryse first argues that the counterclaims "describe in ample factual detail

28   examples of trade secrets Moog misappropriated." (Opp., p. 2)  Other than the

1    boilerplate list of 24 categories in Paragraph 109 of the Counterclaims, Skyryse

2    points to vague allegations about using "███████████████████████" and

3    gathering data and flight hours related to such projects. (*Id.*, pp. 2-3). As pointed

4    out in the opening brief, Skyryse's general, boilerplate terms are a stark contrast to

5    its own assertions regarding what Moog should have to do with respect to adequate

6    trade secret identification.

7         Moog cannot defend against Skyryse's trade secret misappropriation claim

8    because it does not know if it is being charged with misappropriating ideas,

9    programs, source code, documents, presentations, summaries, or technical

10   documents, or the types of information contained in such materials. *Vendavo, Inc.*

11   *v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar.

12   23, 2018) (a trade secret plaintiff must "***permit the defendant to ascertain at least***

13   ***the boundaries within which the secret lies***.") (emphasis added).

14                  a.    **Skyryse's alleged "trade secrets" are actually Moog's**

15        The alleged "trade secrets" that Skyryse claims as its own are contradicted

16   by the documents it quotes from in the Counterclaims. Indeed, Moog expressly

17   advised Skyryse in August 30, 2018, well before any of Skyryse's alleged

18   confidential information was shared with Moog, that: "████████████████████

19   ██████████████████████████████████████████████████████████

20   █████████████████████████████████████████████████

21   ████████████████████." (Dkt. 359-3). Additionally, an internal

22   Moog presentation relied upon by Skyryse in the Counterclaims makes clear that

23   ***before 2018***, Moog had already "████████████████████████████

24   ████████████████" and in 2018, the "████████████████████████."

25   (Dkt. 359-15). There is nothing novel or secret about Skyryse using "██████████

26   ████████████" or "███████████████████████████████." Moog

27   had been doing these projects before Skyryse was even formed.

28

**b.**     **Skyryse fails to establish independent economic value**

"A plaintiff may show independent economic value by circumstantial evidence of the resources invested in producing the information, the precautions taken to protect its secrecy, and the willingness of others to pay for its access." *Cisco Sys. v. Wilson Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020) (citations omitted).

Here, Skyryse fails to allege how any of its purported "trade secrets" have any independent economic value.  The Counterclaims do not allege facts establishing "the resources invested in producing the information" or "the willingness of others to pay for its access." The Counterclaims confirm there is nothing novel about ███████████ for autonomous flight projects, which Moog had been doing ***since 2014***. Skyryse cannot establish this required element.

**c.**     **Skyryse fails to distinguish Moog's legal authority**

Skyryse argues *Navigation Hldgs., LLC v. Molavi*, 445 F. Supp. 3d 69 (N.D. Cal. 2020) is not applicable because there, the plaintiffs sufficiently alleged "two categories of trade secrets" which Skyryse characterizes as "a set of 'client information' and 'a specialized process for anodizing unfinished alloy tubes.'" (Opp., p. 4). Skyryse fails to mention that the plaintiffs in *Navigation Hldgs* alleged a ***detailed, eight-sentence explanation*** of how the manufacturing processes at issue were developed and had economic value, including by detailing the technology, its benefits, and procurement of specialized products from certain vendors. *Navigation Hldgs., LLC*, 445 F. Supp. 3d at 75. The Counterclaims provide nothing close to this level of specificity regarding the purported trade secrets at issue.

For the remainder of the cases cited by Moog, Skyryse argues in broad-brush that none of them apply because they all involve "catchall language" to allege trade secrets. (Opp., p. 4). But, the cases contained the same type of broad, generic

1  language in the Counterclaims. *See Invisible Dot, Inc. v. DeDecker*, No.

2  218CV08168RGKRAO, 2019 WL 1718621, at *5 (C.D. Cal. Feb. 6, 2019)

3  (insufficiently identifying trade secrets as "(a) building virtual worlds; and (b)

4  linking real world assets to those virtual worlds (wherein individuals and/or entities

5  can purchase shares of the virtual assets via block-chain technology)."); *Space*

6  *Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at **2-3 (N.D. Cal.

7  Feb. 16, 2017) (descriptions such as "data on the environment in the stratosphere"

8  and "data on the propagation of radio signals from stratospheric balloon-based

9  transceivers" failed to satisfy requirements of Rule 8).

