| | |
|---|---|
| 1 | Grant B. Gelberg (SBN 229454) |
| | Grant.Gelberg@halpernmay.com |
| 2 | Kevin H. Scott (SBN 274605) |
| | Kevin.Scott@halpernmay.com |
| 3 | Alyssa L. Titche (SBN 313296) |
| | Alyssa.Titche@halpernmay.com |
| 4 | Catherine Thompson (SBN 313391) |
| | Catherine.Thompson@halpernmay.com |
| 5 | HALPERN MAY YBARRA & GELBERG LLP |
| | 550 South Hope Street, Suite 2330 |
| 6 | Los Angeles, California 90071 |
| | Telephone:  (213) 402-1900 |

Attorneys for Defendant
MISOOK KIM

Rachel L. Fiset (SBN 240828)
Rachel.Fiset@zfzlaw.com
Scott D. Tenley (SBN 298911)
Scott.Tenley@zfzlaw.com
ZWEIBACK FISET & ZALDUENDO LLP
315 W. 9th Street, Suite 1200
Los Angeles, California 90015
Telephone:  (213) 266-5170

Attorneys for Defendant
ROBERT ALIN PILKINGTON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC., | CASE NO. 2:22-cv-09094-GW-MAR |
| Plaintiff, | **DEFENDANTS MISOOK KIM AND ALIN PILKINGTON'S REPLY IN SUPPORT OF JOINDER IN SKYRYSE, INC.'S MOTION TO STAY** |
| v. | |
| SKYRYSE, INC., et al., | *[Declaration of Alyssa L. Titche filed concurrently herewith]* |
| Defendants. | |
| | The Honorable George H. Wu |
| | Hearing Date:    April 13, 2023 |
| | Time:                  8:30 a.m. |
| | Courtroom:        9D |

INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF JOINDER IN SKYRYSE, INC.'S MOTION TO STAY

## A. INTRODUCTION

Plaintiff Moog Inc. ("Moog") misrepresents Defendants Misook Kim's ("Ms. Kim") and Alin Pilkington's ("Mr. Pilkington," and collectively "Individual Defendants") invocation of their Fifth Amendment privileges and the timeline of this case and its overlapping criminal investigation in order to gain every conceivable litigation advantage and to make the Court believe it does not have the discretion to order a stay in this matter. Contrary to Moog's representations to the Court, the Individual Defendants have and are exercising their Fifth Amendment rights in this case. The Individual Defendants will also continue to assert their Fifth Amendment privileges over any deposition questions where the privilege applies as well as with respect to all remaining written discovery. Additionally, Moog incorrectly attempts to persuade the Court that there is no overlap between the criminal investigation and this case. This is simply not true and correspondence from the FBI makes clear that the criminal investigation and this case are nearly, if not completely, identical.

As set forth in the Individual Defendants' Joinder to Skyryse, Inc.'s Motion to Stay ("Joinder"), six factors are considered in granting a motion to stay. (ECF 393 at 7.) When reviewing these factors, the Court has broad discretion to stay a civil action pending the outcome of criminal proceedings. *See*, *e.g.*, *SEC v. Dresser Indus.*, *Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980). Moog conveniently ignores this guidance and instead, relies upon incendiary accusations that "Moog has discovered substantially more wrongdoing by Defendants" and the alleged "theft of over a *million* additional Moog files," to distract from the fact that when the six factors are weighed—a stay is clearly in the interest of justice. (ECF 421 at 9.) The Individual Defendants respectfully request that the Court reject Moog's Opposition as it lacks factual basis and demands an inequitable outcome without sufficient legal support.

///

///

///

2
INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF JOINDER IN SKYRYSE, INC.'S MOTION TO STAY

B.   **ARGUMENT**

   1.   **The Individual Defendants Have Invoked Their Fifth Amendment Privileges And Continue To Do So**

The Individual Defendants have asserted and continue to assert their Fifth Amendment privileges in this case as well as the parallel federal criminal investigation. It is disingenuous and misleading for Moog to falsely allege "[a]t bottom, the Defendants' prejudice assertion is entirely premised on the hypothetical circumstance of the Individual Defendants asserting Fifth Amendment rights in this action, *which has not happened*." (ECF 421 at 7-8.)  As the government's investigation pushes forward and Moog fuels that investigation with information from this case, the Individual Defendants continue to invoke their Fifth Amendment privileges.

Ms. Kim invoked her Fifth Amendment privilege on or about July 5, 2022 in response to a Grand Jury subpoena. (ECF 393-1 [Gelberg Decl.] ¶ 3.)  Mr. Pilkington invoked his Fifth Amendment privilege in an email to Assistant United States Attorney ("AUSA") Reema El-Amamy on July 8, 2022. (ECF 393-2 [Fiset Decl.] ¶ 4, Ex. 2.)  The Individual Defendants also asserted their Fifth Amendment privileges in their Motion to Claw Back Electronic Devices. (ECF 229 [Claw Back Motion] *passim*.)

