1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LATHAM & WATKINS LLP**
Douglas E. Lumish (SBN 183863)
  doug.lumish@lw.com
Gabriel S. Gross (SBN 254672)
  gabe.gross@lw.com
Arman Zahoory (SBN 306421)
  arman.zahoory@lw.com
Rachel S. Horn (SBN 335737)
  rachel.horn@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and*
*Counterclaimant Skyryse, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>Plaintiff,<br><br>v<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**DEFENDANT SKYRYSE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A TEMPORARY STAY**<br><br>Complaint filed: March 7, 2022<br><br>Hearing:    April 13, 2023<br>Time:       8:30 a.m.<br>Judge:      Hon. George H. Wu<br>Location: Courtroom 9D 9th Floor |
| SKYRYSE, INC.,<br><br>Counterclaimant,<br><br>v<br><br>MOOG INC.,<br><br>Counterclaim-Defendant. | |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................ 1

II.  THE COURT SHOULD GRANT A TEMPORARY STAY IN
     LIGHT OF THE GOVERNMENT'S INVESTIGATION ............................ 2

     A.   Proceeding with this action while the government
          investigation continues will put Defendants' Fifth
          Amendment and due process interests at risk. ........................ 2

          1.   The status of the government's investigation
               counsels for the stay to be finite and temporary,
               not denied. ............................................................ 3

          2.   Moog cannot deny the demonstrable overlap
               between the civil suit and the government's active
               investigation. ........................................................ 7

          3.   The circumstances are different from when the
               transferor court last considered a stay, so Moog's
               invocation of "law of the case" is misplaced. ............... 9

     B.   Moog will not be unfairly prejudiced by a six-month
          stay. ........................................................................... 11

     C.   Skyryse will be severely prejudiced absent a stay. .............. 14

     D.   A temporary stay will promote judicial efficiency. ............. 17

     E.   Third parties and the public have an interest in a stay. ......... 19

     F.   The Court should temporarily stay this action as to all
          Defendants. .................................................................. 20

III. CONCLUSION ............................................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cadence Design Sys. v. Avant!, Inc.*,
  No. 95-cv-20828-RMW, 1997 U.S. Dist. LEXIS 24147 (N.D. Cal. July 22,
  1997) ...........................................................................................................14, 21

*Cal-Cleve, Ltd. v. Wrag-Time Air Freight, Inc.*,
  No. 04-cv-10543-SJO, 2005 WL 8157878 (C.D. Cal. May 20, 2005) ..........5, 13

*Chalfant v. San Bernardino County*,
  No. 15-cv-01645-JGB(DTB), 2016 WL 11746411 (C.D. Cal. May 11, 2016)
  .....................................................................................................................4, 8

*Chao v. Fleming*,
  498 F. Supp. 2d 1034 (W.D. Mich. 2007) .........................................................4, 8

*De La O v. Arnold-Williams*,
  No. 04-cv-0192-EFS, 2005 WL 8158924 (E.D. Wash. June 21, 2005)
  ...........................................................................................................3, 4, 8, 14

*Delphi Connection Sys., LLC v. Koehlke Components, Inc.*,
  No. 12-cv-01356-CJC, 2012 WL 12895670 (C.D. Cal. 2012)...........................16

*E.I. du Pont de Nemours & Co. v. Hou*,
  No. 17-cv-224-RGA, 2017 WL 2531940 (D. Del. June 9, 2017) ............5, 7, 8, 9

*Englebrick v. Worthington Indus., Inc.*,
  670 F. Supp. 2d 1048 (C.D. Cal. 2009) ............................................................15

*Est. of Morad v. City of Long Beach*,
  No. 16-cv-06785-MWF, 2017 WL 5187826 (C.D. Cal. Apr. 28, 2017).............6

*Federal Trade Commission v. Mytel International, Inc.*,
  No. 87-cv-7259-GHK(SS), 2016 WL 11788633 (C.D. Cal. Mar. 18, 2016)...5, 6

*Genentech, Inc. v. JHL Biotech, Inc.*,
  No. 18-cv-06582-WHA, 2019 WL 1045911 (N.D. Cal. Mar. 5, 2019).............17

*General Electric Co. v. Liang*,
  No. 13-cv-08670, 2014 WL 1089264 (C.D. Cal. Mar. 19, 2014) .....................12

*Hall v. Alt. Loan Trust 2006-7CB*,
  No. 13-cv-1732-KJM(AC), 2013 WL 5934322 (E.D. Cal. Nov. 1, 2013) ..10, 11

ii

*Heraeus Materials Technology LLC v. Tung Pham*,
    No. 11-2965, 2011 WL 13227695 (E.D. Pa. June 29, 2011) ...............4, 5, 8, 18

*International Business Machines Corporation v. Brown*,
    857 F. Supp. 1384 (C.D. Cal. 1994) ...........................................................16, 17

*Jones v. Conte*,
    No. 04-cv-5312-SI, 2005 WL 1287017 (N.D. Cal. Apr. 19, 2005) ...................8

*Karlsson v. Mangan*,
    No. 14-cv-04514-R, 2014 WL 12960994 (C.D. Cal. Dec. 17, 2014) ................4

*Keating v. Office of Thrift Supervision*,
    45 F.3d 322 (9th Cir. 1995) ......................................................................4, 17

*LiButti v. United States*,
    107 F.3d 110 (2d Cir. 1997) ...........................................................................15

*McCormick v. Rexroth*,
    No. 09-cv-4188-JF, 2010 WL 934242 (N.D. Cal. Mar. 15, 2010)..............7, 8, 9

*Micron Tech., Inc. v. United Microelectronics Corp.*,
    No. 17-cv-06932-MMC, 2019 WL 3037542 (N.D. Cal. July 11, 2019).......9, 14

*Sartor v. Cty. of Riverside*,
    No. 22-cv-1410-JGB, 2022 WL 18278597 (C.D. Cal. Nov. 30, 2022) .............6

*SEC v. Alexander*,
    No. 10-cv-04535-LHK, 2010 WL 5388000 (N.D. Cal. Dec. 2010)..................20

*SEC v. Nicholas*,
    569 F. Supp. 2d 1065 (C.D. Cal. 2008) .......................................................9, 17

