1  Rena Andoh (admitted *pro hac vice*)
    randoh@sheppardmullin.com.com
2  **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
3  30 Rockefeller Plaza
    New York, NY 10112
4  Telephone: (212) 653-8700
    Facsimile: (212) 653-8701
5
6  Lai L. Yip (SBN 258029)
    lyip@sheppardmullin.com
7  Four Embarcadero Center, 17th Floor
    San Francisco, CA 94111
8  Telephone: (415) 434-9100
    Facsimile: (415) 434-3947
9
10 Travis J. Anderson (SBN 265540)
    tanderson@sheppardmullin.com
11 12275 El Camino Real, Suite 100
    San Diego, CA 92130
12 Telephone: (858) 720-8900
    Facsimile: (858) 509-3691
13 Kazim A. Naqvi (SBN 300438)
    knaqvi@sheppardmullin.com
14 1901 Avenue of the Stars, Suite 1600
15 Los Angeles, CA 90067
    Telephone: (310) 228-3700
16 Facsimile: (310) 228-3701
17 Attorneys for Plaintiff and
    Counterdefendant Moog Inc.
18
19            **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**

20 | MOOG INC., | Case No. 2:22-cv-09094-GW-MAR |
21 |            |                               |
   |        Plaintiff, | *Hon. George H. Wu* |
22 |            |                               |
   |        v.  | **PLAINTIFF MOOG INC.'S** |
23 |            | **NOTICE OF MOTION AND** |
   | SKYRYSE, INC., ROBERT ALIN | **MOTION TO ENFORCE** |
24 | PILKINGTON, MISOOK KIM, | **COMPLIANCE WITH THE** |
   | and DOES NOS.1-50, | **COURT'S ORDERS (DKTS. 25,** |
25 |            | **109 53, 272, 292), AND FOR** |
   |        Defendants. | **MONETARY SANCTIONS FOR** |
26 |            | **CONTEMPT** |
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Date:     May 8, 2023
Time:     8:30 a.m.
Ctrm.:    9-D

[*Filed concurrently with Declaration of Kazim A. Naqvi and [Proposed] Order*]

Complaint Filed:       March 7, 2022
Counterclaims Filed:   January 30, 2023

1    TO THE ABOVE CAPTIONED COURT, AND TO ALL PARTIES AND

2    THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that at 8:30 a.m. on Monday, May 8, 2023, or as

4    soon thereafter as this matter may be heard in Courtroom 9D of the above-

5    captioned Court, located at the United States Courthouse, 350 West 1st Street, Los

6    Angeles, CA, 90012, the Honorable George H. Wu presiding, Plaintiff and

7    Counterdefendant Moog Inc. ("Moog") will, and hereby does, move for an order:

8    1) compelling individual defendants Misook Kim and Robert Alin Pilkington

9    (collectively, the "Individual Defendants") to produce all communications between

10   March 7, 2019 to December 31, 2020 from five electronic devices produced by the

11   Individual Defendants to discovery vendor iDiscovery Solutions ("iDS"), Device

12   Nos. 0003, 0004, 0014, 0021, and 0022 (the "Five iDS Devices"), pursuant to the

13   Court's November 10, 2022 Order (Dkt. 292); and 2) for an award of monetary

14   sanctions for reasonable attorneys' fees and costs in the amount of $9,350 plus any

15   additional fees incurred in the course of this motion practice, against the Individual

16   Defendants and their counsel, jointly and severally. Moog requests these orders

17   and sanctions pursuant to the Court's inherent authority, its authority to issue

18   sanctions for civil contempt, and Rule 37(b).

19   This motion is made on the grounds that on November 10, 2022, the Court

20   ordered the Individual Defendants to produce all communications between March

21   7, 2019 through December 31, 2020 from the Five iDS Devices. (Dkt. 292). On

22   December 7, 2022, the Individual Defendants' prior counsel indicated the Court-

23   ordered communications would be produced the following week. It is now April 3,

24   2023 and the Court-ordered communications have still not been produced.  The

25   Individual Defendants' new counsel are refusing to produce the documents ***by***

26   ***again asserting Fifth Amendment concerns over the Five iDS Devices***, which

27   were previously asserted by the Individual Defendants several months ago over the

28   same devices and expressly rejected by the Court in two separate orders. (Dkts.

253, 272). Those orders determined that: 1) the electronic devices produced by the Individual Defendants to iDS were not subject to any Fifth Amendment privilege because their production was voluntary and not testimonial; and 2) even if the Individual Defendants could assert the Fifth Amendment, it had been waived. The Individual Defendants are refusing to comply with this Court's many orders (including Dkts. Nos. 25, 109, 253, 272, 292) and are re-litigating identical issues that have already been rejected by the Court. Moog is now left with no choice but to seek enforcement of the Court's November 10, 2022 order and for monetary sanctions.

This motion is made following the conference of counsel pursuant to C.D. Cal. Local Rule 7-3 that took place on March 21, 2023 at 10:00 a.m.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Kazim A. Naqvi, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as this Court may consider in connection with the hearing on this matter.

Dated:  April 3, 2023            SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____
                              */s/ Rena Andoh*
                                Rena Andoh

                    Attorney for Plaintiff and Counterdefendant
                                MOOG INC.

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................. 10

II.  FACTUAL AND PROCEDURAL BACKGROUND.................................. 12

    A.  The Complaint.............................................................................. 12

    B.  The TRO ..................................................................................... 12

    C.  Individual Defendants' Production of 23 Electronic Devices ............ 13

    D.  The Government's Investigation and Service of Subpoenas.............. 14

    E.  In June 2022, Individual Defendants Authorize Moog's Review
        of the Electronic Devices They Produced........................................... 14

    F.  Individual Defendants' Expression of Vague Fifth Amendment
        "Concerns" .................................................................................. 15

    G.  Individual Defendants' Unilaterally Exercise Self-Help and
        Revoke Moog's Access to the Electronic Devices They
        Produced..................................................................................... 16

    H.  Magistrate Judge McCarthy Grants Moog's Motion to Restore
        Access to the Individual Defendants' Electronic Devices................. 16

        1.  Moog Moves to Restore Access to the iDS Electronic
            Devices ........................................................................... 16

        2.  The WDNY Grants Moog's Motion, and Denies the
            Individual Defendants' Motion ...................................... 17

    I.  Then-Presiding District Judge Vilardo Affirms Judge
        McCarthy's Decision .................................................................... 18

    J.  The Court Orders the Individual Defendants to Produce All
        Communications from 5 Electronic Devices for 2019 and 2020 ....... 19

    K.  Individual Defendants' Prior Counsel Commits to Producing
        the Court-Ordered Documents in December 2022 ............................ 20

