UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE


MOOG, INC.,

                     Plaintiff,

     vs.                         Case No. CV 22-9094

SKYRYSE, INC., et al

                   Defendants.
_____/


REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS
MOTION TO DISMISS AND MOTION FOR
TEMPORARY STAY HEARING
THURSDAY, APRIL 13, 2023
8:30 A.M.
LOS ANGELES, CALIFORNIA


TERRI A. HOURIGAN, CSR 3838, CRR, RPR
FEDERAL OFFICIAL COURT REPORTER
350 W. First Street, ROOM 4311
LOS ANGELES, CALIFORNIA  90012
(213) 894-2849

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4        SHEPPARD MULLIN RICHTER and HAMPTON LLP
         BY:  KAZIM A. NAQVI
5             Attorney at Law
              333 South Hope Street, 43rd Floor
6             Los Angeles, California  90071

7        SHEPPARD MULLIN RICHTER and HAMPTON LLP
         BY:  RENA ANDOH
8             Attorney at Law
              30 Rockefeller Plaza
9             New York, New York  10112

10
         SHEPPARD MULLIN RICHTER and HAMPTON LLP
11       BY:  TRAVIS J. ANDERSON
              Attorney at Law
12       12275 El Camino Real, Suite 200
         San Diego, California  92130
13

14   **FOR THE DEFENDANT:**

15       LATHAM and WATKINS LLP
         BY:  ARMAN ZAHOORY
16            DOUGLAS E. LUMISH
              GABRIEL S. GROSS
17       Attorneys at Law
         140 Scott Drive
18       Menlo Park, California  94025

19

20   **FOR THE DEFENDANT:**  ROBERT ALIN PILKINGTON

         ZWEIBACK FISET and ZALDUENDO LLP
21       BY:  SCOTT D. TENLRY
         Attorney at Law
22       315 West 9th Street, Suite 1200
         Los Angeles, California  90015
23

24

25

                    **UNITED STATES DISTRICT COURT**

```
 1   APPEARANCES (Cont.)

 2   FOR THE DEFENDANT:  MISOOK KIM

 3       HALPERN MAY YBARRA GELBERG LLP
         BY:  GRANT B. GELBERG
 4       Attorney at Law
         350 South Hope Street, Suite 2330
 5       Los Angeles, California  90071

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

1          **LOS ANGELES, CALIFORNIA; THURSDAY, APRIL 13, 2023**

2                              **8:30 A.M.**

3                              --oOo--

4

5          THE COURT:  Let me call the matter of *Moog versus*

6  *Skyryse*.

7      Let me have appearances, starting with plaintiff's counsel

8  first.

9          MR. ANDERSON:  Good morning, Your Honor.  Travis

10  Anderson for plaintiff, Moog.

11          MR. NAQVI:  Good morning, Your Honor.  Kazim Naqvi

12  for plaintiff, Moog.

13          MS. ANDOH:  Good morning, Your Honor.  Rena Andoh

14  for plaintiff, Moog.

15          THE COURT:  All right.  For the defense?

16          MR. LUMISH:  Good morning, Your Honor.  Doug Lumish

17  for Latham and Watkins.

18          MR. GROSS:  Good morning, Your Honor.  Gabe Gross,

19  Latham and Watkins, for the defendant, Skyryse.

20          MR. ZAHOORY:  You also have Arman Zahoory from

21  Latham and Watkins for Skyryse.

22          THE COURT:  All right.

23          MR. GILBERG:  Good morning, Your Honor.  Grant

24  Gilberg on behalf of Misook Kim.

25          MR. TENLEY:  Good morning, Your Honor.  Scott Tenley

1   on behalf of Robert Alin Pilkington.

2           THE COURT:  All right.  On the telephone, we have?

3           MR. POLOGNE:  It is Joseph Pologne for Moog.

4           THE COURT:  We are here on various motions to

5   dismiss, et cetera.

6       I issued a tentative on this -- on these motions.  I

7   presume both sides have seen it?

8           MS. ANDOH:  Yes, Your Honor.

9           MR. ANDERSON:  Yes, Your Honor.

10          THE COURT:  All right.  I will just do them in the

11  order that they were discussed in the tentative.

12      Does somebody want to argue anything on the motion to

13  stay?

14          MR. LUMISH:  May I take off my mask, Your Honor?

15          THE COURT:  Sure.

16          MR. LUMISH:  Doug Lumish, Your Honor, Latham and

17  Watkins on behalf of Skyryse.

18      We appreciate your tentative, it was very thorough.  You

19  took on the bulk of our arguments, which we understand where

20  you are coming from.

21      I did want to make a couple of points, if I might?

22          THE COURT:  Sure.

23          MR. LUMISH:  One is on the indictment issue.  Your

24  Honor denied the motion without prejudice.  So first point of

25  clarification, which is, if we were to bring the motion again,

1   should there be an indictment?  I certainly don't want to get

2   in any hot water with the Court.

3          THE COURT:  No.  That would be an event that would

4   be monumentally different than the situation you currently

5   have.

6      Also, we would know if there is an indictment, what the

7   nature of the charges are, et cetera.  So therefore, we would

8   have a better sense if there is going to be a claim of Fifth

9   Amendment, you know, raising the Fifth Amendment insofar as

10  certain discovery and depositions, et cetera, then we could

11  understand it better.

12         MR. LUMISH:  Thank you, Your Honor.

13     That dovetails into the other point I would ask to make,

14  which is, I think we briefed the law, and Your Honor is right

15  that there are certainly law that disfavors, but doesn't bar

16  stays when there hasn't yet been an indictment.

17     What I don't think the papers talk much about, so I'm

18  trying it from a different angle, is why that is the case.

19     What I submit to the Court is the reason that is the case

20  is because Courts and parties don't want to get out in front of

21  the U.S. Attorney and guess at what their indictment might be

22  and be wrong.

23         THE COURT:  Well no, what I have a problem with is

24  that oftentimes what happens is the civil action becomes

25  hostage to the criminal action, and there is no impetus to the

1  criminal action as long as the defendants are willing to waive

2  their right to a speedy trial, there is no impetus necessarily

3  to bring those matters in a speedy fashion.

4      So, therefore, I'm sitting, especially where there are

5  other claims that are involved in the action, and we are

6  sitting there waiting for something to happen in the criminal

7  matter, then it goes on and on and on, et cetera, so that is

8  one reason.

9          MR. LUMISH:  We tried to address that, Your Honor,

10  by asking for a temporary stay.

11          THE COURT:  I don't understand.  What would the

12  temporary stay do?

13      In other words, if I were to stay this matter for 30 days,

14  60 days, 90 days, or 120 days, either the indictment is going

15  to come down, in which case, at that point you can make the

16  request, or the indictment doesn't come down, in which case

17  what am I supposed to do after 120 days and there is no

18  indictment?  Give it another 120 days, et cetera, who knows?

19      The better question, not necessarily better, but more

20  interesting question to my mind at this point in time, if there

21  something, for example, it is because I have denied the request

22  for stay and the matter goes forward, and assuming that there

23  are various items of discovery that a particular individual who

24  has a Fifth Amendment right, unlike a corporation, exercises

25  that Fifth Amendment right.

1        Normally, the downside is that the exercise of the Fifth

2   Amendment can be used as commented on in a civil action.

3        However, if I were to allow the situation where a

4   defendant were to initially raise a Fifth Amendment objection

5   but, you know, because of certain things that would happen

6   later on, I would allow them to withdraw that objection and

7   have further discovery renewed insofar as those areas where the

8   individual raised the Fifth Amendment, would there be any

9   problem with that?

10           MR. LUMISH:  I think the answer to that would be

11   depending on the timing.

12        So if we ended up in a jury trial in a civil action --

13           THE COURT:  Obviously.  I don't think you guys will

14   end up in a jury trial, given that the normal course of the

15   criminal indictment, if it comes down, will come down way

16   before this matter goes in front of a jury, because this matter

17   is somewhat complicated, and so I expect that the discovery

18   period will be -- I won't skint on discovery for you guys, as I

19   normally do, because this case is complicated.

20           MR. LUMISH:  Your Honor, in this scenario, if Your

21   Honor were to do what you just said, you deny the stay, we go

22   forward, one of the individual defendants takes the Fifth, but

23   then the case is stayed post-indictment, and we're able to get

24   discovery after the criminal case is over, then no, I think

25   that would resolve that concern.

1          THE COURT:  In fact, no offense to your clients, but

2  if they are indicted, and that case goes criminally, then all

3  the stuff that would be conducted in discovery, and a lot of

4  that stuff would already be produced.

5          MR. LUMISH:  Much of it has already been produced.

6  I could see, Your Honor, I'm not going to persuade you on this,

7  so what I would rather do is take more of our time for some of

8  the other issues.

9      The individual counsel may have something more to say on

10  the stay.

11          THE COURT:  Let me hear defense counsel for the

12  individual defendant, anything you want to argue?

13          MR. GILBERG:  Briefly, Your Honor as counsel has

14  addressed.

15          THE REPORTER:  Please state your name.

16          THE COURT:  She has forgotten you.

17          MR. GILBERG:  This is Grant Gilberg on behalf of

18  Misook Kim.

19      Just a couple of brief points.  On overlap, I think this

20  case is pretty straightforward.

21          THE COURT:  Not from the tentative, it's not.

22          MR. GILBERG:  In terms of what they are alleging,

23  they are alleging theft of trade secrets, and that is exactly

24  what the U.S. Attorneys Office is investigating.

25      We don't have to really -- this isn't a situation where

**UNITED STATES DISTRICT COURT**

1    Moog brought their lawsuit, and the U.S. Attorney's Office,

2    getting their Google alert, sweeps in and starts investigating.

3              THE COURT:  Let me ask this, normally, it is not

4    that common for the U. S. Attorney's Office to sweep in in any

5    trade secrets case, but is it a situation because the trade

6    secrets involved items that might have some military aspects or

7    some aspects of federal government's involvement?  That is the

8    reason why the U.S. Attorneys are popping up?

9              MR. GILBERG:  I can only speculate that is probably

10   a question for Moog, but I would note that when I was in the

11   U.S. Attorneys Office, these cases were often handled in major

12   fraud.

13        This case is not a major fraud, as it is, in the national

14   security section, so that would be support for Your Honor's

15   thought.

16             THE COURT:  All right.

17             MR. GROSS:  Just so -- that is the point on overlap.

18   This is a case that Moog brought to the U. S. Attorney's

19   Office, and even though there is complexity to the technology,

20   the issue in this case is the theft of trade secrets, and

21   that's what the U.S. Attorney's Office is investigating.  We

22   referenced that in our papers.

23        We have had much communication with the Office on that

24   point, and they continually referred us to Moog's complaint

25   when we had questions about what their investigation is about.

 1          The last point I just wanted to underscore for the Court

 2   is the prejudice to the individual defendants is not only the

 3   invocation of the Fifth Amendment, but it is the financial

 4   considerations that are involved here.

 5          Here, we're dealing with an investigation by the U. S.

 6   Attorney's Office, and the clients are in the middle of a

 7   dispute between two corporations, and they are faced with a

 8   prospect of having to litigate both simultaneously.

 9          And that, for my client, at least, she's unemployed, has

10   been since she's been let go from Skyryse, and that is an

11   incredible burden, and something I think the Court, with all of

12   the other factors, can weigh.

13              THE COURT:  Well, is she going to hire a separate

14   criminal counsel or, and if she doesn't have the financial

15   capability, she could always go with the Public Defender's

16   Office.

17              MR. GILBERG:  Certainly, our hope is that there will

18   not be a need to hire a separate counsel post-indictment

19   because there won't be an indictment, but I'm her counsel in

20   both this matter and with respect to the investigation.

21              THE COURT:  In this case, you are involved anyway.

22              MR. GILBERG:  Absolutely.  But it's the enormity of

23   the costs that are associated with both being in this

24   litigation and dealing with the U.S. Attorney's Office.  I just

25   raise it for the Court's consideration.

**UNITED STATES DISTRICT COURT**

