Rachel L. Fiset (Cal. Bar No. 240828)
Scott D. Tenley (Cal. Bar No. 298911)
Ben Heller (Cal. Bar No. 320277)
**ZWEIBACK, FISET & ZALDUENDO, LLP**
315 W. 9th Street, Suite 1200
Los Angeles, California 90015
Telephone: (213) 266-5170
rachel.fiset@zfzlaw.com
scott.tenley@zfzlaw.com
ben.heller@zfzlaw.com

Attorneys for Defendant
ROBERT ALIN PILKINGTON

Grant B. Gelberg (Cal. Bar No. 229454)
Kevin H. Scott (Cal. Bar No. 274605)
Alyssa L. Titche (Cal. Bar No. 313296)
Catherine Thompson (Cal. Bar No. 313391)
**HALPERN MAY YBARRA & GELBERG LLP**
550 South Hope Street, Suite 2330
Los Angeles, California 90071
Telephone: (213) 402-1900
Grant.Gelberg@halpernmay.com
Kevin.Scott@halpernmay.com
Alyssa.Titche@halpernmay.com
Catherine.Thompson@halpernmay.com

Attorneys for Defendant
MISOOK KIM

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG, INC., | No. 2:22-cv-09094-GW-MAR |
| Plaintiff, | **JOINT OPPOSITION TO PLAINTIFF MOOG, INC.'S MOTION TO ENFORCE COMPLIANCE WITH THE COURT'S ORDERS, AND FOR MONETARY SANCTIONS FOR CONTEMPT** |
| v. | |
| SKYRYSE, INC., et al, | |
| Defendants. | Hearing Date: May 10, 2023<br>Hearing Time: 11:00 a.m.<br>Location: Courtroom 790 |
| | *[Declarations of Scott D. Tenley, Rachel L. Fiset, Catherine H. Thompson, and Alyssa L. Titche submitted concurrently herewith]* |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

    A.     Moog's Close Coordination with the FBI and USAO ................................ 2

    B.     Pertinent Proceedings Before the Transferor Court .................................. 3

    C.     Correspondence Regarding An Anticipated Production Date .................... 5

    D.     Criminal Investigators Seeks Information to Establish the Existence, Possession, and Authenticity of Digital Devices ....................................... 6

    E.     The Parties Meet and Confer Regarding Their Discovery Dispute ............. 7

    F.     Eight Days Later, Moog Notifies Individual Defendants – For the First Time – of Its Intent to Initiate a Civil Contempt Proceeding .............. 9

III.    ARGUMENT ...................................................................................................... 10

    A.     The Motion Should Be Denied Because Moog Did Not Participate In the Pre-Motion Conference Required By Local Rule 7-3 ........................... 10

    B.     Individual Defendants Should Not Be Held In Contempt ....................... 12

        1.     Individual Defendants Have Not Violated the TRO ........................ 14

        2.     Individual Defendants Have Not Violated The Inspection Protocol ............................................................................................ 14

        3.     Individual Defendants Are In Compliance With the Orders of Judge McCarthy and Judge Villardo ............................................... 15

        4.     The November 10 Order ................................................................... 16

    C.     The Harsh Remedy of Contempt is Not Warranted .................................. 18

    D.     No Sanctions Are Warranted Against Individual Defendants for Asserting Their Constitutional Rights .................................................... 19

IV.     CONCLUSION ................................................................................................... 21

CERTIFICATE OF COMPLIANCE ............................................................................. 22

# **TABLE OF AUTHORITIES**

## **CASES**

*Armstrong v. Brown*
    939 F. Supp. 2d 1012 (N.D. Cal. 2013)...............................................................19

*Frankl v. HTH Corp.*
    832 F. Supp. 2d 1179 (D. Haw. 2011)...............................................................19

*Goldwater Bank, N.A. v. Elizarov*
    No. 5:21-cv-00616-JWH (SPx)
    2022 WL 17078950 (C.D. Cal. Oct. 7, 2022) ...........................................11

*In re Dual–Deck Video Cassette Recorder Antitrust Litig.*
    10 F.3d 693 (9th Cir. 1993) ...............................................................12, 15

*In re Grand Jury Subpoena*
    383 F.3d 905 (9th Cir. 2004) ...............................................................17

*In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*
    1 F.3d 87 (2d Cir. 1993) ...............................................................17

*O'M & Assocs., LLC v. Ozanne*
    2011 WL 2160938 (S.D. Cal. 2011)...............................................................13

*Pina v. Lewis*
    717 F. Appx. 739 (9th Cir. 2018) ...............................................................10, 11

*Scruggs v. Vance*
    No. 2:06–cv–0633 KJM KJN
    2012 WL 423486 (E.D. Cal. Feb. 8, 2012) ...........................................13

*Softketeers, Inc. v. Regal West Corp.*
    No. 8:19-cv-00519-JWH (JDEx)
    2023 WL 2024701 (C.D. Cal. Feb. 7, 2023) ...........................................13

*Stone v. City and County of San Fran.*
    968 F.2d 850 (9th Cir. 1992) ...............................................................12, 13

*Tri-Valley CARES v. U.S. Dep't of Energy*
    671 F.3d 1113 (9th Cir. 2012)...............................................................10, 11

*United States v. Hubbell*
    167 F.3d 552 (D.C. Cir. 1999)...............................................................17

*United States v. Hubbell*
    530 U.S. 27 (2000)...............................................................17

United States v. Rendahl
    746 F.2d 553 (9th Cir. 1984) ...............................................................17

*V5 Technologies v. Switch, Ltd.*
    334 F.R.D. 297 (D. Nev. 2019) ...............................................................11

*Westside Shepherd Rescue of Los Angeles, Inc. v. Pollock*
No. CV 09-3677-GW(Ex)
2010 WL 11520530 (C.D. Cal. Jan. 14, 2010)......................................................19

