**LATHAM & WATKINS LLP**
    Douglas E. Lumish (SBN 183863)
    *doug.lumish@lw.com*
    Gabriel S. Gross (SBN 254672)
    *gabe.gross@lw.com*
    Arman Zahoory (SBN 306421)
    *arman.zahoory@lw.com*
    Rachel S. Horn (SBN 335737)
    *rachel.horn@lw.com*
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and*
*Counterclaimant Skyryse, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>            Plaintiff,<br><br>        v<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>            Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**DEFENDANT AND COUNTERCLAIMANT SKYRYSE, INC.'S OPPOSITION TO MOOG's MOTION TO ENFORCE COMPLIANCE WITH MARCH 11, 2022 STIPULATED TRO AND FOR MONETARY AND ADVERSE INFERENCE SANCTIONS** |
| SKYRYSE, INC.,<br><br>            Counterclaimant,<br><br>        v<br><br>MOOG INC.,<br><br>            Counterclaim-Defendant. | Judge: Hon. George H. Wu<br>Date:   May 22, 2023<br>Time:  8:30 a.m.<br>Crtrm: 9D<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND .......................................................................................... 2

     A.     Skyryse acts swiftly to preserve evidence and immediately stipulates to produce relevant data. .................................. 2

     B.     Skyryse attempts to work in good faith with Moog to comply with the Stipulated Order. ........................................... 3

     C.     Skyryse complies with the Stipulated Order despite Moog's unwillingness to cooperate. ...................................... 5

     D.     Skyryse immediately notifies Moog and the Court of an employee's deletion of potentially relevant files. ............................... 6

     E.     Skyryse takes prompt action to investigate and recover the deleted files. ............................................................ 7

     F.     Moog withholds information needed for the litigation to progress while using the Stipulated Order as a weapon. ..................... 8

III.   MOOG'S MOTION SHOULD BE DENIED IN FULL. ........................ 10

     A.     The spoliation sanctions Moog seeks are not warranted. .................. 11

         1.     Legal Standards for Spoliation ................................................. 11

         2.     Skyryse took reasonable steps to preserve evidence and did not act with a culpable state of mind. ......................... 12

         3.     Moog fails to establish that relevant information is irreplaceably "lost" or that Moog is prejudiced. ..................... 15

         4.     Moog does not address the availability of lesser sanctions. ................................................................................ 17

     B.     Contempt sanctions are not warranted. .......................................... 17

         1.     Legal Standards for Contempt .................................................. 17

         2.     The Stipulated Order is not specific or definite and Moog's interpretation is unreasonable. .................................. 18

3.    Skyryse has complied. ............................................... 22

    a.    Desktop Test Environment ............................................. 24

    b.    Real-Time Operating System (RTOS) .......................... 24

    c.    Software Checklists and Standard Templates ............... 25

    d.    Tri Dao and Reid Raithel ............................................. 26

    e.    Ms. Kim's MacBook ..................................................... 26

4.    Moog is not entitled to the relief it requests. .......................... 27

**IV.  CONCLUSION ..............................................................................29**

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

SKYRYSE'S OPP. TO MOOG'S MOT. TO ENFORCE
COMPLIANCE WITH MARCH 11 STIP. TRO AND SANCTIONS

1
2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

### **CASES**

5
6

*Advantacare Health Partners v. Access IV*,
 No. 03-cv-04496-JF, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004) ............... 28

7
8

*Apple Inc. v. Samsung Elecs. Co.*,
 881 F. Supp. 2d 1132 (N.D. Cal. 2012) ........................................... 10

9
10
11

*Colonies Partners v. County of San Bernardino*,
 No. 18-cv-00420-JGB-SHK, 2020 WL 1496444 (C.D. Cal. Feb. 27,
 2020), *report and recommendation adopted*, 2020 WL 1491339
 (C.D. Cal. Mar. 27, 2020)............................................................ 13, 17

12
13

*Colorado v. New Mexico*,
 467 U.S. 310 (1984) ................................................................. 18

14
15

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
 10 F.3d 693 (9th Cir. 1993) .................................................. 17, 19, 21

16
17

*Est. of Nunez v. Corr. Physicians Med. Grp., Inc.*,
 No. 16-cv-1412-BEN(MDD), 2019 WL 1024397 (S.D. Cal. Mar. 4,
 2019)........................................................................................ 17

18
19
20

*F.T.C. v. Data Med. Capital, Inc.*,
 No. 99-cv-1266-AHS-EEx, 2010 WL 1049977 (C.D. Cal. Jan. 15,
 2010) ........................................................................................ 19

21
22

*FTC v. Lights of Am. Inc.*,
 No. 10-cv-1333-JVS(MLGx), 2012 WL 695008 (C.D. Cal. Jan. 20,
 2012) ........................................................................................ 14

23
24
25

*Galicia v. Nat'l R.R. Passenger Corp.*,
 No. 17-cv-8020-JFW(JCX), 2018 WL 6314191 (C.D. Cal. July 20,
 2018)........................................................................................ 14

26
27

*Gemsa Enterprises v. Specialty Foods of Alabama, Inc.*,
 No. 13-cv-00729-JAK(RZX), 2015 WL 12746220 (C.D. Cal. Feb.
 10, 2015) .................................................................................. 13

28

LATHAM&WATKINS™
ATTORNEYS AT LAW
SILICON VALLEY

iii

SKYRYSE'S OPP. TO MOOG'S MOT. TO ENFORCE
COMPLIANCE WITH MARCH 11 STIP. TRO AND SANCTIONS

*Glover v. BIC Corp.*,
6 F.3d 1318 (9th Cir. 1993) ............................................................................ 14

*GREE, Inc. v. Supercell Oy*,
No. 21-mc-80069-TSH, 2021 WL 1222487 (N.D. Cal. Apr. 1, 2021) ............. 18

*Hamilton v. Signature Flight Support Corp.*,
No. 05-cv-0490-CW(MEJ), 2005 WL 3481423 (N.D. Cal. Dec. 20,
2005) ............................................................................................................... 15

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
No. 17-cv-01613-CJC(DFMX), 2020 WL 816135 (C.D. Cal. Jan.
23, 2020) ................................................................................................... 21, 22

*In re Hitachi Television Optical Block Cases*,
No. 08-cv-1746-DMS(NLS), 2011 WL 3563781 (S.D. Cal. Aug. 12,
2011) ............................................................................................................... 13

*Laub v. Horbaczewski*,
No. 17-cv-6210-JAK(KSX), 2020 WL 7978227 (C.D. Cal. Nov. 17,
2020) ............................................................................................................... 14

*Lincoln Benefit Life Co. v. Fundament*,
No. 18-cv-000260-DOC(JDEx), 2018 WL 6133672 (C.D. Cal. Nov.
7, 2018) ........................................................................................................... 28

*LinTech Global, Inc. v. Versapro Group., LLC*,
No. 21-cv-10316, 2021 WL 7561430 (E.D. Mich. Dec. 10, 2021),
*report and recommendation adopted*, 2022 WL 838953 (E.D. Mich.
Mar. 21, 2022) ............................................................................................... 22

*Moser v. Health Ins. Innovations, Inc.*,
No. 17-cv-1127-WQH(KSC), 2018 WL 6735710 (S.D. Cal. Dec.
21, 2018) ......................................................................................................... 28

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
No. 15-ml-2668-PSG(JEMX), 2023 WL 1813530 (C.D. Cal. Feb. 7,
2023) ............................................................................................................... 28

*National Association of Radiation Survivors v. Turnage*,
115 F.R.D. 543 (N.D. Cal. 1987) ................................................................... 17

*Network Appliance, Inc. v. Bluearc Corp.*,
No. 03-cv-5665-MHP, 2005 WL 1513099 (N.D. Cal. June 27,
2005), *aff'd*, 205 F. App'x 835 (Fed. Cir. 2006)..........................................22, 29

*O'M & Assocs., LLC v. Ozanne*,
No. 10-cv-2130-AJB(RBB), 2011 WL 2160938 (S.D. Cal. June 1,
2011).............................................................................................................18

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
328 F.R.D. 543 (N.D. Cal. 2018) .................................................................15

*Porter v. City & Cnty. of San Francisco*,
No. 16-cv-03771-CW(DMR), 2018 WL 4215602 (N.D. Cal. Sept. 5,
2018).............................................................................................................14

*In re Real Estate Short Sales Inc.*,
No. 16-bk-11387-GM, 2019 WL 4180141 (C.D. Cal. Sept. 3, 2019) ..............19

*Sanchez v. Jiles*,
No. 10-cv-09384-MMM(OPx), 2012 WL 13005996 (C.D. Cal. June
14, 2012).......................................................................................................16

*Shaker v. Nature's Path Foods, Inc.*,
No. 13-cv-1138-GW(OPx), 2014 WL 12560695 (C.D. Cal. Feb. 7,
2014).............................................................................................................12

