Rena Andoh (admitted *pro hac vice*)
  randoh@sheppardmullin.com.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Lai L. Yip (SBN 258029)
  lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

Travis J. Anderson (SBN 265540)
  tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691

Kazim A. Naqvi (SBN 300438)
  knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

Attorneys for Plaintiff and
Counterdefendant Moog Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>             Plaintiff,<br><br>      v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS.1-50,<br><br>             Defendants.<br><br>SKYRYSE, INC.,<br><br>             Counterclaimant, | Case No. 2:22-cv-09094-GW-MAR<br><br>*Hon. Margo A. Rocconi*<br><br>**PLAINTIFF AND COUNTER-DEFENDANT MOOG INC.'S REPLY IN SUPPORT OF MOOG INC.'S MOTION TO ENFORCE COMPLIANCE WITH THE COURT'S ORDERS (DKTS. 25, 109 53, 272, 292), AND FOR MONETARY SANCTIONS FOR CONTEMPT**<br><br>Date:     May 10, 2023<br>Time:    11:00 a.m.<br>Place:   Courtroom 790 |

vs.

MOOG INC.,

Counterdefendant.

Complaint Filed:    March 7, 2022
Counterclaims Filed: January 30, 2023

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................... 1

II.     ARGUMENT ................................................................................. 3

        A.     Moog Properly Met and Conferred with the Individual
               Defendants as Required by Local Rule 7-3 ......................... 3

               1.     The Long and Extensive Meet and Confer Record .................. 3

               2.     Moog Complied with Local Rule 7-3 ....................................... 7

               3.     Individual Defendants' Legal Authority is Inapposite .............. 8

        B.     Individual Defendants Remain in Contempt of Several Court
               Orders ................................................................................... 10

               1.     Individual Defendants Have Intentionally Violated the
                      Judge McCarthy Order and Judge Vilardo Order .................. 11

               2.     Individual Defendants Have Intentionally Violated the
                      Court's November 10 Order ................................................... 12

               3.     Individual Defendants Have Intentionally Violated the
                      TRO and Inspection Protocol ................................................ 14

               4.     The Individual Defendants' Cited Authority is
                      Distinguishable or Supports Moog's Positions ...................... 16

        C.     Monetary Sanctions Are Appropriate ................................. 18

               1.     Moog Has Been Prejudiced and is Entitled to Recover its
                      Attorneys' Fees and Costs in Connection with the Motion ..... 18

               2.     Individual Defendants' Alleged Financial Condition
                      Does Not Excuse Compliance with Court Orders .................. 20

               3.     Individual Defendants' Attempted to "Resolve" the
                      Dispute By Conducting an Improper Fifth Amendment
                      Privilege Review .................................................................. 21

III.    CONCLUSION .............................................................................. 22

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Federal Cases</u>

*Adriana Intl. Corp. v. Lewis & Co.*
913 F.2d 1406 (9th Cir. 1990) ............................................................. 14

*Armstrong v. Brown*
939 F. Supp. 2d 1012 (N.D. Cal. 2013) ........................................ 16, 17

*Burt Hill, Inc. v. Hassan*
2010 WL 55715 (W.D. Pa. 2010) ....................................................... 13

*Danner v. Himmelfarb*
858 F.2d 515 (9th Cir. 1988) .............................................................. 14

*Dinkins v. Schinzel*
2022 WL 3347044 (D. Nev. Aug. 12, 2022) ....................................... 16

*Ewing v. GoNow Travel Club, LLC*
No. 19-CV-297-BAS-AGS, 2019 WL 4688760 (S.D. Cal. Sept. 26, 2019) ..... 20

*Frankl v. HTH Corp.*
832 F. Supp. 2d 1179 (D. Haw. 2011) ......................................... 17, 18

*Gianelli v. Home Depot, Inc.*
No. 2:13-CV-01969-JAM, 2014 WL 5430480 (E.D. Cal. Oct. 24, 2014) ......... 19

*Goldwater Bank, N.A. v. Elizarov*
No. 5:21-cv-00616-JWH, 2022 WL 17078950 (C.D. Cal. Oct. 7, 2022) .......... 10

*Gordon v. County of Alameda*
No. CV-06-02997-SBA, 2007 WL 1750207 (N.D. Cal. June 15, 2007) ........... 20

*Guru Denim, Inc. v. L.A. Idol Fashion, Inc.*
No. CV 08-1798-GW(RCx), 2012 U.S. Dist. LEXIS 10363 (C.D. Cal. Jan. 25, 2012) ................................................................... 17

*Pina v. Lewis*
717 F. Appx. 739 (9th Cir. 2018) ......................................................... 9

*Pina v. Lewis*
  No. C 10-3784 RMW (PR), 2015 WL 1906111 (N.D. Cal. Apr. 27,
  2015), aff'd, 717 F. App'x 739 (9th Cir. 2018)....................................................10

*Prasad v. Cnty. of Sutter*
  No. 2:12-CV-00592 TLN, 2013 WL 3773894 (E.D. Cal. July 17, 2013) .........19

*Stanley Black & Decker, Inc. v. D & L Elite Invs., LLC*
  No. 12-4516 SC, 2013 WL 3799583 (N.D. Cal. July 19, 2013)..................20, 21

*Tri-Valley CARES v. U.S. Dep't of Energy*
  671 F.3d 1113 (9th Cir. 2012).............................................................................9

*United States v. Hubbell*
  530 U.S. 27 (2000). (*Id.*) .................................................................................13

*V5 Techs. v. Switch, Ltd.*
  334 F.R.D. 297 (D. Nev. 2019) ..................................................................3, 8, 9

*Westside Shepherd Rescue of Los Angeles, Inc. v. Pollock*
  No. CV 09-3677-GW(Ex), 2010 WL 11520530 (C.D. Cal. Jan. 14, 2010) ......17

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Fifth Amendment..........................................................................................passim

FRCP 37(b)..........................................................................................................20

FRCP 37(b) and (d) .............................................................................................14

FRCP 37(d)...........................................................................................................20

