**LATHAM & WATKINS LLP**
Douglas E. Lumish (SBN 183863)
 doug.lumish@lw.com
Gabriel S. Gross (SBN 254672)
 gabe.gross@lw.com
Arman Zahoory (SBN 306421)
 arman.zahoory@lw.com
Rachel S. Horn (SBN 335737)
 rachel.horn@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and
Counterclaimant Skyryse, Inc.*

*Additional counsel listed on signature
page*

**SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP**
Rena Andoh (admitted *pro hac vice*)
 randoh@sheppardmullin.com.com
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700

Lai L. Yip (SBN 258029)
 lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100

Travis J. Anderson (SBN 265540)
 tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900

Kazim A. Naqvi (SBN 300438)
 knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700

*Attorneys for Plaintiff and
Counterdefendant MOOG INC.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOOG INC.,<br><br>          Plaintiff,<br><br>          v<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>          Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**JOINT STIPULATION RE: DEFENDANTS' MOTION TO ENFORCE ORDER COMPELLING TRADE SECRET IDENTIFICATION**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

|  |  |
|---|---|
| SKYRYSE, INC.,<br><br>        Counterclaimant,<br><br>              v<br><br>MOOG INC.,<br><br>        Counterclaim-Defendant. | Discovery Cut-Off: April 12, 2024<br>Pre-Trial Conference: August 12, 2024; 8:30 a.m.<br>Trial: August 27, 2024<br><br>Hearing:   May 31, 2023<br>Time:      11:00 a.m.<br>Judge:     Hon. Margo A. Rocconi<br>Location: Courtroom 790, 7th Floor |

# **TABLE OF CONTENTS**

I.  SKYRYSE'S INTRODUCTORY STATEMENT ...................................1

II.  MOOG'S INTRODUCTORY STATEMENT ...................................4

III.  SKYRYSE'S CONTENTIONS ...............................................7

    A.  Requiring a plaintiff to identify its alleged trade secrets with particularity is well-established in the law...................................7

    B.  Moog defied the Court's order to follow specific procedures to identify its trade secrets with particularity. .................12

    C.  Moog's failure to identify its trade secrets has prejudiced and will continue to prejudice Skyryse. ...............................18

    D.  Moog should be ordered to comply with the Court's order. .......................................................................................20

    E.  Conclusion .............................................................................22

IV.  MOOG'S CONTENTIONS ...............................................23

    A.  The Requirements of Identification with Reasonable Particularity ........................................................................23

        1.  Identification of Specific Files Reflecting Trade Secrets Satisfies the Requirement to Identify Trade Secrets with Reasonable Particularity ........................24

        2.  Source Code Trade Secrets May Also Be Identified with Reasonable Particularity by Identification of Specific Files...............................26

    B.  Moog's TSID Complies with the Law governing Identification of  Trade Secrets and with the Order of the Transferor Court...........................................................27

        1.  Moog's TSID Goes Above and Beyond What Is Required for Identification of a Trade Secret with Reasonable Particularity ........................................27

        2.  Moog Has Fully Complied with the Transferor Court's Order ..................................................32

    C.  Skyryse's Cited Cases are Inapposite and Do Not Warrant the Relief Sought.................................................34

    D.  Skyryse Has Suffered No Prejudice and No Other TSID Is Appropriate at this Stage of the Litigation...........................37

## I.     SKYRYSE'S INTRODUCTORY STATEMENT

Defendant Skyryse, Inc. brings this motion to enforce a court order that required Plaintiff Moog, Inc. to identify the alleged trade secrets it asserts in this case with "precision and specificity." This is a basic obligation of every plaintiff in a trade secret case, because a sufficiently particularized trade secret identification ("TSID") enables the parties and the Court to establish clear boundaries for discovery and manage the case in an orderly fashion. It gives a defendant fair notice of the claims against it, of what the plaintiff contends constitutes a legally protectable trade secret, and how it allegedly differs from information known in the industry. It also protects against a trade secret being conjured with hindsight based on information learned from the defendant's files, and then alleged to be trade secrets after-the-fact.

Moog has failed to meet this obligation, in violation of a court order.

Moog filed this suit in March 2022 after learning that two of its former employees, Alin Pilkington and Misook Kim, allegedly copied more than a million files while working at Moog, and took those files with them to Skyryse where they worked for several months. Moog alleges a conspiracy and sued the Defendants for misappropriation and unfair competition, among other claims, which Skyryse denies. All of Moog's claims are predicated upon the alleged misappropriation, but Moog has avoided disclosing in any useful or meaningful detail what its alleged trade secrets are, leveraging the open-ended, amorphous nature of its claims to exert maximum litigation pressure on its smaller competitor, Skyryse.

Moog failed to adequately respond to Skyryse's Interrogatory No. 1 requiring Moog to identify its trade secrets. According to Moog, the hard drives Mr. Pilkington and Ms. Kim used contained over a million files, so it needed more discovery and investigation into the Defendants' alleged use of them before identifying which trade secrets to assert. But even after receiving troves of discovery, by last summer Moog

JOINT STIPULATION RE: DEFENDANTS' MOTION TO ENFORCE ORDER COMPELLING TRADE SECRET IDENTIFICATION

1  still had not identified its trade secrets. This forced Skyryse to file, and win, a motion
2  to compel this discovery before the transferor court in New York.

3        On July 22, 2022, the Court ordered Moog to "identify its trade secrets with a
4  reasonable degree of precision and specificity that is particular enough as to separate
5  the trade secret from matters of general knowledge," after Moog had taken some
6  more discovery. The Court gave Moog explicit instructions too. Moog could not
7  simply identify trade secrets by "generic category." For software trade secrets, it
8  must identify specific lines of source code. And Moog could not simply "point to
9  documents in which trade secrets are said to reside as a substitute for a detailed
10  identification" in a written narrative. By the time the action was transferred to this
11  Court in December, however, Moog still had not identified its trade secrets. At the
12  parties' first appearance in this Court, Judge Wu ordered Moog to do so by February
13  20, 2023.

14        When Moog finally served its TSID, it flouted virtually every aspect of the
15  transferor court's order. To be sure, Moog's TSID is lengthy and complex. But for
16  all of its volume, it fails to sufficiently identify specific trade secrets and instead
17  describes "generic categories" as the Court prohibited. It describes at considerable
18  length industry standards, practices, the goals of its projects, and extensive
19  background context—but does not identify trade secrets with the required reasonable
20  degree of precision, or show they are separate from what's generally known. Moog
21  claims software is among its trade secrets, but doesn't identify a single line of source
22  code. And Moog boldly defies the Court's order *not* to merely point to documents:
23  it literally refers to more than 300,000 documents listed in accompanying
24  spreadsheets, vaguely claiming they "reflect" its trade secrets without elaboration.

25        The fact is, Skyryse and the Court are no closer to knowing what Moog's
26  alleged trade secrets are today than they were a year ago. Moog's violation of the
27  Court's order keeps the Defendants in the dark about what they are accused of
28  misappropriating, hopelessly guessing at what, among 300,000 files, Moog might

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

1  eventually claim is a misappropriated trade secret. Left unchecked, this would
2  perpetuate a significant and unfair advantage to Moog, make the orderly
3  administration of this case impossible, and all but ensure that discovery will be
4  unbounded and unworkable. Respectfully, the Court should find Moog's TSID
5  violates the July 22 order and require immediate compliance before Moog can
6  proceed with further discovery.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

## II.     MOOG'S INTRODUCTORY STATEMENT

Whether a plaintiff has identified a trade secret with reasonable particularity is a separate issue from the merits of whether any alleged trade secret qualifies for trade secret protection.  Moog's obligation at this stage is only to provide, in a manner that is reasonable under all of the circumstances, notice to Defendants and the Court of what Moog alleges its trade secrets to be, such that discovery can be tailored and Defendants can plan their defenses.  This Moog has amply done.

It is undisputed that the Defendants in this case are responsible for the theft of approximately ***1,400,000 (1.4 million) files*** belonging to Moog, most or all of which contained Moog's confidential and proprietary information.  Because of the sheer volume of the stolen files, Moog was forced to undertake an enormously time-consuming and strenuous effort to narrow the volume of stolen files and determine what trade secret information it would pursue.  This effort resulted in the identification of 30 trade secrets, each specifically numbered and described, and each corresponding to a specifically identified set of stolen files, which in total constitute 291,095 stolen files.  To be clear, Moog, through its efforts, narrowed the number of files for which it would seek trade secret protection by approximately ***eighty percent***.

Yet, Skyryse contends that this is not enough, complaining to the Court about the volume of files and trade secrets identified.  Moog did not create the volume issues in this case.  That was all Defendants' doing.  Moog cannot be forced to pick and choose among its trade secrets to protect at this early juncture simply because Defendants stole a massive amount of information, or to make this litigation more convenient for them.  Nor should the Defendants be able to benefit from the volume of their theft by wielding the number of files at issue in an attempt to further delay Moog's enforcement of its intellectual property rights.

Skyryse attempts to create delay by requesting that the Court conduct a "mini-trial" on the merits of Moog's trade secret claims, when the only burden on Moog at

this juncture is to identify and place Defendants on notice of the trade secrets it intends to pursue in this case—which it has thoroughly done. Indeed, Moog prepared a trade secret identification that is full of detail, measuring over 100 pages in length, and that specifically identifies the listed trade secrets by toolset, program, or specific type, explains what each trade secret is, and identifies the particular stolen files or documents that reflect each identified trade secret. While this is a unique case in terms of the volume of theft, Moog has managed, through great effort, to fully comply with the standard for identification of a trade secret with reasonable particularity at this stage of the litigation.

There is an enormous and critical difference between, on the one hand, simply referring the Court and opposing party to a series of documents and alleging that trade secrets exist somewhere within them and, on the other, specifically describing the trade secrets while providing the exact files where each trade secret resides. Courts in the Ninth Circuit and beyond have repeatedly held that the latter is an acceptable means of identifying trade secrets with reasonable particularity, especially in cases with fact patterns that mirror this case, and that is precisely what Moog has done here. Skyryse cites no authority holding that a trade secret identification ("TSID") as detailed and thorough as Moog's, in a case where a massive volume of files has been stolen, is insufficient.

