# EXHIBIT 2

# Exhibit B

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

  Ryan Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 S Figueroa Street
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Plaintiff WeRide Corp. and WeRide Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| WERIDE CORP. f/k/a JingChi Corp,; WERIDE INC. f/k/a JingChi Inc., <br><br> Plaintiff, <br><br> vs. <br><br> JING WANG, an individual, KUN HUANG, an individual, ZHONG ZHI XING TECHNOLOGY CO. LTD.. d/b/a ALLRIDE.AI, ALLRIDE.AI INC., <br><br> Defendant. | CASE NO. 5:18-cv-7233 <br><br> **WERIDE'S IDENTIFICATION OF TRADE SECRETS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE 2019.210** |

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

### INTRODUCTION[1]

Pursuant to California Code of Civil Procedure § 2019.210 ("2019.210") Plaintiffs WeRide Corp. and WeRide Inc. (collectively "WeRide") hereby identify the trade secrets misappropriated by Jing Wang, Kun Huang, Zhong Zhi Xing Technology Co. Ltd. d/b/a AllRide.AI, and AllRide.AI Inc. (collectively "Defendants") with reasonable particularity.  Even though it is providing this identification, WeRide does not concede that 2019.210 applies to its claims, particularly its claim under the Defendant Trade Secrets Act ("DTSA").  *See, e.g. Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018 WL 2558388, at *3 (C.D. Cal. Feb. 27, 2018) ("Cal. Civ. Proc. Code § 2019.210 is a California statute and thus could not apply to DTSA claims.").

WeRide expressly reserves the right—consistent with 2019.210—to amend this identification of trade secrets at a later date, if discovery in this litigation demonstrates good cause to provide such an amendment.  *E.g. Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1350 (2009) ("If, through discovery, [the plaintiff] uncovers information suggesting defendants misappropriated additional trade secrets, it may have good cause to amend its trade secret statement[.]"); *see also Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044 (N.D. Cal. 2004) (permitting amendment of trade secret disclosure and noting "2019[.210] contains no express provision that prevents a party from amending its trade secret identification thereunder.").  At this stage of the litigation, WeRide has received no discovery from Defendants, and has had no opportunity to examine numerous devices that WeRide believes to contain its purloined trade secrets, including at least one laptop and three USB flash drives believed to be in the possession of Defendant Kun Huang.  To the extent that an examination of those devices, and Defendant AllRide's code, reveals a greater theft than WeRide is currently aware of, amendment of this identification is appropriate and consistent with 2019.210.

---

[1]  This document is designated, in its entirety, as "Highly Confidential – Attorneys' Eyes Only," pursuant to the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets (available at: https://www.cand.uscourts.gov/model-protective-orders).  WeRide asks that this protective order govern the litigation unless and until an alternative protective order is entered. *See LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 2013 WL 5935005, at *4 (N.D. Cal. Nov. 4, 2013) ("The Court's model protective order governs discovery unless the Court enters a different protective order.")

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1
2

**WERIDE'S TRADE SECRETS**

WeRide's trade secrets are comprised of computer code, developed in-house at WeRide, that is used to operate WeRide's autonomous (or "self-driving") vehicles.  WeRide is ***not*** claiming as trade secret the general ideas or concepts behind autonomous vehicle operation; rather WeRide is claiming as its trade secrets the specific and unique implementation of certain autonomous vehicle concepts that are expressed in WeRide's code, as described and identified herein.

**Overview.**  There are many different ways to organize the code used by the computers that control autonomous vehicles.  The model used by WeRide is organized into four parts or "modules": perception, prediction, decision, and control.

- The perception module combines input from a variety of sensors installed on the autonomous vehicle (such as cameras, radar, LIDAR, and GPS devices) with pre-existing static information (such as known maps of the roadways) to provide "localization" (i.e. identifying where the car is) and to compile data to generate a detailed map (the "HD Map") of the car's surroundings as the autonomous navigates to its destination.

- The prediction module generates educated guesses about how objects appearing in the autonomous vehicle's environment may behave as the autonomous vehicle moves towards its destination.  This behavior can be relatively simple (e.g. buildings and trees are unlikely to move), or extremely complicated—particularly when it comes to predicting the behavior of other vehicles on the road.

- The decision module takes information from the perception and prediction modules and then makes a specific "decision" about the autonomous vehicle's next move (e.g. "turn right at the intersection" or "brake" or "speed up").  Accordingly, part of the decision module's job is also to "plan" the next steps in the journey, because any decisions that are made must take into account the overall planned route of the autonomous vehicle's journey.

