1

**LATHAM & WATKINS LLP**
Douglas E. Lumish (SBN 183863)
2
  *doug.lumish@lw.com*
3
Gabriel S. Gross (SBN 254672)
  *gabe.gross@lw.com*
4
Arman Zahoory (SBN 306421)
5
  *arman.zahoory@lw.com*
6
Rachel S. Horn (SBN 335737)
  *rachel.horn@lw.com*
7
140 Scott Drive
8
Menlo Park, California 94025
Telephone: (650) 328-4600
9
Facsimile: (650) 463-2600

10

11
*Attorneys for Defendant and Counterclaimant Skyryse, Inc.*

12

13
*Additional counsel listed on signature page*

14
**UNITED STATES DISTRICT COURT**

15
**CENTRAL DISTRICT OF CALIFORNIA**

16

17

18
MOOG INC.,

19
             Plaintiff,

20
      v

21
SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and
22
DOES NOS. 1-50,

23
             Defendants.

24

25

26

27

28

CASE NO. 2:22-cv-09094-GW-MAR

**DEFENDANT AND COUNTERCLAIMANT SKYRYSE, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE ORDER COMPELLING TSID**

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

| | |
|---|---|
| SKYRYSE, INC., <br><br>         Counterclaimant, <br><br>         v <br><br>MOOG INC., <br><br>         Counterclaim-Defendant. | Discovery Cut-Off: April 12, 2024 <br> Pre-Trial Conference: August 12, 2024; 8:30 a.m. <br> Trial: August 27, 2024 <br><br> Hearing:   June 7, 2023 <br> Time:      11:00 a.m. <br> Judge:    Hon. Margo A. Rocconi <br><br> Location: Courtroom 790, 7th Floor |

## I.    INTRODUCTION

Moog goes to great lengths to diminish the transferor court's instructions to identify its alleged trade secrets with precision and specificity, which were laid out in a well-reasoned order supported by established case law. Moog implies that the court adopted a "pro-defendant agenda" and discusses other courts' decisions arising under different facts. But the court's order was correct: particularized identifications of trade secrets (rather than generic, categorical ones) are essential for due process and fairness reasons. Without them, defendants cannot prepare their defenses, plaintiffs would unfairly redefine their trade secrets through hindsight to match what they find in a defendant's files, and courts and litigants would be left with no clear parameters for managing discovery and trial. Moog fails to show that it complied with the court's clear instructions. For example, Moog does not contend it identified specific lines of source code, as ordered. Nor does Moog dispute that it pointed to hundreds of thousands of files as "reflecting" its trade secrets without describing anything in them that actually is trade secret, as it was ordered to do. When Moog does address the order, it disparages it, criticizing the reasoning and authority it relied on. But the order was properly granted and is binding. Moog has no excuse for defying it by providing generic descriptions and merely pointing to documents.

Moog also was ordered to "identify with particularity every alleged trade secret *it intends to assert* in this action." Moog cannot seriously intend to assert to the jury that it must make factual findings about trade secrets "reflected" in over 300,000

documents spanning thirty vaguely described concepts, as Moog disclosed in its trade secret identification (TSID). That would require an interminable, impossibly complex trial. Moog's mantra that two defendants allegedly copied a large volume of files while working at Moog is no excuse, over a year into this case, to disobey an order to select and disclose which trade secrets it "intends to assert" in this lawsuit. Moog should be ordered to comply with the order or be barred from proceeding on theories it has failed to sufficiently disclose.

## II.   MOOG IGNORES THE ORDER NOT TO MERELY "POINT TO DOCUMENTS."

Moog argues that by pointing to thousands of files as "reflecting" its alleged trade secrets, it is in compliance. (Dkt. 475 at 24-25.) This directly contradicts the order: "Courts should not allow trade secret plaintiffs to point to documents in which trade secrets are said to reside as a substitute for detailed identification." (Dkt. 205 at 4.) Moog nonetheless points Skyryse and the Court to over 300,000 documents without identifying what or where the trade secrets are—contrary to the order and established trade secret law.[1] (*See* Dkt. 475 at 10-11 (collecting cases).)

Moog tries to relitigate the motion to compel it already lost, pointing to a host of cases in which parties were *not* subject to the detailed order that Moog is here.[2] Those cases do not help Moog. Most telling is Moog's citation to *Social Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14,

---

[1] Moog commends itself for pointing to more than 300,000 files, saying it "narrowed the number of files for which it would seek trade secret protection by approximately eighty percent." (Dkt. 475 at 4.) This only shows that Moog never truly believed it owns or can enforce trade secret rights in all of the 1.4 million files it alleged Pilkington and Kim copied. And Moog's decision to refer to hundreds of thousands of files, which it knows it cannot possibly present to a jury, violates the order to sufficiently identify each trade secret "*it intends to assert* in this action." (Dkt. 205 at 6.)

