# EXHIBIT A

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3

4   MOOG, INC.,                    )
                                   )
5                      Plaintiff,  )
                                   )
6        vs.                       )Case No. 2:22-cv-09094-GW-MAR
                                   )
7   SKYRYSE, INC.; ROBERT ALIN     )
    PILKINGTON; MISOOK KIM, and    )
8   DOES NOS. 1-50,                )
                                   )
9                      Defendants. )
    _____ )
10  SKYRYSE, INC.,                 )
                                   )
11              Counterclaimant,   )
                                   )
12        Vs.                      )
                                   )
13  MOOG, INC.,                    )
                                   )
14              Counterdefendant.  )
    _____ )
15

16

17      VIDEOTAPED DEPOSITION OF MICHAEL J. DREIKORN, Ed.D.

18                       TAKEN ON

19               TUESDAY, MAY 2, 2023

20

21

22

23

24

25  Adele Frazier, CSR No. 9690, RPR, CRR, RMR



```
 1                 UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   MOOG, INC.,                    )
                                    )
 5                       Plaintiff, )
                                    )
 6         vs.                      )Case No. 2:22-cv-09094-GW-MAR
                                    )
 7   SKYRYSE, INC.; ROBERT ALIN     )
     PILKINGTON; MISOOK KIM, and    )
 8   DOES NOS. 1-50,                )
                                    )
 9                       Defendants.)
     _____)
10   SKYRYSE, INC.,                 )
                                    )
11                   Counterclaimant,)
                                    )
12         Vs.                      )
                                    )
13   MOOG, INC.,                    )
                                    )
14               Counterdefendant. )
     _____)
15

16

17   VIDEOTAPED DEPOSITION OF MICHAEL J. DREIKORN, Ed.D., taken on

18   behalf of Plaintiff and Counterdefendant Moog, Inc., with all

19   participants appearing remotely, commencing at 12:59 p.m.

20   and terminating at 3:48 p.m. on Tuesday, May 2, 2023, before

21   Adele C. Frazier, Certified Shorthand Reporter No. 9690 for

22   the State of California, pursuant to Notice.

23

24                        ---oOo---

25
```



MICHAEL J. DREIKORN, ED.D.                                    May 02, 2023
MOOG, INC. vs SKYRYSE, INC.                                            3

```
 1    APPEARANCES OF COUNSEL:

 2

 3    For Plaintiff and Counter-Defendant Moog, Inc.:

 4           SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
             BY:  MICHAEL HEINS
 5           1901 Avenue of the Stars, Suite 1600
             Los Angeles, California 90067
 6           mheins@sheppardmullin.com
             310-228-3700
 7

 8

 9
      For Defendant and Cross-Complainant Skyryse, Inc.:
10
             LATHAM & WATKINS, LLP
11           BY:  ALEXA SOLIMANO
             140 Scott Drive
12           Menlo Park, California 94025
             alexa.solimano@lw.com
13           650-328-4600

14

15    Also Present:

16           AUSTIN KING, Videographer

17

18

19

20

21

22

23

24

25
```



MICHAEL J. DREIKORN, ED.D.                               May 02, 2023
MOOG, INC. vs SKYRYSE, INC.                                        16

```
 1   BY MR. HEINS:
 2        Q.   Okay.  So did you rely on the order that
 3     I've marked as Exhibit 2 in forming any of the
 4     opinions in your declaration?
 5             MS. SOLIMANO:  Objection.  Outside the scope of the    01:14
 6   parties' agreement.
 7             THE WITNESS:  No.  I don't believe this order
 8   informs my analysis of the documents that I reviewed, the
 9   determination of industry practices, regulatory processes or
10   certifications for airborne software.  If this is in my file,   01:14
11   I'm sure I perused it, but it did not inform my methodology
12   or my analysis.
13   BY MR. HEINS:
14        Q.   Okay.  And I assume, then, the document
15     also did not inform your analysis and understanding          01:14
16     of what Moog's non-public information means?
17             MS. SOLIMANO:  Objection.  Outside of the scope of
18   the parties' agreement.
19             THE WITNESS:  Yeah.  I'm representing myself as an
20   industry expert and I'm providing an industry expert opinion   01:15
21   of what -- how documents like these are classified, how
22   they're used, how they're sourced.  So if there's a -- a
23   ruling from the Court that provides a different set of
24   standards for that, that did not inform my expert opinion.
25   BY MR. HEINS:                                                   01:15
```



1    that it obtained from Moog current or former

2    employees, none of the opinions in your declaration

3    would change?

