**LATHAM & WATKINS LLP**
Douglas E. Lumish (SBN 183863)
  *doug.lumish@lw.com*
Gabriel S. Gross (SBN 254672)
  *gabe.gross@lw.com*
Arman Zahoory (SBN 306421)
  *arman.zahoory@lw.com*
Rachel S. Horn (SBN 335737)
  *rachel.horn@lw.com*
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and Counterclaimant*
*Skyryse, Inc.*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>Plaintiff,<br><br>v<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**DEFENDANT AND COUNTERCLAIMANT SKYRYSE, INC.'S OPPOSITION TO MOOG INC.'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |
| SKYRYSE, INC.,<br><br>Counterclaimant,<br><br>v<br><br>MOOG INC.,<br><br>Counterclaim-Defendant. | Discovery Cut-Off: April 12, 2024<br>Trial: August 27, 2024<br><br>Hearing:   June 22, 2023<br>Time:      8:30 a.m.<br>Judge:     Hon. George H. Wu<br>Location:  Ctrm. 9-D |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL AND PROCEDUAL BACKGROUND ..................................... 3

    A.    Moog files its complaint alleging theft of proprietary data and misconduct regarding Skyryse's hiring practices. ....................... 3

    B.    Discovery reveals substantive deficiencies in Moog's theory of the case. ................................................................................ 4

    C.    Moog seeks to amend its complaint. ...................................................... 5

III.  LEGAL STANDARD ................................................................................. 6

IV.   THE COURT SHOULD DENY LEAVE BECAUSE MOOG'S PROPOSED AMENDMENTS ARE FUTILE. ............................................. 7

    A.    Moog's request for leave to add a common law conversion claim should be denied as preempted and futile. ............................................................................................. 7

        1.    California law applies. .............................................................. 7

        2.    Moog's proposed conversion claim is preempted. ................... 9

    B.    Moog's request for leave to add an implied covenant claim should be denied as futile. ...................................................... 13

    C.    Moog's cited authority is inapposite or supports denying leave to amend. ................................................................................ 17

V.    CONCLUSION ........................................................................................ 19

# Table of Authorities

**Page(s)**

## CASES

*Agile Sourcing Partners, Inc. v. Dempsey*,
No. 21-cv-773-JGB(SPx), 2021 WL 4860693 (C.D. Cal. July 15,
2021) ................................................................................................................ 10

*Barker v. Insight Global, LLC*,
No. 16-cv-07186-BLF, 2019 WL 176260 (N.D. Cal. Jan. 11, 2019) ............... 15

*Bell v. Allstate Life Insurance Company*,
160 F.3d 452 (8th Cir. 1998) ......................................................................... 18

*Designers North Carpet, Inc. v. Mohawk Indus., Inc.*,
153 F. Supp. 2d 193 (E.D.N.Y. 2001) ............................................................ 14

*Edifecs Inc. v. TIBCO Software Inc.*,
756 F. Supp. 2d 1313 (W.D. Wash. 2010) ................................................... 7, 8

*Foman v. Davis*,
371 U.S. 178 (1962) ......................................................................................... 6

*FT Travel – New York, LLC v. Your Travel Center, Inc.*,
112 F. Supp. 3d 1063 (C.D. Cal. 2015) ......................................................... 19

*Gabriel Tech. Corp. v. Qualcomm Inc.*,
No. 08-cv-1992-MMA(POR), 2009 WL 3326631 (S.D. Cal. Sept.
3, 2009) ........................................................................................................ 12

*Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC*,
No. 20-cv-02114-SSS-ADSx, 2023 WL 3040584 (C.D. Cal. Mar.
20, 2023) ....................................................................................................... 10

*Global Telecom Corp. v. Seowon Intech Co. Ltd.*,
No. 16-cv-02212-AG(DFMx), 2018 WL 6074545 (C.D. Cal. Mar.
26, 2018) ................................................................................................. 11, 19

*Grand Heritage Mgmt., LLC v. Murphy*,
No. 06 Civ. 5977(NRB), 2007 WL 3355380 (S.D.N.Y. Nov. 7,
2007) ............................................................................................................. 14

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
  17 F. Supp. 2d 275 (S.D.N.Y. 1998) .................................................................. 14

*Harris v. Provident Life & Acc. Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002) ............................................................................... 17

*Harrison v. Rubin*,
  174 F.3d 249 (D.C. Cir. 1999) .......................................................................... 19

*Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of Virgin Islands, Inc.*,
  663 F.2d 419 (3d Cir. 1981) ............................................................................. 18

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
  No. 08 Civ. 9166(PGG), 2009 WL 321222 (S.D.N.Y. Feb. 9,
  2009) ........................................................................................................... 14, 17

*Kimera Labs Inc. v. Jayashankar*,
  No. 21-cv-2137-MMA(DDL), 2022 WL 1196505 (S.D. Cal. Oct.
  20, 2022) .......................................................................................................... 10

*Missouri ex rel. Koster v. Harris*,
  847 F.3d 646 (9th Cir. 2017) ......................................................................... 6, 19

*Lifeline Food Co. v. Gilman Cheese Corp.*,
  No. 15-cv-00034-PSG, 2015 WL 2357246 (N.D. Cal. May 15,
  2015) ............................................................................................................. 9, 11

*Lodging Solutions, LLC v. Miller*,
  No. 19-cv-10806 (AJN), 2020 WL 6875255 (S.D.N.Y. Nov. 23,
  2020) ........................................................................................................... 15, 16

*Luma Pictures, Inc. v. Betuel*,
  No. 16-cv-2625-GW(PLAx), 2016 WL 115199331 (C.D. Cal.
  Sept. 29, 2016) ................................................................................................... 6

*M.H. v. Cnty. of Alameda*,
  No. 11-2868 CW, 2012 WL 5835732 (N.D. Cal. Nov. 16, 2012) ...................... 6

*M/A-COM Sec. Corp. v. Galesi*,
  904 F.2d 134 (2d Cir. 1990) ............................................................................. 14

*McCandless Grp., LLC v. Coy Collective, Inc*,
  No. 21-cv-02069-DOC-KES, 2022 WL 2167686 (C.D. Cal. Feb.
  14, 2022) .......................................................................................................... 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

