UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:22-cv-09094-GW (MAR) | Date: June 14, 2023 |
| Title: *Moog Inc. v. Skyryse, Inc. et al.* | |

Present: The Honorable: MARGO A. ROCCONI, UNITED STATES MAGISTRATE JUDGE

| Valerie Velasco | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Kazim A. Naqvi | Gabriel S. Gross |
| Lai L. Yip | Rachel S. Horn |

**Proceedings: MOTION FOR ORDER FOR ENFORCEMENT OF ORDER COMPELLING TRADE SECRET IDENTIFICATION, DKT. 474.**

On May 9, 2023, Defendant, Skyryse, Inc. ("Skyryse") filed a Motion for Order for Enforcement of Order Compelling Trade Secret Identification ("Motion"), requesting sanctions and costs. ECF Docket Nos. ("Dkt.") 474. For the reasons set forth below, Skyryse's Motion is **GRANTED** in part and **DENIED** in part and their Request for sanctions or costs is **DENIED**.

**I.
BACKGROUND**

Plaintiff Moog is an aerospace and defense company. Dkt. 1 at 4.[1] "The company's largest business segment is aircraft controls, which generates revenues from military and commercial aircraft in addition to aftermarket support." Id.

Around 2021, Defendant Skyryse Inc. ("Skyryse"), a competing company, hired twenty (20) Moog employees, including individual Defendants Misook Kim and Alin Pilkington (collectively "individual Defendants"). Id. at 24–25. In January 2022, Moog investigated whether any individuals who had left Moog for Skyryse had taken or copied files from Moog. Id. at 28–9. That investigation "revealed that, while still a Moog employee, on November 19, 2021, Defendant Kim copied [a] significant volume of data from Moog's internal servers to an external hard drive, amounting to greater than 136,000 files." Id. at 29. While Kim had access to these files on her own, she specifically used the file path of her former supervisor— Defendant Pilkington—to retrieve the files. Id. at 32. Additionally, over 1.4 million files were stolen, and many of the stolen files were deleted after they were taken. Dkt. 205 at 3. As a result of these facts, identifying the trade secrets that were allegedly stolen has been a difficult task for Moog.

The previously assigned magistrate judge stayed discovery in this case, ordered that Moog identify the trade secrets it planned to assert in their motion for a preliminary injunction, and allowed limited discovery for Moog to search the files that were stolen to identify the trade secrets.

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:22-cv-09094-GW (MAR) | Date: June 14, 2023 |
| Title: | *Moog Inc. v. Skyryse, Inc. et al.* | |

Dkt. 205. Moog asserts that they have combed through the 1.4 million files and identified 311, 581 files that contain their trade secrets; however, they also assert that they still do not have access to all of the relevant files. Dkt. 473-2 at 19–20.

## II.
## PROCEDURAL HISTORY

| Date | Event |
|---|---|
| 3/8/22 | Individual Defendants are served with the Complaint, which included a claim for trade secret misappropriation under the DTSA. Dkt. 1. |
| 6/21/2023 | Skyryse files Motion to Compel Trade Secret Identification. Dkt. 166. |
| 7/27/2022 | Magistrate Judge McCarthy granted Skyryse's Motion to Compel Trade Secret Identification and stayed all other pending discovery motions until the trade secrets were identified. Dkt. 205. |
| 12/15/2022 | Case is transferred to the Central District of California from the Western District of New York. Dkt. 297. |
| 1/23/2023 | Judge Wu sets February 20, 2023 deadline for Moog to identify trade secrets. Dkt. 346 at 16. |
| 2/21/2023 | Plaintiff Moog submits trade secret identification. Dkt. 365 at 8. |
| 5/9/2023 | Skyryse files current Motion asserting Moog did not identify its trade secrets with the particularity required by the July 27, 2022 court order. Dkt. 474. |

## III.
## JULY 27, 2022 COURT ORDER

Judge McCarthy's July 27, 2022 court order stated, in pertinent part:

Moog "must identify its trade secrets with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge". Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co., 1 F. Supp.3d 224, 258 (S.D.N.Y. 2014), aff'd, 610 F. App'x 69 (2d Cir. 2015). "It is insufficient to describe the trade secrets by generic category. Rather, the plaintiff must identify the specific characteristics of each trade secret." Id. at 259 (emphasis added).

