UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-9094-GW-MARx | Date | June 13, 2023 |
|---|---|---|---|
| Title | *Moog, Inc. v. Skyryse, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - SUPPLEMENTAL TENTATIVE RULING ON PLAINTIFF MOOG INC.'S MOTION TO ENFORCE COMPLIANCE WITH THE MARCH 11, 2022 STIPULATED TRO (DKT. 25), AND FOR MONETARY AND ADVERSE INFERENCE SANCTIONS FOR CONTEMPT AND SPOLIATION [400]

Attached hereto is the Court's Supplemental Tentative Ruling on Plaintiff's Motion [400] set for hearing on June 29, 2023 at 11:30 a.m.

: 

Initials of Preparer   JG

<u>*Moog Inc. v. Skyryse, Inc. et al*</u>; Case No. 2:22-cv-09094-GW-(MARx)
Supplemental Tentative Ruling on Plaintiff's Motion to Enforce to Enforce Compliance in light of the parties' Joint Report following their Meeting and Conferring on said Motion

I.   **<u>Background</u>**

On March 16, 2023, Plaintiff and Counterdefendant Moog Inc. ("Moog") filed a Motion to Enforce Compliance with the March 11, 2022 Stipulated TRO (Dkt. 25), and for Monetary and Adverse Inference Sanctions for Contempt and Spoliation ("Motion" or "Mot."). *See* Docket No. 400. Defendant and Counterclaimant Skyryse, Inc. ("Skyryse") filed an opposition brief, *see* Opposition to Moog's Motion to Enforce Compliance with March 11, 2022 Stipulated TRO and for Monetary and Adverse Inference Sanctions ("Opp."), Docket No. 453, and Moog filed a reply, *see* Reply in Support of Motion to Enforce Compliance with the March 11, 2022 Stipulated TRO (Dkt. 25), and for Monetary and Adverse Inference Sanctions for Contempt and Spoliation ("Reply"), Docket No. 508.

Prior to the hearing on June 15, 2023, the Court issued a tentative ruling. *See generally* Tentative Ruling, Docket No. 532. The factual and procedural background of this case is summarized in detail in the Court's that Ruling, *see id.*, and therefore is not repeated here. Following the hearing, two issues remain outstanding. First, whether the Motion prompted Skyryse's recovery of the 32 deleted files from Alex Wang's computer, thereby entitling Moog to partial attorneys' fees and costs. Second, whether the parties could resolve Moog's requests for production and/or inspection of various Skyryse electronic devices and data sources. If any disputes remained after meaningfully meeting and conferring, the parties were to submit a joint filing identifying the remaining issues and explaining Moog's and Skyryse's respective positions.

On June 22, 2023, the parties filed a joint report detailing their respective positions on five outstanding issues. *See* Joint Report Regarding Meet and Confer for Moog's Motion to Enforce ("Joint Report"), Docket No. 546. Disputes remain as to whether Moog is entitled to: (1) production of Lori Bird and Reid Raithel's Skyryse-issued laptops; (2) production of Skyryse's Polarion Repository; (3) production of Skyryse's Google Drive Account; and (4) production of Skyryse's "Git" Repository. *See generally id.* In addition, Moog requests additional information on Skyryse's removal of SDTE, sRTOS, and historical checklists from its personnel's devices and e-mail accounts. *Id.* at 18.

## II. Discussion

### A. Attorneys' Fees and Costs

As indicated in the Court's Tentative Ruling, Moog takes exception with the timing of Skyryse's remedial efforts to recover the 32 deleted files from Mr. Wang's computer. *See* Tentative Ruling at 14. Moog alleged that "Skyryse made no attempt to resuscitate [the deleted] files until threatened with sanctions" and that "Skyryse never produced the materials [its expert] used to resuscitate the materials … until after its opposition brief was served and Moog demanded production of the documents." Reply at 23. Given the timing of Skyryse's production of the recovered Mr. Wang files, the Court indicated that it may be inclined to award Moog partial expenses for bringing its Motion pending further argument at the hearing. Tentative Ruling at 14.

