UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-9094-GW-MARx | Date | June 28, 2023 |
|---|---|---|---|
| Title | *Moog, Inc. v. Skyryse, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFF AND COUNTER-DEFENDANT MOOG INC.'S MOTION FOR LEAVE TO AMEND TO FILE AMENDED COMPLAINT [490]

Attached hereto is the Court's Tentative Ruling on Plaintiff's Motion [490] set for hearing on June 29, 2023 at 11:30 a.m.

: 

Initials of Preparer    JG

<u>*Moog Inc. v. Skyryse, Inc. et al*</u>; Case No. 2:22-cv-09094-GW-(MARx)
Tentative Ruling on Motion for Leave to File Amended Complaint

I. <u>Background</u>

   A. **Factual & Procedural Background**

On March 7, 2022, Plaintiff and Counterdefendant Moog Inc. ("Moog") initiated this action against Defendant and Counterclaimant Skyryse, Inc. ("Skyryse") and Defendants Robert Alin Pilkington and Misook Kim (the "Individual Defendants") in the Western District of New York ("WDNY"), asserting eleven causes of action: (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (against all Defendants); (2) misappropriation of trade secrets (against all Defendants); (3) breach of fiduciary duty and duty of loyalty (against the Individual Defendants); (4) aiding and abetting breach of fiduciary duty (against Pilkington); (5) unfair competition (against Skyryse); (6) conspiracy (against all Defendants); (7) breach of contract (against Skyryse); (8) breach of contract (against the Individual Defendants); (9) tortious interference with prospective economic advantage (against all Defendants); (10) unjust enrichment (against all Defendants); and (11) imposition of constructive trust (against all Defendants). *See* Complaint ("Compl."), Docket No. 1. This action arises from Skyryse's and the Individual Defendants' purported "coordinated scheme" to "misappropriate valuable confidential, proprietary, and trade secret information by way of stealing it, and further recruit swaths of Moog's valuable employees to use that misappropriated information." *Id.* ¶ 4. In December 2022, this action was transferred to this District. *See* Docket No. 298.

On April 14, 2023, the Court granted in part and denied in part the Individual Defendants' motion to dismiss, whereby it dismissed Counts Nine and Ten with leave to amend (the "MTD Order"). *See* Docket No. 439. On April 19, 2023, the Court issued a scheduling order stating that Moog's deadline to amend its complaint was May 10, 2023, and that any "further amendments must be made by motion under Rule 16." *See* Docket No. 446. On April 27, 2023, the parties filed a joint stipulation, whereby the parties agreed that instead of Moog filing an amended pleading solely in response to the leave granted by the Court in its MTD Order, Moog could file a more comprehensive motion for leave to amend which responded to the Court's MTD Order but also included additional amendments sought by Moog. *See* Docket No. 461. The Court granted the parties' joint stipulation on May 1, 2023. *See* Docket No. 466.

Now before the Court is Moog's motion to amend the complaint and file a first amended

complaint. *See* Moog's Motion for Leave to File Amended Complaint ("Motion"), Docket No. 490. In filing the proposed first amended compliant ("Proposed FAC"), Docket No. 490-2, Moog primarily seeks to drop two causes of action, add two causes of action, and modify two existing causes of action. *See generally* Proposed FAC. Skyryse opposes the Motion. *See* Skyryse's Opposition to Moog's Motion for Leave to File Amended Complaint ("Opp."), Docket No. 509. The Individual Defendants partially joined Skyryse's opposition. *See* Individual Defendants' Partial Joinder, Docket No. 510.[1] Moog filed a reply. *See* Docket No. 537.

### B.  Proposed Amendments to Complaint

Moog seeks to add various substantive allegations in the Proposed FAC. *See* Mot. at 9-10. In terms of amendments to the causes of action, the Proposed FAC seeks to:

- Remove the causes of action for Misappropriation of Trade Secrets (Common Law) (previously Count 2 in the original complaint) and Tortious Interference with Prospective Economic Advantage (previously Count 9);
- Add Kim as a defendant to the existing cause of action for Aiding and Abetting Breach of Fiduciary Duty;
- Conform Moog's existing cause of action for Unfair Competition such that it is asserted under California's Unfair Competition Law (Bus. & Prof. Code §§ 17200 *et seq.*);
- Add a cause of action for Conversion against all Defendants; and
- Add a cause of action for Breach of the Implied Covenant of Good Faith and Fair Dealing against Skyryse only based on two non-disclosure agreements ("NDAs") that Moog and Skyryse entered into in 2018 and 2019.

