**LATHAM & WATKINS LLP**
Douglas E. Lumish (SBN 183863)
  *doug.lumish@lw.com*
Gabriel S. Gross (SBN 254672)
  *gabe.gross@lw.com*
Arman Zahoory (SBN 306421)
  *arman.zahoory@lw.com*
Rachel S. Horn (SBN 335737)
  *rachel.horn@lw.com*
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and Counterclaimant*
*Skyryse, Inc.*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>Plaintiff,<br><br>v<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**DEFENDANT AND COUNTERCLAIMANT SKYRYSE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OBJECTIONS TO AND MOTION FOR REVIEW OF MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDER (DKT. 534)**<br><br>Discovery Cut-Off: April 12, 2024<br>Trial: August 27, 2024 |
| SKYRYSE, INC.,<br><br>Counterclaimant,<br><br>v<br><br>MOOG INC.,<br><br>Counterclaim-Defendant. | Hearing:  August 24, 2023<br>Time:   8:30 a.m.<br>Judge:   Hon. George H. Wu<br>Location: Ctrm. 9-D |

1

## **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................... 1

II. FACTUAL AND PROCEDUAL BACKGROUND ..................................... 3

    A.    Moog delays identifying its alleged trade secrets then
disregards the transferor court's specific instructions. ........................ 3

    B.    Skyryse moves to enforce the transferor court's order,
and Magistrate Judge Rocconi erroneously reinterprets it. ................ 5

III. LEGAL STANDARD ................................................................................... 6

IV. THE COURT SHOULD SUSTAIN SKYRYSE'S
OBJECTION. ............................................................................................... 7

    A.    The Court's order relies on a plainly incorrect reading of
the transferor court's order. ................................................................. 7

    B.    The Court's effective reversal of the transferor court's
order is contrary to law. ....................................................................... 9

V. CONCLUSION ........................................................................................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

1

2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

### **CASES**

5

*Citcon USA LLC v. RiverPay Inc.*,

6

    No. 18-cv-02585-NC, 2019 WL 2603219 (N.D. Cal. June 25,

    2019) ................................................................................................... 11, 12

7

8

*Danner v. Himmelfarb*,

    858 F.2d 515 (9th Cir. 1988) .................................................................. 12

9

*Hall v. Alternative Loan Tr. 2006-7CB*,

10

    No. 13-cv-1732-KJM-AC, 2013 WL 5934322 (E.D. Cal. Nov. 1,

11

    2013) ....................................................................................................... 12

12

*Keywords, LLC v. Internet Shopping Enters., Inc.*,

    No. 05-cv-2488-MMM(Ex), 2005 WL 8156440 (C.D. Cal. June

13

    29, 2005) ................................................................................................. 11

14

*Proofpoint, Inc. v. Vade Secure, Inc.*,

15

    No. 19-cv-04238-MMC, 2020 WL 836724 (N.D. Cal. Feb. 20,

16

    2020) ................................................................................................. 10, 12

17

*Social Apps, LLC v. Zynga, Inc.*,

    No. 11-cv-04910-YGR, 2012 WL 2203063 (N.D. Cal. June 14,

18

    2012) ............................................................................................ 10, 11, 12

19

*Taylor v. Cnty. of San Bernardino Hum. Servs.*,

20

    No. 09-cv-01829-MMM-MANx, 2011 WL 13223893 (C.D. Cal.

    Jan. 3, 2011) ............................................................................................. 7

21

22

### **STATUTES**

23

28 U.S.C. § 636(b)(1)(A) .................................................................................. 6

24

### **RULES**

25

Fed. R. Civ. P. 72(a) ........................................................................................ 6

26

27

L.R. 72-2.1 ........................................................................................................ 6

28

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Skyryse agrees with much of Magistrate Judge Rocconi's recent decision that, for the vast majority (twenty-one of thirty) of Moog's alleged trade secrets, Moog failed to comply with the transferor court's order compelling it to identify those trade secrets with particularity and specificity. As Judge Rocconi found, most of Moog's trade secret identifications consist of little more than boilerplate narrative and sparse, categorical descriptions that do not indicate "what sets anything within them apart as a trade secret." These are plainly inadequate, and Judge Rocconi rightly ordered Moog to amend its identifications to provide the reasonable particularity that the law and the transferor court's order require.

