## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 22-9094-GW-MARx | Date | June 30, 2023 |
|---|---|---|---|
| Title | *Moog, Inc. v. Skyryse, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - FINAL RULING ON PLAINTIFF MOOG INC.'S MOTION TO ENFORCE COMPLIANCE WITH THE MARCH 11, 2022 STIPULATED TRO (DKT. 25), AND FOR MONETARY AND ADVERSE INFERENCE SANCTIONS FOR CONTEMPT AND SPOLIATION [400]

Attached hereto is the Court's Final Ruling on Plaintiff's Motion [400]. Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

Initials of Preparer   JG

*<u>Moog Inc. v. Skyryse, Inc. et al</u>*; Case No. 2:22-cv-09094-GW-(MARx)
Final Ruling on Plaintiff's Motion to Enforce to Enforce Compliance in light of the parties' Joint Report following their Meeting and Conferring on said Motion

## I. **Background**

On March 16, 2023, Plaintiff and Counterdefendant Moog Inc. ("Moog") filed a Motion to Enforce Compliance with the March 11, 2022 Stipulated TRO (Dkt. 25), and for Monetary and Adverse Inference Sanctions for Contempt and Spoliation ("Motion" or "Mot."). *See* Docket No. 400. Defendant and Counterclaimant Skyryse, Inc. ("Skyryse") filed an opposition brief, *see* Opposition to Moog's Motion to Enforce Compliance with March 11, 2022 Stipulated TRO and for Monetary and Adverse Inference Sanctions ("Opp."), Docket No. 453, and Moog filed a reply, *see* Reply in Support of Motion to Enforce Compliance with the March 11, 2022 Stipulated TRO (Dkt. 25), and for Monetary and Adverse Inference Sanctions for Contempt and Spoliation ("Reply"), Docket No. 508.

Prior to the hearing on June 15, 2023, the Court issued a tentative ruling. *See generally* Tentative Ruling, Docket No. 532. The factual and procedural background of this case is summarized in detail in the Tentative Ruling, *see id.*, and therefore is not repeated here. Following the hearing, two issues remain outstanding. First, whether the Motion prompted Skyryse's recovery of the 32 deleted files from Alex Wang's computer, thereby entitling Moog to partial attorneys' fees and costs. Second, whether the parties could resolve Moog's requests for production and/or inspection of various Skyryse electronic devices and data sources. If any disputes remained after meaningfully meeting and conferring, the parties were to submit a joint filing identifying the remaining issues and explaining Moog's and Skyryse's respective positions.

On June 22, 2023, the parties filed a joint report detailing their respective positions on five outstanding issues. *See* Joint Report Regarding Meet and Confer for Moog's Motion to Enforce ("Joint Report"), Docket No. 546. Disputes remain as to whether Moog is entitled to: (1) production of Lori Bird and Reid Raithel's Skyryse-issued laptops; (2) production of Skyryse's Polarion Repository; (3) production of Skyryse's Google Drive Account; and (4) production of Skyryse's "Git" Repository. *See generally id.* In addition, Moog requests additional information on Skyryse's removal of SDTE, sRTOS, and historical checklists from its personnel's devices and e-mail accounts. *Id.* at 18. The Court heard oral argument on June 29, 2023. *See* Docket No. 562.

## II. Discussion

### A. Attorneys' Fees and Costs

As indicated in the Court's Tentative Ruling, Moog takes exception with the timing of Skyryse's remedial efforts to recover the 32 deleted files from Mr. Wang's computer. *See* Tentative Ruling at 14. Moog alleged that "Skyryse made no attempt to resuscitate [the deleted] files until threatened with sanctions" and that "Skyryse never produced the materials [its expert] used to resuscitate the materials … until after its opposition brief was served and Moog demanded production of the documents." Reply at 23. Given the timing of Skyryse's production of the recovered Mr. Wang files, the Court indicated that it may be inclined to award Moog partial expenses for bringing its Motion pending further argument at the hearing. Tentative Ruling at 14.

