UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:22-cv-09094-GW (MAR) | Date: June 30, 2023 |
| Title: *Moog Inc. v. Skyryse, Inc. et al.* | |

Present: The Honorable: MARGO A. ROCCONI, UNITED STATES MAGISTRATE JUDGE

| Valerie Velasco | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Rena Andoh | Gabriel S. Gross |
| Michael K. Heins | |

**Proceedings: MOTION FOR ORDER OVERRULING MOOG'S OBJECTION TO SKYRYSE'S DISCLOSURE OF CONFIDENTIAL INFORMATION TO VINCENT SOCCI, DKT. 517.**

On June 7, 2023, Defendant, Skyryse, Inc. ("Skyryse") filed a Motion for Order overruling Plaintiff, Moog Inc.'s ("Moog") objection to Skyryse's disclosure of confidential information to Vincent Socci ("Motion"). ECF Docket No. ("Dkt.") 517. In response to Skyryse's Motion, Moog asked the Court to disqualify Vincent Socci as an expert. Dkt. 518 at 8.[1] For the reasons set forth below, Skyryse's Motion to Overrule Moog's objection is **DENIED** and Moog's request for Vincent Socci to be disqualified as an expert is **GRANTED**.

**I.
BACKGROUND**

Plaintiff Moog is an aerospace and defense company. Dkt. 1 at 4. "The company's largest business segment is aircraft controls, which generates revenues from military and commercial aircraft in addition to aftermarket support." Id.

Around 2021, Defendant Skyryse, a competing company, hired twenty (20) Moog employees, including individual Defendants Misook Kim and Alin Pilkington (collectively "individual Defendants"). Id. at 24–5. In January 2022, Moog investigated whether any individuals who had left Moog for Skyryse had taken or copied files from Moog. Id. at 28–9. That investigation "revealed that, while still a Moog employee, on November 19, 2021, Defendant Kim copied [a] significant volume of data from Moog's internal servers to an external hard drive, amounting to greater than 136,000 files." Id. at 29. While Kim had access to these files on her own she specifically used the file path of Defendant Pilkington—her former direct supervisor—to retrieve the files. Id. at 32. Additionally, over 1.4 million files were stolen, and many of the stolen files were deleted after they were taken. Dkt. 205 at 3.

The previously assigned magistrate judge stayed discovery in this case, ordered that Moog identify the trade secrets it planned to assert in their motion for a preliminary injunction, and

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:22-cv-09094-GW (MAR) | Date: June 30, 2023 |
| Title: | *Moog Inc. v. Skyryse, Inc. et al.* | |

allowed limited discovery for Moog to search the files that were stolen to identify the trade secrets. Dkt. 205. Discovery in this case remains stayed while Moog is amending its trade secret identifications. See Dkt. 534. However, the Court has ordered that any future challenge to Moog's trade secret identifications must be supported by expert testimony.[2] Id. Skyryse implies Vincent Socci ("Socci") could be the expert they use to challenge the trade secret identification, and thus the instant dispute needs to be resolved before the stay is lifted. Dkt. 518 at 9.

Socci is a uniquely qualified engineer, aviation industry veteran, and technical consultant, who, from 2005 to 2009, worked as a consultant for Moog. Dkt. 518 at 13. As per the parties Protective Order in the case, if a party seeks to disclose confidential information to an expert they must make a written request to the designating party. Dkt. 89 § 6.6(c). If the designating party objects, then the party seeking to disclose may file a Motion with the Court. Id. When Skyryse requested Moog's permission to disclose information to Socci, Moog objected. Dkt. 536 at 4. Skyryse has thus asked the Court to overrule Moog's objection, arguing that Moog has failed to meet its burden to show "that the risk of harm the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to the Expert." Id. (citing Dkt. 89 § 6.6(c)). Skyryse asserts Moog's objection is not based on any threat of competitive risk that the protective order will not already protect against, and thus the Court must overrule Moog's objection. Dkt. 518 at 19.

Moog clarifies that they are not objecting to expert disclosure out of concern that it will create a competitive risk in the marketplace. Id. at 38. Instead, Moog is asking the Court to specifically disqualify Socci from being used as an expert in this case because he was a former employee of Moog who worked on projects at issue in this case; Moog argues that this relationship will give Skyryse an unfair advantage in this litigation. Id. at 29. Moog characterizes the question of whether or not Socci should be disqualified as a witness as a "threshold issue," because if Socci is disqualified, Moog's objection would be moot because confidential information cannot be shared with a non-expert. Id.

The Court finds Moog's argument persuasive. If Socci is disqualified as an expert due to his prior relationship with Moog, then Skyryse cannot disclose any information to him as a non-expert. As such, the Court will first determine whether Socci should be disqualified before reaching the issue of Moog's objection.

