

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

MOOG INC.,

                    Plaintiffs,

         vs.                            Case No. CV 22-9094

SKYRYSE, INC., et al,

                    Defendants.
                                      /

REPORTER'S TRANSCRIPT OF
MOOG'S MOTION TO FILE AMENDED COMPLAINT
MOOD'S MOTION TO ENFORCE TRO
Thursday, June 29, 2023
12:46 p.m.
LOS ANGELES, CALIFORNIA

TERRI A. HOURIGAN, CSR NO. 3838, CCRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA  90012
(213) 894-2849

UNITED STATES DISTRICT COURT

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:

 4       SHEPPARD MULLIN RICHTER and HAMPTON LLP
         BY:  KAZIM A. NAQVI
 5            Attorney at Law
         333 South Hope Street, 43rd Floor
 6       Los Angeles, California 90071

 7       SHEPPARD MULLIN RICHTER and HAMPTON LLP
         BY:  RENA ANDOH
 8            Attorney at Law
         30 Rockefeller Plaza
 9       New York, New York  10112

10

11   FOR THE DEFENDANT:

12       LATHAM and WATKINS LLP
         BY:  GABRIEL S. GROSS
13            RACHEL S. HORN
              Attorneys at Law
14       140 Scott Drive
         Menlo Park, California  94025

15

16

17

18

19

20

21

22

23

24

25
```

1          **LOS ANGELES, CALIFORNIA; THURSDAY, JUNE 29, 2023**

2                              **12:46 p.m.**

3                              --oOo--

4

5

6          THE COURT:  Let me call the matter of *Moog versus*

7    *Skyryse.*

8          Let me have appearances starting with plaintiff's

9    counsel first.

10         MS. ANDOH:  Good afternoon, Your Honor.  Rena Andoh

11   and Kazim Naqvi for plaintiff.

12         THE COURT:  All right.  Good afternoon.

13         MR. NAQVI:  Kazim Naqvi, Sheppard Mullin for the

14   plaintiff.

15         THE COURT:  For the defense?

16         MR. GROSS:  Your Honor, Gabe Gross, Latham Watkins

17   for the defendant and counter-defendant Skyryse.

18         MS. HORN:  Good afternoon, Your Honor.  Rachel Horn

19   for Skyryse.

20         THE COURT:  We are here on two motions.

21         One was a motion for leave to file an amended complaint

22   and the other one is a continuation of the motion to enforce

23   compliance, and also -- I guess, that's the easiest to

24   summarize that one.

25         I will do the motion for leave to file the amended

```
 1   complaint first.  I issued a tentative on both of these as to
 2   that particular motion.
 3        Does anybody want to argue anything?
 4        MR. NAQVI:  Yes, Your Honor.  This is Kazim Naqvi
 5   for the plaintiff, briefly.
 6        We thank the Court for its tentative ruling.  We
 7   understand that the Court is inclined to grant leave to amend
 8   as to the conversion claim and a portion of the implied
 9   covenant claim.
10        We appreciate the Court's directives.  We are prepared
11   to submit on the tentative, and we will amend the pleading,
12   accordingly.
13        THE COURT:  Let me ask the defense, do you want to
14   see what they amend and then respond with the new motion or
15   what?
16        MS. HORN:  Your Honor, we have some argument for
17   today.
18        THE COURT:  I can't hear you.
19        MS. HORN:  May I remove my mask?
20        I would like to argue today, if that is all right?
21        THE COURT:  Sure.
22        MS. HORN:  So we also thank the Court for its
23   tentative.  I want to cover three things in my time today.
24        So first thought with respect to the conversion claim,
25   we do agree, Your Honor, that is insufficient as currently
```

1    pleaded, but I want to clarify that Moog can't save that claim

2    just by, for instance, doing a better job of delineating the

3    other non-trade secret data that it alleges was taken from the

4    trade secret data.

5         That claim just can't be saved through amendment.

6         THE COURT:  When you say it can't, why couldn't it;

7    in other words, you have saying factually they can't say

8    anything.

9         Why is it that that is so completely foreclosed?

10        MS. HORN:  Right.  That is because the weight of

11   case law in California emphasizes that there is no ability to

12   plead a conversion claim for confidential information that does

13   not arise to the level of a trade secret.

14        Your Honor was right to point to the *Mattel* case on that

15   point, that was cited in the tentative in page 7.

16        In that case there is a cogent discussion of the fact

17   that as a matter of law, CUTSA supercedes the conversion claim

18   to the extent it is based on misappropriation of confidential

19   information that is not a trade secrete.

20        And there are a number of cases that we cited in our

21   brief that follow that reasoning.

22        THE COURT:  Let me stop you for a second.

23        MS. HORN:  Sure.

24        THE COURT:  There is no argument at this point then

25   that this application is not timely?