10          **2.      Skyryse Has Not Sufficiently Alleged Misappropriation**

11          Skyryse asks this Court to make the impermissible logical leap that simply

12  because Skyryse disclosed alleged trade secrets to Moog, and Moog internal

13  presentations describe the use of ███████████ in connection with autonomous

14  flight (which Moog had been doing since 2014), that Moog must have

15  misappropriated Skyryse's purported trade secrets.  But, as demonstrated in the

16  very authority relied on by Skyryse, that is not the law under *Iqbal* and *Twombly*,

17  and mere possession of alleged trade secrets is not enough.  *Power Integrations,*

18  *Inc. v. De Lara*, No. 20-cv-410-MMA (MSB), 2020 WL 1467406, at *19 (S.D.

19  Cal. Mar. 26, 2020) (a party "must prove more than a defendant's mere possession

20  of trade secrets.").

21          Indeed, while Skyryse concludes that "Moog's own documents show the

22  very secrets that Skyryse had shared with Moog in confidence regarding

23  certification plans," (Opp., p. 5), there are no factual allegations that Moog ***used***

24  Skyryse's alleged trade secrets.  Skyryse cites *Keyssa, Inc. v. Essential Prod., Inc.*,

25  No. 17-CV-05908-HSG, 2019 WL 176790, at *3 (N.D. Cal. Jan. 11, 2019) to

26  claim it has sufficiently alleged misappropriation by suggesting internal Moog

27  documents evidenced Skyryse's trade secrets.  (Opp., p. 5).  But, the plaintiff in

28  *Keyssa* alleged: "after accessing Keyssa's trade secrets under protection of the

NDA, Defendant released the Essential Phone and Essential 360° Camera, which 'incorporate vast amounts of Keyssa's proprietary technologies' . . . Defendants attempted to implement Keyssa proprietary technology in the SiBEAM Snap chip in the Essential Phone and Essential 360° Camera without Keyssa's permission." *Keyssa, Inc.*, 2019 WL 176790, at *3. The Counterclaims do not contain any similar allegations demonstrating Moog's unlawful use of specific Skyryse technologies.

Skyryse also attempts to disregard *Space Data Corp.*, claiming the allegations there were "not supported by adequate factual allegations." *Space Data Corp.*, 2017 WL 5013363, at *2. But, in *Space Data* Corp., like here, the plaintiff alleged that "Defendants have engaged in other business activity based on Space Data's confidential trade secret information, which conflict with their legal obligations to Space Data." *Id*. Because there were no "adequate factual allegations . . . providing a reasonable basis for this Court to infer that Google improperly used Space Data's trade secrets," the plaintiffs failed to "raise a right to relief above the speculative level." *Id*. (citations omitted).

### C.   Skyryse's Interference Claims Fail

#### 1.   The Tortious Interference with Contract Claim (Count 6) Fails

Skyryse argues it has sufficiently pled its sixth count because it identifies Robinson Helicopter as one of its ▮▮▮▮▮ and states that it and Robinson entered into certain identified contracts. (Opp., p. 22). Skyryse claims it only needs to identify the third party at issue, and no other facts are required. (*Id*.).

Skyryse misrepresents *UMG Recordings, Inc. v. Global Eagle Ent.*, No. cv-14-3466-MMM-JPRx, 2015 WL 12746208 (C.D. Cal. Oct. 30, 2015), which did not hold that a plaintiff need *only* identify the relevant third party to withstand scrutiny. *Id*. at *22. Rather, the court in *UMG* dismissed the interference claim because "***counterclaimants plead no details concerning the contracts*** save for

1    offering a non-exhaustive list of the parties to them." *Id*. (emphasis added).

2    Identification of contractual terms is required "because 'to understand whether

3    [counterclaimants'] performance was disrupted require[s] the district court to

4    determine what contractual rights [they] possess[ed].'" *Id*. (citations omitted).

5    *UMG* is exactly like this case where Skyryse identifies a third party but none of the

6    underlying contracts or their terms.

7          The other cases cited by Skyryse actually help Moog. In *SuccessWare, Inc.*

8    *v. ServiceTitan, Inc.*, No. CV205179DSFPVCX, 2020 WL 12967998 (C.D. Cal.

9    Sept. 10, 2020), just like here, while there were conclusory allegations that the

10   defendant "ServiceTitan intentionally, purposefully, and unjustifiable[sic]

11   interfered with SuccessWare's contractual relationship with Pointman," the court

12   determined "it is unclear what term ServiceTitan even allegedly 'induced Pointman

13   to breach.'" *Id*. at \*10. *See also whiteCryption Corp. v. Arxan Tech, Inc.*, 2016 WL

14   3275944, at \*4-5 (N.D. Cal. Jun. 15, 2016) (plaintiff alleged that the defendant

15   knew of a specific, dated NDA agreement between plaintiff and its auditor and

16   identified certain terms therein); *Moore v. Apple*, 73 F. Supp. 3d 1191, 1203 (N.D.