On March 10, 2023, Ms. Kim again invoked her Fifth Amendment privilege in correspondence with iDS regarding the Grand Jury Subpoena iDS received. (Titche Decl. ¶ 2, Ex. 1.)  Mr. Pilkington invoked his Fifth Amendment privilege in the same email chain just minutes after Ms. Kim. (*Id.*)  The Individual Defendants affirmed their commitment to invoke their Fifth Amendment rights throughout the civil case. (ECF 393 [Joinder to Motion to Stay].)

Additionally, mere days ago, on March 21, 2023, counsel for Moog acknowledged that the Individual Defendants were invoking their Fifth Amendment rights over all communications from iDS Device Nos. E0003, E0004, E0014, E0021, E0022 from March 7, 2019 to December 31, 2022. (Titche Decl. ¶ 3, Ex. 2.)  Thus, Moog's assertion that the Individual Defendant's invocation of their Fifth Amendment privilege is merely

speculative is not true and should be disregarded by the Court.

## 2. The Individual Defendants' Invocation Of Their Fifth Amendment Privileges Has Real Impacts On This Case

While Moog attempts to persuade the Court that the Individual Defendants' invocation of their Fifth Amendment rights is merely "hypothetical," the Individual Defendants' actual Fifth Amendment invocation is complicating this litigation. It is slowing down the pace of litigation and will undoubtedly result in extensive motion practice if this case is not stayed. Moog and the Individual Defendants are currently having discovery disputes regarding the Individual Defendants' Fifth Amendment invocation related to the electronic devices as is evident in Moog's March 21 email. (Titche Decl. ¶ 3, Ex. 2.)

Further, the Individual Defendants will not provide answers to discovery under the privilege. The Individual Defendants will assert their Fifth Amendment privileges over any deposition questions where the privilege applies as well as with respect to all remaining written discovery. Therefore, if this case proceeds and a stay is not enacted, the Individual Defendants will be forced to continue to invoke their Fifth Amendment privileges and the Individual Defendants as well as Defendant Skyryse, Inc. will be deprived of the ability to present a full defense and the case will not be decided on the merits, but instead by inferences drawn from the Individual Defendants' invocations. This is not a fair and just outcome, but it is the outcome Moog sought when it referred these civil allegations to the Department of Justice.

## 3. The Overlap Between The Criminal Investigation And This Civil Case Is Near Complete

Moog states in its Opposition that "There is No Known 'Overlap'" between the criminal and civil proceedings and that any assertion that there is overlap is "inherently speculative absent indictment." (ECF 421 at 21.) This simply is not true. Documents produced by Moog in discovery clearly show that Moog and the FBI corresponded and shared information for months before the Individual Defendants were served with the

Grand Jury subpoenas. The Grand Jury Subpoenas served on the Individual Defendants direct compliance to FBI Special Agent Robert Shaw ("SA Shaw")–the same agent who appears to be Moog's contact. (ECF 393-1 [Gelberg Decl.] ¶ 2, Ex. 1; ECF 393-2 [Fiset Decl.] ¶ 3, Ex. 1.) Further, the FBI described the preservation letter as "related to the Moog v. Skyryse suit" (ECF 393-1 [Gelberg Decl.] ¶ 8; ECF 393-2 [Fiset Decl.] ¶ 7, Ex. 4), while AUSA El-Amamy told the Individual Defendants that they should look to this case to understand the government's investigation. (ECF 393-1 [Gelberg Decl.], Ex. 2.)

When balancing the factors to enact a stay "[t]he most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." Judge Milton Pollack, *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201, 203 (S.D.N.Y.1989); *see also Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993); *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1089 (5th Cir. 1979) ("Although a three-year hiatus in the lawsuit is undesirable from the standpoint of both the court and the defendant, permitting such inconvenience seems preferable at this point to requiring plaintiff to choose between his silence and his lawsuit."). Put simply, Moog knows that the parallel criminal investigation concerns the very same allegations that are at issue in the criminal case—the alleged theft of Moog trade secrets by individuals who were later employed by Skyryse. Because the overlap is substantial (to the point of being virtually identical), the Court should, in its discretion, grant a stay in this case until the conclusion of the criminal investigation.