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*,
    No. 09-cv-0954-FCD, 2009 WL 2136986 (E.D. Cal. July 15, 2009) ..............14

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*,
    7 F. Supp. 2d 523 (D.N.J. 1998)......................................................................8

*Waymo LLC v. Uber Techs., Inc.*,
    No. 17-cv-00939-WHA, 2017 WL 2123560 (N.D. Cal. May 15, 2017) ..........18

*Williams v. Kohl's Dept. Stores, Inc.*,
    No. 19-cv-397-JGB, 2020 WL 3882953 (C.D. Cal. June 16, 2020).................15

*Wimbledon Fund v. Graybox, LLC*,
    No. 15-cv-6633-CAS, 2017 WL 11628850 (C.D. Cal. Jan. 9, 2017) ...............16

*Wroth v. City of Rohnert Park*,
    No. 17-cv-05339-JST, 2018 WL 888466 (N.D. Cal. Feb. 14, 2018)...............3, 8

*In re Zinnel*,
    No. 12-cv-00249-MCE, 2013 WL 1284339 (E.D. Cal. Mar. 28, 2013) ............19

## I.    INTRODUCTION

Moog accuses Skyryse of opportunism in filing a motion to temporarily stay this civil action while a parallel government investigation into the same conduct underlying Moog's complaint proceeds. But Skyryse's motion is one that the transferor court explicitly invited and authorized Defendants to bring at a later date, once this action had developed further and Moog had identified its asserted trade secrets. That time is now, and a stay is necessary to protect Defendants' constitutional rights.

Since the transferor court considered the prior stay motion nearly seven months ago, much has occurred both in this action and in the parallel government investigation, necessitating a stay to safeguard Defendants' Fifth Amendment and due process rights. Skyryse has turned over massive amounts of discovery to Moog and to the third-party forensic vendor iDS, while at the same time cooperating with the government's investigation and responding to subpoenas. Moog also has taken discovery from Defendants Alin Pilkington and Misook Kim (the "Individual Defendants"), and more than a dozen third parties. Mr. Pilkington and Ms. Kim have been continually forced to assert their Fifth Amendment rights, including in response to a just-issued government subpoena to iDS, and they have confirmed that they will continue to do so throughout the civil case. And Moog begrudgingly made its long-delayed (and wholly deficient) identification of its asserted trade secrets – the very precondition the transferor court identified for Defendants to move again for a stay.

What did *not* happen, until just this month, was any action by Moog to seek the "additional judicial and injunctive relief" it now claims to need so urgently that the Court should refuse to temporarily stay this action. Although Moog has been baselessly threatening Skyryse with sanctions for nearly a year, and has been threatening for just as long that it would bring some new preliminary injunction motion, Moog has done nothing but drag its feet. It still has not sought a preliminary injunc-

1

1    tion, thirteen months into this lawsuit. These are but a few examples of Moog's di-
2    latory tactics, such as putting off identifying its own trade secrets for nearly a year,
3    and resisting even the most basic discovery at every turn. This is not the conduct of
4    a plaintiff in need of emergency relief. And it undermines any argument that a tem-
5    porary, six-month stay would unfairly prejudice Moog.

6          Because Moog cannot show that it would be unduly prejudiced by a six-month
7    stay, it repetitively argues that the Court should not stay this action because no in-
8    dictment has yet resulted from the government's investigation into the same under-
9    lying facts. But this is not dispositive. As cases from across the country demonstrate,
10   courts regularly stay civil actions in light of actively pending criminal investigations,
11   even when indictments are still on the horizon. This is because under such circum-
12   stances, a temporary stay of the civil proceedings preserves all defendants' constitu-
13   tional interests and promotes judicial efficiency. The same rationale should guide
14   the Court's decision here. To protect the parties' constitutional rights while the gov-
15   ernment advances its investigation, the Court should grant Skyryse's Motion.

16   **II.    THE COURT SHOULD GRANT A TEMPORARY STAY IN LIGHT**
17   **OF THE GOVERNMENT'S INVESTIGATION.**

18         As Skyryse explained in its opening brief, a six-month stay of this action while
19   the government's investigation advances in parallel is warranted both to preserve the
20   Individual Defendants' Fifth Amendment rights and to avoid potentially severe prej-
21   udice to Skyryse's right to defend itself in this suit. Nothing Moog argues in oppo-
22   sition demonstrates otherwise.

23         **A.    Proceeding with this action while the government investigation**
24         **continues will put Defendants' Fifth Amendment and due process**
             **interests at risk.**

25         In the nearly seven months since the transferor court last considered staying
26   this case, both the government's investigation and this action have advanced and
27   matured. The government has continued actively to pursue its investigation into the

28

claims at the heart of this suit, issuing grand-jury subpoenas to all Defendants, to Moog, and to third parties, including as recently as this month. And discovery in the civil case has proceeded, prompting new disputes at every turn – including as the Individual Defendants have asserted their Fifth Amendment rights, which will become all the more pressing a problem with depositions on the horizon. The USAO's investigation (which Moog instigated by secretly referring its case to the government) and this civil suit are now on a collision course. The Individual Defendants are certain to continue invoking the Fifth Amendment to avoid providing further discovery and testimony in this case (*see* Reply, Dkt. 428 at 4), and Skyryse faces the untenable prospect of being saddled with a punishing adverse inference because of their silence, while being deprived of critical sources of testimony necessary to its defense.

In spite of this plainly imminent threat, Moog claims that Defendants' concerns are "speculative," relying almost exclusively on the fact that no Defendant has yet been indicted. But courts regularly grant stays in exactly this posture, recognizing that individual defendants' Fifth Amendment concerns (and the associated prejudice to corporate defendants) attach when there is a mere *possibility* of criminal prosecution. The time is ripe for a temporary stay of this action, and nothing in Moog's opposition demonstrates otherwise.