    L.  Individual Defendants' New Counsel Refuses to Produce the
        Court-Ordered Documents, Again Citing Potential Fifth
        Amendment "Concerns" ................................................................ 20

    M.  Individual Defendants' New Counsel Has Effectively Frozen
        iDS.............................................................................................. 22

    N.  Consolidated Timeline of Relevant Events ...................................... 22

III.  LEGAL STANDARDS......................................................................... 24

A.     The Court Has Authority to Issue Sanctions in Multiple Ways .........24

B.     The WDNY's Orders Cannot be Disturbed Because of the Transfer ............................................................................................25

IV.     ARGUMENT ....................................................................................26

A.     Individual Defendants are in Contempt of Several Court Orders ......26

      1.     Individual Defendants Have Intentionally Violated the TRO and Inspection Protocol ....................................................27

      2.     Individual Defendants Have Intentionally Violated the Judge McCarthy Order and Judge Vilardo Order ...................27

      3.     Individual Defendants Have Intentionally Violated the Court's November 10, 2022 Order Compelling Production...................................................................................28

B.     There is No Justification for the Individual Defendants' Conduct ............................................................................................29

C.     Immediate Compliance with the Court's November 10, 2022 Order is Required ...............................................................................29

D.     Monetary Sanctions Are Appropriate .............................................30

      1.     Moog Should be Awarded Reasonable Attorneys' Fees and Costs for Skyryse's Contempt ...........................................30

      2.     In the Alternative, Moog is Also Entitled to Monetary Sanctions Under Rule 37(b) ....................................................30

E.     The Pending Motion to Stay Does Not Excuse Individual Defendants' Contempt .......................................................................31

V.     CONCLUSION ................................................................................33

1

2

## **TABLE OF AUTHORITIES**

3                                                                                              **Page(s)**

**Cases**

4

5      *Adriana Intern. Corp. v. Thoeren*
          913 F.2d 1406 (9th Cir. 1990)................................................................29
6

7      *Burt Hill, Inc. v. Hassan*
          2010 WL 55715 (W.D. Pa. 2010) ........................................................17
8

9      *Chambers v. NASCO, Inc.*
          501 U.S. 32 (1991) ..............................................................................24

10

11      *Chrysler Credit Corp. v. Country Chrysler, Inc.*
          928 F.2d 1509 (10th Cir. 1991) ..........................................................26

12      *Danner v. Himmelfarb*
          858 F.2d 515 (9th Cir. 1988) ..............................................................25
13

14      *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*
          10 F.3d 693 (9th Cir. 1993) ................................................................26
15

16      *First Am. Title Ins. Co. v. Com. Assocs.*
          LLC, No. 2:15-CV-832-RFB-VCF, 2016 WL 951175 (D. Nev. Mar. 8,
17          2016)............................................................................17, 18, 19, 32

18      *Halaco Engineering Co. v. Costle*
          843 F.2d 376 (9th Cir. 1988) ..............................................................25
19

20      *Harcourt Brace Jovancovich Legal and Prof'l Publications, Inc. v.*
          *Multistate Legal Studies, Inc.*
21          26 F.3d 948 (9th Cir. 1994) ................................................................30

22      *Henry Schein, Inc. v. Certified Bus. Supply, Inc.*
23          No. SA-CV-03-1662-DOC, 2008 WL 9452685 (C.D. Cal. Aug. 20, 2008) .....29

24      *HRC-Hainan Holding Co., LLC v. Yihan Hu*
25          No. 19-MC-80277-TSH, 2020 WL 1643786 (N.D. Cal. Apr. 2, 2020)............32

26      *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*
27          774 F.3d 935 (9th Cir. 2014) ..............................................................29

28

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*
456 U.S. 694 (1982), cert. denied 536 U.S. 941 (2002) ...................................... 31

*Link v. Wabash R. Co.*
370 U.S. 626 (1962) ............................................................................................. 24

*Magnetic Eng'g & Mfg. v. Dings Mfg.*
178 F.2d 866 (2d Cir. 1950) (L. Hand, J.) .......................................................... 25

*Michaels v. Internet Ent. Grp., Inc.*
No. CV-98-0583DDP(CWX), 1998 WL 35242549 (C.D. Cal. Feb. 27, 1998) ................................................................................................................... 26

*In re Miller*
485 F.2d 74 (5th Cir.1973) ................................................................................... 25

*Nat'l Corporate Tax Credit Funds III v. Potashnik*
No. CV 07-3528 PSG, 2008 WL 11339608 (C.D. Cal. June 16, 2008) ........... 32

*Navellier v. Sletten*
262 F.3d 923 (9th Cir. 2001) ............................................................................... 31

*Pac. Coast Marine Windshields v. Malibu Boats*
No. 1:11-CV-01594-LJO, 2011 WL 6046308 (E.D. Cal. Dec. 5, 2011) ........... 25

*Perry v. O'Donnell*
759 F.2d 702 (9th Cir. 1985) ............................................................................... 30

*Spallone v. United States*
493 U.S. 265 (1990) ............................................................................................. 24

*Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*
982 F.2d 363 (9th Cir. 1992) ............................................................................... 25

*WeRide Corp. v. Kun Huang*
No. 5:18-CV-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ......... 31

*Wyle v. R.J. Reynolds Industries, Inc.*
709 F.2d 585 (9th Cir. 1983) ............................................................................... 25

**<u>Other Authorities</u>**

Fifth Amendment .......................................................................................... passim

Federal Rule of Civil Procedure 37 ............................................................ 25, 30, 31

Local Rule 7-3 ......................................................................................... 21

I.     **<u>INTRODUCTION</u>**

Defendants Misook Kim and Robert Alin Pilkington (collectively, the "Individual Defendants") believe the Court's orders do not apply to them. They are flagrantly violating at least five of the Court's orders, and are re-asserting arguments that have been expressly rejected multiple times by the Court as a basis to refuse production of Court-ordered documents.

On March 11, 2022, the Individual Defendants stipulated to a temporary restraining order (Dkt. 25) (the "TRO"), requiring them to produce all Moog non-public information in their possession and all electronic devices they have used in the previous 12 months to neutral forensic vendor, iDiscovery Solutions ("iDS"). In compliance with the TRO, the Individual Defendants produced 23 electronic devices to iDS on April 1, 2022 (the "iDS Electronic Devices"). On June 29, 2022, well after the Individual Defendants had retained criminal defense counsel and had been served with subpoenas by the Government, the Individual Defendants consented to Moog's access and review of the iDS Electronic Devices. Then, in a stunning act of unilateral self-help, on July 29, 2022, the Individual Defendants instructed iDS to revoke Moog's access to the iDS Electronic Devices under a hypothetical and vague assertion of the Fifth Amendment.