```
1          THE COURT:  You have Latham and Watkins doing most
2   of the work for your side anyway.
3       Don't you find -- won't you be able to rely on their good
4   lawyering?
5          MR. GILBERG:  We are very pleased to be sitting at
6   the table with them, but as the Court will see in the coming
7   weeks, there is a number of issues that are being directed by
8   Moog at our clients only, and we have to take the laboring oar
9   on, and we are trying to be efficient on it, but there is only
10  so much overlap.
11         THE COURT:  Anything else from you?
12         MR. TENLEY:  No.  Thank you, Your Honor.
13         THE COURT:  So my ruling -- tentative ruling on the
14  motion to stay, will be my final ruling on the motion to stay.
15      On the individual defendant's motion to dismiss.
16         MR. GILBERG:  Your Honor, we would submit on the
17  tentative.
18         MR. NAQVI:  Your Honor, Kazim Naqvi from Moog.  We
19  would submit on the tentative as well.  Thank you for the time
20  that went into it.
21         THE COURT:  My pleasure.  If I knew you guys were
22  going to be so short, I would have called your earlier.  I
23  thought you were going to be a lot longer, in which case, I
24  would have called your case earlier.
25      A lot of other ones went a lot longer than I thought they
```

1    would or should.

2         The only one question I had was insofar as the motions to

3    dismiss, even though I ruled against dismissing the sixth count

4    cause of action for conspiracy, generally -- I was thinking

5    about it again this morning -- generally, most of the time

6    conspiracies have a separate cause of action.  So normally what

7    it is is a form of liability; in other words, if you have

8    another basis for, like, interference with a contract or some

9    other tort type of -- like, fraud or something of that sort,

10   you don't separately charge a conspiracy if there is more than

11   a couple of people involved in accomplishing the particular

12   impropriety.  You just say, we bring a cause of action for

13   fraud, and, you know, we include all of these defendants and

14   some of these defendants are included, because they joined in

15   with the particular bad conduct.

16        So, in a sense, you don't really need a civil conspiracy

17   cause of action, and there is case law, at least, in California

18   that basically says that a conspiracy is not a cause of action.

19        I referenced the cases such as *Applied Equipment versus*

20   *Litton*, 7 Cal.4th 503 at pages 510 to 511.  It's a 1994 case.

21        I just throw that out now.  I'm not necessarily going to

22   change my tentative, but it seems to me at some point it might

23   very well be there should not be a separate cause of action for

24   conspiracy, but I leave that up to you guys to resolve later

25   on.  I just throw that out.

**UNITED STATES DISTRICT COURT**

```
 1        So my tentative on the motion to dismiss, the individual

 2   defendant's motion to dismiss, I will make my tentative my

 3   final.

 4        As to the Moog motion to dismiss?

 5            MS. ANDOH:  Your Honor, Rena Andoh for plaintiff

 6   Moog.

 7        We really appreciate Your Honor's tentative, it was

 8   extremely informative.

 9        I think there was probably only one small boulder that I'm

10   going to attempt to roll off the mountain, but other than that

11   I think we're going to rest on the tentative.

12        The one issue that I wanted to discuss with the Court with

13   respect to your tentative has to do with SOW-1, first statement

14   of work.

15        And I'm doing it as a topic, as opposed to a cause of

16   action, because as Your Honor --

17            THE COURT:  Well, let me ask, what language

18   specifically in the tentative are you referring to at this

19   point in time?

20            MS. ANDOH:  Your Honor, I'm looking at page 23 of

21   Your Honor's tentative.

22            THE COURT:  Yes.

23            MS. ANDOH:  It has to do with the dismissal of the

24   fraud claim.  In this, there were four different statements

25   that were plead.
```

1      You found that Statements 1 and 2, should be dismissed as
2  unactionable future statements.
3      And then you found that 3 and 4 should proceed, so this
4  has to do with Statements 3 and 4 in the fraud claim.
5      This specifically has to do with the statement of work.
6  So starting at the top of the page, you write:  In addition,
7  Skyryse argues under the terms of their statement of work, the
8  parties, quote, intended to engage in the multi-phase
9  development initiative, unquote.
10      And in our reply, Moog contends that it never agreed to
11  enter into Phases 2 through 4.
12      You then go to say:  Here, the parties submit whether the
13  SOW obligated Moog to proceed to Phases 2 to 4 in their
14  collaboration.  Both parties can point to language in the SOW
15  that appears to support their positions.
16      Then you say because the SOW is capable of two or more
17  reasonable interpretations, specifically, as to whether or not
18  Moog was obligated to proceed to Phase 2, the SOW is ambiguous
19  and leaves doubt as to the parties' intent.
20      So, Your Honor, we would assert that the SOW is not
21  actually ambiguous and not actually subject to multiple forms
22  of interpretation.
23      If we turn to Exhibit C of the counterclaims, and this is
24  the actual SOW itself, it would be page 2 of the SOW, using the
25  page numbering, so it's actually probably the fourth page.

1    It's Section 4, the program overview.

2         And what it actually says is, Your Honor:  The parties

3    intend to engage in a multi-phase development initiative, but

4    this SOW shall only cover the first phase, and subsequent

5    phases will be mutually agreed by the parties with separate and

6    distinct SOWs.

7         The second, third, and fourth phases are described for

8    informational purposes only, and will be subject to change

9    following completion of the initial phase.

10        So the contract, which the parties don't dispute, was

11   fully incorporated by reference into the counterclaims,

12   expressly says that this is -- this SOW is only for Phase 1.

13        Your Honor, when you found that they said the fraud, third

14   and fourth assertions could move forward, the basis on which,

15   as we understand it, Your Honor found that was the case, was

16   because it was an actionable misrepresentation that they

17   reasonably relied on.

18        What we would assert is on the basis of the Section 4

19   language, that in fact the third and fourth misrepresentations

20   should be dismissed because they are on all fours with the

21   *Babbe* (phonetic) case.

22             THE COURT:  All right.  Let me hear a response from

23   the defense.  What is your response to that?

24             MR. GROSS:  Thank you, Your Honor.  It's a point we

25   were hoping to discuss with you too today for.

1           THE COURT:  Actually hoping?

2           MR. GROSS:  Yeah, we did want to address this part

3    of the tentative ruling on the way the Court addressed the

4    different statements in the fraud claim.

5           Your Honor, the view of the SOW that you just heard from

6    plaintiff's counsel is their view of the contract.  It's their

7    interpretation of it.  We dispute it entirely.

8           There is language in the contract, and Skyryse has

9    summarized it on page 42 of the counterclaims, that is

10   paragraphs 31 and 32 of the counterclaims, that we think stand

11   for the exact opposite of what Moog thinks it stands for.

12          Its statements manifesting and expressing the parties'

13   mutual intent to enter into a long-term multi-phase contract

14   with details about each phase, the objectives of them, the

15   tasks the parties were to perform, and, for sure, they agreed

16   that future phases would be subject to change by mutual

17   agreement, but we think the SOW on its face, absolutely binds

18   the parties to the mutual intent to a long-term commitment.

19          I understand there is a dispute about that, but at this

20   stage, on a Rule 12(b)(6) motion, that dispute needs to be --

21   or the inferences need to be resolved in Skyryse's favor.

22          That is the first point I would like to make about this

23   view of the contract.

24          I think you are right, if there is any ambiguity, it can't

25   be resolved right now.  We frankly think it is not ambiguous

```
 1   and should be interpreted only one way, which is the way I just

 2   described Skyryse viewing it.

 3                   THE COURT:  Let me hear from the plaintiff, any

 4   brief response?

 5                   MS. ANDOH:  Sure, Your Honor.  You keep hearing the

 6   word "intend" and "intent" when Skyryse describes Phases 2

 7   through 4, and that is the problem here, is that it was an

 8   agreement to agree with respect to Phases 2 through 4, and it's

 9   not ambiguous in the contract, if that is the case.

10        Nowhere inside the physical language of the agreement,

11   does it say they are obligated to continue with Phases 2

12   through 4.

13        So our position would be that as a result of that, there

14   could not be an actionable misrepresentation with respect to

15   Phases 2 through 4.

16                   THE COURT:  I will give the defendant 30 seconds to

17   respond.

18                   MR. GROSS:  Thank you, Your Honor.

19        Of course, we disagree.  Exhibit C has within it, and

20   beyond the provision that Ms. Andoh just cited, schedules about

21   all of the requirements Phases 2, 3, and 4, the express

22   manifestation of the parties' mutual intent to enter into a

23   long-term agreement is an agreement.