*Whittaker Corp. v. Execuair Corp.*
953 F.2d 510 (9th Cir. 1992) ............................................................................19

## RULES

Local Rule 7-3 .................................................................................................9

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Defendants Robert Alin Pilkington and Misook Kim (collectively, the "Individual Defendants") are carefully navigating the demands of civil discovery in a complex trade secrets litigation while simultaneously guarding their constitutional rights in a parallel federal grand jury investigation.  In March 2023, federal investigators engaged in overt investigative activity indicating that the possession, custody, and authenticity of certain digital devices was an area of active investigation, not a foregone conclusion as the transferor court had concluded.  Understandably, Individual Defendants quickly asserted their Fifth Amendment rights in response to a civil discovery demand to produce information from those same digital devices.  Plaintiff Moog, Inc. now moves to hold Individual Defendants in contempt for exercise their constitutional rights and does so even before properly identifying its own trade secrets that are at issue.  The motion should be denied in full.

As a threshold matter, Moog's motion is procedurally improper.  Moog did not conduct a thorough, good faith pre-motion conference as required by Local Rule 7-3.  Instead, the parties conferred about a discovery dispute, without any discussion of a civil contempt proceeding or many of the legal and factual arguments raised in Moog's papers, including the critical issue of whether and why Individual Defendants are allegedly in violation of several of the orders discussed in Moog's motion.  Moog's motion should be denied in its entirety for its failure to comply with the Local Rules.

On the merits, the circumstances presented here do not warrant the rare and harsh sanction of a civil contempt finding.  Instead, four of the five orders Moog contends have been violated cannot form the basis of a contempt finding because they do not contain a specific and definite order directing Individual Defendants to disclose the communications now sought by Moog.  The only order legitimately at issue is Judge McCarthy's November 10, 2022 order on Moog's motion to compel.  But since that order was issued, and while Moog slept on its hands, the circumstances of the parallel criminal investigation evolved

and Individual Defendants developed a good faith basis to believe the existence, possession, and authenticity of the digital devices was *not* a foregone conclusion, causing them to re-assert their Fifth Amendment rights.  In light of the severe consequences of acquiescence, Individual Defendants had to act to protect their core constitutional rights.  Their actions did not in any way come from a place of recalcitrance or disrespect for the Court's authority such that contempt proceedings are necessary or appropriate.

If the Court finds that the communications at issue in Moog's motion should be produced, Individual Defendants will comply with the Court's order (and perhaps will have, by that time, determined that there is no need to assert their Fifth Amendment privilege as to those documents), rendering a finding of contempt and the imposition of sanctions unnecessary.  The proposed compensatory sanctions, requested by a multi-billion dollar public company against two individual defendants with mounting legal fees and without full-time employment, are excessive, unnecessary, and abusive.

## II.   FACTUAL BACKGROUND

Individual Defendants are software engineers who worked for decades in the aviation industry.  They are not executives and they are not wealthy.  Until Moog's dispute with Skyryse, both had sterling reputations in the industry and neither had ever been in trouble with the law.  Since joining other former Moog employees at Skyryse, their lives have been turned upside down, and (due to Moog's efforts) they are now targets of a federal criminal investigation for the same conduct that is the subject of this civil action.

### A.    <u>Moog's Close Coordination with the FBI and USAO</u>

That parallel criminal investigation was commenced as a result of a criminal referral from Moog.  As set forth in more detail in the claw-back motion (Dkt. 229-1 at 6-8), from February 2022 through at least June 2022, Moog regularly communicated with and provided information to the FBI and United States Attorney's Office ("USAO") on a range of topics, including the progress of the civil case.  (*Id.*; *see also* Dkt. 393-1 at ¶ 6.)  Moog effectively became a member of the prosecution team and investigative team.

After beginning its coordination with the government, Moog filed its civil complaint in the Western District of New York on March 7, 2022 alleging various claims against Skyryse and Individual Defendants (collectively "Defendants") arising out of the alleged theft of trade secret information from Moog.  (Dkt. 1.)  Within ten days, Defendants agreed to enter into stipulations governing the production of information, data preservation, and forensic searches (Dkt. 25) and setting expedited discovery procedures (Dkt. 33).  At the time, Individual Defendants were represented by civil counsel only, not the criminal counsel who represent them now.  (Dkt. 379, 380.)  When those stipulations were under consideration by Defendants, Moog never disclosed, and in fact purposefully concealed, that it had referred the subject matter of the civil complaint to the FBI for purposes of opening a criminal investigation – a fact that would have been relevant and material to Defendants' decision to enter into the stipulations requested by Moog.

On June 10, 2022, Defendants first learned of an open criminal investigation when Moog's counsel advised the transferor court about an "ongoing federal investigation into the files taken from Moog that are the subject of this lawsuit."  (Dkt. 222-7.)  Within days, Individual Defendants were served with federal grand jury subpoenas seeking a wide range of documents and information.  (Dkt. 393-1 at Ex. 1; Dkt. 393-2 at Ex. 1.)  The issuance of those subpoenas, on the heels of Moog's public disclosure of the existence of a federal criminal investigation, corroborated a deep coordination between Moog and criminal investigators.

**B.**  **Pertinent Proceedings Before the Transferor Court**

Finally alerted as to the existence of an ongoing criminal investigation, Individual Defendants quickly asserted their rights under the Fifth Amendment privilege against self-incrimination.  In response to the grand jury subpoenas, Individual Defendants cited their Fifth Amendment privilege and declined to produce documents responsive to the subpoena.  (Dkt. 393-1 at ¶ 3; Dkt. 393-2 at ¶ 4.)  These assertions were not challenged by the USAO.  In the civil case, on July 27, 2022, Individual Defendants' counsel clawed back access to certain digital devices that had been provided to iDiscovery Solutions

("iDS"), a neutral forensics firm handling electronic discovery, in the interest of protecting Individual Defendants' constitutional rights.  (*See generally* Dkt. 229.)  In particular, Individual Defendants explained the difficulty of evaluating and asserting their Fifth Amendment privilege against self-incrimination when Moog has not yet even identified the specific trade secrets allegedly stolen.  To this date, Moog has yet to sufficiently identify its trade secrets.