*Softketeers, Inc. v. Regal W. Corp.*,
No. 19-cv-00519-JWH(JDEX), 2023 WL 2024701 (C.D. Cal. Feb.
7, 2023).....................................................................................................18, 27

*Stevenson v. City & Cnty. of San Francisco*,
No. 11-cv-4950-MMC, 2015 WL 6177363 (N.D. Cal. Oct. 21,
2015).....................................................................................................11, 12, 15

*Storz Mgmt. Co. v. Carey*,
No. 18-cv-00068-TLN(DB), 2019 WL 2615755 (E.D. Cal. June 26,
2019), *reconsideration denied*, 2021 WL 516710 (E.D. Cal. Feb. 11,
2021).......................................................................................................*passim*

*Taggart v. Lorenzen*,
139 S. Ct. 1795 (2019) .................................................................................18

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
982 F.2d 363 (9th Cir. 1992) ........................................................................14

*United States v. Cal. Inst. of Tech.*,
No. 18-cv-5964-CAS(RAOx), 2020 WL 13547790 (C.D. Cal. Nov.
18, 2020)................................................................................................28

*Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*,
27 F.4th 622 (8th Cir. 2022).................................................................27

*Zubulake v. UBS Warburg LLC*,
220 F.R.D. 212 (S.D.N.Y. 2003)...........................................................17

**RULES**

Fed. R. Civ. P.
26(e)...................................................................................................1, 5
37 .........................................................................................................14
37(e)................................................................................................*passim*
37(e)(1)...........................................................................................11, 12

Fed. R. Evid.
702 ..........................................................................................................9
1101(b)...................................................................................................18

# I.     INTRODUCTION

To grant Moog's motion would require the Court to accept a version of the facts that is not credible or reasonable. Moog would have the Court believe that, just four days after Moog filed its complaint in March 2022, Skyryse voluntarily agreed to provide exhaustive document discovery with 100% accuracy in less than three weeks, under a stipulated order that would make any later supplementation a sanctionable violation. The Court would have to accept that Skyryse agreed to do so (1) without Moog identifying a single one of its allegedly misappropriated trade secrets; (2) without any input from Moog on what constitutes Moog's "non-public information" (which the stipulation never defines); and (3) without regard for Skyryse's obligations under Rule 26(e), which requires supplementation of discovery in a timely manner. To grant Moog's motion and award the punishing sanctions it demands, the Court would have to believe Skyryse agreed to an order that necessarily would be violated as Skyryse provided additional discovery after learning more about Moog's accusations, alleged trade secrets, and theories of the case. That is not what Skyryse agreed to.

Instead, Skyryse agreed to a stipulated order that it expected the parties would reasonably interpret and cooperate to implement. Skyryse reasonably expected the parties would work together so that Skyryse could search for and produce the information Moog alleged was impermissibly in Skyryse's possession (and which Skyryse never wanted or needed). Skyryse held up its end of that bargain, including by running an extraordinary number of overbroad search terms Moog provided— over one hundred thousand—and producing *over four terabytes* of data. In short, Skyryse has complied with the parties' stipulation, even though it is uniquely onerous and neither specific nor definite.

In a desperate attempt to meet the high evidentiary burden for contempt sanctions, Moog has assembled *thousands* of pages of expert declarations and exhibits that it claims show there is "Moog non-public information" illicitly in Skyryse's

possession, purportedly in violation of the parties' stipulation. But after taking minimal discovery regarding the accusations in Moog's motion, discovery Moog strongly resisted, Skyryse was able to confirm that Moog has no evidentiary basis for its motion. Even Moog's expert witnesses are unwilling or unable to commit that the so-called "Moog non-public information" on which Moog's motion is premised is either truly "Moog's" or "non-public."

In any event, Skyryse has diligently searched for and produced any Moog non-public information it could find, supplemented that production when additional information was located, and taken many steps to ensure it is not using information that even arguably could be Moog's. Skyryse also took seriously its obligations to preserve evidence, including by timely issuing litigation holds to its personnel and by preserving vast amounts of data. Skyryse also immediately disclosed to both Moog and the Court when it discovered in the early days of this case that a single employee, Alex Wang, deleted files in violation of Skyryse's express instructions, and it updated Moog and the Court on the results of its ongoing investigation. Skyryse's ongoing forensic investigation has since recovered all but two of those deleted files, confirmed that the majority are personal and irrelevant, and identified enough information about the remainder to dispel any concern about prejudice to Moog. On this record, Moog is not entitled to the drastic relief it seeks.

## II.   BACKGROUND

### A.   Skyryse acts swiftly to preserve evidence and immediately stipulates to produce relevant data.

Moog filed this lawsuit on March 7, 2022 with no notice to Skyryse. Skyryse immediately began investigating the accusations and taking reasonable steps to preserve relevant evidence. By March 9, 2022, Skyryse had issued litigation holds to thirty-four employees, including the nineteen who formerly worked for Moog.[1] (Dkt.

---

[1] Skyryse issued additional litigation hold notices to all of its approximately 70 employees between April 21-25, 2022.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

142-5 at 7-8.) Skyryse also implemented measures to preserve information on its networks, including emails and any other files saved by employees. (Koo Decl. ¶ 7.)

Skyryse also worked with Moog in an intense 36-hour period to quickly negotiate a "Stipulation and Proposed Order Regarding Production of Information, Data Preservation and Forensic Searches." (Dkt. 25 (the "Stipulated Order").) That stipulation reflected the parties' agreement on the preliminary relief that Moog sought: the preservation, production, and non-use by the Defendants of any "non-public information … of, from or belonging to" Moog. (*Id.*) It provided Defendants 21 days to produce to Moog "any and all originals and copies of all [Moog] non-public information," but never defined Moog's "non-public information." (*Id.*)

By its own terms, the Stipulated Order would dissolve once the "hearing on Plaintiffs' Motion for Preliminary Injunction takes place," which the parties stated they expected to occur within roughly two months, "and a final ruling on the merits is issued." (*Id.*). But that hearing never happened because Moog never pursued a motion for an injunction. Yet now, over a year later, Moog seeks sanctions for alleged violations of the Stipulated Order, which was intended to be in effect for only a matter of weeks.

**B.      Skyryse attempts to work in good faith with Moog to comply with the Stipulated Order.**

Skyryse has made every effort to honor the Stipulated Order. As both sides knew when entering the stipulation, Skyryse and Moog had a prior business relationship during which they exchanged confidential information. And Moog is a large incumbent in the industry about which myriad information is publicly available, for example, from the internet. Accordingly, Skyryse could not simply search for "Moog" among its records to produce the discovery required by the Stipulated Order, for that would sweep in irrelevant documents legitimately in Skyryse's possession. Rather, in addition to performing its own internal investigation, Skyryse tried

1    to cooperate with Moog to identify any "Moog non-public information" and root it

2    out of Skyryse's systems if it existed.

3       Moog signaled agreement with this cooperative approach, at least at first. On

4    March 17, 2022, Skyryse sought Moog's assistance in identifying "each file Plaintiff

5    alleges Defendants wrongfully acquired." (Dkt. 180-3 at 4.) This should have been

6    easy enough for Moog to provide given its allegations that it had detailed forensic

7    information regarding what was allegedly taken. (Dkt. 1 ¶¶ 133-140.) Moog gave

8    Skyryse a list of more than a hundred thousand file names and thousands of hash

9    values to use as search terms. (Dkt. 180-3 at 2-3.) Skyryse expressed its concerns

10    about the number and scope of the search terms, but Moog stated repeatedly that

11    they would be "*sufficient for Defendants to comply with the March 11, 2022 stipu-*

12    *lated order.*"[2] (*Id.*)

13       Skyryse took Moog at its word, and ran Moog's massive list of search terms

14    across a huge amount of data, including the email accounts of 33 employees, 33 lap-

15    tops, and more. (Dkt. 142-5 at 4.) Skyryse also explained the problems inherent in

16    Moog's search terms, including that they encompassed generic filenames (such as

17    *readme.txt* and *main.c*[3]) and files copyrighted by third parties. This resulted in "false

18    hits" on files not belonging to Moog. (Dkt. 76-7 at 2; Ex. A3 at 1.[4]) Still, Skyryse

19    produced responsive files "out of an abundance of caution" given the tight deadline,

20    despite Moog's failure to provide clarity on what it considered to be "non-public

21    information" (Dkt. 76-7 at 2), and even though Skyryse had "not determined these

22    files or any other files in Skyryse's possession contain any non-public information

23    belonging to Moog." (*Id.* at 3.)

24

25    ――――――――――
   [2] All emphases supplied unless otherwise noted.

26    [3] "Readme.txt" or "Readme.md" files are a ubiquitous form of documentation that

27    contain information about other files or programs, and *main.c* is a generic filename
   for a function universally used in programs written in the C programming language.
   (Baer Decl. ¶¶ 25, 62.)