L. R. 7-11(a) ..........................................................................................................9

State: Statutes, Rules, Regulations, Constitutional Provisions

Rule 7-3...........................................................................................................passim

Rule 37(a)(5)(A) ..................................................................................................19

1

## I.    <u>INTRODUCTION</u>

2   Instead of taking accountability, the Individual Defendants double down on

3 their blatant refusal to comply with multiple Court orders over the past 6 months.[1]

4   With no legal or factual support for their actions, and in an effort to distract

5 from their repeated violations of Court orders, the Individual Defendants begin by

6 arguing that Moog did not comply with the Court's pre-filing meet and confer

7 requirements under Rule 7-3. But, as the written record before the Court (including

8 the Naqvi Declaration, Dkt. 432-1) plainly demonstrates: 1) Moog has repeatedly

9 attempted to informally resolve this dispute since the issuance of the November 10,

10 2022 Order; 2) the Parties engaged in an extensive telephonic meet and confer on

11 March 21, 2023; 3) during the telephonic meet and confer, Moog's counsel

12 specifically identified certain of the Court orders that the Individual Defendants

13 were violating (including their holdings), advised the Individual Defendants they

14 were in "contempt" of such orders, and that Moog would seek to enforce such

15 orders and reserved the right to seek sanctions; 4) Moog's counsel sent an e-mail

16 immediately after the telephonic meet and confer confirming what was discussed,

17 and identifying the exact relief that Moog now seeks in this Motion (to which the

18 Individual Defendants never responded to); and 5) Moog later advised the

19 Individual Defendants, consistent with the prior correspondence, it was filing a

20 "Motion for Contempt" (to which the Individual Defendants never responded until

21 after Moog filed its Motion). Moog complied with Local Rule 7-3 both in letter

22 and spirit, and the Individual Defendants cite no legal authority demonstrating

23 otherwise.

24   The Individual Defendants then incredibly assert that they are not in

25 violation of any of the five Court orders addressed in the Motion. Regarding the

26 Judge McCarthy Order and Judge Vilardo Order, the Individual Defendants argue

27

---

28 [1] Defined and Capitalized terms herein shall have the same definition as set forth in Moog's Motion.

those orders did not address the communications at issue. That is patently false, as both orders specifically address and reject the "act of production" arguments the Individual Defendants are now raising for at least the third time. Both orders unambiguously state that the iDS Electronic Devices, ***and their contents***, are not subject to any Fifth Amendment privilege. By refusing to produce the communications from iDS Electronic under the November 10 Order due to a Fifth Amendment assertion, the Individual Defendants are clearly violating the Judge McCarthy Order and Judge Vilardo Order. While the Individual Defendants concede they are not complying with the November 10 Order, they argue new circumstances (consisting of the FBI continuing its investigation and serving an additional subpoena) justify their continued Fifth Amendment assertion. Not so. Rather, the Judge McCarthy Order and Judge Vilardo Order are unambiguous and without limitation, and no subsequent circumstances change the fact that the Individual Defendants have no Fifth Amendment to assert over the iDS Electronic Devices.

Finally, the Individual Defendants claim they should not be sanctioned because of their alleged financial condition, and there is no prejudice to Moog. The prejudice is evident. Moog has already incurred substantial burden and legal expense to obtain the Individual Defendants' compliance with the Court orders addressed in the Motion. It should be compensated for its unnecessary expense, and the Individual Defendants must be deterred from violating this Court's authority moving forward. And, the law is unambiguous that the Court's orders apply to all litigants equally, and alleged financial condition does not excuse compliance with the Court's orders, especially here where the Individual Defendants have been represented by highly qualified counsel throughout this case.

II.  <u>ARGUMENT</u>

    A.  **Moog Properly Met and Conferred with the Individual**
       **Defendants as Required by Local Rule 7-3**

    Local Rule 7-3 provides: "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference must take place at least 7 days prior to the filing of the motion." However, "litigants should not expect courts to look favorably on attempts to use the prefiling conference requirements as procedural weapons through which to avoid complying with their discovery obligations." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 302 (D. Nev. 2019)

    The Individual Defendants' do not dispute that a telephonic meet and confer took place on March 21, 2023. (Opp., p. 10.) Rather, they argue that the conference "pertained to a discovery dispute," not a "potential civil contempt proceeding." (*Id.*) They also claim that "contempt or a contempt motion was never raised before or during the conference" and that the parties did not "thoroughly" discuss a "number of critical substantive issues raised in Moog's motion." (*Id.*, p. 11.) However, the written meet and confer record, much of which the Individual Defendants conveniently omit from their Opposition, shows that Moog plainly met the requirements of Local Rule 7-3, identified certain of the Court orders at issue in this Motion, and identified the exact relief that Moog seeks in this Motion.

    **1.  The Long and Extensive Meet and Confer Record**

       **a.  Written Correspondence Before the March 21, 2023**
          **Telephonic Meet and Confer**

    As demonstrated in the moving papers, after the Court's November 10 Order, Moog conferred with the Individual Defendants' prior counsel several times regarding the production of the Court-ordered communications. (Dkt. 432-1, Ex. A.) After several follow ups, on December 7, 2022, the Individual Defendants'

1  prior counsel committed to producing the Communications "toward the end of next

2  week." (*Id*., p. 7.) No communications were produced and after additional follow

3  up, Moog heard nothing from the Individual Defendants' prior counsel. (*Id*.)

4      On March 3, 2023, Moog's counsel sent an e-mail to Individual Defendants'

5  prior counsel, seeking a final meet and confer regarding the Individual Defendants'

6  failure to comply with the November 10 Order. (Dkt. 431-1, pp. 27-28.) The

7  Individual Defendants' prior counsel advised that new counsel was entering the

8  case and should be contacted regarding this issue. (*Id*., p. 26.) Individual

9  Defendants' new counsel officially substituted into the case on March 8 and 13,

10  2023. (Dkts. 395, 389.)