It is clear that Skyryse is able to appreciate what trade secrets Moog is claiming, as Skyryse has already begun conducting investigations into whether Moog documents identified in the TSID are publicly available or generally known. (*See* Dkts. 451-02, 451-03.) Moreover, Skyryse's counsel is representing numerous former Moog employees who were involved with Moog's trade secrets, so Skyryse cannot possibly claim that it lacks resources to understand them.

Moog has fully complied with the Transferor Court's Order, which ordered Moog to "answer in full Skyryse's Interrogatory No. 1 calling for Moog to identify with particularity every trade secret it intends to assert in this action including

through a narrative response and not solely by invoking Rule 33(d)." While the Court stated that Moog must "sufficiently identify its source code secrets," Moog does not read the Court's order to require an identification of source code by lines. The quoted language in the order regarding identifying source code by lines, highlighting, or color-coding was merely a suggestion in a law school journal article written by two associates from a private law firm who expressly admitted having a pro-defendant agenda. It stands to reason that the Court quoted the law school journal article to provide context, not a prescription of precise requirements in this case. By contrast, the law in the Ninth Circuit and beyond is clear that specific lines of code need ***not*** be identified in order for a plaintiff to satisfy the requirement of identification with reasonable particularity at this stage of litigation, especially under the facts of this case. Under these circumstances, requiring Moog to identify source code by individual lines in this case, where there are many thousands of source code files misappropriated by Defendants, each of which contain thousands of lines of code, would be immensely impractical, unduly burdensome, and unjust. This, again, would allow Skyryse to benefit from the massive amount of theft at issue by forcing Moog to undertake a huge amount of unnecessary and extremely time-consuming and expensive work before it would be allowed to protect its intellectual property from Defendants' theft.

Skyryse should not be allowed to further delay Moog's attempt to protect its intellectual property from Defendants' theft, and Moog respectfully requests that the Court deny Skyryse's motion in its entirety.

## III. SKYRYSE'S CONTENTIONS

### A. Requiring a plaintiff to identify its alleged trade secrets with particularity is well-established in the law.

That a plaintiff in a trade secret action must identify its purported trade secrets with particularity is well-established and routinely enforced. Under the DTSA, "[t]rade secrets cannot be vague concepts." *Calendar Research LLC v. StubHub, Inc.*, No. 17-cv-04062-SVW-SS, 2020 WL 4390391, at *6 (C.D. Cal. May 13, 2020). Rather, a plaintiff must "identify the specific set of 'methods, techniques, processes, procedures, programs, or codes'" that comprise a trade secret. *Id.* (quoting 18 U.S.C. § 1839(3) and granting summary judgment against plaintiff for failing to specifically identify its trade secrets); *see also id.* ("[w]ithout a sufficiently precise definition, [a] general concept . . . is too vague to constitute a trade secret"); *see also Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 226 (S.D.N.Y. 2014) (requiring plaintiff to identify trade secrets with "particularity"). The obligation to be precise is heightened in a highly technical case like this one, which involves automated flight control technologies. That's because the "distinction between general industry knowledge in a complex field and a specific trade secret is inherently difficult, and it is unlikely that the district court or any trier of fact would have expertise in discerning exactly which technical information constitutes a trade secret without precise guidance from a plaintiff." *Calendar Research*, 2020 WL 4390391 at *4.[1]

The reasons for this requirement are grounded in principles of due process, fairness, and judicial economy. First, a particularized and specific description of the trade secrets is necessary for a defendant to understand the charges against it and form a complete and well-reasoned defense. *Big Vision*, 1 F. Supp. 3d at 257-58. As an example, Skyryse must be able to investigate whether the things Moog claims are

---

[1] Unless otherwise noted, all internal citations and quotation marks have been omitted.

JOINT STIPULATION RE: DEFENDANTS' MOTION TO ENFORCE ORDER COMPELLING TRADE SECRET IDENTIFICATION

trade secrets are actually secret rather than generally known, in the public domain, or previously disclosed to others. The transferor court recognized this when it granted Skyryse's motion to compel: "Fairness requires that Moog provide defendants withat [*sic*, with a] specific identification sufficiently in advance of the hearing to enable them to prepare a defense - for without a precise identification, the defense lacks the information it needs to conduct public domain research and challenge the alleged secrecy of the information at issue." (Dkt. 205 at 5 (internal quotations omitted).) Put simply, if a plaintiff cannot "identify with specificity what information they consider to have been a trade secret . . . it can't proceed on that theory, because the defendants have a right during discovery to test whatever the plaintiff's theory is." *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05-cv-9292(DLC), 2008 WL 463884, at *6 (S.D.N.Y. Feb. 20, 2008).[2]

Second, disclosure with "particularity" early in an action is also necessary to prevent plaintiffs from using a "shifting sands" strategy to "allege trade secrets with calculated vagueness, then use discovery to redefine the trade secrets to be whatever is found in [Skyryse's] files." *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, No. 20-cv-04808-WHA, 2021 WL 2166880, at *1 (N.D. Cal. May 27, 2021) (ordering "trade secret claimants to submit a statement particularizing the alleged secrets at issue prior to continuing on to discovery"); *see also Jobscience, Inc. v. CVPartners, Inc.*, No. 13-cv-04519-WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) ("A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery. This order will not allow

---

[2] When, as here, plaintiffs are claiming improvements to concepts practiced by others in the field, a "more exacting level of particularity may be required to distinguish the alleged trade secret from matters already known to persons skilled in that field." *Advanced Modular Sputtering v. Super. Ct.*, 33 Cal. Rptr. 3d 901, 908 (2005). When plaintiffs define their trade secrets vaguely or broadly, that definition risks including matters of general knowledge in the industry and can have a chilling effect on employee mobility. Here, the generic categories of products and software that Moog describes would put Moog employees at risk should they take jobs in their chosen field for competitors who produce similar products.

this old trick of vague pleading with the blanks to be artfully filled in only after discovery.").

Third, failing to identify trade secrets with particularity impedes the Court and the parties from establishing clear, workable parameters for the scope of discovery. *See Xerox Corp. v. Int'l Bus. Machines Corp.*, 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974) (noting that until the plaintiff specifies its trade secrets "neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful whether [defendant] can undertake a meaningful discovery program ...."); *see also MSCI Inc. v. Jacob*, 945 N.Y.S.2d 863, 865 (Sup. Ct. 2012) ("Only by distinguishing between the general knowledge in their field and their trade secrets, will the court be capable of setting the parameters of discovery and will defendants be able to prepare their defense."). Properly defining the bounds of discovery impacts both the parties and the Court. Without a sufficiently specific identification of trade secrets, discovery cannot be reasonably contained, too easily expands into irrelevant areas, and leads to disputes over the scope of proper discovery. The transferor court recognized this too: "early identification of the trade secrets at issue will enable this court and the parties to set the proper bounds and scope of discovery, thereby avoiding burdensome and expensive discovery into irrelevant areas." (Dkt. 205 at 5.)

Indeed, the discovery Moog was permitted to take from Skyryse and the individual defendants for the past year before identifying its trade secrets led to the production of nearly four terabytes of electronically stored information by Skyryse—the equivalent of nearly 300 million pages of text—in what was supposed to be limited, "expedited" discovery. This includes Skyryse producing more than a dozen devices and other forensic images, making its highly proprietary source code available for Moog's inspection, and producing many thousands of business records directly to Moog. Likewise, Moog's failure to sufficiently identify the subject matter of its trade secret claims has led to the many discovery disputes both sides already

1   have brought to the Court. And without knowing what Moog's alleged trade secrets
2   are—and as importantly, what they are *not*—it is impossible for the Court and parties
3   to meaningfully assess basic discovery issues like relevance, burden, and
4   proportionality.[3]

5       Last, vague and overbroad trade secret claims lead to unmanageable and
6   unfair hearings and trial. No litigant possibly could present the thousands or millions
7   of alleged trade secrets "reflected in" 300,000 files to a judge or jury. (*See* Storey
8   Decl., ¶ 4, Ex. C (July 27, 2022 Hrg. Tr.) at 12 ("[O]bviously, nobody is going to go
9   to [the Court] on a preliminary injunction hearing with a million trade secrets.")
10  (instructing that Moog's trade secret claim must be "culled down in some fashion
11  into a [] coherent presentation" that has "a reasonably narrow scope").) Allowing
12  Moog to proceed based on its current, non-compliant TSID would make for an
13  unmanageable trial, extreme confusion for the jury, and an unfair trial-by-ambush
14  against the Defendants, who would never learn what trade secrets Moog is actually
15  asserting until the last possible moment, if at all.

16      Because of these policy reasons, courts have established ground rules to
17  ensure plaintiffs specify their trade secrets, as the transferor court recognized. For
18  one, a plaintiff cannot meet its obligation by describing generic "categories" that
19  purportedly contain trade secrets. *See Sit-Up*, 2008 WL 463884, at *6-7 (rejecting
20  plaintiff's "outline[] [of] general categories into which the alleged trade secrets fell"
21  and requiring plaintiff "to provide defendants with 'narrative identifier[s] of [its]
22  trade secrets, with sufficient specificity so that we would know what they are'"); *see*
23  *also Founder Starcoin, Inc. v. Launch Labs, Inc.*, No. 18-cv-972-JLS(MDD), 2018

24  _____

25  [3] Moreover, without a precise and bounded definition of the trade secrets at issue, it
    would not be possible for Skyryse to take remedial action to avoid the alleged trade
26  secrets, or even for the Court to fashion an understandable, enforceable injunction,
    if one were merited.  (Dkt. 205 at 5 (citing *Corning Inc. v. PicVue Elecs., Ltd.*, 365
27  F.3d 156, 158 (2d Cir. 2004) ("The preliminary injunction entered by the district
    court does not identify the trade secrets . . . . It is thus not possible to ascertain from
28  the four corners of the order precisely what acts are forbidden[.]").).)

                                        JOINT STIPULATION RE: DEFENDANTS' MOTION
                                        TO ENFORCE ORDER COMPELLING TRADE
                                        SECRET IDENTIFICATION

WL 3343790, at \*6–8 (S.D. Cal. July 9, 2018) (plaintiff cannot carry its burden to establish a trade secret where it describes "a broad range of potential concepts, not a hard and fast trade secret").