- The control module translates the decisions of the decision module into specific mechanical outputs, such as turning the autonomous vehicle's steering wheel, increasing the amount of fuel going to the engine, or applying the brake.

Organizing autonomous vehicle software into this particular four-part model is not original to

WeRide's Identification of Trade Secrets Pursuant to Cal. Civ. Cd. § 2019.210

Exhibit 2, page 63

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

WeRide; however, WeRide's specific implementation of these four modules was developed by, and is proprietary to, WeRide, including the specific trade secrets identified here.  WeRide provides the above information as background, and to contextualize the specific trade secrets (described below) stolen by Defendants.

Based on WeRide's analysis of marketing materials published by Defendant AllRide (and in particular the video attached as Exhibit H to the Declaration of Bijun Zhang filed in support of WeRide's Motion for a Preliminary Injunction), WeRide believes that the Defendants misappropriated *at least* the following portions of WeRide's perception, decision, and control modules.[2]

**Trade Section 1:  WeRide's Implementation of Sensor Fusion-Based Localization.**  As described above, a key component of "perception" is "localization," which means that the autonomous vehicle must know where it is currently located.  The autonomous vehicle's computer accomplishes localization (i.e. determines the vehicle's current location) by examining inputs from various sensors installed on the vehicle. ██████████████████████████████████████ Certain sensors may be less reliable in certain circumstances (i.e. cameras may be less reliable in the dark), while other sensors may provide limited information based on how they are mounted on the vehicle (i.e. a radar mounted on the front of the vehicle will provide different information than a radar mounted on the side of the vehicle).  Making sense of the mixture of inputs from these various sensors, and accounting for the sensors' locations, strengths, and weaknesses, is a process referred to as "sensor-fusion" (because the inputs are "fused" together into a single data stream).

Sensor-fusion is a necessary component of localization, because the vehicle must fuse the data from its various sensors in order to determine its current location.  However, individual implementations of sensor-fusion, if derived independently, should differ between autonomous car developers, because sensor-fusion is based on multiple, independent choices.  For example there is no

---

[2]  WeRide believes it is highly likely that at least some portions (if not all) of its prediction module was also misappropriated.  However, WeRide cannot determine the functionality of Defendant AllRide's prediction module (or its equivalent) merely by examining Defendant AllRide's marketing materials.  Accordingly, and as stated above, if discovery reveals additional misappropriation, WeRide reserves the right to amend this trade secret identification.  *See Perlan*, 178 Cal. App. 4th at 1350; *Neothermia*, 345 F. Supp. 2d at 1044.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

single required set of sensors that must be used—different developers may choose to use cameras and radar and LIDAR, or just cameras and LIDAR, or even just LIDAR, and the developer's implementation of sensor fusion will be based on this choice of sensors.  Likewise, even after sensors are chosen, the brand and configuration of sensors—more choices made by the developer—also determines the kinds of data collected, and again will impact sensor-fusion.  Finally, even if developers (improbably) independently elected to use identical sensors configured in an identical manner, the sensor-fusion code should still differ according to the goals of the autonomous vehicle developer and the overall design of the autonomous vehicle program; for example, different prediction modules (which exists separately from the sensor-fusion code) will respond differently to the same sensor-fusion code, and thus differences in the overall code base should be reflected in differences in the sensor-fusion code (again, unless the entire code base was stolen wholesale).

WeRide is not—and does not claim to be—the inventor of the concepts of localization or sensor-fusion.  However, WeRide is the creator of—and claims as a trade secret—the unique implementation of sensor fusion localization found in WeRide's code, and used in WeRide's autonomous vehicles, which is comprised of ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The code WeRide created to accomplish its unique implementation of sensor-fusion localization was developed using (i) the specific sensors that WeRide has chosen to mount on its autonomous vehicles, as well as the configuration of those sensors, and (ii) the data generated by WeRide's extensive autonomous vehicle testing, using a fleet of over 20 cars over a period of many months.  Based on its own proprietary data and experimentation, WeRide has developed unique code to fuse the data from the sensors on its autonomous vehicles.  This code is reflected in the following files that can be found in WeRide's code base:

- ██████████████████████████████████████
- ██████████████████████████████████████
- ██████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  ■ ███████████████████████████████
2  ■ ████████████████████
3  ■ █████████████████████
4  ■ ███████████████████
5  ■ ████████████████████
6  ■ ████████████████████
7  ■ █████████████████████
8  ■ ████████████████████████████
9  ■ █████████████████████████████
10 ■ ██████████████████████
11 ■ ██████████████████████
12 ■ ████████████████████████
13 ■ ████████████████████████