[2] Moog claims that the authority cited in Skyryse's motion deals with "merits-based decisions." (Dkt. 475 at 23.) But they were all based on plaintiffs' failures to sufficiently identify their trade secrets, not whether the asserted trade secrets qualify as trade secrets like Moog suggests.  Those cases are on point.

2012). In that case, the only disclosure the court found "sufficiently detailed to identify what it is that [the plaintiff] claims is secret" identified the "specific lines of code" at issue, just as Moog was ordered but failed to do. *Id.* at *4. As to the other portions of the deficient TSID, the court held that a "description of the category, or even of the subcategories of information within a category, *does not comply* with the requirement to identify the actual matter that is claimed to be a trade secret." *Id.*[3] That plaintiff, like Moog, gave generic categorical descriptions of its trade secrets that included lists of components and capabilities. *See, e.g.*, *id.* (describing trade secret as "server architecture" including "memory utilization, storage utilization, server synchronization, scalability of all resources (including memory, network bandwidth, storage devices and CPU), operating system type, scripting engine, the number of servers, server functions and the ability and server architecture for multiple users to execute and save game functions in real time"); *compare* Dkt. 475 at 14-15 (Moog's description of ███████ trade secret). These descriptions provided "little more than *an elaborate categorization scheme* for a variety of related concepts" and were "no substitute for specifically identifying and describing the actual architecture that [plaintiff] claims was stolen, or pointing to where it might be found in the information it turned over." *Id.* When a plaintiff offers "general concepts to describe what it believes is its trade secret information," it "is not sufficient." *Id.* at 5.

The other cases Moog cites are also distinct. Unlike Moog, the plaintiff in *WeRide* did not point to hundreds of thousands of files and claim its trade secrets were reflected somewhere in them. Rather, it identified "unique" algorithms in those files and explained the "factors a developer must consider in generating such maps, and describe[d] the process [it] use[d] to create the algorithms." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 846 (N.D. Cal. 2019). Moog's TSID, which merely describes industry standards, aspirations, background, and capabilities related to thirty generic categories, does nothing of the sort. Likewise, *Integral Dev.*

---

[3] All emphasis in quotes has been added unless otherwise indicated.

*Corp. v. Tolat*, does not stand for the proposition that, as Moog contends, simply "identifying those files that contained trade secret material" is sufficient. (Dkt. 475 at 25 (*citing* 675 F. App'x 700, 703 (9th Cir. 2017)).) Rather, that case upheld summary judgment against two of the plaintiff's claimed trade secrets and remanded the third because that plaintiff, unlike Moog, had "identified specific key aspects of its source code" that it claimed were misappropriated. *Id.* Moog has not.[4]

## III.   MOOG IGNORES THE ORDER TO IDENTIFY LINES OF CODE.

Moog argues that it sufficiently identified its trade secrets by pointing to files "reflecting" its source code. (Dkt. 475 at 26.) This ignores the order: "[w]here the plaintiff alleges misappropriation of source code, it should identify the specific lines of code or programs claimed to be secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding." (Dkt. 205 at 4.) Moog instead categorically described its "programs" and pointed to 300,000 files, violating the order and an established body of case law. (Dkt. 475 at 11-12 (collecting cases).)

Moog again cites a plethora of cases, most outside this circuit, where plaintiffs were not under similar court orders. Many of those cases are factually distinct. *See, e.g.*, *SMC Networks Inc. v. Hitron Techs. Inc.*, No. SACV121293JLSRNBX, 2013 WL 12114105, at *5 (C.D. Cal. Nov. 13, 2013) (finding plaintiff *did* identify "specific portions of the trade secret source code modules"); *Xtec, Inc. v. Cardsmart Techs., Inc.*, No. 11-22866, 2014 WL 10268426, at *7-8 (S.D. Fla. May 15, 2014)

---

[4] The plaintiff in *Microvention, Inc. v Balt USA, LLC* did not just identify thousands of documents and claim they reflected its trade secrets as Moog has done. Rather, the plaintiff described what type of trade secret each type of document contained. No. 8:20-cv-02400, 2021 WL 4840786, at *2-3 (C.D. Cal. Sept. 8, 2021). That court also distinguished cases in which the plaintiff, like Moog, "had already been ordered to be more precise in its identification and still failed to identify anything other than vague categories of information." *Id.* at *4, n.3. In *Motorola, Inc. v. Lemko Corp.*, the court did not hold that pointing to files as Moog does was sufficient as a general matter. Rather, it based its holding on the language of an interrogatory that specifically requested identification of "filename and filepath" and "did not ask plaintiff to isolate the information that is trade secret, but rather to lump trade secrets in with other proprietary and confidential information thus rendering the response in some sense accurate." No. 8-C-5427, 2012 WL 74319, at *17 (N.D. Ill. Jan. 10, 2012).