4         MS. SOLIMANO:  Objection.  Outside of the scope of

5    the parties' agreement and an incomplete hypothetical.        01:21

6         THE WITNESS:  If you can point to me in my

7    declaration where I talk about Skyryse inappropriately having

8    documents after a given date, I'd be happy to talk about

9    that, but that's not in my declaration.

10   BY MR. HEINS:                                                 01:22

11        Q.   Right.

12             Nowhere in your declaration is anything

13   about whether or not the Skyryse documents came from

14   Moog, correct?

15             MS. SOLIMANO:  Objection.  Outside the scope of the  01:22

16   parties' agreement.

17             THE WITNESS:  I don't talk about how one party has

18   documents from another party.  What I talk about are the

19   documents themselves and what they are.

20   BY MR. HEINS:                                                 01:22

21        Q.   Okay.  So your declaration does not try to

22   identify whether or not Skyryse had obtained any of

23   its documents from sources other than Moog, correct?

24             MS. SOLIMANO:  Objection.  Outside the scope of the

25   parties' agreement.                                          01:22



MICHAEL J. DREIKORN, ED.D.                                    May 02, 2023
MOOG, INC. vs SKYRYSE, INC.                                              26

1   proprietary and confidential stamp, but the intent of my

2   opinion was to show that the fact that a stamp -- or a

3   document is stamped does not mean that it is proprietary and

4   confidential.

5   BY MR. HEINS:                                                    01:29

6       Q.   Right.

7            I'm not asking if you found the verbatim

8   stamp; I'm asking if you found the document that

9   Figure 6 comes from that was Crozier's Exhibit C-4

10  publicly on the Internet?                                        01:29

11           MS. SOLIMANO:  Objection.  Outside the scope of the

12  parties' agreement.

13           THE WITNESS:  The answer would be no.

14  BY MR. HEINS:

15      Q.   I would like to go to paragraph 61 of your           01:29

16  declaration.  In paragraph 61, you state, I have

17  reviewed the documents described in paragraph 9 of

18  Mr. Pixley's declaration.

19           Do you see that?

20      A.   I do.                                                01:30

21      Q.   So I'm going to share what I'm marking as

22  Exhibit 3.

23           (Exhibit No. 3 identified.)

24  BY MR. HEINS:

25      Q.   I'll show you the front page there and then         01:30



1    paragraph 61, you state, The one flight control

2    document for the Airbus 350 referenced by Mr. Pixley

3    is a plan for hardware aspects of certification, a

4    type of document I describe in further detail below,

5    and the template for which is based on the relevant          01:32

6    DO-178C standards.

7         Did I read that correctly?

8    A.   You read that correctly.

9    Q.   Okay.  Nowhere in this paragraph do you

10   opine that the flight control document for the               01:32

11   Airbus A350 referenced by Mr. Pixley is publicly

12   available; is that correct?

13        MS. SOLIMANO:  Objection.  Outside of the scope of

14   the parties' agreement.

15        THE WITNESS:  So I certainly could have provided         01:32

16   more critique, and I probably would have if I had the ability

17   to read Mr. Pixley and Mr. Crozier's transcripts of their

18   depositions and understand in more detail their

19   methodologies.  I do not make a comment here rather with

20   regards to public or non-public.  What I do say is that the   01:33

21   document is consistent with all the other documents that

22   Mr. Pixley puts in his declaration, that they're based on the

23   DO-178C standard with regards to structure.

24        And to determine whether or not it's public or

25   non-public is going to require quite a bit more               01:33



 1   investigation, which neither Pixley or Crozier conducted.

 2   BY MR. HEINS:

 3        Q.    Okay.  One second before I get to that.

 4     I've lost realtime.  I don't know if Alexa did as

 5     well.                                              01:34

 6              THE VIDEOGRAPHER:  Counsel, do you want to go off

 7     the record?