SKYRYSE'S OPPOSITION TO MOOG'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT

*Medidata Solution, Inc. v. Veeva Sys., Inc.*,
    No. 17-cv-589 (LGS), 2021 WL 467110 (S.D.N.Y. 2021) ............................ 7, 8

*Mobilitie Mgmt., LLC v. Harkness*,
    No. 16-cv-01747-JLS-KES, 2016 WL 10880151 (C.D. Cal. Nov.
    28, 2016) ................................................................................................ 8

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990) ................................................................ 18

*Nelson Brothers Professional Real Estate LLC v. Jaussi*,
    No. 17-cv-0158-DOC(JCGx), 2017 WL 8220703 (C.D. Cal. Mar.
    23, 2017) ................................................................................................ 9

*Novak v. Genworth Life and Annuity Ins. Co.*,
    726 F. App'x 637 (9th Cir. Jun. 14, 2018) ........................................... 7

*Penske Media Corp. v. Shutterstock, Inc.*,
    548 F. Supp. 3d 370 (S.D.N.Y. 2021) ................................................... 14

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010) ............................................................. 9, 10

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*,
    708 F.3d 1109 (9th Cir. 2013) .............................................................. 18

*Stanacard, LLC v. Rubard, LLC*,
    No. 12-cv-5176, 2016 WL 462508 (S.D.N.Y. Feb. 3, 2016) ................ 8, 9

*SunPower Corp. v. SolarCity Corp.*,
    No. 12-cv-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11,
    2012) ............................................................................................... 9, 10, 13

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
    313 F. Supp. 3d 1056 (N.D. Cal. Mar. 13, 2018) ................................ 12

*Teamsters Pension Tr. Fund of Philadelphia & Vicinity v. CBS Recs.*,
    *a Div. of CBS, Inc.*,
    103 F.R.D. 83 (E.D. Pa. 1984) ........................................................... 19

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991) .............................................................. 18

*Torah Soft Ltd. v. Drosnin*,
  224 F. Supp. 2d 704 (S.D.N.Y. 2002) ................................................................. 8

*Ultrasystems Env., Inc. v. STV, Inc.*,
  674 F. App'x 645 (9th Cir. Jan. 3, 2017) ........................................................... 7

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ............................................................................. 6

**STATUTES**

Cal. Bus. & Prof. Code § 16600 ............................................................................. 15

Cal. Civ. Code § 3426.1(d) ...................................................................................... 9

California Uniform Trade Secrets Act ...................................................................... 2

Defend Trade Secrets Act ............................................................................... 3, 10

**RULES**

Rule 12(b)(6) ............................................................................................................ 6

Rule 15 ................................................................................................................. 1, 6

**CONSTITUTIONAL PROVISIONS**

California Constitution .......................................................................................... 18

# I.     INTRODUCTION

Skyryse has no quarrel with Moog seeking leave to add additional factual allegations to its complaint even though many are false and unnecessary. The problem is that Moog's proposed amendment does not merely "update" its original pleading to incorporate those new accusations. Rather, Moog also seeks leave to add two new causes of action to make up for the substantive shortcomings of its other theories of liability, and to try to obtain relief for lawful, non-actionable conduct. Specifically, in counts II and IX Moog seeks to add (a) a preempted claim for common-law conversion of "trade secrets" and of "data" that is not entitled to legal protection at all; and (b) a claim for breach of the implied duty of good faith and fair dealing, through which Moog seeks to hold Skyryse liable for lawful hiring of at-will employees or for conduct that is already the subject of Moog's express breach-of-contract claim.

These two causes of action are legally deficient and would be futile, and Moog should not be given leave to add them. While leave to amend is granted liberally under Rule 15, courts deny such leave when a proposed amendment would be futile, in order to prevent the parties and the judiciary from wasting time and resources litigating them. That is the approach the Court should take here, where Moog can prove no set of facts under which its legally unsound claims could survive.

First, Moog seeks to add a claim for common-law conversion as a fallback theory, since discovery has exposed serious deficiencies in Moog's trade secret misappropriation claim. But settled law confirms that the tort of conversion is limited to tangible property susceptible of exclusive control, not to intangible information of the kind Moog alleges that Defendants Kim, Pilkington, and Skyryse copied. The law simply does not permit Moog to use a conversion claim to invent an intellectual property right over information that does not otherwise qualify for legal protection. Moreover, Moog admits that the facts underlying its proposed conversion claim are coextensive with those underlying its existing trade secret misappropriation claim.

1    As a result, Moog's conversion claim is preempted by the California Uniform Trade

2    Secrets Act and should not be permitted to go forward.

3           Second, Moog seeks to add a claim for breach of the implied covenant of good

4    faith and fair dealing, which it tries to ground in two different, legally invalid theo-

5    ries. Moog claims that Skyryse's lawful hiring of at-will employees from Moog vi-

6    olated some duty implicit in the parties' confidentiality agreements arising from their

7    earlier business dealings. But those agreements, which are part of Moog's proposed

8    amended complaint, have nothing to do with hiring and so cannot give rise to an

9    implied duty not to solicit or hire qualified employees. Moog also insists that the

10   alleged copying and use of its proprietary and trade secret information breached an

11   implied covenant arising out of those same agreements. But those are the same fac-

12   tual allegations that underpin Moog's express breach-of-contract claims, and under

13   applicable New York law, that makes any implied covenant claim redundant. In

14   short, Moog cannot state a viable claim for breach of an implied covenant, and

15   should not be permitted to add it to its complaint.

16          Moog's own motion demonstrates why it should be denied. Moog argues at

17   length that its new proposed claims arise from "the same nucleus of facts" underly-

18   ing its original causes of action. That is precisely the point: Moog's conversion claim

19   is preempted because it is premised on the same facts as its trade secret claims, and

20   Moog's proposed implied covenant claim is redundant of its existing breach-of-con-

21   tract claims. Moreover, Moog's insistence that its new claims are based on the same

22   old facts invites the question why Moog did not assert them when filing suit over a

23   year ago—and why it proposes to do so now. The answer is clear: after extensive,

24   one-sided discovery, Moog has had to confront the serious flaws in its trade secret

25   misappropriation theory, and is trying to shore up these deficiencies with new but

26   legally unsound, futile claims. Respectfully, the Court should deny Moog leave to

27   add new proposed counts II and IX.