\* \* \*

…"Moog invoked Rule 33(d) and advised that documents responsive to this request (including source code) are available on the 9 electronic devices turned over by Moog to iDS". Moog's Opposition [180] at 26. That too is an insufficient response. By its own terms, Rule 33(d) can be invoked only where "the answer to an interrogatory may be determined by examining . . . a party's business records . . . and if the burden of deriving and ascertaining the answer will be substantially the same for either party". "Courts should not allow trade secret plaintiffs to point to documents in which trade secrets are said to reside as a substitute for a detailed identification."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:22-cv-09094-GW (MAR)                                                          Date:  June 14, 2023

Title:     <u>Moog Inc. v. Skyryse, Inc. et al.</u>

[C. Graves & B. Range, "Identification of Trade Secret Claims in Litigation: Solutions for A Ubiquitous Dispute", 5 Northwestern Journal of Technology and Intellectual Property 68, 92 (2006) ("Graves & Range")].  "Without a precise identification of software code elements . . . the defendant cannot compare the claims against public domain information to challenge the alleged secrecy of such information."  <u>Id.</u> at 69.

Therefore, Moog must "sufficiently identif[y] its source code secrets".  <u>Proofpoint, Inc. v. Vade Secure, Inc.</u>, 2020 WL 836724, *2 (N.D. Cal. 2020).  "Where the plaintiff alleges misappropriation of source code, it should identify the specific lines of code or programs claimed to be secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding."  Graves & Range at 95.

\*     \*     \*

At the preliminary injunction hearing, Moog will be required to precisely identify to [the district judge] the trade secrets which it claims to have been misappropriated - not only to enable him to gauge Moog's likelihood of success as to each alleged secret, but also to facilitate the drafting of a proper order if Moog prevails.  "[I]f a trade secret plaintiff fails to provide a precise identification of its alleged secrets, a court will not be able to issue an appropriately specific order against the defendant."  Graves & Range at 82; <u>Corning Inc. v. PicVue Electronics, Ltd.</u>, 365 F.3d 156, 158 (2d Cir. 2004) ("The preliminary injunction entered by the district court does not identify the trade secrets . . . . It is thus not possible to ascertain from the four corners of the order precisely what acts are forbidden").

Fairness requires that Moog provide defendants withat (sic) specific identification sufficiently in advance of the hearing to enable them to prepare a defense - for "without a precise identification, the defense lacks the information it needs to conduct public domain research and challenge the alleged secrecy of the information at issue".  Graves & Range at 74.  Moreover, early identification of the trade secrets at issue will enable this court and the parties "to set the proper bounds and scope of discovery", thereby avoiding "burdensome and expensive discovery into irrelevant areas".  <u>Id.</u>

Dkt. 205.

**IV.**
**<u>DISCUSSION</u>**

**A.     MOOG'S IDENTIFICATIONS**

The primary issue here is whether Moog's Trade Secret Identifications complied with Judge McCarthy's July 27, 2022 Order, and thus whether it is appropriate for this Court to lift the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   2:22-cv-09094-GW (MAR)                                                    Date:  June 14, 2023

Title:      <u>Moog Inc. v. Skyryse, Inc. et al.</u>

discovery stay at this time.  Skyryse also asks for sanctions in the form of costs and fees, and requests that, due to Moog's dilatory tactics, the discovery stay should be lifted as to Skyryse but should remain in place as to Moog.