At the hearing, the parties presented conflicting timelines regarding Skyryse's recovery efforts of the 32 deleted files. Specifically, the parties disputed when Mr. Wang's laptop and certain volume shadow copies ("VSCs"), which were relied upon by Skyryse's expert to recover the 32 deleted files, became available for Moog's inspection. *See generally* Transcript of June 15, 2023 Hearing ("June 15, 2023 Tr."), Docket No. 542. The Joint Report, however, indicates that the parties were conflating two different issues at the hearing and therefore the Joint Report provides an agreed upon timeline of events to avoid any confusion. *See* Joint Report at 20.

On June 15, 2022, Skyryse produced to the neutral forensics firm, iDiscovery Solutions ("iDS"), an image of Mr. Wang's Skyryse-issued laptop. *Id.* On October 6, 2022, Moog requested access to complete VSCs from the laptops of Ms. Kim, Mr. Pilkington, and Mr. Wang. *Id.* at 21. After a discovery conference where the transferor court advised Moog to narrow its requests for VSCs to what it believed to be most relevant at the time, Moog narrowed its request to one VSC from Ms. Kim's laptop, which Skyryse agreed to provide. *Id.* at 21-22. On April 20, 2023, after Moog's expert, Michael Bandemer, recovered several of the deleted files from four VSCs on Mr. Wang's laptop, Skyryse provided a file listing of privileged documents for iDS to excise from the VSCs and make those same four VSCs available to Moog. *Id.* at 22. On April 27, 2023, iDS confirmed to Skyryse that it had made the four requested VSCs available to Moog. *Id.* However, due to an error by iDS, it initially only provided Moog with access to three of the VSCs. *Id.* On May 11, 2023, iDS provided the fourth VSC relied upon by Mr. Bandemer for Moog's review. *Id.*

While this timeline clarifies any confusion regarding when Mr. Wang's laptop and the VSCs became available for Moog's inspection, the Court still has concerns about Skyryse's

2

remedial efforts in relation to Moog's Motion. On June 14, 2022, Skyryse stated in a filed pleading that 32 of the files deleted by Mr. Wang were not recoverable, despite FTI's attempts to recover those files. *See* Docket No. 156 at 12. Despite being aware that 32 files remained unrecovered in June 2022, it appears that Skyryse failed to take steps to recover these missing files until after Moog's Motion was filed on March 16, 2023. Indeed, at his deposition, Mr. Bandemer admitted that his work to recover the 32 files did not begin until 2023. *See* Declaration of Kazim Naqvi ("Naqvi Decl."), Docket No. 508-1, Ex. D at 39:6-17. Moreover, the four VSCs relied upon by Mr. Bandemer were not made available for Moog's inspection until after Moog's Motion was filed. *See* Joint Report at 21-22. And it was only in Skyryse's April 24, 2023 opposition to Moog's Motion that it was first revealed that Mr. Bandemer was able to recover or match 30 of the 32 deleted files. *See* Opp. at 7.

At the hearing, counsel for Skyryse argued that Moog's Motion did not prompt its recovery efforts. Rather, Skyryse's counsel asserted that "because [Moog's counsel] said they would move for an adverse inference, of course, we redoubled the efforts," so "[t]hat is not in response to the motion, it's in response to them telling us after many months we thought the issue had been resolved through litigation, that it wasn't resolved from their perspective." *See* June 15, 2023 Tr. at 22:18-24. Moog's counsel countered that "the fact that those files were deleted, it should not be that we should have to keep pressing them for them, to making efforts to try to resuscitate them." *Id.* at 23:11-14.

The Court would agree with Moog. The responsibility for addressing Mr. Wang's spoliation and recovering the deleted files has always been Skyryse's. And based on the record before the Court, Skyryse did not take steps to recover the 32 files until it faced Moog's Motion for an adverse inference and other sanctions. "[I]f there is a chance the filing of the motion prompted [Skyryse's] compliance, [Skyryse] should not necessarily be exempted from paying expenses merely because [it] ha[s] complied." Docket No. 484 at 7 (citing *Varney v. Cal. Highway Patrol*, No. 3:11-cv-04193-THE-(JSC), 2013 WL 2299544, at *3 (N.D. Cal. May 24, 2013)). For these reasons, the Court would award Moog $17,425 in attorneys' fees and costs incurred in making the Motion.