*Id.* at 10.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" *Eminence Cap., L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051

---

[1] The Individual Defendants join in Skyryse's arguments in opposition to Moog's proposed amendment to add a claim for conversion against all Defendants. *Id.* at 2. The Individual Defendants, however, do not take a position on Skyryse's arguments related to Moog's proposed claim for breach of the implied covenant of good faith and fair dealing against Skyryse. *Id.* at 2 n.1.

(9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). District courts in the Ninth Circuit consider a motion for leave to amend under five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) the futility of amendment, and (5) whether the plaintiff has previously amended his or her complaint. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). "The party opposing amendment bears the burden of showing prejudice, unfair delay, bad faith, or futility of amendment." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, No. 2:08-cv-02068-PSG-(FFMx), 2009 WL 650730, at *2 (C.D. Cal. Mar. 12, 2009) (citing *Eminence Cap.*, 316 F.3d at 1052; *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)). If the deadline to amend the pleadings has expired and a scheduling conference has already occurred, the moving party must first demonstrate "good cause" for amending the scheduling order pursuant to Federal Rule of Civil Procedure 16(b).

**III. Discussion**

Skyryse opposes Moog's Motion, focusing entirely on the futility of the proposed amendments to add a common law conversion claim and an implied covenant of good faith and fair dealing claim. Opp. at 7.[2] Because Skyryse does not oppose Moog's other proposed amendments, *see* Section I.B, *supra*, the Court would **GRANT** Moog's Motion as to those proposed changes.

A court may deny leave to amend "where the amendment would be futile ... or where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Skyryse first argues that Moog's proposed conversion claim is preempted by the California Uniform Trade Secrets Act ("CUTSA"). Opp. at 9. Next, Skyryse argues that Moog's implied

---

[2] Skyryse did not respond to Moog's other Rule 15 arguments (*i.e.* bad faith, undue delay, prejudice to the opposing party, and whether Moog has previously amended its complaint). *See generally* Opp. The Court interprets this failure to respond to arguments on the merits as concession of the arguments. *See In re Online DVD Rental Antitrust Litig.*, No. 4:09-md-02029-PJH, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) (holding that, absent unusual circumstances, failure to respond to argument on merits "viewed as grounds for waiver or concession of the argument").

3

covenant claim fails as a matter of law because it arises from either: (1) the hiring of Moog's at-will employees, a prohibition that cannot be fairly inferred from the terms of the parties' NDAs, or (2) the alleged theft and misuse of Moog's purported trade secrets and other data, rendering it entirely duplicative of Moog's breach of contract (and trade secret) claims. *Id.* at 15. The Court will address each argument in turn.

### A.   Conversion Claim

As a preliminary matter, Moog and Skyryse dispute whether California law or New York law should apply to Moog's proposed conversion claim. *Compare* Opp. at 7, *with* Reply at 3. Because this case was transferred from the Western District of New York pursuant to 28 U.S.C. § 1404(a), *see* Docket No. 297, the Court therefore applies the substantive law, including choice-of-law rules, of New York to Moog's claim. *Van Dusen v. Barrack,* 376 U.S. 612, 639 (1964) ("A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."); *Newton v. Thomason*, 22 F.3d 1455, 1459 (9th Cir. 1994) ("Because the case was transferred under 28 U.S.C. § 1404(a) … we apply the choice-of-law rules of [the transferor forum]"). New York choice of law requires the Court to first analyze whether a true conflict exists. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001).

A fellow California district court has analyzed this issue and the Court finds its reasoning persuasive. *See Macquarie Grp. Ltd. v. Pac. Corp. Grp., LLC*, No. 3:08-cv-02113-IEG-(WMCx), 2009 WL 539928, at *11 (S.D. Cal. Mar. 2, 2009). In *Macquarie*, the court held that the plaintiff's conversion claim was governed by New York law, following a transfer under 28 U.S.C. § 1404(a), "because there [wa]s no[] conflict between the two potential laws." *Id.* The court reasoned that:

> The elements of conversion in California are: (1) plaintiff's right of possession; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *Burlesci v. Peterson*, 68 Cal.App.4th 1062, 80 Cal.Rptr.2d 704 (1998). The elements of conversion in New York, (1) the plaintiff's right to possession, (2) intent of the defendant, and (3) defendant's interference with plaintiff's property rights to the exclusion of plaintiff's rights. *Meese v. Miller,* 79 A.D.2d 237, 436 N.Y.S.2d 496 (N.Y.App.Div., 1981). A New York court would apply New York conversion law.