Skyryse respectfully objects, however, to one aspect of the Court's ruling: the legally and factually erroneous conclusion that the transferor court's order did *not* require Moog to identify with specificity the lines of the source code and programs it claims constitute its software trade secrets. After several months spent mired in the factual details of this case and holding regular conferences with the parties, Magistrate Judge McCarthy gave Moog express directions on how to identify its alleged trade secrets with the requisite level of specificity. In particular, Judge McCarthy made the factual finding that some of Moog's alleged trade secrets *are* its source code, and so ordered Moog to provide a particularized identification that would "*identify the specific lines of code or programs* claimed to be secret."[1] This makes sense, for software programs necessarily are written according to the restraints of programming languages and use publicly known and accepted industry conventions. This means that significant amounts of software code cannot possibly be subject to trade secret protection, and must be set apart from any allegedly protectable secrets.

Moog never objected to this order or moved for reconsideration, for it had no grounds to do so. Instead, it ignored it. When Moog finally attempted to disclose its

---

[1] All emphasis in quotes has been added unless otherwise noted.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

alleged trade secrets it claimed that virtually all of them comprise source code or software programs, but failed to identify specific lines of code as it was ordered to do. To justify its defiance after Skyryse moved to enforce the transferor court's order, Moog erroneously but successfully argued that Judge McCarthy's explicit instructions were mere suggestions, and too burdensome to honor if taken literally.

Magistrate Judge Rocconi was persuaded, and reached an erroneous conclusion: that "Judge McCarthy *was not requiring Moog to identify any source code secrets line-by-line.*" This, even though Judge McCarthy had expressly found that the "trade secret information at issue *is Moog's source code*" and ordered that when "the plaintiff alleges misappropriation of source code, *it should identify the specific lines of code or programs* claimed to be secret." Judge Rocconi reached this conclusion at Moog's urging and after Moog strenuously complained that it would take it several months to identify its allegedly trade secret code by line. As a result, Judge Rocconi erroneously concluded that nine of Moog's thirty descriptions of its alleged trade secrets, which fail to identify source code by line as ordered, are sufficient.

Judge Rocconi's interpretation of Judge McCarthy's order cannot be reconciled with its plain language. This Court lacks authority to construe the transferor court's order to mean the opposite of what it says, and Moog should not be permitted to benefit from this effective rewriting of a prior order, much less one it never timely or successfully challenged. Accordingly, Skyryse respectfully requests that this Court (1) review Judge Rocconi's determination that Moog was not required to identify its source code or software program trade secrets by line and sustain Skyryse's objection to it; (2) find that Moog has failed to comply with the transferor court's order; and (3) direct Moog to amend its trade secret identification ("TSID") to identify, for any trade secret it intends to assert in this action, the specific lines of code it alleges are the alleged trade secrets in its source code and software programs, so that Skyryse has fair notice of what it is accused of misappropriating, can prepare its defenses, and the parties can discern the boundaries of discovery.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Moog delays identifying its alleged trade secrets then disregards the transferor court's specific instructions.

Moog filed this action in the Western District of New York in March 2022, alleging a variety of claims all predicated upon the alleged misappropriation of trade secrets by two of its former employees, Defendants Misook Kim and Alin Pilkington. Despite claiming to have granular data about the files that Ms. Kim and Mr. Pilkington allegedly copied from Moog's computer systems (*see* Dkt. 1 ¶¶ 108-117), Moog did not attempt to identify any of its alleged trade secrets for months. Instead, Moog claimed it needed more discovery into the Defendants' alleged use of them before it could say which trade secrets it intended to assert. Skyryse then provided Moog with massive volumes of one-sided discovery over the first several months of this litigation while all other discovery was (and remains) stayed. During that time, the parties held regular—sometimes weekly—conferences before Magistrate Judge McCarthy. These conferences were lengthy and substantive, allowing Judge McCarthy to become familiar with the facts of the case and the details of Moog's allegations.