At the hearing, the parties presented conflicting timelines regarding Skyryse's recovery efforts of the 32 deleted files. Specifically, the parties disputed when Mr. Wang's laptop and certain volume shadow copies ("VSCs"), which were relied upon by Skyryse's expert to recover the 32 deleted files, became available for Moog's inspection. *See generally* Transcript of June 15, 2023 Hearing ("June 15, 2023 Tr."), Docket No. 542. The Joint Report, however, indicates that the parties were conflating two different issues at the hearing and therefore the Joint Report provides an agreed upon timeline of events to avoid any confusion. *See* Joint Report at 20.

On June 15, 2022, Skyryse produced to the neutral forensics firm, iDiscovery Solutions ("iDS"), an image of Mr. Wang's Skyryse-issued laptop. *Id.* On October 6, 2022, Moog requested access to complete VSCs from the laptops of Ms. Kim, Mr. Pilkington, and Mr. Wang. *Id.* at 21. After a discovery conference where the transferor court advised Moog to narrow its requests for VSCs to what it believed to be most relevant at the time, Moog narrowed its request to one VSC from Ms. Kim's laptop, which Skyryse agreed to provide. *Id.* at 21-22. On April 20, 2023, after Moog's expert, Michael Bandemer, recovered several of the deleted files from four VSCs on Mr. Wang's laptop, Skyryse provided a file listing of privileged documents for iDS to excise from the VSCs and make those same four VSCs available to Moog. *Id.* at 22. On April 27, 2023, iDS confirmed to Skyryse that it had made the four requested VSCs available to Moog. *Id.* However, due to an error by iDS, it initially only provided Moog with access to three of the VSCs. *Id.* On May 11, 2023, iDS provided the fourth VSC relied upon by Mr. Bandemer for Moog's review. *Id.*

While this timeline clarifies any confusion regarding when Mr. Wang's laptop and the VSCs became available for Moog's inspection, the Court still has concerns about Skyryse's

remedial efforts in relation to Moog's Motion.  On June 14, 2022, Skyryse stated in a filed pleading that 32 of the files deleted by Mr. Wang were not recoverable, despite FTI's attempts to recover those files.  *See* Docket No. 156 at 12.  Despite being aware that 32 files remained unrecovered in June 2022, it appears that Skyryse failed to take steps to recover these missing files until after Moog's Motion was filed on March 16, 2023.  Indeed, at his deposition, Mr. Bandemer admitted that his work to recover the 32 files did not begin until 2023.  *See* Declaration of Kazim Naqvi ("Naqvi Decl."), Docket No. 508-1, Ex. D at 39:6-17.  Moreover, the four VSCs relied upon by Mr. Bandemer were not made available for Moog's inspection until after Moog's Motion was filed.  *See* Joint Report at 21-22.  And it was only in Skyryse's April 24, 2023 opposition to Moog's Motion that it was first revealed that Mr. Bandemer was able to recover or match 30 of the 32 deleted files.  *See* Opp. at 7.

At the June 15, 2023 hearing, counsel for Skyryse argued that Moog's Motion did not prompt its recovery efforts.  Rather, Skyryse's counsel asserted that "because [Moog's counsel] said they would move for an adverse inference, of course, we redoubled the efforts," so "[t]hat is not in response to the motion, it's in response to them telling us after many months we thought the issue had been resolved through litigation, that it wasn't resolved from their perspective."  *See* June 15, 2023 Tr. at 22:18-24.  Moog's counsel countered that "the fact that those files were deleted, it should not be that we should have to keep pressing them for them, to making efforts to try to resuscitate them." *Id.* at 23:11-14.

The Court agrees with Moog.  The responsibility for addressing Mr. Wang's spoliation and recovering the deleted files has always been Skyryse's.  And based on the record before the Court, Skyryse did not take steps to recover or resuscitate the 32 files *until* it faced Moog's Motion for an adverse inference and other sanctions.  "[I]f there is a chance the filing of the motion prompted [Skyryse's] compliance, [Skyryse] should not necessarily be exempted from paying expenses merely because [it] ha[s] complied."  Docket No. 484 at 7 (citing *Varney v. Cal. Highway Patrol*, No. 3:11-cv-04193-THE-(JSC), 2013 WL 2299544, at *3 (N.D. Cal. May 24, 2013)).