///
///
///

---

[2] The Court notes that on June 28, 2023, Skyryse filed a Motion before the district court to review this Court's trade secret identification order. Dkt. 555. The hearing on that Motion is set for August 24, 2023. Id. In their Motion Skyryse does not ask for review on the Court's ordered requirement that all future challenges to the trade secret identification be supported by an expert declaration. As such, the outcome of that pending motion does not affect the Motion here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   2:22-cv-09094-GW (MAR)                                                      Date:  June 30, 2023

Title:    <u>Moog Inc. v. Skyryse, Inc. et al.</u>

## II.
## DISCUSSION

### A. PERTINENT LAW

"Federal courts have the inherent power to disqualify expert witnesses in certain circumstances to protect the integrity of the adversary process and to promote public confidence in the legal system." <u>Space Systems/Loral v. Martin Marietta Corp.</u>, No. 95-20122 SW, 1995 WL 686369, *2 (N.D. Cal. Nov. 15, 1995) (citing <u>Wang Laboratories, Inc. v. Toshiba Corp.</u>, 762 F.Supp. 1246, 1248 (E.D. Va. 1991)).  "In situations where a party retains an expert witness who previously worked for an adversary and who acquired confidential information during the course of his employment, disqualification may be appropriate." <u>Pellerin v. Honeywell Int'l Inc.</u>, No. 11cv1278-BEN (CAB), 2012 WL 112539, *2 (S.D. Cal. Jan. 12, 2012) (citing <u>Space Systems/Loral</u>,1995 WL 686369, *2).  Disqualification is generally warranted if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation.  <u>Hewlett Packard Co. v. EMC Corp.</u>, 330 F.Supp.2d 1087, 1092 (N.D. Cal.2004).  The party seeking disqualification bears the burden of establishing that both elements of the disqualification test have been established.  <u>Stencel v. Fairchild Corp.</u>, 174 F.Supp.2d 1080, 1083 (C.D. Cal. 2001); <u>Hewlett Packard Co.</u>, 330 F.Supp.2d at 1093 ("[I]f only one of the two factors is present, disqualification likely is inappropriate.").

The party seeking disqualification of an expert witness must demonstrate that it was objectively reasonable for it to believe a confidential relationship existed with the expert.  <u>Id.</u>; <u>Stencel</u>, 174 F.Supp.2d at 1083.  The existence or absence of a contract between the parties is not determinative.  <u>Stencel</u>, 174 F.Supp.2d at 1083.  In evaluating the reasonableness of a party's assumption, courts consider several factors including:

> whether the relationship was one of long standing and involved frequent contacts instead of a single interaction with the expert, whether the expert is to be called as a witness in the underlying case, whether alleged confidential communications were from expert to party or vice-versa, and whether the moving party funded or directed the formation of the opinion to be offered at trial.

<u>Id.</u>  The emphasis in evaluating whether a confidential relationship existed "is not on whether the expert was retained per se but whether there was a relationship that would permit the litigant reasonably to expect that any communications would be maintained in confidence." <u>Twin City Fire Ins. Co. v. Mitsubishi Motors Credit of Am., Inc.</u>, No.04-0043 CAS (MLGx), 2006 WL 5164249, at *3 (C.D. Cal. Nov.6, 2006).

Finally, "[c]ourts have also discussed policy considerations such as the right of a party to retain an expert of its choosing, the prejudice the retaining party might experience if not allowed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-09094-GW (MAR)          Date: June 30, 2023

Title: *Moog Inc. v. Skyryse, Inc. et al.*

choose its own expert, and maintaining the integrity of the judicial process." See Alien Tech. Corp. v. Intermec, Inc., No. 3:06-cv-51, 2007 WL 4261972, at *6 (D. N.D. Nov. 30, 2007); see also Koch Refining Co. v. Jennifer L. Boudreaux, MV, 85 F.3d 1178, 1181 (5th Cir. 1996); Space Sys./Loral, 1995 WL 686369, at *2, *3).

**B.     PERTINENT FACTS**

It is undisputed that Socci worked as a contractor for Moog from December 21, 2005, through 2009. Dkt. 518 at 28. Skyryse asserts that Socci was a contractor for Moog—not an employee. Id. at 11. They also note that Socci has not worked for Moog in fourteen (14) years, does not remember the substance of anything he worked on while at Moog, has no continuing confidentiality obligations to Moog, and will abide by the protective order in this case. Dkt. 536 at 6. Skyryse also contends that Moog's bare assertion that they were in a confidential relationship with Socci—without showing Socci has continuing confidentiality obligations or that Socci has breached his confidentiality obligations in the past—is insufficient to meet their burden. Id. at 6. Finally, Skyryse notes Moog has not provided any confidentiality agreements that it had with Socci.[3] Id. at 3.