```
 1              MS. HORN:  Not at this point, Your Honor.
 2              THE COURT:  Then let me ask the plaintiff's counsel,
 3    how would you amend on this particular issue?
 4              MR. NAQVI:  Sure, Your Honor.  We think that the
 5    Court's citation to the *Byton North America Corporation* case on
 6    page 7 of the tentative ruling is on point.  The Court found it
 7    to be instructive.
 8         That case has similar facts where there was alleged
 9    misappropriation of trade secret data and then also theft of
10    non-trade secret data.
11         We have pointed out to the Court in the proposed amended
12    pleading and also in the briefing that there is a very clear
13    delineation here.
14         In our pleading we intended to very clearly define the
15    non-trade secret data.
16              THE COURT:  Give me an example of what you are
17    referring to when you say "non-trade secret data"?
18              MR. NAQVI:  This could be information that Moog has
19    both -- that it owns itself, and that it owns pursuant to
20    contracts with third parties; that it may not designate trade
21    secret protection for, but it's still proprietary information
22    that it doesn't disclose to other third parties.
23              THE COURT:  All right.  Let me ask the defense
24    counsel, what is your response to that?
25              MS. HORN:  Sure.  Again, we point to the *Mattel*
```

1    case, which makes clear that there is no property right under

2    California law in confidential information outside of trade

3    secret law.

4         That is on page 996 of that case.

5         With respect to the *Byton* case, respectfully, Your

6    Honor, we believe that case is an outlier and not consistent

7    with the weight of the case law, including *Mattel* and the

8    subsequent cases.

9         The point that the --

10         THE COURT:  Well, if it's an outlier, then there is

11    still a possibility.

12         MS. HORN:  Your Honor, respectfully --

13         THE COURT:  Can I basically deny leave to amend if

14    there is some case law, even if it's -- as you characterize it

15    -- an outlier or whatever it is?

16         MS. HORN:  Respectfully, we believe that that case

17    is wrongly decided consistent with the cogent reasoning in the

18    *Mattel* case and the *SunPower* case.

19         It all goes into the reasoning behind the enactment of

20    CUTSA, and the point of CUTSA being to provide unitary

21    definitions of trade secret misappropriation and making clear

22    that information isn't property unless some positive law makes

23    it so.

24         THE COURT:  Okay.

25         MS. HORN:  And, Your Honor, we also submit this

1    makes sense as just a matter of first principle.

2         There are specific IP schemes.  There is trade secret

3    law, there is copyright law, patent law, they each have their

4    own requirements for protection of intangible information.

5         And plaintiff can't get around those requirements and

6    create a new property right just by saying this intangible

7    information was converted to cover anything that doesn't meet

8    the requirements of those of IP regimes.

9              THE COURT:  All right.  What else do you want to

10   argue?

11             MS. HORN:  With respect to the implied covenant

12   claim, I have two points I want to argue.

13        First, on the point that Moog sufficiently pleaded a

14   breach of implied covenant based on the hiring of 20 Moog

15   employees, so we think that is incorrect.

16        The NDAs that are at issue had nothing to do with

17   hiring.  Those claims are futile.

18        The NDAs at issue are actually focused on confidential

19   information and the exchange of confidential information.  They

20   are made apart of the pleadings.  They are incorporated into

21   the pleadings, at Exhibit C and E of the proposed amended

22   complaint and there is no dispute that they contain no

23   prohibition -- not even a mention of hiring of employees.

24             THE COURT:  Well, that is why they are not arguing a

25   breach of contract on those.

1          That's why they are arguing the implied covenant because

2    if it was specifically provided for in the contract, then that

3    is what the case law says, you can't create an implied covenant

4    when the provisions are specifically provided for by the

5    contract.

6          MS. HORN:  That is true, Your Honor, but the duty

7    has to be fairly inferable from the contract as well.

8          And on that point, the Court can find -- can examine the

9    NDAs -- should find that as a matter of law an implied duty to

10   not hire Moog employees is not fairly inferable from those

11   contracts.

12         I would point Your Honor to the *Lodging Solutions* case

13   which actually supports denying leave to amend here.

14         I know Your Honor read that case, and you didn't find it

15   persuasive, but I think it's right on point here, and I would

16   like to explain that.

17         THE COURT:  All right.

18         MS. HORN:  So in *Lodging Solutions*, there was in

19   fact a valid enforceable nondisclosure agreement just like

20   there is in this case.

21         Unlike this case, in *Lodging Solutions* there was also a

22   no-poaching provision in that case.

23         The Court there found that the no-poaching provision was

24   unenforceable and effectively struck that provision, leaving an

25   enforceable otherwise NDA with confidentiality obligations, so

1      that is very similar to our case.

2             Then what the Court did with that was it dismissed on a

3      motion to dismiss, the plaintiff's implied covenant claim,

4      because the remainder of the NDA without the no-hire provision

5      did not fairly imply a duty not to hire.  So we submit that is

6      exactly on point here.

7             THE COURT:  All right.  Any response from the

8      plaintiff?

9             MR. NAQVI:  Yes, Your Honor.

10            We see that the Court properly distinguished the *Lodging*

11     *Solutions* case on page 13 of its tentative.

12            I will also point out that Moog's proposed implied

13     covenant claim is not -- as to the hiring aspect -- it's not

14     limited to the hiring of any one employee.

15            We properly alleged that the hiring of 20 Moog employees

16     was for the purpose of accessing and using -- improperly using

17     confidential information that was exchanged between the parties

18     for a purpose that was not permitted under the NDAs.

19            So we have properly alleged that the Court indicated in

20     its tentative ruling that the purposes of the NDAs were

21     subverted and undermined through this very large-scale hiring.

22     It's not about the hiring of any one employee.

23            THE COURT:  I think I understand.

24            Anything else from either side on that motion?

25            MS. HORN:  On the implied covenant claim, as it

relates to the data that was allegedly taken following the

parties' business relationship, so this is pages 16 and 17,

Your Honor's tentative found that claim to be futile, but

suggested that they could replead to draw a clear distinction

between information that was taken during the terms of the NDA

and information taken afterward.

But there is actually no set of facts here that Moog to

plead again when it tries to make that claim viable.

THE COURT:  Well, my inclination to let them try on

all of these, but not preclude the defendant for making the

same arguments.

I just want to know a little bit clearer what exactly

the plaintiffs are trying to do in these particular areas, but

I understand the arguments made, and in fact, I am kind of

teetering on the -- not the hiring -- I can't remember which

one it is now -- the first one.

MS. HORN:  Conversion claim, Your Honor?

THE COURT:  I'm kind of teetering on that one, but I

want to see what they are going to attempt to raise, and I will

I will entertain the motion.  I presume you are going to make

one again?

MS. HORN:  Thank you.

THE COURT:  Anything else on this motion?

MR. NAQVI:  Your Honor, may I make one point on the

conversion claim?

1          THE COURT:  Sure.

2          MR. NAQVI:  First of all, *Byton* is not an outlier.

3  We cited a few other cases that are similar to *Byton*.

4          I also think it is important to note we're still at the

5  early stages of this case.

6          Skyryse has challenged Moog's identification of trade

7  secrets.  The confines of what the trade secrets are going to

8  be in this case, and what the non-trade secret data is, is

9  still being litigated.

10          Our position at this early stage in the case, we should

11  be permitted to plead what has been misappropriated as trade

12  secrets, what has been stolen as to the non-trade secrets, and

13  that some of these disputes as ownership or property rights,

14  that is more appropriate for summary judgment later in the

15  case.

16          THE COURT:  Still, the plaintiff still has to

17  identify -- they can't just give a generalization as to what is

18  -- I mean, you have to specify what is the trade secret and

19  what is non-trade secret, that's what I'm looking for.

20          MR. NAQVI:  In our amended pleading, we intend to do

21  that with specificity.

22          THE COURT:  On the second motion, the motion to

23  enforce.

24          I issued a tentative on this one as well.

25          Does somebody want to argue this one?

1          MS. ANDOH:  Yes, Your Honor.  May I remove my mask?

2          THE COURT:  Sure.

3          MS. ANDOH:  Thank you, I appreciate that.

4      Your Honor, we appreciate the tentative.

5          We wanted to address with Your Honor -- and Your Honor,

6  to use a colloquialism, we got the sense from Your Honor's

7  tentative that you felt that plaintiffs might be getting greedy

8  in terms of asking for the Polarion drive, Google drive, and

9  the Git repository.

10          I just wanted to clarify a little bit what was going on

11  in the meet and confer process and what the concern is, because

12  it's really quite specific, Your Honor, as to why it is that