17   Cal. 2014) (plaintiff "identified a valid existing contract with [defendant] and the

18   contractual duty at issue.").

19         Next, Skyryse argues it is not required to allege facts about how unidentified

20   contracts with Robinson were breached or ensuing damages. (Opp., p. 23).  Its

21   reliance on *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990) is

22   confusing because there, the court found the tortious interferences were ***so***

23   ***baseless***, that they were "brought without probable cause" sufficient for a finding

24   of malicious prosecution. *Id*. at 1137.  The court analyzed in detail ***plaintiff's***

25   ***failure to sufficiently allege how the defendant interfered with a specifically***

26   ***identified contract***. *Id*. at 1130. *Asics Am. Corp. v. Lutte Licensing Grp. LLC*, No.

27   SACV131993JGBJPRX, 2014 WL 10538912 (C.D. Cal. Apr. 28, 2014) is also

28

1   distinguishable because there, the plaintiff alleged interference with ***a specific,***
2   ***dated agreement*** which was attached to the pleading. *Id*. at \*\*2, 7.

3          The law is clear—Skyryse must allege a specific contract that has been
4   breached or disrupted, and how.  *See Image Online Design, Inc. v. Internet Corp.*
5   *for Assigned Names & Numbers*, No. CV 12-08968 DDP JCX, 2013 WL 489899,
6   at \*9 (C.D. Cal. Feb. 7, 2013) (a party "must allege actual interference with actual
7   contracts, such that the result is a specific breach, not merely general damage to the
8   business.").  This claim therefore fails.

9                    **2.      The Interference with Existing Business Relationships**
10                            **Claim (Count 7) Fails**

11          Skyryse relies solely on *SuccessWare* for its seventh count. However, there
12  the plaintiff expressly alleged that the defendant's "false statements have caused ...
13  SuccessWare's customers to end their relationship with SuccessWare and move
14  their business to ServiceTitan." *SuccessWare, Inc.*, 2020 WL 12967998 at \*7.
15  Here, Skyryse alleges no facts regarding how Moog disrupted any relationship or
16  proximately caused damages, including what Moog said to Robinson, that any
17  relationship ended, or that any business was diverted from Skyryse.

18                    **3.      The Interference with Prospective Business Advantage**
19                            **Claim (Count 8) Fails**

20          Skyryse argues it has sufficiently pled this claim because it "identifies its
21  relationship with Robinson Helicopter as a customer . . . with which Moog
22  interfered." (Opp., p. 25). This is disingenuous because Robinson is only identified
23  as a current contractual customer under Counts 6 and 7 above, not Count 8. (*See*
24  CC, ¶¶ 126-136).  The allegations for Count 8 only vaguely reference "prospective
25  customers." (*Id*., ¶¶ 137-143).  Skyryse's paltry attempts to distinguish *Damabeh*
26  and *Teledyne*, where no actual prospective parties were identified, fail. (Opp., p.
27  25).

28

The only case substantively relied upon by Skyryse, *Garter-Bare Co. v. Munsingwear Inc.*, 723 F.2d 707 (9th Cir. 1984) dealt with an entirely different procedural posture: a post-trial judgment notwithstanding the verdict which analyzed the granting of summary judgment for patent invalidity.  Even so, the plaintiff identified specific business relationships and third parties. *Id*. at 716.

### D. Skyryse's Breach of Contract Claim (Count 1) Fails

#### 1. Dismissal or Transfer is Required

Skyryse argues the "Court has personal jurisdiction over Moog" and that the "parties cannot deprive a court of personal jurisdiction through contract." (Opp., p. 6).  But, "[s]imply because a court has jurisdiction does not mean that a court should exercise that jurisdiction and refuse to enforce a forum selection clause." *United States Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*, No. 98 Civ. 3099 (JGK), 2001 WL 300735, at *16 (S.D.N.Y. Mar. 27, 2001).

Skyryse cites to *Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007), but cherry-picked quotes regarding *permissive* forum selection clauses not at issue in this case. *Id*. at 386 ("A so-called permissive . . . does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate").  Here, Skyryse does not dispute that the forum election clause in the T&C is broad and *mandatory*. (CC, Ex. D, § 31).  Because the parties entered a mandatory forum selection clause, under Skyryse's own authority, the "mandatory forum clause is entitled to the Bremen presumption of enforceability."  *Phillips*, 494 F.3d  at 386.