**4. The Prejudice To The Individual Defendants Of Unstayed Civil Litigation Greatly Outweighs Any Potential Prejudice to Moog**

Moog fails to articulate any reason why a stay as to the Individual Defendants should not be granted except Moog's desire to "advance its case, through proper discovery." (ECF 421 at 24.) This is insufficient because "while a stay may cause some inconvenience and delay to [Plaintiff], protection of defendant's constitutional rights against self-incrimination is the most important consideration." *Sea Salt, LLC v. Bellerose*, No. 2:18-cv-00413-JAW, 2020 WL 2475874, at *3 (D. Me. May 13, 2020)

(citations and internal quotations omitted); *see also Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 528 (D.N.J. 1998) ("A stay could push back the resolution of the civil case by several months or even years. Delays in civil cases are fairly common, however. Walsh has asserted no injury that is particularly unique.").

Instead of arguing Moog would be prejudiced in some way other than potentially delayed discovery, Moog focuses on its claims that the Individual Defendants reasoning is insufficient for a stay. However, Moog cannot claim prejudice as to a stay vis-à-vis Ms. Kim and Mr. Pilkington. The Individual Defendants are currently unemployed because of this litigation. Unable to work in the field they spent decades of their careers building and facing financial ruin for themselves and their families in the present matter in order to invoke their Fifth Amendment rights and protect themselves in the imminent criminal case. They pose no threat to Moog's business and the balance of justice demands this case be stayed during the pendency of the criminal investigation.

If a stay is not granted, the Individual Defendants will be forced to fight a two-front battle, in which Moog is feeding the government information. This is not a fair fight. The government is clearly benefiting from discovery it would not be afforded under Federal Rule of Criminal Procedure 16. (ECF 393-1 [Gelberg Decl.] ¶ 6.) *See Volmar Distribs.,* 152 F.R.D. at 39 ("Refusing to grant a stay might also expand the rights of criminal discovery beyond the limits of Rule 16(b) of the Federal Rules of Criminal Procedure, expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case.") When weighing the two-front battle the Individual Defendants will be forced to fight unless a stay is enacted and the financial peril this civil action puts the Individual Defendants in as they continue to invoke their Fifth Amendment rights, a stay clearly outweighs any prejudice to Moog.

**5. Moog's Timeline Of Events Is Incorrect And Moog Continues To Feed The Government Information**

Moog instigated the criminal investigation and is now trying to obscure the timeline of events to make it appear that the Individual Defendants were aware of the

criminal investigation at a much earlier date. Try as they might to muddy the waters and obscure the clear sequence of events in this case, the timeline is clear, and communications produced in discovery show that Moog instigated the criminal investigation and continuously provided the government with information that the government uses in its criminal investigation. (ECF 393-1 [Gelberg Decl.] ¶ 8; ECF 393-2 [Fiset Decl.] ¶ 7, Ex. 4.)

The Individual Defendants provided their devices to iDS before they knew of the criminal investigation. As Moog acknowledges in its Opposition, the Individual Defendants produced the 23 electronic devices from the Stipulated TRO on April 1, 2022. (ECF 421 at 10.) The Individual Defendants did not receive Grand Jury subpoenas and therefore knowledge of the criminal investigation until June 2022. (ECF 393-1 [Gelberg Decl.] ¶ 2, Ex. 1; ECF 393-2 [Fiset Decl.] ¶ 3, Ex. 1.) Little did the Individual Defendants know that Moog had instigated the criminal investigation and had been providing the FBI with information for months. (ECF 393-1 [Gelberg Decl.] ¶ 6.)

Moog is wrong when it states that the Individual Defendants knew about the criminal investigation when they consented to Moog's unopposed request to provide copies of unredacted transcripts of the April 26 and May 5 Court conferences. (ECF 421 at 10.) While the Grand Jury subpoenas received by the Individual Defendants were issued on June 10, 2022, the Individual Defendants were not actually served with the Grand Jury subpoenas until June 15, 2022. This is three days after the Individual Defendants agreed to release unredacted transcripts of the April 26 and May 5 Court conferences to the FBI, not knowing they were under criminal investigation at the time.

## C. CONCLUSION

In light of the foregoing, the Individual Defendants respectfully request that the Court grant Skyryse's motion to stay these proceedings pending the outcome of the ongoing criminal investigation.

DATED: March 30, 2023　　　　HALPERN MAY YBARRA & GELBERG LLP

By:　*/s/ Alyssa L. Titche*
　　　ALYSSA L. TITCHE

Attorneys for Defendant
MISOOK KIM

DATED: March 30, 2023　　　　ZWEIBACK, FISET & ZALDUENDO LLP

By:　*/s/ Scott D. Tenley*
　　　SCOTT D. TENLEY

Attorneys for Defendant
ROBERT ALIN PILKINGTON

## **ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2), I hereby attest that all signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: March 30, 2023　　　　By:　*/s/ Alyssa L. Titche*
　　　　　　　　　　　　　　　　　ALYSSA L. TITCHE