1.    <u>The status of the government's investigation counsels for the stay to be finite and temporary, not denied.</u>

Skyryse has requested a six-month stay to protect all Defendants' constitutional rights while the government advances its investigation. District courts regularly grant temporary stays while indictments are still impending in parallel criminal investigations. *See, e.g.*, *Wroth v. City of Rohnert Park*, No. 17-cv-05339-JST, 2018 WL 888466, at *3 (N.D. Cal. Feb. 14, 2018); *De La O v. Arnold-Williams*, No. 04-cv-0192-EFS, 2005 WL 8158924, at *2-6 (E.D. Wash. June 21, 2005).

Moog is correct that there have been no indictments as a result of the government's investigation—yet. But the government's investigation is actively ongoing, with new grand-jury subpoenas being issued as recently as this month. A temporary, six-month stay would give the government additional time to develop its investigation and "discern whether indictments will be filed." *De La O*, 2005 WL 8158924, at *6. And it will give the Court the opportunity to revisit the situation in six months and re-evaluate the need for a stay if good cause is shown.

Moog wrongly treats the lack of an indictment as dispositive. This is not the law. "[C]ourts will not categorically deny a stay solely because the defendant has not yet been indicted." *Karlsson v. Mangan*, No. 14-cv-04514-R, 2014 WL 12960994, at *2 (C.D. Cal. Dec. 17, 2014) (citing *Chao v. Fleming*, 498 F. Supp. 2d 1034 (W.D. Mich. 2007)). A court has discretion over the management of its own docket and, in exercising that discretion, must weigh the "particular circumstances and competing interests involved in the case." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). The status of a parallel government investigation, including whether indictments have been returned or are imminent, is one among many circumstances that factors into a court's decision to stay a case.

Indeed, Moog ignores the abundance of case law where courts have exercised their discretion to stay civil actions in similar situations. For example, in *Chalfant v. San Bernardino County*, the court granted defendant's motion to temporarily stay the action in light of an ongoing FBI investigation into "potential criminal charges relating to the allegations in this matter," even though defendants had not been indicted. No. 15-cv-01645-JGB(DTB), 2016 WL 11746411, at *2 (C.D. Cal. May 11, 2016). The court emphasized the temporary nature of the two-month stay and noted that "if necessary, defendants may seek to extend the stay at that juncture assuming the FBI investigation is still ongoing." *Id.* Likewise, in *Heraeus Materials Technology LLC v. Tung Pham*, the court temporarily stayed a trade secret action where,

although the individual defendant had not been indicted, "his criminal defense attorney was informed that [individual defendant] is the target of a Government investigation." No. 11-2965, 2011 WL 13227695, at *1 n.1 (E.D. Pa. June 29, 2011). An important factor in the court's decision to grant the stay was that, just like in this case, "[t]he conduct underlying this potential criminal charge is the same conduct that gives rise to [plaintiff's] claim for misappropriation of trade secrets." *Id.*; *see also E.I. du Pont de Nemours & Co. v. Hou*, No. 17-cv-224-RGA, 2017 WL 2531940, at *1-2 (D. Del. June 9, 2017) (granting partial stay against unindicted trade secret defendant where there was evidence of an "active criminal investigation" into the same issue). As Moog has admitted, that is the situation here: the conduct underlying the criminal investigation and the conduct that gave rise to this suit are the same. (*See* Horn Decl. Ex. A at 16:24-17:7; Dkt. 264-2 at 33:5-13.)

Moog relies heavily on two cases where the court identified the lack of indictment as *a* consideration weighing against a stay (but not the *only* consideration) and where, unlike this case, there was little indication that the government investigation was still actively progressing. In *Cal-Cleve, Ltd. v. Wrag-Time Air Freight, Inc.*, the court considered a request for a stay that was anticipated to last "five years or more," while there was little evidence that the Los Angeles County Sheriff's investigation was ongoing; a search warrant had been executed and items had been confiscated from two defendants "almost a year" prior, but there was "no evidence that an indictment [was] likely." No. 04-cv-10543-SJO, 2005 WL 8157878, at *4-6 (C.D. Cal. May 20, 2005). Here, by contrast, there are plenty of indications that the government's investigation is still active. (*See* Mot. 5 (discussing the series of subpoenas that have been issued over the past several months, including the week before Skyryse filed this Motion).)

Similarly, in *Federal Trade Commission v. Mytel International, Inc.*, the court denied a stay where it determined that the "imminence" of criminal charges was

"speculative" where a search warrant had been executed nearly *three years* previously, and even the government's statement to counsel that charges were "inevitable" was more than eight months old, undermining the notion that an indictment was an immediate threat. No. 87-cv-7259-GHK(SS), 2016 WL 11788633, at *5 (C.D. Cal. Mar. 18, 2016). In both *Cal-Cleve* and *Mytel*, the lack of an indictment after the government's investigation had remained dormant for a significant amount of time weighed against a stay because that very dormancy indicated that an indictment was not forthcoming. The investigation in this case, on the other hand, continues apace (*see* Mot. 5, 11-12), showing that the government is actively working and assessing whether to bring charges.

The other authority Moog cites is likewise inapposite, except to the extent it underscores that a court's decision whether to grant a stay is the product of many factors. For instance, Moog points to cases centering on officer-involved shootings, a fact pattern where fresh eyewitness testimony is critical and the possibility that witnesses' memories might fade over the course of a stay could be singularly prejudicial. *See Est. of Morad v. City of Long Beach*, No. 16-cv-06785-MWF, 2017 WL 5187826, at *8 (C.D. Cal. Apr. 28, 2017); *Sartor v. Cty. of Riverside*, No. 22-cv-1410-JGB, 2022 WL 18278597, at *4 (C.D. Cal. Nov. 30, 2022) (noting that investigation alone was not an indication of likely or imminent charges because the California Department of Justice "automatically investigates" any officer-involved shooting resulting in death of an unarmed citizen). Those unique circumstances are not present here. And indeed, in all the cases Moog cites involving denials of pre-indictment stays (Opp. 16-20), other substantial factors weighed against a stay; that is, the lack of indictment was not the only or even the dispositive factor.

1
2
      2.    <u>Moog cannot deny the demonstrable overlap between the civil suit and the government's active investigation.</u>

3      As Skyryse showed in its Motion, and Moog cannot deny, the government's

4 investigation involves "the same or closely related facts" as this action. *McCormick*

5 *v. Rexroth*, No. 09-cv-4188-JF, 2010 WL 934242, at *2 (N.D. Cal. Mar. 15, 2010).