Moog immediately moved to restore its access to the iDS Electronic Devices. On August 29, 2022, WDNY Magistrate Judge McCarthy issued an order granting Moog's motion, finding: 1) the iDS Electronic Devices were not subject to any Fifth Amendment privilege because their production was voluntary and not testimonial; and 2) even if the Individual Defendants could assert the Fifth Amendment, it had been waived. (Dkt. 253). Upon further objection by the Individual Defendants, on October 4, 2022, WDNY Presiding District Judge Vilardo affirmed Judge McCarthy's ruling, reaching the same conclusions that Judge McCarthy did. (Dkt. 272).

In another improper, unilateral act of self-help, the Individual Defendants excised all communications before 2021 from five electronic devices they produced to iDS, Devices Nos. E0003, E0004, E0014, E0021, E0022 (the "Five iDS Devices"). The Individual Defendants did so based on purported relevance, which was not permitted anywhere in the TRO or the inspection protocol governing the review of iDS materials. Moog was forced to move to compel its access to these improperly excised communications. On November 10, 2022, WDNY Judge McCarthy ordered the Individual Defendants to produce all communications between March 7, 2019 through December 31, 2020 from the Five iDS Devices. (Dkt. 292, pp. 45-46). On December 7, 2022, the Individual Defendants' prior counsel indicated the Court-ordered communications would be produced the following week.

It is now April 3, 2023 and the Court-ordered communications have still not been produced.  The Individual Defendants' new counsel are refusing to produce the Court-ordered documents ***by again asserting Fifth Amendment concerns over the Five iDS Devices***. Of course, and as the Individual Defendants' new counsel are aware, the Court expressly rejected any application of the Fifth Amendment to all the iDS Electronic Devices multiple times. Individual Defendants are simply re-litigating issues that have already been expressly rejected after substantial resource and expense by Moog and the Court.

The Individual Defendants' flagrant disregard for this Court's orders is stunning. And, the Ninth Circuit is unambiguous that Defendants' pending Motion to Stay is not a basis to refuse to comply with discovery deadlines and orders. Moog is left with no choice but to move this Court to enforce compliance with the Court's November 10, 2022 order, and to impose monetary sanctions against the Individual Defendants and their counsel, jointly and severally, in the amount of $9,350.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Complaint

On March 7, 2022, Moog filed its Complaint, alleging that Defendants had engaged in the theft of Moog's most sensitive and proprietary data. (Dkt. 1). At the time the Complaint was filed, Moog had discovered that prior to leaving Moog to join Skyryse, Kim had stolen over 136,000 files of Moog's most sensitive and proprietary data relating to its flight control software (including over 43,000 source code files) that took over 15 years to develop. (*Id.*, ¶ 1). Since the filing of the Complaint, Moog has discovered additional acts of misappropriation by current and former Skyryse personnel, including a massive theft of files by former Pilkington – who also departed for Skyryse immediately after his theft – such that the volume of stolen data *exceeds 1.4 million files related to at least 20 Moog flight control programs (including several sensitive government programs)*. (Dkt. 180, pp. 6-8; Dkts. 180-001 to 180-004).  The extent of misappropriation in this case, as confirmed by forensic analysis and discovery, is staggering. The Individual Defendants' theft of Moog data is undisputed, and they have confirmed as much in written discovery responses. (Dkts. 180-009, 180-110.)

When the Complaint was served, the Individual Defendants were placed on notice of the nature of the severe allegations against them. Indeed, in the very first paragraph of its Complaint, Moog sought judicial relief to "stop the *illegal* taking and use of its trade secrets and the misappropriation of sensitive US Government technical data developed by Moog." (*Id.* ¶ 1 (emphasis added)).

### B.    The TRO

On March 11, 2022, all Defendants stipulated to the TRO, and it was entered by then-presiding Article III District Judge Lawrence J. Vilardo as a Court order. (Dkts. 25, 28).  It provides, in relevant part:

- By April 1, 2022, each Defendant must deliver to Moog all Moog non-
  public information in each Defendant's possession, custody or control or, if

such information has been integrated or used by any Defendant in such a manner that such delivery "necessarily includes property of any Defendant," then "such information shall be given to a third-party forensics firm [iDiscovery Solutions ("iDS")] . . . for forensic imaging in lieu of providing such information directly to Plaintiff" (*id*., § 2); and

- Individual Defendants shall produce to iDS all "electronic devices used in the last twelve months." (*id*., § 4).

On May 13, 2022, the Court entered an inspection protocol governing the review of electronic devices and data produced to iDS (the "Inspection Protocol"). (Dkts. 96, 96-02, 109).

## C.   Individual Defendants' Production of 23 Electronic Devices

In apparent compliance with the TRO, on April 1, 2022, Kim and Pilkington produced 23 electronic devices (computers, mobile devices, and hard drives) to iDS (the "iDS Electronic Devices") and began a privilege review on such devices before they were made available to Moog for review. (Dkt. 142-2). To be clear, the TRO required turnover of Moog non-public information. The Individual Defendants chose to turn over entire devices to iDS as a mechanism for compliance with that Order. (Dkt. 228-02, ¶ 4). While Moog did not have access to the devices while the Individual Defendants conducted a privilege review, the devices remained physically in the custody and control of iDS, a non-party neutral. At no time did the Individual Defendants seek return of those devices from iDS, or assert any Fifth Amendment objection. (*Id*.).

On April 13, 2022 the Individual Defendants responded to documents requests, requests for admissions, and interrogatories. They asserted no Fifth Amendment objections. (*Id*., ¶ 13). The Individual Defendants have never amended or supplemented any of these responses. (*Id*.).

-13-

**D.     The Government's Investigation and Service of Subpoenas**

On June 10, 2022, Moog wrote to the Court seeking partial relief from the Court's seal Orders (the "June 10 Letter"). (Dkt. 228-04). Moog informed the Court and all counsel that the FBI had requested copies of unredacted transcripts of the April 26, 2022 and May 5, 2022 Court conferences as part of an "ongoing federal investigation into the files taken from Moog that are the subject of this lawsuit." (*Id.*). Three days later, on June 13, 2022, the Individual Defendants' counsel consented to Moog's request. (Dkt. 228-05). The Court granted Moog's unopposed request to provide the transcripts to the FBI on the same date. (Dkt. 152).

Between April and June 2022, the Individual Defendants were each served with a grand jury subpoena, seeking the production of documents relating to their theft of Moog information. Moog does not know the exact date of this subpoena because the Individual Defendants refuse to disclose when they received it. Moog's best understanding is that the Individual Defendants received their subpoenas before Moog received a subpoena of its own from the Government on June 24, 2022. (Dkt. 228-02, ¶ 12). The Individual Defendants admit in filings that "Mr. Pilkington retained criminal defense counsel on or near June 16, 2022 and Ms. Kim retained criminal defense counsel on or near July 5, 2022." (Dkt. 229-1, p. 10). They also admit that they "asserted their Fifth Amendment rights in response to the grand jury subpoena[s]." (*Id.*).