24        The mutual intent of the parties is what the Court's

25   discern when they are interpreting agreements.  Here, we see it
```

1    expressed their intent to enter into that long term agreement.

2         Again, I understand we have a dispute here, it can't be

3    resolved in a factfinding way in Moog's favor at this stage.

4              THE COURT:  What else does the plaintiff want to

5    argue?

6              MS. ANDOH:  Your Honor, I just note that this

7    particular issue, if the Court chooses to alter its tentative

8    in any way, would also impact the second count, the good faith

9    and fair dealing count.

10             THE COURT:  All right.  I will look at this issue a

11   little bit more.

12        What else does either side want to argue as to the --

13             MS. ANDOH:  That is the only boulder, and I'm

14   sticking to it, Your Honor.

15             THE COURT:  All right.

16             MR. GROSS:  Thank you, Your Honor.  I have two.

17        One, is on this particular topic about the tentative on

18   the fraud ruling, and my colleague, Mr. Zahoory, we broke up

19   the counterclaim in terms of counts.  I will handle a couple of

20   issues on Counts 3 and 4, and Mr. Zahoory has some relating to

21   the interference and unfair competition claims.

22             THE COURT:  All right.

23             MR. GROSS:  On this point about the SOW and the

24   fraud claims that Skyryse brought, the tentative ruling does

25   break the statements into the four categories that Ms. Andoh

1   mentioned.

2       What we would like to spend a moment talking about is how

3   in the tentative, the Court found Moog's reliance on a case

4   called *Roots Ready Made Systems* to be persuasive.

5       It was raised for the first time in the rely brief.  I

6   wanted to spend a moment discussing it.

7       In this context on pages 21 and 22 of the tentative

8   ruling, the Court is referring to what it calls Statements 1

9   and 2.  They are statements relating -- that Moog made relating

10  to its long-term commitment to Skyryse, and its continuation of

11  working on the collaboration the two companies formed.

12      The *Roots Ready Made System* -- excuse me, *Roots Ready Made*

13  *Garments* case, the opinion by Judge Breyer, it did, as the

14  Court noted, find future statements or statements about future

15  intent to be unactionable and not actionable fraudulent claims,

16  but it was a really different situation there.

17      What the Court held in *Roots Ready*, was one, the

18  statements that were unactionable were really more vague than

19  the types of statements that Skyryse has alleged Moog made.

20      The statements were such as this, that the Gap, the

21  company intended to develop a long-term relationship with the

22  company called *Roots*, not that it was already in one and

23  committed to it, it intended to develop one.

24      It would attempt to find a way to continue to do business

25  with Roots.

1      The problem there, Your Honor, was that those sorts of

2  statements were at variance -- at odds with the terms of their

3  written agreements.

4      Judge Breyer makes that point clearly in page Star 5 and

5  Star 6 of the *Roots Ready Made Garments* case.  That citation,

6  by the way, is 2008 Westlaw 239254.  On those pages, Judge

7  Breyer makes clear that --

8              THE COURT:  Are you talking about page 6?

9              MR. GROSS:  Page 5 and 6, as a matter of fact, it's

10  the end of 5 and beginning of 6.

11      The last paragraph of page 5, it begins by describing that

12  the Court needed to reject promissory fraud claims that are

13  based on statements at a variance with the written agreement.

14      Towards the end of that same paragraph, he describes that

15  Roots Ready didn't push back against Gap's request to form

16  written agreements, only with one party, called Cabana, a

17  agreement that expressly contradict it -- the promises made to

18  Roots.

19      The reason I point that out, Your Honor, is because as you

20  can tell from our discussion of the SOW a moment ago from

21  Skyryse's perspective and according to Skyryse's allegations,

22  the parties had already made very clear their intent and

23  commitment to the long-term relationship and the false

24  statements.

25              THE COURT:  It seems to me that both sides are

1    referring to different language -- different language of the

2    provisions.  And, you know, that is the reason why there is

3    obviously a disagreement.

4        But it's not up to this Court at this time to resolve

5    those differences.  The language is what the language is.

6    Maybe at some point in time the Court will have to interpret

7    the language of the contract, but it's not going to do so at

8    the time of motion to dismiss.

9            MR. GROSS:  We think that is the appropriate

10   approach here.

11       The point I wanted to make is that these two statements

12   that the Court did find unactionable were in fact consistent

13   with our view of the agreement and that makes them very

14   different from the Court -- from the statements that Judge

15   Breyer found inactionable in *Roots Ready*.

16           THE COURT:  I'm going hear response from the

17   plaintiff.  He's going to chip away at your boulder.

18           MS. ANDOH:  Yes, Your Honor.

19       Well, again, with respect to this question of ambiguity, I

20   think you can call a contract ambiguous all you want to in

21   oral agreement, but in the end the day, the language of the

22   contract is the language of the contract.  We would appreciate

23   if the Court chooses to take another view of the other two

24   sections that they are referring to that they claim are

25   inconsistent, because in fact they are not.

1           Those would be Sections 5 and 9 of the SOW.

2           As far as Mr. Gross's arguments with respect to *Roots*,

3     obviously, we don't see that there is any incongruity

4     between --

5                 THE COURT:  I will take a look at the statements

6     insofar as this particular aspect is concerned.  I will take

7     another look.

8           Other than that, does anybody else want to argue anything?

9                 MR. GROSS:  I do have another point, Your Honor, if

10    Ms. Andoh has completed.

11                THE COURT:  She's waiting for you.

12                MR. GROSS:  I'm sure.

13                MS. ANDOH:  Your Honor, only punching.

14                THE COURT:  She's aiming, she just needs a brief

15    moment to focus.

16                MR. GROSS:  Your Honor, I would like to address the

17    tentative ruling on the breach of contract claim, and in

18    particular, the Court's ruling about the forum selection clause

19    and its applicability.

20          We understand if the Court is inclined to find the forum

21    selection clause, which is in one of four contracts, it's in

22    the terms and conditions, that it certainly applies to that

23    breach of contract claim for the terms and conditions, and the

24    Court is inclined to dismiss it for that reason.

25          The Court has also indicated it's inclined to find a forum

1    selection clause would also apply to another contract, the 2019

2    NDA.

3        And it may have been, because we didn't clarify in the

4    briefing, but it seems the Court was left with the impression

5    that there is no dispute among the parties that the forum

6    selection clause in the terms and conditions controls how

7    forums should be selected in the event of the breach of the

8    2019 NDA.

9        I'm concerned that if the Court adopts its tentative as a

10   final as to both of those contracts, it would contradict some

11   truly expressed language in the pleadings, which is in both the

12   2019 NDA and the terms and conditions.

13       Here, is what I mean by that, Your Honor.

14       There is no dispute that the terms and conditions

15   incorporate the 2019 NDA, that is not in dispute.

16       The terms and conditions are Exhibit D, the Skyryse's

17   counterclaims, and the relevant provision is Provision 23.  It

18   refers to the 15 March, 2019 NDA, and it says it is --

19           THE COURT:  Let me stop.  You didn't argue this in

20   your briefing, did you?  Let's be blunt.

21           MR. GROSS:  No, Your Honor.  This is not the

22   briefing, which I why I would like to spend a minute on it now.

23           THE COURT:  Why would I entertain something that is

24   not argued in the briefing?

25       You know, that's a given, why would I bother to do that?

1          MR. GROSS:  We're happy to raise it with the amended

2   pleading, Your Honor, if you don't want to hear about it today.

3          THE COURT:  Okay.  I'm not going to preclude you

4   from raising it later.  I'm not going to entertain it now,

5   again, even if I decide -- then I have to look through all of

6   this additional stuff, I have to do some independent research,

7   which I don't want to do anymore, I have done enough in this

8   case.

9       So I will allow you to raise it later on, because you are

10  not precluded from doing so later on.

11         MR. GROSS:  Fair enough.

12         THE COURT:  What else, then?  Anything?

13         MR. ZAHOORY:  Yes, please, Your Honor.

14      I will actually not raise one argument, just given your

15  comments right now, but I will try to nudge one of our tortious

16  interference claims over the edge.

17      Really, what I wanted to focus on, Your Honor, is with the

18  intentional interference with contract claims.

19         THE COURT:  What page of the tentative are you

20  arguing about?

21         MR. ZAHOORY:  I am at -- so this is pages 30 and 31

22  of your tentative, Your Honor.

23         THE COURT:  Okay.

24         MR. ZAHOORY:  So, thank you for your guidance in the

25  tentative ruling.

1      I wanted to just respond to the paragraphs about alleging

2   whether Moog was aware of the contracts at issue with which we

3   believe they were interfering, and I think the key thing here

4   and maybe your response will help us better understand the

5   import of your ruling and we could use that on amendment, is

6   California law really focuses not on the terms of the contract,

7   but that there is a contractual relationship that exists,

8   right?

9      I would point the Court to the *PG & E* case by the

10   California Supreme Court, which mentions that it's the

11   contractual relationship, not the terms of the contract that is

12   protected from interference.

13      Here, if we look to Paragraph 87 of our complaint, most

14   topic executives identify Robinson Helicopters as our partner,

15   and that they describe a scheme to exert pressure on us by

16   contacting our partner.

17      So we don't think there is any doubt they were aware that

18   Robinson is our partner, and whether or not they are aware of

19   the specific contractual terms underlying a relationship with

20   Robinson, we think is not the relevant point as opposed to the

21   relationship itself.

22      We think this has practical considerations to keep in

23   mind, too, because many times parties are not aware of the

24   specific terms of the underlying contracts between two other

25   third parties, which is why, if that was the rule, it would be