In response to the claw-back instruction, Individual Defendants and Moog filed competing motions regarding Moog's access to those digital devices.  Individual Defendants sought an order confirming that the claw-back was an appropriate and permissible measure to protect Individual Defendants' constitutional rights (Dkt. 229) and Moog sought an order restoring its access to those same devices (Dkt. 228).  On August 29, 2022, Magistrate Judge McCarthy sided with Moog, denying Individual Defendant's motion and granting Moog's.  (Dkt. 253.)  In so doing, Judge McCarthy concluded, among other things, that the Fifth Amendment "act of production" privilege did not apply because the existence, location, and authenticity of the digital devices was a "foregone conclusion." (*See id.* at 7-9.)  On October 4, 2022, District Judge Villardo relied only on Judge McCarthy's "foregone conclusion" analysis to confirm Judge McCarthy order.  (Dkt. 272 at 7.)  As a result of these orders, Individual Defendants could not claw-back access to the digital devices at issue and Moog's access was restored to the extent it existed prior to the claw-back instruction.

Other related disputes were not resolved by those orders.  Individual Defendants' counsel had authorized Moog's review of non-private, non-privileged information for the period January 1, 2021 to the present.  (*See* Dkt. 292 at 45.)  Moog's document requests did not seek communications prior to that date (Dkt. 244-3 at 7), nor did the complaint focus on events that occurred prior to that date (*see* Dkt. 1).  Neither Judge McCarthy's order nor Judge Villardo's order specifically and definitely address whether Individual Defendants were compelled to produce communications that pre-dated January 1, 2021.

The parties' dispute over the production of pre-2021 communications was presented to the Court in connection with Moog's motion to compel discovery purportedly needed to identify its own trade secrets.  (Dkt. 210.)  Moog sought an order compelling Individual Defendants to produce communications from five digital devices from 2013 through 2020.[1]  (*Id.*)  After hearing oral argument from the parties, on November 10, 2022, Judge McCarthy ordered Individual Defendants to produce communications from five digital devices for the period March 3, 2019 to December 31, 2020.   (Dkt. 293 (the "November 10 Order"), Hrg. Tr. at 45-46.)  In so doing, Judge McCarthy did not find, nor did Moog argue during the hearing, that Individual Defendants' failure to produce those communications prior to November 10, 2022 violated any prior orders of the Court, including the TRO, the Inspection Protocol, Judge McCarthy's August 29, 2022 order, or Judge Villardo's October 4, 2022 order.  (*See generally id.*)

## C.   Correspondence Regarding An Anticipated Production Date

After the hearing, Moog contacted Individual Defendants' counsel several times inquiring about the status of the document production.  (Naqvi Decl. Ex. A.)  Among other communications, on December 5, 2022, Moog requested "an anticipated date of production."  (*Id.*)  On December 7, 2022, then-counsel to Individual Defendants responded that the privilege and privacy review was expected to be completed "toward the end of next week" (*i.e.*, December 15 or 16, 2022).  (*Id.*)  No estimated production date was provided.  The parties had no further communication until January 13, 2023, when Moog again inquired as to the status of production.  Moog received no response.  (*Id.*)

There was no further communication between the parties on the documents through the remainder of January, all of February, and most of the first week of March, a period of over seven weeks.[2]

---

[1] Moog argued that no documents should be excised from those within that period "other than for privilege or personal privacy review."  (Dkt. 210 at 19.)

[2] On March 7, 2023, after the events set forth above had occurred, new counsel substituted into the case on behalf of each Individual Defendant.  (Dkt. 377, 378.)

**D.    Criminal Investigators Seeks Information to Establish the Existence, Possession, and Authenticity of Digital Devices**

Moog did not further inquire about the status of the document production until March 3, 2023.  (Naqvi Decl. Ex. A at p. 28.)[3]  On March 7, 2023, the FBI served on Individual Defendants' counsel correspondence described as a "preservation letter" asking counsel to "confirm possession" of certain digital devices.  (Declaration of Scott D. Tenley ("Tenley Decl.") ¶ 2; Declaration of Catherine H. Thompson ("Thompson Decl.") ¶ 2.)  Mr. Pilkington's counsel objected to the FBI's baseless request and refused to provide the confirmation sought.  (Tenley Decl. at Ex. A.)  Likewise, Ms. Kim's counsel refused to provide the information requested by the government's purported "preservation letter." (Thompson Decl. ¶ 3.)

The next day, on March 8, 2023, the parties learned that a federal grand jury subpoena was served on iDS seeking information about who produced to iDS the various digital devices in iDS's custody.  (Dkt. 393-1 at Ex. 3.)  In response, Individual Defendants objected to the disclosure of any information other than what had been provided to iDS by Moog or Skyryse.  (*See* Dkt. 428-1 at Ex. 1.)  iDS honored Individual Defendants' privilege assertion and did not produce information over which privilege was claimed. Defendants made this broad privilege assertion, in part, because Moog still had not complied with the Court's order to properly identify its purported trade secrets.  In other words, when confronted with a vague and deficient trade secret identification that did not provide any basis for Individual Defendants to meaningfully evaluate the dangers of self-incrimination by any particular disclosure, Individual Defendants had no choice but to assert their privilege broadly and at every opportunity.

At or around the response date to the subpoena issued to iDS, Individual Defendants' counsel conferred with the Assistant United States Attorney assigned to the criminal investigation about the privilege assertion.  (Tenley Decl. ¶ 4.)  The AUSA asked

---

[3] The use of "p." refers to the page number within the ECF header in blue type. Unless otherwise noted, all italics are for emphasis.