28    [4] Unless otherwise noted, exhibit citations are to exhibits attached to the concurrently
   filed Declaration of Alexa Solimano.

**C.     Skyryse complies with the Stipulated Order despite Moog's unwillingness to cooperate.**

By April 1, 2022, in compliance with the deadline in the Stipulated Order, Skyryse had turned over a massive volume of information to iDS, the third-party forensic vendor the parties engaged to host certain discovery materials, and described to Moog the specific steps it had taken. (Dkt. 142-12 at 4.) In keeping with its Rule 26(e) obligations, Skyryse continued to supplement its discovery in the following weeks. Skyryse explained that it had made available more information than required and it had no way of confirming (1) whether the information it produced actually constituted "Moog non-public information"; *or* (2) whether Moog's overbroad search terms, which Moog had said were sufficient, had conclusively identified all such information. (Dkt. 76-7; Ex. A3.)

Instead of working with Skyryse to address any legitimate discovery concerns, Moog looked to turn the Stipulated Order into a weapon, accusing Skyryse of violating it any time Skyryse provided additional discovery after April 1. (Ex. A5 at 1; Dkt. 142-9.) Nevertheless, at tremendous expense, Skyryse continued to meet its obligations to supplement discovery on a rolling basis. This included turning over more than a dozen devices and forensic images containing more than *four terabytes* of data to iDS, making Skyryse's proprietary source code available for inspection, and producing thousands of business records to Moog.[5] Moog refused to explain what it viewed as its relevant "non-public information," claiming instead that burden was *entirely* on Skyryse. (*See* Dkt. 180-4 at 3 (stating the stipulation "does not require Moog to identify its trade secrets … or provide a specific list"); Mot. 30-31.) After Skyryse engaged new counsel in May 2022, Moog continued to rebuff Skyryse's requests to help identify Moog's "non-public information." (Exs. A6-A7.) This conduct cannot be squared with Moog's claims that it has been harmed by

---

[5] Moog, by contrast, has produced almost no discovery to date, and has reneged on prior agreements to produce specific categories of documents.

Skyryse's alleged possession of its trade secrets. If this were true, Moog would have been doing everything in its power to work with Skyryse to find and root out any such information. Instead, it has done the opposite—essentially telling Skyryse, "you find it on your own without any of our help."

If interpreted as Moog now does, the Stipulated Order would make compliance impossible. It would have required Skyryse in just 21 days to make a complete, error-free, and 100% comprehensive production of all Moog "non-public information" without defining that term and without regard for subsequent discovery in this complex civil action. According to Moog, the Stipulated Order does not even permit supplementation, and required Skyryse to have perfectly and presciently produced all such information before Moog had identified a single trade secret, made its initial disclosures of relevant witnesses and documents, answered Skyryse's discovery requests, or disclosed the factual bases for its allegations. This is not a reasonable interpretation of the parties' stipulation.

**D. Skyryse immediately notifies Moog and the Court of an employee's deletion of potentially relevant files.**

In keeping with its cooperative and diligent approach to investigating Moog's claims, Skyryse was forthcoming when it discovered a problem: the deletion of potentially relevant data by an engineer and former Moog employee named Alex Wang. Although Mr. Wang was not named as a defendant or accused in Moog's misappropriation allegations, he received Skyryse's litigation hold one day after Moog served its complaint, confirmed he understood his preservation obligations, and met with Skyryse's outside counsel in person. (Koo Decl. ¶¶ 6, 10.) Despite these efforts, Skyryse discovered that Mr. Wang had disobeyed its instructions and deleted 277 files from his computer.[6] (Dkt. 156 at 11-14.)

---

[6] Skyryse's forensics expert recently found an additional seven files and folders that Mr. Wang deleted, none of which are relevant to this dispute: two folders which stored the videogame files that Skyryse already produced to Moog, two folders which were empty at the time of deletion, one computer artifact that refers to a file

1    Skyryse's counsel promptly contacted Moog's counsel to share what they had

2    learned, then requested a conference with the Court. (*Id.* at 10.) At that conference,

3    Skyryse's counsel disclosed that some "information was deleted after the complaint

4    was filed" in what he described as "an alarming series of deletions." (Ex. A4, 19:4-

5    10.) He candidly explained that Skyryse did not "have anywhere near all the infor-

6    mation" and was "frantically working to uncover it." (*Id.*, 5:4-6:2.) Skyryse's coun-

7    sel did not "know the correlation between what was deleted and whether it was Moog

8    information," or whether or not the deleted information would be recoverable.

9    (*Id.*, 18:24-19:11.) Skyryse promised to continue its investigation, and it did.

10
11
### E.    Skyryse takes prompt action to investigate and recover the deleted files.

12    Skyryse investigated Mr. Wang's unauthorized deletions, terminated

13    Mr. Wang, and produced his devices for Moog's inspection. (Dkt. 156 at 11-14.)

14    Out of an abundance of caution and at great expense to the company, Skyryse also

15    put fifteen employees who previously worked for Moog on administrative leave, and

16    investigated each one before permitting any of them to return to work. (*Id.* at 11.)

17    Skyryse was able to ascertain that Mr. Wang's actions were an unfortunate,

18    but contained, occurrence: an employee acting in direct violation of the company's

19    orders and without its knowledge or authorization. Skyryse's investigation also con-

20    firmed that most of what Mr. Wang deleted had nothing to do with Moog. With the

21    help of its e-discovery vendor, by June 2022 Skyryse was able to recover 245 of the

22    277 files Mr. Wang deleted, the vast majority of which related to a videogame he

23    had loaded onto his Skyryse computer. For the 32 files that had not yet been recov-

24    ered, Skyryse explained that its efforts were ongoing, and provided Moog with the

25    file paths and names for 21 files. (*Id.* at Ex. A.) Skyryse has since recovered or found

26    matching copies of 30 of those 32 files, almost all of which appear to relate to wire

27    and cable schematics, and has made them available for Moog's inspection.

28    found on Mr. Wang's Google Drive (which file has been produced to Moog), and
      two system and application files without user content. (Bandemer Decl. ¶¶ 38-43.)

1    (Bandemer Decl. ¶¶ 23-24.) As of today, the only two files Skyryse's expert has

2    been unable to recover are a .pdf of what appears to be sheet music and another .pdf

3    of a wire schematic for which Skyryse has recovered multiple copies of similarly

4    named files. (Bandemer Decl. ¶¶ 24, 34-36.)

5
6        **F.   Moog withholds information needed for the litigation to progress
              while using the Stipulated Order as a weapon.**

7        More than a year into this lawsuit, it has barely progressed. The parties have

8    yet to exchange initial disclosures. Moog still has not properly identified the trade

9    secrets it asserts.[7] Moog continues to threaten Skyryse with a preliminary injunction

10   but has not pursued one—all while it has taken a year's worth of one-sided discovery

11   from Skyryse, the other defendants, and more than a dozen third parties.

12       Moog's present motion seeks extreme and potentially dispositive sanctions.

13   In a filing that includes over four thousand pages of exhibits and expert declarations,

14   Moog raises new issues over which the parties never met and conferred, including

15   claims that Moog's experts have identified "Moog non-public information" on

16   Skyryse devices that have been available to Moog for months. (Dkt. 399-3 ¶¶ 8-21.)[8]

17   But Moog fails to investigate or address the steps Skyryse has taken to comply, and

18   the expert declarations Moog uses to buttress its motion reflect *no* substantive facts

19   or analysis to support Moog's claims that Skyryse improperly possessed "Moog non-

20   public information" in violation of the Stipulated Order. Moog supplied voluminous

21   declarations from Kevin Crozier, a software engineer in the aviation industry, and

22   from Bruce Pixley, a forensics expert. These are the only witnesses Moog relies on

23   and they lack any firsthand knowledge of the facts of this case. When Skyryse sought

24

25   [7] Moog's trade secret identification is deficient and violates Judge McCarthy's Order
     compelling Moog to identify its trade secrets with specificity. (Dkt. 205.) Judge Roc-
26   coni has given Skyryse leave to file a motion to compel a specific identification in
     compliance with that Order, which it is preparing to do imminently.

27   [8] Moog claims it learned of the facts underlying its motion "within the past few
28   weeks." (Mot. 4.) But Moog's experts were reviewing the vast majority of docu-
     ments they cite on the iDS platform as early as April 1, 2022, and Moog specifically
     requested their production from iDS in August 2022. (Ex. A1.)

to depose them, Moog initially refused, insisting it was unnecessary because their "declarations merely cite to and summarize documents and data that have been produced and available to Skyryse for several months." (Ex. A8.) After Skyryse noted it would seek the Court's intervention, Moog eventually permitted their depositions, but sought to impose onerous restrictions. Then, at Mr. Crozier's deposition, Moog improperly instructed him not to answer questions regarding documents that undermined both of its experts' conclusions. (Ex. A10, 70:17-23, 71:11-22, 72:2-22, 74:17-75:4, 76:9-17.)