11     Moog's counsel reached out to the Individual Defendants' new counsel on

12  March 6, 2023, citing the Court's November 10, 2022 order compelling production

13  from the Five iDS Devices, and requesting an immediate meet and confer given the

14  length of time Moog has waited for compliance and production. (*Id*., pp. 24-25.)

15     Individual Defendants' new counsel claimed they needed more time to get

16  up to speed, but requested that Moog identify the relevant Court orders and

17  transcripts. (*Id*., p. 24.) Moog's counsel responded by enclosing the November 10,

18  2022 hearing transcript (citing to the relevant portions of Judge McCarthy's

19  ruling), and an e-mail thread from Individual Defendants' prior counsel agreeing to

20  produce the documents in December 2022. (*Id*., p. 23.) The Individual Defendants'

21  new counsel claimed they needed 14 more days to get up to speed, and did not

22  initially agree to a telephonic meet and confer as requested. (*Id*., p. 22.)

23     Individual Defendants' counsel then stated they could meet and confer the

24  following week. (*Id*., pp. 20-21.) The Parties ultimately telephonically met and

25  conferred on March 21, 2023.

26     Because the issue at that time was limited to failure to comply with the

27  November 10 Order, and Moog had not yet received any indication that the

28  Individual Defendants would refuse to comply with that order, Moog intended to

1  commence an informal discovery conference with Magistrate Judge Rocconi

2  pursuant to her guidelines. Given the Individual Defendants' prior counsel's

3  commitment to producing the Court-ordered communications, Moog was under the

4  impression heading into the March 21 meet and confer that the Individual

5  Defendants were not outright refusing to produce the communications, but perhaps

6  were waiting for the outcome of the then-pending Motion to Stay which was later

7  denied by the Court (Dkt. 439).

8                **b.**    **The March 21, 2023 Telephonic Meet and Confer**

9          As described in the Naqvi Declaration filed with the Motion, the Parties

10  telephonically met and conferred on March 21, 2023 at 10:00 AM PT. (Dkt. 432-1,

11  ¶ 5.) Individual Defendants' counsel stated for the first time that they outright

12  refused to produce the Court-ordered communications from the Five iDS Devices.

13  (*Id*.) This was surprising to Moog's counsel, given the Individual Defendants' prior

14  counsel's commitment to producing the Court-ordered communications back in

15  December 2022, as well as the existing court order expressly requiring the turnover

16  of those communications. (Dkt. 292.) The Individual Defendants' "apparent basis

17  was that the Individual Defendants intended to again assert a Fifth Amendment

18  privilege over the Five iDS Devices." (*Id*.) This was again surprising to Moog's

19  counsel given the prior Judge McCarthy Order and Judge Vilardo Order. Moog's

20  counsel advised the Individual Defendants' counsel that "the assertion of the Fifth

21  Amendment over the iDS Electronic Devices had already been litigated

22  extensively, and the WDNY issued multiple orders finding that the iDS Electronic

23  Devices are not covered by any Fifth Amendment privilege and even if they were,

24  such privilege had been waived." (*Id*.) This was not a scenario where the

25  Individual Defendants' counsel were unaware of the Judge McCarthy Order and

26  Judge Vilardo Order, rather, they were aware of them but insisted that they were

27  not producing the Court-ordered communications on Fifth Amendment grounds.

28

(*Id.*) The "Individual Defendants' counsel also cited to the pending Motion to Stay (Dkts. 392, 393) as a basis to refuse to provide Court-ordered discovery." (*Id.*)

Moog's counsel expressly advised the Individual Defendants' counsel that the Individual Defendants are in "contempt of multiple Court orders," including the Judge McCarthy Order, Judge Vilardo Order, and the November 10 Order, and that Moog would "move to enforce such orders and seek sanctions." (*Id.*) Notably, the Naqvi Declaration, filed on April 3, 2023 and before the Individual Defendants made any argument to the contrary, states that Moog advised the Individual Defendants that they are in "contempt" of multiple Court orders. Moog's counsel expressly used the word "contempt" during the meet and confer conference and identified certain of the Court orders that were being violated, as confirmed by subsequent e-mail correspondence.

### c.    E-mail Correspondence after the March 21, 2023 Meet and Confer

Immediately after the March 21, 2023 telephonic meet and confer conference, Moog's counsel sent an e-mail confirming what was discussed during the conference so that there could be no ambiguity or dispute as to what was discussed. (Dkt. 432-1, p. 18.) Therein, Moog's counsel specifically identified certain of the Court orders that the Individual Defendants were intentionally violating, including by citing to them by ECF Number (Dkts. 253, 272) and/or date (November 10, 2022) and explaining their holdings. (*Id.*) Moog's counsel then advised the Individual Defendants' counsel exactly what it intended to do: "After waiting more than five months for these communications to be produced, we are now forced to move the Court to enforce such orders and reserve the right to seek monetary and other sanctions." (*Id.*) Thus, the Individual Defendants were placed on notice about the exact relief Moog would seek in its now pending Motion. (Dkt. 449-1, p. 14.) Notably, the Individual Defendants never responded to Moog's counsel's March 21, 2023 e-mail or attempted to advance a contrary position. (*Id.*)

Then, regarding a separate issue that has since been resolved, on March 29, 2023, Moog's counsel advised the Individual Defendants' counsel that if engagement issues related to iDS were not resolved by the end of the week, Moog would "add these additional violations for our forthcoming *Motion for Contempt* for which we met and conferred about last week." (*Id.*, p. 16, emphasis added.) This e-mail and describing Moog's now-pending Motion as a "Motion for Contempt" is wholly consistent with the March 21, 2023 telephonic meet and confer (as confirmed by the Naqvi Declaration), and the March 21, 2023 confirming e-mail. Notably, the Individual Defendants' never responded to the March 29, 2023 e-mail *until after* Moog filed its now-pending Motion five days later on April 3, 2023. As Moog later advised the Individual Defendants, if they "genuinely believed there was no proper meet and confer (which is false and contradicted by the e-mail correspondence), they would have immediately responded and provided their position." (*Id.*)

## 2.   Moog Complied with Local Rule 7-3

There can be no dispute that Moog complied with Local Rule 7-3. Moog identified orally and in writing on March 21, 2023: 1) certain of the Court orders that the Individual Defendants were violating (the Judge McCarthy Order, Judge Vilardo Order, and the November 10 Order)[2]; and 2) the exact relief that Moog would seek in the Motion.