Moreover, there is a consensus among federal courts that a plaintiff cannot meet its burden to identify its trade secrets by pointing to documents and claiming that the trade secret is "reflected" or "contained" somewhere in them. *See Medidata Sols., Inc. v. Veeva Sys., Inc.*, No. 17-cv-589(LGS), 2022 WL 585734, at \*1 (S.D.N.Y. Feb. 25, 2022) ("[I]t is neither [defendant's] nor the Court's burden to ascertain whether any identifiable trade secret evidence can be gleaned from tens of thousands of pages of documentation."); *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 635 (D. Or. 2015) (denying preliminary injunction because plaintiff "cannot generically claim the entire Strat Plan, which amounted to over 500 slides, as trade secret information"); *see also Lockheed Martin Corp. v. L-3 Commc'ns Corp.*, No. 05-cv-902-CAP, 2006 WL 8432941, at \*1 (N.D. Ga. Oct. 27, 2006) (finding that referring to documents under Rule 33(d) "is a completely insufficient response to an interrogatory requesting that a plaintiff in a trade secrets case identify what information it contends is proprietary").

And, when a plaintiff claims that its source code is trade secret, it must identify with specificity which part of the code embodies the trade secret. *See Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC, 2020 WL 836724, at \*2 (N.D. Cal. Feb. 20, 2020) (holding that describing alleged trade secrets as "source code" "is not sufficiently specific to make out a prima facie case of trade secret misappropriation"); *Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, No. 01-cv-20813-RMW, 2007 WL 2429653, \*10-11 (N.D. Cal. Aug. 24, 2007), *aff'd*, 332 F. App'x 387 (9th Cir. 2009) (granting summary judgment where plaintiff offered only "vague" statements and showed "no indications of similarities" in the source code); *see also Calendar Research*, 2020 WL 4390391, at \*4 (suggesting that

1  plaintiffs should conduct "code comparison" to establish source code trade secret
2  claim).

3      **B.    Moog defied the Court's order to follow specific procedures to**
4           **identify its trade secrets with particularity.**

5      Skyryse never wanted or needed any confidential information from Moog or
6  its former employees. So, since the outset of this case, Skyryse has asked Moog to
7  identify its trade secrets with specificity so Skyryse could search for and remove any
8  that might have made their way onto Skyryse's systems. When Moog claimed it
9  needed emergency injunctive relief to prevent Skyryse from using its confidential
10 information, Skyryse reached out to Moog immediately, in the earliest days of the
11 suit, for Moog's guidance on how to best identify what Moog viewed as its
12 wrongfully acquired information, and has repeatedly asked Moog to help it identify
13 that information. *See, e.g.*, Storey Decl., ¶ 2 Ex. A (June 27, 2022 D. Lumish Letter)
14 ("In the interest of avoiding disputes about whether Moog thinks Skyryse's process
15 is or has been satisfactory, we would like to work together with you so we can obtain
16 Moog's input on what it thinks needs to be done to ensure that Skyryse has
17 effectively eliminated any possible alleged Moog trade secrets or proprietary
18 information."). But Moog refused to tell Skyryse what its purported trade secrets are.

19     Skyryse thus was forced to file its motion to compel that information. (Dkt.
20 166.) In response, Moog claimed it needed expansive discovery from Skyryse before
21 it could identify its own trade secrets, even though Moog claimed to have forensic
22 evidence showing in granular detail which files had been allegedly copied. (Dkt. 180
23 at 12.) Moog represented to the Court that it needed discovery so that it could limit
24 its trade secrets to information Skyryse purportedly used. Moog claimed it would
25 "provide more specific responses to Skyryse's interrogatories" and limit its claims
26 "to the specific trade secrets that it contends were misappropriated." (Dkt. 205 at 3.)
27 At the hearing, Moog further represented to the Court that discovery was necessary
28 so that it could limit its claims and promised it would not merely provide a list of

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

"hundreds of thousands of individual identifications." *See* Storey Decl., ¶ 3, Ex. B
(July 15, 2022 Hrg. Tr.) at 26, 43. The Court granted Moog the discovery it sought,
instructing Moog that its eventual TSID would need to have a "considerable level of
detail" and a "reasonably narrow scope." Storey Decl., ¶ 4, Ex. C (July 27, 2022
Hrg. Tr.) at 5, 12.

The Court held that, after receiving the requested discovery, "Moog must
identify its trade secrets with a reasonable degree of precision and specificity that is
particular enough as to separate the trade secret from matters of general knowledge."
(Dkt. 205 at 3.) The Court further ordered as follows:

- First, Moog must "answer in full Skyryse's Interrogatory No. 1 calling
  for Moog to *identify with particularity every alleged trade secret it
  intends to assert in this action* including through a *narrative response*
  and not solely by invoking Rule 33(d)." *Id.* at 6.

- Second, the Court instructed Moog that "[i]t is *insufficient to describe
  the trade secrets by generic category.* Rather, the plaintiff must identify
  the specific characteristics of each trade secret." *Id.* at 3.

- Third, Moog shall "*not . . . point to documents in which trade secrets
  are said to reside as a substitute for a detailed identification.*" *Id.* at 4.

- Fourth, if Moog claimed misappropriation of trade secrets in source
  code it must "identify the specific lines of code or programs claimed to
  be secret by, for example, printing out the code on paper with numbered
  lines and *identifying the allegedly misappropriated lines by page and
  line number, by highlighting, or by color-coding.*" *Id.*

- Fifth, Moog cannot "avoid its disclosure obligation by reference to so-
  called 'combination claims,' namely a combination of characteristics
  and components, each of which, by itself, is in the public domain." *Id.*
  at 4.

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

Moog has flouted each of these aspects of the Court's order and done the opposite of what it was ordered to do. In its TSID, Moog evades the "precision and specificity" the Court required, and looks to obscure its willful defiance by serving a massive document it will surely contend must disclose the trade secrets somewhere just given the sheer number of pages it contains. (Dkt. 360 at 29) (Moog boasting it served "multi-hundred page trade secret disclosures"). But these hundreds of pages never once identify a specific trade secret or a single line of code that Moog contends comprises a trade secret. *See Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, No. 13-cv-2856-JLS(RBB), 2016 WL 5719819, at *11 (S.D. Cal. Sept. 30, 2016) ("Rather than a 'reasonably particular' list of trade secrets, Plaintiff's disclosure resembles an effort to categorize every piece of information or know-how that could potentially have value to the company."), *aff'd*, 729 F. App'x 590 (9th Cir. 2018). Rather, flouting the Court's Order, Moog's haystack of pages describes 30 generic categories of systems, software programs, and software tools that Moog claims are entitled to trade secret protection without identifying the characteristics of those categories that make them trade secrets, what separates them from matters of "general knowledge" (Dkt. 205 at 3), or what makes them "unique" or "affords a competitive advantage" (*id.* at 5). *See also, e.g.*, *Sit-Up*, 2008 WL 463884, at *11-12 (granting summary judgment because plaintiff failed to identify with adequate specificity seventy-seven alleged trade secrets it claimed were misappropriated, noting that by "making such extensive claims, [the plaintiff] has a heavy burden to shoulder").

As a representative example, Moog purports to identify trade secrets related to its " ██████ " program. But the TSID states only that " ████████████████ ████████████████████████████████████████████ ." *See* Storey Decl., ¶ 5, Ex. D at 13. Moog then provides a laundry list of generic categories of documents that it claims constitute its "misappropriated trade secret material" including " ████████████████████████████████

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION



1

2

3

4

5

6 ." *See* Storey Decl., ¶ 5, Ex. D at 13-14. But what actuator design?

7 What source code? What performance characteristics? What procedures? Moog

8 never says. Instead, it refers the Court and Skyryse to a list of 52,766 files that it

9 claims "reflect" its trade secrets for the ███ project alone. *See* Storey Decl., ¶ 5,

10 Ex. D at 14. This is not what the Court ordered.

11      In another representative example, Moog purports to disclose certain alleged

12 "AMP" trade secrets. But here Moog simply describes its aspirations in the field of

13 "electric motor control" and then provides some background on the state of that

14 industry (*e.g.*, it "was becoming more popular in the mid-2010s"). *See* Storey Decl.,

15 ¶ 6, Ex. E at 40. Moog then points to some generic diagrams that it claims show the

16 "basic architecture" of its AMP software program and offers a generic description

17 of the components of that software. *See* Storey Decl., ¶ 6, Ex. E at 41 ("

18

19 ."). But

20 describing what a program *does* (*e.g.*, contains an "operating system," uses libraries

21 "frequently," or contains "interfaces" to hardware) does not tell Skyryse what any

22 trade secret actually *is*. *See Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147,

23 1156 (D. Or. 2015) (disclosures insufficient where they "do not specify any trade

24 secrets, 'but rather reveal[] the end results of, or functions performed by, the claimed

25 trade secrets'"). Nor does Moog explain what differentiates its alleged AMP trade

26 secrets from general knowledge. Instead, Moog refers the Defendants to another

27 15,187 documents in which it claims the trade secrets are "reflected," and expects

28

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

1   the Defendants (or the Court) to root them out. *See* Storey Decl., ¶ 6, Ex. E at 43.
2   Once again, this is not what the Court ordered.

3       In another example, Moog claims that its provision of parts to Boeing for its
4   787 Dreamliner aircraft is a trade secret. *See* Storey Decl., ¶ 6, Ex. E at 45. That
5   purported "trade secret" consists of a list of parts that Moog claims to supply to
6   Boeing. *See* Storey Decl., ¶ 6, Ex. E at 45-47. Instead of identifying any trade secrets
7   within that material, Moog once again refers the Court and Skyryse to a list of 7,872
8   files. *See* Storey Decl., ¶ 6, Ex. E at 47.