14   The code in these files was developed by WeRide's engineers, at WeRide's expense, and

15 WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more

16 fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a

17 Preliminary Injunction.

18   **Trade Section 2:  WeRide's HD Mapping Algorithms.**  As described above, it is not

19 sufficient for an autonomous vehicle to rely on a static map in order to navigate through its

20 environment.  Instead, the vehicle must develop (and hone over time) a detailed, reliable map (an "HD

21 Map") based on the fused data from its sensors, as well as static historical data (i.e. maps of the public

22 roadway).  The creation of an HD Map is substantively different from localization because the HD

23 Map must be capable of updating in order to address unforeseen events (i.e. traffic accidents, road

24 closures, etc.).  Thus the HD Map does not exist merely to show the vehicle where it is currently

25 located (which is localization), but also to aid in the planning of future steps towards the vehicle's

26 ultimate destination.

27   WeRide is not, and does not claim to be, the inventor of the concept of an HD Map used in

28 autonomous vehicle perception.  However, WeRide is the creator of—and claims as a trade secret—

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    the unique algorithms used by WeRide's autonomous vehicles to create HD Maps which are reflected

2    in the code WeRide uses to generate HD Maps.

3         The generation of an HD Map reflects numerous independent choices made by an autonomous

4    vehicle developer, including but not limited to ████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████ It is extremely unlikely that any

8    two autonomous vehicle developers would make identical choices for each of these inputs (barring

9    outright theft of an entire program).  In the case of WeRide's unique HD Mapping algorithms,

10   WeRide used ██████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████ The code containing WeRide's unique HD Mapping algorithms is

13   reflected in the following files that can be found in WeRide's code base:

14   ▪ ████████████████████████

15   ▪ ████████████████████████

16   ▪ ████████████████████████

17   ▪ ██████████████████

18   ▪ ██████████████

19   ▪ ██████████████████████████

20   ▪ ████████████████████████

21   ▪ ████████████████████

22   ▪ ████████████████████

23   ▪ ██████████████

24   ▪ ██████████████

25   ▪ ████████████

26   ▪ ████████████

27   ▪ ████████████

28   ▪ ████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



Case No. 5:18-cv-7233

WeRide's Identification of Trade Secrets Pursuant to Cal. Civ. Cd. § 2019.210

Exhibit 2, page 68

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



The code these in these files was developed by WeRide's engineers, at WeRide's expense, and

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more

2   fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a

3   Preliminary Injunction.

4         **Trade Secret 3: The Combination of WeRide's Sensor Fusion Localization and Mapping**

5   **Algorithms (Trade Sects 1 and 2) to Create an HD Map.**  WeRide's sensor fusion localization and

6   mapping algorithms are separate trade secrets, identified above as Trade Secrets 1 and 2.  Moreover,

7   in WeRide's code, ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████   As

10  noted above, both WeRide's unique sensor-fusion code, as well as the code implementing WeRide's

11  unique HD Mapping algorithms reflect numerous independent choices made by WeRide over the

12  course of development; and an independently developed system would thus not contain the same code

13  (because it would reflect different choices—again, unless there was a wholesale theft of WeRide's

14  program).  Accordingly, WeRide claims the combination of WeRide's Trade Secrets 1 and 2—

15  specifically the combination of the code making up both trade secrets, in addition to the code making

16  those secrets interoperable—as an additional trade secret.  *See Altavion, Inc. v. Konica Minolta Sys.*

17  *Lab., Inc.*, 226 Cal. App. 4th 26, 56 (2014) ("misappropriation of these secret design concepts

18  (separately and in combination) provides a basis for Altavion's claim").

19        WeRide is not, and does not claim to be, the inventor of the concept of combining sensor

20  fusion localization with mapping algorithms to create an HD Map.  However, WeRide is the creator

21  of—and claims as a trade secret—the code implementing the unique combination of its proprietary

22  sensor fusion localization and its proprietary mapping algorithms, which are used together to create

23  HD Maps.  The code containing WeRide's sensor fusion localization and its proprietary mapping

24  algorithms, ████████████████████████████████████████████ is reflected

25  in the following files that can be found in WeRide's code base:

26      •  ██████████████████████████████████

27      ■  ████████████████████████████████████

28      ■  ██████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

9   The code these in these files was developed by WeRide's engineers, at WeRide's expense, and
10   WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more
11   fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a
12   Preliminary Injunction.