1   (finding plaintiff *did* identify "specific lines of code"); *TouchPoint Sols., Inc. v.*
2   *Eastman Kodak Co.*, 345 F. Supp. 2d 23, 28 (D. Mass. 2004) (dispute centered on a
3   single program that defendant's engineers acknowledged provided a distinct com-
4   petitive advantage). Several other cases are not only factually distinct, they apply
5   different laws or orders that allow for the identification at issue. *See, e.g.*, *Decision*
6   *Insights, Inc. v. Sentia Grp., Inc.*, 416 F. App'x 324, 327 (4th Cir. 2011) (applying
7   Virginia Code that allowed for a "compilation" of software as a protectable trade
8   secret); *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1257
9   (S.D. Fla. 2016) (applying Florida law and relying on prior order allowing plaintiff
10  to claim its "AuthentX system as a trade secret").

11          Moog's citation to *JustMed* is particularly troubling. Moog cites that case for
12  the proposition that "source code, as a whole, is a trade secret." (Dkt. 475 at 26.)
13  But that case does not say this. The full quote reads, "*It is undisputed* that the source
14  code, as a whole, is a trade secret." *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1129 (9th
15  Cir. 2010). Rather than holding that pointing to "source code, as a whole" is suffi-
16  cient to identify one's trade secrets, the Ninth Circuit merely noted that the defendant
17  had not disputed that the source code at issue was a trade secret. *JustMed* did not
18  even involve a challenge to the sufficiency of the plaintiff's TSID. *Id.* at 1131 (re-
19  versing determination that defendant had misappropriated source code).

20  **IV.     MOOG CRITICIZES THE ORDER INSTEAD OF COMPLYING.**

21          When Moog finally addresses the transferor court's order, it does not attempt
22  to explain how it has complied. Rather, Moog criticizes the order and claims it must
23  not mean what it says. Moog argues that identifying specific lines of source code is
24  merely an "unsupported suggestion" derived from a "pro-defendant" source. (Dkt.
25  475 at 32.) Moog "does not agree" the order imposes what Moog decries as "an
26  impractical and legally unsupported" requirement (*id.* at 33), but cannot deny that
27  the order requires it to identify specific lines of code, in keeping with well-estab-
28  lished case law. (Dkt. 205 at 4; Dkt. 475 at 11-12.) Moog essentially asks this Court

1   to absolve it of its obligations under the transferor court's order. But that order was

2   rightly decided, is the law of the case, and is binding. *Danner v. Himmelfarb*, 858

3   F.2d 515, 521 (9th Cir. 1988); *Hall v. Alternative Loan Tr.* 2006-7CB, No. 2:13-CV-

4   1732 KJM AC, 2013 WL 5934322, at *2 (E.D. Cal. Nov. 1, 2013). Moog should be

5   ordered to comply.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Dated:  May 24, 2023

Respectfully submitted,

2

LATHAM & WATKINS LLP

3

By:  _/s/ Gabriel S. Gross_

4

Douglas E. Lumish (SBN 183863)

5

Gabriel S. Gross (SBN 254672)

Arman Zahoory (SBN 306421)

6

Rachel S. Horn (SBN 335737)

7

Menlo Park, California 94025

Telephone: (650) 328-4600

8

Facsimile: (650) 463-2600

9

Email: doug.lumish@lw.com

gabe.gross@lw.com

10

arman.zahoory@lw.com

11

rachel.horn@lw.com

12

Joseph H. Lee (SBN 248046)

13

Ryan Banks (SBN 318171)

14

650 Town Center Drive, 20th Floor

Costa Mesa, California 92626

15

Telephone: (714) 540-1235

16

Facsimile: (714) 755-8290

Email: joseph.lee@lw.com

17

ryan.banks@lw.com

18

Russell Mangas (Admitted *Pro Hac*

19

*Vice*)

20

330 North Wabash Avenue, Suite 2800

Chicago, Illinois 60611

21

Telephone: (312) 876-7700

22

Facsimile: (312) 993-9767

Email: russell.mangas@lw.com

23

24

25

26

27

28

Julianne C. Osborne (SBN 342870)
Alexa Solimano (SBN 335740)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: julianne.osborne@lw.com
alexa.solimano@lw.com

Kelley M. Storey (Admitted *Pro Hac Vice*)
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004 Telephone: (202) 637-2200 Facsimile: (202) 637-2201
Email: kelley.storey@lw.com

Cassandra M. Baloga (Admitted *Pro Hac Vice)*
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: cassandra.baloga@lw.com

*Attorneys for Defendant and Counterclaimant, Skyryse, Inc.*