 8              MR. HEINS:  Yeah.  Why don't we do that just for a

 9     second.

10              THE VIDEOGRAPHER:  Hearing no objections, we are   01:34

11     off the record at 1:34 p.m.

12              (A brief recess was taken.)

13              THE VIDEOGRAPHER:  We are back on the record at

14     1:35 p.m.

15   BY MR. HEINS:                                        01:35

16        Q.    Okay.  I believe as part of your answer,

17     you said that you do not make a comment as to

18     whether the A350 flight control document is public

19     or non-public; is that correct?

20              MS. SOLIMANO:  Objection.  Mischaracterizes the   01:36

21     witness's testimony.

22              THE WITNESS:  No.  If we look at my paragraph 61, I

23     say that nearly all of the documents I looked at -- and it

24     would be inclusive of the A350, are based on the standards.

25     So the structure and a lot of the content are based on the  01:36



```
 1   DO-179C standard.

 2         But I also say that there's quite a bit more

 3   investigation that needs to occur.  An A350 doesn't belong to

 4   Moog, it actually belongs to Airbus.  There's quite a bit

 5   more that could be asked such as is the maintenance manuals    01:36

 6   for this in the public domain.  There's so much more on a

 7   mature aircraft that is in the public that is not reflected

 8   in the opinions of Crozier or Pixley.  That's my criticism.

 9   BY MR. HEINS:

10         Q.   Right.  But.                                        01:37

11         Sitting here today, do you have any

12    evidence that the A350 document referenced by

13    Mr. Pixley is in the public domain?

14         MS. SOLIMANO:  Objection.  Outside the

15    scope of the parties' agreement.                              01:37

16         THE WITNESS:  The content that's in that document

17   is clearly in the public domain, for the most part.

18   BY MR. HEINS:

19         Q.   I'm asking is the document that Mr. Pixley

20    referenced in the public domain?                              01:37

21         MS. SOLIMANO:  Objection.  Asked and answered.

22         THE WITNESS:  I wasn't finished with my response,

23   but I have not seen that specific document in the public

24   domain, but it doesn't mean it doesn't exist.

25   BY MR. HEINS:                                                  01:38
```



1    Q.   But it means that at this time, you don't

2    have a basis for stating that it is a public domain

3    document, correct?

4           MS. SOLIMANO:  Objection.  Asked and answered.

5           THE WITNESS:  Again, my analysis is to -- actually,   01:38

6    my opinion was that neither does Mr. Pixley and his

7    methodology is flawed in the way he makes his opinion saying

8    it is a non-public document.  There's so much more

9    investigation that needs to be occur before that assessment

10   can be made.                                                 01:38

11   BY MR. HEINS:

12   Q.   Do you understand under the TRO that we

13   looked at, Skyryse had an independent duty to

14   determine whether or not it had turned over

15   non-public documents?                                        01:38

16          MS. SOLIMANO:  Objection.  Outside the scope of the

17   parties' agreement and calls for a legal conclusion.

18          THE WITNESS:  I have absolutely no opinion on that.

19   BY MR. HEINS:

20   Q.   Okay.  So you have no opinion on whether                01:38

21   Skyryse took my investigation to determine if any of

22   these documents were public or non-public?

23          MS. SOLIMANO:  Objection.  Outside the scope of the

24   parties' agreement.  Objection.  Calls for a legal

25   conclusion.                                                  01:39



```
 1          THE WITNESS:  I didn't look at Skyryse with regard
 2   to what actions it took to sort through the documents and
 3   determine what documents to return and when they did that.
 4   That was outside -- clearly outside the scope of my
 5   engagement.                                                01:39
 6   BY MR. HEINS:
 7       Q.   All right.  I'm now going to go to page 28
 8   of your declaration.  Do you see that up on your
 9   screen?
10       A.   I do.                                             01:39
11       Q.   I'm not sure.  You said you can see page 28
12   here, correct?
13       A.   That is correct.
14       Q.   All right.  In paragraph 64 under your
15   section B, which is titled DPA/Software Process            01:40
16   Checklists, you state, The software checklist
17   Mr. Crozier and Mr. Pixley identify are exemplars of
18   the types of checklists that are commonly used in
19   the industry and are widely available.
20          Do you see that?                                    01:40
21       A.   I do.
22       Q.   And you go on to say, Such software
23   checklist that's are structured around compliance
24   with the RTCA standards, particularly DO-178 and
25   DO-330, and other related standards, that are widely       01:40
```