28

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Moog files its complaint alleging theft of proprietary data and misconduct regarding Skyryse's hiring practices.

Moog filed its original complaint in March 2022 in the Western District of New York, after approximately twenty of its former at-will employees had left to take jobs at Skyryse, an exciting and innovative start-up company revolutionizing the flight technology space. Moog's initial complaint described a prior business relationship between Moog and Skyryse and the disintegration of that relationship. It alleged that "Skyryse hir[ed] 20 of Moog's senior staff and best software engineers." And Moog accused its former employee and Defendant Misook Kim of "stealing over 136,000 files of Moog's most sensitive and proprietary data" relating to Moog's flight control software and bringing them to Skyryse at the direction of Defendant Alin Pilkington. (Dkt. 1 ¶ 1.) Based on those allegations, Moog asserted a number of claims, including trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA") and breach of the non-disclosure agreements Moog and Skyryse had entered into in 2018 and 2019 during their prior business relationship. (*Id.* ¶¶ 160-179, 223-230.)

From the beginning, there were clear substantive problems with Moog's complaint and its theories of the case. For example, the complaint failed to identify Moog's alleged trade secrets in any meaningful way, making it impossible for Skyryse to discern what it was accused of misappropriating. Moog also chose to file suit in New York, where it is headquartered, even though virtually all of the alleged conduct forming the basis of its claims took place here in the Central District of California. Defendants Kim and Pilkington both reside in the Los Angeles area and were employed in Moog's Torrance office when they allegedly copied Moog data, and Moog alleged that Skyryse's efforts to recruit Moog personnel were "primarily targeted at Moog's Los Angeles-area office." (*Id.* ¶ 105.)

**B.     Discovery reveals substantive deficiencies in Moog's theory of the case.**

Although Moog's claims were all predicated upon allegations of trade secret misappropriation, Moog delayed and avoided disclosing its alleged trade secrets for more than a year. At first, Moog refused to respond to Skyryse's interrogatory requiring Moog to identify its trade secrets, claiming it needed more investigation and discovery. Moog pushed for and received expansive discovery into Skyryse's computer systems and devices, arguing this was necessary to identify its own trade secrets. But by last summer, even after receiving troves of one-sided discovery, Moog had not been able to identify its own trade secrets. This kept Skyryse in the dark about what it was accused of misappropriating and how, if at all, Moog's trade secrets purportedly were kept secret. Ultimately, Skyryse was forced to file multiple discovery motions with the court in New York, including a motion to compel a precise trade secret identification. That court granted that motion on July 22, 2022, ordering Moog to follow specific instructions to identify its trade secrets with the required level of precision. (Dkt. 205.) Yet Moog still delayed any effort to comply.

In December 2022, this action was transferred to the Central District of California, where "almost everything relevant that happened in this case occurred." (Dkt. 297 at 21.) At the parties' first telephonic appearance, this Court ordered Moog to promptly provide its trade secret identification. But when Moog finally did so, it flouted virtually every aspect of the transferor court's order to do so with precision and by following certain explicit instructions. Among other problems, Moog described "generic categories" of trade secrets, pointed to 300,000 documents without elaboration or explanation, and failed to show how its asserted trade secrets are distinct from what is generally known. These deficiencies are currently the subject of Skyryse's pending motion to enforce the transferor court's order compelling Moog's trade secret identification. (Dkt. 485.) In any event, Moog's reluctance and ultimate

inability to point to specific, well-defined trade secrets is emblematic of Moog's inability to articulate and present a coherent theory of trade secret misappropriation.

Even Moog's experts have had problems identifying whether the "Moog non-public information" they have searched for that is allegedly in Skyryse's possession is actually non-public, or even belongs to Moog. Moog has long accused Skyryse of possessing and using so-called "Moog non-public information," whether it is allegedly a trade secret or not. But Moog's experts recently had to admit that they had done no independent investigation into the origins of the alleged "Moog non-public information" and thus were in no position to opine whether the information allegedly taken was even Moog's, let alone constituted a trade secret. Skyryse's experts, on the other hand, analyzed the materials Moog identified as its "non-public information" and found that much of it is readily available, either publicly or from third parties, and thus cannot be proprietary to Moog. (*See* Dkt. 452-1.)

### C.   Moog seeks to amend its complaint.

After the Court granted-in-part Defendants Kim and Pilkington's motion to dismiss Moog's complaint with limited leave for Moog to amend, the parties stipulated that Moog could seek leave to amend its complaint more broadly. Moog proceeded to file the present Motion and its Proposed Amended Complaint ("PAC"). Moog's proposed amendment attempts to circumvent the substantive deficiencies in its initial complaint and theories of the case. Moog candidly acknowledges that its new conversion claim is based on Defendants' "knowingly or intentionally *taking possession of the Stolen Trade Secrets*, and the *other data* stolen from Moog." (PAC ¶ 265.) Moog does not distinguish between the alleged "Stolen Trade Secrets" and "other data." Moog does not allege the conversion of anything tangible or physical; its proposed conversion claim rests entirely on accusations of taking information.

Moog's proposed claim for breach of the implied covenant is based on Skyryse allegedly "prevent[ing] Moog from receiving the benefits of" the parties'

1    two NDAs by engaging in certain hiring practices and by allegedly misappropriating

2    certain information. (*Id.* ¶ 322.) According to Moog, the NDAs imposed an implied

3    duty that Skyryse violated by "hiring dozens of key, targeted Moog personnel after

4    the NDAs were entered who have intimate knowledge about the confidential infor-

5    mation that Moog disclosed to Skyryse under the 2018 and 2019 NDAs"; "having

6    its employees steal approximately 1.4 million files from Moog without authoriza-

7    tion"; and using Moog's alleged trade secrets "in connection with the development,

8    certification, and testing of Skyryse's flight control software and programs." (*Id.*)

9    But the two NDAs, which Moog included with the PAC, say nothing about hiring or

10   solicitation at all, and Moog has a separate duplicative claim sfor alleged trade secret

11   misappropriation and breach of contract. (*See id.* Exs. C, E.)