As an initial matter, the Court notes that both in the briefing and at the hearing, the parties appeared to be talking about completely different documents.  Moog submits two (2) Trade Secret Identifications—one for Controlled Unclassified Information ("CUI") trade secrets, and one for non-CUI trade secrets.  Moog also provided an excel spread sheet which lists the files that contain the trade secret information and divides them into different pages for each trade secret.  Skyryse, however, provides a list of the files they were given from Moog in an entirely different format; the list Skyryse contends that they received are not broken up by trade secret, as Moog's excel sheet does.  The list of files takes up 2,816 pages in this motion, with approximately 134 files listed to each page (equating to approximately 377,344 files).  In response, Moog supplied screen shots of the excel spreadsheet it gave Skyryse, clearly listing the files and separating them by trade secret.  Still, Moog only provides a screenshot for the first page of each program, which lists at most 28 files per page, and thus gives the reader no indication that there might be 50,000 files contained in any particular subset of the spreadsheet.  It is unclear whether there was some technical issue that caused Skyryse to receive something totally different than what Moog sent.  However, the Court assumes that in the process of compiling the joint stipulation, any such issue would have been cleared up.  The Court does not appreciate either party's attempt to misrepresent the form of the documents at issue.

**B.    THE EFFECT OF JUDGE MCCARTHY'S ORDER**

Next, the parties seem to argue over what exactly Judge McCarthy ordered Moog to do, with respect to identifying their trade secrets with particularity.  For example, the court ordered:

> Moog must "sufficiently identif[y] its source code secrets".  <u>Proofpoint, Inc. v. Vade Secure, Inc.</u>, 2020 WL 836724, *2 (N.D. Cal. 2020).  "Where the plaintiff alleges misappropriation of source code, it should identify the specific lines of code or programs claimed to be secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding."  Graves & Range at 95.

Dkt. 205 at 2.  Skyryse argues that this portion of the order required Moog to print out any source code identified as trade secrets on numbered paper and identify the misappropriated lines.  Moog argues that the order did not require this procedure explicitly, but was merely describing how Moog might go about sufficiently identifying its secrets.

The Court interprets Judge McCarthy's order to require Moog to identify their trade secrets in compliance with the applicable legal guidance.  Reading the order in full supports this as the most

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  2:22-cv-09094-GW (MAR)                                              Date:  June 14, 2023

Title:     <u>Moog Inc. v. Skyryse, Inc. et al.</u>

reasonable interpretation.  As Moog noted at the hearing, the original purpose of the order was to resolve the discovery dispute concerning Moog's allegedly inadequate response to Skyryse's interrogatory seeking identification of the trade secrets.  Judge McCarthy found that limited discovery was necessary to allow Moog to identify its trade secrets, which was in turn necessary to permit a motion for a preliminary injunction to proceed and for the case to proceed to discovery efficiently.  He therefore ordered discovery stayed except for what was necessary to allow Moog to identify their trade secrets, and then generously included ample legal guidance to allow Moog to provide a sufficient identification.  It does not appear that the purpose of the order was to outline any specific requirements for Moog's trade secret identifications.

It follows that, with respect to the specific dispute cited above, Judge McCarthy was not requiring Moog to identify any source code secrets line-by-line.  The fact that the quoted language uses the term "for example" strongly supports this interpretation.  Indeed, the Ninth Circuit does not require line-by-line identification in all cases.  <u>See</u> <u>WeRide Corp. v. Kun Huang</u>, 379 F. Supp. 3d 834 (N.D. Cal. 2019) (citing <u>Integral Dev. Corp. v. Tolat</u>, 675 F. App'x 700, 703 (9th Cir. 2017)), <u>modified in part,</u> No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019).

As such, the Court does not find Moog violated the order simply by failing to identify any source code secrets line-by-line.  The order merely appeared to require Moog to identify its trade secrets with sufficient particularity, as the law typically requires.  Because the case has been transferred to this district, the appropriate standards to apply are those of the Ninth Circuit.  As discussed below, it does not appear that Moog has identified all of their trade secrets with sufficient particularity under Ninth Circuit law.