  **B. Remaining Production and/or Inspection Requests**

Turning to the remaining disputes identified in the parties' Joint Report, apparently the parties have reached an impasse as to (1) production of Lori Bird and Reid Raithel's Skyryse-

issued laptops; (2) production of Skyryse's Polarion Repository; (3) production of Skyryse's Google Drive Account; and (4) production of Skyryse's Git Repository. *See generally* Joint Report. In its Motion, Moog argued that it was entitled to contempt sanctions because (1) Skyryse has produced large volumes of Moog non-public information after April 1, 2022 and (2) Skyryse has repeatedly used Moog non-public information after March 11, 2022. Mot. at 27-28. As reflected in the Tentative Ruling, the Court determined that "too much uncertainty remains for the Court to conclude that Skyryse was not, at least, substantially complying with the TRO Stipulation in good faith by supplementing its initial April 1, 2022 production." Tentative Ruling at 18. In addition, the Court ruled that it could not "find that the documents purportedly used by Skyryse constitute Moog's non-public information, as opposed to information publicly available on the internet or readily available from third parties, given the parties' factual dispute on this issue." *Id.* at 21. Accordingly, the Court concluded that "granting Moog's Motion and ordering all of its requested sanctions would be premature." *Id.* at 22.

That said, the Court noted its concerns about Skyryse documents that appeared almost word-for-word identical to corresponding Moog documents, and Skyryse's delay in removing the source code for its SDTE and portions of its sRTOS software programs and frameworks from its systems. *Id.* at 21. Additionally, the Court acknowledged Moog's concerns regarding whether its MDTE, eRTOS, and checklists "have been fully wiped from Skyryse's systems," and whether Skyryse had complied with the TRO Stipulation's preservation obligations. *Id.* at 22. Therefore, while granting all of Moog's requests would be premature, the Court ordered the parties to meet and confer to discuss "(1) the issues surrounding Skyryse's preservation measures, (2) the issues surrounding Skyryse's removal of SDTE, sRTOS, and prior checklists from Skyryse's systems, and (3) Moog's production and inspection requests (*i.e.* production of Skyryse-issued electronic devices issued to 15 Skyryse personnel, production of Skyryse's Google Drive Account, etc.)." *Id.*

Despite the Court's determination that "ordering all of its requested sanctions would be premature," *id.*, Moog continues to seek production of (1) Skyryse's entire Polarion Repository into iDS for Moog's review, (2) Skyryse's entire Google Drive Account into iDS for Moog's review, and (3) Skyryse's entire Git Repository into iDS for Moog's review. *See* Joint Report at 9-14. In fact, Moog's current position actually expands on its original request as it previously only demanded "inspection" of Skyryse's Polarion Repository and source code. *See* Mot. at 32. Now,

4

Moog offers in-person inspection of the Polarion and Git Repositories as "a compromise." *See* Joint Report at 10, 16.

The Court, however, would agree with Skyryse that Moog is not entitled to full, unfettered access to these databases/accounts/repositories, in light of the Court's determination that "ordering all of [Moog's] requested sanctions would be premature." Tentative Ruling at 22. Moreover, it appears that these databases/accounts/repositories contain Skyryse's sensitive and confidential business information, such as its software documents and plans and source code, as well as information that may be unrelated to the claims or defenses in this action. Accordingly, as discussed more thoroughly below, the Court would decline to order production of Skyryse's entire Polarion Repository, Google Drive Account, and Git Repository.

      i. *Polarion Repository*

First, Moog seeks production of Skyryse's entire Polarion Repository, which is where Skyryse's software process documents and plans are stored. Joint Report at 9. Moog argues that "[c]omplete access to the Skyryse Polarion Repository is needed to determine to what extent Skyryse personnel are continuing to access and use Moog data." *Id.* Because Skyryse has represented that "it is no longer using Moog's certification documents," Moog avers that it is "entitled to vet this claim" and must do so with "access to the entire Polarion Repository." *Id.* Skyryse counters that it has "already voluntarily produced numerous documents exported from Polarion" and that "the mere fact that Polarion exists is not a basis to produce all of the data it contains to Moog regardless of relevance, burden, or proportionality." *Id.* at 10.