*Id.* Other courts have found that there is no actual conflict between New York's law of conversion and that of California. *See, e.g.*, *R.B. Dev., Co., Ltd. v. Tutis Cap. LLC*, No. 1:12-cv-01460-CBA-(SMGx), 2018 WL 7076023, at *7 (E.D.N.Y. Nov. 14, 2018) ("Applying the conversion laws of

4

California … would not change the conversion liability determinations for defendants.").

In Skyryse's opposition brief, it fails to analyze whether a conflict exists between the conversion laws of New York and California. Instead, Skyryse focuses solely on which state has a greater interest in the dispute. Opp. at 7. The Court, however, need not reach this step if there is no conflict of law.

Nevertheless, one district court decision from the Southern District of New York adds an interesting wrinkle to this inquiry. *See Medidata Sol., Inc. v. Veeva Sys., Inc.*, No. 1:17-cv-00589-LGS, 2021 WL 467110, at *12 (S.D.N.Y. Feb. 9, 2021).[3] In *Medidata*, the court concluded than an "'actual conflict' exist[ed] between New York and California law as to the viability of Medidata's common law claims" because "New York law does not preempt non-contract claims arising from the same operative facts as a trade secret misappropriation claim, while California does." *Id.* Medidata conceded that its common law claims were preempted by CUTSA "to the extent those claims rely on existence of the Trade Secrets." *Id.* Therefore, the court concluded that there was "an actual difference between New York and California law as to these claims" "[b]ecause application of California law would preclude consideration of" Medidata's common law claims. *Id.*

While Moog disputes that its conversion claim is preempted by arguing that it is "predicated on separate confidential and non-trade secret information," Reply at 7, this goes to the heart of the inquiry. If Moog's conversion claim is predicated on trade secrets, then CUTSA would presumably preempt its claim under California law, but not under New York law. As in *Medidata*, "an actual difference between New York and California law" exists as to Moog's conversion claim because "application of California law would preclude consideration of" its claim. 2021 WL 467110, at *12. Accordingly, the Court would find that a conflict exists here due to the possibility of preemption under California law.

The next question in the choice-of-law analysis is whether California or New York has a greater interest in Moog's conversion claim. "In trade secret cases the Second Circuit and its district courts have often used the locus of the misappropriation to determine the locus of the tort and the state with the greatest interest." *Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*, 955 F.

---

[3] While Moog cites to *Medidata* for the proposition that "New York law does not preempt non-contract claims arising from the same operative facts as a trade secret misappropriation claim," Reply at 6, it ignores or overlooks the relevant choice-of-law analysis conducted by the *Medidata* court.

Supp. 2d 247, 254 (S.D.N.Y. 2013); *see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (applying New York law because "the misappropriation, if any, apparently took place in New York"); *Fedders Corp. v. Haier Am. Trading, LLC*, No. 1:00-cv-05583-JSM, 2002 WL 519733, at *4 (S.D.N.Y. Apr. 4, 2002) (applying Illinois law "because the actual misappropriation, if any, took place in Illinois"); *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 720 (S.D.N.Y. 2002) (applying Israeli law to "unfair competition" claims where all "acts" complained of took place in Israel).

While Moog is headquartered in New York, the majority of the alleged misappropriation occurred in California and Moog identifies no specific injuries that took place in New York. In fact, the Proposed FAC states that Defendants "committed the torts alleged … within the state [of California] and that the "contracts at issue were performed at least partially in California." Proposed FAC ¶ 19. Moog alleges that Skyryse had "its employees steal approximately 1.4 million files from Moog without authorization." *Id.* ¶ 322. By and large, this happened in California. For example, Moog alleges that before Kim left her position in Moog's Torrance, California office, she "copied a significant volume of data from Moog's internal servers to an external hard drive." *Id.* ¶¶ 160-162. In addition, although this is not specifically alleged in the Proposed FAC, Moog conceded that "Pilkington copied Moog files from his Moog-issued laptop (located in California) to his personal USB drive (also located in California)." *See* Docket No. 239 at 2-3. As the transferor court recognized, "some of the alleged copying that is at the heart of many of Moog's claims occurred in California, where all the defendants reside." *See* Docket No. 297 at 27.

In its reply brief, Moog argues (and the Proposed FAC alleges) that the data copied by at least Kim was stored on Moog's New York servers. *See* Reply at 4 n.2; *see also* Proposed FAC ¶¶ 57, 67, 160. However, as the transferor court held, the fact that Kim purportedly downloaded data from those New York-based servers "does not change the fact that Moog's claims predominately hinge on conduct that occurred in California." *See* Docket No. 297 at 28. Because the actual misappropriation, if any, apparently took place in California, the Court would find that California has the greater interest in this dispute and that California law governs.

"CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" *Nelson Brothers Pro. Real Est. LLC v. Jaussi*, No. 8:17-cv-00158-DOC-(JCGx), 2017 WL 8220703, at *6 (C.D. Cal. Mar. 23, 2017) (quoting *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010)).

6

"Common law claims premised on the wrongful taking of information which does not qualify as a trade secret are also superseded, unless the plaintiff identifies some law which confers the plaintiff with property rights in the information." *Id.* (citing *Silvaco*, 184 Cal. App. 4th at 236-40); *see also Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("[C]UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret.").

Skyryse argues that Moog's conversion claim is preempted because it is "based on the alleged theft of non-tangible information and arises out of the same nucleus of operative facts as Moog's trade secret claim." Opp. at 9. Moog counters that its conversion claim is based on the 1.1 million *non-trade secret* Moog files stolen by Defendants. Reply at 7-8. Moog asserts that its Trade Secret Identification is based on roughly 300,000 documents, which "leaves approximately 1.1 million stolen files for which Moog is not presently claiming trade secret misappropriation." *Id.* Accordingly, Moog avers that it is moving "to amend to include a conversion claim relating to the theft of such voluminous non-trade secret data." *Id.* at 8.

In support of its argument, Moog heavily relies on *Byton North America Corp. v. Breitfeld*, No. 2:19-cv-10563-DMG-(JEMx), 2020 WL 3802700 (C.D. Cal. Apr. 28, 2020), which the Court finds instructive. There, the court found that, to some extent, the plaintiffs' conversion claim was based on trade secret misappropriation and therefore preempted by CUTSA. *Id.* at *8. However, the plaintiffs also alleged that the defendant converted its "trade secrets and proprietary or confidential information by divulging that information to Iconiq when he began working there." *Id.* at *9. The court concluded that plaintiffs had "pleaded conversion with respect to confidential or proprietary property that does not rise to the level of a trade secret," noting that "California courts have held that CUTSA does not preempt claims that, 'although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim.'" *Id.* at *8-9 (quoting *Angelica Textine Servs., Inc. v. Park*, 220 Cal. App. 4th 496, 506 (2013)).

Under these guidelines, the Court would agree with Moog that it can plead a claim for conversion based on the 1.1 million stolen files, which constitute confidential or propriety property but do not rise to the level of a trade secret. As the *Byton* court advised,

> The extent to which any particular piece of property or information constitutes a trade secret, as opposed to merely proprietary or confidential information, is a factual matter unfit for resolution at

7

> the pleading stage. Once the parties have conducted enough discovery to define the scope of information or property that [was] divulged to [Skyryse], the Court can determine whether CUTSA preempts a conversion claim based on that information or property.

*Id.* at *9.

However, the issue the Court has with Moog's Proposed FAC is that it is not clear that the conversion claim is predicated on separate confidential and non-trade secret information. For example, the allegations related to Moog's conversion claim repeatedly refer to "the Stolen Trade Secrets, and other data stolen." *See* Proposed FAC ¶¶ 267-69, 271. As such, it appears that Moog's conversion claim, to some extent, is based on trade secret misappropriation. *See id.* ¶ 271 (basing claim on "Defendants' unlawful and unauthorized possession, use, and disclosure of the Stolen Trade Secrets, and other data stolen from Moog"). Further, based on this Court's review of the Proposed FAC, it is not clear what constitutes "other data stolen." While Moog argues that this refers to the remaining 1.1 million stolen files, the Proposed FAC does not make this distinction.

Because Moog's conversion claim, as currently pled, is based, to some extent, on the "Stolen Trade Secrets," the Court would find that CUTSA preempts Moog's proposed conversion claim. However, because Moog could plead conversion with respect to confidential or proprietary property that does not rise to the level of a trade secret, the Court would allow Moog one opportunity to amend its Proposed FAC to make clear that its conversion claim is based on the approximately 1.1 million non-trade secret files.

Notwithstanding the above, even if New York law applied, the Court would find that Moog has failed to sufficiently plead a claim for conversion. To state a claim for conversion under New York law, plaintiff must allege that "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 284 (S.D.N.Y. 2016). "New York recognizes a claim for conversion of electronic files." *Id.* (citing *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292-93 (2007)).