After months of urging Moog to identify its trade secrets, Skyryse successfully moved the transferor court to compel Moog to provide a particularized trade secret identification. Nearly a year ago, on July 22, 2022, Judge McCarthy ordered Moog to "identify its trade secrets with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge," though he permitted Moog to take more discovery first. (Dkt. 205 at 3.) The Court explained why particularized TSIDs are necessary, both as a general matter and in this specific case, where Moog has claimed that millions of files are at issue: to establish the bounds of discovery and to allow courts to craft definite and understandable orders. To that end, the Court's order included explicit directions: Moog could not simply identify trade secrets by "generic category," nor could it

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

1   simply "point to documents in which trade secrets are said to reside as a substitute

2   for a detailed identification" in narrative form. (*Id.* at 3-4.)

3        Judge McCarthy's order also focused in detail on Moog's alleged trade secrets

4   relating to its source code. The Court found, based on Moog's own statements, that

5   "the trade secret information at issue *is* Moog's source code for Platform software

6   and related project-specific applications and programs," among other software-re-

7   lated documents. (*Id.* at 1.) And the Court provided specific instructions for how

8   Moog should identify its alleged source code trade secrets: "Where the plaintiff al-

9   leges misappropriation of source code, *it should identify the specific lines of code or*

10  *programs claimed to be secret* by, for example, printing out the code on paper with

11  numbered lines and identifying the allegedly misappropriated lines by page and line

12  number, by highlighting, or by color-coding." (*Id.* at 4.) Moog never challenged that

13  or any other aspect of Judge McCarthy's order or had any factual or legal basis to

14  do so.

15       Instead, when Moog finally served its TSID in February, and only after this

16  Court ordered it to do so (Dkt. 343), Moog ignored Judge McCarthy's express in-

17  structions. Although Moog's TSID was voluminous, it failed to provide the required

18  specificity or to show how Moog's alleged trade secrets can be differentiated from

19  what is generally known. Contrary to the transferor court's order, Moog described

20  its alleged trade secrets in categorical terms and referred to more than 300,000 doc-

21  uments that it claims "reflect" those secrets, without any explanation of what in those

22  documents is, or is not, a trade secret. And, notably, while Moog affirmed that soft-

23  ware programs are among the trade secrets it is asserting in this action, it failed to

24  identify specific lines of source code for virtually every single trade secret category

25  it purported to identify. Instead, Moog's narrative descriptions of its alleged trade

26  secrets are replete with generic and categorical references to "source code" and

27  "source code files," with barely any attempt to point Skyryse to specific lines of

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

1  code,[2] or even to any relevant portions of the hundreds of thousands of files it incor-

2  porates. (*See, e.g.*, Dkt. 485-1 at 5-6, 10-12; Dkt. 485-2 at 7, 15, 22, 26, 29, 37, 39,

3  43, 45, 55, 57.)

4

**B.      Skyryse moves to enforce the transferor court's order, and Magistrate Judge Rocconi erroneously reinterprets it.**

5

6  Skyryse raised the issue of Moog's deficient trade secret identification to

7  Magistrate Judge Rocconi on March 8, 2023 and, pursuant to her procedures, filed

8  its Motion to Enforce Order Compelling Trade Secret Identification on May 9, 2023.

9  The motion was heard on June 7, 2023, and Judge Rocconi issued her order one

10  week after the hearing, on June 14, 2023. (Dkt. 534.)

11  The Court found that, of the thirty asserted trade secrets in Moog's TSID, nine

12  had been identified with sufficient specificity in compliance with Judge McCarthy's

13  order, namely, what Moog refers to as CUI TSID no. 1 and non-CUI TSID nos. 1-8,

14  each of which it describes as including source code. (*Id.* at 10.) As to the remaining

15  twenty-one alleged trade secrets, Judge Rocconi found that Moog's attempted iden-

16  tifications did not comply, and ordered Moog to amend its TSID within thirty days

17  to provide the requisite particularity. (*Id.*) The Court also "encouraged" Moog to

18  provide additional detail even for the alleged trade secrets that the Court found were

19  sufficiently identified, and invited Moog to also prepare an expert declaration to ex-

20  plain why its forthcoming amended TSID is sufficiently particular. (*Id.*)

21  In the June 14 order, the Court also made specific findings about the "effect

22  of Judge McCarthy's order" and the express instructions included therein. First, the

23  Court quoted Judge McCarthy's order expressly directing Moog how to identify its

24  source code trade secrets:

25  Moog must "sufficiently identif[y] its source code secrets". <u>Proofpoint,
    Inc. v. Vade Secure, Inc.</u>, 2020 WL 836724, *2 (N.D. Cal. 2020).