At the June 29, 2023 hearing, counsel for Skyryse attempted to "dispel the notion" that Skyryse purposely waited to recover the 32 deleted files, primarily by pointing to the efforts undertaken when the spoliation was discovered.  The Court, however, acknowledged these efforts in its prior ruling, highlighting that Skyryse promptly informed Moog's counsel and the Court about the deletions and immediately hired the forensic firm FTI to recover the deleted files.  *See*

3

Tentative Ruling at 4-6.  Yet, based on the timeline presented by both parties, Skyryse failed to take *further* steps to recover/resuscitate the remaining 32 files until the Spring of 2023.  In fact, as noted above, the VSCs used to recover the deleted files were not made available to Moog until after Moog's Motion was filed.  *See* Joint Report at 21-22.  And Skyryse never notified Moog of its additional efforts to recover the 32 files *until* it filed its opposition brief to Moog's Motion.

For these reasons, the Court awards Moog $17,425 in attorneys' fees and costs incurred in making the Motion.  The Court orders Skyryse to make the required payment of $17,425 to Moog's counsel by July 31, 2023.

      **B.**    **Remaining Production and/or Inspection Requests**

Turning to the remaining disputes identified in the parties' Joint Report, apparently the parties have reached an impasse as to (1) production of Lori Bird and Reid Raithel's Skyryse-issued laptops; (2) production of Skyryse's Polarion Repository; (3) production of Skyryse's Google Drive Account; and (4) production of Skyryse's Git Repository.  *See generally* Joint Report.  In its Motion, Moog argued that it was entitled to contempt sanctions because (1) Skyryse has produced large volumes of Moog non-public information after April 1, 2022 and (2) Skyryse has repeatedly used Moog non-public information after March 11, 2022.  Mot. at 27-28.  As reflected in the Tentative Ruling, the Court determined that "too much uncertainty remains for the Court to conclude that Skyryse was not, at least, substantially complying with the TRO Stipulation in good faith by supplementing its initial April 1, 2022 production."  Tentative Ruling at 18.  In addition, the Court ruled that it could not "find that the documents purportedly used by Skyryse constitute Moog's non-public information, as opposed to information publicly available on the internet or readily available from third parties, given the parties' factual dispute on this issue." *Id.* at 21.  Accordingly, the Court concluded that "granting Moog's Motion and ordering all of its requested sanctions would be premature." *Id.* at 22.

That said, the Court noted its concerns about Skyryse documents that appeared almost word-for-word identical to corresponding Moog documents, and Skyryse's delay in removing the source code for its SDTE and portions of its sRTOS software programs and frameworks from its systems.  *Id.* at 21.  Additionally, the Court acknowledged Moog's concerns regarding whether its MDTE, eRTOS, and checklists "have been fully wiped from Skyryse's systems," and whether Skyryse had complied with the TRO Stipulation's preservation obligations.  *Id.* at 22.  Therefore, while granting all of Moog's requests would be premature, the Court ordered the parties to meet

and confer to discuss "(1) the issues surrounding Skyryse's preservation measures, (2) the issues surrounding Skyryse's removal of SDTE, sRTOS, and prior checklists from Skyryse's systems, and (3) Moog's production and inspection requests (*i.e.* production of Skyryse-issued electronic devices issued to 15 Skyryse personnel, production of Skyryse's Google Drive Account, etc.)." *Id.*

Despite the Court's determination that "ordering all of its requested sanctions would be premature," *id.*, Moog continues to seek production of (1) Skyryse's entire Polarion Repository into iDS for Moog's review, (2) Skyryse's entire Google Drive Account into iDS for Moog's review, and (3) Skyryse's entire Git Repository into iDS for Moog's review. *See* Joint Report at 9-14. In fact, Moog's current position actually expands on its original request as it previously only demanded "inspection" of Skyryse's Polarion Repository and source code. *See* Mot. at 32. Now, Moog offers in-person inspection of the Polarion and Git Repositories as "a compromise." *See* Joint Report at 10, 16.