Moog asserts Socci was hired as a contractor to work on confidential projects and was given an employee number. Dkt. 518-4 at 3. He worked approximately 3000 hours over the course of his time with Moog. Dkt. 518 at 8. Socci worked on many confidential projects, including those related to some of the trade secrets at issue in this case. Id. at 24. Specifically, Moog asserts Socci worked on Controlled Unclassified Information Trade Secret ("CUI TS") 5, and non-CUI Trade Secrets ("non-CUI TS") 17 and 18. Id. at 32.

**C.     ANALYSIS**

     **1.     Confidential relationship**

First, a confidential relationship may have existed between Moog and Socci even if Socci was a contractor rather than an employee. See In re Incretin Mimetics Prods. Liab. Litig., No. 13md2452 AJB (MDD), 2015 WL 1499167, at *11 (S.D. Cal. Apr. 1, 2015) (disqualifying expert for prior consulting relationship with opposing party where confidential relationship was found). Additionally, a confidential relationship may have existed even in the absence of a contract or confidentiality agreement. See Stencel, 174 F.Supp.2d at 1083. Ultimately, whether a confidential relationship existed hinges on whether it was reasonable for Moog to believe that such a relationship existed. See Hewlett Packard Co., 330 F.Supp.2d at 1093.

---

[3] Moog was unable to find any confidentiality or employment agreements signed by Socci. Dkt. at 558 at 1. However, at the Court's request, Moog filed exemplars of agreements that its engineering employees and contractors signed when working for Moog between 2005 and 2009. Id. These agreements show, in pertinent part, an ongoing confidentiality obligation regarding information the contractors attained through their work with Moog. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   2:22-cv-09094-GW (MAR)                                                         Date:  June 30, 2023

Title:      *Moog Inc. v. Skyryse, Inc. et al.*

Upon consideration of the factors listed in Stencel, there is no question that Moog expected confidentiality from Socci.  Moog is in the aerospace and defense industry, holding contracts from the government and military businesses.  Dkt. 518 at 23.  Moog asserts that specific projects imposed unique confidentiality obligations on their consultants, in addition to the confidentiality obligations imposed through government statutes, regulations, and executive orders.  Id.  Indeed, both Moog's claims and Skyryse's counter claims center around alleged breaches of confidentiality between these two companies, both of which work in this highly regulated and confidential business sector.  Furthermore, Socci's professional relationship with Moog spanned over four (4) years, encompassed approximately 3000 hours of work time, and specifically included several confidential projects—thus, the professional contact was far from a relationship that was limited in interaction. Dkt. 516 at 8.

As such, the Court finds it was reasonable for Moog to believe its relationship with Socci was confidential.

**2.      Information relevant to the current litigation**

Skyryse notes that Socci worked for Moog almost twenty (20) years ago and does not have or remember any confidential information of Moog's.  Dkt. 536 at 3.  Moog asserts, and Skyryse does not dispute, that Socci specifically worked on CUI TS 5, and non-CUI TSs 17 and 18, all of which are specifically at issue in this case.[4]  Id. at 32.  Additionally, Moog asserts Socci worked on many other confidential projects for Moog.  Id. at 24–6.

While Moog's trade secrets have yet to be sufficiently and finally identified, it seems clear that, while consulting at Moog, Socci worked with at least some of the private and confidential files that were allegedly stolen by Defendants.  Dkt. 536 at 31–2.  Thus, the Court finds that Moog has satisfied the second prong of the disqualification test; Moog has demonstrated that Socci was likely exposed to, and even helped develop, confidential material that is relevant to the current litigation. See Oracle Corp. v. Drug Logic, Inc., No. C-11-00910, 2012 WL 2244305, at *7 (N.D. Cal. June 15, 2012) ("[T]he record as a whole supports Oracle's contention that Dr. Nelson had access to confidential information about the accused technology-at least as to the accused Relsys products-and even played a role in developing it.").

The fact that Socci has not worked with Moog since 2009 does not obviously factor into the test for disqualification, and the Court is not persuaded why this fact should alter its conclusion.