13  the search term proposal doesn't work.

14          It specifically -- we're not trying to be unreasonable,

15  Your Honor, it's specifically because verbal search terms do

16  not pick up drawings and schematics.  They also don't pick up

17  structural similarities.

18          For example, Your Honor, if we looked at Your Honor's

19  prior tentative, I think it was page 17, Your Honor had some

20  photographs of some charts that you had taken from different

21  versions of documents, that type of structural similarity --

22  image similarity would not be picked up by the search term

23  proposal.

24          THE COURT:  How would image similarity be ever

25  picked up?

1          MS. ANDOH:  That is exactly the problem, Your Honor.

2   The problem is is that it has been taken and used.

3          The other type of similarities that don't get picked up

4   by search terms are things like structural similarities in the

5   form of how code is written.

6          THE COURT:  Let me ask this:  Why didn't you ask for

7   those pages that have, like, a schematic or something of that

8   sort?

9          Obviously, that would be overbroad, but then it would

10  start narrowing it down from that type of request.

11         MS. ANDOH:  Because we don't -- the problem for us

12  with that, Your Honor, we don't know where they are stored on

13  their systems.  We don't know how they are sandwiched.  We

14  don't know anything about how our material was taken and

15  converted.

16         The examples we have been able to find to date really

17  come from two sources.  One of them is IDS, where search terms

18  were not used.

19         We have whole laptops that have been produced and we

20  have been able to find these schematics and drawings on those

21  laptops and did not need to use search terms in order to locate

22  them.

23         The other possibility is they have been attached to

24  e-mails that had text that happened to hit on search terms, but

25  it hasn't been a situation where our ability to identify use

1   has been that well-aided by search terms.

2          So that is why with the Google drive proposal, Your

3   Honor, we propose to have them remove certain folders that are

4   not relevant to the case, but to not do this by search terms

5   because it's not going to be effective in being able to

6   identify use.

7              THE COURT:  All right.  Let me hear a response from

8   the defense.

9              MR. GROSS:  Thank you, Your Honor.  May I?

10             THE COURT:  Sure.

11             MR. GROSS:  Gabe Gross for Skyryse.

12         Your Honor, I will address what my friend for the

13  plaintiff mentioned first, then I have a few points to make

14  about the tentative separately.

15         Search terms work.  The schematics and the diagrams that

16  the Court referred to in its tentative that we have seen in

17  this case, certainly the source code all have text.  Source

18  code is text.

19         I can't think of an example that is just an image,

20  devoid of text.  Search terms work.

21         If there are specific examples of images that are devoid

22  of text that they are interested in, we are happy to meet and

23  confer with them.

24         But I think as Your Honor appreciated in the tentative

25  ruling, the sweeping demands for -- let's take the Google drive

1    example of entire repositories that are used across the

2    enterprise by dozens and dozens of employees, that is just too

3    much.  It's not reasonable; it's not in line with what the

4    stipulated order requires.

5         So, I suggest that the order -- tentative order is spot

6    on here.  We will work in good faith with our colleagues to

7    come up with search terms that work and if they have examples

8    and reasonable requests to run searches for particular

9    schematics or images, we will talk to them about that and try

10   to get them what they think they need.

11        But I think we can have a fair amount of confidence that

12   search terms will work.

13        With that, Your Honor, if you have questions I would be

14   happy to respond.

15             THE COURT:  Any response?

16             MS. ANDOH:  Yeah.  First of all, I don't think that

17   the issue of images and schematics and other non-verbal

18   searching has been addressed, but I also to want to respond

19   directly to his statement that source code is text.

20             THE COURT:  Yes.  Why couldn't you combine key words

21   and also make a request for schematics within a certain page or

22   two pages of those words?

23             MS. ANDOH:  That assumes, Your Honor, these are all

24   compiled into these larger documents.

25        We don't know that is true.  We don't know whether they

1    are housed in folders; in other words, we're literally shooting

2    in the dark.

3         Your Honor's proposal would make sense if there was a

4    presumption that there were large documents in which schematics

5    are enclosed, but some of these stolen files are just the

6    drawings.  They are just the schematics.  There is nothing else

7    associated with them.

8         And, Your Honor, I would also --

9         THE COURT:  I understand.  How would one be able to

10   locate the schematics?  You are saying there is no term --

11   there are no terms associated with the schematics, well then

12   how could one find the schematics?

13        MS. ANDOH:  By looking at the names of folders that

14   discuss things that would house schematics.

15        THE COURT:  I presume that.  But if you make the

16   names of those folders search terms, then those folders would

17   pop up.

18        MS. ANDOH:  That is true, Your Honor.  Their

19   proposal is they would review the materials that are inside the

20   folders before they produce them to us.  And so, in fact, we

21   don't -- they are not proposing to turn over folders.

22        THE COURT:  Why don't you ask them if the search

23   term is the name of a folder that they will have to inform you

24   as to whether or not there are any schematics in that folder.

25        If there are, then you guys can meet and confer and see

**UNITED STATES DISTRICT COURT**

1    if that leads somewhere.

2              MS. ANDOH:  I think that could work with respect to

3    the schematics piece of it, but there are nuances of it that

4    are quite critical.

5         One of them has to do with source code, and I want to

6    give a specific example here.

7         So sometimes the copying of source code, Your Honor, is

8    not actually the text of the source code.  Sometimes it's the

9    structure.

10        What actually happened in this case, based on what our

11   experts are telling us is, for example, that with respect to SR

12   toss, which was one of the proprietary source code files that

13   we allege was taken and used by Skyryse, the actual code itself

14   was not what was used.

15        There was a very unique structure to the way that the

16   code had been put together.  Specifically, there were seven

17   different layers of this code that had been pulled together in

18   a very specific way.

19        And what we found is that what was renamed SR toss, even

20   though the physical coding used different commands, that the

21   structure of those seven layers was almost identical.

22        So the way in which our expert was able to identify that

23   there was use of the code wasn't by a cut and paste copy.

24        It was done, obviously, by looking at the architecture

25   while the new code was being put together.

1       That is also the type of use that will not be snagged by

2   search terms because Skyryse's proposal assumes that the same

3   actual coding is being used as opposed to the architecture.

4           THE COURT:  Let me hear a response from the defense.

5   What's your response to that?

6           MR. GROSS:  Your Honor, this is first time I'm

7   hearing about that.  I do think your order to meet and confer

8   makes sense.

9       My initial impression is, one, that this is the type of

10  problem that arises when a plaintiff takes discovery first

11  before it identifies its trade secrets with specificity and

12  then tries to conform what it sees to a theory of

13  misappropriation that doesn't match a previously identified

14  trade secret.

15      I have reason to believe, based on work we have done

16  with our experts in learning about this case, that these are

17  tosses which stands for realtime operating system.  They have

18  been around in the industry for years and years and are well

19  known and there may be structural similarities between our

20  tosses when they are -- it sounds like admittedly not

21  similarities in the code -- it's probably to be expected.

22      So to leave to the conclusion it's evidence of

23  misappropriation of a trade secret, we think is premature.

24  That is my initial reaction.

25          But to go back to the point here, one of the reasons

1   search terms work, and they may include the metadata, which is

2   the information about the files as opposed to their contents

3   too, Moog has told the Court and stated in its pleadings since

4   the outset of this case, that it knows from its own information

5   systems what files its two former engineers allegedly copied.

6   It knows what files were taken and it knows some information

7   about them.

8           I go back to the point I was making earlier, based on

9   Moog's information, what it already knows about its own files,

10  it cannot only meet and confer with us with about an effective

11  set of search terms, but if it has schematics, images,

12  something about the code or its structure that it wants us to

13  search for, we will be happy to meet and confer with them on

14  that.

15          This doesn't justify this sort of unlimited searches and

16  inspections that I think the Court has rightly tentatively

17  denied.

18              MS. ANDOH:  Your Honor, there is yet another set of

19  problems with the search term proposal, it also assumes that

20  the relevant information that would hit on search terms hasn't