Skyryse improperly relies on *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49 (2013) because that case *supports transfer* by holding: "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."  *Id*. at 62. Indeed, "[i]n all but the most unusual cases," the "interest of justice is served by holding parties to their bargain." *Id*. at 66 (citations omitted).

1    If the Court elects not to dismiss Skyryse's breach of contract claims related

2    to the T&C and 2019 NDA, it should sever and transfer them to New York under

3    Section 1404(a) and *Atlantic Marine*.[2]

4           **2.     The Forum Selection Clause is Proper and Enforceable**

5    Skyryse argues the forum selection clause does not apply because it is

6    inoperative, enforcing it would be unreasonable, and Moog waived its ability to

7    enforce the forum selection clause. (Opp., pp. 8-12).

8                  **a.     The forum selection clause is operative**

9    Skyryse argues the forum selection clause "did not survive termination" of

10   the T&C because other clauses in the T&C contemplate survival of termination or

11   a certain effective period. (Opp., pp. 8-9).

12   Skyryse cites to a random assortment of out-of-circuit cases, applying the

13   law of different states.  However, cases applying New York state law are

14   unambiguous that "even if [an] [a]greement was terminated, its forum selection

15   clause would still be effective." *AGR Fin., L.L.C. v. Ready Staffing, Inc.*, 99 F.

16   Supp. 2d 399, 401 (S.D.N.Y. 2000); *George v. Eatertainment S.A. v. Elmwood*

17   *Ventures LLC*, No. 1:22-cv-08047 (JLR), 2023 WL 2403618, at *8 (S.D.N.Y. Mar.

18   8, 2023) ("Courts in the Second Circuit routinely enforce forum-selection clauses

19   after the termination of an agreement, even where the agreement — like here —

20   does not contain a general, standalone survival clause.").  Moreover, courts

21   applying New York state law have expressly rejected the "theory that the absence

22   of an express survival clause applicable to a provision necessarily implies that the

23   provision does not survive." *Id*. at *26.

24   _____

25   [2] Skyryse argues Moog did not raise "venue arguments under Section 1404(a)" in
     the Motion. (Opp., p. 8). Clearly, Moog challenged venue sufficiently such that
26   Skyryse devoted pages to Section 1404 arguments in Opposition. (*Id*., pp. 8-12).
     Regardless, courts may transfer cases under Section 1404(a) *sua sponte. See Pavao*
27   *v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1242 (S.D. Cal. 2013)("A transfer
     of venue pursuant to § 1404(a) may be made by motion of either party or by the
28   court sua sponte, so long as the parties are first given the opportunity to present
     their views on the issue.").

1    All of the cases cited by Skyryse are distinguishable.  *See Quadrant*
2    *Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549 (2014) (securities case involving
3    "no-action clause" under indenture, and not a forum selection clause); *BASF Plant*
4    *Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-CV-503, 2019 WL
5    2017541, at *1 (E.D. Va. May 7, 2019), *aff'd*, 28 F.4th 1247 (Fed. Cir. 2022)
6    (contract contained explicit "survival clause" enumerating the clauses that would
7    survive termination and the "the choice of law and forum provision was not on that
8    list"); *TSI USA, LLC v. Uber Techs., Inc.*, No. 3:16-CV-2177-L, 2017 WL 106835,
9    at *5 (N.D. Tex. Jan. 11, 2017), *aff'd*, No. 3:16-CV-2177-L, 2017 WL 3209399
10   (N.D. Tex. June 19, 2017) (same); *Junction Solutions, LLC v. MBS DEV, Inc.*, No.
11   06-C-1632, 2007 WL 114306, at *4-5 (N.D. Ill. Jan. 9, 2007) (same); *Lockwood*
12   *Corp. v. Black*, 501 F. Supp. 261, 264 (N.D. Tex. 1980) (analyzing termination of
13   forum-selection clause for choice of law, not forum).  Here, there is no express
14   "survival clause" or language that the forum selection clause does not survive
15   termination.

16              **b.    Enforcing the forum selection clause is reasonable**

17        Skyryse's next attack on the ironclad forum selection clause is that enforcing
18   it would be unreasonable because there are many claims asserted between Moog
19   and Skyryse, and that requiring Skyryse to litigate claims related to the T&C in
20   New York would be "unreasonable and inefficient." (Opp., pp. 9-10).