6 Moog *admits* that it reported the conduct underlying its complaint in this civil case

7 to the FBI, which resulted in the presently unfolding government investigation into

8 the *same conduct*. (Opp. 12; *see also* Horn Decl. Ex. A at 16:24-17:7 (Moog's coun-

9 sel admitting that "the Government's case is a subset of the claims we're making in

10 a civil case"); Dkt. 264-2 at 33:5-13 (Moog's counsel noting that "the FBI [is] in-

11 vestigating *this case*"); *see also* Reply, Dkt. 428 at 5 (noting that government agents

12 informed the Individual Defendants the investigation is closely related to this suit).)[1]

13      The fact that Moog instigated the government's investigation lays bare that

14 investigation's subject-matter overlap with the civil suit.  *See E.I. du Pont*, 2017 WL

15 2531940, at *1 ("The overlap is evident since Plaintiff provided the FBI with the

16 "information that forms the basis of the [c]riminal [c]omplaint."). Moog's admission

17 that it sought to initiate a "mutual exchange of complete document productions to

18 the FBI" in this case (Opp. 12) is further evidence of the common facts at the heart

19 of the civil action and the government's investigation; such an exchange would be

20 relevant only if the two proceedings overlapped.[2]

21

22 _____

[1] Moog misunderstands the relevance of its cooperation with the government to
23 Skyryse's Motion. (Opp. 12 (referring to Skyryse's purported "insinuation that
Moog has somehow acted improperly by reporting a crime to the FBI").) Of course
24 Moog is entitled to cooperate with the government as it sees fit; Skyryse, too, has
been fully cooperating with the government's investigation. The point is that Moog's
25 cooperation with and referral of its case to the government underscores the overlap
between the two proceedings.

26 [2] Moog's argument that Skyryse "refused" to exchange such information in discov-
ery is baseless and ignores that Skyryse specifically had requested *Moog's* commu-
27 nications about any such "investigations," but Moog chose not to serve a reciprocal
request, and thus was not entitled to a "mutual" exchange.

28

1    Under such circumstances, Fifth Amendment concerns warrant a stay, since
2    discovery in the civil case will inevitably force defendants to choose between assert-
3    ing the Fifth Amendment to avoid potential criminal liability and waiving their con-
4    stitutional rights to avoid an adverse inference in the civil case. *See Jones v. Conte*,
5    No. 04-cv-5312-SI, 2005 WL 1287017, at *1 (N.D. Cal. Apr. 19, 2005). "Some
6    courts have gone so far as to recognize the extent of the overlap" between the civil
7    and criminal proceedings as the "most important factor." *McCormick*, 2010 WL
8    934242, at *2. Here, the facts underlying both the civil suit and the government's
9    investigation are nearly if not entirely identical. (*See* Dkt. 393 (noting that an FBI
10   special agent and AUSA informed Ms. Kim's counsel "that the government's crim-
11   inal investigation largely tracked the allegations in Moog's civil complaint"); *see
12   also* Reply, Dkt. 428 at 4-5).)

13   Moog argues that because there have been no criminal charges, the subject
14   matter of the government's investigation is "inherently speculative." (Opp. 21.) This
15   is disingenuous, and the argument fails for two reasons. First, this sort of reasoning
16   would create a bright-line rule that a stay is never appropriate when the defendant
17   has not been charged, which is not the reality. *See, e.g.*, *Chao*, 498 F. Supp. 2d at
18   1034; *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998);
19   *Wroth*, 2018 WL 888466, at *3; *De La O*, 2005 WL 8158924, at *6; *Chalfant*, 2016
20   WL 11746411, at *2; *Heraeus*, 2011 WL 13227695, at *1 n.1; *E.I. du Pont*, 2017
21   WL 2531940, at *1-2.

22   Second, as discussed above, Moog cannot seriously contend that the subject
23   of the government's investigation is a mystery when it has *admitted* the overlap be-
24   tween that investigation and this case. (*See* Horn Decl. Ex. A at 16:24-17:7; Dkt.
25   264-2 at 33:5-13.)  That Moog initiated the government's investigation by making
26   the referral in the first place only underscores that the underlying conduct is the
27
28

1    same. (*See* Opp. 12 (stating Moog "report[ed] a crime to the FBI"), Dkt. 392-4 (dis-

2    cussing Moog's communications with the FBI and USAO).) And the Individual De-

3    fendants' recent exchanges with the FBI and the Assistant U.S. Attorney's office

4    confirm that this civil action and the government's investigation arise from the same

5    factual allegations. (Reply, Dkt. 428 at 5.)

6         Under these circumstances, where there is considerable overlap between the

7    government investigation and the civil case, the Individual Defendants' Fifth

8    Amendment rights are plainly implicated by the prospect of continuing with the civil

9    litigation. *McCormick*, 2010 WL 934242, at *2. And the Individual Defendants'

10   Fifth Amendment interests, in turn, bear squarely on Skyryse's due process rights

11   and ability to fully and fairly defend itself in this action. *Micron Tech., Inc. v. United*

12   *Microelectronics Corp.*, No. 17-cv-06932-MMC, 2019 WL 3037542, at *2 (N.D.

13   Cal. July 11, 2019). Staying the civil action is the best way to address and mitigate

14   the constitutional concerns at play. *E.I. du Pont*, 2017 WL 2531940, at *1 (granting

15   pre-indictment stay where "the civil and criminal cases … involve the same issue—

16   the alleged theft of [Plaintiffs'] trade secrets"); *SEC v. Nicholas*, 569 F. Supp. 2d

17   1065, 1069-70 (C.D. Cal. 2008) (granting stay where allowing civil and criminal

18   proceedings that were "inextricably intertwined" to proceed in parallel would "un-

19   doubtedly implicate the Fifth Amendment rights of the parties and witnesses").

20        3.   The circumstances are different from when the transferor court
21             last considered a stay, so Moog's invocation of "law of the
               case" is misplaced.