**E.     In June 2022, Individual Defendants Authorize Moog's Review of the Electronic Devices They Produced**

On June 29, 2022—nineteen days after Moog's June 10 letter advising of the FBI's request for transcripts and after the Individual Defendants received a grand jury subpoena—the Individual Defendants expressly consented to Moog's access

-14-

to 17 of the iDS Electronic Devices.[1] (Dkt. 228-08). The Individual Defendants had completed their privilege review. Moog immediately began reviewing data on these devices.

On June 21, 2022, Skyryse filed a sequencing motion to compel Moog's trade secret identification. (Dkt. 166). The Individual Defendants did not expressly join in the motion. (*Id*.). On July 22, 2022, the Court granted Skyryse's motion in part, holding that before Moog made its complete trade secret identification it first "need to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure." (Dkt. 205, p. 3).

## F.   Individual Defendants' Expression of Vague Fifth Amendment "Concerns"

On July 27, 2022—more than 45 days after the Individual Defendants were placed on notice (at latest) about the FBI investigation and almost thirty days after the Individual Defendants granted Moog access to the 17 devices—the parties appeared before the Court for a scheduled conference. The Individual Defendants informed the Court for the first time that they intended to seek a stay of this case because they might invoke Fifth Amendment to prevent further document production. (Dkts. 206, 228-10). The Court set a briefing schedule for the Individual Defendants' motion to stay, with the hearing scheduled for September 12. (Dkt. 206). At no point during the July 27, 2022 hearing did the Individual Defendants seek any relief with respect to any of the iDS Electronic Devices that Moog was already reviewing. (Dkt. 228-02, ¶ 18).

---

[1] The other six devices produced to iDS by the Individual Defendants were not yet ready for review by the other parties due to ongoing privilege review, and/or technical issues.

G.     **Individual Defendants' Unilaterally Exercise Self-Help and Revoke Moog's Access to the Electronic Devices They Produced**

Two days after the July 27 Court conference, the Individual Defendants' counsel unilaterally instructed iDS to cut-off Moog's access to the available 17 devices amongst the iDS Electronic Devices. (Dkt. 228-10). The Individual Defendants provided no prior notice to Moog and sought no interim relief from the Court. The Individual Defendants effectively granted themselves interim relief. They also withdrew access to devices that they were required to produce under the TRO and the ESI Protocol. (Dkts. 25, 109).

H.     **Magistrate Judge McCarthy Grants Moog's Motion to Restore Access to the Individual Defendants' Electronic Devices**

1.     **Moog Moves to Restore Access to the iDS Electronic Devices**

Following the Individual Defendants' improper acts of self-help and clawback of the iDS Electronic Devices, on August 11, 2022, Moog immediately moved to restore its access to such devices. (Dkt. 228). The Individual Defendants simultaneously moved to clawback the iDS Electronic Devices. (Dkt. 229). Both parties filed oppositions to each other's cross-motions. (Dkts. 234, 237).

In its motion and opposition, Moog argued: 1) the Individual Defendants' unilateral acts of self-help without the Court's authorization were improper; 2) the Protective Order (Dkt. 89) provides no basis for the Individual Defendants' clawback; 3) the Fifth Amendment does not apply to the Individual Defendants' production of the iDS Electronic Devices; 4) even if the Fifth Amendment did apply, the Individual Defendants waived their ability to assert it; and 5) no further trade secret identification was required for the Individual Defendants to assert the Fifth Amendment. (Dkts. 228, 234).

In their motion and opposition, the Individual Defendants' argued: 1) they properly clawed back the iDS Electronic Devices under Section 16 of the

1   Protective Order; 2) the production of iDS Electronic Devices was "inadvertent";

2   and 3) they have not waived their Fifth Amendment rights. (Dkts. 229, 237).

### 2.   The WDNY Grants Moog's Motion, and Denies the Individual Defendants' Motion

5   On August 29, 2022, WDNY Magistrate Judge McCarthy issued an order

6   granting Moog's Motion to Restore Access (Dkt. 228) and denied the Individual

7   Defendants' Motion to Clawback (Dkt. 229), based on several, well-reasoned

8   holdings (the "Judge McCarthy Order"). (Dkt. 253).

9   ***First,*** Judge McCarthy determined that the iDS Electronic Devices are not

10   subject to a Fifth Amendment privilege because "Their Production Was Not

11   Compelled." (*Id*., p. 4). He explained that the Individual Defendants "produced

12   their electronic devices for inspection pursuant to Orders to which they agreed"

13   (Dkts. 25, 33) and "[t]hey were not forced to do so." (*Id*., p. 5). Judge McCarthy

14   expressly rejected the Individual Defendants' arguments that they were induced

15   into entering into the TRO. (*Id*.). He also rejected the Individual Defendants'

16   arguments that their "Fifth Amendment right sonly became a known issue once the

17   AUSA informed the Individual Defendants they were subject of a criminal

18   investigation" because "the allegations in Moog's Complaint and preliminary

19   injunction motion made their potential criminal exposure obvious from the outset

20   of the case." (*Id*., p. 6).  Judge McCarthy further noted: "In fact, the Stipulated

21   Order expressly contemplated the possibility of invoking the Fifth Amendment."

22   (*Id*.). He concluded this point by noting the Individual Defendants "have never

23   sought to rescind the orders requiring production of their devices." (*Id*., p. 7).

24   ***Second,*** Judge McCarthy determined that the iDS Electronic Devices are not

25   subject to a Fifth Amendment privilege because "Their Production Was Not

26   Testimonial." (*Id*.). Citing to *Burt Hill, Inc. v. Hassan*, 2010 WL 55715 (W.D. Pa.

27   2010), Judge McCarthy reasoned that the Individual Defendants "have repeatedly

28

1   admitted that the devices in question are theirs, and not only agreed to make those

2   devices available for inspection, but did so." (*Id.*, p. 8).

3       ***Third,*** Judge McCarthy held that even if the Individual Defendants did have

4   a Fifth Amendment privilege to asset, "it has been waived by their voluntary

5   production of their devices when they were clearly on notice of potential criminal

6   exposure from the outset of this case." (*Id.*, p. 9). Judge McCarthy further

7   determined that the Sections 16.1 and 16.5 Protective Order did not authorize the

8   Individual Defendants' clawback. (*Id.*, pp. 9-10).

9       **I.     Then-Presiding District Judge Vilardo Affirms Judge McCarthy's**

10          **Decision**

11       On September 12, 2022, the Individual Defendants filed objections to the

12   Judge McCarthy Order. (Dkt. 264). Moog filed its opposition (Dkt. 264) and the

13   Individual Defendants' filed a reply (Dkt. 268). On October 4, 2022, presiding

14   Article III Judge Vilardo issued an order which affirmed the Judge McCarthy

15   Order (the "Judge Vilardo Order"). (Dkt. 272). Judge Vilardo arrived at many of

16   the same conclusions as Judge McCarthy did.