```
 1    almost impossible to bring these types of claims.
 2         But in this circumstance, where we know that their own
 3    quoted statements show that they were aware of this
 4    partnership, we think that is enough, at least, under
 5    California law.
 6         So I wanted to point that out.  If you have any responses
 7    I would be happy to take it.
 8         There is one other piece to your tentative on that
 9    counterclaim, which I would like to respond to as well.
10              THE COURT:  Let me just ask, on what basis are you
11    saying that the -- on what basis is the defendant arguing that
12    Moog was specifically aware of that contractual relationship
13    between your client and Robinson Helicopter?
14              MR. ZAHOORY:  We would point, Your Honor, to
15    Paragraph 87 of our counterclaims.  This is a quote directly
16    from one of Moog's top executives to the company's CEO, and it
17    says:  We are already working to leverage relationships with
18    Robinson Helicopter, who is one of Skyryse's partners.
19         In addition to that, we also --
20              THE COURT:  Let me stop you.  What is the response
21    from the plaintiff on that?
22              MS. ANDOH:  Your Honor, again, I mean, all of their
23    arguments hinge around this one statement that we were
24    apparently aware of, at least according to the pleading that we
25    were a partner of Robinson.  That doesn't tell us anything at
```

1   all about what that partner -- what the parameters of that

2   partnership were, what the terms of any agreements would be.

3        You know, it's a little bit like shadowboxing.  You know,

4   at the end of the day, I think the bottom line for us is that

5   we believe Your Honor got it right in the tentative with

6   respect to the lack of identification of a specific

7   relationship that we intended to interfere in.

8            THE COURT:  Let me ask, if my recollection serves

9   me, did I dismiss this one with prejudice or something like

10  that?

11       I gave leave to amend, didn't I?

12       In other words, insofar as I think -- in other words, at

13  one point in time you said on the basis of information and

14  belief, but apparently, you are basing it on something else

15  other than information and belief.  You are basing it at least

16  on that comment.

17       Let me just ask, even though Robinson Helicopter may be a

18  partner for some aspects, you have to show why the conduct of

19  the plaintiff would have given rise to some sort of

20  interference with that partnership in some way, shape, or form?

21           MR. ZAHOORY:  Absolutely, Your Honor.  I think the

22  cases we cite in briefing recognize that when a big player in

23  the industry, like Moog, reaches out to a partner like

24  Robinson, that in and of itself inhibits our quiet enjoyment of

25  our relationship with Robinson, right, it's hard for us to be

1  able to allege that because this is the communications they

2  have had with Robinson, right?  That is a secret to us that we

3  have only discovered in discovery as part of the information

4  they provided us to date.

5      We are eager to --

6          THE COURT:  Let me put it this way, I will allow you

7  to amend it.  I'm certainly sure that you are going to throw in

8  a lot more.

9      What else?

10         MR. ZAHOORY:  Your Honor, we going to take this

11 under submission.  We appreciate your feedback.

12         THE COURT:  I will take this matter under

13 submission.  I will indicate whether or not I'm going to change

14 my tentative, and if so, at what point.

15     All right.  Let me ask, at this stage do we have something

16 else scheduled?

17         MS. ANDOH:  We do, Your Honor.  We have our 26(f)

18 scheduled for a week from today.

19         THE COURT:  How exciting.

20     Hopefully, I will get something out one way or the other

21 before then.

22     Everybody, have a very nice day.

23          (The proceedings concluded at 11:41 p.m.)

24                    *  *  *

25

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )

          I, TERRI A. HOURIGAN, Federal Official Realtime
Court Reporter, in and for the United States District Court for
the Central District of California, do hereby certify that
pursuant to Section 753, Title 28, United States Code that the
foregoing is a true and correct transcript of the
stenographically reported proceedings held in the
above-entitled matter and that the transcript page format is in
conformance with the regulations of the judicial conference of
the United States.


Date:  April 18, 2023



                         /s/ TERRI A. HOURIGAN
              _____
                    TERRI A. HOURIGAN, CSR NO. 3838, CCRR
                       Federal Official Court Reporter

**/**

**/#-D** [1] - 6:6
**/#12KR50EUBD** [1] - 12:24
**/#3WU8** [1] - 4:4
**/*FR** [1] - 17:2
**/-FRT** [1] - 18:8
**/-P** [5] - 3:11, 5:6, 8:12, 8:13, 14:23
**/-PLT** [4] - 4:15, 5:22, 6:6, 21:12
**/-RBGTS** [1] - 5:4
**/AB** [1] - 23:20
**/ABG** [1] - 3:18
**/ABL** [1] - 18:9
**/AOE** [1] - 9:5
**/AOEUTSZ** [1] - 14:1
**/EBGS** [1] - 21:19
**/ELTS** [1] - 23:14
**/EPL** [2] - 5:3, 5:4
**/HEUBTS** [1] - 23:22
**/HR-PBT** [1] - 16:16
**/HRAE** [1] - 7:16
**/HRAO** [1] - 23:20
**/HREU** [1] - 23:16
**/KAEUFRP** [1] - 15:25
**/KAFPLT** [1] - 21:12
**/KAL** [1] - 10:20
**/KAOEU** [1] - 14:17
**/KOUPBLT** [1] - 15:16
**/KWAOET** [1] - 23:22
**/KWO** [1] - 16:24
**/OPL** [1] - 14:6
**/ORBGS** [1] - 20:18
**/ORPL** [1] - 10:9
**/PAEUPBLGSZ** [1] - 21:4
**/PARB** [1] - 22:20
**/PE** [1] - 5:4
**/PEU** [1] - 5:3
**/PHAO** [1] - 9:20
**/PHEUPBD** [1] - 21:11
**/PHOEFPLT** [1] - 19:6
**/PHULT** [1] - 12:14
**/PWAEUBG** [1] - 13:12
**/PWAU** [1] - 7:18
**/PWAUDZ** [1] - 22:2
**/PWAUPBLG** [1] - 20:11
**/PWOERG** [1] - 9:14
**/PWRAOEFR** [1] - 19:5
**/PWRAOEUR** [4] -

16:14, 17:4, 17:7, 18:9
**/RAOEUSZ** [1] - 14:10
**/REU** [2] - 21:19, 21:25
**/REUL** [1] - 21:25
**/s** [1] - 25:19
**/SAER** [1] - 5:12
**/SEBG** [1] - 21:19
**/SHA** [1] - 20:24
**/SK-RBGS** [1] - 11:14
**/SKAOEUZ** [1] - 14:14
**/SKEUPBT** [1] - 6:16
**/SKRAOEUZs** [1] - 14:17
**/SKWRAOE** [1] - 8:6
**/SKWROR** [1] - 7:24
**/SPE** [3] - 21:23, 22:2, 23:8
**/SPEly** [4] - 11:15, 12:1, 12:10, 22:14
**/SPW-PBD** [1] - 14:16
**/SPWERPT** [1] - 15:9
**/SPWREFRPTed** [1] - 14:13
**/SRAPBT** [1] - 21:25
**/SREFRGT** [1] - 8:7
**/SRUZ** [1] - 4:3
**/STKAORBGS** [1] - 5:12
**/STKERPTing** [1] - 15:8
**/STKPERPLS** [1] - 20:1
**/STKPHR-FRPBLTS** [1] - 24:2
**/STKPWHROEFRPBLGTS** [1] - 20:14
**/STKREUFPGT** [1] - 12:23
**/STP** [1] - 10:12
**/STPHR-FRPBLTS** [1] - 3:22
**/TA** [1] - 11:23
**/TAEUGSs** [1] - 12:10
**/TAOEUFRth** [1] - 8:13
**/TAORBGS** [1] - 22:2
**/TAUFP** [1] - 21:19
**/TEBTed** [1] - 21:17
**/TEPT** [1] - 7:10
**/TER** [1] - 23:16
**/TERPLT** [1] - 12:10

**/TES** [1] - 5:3
**/TEUFR** [1] - 7:10
**/TEUFRS** [2] - 14:4, 21:19
**/TEUGS** [1] - 15:25
**/TH** [1] - 7:14
**/TH-RBGS** [1] - 16:20
**/THAEUPBG** [1] - 14:13
**/THAFR** [1] - 17:14
**/THAPBL** [1] - 11:8
**/THARBGS** [1] - 5:21
**/THARBGSs** [1] - 13:24
**/THEPBLG** [1] - 4:2
**/THOER** [1] - 21:23
**/THOR** [1] - 10:8
**/THRAPBLG** [1] - 9:8
**/TKAOEUPLTed** [1] - 6:25
**/TKEFPBTS** [1] - 14:25
**/TKEUPBT** [1] - 18:18
**/TKPAEUZs** [1] - 14:21
**/TKPROES** [1] - 17:9
**/TKPWAOU** [1] - 15:13
**/TKPWRAL** [1] - 3:14
**/TOEBG** [1] - 3:16
**/TOZ** [1] - 15:15
**/TPAEUSZs** [1] - 15:5
**/TPAOEUFR** [2] - 17:5, 18:19
**/TPAUR** [1] - 15:25
**/TPERS** [1] - 15:25
**/TPH-FRPLT** [1] - 20:2
**/TPHALly** [2] - 6:17, 10:8
**/TPHRA*EU** [1] - 12:7
**/TPOE** [1] - 14:21
**/TPOEUFRth** [1] - 6:2
**/TRAOEUFL** [1] - 6:9
**/TRAUD** [1] - 7:24
**/TRAUDZ** [1] - 7:25
**/TUS** [1] - 5:5
**/UFP** [1] - 4:5
**/URBGS** [1] - 13:15
**/W-P** [2] - 9:3, 10:16
**/WAUT** [2] - 4:2, 9:8
**/WHARBGS** [1] - 22:22
**/WUDZ** [3] - 12:11,

16:18, 21:8