Individual Defendants' counsel to provide authority for the proposition that information within the custody of a third party may be protected by another party's Fifth Amendment rights.  (*Id.*)  That authority was communicated to the USAO on March 17, 2023.  (*Id.*)  Mr. Pilkington's counsel provided additional pertinent information to the USAO on April 3, 2023.  (*Id.*)  To date, the USAO has not responded to Individual Defendants' assertion of privilege in response to the iDS subpoena nor moved to compel the production of information withheld on the basis of Individual Defendants' Fifth Amendment privilege. (*Id.*)

### E.   The Parties Meet and Confer Regarding Their Discovery Dispute

The record of the parties' correspondence establishes that the parties never met and conferred about a motion for contempt or many of the issues raised in Moog's pending motion, but instead conferred about what all parties understood was a discovery dispute to be raised in the first instance in an informal discovery conference before Judge Rocconi. The correspondence further demonstrates that the only court order implicated by the production of documents at issue here is the November 10 Order, not any other order.

On March 3, 2023, Moog contacted former counsel to Individual Defendants stating its intention "to commence *a discovery conference* with Magistrate Judge Rocconi regarding the Individual Defendants' failure to produce all communications from five electronic devices produced to iDS from March 7, 2019 to December 31, 2020, *pursuant to WDNY's orders on November 10, 2022.*  (Dkt 292)."  (Naqvi Decl. Ex. B at p. 28.) Moog's March 3, 2023 correspondence did not mention any other order purportedly requiring production of the requested communications.

On March 6, 2023, Moog contacted new counsel for Individual Defendants about "a *discovery dispute* that [Moog] intend[ed] to promptly raise with Magistrate Judge Rocconi *for an informal discovery conference*."  (*Id.* at p. 25.)  Mr. Pilkington's counsel responded the following day regarding Moog's request to "meet and confer about *a November 10, 2022 discovery order* issued by" the transferor court.  (*Id.* at p. 24.)  Counsel explained that their "understanding of the *discovery orders* and the *pending discovery*

7

*disputes* is very limited at this point," and requested additional time and information in order to develop a full understanding of the pertinent issues. (*Id.*)

In response, Moog provided to Individual Defendants' only one order purportedly requiring the production of documents sought by Moog: the November 10 Order. (*Id.* at p. 23.) Moog stated, "[o]n November 10, 2022, the Court ordered the Individual Defendants to produce communications from March 7, 2019 through December 31, 2020 from 5 devices." If Individual Defendants did not agree to produce those documents within 14 days, Moog intend to "proceed on Friday with scheduling *an informal discovery conference*." (*Id.*)

On March 9, 2023, Mr. Pilkington's counsel recommended that the parties reconvene in two weeks at which time counsel would have "a better understanding of the issues." (*Id.* at p. 22.) Moog characteristically refused, stating that "[t]he Court ordered these documents to be produced *on November 10, 2022.*" (*Id.* at p. 21.) Moog informed Individual Defendants that it would "request *a discovery conference* with the Court" unless Individual Defendants agreed to meet and confer on March 10 or March 13. (*Id.*)

The parties met and conferred on March 21, 2023 to discuss the pending discovery dispute which Moog planned to raise with Judge Rocconi in an informal discovery conference if the matter was not resolved to their satisfaction. (Tenley Decl. ¶ 5; Thompson Decl. ¶ 4; Declaration of Rachel L. Fiset ("Fiset Decl.") at ¶¶ 2-4; Declaration of Alyssa L. Titche ("Titche Decl.") ¶ 2.) During the conference, counsel for Mr. Pilkington notified Moog that Individual Defendants intended to assert their Fifth Amendment privilege as a basis for withholding production. (*Id.*) In response, Moog's counsel contended that Individual Defendants' position violated several court orders and threatened to seek sanctions. However, Moog never discussed seeking a civil contempt finding, or even used the word "contempt" to the recollection of Individual Defendants' counsel. (*Id.*) The parties did not discuss the legal authority for, or defenses against, civil contempt. (*Id.*) Nor did the parties discuss any alleged violations of the TRO or Inspection Protocol. (*Id.*)

Moog's post-conference email does not reference contempt, nor does it reference the TRO or Inspection Protocol.  (Naqvi Decl. Ex. B at p.18.)

**F.  Eight Days Later, Moog Notifies Individual Defendants – For the First Time – of Its Intent to Initiate a Civil Contempt Proceeding**

On March 29, 2023, in connection with an unrelated issue regarding vendor payment, Moog – for the first time – disclosed that it intended to file a "Motion for Contempt."  In an effort to circumvent the need to engage in a good faith pre-motion conference, Moog sought to create a record that the parties' March 21, 2023 conference actually pertained to a "Motion for Contempt" not a discovery dispute to resolved via informal discovery conference as referenced repeatedly earlier that month.  Moog wrongly contended that the "Motion for Contempt" was one "for which [the parties] met and conferred about last week."  (Tenley Decl. Ex. C.)  Simultaneously, Moog wrongly asserted that Individual Defendants had "frozen" the iDS discovery process – a false claim they repeat in their Motion.  (*See* Mtn. at 22.)  As discussed below, the bulk of iDS discovery was entirely unaffected and Individual Defendants quickly executed the paperwork needed to formally engage iDS.  (Tenley Decl. ¶¶ 8-10.)