The reason Moog tried to shield its experts from the adversarial process soon became evident—its experts were in no position to opine that any of the materials they describe in their declarations are, in fact, Moog's non-public information. For example, Mr. Crozier had to admit ███████████████████████████ ███████████ "Moog non-public information" were either (1) ███████████ ████████ He did no ███████████████████████████████████ ███████████████████████████████████████████ ████████████ (Ex. A10, 30:22-31:12, 37:10-23, 79:5-15.) He also provides no technical or specialized knowledge, admitting that he did not ████ ████████████████████ and has no opinions ████████████████ ████████ (*Id.*, 139:6-11, 61:7-12.) Similarly, Mr. Pixley admitted that his review of ██████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████ (Ex. A9, 24:22-25:14, 22:8-14, 23:12-19, 24:1-9.) In short, neither expert provides an opinion that could actually assist the Court under Rule 702. To the contrary, they merely parroted the contents of documents produced by the parties, and repeated counsel's cursory and unsupported characterizations of them as allegedly "Moog non-public information."

1    The conclusions to which Moog and its experts leap are unwarranted. For ex-
2    ample, seizing on their use of similar names, Moog claims Skyryse stole Moog test-
3    ing environment software called "MDTE" and another program called "eRTOS."
4    But the evidence strongly suggests that these programs were developed and used by
5    Defendant Alin Pilkington years before he joined Moog, and are not Moog's propri-
6    etary information. (Baer Decl. ¶¶ 55-62, 68; *infra* § III.B.3.a-b.) Moog similarly
7    claims Skyryse took software audit checklists and planning documents. But those
8    types of documents are based on publicly-available industry standards, and Moog's
9    expert admitted ████████████████████████████████████████████████
10   ██████████████████████ (Dreikorn Decl. ¶¶ 53-95; *infra* § III.B.3.c.)

11       Finally, while Moog complains that Skyryse failed to produce certain "non-
12   public information" before April 1, 2022, Moog does not dispute that Skyryse vol-
13   untarily produced all of the documents identified in its motion in the course of dis-
14   covery, and that it did so for all but 40 documents prior to Moog's deadline to iden-
15   tify its trade secrets. Skyryse produced those 40 documents promptly after Moog
16   first brought them to its attention in a February 21, 2023 letter. And although Moog
17   accuses Skyryse of continuing to *use* Moog non-public information after
18   March 11, 2022 Moog fails to address the steps Skyryse has taken to ensure it is not
19   (Koo Decl. ¶¶ 14-17), and the most recent date Moog or any of its experts allege
20   Skyryse was "using" so-called "Moog" information is July 11, 2022—more than
21   nine months ago. (Dkt. 399-5 ¶ 93.)

22   **III.   MOOG'S MOTION SHOULD BE DENIED IN FULL.**

23       Moog asks the Court for one of the most severe sanctions available, an adverse
24   inference, before it has presented any proof of its claims and before a single fact
25   witness has been deposed. This is as unwarranted as it is premature. "Sanctions un-
26   der [the Court's] 'inherent powers must be exercised with restraint'" and "any sanc-
27   tion must be the least drastic available to adequately mitigate the prejudice [] suf-
28   fered." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136, 1150 (N.D.

1  Cal. 2012). Guided by these principles, and in view of the myriad deficiencies in
2  Moog's motion, the Court should deny it in full.

3  **A.    The spoliation sanctions Moog seeks are not warranted.**

4  The sanctions Moog seeks are unavailable for at least three reasons. First,
5  Skyryse took reasonable steps to preserve evidence and did not have the required
6  culpable state of mind. Second, Moog has failed to show that any material Mr. Wang
7  deleted was both relevant and irreplaceable, such that Moog suffered prejudice.
8  Third, Moog has failed to consider the availability of lesser sanctions, as is required.

9  **1.    Legal Standards for Spoliation**

10  It is Moog's burden to establish "(1) that the party having control over the
11  evidence had an obligation to preserve it at the time it was destroyed; (2) that the
12  records were destroyed with a culpable state of mind; and (3) that the evidence was
13  relevant to the party's claim or defense such that a reasonable trier of fact could find
14  that it would support that claim or defense." *Stevenson v. City & Cnty. of San Fran-*
15  *cisco*, No. 11-cv-4950-MMC, 2015 WL 6177363, at *3 (N.D. Cal. Oct. 21, 2015).
16  Where spoliation has occurred, courts consider these factors to determine what, if
17  any, sanction to impose: "(1) the degree of fault of the party who altered or destroyed
18  the evidence; (2) the degree of prejudice suffered by the opposing party; and
19  (3) whether there is a lesser sanction that will avoid substantial unfairness to the
20  opposing party." *Storz Mgmt. Co. v. Carey*, No. 18-cv-00068-TLN(DB), 2019 WL
21  2615755, at *4 (E.D. Cal. June 26, 2019), *reconsideration denied*, 2021 WL 516710
22  (E.D. Cal. Feb. 11, 2021).

23  Under Rule 37(e), a court must assess whether (1) the electronically stored
24  information at issue ("ESI") "should have been preserved"; (2) the non-moving party
25  "failed to take reasonable steps to preserve" it; (3) the ESI is "lost" and "cannot be
26  restored or replaced through additional discovery"; and (4) the moving party has
27  suffered prejudice "from loss of the information." Fed. R. Civ. P. 37(e)(1). Only if
28  those criteria are met, the Court "may order measures *no greater than necessary* to

cure the prejudice." *Id.* Severe sanctions of the type Moog seeks are only available if a party "acted with the *intent* to deprive another party of the information's use in the litigation," *id.* at 37(e)(2), and "the discovery violations threaten to interfere with the rightful decision of the case." *Storz*, 2019 WL 2615755, at *4.

### 2. Skyryse took reasonable steps to preserve evidence and did not act with a culpable state of mind.

Where a party has an obligation to preserve evidence, sanctions for spoliation are not appropriate without a showing that it "failed to take reasonable steps to preserve that evidence," Fed. R. Civ. P. 37(e), and destroyed evidence with a "culpable state of mind." *Stevenson*, 2015 WL 6177363, at *3; *see also Storz*, 2019 WL 2615755, at *4 (considering "degree of fault of the party who altered or destroyed the evidence"). Moog has made no such showing, and the opposite is true. Skyryse took proactive, reasonable steps to preserve and produce relevant evidence, not destroy it, including by promptly issuing litigation holds to all of its employees and implementing technological measures to preserve ESI.[9] *Supra* §§ II.A, II.D.

Moog argues that "the deletion of evidence was purposeful to avoid discovery in this case" (Mot. 25), but Skyryse's conduct proves otherwise. When Skyryse learned that Mr. Wang had disobeyed its express instructions and deleted files, Skyryse's counsel immediately informed Moog's counsel and the Court. *Supra* § II.D-E. Working diligently with two different forensics firms, Skyryse was then able to recover the vast majority of the files Mr. Wang had deleted.[10] *Supra* § II.E; *infra* § III.A.3. None of this reflects a "culpable state of mind" *for Skyryse*. It shows the actions of a responsible litigant that diligently and proactively

---

[9] Moog mentions that Skyryse did not issue litigation holds to some employees "until at least six weeks into the case" (Mot. 29), but does not argue (and so waives) that the hold issued to Mr. Wang one day after Moog served its complaint was unreasonable. *See Shaker v. Nature's Path Foods, Inc.*, No. 13-cv-1138-GW(OPx), 2014 WL 12560695, at *3 n.2 (C.D. Cal. Feb. 7, 2014).

[10] Perfection in recovery efforts is not required. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 Amendment ("[E]fforts to restore or replace lost information through discovery should be proportional to the apparent importance of the lost information to claims or defenses in the litigation.").

1   complied with its obligations to preserve evidence, and upon discovering that an
2   insubordinate employee disobeyed its orders, immediately took corrective actions.

3       Moog makes two other primary arguments, but neither is persuasive.

4       First, Moog argues the Court should impute intent to Skyryse for Mr. Wang's
5   clandestine and expressly prohibited deletions, citing *Colonies Partners v. County*
6   *of San Bernardino*, No. 18-cv-00420-JGB-SHK, 2020 WL 1496444, at *8 (C.D. Cal.
7   Feb. 27, 2020), *report and recommendation adopted*, 2020 WL 1491339 (C.D. Cal.
8   Mar. 27, 2020). But there, unlike here, the defendant corporation failed to even in-
9   form its employee of his obligation to preserve evidence. *Id.* By contrast, Skyryse
10  implemented a litigation hold ("the most appropriate mechanism" to ensure preser-
11  vation, *id.*), and had its counsel meet with Mr. Wang. *Supra* § II.D. Moog offers zero
12  evidence that Skyryse knew of, directed, or condoned Mr. Wang's misconduct,
13  which Skyryse has made every effort to remedy.