That Individual Defendants never responded to Moog's e-mails, or attempted to correct the record of written meet and confer correspondence until after Moog filed its Motion on April 4, 2023, is telling. It shows that the Individual Defendants have only now manufactured this dispute in an attempt to avoid the

---

[2] To the extent the Court determines that Moog's counsel did not expressly reference the TRO or Inspection Protocol in its March 21, 2023 e-mail correspondence, and therefore such orders cannot be a basis for contempt, there is no dispute that Moog's counsel identified the three other orders at issue in the Motion and identified the exact relief Moog would seek.

consequences of their actions. Had the Individual Defendants genuinely believed Moog did not properly meet and confer about the Court orders at issue, the relief sought by Moog, or the forthcoming "Motion for Contempt," they would have responded to Moog's counsel promptly. Instead, the Individual Defendants waited until after the Motion was filed to develop and raise any concerns as part of a transparent effort to cause Moog to withdraw the Motion.

Local Rule 7-3 does not require Moog to identify every single argument, case, and fact addressed in a Motion. It requires the moving party to thoroughly discuss the substance of a forthcoming Motion. The extensive meet and confer record between the Parties shows that Moog more than complied with its obligations. Clearly, this is not a scenario where Moog rushed into Court without trying to resolve the dispute, or where the Individual Defendants were kept in the dark about the Court orders at issue or the relief that Moog sought. At every step of the way, and over the course of more than four months, Moog identified in writing the basis for its Motion, and repeatedly sought engagement, answers, and production from the Individual Defendants.

### 3. Individual Defendants' Legal Authority is Inapposite

First, the Individual Defendants' citation to *V5 Techs.*, 334 F.R.D. 297 is confusing because the case actually supports Moog's position. There, the court refused to "deny the motion [to compel] for lack of a sufficient meet and confer." *Id*. at 303. The court noted that, just like here, "there is no dispute Plaintiff's counsel did in fact confer telephonically with Defendant's counsel as to the discovery now before the Court." *Id*. at 302. Further, just like here, the court noted that "Plaintiff's counsel sent an email after the telephonic conference making clear that the parties had reached an impasse and Plaintiff would be filing its motion . . . but *defense counsel did not respond to that email by indicating that a sufficient meet-and-confer was not held or that further discussions may be fruitful in eliminating or narrowing the parties' dispute*." *Id*. at 303. The court warned that

1   while "meet-and-confer requirements are very important," "litigants should not

2   expect courts to look favorably on attempts to use the prefiling conference

3   requirements as procedural weapons through which to avoid complying with their

4   discovery obligations." *Id*. at 302.

5       *V5 Techs.* is on all fours with the facts here. Here, just like in *V5 Techs.*, it is

6   undisputed that the Parties met and conferred telephonically and Moog's counsel

7   sent an e-mail immediately after the meet and confer to confirm that the Parties

8   were at an impasse and that Moog would be moving for the exact relief identified

9   in the e-mail. And, just like in *V5 Techs.*, the Individual Defendants did not

10  respond to the e-mail claiming there was any insufficient meet and confer or that

11  further discussions would be fruitful. The Individual Defendants took the

12  intractable position that they would not produce the Court-ordered

13  communications, and they never indicated that position would change. The

14  Individual Defendants have done exactly what *V5 Techs.* warns against—using a

15  meet and confer requirement (which was complied with) as a weapon to avoid

16  complying with court orders.

17      Individual Defendants also cite to *Tri-Valley CARES v. U.S. Dep't of*

18  *Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012).  However, in *Tri-Valley CARES*, the

19  appellate court affirmed the denial of the plaintiff's motion to augment the

20  administrative record because the plaintiff failed to include a stipulation or

21  declaration as required by N. Cal. L. R. 7-11(a). The case had nothing to do with a

22  meet and confer requirement.

23      *Pina v. Lewis*, 717 F. Appx. 739, 740 (9th Cir. 2018) also does not support

24  the Individual Defendants' position. That case involved an appellate court decision

25  merely holding that the "district court did not abuse its discretion by denying

26  Pina's motion to compel for failing to comply with local rules." *Id*. at 740. The

27  appellate court decision did not address meet and confer requirements whatsoever.

28  Regardless, in the underlying trial court decision not cited by the Individual

Defendants, the court denied a motion to compel discovery because there was "no indication that plaintiff satisfied the meet-and-confer requirement prior to filing his motion to compel" and the plaintiff took no "steps to attempt to resolve his discovery dispute with defendants before seeking assistance from this court by filing his motion to compel." *Pina v. Lewis*, No. C 10-3784 RMW (PR), 2015 WL 1906111, at *1 (N.D. Cal. Apr. 27, 2015), aff'd, 717 F. App'x 739 (9th Cir. 2018). There were no meet and confer efforts whatsoever. Here, by contrast, Moog's counsel provided the certification required under Local Rule 7-3, and described the detailed meet and confer correspondence via telephone conference and e-mail in the accompanying declaration (Dkt. 432-1).

*Goldwater Bank, N.A. v. Elizarov*, No. 5:21-cv-00616-JWH (SPx), 2022 WL 17078950, at *2 (C.D. Cal. Oct. 7, 2022) is also inapposite. There, the defendant entered the meet and confer process without any intent to resolving the issues, ignored the plaintiff's offer to supplement the discovery responses at issue, and filed the discovery motion the day after the meet and confer without having received the forthcoming supplemental responses. *Id.* Here, to the contrary, Moog sought the Individual Defendants' compliance with the court-ordered production of communications for months, met and conferred regarding the discovery compliance issues which would serve as the basis for Moog's Motion, and followed up with multiple emails summarizing the parties' meet and confer discussions – to which Individual Defendants' counsel failed to provide any response until after Moog filed its Motion.