9       This is a small sampling of the deficiencies that permeate every aspect of
10  Moog's TSID. Throughout its TSID, Moog does exactly what the Court ordered it
11  not to do—"point to documents in which trade secrets are said to reside as a
12  substitute for a detailed identification." (Dkt. 205 at 4.) For Moog's purported "Kim
13  Download" trade secret, for example, Moog does not identify any trade secret at all.
14  Rather, the TSID merely describes the act of Ms. Kim downloading Moog files
15  while she worked at Moog, and claims that some "trade secret" is "reflected" in her
16  allegedly copied 77,334 files. *See* Storey Decl., ¶ 5, Ex. D at 14-15; *see also* "Reid
17  Raithel" trade secret at Storey Decl., ¶ 6, Ex. E at 70 (claiming that ex-Moog
18  employee Reid Raithel downloaded unspecified files when he left Moog and
19  claiming that this unspecified "trade secret" is "reflected" in 13,011 files).

20      In fact, Moog points to documents rather than identify trade secrets for *every*
21  generic category it discloses. (*See, e.g.*, the "███████" trade secret (reflected in 29,846
22  files), the "TERN" trade secret (reflected in 25,407 files), and the "G-6-7-8" trade
23  secret (reflected in 19,026 files).) In total, Moog refers the Court and Skyryse to
24  more than 300,000 documents (311,581, to be exact) that Moog claims "reflect" its
25  trade secrets. This flies in the face of the Court's instruction to Moog that providing
26  a list of documents will not "substitute for a detailed identification." (Dkt. 205 at 4.)

27      Further, although Moog lists many software programs in its TSID, it fails to
28  identify a single line of source code that it claims to be a trade secret. This too is a

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

blatant violation of the Court's order to "identify the specific lines of code or programs claimed to be trade secret . . . by page and line number, by highlighting or color-coding."[4] (Dkt. 205 at 4.) As just a few examples, Moog purports to identify source code in its TSID at pages 22 ("Flight Source Code"), 26-28 ("Source Code for MDTE"), and 38-39 ("Platform Source Code") of its TSID.  *See* Storey Decl., ¶ 6, Ex. E at 22, 26-27, 38-39. Moog never specifies a single line of code within those programs that it claims is a trade secret.

These examples are merely illustrative, and the same deficiencies pervade each of the 30 generic categories of trade secrets Moog purports to identify. *See* Storey Decl., ¶¶ 5-6, Exs. D-E ("Trade Secret 1" through "Trade Secret 24," and "CUI Program Trade Secret 1" through "CUI Program Trade Secret 6"). Moog describes each of these alleged trade secrets as a generic category, makes vague reference to capabilities and components sometimes paired with background information about Moog or the industry, but provides no specificity about what, if anything, within the generic category is its trade secret. *See, e.g.*, *Vesta*, 147 F. Supp. 3d at 1155 ("[I]t is insufficient to describe the trade secrets by generic category, such as the components of the night vision devices to which the alleged trade secrets relate. Rather, the party must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data.").

Skyryse attempted without success to resolve this dispute without the Court's intervention. When counsel met and conferred, Skyryse explained that Moog had failed to identify its trade secrets with the required particularity, and pointed out that

---

[4] The Court's instructions on this point reflect the reality of how software engineers write source code, according to the restraints and conventions of programming languages. This means they necessarily use generally known and conventional programming styles, practices, and methods. Identifying trade secrets that might also be embodied in source code thus requires separating the alleged secrets from the known and conventional aspects of the code. *See, e.g.*, "Coding conventions," https://en.wikipedia.org/ wiki/Coding_conventions#:~:text=Coding%20conventions%20are%20a%20set, program%20written%20in%20that%20language.

JOINT STIPULATION RE: DEFENDANTS' MOTION TO ENFORCE ORDER COMPELLING TRADE SECRET IDENTIFICATION

Moog had not obeyed the Court's specific instructions. Skyryse explained, for example, that Moog seemed to be trying to identify software among its trade secrets without pointing to specific portions of source code as the Court required. Skyryse also explained that Moog had vaguely referred to more than 300,000 documents in its TSID without any narrative response explaining what within those documents embodied any trade secrets, contrary to the Court's instruction. Moog's counsel responded that they were aware of the Court's order, felt that Moog had complied with the "*intent*" of Judge McCarthy's ruling, and thus was in compliance. But Judge McCarthy's order is explicit and unambiguous. It provided clear instructions that Moog chose not to follow, preferring instead to continue obscuring its alleged trade secrets as long as possible for tactical gain. It was not for Moog to modify Judge McCarthy's Order based on its views of his "intent," and Moog should be ordered to comply with that Order without further delay.

## C. Moog's failure to identify its trade secrets has prejudiced and will continue to prejudice Skyryse.

Moog's failure to sufficiently identify its alleged trade secrets has profoundly impeded the progress of this case. Skyryse has been forced to respond to broad discovery requests that span nearly every aspect of its entire business, sort through an enormous amount of electronically stored information—altogether, over 30 million files and more than four terabytes of data, much of it irrelevant—and face Moog's post hoc definition of its trade secrets based not on any internal identification, but rather on what its lawyers glean from Skyryse's files. This, coupled with efforts to respond to Moog's endless barrage of pressure tactics has been a tremendously time-intensive and expensive effort.[5]

---

[5] Further, Moog has applied mass and indiscriminate designations to all 91 pages of its trade secret identification (and potentially to the hundreds of thousands of exhibits it references), as potentially subject to and thus requiring special treatment under the International Traffic in Arms Regulations (ITAR). Counsel for Skyryse has requested several times that Moog specifically identify which of its materials are

1   More fundamentally, Moog's failure to comply with the Court's Order and
2   sufficiently identify its trade secrets has deprived Skyryse of a reasonable
3   opportunity to prepare its defenses which will only continue if not remedied. By
4   describing generic categories of information rather than identifying the purported
5   trade secrets, Moog denies Skyryse its right and ability to gather discovery to test
6   Moog's theories of liability. For example, Skyryse is entitled to test whether Moog's
7   alleged trade secrets are indeed secret, not generally known or ascertainable, and
8   legally protectable, and to marshal the necessary evidence to show that, as Skyryse
9   has maintained from the outset, it never wanted or intended to use Moog's trade
10  secrets. It cannot challenge Moog's theories without knowing what the trade secrets
11  are. *Medidata Sols., Inc.*, 2022 WL 585734, at *1 (holding that because plaintiff
12  "provided no specific explanation" of its alleged trade secrets in interrogatory
13  responses, "a factfinder could not apply to those allegedly misappropriated
14  documents the appropriate follow-on factual tests – such as whether any alleged
15  trade secrets they allegedly contained were valuable, misappropriated or maintained
16
17  ───────────────
18  actually ITAR-controlled as Moog is required to do under the Protective Order, which prohibits such "[m]ass indiscriminate, or routinized designations" and any designations which are "clearly unjustified or that have been made for an improper
19  purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties)." (Dkt. 89 (Protective
20  Order) ¶ 4.4.)). Moog's indiscriminate designations unnecessarily impede Skyryse's and the Court's ability to analyze Moog's alleged trade secrets by forcing undue
21  restrictions. *Burt v. AVCO Corp.*, No. CV-15-3355-MWF-PJWX, 2015 WL
22  12912366, at *4 (C.D. Cal. Nov. 17, 2015) ("the purpose of ITAR is to further 'world peace and security,' not to permit parties to avoid their discovery duties.").
23  Moog rejected Skyryse's requests, refused to confirm whether it was designating the
24  entirety or only a portion of its trade secret identification and exhibits, and baselessly accused Skyryse and its counsel of violating ITAR despite Skyryse counsels'
25  repeated assurances that they were in compliance. As of April 26, 2023, Moog still has not narrowed its overbroad ITAR designation and has represented that filing
26  Moog's ITAR-controlled materials under seal with the Court is sufficient to comply with ITAR. Storey Decl., ¶ 7, Ex. F (March 24, 2023 K. Naqvi Letter). Skyryse relies
27  on that representation in this submission, and notes that it is Moog's burden under the Protective Order to demonstrate that its ITAR and confidentiality designations
28  are warranted. (Dkt. 89 ¶ 5.3.)

19

as secrets"); *see also Sit-Up*, 2008 WL 463884, at *6 (holding that plaintiffs "have to be able to identify with specificity what information they consider to have been a trade secret" and "[i]f the plaintiff can't do that now, it can't proceed on that theory, because the defendants have a right during discovery to test whatever the plaintiff's theory is"). Skyryse has a right to know what Moog's theory of the case is, and to test and challenge it in discovery beforehand.

### D. Moog should be ordered to comply with the Court's order.

Moog's plain and numerous violations of the Court's order and clear instructions should be met with a natural consequence. In civil discovery, where a party fails to provide or supplement information it is required to provide, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1). And when a party fails to obey a court order to provide discovery, the consequences can include prohibiting the disobedient party from pursuing certain claims; establishing certain facts as true; striking relevant pleadings in whole or in part; or dismissing entire claims. Fed. R. Civ. P. 37(b)(2)(A). For example, in *Dura Global, Technologies, Inc. v. Magna Donnelly Corp.* the court ordered the plaintiff to describe its trade secrets with reasonable particularity and, like here, provided "specific directions" that the plaintiff must follow. No. 07-cv-10945-DT, 2008 WL 2742062, at *2 (E.D. Mich. July 11, 2008). When the plaintiff defied the court's orders and continued to provide "vague and general descriptions" of several trade secrets, the court struck those disclosures (and dismissed the portion of the complaint relying on them). *Id.* at *2-3. It explained, "[t]he time has come to provide Defendant with some assurance that the trade secrets listed are those that it is accused of misappropriating and prevent further prejudice that arises from Plaintiffs' failure to properly identify them." *Id.* at *2; *see also Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (affirming summary judgment against plaintiff where it failed to provide "the level of specificity necessary to identify" its trade secrets); *Freeman*, 2016 WL 5719819, at

JOINT STIPULATION RE: DEFENDANTS' MOTION TO ENFORCE ORDER COMPELLING TRADE SECRET IDENTIFICATION

*12 (granting summary judgment against plaintiff where it "failed to meet its burden of identifying its alleged trade secrets with the requisite specificity"); *Swarmify, Inc. v. Cloudflare, Inc.*, No. 17-cv-06957-WHA, 2018 WL 2445515, at *3 (N.D. Cal. May 31, 2018) (instructing plaintiff that failure to specifically identify trade secrets may lead to "an adverse ruling on the entire trade secret misappropriation claim").