13   **Trade Secret 4: The Set of State Machines Used by WeRide.**  In the context of a decision
14   module, the phrase "state machine" refers to a code module that instructs the autonomous vehicle
15   about what actions to take in a particular situation, or "state," that it might encounter on the road.
16   However, because of the dynamic nature of autonomous driving, a state machine cannot be a simple
17   set of rules; instead, the state machine must include additional code that (i) responds to uncertainty or
18   unpredictable conditions, and (ii) determines when the car should transition to a different state
19   machine.  For example, it is not sufficient for the vehicle to behave in the same manner every time it
20   detects a red light, because that does not account for uncertainty (i.e. a blinking red light is subject to
21   different traffic rules than a solid red light), nor does it account for unpredictability (i.e. the car cannot
22   move forward when the light turns green if the intersection is still obstructed by other vehicles).
23   Accordingly each state machine must be governed by complex and unique code.

24   Each autonomous vehicle developer must create its own set of state machines.  While some
25   state machines may be common across many developers, because they reflect common laws,
26   regulations, and road conditions (i.e. "approaching a traffic light" or "approaching a crosswalk"), it is
27   ultimately up to each developer to determine how many state machines should be used in a given
28   autonomous vehicle's code.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

6   It is important to note that there is no required "number" or "set" of state machines.  It may be

7   efficient to combine multiple states into a single state machine; for example, a "blinking red traffic

8   light" and a "stop sign" are treated in the same manner in many jurisdictions and it may make sense to

9   deal with both of these eventualities using a single state machine—but that is not required, and

10  multiple state machines could also suffice.   Accordingly, the ultimate "set" of state machines

11  appearing in a given autonomous vehicle program (meaning the list of all possible state machines

12  coded into the program), can be as varied as the developer can be creative—there is no one grouping

13  of state machines that will work universally for all developers.

14   WeRide is not, and does not claim to be, the inventor of the concept of "state machines."

15  However, WeRide is the creator of—and claims as a trade secret—the unique set of state machines

16  that appear in WeRide's autonomous vehicle code (again meaning the list of all possible state

17  machines coded into WeRide's program).

19  The code containing

20  WeRide's unique collection of state machines is reflected in the following files that can be found in

21  WeRide's code base:

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   ▪ ████████████████████

2   ▪ ██████████████████████

3   ▪ ███████████████████████

4   ▪ ███████████████████

5   ▪ ████████████████████

6   ▪ ██████████████████

7   ▪ ███████████████████

8   ▪ █████████████████████

9   ▪ █████████████████████

10      The code these in these files was developed by WeRide's engineers, at WeRide's expense, and

11   WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more

12   fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a

13   Preliminary Injunction.

14   **Trade Secret 5:** ████████████████████████████████

15   ████████████████████████████████████████████

16   ████████████████████████████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ██████████████████████

20   ▪ █████████████

21   ▪ ██████████

22   ▪ ███████████████

23   ▪ █████████

24   ▪ █████████████

25   ▪ ████████

26   ▪ █████████

27   ▪ ██████████

28   ▪ ████████████

WERIDE'S IDENTIFICATION OF TRADE SECRETS PURSUANT TO CAL. CIV. CD. § 2019.210

Exhibit 2, page 74

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



The code these in these files was developed by WeRide's engineers, at WeRide's expense, and WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a Preliminary Injunction.

**Trade Secret 6: Lane Change Functionality**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Notably, there is no "one way" to handle a lane change—just as a human driver can make a variety of choices (i.e. stay behind a slow moving vehicle, pass and overtake, delay a decision while gathering more information, etc.), the state machines responsible for handling lane changes can be coded in a variety of ways and make a variety of reasonable choices. As with other trade secrets at issue in this litigation, the code responsible for the lane change state machines will also vary depending on other choices appearing in separate and unrelated code. For example, the evaluation of whether a lane change is safe may depend on the prediction module's ability to predict the movement of cars in the candidate lane—thus, barring wholesale theft of the entire program, independently derived code for lane change state machines should be written differently.

While other autonomous driving programs may contain code that addresses the functions of lane changes, the specific implementation and coding of lane change functionality, as it appears in WeRide's code, is unique to WeRide. The code containing WeRide's lane change functionality is reflected in the following files that can be found in WeRide's code base:

The code these in these files was developed by WeRide's engineers, at WeRide's expense, and WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a

2    Preliminary Injunction.

3    **Trade Secret 7: Lane Monitoring Functionality** ████████████████████████

4    ████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████

9          As with lane change functionality, lane monitoring functionality should also vary from

10   developer to developer if their code bases were independently derived.  For example, lane monitoring

11   may depend on the types of sensors installed on the autonomous vehicle, and thus differences in

12   sensor choice and configuration will result in differences in lane monitoring code.