MICHAEL J. DREIKORN, ED.D.                                    May 02, 2023
MOOG, INC. vs SKYRYSE, INC.                                              34

1   BY MR. HEINS:

2        Q.   Okay.  So I'm scrolling down to page 30 of

3   your declaration and we're looking at Figure 7.  Do

4   you see that?

5        A.   I do.                                              01:42

6        Q.   So you're aware that Mr. Crozier identified

7   this document as Moog's non-public information; is

8   that right?

9        A.   He claims it's non-public, meaning that the

10  information is not readily available to the public.       01:42

11       Q.   Well, he just claimed that the document was

12  Moog's non-public document, right?

13            MS. SOLIMANO:  Objection.  Vague.

14            THE WITNESS:  Well, using his definition, but

15  meaning that it had -- it was a Moog -- it came off a Moog  01:43

16  laptop and it had Moog written on it somewhere.  I believe

17  that's his definition of Moog non-public or Moog proprietary.

18  BY MR. HEINS:

19       Q.   Okay.  And have you, in your investigation

20  in rebutting his opinions, did you ever find                01:43

21  Figure 7 or Mr. Crozier's Exhibit A2 publicly

22  available on the Internet?

23            MS. SOLIMANO:  Objection.  Outside the scope of the

24  parties' agreement.

25            THE WITNESS:  The exact document as presented in    01:43



1  Figure 7, I have not found on the Internet.  However, the

2  content I have found and I also informed where it comes from,

3  which are the standards.

4  BY MR. HEINS:

5       Q.   Sure.  I'd like to talk about those next.                01:44

6            I'm now showing page 31 of your

7  declaration, Figure 8.  Do you see that?

8       A.   I do.

9       Q.   And this is the publicly available content

10  that you're claiming is the same content as                        01:44

11  Figure 7; is that accurate?

12            MS. SOLIMANO:  Objection.  Misstates the document.

13            THE WITNESS:  It's one of the many public available

14  documents.  It's DO-178C, an excerpt from it, but there's

15  also FAA orders, FAA advisory circulars.  These DO-330 as        01:44

16  well.  So it's more than just this one document.

17  BY MR. HEINS:

18       Q.   Okay.  But you'd agree that Figure 8 and

19  Figure 7 are different documents, correct?

20            MS. SOLIMANO:  Objection.  Misstates the document.       01:44

21            THE WITNESS:  Not the content.

22  BY MR. HEINS:

23       Q.   So in your opinion, Figure 8 lists a chart

24  of questions to be filled in and a different chart

25  of responses?                                                      01:45



MICHAEL J. DREIKORN, ED.D.                          May 02, 2023
MOOG, INC. vs SKYRYSE, INC.                                      58

1      Q.   Did you ask anyone at Skyryse if they based

2    their PSAC on Figure 14, the ConsuNova publicly

3    available document?

4           MS. SOLIMANO:  Objection.  Outside the scope of the

5    parties' agreement.                                      02:23

6           THE WITNESS:  You've asked me before if I spoke to

7    anybody at Skyryse and the answer is still no.

8    BY MR. HEINS:

9      Q.   And so the same answer, you didn't speak to

10   anyone at Skyryse to determine whether or not they      02:23

11   probation based their PSAC on Moogs PSAC template

12   table of contents, correct?