12   **III.    LEGAL STANDARD**

13       Leave to amend under Rule 15 should be denied when the proposed amend-

14   ment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The test for deter-

15   mining the futility of a proposed amendment is "identical to the one used when con-

16   sidering the sufficiency of a pleading challenged under Rule 12(b)(6)"—that is, a

17   proposed amendment is futile when "no set of facts can be proved under the amend-

18   ment to the pleadings that would constitute a valid and sufficient claim or defense."

19   *M.H. v. Cnty. of Alameda*, No. 11-2868 CW, 2012 WL 5835732, at *4 (N.D. Cal.

20   Nov. 16, 2012); *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

21   A determination of futility "contemplates whether the amendment could present a

22   viable claim on the merits for which relief could be granted" and courts should deny

23   leave if the deficiencies cannot be "cured with additional allegations that are 'con-

24   sistent with the challenged pleading.'" *Luma Pictures, Inc. v. Betuel*, No. 16-cv-

25   2625-GW(PLAx), 2016 WL 115199331, at *4 (C.D. Cal. Sept. 29, 2016) (quoting

26   *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

27       Courts deny leave to amend when a claim is futile, and there is no need to

28   defer consideration until after a proposed amended pleading has been filed. *See, e.g.,*

1  *Novak v. Genworth Life and Annuity Ins. Co.*, 726 F. App'x 637, 638 (9th Cir. Jun.

2  14, 2018) (affirming denial of leave to amend because breach of covenant of good

3  faith and fair dealing claim would have been futile); *Ultrasystems Env., Inc. v. STV,*

4  *Inc.,* 674 F. App'x 645, 649-50 (9th Cir. Jan. 3, 2017) ("The district court correctly

5  denied as futile UEI's request for leave to amend the complaint to add a claim of

6  breach of the implied duty of good faith and fair dealing.").

7
   **IV.    THE COURT SHOULD DENY LEAVE BECAUSE MOOG'S**
8  **PROPOSED AMENDMENTS ARE FUTILE.**

9         The Court should deny leave to add counts II and IX because Moog's common

10 law conversion claim is preempted by trade secret law and its implied covenant claim

11 is redundant and duplicative of its express breach of contract claims. Because Moog

12 cannot plead around these legal deficiencies, leave should be denied with prejudice.

13
   **A.    Moog's request for leave to add a common law conversion claim**
14 **should be denied as preempted and futile.**

15        Moog attempts to plead around the deficiencies of its trade secret claim by

16 repackaging the same factual allegations under the common law tort of conversion.

17 The law does not permit this. A conversion claim based on the alleged theft of con-

18 fidential information or trade secrets is preempted by trade secret law.

19               1.    **California law applies.**

20        This case is now properly venued in California. Between it and New York,

21 California has the greater interest in the dispute and California law applies to the

22 preemption of Moog's conversion claim. "The place where the injurious conduct

23 occurred is heavily weighted in trade secret disputes." *Edifecs Inc. v. TIBCO Soft-*

24 *ware Inc.*, 756 F. Supp. 2d 1313, 1319 (W.D. Wash. 2010); *accord Medidata Solu-*

25 *tion, Inc. v. Veeva Sys., Inc.*, No. 17-cv-589 (LGS), 2021 WL 467110, at *12

26 (S.D.N.Y. 2021) (noting that courts "have often used the locus of the misappropria-

27 tion to determine the locus of the tort and the state with the greatest interest" and

28 applying California preemption law because defendant was "headquartered in

California, the majority of the alleged misappropriation and related business decisions occurred in California and Medidata identifies no specific injuries that took place in New York"[1]); *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 720 (S.D.N.Y. 2002); *Mobilitie Mgmt., LLC v. Harkness*, No. 16-cv-01747-JLS-KES, 2016 WL 10880151, at *3 (C.D. Cal. Nov. 28, 2016) (holding that after transfer courts apply choice-of-law principles of the original forum).

The locus of the alleged misappropriation is in California. Skyryse is headquartered in California and Moog's misappropriation and common law claims are based on conduct that allegedly occurred in California. Moog alleges that Defendants "committed the torts alleged … within the state" of California and that the "contracts at issue were performed at least partially in California." (PAC ¶ 19.) Moog claims Defendants Kim and Pilkington stole files in California, where both were employed in Moog's Torrance office. (*Id.* ¶¶ 13-14, 159, 191-193; *see also* Dkt. 239 at 2-3 ("Pilkington copied Moog files from his Moog-issued laptop (located in California) to his personal USB drive (also located in California).").) Moog also alleges that Skyryse's efforts to recruit Moog's engineers were "primarily targeted at Moog's Los Angeles-area office" (PAC ¶ 150), and that other former employees who allegedly copied Moog files were employed in Moog's Torrance office (*Id.* ¶ 137). The transferor court recognized this as well: "almost everything relevant that happened in this case occurred in California, where all the defendants and many of the witnesses are located." (Dkt. 297 at 21.) Accordingly, California has the greater interest and California law applies. *See Edifecs*, 756 F. Supp. 2d at 1319; *Medidata*, 2021 WL 467110, at *12.[2]

---

[1] Unless otherwise specified, internal quotation marks and citations have been omitted and emphasis has been added.

[2] Moog's conversion claim would also fail under New York common law. In New York, "an action for conversion of intangible property must still satisfy the requirement of unauthorized dominion and control to the complete exclusion of the rightful possessor." *Stanacard, LLC v. Rubard, LLC*, No. 12-cv-5176, 2016 WL 462508, at *21 (S.D.N.Y. Feb. 3, 2016). Where a plaintiff does not allege that a defendant's use

### 2.     **Moog's proposed conversion claim is preempted.**

Moog's request for leave to add a conversion claim must be denied because CUTSA preempts it. Moog admits its proposed conversion claim is based on the alleged theft of non-tangible information and arises out of the same nucleus of operative facts as Moog's trade secret claim. (*See* Mot. at 13.) But California law is clear that a common law conversion claim is preempted where it "arise[s] from the same nucleus of operative facts as [a] trade secret claim" unless a plaintiff can "demonstrate a property right outside of trade secret law." *Lifeline Food Co. v. Gilman Cheese Corp.*, No. 15-cv-00034-PSG, 2015 WL 2357246, at *4 (N.D. Cal. May 15, 2015) (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 238-239 (2010)). Where the basis for the property right is that the information is not "generally known to the public, . . . then the claim is sufficiently close to a trade secret claim that it should be superseded." *SunPower Corp. v. SolarCity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012).