**C.     WHETHER MOOG'S SECRETS HAVE BEEN IDENTIFIED WITH SUFFICIENT PARTICULARITY UNDER NINTH CIRCUIT LAW**

    **1.     Law**

18 USC §1839 defines a trade secret as:

[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

    (A) the owner thereof has taken reasonable measures to keep such information secret; and

    (B) the information derives independent economic value, actual or potential,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:22-cv-09094-GW (MAR) | Date: June 14, 2023 |
| Title | *Moog Inc. v. Skyryse, Inc. et al.* | |

from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

Under the Defend Trade Secrets Act ("DTSA"), "[t]rade secrets cannot be vague concepts." Calendar Research LLC v. StubHub, Inc., No. 17-cv-04062-SVW-SS, 2020 WL 4390391, at *6 (C.D. Cal. May 13, 2020). Rather, a plaintiff must "identify the specific set of 'methods, techniques, processes, procedures, programs, or codes'" that comprise a trade secret. Id. (quoting 18 U.S.C. § 1839(3)). "'Reasonable particularity' has been defined as a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." BioD, LLC v. Amnio Tech., LLC, No. 2:13-cv-1670-HRH, 2014 WL 3864658, at *5 (D. Ariz. Aug. 6, 2014) (quoting Hill v. Best Med. Int'l, Inc., No. 09-1194, 2010 WL 2546023, at *3 (W.D. Pa. June 24, 2010)). A plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Vendavo, Inc. v. Price f(x) AG, No. 17-cv- 06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citation omitted). "[W]hether a plaintiff has sufficiently disclosed its trade secrets is a fact-specific question to be decided on a case-by-case basis." Vesta Corp. v. Amdocs Mgmt. Ltd., 147 F. Supp. 3d 1147, 1155 (D. Or. 2015) (internal quotations and citation omitted).

To support its identifications Moog cites to Integral Dev. Corp. v. Tolat, No. C 12-06575 JSW, 2015 WL 674425, at *4 (N.D. Cal. Feb. 12, 2015), a case similar to the instant one. In Integral Dev. Corp., former employee stole millions of files and then deleted the evidence. Id. As such plaintiff had to look through defendants files to piece together the trade secrets that were stolen. Id. The Ninth Circuit held that in describing the categories of documents that contained trade secret material, and identifying those files that contained trade secret material, the plaintiff had "identified specific key aspects" of its trade secrets and "sufficiently identified the information it alleges is a trade secret." Integral Dev. Corp. v. Tolat, 675 F. App'x 700, 703 (9th Cir. 2017).

2. **Analysis**

    i. **Trade secrets that appear to be identified with reasonable particularity**

Moog identifies CUI TSID 1 and non-CUI TSID 1–8 in narrative form. Moog further breaks up each trade secret into component parts and includes diagrams. Along with the narrative Moog also provides a list of the files that contain the specific trade secret and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | |
|---|---|---|
| Case No. | 2:22-cv-09094-GW (MAR) | Date: June 14, 2023 |
| Title: | _Moog Inc. v. Skyryse, Inc. et al._ | |

the divided out sub-parts.

It appears to the Court that this identification is similar to identifications that other courts in the Ninth Circuit have found sufficient. See WeRide Corp., 379 F. Supp. 3d at 846–47 (finding trade secrets were sufficiently identified where party "describe[d] the functionality of each trade secret", "name[d] numerous files in its code base . . . that reflect the source code specific to each alleged trade secret", and identified unique algorithms as a trade secret while providing factors developers consider in creating algorithms). Certainly, the fact that millions of files were misappropriated, and therefore thousands of files may be identified on certain trade secrets, is by no fault of Moog. See Motorola, Inc. v. Lemko Corp., No. 08 C 5427, 2012 WL 74319, at *16 (N.D. Ill. Jan. 10, 2012) (allowing trade secret identification based on 375,000 files identified). What matters is that the identifications are sufficient to allow the other party to understand what is being alleged as a trade secret.