The Court would agree with Skyryse. Just because Skyryse uses the Polarion Repository to store its software process documents and plans, does not entitle Moog to full access of all of its contents, without any limitations as to scope or relevance. At this stage of the proceedings, the Court would agree with Skyryse's proposal for the parties to meet and confer on a set of search terms that will enable Skyryse to conduct a search for relevant material. Skyryse has already agreed that "[i]f, after reviewing the search results, Moog can articulate a specific need for other specific, identifiable relevant information from Polarion, Skyryse would produce it." *Id.* at 11. Therefore, the Court would order the parties to meet and confer regarding a set of search terms to run across the Polarion Repository.

      ii. *Google Drive Account*

Second, Moog seeks production of Skyryse's entire Google Drive Account so that it can

"understand[] the full nature and scope of Skyryse's use and disclosure of Moog data." *Id.* at 12. In an "effort to reach a compromise," Moog stated that "it is open to Skyryse removing from its production of its Google Drive Account any portions or folders which: 1) have no relation to flight control and have never stored any data or documents related to flight control; or 2) were never accessed by Hummingbird personnel, any former Moog employee, or [certain] Skyryse personnel." *Id.* However, Skyryse would have to "identify any of these portions, including by providing the portion/folder names and their contents generally" for Moog "to consider removing these portions from production." *Id.*, Ex. 3 at 6. Skyryse counters that access to its "entire, enterprise-wide Google Drive … would invariably include information unrelated to the claims or defenses in this case" and that "[c]ounsel's speculation that some portions of Skyryse's Google Drive *might be* relevant is not a sufficient basis to demand 'full, unfettered access' to the entire repository." *Id.* at 13. Instead, Skyryse "is willing to run an appropriate set of search terms over any Google Drive folders shared with Hummingbird personnel, review the search hits, and produce relevant, non-privileged information." *Id.*

The Court would agree with Skyryse. The TRO Stipulation does not entitle Moog to "full, unfettered access" to Skyryse's *entire* Google Drive Account, especially since Moog has identified only a single Google Drive folder that Mr. Pilkington purportedly shared with Hummingbird employees. *See id.*, Ex. 3 at 6 (citing Docket Nos. 400-3 at ¶¶ 50-35 & 400-5 at ¶¶ 101-109). Accordingly, the Court would order the parties to meet and confer regarding a set of search terms to run across the Google Drive Account.

      iii.    *Git Repository*

Next, Moog seeks production of Skyryse's entire Git Repository, which stores its flight control source code. Joint Report at 14. Moog argues that it "cannot vet" Skyryse's claim that "Moog's data has been removed from its source code repositories" "unless and until it has an opportunity to inspect the entirety of Skyryse's source code repositories." *Id.* at 15. Skyryse counters that "Moog refuses to focus its demands on source code that may actually relate to the subject matter of this litigation." *Id.* at 16. Skyryse contends that it "has already produced all of its source code from the Git [R]epository that was accessed by Ms. Kim and Mr. Pilkington, the Individual Defendants whom Moog alleges misappropriated Moog's source code," including "source code worked on by the software teams Ms. Kim and Mr. Pilkington worked with" at

Skyryse. *Id.* at 16-17.[1] Skyryse objects to Moog's "sweeping demand to examine all of the source code in the *entirety* of Skyryse's source code repository—knowing that it contains some of the company's most valuable, proprietary, and confidential data that has nothing to do with this suit— without any showing of relevance or proportionality." *Id.* at 17.

Again, the Court would agree with Skyryse. The TRO Stipulation does not entitle Moog to "full, unfettered access" to Skyryse's *entire* source code, without any limitations as to scope or relevance. Nor does the TRO Stipulation entitle Moog to the entirety of Skyryse's source code repository so that it can "vet" Skyryse's claim that Moog data has been removed from its source code repositories. Nevertheless, in the Joint Report, Moog argues that "[t]he fact that Skyryse only produced code accessed by [Ms.] Kim and [Mr.] Pilkington is not appropriate" because Skyryse's representations were not limited to code accessed by Ms. Kim and Mr. Pilkington and Skyryse's possession, use, and disclosure of Moog data "goes far beyond [Ms.] Kim and [Mr.] Pilkington." *Id.* at 16-17. To combat these concerns, the Court would order the parties to meet and confer on a set of search terms, and for Skyryse to produce any responsive, non-privileged source code for inspection according to the parties' agreed-upon protocol.