Skyryse does not argue that Moog fails to show that its conversion claim relates to a specific identifiable thing or that Moog lacked ownership, possession, or control over the property before conversion. Rather, Skyryse argues that Moog's conversion claim fails under New York law because "Moog does not allege that Skyryse's purported misappropriation completely

8

excluded Moog's own ability to use its alleged trade secret information." Opp. at 9 n.2. Skyryse focuses on the Proposed FAC's allegations that Kim copied documents and files, and highlights the lack of allegations that those files were then unavailable to Moog. *Id.* A similar argument was raised in *Apple Mortg*. There, the defendants argued that "they only made copies of documents and files, and that Apple was not truly deprived of the documents in the first place." *Apple Mortg.*, 162 F. Supp. 3d at 284. "This argument call[ed] into question whether the defendants exercised dominion over the documents to the exclusion of Apple's ability to use and access the documents." *Id.* However, the court pointed out that Apple's "claims [were] premised on the fact that the defendants copied *and deleted* the documents on Apple's system and that the deletion altered the documents—an argument to which the defendants do not respond." *Id.* (emphasis in original).

Similarly here, Moog alleges that Kim copied over 136,000 files of confidential and propriety Moog data and deleted the Moog data she copied on the external hard drive she used. *See* Proposed FAC ¶¶ 4, 179, 189. However, unlike in *Apple Mortg.*, the Proposed FAC does not allege that Kim's deletions *altered* the documents. Moog seemingly concedes this as its reply brief merely states that "Kim delet[ed] the Moog data from the hard drives she used to steal them," without any reference to alteration of Moog data. Reply at 5. Indeed, in its reply brief, Moog argues that its data was "altered" when other "Skyryse personnel sen[t], alter[ed], and us[ed] Moog data for Skyryse projects," and references paragraphs 190 through 223 of the Proposed FAC. *Id.* These paragraphs contain allegations concerning Skyryse's unauthorized possession, use, and disclosure of Moog's trade secrets and other non-public information. For example, Moog alleges that Pilkington "copied at least 1.2 million Moog files to [] hard drives" and that Skyryse employee Reid Raithel copied 27,118 files. *See* Proposed FAC ¶¶ 197-98. Yet, there are no allegations that copying these files resulted in any "alteration" of the files in Moog's possession or that Moog was in any way "excluded" from using the original files in any way it saw fit. While Moog asserts in its reply brief that Skyryse personnel "altered" Moog property, Moog has not pled allegations of alteration in its Proposed FAC.

Moreover, Moog avers that "numerous New York decisions have held that even the copying of data is sufficient to constitute conversion." Reply at 5. Moog, however, ignores numerous other New York opinions finding that pure copying is insufficient to state a conversion claim. *See, e.g.*, *Iacovacci v. Brevet Holdings, LLC*, No. 1:18-cv-08048-MKV-(VFx), 2023 WL 2631966, at *8 (S.D.N.Y. Mar. 24, 2023) ("Mere copying—without more—is insufficient to state

9

a conversion claim."); *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 414-16 (S.D.N.Y. 2018) (holding that there was no conversion where plaintiff was not denied use of original files). As summarized in *Fischkoff*,

> In Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F.Supp.2d 489 (S.D.N.Y. 2011), the court found that a defendant who downloaded business documents onto a thumb drive was not liable for conversion because defendant "possessed only a copy of the client list and did not, in any way, limit or otherwise deprive [plaintiff] of possession or use of that list." Id. at 536. Similarly, in Reis, Inc. v. Spring11 LLC, 2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016), the unauthorized downloading of files was held not constitute conversion because the plaintiff was never deprived of access. Id. at *10-11. As Reis noted, "[w]hile New York courts have recognized that conversion can be predicated on the loss of intangible electronic data, that case law has not altered the traditional rule requiring the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor." Id. at *10 (alterations and citations omitted). Numerous other cases have found that mere copying does not permit a claim of conversion. See, e.g., Sell It Soc., LLC v. Strauss, 2018 WL 2357261, at *8 (S.D.N.Y. Mar. 8, 2018) ("Because a conversion claim is dependent on the unauthorized possession of the property at issue interfering with the rightful owner's right of possession, courts in this Circuit have routinely rejected conversion claims predicated on a defendant's possession of an electronic copy of the property") (citing cases); accord Broker Genius, Inc. v. Seat Scouts LLC, 2018 WL 2214708, at *6 (S.D.N.Y. May 14, 2018); Hyo Jung v. Chorus Music Studio, Inc., 2014 WL 4493795, at *8 (S.D.N.Y. Sept. 11, 2014); SBIW, Inc. v. Gen. Elec. Co., 2013 WL 5338525, at *13 (S.D.N.Y. Sept. 24, 2013); Geo Grp., Inc. v. Cmty. First Servs., 2012 WL 1077846, at *8-9 (E.D.N.Y. Mar. 30, 2012).