26  "Where the plaintiff alleges misappropriation of source code, it should

27  _____

28  [2] Moog's non-CUI TSID no. 4 does include a limited excerpt of specific source code, confirming that Moog knows how to identify its code by line when it sees fit to do so. (Dkt. 485-2 at 35.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5                 SKYRYSE'S MEMORANDUM OF POINTS &
                  AUTHORITIES IN SUPPORT OF OBJECTIONS TO
                  NON-DISPOSITIVE ORDER (DKT. 534)

identify the specific lines of code or programs claimed to be secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding." Graves & Range at 95.

(*Id.* at 4.)

Then, after quoting the directive that Moog "should identify the *specific lines of code or programs claimed to be secret*," the Court found the opposite: that "Judge McCarthy was *not* requiring Moog to identify any source code secrets line-by-line." (*Id.* at 5.) The Court stated that "[t]he fact that the quoted language uses the term 'for example' strongly supports this interpretation." (*Id.*) But that finding ignores that the phrase "for example" *follows* the instruction to "identify the specific lines of code or programs claimed to be secret," and thus provides examples of ways that mandate can be accomplished. In other words, Judge McCarthy's order gives a clear and unambiguous instruction ("identify the specific lines of code or programs") and then provides examples of how to effectuate that instruction ("by printing out the code on paper with numbered lines," "by highlighting, or by color-coding"). In misinterpreting that language, Judge Rocconi reads a central directive out of Judge McCarthy's order, and one that properly applies to each and every one of Moog's alleged trade secret identifications that includes source code. That includes all of the nine trade secrets that Judge Rocconi, applying her incorrect interpretation of the prior court's order, erroneously found were adequately identified in compliance with the transferor court's order.

## III.   LEGAL STANDARD

Under Rule 72(a), a party may serve and file objections to a magistrate judge's order on a non-dispositive pretrial matter "within 14 days after being served with a copy [of the order]." Fed. R. Civ. P. 72(a); *see also* L.R. 72-2.1. The district court must modify or set aside any part of the magistrate judge's order that is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to a magistrate judge's findings of fact and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

1  requires "a definite and firm conviction that a mistake has been committed." *Taylor*

2  *v. Cnty. of San Bernardino Hum. Servs.*, No. 09-cv-01829-MMM-MANx, 2011 WL

3  13223893, at *1 (C.D. Cal. Jan. 3, 2011). The "contrary to law" standard applies to

4  the magistrate judge's legal determinations, and permits the district court to conduct

5  an independent *de novo* review. *Id.*

6  **IV.   THE COURT SHOULD SUSTAIN SKYRYSE'S OBJECTION.**

7        The Court should sustain Skyryse's objection for either or both of two rea-

8  sons: Judge Rocconi's erroneous determination that the transferor court's order did

9  not require Moog to identify specific lines of source code is contrary to law, as is

10  her effective reversal of that order based on a re-evaluation of the prior court's rea-

11  soning.

12       **A.   The Court's order relies on a plainly incorrect reading of the**

13                **transferor court's order.**

14        The transferor court's order was unambiguous and straightforward: it ac-

15  cepted Moog's representation that the alleged trade secrets comprise source code,

16  and described in explicit terms how Moog was to go about identifying those alleged

17  trade secrets with particularity. Specifically, "[w]here the plaintiff alleges misappro-

18  priation of source code," as Judge McCarthy found Moog did, "*it should identify the*

19  *specific lines of code or programs claimed to be secret* by, for example, printing out

20  the code on paper with numbered lines and identifying the allegedly misappropriated

21  lines by page and line number, by highlighting, or by color-coding." (Dkt. 205 at 4.)

22  Judge McCarthy's order did not prescribe a particular *way* Moog should go about

23  "identifying the specific lines of code or programs"—Moog could do that "by, *for*

24  *example*, printing out the code on paper with numbered lines" or by any other rea-

25  sonable means—but nothing in the plain text of the order indicates that this key di-

26  rective was optional.