The Court, however, agrees with Skyryse that Moog is not entitled to full, unfettered access to these databases/accounts/repositories, in light of the Court's determination that "ordering all of [Moog's] requested sanctions would be premature." Tentative Ruling at 22. Moreover, it appears that these databases/accounts/repositories contain Skyryse's sensitive and confidential business information, such as its software documents and plans and source code, as well as information that may be unrelated to the claims or defenses in this action. Accordingly, as discussed more thoroughly below, the Court declines to order production of Skyryse's entire Polarion Repository, Google Drive Account, and Git Repository.

      i.   *Polarion Repository*

First, Moog seeks production of Skyryse's entire Polarion Repository, which is where Skyryse's software process documents and plans are stored. Joint Report at 9. Moog argues that "[c]omplete access to the Skyryse Polarion Repository is needed to determine to what extent Skyryse personnel are continuing to access and use Moog data." *Id.* Because Skyryse has represented that "it is no longer using Moog's certification documents," Moog avers that it is "entitled to vet this claim" and must do so with "access to the entire Polarion Repository." *Id.* Skyryse counters that it has "already voluntarily produced numerous documents exported from Polarion" and that "the mere fact that Polarion exists is not a basis to produce all of the data it contains to Moog regardless of relevance, burden, or proportionality." *Id.* at 10.

5

The Court agrees with Skyryse. Just because Skyryse uses the Polarion Repository to store its software process documents and plans, does not entitle Moog to full access of all of its contents, without any limitations as to scope or relevance. At this stage of the proceedings, the Court agrees with Skyryse's proposal for the parties to meet and confer on a set of search terms that will enable Skyryse to conduct a search for relevant material. Skyryse has already agreed that "[i]f, after reviewing the search results, Moog can articulate a specific need for other specific, identifiable relevant information from Polarion, Skyryse would produce it." *Id.* at 11.

At the June 29, 2023 hearing, counsel for Moog raised concerns regarding the limitations of search terms. For example, counsel argued that search terms will not retrieve drawings or schematics, or pick up on structural similarities. However, other than granting access to the entire Polarion Repository (through production or inspection), counsel for Moog failed to offer a workable alternative to search terms.[1] Further, counsel for Skyryse countered that search terms would work and suggested that the parties meet and confer to discuss search terms that would capture schematics and images. The Court agrees with this initial approach. Therefore, the Court orders the parties to meet and confer regarding a set of search terms to run across the Polarion Repository, including search terms to locate schematics and other images/drawings.

    ii.    *Google Drive Account*

Second, Moog seeks production of Skyryse's entire Google Drive Account so that it can "understand[] the full nature and scope of Skyryse's use and disclosure of Moog data." *Id.* at 12. In an "effort to reach a compromise," Moog stated that "it is open to Skyryse removing from its production of its Google Drive Account any portions or folders which: 1) have no relation to flight control and have never stored any data or documents related to flight control; or 2) were never accessed by Hummingbird personnel, any former Moog employee, or [certain] Skyryse personnel." *Id.* However, Skyryse would have to "identify any of these portions, including by providing the portion/folder names and their contents generally" for Moog "to consider removing these portions from production." *Id.*, Ex. 3 at 6. Skyryse counters that access to its "entire, enterprise-wide Google Drive … would invariably include information unrelated to the claims or defenses in this case" and that "[c]ounsel's speculation that some portions of Skyryse's Google

---

[1] Indeed, even if Moog were allowed access to the entire Polarion Repository, presumably it would not proceed to review every single page of every single document to attempt to locate and examine every single schematic contained therein.

Drive *might be* relevant is not a sufficient basis to demand 'full, unfettered access' to the entire repository." *Id.* at 13. Instead, Skyryse "is willing to run an appropriate set of search terms over any Google Drive folders shared with Hummingbird personnel, review the search hits, and produce relevant, non-privileged information." *Id.*