---

[4] Skyryse argues that, by relying only on its own terminology, Moog has not sufficiently explained what sort of work Socci did on these trade secrets.  Dkt. 518 at 14.  While this Court has ordered Moog to identify its trade secrets with more particularity, see Dkt. 534, the initial identifications were sufficient to make Skyryse well aware of the general subject matter or projects identified as CUI-TS 5 and Non-CUI TS 17 and 18.  Indeed, the Court clearly understands what Moog is asserting Socci has worked on.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-cv-09094-GW (MAR)                                                          Date:  June 30, 2023

Title:       *Moog Inc. v. Skyryse, Inc. et al.*

Skyryse alleges that Socci has not disclosed and does not intend to disclose any confidential information, and that Socci does not remember any confidential information from Moog.  Dkt. 536 at 3.  However, if any expert who would otherwise be disqualified could avoid disqualification by making these same claims and promises, it is likely that no one would ever be disqualified.  While Socci may not be able to specifically recall anything he learned while working with Moog or believe that anything he learned will be relevant to this litigation, the danger is that no one, even Socci himself, may be able to predict in this moment how the information Socci learned from Moog may affect his opinion.  Socci may inadvertently use information he knows about Moog through his previous confidential relationship to form his opinions, going beyond what has been provided to him through discovery.  "This is because 'the human brain does not compartmentalize information in that manner.'"  Pellerin, 2012 WL 112539, at *3 (citing Alien Tech. Corp., 2007 WL 4261972, at *1).

Ultimately, it seems clear that Socci worked in proximity to information relevant to the instant litigation during his time at Moog.  Despite the fact that he has not worked for Moog in fourteen (14) years and may not believe he retains any relevant information, the risk that Socci's expert opinion and testimony could be influenced by information he knows from his time at Moog is obvious, and too great to disregard.

   **3.      Public policy**

Finally, public policy weighs in favor of disqualifying Socci.  While Skyryse does have the right to choose its own experts, the Court must be cognizant of the fairness of the judicial process.  Alien Tech. Corp., 2007 WL 4261972, at *6–7.  First, Skyryse claims disqualifying Socci will prejudice them because Socci is uniquely qualified as an expert in this field and has litigation experience.  Dkt. 518 at 7.  However, Skyryse does not argue that there are no other similarly qualified experts that they could utilize; in fact, they have at least three other expert engineers who they have already noticed in this case.  Id. at 34.  Skyryse has failed to show that, if Socci is disqualified, Skyryse will be without any other adequate alternatives—alternatives who, importantly, are not former employees of their adversary in the instant litigation.  See Alien Tech. Corp., 2007 WL 4261972, at *7 (finding disqualifying expert was not prejudicial where it was not a field where few experts were available).

Additionally, at its core, this litigation arises from Skyryse hiring former Moog employees who allegedly brought over to Skyryse Moog's private files, including trade secrets and confidential information.  Skyryse's attempt to use a former Moog consultant as an expert against Moog appears eerily similar to the incident that stands at the heart of this case, where former Moog employees allegedly divulged private information to give Skyryse a competitive advantage.  If there were ever a case to be overly cautious with regard to the disqualification of an adversary's prior employee, this is it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:22-cv-09094-GW (MAR)            Date:  June 30, 2023

Title: *Moog Inc. v. Skyryse, Inc. et al.*

**4. Skyryse's request for leave to file further briefing**

At the hearing on June 28, 2023, Skyryse asked the Court to give them leave to fully brief the disqualification issue, if it was inclined to grant it.  Skyryse asserted because they completed the Joint Stipulation first, based on Moog's objection to disclosure, they were unaware of the disqualification issue.  As such, they asked to be able to fully brief the issue before the Court decides.

However, the Court notes that in the emails included as exhibits to this Motion, the parties were clearly discussing the disqualification issue in March 2023.  See Dkt. 518-13 at 2–3 ("Moog maintains its objections to Mr. Socci working as an expert for Moog, and as a non-expert, Mr. Socci is not allowed to have access to protective order material.")  Thus, Skyryse was clearly on notice of what Moog was arguing.  The fact that the parties seem to have talked past each other on the issue, whether intentionally or otherwise, does not change the fact that Skyryse was aware of what Moog was arguing and choose not to spend time in their portion of the Joint Stipulation refuting it.

**5. Conclusion**

The Court finds fairness of the case requires Socci be disqualified.  Thus, Moog's Request to disqualify Socci as an expert is **GRANTED**.  It follows that, because Socci is disqualified as an expert, Skyryse's Motion to overrule Moog's objection is **DENIED,** as moot—under the terms of the protective order, as a non-expert, Socci is not entitled to access the confidential information for any purpose.

## III.
## ORDER

Based upon the foregoing reasons, **IT IS THERFORE ORDERED** that:

(1) Skyryse's Motion for Order overruling Moog's objection to Skyryse's disclosure of confidential information to expert Vincent Socci is **DENIED**.
(2) Moog's Request to disqualify Vincent Socci as an expert in this matter is **GRANTED**.

**IT IS SO ORDERED.**

:
vv