21  been intentionally deleted.

22          We have seen a number of instances with respect to the

23  use of our files --

24              THE COURT:  How do you know that?

25              MS. ANDOH:  So we know because in the IDS

1   environment, what we found and several --

2          THE COURT:  Assuming -- I mean, you might have been

3   told that has been done, but how would you search to see if

4   that were done?

5          MS. ANDOH:  So, there are several different ways in

6   which it can be done, and I'm going to be very careful to point

7   out that I'm not actually our expert, so I'm going to try to

8   paraphrase this.

9          As I understand it, they were able to match -- they were

10  able to match documents that were identical, but in the version

11  that existed in the Moog computer, there was a Moog metadata

12  field that basically showed that the creation was Moog, Inc. In

13  other words, there was a metadata data field that was embedded

14  in the file that showed it was Moog.

15         And when you see it on the Skyryse computer, that

16  information has been deleted.

17         And as a matter of fact, one of the things that we had

18  done when we were first trying to negotiate with Skyryse, was

19  ask them to run the search term "Moog" because we knew that

20  metadata was embedded in documents that had been unaltered that

21  were taken from Moog.

22         But in a number of instances that identifying

23  information has been deleted, so the only way to do the

24  comparison is based on the actual contents of the document.

25         THE COURT:  What is the defense's response?

1          MR. GROSS:  First, Your Honor, it sounds like I'm

2     hearing this in open court for the first time what sounds like

3     an accusation of spoliation or deletion.

4          We have not met and conferred about this.  I'm in no

5     position to respond, and I have no reason to think it's true.

6          Moog knows and its counsel has known, and this has

7     happened before my firm got on the case, that using the word

8     "Moog" as a search term makes no sense in a dispute between two

9     parties that had a business relationship for a matter of years.

10         There are countless references to Moog that are

11    understandable and justifiable and have nothing to do with the

12    claims or defenses in this case.

13         They have provided 100,000 other search terms we can use

14    and have used and we think that is the way to work on it.

15         This sounds like speculation to me, and certainly

16    unproven accusations, which is not how you justify broad

17    discovery.  I don't think that they have made the showing they

18    would need to.

19         THE COURT:  I think I understand the position of

20    both points.

21         What else does either side want to argue?

22         MR. GROSS:  I would like to touch very briefly on

23    the Court's tentative ruling about the sanctions.  I just want

24    to make sure I clarify the record on this.

25         THE COURT:  Yes.

1          MR. GROSS:  I don't want to argue with Your Honor or

2     the other side about your tentative decision as to an amount in

3     sanctions.

4          But this relates to the files deleted by an employee

5     named Mr. Wang.

6          The Court, on page 4 of its tentative, excuse me, it's

7     page 3 at the bottom, it stated that Skyryse didn't take steps

8     to recover the 32 files that were recently recovered, and then

9     a little higher up on the page, it says that Skyryse --

10         THE COURT:  No.  I said did not take steps to

11    recover until it faced Moog's motion for an adverse inference

12    and other sanctions.

13         MR. GROSS:  Yes, Your Honor.

14         I just want to clarify for the record, because I don't

15    think that is factually accurate.

16         When Skyryse learned what Mr. Wang did against the

17    company's instruction, express instructions, that he confirmed

18    and acknowledged he would comply with, it moved into action and

19    it hired one of the larger forensic firms in the world, FDI, to

20    do its level best to recover all of the files.  It did great

21    work and it recovered 90 percent of them and then told us that

22    was all they could do.

23         We shared that information with Skyryse, with the Court,

24    we litigated this.  It was to the best of Skyryse's effort and

25    its forensic expert's efforts to the best of their efforts and

1    knowledge, it was what could be done, and it wasn't until eight

2    months later when Moog told us they wanted to meet and confer

3    about it, because they were going to move for an adverse

4    inference after we thought the issue had been resolved.

5         Skyryse took the extraordinary step of doing another

6    search with another global forensics firm at great expense, and

7    we were somewhat surprised, but very pleased that that firm was

8    able to do better.

9         So I just want to dispel the notion if there was any

10   confusion that Skyryse waited for the motion to look for these

11   files, that is not the case.

12        Skyryse went into action as soon as it became aware of

13   this.  I understand it did take until this spring to recover

14   those last 32 files, but the 250 files and those 32 were very

15   much the subject of its good faith efforts as soon as it became

16   aware of the problem.

17        That is all I have to say about that point.

18             THE COURT:  All right.

19             MR. GROSS:  Second, Your Honor, on the Google drive

20   issue.

21             THE COURT:  Let me hear a response from the

22   plaintiff, do you have any thoughts on that?

23             MS. ANDOH:  Your Honor, I think that the timeline is

24   clear on this.  As far as the 32 files that were permanently

25   deleted back in June, they were actually the subject of motion

1  practice over the summer.

2       It is not an inappropriate thing that we didn't

3  immediately move for an adverse inference over the summer.

4       However, to Your Honor's point and to the point I made

5  at the last conference, this has always been their

6  responsibility to address.

7       The fact that those files sat there and they didn't make

8  any attempt to resuscitate them again until we made this motion

9  is exactly the point, which is that they never would have made

10  that second attempt that resulted in their recovery, had we not

11  made the motion.

12            THE COURT:  All right.  What does defense counsel

13  want to argue next?

14            MR. GROSS:  Thank you, Your Honor.

15       On the Google drive point, if the tentative is converted

16  to a final ruling on the Google drive account, I just wanted

17  some clarification if we could have it, please, from Your Honor

18  about page 6 of the tentative order.

19       About halfway down the page, closing the first paragraph

20  at the top, the Court noted that Skyryse is willing to run an

21  appropriate set of search terms.  We obviously just discussed

22  that, over any Google drive folders shared with Hummingbird

23  personnel, review the search words, and produce relevant

24  non-privileged information, and the Court said after that, it

25  would agree with Skyryse tentatively.

1        What I wanted to ask for clarification about is the only

2   factual basis for Moog's demand for information from the Google

3   drive system, which as I mentioned, is used across the

4   enterprise, was this folder that was shared with Hummingbird.

5        There has been no factual showing of any relevance of

6   information or a need for an inspection of the entire

7   enterprise's Google drive system that I think every employee

8   uses.  And I want to just ask for clarification that if the

9   tentative is finalized, at the very last sentence of that

10  section where the Court says it would order the parties to meet

11  and confer regarding a set of search terms to run across the

12  Google drive account, refers to those Google drive folders that

13  were shared with Hummingbird, not the entire enterprise-wide

14  account.

15       THE COURT:  What is the plaintiff's response to

16  that?

17       MS. ANDOH:  Well, Your Honor, we put -- we actually

18  put in the joint report what we were after, which is broader

19  than that, but certainly narrower than the entire drive, Your

20  Honor.

21       Let me pull up -- sorry, Your Honor, it will take me a

22  minute here.

23       It is on page -- it is on page 12 of the joint status

24  report that was filed at Docket 546.

25       And what it says is that what we're looking for and --

1     the proposal that we put on page 12 -- let me invert it for a

2     second, because what we were talking about is what we suggested

3     being removed from the drive.

4          Really at the end of the day what we're concerned with

5     is flight control, which I don't think they can reasonably say

6     is not relevant to this case.  Documents related to flight

7     control, which is exactly what was taken, and what our concern

8     is was used.

9          And then looking at materials that were accessed by

10    Hummingbird personnel, former Moog employees who went over to

11    Skyryse, and specific Skyryse employees that we know from the

12    evidence that has been already available to us in the case,

13    accessed Moog material.

14         So that is the subset of the Google drive that we

15    believe they should have to search and produce out of,

16    irrespective of what the methodology is that they are going to

17    use in order to do it.

18              THE COURT:  What is your response to that?

19              MR. GROSS:  There is a problem with that, Your

20    Honor.

21              THE COURT:  Which is?

22              MR. GROSS:  There are several.

23         Skyryse's business is to build cutting edge technology

24    to ensure safe and highly automated flying of aircraft.

25              They said:  Give us everything that relates to flight

1    control, and that is the business.

2           I don't know what that means in a way that doesn't go

3    across the enterprise; that is the main problem.