21        Forum selection clauses may be deemed unreasonable: "(1) if their
22   incorporation into the agreement was the result of fraud or overreaching; (2) if the
23   complaining party will for all practical purposes be deprived of his day in court,
24   due to the grave inconvenience or unfairness of the selected forum, (3) if the
25   fundamental unfairness of the chosen law may deprive the plaintiff of a remedy, or
26   (4) if the clauses contravene a strong public policy of the forum state." *Roby v.*
27   *Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (applying NY contract

28

1   law) (quotes and citations omitted).  None of these factors are applicable here, and
2   Skyryse provides no law or facts to the contrary.

3           Skyryse's legal authority is not applicable. *Carney v. Beracha*, 996 F. Supp.
4   2d 56 (D. Conn. 2014) involved multiple forum selection clauses, "not all of the
5   forum selection clauses [were] mandatory, and the mandatory forum selection
6   clauses, in some instances, relate[d] only to portions of each transaction." *Id*. at 71.
7   Here, there is a single, mandatory forum selection clause which controls all
8   allegations related to Skyryse's claimed breaches of the T&C and 2019 NDA.

9           Skyryse also argues it would be "unreasonable" to sever "two of fifteen
10  claims and transfer them back to New York." (Opp., p. 10).  However, remanding
11  claims back to the original court it was transferred from is not sufficiently
12  unreasonable to deny enforcement of a forum selection clause.  *See AGR Fin.,*
13  *L.L.C. v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 401 (S.D.N.Y. 2000) (enforcing
14  forum selection clause and remanding the case back to the court it was previously
15  removed from).  Skyryse's complaint about severing claims is also unfounded. *See*
16  *Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16 Civ. 3103 (KPF), 2017 WL
17  280818, at **14-16 (S.D.N.Y. Jan. 20, 2017) (severing and transferring claims
18  subject to forum selection clause in accordance with *Atlantic Marine*).

19                  **c.      There has been no waiver**

20          Lastly, Skyryse argues Moog has waived its ability to enforce the forum
21  selection clause because Moog allegedly did not "argue that the forum selection
22  clause required any of its claims to remain in New York" in opposing Skyryse's
23  transfer motion. (Opp., p. 12).  But, Moog's seventh cause of action in the
24  Complaint against Skyryse is for breaches of the 2018 and 2019 NDAs only
25  (which contain no mandatory forum-selection clauses), and it never sued Skyryse
26  for breach of the T&C. (Dkt. 1, pp. 56-57).  Moog seeks to enforce the T&C's
27  forum selection clause at the earliest available opportunity.  The mere fact that the
28  2019 NDA is incorporated by reference into the T&C does not permit Moog to

1   invoke the T&C's forum selection clause when that contract is not a basis for

2   Moog's breach of contract claims.  And, when Moog opposed Skyryse's transfer

3   motion, Skyryse had not yet filed its counterclaims and sought relief under the

4   T&C.  For these reasons alone, the waiver argument fails.

5       Skyryse's reliance on *Ferraro Foods v. M/V Izzet Incekara*, No. 01 Civ.

6   2682 (RWS), 2001 WL 940562 (S.D.N.Y. Aug. 20, 2001) lacks merit. (Opp., p.

7   11).  *Ferraro* supports Moog's position because there, the defendants ***did not***

8   ***waive their forum selection clause*** despite having previously ***stipulated*** to transfer

9   the case to a different forum.  *Ferraro Foods,* 2001 WL 940562 at *4.  The court

10  also held "it would be unfair to infer such a significant waiver absent a clear

11  indication of intent through a party's actions" and having determined "[n]o waiver

12  has been found where parties merely participated in pretrial motions, moved to

13  dismiss after discovery has been completed, or where the opposing party was not

14  prejudiced by dismissal." *Id*.

15      Skyryse also improperly relies on *Altman v. Liberty Equities Corp.*, 322 F.

16  Supp. 377 (S.D.N.Y. 1971), where there ***was no forum selection clause at issue***;

17  rather, it involved a statutory right to object to venue. *Altman*, 322 F. Supp. at 378.

18          **3.      Skyryse's Does not Plausibly Allege Breaches**

19              **a.      The cancellation of SOW1**

20      Skyryse argues it has "state[d] a valid breach claim," by summarizing

21  various broad allegations in the Counterclaims. (Opp., pp. 6-7).  However, when

22  confronted with the incorporated documents surrounding Skyryse's express

23  cancellation of SOW1, Skyryse resorts to circular reasoning that "Moog de-frauded

24  Skyryse to induce it to 'cancel' the SOW . . . which renders any such release

25  invalid." (*Id*.).