22        Skyryse brings this Motion because the circumstances are different than when

23   Judge McCarthy considered the defendants' stay motion nearly seven months ago.

24   The government's investigation is more mature, and civil discovery has progressed.

25   Moreover, the conflict between the parallel proceedings and the Individual Defend-

26   ants' Fifth Amendment rights has grown even more pronounced. As Moog acknowl-

27   edges, the Individual Defendants have invoked their Fifth Amendment privilege

28

1   against the grand-jury subpoenas that have been issued in the course of the govern-

2   ment's investigation – including, most recently, the subpoena of iDS, the third-party

3   forensic vendor managing certain discovery in the civil action. (Opp. 12; *see also*

4   Reply, Dkt. 428 at 3 ("The Individual Defendants have asserted and continue to as-

5   sert their Fifth Amendment privileges in this case as well as the parallel federal crim-

6   inal investigation.").) And Moog nowhere addresses the fact that the Individual De-

7   fendants have now unequivocally stated—through new counsel who represent them

8   in both this civil action and the government's parallel investigation—that they "have

9   no choice but to assert their Fifth Amendment rights" in response to any discovery

10  requests in *this* action. (Dkt. 393 at 6; *see also* Mot. 2; Reply, Dkt. 428 at 3.) That is

11  a far clearer and firmer position than the Individual Defendants had taken when they

12  requested a stay from the transfer court, at which time they were still "deter-

13  min[ing] whether [they] need to assert Fifth Amendment privileges." (Horn Decl.

14  Ex. B at 5:22-6:3.)

15       Moog claims that the transferor court's denial without prejudice of Defend-

16  ants' motion last September is "law of the case" and precludes this Court from con-

17  sidering this Motion. Moog is wrong; the "law of the case" doctrine does not apply

18  here, for several reasons. First, Judge McCarthy expressly *permitted* Defendants to

19  renew their motion, regardless of whether or when charges were brought. (*See* Dkt.

20  259 at 4 ("Once Moog identifies the trade secrets and confidential information at

21  issue, defendants may (or may not) decide that a stay of this action is necessary to

22  protect their interests in light of the pending criminal investigation.") That is the

23  reason his ruling was "*without prejudice to renewal* at a later date." (*Id.* at 5.)

24  Skyryse's Motion was authorized, not foreclosed, by the transferor court.

25       Second, as Moog's own cited authority states, "[u]nder the law of the case

26  doctrine, a transferee court does not directly review … rulings of the transferor

27  court." *Hall v. Alt. Loan Trust 2006-7CB*, No. 13-cv-1732-KJM(AC), 2013 WL

28

5934322, at *2 (E.D. Cal. Nov. 1, 2013).[3] Skyryse is not asking this Court to review the prior decision of the New York court. Judge McCarthy exercised his discretion based on the facts that were available to him at the time, and Skyryse is not retroactively challenging that decision. Instead, Skyryse is requesting a stay anew in light of changed circumstances, as Judge McCarthy *expressly invited Defendants to do*. (Dkt. 259 at 4-5.)

>     **B.    Moog will not be unfairly prejudiced by a six-month stay.**

As discussed in Skyryse's opening brief, Moog's dilatory litigation conduct for the past year makes plain that it has little interest in moving the case forward expeditiously. Instead, it has been using the pendency of the litigation itself to exert extreme burden and pressure on Skyryse, a much smaller competitor. (Mot. 13.) Moog put off identifying its alleged trade secrets for as long as it possibly could, and only provided its facially deficient trade secret identification in February. That delay, like Moog's continued unwillingness to identify its own trade secrets with sufficient particularity (it still points to literally 300,000 documents as "reflecting" some unspecified trade secrets), underscores that Moog will not be prejudiced by a temporary stay. So does Moog's hollow, year-long threat to move for a preliminary injunction. Moog already obtained the "emergency relief" it claimed to need when it started this lawsuit via the stipulated order the parties entered four days after the complaint was filed, with which Skyryse has complied. (Mot. 13.) And, significantly, Moog *itself* recently proposed staying this action in a draft stipulated preliminary injunction order (Mot. 14), a fact Moog nowhere addresses in its Opposition.

---

[3] In *Hall*, the transferee court declined to reconsider the transfer order where the motion was based on *the same unchangeable facts* that were known to the transferor court (for example, that the defendants and all witnesses resided in New York and the action concerned defendants' compliance with New York state laws). 2013 WL 5934322, at *3. By contrast, much has changed in this action over the past seven months.

Moog claims it would be prejudiced by a stay because it says it has discovered more supposed wrongdoing and now requires "additional judicial and injunctive relief." (Opp. 22.) But Moog's argument that "a delay in the entry of an injunction will prejudice the plaintiff" (*id.*) ignores that Moog itself is responsible for any delay in obtaining additional injunctive relief that it still has not requested more than a year into this lawsuit.[4] If Moog truly believed it was suffering immediate and irreparable harm, it could have moved for a preliminary injunction at any point during the past year, as it has long been threatening to do. Moog's claim today that a six-month stay would harm it by preventing it from requesting an injunction cannot be reconciled with its year-long delay in seeking that relief.

Since Moog's own conduct demonstrates that there is no emergency, its argument that the Court should deny a temporary stay in favor of resolving Moog's pending motion for sanctions also fails. (Opp. 22-23.) Although Moog has been baselessly accusing Skyryse since May 2022 of violating the March 11, 2022 stipulated order, under which Skyryse agreed in good faith to promptly turn over any "Moog non-public information" it might find (*see* Dkt. 142-9), Moog waited nearly a year to file its groundless sanctions motion for alleged violations of that stipulation. Once again, Moog's delay contradicts any claim that it needs expedited or emergency relief, or that it would be unduly prejudiced by a temporary stay.