17       Judge Vilardo determined: "Regardless of whether Pilkington and Kim

18   voluntarily produced the devices pursuant to the March 11 stipulated order, this

19   Court agrees with Judge McCarthy that the production of those devices does not

20   implicate the Fifth Amendment." (*Id.*, p. 6).

21       Judge Vilardo also held that the production of the iDS Electronic Devices

22   was "not testimonial" because "Pilkington and Kim err by focusing not on whether

23   the *act of producing* the devices themselves was testimonial, but whether the

24   *information contained* in those devices may or may not be incriminating." (*Id.*, p.

25   8, emphasis in original). He noted that "Pilkington and Kim expressly concede that

26   the devices they produced are covered by the March 11 stipulated order and that

27   those devices are theirs." (*Id.*). Judge Vilardo concluded: "the act of producing

28

those devices is not testimonial because that act does not itself communicate any incriminating information." (*Id*.).

### J.   The Court Orders the Individual Defendants to Produce All Communications from 5 Electronic Devices for 2019 and 2020

At the Court's direction and in line with the Court's July 22, 2022 order regarding Moog's trade secret identification obligations, on August 3, 2022, Moog filed a motion to compel discovery necessary for further trade secret identification. (Dkt. 210). As part of that motion, Moog stated the Individual Defendants had improperly excised all communications before 2021 from the Five iDS Devices. (*Id*., pp. 13-15). Moog argued, among other things, that the Individual Defendants were required to produce these devices in response to the TRO and no Court order or stipulation permitted them to excise materials for reasons other than for privilege or personal privacy review. (*Id*.). Moog moved to compel the production of all communications from the Five iDS Devices from 2013 to 2021. (*Id*.). The Individual Defendants filed an opposition and Moog filed a reply. (Dkts. 244, 249).

During the oral argument on Moog's motion (Dkt. 210) on November 10, 2022, Judge McCarthy ordered that all communications from the Five iDS Devices "for the years 2019 and 2020, that information should be produced" (the "November 10 Order"). (Dkt. 292 (11/10/22 Hrg. Tr.) at 45:1-46:11). Judge McCarthy permitted the Individual Defendants' counsel to perform an "attorney/client analysis" and review, but noted that "[a]s far as any privacy analysis or whatever, again, I think that is adequately protected by the protective order." (*Id*.). Upon prompting from the Individual Defendants' counsel, Judge McCarthy clarified that the timeframe of communications to be produced from the Five iDS Devices was March 7, 2019 through end of 2020. (*Id*. at 46:12-15).

**K.     Individual Defendants' Prior Counsel Commits to Producing the Court-Ordered Documents in December 2022**

Following the November 10 Order, Moog's counsel followed up with the Individual Defendants' counsel a number of times regarding when such communications would be produced. (Declaration of Kazim A. Naqvi ("Naqvi Dec."), Ex. A). Even though Judge McCarthy expressly held that a privacy review was not necessary, Individual Defendants' prior counsel claimed he needed additional time to complete a privilege and privacy review. (*Id.*, pp. 6-8). After several follow up e-mails from Moog's counsel, on December 7, 2022, Individual Defendants' counsel stated: "I expect the review will be completed and production will occur toward the end of next week." (*Id.*, p. 1).

Moog's counsel again followed up on January 13, 2023, and never received a further response. (*Id.*). No documents have been produced to date.

**L.     Individual Defendants' New Counsel Refuses to Produce the Court-Ordered Documents, Again Citing Potential Fifth Amendment "Concerns"**

The Individual Defendants' prior counsel, Winget Spadafora & Schwartzberg, LLP, withdrew from this case on March 2, 2023. (Dkts. 371, 372). (*Id.*). Individual Defendants' new counsel officially substituted into the case on March 8 and 13, 2023. (Dkts. 395, 389).

On March 3, 2023, Moog's counsel sent an e-mail to Defendants' prior counsel, seeking a final meet and confer regarding the Individual Defendants' failure to produce communications between March 7, 2019 and December 31, 2020 from the Five iDS Devices. (Naqvi Dec., Ex. B, pp. 10-11). The Individual Defendants' prior counsel advised that new counsel should be conferred on this issue. (*Id.*, pp. 8-9).

Moog's counsel reached out to the Individual Defendants' new counsel on March 6, 2023, citing the Court's November 10, 2022 order compelling production

from the Five iDS Devices, and requesting an immediate meet and confer given the length of time Moog has waited for compliance and production. (*Id*., pp. 7-8). Individual Defendants' new counsel claimed they needed more time to get up to speed, but requested that Moog identify the relevant Court orders and transcripts. (*Id*.). Moog's counsel responded by enclosing the November 10, 2022 hearing transcript (citing to the relevant portions of Judge McCarthy's ruling), and an e-mail thread from Individual Defendants' prior counsel agreeing to produce the documents in December 2022. (*Id*., p. 6). The Individual Defendants' new counsel claimed they needed 14 more days to get up to speed before a meet and confer could take place. (*Id*., p. 5).

The Parties telephonically met and conferred pursuant to L.R. 7-3 on March 21, 2023. (Naqvi Dec., ¶ 5). During the meet and confer, the Individual Defendants' counsel refused to produce the Court-ordered communications from the Five iDS Devices pursuant to the November 10 Order. (*Id*.). The apparent basis was that the Individual Defendants intended to ***again*** assert a Fifth Amendment privilege over the Five iDS Devices. (*Id*.).  Moog's counsel advised the Individual Defendants' counsel that the assertion of the Fifth Amendment over the iDS Electronic Devices had already been litigated extensively, and the WDNY issued multiple orders finding that the iDS Devices are not covered by any Fifth Amendment privilege and even if they were, such privilege had been waived. (*Id*.). Nonetheless, Individual Defendants' claimed they were not producing the documents based on Fifth Amendment issues. (*Id*.). Individual Defendants' counsel also cited to Skyryse's pending Motion to Stay (Dkt. 392) and the Individua Defendants' joinder thereto (Dkt. 393) as a basis to refuse to provide Court-ordered discovery. (*Id*.). Moog's counsel advised that the Individual Defendants are in contempt of multiple Court orders, and would move to enforce such orders and seek sanctions. (*Id*.). Moog's counsel followed up with a confirming e-mail that same date confirming the Individual Defendants' positions.