**1**

**1** [4] - 11:22, 13:4, 16:10, 19:11
**10112** [1] - 2:9
**11:41** [1] - 24:18
**12(b)(6** [1] - 14:9
**120** [2] - 5:16, 5:17
**12275** [1] - 2:12
**13** [2] - 1:17, 3:1
**140** [1] - 2:17
**15** [1] - 20:5
**18** [1] - 25:16
**1994-case** [1] - 10:21

**2**

**2** [7] - 11:22, 12:11, 12:16, 14:18, 14:23, 15:5, 16:10
**2,008** [1] - 17:6
**200** [1] - 2:12
**2019** [5] - 19:16, 19:20, 19:24, 20:2, 20:5
**2023** [3] - 1:17, 3:1, 25:16
**21** [1] - 16:9
**213** [1] - 1:25
**22** [1] - 16:9
**22-9094** [1] - 1:8
**23** [2] - 11:17, 20:4
**234** [1] - 12:6
**239254** [1] - 17:6
**24** [1] - 12:7
**26F** [1] - 24:12
**28** [1] - 25:9

**3**

**3** [4] - 11:23, 11:24, 15:5, 15:24
**30** [3] - 2:8, 14:25, 21:4
**31** [2] - 13:24, 21:5
**32** [1] - 13:24
**333** [1] - 2:5
**350** [1] - 1:24
**3838** [2] - 1:23, 25:20

**4**

**4** [9] - 11:24, 12:19, 13:9, 14:18, 14:24, 15:5, 15:24, 19:11
**42** [1] - 13:24
**4311** [1] - 1:24
**43rd** [1] - 2:5

16:18, 21:8

**1**

**1** [4] - 11:22, 13:4, 16:10, 19:11
**10112** [1] - 2:9
**11:41** [1] - 24:18
**12(b)(6** [1] - 14:9
**120** [2] - 5:16, 5:17
**12275** [1] - 2:12
**13** [2] - 1:17, 3:1
**140** [1] - 2:17
**15** [1] - 20:5
**18** [1] - 25:16
**1994-case** [1] - 10:21

**5**

**5** [2] - 17:9, 17:10
**503** [1] - 10:20
**510** [1] - 10:21
**511** [1] - 10:21

**6**

**6** [2] - 17:8, 17:9
**60** [1] - 5:13

**7**

**753** [1] - 25:9

**8**

**87** [2] - 21:18, 22:16
**894-2849** [1] - 1:25
**8:30** [2] - 1:18, 3:2

**9**

**90,120** [1] - 5:13
**90012** [1] - 1:24
**90071** [1] - 2:6
**92130** [1] - 2:12
**94** [1] - 9:5
**94025** [1] - 2:18
**94s** [1] - 11:6

**A**

**A.M** [2] - 1:18, 3:2
**able** [3] - 6:21, 9:10, 23:23
**above-entitled** [1] - 25:12
**absolutely** [2] - 9:5, 14:7
**accident** [1] - 6:21
**accomplishing** [1] - 10:13
**according** [2] - 17:20, 23:1
**action** [14] - 5:2, 5:3, 5:7, 5:25, 6:10, 10:6, 10:8, 10:14, 10:17, 10:19, 10:24, 11:13, 14:23
**actionable** [3] - 13:8, 16:16, 16:18
**active** [1] - 21:7
**actual** [1] - 12:16
**addition** [1] - 12:2, 22:20
**additional** [1] - 20:16
**address** [3] - 5:10, 13:17, 19:7

**UNITED STATES DISTRICT COURT**

addressed [1] - 13:18
adds [1] - 19:21
adopts [1] - 19:21
age [1] - 20:25
ago [1] - 17:19
agree [1] - 14:18
agreed [2] - 12:6, 14:5
agreement [9] - 14:6, 14:18, 14:20, 15:6, 15:7, 15:9, 17:13, 18:8, 18:15
agreements [6] - 15:8, 17:3, 17:16, 17:17, 18:16, 23:4
aiming [1] - 19:5
allegations [1] - 17:20
allege [1] - 23:23
alleged [1] - 16:20
alleging [2] - 7:11, 21:8
Allen [1] - 3:16
allow [4] - 6:1, 6:4, 20:18, 24:2
almost [1] - 22:4
alter [1] - 15:15
ambiguity [2] - 14:12, 18:14
ambiguous [4] - 12:12, 12:14, 14:13, 14:19
amend [2] - 23:11, 24:3
amended [1] - 20:13
amendment [3] - 5:25, 6:2, 8:13
Amendment [2] - 4:14, 5:23
AND [1] - 1:16
anded [1] - 6:15
ANDERSON [3] - 2:11, 3:9, 3:22
anding [1] - 14:1
ANDOH [11] - 2:7, 3:11, 11:5, 11:17, 11:20, 14:16, 15:14, 15:19, 18:13, 22:24, 24:12
ANGELES [4] - 1:18, 1:24, 3:1, 25:3
Angeles [1] - 2:6
angle [1] - 4:22
answer [1] - 6:8
anyway [2] - 9:4, 9:9
appearances [1] - 3:7
APPEARANCES [1] - 2:1

applicability [1] - 19:10
applied [1] - 10:19
applies [1] - 19:12
apply [1] - 19:15
appreciate [4] - 4:3, 11:5, 18:17, 24:6
APRIL [2] - 1:17, 3:1
April [1] - 25:16
arcs [1] - 6:25
areas [1] - 6:5
argue [3] - 7:7, 15:18, 20:6
argued [1] - 20:10
argues [1] - 12:3
arguing [4] - 3:24, 18:25, 21:3, 22:13
argument [2] - 18:15, 20:22
arguments [4] - 4:4, 18:20, 20:23, 22:25
ARMAN [1] - 2:15
aspect [1] - 18:23
aspects [3] - 7:19, 23:17
assert [2] - 12:13, 13:9
assertions [1] - 13:6
associated [1] - 9:6
assuming [1] - 5:21
ASW [1] - 12:7
attempt [1] - 11:7
Attorney [3] - 2:5, 2:8, 2:11
Attorney's [3] - 7:17, 8:4, 8:15
attorneys [5] - 4:24, 7:12, 7:21, 7:23, 9:7
Attorneys [1] - 2:17
auto [1] - 12:5
aware [7] - 21:8, 21:22, 21:23, 22:2, 22:7, 22:14, 23:1

## B

backs [1] - 5:2
ban [1] - 17:16
bar [1] - 4:20
base [1] - 23:14
based [1] - 17:12
basing [1] - 23:15
basis [6] - 10:9, 13:6, 13:9, 22:12, 22:13, 23:13
beginning [1] - 17:10
begins [1] - 17:10
behalf [1] - 4:2
belief [2] - 23:13, 23:15

better [4] - 4:13, 4:16, 5:17, 21:10
between [4] - 8:16, 18:21, 22:3, 22:14
beyond [1] - 15:3
big [1] - 23:20
binds [1] - 14:7
bit [2] - 15:17, 23:5
blunt [1] - 20:7
bottom [1] - 23:6
boulder [3] - 11:7, 15:19, 18:12
boxing [1] - 23:5
breach [3] - 19:8, 19:13, 19:20
break [1] - 16:3
brief [3] - 7:8, 14:15, 16:7
briefed [1] - 4:18
briefing [4] - 19:17, 20:7, 20:8, 20:11
bring [3] - 3:14, 4:7, 5:5, 10:13, 22:5
broke [1] - 15:23
brought [3] - 7:13, 8:4, 16:2
bulk [1] - 4:4
burden [1] - 8:21
business [1] - 16:25
BY [4] - 2:4, 2:7, 2:11, 2:15

## C

CALIFORNIA [5] - 1:2, 1:18, 1:24, 3:1, 25:4
California [7] - 2:6, 2:12, 2:18, 10:18, 21:15, 22:8, 25:8
Camino [1] - 2:12
capability [1] - 8:25
capable [1] - 12:10
Case [1] - 1:8
case [22] - 4:22, 4:23, 5:15, 6:17, 6:22, 7:9, 7:17, 8:4, 8:6, 9:4, 9:6, 10:2, 10:17, 10:19, 13:7, 13:12, 14:19, 16:6, 16:14, 17:5, 20:18, 21:14
casings [1] - 6:25
categories [1] - 16:4
CCRR [1] - 1:23, 25:20
Central [1] - 25:8
CENTRAL [1] - 1:2
CEO [1] - 22:18
certain [2] - 4:15, 6:3
certainly [5] - 4:8,

4:19, 9:1, 19:12, 24:3
CERTIFICATE [1] - 25:1
certify [1] - 25:8
cetera [3] - 3:20, 4:13, 5:9
change [4] - 10:23, 12:25, 14:5, 24:8
charge [1] - 10:11
charges [1] - 4:12
check [1] - 9:23
chip [1] - 18:12
choose [2] - 15:15
circumstance [1] - 22:6
citation [1] - 17:6
cited [1] - 15:4
civil [4] - 5:2, 5:25, 6:9, 10:17
claim [5] - 4:14, 11:21, 11:25, 19:8, 19:13
claims [4] - 5:6, 12:16, 13:3, 13:24, 13:25, 15:25, 16:2, 16:16, 17:11, 20:4, 20:24, 21:1, 22:5, 22:17
clarification [1] - 4:7
clarify [1] - 19:17
clause [3] - 19:9, 19:11, 19:19
clear [2] - 17:7, 17:21
clearly [1] - 17:4
client [2] - 8:19, 22:15
clients [3] - 6:24, 8:16, 9:14
Code [1] - 25:9
collaboration [2] - 12:8, 16:12
colleague [1] - 15:23
coming [3] - 4:5, 9:12, 24:6
comment [2] - 5:25, 23:15
commit [2] - 14:8, 16:23
commitment [2] - 16:11, 17:21
common [1] - 7:16
communication [1] - 8:8
communications [1] - 23:24
companies [1] - 16:12
company [3] - 16:21, 16:22, 22:18

complaint [2] - 8:10, 21:18
complete [1] - 19:2
completion [1] - 13:1
complex [1] - 8:5
complicate [1] - 6:15
complicated [1] - 6:17
con [1] - 18:21
concern [1] - 6:23
concerned [2] - 18:23, 19:21
concluded [1] - 24:18
conditions [6] - 19:12, 19:13, 19:19, 19:24, 20:1, 20:3
conduct [1] - 23:17
conference [1] - 25:13
conformance [1] - 25:13
considerations [2] - 8:14, 22:1
consistent [2] - 18:7, 18:18
conspiracy [6] - 10:6, 10:7, 10:12, 10:17, 10:18, 10:25
contacting [1] - 21:21
contends [1] - 12:5
context [1] - 16:8
continually [1] - 8:9
continuation [1] - 16:12
continue [3] - 10:20, 14:21, 16:24
continues [1] - 9:9
contract [16] - 10:10, 13:2, 13:21, 13:23, 14:3, 14:11, 14:19, 18:14, 18:16, 18:17, 19:8, 19:13, 19:16, 21:1, 21:13, 21:16
contracts [4] - 19:11, 19:22, 21:9, 22:3