After Moog filed the pending Motion (Dkt. 432 ("Mtn.")), Individual Defendants demanded that Moog withdraw its motion because the parties had not met and conferred as required by Local Rule 7-3.  (*Id.*)  Moog refused.  (*Id.*)

On April 19, 2023, Individual Defendants sought Moog's agreement to a one-week continuance of the hearing date so that they could complete a their review of the contents of certain digital devices which might render the continued assertion of their Fifth Amendments rights unnecessary.  (Fiset Decl. Ex. A.)  Moog refused to do so, only offering to take the matter off-calendar if Individual Defendants met certain conditions, including payment of $9,350 in sanctions.  (*Id.*)

### III. ARGUMENT

#### A. The Motion Should Be Denied Because Moog Did Not Participate In the Pre-Motion Conference Required By Local Rule 7-3

Moog did not participate in a thorough, good-faith pre-motion conference as required by this Court's Local Rules and its motion should be denied on that basis. Pursuant to Local Rule 7-3, "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly . . . the substance of the contemplated motion and any potential resolution." If a party fails to comply with this pre-filing mandate, a district court is "well within" its discretion to deny the motion on procedural grounds alone. *Tri-Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."); *see also Pina v. Lewis*, 717 F. Appx. 739, 740 (9th Cir. 2018) ("The district court did not abuse its discretion by denying Pina's motion to compel for failing to comply with local rules.").

Although Moog attests that a pre-motion conference occurred (Mtn. at 4), that conference pertained to a discovery dispute, not a potential civil contempt proceeding. The correspondence leading up to the March 21, 2023 meet and confer confirms as much, as the parties' dispute is repeatedly described by Moog as a "discovery dispute" that will be presented to Judge Rocconi at an "informal discovery conference." (*See generally* Naqvi Decl. Ex. B.) During the conference, Moog never raised the possibility of a potential contempt proceeding, nor was the word contempt used by any participant. (*See* Tenley Decl. ¶ 5; Thompson Decl. ¶ 4; Titche Decl. ¶ 2; Fiset Decl. ¶ 4.) Instead, the parties discussed Individual Defendants' assertion of the Fifth Amendment privilege which Moog contended was foreclosed by prior orders, despite the existence of changed circumstances which were, by that point, described in Skyryse's then-pending motion to stay.

Because contempt or a contempt motion was never raised before or during the conference, the parties could not have conferred about it fully and meaningfully as the

Local Rules require.  In any event, there can be no dispute that the parties did not "thoroughly" discuss a number of critical substantive issues raised in Moog's motion.  For example, the parties never discussed: (1) Moog's legal authority supporting its request for a contempt findings; (2) the defenses Individual Defendants would raise and the legal authority for those defenses; (3) Moog's basis to contend Individual Defendants were in violation of the TRO; (4) Moog's basis to contend Individual Defendants were in violation of the Inspection Protocol; and (5) Moog's basis to contend that production was required under Judge McCarthy's order and/or Judge Villardo's order.

These deficiencies invalidate Moog's attestation.  The law requires a thorough, good-faith discussion of the issues to be raised with the Court in order to satisfy Local Rule 7-3.  *Goldwater Bank, N.A. v. Elizarov*, No. 5:21-cv-00616-JWH (SPx), 2022 WL 17078950, at *2 (C.D. Cal. Oct. 7, 2022) (denying motion to compel without prejudice and explaining that "[f]or meet-and-confer efforts to be in good faith, parties must unequivocally raise and discuss every disputed issue, and attempt to resolve it."); *V5 Technologies v. Switch, Ltd.*, 334 F.R.D. 297, 301 n.2 (D. Nev. 2019) (explaining that the parties should discuss during a meet and confer their position with the "same candor, specificity, and support" as in the briefing to the court).  Moog failed to do so.

Subsequently, Moog shifted to a contempt theory in an effort to bypass the discovery process it had repeatedly referenced leading up the March 21, 2023 meet and confer.[4]  To create some after-the-fact record of having actually conferred about a "Motion for Contempt," Moog tacked onto an unrelated email a reference to a "Motion for Contempt" and claimed the parties had conferred about it on March 21, 2023.  (*Id.* at Ex. C.)  The Court should reject this behavior by denying the motion and ordering the parties to engage in a meaningful pre-motion conference before pursuing any further relief.  *See Tri-Valley CARES*, 671 F.3d at 1131; *Pina*, 717 F. Appx. at 740.

---

[4] Moog's sudden shift to a "Motion to Contempt" may have arisen out of correspondence from Judge Rocconi's chambers suggesting that Moog's identification of trade secrets would have to be resolved before any other discovery-related issues would be heard.  (Tenley Decl. Ex. B.)

Moog's misbehavior also extends to its efforts to tarnish Individual Defendants' counsel by falsely suggesting that iDS-related discovery has stopped entirely. Specifically, Moog's claim that "Individual Defendants' New Counsel Has Effectively Frozen iDS" and that iDS is in a "holding pattern" (Mtn. at 22), is patently false. Both before and after Moog filed its motion for contempt, iDS continued to facilitate the parties' review of digital devices. (Tenley Decl. ¶ 9.) While iDS made the unilateral decision to temporary halt processing *new* devices, that stoppage was brief and the parties delayed in reviewing those devices were Defendants, not Moog. (*Id.* at ¶ 8.) In reality, Individual Defendants entered into new engagement agreements with iDS within eight days of first receiving a complete copy of the proposed contract. (*Id.* at ¶ 10.) It is disappointing that Moog would stoop to communicating to the Court that iDS was "frozen" or in a "holding pattern" on account of Individual Defendants when that simply did not occur.

This Court should deny Moog's motion and order Moog to engage in a thorough, good-faith pre-motion conference as required under the Local Rules before pursuing further relief through an informal discovery conference.