14      Under these facts, the law goes directly *against* Moog. For example, in *In re*
15  *Hitachi Television Optical Block Cases*, plaintiffs sought sanctions against Hitachi
16  for its employee's deletion of more than 80 gigabytes of data after the complaint was
17  filed. No. 08-cv-1746-DMS(NLS), 2011 WL 3563781 (S.D. Cal. Aug. 12, 2011).
18  The court declined to attribute the employee's intent to Hitachi, which had notified
19  the employee in advance of his obligation not to delete relevant evidence, had "vol-
20  untarily paid for the forensic recovery of the drive," and "never participated in any
21  attempt to cover up the deleting and did not in any way impede the recovery of all
22  relevant information." *Id.* at *15; *see also Gemsa Enters. v. Specialty Foods of Ala-*
23  *bama, Inc.*, No. 13-cv-00729-JAK(RZX), 2015 WL 12746220, *9-11 (C.D. Cal.
24  Feb. 10, 2015) (denying sanctions where employee's "alleged deletion of emails was
25  a substantial deviation from his employment duties" and "without [the employer's]
26  advance knowledge or permission"). Likewise, Skyryse should not be held respon-
27  sible for Mr. Wang's conduct where it instructed him to preserve evidence, was

28

transparent with Moog and the Court when it learned he had disobeyed, and has gone to great lengths to recover his materials.

Second, Moog claims an adverse inference is warranted because "the necessary culpable state of mind includes negligence." (Mot. 25.) But Moog shows no negligence by Skyryse, and the facts detailed above show Skyryse was diligent, not negligent. Mr. Wang's unexpected deletions were due to his deliberate violations of the company's instructions, not carelessness on Skyryse's part. *Supra* §§ II.D-E. In any event, Moog's position is contrary to law and hinges on a single case that *did not rely on a negligence standard*. *See FTC v. Lights of Am. Inc.*, No. 10-cv-1333-JVS(MLGx), 2012 WL 695008 at *7 (C.D. Cal. Jan. 20, 2012) (denying adverse inference where there was no evidence plaintiff "engaged *deliberately* in deceptive practices" or "*purposeful* wrongdoing"). Moreover, Moog's authority predates the 2015 amendment to Rule 37, after which an adverse inference is available "only upon finding that the party acted with the *intent* to deprive another party of the information's use," not negligence. Fed. R. Civ. P. 37(e); *see also Laub v. Horbaczewski*, No. 17-cv-6210-JAK(KSX), 2020 WL 7978227, at *17 (C.D. Cal. Nov. 17, 2020) (holding "'very severe' measures, such as adverse inference instructions, should not be used in the absence of a finding of intent"); *Galicia v. Nat'l R.R. Passenger Corp.*, No. 17-cv-8020-JFW(JCX), 2018 WL 6314191, at *6 (C.D. Cal. July 20, 2018) (similar). Moog's other cited authority confirms that an adverse inference "requires a showing of *intent* to deprive a party of the use of the ESI in the litigation." *See Porter v. City & Cnty. of San Francisco*, No. 16-cv-03771-CW(DMR), 2018 WL 4215602, at *4 (N.D. Cal. Sept. 5, 2018) (denying adverse inference because "[a]t most [defendant's] behavior amounts to gross negligence").[11] As described above, no evidence suggests Skyryse had such intent.

---

[11] Moog also cites *Glover v. BIC Corp.* for the proposition that "bad faith" is not required. (Mot. 24 (citing 6 F.3d 1318, 1329 (9th Cir. 1993)).) But even the pre-2015 authority cited by the court in *BIC* explains that a *further* finding of bad faith is not required where there is "willfulness or fault by the offending party." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992).

### 3.   Moog fails to establish that relevant information is irreplaceably "lost" or that Moog is prejudiced.

Moog is not entitled to sanctions unless it proves that the evidence at issue was "relevant to [a] claim or defense," *Stevenson*, 2015 WL 6177363, at *3; that the evidence is "lost" and "cannot be restored or replaced through additional discovery," Fed. R. Civ. P. 37(e); and that it has suffered prejudice from that loss, *id.*. Here, the majority of the deleted material has proved to be irrelevant, the amount of information that has not yet been recovered is minimal, and Moog has made no showing that it is not cumulative or replaceable by additional discovery.

Skyryse's initial forensic investigation identified 277 files that Mr. Wang deleted, 245 of which had been recovered as of Skyryse's June 14, 2022 report to the Court and were largely irrelevant personal files. (Dkt. 156 at 12-14.) As of today, Skyryse has been able to recover or locate documents matching 275 of the 277 files that Mr. Wang deleted. (Bandemer Decl. ¶ 7.) The only two files Skyryse has been unable to recover or match are a .pdf of what appears to be flute sheet music and another .pdf of a wire schematic for which Skyryse has recovered multiple copies of similarly named files. (Bandemer Decl. ¶¶ 24, 34-36.) The recovered material Mr. Wang deleted was not "lost" within the meaning of Rule 37(e). *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 552 (N.D. Cal. 2018).

Further, Moog cannot meet its burden to provide "concrete evidence" that the minimal amount of unrecovered material "would produce evidence favorable to" it. *Hamilton v. Signature Flight Support Corp.*, No. 05-cv-0490-CW(MEJ), 2005 WL 3481423, at *3 (N.D. Cal. Dec. 20, 2005) (denying sanctions). And its conclusory statement that "Moog has been prejudiced in that it can never access these documents, or investigate how they were used by Skyryse" (Mot. 26) is insufficient and ignores the availability of other discovery, such as native design files on Mr. Wang's Skyryse laptop. *See Storz*, 2019 WL 2615755, at *5 (finding even where documents' relevance "cannot be clearly ascertained because the documents no longer exist," the

1  moving party *still must provide* more than "vague and conclusory assertions" so that

2  the court has "information from which [it can] determine to what extent, or even if,

3  the ability to reach a rightful decision has been impaired"); *Sanchez v. Jiles*, No. 10-

4  cv-09384-MMM(OPx), 2012 WL 13005996, at *14 (C.D. Cal. June 14, 2012) ("The

5  availability of other sources or types of evidence, in addition to the despoiled evi-

6  dence may be considered by a court in determining if a sanction is warranted.") (ci-

7  tation omitted).

8      Moog's forensic expert, Mr. Pixley, offers no opinion ████████████

9  ██████████████████████████████████ and testified that he had

10  not identified a single ██████████████████ and that he had no

11  opinion ██████████████████████████████████

12  ██████████ (Ex. A9, 28:25-29:19, 30:17-20.) *Cf. Storz*, 2019 WL 2615755, at

13  *4-5 (denying sanctions where expert failed to attempt to recover missing infor-

14  mation). Moog also does not show that it took any other steps to determine the pos-

15  sible significance of Mr. Wang's two unrecovered files, such as analyzing the ESI,

16  computers, or forensic images it has from its own employment of Mr. Wang, nor has

17  it tried to depose him or others on the topic, or explored alternative means of discov-

18  ery. *See Sanchez*, 2012 WL 13005996, at *14 (holding court must consider alternate

19  sources for obtaining evidence when determining whether sanctions are warranted).

20  Nor is it at all likely that Moog could establish prejudice from a missing file of sheet

21  music and a single wire schematic for which Skyryse has produced multiple other

22  copies with similar filenames.

23      In summary, Skyryse has recovered nearly all of the information it learned

24  Mr. Wang deleted, most of which was indisputably irrelevant. With respect to the

25  two remaining files, Skyryse has provided Moog with ample information about those

26  files, which demonstrates a lack of prejudice to Moog.[12] On this record, Moog's

27

28  [12] For this reason, *National Association of Radiation Survivors v. Turnage* is inap-
posite; there, the court found prejudice where the deleted files "cannot be identified."
115 F.R.D. 543, 557 (N.D. Cal. 1987).

1   request for sanctions should be denied. *See Storz*, 2019 WL 2615755, at *5; Fed. R.

2   Civ. P. 37(e).

3       4.   **Moog does not address the availability of lesser sanctions.**

4       Finally, Moog seeks severe and potentially case-dispositive sanctions while

5   ignoring lesser sanctions that would be sufficient to cure any prejudice (which, as

6   shown above, is minimal or non-existent). Showing its true motives, Moog jumps to

7   seeking an adverse inference, an "extreme sanction" which "in practice … often ends

8   litigation" and "should not be given lightly." *Zubulake v. UBS Warburg LLC*, 220

9   F.R.D. 212, 219-20 (S.D.N.Y. 2003). But even where spoliation has occurred, courts

10   must consider whether there is a lesser sanction available. *Storz*, 2019 WL 2615755,

11   at *4; *see also Colonies Partners*, 2020 WL 1496444, at *9 ("The remedy should fit

12   the wrong, and the severe measures authorized by the subdivision should not be used

13   when the information lost was relatively unimportant or lesser measures … would

14   be sufficient to redress the loss."). Moog does not offer any analysis of whether other

15   remedies, such as additional discovery or preclusion of specific items of evidence,

16   would be sufficient. *Cf. Est. of Nunez v. Corr. Physicians Med. Grp., Inc.*, No. 16-

17   cv-1412-BEN(MDD), 2019 WL 1024397, at *2 (S.D. Cal. Mar. 4, 2019) (permitting

18   additional depositions and denying sanctions "[i]n all other respects"). Even if Moog

19   could establish spoliation (it cannot), the severe sanction of an adverse inference

20   would not be warranted.