## B. Individual Defendants Remain in Contempt of Several Court Orders

The Individual Defendants incorrectly argue that four of the orders identified by Moog in the Motion "cannot form the basis of a contempt proceeding because they do not specifically and definitively direct the production of communications from 2019 to 2020 that Moog is now seeking." (Opp., p. 13.)  Specifically, the

Individual Defendants argue they have not violated the Judge McCarthy Order and Judge Vilardo Order because they do not "specifically and definitively direc[t] Individual Defendants to produce the communications at issue." (*Id*., p. 15.) The Individual Defendants also claim "those orders do not discuss the communications at issue at all." (*Id*.) But the Orders in fact encompass each and every communication the Individual Defendants are refusing to turn over.

### 1. Individual Defendants Have Intentionally Violated the Judge McCarthy Order and Judge Vilardo Order

The Individual Defendants do not dispute that the Judge McCarthy and Judge Vilardo collectively ordered that: 1) the iDS Electronic Devices, in their entirety and ***including their contents***, are not subject to a Fifth Amendment privilege; and 2) even if the Individual Defendants could assert the Fifth Amendment over the iDS Electronic Devices (which they cannot), such rights were waived. (Dkts. 253, 272.) These orders are clear, unambiguous, and have no limitations or exceptions. And, contrary to the Individual Defendants' misrepresentations, the orders in fact expressly address the contents of those devices and the communications therein. Indeed, in connection with the prior briefing before Judge Vilardo, the Individual Defendants expressly argued that "their act of producing the electronic devices is testimonial because it is not a 'forgone conclusion as to whether or not any of [their] devices contain [Moog's] trade secrets." (Dkt. 272, p. 7, internal quotes omitted.) In rejecting these arguments, Judge Vilardo determined that "those arguments conflate the [devices'] *contents* with their *existence*." (*Id*., internal quotes omitted.) Judge Vilardo expressly explained that "Pilkington and Kim err by focusing not on whether the *act of producing* the devices themselves was testimonial, but whether the *information contained* in those devices may or may not be incriminating." (*Id*., p. 8.) Judge Vilardo concluded that "because the act of producing those devices

1  therefore is not testimonial, Pilkington and Kim ***cannot rely on the contents of***
2  ***those devices to bar their production***." (*Id*., emphasis added.)

3      Thus, the Judge Vilardo Order expressly addressed the contents of the iDS
4  Electronic Devices, and ordered that they must be produced. The communications
5  ordered for production by the November 10 Order are contained in certain of the
6  iDS Electronic Devices.

7      The Individual Defendants' argument that they are not violating the Judge
8  McCarthy Order and Judge Vilardo Order because such orders did not specifically
9  compel the production of communications from specific iDS Electronic Devices
10  during a specific time period (like the November 10 Order did) is disingenuous at
11  best. Both Judge McCarthy and Judge Vilardo determined that there can be no
12  Fifth Amendment assertion over the iDS Electronic Devices, and such devices and
13  all their contents must be made available for review. The Individual Defendants are
14  again re-asserting the Fifth Amendment over certain contents of the Five iDS
15  Devices – the very Fifth Amendment privilege that the Court previously expressly
16  ruled did not exist and/or was waived. (Dkts. 253, 272.) This is a direct disregard
17  for and violation of the Court's prior orders which ruled against the very tactic the
18  Individual Defendants are improperly employing ***for the second time***.

19      **2.      Individual Defendants Have Intentionally Violated the**
20      **Court's November 10 Order**

21      The Individual Defendants concede they have not complied with the
22  November 10 Order.  But, they contend "their assertion of a Fifth Amendment
23  privilege over those documents was reasonable and proper in light of the
24  developments in the parallel criminal investigation." (Opp., p. 16.) The
25  developments that the Individual Defendants rely upon are: 1) "on March 6, 2023,
26  the FBI asked Individual Defendants' counsel to 'confirm possession' of certain
27  digital devices"; and 2) "on March 8, 2023, Individual Defendants learned that the

28

1   USAO had served a federal grand jury subpoena on iDS seeking information about

2   a number of digital devices." (*Id.*, pp. 16-17.)

3         There is no justification for the Individual Defendants' refusal to produce the

4   Court-ordered communications. The alleged "new developments" are

5   inconsequential to this Motion. That the parallel FBI investigation is continuing,

6   and an additional subpoena was served, does not change the fact that Judge

7   McCarthy and Judge Vilardo ruled that ***the Individual Defendants have no Fifth***

8   ***Amendment to assert over all the iDS Electronic Devices or their contents***. (Dkts.

9   253, 272.) Those rulings were not dependent on, limited by, or subject to

10  subsequent events, and the inapplicability of any Fifth Amendment assertion (and

11  the waiver thereof) was decided and final when these orders were issued many

12  months ago.

13        The Individual Defendants again argue their conduct was justified under the

14  "act of production privilege," and cite to a long list of cases. (Opp., p. 17.) But, the

15  Court has already addressed and dismissed such arguments multiple times. Judge

16  McCarthy addressed the "act of production" argument and, by citing to *Burt Hill,*

17  *Inc. v. Hassan*, 2010 WL 55715 (W.D. Pa. 2010), determined that "[j]ust as in <u>Burt</u>

18  <u>Hill</u>, Pilkington and Kim have repeatedly admitted that the devices in question are

19  theirs, and not only agreed to make those devices available for inspection, but did

20  so." (Dkt. 253, p. 8.) Judge McCarthy even addressed the very legal authority that

21  the Individual Defendants rely on for a second time in their Opposition, including

22  *United States v. Hubbell*, 530 U.S. 27, 44 (2000). (*Id.*) Similarly, Judge Vilardo

23  directly addressed and dismissed the Individual Defendants' "act of production"

24  arguments, also citing to *Hubbell*, and finding that the iDS Electronic Devices and

25  their contents are not subject to any Fifth Amendment assertion. (Dkt. 272, pp. 6-

26  8.)