Likewise, Skyryse respectfully requests that the Court find that Moog's current TSID is not in compliance with the Court's July 22 order, and compel Moog to serve a new and amended TSID that complies in full with the transferor court's order. *See* Fed. R. Civ. P. 37(c)(1)(C), 37(b)(2)(A)(iii). After a year of discovery, Moog knows what its trade secrets are, which ones it intends to assert in this case, and what its theory of liability is. It is far past the time for Moog to finally provide the "reasonable degree of precision and specificity" the Court required and "identify with particularity every alleged trade secret it intends to assert in this action including through a narrative response and not solely by invoking Rule 33(d)." (Dkt. 205 at 3, 6.). Should Moog continue to refuse, then more drastic relief may well be necessary.

In the meantime, the Court should bar Moog from relying on the non-compliant TSID, and from taking any additional discovery related to its claims, which Moog admits "are all predicated upon the [alleged] misappropriation of trade secrets." (Dkt. 62 at 15.) The order also should make clear that discovery relating to Skyryse's defenses and counterclaims should be proceeding. Such an order is necessary to prevent Moog from unfairly benefitting from violating the order and obscuring its trade secrets, for example, by continuing to withhold discovery from Skyryse on other issues. *See Vesta*, 147 F. Supp. 3d at 1149, 1156 (excusing defendants "from responding to any discovery related to the 'Confidential Solutions Methods' until such time as Plaintiff identifies" its trade secrets with reasonable particularity because defendants should "not be required to waste time guessing at the basis of Plaintiffs' claims"). As described above, over the past year Moog has

1    taken extensive discovery from Skyryse, Mr. Pilkington, Ms. Kim, and more than a
2    dozen third parties, without identifying any of its trade secrets, while Defendants
3    have been barred from proceeding with their own discovery on their defenses. *See*
4    *supra* at 3; Dkt. 205 at 6. Skyryse respectfully asks the Court to put an end to this
5    one-sided process, and order that Moog cannot take further discovery into its trade
6    secret-related claims until and unless it complies with the TSID order. *Vesta*, 147 F.
7    Supp, 3d at 1156, *see also Vesta Corp. v. Amdocs Mgmt. Ltd.*, 2016 WL 8732371,
8    at *6 (D. Or. Apr. 1, 2016) (ordering plaintiffs "to ensure compliance" with the
9    Court's order "so that discovery can proceed and this case can move forward").

10        **E.    Conclusion**

11        Skyryse respectfully requests that the Court grant this motion to enforce the
12   July 22 order compelling Moog to sufficiently identify its trade secrets; find that
13   Moog's current TSID is not in compliance; order Moog within fourteen days to serve
14   an amended TSID that fully complies with the Court's order before it may take any
15   further discovery related to its trade secret claims; and preclude Moog from asserting
16   any trade secrets it fails to sufficiently disclose.

17
18
19
20
21
22
23
24
25
26
27
28

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

## IV.   MOOG'S CONTENTIONS

### A.   The Requirements of Identification with Reasonable Particularity

The goal of making a plaintiff identify its trade secrets with reasonable particularity at this stage of litigation, *i.e.*, before discovery, is simply "putting [defendant] on notice of the trade secrets at issue and allowing the parties and Court to understand the relevant scope of discovery." *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, No. 813CV01880JLSKESX, 2017 WL 10543565, at *5-6 (C.D. Cal. Mar. 13, 2017). Much of the authority cited by Skyryse deals with merits-based decisions on summary judgment or preliminary injunction motions; this authority is inapposite, as Moog is not required to prove the *merits* of its trade secrets at this early stage of litigation. *Id.* ("[A] plaintiff need not prove at the discovery stage that each trade secret identified qualifies for trade secret protection.").[6] Moog "is not required to prove in its [trade secret identification] that its trade secrets are not generally known." *STEMCELL Techs. Canada Inc. v. StemExpress, LLC*, No. 21-CV-01594-VC (LB), 2022 WL 585668, at *6-7 (N.D. Cal. Feb. 24, 2022).[7]

---

[6] *See also Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 3:14-CV-1142-HZ, 2016 WL 8732371, at *4 (D. Or. Apr. 1, 2016) ("[T]he ultimate question of whether an alleged trade secret is, in fact, a trade secret is different than whether Plaintiff identifies the alleged trade secret with reasonable particularity."); *CapRate Events, LLC v. Knobloch*, No. 17-CV-5907-NGG-SJB, 2018 WL 4378169, at *2 (E.D.N.Y. Mar. 9, 2018) (noting that cases litigating summary judgment do not assist in determining whether trade secrets are sufficiently identified pre-discovery); *Storagecraft Tech. Corp. v. Symantec Corp.*, No. 2:07 CV 856 CW, 2009 WL 361282, at *2 (D. Utah Feb. 11, 2009) ("arguments focus[ed] on the ultimate merits of . . . alleged trade secrets [are] improper at this stage of the litigation").

[7] This case, like many of the cases cited by Skyryse and many of the cases dealing with trade secret identification in this Circuit, applies § 2019.210 of the California Code of Civil Procedure, which is the statutory embodiment of the reasonable particularity requirement applied to claims under the California Uniform Trade Secret Act. While there is ongoing debate about whether section 2019.210 applies to claims in federal courts or DTSA claims, here the issue of whether 2019.210 applies is not before the Court. However, the Order of the Transferor Court, under Federal Rule of Civil Procedure 26, applied a substantially similar requirement, making the reasoning of courts applying 2019.210, which concerns determining

1    Instead, all that Moog must do at this stage is "make some showing that is
2    reasonable, i.e., fair, proper, just and rational[,] under all of the circumstances to
3    identify its alleged trade secret in a manner that will allow the trial court to control
4    the scope of subsequent discovery, protect all parties' proprietary information, and
5    allow them a fair opportunity to prepare and present their best case or defense at a
6    trial on the merits." *Id*. at *4. Skyryse's own case law acknowledges that "whether
7    a plaintiff has sufficiently disclosed its trade secrets is 'a fact-specific question to be
8    decided on a case-by-case basis.'" *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp.
9    3d 1147, 1155 (D. Or. 2015). Furthermore, the trade secret "designation should be
10   liberally construed, and reasonable doubts about its sufficiency resolved in favor of
11   allowing discovery to go forward." *STEMCELL Techs.*, 2022 WL 585668 at *4.

12          1.    <u>Identification of Specific Files Reflecting Trade Secrets Satisfies
13                the Requirement to Identify Trade Secrets with Reasonable
14                Particularity</u>

15   Courts in the Ninth Circuit and elsewhere have repeatedly found that trade
16   secrets can be identified by a narrative description accompanied by identification of
17   files that reflect the alleged trade secret, particularly in situations where a defendant
18   has taken a large amount of material from the plaintiff. For example, in *WeRide*
19   *Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 844 (N.D. Cal. 2019), a defendant stole
20   1,192 files from the plaintiff upon the end of his employment. The court found that
21   the plaintiff had identified its trade secrets with reasonable particularity after it
22   "describe[d] the functionality of each trade secret" and "name[d] numerous files in
23   its code base . . . that reflect the source code specific to each alleged trade secret."
24   *Id*.

25   The Ninth Circuit has taken a similar approach. In *Integral Dev. Corp. v.*
26   *Tolat*, No. C 12-06575 JSW, 2015 WL 674425, at *4 (N.D. Cal. Feb. 12, 2015), the

27

28   whether a trade secret plaintiff has sufficiently identified a trade secret such that
     discovery can proceed, useful here.

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

court found that a plaintiff's identification that "list[ed] hundreds of file names without identifying the trade secret information contained within the files, is insufficient." The Ninth Circuit reversed, finding that by alleging that the defendant had copied its files onto an external hard drive shortly before leaving plaintiff's employ, describing the categories of documents that contained trade secret material, and identifying those files that contained trade secret material, the plaintiff had "identified specific key aspects" of its trade secrets and "sufficiently identified the information it alleges is a trade secret." *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017).

Similarly, this court has followed this approach where thousands of trade secrets are at issue. In *Microvention, Inc. v. Balt USA, LLC*, No. 820CV02400JLSKESX, 2021 WL 4840786, at *4 (C.D. Cal. Sept. 8, 2021), this court found that trade secrets were identified with particularity where the plaintiff gave defendant "the file type or title, in such a way that Defendants can locate them" for each trade secret at issue. This court held: "That there are thousands such alleged trade secrets does not mean that each one has not been sufficiently identified." *Id*. Identifying specific files containing trade secrets, even in large numbers, is a sufficient means of meeting the requirement for reasonable particularity in identification of a trade secret. *See also Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *3 (N.D. Cal. June 14, 2012) (finding that identifying "file names" was sufficient "to identify what it is that [plaintiff] claims is secret"); *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2012 WL 74319, at *16 (N.D. Ill. Jan. 10, 2012) (holding that where "[plaintiff] has identified its alleged secrets by Bates number, file type, and/or location," trade secrets were sufficiently identified, even where millions of files were listed).

Here, there are approximately 1.4 million stolen files at issue, and Moog has provided a higher level of detail than cases involving just a few thousand files where courts found similar formats of trade secret identifications to be sufficient.

2. <u>Source Code Trade Secrets May Also Be Identified with Reasonable Particularity by Identification of Specific Files</u>

This type of identification is also sufficient for source code trade secrets. *See, e.g.*, *WeRide Corp.*, 379 F. Supp. 3d at 846-47 (finding source code trade secrets adequately identified by file listing); *Soc. Apps, LLC*, 2012 WL 2203063 at *3 (same). An argument that "the plaintiff must identify the specific code…is wrong on the law." *WeRide Corp.*, 379 F. Supp. 3d at 846. This Court has also found that it is sufficient identification for a plaintiff to claim "that the entirety of the source codes identified are its trade secrets." *SMC Networks Inc. v. Hitron Techs. Inc.*, No. SACV121293JLSRNBX, 2013 WL 12114105, at *5 (C.D. Cal. Nov. 13, 2013). Other courts agree. *See, e.g.*, *Xtec, Inc. v. Cardsmart Techs., Inc.*, No. 11-22866, 2014 WL 10268426, at *8 (S.D. Fla. May 15, 2014) ("[a]lthough [plaintiff] must describe the trade secret for which it seeks protection with sufficient particularity . . . it need not specify the lines of source code that make up the trade secret."); *Storage Tech. Corp.*, 2003 WL 22462494 at *1.