13         While other autonomous driving programs may contain code that monitors a vehicle's current

14   lane and responds to changed conditions, the specific implementation and coding of lane monitoring

15   functionality, as it appears in WeRide's code, is unique to WeRide.  The code used by WeRide to

16   implement lane monitoring and respond to changed lane conditions is reflected in the following files

17   that can be found in WeRide's code base:

18   ▪  ██████████████████████████████

19   ▪  ██████████████████████████████

20         The code these in these files was developed by WeRide's engineers, at WeRide's expense, and

21   WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more

22   fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a

23   Preliminary Injunction.

24   **Trade Secret 8:** ████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████████

26   ███████████████████████████████████████ One of these conditions is merging into a lane

27   that already contains other cars.  Making decisions regarding how to merge into a lane that contains

28   one or more other cars is distinct from the decision to change lanes; for example, an autonomous

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  vehicle may need to change lanes because its current lane is blocked, but that decision alone is not

2  sufficient to navigate safely around one or more other cars. ████████████████

3  ████████████████████████

4  ████████████████████████████████

5  ████████████████████████████████████

6  ████████████████████████████████████

7  ████████████████

8  ▪ ████████████████

9  ▪ ████████████████

10  ▪ ████████████████

11  ▪ ████████████████

12      The code these in these files was developed by WeRide's engineers, at WeRide's expense, and

13  WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more

14  fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a

15  Preliminary Injunction.

16      **Trade Secret 9:** ████████████████████

17  ████████████████████████████████████

18  ████████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████████

21  ████████████████████████████

22  ▪ ████████████

23  ▪ ██████

24  ▪ ██████████████

25  ▪ ████████████

26  ▪ ██████

27  ▪ ████████████

28  ▪ ██████

WeRide's Identification of Trade Secrets Pursuant to Cal. Civ. Cd. § 2019.210

Exhibit 2, page 78

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8

9

10

11    The code these in these files was developed by WeRide's engineers, at WeRide's expense, and

12    WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more

13    fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a

14    Preliminary Injunction.

15    **Trade Secret 10: WeRide's Implementation of Model Predictive Control ("MPC").**  In the

16    context of autonomous vehicles, the term "model predictive control" or "MPC" refers to a set of

17    calculations that are used to minimize the "costs" of an autonomous vehicle trip, with costs defined as

18    a collection of variables that the developer wishes to minimize, including but not limited to

19    computation capacity for the onboard computer, length of the trip, and discomfort to the autonomous

20    vehicle's passengers.  For example, a particular drive may be shorter if the autonomous vehicle

21    repeatedly, and rapidly, adjusts the steering wheel in order to minimize distance travelled; however,

22    constant, short, jerking movements of the steering wheel will likely cause discomfort to the

23    passengers, so the autonomous vehicle developer will turn to MPC to balance minimization of trip

24    duration and passenger comfort so both are at acceptable levels.  WeRide is particularly proud of its

25    implementation MPC, which delivers a smoother, more comfortable and "natural" feeling ride than

26    many of its competitors while still achieving other important objectives.

27    While other autonomous driving programs use MPC, the specific implementation of MPC used

28    by WeRide, as it appears in WeRide's code, is unique to WeRide.  The code used by WeRide's MPC

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  is reflected in the following files that can be found in WeRide's code base:

-19-                    Case No. 5:18-cv-7233

Exhibit 2, page 80

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    ▪ ██████████████████████

2    ▪ ██████████████████████

3         The code these in these files was developed by WeRide's engineers, at WeRide's expense, and

4    WeRide has used reasonable efforts to maintain the secrecy of the code found in these files, as more

5    fully set forth in the Declaration of Paul Liu, submitted in support of WeRide's Motion for a

6    Preliminary Injunction.

7

8    DATED:  December 24, 2018                    Respectfully submitted,

9                                                QUINN EMANUEL URQUHART &
                                                 SULLIVAN, LLP
10

11

12                                          By  /s/ Ryan S. Landes
                                                _____
13                                              Claude M. Stern
                                                Ryan S. Landes
14                                              Attorneys for Plaintiffs WeRide Corp. and
                                                WeRide Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28