13          MS. SOLIMANO:  Objection.  Asked and answered.

14   Outside the scope of the parties' agreement.

15          THE WITNESS:  So I would say that it would be      02:23

16   irresponsible for them to simply take Moog's table of

17   contents and say it's adequate because they have to create

18   their own PSAC and submit it to the FAA and the FAA will find

19   compliance or not.  And I'm sure you'll find the Skyryse PSAC

20   is different than that of Moog.                          02:24

21   BY MR. HEINS:

22     Q.   Right.

23          But you didn't ask if Skyryse based their

24   PSAC on a document that came from Moog, correct?

25          MS. SOLIMANO:  Objection.  Asked and answered.    02:24



```
 1   Outside the scope of the parties' agreement.

 2          THE WITNESS:  So again, the Moog PSAC incorporates

 3   the standard.  There's nothing unique to that document that

 4   says this is Moog.  So any company that creates a PSAC will

 5   have these elements in their table of content in order to      02:24

 6   apply to DO-178C.

 7   BY MR. HEINS:

 8      Q.   Again, that's not the question I asked.

 9   You didn't talk to anyone at Skyryse to determine if

10   the starting point for their PSAC was Moog's PSAC,             02:24

11   correct?

12          MS. SOLIMANO:  Objection.  Argumentative.  Asked

13   and answered.  And Outside the scope of the parties'

14   agreement.

15          THE WITNESS:  As I stated previously, I have not        02:25

16   spoken to any employees of Skyryse.

17   BY MR. HEINS:

18      Q.   Thank you.

19          I'd like to put up Exhibit 4.

20          (Exhibit No. 4 identified.)                             02:26

21   BY MR. HEINS:

22      Q.   Do you see Exhibit 4 on your screen?

23      A.   I do.

24      Q.   Do you recognize Exhibit 4?

25      A.   I do.  This is a declaration of                        02:26
```



```
 1   had they just looked at the standard.
 2   BY MR. HEINS:
 3        Q.   Right.
 4             I'm not looking at the structure, though,
 5   I'm looking at the actual text underneath the table     02:30
 6   of contents.  Do you think it's true that anyone
 7   would come up with the sentence A representative
 8   sample of C code and its respective compiled object
 9   code?
10             MS. SOLIMANO:  Objection.  Outside the scope of the   02:30
11   parties' agreement.
12   BY MR. HEINS:
13        Q.   And place it in the exact same section that
14   Moog did?
15        A.   Well, it's not exactly the same.               02:30
16             MS. SOLIMANO:  Outside the scope of the parties'
17   agreement.
18   BY MR. HEINS:
19        Q.   It starts, A representative sample of C
20   code and its respective compiled object code will be   02:30
21   analyzed, dot, dot, dot, that's Moog's.
22             And that same sentence is found in
23   Skyryse's, A representative sample of C code and its
24   responsive compiled code will be analyzed, dot, dot,
25   dot.
```



 1                That's not a coincidence, right?

 2        A.   No.

 3             MS. SOLIMANO:  Objection.  Calls for speculation.

 4    Misstates the document.  And outside the scope of the

 5    parties' agreement.                                      02:31

 6             THE WITNESS:  No.  But that wording comes down to

 7    the standard.  Both parties went to the standard for that

 8    language.

 9    BY MR. HEINS:

10        Q.   Can you point to me where in the standard        02:31

11     that language is?

12             MS. SOLIMANO:  Objection.  Outside the scope of the

13    parties' agreement.

14             THE WITNESS:  So I said, DO-178C, DO-330, and

15    DO-331.  You take the cumulative of those documents, you go  02:31

16    into the various sections as we're developing the PSAC, you

17    will find that language represented in there to include the

18    reference to C++.

19    BY MR. HEINS:

20        Q.   But is the exact same sentence in the           02:32

21     standards, yes or no?

22             MS. SOLIMANO:  Objection.  Outside the scope of the

23    parties agreement.

24             THE WITNESS:  So if we could take the totality of

25    DO-178C, the totality of DO-330 and the totality of 331, I  02:32



1   can conduct an analysis and then show you where these

2   sentences come from.  We don't have that in Crozier's or my

3   declarations, that level of fidelity.

4   BY MR. HEINS:

5        Q.   Right.                                          02:32

6             But I'm not saying is the original Moog

7     PSAC table of contents generally based on the

8     standard; I'm saying is the later-developed Skyryse

9     PSAC directly taken from Moog's PSAC, yes or no?

10            MS. SOLIMANO:  Objection.  Outside the scope of the   02:33

11   parties' agreement.  Calls for speculation.  Lacks

12   foundation.  Asked and answered.