A conversion claim "based on the misappropriation of confidential information" is preempted "whether or not that information meets the statutory definition of a trade secret." *Nelson Brothers Professional Real Estate LLC v. Jaussi*, No. 17-cv-0158-DOC(JCGx), 2017 WL 8220703, at *8 (C.D. Cal. Mar. 23, 2017). This legal regime makes sense. The trade secret statutes intentionally place a high burden on plaintiffs trying to assert ownership rights to non-tangible data, who must allege and prove the elements necessary for trade secret protection. Those elements include that the information is not generally known, is subject to efforts that are reasonable under the circumstances to maintain its secrecy, and derives independent economic value from being secret. *See* Cal. Civ. Code § 3426.1(d). "Information that does not

---

of trade secrets or other data "interfered, in any way, with [plaintiff's] own use of that same information," the claim "must be dismissed in its entirety." *Id.* That is the case here. Moog does not allege that Skyryse's purported misappropriation completely excluded Moog's own ability to use its alleged trade secret information. (*See, e.g.*, PAC ¶ 4 (alleging Ms. Kim "*copied* onto an external hard drive 136,994 proprietary Moog files" but not alleging that those files were then unavailable to Moog); *id.* ¶ 5 (similar for Mr. Pilkington and Skyryse).)

fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and *cannot be converted or stolen.*" *SunPower Corp.*, 2012 WL 6160472, at \*5 (citing *Silvaco*, 184 Cal. App. 4th at 239 n.22)). Permitting a conversion claim based on the alleged theft of such *non*-trade secret information to proceed would "impliedly create[] a new category of intellectual property" and "allow plaintiffs to avoid the preclusive effect of CUTSA (and thereby plead potentially more favorable common law claims) by simply failing to allege one of the elements necessary for information to qualify as a trade secret." *Id.* at \*4-5.

The preemption analysis applies even where, as here, a plaintiff only alleges trade secret claims under the DTSA and does not bring a claim under CUTSA. *McCandless Grp.*, *LLC v. Coy Collective, Inc*, No. 21-cv-02069-DOC-KES, 2022 WL 2167686, at \*5 (C.D. Cal. Feb. 14, 2022) (explaining that "CUTSA preemption principles remain in effect" even if the plaintiff only alleges a claim under the DTSA). That is because "CUTSA serves as the sole remedy for the misappropriation of trade secrets under California law" and a plaintiff "cannot circumvent CUTSA preemption by asserting a claim under DTSA." *Id.*; *see also Agile Sourcing Partners, Inc. v. Dempsey*, No. 21-cv-773-JGB(SPx), 2021 WL 4860693, at \*8 (C.D. Cal. July 15, 2021) (similar); *Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC*, No. 20-cv-02114-SSS-ADSx, 2023 WL 3040584, at \*7 (C.D. Cal. Mar. 20, 2023) (similar); *Kimera Labs Inc. v. Jayashankar*, No. 21-cv-2137-MMA(DDL), 2022 WL 1196505, at \*10 (S.D. Cal. Oct. 20, 2022) (similar).

Moog argues that its proposed amendment to add a conversion claim is not futile because it is "related to the facts underlying Moog's other, preexisting causes of action (including for trade secret misappropriation and breach of contract), all of which advanced beyond the pleading stage without challenge from Defendants." (Mot. at 18.) This misconstrues the law. First, Moog admits its proposed conversion claim is based on the allegation that Defendants misappropriated trade secrets or

some undefined category of "other data" or violated some contractual rights.[3] (PAC ¶¶ 266-271.) Moog even expressly incorporates its entire trade secret misappropriation claim into its proposed conversion claim. (*See* PAC ¶ 266 (incorporating by reference and realleging "the allegations contained in paragraphs 1 through 265 above as if fully set forth herein").) Incorporating "the entirety of [Moog's] trade secret claim in its conversion claim indicates that there is 'no material difference' between the claims." *Lifeline*, 2015 WL 2357246, at *4. Second, that Moog's initial trade secret claim "advanced beyond the pleading stage" is simply irrelevant to whether its new proposed conversion claim is preempted and futile as a matter of law.

Moog admits that all of its "proposed amendments relate to the same nucleus of facts that the Defendants have been aware of and litigated since the inception of this case" (Mot. at 1); that Moog's "added claims relate to pre-existing claims" (*id.* at 2); that "the proposed amendments relate to the same nucleus of facts—the theft and misappropriation of Moog's data" (*id.* at 13); that "Moog is seeking to add two causes of action which are related to the facts underlying Moog's other, pre-existing causes of action (including for trade secret misappropriation and breach of contract)"; and that "Moog is not adding entirely new fact patterns or legal theories" (*id.* at 18). These admissions are fatal to Moog's proposed amendment because they underscore that the proposed new claim for alleged conversion is coextensive with the facts underlying Moog's trade secret claim. It is therefore preempted, and Moog has not shown that it could allege other facts that would permit the conversion claim to survive. *See, e.g.*, *Global Telecom Corp. v. Seowon Intech Co. Ltd.*, No. 16-cv-02212-AG(DFMx), 2018 WL 6074545, at *4 (C.D. Cal. Mar. 26, 2018) (dismissing preempted conversion claim without leave to amend because party "doesn't contend

---

[3] Moog's amended pleading nowhere distinguishes between the alleged trade secrets and any other information. For example, the section of the PAC describing Moog's alleged trade secrets is entitled "Moog's Stolen and Misappropriated Trade Secret Flight Control Software *And Other Data*." (PAC ¶¶ 21-53.) Nowhere does Moog suggest which "other data" it contends are not trade secrets.

that it could allege other facts that aren't currently in its counterclaim, let alone facts regarding its conversion claim specifically" that would permit the conversion claim to survive).