In highly technical matters such as this, it can be difficult for those not versed in the relevant jargon to identify precisely what is being described, even if it is described sufficiently for those knowledgeable in the particular field. This Court is admittedly no expert in aerospace engineering. Indeed, in similar cases, courts are often assisted by expert testimony in determining whether trade secrets have been sufficiently identified as to allow a person knowledgeable in the field to be put on notice of the contours of the trade secrets. See, e.g., Phx. Techs., Ltd. v. DeviceVM, Inc., No. 09-4697-EDL, 2010 WL 84884 (N.D. Cal. Mar. 17, 2010). As such, while the Court finds that Moog's CUI TSID 1 and non-CUI TSID 1–8 appear to have been identified with sufficient particularity to put Defendants on notice of the alleged trade secrets, the Court will give Moog an opportunity to supplement the identifications and accompany them with an expert declaration. The Court will discuss the details below.

        ii.      **Boiler plate narrative does not meet the reasonable particularity standard.**

Moog's CUI TSID 2–5 lists an identical one paragraph trade secret description, except for the program names. The narrative for each is as follows:

> Moog provides the flight control system (e.g., actuation, electronics, and software) for the [PROGRAM NAME] vehicle. The corresponding misappropriated trade secret material includes actuator design and schematics, actuator models, system performance characteristics, system models, safety and reliability analysis reports, automated test procedure source code, and system specifications.
>
> This trade secret is reflected in the files identified in Exhibit A (tab "[PROGRAM NAME]").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-09094-GW (MAR)                                         Date:  June 14, 2023

Title:       <u>Moog Inc. v. Skyryse, Inc. et al.</u>

Dkt. 473-2 at 18–19.

Similarly, Moog's non-CUI TSID 9–20, while not precisely identical, provide only a small paragraph for each identified trade secret that lists categories it claims corresponds to misappropriated trade secret material.

These sparse and boilerplate narrative responses provided in CUI TSID 2–5 and non-CUI TSID 9–20 do not appear to provide any reasonable particularity.  Indeed, as to the CUI TSID 2–5, the Court cannot even see a distinction between the programs beyond their names, let alone what sets anything within them apart as a trade secret.

Moog points to the individual files separated out by program on its excel spreadsheet.  However, here, in contrast to the trade secrets identified in the above section, Moog does not "identify specific key aspects" of the trade secrets with any particularity.  <u>See</u> <u>Integral Dev. Corp.</u>, 675 F. App'x at 703; <u>see also</u> <u>Soc. Apps., LLC v. Zynga, Inc.</u>, No. 4:11-CV-04910, 2012 WL 2203063 YGR, at *4 (N.D. Cal June 14, 2012) ("description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret").  Thus, identifying lists of hundreds (sometimes thousands) of files by category does not provide the particularity required in trade secret identification.  <u>See</u> <u>Medidata Sols., Inc. v. Veeva Sys., Inc.</u>, No. 17-cv-589(LGS), 2022 WL 585734, at *1 (S.D.N.Y. Feb. 25, 2022) ("[I]t is neither [defendant's] nor the Court's burden to ascertain whether any identifiable trade secret evidence can be gleaned from tens of thousands of pages of documentation.")

As such, Moog's CUI TSID 2–5 and non-CUI TSID 9–20 do not appear to have been identified with reasonable particularity and must be amended.

### iii.      Non-CUI TSID 21–24 "other" category

Here, Moog provides a category of "other" trade secrets.  While their narratives are short, some seem to perhaps be specific enough, provided that the files themselves give further particularity.  However, instead of providing a tab for each trade secret in the "other" category like it does for the other identified trade secrets, here it puts them all together in one "other" category.  Dkt. 473-4 at 49.  Therefore, from the filings this Court is unable to ascertain which files correspond to which trade secret.  Under these circumstances, the Court cannot find these secrets have been identified with sufficient particularity.[2]

---

[2] Moog asserted at the hearing that the spreadsheet they provided Skyryse does divide the sheet into further subtopics.  However, this is not what the Court was provided, and as such, the court cannot ascertain what files correspond to which secret within the "other" category.  Dkt. 473-4 at 49.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-09094-GW (MAR)                                           Date:  June 14, 2023

Title:     *Moog Inc. v. Skyryse, Inc. et al.*

Likewise, the "Reid Raithel" download narrative, non-CUI TSID 24, seems to suggest files that make up multiple categories of trade secrets.  However, the narrative does not provide particularity to any specific trade secret, or where support for a particular trade secret might be found within the 27,118 files listed for this "category."