With respect to the laptops, Moog's initial request was for 15 laptops to be imaged and produced, *see* Mot. at 31, and it was the Court's suggestion that narrowing the request to two laptops would be a reasonable accommodation, *see* Tentative Ruling at 23 n.19. Following this suggestion, Moog now requests the production of Skyryse-issued laptops to Ms. Bird and Mr. Raithel. *See* Joint Report at 2-5.

The Court would find that a sufficient showing has been made as to these two laptops. For example, Mr. Raithel purportedly copied 27,118 Moog files from his Moog laptop to a USB drive just before joining Skyryse. *See* Reply at 10. While Skyryse contends that Mr. Raithel did not plug his USB device into his Skyryse laptop, *see* Joint Report, Ex. 2 at 2 n.1, Moog argues this conclusion is faulty because Skyryse's expert only reviewed the daily-out log to see whether the one specific USB device identified by Moog had been connected at the time the daily log recorded, *see* Reply at 10. However, according to Moog, daily-out logs "often do not show evidence of files copied from a USB thumb drive or external hard drive." Joint Report, Ex. 3 at 3. Because further analysis is needed, a physical inspection is warranted.

---

[1] Skyryse notes that "[t]hat code has been available for months for Moog's experts to inspect" and that "Moog's experts have been inspecting a recent version." *Id.* at 17.

Regarding Ms. Bird, on November 17, 2022, she produced approximately 90 documents in response to a subpoena, which purportedly indicated that she "frequently possessed, received, accessed, transmitted, and used Moog" documents and data during her tenure at Skyryse. Mot. at 17. In addition, in her responses to the subpoena, Ms. Bird stated that "several categories of documents responsive to Moog's subpoena would in the possession of Skyryse through [her] Skyryse-issued laptop and/or e-mail account." *Id.* Thereafter, on February 17, 2023, Skyryse produced 2,920 documents from Ms. Bird and indicated that this production was from Ms. Bird's personal devices. *Id.* at 20.[2] Moog avers that the "[t]iming of this production, only after Skyryse received multiple productions from third parties implicating Ms. Bird, is highly concerning." Joint Report, Ex. 3 at 3. The Court would agree.

While the Court acknowledges Skyryse's privacy concerns with turning over these laptops, Moog asserts that its access to these two laptops would not be unrestricted as its review would be subject to the iDS protocol. *Id.*, Ex. 3 at 3. Because Moog has made a sufficient showing for these two laptops, the Court would order Skyryse to produce complete forensic images of Ms. Bird and Mr. Raithel's Skyryse-issued laptops to iDS within 30 days, after conducting a privilege review.

Finally, the Court ordered the parties to meet and confer on "issues surrounding Skyryse's removal of SDTE, sRTOS, and prior checklists from Skyryse's systems." Tentative Ruling at 22. During meet and confer, Moog purportedly asked Skyryse to confirm whether Skyryse has taken any efforts beyond its central source code repository to cut-off access to SDTE, portions of sRTOS, and its historical checklists, and Skyryse's counsel purportedly stated that he had nothing to add beyond Mr. Koo's testimony. Joint Report at 18. In the Joint Report, Skyryse asserts that it "took steps to ensure that any code arguably related to SDTE was removed from its source code repository" and "removed from its sRTOS source code any files or directories that arguably constitute Moog's proprietary, confidential, or non-public information." *Id.* at 19. In addition, Skyryse confirmed that it has "instructed its employees to refrain from using any information (which would include source code, templates, and checklists) that could arguably constitute Moog's non-public information" and has also "instructed its employees to inform counsel if they identify any information that could arguably constitute Moog's proprietary, confidential, or non-

---

[2] In the Joint Report, Skyryse clarifies that its e-discovery vendor mistakenly indicated that the produced documents relating to Ms. Bird were collected from personal devices and records. Joint Report at 8 n.3. In fact, Skyryse concedes that some of the documents were collected from a Skyryse-issued computer. *Id.*

public information." *Id.* at 19. While Moog requests that "the Court consider Skyryse's remedial and preservations efforts, or lack thereof, in ruling on Moog's pending Motion," *id.* at 18, it appears that Skyryse is complying with its obligations under the TRO Stipulation.

### III. Conclusion

Based on the foregoing discussion, the Court would **GRANT IN PART** and **DENY IN PART** the Motion.