339 F. Supp. 3d at 415. While there are "scattered decisions that suggest that copying of data may constitute conversion" – *see e.g.Fischkoff*, 339 F. Supp. 3d at 415 (citing *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010); *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 618 (S.D.N.Y. 2003); and *New York Racing Ass'n v. Nassau Regional Off-Track Betting Corp.*, 909 N.Y.S.2d 866 (N.Y. Sup. Ct. 2010)),[4] this Court would "adhere[] to the majority rule absent more definitive guidance from the New York Court of

---

[4] Moog cites all of these cases in support of its contention that "the copying of data is sufficient to constitute conversion." *See* Reply at 5.

10

Appeals." *Rektor Sys., Inc. v. Loughlin*, No. 1:19-cv-07767-LJL, 2022 WL 3020148, at *10 n.8 (S.D.N.Y. July 29, 2022); *see also Fischkoff*, 339 F. Supp. 3d at 415 (finding that it could not "square these decisions with the New York Court of Appeals' statement in *Thyroff* that a conversion claim lies where the defendant's exercise of control was 'to the exclusion of the owner's rights'").

For these reasons, the Court would find that Moog has not sufficiently pleaded a claim for conversion under either New York or California law. However, the Court would give Moog one more opportunity to amend its conversion claim to clearly delineate between the Moog data underlying its trade secret and conversion claims to avoid preemption under CUTSA.

### B. Implied Covenant Claim

At the outset, the parties do not dispute that New York law applies to Moog's breach of the implied covenant of good faith and fair dealing claim. *See* Opp. at 14; *see also* Reply at 15. Skyryse argues that "Moog's implied covenant claims fail as a matter of law because they arise either from: (1) the lawful hiring of Moog's at-will employees, a prohibition that cannot be fairly inferred from the terms of the parties' NDAs, or (2) the alleged theft and misuse of Moog's purported trade secrets, which makes them entirely duplicative of Moog's breach of contract (and trade secret misappropriation) claims." Opp. at 15. The Court will discuss each argument in turn.

#### i. Skyryse's Hiring of 20 Moog Employees

First, Skyryse argues that Moog's theory premised on the hiring of Moog employees is not legally viable because the NDAs "did not contain any provision stating that either party would not hire the other's employees." *Id.* Moog counters that while the "2018 and 2019 NDAs do not expressly address a prohibition on Skyryse's poaching of Moog's entire software engineering department," "[b]y hiring 20 of Moog's software engineers with intimate knowledge of Moog's flight control programs and trade secrets, Skyryse undermined and sidestepped the entire purpose of the NDAs which was only to share confidential information to ***explore projects between the Parties***." Reply at 17 (emphasis in original). As such, Moog contends that Skyryse prevented it from receiving the benefits of the 2018 and 2019 NDAs. *Id.* at 17-18; *see also* Proposed FAC ¶ 322.

##### a. *Legal Standard*

The covenant, which is implicit in every contract, includes a promise that "neither party to a contract shall do anything that has the effect of destroying or injuring the right of the other party

11

to receive the fruits of the contract, or to violate the party's presumed intentions or reasonable expectations." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (internal quotations omitted). Thus, "[t]o state a cause of action for breach of the implied covenant of good faith and fair dealing, 'the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff.'" *Dweck Law Firm, L.L.P. v. Mann*, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004) (quoting *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Com.*, 697 N.Y.S.2d 128, 130 (2d Dep't 1999)). "However, it is well-settled that the covenant 'can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 406 (E.D.N.Y. 2012) (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005)).

"In determining whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) (citation omitted). "[W]hether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact." *Id.*; *see also Janel World Trade, Ltd. v. World Logistics Servs., Inc.*, No. 1:08-cv-01327-RJS, 2009 WL 735072, at *13 (S.D.N.Y. 2009) (denying motion to dismiss a claim for breach of the implied covenant of good faith and fair dealing where plaintiffs alleged that defendants prevented them from obtaining the benefit of the bargain because the conduct was an issue of fact).

      b. *Analysis*

Skyryse argues that "Moog identifies no specific terms in the NDAs from which one could fairly infer a duty to not hire or solicit Moog employees." Opp. at 15. However, the fact that the NDAs are silent on this issue is not fatal to Moog's claim because "New York does not require that a breach of the duty of good faith and fair dealing be tied to a specific contractual provision." *Dorset Indus.*, 893 F. Supp. 2d at 407; *see also Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 218 (S.D.N.Y. 2007) ("As the implied covenant of good faith and fair dealing could be interpreted to incorporate these duties without contradicting the express terms of the contract, the proper question is whether such implied terms are appropriate

12

under the circumstances."). Accordingly, in the absence of a specific contractual provision underlying an implied obligation, "[a] party's actions may implicate the implied covenant of good faith when it acts so directly to impair the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties." *See Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991).