27        Magistrate Judge Rocconi misinterpreted the transferor court's explicit and

28  literal instructions. The Court concluded without explanation that Judge McCarthy's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

order did not "outline any specific requirements for Moog's trade secret identifica-tions" (Dkt. 534 at 5), and instead found it was optional for Moog to identify specific lines of source code or programs. The Court's interpretation appears to arise from a misreading of the phrase "for example," which in Judge McCarthy's order modifies the means by which Moog could fulfill the directive to "identify the specific lines of code" ("by highlighting," "by color-coding," etc.) but not the directive itself. The magistrate judge's interpretation reads one of Judge McCarthy's central instructions out of the order completely, and as such is contrary to law.[3]

The Court's incorrect interpretation of the transferor court's order led it to erroneously conclude that Moog's CUI TSID no. 1 and non-CUI TSID nos. 1-8 have been identified with sufficient particularity. Not so. Moog's narrative descriptions of those nine alleged trade secrets demonstrate that each one consists of or includes source code. (Dkt. 485-1 at 5-6, 10-12; Dkt. 485-2 at 7, 15, 22, 26, 29, 37, 39, 43, 45, 55, 57.) Under the plain language of Judge McCarthy's order, that means that Moog must "identify the specific lines of code or programs claimed to be secret." (Dkt. 205 at 4.) Moog did not do so in its February TSID—which cannot be seriously disputed—and so its CUI TSID no. 1 and non-CUI TSID nos. 1-8 are deficient and must be amended along with the rest in order to comply with that order.

As just one example, Judge Rocconi found that Moog's eleven-page narrative identification of CUI TSID no. 1, which incorporates 29,000 files with no elabora-tion, was sufficiently specific. But this narrative description is replete with generic and categorical references to "source code" without explanation, and without a more particular identification of any allegedly secret lines of code. The description of CUI TSID no. 1 even includes an entire subsection for "Source Code," which lists several

---

[3] Judge Rocconi's determination of Judge McCarthy's order is a legal determination and should be analyzed *de novo*. However, even if the "clear error" standard applied, the Court's interpretation of Judge McCarthy's order to mean the opposite of what it says also meets that standard. It is clearly erroneous to read the mandate that the plaintiff "should identify the specific lines of code or programs claimed to be secret" as "not requiring Moog to identify any source code secrets line-by-line."

broad categories of "source code files" without identifying a single file by name or line numbers. (*See* Dkt. 485-1 at 11-12.) This pattern pervades Moog's TSID, including each of the asserted trade secrets Judge Rocconi erroneously found were adequately disclosed. (*See id.* at 6 (referring categorically to "source code" and "source code files"); *id.* at 10 (same); Dkt. 485-2 at 7 (same); *id.* at 15 (same); *id.* at 22 (same); *id.* at 26 (same); *id.* at 29 (same); *id.* at 37 (same); *id.* at 39 (same); *id.* at 43 (same); *id.* at 45 (same); *id.* at 55 (same); *id.* at 57 (same); *id.* at 64 (same).) Such generic references to "source code" and "source code files" that comprise Moog's software programs, without any attempt to identify the specific lines or other portions claimed to be trade secrets, directly contravene Judge McCarthy's order.

Under any literal interpretation of that order, Moog is required to identify the specific "source code" that it asserts is a trade secret by line, which it has not done. To hold otherwise, as Judge Rocconi did, is a misreading of that order and is contrary to law. Moog's defiance of this clear directive also causes unfair prejudice to Skyryse and problems for all of the parties and the Court. Without knowing *what* within its source code and programs Moog claims is, and is not, an alleged trade secret, the defendants still do not know what they are accused of misappropriating and cannot fairly ascertain how to prepare their defenses, and neither the parties nor the Court can discern clear boundaries in discovery. Allowing Judge McCarthy's clear order to go unheeded would only ensure additional disputes and difficulty in case management as the case moves forward.

## B.    The Court's effective reversal of the transferor court's order is contrary to law.

The Court's order did not merely misread a word or phrase of Judge McCarthy's clear instructions, but read out one of his central directives. Judge Rocconi also revisited and undermined the transferor court's *reasoning* which is contrary to law. First, in accepting Moog's theory that Judge McCarthy must not have *intended* to "outline any specific requirements for Moog's trade secret identifications," the Court

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

appears to have disagreed with, or at best ignored, Judge McCarthy's factual finding that "the trade secret information at issue *is* Moog's source code" and subsequent instructions to Moog, "the plaintiff [that] alleges misappropriation of source code." (Dkt. 534 at 5; Dkt. 205 at 1, 4.)