The Court agrees with Skyryse. The TRO Stipulation does not entitle Moog to "full, unfettered access" to Skyryse's *entire* Google Drive Account, especially since Moog has identified only a single Google Drive folder that Mr. Pilkington purportedly shared with Hummingbird employees. *See id.*, Ex. 3 at 6 (citing Docket Nos. 400-3 at ¶¶ 50-35 & 400-5 at ¶¶ 101-109). At the June 29, 2023 hearing, counsel for Skyryse sought clarification on the breadth of the search and asked to limit it to only Google Drive folders shared with Hummingbird personnel. As noted above, Moog offered to limit the scope of its request by excluding folders that either (1) have no relation to flight control or (2) were never accessed by Hummingbird personnel, former Moog employees, or certain identified Skyryse personnel. *See* Joint Report at 12. At the hearing, Skyryse's counsel argued that searching all folders related to flight control would be too broad as flight control is the majority of Skyryse's business. The Court agrees. As such, the Court finds that limiting the search to Google Drive folders that were accessed by Hummingbird personnel, former Moog employees, or certain Skyryse personnel is a reasonable accommodation.

Accordingly, the Court orders the parties to meet and confer regarding a set of search terms, including search terms to locate schematics and other images/drawings, to run across the Google Drive Account folders that were accessed by Hummingbird personnel, former Moog employees, or the identified Skyryse personnel in the parties' Joint Report.

   iii. *Git Repository*

Next, Moog seeks production of Skyryse's entire Git Repository, which stores its flight control source code. Joint Report at 14. Moog argues that it "cannot vet" Skyryse's claim that "Moog's data has been removed from its source code repositories" "unless and until it has an opportunity to inspect the entirety of Skyryse's source code repositories." *Id.* at 15. Skyryse counters that "Moog refuses to focus its demands on source code that may actually relate to the subject matter of this litigation." *Id.* at 16. Skyryse contends that it "has already produced all of its source code from the Git [R]epository that was accessed by Ms. Kim and Mr. Pilkington, the Individual Defendants whom Moog alleges misappropriated Moog's source code," including "source code worked on by the software teams Ms. Kim and Mr. Pilkington worked with" at

7

Skyryse. *Id.* at 16-17.[2] Skyryse objects to Moog's "sweeping demand to examine all of the source code in the *entirety* of Skyryse's source code repository—knowing that it contains some of the company's most valuable, proprietary, and confidential data that has nothing to do with this suit—without any showing of relevance or proportionality." *Id.* at 17.

      Again, the Court agrees with Skyryse. The TRO Stipulation does not entitle Moog to "full, unfettered access" to Skyryse's *entire* source code, without any limitations as to scope or relevance. Nor does the TRO Stipulation entitle Moog to the entirety of Skyryse's source code repository so that it can "vet" Skyryse's claim that Moog data has been removed from its source code repositories. Nevertheless, in the Joint Report, Moog argues that "[t]he fact that Skyryse only produced code accessed by [Ms.] Kim and [Mr.] Pilkington is not appropriate" because Skyryse's representations were not limited to code accessed by Ms. Kim and Mr. Pilkington and Skyryse's possession, use, and disclosure of Moog data "goes far beyond [Ms.] Kim and [Mr.] Pilkington." *Id.* at 16-17. To combat these concerns, the Court orders the parties to meet and confer on a set of search terms, including terms that encompass schematics, and for Skyryse to produce any responsive, non-privileged source code for inspection according to the parties' agreed-upon protocol.

      With respect to the laptops, Moog's initial request was for 15 laptops to be imaged and produced, *see* Mot. at 31, and it was the Court's suggestion that narrowing the request to two laptops is a reasonable accommodation, *see* Tentative Ruling at 23 n.19. Following this suggestion, Moog now requests the production of Skyryse-issued laptops to Ms. Bird and Mr. Raithel. *See* Joint Report at 2-5.

      The Court finds that a sufficient showing has been made as to these two laptops. For example, Mr. Raithel purportedly copied 27,118 Moog files from his Moog laptop to a USB drive just before joining Skyryse. *See* Reply at 10. While Skyryse contends that Mr. Raithel did not plug his USB device into his Skyryse laptop, *see* Joint Report, Ex. 2 at 2 n.1, Moog argues this conclusion is faulty because Skyryse's expert only reviewed the daily-out log to see whether the one specific USB device identified by Moog had been connected at the time the daily log recorded, *see* Reply at 10. However, according to Moog, daily-out logs "often do not show evidence of files copied from a USB thumb drive or external hard drive." Joint Report, Ex. 3 at 3. Because further

---

[2] Skyryse notes that "[t]hat code has been available for months for Moog's experts to inspect" and that "Moog's experts have been inspecting a recent version." *Id.* at 17.

analysis is needed, a physical inspection is warranted.