4           Again, something that was shared with Hummingbird that

5    they factually identified as potentially relevant, we have no

6    problem with.

7           But then they are asking us to prove the irrelevance of

8    other sources within the enterprise-wide Google drive account

9    in order to justify limiting discovery.

10          I think that flips the burden on its ear.  We shouldn't

11   need to go through every employee, every repository, every

12   account, and have to explain what is happening in the business

13   to show why that is not relevant; it's not how discovery works.

14          MS. ANDOH:  Your Honor, it's an interesting dilemma.

15          The reality is there was 1.4 million files taken from us

16   that relate to flight control.

17          When Skyryse says, well, that is our business, really, I

18   guess the question that that begs, at least in my mind, is what

19   exactly is it that is not relevant?

20          You know, they keep arguing burden in terms of this

21   whole I'm going to go ahead run search terms because they are

22   not entitled to get this much stuff, but the proportionality of

23   what it is we're asking them to produce is proportional to what

24   is actually relevant in the case.

25          The bottom line is if what they are saying that all

1   their files are devoted to the type of flight control

2   development that is embodied in the files that were stolen from

3   us, then perhaps what really needs to get done is to have a

4   better understanding of what it is they propose to exclude.

5           MR. GROSS:  Your Honor, that is not what I said.  We

6   did not say, and Skyryse did not admit and deny that everything

7   that Moog alleges was copied and taken relates to the entirety

8   of Skyryse's business.

9       What I'm having issue with is counsel's proposal to use

10  a term as vague of flight control to justify what their

11  claiming as narrow discovery to a company that its business is

12  developing flight systems.

13      It doesn't make sense, it is not appropriate.  This is

14  one of the problems, we still don't know what their trade

15  secrets are a year and a half into this lawsuit.

16      So the shoot-first-aim-later approach inevitably leads

17  to problems like this.

18      I think we have a solution.  I think the solution is the

19  search term approach and meeting and conferring we have

20  described.

21          THE COURT:  But then you say the search term is not

22  going to be successful because they want to use overly broad

23  search terms.

24          MR. GROSS:  That's why we meet and confer about it.

25  That is how the case began.  We agreed to and ran over 100,000

1    search terms they proposed, including ones that were wildly

2    overbroad like "readme.txt," which is a common term that shows

3    up in every software program, but we will work with them.

4          This does not give them the right to run through the

5    entire business, when the facts of this case are limited to the

6    claims and defenses, and should be limited to what they claim

7    as their trade secrets and identify as their trade secrets.

8              THE COURT:  Anything else from either side?

9              MR. GROSS:  Finally, thank you, Your Honor, just one

10   more.

11         On the point about the inspection of the laptops that

12   were used by Mr. Raithel and Ms. Bird, I just wanted to address

13   one part of Your Honor's tentative at page 8.

14         In the second paragraph, the Court noted that it

15   acknowledged Skyryse's privacy concerns with turning over these

16   laptops, but Moog asserts that its access to laptops would not

17   be unrestricted, as its review would be subject to the IDS

18   protocol.  That is true.  The review would be subject to the

19   IDS protocol, but I wanted to make sure there was no confusion

20   about the restraints of the IDS protocol.

21         If an entire laptop is provided, which is what I

22   understand the Court to have tentatively ordered, the IDS

23   protocol doesn't put any restraints on the content.

24         It will include personal, private, irrelevant

25   confidential files that have nothing to do with the claims and

1    defenses of this case.

2            The IDS protocol is a platform for review.

3            The Court may have appreciated that in the tentative,

4    but we still think that discovery from those laptops may be in

5    order, but there is a way to find what is relevant, not turn

6    over the entire machines and every personal calendar or

7    appointment and photo and what have you on them, which we think

8    would be more focused and targeted.

9            Thank you, Your Honor.

10           THE COURT:  Anything else?

11           MS. ANDOH:  Your Honor, on the IDS protocol, I would

12   point out that the IDS protocol is much more restrictive than a

13   standard production.

14           The only people who have access to IDS environment are

15   the experts.  There are a limited number of laptops that have

16   to be specially set up and they have to be in a fixed location

17   in order to be able to access IDS and perform the review.

18           And in order for materials to be produced out of the IDS

19   environment, we have to request them and the other side has to

20   provide them.

21           So in terms of being this perception that there is sort

22   of, like, it's the same as producing in the sense under a

23   protective order, it's actually far more restrictive than that,

24   Your Honor.

25           THE COURT:  All right.  I will take into

1    consideration arguments from both sides.  I will issue a final

2    ruling some time soon.

3              MS. ANDOH:  Your Honor, one other request with

4    respect to any tasks that are contained in the final order, if

5    Your Honor would not mind setting some form of dates by which

6    those tasks should be completed, that would be enormously

7    helpful to the parties.

8              THE COURT:  What you are saying?

9              MS. ANDOH:  Whether it has to do with meeting and

10   conferring or turning over devices, paying sanctions, any of

11   those types of things, Your Honor.

12             THE COURT:  Thank you.  I will do that.

13        Is there anything else?

14             MR. GROSS:  No, thank you, Your Honor.

15             MS. ANDOH:  Thank you, Your Honor.

16             (The proceedings concluded at 1:22 p.m.)

17                          *  *  *

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**


COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )


         I, TERRI A. HOURIGAN, Federal Official Realtime

Court Reporter, in and for the United States District Court for

the Central District of California, do hereby certify that

pursuant to Section 753, Title 28, United States Code that the

foregoing is a true and correct transcript of the

stenographically reported proceedings held in the

above-entitled matter and that the transcript page format is in

conformance with the regulations of the judicial conference of

the United States.


Date: 30th day of June, 2023.



                         /s/ TERRI A. HOURIGAN
                    _____
                      TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
                           Federal Court Reporter

| / |
|---|
| **/s** [1] - 33:19 |

| 8 |
|---|
| **8** [1] - 30:1 |
| **894-2849** [1] - 1:24 |

| 9 |
|---|
| **90** [1] - 23:13 |
| **90012** [1] - 1:23 |
| **90071** [1] - 2:6 |
| **94025** [1] - 2:14 |
| **996** [1] - 7:4 |

| A |
|---|
| **ability** [2] - 5:11, 14:21 |
| **able** [9] - 14:13, 14:16, 15:1, 17:5, 18:18, 21:4, 21:5, 23:25, 31:5 |
| **above-entitled** [1] - 33:12 |
| **access** [3] - 30:4, 31:2, 31:5 |
| **accessed** [2] - 26:24, 27:2 |
| **accessing** [1] - 10:14 |
| **accordingly** [1] - 4:12 |
| **account** [5] - 25:8, 26:4, 26:5, 27:21, 27:25 |
| **accurate** [1] - 23:7 |
| **accusation** [1] - 21:21 |
| **accusations** [1] - 22:9 |
| **acknowledged** [2] - 23:10, 30:3 |
| **action** [2] - 23:10, 24:4 |
| **actual** [3] - 18:9, 18:24, 21:17 |
| **address** [4] - 13:3, 15:8, 24:23, 29:25 |
| **addressed** [1] - 16:14 |
| **admit** [1] - 28:19 |
| **admittedly** [1] - 19:16 |
| **adverse** [3] - 23:3, 23:20, 24:19 |
| **afternoon** [3] - 3:10, 3:12, 3:18 |
| **agree** [2] - 4:25, 25:17 |
| **agreed** [1] - 29:13 |
| **agreement** [1] - 9:17 |

| 1 |
|---|
| **1.4** [1] - 28:3 |
| **100,000** [2] - 22:6, 29:13 |
| **10112** [1] - 2:9 |
| **12** [2] - 26:14, 26:17 |
| **12:46** [2] - 1:14, 3:2 |
| **13** [1] - 10:9 |
| **140** [1] - 2:13 |
| **16** [1] - 10:25 |
| **17** [2] - 10:25, 13:17 |
| **1:22** [1] - 32:4 |
| **1st** [1] - 33:16 |

| 2 |
|---|
| **20** [2] - 8:13, 10:13 |
| **2023** [3] - 1:14, 3:1, 33:16 |
| **213** [1] - 1:24 |
| **22-9094** [1] - 1:7 |
| **250** [1] - 24:6 |
| **28** [1] - 33:9 |
| **29** [2] - 1:14, 3:1 |

| 3 |
|---|
| **3** [1] - 22:24 |
| **30** [1] - 2:8 |
| **32** [4] - 22:25, 24:6, 24:16 |
| **333** [1] - 2:5 |
| **350** [1] - 1:23 |
| **3838** [2] - 1:22, 33:20 |

| 4 |
|---|
| **4** [1] - 22:23 |
| **4311** [1] - 1:23 |
| **43rd** [1] - 2:5 |

| 5 |
|---|
| **546** [1] - 26:15 |

| 6 |
|---|
| **6** [1] - 25:10 |

| 7 |
|---|
| **7** [2] - 5:15, 6:6 |
| **753** [1] - 33:9 |

**ahead** [1] - 28:9
**aided** [1] - 14:22
**aim** [1] - 29:4
**aircraft** [1] - 27:12
**al** [1] - 1:8
**allege** [1] - 18:9
**alleged** [3] - 6:8, 10:13, 10:17
**allegedly** [2] - 10:24, 20:1
**alleges** [2] - 5:3, 28:20
**almost** [1] - 18:17
**amend** [6] - 4:7, 4:11, 4:14, 6:3, 7:13, 9:11
**AMENDED** [1] - 1:13
**amended** [5] - 3:21, 3:25, 6:11, 8:20, 12:18
**amendment** [1] - 5:5
**America** [1] - 6:5
**amount** [2] - 16:7, 22:19
**ANDOH** [21] - 2:7, 3:10, 12:24, 13:1, 13:24, 14:8, 16:12, 16:19, 17:9, 17:14, 17:23, 20:13, 20:20, 20:25, 24:15, 26:8, 28:2, 30:24, 31:16, 31:22, 32:3
**Andoh** [1] - 3:10
**ANGELES** [4] - 1:15, 1:23, 3:1, 33:3
**Angeles** [1] - 2:6
**apart** [1] - 8:19
**APPEARANCES** [1] - 2:1
**appearances** [1] - 3:8
**application** [1] - 5:25
**appointment** [1] - 30:20
**appreciate** [3] - 4:10, 13:1, 13:2
**appreciated** [2] - 15:20, 30:16
**approach** [2] - 29:4, 29:7
**appropriate** [3] - 12:12, 25:13, 29:1
**architecture** [2] - 18:20, 18:24
**areas** [1] - 11:11
**argue** [8] - 4:3, 4:20, 8:9, 8:11, 12:23, 22:13, 22:18, 25:5
**arguing** [2] - 8:23, 8:25, 28:8

**argument** [2] - 4:16, 5:24
**arguments** [3] - 11:9, 11:12, 31:14
**arise** [1] - 5:13
**arises** [1] - 19:6
**aspect** [1] - 10:11
**asserts** [1] - 30:4
**associated** [2] - 17:3, 17:7
**assumes** [3] - 16:19, 18:23, 20:14
**assuming** [1] - 20:22
**attached** [1] - 14:19
**attempt** [3] - 11:17, 24:25, 25:2
**Attorney** [2] - 2:5, 2:8
**Attorneys** [1] - 2:13
**automated** [1] - 27:12
**available** [1] - 27:1
**aware** [2] - 24:4, 24:8

| B |