26      Skyryse does not address the statements from its officer Gonzalo Rey where

27  he acknowledged to Moog "I understand how you get to the $970k," where he

28  expressly agreed to Moog's request to "revise the current statement of work" and

to "invoice [Skyryse] for work complete[d] to date." (Dkt. 359-8).  Any claim the March 31, 2020 cancellation from Skyryse was procured by fraudulent inducement (which is wholly contradicted by Skyryse's own statements and conduct) fails because Skyryse does not allege or advance any claim for fraudulent inducement. Skyryse's fraud claim is expressly titled as "Misrepresentation" and, nonetheless, fails as described above.

As lone support for its argument that Rey's cancellation of SOW1 was invalid, Skyryse cites to *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269 (N.Y. App. 2011).  This case is off point because: 1) it involved a release of claims in a settlement agreement, not a voluntary cancellation of contract in writing; and 2) the court found the release ***to be valid*** because the alleged fraud "falls squarely within the scope of the release." *Id*. at 277.  Skyryse cites no legal authority showing that its agreement to Moog's request to cancel SOW1 and pay Moog for work completed (reflected in e-mail correspondence and a standalone letter) was procured by fraud.

### b.    Skyryse's alleged confidential information

Skyryse concludes it has sufficiently alleged that Moog "breached its obligations, including by using Skyryse's confidential and Proprietary Information." (Opp., p. 7).  All the cases it cites are inapposite.

Skyryse relies on *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202 (N.D.N.Y. 2010).  However, the operative pleading in *Penrose* identified the "relevant provisions of the nondisclosure agreement," and alleged that the plaintiff "disclosed the contents of the confidential information to be presented to [ICS]" and the defendant "utilized the highly confidential and trade secret information of [Plaintiff] and its customers in marketing Avant IT's services to [Plaintiff's] customers." *Id*. at 212.  Here, the Counterclaims contain no factual allegations regarding how Moog unlawfully disclosed or used Skyryse's purported trade secrets.

1    *Intelligen Power Sys., LLC v. dVentus Tech., LLC*, 2015 WL 3490256
2    (S.D.N.Y. Jun. 2, 2015) is unhelpful because it involved a straightforward claim
3    for failure to pay for services provided, not an express voluntary cancellation of the
4    contract by the plaintiff like here.

5           Finally, Skyryse incorrectly concludes *Art Cap. Grp., LLC v. Carlyle Inv.*
6    *Mgmt. LLC*, 151 A.D.3d 604, 605 (1st Dept., 2017), cited by Moog, does not apply
7    because the plaintiff there failed to "identify what confidential information was
8    allegedly misused." (Opp., p. 8). In *Art Cap*, the plaintiff concluded "defendant
9    must have used the confidential information it provided regarding the secured art
10   loan business because defendant's principal did not know much about the business
11   prior to speaking with plaintiff and, within the two-year period, defendant set up a
12   competitor." *Id*. at 605. But, the court found there were no factual allegations
13   identifying "what confidential information was allegedly misused by defendant"
14   and the confidentiality agreement at issue "expressly provided that defendant could
15   do business with a competitor." *Id*.

16          Here, just like *Art Cap*, Skyryse baldly argues that Moog must have used
17   Skyryse's confidential information on the basis of a demonstrably false assertion
18   that Moog had no experience in the autonomous flight industry prior to meeting
19   Skyryse, and only pursued autonomous flight projects after the relationship with
20   Skyryse ended. And, just like relevant contract in *Art Cap*, SOW1 expressly made
21   clear that Moog had already invested substantial funds in pursuit of "███████████
22   ██████████" and would continue to invest in such projects moving forward.
23   (CC, Ex. C, § 7.2).

24          **E.     Skyryse's Breach of the Implied Covenant (Count 2) Claim Fails**
25          Skyryse argues it has sufficiently alleged this claim because "Moog deprived
26   Skyryse of its expected benefits under their agreements" and "provid[ed] Skyryse
27   with a sham quote for subsequent work." (Opp., p. 12).

28

**1.      The Claim Remains Time-Barred**

Skyryse argues its implied covenant claim does not sound in tort because Moog allegedly "deprived it of the benefit of the parties' agreement, which means the claim arises in contract." (Opp., p. 13).  But Skyryse's own arguments demonstrate that its implied covenant claim is based on an alleged fraudulent inducement "to end part of [the Parties] relationship." (*Id.*, p. 12). Fraudulent inducement is a tort-based theory (which Skyryse has not sufficiently alleged).