Nor has Moog shown that a six-month stay would have any effect on the resolution of its sanctions motion once the stay is lifted. As Skyryse will show when it opposes that motion, it is meritless. Skyryse is in substantial compliance with the March 11, 2022 stipulation and it has met and continues to meet its obligations to

---

[4] The case Moog cites for that proposition, *General Electric Co. v. Liang*, is distinguishable: there, plaintiff's immediate need for injunctive relief was underscored by the fact that defendant had not returned *any* material to the plaintiff, his former employer, as the preliminary injunction required. No. 13-cv-08670, 2014 WL 1089264, at *4 (C.D. Cal. Mar. 19, 2014). Here, by contrast, Skyryse and the Individual Defendants have turned over *terabytes* of data, including numerous computer devices in their entirety, under the forensic protocol.

preserve and produce evidence. But as it stands today, the sanctions motion is not even fully before the Court; Skyryse's opposition is not due until April 24, the parties have yet to depose each other's expert witnesses about their supporting declarations or otherwise complete the limited discovery necessary to resolving that motion, and the Court will not hear the motion until mid-May. There is no reason the parties and the Court could not conclude those proceedings when the stay is lifted. Moog has made no showing that resolving that motion six months from now will be any different than if it were resolved in May.

Moog complains that staying this action will impede its ability to investigate Moog's allegations of "continuing use of Moog non-public information." (Opp. 22.) Not so. First, Moog already has vast amounts of recent discovery from Skyryse, Mr. Pilkington, Ms. Kim, and over a dozen third parties relevant to this allegation. Second, a stay would simply postpone, not prohibit, such further discovery. Third, Skyryse has more than once requested Moog's participation in investigating the possible existence of any "Moog non-public information" at Skyryse, consistent with the March 11, 2022 stipulated order. Moog repeatedly declined and never offered any explanation of what it thinks "Moog non-public information" encompasses. Rather, Moog's pattern has been to demand and obtain vast amounts of invasive discovery, then rush to accuse Skyryse of "violations" of the stipulated order any time Skyryse in good faith supplements its discovery, or Moog finds something in the terabytes of data Skyryse already produced that it considers "Moog non-public information" Skyryse should have identified earlier. While Moog would prefer to continue with these tactics uninterrupted, this is not grounds to deny a stay.

Finally, Moog has not made any showing that the types of other facts that courts have found to demonstrate prejudice to a plaintiff are present here. There is no legitimate argument or evidence that Skyryse has attempted or would attempt to dissipate assets. *See, e.g.*, *Cal-Cleve*, 2005 WL 8157878, at *4 (identifying "serious

and justified concerns that Defendants will dissipate their assets" as a reason weigh-ing against a stay); *cf. De La O*, 2005 WL 8158924, at *3 (granting pre-indictment stay where "there is no evidence the Defendants have been attempting to dispose of assets").[5] Nor has Moog pointed to any specific concern that witnesses' memories might fade, which in any event would be mitigated by the temporary nature of the stay Skyryse seeks and the ongoing government investigation into the same facts. Because Moog has not persuasively identified any serious prejudice it would suffer from a six-month stay, this factor weighs in favor of granting Skyryse's Motion.

### C.    Skyryse will be severely prejudiced absent a stay.

As Skyryse detailed in its Motion, numerous courts have found that a stay is appropriate where, as here, individuals' assertion of their Fifth Amendment rights is likely to prejudice a corporate defendant's ability to defend itself in a civil proceed-ing. *See, e.g.*, *Cadence Design Sys. v. Avant!, Inc.*, No. 95-cv-20828-RMW, 1997 U.S. Dist. LEXIS 24147, at *5 (N.D. Cal. July 22, 1997) ("[C]orporate defendants are entitled to stay a civil action where a parallel criminal proceeding prejudices the corporation's right to defend itself."); *Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-cv-06932-MMC, 2019 WL 3037542, at *2 (N.D. Cal. July 11, 2019) (finding "the risk of prejudice to [the corporate defendants] arising from an inability to obtain testimony from individuals who have the right not to incriminate them-selves is substantial"); *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, No. 09-cv-0954-FCD, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009) (sim-ilar).

That is exactly the case here. Ms. Kim and Mr. Pilkington have unequivocally confirmed that they "have asserted and continue to assert their Fifth Amendment

---

[5] Moog's attempt to distinguish *De La* O on the grounds that "Skyryse has destroyed and spoliated evidence" (Opp. 18 n.7) is both untrue, as Skyryse will show in its opposition to Moog's motion for sanctions, and not relevant to the concern these cases identify, which is whether a defendant might dispose of assets in an effort to become judgment-proof.

privileges in this case as well as the parallel federal criminal investigation." (Dkt. 428 at 3; *see also* Dkt. 393.) They have already done so throughout the pendency of the government's investigation, including to block third-party forensic vendor iDS from fully responding to a subpoena. (Mot. 5 (citing Dkt. 392-2); *see also* Dkt. 268 n.2 ("Contrary to Plaintiff's continuing representation, the Individual Defendants have asserted a Fifth Amendment objection, but have done so very broadly.").) When (not *if*) Ms. Kim and Mr. Pilkington refuse to testify in this case on Fifth Amendment grounds (*see* Dkt. 428 at 4), that will foreclose a valuable and poten- tially exculpatory source of testimony from Skyryse, prejudice its right to defend itself in this action, and expose it to the very real possibility of an adverse inference. *See Williams v. Kohl's Dept. Stores, Inc.*, No. 19-cv-397-JGB, 2020 WL 3882953, at *20-22 (C.D. Cal. June 16, 2020) (citing *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997)).

Despite all this, Moog claims "it is not clear whether, when, or how, the Indi- vidual Defendants would assert the privilege, let alone how it would bear on the parties' claims and defenses." (Opp. 8.) This is false. The Individual Defendants have confirmed that they have and will continue to assert the privilege if and when they are called to provide further discovery or to testify in this action. (Dkt. 393; Dkt. 428.) There can be no dispute that these defendants, whose alleged actions are at the center of this case and form the basis for Skyryse's alleged liability, will be called for deposition. And even if they had not yet pled the Fifth in connection with these proceedings (which they have), that would be beside the point: The "possibility of prosecution" is all that is required for the Fifth Amendment interest to attach. *See Englebrick v. Worthington Indus., Inc.*, 670 F. Supp. 2d 1048, 1050 (C.D. Cal. 2009). Nor can Moog seriously call into question the relevance of Mr. Pilkington's and Ms. Kim's testimony, where Moog seeks to impose liability on Skyryse based on those individuals' alleged conduct that started when they worked for Moog. Skyryse has

never wanted, needed, or tried to obtain any of Moog's alleged trade secret information from Mr. Pilkington, Ms. Kim, or any other source, and the Individual Defendants' anticipated testimony to that effect would unquestionably be relevant to Skyryse's defense in this action.