(*Id*., Ex. B). The Individual Defendants further recently confirmed their improper assertion of the Fifth Amendment over the Five iDS Devices in their reply brief in support of their joinder to Skyryse's Motion to Stay. (Dkt. 428, pp. 3-4).

**M.   Individual Defendants' New Counsel Has Effectively Frozen iDS**

A recent development has caused iDS to stop work in connection with processing new devices or data. Because of the Individual Defendants' substitution in counsel, iDS requires their new counsel to sign supplemental engagement agreements to confirm that new counsel will be responsible for payment of the Individual Defendants' 25% share of iDS' expenses. (Naqvi Dec., Exs. C, D). iDS has been contacting the Individual Defendants' new counsel about the necessity of a newly signed engagement letter since March 15, 2023, but the Individual Defendants' new counsel have still not yet complied. (*Id*.). iDS has advised that it is in a "holding pattern" until the new engagement agreements are signed. (*Id*.). While the Individual Defendants contend they are working on this issue and there is a possibility it is resolved by the time this Motion is heard, in the event the Individual Defendants effectively halt the iDS inspection environment, Moog reserves the right to seek additional relief.

**N.   Consolidated Timeline of Relevant Events**

For the Court's convenience, a timeline of events relevant to this Motion is as follows:

| Date | Event |
|------|-------|
| 3/8/22 | Individual Defendants are served with the Complaint and initial papers, placing them on notice of large-scale trade secret misappropriation under the DTSA, which carries criminal penalties. (Dkt. 1). |
| 3/11/22 | Stipulated TRO is filed and entered requiring, among other things, the Individual Defendants to produce all Moog non-public |

| | |
|---|---|
| | information and all electronic devices used in the last 12 months. (Dkts. 25, 28). |
| 4/1/22 | Individual Defendants produce 23 electronic devices wholesale to iDS, pursuant to the TRO. (Dkt. 142-2). |
| 6/10/22 | Moog's counsel e-mails the Court, copying all counsel, advising that the advising that the FBI would like certain transcripts unsealed because of an ongoing criminal investigation. (Dkt. 228-04). |
| 6/13/22 | Counsel for the Individual Defendants provides e-mail consent to the unsealing of transcripts for FBI purposes, and the Court grants Moog's unopposed Motion to Unseal. (Dkts. 152, 228-05). |
| 6/16/22 | Pilkington retains criminal defense counsel. (Dkt. 229-1, p. 10). |
| 6/29/22 | Moog is given access to the iDS Electronic Devices. All counsel are copied on this e-mail, and the Individual Defendants' counsel does not object. (Dkt. 228-08). |
| 7/5/22 | Kim retains criminal defense counsel. (Dkt. 229-1, p. 10). |
| 7/27/22 | Individual Defendants raise, for the first time, their intention to seek a stay of this action based on potential Fifth Amendment concerns. (Dkts. 206, 228-10). |
| 7/29/22 | Individual Defendants unilaterally revoke Moog's access to the iDS Electronic Devices. (Dkt. 228-10). |
| 8/11/22 | Moog files a motion to restore access to the iDS Electronic Devices. (Dkt. 228). |
| 8/29/22 | Judge McCarthy grants Moog's motion to restore access, and denies the Individual Defendants' motion to clawback the iDS Electronic Devices. (Dkt. 253). |

| 10/4/22 | Presiding District Judge Vilardo affirms Judge McCarthy's August 29, 2022 order. (Dkt. 272). |
| 11/10/22 | Judge McCarthy orders the Individual Defendants to produce all communications between March 7, 2019 and December 31, 2020 from the Five iDS Devices.(Dkt. 292, pp. 35-46). |
| 12/7/22 | Individual Defendants' prior counsel agrees to produce the Court-ordered communications from the Five iDS Devices by the end of the following week. (Naqvi Dec., Ex. A). |
| 3/21/22 | Individual Defendants' new counsel refuses to produce the Court-ordered communications from the Five iDS Devices, citing Fifth Amendment concerns. (Naqvi Dec., Ex. B) (Dkt. 428, pp. 3-4). |

### III.   LEGAL STANDARDS

#### A.   The Court Has Authority to Issue Sanctions in Multiple Ways

This motion for to enforce the Court's orders and for contempt and sanctions is based on the Individual Defendants' repeated failure to comply with Court orders, as well as their pattern of conduct that has cast a pall on their integrity and raises substantial doubt as to whether a fair and just resolution on the merits is possible. The Court has the inherent authority to sanction Defendants for their misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-51 (1991). The inherent authority to impose sanctions is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. at 49 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). Federal courts "have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quotations omitted).

1    In addition to the Court's inherent authority, Federal Rule of Civil Procedure

2    37 authorizes the Court to sanction a party for violating an order requiring a party

3    to produce documents or other evidence. *Halaco Engineering Co. v. Costle*, 843

4    F.2d 376, 379-80 (9th Cir. 1988); *see also Unigard Security Insurance Co. v.*

5    *Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363, 367-68 (9th Cir.

6    1992); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

7    The standard for discovery sanctions under Rule 37 and the Court's inherent power

8    are subject to "much the same considerations." *Halaco*, 843 F.2d at 380.

9    In determining the appropriate sanction, the Court may consider the totality

10   of the Individual Defendants' misconduct. *See Halaco*, 843 F.2d at 381 n. 2.

11   Additionally, "[w]hen choosing among possible sanctions, the district court may

12   consider the deterrent value of an order of dismissal on future litigants as well as

13   on the parties." *Wyle*, 709 F.2d at 589.

14   **B.    The WDNY's Orders Cannot be Disturbed Because of the**

15   **Transfer**

16   To the extent the Individual Defendants that the WDNY's orders at issue in

17   this Motion are no longer applicable because of the transfer to this Court, that is

18   contrary to the law. "'[W]hen an action is transferred, it remains what it was; all

19   further proceedings in it are merely referred to another tribunal, *leaving untouched*

20   *what has been already done*.'"  *Danner v. Himmelfarb*, 858 F.2d 515, 521 (9th Cir.

21   1988) (emphasis added) (quoting *Magnetic Eng'g & Mfg. v. Dings Mfg.*, 178 F.2d

22   866, 868 (2d Cir. 1950) (L. Hand, J.)); *Pac. Coast Marine Windshields v. Malibu*

23   *Boats*, No. 1:11-CV-01594-LJO, 2011 WL 6046308, at *2 (E.D. Cal. Dec. 5, 2011)

24   ("When an action is transferred, that which has already been done remains

25   untouched; only further proceedings in the case are referred to another tribunal.");

26   *see also In re Miller*, 485 F.2d 74, 76 (5th Cir.1973) ("the orders issued prior to the

27   transfer continued as though the case were still pending in the original

28   district").  "Accordingly, traditional principles of law of the case *counsel against*

1  the transferee court reevaluating the rulings of the transferor court[.]"  *Chrysler*

2  *Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)

3  (emphasis added).