contractual [4] - 21:13, 21:16, 21:23, 22:14
contradict [2] - 17:17, 19:22
controls [1] - 19:19
cop [1] - 21:20, 23:16
corporation [1] - 5:23
corporations [1] - 8:17
correct [1] - 25:10

**COUNSEL** [1] - 2:1
**counsel** [5] - 3:8, 7:4, 8:24, 9:3, 13:21
**count** [1] - 10:5
**counter** [6] - 12:15, 13:3, 13:24, 13:25, 20:3, 22:17
**counterclaim** [2] - 15:23, 22:11
**counts** [1] - 15:24
**Counts** [1] - 15:24
**COUNTY** [1] - 25:3
**couple** [3] - 7:8, 10:12, 15:24
**course** [2] - 6:12, 15:2
**Court** [25] - 4:9, 4:23, 8:12, 8:21, 9:12, 11:11, 13:18, 16:5, 16:9, 16:14, 16:17, 17:11, 18:1, 18:3, 18:17, 19:10, 19:14, 19:17, 19:21, 21:14, 21:15, 25:7, 25:20
**COURT** [48] - 1:1, 1:23, 3:5, 3:7, 3:17, 3:19, 4:1, 4:10, 5:1, 5:12, 6:11, 6:24, 7:6, 7:10, 7:16, 8:2, 8:23, 9:4, 9:8, 9:16, 9:17, 9:19, 10:1, 11:14, 11:19, 13:13, 13:17, 14:15, 14:25, 15:12, 15:17, 17:8, 17:23, 18:11, 18:22, 19:3, 19:5, 20:6, 20:10, 20:21, 21:2, 22:12, 22:22, 23:10, 24:7, 24:10, 24:14, 24:15
**Court's** [4] - 4:23, 9:7, 15:7, 19:9
**cover** [1] - 12:22
**criminal** [5] - 5:2, 5:3, 5:8, 6:12, 8:24
**criminally** [1] - 6:25
**CSR** [2] - 1:23, 25:20
**CV** [1] - 1:8

**D**

**DA** [1] - 20:2
**Date** [1] - 25:16
**date** [1] - 24:1
**days** [3] - 5:13, 5:16, 5:17
**dealing** [3] - 8:15, 9:6, 15:16
**debts** [2] - 5:4, 10:15
**decide** [1] - 20:16
**decision** [1] - 17:19

**defendant** [3] - 3:13, 6:2, 22:13
**DEFENDANT** [1] - 2:14
**Defendants** [1] - 1:11
**defendants** [4] - 6:20, 8:12, 9:21, 10:15
**defenders** [1] - 8:25
**defense** [4] - 7:6, 11:3, 13:14
**denied** [4] - 4:6, 5:20
**deny** [1] - 6:19
**department** [1] - 21:7
**depositions** [1] - 4:15
**describe** [1] - 21:20
**describes** [1] - 17:14
**describing** [1] - 17:11
**details** [1] - 14:3
**develop** [2] - 16:21, 16:23
**development** [2] - 12:4, 12:21
**Diego** [1] - 2:12
**differences** [1] - 18:2
**different** [8] - 4:11, 4:22, 11:21, 13:19, 16:17, 17:24, 18:8
**directed** [1] - 9:13
**directly** [1] - 22:17
**disagree** [1] - 15:3
**disagreement** [1] - 18:1
**discern** [1] - 15:8
**discovered** [1] - 23:25
**discovery** [7] - 4:15, 5:21, 6:5, 6:15, 6:16, 6:21, 23:25
**discuss** [2] - 11:10, 13:16
**discussed** [1] - 3:23
**discussing** [1] - 16:8
**disfavors** [1] - 4:19
**dismiss** [3] - 3:20, 9:21, 10:5, 11:2, 11:3, 11:4, 13:11, 18:5, 19:14, 23:11
**DISMISS** [1] - 1:16
**dismissal** [1] - 11:20
**dismissed** [1] - 11:22
**dismissing** [1] - 10:5
**dispute** [9] - 8:16, 13:2, 13:22, 14:8, 14:9, 15:10, 19:18,

20:1, 20:2
**DISTRICT** [3] - 1:1, 1:2, 1:3
**District** [2] - 25:7, 25:8
**DIVISION** [1] - 1:2
**done** [1] - 20:17
**door** [1] - 20:21
**doubt** [1] - 21:22
**dough** [3] - 15:4, 16:4, 19:1
**DOUGLAS** [1] - 2:16
**dovetails** [1] - 4:17
**down** [6] - 5:14, 5:15, 5:24, 6:13, 12:12
**Drive** [1] - 2:17

**E**

**eager** [1] - 24:1
**either** [2] - 5:13, 15:18
**El** [1] - 2:12
**employer** [1] - 23:21
**end** [8] - 4:14, 5:22, 6:6, 6:11, 17:9, 17:14, 19:20, 23:6
**ended** [1] - 6:9
**engage** [2] - 12:4, 12:21
**enjoyment** [1] - 23:22
**enter** [4] - 12:6, 14:2, 15:6, 15:25
**entertain** [2] - 20:10, 20:15
**entirely** [1] - 13:22
**entitled** [1] - 25:12
**equipment** [1] - 10:20
**especially** [1] - 5:6
**et** [4] - 1:10, 3:20, 4:13, 5:9
**event** [1] - 4:10
**exact** [1] - 13:25
**exactly** [1] - 7:12
**example** [1] - 5:19
**exciting** [1] - 24:14
**executives** [1] - 22:18
**exercise** [1] - 5:24
**exercises** [1] - 5:23
**exert** [1] - 21:20
**Exhibit** [1] - 20:3
**exhibit** [2] - 12:15, 15:3
**exists** [1] - 21:13
**expect** [1] - 6:15
**express** [1] - 15:5

**expressed** [2] - 15:9, 19:23
**expressing** [1] - 14:2
**expressly** [2] - 13:3, 17:17
**extremely** [1] - 11:6

**F**

**face** [1] - 14:6
**faced** [1] - 8:18
**fact** [7] - 5:15, 6:24, 13:10, 15:11, 17:9, 18:7, 18:18
**factors** [1] - 8:22
**fades** [1] - 12:4
**fair** [2] - 15:16, 20:20
**faith** [1] - 15:16
**false** [1] - 17:22
**far** [1] - 18:19
**fashion** [1] - 5:5
**favorable** [1] - 15:11
**federal** [1] - 7:20
**Federal** [2] - 25:6, 25:20
**FEDERAL** [1] - 1:23
**Fifth** [2] - 4:14, 5:23
**fifth** [4] - 4:14, 5:22, 5:24, 6:6
**final** [3] - 9:20, 11:3, 19:22
**financial** [2] - 8:14, 8:24
**First** [1] - 1:24
**first** [6] - 3:8, 4:6, 11:12, 12:22, 14:11, 16:7
**five** [2] - 6:20, 17:9
**flawed** [1] - 16:16
**Floor** [1] - 2:5
**focus** [1] - 19:6
**focuses** [1] - 21:12
**following** [1] - 13:1
**FOR** [3] - 1:16, 2:3, 2:14
**force** [1] - 14:17
**foregoing** [1] - 25:10
**form** [6] - 10:9, 17:15, 19:9, 19:11, 19:15
**format** [1] - 25:12
**formed** [1] - 16:13
**forms** [1] - 17:9
**forth** [1] - 12:18
**forum** [2] - 19:19, 19:20
**forward** [3] - 5:20, 6:20, 13:6
**four** [3] - 11:21, 16:4, 21:6

**fours** [1] - 13:11
**fourth** [4] - 10:20, 12:24, 13:6, 13:10
**fraud** [6] - 10:11, 10:14, 11:20, 11:25, 13:19, 15:22, 16:2, 17:11
**frayed** [1] - 13:5
**Friday** [1] - 4:5
**front** [2] - 4:24, 6:14
**fully** [1] - 13:2
**future** [4] - 11:23, 14:5, 16:15

**G**

**GABRIEL** [1] - 2:16
**Gap** [1] - 16:21
**gaps** [1] - 17:15
**garments** [2] - 16:13, 17:5
**generally** [2] - 10:6, 10:7
**GEORGE** [1] - 1:3
**given** [4] - 6:12, 20:11, 20:23, 23:18
**Google** [1] - 7:14
**government's** [1] - 7:20
**greeted** [1] - 12:23
**grew** [1] - 18:21
**GROSS** [22] - 2:16, 3:13, 7:8, 7:11, 7:22, 8:3, 9:1, 9:5, 9:11, 9:22, 13:15, 13:20, 15:2, 15:21, 16:1, 18:6, 19:1, 19:4, 19:7, 20:8, 20:13, 20:20
**gross** [1] - 17:8
**grosses** [1] - 18:20
**guess** [1] - 4:25
**guidance** [1] - 21:6
**guys** [4] - 6:11, 6:16, 10:1, 10:25

**H**

**HAMPTON** [3] - 2:4, 2:7, 2:10
**handle** [1] - 15:24
**handled** [2] - 7:24
**happy** [2] - 20:13, 22:9
**hard** [1] - 23:23
**haul** [1] - 23:16
**hear** [2] - 13:13, 18:11
**heard** [1] - 13:21
**HEARING** [1] - 1:17
**hearing** [1] - 14:16

**held** [2] - 16:17, 25:11
**helicopter** [2] - 22:15, 22:19
**hell** [1] - 21:19
**help** [1] - 21:10
**hereby** [1] - 25:8
**higher** [2] - 8:23, 9:2
**hinge** [1] - 22:25
**Honor** [27] - 4:6, 4:19, 5:10, 6:18, 6:19, 7:3, 8:1, 9:18, 9:22, 11:13, 11:17, 12:13, 12:20, 13:5, 13:20, 15:2, 15:20, 15:21, 17:1, 17:18, 19:25, 20:8, 20:22, 21:5, 22:24, 23:7, 24:5
**HONORABLE** [1] - 1:3
**hope** [1] - 9:1
**Hope** [1] - 2:5
**hopefully** [1] - 24:15
**hoping** [2] - 13:16, 13:17
**hostage** [1] - 5:2
**hot** [1] - 4:9
**HOURIGAN** [4] - 1:23, 25:6, 25:19, 25:20

**I**

**identification** [1] - 23:8
**identify** [1] - 21:19
**ling** [1] - 18:14
**import** [1] - 21:11
**impossible** [1] - 22:5
**impression** [1] - 19:18
**impropriety** [1] - 10:13
**inaction** [1] - 18:9
**INC** [2] - 1:5, 1:10
**inclined** [3] - 19:10, 19:14, 19:15
**include** [1] - 10:14
**included** [1] - 10:15
**incorporate** [1] - 20:2
**incorporated** [1] - 13:3
**incredible** [1] - 8:21
**indicate** [1] - 24:8
**indicated** [1] - 19:15
**indictment** [10] - 4:5, 4:8, 4:12, 4:20, 4:25, 5:14, 5:16, 6:13, 6:21, 9:2

**individual** [7] - 5:22, 6:6, 6:20, 7:4, 8:12, 9:21, 11:2
**individuals** [1] - 7:4
**industry** [1] - 23:21
**inferences** [1] - 14:10
**information** [3] - 23:13, 23:14, 24:1
**informational** [1] - 12:25
**informative** [1] - 11:6
**initial** [1] - 13:1
**initiative** [2] - 12:5, 12:21
**insofar** [5] - 4:15, 6:5, 10:4, 18:23, 23:12
**intend** [1] - 12:20
**intended** [4] - 12:4, 16:21, 16:23, 23:9
**intent** [8] - 12:12, 14:2, 14:7, 14:17, 15:6, 15:7, 16:15, 17:21
**intentional** [1] - 20:25
**interesting** [1] - 5:18