**B.    Individual Defendants Should Not Be Held In Contempt**

This Court should not hold Individual Defendants (or their attorneys) in contempt because Moog has failed to carry its burden of establishing a record for the imposition of the "harsh sanction of civil contempt." *Dinkins v. Schinzel*, 2022 WL 3347044, at *2 (D. Nev. Aug. 12, 2022) (declining to enter a contempt finding against party who failed to comply with court orders related to post-judgment discovery). "Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.* ("*In re Dual–Deck*"), 10 F.3d 693, 695 (9th Cir. 1993). A party seeking a civil contempt finding must establish "by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *Stone v. City and County of San Fran.*, 968 F.2d 850, 856 n.9 (9th Cir. 1992); *accord In re Dual Deck*, 10 F.3d at 695 (requiring clear and convincing evidence of a violation of a specific and definite

order).  "To meet the clear and convincing standard, the moving party must place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Softketeers, Inc. v. Regal West Corp.*, No. 8:19-cv-00519-JWH (JDEx), 2023 WL 2024701, at *15 (C.D. Cal. Feb. 7, 2023) (cleaned up and marks omitted) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). "Any doubts as to whether [the civil contempt sanction] requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt." *O'M & Assocs., LLC v. Ozanne*, 2011 WL 2160938, at *4 (S.D. Cal. 2011) (citation omitted).  The district court is afforded wide discretion in determining whether its orders have been violated and if so, whether such a violation is contemptuous. *Scruggs v. Vance*, No. 2:06–cv–0633 KJM KJN, 2012 WL 423486, at *1 (E.D. Cal. Feb. 8, 2012) (citing *Stone*, 968 F.2d at 856) ("A district court has wide latitude in determining whether there has been contemptuous defiance of one of its orders.").

As a general matter, the alleged violation here is Individual Defendants' decision to assert their Fifth Amendment privilege over certain communications sought by Moog, before Moog has even identified its purported trade secrets at issue.  Although those communications were the subject of a November 10, 2022 order by the transferor court, new facts related to the criminal investigation emerged between November 10, 2022 and March 21, 2023 that left Individual Defendants no choice but re-assert their Fifth Amendment privileges as a result of those changed circumstances.  That re-assertion was not made to defy any court order, but instead to protect core constitutional rights afforded to any individual under criminal investigation.  That decision does not warrant a contempt finding.

Moog has identified five court orders that allegedly provide a clear and definite order to Individual Defendants to produce communications from five digital devices for the period March 3, 2019 to December 31, 2020.  Of those five orders, four cannot form the basis of a contempt proceeding because they do not specifically and definitively direct the production of communications from 2019 to 2020 that Moog is now seeking.  Only

the November 10 Order addresses that issue and is pertinent here.  As to the November 10 Order, Moog has not established a basis for this Court to hold Individual Defendants in contempt, even if the Court determines the documents at issue must be produced.

### 1.     Individual Defendants Have Not Violated the TRO

Moog claims Individual Defendants have violated paragraphs 2 and 4 of the TRO, which Moog represents "required the production of and access to the iDS Electronic Devices wholesale." (Mtn. at 27.)  Not so.  Paragraph 2 of the TRO requires Defendants to provide to Moog information and data "of, from, or belonging to [Moog]" that was obtained by Defendants in either of two means described therein.  (Dkt. 25 at ¶ 2.)  By contrast, the digital devices now at issue between the parties are "private communications on the Individual Defendants' private and personal devices." (Dkt. 293 at 39.)  Moog has not provided any basis for the Court to conclude that these "private and personal devices" contain Moog's information and data, which could bring these devices within the scope of paragraph 2 of the TRO.  Indeed, Moog has never before argued that the documents at issue must be produced pursuant to the TRO.

Paragraph 4 of the TRO requires Individual Defendants to preserve certain personal devices, produce them to iDS, and agree to an inspection protocol.  (Dkt. 25 at ¶ 2.)  Moog does not claim personal devices have not been preserved or delivered to iDS or that an Inspection Protocol remains outstanding, which would violate paragraph 4.

Accordingly, Moog has not shown, let alone by clear and convincing evidence, that Individual Defendants have violated any specific and definite order within the TRO.

### 2.     Individual Defendants Have Not Violated The Inspection Protocol

Moog claims Individual Defendants have violated the Inspection Protocol (Dkt. 96-02).  (Mtn at 27.)  The Inspection Protocol sets the procedures by which the parties may examine digital devices within iDS's custody.  (*See generally* Dkt. 96-02.)  The protocol itself does not order any party to produce or disclose any document, including the communications sought by Moog.  Moog has not identified any paragraph or provision within the Inspection Protocol that has been violated by Individual Defendants' privilege

14

assertion.   There is no violation simply because "Moog's access" to the disputed communications would have been "governed by the Inspection Protocol."  (Mtn. at 27.) Moog fails to meet its burden.

        3.    Individual Defendants Are In Compliance With the Orders of <u>Judge McCarthy and Judge Villardo</u>

      The third and fourth orders identified by Moog are Fifth Amendment-related rulings by the transferor court: an August 29, 2022 Report, Recommendation, and Order by Magistrate Judge McCarthy (Dkt. 253) and an October 4, 2022 Decision and Order by District Judge Villardo (Dkt. 272).  (Mtn. at 27-28.)  Judge McCarthy's order denied Individual Defendants' attempt to claw-back Moog's access to devices provided to iDS and granted Moog's motion to restore access based on Judge McCarthy's finding that Individual Defendants could not assert a Fifth Amendment privilege over those devices. Judge Villardo's order confirmed Judge McCarthy's order, but limited to Judge McCarthy's determination that the "foregone conclusion" exception to the act of production doctrine applied, rendering the Fifth Amendment privilege inapplicable.

      Moog has not proven by clear and convincing evidence that either or both of these orders specifically and definitively directed Individual Defendants to produce the communications at issue.  Indeed, those orders do not discuss the communications at issue at all.  Instead, those orders preclude Individual Defendants from clawing back the devices on a wholesale basis and restored Moog's access to those devices as it existed before the attempted claw-back.  That occurred.  In fact, by no later than November 10, 2022, Moog has access to significant information from those devices, including all communications that post-dated January 1, 2021.  (*See* Dkt. 293 at 44, 45.)  Individual Defendants were and are in substantial compliance with these orders.  *In re Dual-Deck*, 10 F.3d at 695.