21     **B.   Contempt sanctions are not warranted.**

22       1.   **Legal Standards for Contempt**

23       "Civil contempt ... consists of a party's disobedience to a specific and definite

24   court order by failure to take all reasonable steps within the party's power to com-

25   ply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695

26   (9th Cir. 1993). The party alleging civil contempt has the burden of demonstrating

27   that the alleged contemnor (1) "violated the court order, (2) beyond substantial com-

28   pliance, (3) not based on a good faith and reasonable interpretation of the order,

(4) by clear and convincing evidence." *Softketeers, Inc. v. Regal W. Corp.*, No. 19-cv-00519-JWH(JDEX), 2023 WL 2024701, at *15 (C.D. Cal. Feb. 7, 2023). Any doubts "must be resolved in favor of the party accused" of contempt, *O'M & Assocs., LLC v. Ozanne*, No. 10-cv-2130-AJB(RBB), 2011 WL 2160938, at *4 (S.D. Cal. June 1, 2011), and a court may not find a party in contempt if there is a "fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).

It is the moving party's burden to "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). The Court may only consider admissible evidence. Fed. R. Evid. 1101(b). And, although courts have "broad discretion" to determine an appropriate contempt sanction, a court "must impose the least possible sanction to coerce the contemnor to comply with the order." *GREE, Inc. v. Supercell Oy*, No. 21-mc-80069-TSH, 2021 WL 1222487, at *2 (N.D. Cal. Apr. 1, 2021).

### 2.  The Stipulated Order is not specific or definite and Moog's interpretation is unreasonable.

The Stipulated Order states that "each Defendant shall refrain from using" and by April 1, 2022 would produce "any *non-public information*, documents, records, files, or data in that Defendant's possession, custody or control … of, from, or *belonging to Plaintiff*." (Dkt. 25 ¶¶ 1-3.) This stipulation does not define Moog's "non-public information" or what it means for it to "belong[] to Plaintiff." Skyryse cannot independently determine what Moog subjectively considers to be its own "non-public information," especially without Moog's cooperation. And given the parties' past relationship, a simple search for the word "Moog" would be inadequate to identify any allegedly "non-public information" that is the subject of Moog's complaint. *Supra* § II.B. The relevant provisions of the Stipulated Order are neither "specific" nor "definite," meaning it cannot be the basis for a contempt finding. *Dual-Deck*, 10 F.3d at 695.

Skyryse reasonably expected the parties would cooperate to identify what Moog believed was its "non-public information." Moog refused. *Supra* § II.C. Moog's position was (and is) that it was solely Skyryse's responsibility to identify and produce all such information within just three weeks, and anything other than perfect and total "compliance" amounts to contempt. This is untenable and inconsistent with the law. To be the basis of contempt sanctions, an order must be "clear and unambiguous," *In re Real Estate Short Sales Inc.*, No. 16-bk-11387-GM, 2019 WL 4180141, at *6 (C.D. Cal. Sept. 3, 2019), so that a litigant "need not look beyond the four corners of the Order to determine its scope." *F.T.C. v. Data Med. Capital, Inc.*, No. 99-cv-1266-AHS-EEx, 2010 WL 1049977, at *24 (C.D. Cal. Jan. 15, 2010); *see also Real Estate Short Sales*, 2019 WL 4180141, *6 ("any ambiguities or uncertainties in such a court order must be read in a light favorable to the person charged with contempt").

Moog claims that the idea that it could have any "responsib[ility] for identifying the information that Skyryse must refrain from using is illogical." (Mot. 31.) But as the Court has correctly observed, Moog "is the only one who can know what it believes its trade secrets are"—not Skyryse, and not any former Moog employees.[13] (Dkt. 205 at 3 (rejecting Moog's suggestion that Skyryse can identify Moog's trade secrets by deposing Kim and Pilkington).) And while Moog argues that "non-public information" was deliberately chosen so the Stipulated Order would not be limited to trade secrets (Mot. 30), Moog does not explain how Skyryse is in any better position to identify what Moog views as non-public information as opposed to its trade secrets.

---

[13] Moog argues that Skyryse had the power to comply with Moog's rigid reading of the Stipulated Order because it "employed, and still employs, multiple former Moog employees who could help it" determine what Moog believes is its "non-public information." (Mot. 31.) But having sued two former Moog employees and Skyryse for allegedly misappropriating trade secrets, Moog cannot seriously contend it wants other former employees to disclose Moog's confidential information to Skyryse and its lawyers for purposes of discovery. This would contravene Paragraph 1 of the Stipulated Order, which prohibits Defendants from "accessing … *for any purpose*, any non-public information." (Dkt. 25 ¶ 1.)

1    The testimony of Moog's experts exposed how untenable Moog's position is.

2    Even they could not identify what constitutes Moog's non-public information, after

3    having access to Moog, its records and personnel, and the discovery Skyryse had

4    provided for many months. They did ███████████████████████ of the pur-

5    portedly "Moog non-public" documents listed in their declarations, or ██████████

6    ████████████████████████████████████ (Ex. A10, 26:15-22, 27:5-8; Ex.

7    A9, 22:8-23:2, 23:12-19.) Instead, they merely assumed that ████████████████

8    ██████████████████████████████████████████████████████

9    ████████████████████████ (Ex. A10, 22:4-27:9; Ex. A9, 20:9-20.) But that

10   assumption is unfounded, since this very sort of information includes materials that

11   are publicly available on the Internet and readily available from third parties. (Drei-

12   korn Decl. ¶¶ 53-95.)

13   Moog surely knows it has over-reached. This is why its counsel impermissibly

14   ██████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████

16   ████████████████████ For example, Mr. Crozier claims without factual support

17   that a particular checklist, ████████████████████████████ is

18   among Moog's "non-public information" purportedly in Skyryse's possession. (Dkt.

19   399-5 ¶¶ 20, 42 (citing HB0000696, BIRD0000079).) But a virtually identical

20   checklist based on the same government-adopted standard is readily available for

21   purchase from a third-party aviation consultant, ConsuNova, for which Mr. Crozier

22   works (Ex. A10, 68:11-23), so it cannot possibly be Moog's proprietary information.

23   (Dreikorn Decl. ¶¶ 63-66.) When shown ConsuNova's checklist at his deposition,

24   and asked to compare it to the matching document he claimed was Moog's non-

25   public information, ████████████████████████████████████████████

26   (Ex. A10, 70:17-23, 71:11-22, 72:2-22, 74:17-75:4, 76:9-17.) Counsel's motive is

27   obvious: the Stipulated Order does not prohibit the use of information available from

28   third-party or public sources such as these.

The Ninth Circuit's ruling in *Dual-Deck* is instructive. 10 F.3d 693. There, the district court had ordered contempt sanctions based on a violation of a stipulated protective order "prohibiting any use 'whatsoever' of information obtained in discovery except for preparation and trial of 'this action.'" *Id.* at 694-95. The district court found plaintiff violated this prohibition by making a request in a different case that "referred to discovery obtained" in the action. *Id.* The Ninth Circuit reversed, explaining that for the "order to comply with common sense, a reasonable reading must connect its prohibition to its purpose—protection against disclosure of commercial secrets." *Id.* at 695. The stipulated order's "provisions were written by defendants' lawyers, not the judge, to throw the biggest possible blanket over every kind of knowledge which might be obtained in the lawsuit, lest a secret be exposed," so a literal reading of the stipulated order "would be absurd." *Id.* After noting the plaintiff "went to great lengths to" comply, the court vacated the contempt order. *Id.* at 695-96.

That reasoning applies here: Moog's sweeping interpretation of this Stipulated Order would be "absurd," barring Skyryse from using information from public and third-party sources, and fails to connect the order's prohibitions to its purpose. *Id.* at 695. That purpose was to facilitate the "Production of Information, Data Preservation and Forensic Searches" for a roughly two-month period leading up to the preliminary injunction hearing. (Dkt. 25.) And like the plaintiff in *Dual-Deck*, Skyryse has gone to great lengths to comply with the order. *Supra* §§ II.A-C. This Court should not reward Moog's "spare-no-expense punitive expedition." *Dual-Deck*, 10 F.3d at 696; *see also Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. 17-cv-01613-CJC(DFMX), 2020 WL 816135, at *8 (C.D. Cal. Jan. 23, 2020) (denying sanctions in light of defendant's "overall efforts to comply with the injunction"). Moog's motion should be viewed in the context of Skyryse's extensive "overall efforts" to comply with the Stipulated Order's ambiguous terms, which are more than reasonable by any measure. *Supra* §§ II.A-C; *see also LinTech Global, Inc. v.*

*Versapro Group., LLC*, No. 21-cv-10316, 2021 WL 7561430, at *1 (E.D. Mich. Dec. 10, 2021) (similar), *report and recommendation adopted*, 2022 WL 838953 (E.D. Mich. Mar. 21, 2022).