27        Indeed, the Individual Defendants directly acknowledge that the Court has

28  already ruled against the precise position they put forth here, stating: "contrary to a

prior finding by the transferor court, Individual Defendants have a valid act of production privilege to assert." (Opp., p. 18.)[3] This statement exemplifies the Individual Defendants' repeated pattern of disagreeing with the Court's orders and electing not to comply with them through unilateral acts of self-help. In other words, because they disagree with Judge McCarthy's and Judge Vilardo's rulings, the Individual Defendants simply continue to assert Fifth Amendment rights that multiple judges have found do not apply.  But it is axiomatic that a party's "[d]isagreement with the court is not an excuse for failing to comply with court orders." *Adriana Intl. Corp. v. Lewis & Co.*, 913 F.2d 1406, 1411 (9th Cir. 1990) (affirming grant of default sanction under FRCP 37(b) and (d)). For the Individual Defendants to again claim now that their Fifth Amendment assertion over the contents of the Five iDS Devices is proper under the "act of production," when the Court has already thoroughly addressed and repeatedly rejected this argument, shows a flagrant disregard for the Court's orders and authority.

### 3. Individual Defendants Have Intentionally Violated the TRO and Inspection Protocol

The Individual Defendants claim that they have not violated the TRO because "Moog does not claim personal devices have not been preserved or delivered to iDS or that an Inspection Protocol remains outstanding." (Opp., p. 14.) They similarly argue that the Inspection Protocol has not been violated because the protocol "does not order any party to produce or disclose any document, including the communications sought by Moog" and "Moog has not identified any paragraph or provision within the Inspection Protocol that has been violated by Individual

---

[3] The relevant WDNY orders are law of the case and cannot be disturbed upon transfer. *See Danner v. Himmelfarb*, 858 F.2d 515, 521 (9th Cir. 1988) ("'[W]hen an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, *leaving untouched what has been already done*.'") (emphasis added, internal quotes omitted).

1   Defendants' privilege assertion." (*Id.*, pp. 14-15.) These arguments miss the forest

2   for the trees.

3        It is undisputed that the Individual Defendants copied approximately 1.4

4   million Moog files on their way out the door and upon joining Skyryse. The entire

5   purpose of the TRO was to ensure that the Individual Defendants turned over all

6   electronic devices used during the relevant period for ***wholesale inspection***, full-

7   stop. Section 4 of the TRO required the Individual Defendants to produce for

8   inspection all electronic devices used in the prior 12 months, and that such

9   materials would be made available to Moog for inspection through a subsequent

10  inspection protocol. (Dkt. 25, § 4.) The Inspection Protocol provides procedures

11  whereby the Parties would get full, complete access to all electronic devices

12  produced to iDS. (Dkt. 96-02.) The only basis by which a Party could excise

13  materials from a device, and only before such a device was made available for

14  review, was based on privilege or personally private materials. (*Id.*, § 5.) To the

15  extent any such materials are excised, the producing party was required to identify

16  such materials "with reasonable particularity in a log." (*Id.*)[4]

17       The Individual Defendants have violated at least Section 4 of the TRO and

18  Section 5 of the Inspection Protocol by, after already making the Five iDS Devices

19  available for review, they unilaterally excised communications before 2021 for a

20  reason other than for privilege or personal privacy and without providing any log

21  as required. Nowhere do the TRO or Inspection Protocol permit the Individual

22  Defendants to broadly and without a log excise a broad range of communications

23  from iDS devices based on the Fifth Amendment.[5]

24

25  [4] Further, Judge McCarthy determined that the Protective Order (Dkt. 89), which is
    incorporated into the Inspection Protocol, is limited to clawback for attorney-client
26  privilege or work-product and does not protect against the assertion of a Fifth
27  Amendment privilege. (Dkt. 253, pp. 8-9.)

    [5] To the extent the Court determines that the Individual Defendants are not in
28  contempt of the TRO or Inspection Protocol, Moog is still entitled to the relief
    sought because of the undisputed violations of the other orders addressed herein.

### 4.      The Individual Defendants' Cited Authority is Distinguishable or Supports Moog's Positions

The Individual Defendants claim they should not be held in contempt because they are "in a difficult, if not impossible, position." (Opp., p. 18.) They further claim their willful disregard of the Court's November 10 Order is not a "result of defiance, disdain, or disregard," but instead predicated on an "understandable desire" to re-assert the Fifth Amendment which has been conclusively and broadly rejected by this Court, twice. (*Id*.) The Individual Defendants do not cite a single case that supports their indefensible position.

The Individual Defendants cite to *Dinkins v. Schinzel*, 2022 WL 3347044, at *2 (D. Nev. Aug. 12, 2022) as an example where a court declined to enter a contempt finding. That case involved a finding that a pro se defendant "failed to comply with court orders relating to post-judgment discovery in this case." *Id*. at *2. However, the court determined that it was "unclear if the outstanding post-judgment discovery is necessary for Dinkins to collect the judgment that he is owed" and therefore the court was "hesita[nt] to impose the harsh sanction of civil contempt if the remaining discovery is unnecessary or duplicative." *Id*. Even so, the court "d[id] not excuse Schnizel's noncompliance" and directed that upon receiving additional supplemental briefing, it would "determine the appropriate course of action." *Id.*

Here, unlike in *Dinkins*, there cannot be any indication that the discovery ordered for production under the November 10 Order is duplicative or unnecessary. The Court ordered the Individual Defendants to produce almost two years' worth of communications between them from specific personal devices— documents that Moog does not otherwise have access to.

Individual Defendants also rely on *Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1025 (N.D. Cal. 2013) for the notion that a court may decline to order sanctions if the record suggests that sanctions are unnecessary.  However,

1    *Armstrong* is distinguishable from the instant case because there the court granted

2    the motion to enforce, but refrained from levying sanctions by virtue of the fact

3    that the defendants "demonstrated that they [had made] substantial efforts to reach

4    compliance with the Court's orders." *Id.* at 1025. Here, Individual Defendants

5    cannot make any such showing given that they have had over five months to

6    produce a specific set of communications, and are re-asserting Fifth Amendment

7    privileges that have been rejected multiple times by this Court.