Furthermore, an entire program can be identified as a trade secret because the design of a program or the source code as a whole can be a trade secret. *See, e.g.*, *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1129 (9th Cir. 2010) ("source code, as a whole, is a trade secret"); *Decision Insights, Inc. v. Sentia Grp., Inc.*, 416 F. App'x 324, 327 (4th Cir. 2011) (noting that a software program as a whole can be a compilation trade secret and that production of source code is an acceptable method of identifying such a trade secret); *TouchPoint Sols., Inc. v. Eastman Kodak Co.*, 345 F. Supp. 2d 23, 28 (D. Mass. 2004) ("[T]he overall design of a software can constitute a trade secret . . . . [I]t is the *design* of the program that is the most important, not the particular code that reflects that design.") (citation and internal quotations omitted, emphasis in original; *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1257 (S.D. Fla. 2016) (holding that it was permissible to define a trade secret as an entire system).

**B.**   **Moog's TSID Complies with the Law governing Identification of Trade Secrets and with the Order of the Transferor Court**

1.   Moog's TSID Goes Above and Beyond What Is Required for Identification of a Trade Secret with Reasonable Particularity

As explained above, at this stage of a litigation Moog need only "make some showing that is reasonable, i.e., fair, proper, just and rational[,] under all of the circumstances to identify its alleged trade secret." *STEMCELL Techs.*, 2022 WL 585668 at *4.   The most relevant circumstance here is that the Defendants took approximately ***1.4 million (1,400,000) files*** from Moog.   In order to create the TSID that Moog has provided, Moog had to review massive numbers of files, involving significant time, effort, and expense, because of the sheer volume of the Defendants' theft.   Through this extensive process, Moog identified 291,095 files for which it seeks trade secret protection at this juncture of the case.   In other words, Moog narrowed the amount of files at issue from 1,400,000 to 291,095, which is about 1/5 of the files that were stolen (approximately 20%, meaning Moog narrowed the files at issue by approximately 80%).   Going further, Moog then broke those 291,095 files out into 30 trade secret categories (some with subcategories), for which it provided a narrative description of each particular trade secret, sometimes including a large amount of technical detail related to the trade secret.   Going even further, Moog provided a specific list of the trade secret files that were stolen for each trade secret.

Skyryse asserts that Moog simply dumped 300,000 files on Defendants and the Court, but that is refuted by even a cursory look at the TSID.   The files are clearly broken out to correspond to specific trade secrets, which are narratively described in the TSID.   Furthermore, contrary to the way Skyryse presented it to the Court, the TSID included an ***Excel spreadsheet*** of the files at issue, which: (1) breaks the files out into tabs keyed to each individual trade secret as referenced in the TSID; and (2) is manipulatable (as an Excel file) such that the Defendants can categorize or search the files as they see fit.   Attached as **Exhibit 1** to the Declaration of Kazim A. Naqvi

1   (Naqvi Decl.) are true and correct screenshots of the TSID Excel spreadsheet that

2   show how the files are displayed natively, and that they are organized by tabs and

3   keyed to each identified trade secret.  Rather than present something similar to the

4   Court, Skyryse prints the entire Excel into a single long document that strips out the

5   tabbing in an apparent attempt to create the impression that 300,000 files were

6   dumped into a single long undifferentiated list.  (*See* Skyryse's Ex. E, at pp. 78 to

7   1618.)  This manipulation is highly improper, as it is not how Moog's TSID was

8   constructed and not how it was served to Skyryse.

9         While Skyryse contends that Moog "points to documents rather than identify

10  trade secrets," in reality Moog's identification contains narrative descriptions of

11  specific trade secrets at issue, and then identifies the specific files that reflect those

12  trade secrets.  Moog's identification is completely consistent with authority in the

13  Ninth Circuit and elsewhere holding that identification of specific files is sufficient

14  to identify a trade secret with reasonable particularity.  *See, e.g.*, *WeRide Corp.*, 379

15  F. Supp. 3d at 846-47; *Soc. Apps, LLC*, 2012 WL 2203063 at *3; *Microvention, Inc.*,

16  2021 WL 4840786, at *4.

17        In *WeRide*, for example, the plaintiff narrowed 1,192 stolen files to about 214

18  files, which (similar to Moog's TSID) is about 20% of the stolen files.  (*See WeRide*,

19  No. 5:18-cv-07233-EJD, Dkt. 33-28 (Dec. 26, 2018) (attached as **Exhibit 2** to the

20  Naqvi Decl.).)  In its identification, the plaintiff broke the 214 files into 10 trade

21  secret categories (such as "HD-mapping algorithm," and "lane change

22  functionality").  (*Id.*)  For each category, the plaintiff provided a narrative

23  description, and then stated that the trade secret material "is reflected in the

24  following files," and listed files by filename related to each trade secret category.

25  (*See, e.g.*, *id.* at p. 8-11.)  The court held that, through this form of identification,

26  "WeRide has identified its alleged trade secrets with reasonable particularity."  379

27  F. Supp. 3d at 847.  Here, under very similar circumstances (though on a larger scale

28

1   due to the volume of theft), Moog has engaged in the same form of identification,

2   except perhaps providing even *more* particularity than the *WeRide* plaintiff.

3        Skyryse appears to bring a "goldilocks" argument to the Court, seeming to

4   argue that for some of the trade secrets, such as the "████" program, Moog's TSID

5   provides too little detail, but for others, such as the "AMP" software platform, there

6   is too much detail.  Moog is not required to find some unknown identification

7   formula that pleases Skyryse—rather, Moog is required only to make a reasonable

8   showing of what it believes its trade secrets to be so that discovery can progress.

9   The TSID unquestionably does so.

10       Skyryse contends that the TSID, with regard to AMP, does not tell Skyryse

11  what the trade secret actually is.  To the contrary, the TSID makes clear that the

12  AMP software platform, in its entirety, is being claimed as a trade secret by Moog.

13  (Skyryse's Ex. E at p. 40.)  Moog then further breaks down components of that

14  software platform, contending that the documents describing the AMP software

15  requirements and design are trade secrets, and pointing out where those documents

16  reside (*id.* at p. 43); contending that the source code is a trade secret, and pointing

17  out where the source code files reside (*id.*); contending that AMP-related

18  certification planning documents and review artifact documents are trade secrets and

19  pointing out where those documents reside (*id.*); and so on.  The TSID provides

20  Skyryse and the Court with sufficient particularity regarding what Moog's AMP

21  trade secrets are, as well as where they are.

22       Likewise, with regard to the ████ program, Moog contends that the entirety

23  of the ████ flight control system is a trade secret, and explains that this trade secret

24  includes "████████████████████████████████████████

25  ████████," etc.  (Skyryse's Ex. D at 13-14.)  Moog then points out

26  documents where those trade secrets reside.  (*Id.*)  For Moog's 787 trade secret, too,

27  Moog does much more than simply list parts it supplies to Boeing, as Skyryse claims.

28  Instead, Moog's TSID makes clear that Moog is claiming its primary flight control

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

system and high lift actuation system for the 787 as trade secret. (Skyryse's Ex. E at p. 45.)   Moog breaks this down further, explaining that system description documents for certain units of the actuation system are trade secrets, and pointing out where those documents reside (*id.* at pp. 47-48); explaining that certain presentation documents and slides contain trade secrets, and pointing out where those presentation documents reside (*id.* at pp. 52-53); explaining that source code related to those systems is a trade secret, and explaining where the source code files reside (*id.* at pp. 56-57); and so on.

That Skyryse repeatedly calls Moog's TSID generic does not make it so.  To the contrary, Moog's TSID is very specific, both in terms of narrative identifiers and specifically delineated sets of files containing or reflecting each stolen trade secret.[8]

Moog's TSID also delineates between "general knowledge" and trade secrets. It contains a section entitled "Technology Overview," which is general knowledge and provided for background and context; whereas everything in the sections "Moog's Identification of Trade Secrets by Toolset," "Moog's Identification of Trade Secrets by Program," and "Moog's Identification of Trade Secrets by Other

---

[8] With regard to the "Kim Download" trade secret mentioned by Skyryse, Skyryse ignores the fact that what satisfies the requirement for reasonable particularity is determined by what is "fair, proper, just and rational[,] under all of the circumstances." *STEMCELL Techs.*, 2022 WL 585668 at *4.  Defendant Misook Kim stole 136,994 files and then wiped the hard drive before producing it to Moog. Without access to the specific files that Kim spoliated, Moog still attempted to identify which files contained trade secret information based on the file names and file paths.  Skyryse's insistence that, even under these circumstances, Moog's identification is insufficient reflects Skyryse's true motive—to use the volume of theft and subsequent obfuscation by the Defendants strategically so that Moog is unable to hold Skyryse accountable for the theft of its trade secrets.

With regard to the Reid Raithel trade secret, Raithel stole approximately 27,000 files, and likewise failed to return the external hard drive he used for that theft.  The methodology used by Moog in the TSID, which provides a narrative description of the trade secrets (identifying, for example, "proposal data, "internal budgets," "internal test equipment platform strategy," and so forth) and identifies the specific files containing the trade secret information, is likewise a sufficient and reasonably particular trade secret identification.

Categories" are clearly identified as entirely consisting of trade secrets that are not generally known.   For example, Moog contends that the entirety of the AMP software platform is not generally known.[9]   To the extent that Skyryse argues that the things that Moog is claiming cannot be a trade secret because they are generally known or not secret, such arguments are about the merits of Moog's claims, rather than the identification of the trade secret, and are properly raised in a motion on the merits after discovery, such as a summary judgment motion.   Moog is not required to prove the merits of its claimed trade secrets at this stage.   *See, e.g.*, *Vesta Corp.*, 2016 WL 8732371 at \*4 ("the ultimate question of whether an alleged trade secret is, in fact, a trade secret is different than whether Plaintiff identifies the alleged trade secret with reasonable particularity."); *STEMCELL Techs. Canada Inc.*, 2022 WL 585668, at \*6-7.[10]

With regard to the volume of files and trade secrets at issue, such volume does ***not*** make Moog's TSID insufficient.   To be clear, the volume is only as large as it is because Defendants stole 1.4 million files from Moog.   Moog has done the best it could in the absence of full discovery to satisfy the legal requirements for such an identification to narrow those files to what Moog contends reflect trade secrets.   *See, e.g.*, *Microvention, Inc.*, 2021 WL 4840786, at \*4   ("That there are thousands such alleged trade secrets does not mean that each one has not been sufficiently identified."); *Motorola, Inc.*, 2012 WL 74319, at \*16.   How Moog will go about presenting its case as it goes forward is for Moog to determine as discovery, expert

---

[9] As a practical matter, it should not be surprising that Moog claims that all of the information in the trade secret sections of the TSID is not general knowledge.   What Moog does is *highly* specialized flight control for military and commercial aircraft. That Moog's information is highly specialized and not general knowledge is precisely why Skyryse took it from Moog.