13            THE WITNESS:  As I also said, that there is an

14   abundance of templates out in the industry.  I'm not

15   convinced that Moog was the author of that original PSAC   02:33

16   either.

17   BY MR. HEINS:

18        Q.   Right.

19             But you didn't point to any other publicly

20     available PSACs that Skyryse could have gotten those   02:33

21     sentences from, right?

22            MS. SOLIMANO:  Objection.  Outside the scope of the

23   parties' agreement.  Calls for speculation.  Lack of

24   foundation.  Asked and answered.

25            THE WITNESS:  Give me a moment to refer back to my   02:33



1   declaration.

2   BY MR. HEINS:

3       Q.   Sure.

4       A.   My declaration is clear where the language

5   is identical, the sources are the relevant                    02:34

6   standards, and to your response, no, there's your

7   question, I don't believe I provide any examples in

8   my declaration, but I could certainly conduct a

9   further investigation and provide more than one

10  industry PSAC or PSAC that's out in the industry and          02:34

11  publicly available that contains pretty much the

12  same language.

13      Q.   Are you aware of anyone at Skyryse

14  previously conducting that analysis?

15          MS. SOLIMANO:   Objection.   Outside the scope of the  02:34

16  parties' agreement.   Calls for speculation.   Lacks

17  foundation.

18          THE WITNESS:   Again, the four corners of my review

19  on this were to review the Pixley and Crozier declaration,

20  all those exhibits, was not to interview any employees, but   02:34

21  to make determinations of whether or not these documents

22  are -- where they stem from and provide critique on those two

23  declarations.

24  BY MR. HEINS:

25      Q.   So the answer to my question, are you aware          02:35



1    of any anyone at Skyryse that previously conducted

2    that analysis is no, correct?

3            MS. SOLIMANO:  Objection.  Mischaracterizes the

4    witness's testimony.  Outside the scope of the parties'

5    agreement.  And asked and answered.                        02:35

6            THE WITNESS:  So for this engagement, that was not

7    part of my scope.

8    BY MR. HEINS:

9        Q.   In your experience, do companies keep their

10   completed PSACs confidential?                              02:35

11           MS. SOLIMANO:  Objection.  Outside the scope of the

12   parties' agreement.  Calls for speculation.  Lacks

13   foundation.

14           THE WITNESS:  Not necessarily.  What we like to do

15   in industry -- and I say we, I've been in the industry for  02:35

16   43 years, I've worked for many different companies.  I'm the

17   founder of some of these standard organizations such as the

18   IEGG, which creates all the AS standards, what we generally

19   like to do in industry is share the models that we create,

20   the templates that we create so that we can reduce variants  02:36

21   in our supply base which result in higher compliance and

22   safety.  It's all about safety.

23           So where we compete on product technology, we don't

24   necessarily compete on product validation, verification and

25   definitely not on safety.                                   02:36



1    referring to in paragraph 71 of his declaration?

2              MS. SOLIMANO:  Objection.  Outside the scope of the

3    parties' agreement.  Lacks foundation.

4              THE WITNESS:  So I didn't make a correlation to the

5    Bates numbers.  I just factored the same, yes.                    02:44

6    BY MR. HEINS:

7         Q.   And just to be sure, the Bates number ends

8     with 30674, and on Exhibit 6 that I put up in front

9     of you, you can see it says Moog_0030674?

10             MS. SOLIMANO:  Objection.  Outside the scope of the     02:44

11   parties' agreement.

12             THE WITNESS:  I see that.

13   BY MR. HEINS:

14        Q.   In your declaration, you never opine that

15    Moog_0030674 is publicly available, correct?                     02:44

16             MS. SOLIMANO:  Objection.  Outside the scope of the

17   parties' agreement.

18             THE WITNESS:  I said the structure and content is

19   based on industry standards, the same format is used

20   throughout industry, and there are numerous examples that are    02:45

21   very similar to this on the Internet.  You can Google them.

22   BY MR. HEINS:

23        Q.   Okay.  But this identical document is not

24    publicly available, correct?