California courts consistently dismiss conversion claims based on similar allegations. For example, in *Calsoft Labs, Inc. v. Panchumarthi*, plaintiffs alleged that defendants converted "confidential information, electronic files, information on their email and data servers, Dropbox cloud folders, and intellectual property," which the court found was "the same intangible property implicated by [plaintiffs'] misappropriation of trade secrets claims." No. 19-cv-04398-NC, 2020 WL 512123, at *4 (N.D. Cal. Jan. 31, 2020). The court concluded no conversion claim could survive and dismissed it with prejudice. The same reasoning applies here, as Moog's proposed conversion claim centers on the same intangible property as its trade secret claim. *Compare* PAC ¶ 268 ("Defendants … have substantially interfered with Moog's property by knowingly or intentionally taking possession of the Stolen Trade Secrets, and the other data stolen from Moog by Pilkington, Kim, Raithel, and others, as well as using them and disclosing them to third parties.") *with id.* ¶ 258 ("Defendants misappropriated Moog's trade secrets and confidential and proprietary information. …").

That Moog's trade secret and conversion claims are factually indistinguishable means the latter is preempted and futile. *See Calsoft*, 2020 WL 512123, at *4; *see also Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08-cv-1992-MMA(POR), 2009 WL 3326631, at *12 (S.D. Cal. Sept. 3, 2009) (dismissing a conversion claim with prejudice where plaintiff alleged defendant stole "trade secrets and other proprietary information," because "the gravamen of Plaintiff's [conversion claim] is the alleged misappropriation of trade secrets," and plaintiff's attempt to "seek recovery only as to intellectual property not constituting trade secrets is insufficient to save this claim from preemption"); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1081 (N.D. Cal. Mar. 13, 2018) (dismissing conversion claim without leave to

amend where "the only property identified in the complaint is confidential or proprietary information, and the only basis for any property right is trade secrets law").

Moog's attempt to create a superficial distinction between "Stolen Trade Secrets" and "other data" cannot save Moog's claim. Moog includes no factual allegations showing how the two categories are distinct. Courts consistently strike down similar claims as preempted under California law. *See SunPower Corp.*, 2012 WL 6160472, at *10 (dismissing conversion claim where plaintiff attempted to make "a facial distinction between" two categories of data but used "both terms to refer to the same computer files," which suggested "that the distinction [the plaintiff was] drawing is superficial"). Likewise, Moog's complaint (which consistently refers to "Stolen Trade Secrets and other data" collectively) treats both categories as referring to the same information. (*See, e.g.*, PAC ¶¶ 137, 138, 213, 214, 223, 268, 274, 289, 290, 341, 347, 348 (discussing "Stolen Trade Secrets and other data" copied, taken, or stolen from Moog).) For that reason, too, CUTSA preempts Moog's proposed conversion claim.

## B. Moog's request for leave to add an implied covenant claim should be denied as futile.

Moog proposes to add a claim that Skyryse breached an implied covenant of good faith and fair dealing, again trying to overcome shortcomings in its original causes of action. Repeating its factual allegations, Moog now proposes a new cause of action that Skyryse breached a covenant implicit in the parties' 2018 and 2019 NDAs by (1) lawfully hiring Moog personnel; (2) stealing approximately 1.4 million files from Moog without authorization; and (3) allegedly using Moog's trade secrets and proprietary information to develop Skyryse's flight control software and programs. (PAC ¶ 322.) But as described further below, each of these theories fails as a matter of law, and Moog's request to add this cause of action should be denied for futility.

Under New York law,[4] an express contract gives rise to an implied covenant of good faith and fair dealing under which neither party shall "do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990). That implied covenant arises "out of the known reasonable expectations of the other party which arise out of the agreement entered into" but "*does not create duties which are not fairly inferable* from the express terms of that contract." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 321222, at *4 (S.D.N.Y. Feb. 9, 2009). In other words, the implied covenant "cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract," *Granite Partners, L.P. v. Bear, Stearns & Co. Inc*., 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998), and is limited to "obligations that a reasonable person in the position of the promisee would be justified in understanding were included in the contract." *Penske Media Corp. v. Shutterstock, Inc*., 548 F. Supp. 3d 370, 376-77 (S.D.N.Y. 2021); *see also Designers North Carpet, Inc. v. Mohawk Indus., Inc*., 153 F. Supp. 2d 193 (E.D.N.Y. 2001) (explaining implied covenant "does not extend so far as to interfere with a party's general right to act in its own interests in a way that may incidentally lessen or affect the other party's expectation from the contract"). Moreover, an implied covenant claim must be dismissed unless "it is based on allegations different from those underlying the accompanying breach of contract claim." *Grand Heritage Mgmt., LLC v. Murphy*, No. 06 Civ. 5977(NRB), 2007 WL 3355380, at *6 (S.D.N.Y. Nov. 7, 2007). Stated differently, while "a plaintiff must alleged an implied duty that is consistent with the express contractual terms," a plaintiff must also "base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims." *JPMorgan*, 2009 WL 321222, at *5.

---

[4] New York law applies to Moog's contract claims arising out of the 2018 and 2019 NDAs, each of which contains a New York choice of law provision. (*See* PAC Ex. C ¶ 10; *id.* Ex. E ¶ 10; *see also* Dkt. 439 at 24 n.18.)

Moog's implied covenant claims fail as a matter of law because they arise either from (1) the lawful hiring of Moog's at-will employees, a prohibition that cannot be fairly inferred from the terms of the parties' NDAs, or (2) the alleged theft and misuse of Moog's purported trade secrets, which makes them entirely duplicative of Moog's breach of contract (and trade secret misappropriation) claims. Neither theory is legally viable.