As such, Moog's non-CUI TSID 21–24 were not identified with reasonable particularity and must be amended.

### iv.   Kim download

This trade secret identified as CUI TSID 6 refers to the files that might be found on Defendant Misook Kim's laptop once Moog has access to them.  Moog has included them here because Moog has a list of the file names but does not have access to view the actual contents of the files.  As such, Moog "reserves all rights to amend this identification to include additional files from the Ivanti log that reflect trade secret material, including if Moog is able to obtain access to files that have been wiped by Kim." Dkt. 473-2 at 19–20.

The Court finds this secret has not been identified with sufficient particularity.  However, the Court acknowledges that Moog has not had the opportunity to see all of the relevant files.  If Moog has access to the Kim downloads now, Moog is invited to include these secrets in its amended identifications.  If Moog is still waiting on access to those files by the time they are required to resubmit their identifications, then, per Judge Wu's instruction at the January 23, 2023 scheduling conference, Moog will only be allowed to add those trade secrets if Moog can meet the "good cause" requirement under Rule 16.  Dkt. 346 at 16–17.

## V.
## SKYRYSE'S REQUEST FOR SANCTIONS

Skyryse requests sanctions for Moog's non-compliance with the court order.  Federal Rule of Civil Procedure 37 allows for many types of sanctions in this scenario.  However, while Moog as not sufficiently identified its trade secrets, the Court does not find any evidence that their attempt was made in bad faith, or that any delay was dilatory.  Furthermore, this Motion was granted in part and denied in part, showing that each side was warranted in seeking resolution as to some of the TSIDs.  As such, the Court declines to award costs or any other sanctions, and each party will be responsible for its own costs incurred.

Finally, Skyryse asks that the discovery stay, put in place in the July 27, 2022 order, be lifted as to Skyryse, only.  It seems counterintuitive to ask Moog to quickly amend the TSID and at the same time open discovery to allow Skyryse to bombard them with new discovery issues.  The Court thus declines to lift the stay.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:22-cv-09094-GW (MAR) | Date: June 14, 2023 |
| Title: *Moog Inc. v. Skyryse, Inc. et al.* | |

///
///

## VI.
## CONLUSION AND ORDER

Based upon the foregoing reasons, **IT IS THEREFORE ORDERED** that:

(1) Skyryse's Motion is **GRANTED** as to Moog's CUI TSID 2–6 and non-CUI TSID 9–24;

(2) Skyryse's Motion is **DENIED** as to Moog's CUI TSID 1 and non-CUI TSID 1-8;

(3) Moog has **thirty (30) days from this order** to amend its Trade Secret Identification. While the Court did find that some of Moog's trade secrets appeared to have been identified with adequate particularity, Moog is not precluded from adding more detail to those identifications—in fact, they are encouraged to do so. Moog is also invited to, but not required to, file an expert declaration with its Amended Trade Secret Identification, explaining why the trade secret identification meets the particularity requirement;

(4) Skyryse has **twenty-one (21) days from the date Moog files their Amended Trade Secret Identification** to either:

- File any motion challenging the adequacy of the Amended Trade Secret Identification, which **MUST** include a declaration from an expert explaining why the identifications do not meet the particularity requirement. If Moog elects not to file an expert declaration alongside their identification, Moog will then have two (2) weeks from Skyryse's filing to file an opposition and expert declaration in response; **Or**
- File with the Court a motion to lift the discovery stay, with a statement confirming Skyryse will not be challenging the Amended Trade Secret Identification;

(5) Skyryse's request for sanctions is **DENIED**;

(6) Skyryse's request to unilaterally lift the discovery stay as to Skyryse only is **DENIED**;

**IT IS SO ORDERED.**

| | : |
|---:|---|
| **Initials of Preparer** | vv |