Here, the Court would conclude that Moog has plausibly alleged that Skyryse prevented it from obtaining the benefits of the NDAs by "hiring dozens of key, targeted Moog personnel after the NDAs were entered into who have intimate knowledge about the confidential information that Moog disclosed to Skyryse under the 2019 and 2019 NDAs." Proposed FAC ¶ 322. Moog alleges that "Skyryse made the strategic decision to take what it could not develop quickly enough, and engage in a 'full court press' to take from Moog as many key employees as possible so that it could shortcut its own timeline and costs in developing automated flight software and related products." *Id.* ¶ 138. Accepting the facts in the Proposed FAC as true, and drawing all inferences in favor of Moog, Moog has sufficiently pled that Skyryse's conduct in hiring 20 Moog employees, deprived Moog of the benefits of the NDAs (which was to purportedly share confidential information to explore projects between the parties), and therefore violated the implied covenant of good faith and fair dealing. *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 1:08-cv-09116-PGG, 2009 WL 321222, at \*7 (S.D.N.Y. Feb. 9, 2009) (denying motion to dismiss implied covenant claim where the plaintiff adequately alleged that the defendant "deprived it of the benefits of the Agreements").

Skyryse relies on two cases for the proposition that courts "have repeatedly held that an NDA that does not contain an enforceable no-hire or non-solicitation agreement cannot provide a basis for an implied covenant imposing such restrictions." *See* Opp. at 15-16. First, Skyryse's citation to *Lodging Sols., LLC v. Miller*, No. 1:19-cv-10806-AJN, 2020 WL 6875255 (S.D.N.Y. Nov. 23, 2020), is unhelpful. In that matter, the court held that "[b]ecause the no-hire provision [was] unenforceable, [d]efendants' conduct [*i.e.* hiring plaintiff's employee] did not deprive [p]laintiff of any fruit of the contract to which it was entitled." *Id.* at \*9. Citing *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017), the court noted that "a claim for breach of the implied covenant of good faith and fair dealing must be dismissed when there is no valid and enforceable contract between the parties." *Id.* Here, in contrast, a valid and enforceable contract exists between the parties.

13

Second, Skyryse's citation to *Agency Dev., Inc. v. MedAmerica Ins. Co. of New York*, 327 F. Supp. 2d 199 (W.D.N.Y. 2004) is also distinguishable as it was decided on summary judgment. Moreover, unlike here, the plaintiffs in *Agency Dev.* conceded that there was no express breach of contract, but claimed the implied covenant was breached when the defendants recruited and hired one of the plaintiffs' officers and terminated the agreement with the plaintiffs immediately thereafter. *Id.* at 203. The court concluded that the plaintiffs were not deprived of the "intended benefit" of the agreement as "[n]o reasonable jury could conclude that [the defendants' hiring of the employee] was 'the sole and direct cause[ ] of the destruction of the value of the contract' for plaintiffs." *Id.* In addition, the court determined that there was no breach because the agreement would have been terminated regardless of whether the employee was hired or not, and the employee's employment was not integral to the plaintiffs' performance under the agreement. *Id.* at 204. Here, however, the Court would conclude that Moog has plausibly alleged that Skyryse prevented it from obtaining the benefits of the NDAs. Further, what prohibitions or limitations the NDAs may have placed on Skyryse with regard to its hiring of Moog employees are issues of fact inappropriate for resolution at this stage in the proceedings. As stated above, "whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact." *Tractebel*, 487 F.3d at 98.

For these reasons, the Court would conclude that Moog's implied covenant claim based on Skyryse's hiring of its personnel is not futile.

        ii.    <u>Skyryse's Theft and Use of Moog's Trade Secrets and Proprietary Data</u>

Turning to Skyryse's second argument, Skyryse contends that Moog's attempt to claim that Skyryse "breached the implied covenant by allegedly stealing and misusing Moog's confidential information fails as a matter of law because it is duplicative of Moog's breach of contract (and trade secret) claims." Opp. at 16. Moog counters that the NDAs "do not cover the 1.4 million files stolen by Skyryse personnel that were not previously disclosed to Skyryse pursuant to the 2018 and 2019 NDAs, and which were stolen from Moog in 2021 and 2022 after the Parties' business relationship ended." Reply at 18. Therefore, Moog argues that "these allegations fall outside the express contractual provisions of the NDAs and are not duplicative of Moog's breach of contract claims. *Id.* at 18-19.

        a.  *Legal Standard*

14

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz* v. *FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris* v. *Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id.*

However, an implied covenant claim "can survive a motion to dismiss 'if it is based on allegations different from those underlying the accompanying breach of contract claim.'" *JPMorgan Chase Bank*, 2009 WL 321222, at *5 (quoting *Grand Heritage Mgmt., LLC v. Murphy*, No. 1:06-cv-05977-NRB, 2007 WL 3355380, at *6 (S.D.N.Y. Nov. 5, 2007)). Therefore, "to simultaneously plead breach of contract and implied covenant claims under New York law, a plaintiff must allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims." *Id.*

### b. *Analysis*

Moog asserts that its "breach of contract claim is limited to Skyryse's breaches involving information Moog disclosed to Skyryse under the NDAs between 2018-2020 when the Parties were pursuing a business relationship." Reply at 16. In contrast, Moog contends that its implied covenant claim is predicated on allegations that Skyryse had "its employees steal approximately 1.4 million files from Moog without authorization" and it used "the Stolen Trade Secrets and other propriety information in connection with the development, certification, and testing of Skyryse's flight control software and programs." *Id.* at 18 (quoting Proposed FAC ¶ 322).

The issue the Court has with Moog's Proposed FAC is that contrary to Moog's assertions, the breach of contract and implied covenant allegations are not "very different." *Id.* at 19. For example:

| **Breach of Contract Claim** | **Implied Covenant Claim** |
|---|---|
| "In breach of the 2018 NDA and 2019 NDA, Skyryse used information gained from Moog regarding its flight control software for purposes beyond the scope of the limited purpose of the Parties' business engagement in Phase 1 under the SOW, including to: 1) **develop its own flight control systems and** | "Skyryse prevented Moog from receiving the benefits of the 2018 and 2019 NDAs by, as alleged in further detail above: 1) hiring dozens of key, targeted Moog personnel after the NDAs were entered into who have intimate knowledge about the confidential information that Moog disclosed to Skyryse under the 2018 |

15

| | |
|---|---|
| **software**; and 2) raid and solicit Moog's key software engineering personnel who have most knowledge of Moog's flight control software. Upon information and belief, Skyryse attempted to or in fact did reverse engineer certain components of Moog's flight control systems in an effort **to develop a competing flight control system**, which is expressly prohibited under the 2018 and 2019 NDAs. Skyryse used confidential information provided by Moog under the 2018 and 2019 NDAs regarding Moog's software engineering staff and technology to engage in targeted hiring and data theft practices a few years later. **Additionally, Skyryse used Moog's trade secrets and other data copied by at least Kim and Pilkington to capitalize upon and build Skyryse's own competing flight control software in conjunction with confidential information provided by Moog under the 2018 and 2019 NDAs**." <br><br> Proposed FAC ¶ 305 (emphases added). | and 2019 NDAs; 2) **having its employees steal approximately 1.4 million files from Moog without authorization, which include hundreds of thousands of files reflecting Moog's trade secrets**; and 3) **using the Stolen Trade Secrets and other proprietary information in connection with the development, certification, and testing of Skyryse's flight control software and programs**." <br><br> *Id.* ¶ 322 (emphases added). |

As illustrated above, both claims contain allegations concerning Skyryse's development of its own flight control systems and software. *Compare id.* ¶ 305, *with id.* ¶ 322. More importantly, however, both claims have overlapping allegations regarding Skyryse's use of Moog's trade secrets and other data, including files that were copied/stolen from Moog. *Compare id.* ¶ 305 ("Additionally, Skyryse used Moog's trade secrets and other data copied by at least Kim and Pilkington to capitalize upon and build Skyryse's own competing flight control software …"), *with id.* ¶ 322 ("having its employees steal approximately 1.4 million files from Moog … [and] using the Stolen Trade Secrets and other proprietary information in connection with the development, certification, and testing of Skyryse's flight control software and programs"). As such, it appears that both claims are premised, to some extent, on Moog data that was wrongfully acquired after the parties entered into the NDAs, including Moog's stolen trade secrets.[5]

Given this overlap, the Court would conclude that Moog's claim for breach of the implied covenant based on Skyryse's theft and use of Moog's trade secrets and proprietary data is

---

[5] Skyryse does not contend that Moog's allegations relating to the hiring of its personnel are duplicative, and the Court will not make such a determination *sua sponte*.

16

duplicative of its breach of contract claim. However, the Court would grant Moog leave to amend to clearly plead that: (1) its breach of contract claim is limited to Skyryse's breaches under the NDAs between 2018-2020 when the parties were pursuing a business relationship and (2) its implied covenant claim is predicated on the 1.4 million files stolen from Moog between 2021-2022 after the parties' business relationship ended.

## IV. Conclusion

Based on the foregoing discussion, the Court would **GRANT IN PART** and **DENY IN PART** the Motion as delineated above.