Next, the Court expressly reevaluated Judge McCarthy's order in view of Ninth Circuit case law that was not before the transferor court and which arose from different factual circumstances. (*See* Dkt. 534 at 5 ("Indeed, the Ninth Circuit does not require line-by-line identification in all cases. [citations omitted] As such, the Court does not find Moog violated the order simply by failing to identify any source code secrets line-by-line.").) That conclusion is contrary to law for two reasons. First, despite Judge Rocconi's doubts, Ninth Circuit law *supports* Judge McCarthy's fact-based determination that in this case, Moog should identify specific pieces of source code that it alleges are secret. And second, Judge Rocconi's interpretation improperly, and without cause, reverses an order that remains binding in this case.

As an initial matter, Judge Rocconi was mistaken to conclude that a literal reading of Judge McCarthy's order would be inconsistent with Ninth Circuit law. While it is no doubt correct that "the Ninth Circuit does not require line-by-line identification in *all* cases" (*id.*), case law within this Circuit frequently requires that a plaintiff asserting source code trade secrets identify specific parts of the code, so that the parties and the court can differentiate the asserted trade secrets in *a particular* case from that which is generally known. What is required in each case is fact-specific, and may indeed demand identification of particular lines or modules of code. *See, e.g.*, *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC, 2020 WL 836724, at *2 (N.D. Cal. Feb. 20, 2020) (finding that merely describing alleged trade secrets as "source code" "is not sufficiently specific"); *Social Apps, LLC v. Zynga, Inc.*, No. 11-cv-04910-YGR, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) (stating that of all plaintiff's trade secret designations, only the two disclosures "identifying specific lines of code or file names are sufficiently detailed"); *see also*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

1   *Citcon USA LLC v. RiverPay Inc.*, No. 18-cv-02585-NC, 2019 WL 2603219, at *2

2   (N.D. Cal. June 25, 2019) (finding at preliminary injunction stage that plaintiff had

3   "fail[ed] to identify with sufficient particularity what source code has been misap-

4   propriated" where it only "describe[d] a few specific categories of source code" and

5   did not identify specific lines, files, or modules); *Keywords, LLC v. Internet Shop-*

6   *ping Enters., Inc.*, No. 05-cv-2488-MMM(Ex), 2005 WL 8156440, at *17 (C.D. Cal.

7   June 29, 2005) (denying preliminary injunction where plaintiff "has failed to identify

8   what portions of the source codes constitute trade secrets").

9          In *this* case, where Moog's alleged trade secrets primarily consist of software;

10  where Moog has provided only vague (if lengthy) categorical descriptions and

11  pointed to literally hundreds of thousands of documents as possibly "reflecting"

12  those alleged trade secrets; and where Moog was granted extensive discovery into

13  Skyryse's source code for the express purpose of identifying with specificity what it

14  alleged to be misappropriated, Ninth Circuit law demands that Moog be more spe-

15  cific about *which* source code it is claiming as secret. *See Social Apps*, 2012 WL

16  2203063, at *4-5 (finding plaintiff's narrative description of "server architecture"

17  "adds little more than an elaborate categorization scheme for a variety of related

18  concepts" and "is no substitute for specifically identifying and describing the actual

19  architecture that SocialApps claims was stolen"). Judge McCarthy's literal instruc-

20  tions to Moog regarding the identification of its source code trade secrets by line are

21  thus entirely consistent with Ninth Circuit law, and Judge Rocconi was incorrect to

22  find otherwise.

23         Next, the Court's order is contrary to law in that it effectively reverses a prior,

24  fact-specific order of the transferor court without justification. Based on its reevalu-

25  ation of applicable law, the Court arrived at an interpretation that undoes Judge

26  McCarthy's order, replacing his unambiguous, express, and fact-based requirements

27  for how Moog should identify its source code trade secrets *in this case*, with *no*

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

1    requirements at all, just an unspecific order to do it "in compliance with the applica-

2    ble legal guidance." (Dkt. 534 at 4.) That reversal is contrary to law.