Regarding Ms. Bird, on November 17, 2022, she produced approximately 90 documents in response to a subpoena, which purportedly indicated that she "frequently possessed, received, accessed, transmitted, and used Moog" documents and data during her tenure at Skyryse. Mot. at 17. In addition, in her responses to the subpoena, Ms. Bird stated that "several categories of documents responsive to Moog's subpoena would in the possession of Skyryse through [her] Skyryse-issued laptop and/or e-mail account." *Id.* Thereafter, on February 17, 2023, Skyryse produced 2,920 documents from Ms. Bird and indicated that this production was from Ms. Bird's personal devices. *Id.* at 20.[3] Moog avers that the "[t]iming of this production, only after Skyryse received multiple productions from third parties implicating Ms. Bird, is highly concerning." Joint Report, Ex. 3 at 3. The Court agrees.

While the Court acknowledges Skyryse's privacy concerns with turning over these laptops, Moog asserts that its access to these two laptops would not be unrestricted as its review would be subject to the iDS protocol. *Id.*, Ex. 3 at 3. At the June 29, 2023 hearing, counsel for Skyryse again raised privacy concerns relating to production of these laptops. However, counsel for Moog indicated that the iDS protocol only permits experts to access the forensic images of the laptops in the iDS environment. Thereafter, Moog would have to submit a request to extract certain materials, which Skyryse would then need to approve. With this understanding in mind and because Moog has made a sufficient showing for these two laptops, the Court orders Skyryse to produce complete forensic images of Ms. Bird and Mr. Raithel's Skyryse-issued laptops to iDS within 30 days of this Order, after conducting a privilege review.

Finally, the Court ordered the parties to meet and confer on "issues surrounding Skyryse's removal of SDTE, sRTOS, and prior checklists from Skyryse's systems." Tentative Ruling at 22. During meet and confer, Moog purportedly asked Skyryse to confirm whether Skyryse has taken any efforts beyond its central source code repository to cut-off access to SDTE, portions of sRTOS, and its historical checklists, and Skyryse's counsel purportedly stated that he had nothing to add beyond Mr. Koo's testimony. Joint Report at 18. In the Joint Report, Skyryse asserts that it "took steps to ensure that any code arguably related to SDTE was removed from its source code

---

[3] In the Joint Report, Skyryse clarifies that its e-discovery vendor mistakenly indicated that the produced documents relating to Ms. Bird were collected from personal devices and records. Joint Report at 8 n.3. In fact, Skyryse concedes that some of the documents were collected from a Skyryse-issued computer. *Id.*

9

repository" and "removed from its sRTOS source code any files or directories that arguably constitute Moog's proprietary, confidential, or non-public information." *Id.* at 19. In addition, Skyryse confirmed that it has "instructed its employees to refrain from using any information (which would include source code, templates, and checklists) that could arguably constitute Moog's non-public information" and has also "instructed its employees to inform counsel if they identify any information that could arguably constitute Moog's proprietary, confidential, or non-public information." *Id.* at 19. While Moog requests that "the Court consider Skyryse's remedial and preservations efforts, or lack thereof, in ruling on Moog's pending Motion," *id.* at 18, it appears that Skyryse is complying with its obligations under the TRO Stipulation.

### III. Conclusion

Based on the foregoing discussion, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion as follows:

1. The Court awards Moog $17,425 in attorneys' fees and costs incurred in making the Motion and orders Skyryse to make the required payment to Moog's counsel by July 31, 2023;

2. The Courts orders the parties to meet and confer regarding search terms, including search terms to locate schematics and other drawings/images, to run across the Polarion Repository, the Git Repository, and the Google Drive Account folders noted above, and to have a finalized set of search terms by July 31, 2023. Thereafter, Skyryse shall have until September 15, 2023 to produce any relevant material; and

3. The Court orders Skyryse to produce complete forensic images of Ms. Bird and Mr. Raithel's Skyryse-issued laptops to iDS within 30 days of this Order, after conducting a privilege review.