|---|
| **based** [6] - 5:18, 8:13, 18:6, 19:11, 20:4, 21:17 |
| **basis** [1] - 25:19 |
| **became** [2] - 24:4, 24:7 |
| **began** [1] - 29:13 |
| **begs** [1] - 28:6 |
| **behind** [1] - 7:19 |
| **best** [3] - 23:12, 23:16, 23:17 |
| **better** [5] - 5:2, 23:25, 28:17 |
| **between** [4] - 10:15, 11:3, 19:15, 22:1 |
| **bird** [1] - 29:25 |
| **bit** [2] - 11:10, 13:8 |
| **Biten** [4] - 6:5, 7:5, 11:25, 12:1 |
| **bottom** [2] - 22:24, 28:13 |
| **breach** [1] - 8:24 |
| **brief** [1] - 5:21 |
| **briefing** [1] - 6:12 |
| **briefly** [2] - 4:5, 22:14 |
| **broad** [2] - 22:9, 29:10 |
| **broader** [1] - 26:9 |
| **build** [1] - 27:11 |
| **burden** [2] - 27:23, 28:8 |
| **business** [9] - 10:25, 22:2, 27:11, 27:14, |

27:25, 28:5, 28:21, 28:24, 29:18
**BY** [3] - 2:4, 2:7, 2:12

| C |
|---|
| **calendar** [1] - 30:19 |
| **California** [5] - 2:6, 2:14, 5:11, 7:2, 33:8 |
| **CALIFORNIA** [5] - 1:2, 1:15, 1:23, 3:1, 33:4 |
| **cannot** [1] - 20:6 |
| **careful** [1] - 21:1 |
| **case** [40] - 5:11, 5:14, 5:16, 6:5, 6:8, 6:25, 7:4, 7:5, 7:6, 7:7, 7:14, 7:16, 7:18, 9:2, 9:10, 9:12, 9:18, 9:19, 9:20, 9:24, 10:9, 12:3, 12:6, 12:8, 12:13, 14:25, 15:13, 18:6, 19:12, 19:25, 21:25, 22:5, 24:3, 26:21, 27:2, 28:12, 29:13, 29:18, 30:14 |
| **Case** [1] - 1:7 |
| **cases** [3] - 5:20, 7:8, 12:1 |
| **CCRR** [1] - 1:22 |
| **Central** [1] - 33:8 |
| **CENTRAL** [2] - 1:2 |
| **certain** [2] - 14:24, 16:17 |
| **certainly** [3] - 15:13, 22:8, 26:10 |
| **CERTIFICATE** [1] - 33:1 |
| **certify** [1] - 33:8 |
| **challenged** [1] - 12:4 |
| **characterize** [1] - 7:14 |
| **charts** [1] - 13:18 |
| **citation** [1] - 6:5 |
| **cited** [3] - 5:15, 5:20, 12:1 |
| **claim** [16] - 4:8, 4:9, 4:24, 5:1, 5:5, 5:12, 5:17, 8:11, 10:1, 10:11, 10:23, 11:1, 11:6, 11:15, 11:23, 29:19 |
| **claiming** [1] - 28:24 |
| **claims** [4] - 8:16, 22:5, 29:19, 30:13 |
| **clarification** [3] - 25:9, 25:18, 25:25 |
| **clarify** [4] - 5:1, 13:8, 22:16, 23:5 |
| **clear** [5] - 6:12, 7:1, |

7:21, 11:2, 24:16

**clearer** [1] - 11:10

**clearly** [1] - 6:14

**closing** [1] - 25:11

**code** [15] - 14:3, 15:13, 15:14, 16:15, 18:1, 18:3, 18:4, 18:8, 18:9, 18:12, 18:13, 18:19, 18:21, 19:17, 20:8

**Code** [1] - 33:9

**coding** [2] - 18:16, 18:24

**cogent** [2] - 5:16, 7:17

**colleagues** [1] - 16:2

**colloquialism** [1] - 13:4

**combine** [1] - 16:16

**commands** [1] - 18:16

**common** [1] - 29:15

**company** [1] - 28:24

**company's** [1] - 23:9

**comparison** [1] - 21:17

**compiled** [1] - 16:20

**complaint** [3] - 3:21, 4:1, 8:21

**COMPLAINT** [1] - 1:13

**completed** [1] - 31:19

**completely** [1] - 5:9

**compliance** [1] - 3:23

**comply** [1] - 23:10

**computer** [2] - 21:6, 21:10

**concern** [2] - 13:9, 26:23

**concerned** [1] - 26:20

**concerns** [1] - 30:3

**concluded** [1] - 32:4

**conclusion** [1] - 19:18

**confer** [9] - 13:9, 15:19, 17:21, 19:3, 20:6, 20:9, 23:19, 26:2, 29:12

**conference** [2] - 24:22, 33:13

**conferred** [1] - 21:22

**conferring** [2] - 29:7, 31:23

**confidence** [1] - 16:7

**confidential** [7] - 5:12, 5:18, 7:2, 8:17, 8:18, 10:15, 30:13

**confidentiality** [1] - 9:23

**confines** [1] - 12:5

**confirmed** [1] - 23:9

**conform** [1] - 19:8

**conformance** [1] - 33:13

**confusion** [2] - 24:1, 30:7

**consideration** [1] - 31:14

**consistent** [2] - 7:6, 7:17

**contain** [1] - 8:21

**contained** [1] - 31:17

**content** [1] - 30:11

**contents** [2] - 19:23, 21:17

**continuation** [1] - 3:22

**contract** [4] - 8:24, 9:1, 9:3, 9:5

**contracts** [2] - 6:20, 9:9

**control** [6] - 26:20, 26:22, 27:14, 28:4, 28:14, 28:23

**conversion** [6] - 4:8, 4:24, 5:12, 5:17, 11:15, 11:23

**converted** [3] - 8:6, 14:12, 25:7

**copied** [2] - 20:1, 28:20

**copy** [1] - 18:19

**copying** [1] - 18:3

**copyright** [1] - 8:2

**Corporation** [1] - 6:5

**correct** [1] - 33:10

**counsel** [5] - 3:9, 6:2, 6:24, 21:24, 25:4

**COUNSEL** [1] - 2:1

**counsel's** [1] - 28:22

**counter** [1] - 3:17

**counter-defendant** [1] - 3:17

**countless** [1] - 22:3

**COUNTY** [1] - 33:3

**COURT** [58] - 1:1, 1:22, 3:6, 3:12, 3:15, 3:20, 4:13, 4:18, 4:21, 5:6, 5:22, 5:24, 6:2, 6:16, 6:23, 7:10, 7:13, 7:23, 8:8, 8:23, 9:15, 10:5, 10:21, 11:7, 11:16, 11:21, 11:24, 12:14, 12:20, 12:25, 13:22, 14:4, 15:3, 15:6, 16:11, 16:16, 17:5, 17:11, 17:18,

18:25, 20:19, 20:22, 21:18, 22:12, 22:17, 23:2, 24:10, 24:13, 25:4, 26:6, 27:7, 27:9, 29:9, 29:21, 30:23, 31:13, 31:21, 31:25

**Court** [24] - 4:6, 4:7, 4:22, 6:6, 6:11, 9:6, 9:21, 9:25, 10:8, 10:17, 15:12, 19:24, 20:11, 22:23, 23:15, 25:12, 25:16, 26:2, 30:2, 30:10, 30:16, 33:7, 33:20

**court** [1] - 21:20

**Court's** [3] - 4:10, 6:5, 22:15

**covenant** [8] - 4:9, 8:10, 8:13, 8:25, 9:2, 10:1, 10:11, 10:23

**cover** [2] - 4:23, 8:6

**create** [2] - 8:5, 9:2

**creation** [1] - 21:7

**critical** [1] - 17:25

**CRR** [1] - 33:20

**CSR** [2] - 1:22, 33:20

**cut** [1] - 18:19

**CUTSA** [3] - 5:17, 7:19

**cutting** [1] - 27:11

**CV** [1] - 1:7

**D**

**dark** [1] - 16:23

**data** [9] - 5:3, 5:4, 6:9, 6:10, 6:15, 6:17, 10:24, 12:6, 27:24

**Date** [1] - 33:16

**date** [1] - 14:13

**dates** [1] - 31:18

**decided** [1] - 7:17

**decision** [1] - 22:19

**defendant** [3] - 3:17, 11:8

**DEFENDANT** [1] - 2:10

**Defendants** [1] - 1:9

**defense** [6] - 3:15, 4:13, 6:23, 15:4, 18:25, 25:4

**defense's** [1] - 21:18

**defenses** [2] - 22:5, 29:19, 30:14

**defined** [1] - 6:14

**definitions** [1] - 7:20

**deleted** [5] - 20:16, 21:10, 21:16, 22:21, 24:17

**deletion** [1] - 21:21

**delineating** [1] - 5:2

**delineation** [1] - 6:13

**demand** [1] - 25:19

**demands** [1] - 15:21

**denied** [1] - 20:12

**denies** [1] - 28:19

**deny** [1] - 7:13

**denying** [1] - 9:11

**described** [1] - 29:8

**designate** [1] - 6:20

**developing** [1] - 28:25

**development** [1] - 28:15

**devices** [1] - 31:23

**devoid** [2] - 15:16, 15:17

**devoted** [1] - 28:14

**diagrams** [1] - 15:11

**different** [4] - 13:18, 18:13, 18:16, 20:25

**dilemma** [1] - 28:2

**directives** [1] - 4:10

**directly** [1] - 16:15

**disclose** [1] - 6:22

**discovery** [6] - 19:6, 22:10, 27:22, 28:1, 28:24, 30:17

**discuss** [1] - 17:10

**discussed** [1] - 25:13

**discussion** [1] - 5:16

**dismiss** [1] - 10:1

**dismissed** [1] - 9:25

**dispel** [1] - 24:1

**dispute** [2] - 8:21, 22:1

**disputes** [1] - 12:11

**distinction** [1] - 11:2

**distinguished** [1] - 10:8

**District** [2] - 33:7, 33:8

**DISTRICT** [3] - 1:1, 1:2, 1:3

**DIVISION** [1] - 1:2

**Docket** [1] - 26:15

**document** [1] - 21:17

**documents** [6] - 13:19, 16:20, 16:25, 21:5, 21:14, 26:22

**done** [8] - 18:20, 19:11, 20:23, 20:24, 21:1, 21:11, 23:18, 28:16

**down** [2] - 14:7, 25:11

**dozens** [1] - 15:23

**draw** [1] - 11:2

**drawings** [3] - 13:14, 14:16, 17:2

**Drive** [1] - 2:13

**drive** [16] - 13:6, 14:23, 15:21, 24:11, 25:7, 25:8, 25:14, 25:20, 25:24, 26:3, 26:4, 26:10, 26:19, 27:3, 27:21

**during** [1] - 11:3

**duty** [3] - 9:4, 9:7, 10:3

**E**

**e-mails** [1] - 14:20

**ear** [1] - 27:23

**early** [2] - 12:2, 12:8

**easiest** [1] - 3:23

**edge** [1] - 27:11

**effective** [2] - 15:1, 20:6

**effectively** [1] - 9:22

**effects** [1] - 11:5

**effort** [1] - 23:16

**efforts** [2] - 23:17, 24:7

**eight** [1] - 23:18

**either** [3] - 10:22, 22:13, 29:21

**embedded** [2] - 21:8, 21:14

**embodied** [1] - 28:15

**emphasizes** [1] - 5:11

**employee** [5] - 10:12, 10:20, 22:21, 25:24, 27:24

**employees** [7] - 8:14, 8:22, 9:8, 10:13, 15:23, 26:24, 26:25

**enactment** [1] - 7:19

**enclosed** [1] - 17:1

**end** [1] - 26:19

**enforce** [2] - 3:22, 12:21

**ENFORCE** [1] - 1:13

**enforceable** [2] - 9:17, 9:23

**engineers** [1] - 20:1

**enormously** [1] - 31:19

**ensure** [1] - 27:12

**enterprise** [5] - 15:23, 25:21, 26:5, 27:15, 27:21

**enterprise's** [1] - 25:23

**enterprise-wide** [1] - 27:21

entertain [1] - 11:18
entire [7] - 15:22, 25:23, 26:5, 26:10, 29:18, 30:9, 30:19
entirety [1] - 28:21
entitled [2] - 28:10, 33:12
environment [1] - 20:21, 31:2, 31:7
ER [1] - 18:7
et [1] - 1:8
evidence [2] - 19:18, 27:1
exactly [6] - 10:4, 11:10, 13:24, 25:1, 26:22, 28:7
examine [1] - 9:6
example [6] - 6:16, 13:16, 15:15, 15:22, 18:2, 18:7
examples [3] - 14:13, 15:17, 16:3
exchange [1] - 8:18
exchanged [1] - 10:15
exclude [1] - 28:17
excuse [1] - 22:23
Exhibit [1] - 8:20
existed [1] - 21:6
expected [1] - 19:17
expense [1] - 23:23
expert [3] - 18:18, 21:2, 31:2
expert's [1] - 23:17
experts [3] - 18:7, 19:12, 31:3
explain [2] - 9:14, 27:25
express [1] - 23:9
extent [1] - 5:18
extraordinary [1] - 23:22

**F**

faced [1] - 23:3
fact [6] - 5:16, 9:17, 11:12, 17:16, 21:11, 24:24
facts [2] - 6:8, 29:18
factual [2] - 25:19, 25:22
factually [3] - 5:7, 23:6, 27:18
fair [1] - 16:7
fairly [2] - 9:5, 9:8, 10:3
faith [2] - 16:2, 24:7
far [2] - 24:16, 31:11
FDI [1] - 23:11

FEDERAL [1] - 1:22
Federal [2] - 33:6, 33:20
felt [1] - 13:5
few [2] - 12:1, 15:9
field [2] - 21:7, 21:8
file [3] - 3:21, 3:25, 21:8
FILE [1] - 1:13
filed [1] - 26:15
files [19] - 17:1, 18:8, 19:23, 20:1, 20:2, 20:5, 20:18, 22:21, 22:25, 23:12, 24:2, 24:6, 24:16, 24:24, 28:3, 28:14, 28:15, 30:13
final [2] - 25:8, 31:14, 31:17
finalized [1] - 26:1
finally [1] - 29:22
firm [3] - 21:25, 23:23, 23:24
firms [1] - 23:11
first [16] - 3:9, 4:1, 4:24, 7:25, 8:12, 11:14, 11:25, 15:9, 16:12, 19:2, 19:6, 21:12, 21:19, 21:20, 25:11, 29:4
FIRST [1] - 1:23
fixed [1] - 31:4
flight [7] - 26:20, 26:22, 27:13, 28:4, 28:14, 28:23, 28:25
flips [1] - 27:23
Floor [1] - 2:5
flying [1] - 27:12
focused [2] - 8:17, 30:21
folder [3] - 17:19, 17:20, 25:21
folders [9] - 14:24, 16:22, 17:9, 17:12, 17:16, 17:17, 25:14, 26:4
follow [1] - 5:21
following [1] - 10:24
FOR [2] - 2:3, 2:10
foreclosed [1] - 5:9
foregoing [1] - 33:10