Skyryse then argues that the "two-year statute of limitations was tolled when Moog filed its Complaint." (*Id.*, p. 13).  Even if that were true, the events related to Skyryse's implied covenant claim took place outside the limitations period.  For example, the following occurred: 1) SOW1 was executed on May 31, 2019; 2) a statement from Moog CEO John Scannell, which Skyryse claims is part of the alleged inducement, occurred on September 20, 2019; and 3) Moog's communication that "Skyryse intends to cancel the referenced purchase order" is dated March 6, 2020. (CC ¶¶ 31, 50, 53) (Dkts. 359-5, 359-6).  All these actions occurred before March 7, 2020, when the limitations period started even under Skyryse's own theory. Skyryse does not allege facts underlying any equitable tolling or delayed discovery.

**2.      The Alleged Breaches are Contradicted by the Documents Incorporated into the Counterclaims**

Skyryse resorts to its stale defense that Moog "simply disputes Skyryse's factual allegations, which must be accepted as true." (Opp., p. 15).  Moog is not disputing Skyryse's factual allegations—it is pointing to documents incorporated by reference into Skyryse's pleading which directly undermine and render implausible Skyryse's allegations such that a claim is not, by definition, adequately pled under *Twombly* and *Iqbal*.

First, it is indisputable that Moog was not required to enter into Phases 2-4 following SOW1. Skyryse incredibly argues that the provisions cited by Moog

reflects an "agreement" to enter into Phases 2-4. (Opp., p. 16).  As described above in Section III.A.2, there was no agreement by either Party to engage in Phases 2-4 until and unless separate SOWs were agreed upon and signed before commencing each phase.

Second, Skyryse argues Moog's introduction of e-mails and documents reflecting Skyryse's cancellation of SOW1 is contrary to Skyryse's allegations of fraudulent inducement. (Opp., p. 15).  Again, Skyryse refuses to acknowledge its own incorporated documents showing Gonzalo Rey expressly agreed with Moog's request to close out SOW1 and sent a formal cancellation notice. (Dkts. 359-7 to 9). Moog's decision not to move forward with Phases 2-4 after Skyryse cancelled SOW1 cannot serve as a basis for liability. *See M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) ("the implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.").  Skyryse has also not alleged any fraudulent inducement claim or its elements.

Finally, Skyryse argues that Moog's introduction of documents demonstrating there was no "sham quote" is merely a dispute of "factual allegations, which must be accepted as true." (Opp., p. 15).  But, the documents that were incorporated by reference by Skyryse unambiguously contradict Skyryse's pleading, and therefore the claim must be dismissed. (Dkts. 359-10 to 12).  *See Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (dismissing all eight claims by applying incorporation-by-reference doctrine because it "permits a court deciding a Rule 12(b)(6) motion to consider documents incorporated by reference, but not physically attached to the complaint, if they are central to plaintiff's claim and no party questions their authenticity.").

### 3.    Skyryse's Legal Authority is Inapposite

Skyryse argues its implied covenant allegations are similar to *P&G Auditors & Consultants, LLC v. Mega Int'l Commer. Bank Co.*, 18-CV-9232 (JPO), 2019

1    WL 4805862 (S.D.N.Y. Sept. 30, 2019). (Opp., pp. 12-13).  There, however, P&G
2    was allegedly "tricked" into disclosing confidential information and the defendant
3    disseminated a slanderous report about P&G to a regulatory agency and P&G's
4    current and potential clients.  *Id*. at *2.  Here, Skyryse asks this Court to speculate
5    that Moog's possession of Skyryse's allegedly confidential information and
6    Moog's subsequent purchase of a company within the automated flight space
7    necessarily suggests that Moog improperly disclosed Skyryse's confidential
8    information.  This is the exact jump from merely possible to plausible which *Iqbal*
9    cautions against. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

10         Skyryse's other cases are off-point. *See Enzo Biochem, Inc. v. Affymetrix,*
11   *Inc.*, No. 04-CIV-1555-RJS, 2013 WL 6987164, at *7 (S.D.N.Y. Dec. 6, 2013)
12   (motion for summary judgment, and the defendant provided plaintiff with
13   "artificially high sales forecasts" so the defendant could stockpile product in order
14   to launch its own replacement for plaintiff's product); *Dorset Indus. v. Unified*
15   *Grocers, Inc.*, 893 F. Supp. 2d 395, 409 (E.D.N.Y. 2012) (involving a defendant
16   who created and sold a competing program, ***while the defendant was under***
17   ***contract to sell plaintiff's program***), whereas here Moog's contractual relationship
18   with Skyryse ended several months before Moog's alleged engagement of
19   Skyryse's competitor; *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
20   460 F. Supp. 3d 481, 498-99 (S.D.N.Y. 2020) (insurer allegedly changed wording
21   in the plaintiff's insurance policy without notifying the plaintiff; here, there is no
22   allegation that Moog induced Skyryse to enter a contract with undisclosed terms);
23   *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 790 (9th Cir. 2012) (court
24   found an intent to contract where plaintiffs "enrolled in the Camel Cash program,
25   purchased Camel cigarettes and collected Camel Cash certificates," and had
26   nothing to do with parties entering into a single contract that expressly stated that
27   future contracts would be agreed upon later pursuant to separate agreements).