Nor is Moog's fallback position – that the present lack of an indictment somehow renders Skyryse's concerns illusory – persuasive. In similar situations involving unindicted corporate defendants, courts have granted stays where allowing the civil proceedings to continue was likely to impede the corporation's ability to mount a viable defense. *See, e.g.*, *Wimbledon Fund v. Graybox, LLC*, No. 15-cv-6633-CAS, 2017 WL 11628850, at *4 (C.D. Cal. Jan. 9, 2017) (finding unindicted corporate entity would likely be prejudiced by assertion of Fifth Amendment by "key witness"); *Delphi Connection Sys., LLC v. Koehlke Components, Inc.*, No. 12-cv-01356-CJC, 2012 WL 12895670, at *2 (C.D. Cal. 2012) (describing prejudice to corporation where its president, who had not been indicted, would invoke Fifth Amendment rights). That an indictment has not yet been issued does not make Skyryse's interest in preserving its defenses any less pressing.

Moog further suggests that Skyryse need not rely on Ms. Kim's and Mr. Pilkington's testimony, and can develop its case through other witnesses. That argument cannot be taken seriously when those are the two individuals whose conduct forms the principal basis for Moog's claims against Skyryse. It also ignores other individuals whose Fifth Amendment rights are also potentially implicated by the government's investigation. Moog argues, for example, that Skyryse could rely on Lori Bird's testimony to authenticate messages between Mr. Pilkington and Ms. Kim, but that ignores that Ms. Bird (and other former Skyryse personnel implicated in Moog's Complaint) might have Fifth Amendment interests at play, too.

The cases Moog cites are distinguishable. For example, in *International Business Machines Corporation v. Brown*, the court found little merit to the corporate

1   defendants' Fifth Amendment claims when defendants "filed their motion [to stay]

2   less than three weeks before the [civil] trial date," and some individual defendants

3   had already testified on "substantive issues of the case" and had "no remaining Fifth

4   Amendment privilege to assert." 857 F. Supp. 1384, 1389-90 (C.D. Cal. 1994). And

5   in *Genentech, Inc. v. JHL Biotech, Inc.*, the key witnesses for the corporate defendant

6   were not alleged to be the targets of the government's investigation, as Ms. Kim and

7   Mr. Pilkington are here. No. 18-cv-06582-WHA, 2019 WL 1045911 (N.D. Cal. Mar.

8   5, 2019).

9       The prejudice to Skyryse if the civil and criminal proceedings continue to run

10  in parallel is undeniable and weighs in favor of a stay.

11      **D.      A temporary stay will promote judicial efficiency.**

12      The already profuse and hotly contested discovery disputes in this action will

13  only continue to multiply as the government's investigation proceeds in parallel.

14  (Mot. 17-18.) In assessing the appropriateness of a stay, courts consider "the con-

15  venience of the court in the management of its cases, and the efficient use of judicial

16  resources." *Keating*, 45 F.3d at 324-25. Where civil discovery is likely to be com-

17  plex, heavily disputed, and demanding of substantial judicial resources, courts reg-

18  ularly stay the civil proceedings pending resolution of a parallel criminal proceeding.

19  *Nicholas*, 569 F. Supp. 2d at 1069 (granting stay where civil discovery would "re-

20  quire the devotion of substantial resources both by the parties … and by the Court

21  in resolving the myriad of disputes that are likely to arise").

22      Here, discovery is already heavily contested. In the weeks since Skyryse filed

23  this Motion, the parties have raised even more disputes to be adjudicated by Magis-

24  trate Judge Rocconi. On top of the four disputes Skyryse and Moog had previously

25  identified for Judge Rocconi (Mot. 18), each party has now contacted her chambers

26  once again to raise further issues. Judge Rocconi's chambers has not yet had the

27  opportunity to respond to the parties or to schedule discovery teleconferences on any

28

of these issues as it is. Still more discovery disputes are brewing, as Moog has been trying to resist and unduly restrict the discovery Skyryse needs to take to oppose the pending sanctions motion, such as by deposing Moog's expert witnesses who provided supporting declarations. And the parties' discovery disputes are bound to become even more complex and contentious as Mr. Pilkington, Ms. Kim, and potentially other Skyryse or third-party witnesses assert their Fifth Amendment privileges against self-incrimination. *See Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA, 2017 WL 2123560, at *5 (N.D. Cal. May 15, 2017). To streamline the proceedings and conserve resources while the government investigation progresses, the Court should stay this action.

Moog argues that this factor weighs against a stay where no defendant has been indicted because "judicial efficiency is not furthered by waiting *indefinitely* for a resolution that may never come." (Opp. 28.) But that argument is beside the point, because Skyryse decidedly has not requested an "indefinite" stay. After six months, the stay would expire on its own terms barring renewal, and this Court would have an opportunity to re-assess the continued need for a stay based on the status of the government's investigation if a party seeks to renew it for good cause.

Indeed, courts have determined that a temporary stay promotes judicial efficiency even in cases where no indictment has issued. In *Heraeus Materials*, for example, the court found that "the efficient administration of justice is best served by granting a stay" even though the individual defendant had not been indicted. 2011 WL 13227695, at *1 n.1. Specifically, the court was concerned that even before indictment, the court could "become mired in managing motion practice regarding the applicability of the Fifth Amendment privilege." *Id.* The court also observed that "if [defendant] is indicted in this district, the pendency before two judges ... of cases which overlap in a significant way presents the likelihood of at least some duplicative judicial effort." *Id.* Likewise, in this case, the parties' motion practice to date

1    only foreshadows the potential disputes that could erupt over the application of the

2    Individual Defendants' Fifth Amendment privileges. *See, e.g.*, Dkts. 228-229

3    (Moog's motion to restore access to devices clawed back by Individual Defendants

4    on Fifth Amendment privilege grounds and Individual Defendants' motion to uphold

5    their clawback); Dkts. 263-264 (Defendants' objections to report and recommenda-

6    tion denying Individual Defendants' clawback motion).