4  **IV.   ARGUMENT**

5       **A.   Individual Defendants are in Contempt of Several Court Orders**

6            This is not a scenario involving one or two ministerial violations of the

7  Court's orders. The Individual Defendants have flagrantly violated ***at least five***

8  ***court orders***. (Dkts. 25, 109, 253, 272, 292). Even worse, they are advancing ***the***

9  ***exact same baseless Fifth Amendment invocation*** over the iDS Electronic

10  Devices that was expressly rejected in multiple Court orders. (Dkts. 253, 272). The

11  Court has already determined, multiple times, that the Individual Defendants have

12  no Fifth Amendment privilege to assert over the iDS Electronic Devices and even

13  if they did, it has been waived. No circumstances or developments in the case can

14  change these rulings. The Individual Defendants are also simply refusing to

15  comply with a straightforward Court order requiring the production of documents,

16  even though they previously indicated the documents would be produced in

17  December 2022. This is an unfortunate example of litigants believing they are

18  above the authority of the Court.

19            "[F]ederal courts have inherent and statutory authority to punish failure to

20  obey the terms of a temporary restraining order." *Michaels v. Internet Ent. Grp.,*

21  *Inc.*, No. CV-98-0583DDP(CWX), 1998 WL 35242549, at *2 (C.D. Cal. Feb. 27,

22  1998)**.** Courts in this circuit look at the following factors for contempt: "(1) that [a

23  party] violated the court order, (2) beyond substantial compliance, (3) not based on

24  a good faith reasonable interpretation of the order, (4) by clear and convincing

25  evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693,

26  695 (9th Cir. 1993) "The burden then shifts to the contemnors to demonstrate why

27  they were unable to comply.... They must show they took every reasonable step to

28  comply." *Id*. (internal citations omitted).

The Individual Defendants' serial violations of multiple court orders meet all the factors required for the imposition of sanctions for civil contempt.

### 1.     Individual Defendants Have Intentionally Violated the TRO and Inspection Protocol

The TRO required the Individual Defendants to, by April 1, 2022, produce all Moog non-public information in their possession, and all electronic devices they have used in the last 12 months. (Dkt. 25, §§ 2, 4). The TRO required the production of and access to the iDS Electronic Devices wholesale. The Inspection Protocol only contemplates the excision of privileged and/or personally private information from the iDS Electronic Devices, and does not permit any excision based on potential relevance. (Dkt. 96-02). Indeed, any such excision based on relevance would be completely contrary to the TRO which required the Individual Defendants' production of the iDS Electronic Devices wholesale so that Moog could review all non-privileged or non-personally private information.

The Individual Defendants have violated the TRO and Inspection Protocol by preventing Moog's access to a large volume of communications from the Five iDS Devices. These devices were produced wholesale pursuant to the TRO, and Moog's access thereto was governed by the Inspection Protocol. The Individual Defendants' unilateral excision of communications from the Five iDS Devices, and subsequent improper invocation of the Fifth Amendment over them, violates Sections 2 and 4 of the TRO and undermines its entire purpose. Their conduct also violates the provisions of the Inspection Protocol, which does not permit excisions based on potential relevance or preventing the other parties from reviewing any non-privileged or non-personally private materials on the iDS Electronic Devices.

### 2.     Individual Defendants Have Intentionally Violated the Judge McCarthy Order and Judge Vilardo Order

Next, there can be no dispute that the Individual Defendants are deliberately violating the Judge McCarthy Order and the affirming Judge Vilardo Order. In

fact, they are asserting the exact same baseless arguments involving Fifth Amendment issues that both judges expressly addressed and rejected several months ago.

Judge McCarthy and Judge Vilardo collectively ordered that: 1) the iDS Electronic Devices are not subject to a Fifth Amendment privilege because their production was not compelled and they were produced voluntarily; 2) the iDS Electronic Devices are not subject to a Fifth Amendment privilege because their production is not testimonial; and 3) even if the Individual Defendants could assert the Fifth Amendment over the iDS Electronic Devices (which they cannot), such rights were waived. (Dkts. 253, 272). These orders are unambiguous, well-reasoned, and provide multiple reasons why the Individual Defendants' prior clawback was improper. Considerable resources were expended by the Court and Moog to adjudicate these Fifth Amendment issues.

For the Individual Defendants to again, several months later, assert potential Fifth Amendment issues regarding the same set of devices, when the Court previously found multiple times they had no such privilege to assert, speaks for itself.

### 3.    Individual Defendants Have Intentionally Violated the Court's November 10, 2022 Order Compelling Production

The November 10 Order is unambiguous—the Individual Defendants were ordered to produce all communications between March 7, 2019 through December 31, 2020 from the Five iDS Devices. (Dkt. 292). Despite previously committing to producing such documents in December 2022, the Individual Defendants are now refusing to produce such documents. This is a willful and flagrant violation of the Court's prior discovery order, which was issued after it already rejected all the Individual Defendants' Fifth Amendment arguments. This is at least the fifth Court order that has been intentionally violated by the Individual Defendants.

**B.     There is No Justification for the Individual Defendants' Conduct**

The "good faith" exception to the general rule that intent is irrelevant in civil contempt proceedings, by its terms, "only applies where a defendant's interpretation is 'reasonable.'" *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 953 (9th Cir. 2014). Where the meaning in the injunction is not disputed or ambiguous, the exception does not apply. *Id*. at 953-54. Where a violation is "contrary to the plain language of the injunction," then "[n]o reasonable interpretation of the Injunction would lead to the conclusion that the conduct was permitted." *Henry Schein, Inc. v. Certified Bus. Supply, Inc.*, No. SA-CV-03-1662-DOC, 2008 WL 9452685, at *8 (C.D. Cal. Aug. 20, 2008).

There can be no justification for the Individual Defendants' conduct. As applied to outstanding issues before this Court, the TRO, Inspection Protocol, Judge McCarthy Order, Judge Vilardo Order, and the November 10 Order are unambiguous. There are no ambiguities in any of the orders that Individual Defendants can rely on to justify their conduct. They are simply relitigating issues that were ruled upon months ago, and are acting as if the Court's orders do not apply to them. *See Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990) ("Disagreement with the court is not an excuse for failing to comply with court orders.").