**interfere** [2] - 20:25, 23:9
**interference** [4] - 10:10, 20:24, 21:17, 23:19
**interfering** [1] - 21:9
**interpret** [1] - 18:4
**interpretation** [2] - 12:15, 13:22
**investigate** [1] - 9:3
**investigates** [1] - 8:15
**investigating** [2] - 7:13, 7:15
**investigation** [1] - 8:11
**involved** [5] - 5:7, 7:18, 8:14, 9:4, 10:12
**involvement** [1] - 7:20
**issue** [6] - 4:6, 8:6, 11:10, 15:14, 15:17, 21:9
**issued** [1] - 3:20
**issues** [2] - 9:13, 15:24
**items** [2] - 5:21, 7:19
**itself** [3] - 12:16, 21:25, 23:22
**itted** [2] - 12:7, 13:23
**itting** [1] - 23:14

**J**

**joined** [1] - 10:16
**Joseph** [1] - 3:17
**judge** [4] - 16:14, 17:4, 17:7, 18:9
**JUDGE** [1] - 1:3
**judicial** [1] - 25:13
**jury** [3] - 6:9, 6:12, 6:14

**K**

**Kay** [1] - 20:14
**KAZIM** [1] - 2:4
**keep** [2] - 14:16, 22:1
**Ken** [1] - 13:12
**key** [1] - 21:10
**Kim** [1] - 3:15
**knee** [1] - 3:18
**knows** [1] - 5:17

**L**

**lab** [1] - 9:14
**lack** [1] - 23:8
**language** [11] - 11:14, 13:10, 13:23, 14:20, 17:24, 18:2, 18:3, 18:4, 18:16, 18:23
**last** [2] - 8:11, 17:10
**LATHAM** [1] - 2:15
**law** [5] - 4:18, 4:19, 10:17, 21:12, 22:8
**Law** [4] - 2:5, 2:8, 2:11, 2:17
**lawsuit** [1] - 7:14
**lawyering** [1] - 9:10
**lay** [2] - 4:2, 9:8
**lays** [1] - 21:25
**leads** [1] - 12:12
**least** [5] - 8:19, 10:18, 22:8, 23:1, 23:15
**leave** [1] - 10:25, 23:11
**left** [1] - 19:17
**letter** [1] - 7:14
**leverage** [1] - 22:19
**liability** [1] - 10:9
**line** [1] - 23:6
**lit** [1] - 10:20
**litigate** [1] - 8:18
**litigation** [1] - 9:6
**LLP** [4] - 2:4, 2:7, 2:10, 2:15
**long-term** [4] - 14:2, 14:8, 15:6, 16:21
**look** [5] - 15:17,

18:22, 18:24, 20:16, 21:18
**looking** [1] - 11:17
**LOS** [4] - 1:18, 1:24, 3:1, 25:3
**Los** [1] - 2:6
**LUMISH** [9] - 2:16, 3:12, 3:25, 4:2, 4:17, 5:10, 6:8, 6:18, 7:2

**M**

**major** [1] - 7:24
**manifest** [1] - 14:1
**manifestation** [1] - 15:5
**March** [1] - 20:5
**masks** [1] - 3:25
**matter** [10] - 3:5, 5:8, 5:13, 5:20, 6:14, 9:3, 17:9, 24:7, 25:12
**matters** [1] - 5:5
**mean** [2] - 19:24, 22:24
**meant** [1] - 18:21
**Menlo** [1] - 2:18
**mentioned** [1] - 16:4
**mentions** [1] - 21:15
**middle** [1] - 8:16
**might** [3] - 4:25, 7:19, 10:23
**military** [1] - 7:19
**mind** [2] - 5:18, 22:1
**ming** [2] - 3:11, 7:13
**minute** [1] - 20:9
**misrepresentation** [1] - 14:23
**misrepresentations** [1] - 13:10
**miss** [1] - 13:8
**moment** [3] - 16:5, 16:8, 17:19
**monumentally** [1] - 4:11
**Moog** [15] - 3:5, 3:10, 3:18, 8:4, 8:10, 9:14, 12:5, 12:11, 14:1, 16:11, 16:20, 21:8, 22:14, 22:17, 23:21
**MOOG** [1] - 1:5
**Moogs** [2] - 11:4, 16:6
**morning** [1] - 10:7
**most** [4] - 9:9, 10:7, 15:11, 21:18
**MOTION** [1] - 1:16
**motion** [11] - 3:24, 4:6, 4:7, 9:19, 9:21, 10:4, 11:2, 11:3, 11:4, 14:9, 18:5

**motions** [2] - 3:19, 3:21
**mountain** [1] - 11:8
**move** [1] - 13:6
**MR** [42] - 3:9, 3:10, 3:12, 3:13, 3:14, 3:16, 3:22, 3:25, 4:2, 4:17, 5:10, 6:8, 6:18, 7:2, 7:8, 7:11, 7:22, 8:3, 9:1, 9:5, 9:11, 9:18, 9:22, 9:24, 13:15, 13:20, 15:2, 15:21, 16:1, 18:6, 19:1, 19:4, 19:7, 20:8, 20:13, 20:20, 20:23, 21:4, 21:6, 22:16, 23:20, 24:5
**MS** [10] - 3:11, 11:5, 11:17, 11:20, 14:16, 15:14, 15:19, 18:13, 22:24, 24:12
**MULLIN** [3] - 2:4, 2:7, 2:10
**multi** [3] - 12:4, 12:21, 14:3
**mutual** [5] - 14:2, 14:6, 14:7, 15:6, 15:7
**mutually** [1] - 12:23

**N**

**name** [1] - 8:5
**NAQVI** [3] - 2:4, 3:10, 9:24
**national** [1] - 7:25
**nature** [1] - 4:12
**NDA** [4] - 19:16, 19:21, 19:24, 20:5
**necessarily** [2] - 5:18, 10:22
**need** [3] - 9:2, 10:17, 14:10
**needed** [1] - 17:11
**never** [1] - 12:6
**New** [2] - 2:9
**nine** [1] - 18:19
**NO** [1] - 25:20
**noing** [4] - 3:9, 3:10, 7:23, 11:5
**normal** [2] - 6:12, 7:16
**normally** [1] - 5:24
**note** [1] - 15:14
**noted** [1] - 16:14
**notion** [1] - 9:20
**nowhere** [1] - 14:19
**nudge** [1] - 20:24
**number** [1] - 9:13
**numbers** [1] - 12:17

**O**

**object** [1] - 14:3
**objection** [2] - 6:3, 6:4
**obligated** [2] - 12:11, 14:21
**obviously** [2] - 18:1, 18:20
**occurred** [1] - 13:5
**odds** [1] - 17:2
**OF** [6] - 1:2, 1:16, 2:1, 25:1, 25:3, 25:4
**offense** [1] - 6:24
**offers** [2] - 7:12, 9:7
**office** [3] - 8:7, 8:9, 8:25
**Office** [3] - 7:17, 8:5, 8:15
**OFFICIAL** [2] - 1:23, 25:1
**Official** [2] - 25:6, 25:20
**often** [2] - 11:6, 11:8
**oftentimes** [1] - 5:2
**one** [21] - 4:5, 5:9, 6:20, 10:4, 11:7, 11:10, 11:12, 14:14, 15:21, 16:18, 16:23, 17:16, 20:22, 20:24, 22:10, 22:17, 22:20, 22:25, 23:12, 24:15
**ones** [1] - 10:3
**onned** [1] - 5:25
**oOo** [1] - 3:3
**opinion** [1] - 16:14
**opportunity** [1] - 16:24
**opposed** [2] - 11:13, 21:25
**opposite** [1] - 13:25
**oral** [1] - 18:15
**order** [1] - 3:23
**organize** [1] - 9:14
**overlap** [3] - 7:8, 8:3, 9:15
**overview** [1] - 12:19
**own** [1] - 22:6
**owned** [1] - 21:19

**P**

**p.m** [1] - 24:18
**page** [11] - 11:17, 12:2, 12:16, 12:17, 12:18, 13:24, 17:4, 17:8, 17:10, 21:2, 25:12
**pages** [2] - 16:9, 17:7

**paint** [1] - 15:16
**papers** [2] - 4:21, 8:8
**par** [1] - 22:20
**Paragraph** [2] - 21:18, 22:16
**paragraph** [2] - 17:10, 17:14
**Paragraphs** [1] - 13:24
**paragraphs** [1] - 21:8
**parameters** [1] - 23:3
**Park** [1] - 2:18
**part** [2] - 13:18, 23:25
**particular** [7] - 5:22, 10:13, 10:16, 15:14, 15:22, 18:23, 19:8
**parties** [17] - 4:24, 12:3, 12:7, 12:8, 12:12, 12:20, 12:23, 13:2, 14:2, 14:4, 14:7, 14:5, 15:7, 17:21, 19:18, 22:2, 22:4
**partner** [6] - 21:20, 21:21, 21:22, 23:2, 23:3, 23:17
**partners** [1] - 22:20
**partnership** [3] - 22:7, 23:4, 23:19
**parts** [1] - 17:24
**party** [1] - 17:16
**peace** [1] - 22:10
**people** [1] - 10:12
**perform** [1] - 14:4
**period** [1] - 6:15
**perspective** [1] - 17:20
**persuade** [1] - 7:3
**persuasive** [1] - 16:7
**PG** [1] - 21:14
**phase** [5] - 12:21, 12:22, 13:1, 14:3
**Phase** [3] - 12:6, 12:11, 13:4
**phases** [5] - 12:22, 12:24, 14:5, 14:17, 14:23
**physical** [1] - 14:20
**Plaintiff** [1] - 1:6
**plaintiff** [8] - 3:9, 3:10, 3:11, 11:5, 15:12, 18:12, 22:23, 23:18
**PLAINTIFF** [1] - 2:3
**plaintiff's** [2] - 3:8, 13:21
**Plaza** [1] - 2:8
**pleading** [2] - 20:14, 23:1

**pleadings** [1] - 19:23
**point** [25] - 4:7, 4:17, 5:14, 5:18, 8:1, 8:3, 8:9, 8:11, 10:23, 11:15, 12:8, 13:15, 14:11, 16:1, 17:4, 17:18, 18:3, 18:6, 19:1, 21:14, 21:25, 22:9, 22:16, 23:12, 24:9
**points** [1] - 7:8
**pole** [1] - 3:17
**popping** [1] - 7:21
**position** [1] - 14:22
**positions** [1] - 12:9
**post** [1] - 6:21
**practical** [1] - 22:1
**preclude** [1] - 20:14
**precluded** [1] - 20:19
**prejudice** [3] - 4:6, 8:12, 23:11
**pressure** [1] - 21:21
**presume** [1] - 3:21
**pretty** [1] - 7:9
**problem** [3] - 5:1, 6:7, 17:1
**proceed** [3] - 11:24, 12:11, 21:17
**proceedings** [2] - 24:18, 25:11
**PROCEEDINGS** [1] - 1:16
**produced** [2] - 7:1, 7:2
**program** [1] - 12:19
**promises** [1] - 17:17
**promissory** [1] - 17:11
**prospect** [1] - 8:18
**provided** [1] - 24:1
**provision** [2] - 15:3, 20:4
**provisions** [1] - 17:25
**public** [1] - 8:25
**pull** [1] - 11:8
**purposes** [1] - 12:25
**pursuant** [1] - 25:9
**pushback** [1] - 17:15
**put** [1] - 24:2

**Q**

**questions** [1] - 8:10
**quote** [3] - 12:4, 12:5, 22:17
**quoted** [1] - 22:7

**R**

**raise** [5] - 6:2, 6:6, 9:7, 20:13, 20:18
**raised** [1] - 16:7
**raising** [2] - 4:14, 20:15
**read** [1] - 18:10
**ready** [6] - 16:6, 16:13, 16:18, 17:5, 17:15
**Real** [1] - 2:12
**really** [4] - 10:16, 