      Individual Defendants' compliance with those orders is confirmed by subsequent events.  On November 10, 2022, Judge McCarthy entered an order directing Individual Defendants to produce the 2019 and 2020 communications now at issue.  Leading up to that hearing, Moog's Requests for Production did not seek any communications prior to

1    January 1, 2021.  (*See* Dkt 244-3.)  When Judge McCarthy entered the November 10

2    Order, he did not find that Individual Defendants were in violation of the TRO, the

3    Inspection Protocol, his August 29, 2022 order, or Judge Villardo's October 4, 2022 order.

4    In fact, in the briefing leading up to the November 10 Order, Moog never took the position

5    that these documents were required to be produced under those four orders, only that no

6    order permitted the exclusion of materials based on a relevance objections.  (Dkt. 210,

7    249.)

8                     4.    The November 10 Order

9          The only order legitimately at issue is Judge McCarthy's November 10 Order

10   directing Individual Defendants to complete their privilege review and release to Moog

11   personal communications for the period March 3, 2019 to December 31, 2020.  (Dkt 293.)

12   While the November 10 Order does address the communications sought by Moog,

13   Individual Defendants respectfully submit that their assertion of a Fifth Amendment

14   privilege over those documents was reasonable and proper in light of the developments in

15   the parallel criminal investigation which suggested the existence, possession, and

16   authenticity of the digital devices was actively under investigation by the government and

17   not a foregone conclusion.  This assertion was made to protect a bedrock constitutional

18   right and it does not demonstrate the type of defiance of a court order for which the harsh

19   sanction of contempt is reserved.

20         Moog was advised that Individual Defendants' prior counsel expected to complete

21   its privilege and privacy review by mid-December 2022.  (Naqvi Decl. Ex. A.)  Between

22   mid-December 2022 and March 2023, Moog followed-up on these documents just once,

23   on January 13, 2023.  (*Id.*)  Moog sat silent through the remainder of January and all of

24   February 2023.   By March 2023, when Moog first communicated with Individual

25   Defendants' new counsel regarding the documents, new and material information as to the

26   government's criminal investigation had become known to Individual Defendants that

27   caused them to make a good faith re-assertion of their Fifth Amendment rights.

28   Specifically, on March 6, 2023, the FBI asked Individual Defendants' counsel to "confirm

possession" of certain digital devices.  (Tenley Decl. ¶ 2; Thompson Decl. ¶ 2.)  The next day, on March 8, 2023, Individual Defendants learned that the USAO had served a federal grand jury subpoena on iDS seeking information about a number of digital devices, including information necessary to establish the identity of the party who had possessed or controlled it prior to iDS.  (Dkt 393-1 at Ex. 3.)  Given those developments, Individual Defendants had to re-assert their Fifth Amendment rights rather than risk a later finding that their acquiescence waived those rights.

The validity of a constitutional privilege claim, including the act of production privilege, is a fact-intensive inquiry.  *In re Grand Jury Subpoena*, 383 F.3d 905, 909 (9th Cir. 2004) ("Whether the act of production has a testimonial aspect sufficient to attract Fifth Amendment protection is a fact-intensive inquiry").   The touchstone of the act of production analysis, of course, is "the quantum of information possessed by the government" when its subpoena is issued.  *In re Grand Jury Subpoena*, 383 F.3d at 910 (quoting *United States v. Hubbell*, 167 F.3d 552, 569 (D.C. Cir. 1999) ("*Hubbell I*")).  The government must possess sufficient facts to establish the existence of the documents sought and the target's possession of them with reasonable particularly to overcome the act of production privilege under a "foregone conclusion" theory.  *See United States v. Hubbell*, 530 U.S. 27, 44 (2000); *Hubbell I*, 167 F.3d at 579; *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993).  The government's investigative activity in March 2023 strongly suggested that the existence, location, and authenticity of Individual Defendants' devices was not in fact a foregone conclusion.  Instead, it appeared the government remained in the process of developing evidence to prove those facts, both through its request to Individual Defendants' counsel and its subpoena to iDS.  Under these circumstances, Individual Defendants had "reasonable cause" to apprehend a danger of self-incrimination if the communications Moog requested – for the period March 3, 2019 to December 31, 2020 – were produced.  *See United States v. Rendahl,* 746 F.2d 553, 555 (9th Cir. 1984).  This is especially true where Moog has yet

to identify its purported trade secrets which makes Individual Defendants' Fifth Amendment analysis even more difficult.

In addition, Individual Defendants' assertion of their Fifth Amendment privilege in response to the iDS subpoena remains under consideration by the USAO.  (Tenley Decl. ¶ 4.)  Individual Defendants provided factual and legal authority for their Fifth Amendment claim to the USAO on March 17, 2023 and April 3, 2023.  (*Id.*)  The USAO has not yet responded or taken a position on that privilege claim.  It was therefore reasonable for Individual Defendants to take measures in the civil litigation to preserve the viability of their Fifth Amendment rights in the criminal investigation.  Had Individual Defendants not done so, they would have risked waiving any privilege that the criminal investigators or supervising judicial authority ultimately determine exists.

Alternatively, the Court may also exercise its discretion to modify any prior order that permitted this discovery before Moog identified its trade secrets.  Once Moog has properly identified its trade secrets, Fifth Amendment issues will be substantially easier to evaluate and resolve.

### C.   <u>The Harsh Remedy of Contempt is Not Warranted</u>

This Court should not find Individual Defendants in contempt even if they are not in full compliance with any prior orders of this Court.  Individual Defendants are in a difficult, if not impossible, position.  As Judge Wu has recognized, Individual Defendants have a "significant" Fifth Amendment interest at stake in the civil litigation.  (Dkt. 439 at 9.)  On one hand, the November 10 Order directed the production of certain documents and records.  On the other hand, new developments in the criminal investigation suggested that, contrary to a prior finding by the transferor court, Individual Defendants have a valid act of production privilege to assert.  If Individual Defendants are not in compliance with the November 10 Order, it is not the result of defiance, disdain, or disregard, but instead predicated upon Individual Defendants' understandable desire to assert and protect those bedrock constitutional rights embodied protected by the Fifth Amendment.