### 3. **Skyryse has complied.**

Skyryse has complied with the Stipulated Order, notwithstanding Moog's attempt to hold Skyryse to an impossible standard and its refusal to take any steps that would help Skyryse locate Moog non-public information. Skyryse searched its systems using the more than 100,000 search terms Moog provided, repeatedly followed up with Moog to request additional information, kept Moog involved in the process by recounting in detail the steps it had taken to comply, and supplemented when appropriate. *Supra* §§ II.B-C. On April 1, 2022, Skyryse "out of an abundance of caution" turned over every possibly relevant piece of information it had located to date, even though this was overinclusive. *Supra* § II.C. Skyryse has continued to produce anything that could even arguably constitute Moog's non-public information as soon as any party identifies it. *Id.* Skyryse has also taken extensive steps to ensure that its personnel are not using anything that is arguably Moog's non-public information. *Supra* §§ II.A, II.F. There is no basis to hold Skyryse in contempt on this record. *Harbor Breeze*, 2020 WL 816135, at *4 (no contempt in light of "Defendants' overall efforts to comply with the injunction"); *Network Appliance, Inc. v. Bluearc Corp.*, No. 03-cv-5665-MHP, 2005 WL 1513099, at *1 (N.D. Cal. June 27, 2005) (similar), *aff'd*, 205 F. App'x 835 (Fed. Cir. 2006).

Despite Skyryse's record of reasonable efforts to comply, Moog claims Skyryse should be held in contempt for: (1) allegedly spoliating potentially relevant information and (2) using Moog's purportedly non-public information after March 11, 2022 and failing to produce it after April 1, 2022. (Mot. 27-28.) Moog's spoliation claim fails for the reasons described above in Section III.A. Its other argument fails for the reasons described below.

1    As an initial matter, Skyryse *has produced* all of the documents and metadata
2    identified in Moog's motion. *Supra* § II.F. It has also taken substantial measures to
3    ensure its personnel cannot use without authorization anything that could arguably
4    constitute Moog's non-public information, even though none of the materials Moog
5    identifies in its motion have been proven to contain such information. (Koo Decl.
6    ¶¶ 14-17.) Skyryse has thus complied with the Stipulated Order.

7    Moreover, Moog has failed to meet its burden to demonstrate by clear and
8    convincing evidence that the information allegedly used by Skyryse after March 11
9    or not produced by April 1 constitutes "Moog non-public information." Moog relies
10   exclusively on its experts to support its claim. (Mot. 28; *see also, e.g.*, Dkt. 399-
11   3 ¶ 22; Dkt. 399-5 at 13, 17, 22, 49 (describing "Evidence of Misappropriation").)
12   But Moog's experts admitted that ███████████████████████████████████████
13   ███████████████████████████████████████████████████████████████████████
14   ███████████  *Supra* § II.F. They did not ███████████████████████████████
15   ███████  (*See, e.g.*, Ex. A10, 26:15-22, 27:5-8.) Instead, Moog and its experts point to
16   the fact that certain documents "1) contain 'Moog' in their face or in their metadata;
17   and/or 2) are copied from corresponding Moog documents based on identical struc-
18   ture or word-for-word copying of numerous sections." (Mot. 18, 28.) But it is the
19   substance of a document, not its label or form, that matters—especially where it is
20   undisputed that documents bearing Moog's proprietary and confidentiality legends
21   can readily be found publicly. (Dreikorn Decl. ¶¶ 55-58.) And the purportedly "strik-
22   ing" side-by-side comparisons in Moog's experts' declarations are useless, as many
23   of those documents are virtually identical to materials that are publicly available
24   online. (Dreikorn Decl. ¶¶ 66, 84, 89, 94.)

25   Skyryse's experts, unlike Moog's, *have* analyzed the documents and source
26   code Moog claims were misappropriated by Skyryse and its personnel. Their analy-
27   sis demonstrates that the information either is not used at Skyryse, does not belong
28   to Moog, is publicly available or readily ascertainable from non-Moog sources, or

all three. (Baer Decl. ¶¶ 33-94; Dreikorn Decl. ¶¶ 53-95.) At bottom, Moog fails to establish by clear and convincing evidence that Skyryse is using "Moog non-public information" in violation of the Stipulated Order.

### a.   Desktop Test Environment

Moog claims Skyryse violated the Stipulated Order through "continued use of Moog's MDTE software test framework after March 11, 2022 for Skyryse's copycat SDTE test framework." (Mot. 21.) Out of an abundance of caution, Skyryse months ago took steps to ensure that the source code for the SDTE framework is no longer used at Skyryse. (Koo Decl. ¶ 15; Baer Decl. ¶ 54.) But, in any event, Moog cannot meet its burden to show that the code contains Moog non-public information. The evidence shows Mr. Pilkington developed the code at issue before he ever worked for Moog (Baer Decl. ¶¶ 55-62; Bandemer Decl. ¶ 50), and Moog has provided no evidence suggesting it owns work product Mr. Pilkington developed prior to his employment there.[14]

### b.   Real-Time Operating System (RTOS)

Moog claims that Skyryse violated the Stipulated Order because "Skyryse's sRTOS program" is "essentially identical to Moog's eRTOS program" and Skyryse used it after March 11 and failed to produce documents related to it by April 1, 2022. (Mot. 21; *see also* Dkt. 399-5 ¶¶ 98-112.) Once again, out of an abundance of caution, Skyryse months ago took steps to ensure that any files or directories in the sRTOS source code that could even arguably be Moog's are no longer used at Skyryse. (Koo Decl. ¶ 16; Baer Decl. ¶ 67.) As Moog's expert acknowledges, real-time operating systems (RTOS's) are used widely in industry. (Ex. A10, 109:5-15.) But Moog's expert did not ███████████████ to substantiate Moog's claim that Skyryse's sRTOS is "essentially identical" to eRTOS or even investigate

---

[14] Moog's expert Mr. Pixley also points to "RBT spreadsheets" on Eric Chung's Skyryse laptop, which he claims show Skyryse used SDTE after March 11. (Dkt. 399-3 ¶¶ 15-19.) But Mr. Pixley does not assert that any of these spreadsheets contains Moog non-public information, and Skyryse's expert has confirmed that they (and SDTE) do not. (Baer Decl. ¶¶ 63-65.)

1   whether eRTOS ████████████████████████ (*Id.*, 110:11-22, 113:23-114:1,

2   115:14-19.) Skyryse's expert, on the other hand, did review the code and has both

3   confirmed that sRTOS is significantly *different* from eRTOS and identified an earlier

4   version of the RTOS code on Mr. Pilkington's personal computer that predates his

5   time at Moog, undermining Moog's assertion that the eRTOS code constitutes *Moog*

6   non-public information. The documentation on which Moog's expert relies (appar-

7   ently as a substitute for the source code that he failed to review) is based on templates

8   and concepts that are widely used and not proprietary to Moog. (Baer Decl. ¶¶ 67-

9   71.)

10                    c.    **Software Checklists and Standard Templates**

11          Moog dedicates many pages to comparing software planning and certification

12   documents exchanged by Skyryse contractors Lori Bird and Hummingbird to those

13   found on Mr. Pilkington's Moog-issued laptop.[15] (Mot. 18-19, 27-28; Dkt. 399-3 ¶¶

14   8-9, 22-43; Dkt. 399-5 ¶¶ 19-93, 113-116.) The majority of these documents are

15   software development checklists that Skyryse, out of an abundance of caution, has

16   replaced with checklists it purchased from a third-party consultant, ConsuNova.

17   (Koo Decl. ¶ 17.) This includes the exemplary ConsuNova checklist that █████████

18   ████████████████████████████████████

19          In any event, not only are these software documents generic and highly similar

20   to materials readily available from third parties, many of them are based on FAA-

21   adopted industry standards for software planning and certification. (Dreikorn Decl.

22   ¶¶ 53-95; Baer Decl. ¶¶ 33-52.) Moog's experts rely heavily on visual comparisons

23   of excerpts of certain documents, without having ██████████████████████████

24   ████████████████████████████████████████ *Supra* § II.F. Nor

25   could they accurately: Skyryse's experts have identified those same structures and

---

[15] Not included in Moog's motion, but mentioned in Mr. Pixley's declaration, are certain documents found on the Skyryse laptop of Sathya Achar, Skyryse's former Head of Systems and Software. (Dkt. 399-3 ¶ 8-9.) These documents largely consisted of publicly-available and third-party standards. (Dreikorn Decl. ¶¶ 60-61.)