8         Individual Defendants attempt to distinguish the instant matter from

9    *Westside Shepherd Rescue of Los Angeles, Inc. v. Pollock,* No. CV 09-3677-

10   GW(Ex), 2010 WL 11520530, at *1 (C.D. Cal. Jan. 14, 2010); however, they fail

11   to recognize the factual similarities.  Here, like in *Westside Shepherd*, the

12   Individuals Defendants have failed to "change[] any of the behavior" which led to

13   the court's litany of prior orders which require the Individual Defendants to

14   produce the iDS Devices.  *Id.* at *1.  Moreover, the Individual Defendants' refusal

15   to comply with the Court-ordered production on the bases of previously-rejected

16   arguments amounts to the same type of repeated, purposeful violations of Court

17   orders without cause committed by the defendant in *Westside Shepherd*.[6]

18        Similarly, Individual Defendants' citation to *Frankl v. HTH Corp.*, 832 F.

19   Supp. 2d 1179, 1187-1213 (D. Haw. 2011) is misguided.  Like the respondents in

20   *Frankl*, who despite numerous orders outlining their violations of the NLRA

21   "flout[ed] their duties [under the Act], including by ignoring [the court's]

22   Injunction," the Individual Defendants' have similarly violated at least five Court

23   _____

24   [6] This case is also analogous to *Guru Denim, Inc. v. L.A. Idol Fashion, Inc.*, No.
     CV 08-1798-GW(RCx), 2012 U.S. Dist. LEXIS 10363, at **7-8 (C.D. Cal. Jan.

25   25, 2012)(Wu J.) (Westlaw cite unavailable) in which Judge Wu sanctioned the
     defendant (even though it produced some responsive documents) and found it in

26   contempt of the applicable injunction because the defendant failed "to provide all
     of the documents Ordered produced" pursuant to two other court orders.  *Id.* at

27   **7-8.  Here, the Individual Defendants' failure to produce documents in response
     to several court orders is more egregious than those of the defendant in *Guru

28   Denim*, including by advancing the same legal arguments that had been rejected by
     the Court multiple times.

1   orders which order them to produce and make available for review the iDS

2   Electronic Devices, and flatly reject Individual Defendants' arguments otherwise.

3   *Frankl*, 832 F. Supp. 2d at 1184.

4         **C.**    **Monetary Sanctions Are Appropriate**

5          The Individual Defendants argue they should not be subject to monetary

6   sanctions because: 1) if the Court orders compliance with the November 10 Order

7   and rejects the improper re-assertion of the Fifth Amendment, "Individual

8   Defendants will produce non-privileged, non-private documents"; 2) "Moog has

9   not demonstrated any harm arising out of purported non-compliance"; 3) "the

10   financial burden of monetary sanctions on Individual Defendants . . . would be

11   immense"; and 4) "Individual Defendants sought to resolve this dispute without the

12   need for an opposition brief, a reply, or a hearing, but Moog refused." (Opp., p.

13   20.) All of these arguments, none of which are supported by any legal authority,

14   lack merit.

15               **1.**    **Moog Has Been Prejudiced and is Entitled to Recover its**

16                     **Attorneys' Fees and Costs in Connection with the Motion**

17          Regarding the Individual Defendants' first two arguments above, the

18   prejudice to Moog is readily apparent. The Individual Defendants do not dispute

19   they took approximately 1.4 million Moog files on their way out the door and upon

20   joining Moog's competitor, Skyryse. Pursuant to a Court order, Moog was to

21   receive a large volume of communications between the Individual Defendants

22   from their personal devices back in November 2022. Nearly six months have

23   passed, and Moog has not received these communications which likely contain

24   evidence probative to Moog's trade secret misappropriation and other claims.

25   Further, Moog has had to expend considerable time and resources, and incur

26   significant attorneys' fees and costs, to obtain discovery from the Individual

27   Defendants ***that they stipulated to provide at the outset of this case***. Moog would

28   be justified in seeking its attorneys' fees in connection with the briefing and

hearing underlying the Judge McCarthy and Judge Vilardo Orders. But, it is merely seeking its attorneys' fees in connection with this Motion. The prejudice to Moog is that it keeps having to incur considerable attorneys' fees and costs to enforce the Court's orders. Moog cannot be left holding the bag because the Individual Defendants refuse to comply with the Court's orders.

The Individual Defendants' claim that they can merely produce the communications if the Court orders them to highlights why monetary sanctions are necessary and required here. The Individual Defendants have shown a propensity to disregard the authority of the Court and engage in acts of self-help. They must be deterred from doing so as this case continues.

Moog would be entitled to an award monetary sanctions ***even if the Individual Defendants provided the Court-ordered communications after the Motion was filed***. *See* Rule 37(a)(5)(A) (mandatory award of "attorney's fees" even if "the disclosure or requested discovery is provided after the motion was filed"); *Gianelli v. Home Depot, Inc.*, No. 2:13-CV-01969-JAM, 2014 WL 5430480, at *2 (E.D. Cal. Oct. 24, 2014) ("there is no basis for this Court to reconsider the award of expenses given that the requested discovery was not provided until after the motion to compel was filed"); *Prasad v. Cnty. of Sutter*, No. 2:12-CV-00592 TLN, 2013 WL 3773894, at *1 (E.D. Cal. July 17, 2013) (affirming "an award of reasonable expenses because defendants' disclosure of the requested information was provided after plaintiffs' motion was filed"). Here, the Individual Defendants are ***still*** refusing to comply with the Court's orders even after the filing of the Motion. It is not the law that monetary sanctions should not be imposed where the offending party has means to comply with a Court order by producing documents.