[10] *See also Brescia v. Angelin*, 172 Cal. App. 4th 133, 138 (2009) (noting that elaboration on distinguishing general knowledge is not required where the claimant can identify the boundaries of the secret).

1   discovery, and depositions go forward.  *See, e.g.*, *Microvention, Inc.*, 2021 WL

2   4840786, at *4.

3                    2.      Moog Has Fully Complied with the Transferor Court's Order

4          The Order of the Transferor Court did not require more than what Moog has

5   provided in its TSID, and Moog has fully complied with that Order, which required

6   that Moog "answer in full Skyryse's Interrogatory No. 1 calling for Moog to identify

7   with particularity every trade secret it intends to assert in this action including

8   through a narrative response and not solely by invoking Rule 33(d)."  (Dkt. 205 at

9   6).   Skyryse, however, cherry-picks a few lines from the Order, in which the

10  Transferor Court quoted from a law school journal article suggesting that an

11  identification "should identify the specific lines of code or programs claimed to be

12  secret by, for example, printing out the code on paper with numbered lines and

13  identifying the allegedly misappropriated lines by page and line number, by

14  highlighting, or by color-coding." (Dkt. 205 at 4.)  But this quotation, read in the

15  entire context of the Order, cannot be reasonably interpreted to prescribe precise

16  bright-line rules for Moog's trade secret identification.   To the contrary, the

17  quotation was itself merely an unsupported suggestion by the authors, based on their

18  admitted pro-defendant policy goals, as to how source code trade secrets "should"

19  be identified.  *See* Graves & Range, 5 Nw. J. Tech. & Intell. Prop. at 95. [11]  Indeed,

20  the authors admit in the first footnote that the article was prepared "in the interest of

21  protecting employee mobility and the right to use information in the public domain."

22  *See id.* at 68 (starred footnote).   Moreover, the only authority cited in connection

23  with this suggestion is *Compuware Corp. v. Int'l Bus. Machines Corp.*, No. 02-CV-

24

25  _____

26  [11] The law school journal article at issue was authored in 2006 by two associates
    from the Wilson, Sonsini, Goodrich & Rosati firm, and appeared in the Northwestern
27  Journal of Technology & Intellectual Property.   Charles Tait Graves & Brian D.
    Range, *Identification of Trade Secret Claims in Litigation: Solutions for A*
28  *Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68 (2006).   A true and correct
    copy of the article is attached as **Exhibit 3** to the Naqvi Decl.

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

1   70906, 2003 WL 23212863, at *6 (E.D. Mich. Dec. 19, 2003), which does not

2   support the proscriptive suggestion by the authors.

3       In *Compuware*, the plaintiff alleged that its source code was a trade secret. *Id.*

4   at *2. However, the defendant "emphatically denie[d] that it had access to any such

5   [plaintiff] source code, and [plaintiff] has not submitted evidence of such access."

6   *Id.* at *4. In finding that the plaintiff had not shown likelihood of success on the

7   merits in the context of a motion for a preliminary injunction, the court noted that

8   the employees at issue had no involvement in the development of the alleged trade

9   secrets, and noted that the plaintiff had "failed to identify any specific lines of source

10  code ***that have been taken by defendant***." *Id.* at *5-6 (emphasis added). By contrast

11  here (and to most trade secret cases), there has certainly been evidence of taking of

12  source code by Defendants. Nowhere in *Compuware* does the E.D. Mich. contend

13  that a trade secret plaintiff must always identify specific lines of source code, nor is

14  there any suggestion that a detailed line by line analysis of each source code file is

15  required simply for identification of a trade secret.

16      Consequently, Moog does not agree that the Order of the Transferor Court

17  imposed such an impractical and legally unsupported bright-line rule upon Moog's

18  trade secret identification in this case. Indeed, such an order would be completely

19  contrary to the weight of authority which holds that, for purposes of identification

20  of a trade secret with reasonable particularity, identification of specific lines of code

21  is not required. *See, e.g.*, *WeRide Corp.*, 379 F. Supp. 3d at 846 (holding, where

22  defendant argued that "the plaintiff must identify the specific code," "this argument

23  is wrong on the law."); *Xtec, Inc.*, 2014 WL 10268426 at *8; *Storage Tech. Corp.*,

24  2003 WL 22462494 at *1.

25      Moreover, requiring a line-by-line identification of source code in a case such

26  as this would be immensely impractical. Moog has already expended vast amounts

27  of effort, time, and resources narrowing the 1.4 million files by 80% to specifically

28  identify the files reflecting trade secrets. To require Moog to undertake a line-by-

1  line review of the many thousands of source code files within this set (with many

2  files containing thousands of lines) would be unjust, contrary to the law, and would

3  reward Defendants for the sheer volume of their misappropriation.[12]

### C.    Skyryse's Cited Cases are Inapposite and Do Not Warrant the Relief Sought

6  The cases cited by Skyryse are inapposite and do not support the relief sought

7  by Skyryse.  Skyryse first focuses on cases citing broad policy reasons for why

8  identification of trade secrets is useful early in a litigation, but these cases are

9  inapposite here because Moog has *already* identified its trade secrets.  As noted

10 above, whether a trade secret identification is sufficiently particular is a fact-specific

11 inquiry that takes into account all the circumstances of a case.  But the authority

12 cited by Skyryse regarding whether identification is generally sufficient concerns

13 highly distinguishable situations, different forms of trade secrets, or different forms

14 of identification than what Moog has produced here.

15 For example, in *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 CIV. 9292

16 (DLC), 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008), a summary judgment decision

17 made after "massive document discovery," the plaintiff (unlike Moog) did not

18 provide "narrative identifiers" for its trade secrets, and simply contended at summary

19 judgment that "it need not identify its alleged trade secrets with specificity."  2008

20 WL 463884 at *5, 7, 11.  In *Founder Starcoin, Inc. v. Launch Labs, Inc.*, No. 18-

21 CV-972 JLS (MDD), 2018 WL 3343790, at *6 (S.D. Cal. July 9, 2018), which

22 Skyryse cites for the proposition that "a broad range of potential concepts" cannot

23 establish identification of a trade secret, the "trade secret" at issue was the idea of

24 "licensing the likeness of a celebrity for a digital collectible."  This is not at all

---

[12] Skyryse claims that in the parties' meet and confer, Moog's counsel "felt that Moog had complied with the '*intent*' of Judge McCarthy's ruling." This is incorrect. Moog contends that it has fully complied with the Order, full stop.  Instead, Moog conveyed during the meet and confer that it did not believe Judge McCarthy quoted the law school journal article to impose bright-line rules, and that if Moog's TSID were before him now, Moog believes he would find it sufficient.

1  comparable to this case, where 1.4 million actual files, not ideas or concepts,

2  embodying actual secret programs, software, and other trade secret materials, were

3  stolen by Defendants.

4        Likewise inapposite are all of the cases that Skyryse cites for its argument that

5  a trade secret identification cannot be adequate if it refers to documents containing

6  or reflecting the trade secret.  In *Medidata Sols., Inc. v. Veeva Sys., Inc.*, No. 17 CIV.

7  589 (LGS), 2022 WL 585734, at *1 (S.D.N.Y. Feb. 25, 2022), the court actually

8  found that where narrative descriptions were provided and references to record

9  documents made, trade secrets were adequately identified.  The court only found the

10  identification inadequate where the plaintiff did not explain how the documents

11  embodied any trade secret.  *Id.*  Similarly, in *Lockheed Martin Corp. v. L-3*

12  *Commc'ns Corp.*, No. 1:05-CV-902-CAP, 2006 WL 8432941, at *1 (N.D. Ga. Oct.

13  27, 2006), the plaintiff had simply provided documents in response to an

14  interrogatory request without identifying what information therein was a trade

15  secret.  Here, Moog has provided *both* narrative descriptions and references to where

16  the described documents, containing specific trade secrets, reside.  Under *Medidata*

17  or *Lockheed Martin Corp.*, this is sufficient.  Skyryse cites *St. Jude Med. S.C., Inc.*

18  *v. Janssen-Counotte*, 305 F.R.D. 630, 635 (D. Or. 2015), because the court held, on

19  a preliminary injunction, that the plaintiff's claim that an "entire plan," which

20  amounted to over 500 slides, was a trade secret was not sufficient to prove a

21  likelihood of success on the merits.  However, despite the plaintiff only making a

22  broad identification, the court held that plaintiff "need not identify its trade secrets

23  at issue with any greater particularity before it may take discovery."  *Id.* at 641.

24  Moog has indisputably done much more identification than the plaintiff in *St. Jude*,

25  and consequently Moog should not be forced to do anything further before discovery

26  can continue.