25             MS. SOLIMANO:  Objection.  Outside the scope of the     02:45



1   parties' agreement.  Asked and answered.

2          THE WITNESS:  The document that was identified with

3   the Bates number you previously referenced, I did not find on

4   the Internet as shown.

5   BY MR. HEINS:                                                    02:45

6       Q.   So now I'm going to mark as Exhibit 7 a

7   document with the Bates number Bird_SR_00001444?

8          (Exhibit No. 7 identified.)

9   BY MR. HEINS:

10      Q.   Are you able to see what I marked as                   02:46

11  Exhibit 7 on the screen?

12      A.   I see a document with the number

13  SKY-DOC-1016.

14      Q.   And the Bates number at the bottom

15  right-hand corner is Bird_SR_00001414, right?                   02:46

16      A.   No, 1444.

17      Q.   1444, thank you.

18          And this document is a Software

19  Configuration Management Plan, correct?

20      A.   Correct.  A draft, I believe.                          02:47

21      Q.   Okay.  And it's a draft of Skyryse's

22  Software Configuration Management Plan, correct?

23      A.   Correct.

24      Q.   And if we go to page 8 of this document, do

25  you see in the Section 1.1.1 titled Formal                      02:47



MICHAEL J. DREIKORN, ED.D.                    May 02, 2023
MOOG, INC. vs SKYRYSE, INC.                              78

1   One is simply just take the body of knowledge for software

2   quality management and it references DOORS as a requirement

3   management software, that's one place.

4          Another place is they could have simply taken it

5   from any of the published documents on the Internet that          02:55

6   reference this type of thing.

7          But you know, it's purely speculation and I don't

8   have that information because I didn't speak to anybody.

9   BY MR. HEINS:

10     Q.   All right.  You didn't speak to anyone at              02:55

11     Skyryse to determine if the reason the first draft

12     had DOORS is because they took it from Moog's draft

13     that has DOORS, right?

14         MS. SOLIMANO:  Objection.  Asked and answered.

15   Outside the scope of the parties' agreement.  Calls for          02:56

16   speculation.  Lacks foundation.

17         THE WITNESS:  If I could bring you back to my

18   declaration, you know, my discussion on DOORS is about it

19   being an integral part of the industry process and that it's

20   publicly available, it's commercially available.  It's widely   02:56

21   used in our industry.  And I don't have the information to

22   know why Skyryse may have it in one revision of a document

23   and not in another revision.  I don't know.

24         MS. SOLIMANO:  And Dr. Dreikorn, I think Mike has

25   the section of your declaration on the screen if you want to     02:56



1   the 331 or one of the FAA orders relevant to airborne

2   software design and verification.

3   BY MR. HEINS:

4       Q.   Right.

5            Again, I'm not asking you if Figure 26 was                03:12

6   based on public standards.  I'm asking you does

7   Figure 26, or any part of the Moog SCMP Section 4,

8   appear identical to a document on the public domain?

9            MS. SOLIMANO:  Objection.  Outside the scope of the

10  parties' agreement.  Asked and answered.               03:13

11           THE WITNESS:  Not 100 percent.  There's typos in

12  that document too, but the structure and the majority of the

13  content is found in the public domain.

14  BY MR. HEINS:

15      Q.   Okay.  And just to be clear, the typos            03:13

16  aren't the reason you're stating it's not found in

17  the public domain, correct?

18           MS. SOLIMANO:  Objection.  Misstates the witness's

19  testimony.

20           THE WITNESS:  No.  It was just to characterize, you      03:13

21  know, Moog's not perfect either, right, and they probably

22  take their information from somewhere else and they cut it

23  and paste it and put it into their documents.

24  BY MR. HEINS:

25      Q.   Okay.  So you have Figures 27, 28, 29, and           03:13



MICHAEL J. DREIKORN, ED.D.                                    May 02, 2023
MOOG, INC. vs SKYRYSE, INC.                                            84

 1      30 in your declaration.  I just scrolled through

 2      them.  Do you see those?