First, Moog alleges Skyryse breached the implied covenant by "hiring dozens of key, targeted Moog personnel after the NDAs were entered into who have intimate knowledge about the confidential information that Moog disclosed to Skyryse under the 2018 and 2019 NDAs." (PAC ¶ 322.) But those NDAs did not contain any provision stating that either party would not hire the other's employees. Nor did those two agreements discuss, reference, or touch upon the hiring of personnel at all. In fact, Moog identifies no specific terms in the NDAs from which one could fairly infer a duty to not hire or solicit Moog employees, which makes sense because such a prohibition would violate California law and public policy.[5]

Courts faced with similar agreements have repeatedly held that an NDA that does not contain an enforceable no-hire or non-solicitation agreement cannot provide a basis for an implied covenant imposing such restrictions. For example, in *Lodging Solutions, LLC v. Miller*, No. 19-cv-10806 (AJN), 2020 WL 6875255 (S.D.N.Y. Nov. 23, 2020), the court dismissed an implied covenant claim premised on the defendants' hiring of the plaintiffs' employee. Unlike here, the parties *had* entered into a non-disclosure agreement that contained a no-poaching clause. *Id.* at *5. But the court held that the no-poaching clause was unenforceable and therefore "Defendants' conduct [of hiring away the employee] did not deprive Plaintiff of any fruit of

---

[5] Sixteen of the twenty former Moog employees whom Moog alleges Skyryse illicitly hired away were employed in California (PAC ¶ 140), where non-compete and non-solicitation agreements are generally invalid and unenforceable. Cal. Bus. & Prof. Code § 16600; *see also Barker v. Insight Global, LLC*, No. 16-cv-07186-BLF, 2019 WL 176260, at *3 (N.D. Cal. Jan. 11, 2019).

1    the contract to which it was entitled." *Id.* at *7-9. Similarly, in *Agency Development,*
2    *Inc. v. MedAmerica Insurance Company of New York*, the court held as a matter of
3    law that defendant's recruiting and hiring of plaintiff's employee did not "destroy[]
4    plaintiffs' right to receive the fruits of [their] agreement," and so did not breach the
5    implied covenant of good faith and fair dealing, where "[p]laintiffs could have ne-
6    gotiated for certain terms in the agreement regarding the hiring of officers or agents
7    of the other party, but they did not." 327 F. Supp. 2d 199, 203 (W.D.N.Y. 2004).
8    Likewise, the Moog-Skyryse NDAs could have, but did not, contain terms regarding
9    the hiring of each other's employees, and it is doubtful whether any such terms
10   would have been enforceable anyway. They were simply non-disclosure agreements,
11   not prohibitions or limitations on any particular hiring activities. There can be no
12   viable claim for breach of the implied covenant under these facts.

13         Moog's separate attempt to claim that Skyryse breached the implied covenant
14   by allegedly stealing and misusing Moog's confidential information fails as a matter
15   of law because it is duplicative of Moog's breach of contract (and trade secret)
16   claims. Specifically, Moog alleges Skyryse breached an implied covenant by "hav-
17   ing its employees steal approximately 1.4 million files from Moog without authori-
18   zation" and by allegedly misusing Moog's trade secrets "and other proprietary in-
19   formation in connection with the development, certification, and testing of Skyryse's
20   flight control software and programs." (PAC ¶ 322.) But Moog alleges nearly iden-
21   tical facts in support of its express claim that Skyryse breached the NDAs, and does
22   not explain how the allegations underlying its original breach of contract claim differ
23   in any way from those underlying its proposed implied covenant claim. For instance,
24   Moog alleges that "[i]n breach of the 2018 NDA and 2019 NDA, Skyryse used in-
25   formation gained from Moog regarding its flight control software for purposes be-
26   yond the scope of the limited purpose of the Parties' business engagement … includ-
27   ing to: 1) develop its own flight control systems and software" and that Skyryse also
28   breached the NDAs by "us[ing] Moog's trade secrets and other data copied by at

1   least Kim and Pilkington to capitalize upon and build Skyryse's own competing

2   flight control software." (PAC ¶ 305.) Those factual allegations are virtually identi-

3   cal to, and overlap entirely with, the allegations Moog pleads in support of, its im-

4   plied breach claim. (*See id.* ¶ 322.)

5       Such a duplicative claim cannot survive as a matter of law. To make out a

6   claim for breach of an implied covenant, a plaintiff must ground its theory in allega-

7   tions that are *distinct from* the factual predicate for its breach of contract claims.

8   *JPMorgan*, 2009 WL 321222, at *5. Otherwise, a "claim for breach of the implied

9   covenant will be dismissed as redundant where the conduct allegedly violating the

10  implied covenant is also the predicate for breach of covenant of an express provision

11  of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73,

12  80 (2d Cir. 2002). For instance, in *JPMorgan*, plaintiff argued in part that the de-

13  fendant's violation of contractual non-solicitation obligations by soliciting, recruit-

14  ing, and/or enticing plaintiff's employees constituted a breach of the implied cove-

15  nant of good faith and fair dealing. 2009 WL 321222 at *3. The court disagreed,

16  holding that theory was "entirely duplicative" of plaintiff's breach of contract claim,

17  and dismissed the implied covenant claim. *Id.* at *6. Here too, Moog's proposed

18  claim for breach of the implied covenant would be entirely duplicative of its breach

19  of contract claim and subject to dismissal as redundant. It should be denied for futil-

20  ity.

21      **C.   Moog's cited authority is inapposite or supports denying

22           leave to amend.**

23      Not one of the cases Moog relies on to argue that its proposed amendments

24  are not futile (Mot. at 17-18) addresses the requirements for pleading either conver-

25  sion or breach of an implied covenant, and so all of them are inapposite. The court

26  in *SAES Getters S.p.A. v. Aeronex, Inc.* granted defendant's motion for leave to

27  amend its counterclaims where plaintiff's fact-dependent "argument d[id] not estab-

28  lish the futility of . . . amendment" since the court was required to accept defendant's

factual allegations as true, but confirmed that where a claim is clearly subject to dismissal (as each of Moog's proposed new claims is), leave to amend should not be granted. 219 F. Supp. 2d 1081, 1086, 1096 (S.D. Cal. 2002). And in *Netbula, LLC v. Distinct Corp.*, the court refused to credit plaintiff's argument that defendant's proposed counterclaim was futile when that claim "mirror[ed] the first claim in [plaintiff's] own complaint," a circumstance which is not present here. 212 F.R.D. 534, 539 (N.D. Cal. 2003). In *California ex rel. California Department of Toxic Substances Control v. Neville Chem. Co.*, the Ninth Circuit *affirmed* the district court's denial of leave to amend because amendment would have been futile. 358 F.3d 661, 674 (9th Cir. 2004).[6] Specifically, the defendant's due process counterclaim, which it brought under a theory of selective prosecution, failed as a matter of law because defendant could not on the factual record before the court allege "invidious discrimination," a requirement under the California Constitution to prove selective prosecution. *Id*. Similarly, here, after more than a year of discovery, Moog has not shown that it can plead any factual allegations under which its conversion or implied covenant claims could survive as a matter of law, and therefore the Court should deny leave to amend.