3        When a case is transferred pursuant to § 1404(a), the orders of the transferor

4    court remain in effect and binding. *See Danner v. Himmelfarb*, 858 F.2d 515, 521

5    (9th Cir. 1988) ("[W]hen an action is transferred, it remains what it was; all further

6    proceedings in it are merely referred to another tribunal, leaving untouched what has

7    been already done."). A transferee court may reconsider the prior court's ruling only

8    under limited circumstances: "when the governing law has been changed by the sub-

9    sequent decision of a higher court," "when new evidence becomes available," "when

10   a clear error has been committed," or "when it is necessary to prevent manifest in-

11   justice." *Hall v. Alternative Loan Tr. 2006-7CB*, No. 13-cv-1732-KJM-AC, 2013

12   WL 5934322, at *2 (E.D. Cal. Nov. 1, 2013). None of those circumstances exist

13   here.

14       Judge McCarthy's order is binding. Moog did not, and had no grounds to, seek

15   reconsideration: there has been no change in the governing law, no new evidence,

16   and no manifest injustice. *Cf. Hall*, 2013 WL 5934322, at *2. And as discussed

17   above, Judge McCarthy's order is not clearly erroneous; to the contrary, it is entirely

18   consistent with case law from within the Ninth Circuit where courts have made fact-

19   specific findings about the level of particularity required for a sufficient trade secret

20   identification. *See, e.g.*, *Proofpoint*, 2020 WL 836724, at *4; *Social Apps*, 2012 WL

21   2203063, at *4-5; *Citcon*, 2019 WL 2603219, at *2. Judge Rocconi's reinterpretation

22   of the transferor court's decision and reasoning amounts to a reconsideration and

23   reversal, allowing Moog to avoid the impact of the prior ruling in the absence of any

24   of the limited justifications that would warrant reconsideration. This Court should

25   reject that outcome as contrary to law.

26   **V.    CONCLUSION**

27       For the foregoing reasons, Skyryse respectfully requests that the Court

28   (1) sustain its objection to Magistrate Judge Rocconi's order, (2) find that Moog's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12    SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

1  CUI TSID no. 1 and non-CUI TSID nos. 1-8 are not in compliance; and (3) order

2  Moog to identify in its Amended TSID the specific lines in its source code or soft-

3  ware programs that it alleges are its misappropriated trade secrets, for any such trade

4  secrets it intends to assert in this action including CUI TSID no. 1 and non-CUI

5  TSID nos. 1-8.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13   SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

| | |
|---|---|
| 1 | Dated:  June 28, 2023 |

Respectfully submitted,

LATHAM & WATKINS LLP

By:  */s/ Gabriel S. Gross*

Douglas E. Lumish (SBN 183863)
Gabriel S. Gross (SBN 254672)
Arman Zahoory (SBN 306421)
Rachel S. Horn (SBN 335737)
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
gabe.gross@lw.com
arman.zahoory@lw.com
rachel.horn@lw.com

Joseph H. Lee (SBN 248046)
Ryan Banks (SBN 318171)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com
ryan.banks@lw.com

Russell Mangas (Admitted *Pro Hac Vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: russell.mangas@lw.com

Julianne C. Osborne (SBN 342870)
Alexa L. Solimano (SBN 335740)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: julianne.osborne@lw.com
alexa.solimano@lw.com

Kelley M. Storey (Admitted *Pro Hac
Vice*)
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: kelley.storey@lw.com

Cassandra M. Baloga (Admitted *Pro
Hac Vice)*
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: cassandra.baloga@lw.com

*Attorneys for Defendant and Counter-
claimant, Skyryse, Inc.*

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

15

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)

1

# <u>CERTIFICATE OF COMPLIANCE</u>

2     The undersigned, counsel of record for Defendant-Counterclaimant

3  Skyryse, Inc., certifies that this brief contains **4,213** words, which:

4       <u>X</u> complies with the word limit of L.R. 11-6.1.

5       __ complies with the word limit set by court order.

6

7  Dated: June 28, 2023

8                              LATHAM & WATKINS LLP

9

10                             By */s/ Gabriel S. Gross*
                               Gabriel S. Gross
11                             *Attorney for Defendant and Counterclaimant*
12                             *Skyryse, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

SKYRYSE'S MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF OBJECTIONS TO
NON-DISPOSITIVE ORDER (DKT. 534)