forensic [2] - 23:11, 23:17
forensics [1] - 23:23
form [2] - 14:3, 31:18
format [1] - 33:12
former [2] - 20:1, 26:24
friend [1] - 15:8
futile [2] - 8:16, 11:1

**G**

Gabe [2] - 3:16, 15:7
GABRIEL [1] - 2:12
generalization [1] - 12:15
GEORGE [1] - 1:3
global [1] - 23:23
Google [13] - 13:6, 14:23, 15:21, 24:11, 25:7, 25:8, 25:14, 25:19, 25:24, 26:3, 26:4, 27:3, 27:21
grant [1] - 4:7
great [2] - 23:12, 23:23
greedy [1] - 13:5
GROSS [17] - 2:12, 3:16, 15:5, 15:7, 19:2, 21:19, 22:14, 22:18, 23:5, 24:11, 25:6, 27:8, 27:10, 28:18, 29:12, 29:22, 32:2
Gross [2] - 3:16, 15:7
guess [2] - 3:23, 28:6
guys [1] - 17:21

**H**

half [1] - 29:3
halfway [1] - 25:11
HAMPTON [2] - 2:4, 2:7
happy [3] - 15:18, 16:10, 20:9
hear [4] - 4:18, 15:3, 18:25, 24:13
hearing [2] - 19:3, 21:20
held [1] - 33:11
helpful [1] - 31:20
hereby [1] - 33:8
higher [1] - 23:1
highly [1] - 27:12
hire [3] - 9:8, 10:2, 10:3
hired [1] - 23:11
hiring [9] - 8:13, 8:16, 8:22, 10:11, 10:12, 10:13, 10:19, 10:20, 11:13
hit [1] - 14:20
Honor [60] - 3:10, 3:16, 3:18, 4:4, 4:16, 4:25, 5:14, 6:1, 6:4, 7:6, 7:12, 7:24, 9:4, 9:10, 9:12, 10:7, 11:15, 11:22, 12:24,

13:2, 13:3, 13:10, 13:13, 13:16, 13:17, 13:24, 14:9, 14:24, 15:5, 15:8, 15:20, 16:9, 16:19, 17:4, 17:14, 18:3, 19:2, 20:13, 21:19, 22:18, 23:5, 24:11, 24:15, 25:6, 25:9, 26:8, 26:11, 26:12, 28:2, 28:18, 29:22, 30:22, 30:24, 31:12, 31:16, 31:18, 31:24, 32:2, 32:3
Honor's [6] - 11:1, 13:4, 13:16, 16:24, 24:21, 30:1
HONORABLE [1] - 1:3
Hope [1] - 2:5
Horn [1] - 3:18
HORN [18] - 2:12, 3:18, 4:16, 4:19, 4:22, 5:10, 5:23, 6:1, 6:25, 7:12, 7:16, 7:24, 8:10, 9:4, 9:16, 10:23, 11:15, 11:20
HOURIGAN [4] - 1:22, 33:6, 33:19, 33:20
house [1] - 17:10
housed [1] - 16:22
ht [1] - 20:15
Hummingbird [5] - 25:14, 25:21, 26:5, 26:24, 27:17

**I**

identical [2] - 18:17, 21:5
identification [1] - 12:4
identified [2] - 19:9, 27:18
identifies [1] - 19:7
identify [5] - 12:15, 14:21, 15:2, 18:18, 29:20
identifying [1] - 21:15
IDS [12] - 14:14, 20:20, 30:5, 30:7, 30:8, 30:10, 30:15, 30:24, 30:25, 31:2, 31:5, 31:6
image [3] - 13:20, 13:22, 15:15
images [4] - 15:17, 16:5, 16:13, 20:7

immediately [1] - 24:19
implied [9] - 4:8, 8:10, 8:13, 8:25, 9:2, 9:7, 10:1, 10:10, 10:23
imply [1] - 10:3
important [1] - 12:2
impression [1] - 19:5
improperly [1] - 10:14
inappropriate [1] - 24:18
Inc [1] - 21:7
INC [2] - 1:5, 1:8
inclination [1] - 11:7
inclined [1] - 4:7
include [2] - 19:22, 30:12
including [2] - 7:7, 29:14
incorporated [1] - 8:19
incorrect [1] - 8:14
indicated [1] - 10:17
industry [1] - 19:14
inevitably [1] - 29:4
inferable [2] - 9:5, 9:8
inference [3] - 23:3, 23:21, 24:19
inform [1] - 17:19
information [24] - 5:12, 5:19, 6:18, 6:21, 7:2, 7:21, 8:3, 8:6, 8:18, 10:15, 11:3, 11:4, 19:23, 19:25, 20:2, 20:5, 20:15, 21:10, 21:16, 23:15, 25:16, 25:19, 25:23
initial [2] - 19:5, 19:20
inside [1] - 17:15
inspection [2] - 25:23, 29:24
inspections [1] - 20:11
instance [1] - 5:2
instances [2] - 20:17, 21:15
instruction [1] - 23:9
instructions [1] - 23:9
instructive [1] - 6:7
insufficient [1] - 4:25
intangible [2] - 8:3, 8:5
intend [1] - 12:18
intended [1] - 6:14
intentionally [1] -

20:16

**interested** [1] - 15:18
**interesting** [1] - 28:2
**invert** [1] - 26:17
**IP** [2] - 8:1, 8:7
**irrelevance** [1] - 27:20
**irrelevant** [1] - 30:12
**irrespective** [1] - 27:5
**issue** [8] - 6:3, 8:15, 8:17, 16:13, 23:21, 24:12, 28:22, 31:14
**issued** [2] - 4:1, 12:22
**itself** [2] - 6:19, 18:9

## J

**job** [1] - 5:2
**joint** [2] - 26:9, 26:14
**JUDGE** [1] - 1:3
**judgment** [1] - 12:12
**judicial** [1] - 33:13
**July** [1] - 33:16
**JUNE** [1] - 3:1
**June** [1] - 1:14, 24:17
**justifiable** [1] - 22:4
**justify** [4] - 20:10, 22:9, 27:22, 28:23

## K

**KAZIM** [1] - 2:4
**Kazim** [3] - 3:11, 3:13, 4:4
**keep** [1] - 28:8
**key** [1] - 16:16
**kind** [2] - 11:12, 11:16
**knowledge** [1] - 23:18
**known** [2] - 19:15, 21:24
**knows** [5] - 19:25, 20:2, 20:5, 21:24

## L

**laptop** [1] - 30:9
**laptops** [7] - 14:15, 14:17, 29:24, 30:4, 30:17, 31:3
**large** [2] - 10:19, 16:25
**large-scale** [1] - 10:19
**larger** [2] - 16:20, 23:11

**last** [3] - 24:6, 24:22, 26:1
**Latham** [1] - 3:16
**LATHAM** [2] - 2:11
**law** [12] - 5:11, 5:17, 7:2, 7:3, 7:7, 7:14, 7:22, 8:2, 9:2, 9:7
**Law** [3] - 2:5, 2:8, 2:13
**lawsuit** [1] - 29:3
**layers** [2] - 18:13, 18:17
**leads** [2] - 17:22, 29:4
**learned** [1] - 23:8
**learning** [1] - 19:12
**least** [1] - 28:6
**leave** [6] - 3:21, 3:25, 4:7, 7:13, 9:11, 19:18
**leaving** [1] - 9:22
**level** [2] - 5:13, 23:12
**limited** [4] - 10:12, 29:18, 29:19, 31:13
**limiting** [1] - 27:22
**line** [2] - 15:24, 28:13
**literally** [1] - 16:22
**litigated** [2] - 12:7, 23:16
**LLP** [3] - 2:4, 2:7, 2:11
**locate** [2] - 14:18, 17:6
**location** [1] - 31:4
**Lodging** [4] - 9:10, 9:16, 9:19, 10:8
**look** [1] - 24:2
**looked** [1] - 13:16
**looking** [5] - 12:17, 17:9, 18:20, 26:16, 26:23
**Los** [1] - 2:6
**LOS** [4] - 1:15, 1:23, 3:1, 33:3

## M

**machines** [1] - 30:19
**mails** [1] - 14:20
**main** [1] - 27:15
**mask** [2] - 4:19, 12:24
**match** [3] - 19:9, 21:4, 21:5
**Matel** [4] - 5:14, 6:25, 7:7, 7:18
**material** [2] - 14:11, 27:2
**materials** [3] - 17:15, 26:23, 31:6
**matter** [7] - 3:6, 5:17,

7:25, 9:7, 21:11, 22:2, 33:12
**mean** [2] - 12:16, 20:22
**means** [1] - 27:14
**meet** [10] - 8:6, 13:9, 15:18, 17:21, 19:3, 20:6, 20:9, 23:19, 26:2, 29:12
**meeting** [1] - 29:7, 31:22
**Menlo** [1] - 2:14
**mention** [1] - 8:22
**mentioned** [2] - 15:9, 25:20
**met** [1] - 21:22
**metadata** [4] - 19:22, 21:6, 21:8, 21:13
**methodology** [1] - 27:5
**might** [2] - 13:5, 20:22
**million** [1] - 28:3
**mind** [2] - 28:6, 31:18
**minute** [1] - 26:13
**misappropriated** [1] - 12:9
**misappropriation** [5] - 5:18, 6:9, 7:21, 19:9, 19:19
**months** [1] - 23:19
**MOOD'S** [1] - 1:13
**Moog** [23] - 3:6, 5:1, 6:18, 8:12, 8:13, 9:8, 10:13, 11:5, 19:24, 21:6, 21:7, 21:9, 21:13, 21:15, 21:24, 21:25, 22:3, 23:19, 26:24, 27:2, 28:20, 30:4
**MOOG** [1] - 1:5
**Moog's** [5] - 10:10, 12:4, 20:5, 23:3, 25:19
**MOOG'S** [1] - 1:13
**motion** [17] - 3:21, 3:22, 3:25, 4:2, 4:14, 10:1, 10:22, 11:18, 11:21, 12:20, 22:10, 23:3, 24:2, 24:17, 24:25, 25:3
**MOTION** [2] - 1:13, 1:13
**motions** [1] - 3:20
**move** [2] - 23:20, 24:19
**moved** [1] - 23:10
**MR** [24] - 3:13, 3:16, 4:4, 6:4, 6:18, 10:7,

11:22, 11:25, 12:18, 15:5, 15:7, 19:2, 21:19, 22:14, 22:18, 23:5, 24:11, 25:6, 27:8, 27:10, 28:18, 29:12, 29:22, 32:2
**MS** [37] - 3:10, 3:18, 4:16, 4:19, 4:22, 5:10, 5:23, 6:1, 6:25, 7:12, 7:16, 7:24, 8:10, 9:4, 9:16, 10:23, 11:15, 11:20, 12:24, 13:1, 13:24, 14:8, 16:12, 16:19, 17:9, 17:14, 17:23, 20:13, 20:20, 20:25, 24:15, 26:8, 28:2, 30:24, 31:16, 31:22, 32:3
**Mullin** [1] - 3:13
**MULLIN** [2] - 2:4, 2:7

## N

**name** [1] - 17:19
**named** [1] - 22:22
**names** [2] - 17:9, 17:12
**NAQVI** [9] - 2:4, 3:13, 4:4, 6:4, 6:18, 10:7, 11:22, 11:25, 12:18
**Naqvi** [3] - 3:11, 3:13, 4:4
**narrow** [1] - 28:24
**narrower** [1] - 26:10
**narrowing** [1] - 14:7
**NDA** [3] - 9:23, 10:2, 11:3
**NDAs** [5] - 8:15, 8:17, 9:7, 10:16, 10:18
**need** [5] - 14:17, 16:6, 22:11, 25:23, 27:24
**needs** [1] - 28:16
**negotiate** [1] - 21:12
**never** [1] - 25:1
**new** [3] - 4:14, 8:5, 18:21
**New** [2] - 2:9
**next** [1] - 25:5
**NO** [2] - 1:22, 33:20
**no-hire** [1] - 10:2
**no-poaching** [2] - 9:20, 9:21
**non** [5] - 5:3, 6:10, 6:15, 6:17, 12:6, 12:10, 12:17, 16:13, 25:16
**non-privileged** [1] -

25:16
**non-trade** [5] - 5:3, 6:17, 12:6, 12:10, 12:17
**non-verbal** [1] - 16:13
**nondisclosure** [1] - 9:17
**North** [1] - 6:5
**note** [1] - 12:2
**noted** [2] - 25:12, 30:2
**nothing** [4] - 8:15, 17:2, 22:4, 30:13
**notion** [1] - 24:1
**nuances** [1] - 17:24
**number** [4] - 5:20, 20:17, 21:15, 31:3

## O

**obligations** [1] - 9:23
**obviously** [3] - 14:6, 18:20, 25:13
**OF** [6] - 1:2, 1:12, 2:1, 33:1, 33:3, 33:4
**Official** [1] - 33:6
**OFFICIAL** [2] - 1:22, 33:1
**one** [24] - 3:21, 3:22, 3:24, 10:12, 10:20, 11:14, 11:16, 11:22, 12:22, 12:23, 14:14, 17:5, 17:8, 18:1, 18:8, 19:5, 19:21, 21:11, 23:11, 29:2, 29:22, 30:1, 31:16
**ones** [1] - 29:14
**oOo** [1] - 3:3
**open** [1] - 21:20
**operating** [1] - 19:13
**opposed** [2] - 18:24, 19:23
**order** [14] - 14:17, 15:25, 16:1, 19:3, 25:10, 26:2, 27:6, 27:22, 30:18, 31:5, 31:6, 31:11, 31:17
**ordered** [1] - 30:10
**os** [1] - 16:1
**otherwise** [1] - 9:23
**outlier** [4] - 7:6, 7:10, 7:15, 11:25
**outset** [1] - 19:25
**outside** [1] - 7:2
**overbroad** [2] - 14:6, 29:15
**overly** [1] - 29:10
**own** [3] - 8:3, 19:25, 20:5

ownership [1] - 12:11
owns [2] - 6:19

**P**

p.m [3] - 1:14, 3:2, 32:4
page [16] - 5:15, 6:6, 7:4, 10:9, 13:17, 16:17, 22:23, 22:24, 23:1, 25:10, 25:11, 26:14, 26:17, 30:1, 33:12
pages [3] - 10:25, 14:5, 16:18
paragraph [2] - 25:11, 30:2
paraphrase [1] - 21:3
Park [1] - 2:14
part [1] - 30:1
particular [4] - 4:2, 6:3, 11:11, 16:4
parties [6] - 6:20, 6:22, 10:15, 22:1, 26:2, 31:20
parties' [1] - 10:25
paste [1] - 18:19
patent [1] - 8:2
paying [1] - 31:23
people [1] - 31:2
percent [1] - 23:13
perception [1] - 31:9
perform [1] - 31:5
perhaps [1] - 28:16
permanently [1] - 24:16
permitted [2] - 10:16, 12:9
personal [2] - 30:12, 30:19
personnel [2] - 25:15, 26:24
persuasive [1] - 9:13
photo [1] - 30:20
photographs [1] - 13:18
physical [1] - 18:16
pick [2] - 13:14
picked [3] - 13:20, 13:23, 14:1
piece [1] - 17:24
PLAINTIFF [1] - 2:3
plaintiff [9] - 3:11, 3:14, 4:5, 8:4, 10:6, 12:14, 15:9, 19:6, 24:14
plaintiff's [4] - 3:8, 6:2, 10:1, 26:6

Plaintiffs [1] - 1:6
plaintiffs [2] - 11:11, 13:5
platform [1] - 30:15
Plaza [1] - 2:8
plead [3] - 5:12, 11:6, 12:9
pleaded [2] - 5:1, 8:12
pleading [4] - 4:11, 6:12, 6:14, 12:18
pleadings [3] - 8:19, 8:20, 19:24
pleased [1] - 23:24
poaching [1] - 9:20, 9:21
point [25] - 5:14, 5:15, 5:24, 6:1, 6:6, 6:25, 7:9, 7:19, 8:12, 9:6, 9:10, 9:13, 10:4, 10:10, 11:22, 19:21, 20:4, 21:1, 24:9, 24:21, 25:1, 25:7, 29:24, 30:25
pointed [1] - 6:11
points [3] - 8:11, 15:9, 22:12
Polarian [1] - 13:6
pop [1] - 17:13
portion [1] - 4:8
position [2] - 12:8, 21:23
positive [1] - 7:22
possibility [2] - 7:11, 14:19
potentially [1] - 27:18
practice [1] - 24:18
preach [1] - 8:13
preclude [1] - 11:8
premature [1] - 19:19
prepared [1] - 4:10
presume [2] - 11:18, 17:11
presumption [1] - 16:25
previously [1] - 19:9
principle [1] - 7:25
privacy [1] - 30:3
private [1] - 30:12
privileged [1] - 25:16
problem [8] - 13:24, 13:25, 14:8, 19:6, 24:8, 27:8, 27:16, 27:19
problems [3] - 20:14, 29:2, 29:5
proceedings [2] - 32:4, 33:11

process [1] - 13:9
produce [4] - 17:16, 25:15, 27:4, 28:11
produced [2] - 14:15, 31:6
producing [1] - 31:10
production [1] - 31:1
program [1] - 29:16
prohibition [1] - 8:22
properly [1] - 10:8, 10:13, 10:17
property [4] - 7:1, 7:22, 8:5, 12:11
proportional [1] - 28:11
proportionality [1] - 28:10
proposal [9] - 13:11, 13:21, 14:23, 16:24, 17:15, 18:23, 20:14, 26:17, 28:22
propose [2] - 14:24, 28:17
proposed [4] - 6:11, 8:20, 10:10, 29:14
proposing [1] - 17:17
proprietary [2] - 6:21, 18:8
protection [2] - 6:21, 8:3
protective [1] - 31:11
protocol [7] - 30:6, 30:7, 30:8, 30:10, 30:15, 30:24, 30:25
prove [1] - 27:20
provide [2] - 7:20, 31:8
provided [4] - 9:1, 9:3, 22:6, 30:9
provision [4] - 9:20, 9:21, 9:22, 10:2
provisions [1] - 9:3
pull [1] - 26:12
pulled [1] - 18:13
purpose [2] - 10:14, 10:16
purposes [1] - 10:18
pursuant [2] - 6:19, 33:9
put [6] - 18:12, 18:21, 26:8, 26:9, 26:17, 30:11

**Q**

questions [1] - 16:9
quite [2] - 13:10, 17:25

**R**

Rachel [1] - 3:18
RACHEL [1] - 2:12
raise [1] - 11:17
Raithel [1] - 29:25
ran [1] - 29:13
reaction [1] - 19:20
read [1] - 9:12
readme.txt [1] - 29:15
reality [1] - 28:3
really [5] - 13:10, 14:13, 26:19, 28:5, 28:16
Realtime [1] - 33:6
realtime [1] - 19:13
reason [1] - 19:11, 21:23
reasonable [2] - 15:24, 16:4
reasonably [1] - 26:21
reasoning [3] - 5:21, 7:17, 7:19
reasons [1] - 19:21
recently [1] - 22:25
record [2] - 22:16, 23:6
recover [1] - 22:25, 23:3, 23:12, 24:5
recovered [2] - 22:25, 23:13
recovery [1] - 25:2
references [1] - 22:3
referred [1] - 15:12
referring [1] - 6:17
refers [1] - 26:4
regarding [1] - 26:3
regimes [1] - 8:7
regulations [1] - 33:13
relate [1] - 28:4
related [1] - 26:22
relates [4] - 10:24, 22:21, 27:13, 28:20
relationship [2] - 10:25, 22:2
relevance [1] - 25:22
relevant [9] - 14:25, 20:15, 25:16, 26:21, 27:18, 28:1, 28:7, 28:12, 30:18
remainder [1] - 10:2
remember [1] - 11:13
remove [4] - 4:19, 12:24, 14:24
removed [1] - 26:19
RENA [1] - 2:7

Rena [1] - 3:10
renamed [1] - 18:15
replead [1] - 11:2
report [2] - 26:9, 26:15
reported [1] - 33:11
REPORTER [2] - 1:22, 33:1
Reporter [2] - 33:7, 33:20
REPORTER'S [1] - 1:12
repositories [1] - 15:22
repository [2] - 13:7, 27:24
request [4] - 14:7, 16:17, 31:7, 31:16
requests [1] - 16:4
requirements [3] - 8:3, 8:4, 8:7
requires [1] - 15:25
research [1] - 25:15
resolved [1] - 23:21
respect [7] - 4:24, 7:5, 8:10, 17:23, 18:7, 20:17, 31:17
respectfully [3] - 7:5, 7:12, 7:16
respond [4] - 4:14, 16:10, 16:14, 21:23
response [10] - 6:24, 10:5, 15:3, 16:11, 18:25, 19:1, 21:18, 24:13, 26:6, 27:7
responsibility [1] - 24:23
restraints [2] - 30:8, 30:11
restrictive [2] - 30:25, 31:11
resulted [1] - 25:2
resuscitate [1] - 24:25
review [6] - 17:15, 25:15, 30:5, 30:6, 30:15, 31:5
RICHTER [2] - 2:4, 2:7
rightly [1] - 20:11
rights [1] - 12:11
Rockefeller [1] - 2:8
ROOM [1] - 1:23
RPR [1] - 33:20
ruling [7] - 4:6, 6:6, 10:18, 15:21, 22:15, 25:8, 31:15
run [6] - 16:4, 21:13, 25:12, 26:3, 28:9, 29:17

**S**

**safe** [1] - 27:12
**sanctions** [4] - 22:15, 22:20, 23:4, 31:23
**sandwiched** [1] - 14:10
**sat** [1] - 24:24
**save** [1] - 5:1
**saved** [1] - 5:5
**scale** [1] - 10:19
**schematic** [1] - 14:5
**schematics** [15] - 13:14, 14:16, 15:11, 16:5, 16:13, 16:17, 16:25, 17:2, 17:6, 17:7, 17:8, 17:10, 17:20, 17:24, 20:7
**schemes** [1] - 8:1
**Scott** [1] - 2:13
**search** [35] - 13:11, 13:13, 13:20, 14:2, 14:14, 14:17, 14:20, 14:22, 14:25, 15:11, 15:16, 16:3, 16:8, 17:12, 17:18, 18:23, 19:22, 20:7, 20:8, 20:14, 20:15, 20:23, 21:13, 22:1, 22:6, 23:22, 25:13, 25:15, 26:3, 27:4, 28:9, 29:7, 29:9, 29:11, 29:14
**searches** [2] - 16:4, 20:10
**searching** [1] - 16:14
**second** [6] - 5:22, 12:20, 24:11, 25:2, 26:18, 30:2
**secret** [16] - 5:3, 5:4, 5:13, 6:9, 6:10, 6:15, 6:17, 6:21, 7:3, 7:20, 8:1, 12:6, 12:16, 12:17, 19:10, 19:19
**secrete** [1] - 5:19
**secrets** [8] - 12:5, 12:10, 19:7, 29:3, 29:20
**section** [1] - 26:1
**Section** [1] - 33:9
**see** [6] - 4:14, 10:8, 11:17, 17:21, 20:23, 21:9
**sees** [1] - 19:8
**sense** [7] - 7:25, 13:4, 16:24, 19:4, 22:1, 29:1, 31:10
**sentence** [1] - 26:1
**separately** [1] - 15:10

**set** [5] - 20:7, 20:13, 25:13, 26:3, 31:4
**setting** [1] - 31:18
**seven** [2] - 18:12, 18:17
**several** [3] - 20:21, 20:25, 27:10
**shared** [5] - 23:15, 25:14, 25:21, 26:4, 27:17
**Sheppard** [1] - 3:13
**SHEPPARD** [2] - 2:4, 2:7
**shoot** [1] - 29:4
**shoot-first-aim-later** [1] - 29:4
**shooting** [1] - 16:22
**show** [1] - 28:1
**showed** [2] - 21:7, 21:9
**showing** [1] - 25:22
**shows** [1] - 29:15
**side** [6] - 10:22, 11:5, 22:13, 22:19, 29:21, 31:7
**sides** [1] - 31:14
**similar** [3] - 6:8, 9:24, 12:1
**similarities** [5] - 13:15, 14:1, 14:2, 19:15, 19:16
**similarity** [3] - 13:19, 13:20, 13:22
**situation** [1] - 14:21
**SKYRYSE** [1] - 1:8
**Skyryse** [21] - 3:7, 3:17, 3:19, 12:4, 15:7, 18:9, 21:9, 21:12, 22:24, 23:1, 23:8, 23:15, 23:22, 24:2, 24:4, 25:12, 25:17, 26:25, 28:5, 28:19
**Skyryse's** [5] - 18:23, 23:16, 27:11, 28:21, 30:3
**snagged** [1] - 18:22
**software** [1] - 29:16
**solution** [2] - 29:6
**Solutions** [4] - 9:10, 9:16, 9:19, 10:9
**sometimes** [2] - 18:3, 18:4
**somewhat** [1] - 23:24
**somewhere** [1] - 17:22
**soon** [3] - 24:4, 24:7, 31:15
**sorry** [1] - 26:12
**sort** [3] - 14:6, 20:10,

31:10
**sounds** [4] - 19:16, 21:19, 21:20, 22:8
**source** [5] - 15:13, 16:15, 18:1, 18:3, 18:4, 18:8
**sources** [2] - 14:14, 27:21
**South** [1] - 2:5
**specially** [1] - 31:4
**specific** [7] - 8:1, 13:10, 15:17, 18:2, 18:14, 26:25
**specifically** [5] - 9:1, 9:3, 13:12, 13:13, 18:12
**specificity** [2] - 12:19, 19:7
**specify** [1] - 12:16
**speculation** [1] - 22:8
**spoliation** [1] - 21:21
**spot** [1] - 16:1
**Spring** [1] - 24:5
**SR** [1] - 18:15
**stage** [1] - 12:8
**stages** [1] - 12:2
**standard** [1] - 31:1
**stands** [1] - 19:13
**start** [1] - 14:7
**starting** [1] - 3:8
**STATE** [1] - 33:4
**statement** [1] - 16:15
**STATES** [1] - 1:1
**States** [3] - 33:7, 33:9, 33:14
**status** [1] - 26:14
**stenographically** [1] - 33:11
**step** [1] - 23:22
**steps** [2] - 22:24, 23:2
**still** [8] - 6:21, 7:11, 12:2, 12:7, 12:14, 29:2, 30:17
**stipulated** [1] - 15:25
**stolen** [3] - 12:10, 17:1, 28:15
**stop** [1] - 5:22
**stored** [1] - 14:9
**Street** [1] - 2:5
**STREET** [1] - 1:23
**struck** [1] - 9:22
**structural** [4] - 13:15, 13:19, 14:2, 19:15
**structure** [4] - 18:5, 18:11, 18:17, 20:8
**stuff** [1] - 28:10
**subject** [4] - 24:7,

24:17, 30:5, 30:6
**submit** [3] - 4:11, 7:24, 10:3
**subsequent** [1] - 7:8
**subset** [1] - 27:3
**subverted** [1] - 10:19
**successful** [1] - 29:10
**sufficiently** [1] - 8:12
**suggest** [1] - 16:1
**suggested** [2] - 11:2, 26:18
**summarize** [1] - 3:24
**summary** [1] - 12:12
**summer** [2] - 24:18, 24:20
**Sunpower** [1] - 7:18
**supercedes** [1] - 5:17
**supports** [1] - 9:11
**surprised** [1] - 23:24
**sweeping** [1] - 15:21
**system** [3] - 19:13, 25:20, 25:24
**systems** [3] - 14:10, 20:1, 28:25

**T**

**targeted** [1] - 30:21
**tasks** [2] - 31:17, 31:19
**technology** [1] - 27:11
**teetering** [2] - 11:13, 11:16
**tentative** [25] - 4:1, 4:6, 4:11, 4:23, 5:15, 6:6, 10:9, 10:18, 11:1, 12:22, 13:2, 13:5, 13:17, 15:10, 15:12, 15:20, 16:1, 22:15, 22:19, 22:23, 25:7, 25:10, 25:25, 30:1, 30:16
**tentatively** [3] - 20:11, 25:17, 30:10
**term** [11] - 13:11, 13:20, 17:6, 17:19, 20:14, 21:13, 22:1, 28:23, 29:7, 29:9, 29:15
**terms** [27] - 11:3, 13:6, 13:13, 14:2, 14:14, 14:17, 14:20, 14:22, 14:25, 15:11, 15:16, 16:3, 16:8, 17:7, 17:12, 18:23, 19:22, 20:7, 20:15, 22:6, 25:13, 26:3,

28:8, 28:9, 29:11, 29:14, 31:9
**TERRI** [4] - 1:22, 33:6, 33:19, 33:20
**text** [7] - 14:20, 15:13, 15:14, 15:16, 15:18, 16:15, 18:4
**THE** [57] - 2:3, 2:10, 3:6, 3:12, 3:15, 3:20, 4:13, 4:18, 4:21, 5:6, 5:22, 5:24, 6:2, 6:16, 6:23, 7:10, 7:13, 7:23, 8:8, 8:23, 9:15, 10:5, 10:21, 11:7, 11:16, 11:21, 11:24, 12:14, 12:20, 12:25, 13:22, 14:4, 15:3, 15:6, 16:11, 16:16, 17:5, 17:11, 17:18, 18:25, 20:19, 20:22, 21:18, 22:12, 22:17, 23:2, 24:10, 24:13, 25:4, 26:6, 27:7, 27:9, 29:9, 29:21, 30:23, 31:13, 31:25
**theft** [1] - 6:9
**theory** [1] - 19:8
**third** [2] - 6:20, 6:22
**thoughts** [1] - 24:14
**three** [1] - 4:23
**THURSDAY** [1] - 3:1
**Thursday** [1] - 1:14
**timeline** [1] - 24:15
**timely** [1] - 5:25
**Title** [1] - 33:9
**TO** [2] - 1:13, 1:13
**today** [3] - 4:17, 4:20, 4:23
**together** [3] - 18:12, 18:13, 18:21
**took** [1] - 23:22
**top** [1] - 25:12
**toss** [1] - 18:8, 18:15
**tosses** [1] - 19:13, 19:16
**touch** [1] - 22:14
**trade** [25] - 5:3, 5:4, 5:13, 5:19, 6:9, 6:10, 6:15, 6:17, 6:20, 7:2, 7:20, 8:1, 12:4, 12:5, 12:6, 12:9, 12:10, 12:16, 12:17, 19:7, 19:10, 19:19, 29:2, 29:20
**TRANSCRIPT** [1] - 1:12
**transcript** [2] - 33:10, 33:12
**tries** [2] - 11:6, 19:8
**TRO** [1] - 1:13

**true** [6] - 9:4, 16:21, 17:14, 21:23, 30:6, 33:10
**try** [3] - 11:7, 16:5, 21:2
**trying** [3] - 11:11, 13:12, 21:12
**turn** [2] - 17:17, 30:18
**turning** [2] - 30:3, 31:23
**two** [6] - 3:20, 8:11, 14:14, 16:18, 20:1, 22:1
**type** [6] - 13:19, 14:1, 14:7, 18:22, 19:5, 28:14
**types** [1] - 31:24

# U

**U.S** [1] - 1:3
**unaltered** [1] - 21:14
**under** [3] - 7:1, 10:16, 31:10
**undermined** [1] - 10:19
**understandable** [1] - 22:4
**unenforceable** [1] - 9:22
**unique** [1] - 18:11
**unitary** [1] - 7:20
**UNITED** [1] - 1:1
**United** [3] - 33:7, 33:9, 33:14
**unless** [1] - 7:22
**unlike** [1] - 9:19
**unlimited** [1] - 20:10
**unproven** [1] - 22:9
**unreasonable** [1] - 13:12
**unrestricted** [1] - 30:5
**up** [11] - 13:14, 13:20, 13:23, 14:2, 16:3, 17:13, 23:1, 26:12, 29:16, 31:4
**uses** [1] - 25:24

# V

**vague** [1] - 28:23
**valid** [1] - 9:17
**verbal** [2] - 13:13, 16:13
**version** [1] - 21:5
**versions** [1] - 13:19
**versus** [1] - 3:6
**viable** [1] - 11:6

**vs** [1] - 1:7

# W

**waited** [1] - 24:2
**Wang** [2] - 22:22, 23:8
**wants** [1] - 20:8
**WATKINS** [1] - 2:11
**Watkins** [1] - 3:16
**ways** [1] - 20:25
**weight** [2] - 5:10, 7:7
**well-aided** [1] - 14:22
**WEST** [1] - 1:23
**whole** [2] - 14:15, 28:9
**wide** [1] - 27:21
**wildly** [1] - 29:14
**willing** [1] - 25:12
**word** [1] - 21:25
**words** [5] - 5:7, 16:16, 16:18, 16:22, 25:15
**works** [1] - 28:1
**world** [1] - 23:11
**written** [1] - 14:3
**wrongly** [1] - 7:17
**WU** [1] - 1:3

# Y

**year** [1] - 29:3
**years** [3] - 19:14, 22:2
**York** [2] - 2:9

**UNITED STATES DISTRICT COURT**