28

1      **F.     Skyryse's Implied Contract Claim (Count 3) Fails[3]**

2            Skyryse argues it "sufficiently alleges facts reflecting the parties' mutual

3      intent to engage in a long-term business relationship." (Opp., p. 16).

4            But, it is undisputed that "[a]s to the basic elements, there is no difference

5      between an express and implied contract." *Pacific Bay Recovery, Inc. v. California*

6      *Physicians' Services, Inc.*, 12 Cal. App. 5th 200, 215 (2017).  Skyryse still has not

7      identified a single contractual term, let alone all the material terms, for this "long-

8      term business relationship."  For example, it does not identify, for Phases 2-4,

9      terms related to deliverables, price, warranty, indemnification, term, etc.  As such,

10     Skyryse "has not pled the most rudimentary terms necessary for the determination

11     of damages" and a court "cannot find that an implied contract existed between the

12     parties if [counter-plaintiff] does not allege these basic terms."  *Gateway Rehab &*

13     *Wellness Ctr., Inc. v. Aetna Health of Calif., Inc*., No. CV-13-0087-DOC-MLG,

14     2013 WL 1518240, at *4 (C.D. Cal. Apr. 10, 2013).

15     **G.     Skyryse's Unfair Competition Claim (Count 9) Fails**

16           Skyryse's UCL claim still fails under the "unlawful" prong because its other

17     claims fail.

18           Skyryse still cannot identify any alleged conduct by Moog that implicates

19     broad, antitrust violations as required under the "unfair" prong.  The cases it cites

20     are all off-point. *See Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008)

21     (addressing non-competition agreements); *Rezner v. Bayerishe Hypo-Und*

22     *Vereinsbank AG*, No. C 06-02064 JW, 2011 WL 6329854 (N.D. Cal. Nov. 8, 2011)

23     (defendants sued for Rezner fraudulently inducing plaintiffs to purchase loan

24     products offered to consumers at large).  Here, there are no issues relating to non-

25     competition agreements or offering products to the public.

26

27

28

---

[3] This claim is also time-barred for the same reasons in Section III.E.1.

1  Skyryse's treatment of the "fraudulent" prong fails because there are no
2  allegations of public deception, and the cases it relies upon are distinguishable. *See*
3  *Moore v. Mars Petcare U.S., Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (involving
4  misleading product label, "prescription pet food"); *Williams v. Gerber Prods. Co.*,
5  552 F.3d 934, 938-39 (9th Cir. 2008) (analyzing whether packaging for fruit juice
6  snack product was fraudulent by including images of fruits which were not actual
7  ingredients).  This case does not involve selling or advertising products to the
8  public, and there are no allegations that consumers were publicly deceived by
9  Moog's public announcements regarding Genesys.

10  **IV.   CONCLUSION**

11  Moog respectfully requests the Court grant the Motion with prejudice.

12
13  Dated:  March 30, 2023            SHEPPARD MULLIN RICHTER & HAMPTON LLP

14                                        By  _____
                                                      */s/ Rena Andoh*
15                                                    Rena Andoh

16                                          Attorney for Plaintiff and Counterdefendant
                                                            MOOG INC.
17
18
19
20
21
22
23
24
25
26
27
28

SMRH:4892-9164-6297

1

## **CERTIFICATE OF COMPLIANCE**

2   The undersigned, counsel of record for Moog Inc., certifies that this brief

3  contains 7,000 words, which:

4   _X_ complies with the word limit of L.R. 11-6.1.

5   __ complies with the word limit set by Court order dated _____

6

7  Dated:  March 30, 2023         SHEPPARD MULLIN RICHTER & HAMPTON LLP

8                                            By _____
                                                            */s/ Rena Andoh*
9                                                           Rena Andoh

10                                        Attorney for Plaintiff and Counterdefendant
                                                       MOOG INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28