7        Moog has not shown that a temporary six-month stay of this action would

8    hamper judicial efficiency. This factor weighs in favor of a temporary stay.

9        **E.    Third parties and the public have an interest in a stay.**

10       The interests of third parties (including the government) and the public would

11   be served by a temporary stay, as Skyryse explained in its opening brief. (Mot. 20-

12   22.) Moog's arguments to the contrary do not pass muster.

13       First, as Skyryse has discussed, the government has an interest in ensuring

14   that its investigation proceeds unimpeded, which favors granting a stay.  Moog high-

15   lights that the government has not sought to intervene and therefore speculates that

16   the government must not consider this action a threat to its investigation. (Opp. 29.)

17   The government's silence during an ongoing investigation does not reveal its posi-

18   tion one way or the other, and government intervention is not required to justify a

19   stay. As courts have found in similar cases, the government benefits from having a

20   simpler and more controlled investigation and related proceedings, without the risk

21   of duplicative and potentially inconsistent testimony. *See In re Zinnel*, No. 12-cv-

22   00249-MCE, 2013 WL 1284339, at *8 (E.D. Cal. Mar. 28, 2013).

23       Second, there are numerous non-party prospective witnesses in both the civil

24   and criminal proceedings whose interests would be served by a stay. In addition to

25   potential Fifth Amendment concerns of their own, these individuals surely have an

26   interest in limiting the number of times they may be called to testify. Moog does not

27   address these legitimate concerns.

28

Finally, the interests of competitors and the public in the "speedy resolution of the controversy" (Opp. 29) will be advanced by the pending criminal investigation, and these interests do not require that the civil action proceed in parallel.  Further, any interest in the expeditious resolution of the civil action is outweighed by the important Fifth Amendment interests of the Individual Defendants and third parties, as well as the public's interest in the progress of the criminal case. *SEC v. Alexander*, No. 10-cv-04535-LHK, 2010 WL 5388000, at *6 (N.D. Cal. Dec. 2010).

### F.     The Court should temporarily stay this action as to all Defendants.

Moog argues that if a stay is granted, it should be only as to the Individual Defendants because Skyryse has no Fifth Amendment privilege to assert. (Opp. 29-30.) Moog further argues that any stay should be limited to discovery only, so that Moog could still seek the "relief" it claims to need for Skyryse's purported violations of the stipulated order on the preservation and production of data. (Opp. 30.) Moog's arguments have no merit. A stay should apply across the board, and not require piecemeal implementation, for all the reasons described in Skyryse's Motion and above. In particular, that a corporation lacks Fifth Amendment rights is immaterial; the prejudice Skyryse would suffer absent a stay stems from *individuals'* invocation of the Fifth Amendment, and their consequent unavailability as witnesses. *See supra* Section II.C. As much prejudice as Skyryse would suffer without a stay, Skyryse would suffer yet a different sort of prejudice if the action were partially stayed only as to Ms. Kim and Mr. Pilkington, since that would *assure* their complete unavailability to provide valuable and potentially exculpatory testimony critical to Skyryse's defense. Furthermore, a partial stay of the action would achieve very little of the streamlining or enhancing of judicial economy Skyryse seeks by moving to stay the case as a whole temporarily. Moog's proposed partial stay would precipitate a drain on judicial resources and protracted, contentious motion practice stemming from the

Individual Defendants' invocation of their Fifth Amendment rights and their una-vailability as witnesses in the civil proceedings. *See Cadence*, 1997 U.S. Dist. LEXIS 24147, at *8 (finding plaintiff's proposal of splitting the civil suit into "dis-crete issues … some of which are stayed, is an inefficient use of judicial resources"). By contrast, a temporary stay of the entire action will allow the Court and parties to conserve resources while waiting to see if the case may be narrowed or simplified by parallel criminal proceedings. *See supra* Section II.D.

## III.   CONCLUSION

For the foregoing reasons and those explained in Skyryse's Motion, Skyryse respectfully requests that the Court grant a six-month stay of the entire action, with-out prejudice to any party seeking to renew the stay for good cause.

| | |
|---|---|
| 1 | Dated:  March 30, 2023 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Gabriel S. Gross
    Douglas E. Lumish (SBN 183863)
    Gabriel S. Gross (SBN 254672)
    Arman Zahoory (SBN 306421)
    Rachel S. Horn (SBN 335737)
    Menlo Park, California 94025
    Telephone: (650) 328-4600
    Facsimile: (650) 463-2600
    Email: doug.lumish@lw.com
    gabe.gross@lw.com
    arman.zahoory@lw.com
    rachel.horn@lw.com

    Joseph H. Lee (SBN 248046)
    Ryan Banks (SBN 318171)
    650 Town Center Drive, 20th Floor
    Costa Mesa, California 92626
    Telephone: (714) 540-1235
    Facsimile: (714) 755-8290
    Email: joseph.lee@lw.com
    ryan.banks@lw.com

    Julianne C. Osborne (SBN 342870)
    Alexa Solimano (SBN 335740)
    505 Montgomery Street, Suite 2000
    San Francisco, California 94111
    Telephone: (415) 391-0600
    Facsimile: (415) 395-8095
    Email: julianne.osborne@lw.com
    alexa.solimano@lw.com

    Kelley M. Storey (Admitted *Pro Hac Vice*)
    555 Eleventh Street NW, Suite 1000
    Washington, D.C. 20004
    Telephone: (202) 637-2200
    Facsimile: (202) 637-2201

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Email: kelley.storey@lw.com
Cassandra M. Baloga (Admitted *Pro
Hac Vice)*
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: cassandra.baloga@lw.com

*Attorneys for Defendant and Counter-
claimant Skyryse, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant and Counterclaimant Skyryse, Inc., certifies that this brief contains **6,827** words, which complies with the word limit of L.R. 11-6.1.


Dated:  March 30, 2023                    LATHAM & WATKINS LLP
                                          By <u>*/s/ Gabriel S. Gross*</u>
                                             Gabriel S. Gross

                                             *Attorneys for Defendant and Counter-*
                                             *claimant Skyryse, Inc*

24