**C.     Immediate Compliance with the Court's November 10, 2022 Order is Required**

Nearly five months ago, the Court ordered the Individual Defendants to produce all communications from the Five iDS Devices from March 7, 2019 through December 31, 2020. (Dkt. 292). Clearly, there were no logistical or other issues in connection with these documents given that the Individual Defendants stated the documents would be produced in December 2022. (Naqvi Dec., Ex. A). These communications between two defendants who have undisputedly stolen approximately 1.4 million Moog files are central to Moog's misappropriation

claims. Moog has been waiting for these documents for nearly five months, and the Court should order the Individual Defendants to comply with the Court's November 10, 2022 and produce, within 7 days' of the Court's order, all communications between March 7, 2019 through December 31, 2020 from the Five iDS Devices.

**D.    Monetary Sanctions Are Appropriate**

**1.    Moog Should be Awarded Reasonable Attorneys' Fees and Costs for Skyryse's Contempt**

The court also has discretion to award attorneys' fees to the moving party incurred for bringing the civil contempt motion. *Harcourt Brace Jovancovich Legal and Prof'l Publications, Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994). Attorneys' fees may be awarded even when the contempt is not "willful." *See Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985).

Moog has already expended considerable resources and incurred substantial burden in connection with the Judge McCarthy Order, the Judge Vilardo Order, and the November 10, 2022 Order. Moog would be justified in seeking its attorneys' fees incurred with all the unnecessary, historical motion practice given the Individual Defendants' improper hypothetical assertion of the Fifth Amendment and unilateral self-help. However, Moog presently seeks only its reasonable attorneys' fees incurred in connection with the filing and adjudication of this Motion, in the total amount of $9,350. (Naqvi Dec., ¶ 8).

**2.    In the Alternative, Moog is Also Entitled to Monetary Sanctions Under Rule 37(b)**

To the extent the Court is not prepared to impose monetary sanctions on the Individual Defendants for civil contempt, it should impose them under the lesser standard under Rule 37(b)(2) in the alternative. "Rule 37(b)(2) contains two standards – one general and one specific – that limit a district court's discretion. First, any sanction must be 'just'; second the sanction must be specifically related

to the particular 'claim' which was at issue in the order to provide discovery." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (*quoting Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)), cert. denied, 536 U.S. 941 (2002). "Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Id*. (citing *Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 707-09).

While the TRO is not a standalone discovery order, it falls under Rule 37(b) because it is a restraining order or preliminary injunction that requires the production of documents and other evidence. *See WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *10 (N.D. Cal. Apr. 24, 2020) (because the PI forbade parties from concealing, disposing, deleting, or altering documents relating to confidential information, it was an "order to provide or permit discovery" under Rule 37(b)). There is also no dispute that the November 10 Order is a discovery order requiring the production of documents. The Individual Defendants' violations of the TRO and November 10 Order fall under the scope of Rule 37(b). For the reasons described above warranting contempt sanctions, Moog is entitled to monetary sanctions in the alternative under Rule 37(b).

**E.      The Pending Motion to Stay Does Not Excuse Individual Defendants' Contempt**

To the extent the Individual Defendants rely on Skyryse's pending Motion to Stay (Dkt. 392) and the Individual Defendants' joinder thereto (Dkt. 393) as a basis to refuse to comply with the Court's orders (as they stated during meet and confer), that argument fails for several reasons.

As a threshold matter, the order compelling production of communications from the Five iDS Devices was issued on November 10, 2022. (Dkt. 292). The

1    pending Motion to Stay and Joinder was not filed until **_more than four months_**
2    **_later_** on March 15 and 16, 2023. A motion filed four months after an order
3    compelling the production of discovery cannot excuse failing to comply with that
4    order for several months before the motion was filed.

5         Regardless, the Ninth Circuit is unambiguous that a pending motion to stay
6    cannot serve as a basis to refuse to comply with discovery obligations and
7    deadlines, let alone court orders. This Court has held: "That defendants have
8    sought a stay is insufficient to avoid their discovery obligations. By refusing to
9    comply with discovery merely because a motion to stay is pending, a party
10   effectively is granting its own motion to stay—even before the court has ruled.
11   Such a phenomenon would reduce a court's orders to useless and senseless
12   formalities." *Nat'l Corporate Tax Credit Funds III v. Potashnik*, No. CV 07-3528
13   PSG (FMOx), 2008 WL 11339608, at *1 (C.D. Cal. June 16, 2008) (internal
14   citations omitted) (granting motion to compel and also rejected "blanket
15   invocations of the fifth amendment" in order to avoid responding to discovery); *see*
16   *also HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-MC-80277-TSH, 2020
17   WL 1643786, at *2 (N.D. Cal. Apr. 2, 2020) (granting motion for sanctions and
18   attorneys' fees for compelling compliance with discovery orders, holding: "[T]he
19   filing of a motion to stay discovery does not automatically relieve the movant from
20   continuing to comply with its discovery obligations."); *First Am. Title Ins. Co. v.*
21   *Com. Assocs.*, LLC, No. 2:15-CV-832-RFB-VCF, 2016 WL 951175, at *3 (D.
22   Nev. Mar. 8, 2016) ("Absent a court order, TG Investments was obligated to
23   participate in discovery while the Defendants' motion to stay was pending. See
24   FED. R. CIV. P. 26(c). TG Investments should have produced responsive
25   documents while the Defendants' motion to stay was pending.").

26        The Individual Defendants' inexcusable conduct underscores why the
27   Motion to Stay, even if granted, must be limited in scope. Moog must be able to
28   seek recourse for Defendants' ongoing and flagrant violations of this Court's prior

orders, including the TRO which is the foundation for this case and one of the bases of which Defendants claim a stay is appropriate. Of course, Moog has already filed a Motion to Enforce compliance with the TRO and for monetary and other sanctions against Skyryse. (Dkt. 400). All Defendants are violating the TRO and other Court orders, and Moog would be severely prejudiced if it was prevented from obtaining relief for violations of those Court orders, even if a stay was implemented.

## V.   **CONCLUSION**

For the foregoing reasons, Moog respectfully requests the following relief:

1.   An order compelling the production of all communications between March 7, 2019 and December 31, 2020 from the Five iDS Devices, within 7 days' of the Court's order; and

2.   An award of monetary sanctions for reasonable attorneys' fees and costs in the amount of $9,350 against the Individual Defendants and their counsel, jointly and severally.

Dated: April 3, 2023          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By    _____
                    */s/ Rena Andoh*
                      Rena Andoh

              Attorney for Plaintiff and Counterdefendant
              MOOG INC.

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Moog Inc., certifies that this brief contains 6,966 words, which:

    _X_ complies with the word limit of L.R. 11-6.1.

    ___ complies with the word limit set by Court order dated _____.

Dated:  April 3, 2023          SHEPPARD MULLIN RICHTER & HAMPTON LLP

                     By        _/s/ Rena Andoh_
                                Rena Andoh

                  Attorney for Plaintiff and Counterdefendant
                          MOOG INC.