11:5, 16:17, 21:12
**Realtime** [1] - 25:6
**reason** [6] - 4:23, 5:9, 7:20, 17:18, 17:25, 19:14
**reasonable** [1] - 12:10
**reasonably** [1] - 13:8
**recognize** [1] - 23:20
**recollection** [1] - 23:10
**reference** [1] - 13:3
**referenced** [2] - 8:8, 10:19
**referred** [1] - 8:9
**referring** [3] - 11:15, 16:9, 17:24
**refers** [1] - 20:4
**regulations** [1] - 25:13
**reject** [1] - 17:11
**relating** [2] - 16:10, 16:11
**relationship** [8] - 16:21, 17:22, 21:13, 21:16, 21:24, 22:14, 22:19, 23:8
**relevant** [1] - 20:4
**reliance** [1] - 16:6
**relied** [1] - 13:9
**rely** [2] - 9:10, 16:7
**RENA** [1] - 2:7
**renewed** [1] - 6:5
**reply** [1] - 12:5
**reported** [1] - 25:11
**REPORTER** [2] - 1:23, 25:1
**Reporter** [2] - 25:7, 25:20
**REPORTER'S** [1] - 1:16
**representation** [1] - 13:8
**request** [3] - 5:15, 5:20, 17:15
**requirements** [1] - 15:4

**resolve** [3] - 6:22, 10:25, 18:2
**resolved** [3] - 14:10, 14:12, 15:10
**respect** [6] - 11:11, 14:18, 14:23, 18:13, 18:20, 23:7
**respond** [2] - 15:1, 21:7, 22:11
**response** [5] - 13:13, 13:14, 14:15, 18:11, 22:22
**responses** [2] - 22:9
**rest** [1] - 11:9
**result** [1] - 14:22
**rice** [3] - 3:13, 4:3, 8:20
**RICHTER** [3] - 2:4, 2:7, 2:10
**rise** [11] - 3:6, 3:14, 12:2, 13:23, 14:14, 16:2, 16:11, 16:19, 17:20, 20:22, 23:18
**rises** [4] - 14:10, 17:20, 20:3, 22:20
**Robert** [1] - 3:16
**Robinson** [10] - 21:19, 21:22, 21:24, 22:15, 22:19, 23:2, 23:16, 23:21, 23:22, 23:24
**Rockefeller** [1] - 2:8
**ROOM** [1] - 1:24
**roots** [12] - 16:6, 16:13, 16:18, 16:22, 16:25, 17:5, 17:15, 17:18, 18:10, 18:20, 18:21
**Rule** [1] - 14:9
**rule** [1] - 22:4
**ruled** [1] - 10:5
**ruling** [9] - 9:19, 9:20, 13:18, 15:22, 16:3, 16:9, 19:8, 19:9, 21:7, 21:11

**S**

**safe** [1] - 7:3
**San** [1] - 2:12
**scenario** [1] - 6:18
**schedule** [1] - 24:12
**scheduled** [1] - 24:11
**schedules** [1] - 15:4
**scheme** [1] - 21:20
**Scott** [1] - 2:17
**second** [2] - 12:24, 15:15
**seconds** [1] - 14:25

**UNITED STATES DISTRICT COURT**

**secret** [1] - 23:25
**secrets** [4] - 7:12, 7:17, 7:18, 8:6
**Section** [3] - 12:19, 13:9, 25:9
**section** [1] - 7:25
**sections** [1] - 18:19
**security** [1] - 7:25
**see** [3] - 9:12, 15:8, 18:21
**sees** [1] - 19:5
**selected** [1] - 19:20
**selection** [2] - 19:9, 19:11, 19:19
**sense** [2] - 4:13, 10:16
**separate** [4] - 8:23, 10:8, 10:24, 12:23
**separately** [1] - 10:11
**services** [1] - 23:10
**seven** [1] - 10:20
**shadow** [1] - 23:5
**shall** [1] - 12:22
**shape** [1] - 23:19
**SHEPPARD** [3] - 2:4, 2:7, 2:10
**ship** [1] - 21:25
**short** [1] - 10:2
**show** [2] - 22:7, 23:17
**side** [3] - 5:24, 9:9, 15:18
**sides** [2] - 3:21, 17:23
**signed** [1] - 14:20
**simultaneously** [1] - 8:19
**sitting** [3] - 5:6, 5:7, 9:11
**situation** [5] - 4:11, 6:1, 7:13, 7:18, 16:17
**six** [2] - 17:5, 17:10
**sixth** [1] - 10:5
**skies** [2] - 3:13, 4:3
**sky** [13] - 3:6, 3:14, 8:20, 12:2, 13:23, 14:10, 16:2, 16:11, 16:19, 17:19, 17:20, 20:3, 22:20
**SKYRYSE** [1] - 1:10
**small** [1] - 11:7
**societily** [1] - 23:20
**somewhat** [1] - 6:15
**sore** [2] - 15:23, 15:24
**sorry** [1] - 19:4
**sort** [3] - 10:11, 17:1, 23:18
**South** [1] - 2:5

**SOW** [14] - 11:11, 12:8, 12:9, 12:12, 12:13, 12:16, 12:17, 12:21, 13:4, 13:20, 14:6, 16:1, 17:19, 18:19
**SOWs** [1] - 12:24
**special** [2] - 22:18
**speculate** [1] - 7:22
**speedy** [1] - 5:5
**spend** [3] - 16:5, 16:8, 20:9
**stage** [2] - 14:9, 24:10
**stand** [1] - 13:25
**stands** [1] - 14:1
**star** [2] - 17:4, 17:5
**starting** [2] - 3:7, 12:2
**starts** [1] - 7:15
**STATE** [1] - 25:4
**state** [1] - 11:12
**statement** [2] - 12:3, 22:25
**statements** [22] - 11:21, 11:22, 11:23, 11:24, 12:1, 13:19, 14:1, 16:3, 16:10, 16:15, 16:18, 16:19, 16:20, 17:2, 17:12, 17:22, 18:7, 18:9, 18:22, 22:7
**States** [3] - 25:7, 25:9, 25:14
**STATES** [1] - 1:1
**stay** [7] - 3:24, 5:13, 5:20, 6:19, 7:5, 9:20
**STAY** [1] - 1:17
**stays** [2] - 4:20, 5:11
**stenographically** [1] - 25:11
**sticking** [1] - 15:19
**stop** [2] - 20:6, 22:22
**straightforward** [1] - 7:9
**Street** [2] - 1:24, 2:5
**stuff** [2] - 7:1, 20:17
**subject** [2] - 12:14, 12:25, 14:5
**submission** [2] - 24:6, 24:8
**submit** [4] - 4:22, 9:22, 9:24, 12:7
**subsequent** [1] - 12:22
**Suite** [1] - 2:12
**summarize** [1] - 13:23
**support** [1] - 12:9
**supposed** [1] - 5:16

**Supreme** [1] - 21:15
**sweep** [1] - 7:17
**sweeps** [1] - 7:14
**system** [1] - 16:13
**systems** [1] - 16:6

**T**

**table** [1] - 9:12
**tasks** [1] - 14:4
**telephone** [1] - 3:17
**temp** [1] - 5:12
**TEMPORARY** [1] - 1:17
**temporary** [1] - 5:11
**TENLEY** [2] - 3:16, 9:18
**tentative** [26] - 3:20, 3:23, 4:3, 9:19, 9:23, 9:24, 10:23, 11:2, 11:3, 11:6, 11:9, 11:11, 11:15, 11:18, 15:15, 15:22, 16:3, 16:5, 16:9, 19:7, 19:21, 21:2, 21:5, 22:10, 23:7, 24:9
**term** [7] - 14:2, 14:8, 15:6, 15:9, 16:11, 16:21, 17:22
**terms** [14] - 7:11, 12:3, 15:23, 17:2, 19:12, 19:13, 19:19, 19:24, 20:3, 21:12, 21:16, 21:23, 22:3, 23:4
**TERRI** [4] - 1:23, 25:6, 25:19, 25:20
**terse** [1] - 21:20
**text** [1] - 8:5
**THE** [49] - 2:3, 2:14, 3:5, 3:7, 3:17, 3:19, 4:1, 4:10, 5:1, 5:12, 6:11, 6:24, 7:6, 7:10, 7:16, 8:2, 8:23, 9:4, 9:8, 9:16, 9:17, 9:19, 10:1, 11:10, 11:14, 11:19, 13:13, 13:17, 14:15, 14:25, 15:12, 15:17, 17:8, 17:23, 18:11, 18:22, 19:3, 19:5, 20:6, 20:10, 20:21, 21:2, 22:12, 22:22, 23:10, 24:7, 24:10, 24:14, 24:15
**theft** [2] - 7:11, 8:6
**therefore** [1] - 5:5
**thinking** [1] - 10:6
**third** [4] - 12:24, 13:6, 13:10, 22:3
**thorough** [1] - 4:3

**thread** [1] - 11:22
**three** [1] - 8:5
**throw** [3] - 10:22, 11:1, 24:3
**THURSDAY** [2] - 1:17, 3:1
**timing** [1] - 6:9
**Title** [1] - 25:9
**TO** [1] - 1:16
**today** [3] - 13:16, 16:23, 24:13
**ton** [2] - 4:2, 20:12
**took** [2] - 4:4, 6:16
**top** [2] - 12:2, 22:17
**topic** [2] - 11:12, 15:22
**tore** [1] - 6:16
**tort** [2] - 10:10, 20:24
**towards** [1] - 17:14
**trade** [5] - 7:12, 7:17, 7:18, 8:6, 8:7
**transcript** [2] - 25:10, 25:12
**TRANSCRIPT** [1] - 1:16
**TRAVIS** [1] - 2:11
**treely** [1] - 19:23
**trial** [1] - 6:12
**TRIAL** [1] - 1:16
**tried** [1] - 5:10
**true** [1] - 25:10
**try** [1] - 20:24
**trying** [1] - 4:21
**turn** [1] - 12:15
**two** [6] - 8:16, 12:10, 14:17, 14:21, 18:6, 22:3
**type** [1] - 10:10
**types** [2] - 16:19, 22:5

**U**

**U.S** [8] - 1:3, 4:24, 7:12, 7:14, 7:21, 7:23, 8:7, 9:7
**unactionable** [3] - 11:23, 16:16, 18:7
**under** [4] - 12:3, 22:8, 24:5, 24:7
**underlying** [2] - 21:24, 22:3
**underscore** [1] - 8:11
**unemployed** [1] - 8:20
**United** [3] - 25:7, 25:9, 25:14
**UNITED** [1] - 1:1
**unlike** [1] - 5:23

**unquoted** [1] - 12:5
**up** [5] - 6:9, 6:11, 7:21, 10:25, 15:23

**V**

**vague** [1] - 16:19
**variance** [2] - 17:2, 17:12
**various** [2] - 3:19, 5:21
**versus** [2] - 3:5, 6:20
**view** [5] - 13:20, 13:21, 14:11, 18:8, 18:17
**vocation** [1] - 8:13
**vs** [1] - 1:8

**W**

**waiting** [2] - 5:7, 19:3
**waiver** [1] - 5:4
**water** [1] - 4:9
**WATKINS** [2] - 2:15
**weed** [1] - 8:10
**week** [1] - 24:13
**weeks** [1] - 9:13
**WESTERN** [1] - 1:2
**Westlaw** [1] - 17:6
**wishes** [1] - 18:17
**withdraw** [1] - 6:4
**withins** [1] - 20:25
**WITNESS** [1] - 11:10
**word** [1] - 14:16
**words** [3] - 10:9, 23:12
**write** [1] - 12:2
**written** [3] - 17:3, 17:12, 17:16
**WU** [1] - 1:3

**Y**

**York** [2] - 2:9
**yous** [1] - 8:10

**Z**

**ZAHOORY** [8] - 2:15, 3:14, 20:23, 21:4, 21:6, 22:16, 23:20, 24:5