The circumstances here are drastically different than those where a finding of civil contempt is warranted by a party's deliberate, willful, and disobedient conduct.   For example, in *Westside Shepherd Rescue of Los Angeles, Inc. v. Pollock*, No. CV 09-3677-GW(Ex), 2010 WL 11520530 (C.D. Cal. Jan. 14, 2010) ("*Westside Shepherd*"), Judge Wu entered an injunction preventing the defendant from using certain marks related to the plaintiff.  *Id.* at *1.  Defendant was held in contempt of that order, and another injunction was issued.  *Id.*  Thereafter, defendant failed to "change[] any of the behavior which left to the earlier contempt proceeding," did not respond to the Court's order to show cause, and failed to appear at two hearings set by the Court.  *Id.*  That behavior – repeated, purposeful violations of court orders without cause – understandably resulted in a contempt finding.  *See also Frankl v. HTH Corp.*, 832 F. Supp. 2d 1179, 1187-1213 (D. Haw. 2011) (holding defendant in contempt after court issued numerous orders confirming that defendant's conduct violated an injunction).  By contrast, Individual Defendants have acted in good faith, based on changed circumstances, and in the interest of protecting their constitutional rights and strong liberty interest in response to developments in a federal criminal investigation of the same conduct as issue in this action.   Under these circumstances, the Court should not find Individual Defendants in contempt.

### D.   No Sanctions Are Warranted Against Individual Defendants for Asserting Their Constitutional Rights

This Court should decline to enter monetary sanctions of any kind.  Even if a party is not in compliance with a court order, the Court has discretion to decline to order sanctions if the record suggests sanctions are unnecessary.  *Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1025-26 (N.D. Cal. 2013) (granting motion to enforce but declining to enter contempt order after finding party in violation of Court order).

The record here supports such a result.  First, no coercive monetary sanction is necessary to ensure future compliance.  *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) ("Generally, the minimum sanction necessary to obtain compliance is to be imposed.")   To the extent the Court determines Individual Defendants' Fifth

19

Amendment claim is not well taken or if Individual Defendants complete their review of the communications at issue and determine that no Fifth Amendment privilege attaches, Individual Defendants will produce non-privileged, non-private documents.  Second, the financial burden of monetary sanctions on Individual Defendants – both of whom lack full-time employment and are subject to substantial legal bills in connection with this litigation – would be immense.  By contrast, Moog is a multi-billion dollar public company for which a $9,350 fee award is trivial and, as evidenced throughout the course of this litigation, are not abiding by orders made directing them to provide the essential information in the case – the identification of trade secrets – such that decisions relating to constitutional rights and other discovery matters can be resolved.  Third, Individual Defendants sought to resolve this dispute without the need for an opposition brief, a reply, or a hearing, but Moog refused unless Individual Defendants agreed to meet its unreasonable and abusive sanctions demand.  And finally, Moog has not demonstrated any harm arising out of purported non-compliance, especially where Moog allowed seven weeks to pass without making any attempt to follow-up on the document production. Under these circumstances, sanctions are unwarranted.

The Court should also deny Moog's request for a blanket order requiring production of "all communications between March 7, 2019 and December 31, 2020."  Individual Defendants should be permitted to complete a privilege review and excise personal and private material as permitted by the Inspection Protocol (Dkt. 96-02, § III(A)(5)) and the June 2, 2023 expedited discovery stipulation (Dkt. 137 at ¶ 4).  In its motion to compel that resulted in the November 10 Order, Moog confirmed that personal privacy was a valid basis to excise documents from any production. (Dkt. 210 at 2, 10, 14.)  There is no reason to remove those protections with respect to these documents.   Moog's attempt to circumvent the protocols are improper and unnecessary.

///

///

## IV.   CONCLUSION

Accordingly, for the reasons set forth herein, Individual Defendants respectfully request that this Court deny Moog's motion to enforce and for contempt in its entirety.[5]

Respectfully Submitted,

DATED:   April 19, 2023        ZWEIBACK, FISET & ZALDUENDO LLP


By: /s/ Scott D. Tenley
        SCOTT D. TENLEY

        Attorneys for Defendant
        ROBERT ALIN PILKINGTON


DATED:   April 19, 2023        HALPERN MAY YBARRA & GELBERG LLP


By: /s/ Grant B. Gelberg
        GRANT B. GELBERG

        Attorneys for Defendant
        MISOOK KIM

---

[5] This memorandum does not, and is not intended to, act as a waiver of any constitutional, legal, statutory, or common law right or privilege, nor does it constitute an admission of any kind, including an admission of possession, custody, control, or authenticity of any digital device.  All rights and privileges are expressly reserved.

21

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2     The undersigned, counsel of record of defendant Robert Alin Pilkington, certifies

3     that this brief contains 6,997 words, which:

4          ☒     complies with the word limit of L.R. 11-6.1.

5          ___   complies with the word limit set by Court order dated _____.

6     DATED:   April 19, 2023              ZWEIBACK, FISET & ZALDUENDO LLP

7

8                                          By:     /s/ Scott D. Tenley
                                                  SCOTT D. TENLEY
9
                                           Attorneys for Defendant
10                                         ROBERT ALIN PILKINGTON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>ATTESTATION</u>**

2          Pursuant to Civil Local Rule 5-4.3.4, I, Scott D. Tenley, attest that concurrence in

3   the filing of this document has been obtained by all its signatories.

4
     DATED:   April 19, 2023                 ZWEIBACK, FISET & ZALDUENDO LLP
5

6                                            By:_____ /s/ *Scott D. Tenley*_____
                                                      SCOTT D. TENLEY
7
                                             Attorneys for Defendant
8                                            ROBERT ALIN PILKINGTON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28