1  diagrams in public-domain information. (Dreikorn Decl. ¶¶ 66, 84, 89, 94; Baer

2  Decl. ¶¶ 36-41, 46-50.) For example, the exact JIRA permissions diagram Moog's

3  expert identifies as a "Moog Figure" (Dkt. 399-5 ¶ 55) is publicly available online

4  from JIRA's third-party provider, Atlassian. (Baer Decl. ¶ 41.) At deposition, Mr.

5  Crozier refused to commit that the ███████████████ (Ex. A10, 132:6-133:6.)

6              d.    **Tri Dao and Reid Raithel**

7         Although not explicitly referenced in Moog's motion, Mr. Pixley briefly de-

8  scribes the purported transfer of files from the Moog laptops of two former Moog

9  employees, Tri Dao and Reid Raithel. (Dkt. 399-3 ¶¶ 20-21, 46-49.) He does not

10  allege that any of these files were ever used at Skyryse, and there is no evidence they

11  were. Nonetheless, Skyryse's expert confirmed that all 7,679 of Mr. Dao's files re-

12  late to Arduino, a platform whose software is distributed on an "open source" basis,

13  freely available to the public. (Baer Decl. ¶¶ 92-94.) And the *only one* of Mr.

14  Raithel's files Mr. Pixley claims is "Moog nonpublic information" is a list of poten-

15  tial hires (many of whom never even worked at Moog) which contains information

16  publicly available from LinkedIn. (*See* Dkt. 399-4 Exs. L & M.) None of this can

17  constitute Moog's non-public information.

18              e.    **Ms. Kim's MacBook**

19         Moog also claims that Skyryse failed to produce Ms. Kim's Skyryse-issued

20  Mac laptop. (Mot. 32.) But Skyryse confirmed in an interrogatory response nearly a

21  year ago that this MacBook was wiped and repurposed for another employee's use

22  before this case was filed. (Ex. A2.) This cannot possibly be a violation of a stipu-

23  lated order that did not exist at the time. And out of an abundance of caution, Skyryse

24  preserved an image of the repurposed computer.

25

26         At bottom, there is no basis on this record to hold Skyryse in contempt. *Soft-*

27  *keteers* is instructive; there, plaintiff moved for contempt claiming violations of a

28

preliminary injunction that required defendant to delete, destroy, and not use plaintiffs' source code. 2023 WL 2024701, at *13. Like Moog, plaintiff argued that the parties' source code "appear[ed] virtually identical" and that the "likelihood that such similarities occurred independently, by chance, is vanishingly small." *Id*. at *16. Even though the jury determined misappropriation occurred while the injunction was in force, the court denied the contempt motion. *Id.* at *17. It focused on defendant's good-faith "compliance with the preliminary injunction" and found that plaintiff had "not presented clear and convincing evidence" that defendant knew it was using source code impermissibly derived from plaintiff's. *Id*.; *see also Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, 27 F.4th 622, 625 (8th Cir. 2022) (affirming denial of contempt motion where movant's expert had not analyzed non-movant's source code, and expert's "hunch" was "not enough to make a prima facie showing of a violation of the injunction"). Moog similarly has failed to present clear and convincing evidence that Skyryse knowingly engaged in any conduct prohibited by the Stipulated Order, and Skyryse's good-faith efforts to comply are manifest. *Supra* §§ II.B-D.

### 4.  **Moog is not entitled to the relief it requests.**

Moog seeks (1) an adverse inference; (2) access to inspect Skyryse's computer systems; (3) the production of numerous additional devices; and (4) monetary sanctions. Moog is not entitled to an adverse inference for the reasons described above in Section III.A.2, nor the other relief it seeks for the reasons described below.

Moog argues it is entitled to inspect Skyryse's systems "because Skyryse has proven it cannot be trusted to identify Moog's non-public information" and "permitting physical inspection by Moog's experts is now the only way to ensure that all Moog non-public information will be excised from Skyryse's systems." (Mot. 32.) Moog has made no showing whatsoever it is entitled to such an intrusive, extreme remedy. Moog's argument ignores its refusal to help Skyryse, and that even its own experts cannot identify Moog's "non-public information" despite unfettered access

1    to four terabytes of discovery from Skyryse—nearly 300 million pages worth of

2    data—provided over the last year. *Supra* §§ II.F, III.B.3. "Permitting forensic in-

3    spection is an 'extraordinary remedy that requires substantial support'" that Moog

4    has not provided. *United States v. Cal. Inst. of Tech.*, No. 18-cv-5964-CAS(RAOx),

5    2020 WL 13547790, at *7 (C.D. Cal. Nov. 18, 2020); *see also Lincoln Benefit Life*

6    *Co. v. Fundament*, No. 18-cv-000260-DOC(JDEx), 2018 WL 6133672, at *3 (C.D.

7    Cal. Nov. 7, 2018) (collecting cases).

8        Moog comes nowhere close to justifying such an "extraordinary remedy,"

9    which is underscored by its reliance on *Advantacare Health Partners v. Access IV*,

10   No. 03-cv-04496-JF, 2004 WL 1837997, at *7 (N.D. Cal. Aug. 17, 2004). Even in

11   that case, where, unlike here, defendants' behavior had "demonstrated wilfulness

12   [*sic*], fault, and bad faith" and caused "prejudice to Plaintiffs on the merits of the

13   case," the court still found it "unclear whether these circumstances are extraordi-

14   nary." *Id.* Rather than order unfettered access to inspect defendants' systems, as

15   Moog demands, the court ordered the parties to first "meet and confer to determine

16   which files remain to be deleted"—as Skyryse has tried to do for the past year. *Id.*

17   at *9. Moog demands that Skyryse produce numerous devices and *all of their con-*

18   *tents*—with no showing of relevance or proportionality—simply because the names

19   of people using those devices appear on emails Moog claims reflect the transmission

20   of its "non-public information." (Mot. 19, 32.) This is insufficient. *See Moser v.*

21   *Health Ins. Innovations, Inc*., No. 17-cv-1127-WQH(KSC), 2018 WL 6735710, at

22   *3-5 & n.1 (S.D. Cal. Dec. 21, 2018) (declining to compel inspection of "any cell

23   phones that used or have used" telephone numbers identified in the complaint).

24       Monetary sanctions, while a far lesser sanction than the requested adverse in-

25   ference, are also inappropriate for similar reasons, including because Skyryse has

26   complied with the Stipulated Order and there is no misbehavior to punish. *See In re*

27   *Nat'l Football League's Sunday Ticket Antitrust Litig*., No. 15-ml-2668-

28

1  PSG(JEMX), 2023 WL 1813530, at *17 (C.D. Cal. Feb. 7, 2023); *Network Appli-*

2  *ance*, 2005 WL 1513099, at *3 (denying sanctions where "defendant made a reason-

3  able effort to respond to the court's order to compel, producing the vast majority of

4  responsive documents by the court-imposed deadline and promptly supplementing

5  those disclosures"), *aff'd*, 205 F. App'x 835 (Fed. Cir. 2006). Moog's legal authority

6  for its request for monetary sanctions (Mot. 33-34) does not require a different result,

7  as those cases (unlike this one) involved unambiguous court orders which were

8  clearly violated by the party being held in contempt.

9  **IV.    CONCLUSION**

10        For the foregoing reasons, Skyryse respectfully requests that the Court deny

11  Moog's Motion.

12

13  Dated:  April 24, 2023                         Respectfully submitted,

14                                                 LATHAM & WATKINS LLP

15                                                 By:  */s/ Gabriel S. Gross*

16                                                      Douglas E. Lumish (SBN 183863)
                                                        Gabriel S. Gross (SBN 254672)
17                                                      Arman Zahoory (SBN 306421)
                                                        Rachel S. Horn (SBN 335737)
18                                                      Menlo Park, California 94025
                                                        Telephone: (650) 328-4600
19                                                      Facsimile: (650) 463-2600
                                                        Email: doug.lumish@lw.com
20                                                      gabe.gross@lw.com
                                                        arman.zahoory@lw.com
21                                                      rachel.horn@lw.com

22
                                                       *Attorneys for Defendant and Counter-*
23                                                     *claimant, Skyryse, Inc.*

24

25

26

27

28

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2      The undersigned, counsel of record for Defendant-Counterclaimant

3   Skyryse, Inc., certifies that this brief contains **8,983** words, which:

4      __ complies with the word limit of L.R. 11-6.1.

5      <u>X</u> complies with the word limit set by court order dated April 17, 2023.

6

7   Dated: April 24, 2023

8                          LATHAM & WATKINS LLP

9

10                         By /s/ Gabriel S. Gross

11                         Gabriel S. Gross
                           *Attorney for Defendant and Counterclaimant*
12                         *Skyryse, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28