1

2

### 2.     Individual Defendants' Alleged Financial Condition Does Not Excuse Compliance with Court Orders

3       The Individual Defendants' standing as individuals or their financial

4 condition is not a valid excuse for failure to comply with the Court's orders, nor a

5 valid basis to seek leniency now from the Court.[7] The Court's orders apply equally

6 to all parties, even *pro se* litigants. *See Gordon v. County of Alameda*, No. CV-06-

7 02997-SBA, 2007 WL 1750207, at *6 (N.D. Cal. June 15, 2007) (holding "pro se

8 parties are not excused from following the rules and order of the court" and

9 granting motion for dismissal sanctions under FRCP 37(b) and monetary sanctions

10 under FRCP 37(d)).  Similarly, even "pro se litigants are subject to sanctions" for

11 failure to abide by court orders. *Ewing v. GoNow Travel Club, LLC*, No. 19-CV-

12 297-BAS-AGS, 2019 WL 4688760, at *1 (S.D. Cal. Sept. 26, 2019) (sanctioning

13 pro se litigant for failing to follow court orders).

14       Here, the Individual Defendants have been represented by reputable counsel

15 from the outset of this case. Their counsel has been aware of and understand the

16 Court's prior orders (as evidenced during the meet and confer process), but they

17 are choosing not to comply. The Individual Defendants' alleged financial condition

18 (for which they provide no evidence in support of) is not a proper basis to avoid

19 the imposition of monetary sanctions in this circumstances. *See Stanley Black &*

20 *Decker, Inc. v. D & L Elite Invs., LLC*, No. 12-4516 SC, 2013 WL 3799583, at *3

21 (N.D. Cal. July 19, 2013) ("The Court is aware of no authority that would justify

22 limiting the award of sanctions based on a contemnor's ability to pay.")

23

24

25

26

27

28

---

[7] When the Individual Defendants recently pointed to their alleged financial condition in support of their Motion to Stay (which this Court denied), Judge Wu noted that because the Individual Defendants' counsel is serving as both criminal and civil counsel, they will be "involved [in this case] anyway" and the Individual Defendants have "Latham and Watkins [representing Skyryse] doing most of the work for [the Individual Defendants'] anyway." (4/13/23 Hrg. Tr. At pp. 11:13-12:2.)

### 3. Individual Defendants' Attempted to "Resolve" the Dispute By Conducting an Improper Fifth Amendment Privilege Review

The e-mail correspondence submitted by the Individual Defendants in connection with their Opposition shows there was no good faith effort to "resolve" the dispute. On the morning that the Individual Defendants' Opposition brief was due, their counsel asked Moog's counsel to stipulate to a one-week continuance of the hearing on Moog's Motion (Dkt. 449-2, pp. 6-7). Individual Defendants' counsel claimed that as new counsel, at the time of the March 21, 2023 meet and confer call, they were "unable to make any decisions at that time relating to privilege and production." (*Id.*) They further requested a one-week continuance to determine "if there is even an assertion of Fifth Amendment privilege to be made on the documents regardless of the prior orders over any of the devices." (*Id.*)

As Moog's counsel advised in response, the Individual Defendants' non-compliance with the Court's orders "long precedes [current counsel's appearance in this case." (*Id.*, p. 5.) Even when current counsel substituted into the case, Moog provided several weeks for counsel "to get up to speed, including [Moog's counsel] sending [new counsel] the relevant transcripts and orders." (*Id.*)  Moog's counsel noted that it "has been more than 5 months since the Court's November 10, 2022 order," and any further extension to comply is unreasonable. (*Id.*) Further, the Individual Defendants cited "no legal authority that a change in counsel excuses violations of numerous court orders for months on end." (*Id.*)

Moog's counsel further advised that the Individual Defendants continued statement that they are assessing Fifth Amendment assertions over the Court-ordered communications at issue "regardless of the prior orders" demonstrates a continued "disregard [of] the Court's prior orders." (*Id.*)  Moog's counsel again explained that there "is no Fifth Amendment privilege applicable to the devices,"

1    and so any requested continuance based on a Fifth Amendment privilege review is

2    "improper, unnecessary, and in continued violation of the Court's orders." (*Id.*)

3         Moog's counsel concluded by advising that given these issues have been

4    unresolved for over 5 months, it was not prepared to continue the hearing any

5    further. (*Id.*, p. 6.) But, Moog's counsel did offer to take the Motion hearing off

6    calendar if the Individual Defendants produced the Court-ordered communications

7    and paid Moog's requested monetary sanctions by May 5, 2023. (*Id.*) The

8    Individual Defendants did not respond and filed the Opposition.

9         As the record demonstrates, there was no legitimate effort to "resolve" the

10   dispute, but merely a still continued effort by the Individual Defendants to assert

11   the Fifth Amendment over the Five iDS Devices.[8]

12   **III.   <u>CONCLUSION</u>**

13        Moog respectfully requests the Court grant the Motion and the relief

14   requested therein.

15

16   Dated: April 26, 2023          SHEPPARD MULLIN RICHTER & HAMPTON LLP

17                                  By   _____
                                              */s/ Rena Andoh*
18                                            Rena Andoh

19                                  Attorney for Plaintiff and Counterdefendant
                                              MOOG INC.
20

21

22

23   _____

24   [8] The Individual Defendants falsely claim Moog is attempting to "circumvent the
     protocols" in the Inspection Protocol and that "Individual Defendants should be
     permitted to complete a privilege review and excise personal and private material
25   as permitted by the Inspection Protocol." (Opp., p. 20.) This is not in dispute. At no
     point did Moog take the position that the Individual Defendants are not permitted
26   to conduct a review of the Court-ordered communications based on attorney-client
     privilege or personal privacy. These procedures are authorized by the Inspection
27   Protocol. Moog's request for compliance with the November 10 Order would be
     subject to the Individual Defendants completing a prompt review for privilege and
28   personal privacy within 7 days' of the Court's order (any excised materials must be
     logged, as required under the Inspection Protocol).

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Moog Inc., certifies that this brief contains 6,997 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by Court order dated _____.

Dated:  April 26, 2023          SHEPPARD MULLIN RICHTER & HAMPTON LLP

                                By   _____
                                             */s/ Rena Andoh*
                                          Rena Andoh

                                Attorney for Plaintiff and Counterdefendant
                                MOOG INC.