27        With regard to the cases Skyryse cites for its proposition that a plaintiff must

28  identify which part of its source code is a trade secret, none of those cases actually

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

support such a proposition.  In *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-04238-MMC, 2020 WL 836724, at *2 (N.D. Cal. Feb. 20, 2020), the court found that a plaintiff, upon a motion for preliminary injunction, rather than pre-discovery identification, had not sufficiently identified its source code trade secrets, which it asserted contained "trade secrets pertaining to 'functionality,' 'usability,' and 'implementation.'"  The court noted that, unlike here, the "plaintiffs have not pointed to any document in the record" that identified its trade secret.  *Id.*  The court did not order that a specific part of the code must be identified.  Likewise, *Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, No. C-01-20813 RMW, 2007 WL 2429653, at *11 (N.D. Cal. Aug. 24, 2007) is not at all concerned with identification of trade secrets with reasonable particularity.  Rather, it is a summary judgment decision concerned with whether there was evidence that source code was actually misappropriated.  Meanwhile, *Calendar Rsch. LLC v. StubHub, Inc.,* No. 2:17-CV-04062-SVW-SS, 2020 WL 4390391, at *4 (C.D. Cal. May 13, 2020) is another summary judgment decision in which the court discussed code comparison as a means of proving misappropriation at summary judgment, not as part of identification with reasonable particularity.  None of Skyryse's cases support its contention that Moog must identify specific parts of its source code, and as noted above, Skyryse's "argument is wrong on the law."  *WeRide Corp.*, 379 F. Supp. 3d at 846.

In *Freeman*, yet another decision dealing with summary judgment rather than identification pre-discovery, the court found that, for *summary judgment* purposes, an identification was too inclusive, though the court took pains to note that it was "not . . . confusing 'numerosity' with particularity." *Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, No. 13-CV-2856 JLS (RBB), 2016 WL 5719819, at *11 (S.D. Cal. Sept. 30, 2016).  Furthermore, in *Freeman*, the plaintiff had proceeded through discovery all the way to summary judgment with the identification at issue—which

1  did not, as Moog's TSID does, even specify where the trade secrets reside in specific
2  files.

3        Finally, Skyryse relies on *Vesta*, when in fact, that case actually supports
4  Moog.   As noted above, the court in *Vesta* stated that whether a plaintiff has
5  sufficiently disclosed its trade secrets is "a fact-specific question to be decided on a
6  case-by-case basis."  147 F. Supp. 3d at 1155 (D. Or. 2015).  Accordingly, the court
7  in *Vesta* arrived at its conclusion based on a very different set of facts than here.  For
8  example, the court pointed out that "[t]his is not a case where Defendants stole large
9  volumes of documents or secrets from Plaintiff without Plaintiff's knowledge" (*id*.
10 at 1154), a sharp contrast to the situation here.  Moreover, in *Vesta*, the plaintiff
11 merely described the end results or functions of trade secrets.  *Id*.  Here, Moog
12 explicitly identifies its trade secrets both narratively, with an explanation of what
13 each claimed trade secret is (e.g., the AMP software platform), and by specific file
14 name and location.  As explained above, under the facts and circumstances of *this*
15 case, Moog's TSID is sufficient.

16      **D.**    **Skyryse Has Suffered No Prejudice and No Other TSID Is**
17             **Appropriate at this Stage of the Litigation**

18       Skyryse contends that it has been prejudiced by Moog's TSID and complains
19 to the Court about the volume of data that has been at play in this litigation so far.
20 Skyryse conveniently ignores that it was the actions of *Defendants*, who stole 1.4
21 million files, that placed so much data into this litigation.  If any party has been
22 prejudiced by the sheer volume of stolen documents, it is Moog.  Moog not only had
23 its documents stolen, but then had no choice but to undertake massive expense and
24 effort to, on an expedited basis, determine what trade secrets were stolen.  This

25
26
27
28

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

1    massive effort resulted in the TSID that, very reasonably considering the amount of

2    stolen material, identifies only about 20% of the stolen files.[13]

3         Contrary to what Skyryse contends, Moog's TSID does not deprive Skyryse

4    of the opportunity to defend itself or challenge Moog's theories.  To the contrary,

5    Skyryse has *already* begun to go out and search the public domain in order to

6    ascertain if what Moog identifies in the TSID is generally known or publicly

7    available.  Skyryse's actions on this front can clearly be seen in its response to

8    Moog's motion for sanctions.  Skyryse took numerous files identified by Moog

9    (which are also addressed in the TSID) and conducted an analysis of, among other

10   things, whether information in the files is generally known or publicly available.

11   (*See* Dkts. 451-02, 451-03.)  That Skyryse is able to undertake such investigation

12   indicates that Moog's TSID is sufficient to give Skyryse an understanding of Moog's

13   claimed trade secrets and prepare a defense.

14        As explained above, Moog has complied with both the requirements of the

15   law and with the Order of the Transferor Court with regard to identification of its

16   trade secrets.  No further order is warranted.  Nor are any sanctions warranted; to

17   sanction Moog for its vast undertaking in creating the TSID from the 1.4 million

18   stolen files would only reward the Defendants for the sheer volume of their theft.

19   Certainly, the strict preclusive sanctions referenced by Skyryse are not warranted,

20

21   ---

[13]  Skyryse's contentions that "Moog has applied mass and indiscriminate
designations to all 91 pages of its trade secret identification" and "Moog still has not
narrowed its overbroad ITAR designation" are false and misleading.  Moog has
properly designated the entirety of its TSID as subject to ITAR because it contains
ITAR-protected materials.  Indeed, Skyryse does not contend that the TSID does not
contain ITAR-protected materials.  As set forth in Moog's March 24, 2023 letter
attached by Skyryse (Storey Decl., Ex. F), despite repeated request by Moog,
Skyryse has not provided any legal authority that Moog "is required to alter its
designations or update markings on specific materials that may be controlled under
ITAR."  Further, Skyryse has not identified any specific prejudice that it allegedly
suffered due to Moog's ITAR-designations.  (*Id*.)  The lack of prejudice is confirmed
by the fact that both parties are filing portions of the TSID with the Court under seal
and in the normal course.

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

and Skyryse's authority does not support their application here.  In *Dura Glob., Techs., Inc. v. Magna Donnelly Corp.*, No. CIV.A. 07CV10945-DT, 2008 WL 2742062, at *2 (E.D. Mich. July 11, 2008), which Skyryse cites, the plaintiff was ordered to produce more particular identifications, and was, as part of that, provided with a specific example to follow and given explicit direction in a conference with the court about how to go about the listing of its trade secrets.  Despite this, the plaintiff listed vague descriptions such as "'information related to Dura's confidential employee information'" and "'[c]onfidential customer [i]nformation.'" *Id*.  *2.  Notably, what the court ordered in *Dura* included "specific references to concrete documents," *id*., which Moog has already provided here.  Moog has not flouted court orders in any way.  Instead, Moog has fully complied with the Order from the Transferor Court, at great effort and expense to Moog.[14]

The relief that Skyryse seeks, to halt discovery, is indicative of their true motive in bringing this motion.  As noted above, Skyryse has already begun preparing its defense based on documents identified in the TSID, which is sufficient both according to the law and the Order of the Transferor Court.  Skyryse's true motive is to further delay this case, making it even more difficult and expensive for Moog to protect its trade secrets.  The Court should not allow this to take place.  Moog respectfully requests that the Court deny Skyryse's motion in its entirety.

---

[14] The other cases cited by Skyryse in the section of its brief arguing for sanctions are inapposite summary judgment cases and one case concerning the consequences of creating an entirely new identification following the litigation of a preliminary injunction motion.  None of these cases are relevant to the circumstances currently before the Court.

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

1    Dated:  May 9, 2023                      Respectfully submitted,

2                                     LATHAM & WATKINS LLP

3

4                                   By */s/  Gabriel S. Gross*
                                        Douglas E. Lumish (SBN 183863)

5                                   Gabriel S. Gross (SBN 254672)
                                  Arman Zahoory (SBN 306421)

6                                   Rachel S. Horn (SBN 335737)
                                  Menlo Park, California 94025

7                                   Telephone: (650) 328-4600

8                                   Facsimile: (650) 463-2600
                                  Email: doug.lumish@lw.com

9                                   gabe.gross@lw.com
                                  arman.zahoory@lw.com

10                                   rachel.horn@lw.com

11                                   Joseph H. Lee (SBN 248046)

12                                   Ryan Banks (SBN 318171)
                                  650 Town Center Drive, 20th Floor

13                                   Costa Mesa, California 92626
                                  Telephone: (714) 540-1235

14                                   Facsimile: (714) 755-8290

15                                   Email: joseph.lee@lw.com
                                  ryan.banks@lw.com

16

17                                   Russell Mangas (Admitted *Pro Hac Vice*)

18                                   330 North Wabash Avenue, Suite 2800

19                                   Chicago, Illinois 60611
                                  Telephone: (312) 876-7700

20                                   Facsimile: (312) 993-9767
                                  Email: russell.mangas@lw.com

21

22                                   Julianne C. Osborne (SBN 342870)
                                  Alexa Solimano (SBN 335740)

23                                   505 Montgomery Street, Suite 2000
                                  San Francisco, California 94111

24                                   Telephone: (415) 391-0600

25                                   Facsimile: (415) 395-8095
                                  Email: julianne.osborne@lw.com

26                                   alexa.solimano@lw.com

27

28

JOINT STIPULATION RE: DEFENDANTS' MOTION TO ENFORCE ORDER COMPELLING TRADE SECRET IDENTIFICATION

Kelley M. Storey (Admitted *Pro Hac Vice*)
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: kelley.storey@lw.com

Cassandra M. Baloga (Admitted *Pro Hac Vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: cassandra.baloga@lw.com

*Attorneys for Defendant and Counterclaimant Skyryse, Inc.*

Dated:  May 9, 2023

Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By */s/  Kazim A. Naqvi*
Kazim A. Naqvi
Rena Andoh (admitted pro hac vice)
 randoh@sheppardmullin.com
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700

Lai L. Yip (SBN 258029)
 lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100

JOINT STIPULATION RE: DEFENDANTS' MOTION TO ENFORCE ORDER COMPELLING TRADE SECRET IDENTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Travis J. Anderson (SBN 265540)
 tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900

Kazim A. Naqvi (SBN 300438)
 knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700

*Attorneys for Plaintiff and
Counterdefendant MOOG INC.*
|

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION

## **ATTESTATION**

Pursuant to Civil Local Rule 5-4.3.4, I, Gabriel S. Gross, attest that

concurrence in the filing of this document has been obtained by all its signatories.


Dated: May 9, 2023                                   */s/  Gabriel S. Gross*
                                                     Gabriel S. Gross

JOINT STIPULATION RE: DEFENDANTS' MOTION
TO ENFORCE ORDER COMPELLING TRADE
SECRET IDENTIFICATION