 3         A.   Yes.

 4         Q.   Are any of those figures word for word the

 5      same as Figure 26?                                    03:14

 6              MS. SOLIMANO:  Objection.  Outside the scope of the

 7      parties' agreement.

 8              THE WITNESS:  No.  They are illustrative of how

 9      similar they are even though they're from a completely

10      different industry.  And my objective for providing them is   03:14

11      to show that the approach taken for quality assurance in

12      software development is universally the same.  There's a

13      reason for it.

14              Again, even if it's just, in my example, lottery,

15      it's just important to get it right.  Can you imagine if a    03:14

16      lot of people get the same numbers and it turns out to be an

17      algorithm is wrong.  I mean, that's a pretty significant

18      thing.

19              So the entirety of software development and

20      validation is not only industry standard, but it's globally  03:15

21      standard.

22      BY MR. HEINS:

23         Q.   Okay.  But I wanted to focus on something

24      you said there.  You said the approach taken for

25      quality assurance and software development is          03:15



 1    universally the same; is that correct?

 2              MS. SOLIMANO:  Objection.  Mischaracterizes the

 3    testimony.

 4              THE WITNESS:  With regards to compliance to a

 5    DO-178 standard, the fact that there is almost a                03:15

 6    choreographed progressive activity, you certainly have to

 7    take certain steps before other steps.  Just the logical

 8    aspect.  So the approach is pretty much globally the same.

 9    BY MR. HEINS:

10        Q.   Right.                                                 03:15

11              But it's not the same, right, because

12      Figure 26 is different from Figure 27 and Figure 28,

13      and Figure 29, just like Figure 27 is different from

14      Figure 28 and Figure 29.  They might be similar, but

15      none of these approaches are the same, correct?             03:16

16              MS. SOLIMANO:  Objection.  Argumentative.

17    Mischaracterizes the document.

18              THE WITNESS:  While they're not identical, they all

19    talk about configuration management.  They all the talk about

20    problem resolving.  You're scrolling quite quickly clear, but  03:16

21    the constructs of what is done are the same as what is in

22    Figure 26.

23    BY MR. HEINS:

24        Q.   Okay.  But you still agree that none of

25      them show that Figure 26 itself is in the public            03:16



1    domain, correct?

2          MS. SOLIMANO:  Objection.  Misstates the document.

3    Outside the scope of the parties' agreement.

4          THE WITNESS:  As I said before, the structure and

5    content is widely -- is predominantly in the domain of the          03:16

6    public.  Whether or not Figure 26 itself, as it is shown

7    presently on page 54, is in there, I have not seen that.

8    BY MR. HEINS:

9      Q.   Okay.  I'd like to mark as Exhibit --

10   actually scratch that one sec.                                        03:17

11         Okay.  I've put back up Exhibit 8, which

12   is, again, Bird_SR_00023903 is the cover page Bates

13   number.  If we go to Skyryse's document on

14   Section 5.3, Problem Reporting, do you see this

15   section?                                                             03:18

16     A.   I do.

17     Q.   So my question is, looking at Skyryse's

18   5.3, Problem Reporting, which document and figure in

19   your declaration, is most closely connected to the

20   language used in Skyryse's document?                                 03:18

21         MS. SOLIMANO:  Objection.  Outside the scope of the

22   parties' agreement.

23         THE WITNESS:  You're referring to Figure 26 then,

24   correct?

25   BY MR. HEINS:                                                        03:19



1                    C E R T I F I C A T I O N

2

3

4

5           I, ADELE C. FRAZIER, Certified Shorthand Reporter,

6    License No. 9690, for the State of California, do hereby

7    certify:

8

9           That, prior to being examined, the witness named in

10   the foregoing deposition, to wit, MICHAEL J. DREIKORN, Ed.D.,

11   was by me duly sworn to testify the truth, the whole truth

12   and nothing but the truth;

13

14          That said deposition was taken down by me in shorthand

15   at the time and place therein named and thereafter reduced to

16   computer-aided transcription under my direction.

17

18          I further certify that I am not interested in the

19   event of the action.

20

21          Witness my hand the 8th of May, 2023

22

23          ADELE C. FRAZIER, CSR, CRR, RMR, RPR

24

25