In virtually every other case cited in Moog's motion where a court granted leave to amend, the result relied on a specific finding that the amendment would not be futile, or that additional facts could be pleaded that would support the proposed claim.[7] For example, in *Missouri ex rel. Koster v. Harris*, the Ninth Circuit held that

---

[6] Three other cases Moog cites in its motion—*Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-799 (9th Cir. 1991), *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), and *Bell v. Allstate Life Insurance Company*, 160 F.3d 452, 453 (8th Cir. 1998)—each also affirmed a denial of a motion to amend.

[7] The only exceptions are a handful of cases that do not discuss futility at all and have no connection to the facts and theories at issue here, and therefore do not support granting Moog's motion. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117–18 (9th Cir. 2013) (explaining leave to amend was appropriate because the "controlling precedents changed midway through the litigation"); *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981) (discussing whether defendant could amend its theory

1  plaintiffs should have been granted leave to amend their deficient pleading where,

2  "[i]n theory, [p]laintiffs could allege … facts that might support standing." 847 F.3d

3  at 656. That case (like the others Moog cites) is inapposite because, as discussed at

4  length above, both of Moog's proposed additional causes of action are futile as a

5  matter of law under the theories Moog has articulated, and Moog does not contend

6  it could allege any other facts that would permit them to survive dismissal. *Cf.*

7  *Global Telecom Corp.*, 2018 WL 6074545, at *4 (dismissing preempted conversion

8  claim without leave to amend because party didn't "contend that it could allege other

9  facts that aren't currently in its [pleading]" that would support the claim).[8] Moog's

10  proposed conversion and implied covenant claims cannot survive as a matter of law,

11  and this Court should not permit these futile claims to go forward.

12  **V.    CONCLUSION**

13         For the foregoing reasons, Skyryse respectfully requests that this Court deny

14  leave to amend as to counts II (conversion) and IX (breach of the implied covenant

15  of good faith and fair dealing) of Moog's proposed amended complaint.

16

17

18

19

20

21

22

23

24  of the case during opening argument and without requesting leave); *Harrison v. Rubin*, 174 F.3d 249, 250 (D.C. Cir. 1999) (reversing denial of motion to amend where

25  "the only reason given by the district court" was plaintiff's delay); *Teamsters Pension Tr. Fund of Philadelphia & Vicinity v. CBS Recs., a Div. of CBS, Inc.*, 103

26  F.R.D. 83, 85 (E.D. Pa. 1984) (granting motion to amend without analyzing futility).

27  [8] Should Moog try arguing on reply that it can plead some new set of facts that would support its preempted conversion and legally flawed implied covenant claims, that

28  argument should be rejected as waived. *See, e.g.*, *FT Travel – New York, LLC v. Your Travel Center, Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply.").

1   Dated:  June 1, 2023                    Respectfully submitted,

2                                           LATHAM & WATKINS LLP

3                                           By:  */s/ Gabriel S. Gross*

4                                                Douglas E. Lumish (SBN 183863)
5                                                Gabriel S. Gross (SBN 254672)
                                                 Arman Zahoory (SBN 306421)
6                                                Rachel S. Horn (SBN 335737)
7                                                Menlo Park, California 94025
                                                 Telephone: (650) 328-4600
8                                                Facsimile: (650) 463-2600
9                                                Email: doug.lumish@lw.com
                                                 gabe.gross@lw.com
10                                               arman.zahoory@lw.com
11                                               rachel.horn@lw.com

12                                               Joseph H. Lee (SBN 248046)
13                                               Ryan Banks (SBN 318171)
                                                 650 Town Center Drive, 20th Floor
14                                               Costa Mesa, California 92626
15                                               Telephone: (714) 540-1235
                                                 Facsimile: (714) 755-8290
16                                               Email: joseph.lee@lw.com
17                                               ryan.banks@lw.com

18                                               Russell Mangas (Admitted *Pro Hac*
19                                               *Vice*)
                                                 330 North Wabash Avenue, Suite 2800
20                                               Chicago, Illinois 60611
21                                               Telephone: (312) 876-7700
                                                 Facsimile: (312) 993-9767
22                                               Email: russell.mangas@lw.com

23

24

25

26

27

28

1

2                            Julianne C. Osborne (SBN 342870)

3                            Alexa L. Solimano (SBN 335740)

                            505 Montgomery Street, Suite 2000

4                            San Francisco, California 94111

5                            Telephone: (415) 391-0600

                            Facsimile: (415) 395-8095

6                            Email: julianne.osborne@lw.com

7                            alexa.solimano@lw.com

8                            Kelley M. Storey (Admitted *Pro Hac Vice*)

9

                            555 Eleventh Street NW, Suite 1000

10                         Washington, D.C. 20004

                            Telephone: (202) 637-2200

11                         Facsimile: (202) 637-2201

12                         Email: kelley.storey@lw.com

13                         Cassandra M. Baloga (Admitted *Pro Hac Vice)*

14

                            1271 Avenue of the Americas

15                         New York, New York 10020

16                         Telephone: (212) 906-1200

                            Facsimile: (212) 751-4864

17                         Email: cassandra.baloga@lw.com

18                         *Attorneys for Defendant and Counter-*

19                         *claimant, Skyryse, Inc.*

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SKYRYSE'S OPPOSITION TO MOOG'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2          The undersigned, counsel of record for Defendant-Counterclaimant

3   Skyryse, Inc., certifies that this brief contains **5,961** words, which:

4          <u>X</u> complies with the word limit of L.R. 11-6.1.

5          __ complies with the word limit set by court order.

6

7   Dated: May 1, 2023

8                                        LATHAM & WATKINS LLP

9

10                                       By <u>/s/ Gabriel S. Gross</u>

11                                       Gabriel S. Gross
                                         *Attorney for Defendant and Counterclaimant*
12                                       *Skyryse, Inc.*

13

14   US-DOCS\142546286.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SKYRYSE'S OPPOSITION TO MOOG'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT