TRANSCRIPT OF PROCEEDINGS, June 28, 2023

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| MOOG INC., | ) Case No. 2:22-cv-09094-GW- |
| | ) MAR |
| Plaintiff, | ) |
| | ) |
| vs. | ) Los Angeles, California |
| | ) |
| SKYRYSE, INC. et al, | ) Wednesday, June 28, 2023 |
| | ) |
| Defendants. | ) |
| _____ | ) |

TRANSCRIPT OF HEARING RE:
DEFENDANT'S MOTION TO OVERRULE MOOG'S OBJECTION TO
SKYRYSE'S DISCLOSURE OF CONFIDENTIAL INFORMATION TO
VINCENT SOCCI
BEFORE THE HONORABLE MARGO A. ROCCONI,
UNITED STATES MAGISTRATE JUDGE

| | |
|---|---|
| Appearances: | See next page. |
| Court Reporter: | Recorded; CourtSmart |
| Courtroom Deputy: | Valerie Velasco |
| Transcribed by: | Terri Harper |
| | Huntington Court Reporters |
| | and Transcription, Inc. |
| | 1 South Fair Oaks Avenue |
| | Suite 200 |
| | Pasadena, California 91105 |
| | (800) 586-2988 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:

For the Plaintiff                RENA ANDOH, ESQ.
MOOG INC.:                       Sheppard Mullin Richter And
                                 Hampton
                                 30 Rockefeller Plaza
                                 New York, New York  10112
                                 (212) 653-8712

                                 MICHAEL K. HEINS, ESQ.
                                 Sheppard Mullin Richter and
                                 Hampton
                                 12275 El Camino Real
                                 Suite 100
                                 San Diego, CA  92130
                                 (858) 720-7413


For the Defendant                GABRIEL S. GROSS, ESQ.
SKYRYSE, INC:                    Latham and Watkins LLP
                                 140 Scott Drive
                                 Menlo Park, CA  94025
                                 (650) 328-4600

Case 2:22-cv-09094-GW-MAR   Document 574   Filed 07/10/23   Page 3 of 39   Page ID #:17340
TRANSCRIPT OF PROCEEDINGS, June 28, 2023

3

 1          Los Angeles, California; Wednesday, June 28, 2023

 2                            --o0o--

 3                       (Call to Order)

 4

 5          THE CLERK:  Calling case number LA-22-cv-9094-

 6   GW-MAR, Moog, Inc. versus Skyryse, Inc. et al.  Starting

 7   with plaintiff, counsel, please make your appearances for

 8   the record.

 9          MS. ANDOH:  Rena Andoh and Michael Heinz for

10   plaintiff.

11          MR. GROSS:  Gabriel Gross, Latham and Watkins,

12   on behalf of Skyryse.

13          THE COURT:  All right.  I'll start with you,

14   Mr. Gross.

15          MR. GROSS:  Thank you, your Honor.  May I use

16   the podium?

17          THE COURT:  Of course.  I would prefer it.

18          MS. ANDOH:  Your Honor, if I may, just briefly

19   before we get started.  I don't necessarily have reason

20   to believe that specifics are going to be discussed about

21   the program at issue, but there's some ceiling issues.

22          So I think because the program name itself is

23   something that requires sealing that it may make sense to

24   provisionally have the transcript sealed, and then

25   hopefully, we don't need to maintain it under seal.

```
 1              THE COURT:  Okay.  Mr. Gross, what is your
 2    position?
 3              MR. GROSS:  I have no objection to that, your
 4    Honor.  I would be surprised if in my presentation to you
 5    today I'm going to be touching on anything confidential,
 6    and I can actually take measures to avoid that, but --
 7              THE COURT:  Maybe we can call it the program?
 8              MS. ANDOH:  Yeah.  That would be great, your
 9    Honor.
10              THE COURT:  All right.  Thank you.
11              MR. GROSS:  Okay.  Thank you, your Honor.
12    Again, Gabe Gross on behalf of Skyryse.  We're here today
13    to try to resolve a dispute that the parties have over
14    the participation of a particular expert witness, whose
15    name is Vincent Socci, in this case.
16              Skyryse has engaged him, and the issue that's
17    come up is that Moog has objected to his involvement
18    based on some work he did as a contractor for Moog about
19    15 to 18 years ago, between 2005 and 2009.
20              So the briefing, I think, might give one the
21    impression of ships passing in the night a little bit.
22    The way this dispute came to be was that there's a
23    process the parties agreed to under a stipulated
24    protective order any time they'd like to disclose
25    confidential information to one of their experts.
```

1          Skyryse disclosed Mr. Socci and all the

2   materials about him that were required under the

3   protective order because Skyryse wanted to share

4   information that's been designated confidential.  Moog

5   objected.

6          The parties met and conferred about it.  The

7   protective order requires that.  It also says that Moog,

8   or in this case, any objecting party, in this case Moog,

9   bears the burden of proving that it would suffer a risk

10  of harm if information were shared with the expert that

11  so greatly outweighs the party who wants to use the

12  expert, as to outweigh their need to work with him.

13         So we met and conferred.  We weren't able to

14  resolve it.  Moog told us that they believe the expert

15  should be disqualified from the get-go.  Skyryse provided

16  its half of the joint statement, following the order

17  under the -- the procedure under the protective order and

18  explaining why Moog hadn't met the very specific burden

19  that the protective order puts on it.

20         As the Court has seen, when Moog provided its

21  response, it really didn't engage with that burden.

22  Instead, in its opposition half of the paper, it

23  essentially moved to disqualify him.  So Skyryse did its

24  best to respond to that in the five-page submission.

25         This objection should be overruled, and there's

1    really three reasons that I'd like to discuss with the

2    Court today.

3             First is that Moog simply hasn't met that

4    burden, the burden that the protective order puts on it

5    to show that there's a risk that it would suffer and it

6    outweighs Skyryse's need to work with this uniquely

7    qualified expert.  It doesn't even engage with that

8    burden, much less meet it.

9             Second, your Honor, on the disqualification

10   point, Moog hasn't met that burden either.  That burden

11   falls on Moog, the party seeking the extraordinary relief

12   of disqualifying an expert and saying he cannot

13   participate in this case.  Under the cases that Moog has

14   relied on, disqualification is not an order.

15            And then third, your Honor, the law that the

16   parties have briefed actually supports Skyryse.  Skyryse

17   was limited in its five-page supplemental submission, so

18   I'd like to unpack some of this.

19            And then finally, before I conclude, I feel

20   compelled to respond to a couple of the other arguments

21   Moog made about Skyryse acting under false pretenses,

22   which is baseless, and on this idea that --

23            THE COURT:  So Mr. Gross, just so you know,

24   these kinds of arguments are not that persuasive to me

25   from either side, and I'd just like to get to the

 1   substance.

 2              MR. GROSS:  Let me limit it --

 3              THE COURT:  So you can -- you are welcome to

 4   give me a few sentences on it, but argue as you will.

 5              MR. GROSS:  Understood, your Honor.  I'll keep

 6   that part very brief, if I touch on it at all, knowing

 7   the Court's feelings about it.

 8              So first, your Honor, then the burden that Moog

 9   has under the protective order and under the applicable

10   law here to show that Mr. Socci shouldn't be allowed to

11   view information that was designated confidential is just

12   not one they've met.

13              They haven't articulated what this risk of harm

14   is if Mr. Socci were to review a document that they've

15   designated as confidential.

16              They certainly haven't shown that he's engaged

17   in competitive decision making, and that's one of the key

18   factors that courts consider in weighing this issue.

19   Expert witnesses who are not just employed for or work

20   for competitors, but those that are engaged in that

21   competitive decision making process are barred typically

22   from seeing a competitor's confidential information.

23   Mr. Socci isn't involved in that.  And there's just no

24   evidence that Moog has come forward with to meet its

25   burden.

1      Now, Mr. Socci has provided a declaration to

2 the Court as well as signing an undertaking agreeing that

3 he will be bound by the Court's protective order.  And he

4 has said, and this is, frankly, undisputed, that he does

5 not have any confidential information from the work he

6 did for Moog as a contractor 15-ish years ago, that he

7 doesn't remember the details of that work all those years

8 ago, that if he should encounter something from that time

9 when he worked for Moog, he won't use it in this case.

10 He won't disclose it to cut to Skyryse.  He'll keep it

11 confidential.

12      He has sworn also -- this is above and beyond

13 what's required -- that he -- but it's appropriate here -

14 - he'll limit his work on this case to the material that

15 he's provided through the discovery process in this case

16 or that he independently collects in his own research.

17 He has no interest in using any information he might have

18 been privy to all those years ago.  But just as

19 importantly, he doesn't have it, and he has no memory of

20 it.

21      So, your Honor, the issue about competitive

22 decision making is one that the Courts have, I think, had

23 a number of opportunities to encounter, especially in

24 technology cases like this one.  And Mr. Socci has

25 provided undisputed evidence on this point too.

1    He doesn't work for a competitor.  He founded

2 his own consulting firm; it's called On Target Motion.

3 He provides engineering services, consulting services.

4 He's never considered himself engaged in any competitive

5 decision making for any of his clients.  Moog, I

6 understand disagrees, but their argument is really that

7 among his many clients are some of their competitors.

8    That's beside the point.  Mr. Socci has sworn

9 under oath that he is not engaged in competitive decision

10 making for them and he never has been.

11    So there really is no factual showing that Moog

12 has made on this record of any risk it would suffer if

13 Mr. Socci is shown some confidential information in this

14 case, certainly not one that outweighs Skyryse's need to

15 work with him.

16    And Mr. Socci is unique.  I personally have

17 been a part of interviewing and selecting experts in this

18 case and many other cases, and I won't repeat the details

19 of his credentials that we've put in the briefing, but,

20 your Honor, there are -- there's no one like Mr. Socci.

21    THE COURT:  So you're saying there's actually

22 no other expert with Mr. Socci's expertise?

23    MR. GROSS:  I have yet to find one.

24    Now, to be sure, there are other folks who work

25 in aviation, we've engaged some of them, but not somebody

 1    with his unique 30 years of expertise, experience and

 2    credentials that cover both software and hardware, get

 3    into machinery like actuators.  There's a number of

 4    unique skills he brings to the table.  And frankly, we've

 5    been unable to leverage them, unable to benefit from his

 6    expertise because of this objection, which we surely

 7    would have been doing had this not come up.

 8         THE COURT:  Last time we saw each other, I

 9    issued an order shortly thereafter inviting both parties

10    to use experts.  Are you intending or would you like to

11    use Mr. Socci for any kind of future motion that you

12    would have with respect to the trade secrets and whether

13    there are particular -- they've been identified with

14    particularity after this amended process occurs?

15         MR. GROSS:  We certainly would, your Honor.  We

16    haven't had that opportunity.

17         THE COURT:  So that's basically your intent

18    with this expert, at least one thing.

19         MR. GROSS:  If this objection is overruled, we

20    will consult with Mr. Socci about that.  Absolutely.

21         And there were other motions pending when this

22    issue came up.  There was a motion that Moog filed

23    seeking a contempt finding and sanctions that Judge Lewis

24    tentatively denied so far.  And we would have worked with

25    him on that as well, but we haven't had the opportunity.

1        THE COURT:  And aren't there certain trade

2  secrets here that Mr. Socci would have worked on at least

3  a portion of them for Moog?

4        MR. GROSS:  Well, that's what we have heard

5  from Moog and its witness, its declarant Mr. Peroni (ph).

6  Mr. Socci wasn't aware of that; he has no memory of those

7  particular things.

8            In meeting and conferring, Moog told us about

9  three particular trade secrets by number and said that he

10  worked on them.  They didn't expand on that or tell us

11  what he did.  And frankly, Mr. Peroni's declaration

12  doesn't tell us how any work he may have done on

13  particular programs relates to this case.

14            But those alleged trade secrets are in the

15  category of trade secrets that your Honor found Moog

16  still hasn't sufficiently identified.  We don't know what

17  they are.

18            So it's certainly possible, according to Moog,

19  and I don't have any reason to doubt that when he did

20  work, they touched on those programs, but Moog hasn't

21  made any showing that he did specific work that relates

22  to the claims in this case that would create some sort of

23  risk for them that outweighs Skyryse's need to work with

24  him.

25            And we need to keep in mind, your Honor, that

 1    Mr. Socci has not only agreed to abide by the protective

 2    order generally, but that protective order has safeguards

 3    built into it, as so many protective orders do, on what

 4    those who are allowed to see confidential designated

 5    information can do with it.

 6         Under court order, he can't use it for any

 7    purpose other than this action.  He has to secure it in a

 8    responsible manner.  He has to abide by every restriction

 9    and safeguard that's in there, and there's no reason to

10    believe he wouldn't do that.

11         Your Honor, I think the closest that Moog has

12    come to making a factual showing of the risk that the law

13    and the protective order says it has to show to meet its

14    burden and show that it outweighs Skyryse's need is

15    Mr. Peroni's declaration, it's paragraph 19.  And for the

16    record, that's Docket number 516-2.  And what Mr. Peroni,

17    an engineer at Moog, said is very general.  It's not

18    specific to Mr. Socci.  He said Moog would be severely

19    prejudiced if its confidential information was purposely

20    or accidentally transmitted outside Moog.

21         That's abstract.  It's cursory.  It's not

22    specific to this case or to Mr. Socci, and it's --

23    frankly, it's unexceptional.  Every technology company in

24    any civil action could say that about discovery.  If

25    there's confidential information that's discovered and

1    it's treated cavalierly, that could create a risk.  Of

2    course it could, but that's what the protective order is

3    in place to avoid.

4         And Mr. Socci has not only committed to abiding

5    by it, he's gone a step farther and said that he won't

6    use anything he might encounter, although he has no

7    reason to expect he would, from his time working at Moog

8    15, 16, 17, 18 years ago, in this case.  And, of course,

9    when I said work at Moog, I should correct myself.  He

10   did some contracting for Moog; he was never a Moog

11   employee.

12        Your Honor, let me touch, please, on the

13   disqualification standard that Moog has raised here.  And

14   Moog didn't file its own motion seeking this relief; it

15   was in its opposition to Skyryse's dispute to resolve the

16   objection under the protective order that it raised it.

17        The way I understand Moog's argument is that if

18   an expert once worked for its adversary and received

19   relevant confidential information, it's forever barred

20   from participating in litigation against that adversary.

21   And that's just not the law.  There is no bright line

22   rule on this point.

23        In fact, that's what some of the cases that

24   Moog relies on say.  The Staley case at page one says,

25   and I quote, "There is no bright line rule for expert

1     disqualification."  And in unpacking that legal standard,

2     the Court in that case pointed out that courts have to

3     balance policies and fairness concerns to figure out

4     what's right for that case, and it's very specific.

5             Yes, whether there was a confidential

6     relationship matters and whether the expert received

7     confidential information that's relevant does matter, but

8     it's part of this balancing test, which is really more

9     nuanced.  And court after court has commented on how this

10    is a very drastic measure that an objecting party would

11    be seeking when trying to disqualify an expert, and

12    they're reluctant to grant it absent a pretty

13    extraordinary showing.

14            So let's look at Moog's showing here.

15            We have Mr. Peroni's declaration that says

16    Mr. Socci had a confidential relationship with the

17    company when he did his contracting work.  And I think we

18    can assume for purposes of this argument that that's

19    true, but we asked for repeatedly and Moog never provided

20    any confidentiality agreement, so we don't know what his

21    obligations were, if any, to Moog 15 to 18 years ago.  We

22    don't know if they're in place today.  We don't know what

23    qualifications or exceptions or waivers might have been

24    in that confidentiality agreement.

25            And waivers are important.  Moog may have

1    agreed in that same confidentiality agreement that by

2    engaging him to do X, Y and Z, they wouldn't seek to

3    disqualify him knowing he has a consulting practice in

4    any matters related to A, B and C, or something like

5    that.  And that's not just hypothetically, your Honor.

6    That's actually not uncommon, and the Staley case that

7    Moog relies on deals with that sort of situation.

8            In Staley, the expert's agreement actually

9    showed that the defendant said it would not seek

10   disqualification in matters involving patent litigation

11   or patent consultation.  That was very much an issue in

12   that case.

13           But all Moog has, because it no longer has his

14   contract because it was so long ago that it engaged in

15   it, is Mr. Peroni's say so that, hey, we treat these

16   things confidentially, he had a confidential

17   relationship.  That's not enough to meet their burden.

18   They don't have the contract.

19           Now, we're not disputing that one may have

20   existed, and Mr. Socci is not disputing that.  He's

21   saying he doesn't have it, either.  He doesn't remember

22   it.  If he has any confidentiality obligations, he will

23   honor them.  And that's why he went to those great

24   lengths to show that and to swear in a sworn declaration

25   that he won't use anything from that time.

 1          So, your Honor, under these facts, Moog just

 2    can't meet its burden to show that this expert should be

 3    disqualified.  And I think the cases it relies on make

 4    that point for us, and the one that, you know, figured

 5    large in Moog's briefing and I think is important here is

 6    the SSL case.  That stands for Space Systems Laurel case.

 7          And the case dealt with two experts, one of

 8    whom was disqualified and one of whom was not.  And the

 9    one who was disqualified had a pretty different scenario

10    than Mr. Socci or the other expert in that case.  He had

11    worked for the adversary for something like 29 or 30

12    years up until about four or three years before the

13    lawsuit was filed, and he worked directly on the

14    information that was relevant in that case.  And I

15    believe there was also a confidentiality agreement that

16    the parties could look to and understand and read in that

17    case.  He was disqualified and rather summarily so.

18          But the second expert was named Dr. Kaplan, and

19    he worked for SSL's adversary.  He had access to

20    confidential technology that was relevant.  And he had

21    signed numerous confidentiality agreements with the

22    adversary, Martin Marietta.  But the Court didn't award

23    this drastic remedy of disqualification in that case, and

24    it didn't disqualify him for a couple very logical and

25    sound reasons.

 1          One was that he had stopped working.  It was

 2     consulting.  Stopped consulting for Martin Marietta five

 3     years before the lawsuit.  Any relevant information, what

 4     the Court called his meaningful involvement with Martin

 5     Marietta, had ended over 15 years ago, just like

 6     Mr. Socci's.

 7          The Court found that the parties had agreed

 8     there that he didn't have any confidential information in

 9     his possession, just like Mr. Socci.  And the Court noted

10     that this guy is a renowned expert in the field, and in

11     that case, it was satellite control.

12          And based on all those facts, despite him

13     having consulted with and worked for the adversary 15

14     years ago and having relevant information shown to him

15     back then, the Court said there's little danger in his

16     participation as an expert in this case, there's little

17     danger that that will prejudice Martin Marietta, and it

18     denied the disqualification motion.

19          But the Court did something else too, and it's

20     something that Mr. Socci has already volunteered to do,

21     in fact has committed to doing.  The Court in SSL said

22     that this expert, Dr. Kaplan, would be prohibited from

23     disclosing to SSL, his client, or testifying about

24     information he had gained while bound by his

25     confidentiality agreements in working with Martin

1   Marietta.

2        Mr. Socci has already committed to doing the

3   same thing.  He has said I won't use anything I might

4   come across.  He doesn't have any reason to believe he

5   will, but anything I might come across from the years in

6   which I worked with Moog in my work on this case; it'll

7   be based on the information that's developed here that I

8   independently researched.  And that's sufficient to avoid

9   any risk to Moog, risks that, frankly, Moog hasn't

10  articulated.

11       And I think Mr. Peroni's declaration is really

12  the evidence of that.  He describes the specifics that he

13  says secondhand that Mr. Socci worked on, but he doesn't

14  articulate any sort of risk or prejudice.

15       And, your Honor, the premise, the sort of

16  unspoken premise of Moog's disqualification motion is

17  that Mr. Socci can't be trusted or Skyryse can't be

18  trusted.

19       There's nothing in the record to suggest that.

20  Nothing.  He's bound by the protective order.  They hired

21  him themselves.  He's sworn to honor any confidentiality

22  obligations.  There's no reason to impugn this man's

23  integrity, or counsel's, or to think that he wouldn't

24  honor either his commitment to the Court to be bound by

25  the protective order, the other commitments he's made in

```
 1    his sworn declarations, or any confidentiality

 2    obligations that may still exist all these years later to

 3    Moog.

 4              It's not a relevant part of his qualifications,

 5    but the man is an ordained minister in the Methodist

 6    Church.  There is simply no reason to think that he

 7    cannot be trusted, which I think is the underlying theme,

 8    the undercurrent of Moog's motion.

 9              THE COURT:  Although I do think that, although

10    there wasn't litigation at this, back in the time where

11    Mr. Socci worked on contract anyway with Moog, it's a

12    little bit like switching sides, which raises some

13    concerns.  And I think if you were working for that firm

14    over there, you would see that as a potential prejudice

15    or harm to their case.

16              So I appreciate your arguments, are you -- can

17    we move on to --

18              MR. GROSS:  I'm just about -- I'll wrap it up.

19              THE COURT:  All right.  Thank you.

20              MR. GROSS:  There is a side switching case that

21    came up in the briefing and it dealt with an expert hired

22    by counsel after he had spoken with counsel for the other

23    side.  And the first party that contacted him went nuts

24    and moved for disqualification.  That is not what we're

25    talking about.
```

TRANSCRIPT OF PROCEEDINGS, June 28, 2023

```
 1              THE COURT:  Right.  But it's just an analogous,
 2    kind of.  It's a concern that I think every lawyer has or
 3    should have.  I would have been shocked if they hadn't
 4    raised it.
 5              MR. GROSS:  I do understand the concern.  I
 6    think it's misplaced in this case where he did
 7    engineering work 18 years ago that he's sworn he doesn't
 8    remember the details of.
 9              Finally, your Honor, the counsel from Moog
10    raised this notion that Mr. Socci could be a fact witness
11    as well in this case, and how awkward would that be if he
12    had to be both a fact and an expert witness at the same
13    time?
14              I think the Court can dismiss this.  First of
15    all, expert witnesses are fact witnesses in a number of
16    intellectual property cases because of their frequent
17    involvement with prior art, with the development of
18    technologies, that sort of thing.  But we don't have any
19    real fact-based reason to think that would be the case.
20    He hasn't done any work for the company for 15 years and
21    has no memory of it.
22              And Moog has had its opportunity.  It took it
23    to disclose all of the witnesses they think might have
24    discoverable information.  We've exchanged initial
25    disclosures, and they didn't, you know, they didn't lay
```

 1  off.  It's got a bunch of Skyryse employees and ex-

 2  employees and Moog employees and third parties in it.

 3  Mr. Socci isn't one of them.

 4       And they raised this in their briefing.  They

 5  didn't amend their 26A1's to suggest he was going to be a

 6  fact witness.  There's no reason on this record to think

 7  he would be, much less reason not to sustain the

 8  objection to him.

 9       And then finally, your Honor, the point about

10  Skyryse having other experts, we do have other experts.

11  None are like Vince Socci, and Moog's laundry list of

12  them, including computer forensics people and an expert

13  in intellectual property and other IT experts that have

14  nothing to do with Mr. Socci's expertise, frankly, don't

15  move the needle.  I think the other experts and the fact

16  witness arguments can frankly be summarily dismissed.  So

17  unless the Court has questions, I'm happy to stop for

18  now.

19       THE COURT:  All right.  Thank you, Mr. Gross.

20       MR. GROSS:  Thank you, your Honor.

21       MR. HEINS:  Good morning, your Honor.

22       THE COURT:  Good morning.

23       MR. HEINS:  Mike Heinz from Shepherd Mullin on

24  behalf of Moog.  I think we need to look at the risk

25  versus harm analysis that Skyryse keeps talking about

```
 1   because they're off on it.  They're looking at

 2   Mr. Socci's risk of disclosing confidential information

 3   learned under the protective order to third parties.

 4   That's what the competitive decision making is all about.

 5           That's not Moog's objection.  The risk of harm

 6   to Moog is that Mr. Socci worked for Moog for 3000 hours

 7   on the trade secret at issue in this case, and is going

 8   to disclose that information to Skyryse.

 9           Now, we're not saying that Mr. Socci as a

10   minister or anyone is untrustworthy.  We are saying that

11   he did so much work on this program that when he has

12   access to all of the discovery files again, it's going to

13   be impossible for him to know whether or not what he's

14   disclosing to Skyryse he's learning from discovery or

15   from his confidential relationship with Moog.  That's the

16   risk of harm.

17           That is what this is all about.  It has nothing

18   to do with that we believe he's going to purposely breach

19   the safeguards of the protective order.  We're not

20   alleging that.

21           THE COURT:  All right.  So basically, if he's

22   not disqualified, then your objection to disclosure

23   doesn't stand.  In other words, you believe that he would

24   abide by the terms of the --

25           MR. HEINS:  I have no reason to believe he
```

```
 1    would not purposely breach the terms of the protective

 2    order.  But again, the key is that the only way he can

 3    have access to protective order material under the

 4    protective order is as an expert in this case, and he

 5    seems plainly to be disqualified from working as an

 6    expert based on his prior work at Moog.

 7            So the issue is for the risk versus harm

 8    analysis, despite having their brief and counsel being up

 9    here, they have not articulated a need to disclose

10    confidential information to an expert that they can't use

11    in the case.  They have 10 other experts.  They have

12    other aviation experts.  They haven't shown why they need

13    to give confidential information to a person who can't

14    act as an expert.

15            For this exact reason, that is why courts have

16    repeatedly ruled that it's improper for you to use a

17    former employee that has relevant knowledge about the

18    case as an expert against that party.

19            THE COURT:  Is there somebody on the list that

20    you have provided for me in the joint stipulation that is

21    as unique as Mr. Socci?

22            MR. HEINS:  Your Honor, we believe that

23    Mr. Locke (ph), who is described as a full-time

24    consultant like Mr. Socci in the military, aerospace and

25    industrial control sectors, appears to be -- have the
```

```
 1  same experience as Mr. Socci.  The only difference

 2  between Mr. Socci and Mr. Locke, as far as we can tell,

 3  is that Mr. Socci worked for Moog and has specialized

 4  knowledge about this case.  That's why Skyryse wants to

 5  use him.  That's improper.

 6          So getting back to the disqualification and

 7  improper use of expert, it's a simple two-part test that

 8  Skyryse can't get around.  It's did you have a

 9  confidential relationship with the expert, and did you

10  disclose confidential information to the expert during

11  that relationship?

12          The answer to that is obviously yes.  Moog is a

13  military and government aircraft company that works on

14  sensitive government projects that by law cannot be

15  disclosed outside of the company.  They're a government

16  contractor.

17          All of Moog's engineers know that they can't

18  disclose that information.  Mr. Socci, in his declaration

19  even says that's typical of all the aircraft industries

20  that he's worked with.

21          He had a confidential relationship.  The law

22  doesn't require you to show that you had a confidential

23  agreement or that you're abiding by that.  We're not

24  arguing that he's breached any contract with Moog, but we

25  are saying that he had a confidential relationship and
```

 1    that's all the test requires.

 2            THE COURT:  Do you have a -- does Moog use a

 3    consultant agreement?  I mean, have they used the same

 4    consultant agreement over all these years that I could

 5    look at?

 6            MR. HEINS:  Moog has used, we believe,

 7    different consulting agreements.  We were not able to

 8    find the one that we believe Mr. Socci signed, but I

 9    believe we can provide the typical --

10            THE COURT:  But are the terms -- would the

11    terms have been materially altered over the years?

12            MR. HEINS:  I do not believe so.  So we can

13    work on providing that to you in a supplemental filing,

14    if you'd like.

15            THE COURT:  I'd appreciate that.

16            MR. HEINS:  Okay.  So once we establish that,

17    then the only question is did Moog give Mr. Socci

18    confidential information?  And the answer to that is

19    obviously yes.  He was working on sensitive government

20    programs.  He's given presentations about those programs.

21    His work is going to the largest defense contractor in

22    the country.  He's on presentations showing that he had

23    Moog proprietary and confidential information.

24            That confidential information, again, is

25    directly related to one of the trade secrets in this

1    case.  While counsel said that Moog did not define that

2    trade secret, and I understand that that is one of the

3    issues that the parties are continuing to work out, Moog

4    did provide counsel with respect to that trade secret a

5    listing of 4500 software files that directly relate to

6    that program.  They know what the trade secret is.

7    Moog's working to describe it better pursuant to your

8    Honor's order, and we recognize that, but there's no --

9    the parties know what the issue is.

10            The second thing is Mr. Gross stood up here and

11   said that they -- we were not forthcoming in telling them

12   what Mr. Socci did at Moog.  But Skyryse and Latham and

13   Watkins are already working with Mr. Socci.  They could

14   have asked him what he did for Moog.

15            Again, he worked for four years at Moog and

16   worked 3000 hours on the trade secret at issue.  It is

17   not believable that he does not remember almost two

18   entire full work years of work on a program.  Moog wasn't

19   hiding anything.  They had access to him.

20            The only reason that Mr. Socci would not have

21   been able to tell Skyryse what he worked on at Moog is if

22   he thought he was under a confidentiality obligation to

23   Moog and couldn't tell them.  That, again, supports

24   Moog's argument of the confidential relationship.

25            In the supplemental brief, as we said, Skyryse

```
 1    really didn't address Moog's true objection to Mr. Socci
 2    working as an expert for Skyryse.  They stated that
 3    Mr. Socci has no confidential information about Moog.
 4    For the record, that was not in a signed declaration;
 5    that was attorney argument.
 6            But even if that's true, he is about to have
 7    terabytes upon terabytes of information refreshing his
 8    recollection about Moog.  If he doesn't remember what he
 9    worked on for 3000 hours now, he's going to remember it
10    when he looks through all of Moog's information.  And at
11    that point, he's not going to be able to distinguish what
12    he learned at Moog and what he learned in discovery.
13    It's impossible.
14            That's the protection that the disqualification
15    issue seeks to resolve, and that's the harm to Moog.
16            THE COURT:  Okay.  Thank you.  I appreciate
17    that.  And this is fairly messy.
18            Mr. Gross, do you have anything further to add?
19            MR. GROSS:  Very, very briefly, your Honor.
20            THE COURT:  I'm sorry.  Are you done,
21    Mr. Heins?  Did you have anything else?  I don't mean to
22    cut you off.
23            MR. HEINS:  No.  I mean, I think I hit the main
24    issues.  I would like to mention with respect to the fact
25    witness and expert witness line.
```

 1          Again, we admitted that it's not a bright line

 2   rule that an expert witness and a fact witness can't

 3   operate together, and we understand that Mr. Socci's not

 4   on the Rule 26 disclosures.  But that said, one of the

 5   main issues in the case is going to be how did Moog

 6   protect its trade secrets.

 7          And Mr. Socci is going to have to be on the

 8   stand talking about potentially whether or not Moog

 9   adequately protected its trade secrets.  No one in the

10   room is going to know if he's speaking from experience as

11   a general expert in the room or as a fact witness when he

12   worked at Moog and how Moog actually protected the trade

13   secrets.

14          THE COURT:  He might not even know.

15          MR. HEINS:  Right.

16          THE COURT:  That's your argument?

17          MR. HEINS:  Yes.

18          THE COURT:  I got it.  I understand.

19          MR. HEINS:  And so, again, this harm to Moog is

20   exceptional, and Skyryse has plenty of experts.  They

21   haven't shown why Mr. Socci is actually unique other than

22   the fact that he worked for Moog.

23          THE COURT:  All right.  Thank you so much.

24          Mr. Gross, just quickly, please.

25          MR. GROSS:  Thank you, your Honor.

1    Mr. Socci swore to this Court, I have not

2  retained and do not have possession of any of the Moog

3  information, confidential or otherwise, that I may have

4  had or worked on at the time of my contract with Moog.

5  That's paragraph 14 of his declaration.

6    Paragraph 15, he said if he remembers it or

7  recalls it, he will keep that information confidential

8  and will not share it with Skyryse or use it for any

9  purpose in connection with this litigation.

10    The discovery process will eventually unfold.

11  It will turn over information.  He has committed to using

12  only that information in his work on this case.  Moog has

13  not given us a reason that he can't be trusted to do

14  that, your Honor.

15    Mr. Heinz repeated what I think is a legal

16  fallacy that there are only two criteria for

17  disqualification.  Please take a look at the Staley case;

18  please take a look at the SSL case.  They explain there

19  is no bright line rule.  There are two factors that

20  should be considered among others the Court must balance.

21    This is a nuance decision, and we understand.

22  They are trying to keep Skyryse from using this

23  singularly experienced expert whose last engagement with

24  Moog was a decade and a half ago.

25    Finally, your Honor, the promise of

 1  supplemental briefing on the contract issue was one that

 2  intrigued me, but I also would like to request that if

 3  the Court is inclined to entertain their disqualification

 4  request, which they did not move for, they raised it in

 5  an opposition to our statement about the protective order

 6  objection, that Skyryse be given an opportunity for full

 7  and fair briefing on it, which we haven't had.  We were

 8  limited to five pages in the supplement after that,

 9  because it wasn't the issue that the parties had teed up,

10  as we understood it, through the meet-and-confer process

11  and as the protective order required.

12              THE COURT:  Okay.  I appreciate it, Mr. Gross.

13              MR. GROSS:  Thank you, your Honor.

14              THE COURT:  Can I ask your position on that, on

15  fuller briefing?

16              MR. HEINS:  Sure, your Honor.  I think Moog is

17  welcome to fuller briefing, again, and we put in our

18  motion all of the steps in the meet and confer where we

19  clearly explained our objection to Mr. Socci under the

20  protective order, so we're not sure why Skyryse didn't

21  already do that.  But if the Court thinks it needs more

22  full briefing, we believe that you'd have the opportunity

23  to see all of that briefing, so we have no issues with

24  that.

25              There is just one thing that I do want to bring

 1    up that Mr. Gross said about, he keeps going back to this

 2    15 to 18 year issue.  Again, that's not relevant here

 3    because the trade secret when it was developed was

 4    developed at that exact time.  The fact that it's old

 5    doesn't matter.  It's a trade secret.  It's closely held.

 6    The information that Mr. Socci had then is just as

 7    relevant today as it was at that time.  And that's what's

 8    distinguishable from the Space System case that Mr. Gross

 9    is referencing.

10            THE COURT:  All right.  Thank you, Mr. Heins.

11            MR. GROSS:  Thank you, your Honor.  Just to

12    complete the record on that point, I'd just like to

13    remind the Court that, according to Moog, there were 30-

14    something trade secrets at issue here.  They are seizing

15    on one in an effort to keep Skyryse from working with its

16    selected expert.  Thank you.

17            THE COURT:  I understood there were three, but

18    from what you all had briefed, it's just one?

19            MR. HEINS:  Sorry.  Mr. Gross is correct in

20    that there are about 30 trade secrets.

21            THE COURT:  No, no, no, I understand that.  I'm

22    saying that's relevant to Mr. Socci.

23            MR. HEINS:  Yes.  He generally has about three.

24    Obviously, most of his work was done on one, so that's

25    why the briefing is focused on that, but it is relevant.

TRANSCRIPT OF PROCEEDINGS, June 28, 2023

1          THE COURT:  All right.  Understood.  Okay.

2   Thank you.  Thank you so much for your arguments today.

3          MR. GROSS:  Thank you, your Honor.

4          THE COURT:  They're very helpful, as usual.

5          MS. ANDOH:  Your Honor, if I may just for point

6   of clarification, should we hold off on submitting

7   anything further on the contract piece until we receive

8   further instructions from the Court?

9          THE COURT:  If you can get me some contract by

10  the close of business today, I will consider it.

11          MS. ANDOH:  Understood, your Honor.

12          THE COURT:  Thank you.

13          THE CLERK:  This court is adjourned.

14              (Proceedings Concluded)

15                   -o0o-

16

17

18

19

20

21

22

23

24

25

26

```
 1                  TRANSCRIPTIONIST'S CERTIFICATE

 2         I certify that the foregoing is a correct transcript

 3    from the electronic sound recording of the proceedings in

 4    the above-entitled matter.

 5

 6

 7

 8    _____        _____

 9    Terri Harper, CET-D709                  July 1, 2023

10

11    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

12    /s/Ann Bonnette

13    ANN BONNETTE, CSR. NO. 6108, President

14    Huntington Court Reporters and Transcription, Inc.

15

16

17

18

19

20

21

22

23

24

25
```

**WORD INDEX**

**< 1 >**
**1**  1:*1*  33:*9*
**10**  23:*11*
**100**  2:*1*
**10112**  2:*1*
**12275**  2:*1*
**14**  29:*5*
**140**  2:*1*
**15**  4:*19*  13:*8*
14:*21*  17:*5, 13*
20:*20*  29:*6*  31:*2*
**15-ish**  8:*6*
**16**  13:*8*
**17**  13:*8*
**18**  4:*19*  13:*8*
14:*21*  20:*7*  31:*2*
**19**  12:*15*

**< 2 >**
**2:22-cv-09094-GW**
1:*1*
**200**  1:*1*
**2005**  4:*19*
**2009**  4:*19*
**2023**  1:*1*  3:*1*
33:*9*
**212**  2:*1*
**26**  28:*4*
**26A1's**  21:*5*
**28**  1:*1*  3:*1*
**29**  16:*11*

**< 3 >**
**30**  2:*1*  10:*1*
16:*11*  31:*13, 20*
**3000**  22:*6*  26:*16*
27:*9*
**328-4600**  2:*1*

**< 4 >**
**4500**  26:*5*

**< 5 >**
**516-2**  12:*16*
**586-2988**  1:*1*

**< 6 >**
**6108**  33:*13*
**650**  2:*1*
**653-8712**  2:*1*

**< 7 >**
**720-7413**  2:*1*

**< 8 >**
**800**  1:*1*
**858**  2:*1*

**< 9 >**
**91105**  1:*1*
**92130**  2:*1*
**94025**  2:*1*

**< A >**
**abide**  12:*1, 8*
22:*24*
**abiding**  13:*4*
24:*23*
**able**  5:*13*  25:*7*
26:*21*  27:*11*
**above-entitled**
33:*4*
**absent**  14:*12*
**Absolutely**  10:*20*
**abstract**  12:*21*
**access**  16:*19*
22:*12*  23:*3*  26:*19*
**accidentally**  12:*20*
**act**  23:*14*
**acting**  6:*21*
**action**  12:*7, 24*
**actuators**  10:*3*
**add**  27:*18*
**address**  27:*1*
**adequately**  28:*9*
**adjourned**  32:*13*
**admitted**  28:*1*
**adversary**  13:*18,*
20  16:*11, 19, 22*
17:*13*
**aerospace**  23:*24*
**ago**  4:*19*  8:*6, 8,*
18  13:*8*  14:*21*
15:*14*  17:*5, 14*
20:*7*  29:*24*
**agreed**  4:*23*  12:*1*
15:*1*  17:*7*
**agreeing**  8:*2*
**agreement**  14:*20,*
24  15:*1, 8*  16:*15*
24:*23*  25:*3, 4*
**agreements**  16:*21*
17:*25*  25:*7*
**aircraft**  24:*13, 19*
**al**  1:*1*  3:*6*
**alleged**  11:*14*
**alleging**  22:*20*
**allowed**  7:*10*  12:*4*
**altered**  25:*11*
**amend**  21:*5*
**amended**  16:*14*
**analogous**  20:*1*
**analysis**  21:*25*
23:*8*
**ANDOH**  2:*1*  3:*9,*
18  4:*8*  32:*5, 11*
**Angeles**  1:*1*  3:*1*
**ANN**  33:*13*

**answer**  24:*12*
25:*18*
**anyway**  19:*11*
**Appearances**  1:*1*
2:*1*  3:*7*
**appears**  23:*25*
**applicable**  7:*9*
**appreciate**  19:*16*
25:*15*  27:*16*
30:*12*
**appropriate**  8:*13*
**argue**  7:*4*
**arguing**  24:*24*
**argument**  9:*6*
13:*17*  14:*18*
26:*24*  27:*5*  28:*16*
**arguments**  6:*20,*
24  19:*16*  21:*16*
32:*2*
**art**  20:*17*
**articulate**  18:*14*
**articulated**  7:*13*
18:*10*  23:*9*
**asked**  14:*19*
26:*14*
**assume**  14:*18*
**attorney**  27:*5*
**AUTHENTICATE**
**D**  33:*11*
**Avenue**  1:*1*
**aviation**  9:*25*
23:*12*
**avoid**  4:*6*  13:*3*
18:*8*
**award**  16:*22*
**aware**  11:*6*
**awkward**  20:*11*

**< B >**
**back**  17:*15*  19:*10*
24:*6*  31:*1*
**balance**  14:*3*
29:*20*
**balancing**  14:*8*
**barred**  7:*21*
13:*19*
**based**  4:*18*  17:*12*
18:*7*  23:*6*
**baseless**  6:*22*
**basically**  10:*17*
22:*21*
**bears**  5:*9*
**behalf**  3:*12*  4:*12*
21:*24*
**believable**  26:*17*
**believe**  3:*20*  5:*14*
12:*10*  16:*15*  18:*4*
22:*18, 23, 25*
23:*22*  25:*6, 8, 9,*
12  30:*22*

**benefit**  10:*5*
**best**  5:*24*
**better**  26:*7*
**beyond**  8:*12*
**bit**  4:*21*  19:*12*
**Bonnette**  33:*12, 13*
**bound**  8:*3*  17:*24*
18:*20, 24*
**breach**  22:*18*
23:*1*
**breached**  24:*24*
**brief**  7:*6*  23:*8*
26:*25*
**briefed**  6:*16*
31:*18*
**briefing**  4:*20*
9:*19*  16:*5*  19:*21*
21:*4*  30:*1, 7, 15,*
17, 22, 23  31:*25*
**briefly**  3:*18*  27:*19*
**bright**  13:*21, 25*
28:*1*  29:*19*
**bring**  30:*25*
**brings**  10:*4*
**built**  12:*3*
**bunch**  21:*1*
**burden**  5:*9, 18, 21*
6:*4, 8, 10*  7:*8, 25*
12:*14*  15:*17*  16:*2*
**business**  32:*10*

**< C >**
**CA**  2:*1*
**CALIFORNIA**
1:*1*  3:*1*
**Call**  3:*3*  4:*7*
**called**  9:*2*  17:*4*
**Calling**  3:*5*
**Camino**  2:*1*
**Case**  1:*1*  3:*5*
4:*15*  5:*8*  6:*13*
8:*9, 14, 15*  9:*14,*
18  11:*13, 22*
12:*22*  13:*8, 24*
14:*2, 4*  15:*6, 12*
16:*6, 7, 10, 14, 17,*
23  17:*11, 16*  18:*6*
19:*15, 20*  20:*6, 11,*
19  22:*7*  23:*4, 11,*
18  24:*4*  26:*1*
28:*5*  29:*12, 17, 18*
31:*8*
**cases**  6:*13*  8:*24*
9:*18*  13:*23*  16:*3*
20:*16*
**category**  11:*15*
**cavalierly**  13:*1*
**ceiling**  3:*21*
**CENTRAL**  1:*1*
**certain**  11:*1*

**certainly**  7:*16*
9:*14*  10:*15*  11:*18*
**CERTIFICATE**
33:*1*
**CERTIFIED**
33:*11*
**certify**  33:*2*
**CET-D709**  33:*9*
**Church**  19:*6*
**civil**  12:*24*
**claims**  11:*22*
**clarification**  32:*6*
**clearly**  30:*19*
**CLERK**  3:*5*
32:*13*
**client**  17:*23*
**clients**  9:*5, 7*
**close**  32:*10*
**closely**  31:*5*
**closest**  12:*11*
**collects**  8:*16*
**come**  4:*17*  7:*24*
10:*7*  12:*12*  18:*4,*
5
**commented**  14:*9*
**commitment**  18:*24*
**commitments**
18:*25*
**committed**  13:*4*
17:*21*  18:*2*  29:*11*
**company**  12:*23*
14:*17*  20:*20*
24:*13, 15*
**compelled**  6:*20*
**competitive**  7:*17,*
21  8:*21*  9:*4, 9*
22:*4*
**competitor**  9:*1*
**competitors**  7:*20*
9:*7*
**competitor's**  7:*22*
**complete**  31:*12*
**computer**  21:*12*
**concern**  20:*2, 5*
**concerns**  14:*3*
19:*13*
**conclude**  6:*19*
**Concluded**  32:*14*
**confer**  30:*18*
**conferred**  5:*6, 13*
**conferring**  11:*8*
**CONFIDENTIAL**
1:*1*  4:*5, 25*  5:*4*
7:*11, 15, 22*  8:*5,*
11  9:*13*  12:*4, 19,*
25  13:*19*  14:*5, 7,*
16  15:*16*  16:*20*
17:*8*  22:*2, 15*
23:*10, 13*  24:*9, 10,*
21, 22, 25  25:*18,*

23, 24 26:24 27:3 29:3, 7
confidentiality 14:20, 24 15:1, 22 16:15, 21 17:25 18:21 19:1 26:22
confidentially 15:16
connection 29:9
consider 7:18 32:10
considered 9:4 29:20
consult 10:20
consultant 23:24 25:3, 4
consultation 15:11
consulted 17:13
consulting 9:2, 3 15:3 17:2 25:7
contacted 19:23
contempt 10:23
continuing 26:3
contract 15:14, 18 19:11 24:24 29:4 30:1 32:7, 9
contracting 13:10 14:17
contractor 4:18 8:6 24:16 25:21
control 17:11 23:25
correct 13:9 31:19 33:2
counsel 3:7 19:22 20:9 23:8 26:1, 4
counsel's 18:23
country 25:22
couple 6:20 16:24
course 3:17 13:2, 8
COURT 1:1 3:13, 17 4:1, 7, 10 5:20 6:2, 23 7:3 8:2 9:21 10:8, 17 11:1 12:6 14:2, 9 16:22 17:4, 7, 9, 15, 19, 21 18:24 19:9, 19 20:1, 14 21:17, 19, 22 22:21 23:19 25:2, 10, 15 27:16, 20 28:14, 16, 18, 23 29:1, 20 30:3, 12, 14, 21 31:10, 13, 17, 21 32:1, 4, 8, 9, 12, 13 33:14
Courtroom 1:1
courts 7:18 8:22 14:2 23:15

Court's 7:7 8:3
CourtSmart 1:1
cover 10:2
create 11:22 13:1
credentials 9:19 10:2
criteria 29:16
CSR 33:13
cursory 12:21
cut 8:10 27:22

< D >
danger 17:15, 17
deals 15:7
dealt 16:7 19:21
decade 29:24
decision 7:17, 21 8:22 9:5, 9 22:4 29:21
declarant 11:5
declaration 8:1 11:11 12:15 14:15 15:24 18:11 24:18 27:4 29:5
declarations 19:1
Defendant 2:1 15:9
Defendants 1:1
DEFENDANT'S 1:1
defense 25:21
define 26:1
denied 10:24 17:18
Deputy 1:1
describe 26:7
described 23:23
describes 18:12
designated 5:4 7:11, 15 12:4
despite 17:12 23:8
details 8:7 9:18 20:8
developed 18:7 31:3, 4
development 20:17
Diego 2:1
difference 24:1
different 16:9 25:7
directly 16:13 25:25 26:5
disagrees 9:6
disclose 4:24 8:10 20:23 22:8 23:9 24:10, 18
disclosed 5:1 24:15

disclosing 17:23 22:2, 14
DISCLOSURE 1:1 22:22
disclosures 20:25 28:4
discoverable 20:24
discovered 12:25
discovery 8:15 12:24 22:12, 14 27:12 29:10
discuss 6:1
discussed 3:20
dismiss 20:14
dismissed 21:16
dispute 4:13, 22 13:15
disputing 15:19, 20
disqualification 6:9, 14 13:13 14:1 15:10 16:23 17:18 18:16 19:24 24:6 27:14 29:17 30:3
disqualified 5:15 16:3, 8, 9, 17 22:22 23:5
disqualify 5:23 14:11 15:3 16:24
disqualifying 6:12
distinguish 27:11
distinguishable 31:8
DISTRICT 1:1
DIVISION 1:1
Docket 12:16
document 7:14
doing 10:7 17:21 18:2
doubt 11:19
Dr 16:18 17:22
drastic 14:10 16:23
Drive 2:1

< E >
effort 31:15
either 6:10, 25 15:21 18:24
El 2:1
electronic 1:1 33:3
employed 7:19
employee 13:11 23:17
employees 21:1, 2
encounter 8:8, 23 13:6
ended 17:5
engage 5:21 6:7

engaged 4:16 7:16, 20 9:4, 9, 25 15:14
engagement 29:23
engaging 15:2
engineer 12:17
engineering 9:3 20:7
engineers 24:17
entertain 30:3
entire 26:18
especially 8:23
ESQ 2:1
essentially 5:23
establish 25:16
et 1:1 3:6
eventually 29:10
evidence 7:24 8:25 18:12
ex 21:1
exact 23:15 31:4
exceptional 28:20
exceptions 14:23
exchanged 20:24
exist 19:2
existed 15:20
expand 11:10
expect 13:7
experience 10:1 24:1 28:10
experienced 29:23
expert 4:14 5:10, 12, 14 6:7, 12 7:19 9:22 10:18 13:18, 25 14:6, 11 16:2, 10, 18 17:10, 16, 22 19:21 20:12, 15 21:12 23:4, 6, 10, 14, 18 24:7, 9, 10 27:2, 25 28:2, 11 29:23 31:16
expertise 9:22 10:1, 6 21:14
experts 4:25 9:17 10:10 16:7 21:10, 13, 15 23:11, 12 28:20
expert's 15:8
explain 29:18
explained 30:19
explaining 5:18
extraordinary 6:11 14:13

< F >
fact 13:23 17:21 20:10, 12, 15 21:6, 15 27:24 28:2, 11, 22 31:4
fact-based 20:19

factors 7:18 29:19
facts 16:1 17:12
factual 9:11 12:12
Fair 1:3 30:7
fairly 27:17
fairness 14:3
fallacy 29:16
falls 6:11
false 6:21
far 10:24 24:2
farther 13:5
FEDERALLY 33:11
feel 6:19
feelings 7:7
field 17:10
figure 14:3
figured 16:4
file 13:14
filed 10:22 16:13
files 22:12 26:5
filing 25:13
finally 6:19 20:9 21:9 29:25
find 9:23 25:8
finding 10:23
firm 9:2 19:13
First 6:3 7:8 19:23 20:14
five 17:2 30:8
five-page 5:24 6:17
focused 31:25
folks 9:24
following 5:16
foregoing 33:2
forensics 21:12
forever 13:19
former 23:17
forthcoming 26:11
forward 7:24
found 11:15 17:7
founded 9:1
four 16:12 26:15
frankly 8:4 10:4 11:11 12:23 18:9 21:14, 16
frequent 20:16
full 26:18 30:6, 22
fuller 30:15, 17
full-time 23:23
further 27:18 32:7, 8
future 10:11

< G >
Gabe 4:12

TRANSCRIPT OF PROCEEDINGS, June 28, 2023

3

**GABRIEL** 2:*1* 3:*11*
**gained** 17:*24*
**general** 12:*17* 28:*11*
**generally** 12:*2* 31:*23*
**get-go** 5:*15*
**getting** 24:*6*
**give** 4:*20* 7:*4* 23:*13* 25:*17*
**given** 25:*20* 29:*13* 30:*6*
**going** 3:*20* 4:*5* 21:*5* 22:*7, 12, 18* 25:*21* 27:*9, 11* 28:*5, 7, 10* 31:*1*
**Good** 21:*21, 22*
**government** 24:*13, 14, 15* 25:*19*
**grant** 14:*12*
**great** 4:*8* 15:*23*
**greatly** 5:*11*
**GROSS** 2:*1* 3:*11, 14, 15* 4:*1, 3, 11, 12* 6:*23* 7:*2, 5* 9:*23* 10:*15, 19* 11:*4* 19:*18, 20* 20:*5* 21:*19, 20* 26:*10* 27:*18, 19* 28:*24, 25* 30:*12, 13* 31:*1, 8, 11, 19* 32:*3*
**guy** 17:*10*
**GW-MAR** 3:*6*

**< H >**
**half** 5:*16, 22* 29:*24*
**Hampton** 2:*1*
**happy** 21:*17*
**hardware** 10:*2*
**harm** 5:*10* 7:*13* 19:*15* 21:*25* 22:*5, 16* 23:*17* 27:*15* 28:*19*
**Harper** 1:*1* 33:*9*
**heard** 11:*4*
**HEARING** 1:*1*
**HEINS** 2:*1* 21:*21, 23* 22:*25* 23:*22* 25:*6, 12, 16* 27:*21, 23* 28:*15, 17, 19* 30:*16* 31:*10, 19, 23*
**Heinz** 3:*9* 21:*23* 29:*15*
**held** 31:*5*
**He'll** 8:*10, 14*
**helpful** 32:*4*

**hey** 15:*15*
**hiding** 26:*19*
**hired** 18:*20* 19:*21*
**hit** 27:*23*
**hold** 32:*6*
**Honor** 3:*15, 18* 4:*4, 9, 11* 6:*9, 15* 7:*5, 8* 8:*21* 9:*20* 10:*15* 11:*15, 25* 12:*11* 13:*12* 15:*5, 23* 16:*1* 18:*15, 21, 24* 20:*9* 21:*9, 20, 21* 23:*22* 27:*19* 28:*25* 29:*14, 25* 30:*13, 16* 31:*11* 32:*3, 5, 11*
**HONORABLE** 1:*1*
**Honor's** 26:*8*
**hopefully** 3:*25*
**hours** 22:*6* 26:*16* 27:*9*
**Huntington** 1:*1* 33:*14*
**hypothetically** 15:*5*

**< I >**
**idea** 6:*22*
**identified** 10:*13* 11:*16*
**important** 14:*25* 16:*5*
**importantly** 8:*19*
**impossible** 22:*13* 27:*13*
**impression** 4:*21*
**improper** 23:*16* 24:*5, 7*
**impugn** 18:*22*
**inclined** 30:*3*
**including** 21:*12*
**independently** 8:*16* 18:*8*
**industrial** 23:*25*
**industries** 24:*19*
**INFORMATION** 1:*1* 4:*25* 5:*4, 10* 7:*11, 22* 8:*5, 17* 9:*13* 12:*5, 19, 25* 13:*19* 14:*7* 16:*14* 17:*3, 8, 14, 24* 18:*7* 20:*24* 22:*2, 8* 23:*10, 13* 24:*10, 18* 25:*18, 23, 24* 27:*3, 7, 10* 29:*3, 7, 11, 12* 31:*6*
**initial** 10:*24*
**instructions** 32:*8*
**integrity** 18:*23*

**intellectual** 20:*16* 21:*13*
**intending** 10:*10*
**intent** 10:*17*
**interest** 8:*17*
**interviewing** 9:*17*
**intrigued** 30:*2*
**inviting** 10:*9*
**involved** 7:*23*
**involvement** 4:*17* 17:*4* 20:*17*
**involving** 15:*10*
**issue** 3:*21* 4:*16* 7:*18* 8:*21* 10:*22* 15:*11* 22:*7* 23:*7* 26:*9, 16* 27:*15* 30:*1, 9* 31:*2, 14*
**issued** 10:*9*
**issues** 3:*21* 26:*3* 27:*24* 28:*5* 30:*23*
**it'll** 18:*6*
**its** 5:*16, 20, 22, 23* 6:*17* 7:*24* 11:*5* 12:*13, 19* 13:*14, 15, 18* 16:*2* 20:*22* 28:*6, 9* 31:*15*

**< J >**
**joint** 5:*16* 23:*20*
**JUDGE** 1:*1* 10:*23*
**July** 33:*9*
**June** 1:*1* 3:*1*

**< K >**
**Kaplan** 16:*18* 17:*22*
**keep** 7:*5* 8:*10* 11:*25* 29:*7, 22* 31:*15*
**keeps** 21:*25* 31:*1*
**key** 17:*17* 23:*2*
**kind** 10:*11* 20:*2*
**kinds** 6:*24*
**know** 6:*23* 11:*16* 14:*20, 22* 16:*4* 20:*25* 22:*13* 24:*17* 26:*6, 9* 28:*10, 14*
**knowing** 7:*6* 15:*3*
**knowledge** 23:*17* 24:*4*

**< L >**
**LA-22-cv-9094** 3:*5*
**large** 16:*5*
**largest** 25:*21*
**Latham** 2:*1* 3:*11* 26:*12*
**laundry** 21:*11*
**Laurel** 16:*6*

**law** 6:*15* 7:*10* 12:*12* 13:*21* 24:*14, 21*
**lawsuit** 16:*13* 17:*3*
**lawyer** 20:*2*
**lay** 20:*25*
**learned** 22:*3* 27:*12*
**learning** 22:*14*
**legal** 14:*1* 29:*15*
**lengths** 15:*24*
**leverage** 10:*5*
**Lewis** 10:*23*
**limit** 7:*2* 8:*14*
**limited** 17:*6* 30:*8*
**line** 13:*21, 25* 27:*25* 28:*1* 29:*19*
**list** 21:*11* 23:*19*
**listing** 26:*5*
**litigation** 13:*20* 15:*10* 19:*10* 29:*9*
**little** 4:*21* 17:*15, 16* 19:*12*
**LLP** 2:*1*
**Locke** 23:*23* 24:*2*
**logical** 16:*24*
**long** 15:*14*
**longer** 15:*13*
**look** 14:*14* 16:*16* 21:*24* 25:*5* 29:*17, 18*
**looking** 22:*1*
**looks** 27:*10*
**Los** 1:*1* 3:*1*

**< M >**
**machinery** 10:*3*
**MAGISTRATE** 1:*1*
**main** 27:*23* 28:*5*
**maintain** 3:*25*
**making** 7:*17, 21* 8:*22* 9:*5, 10* 12:*12* 22:*4*
**man** 19:*5*
**manner** 12:*8*
**man's** 18:*22*
**MAR** 1:*1*
**MARGO** 1:*1*
**Marietta** 16:*22* 17:*2, 5, 17* 18:*1*
**Martin** 16:*22* 17:*2, 4, 17, 25*
**material** 8:*14* 23:*3*
**materially** 25:*11*
**materials** 5:*2*
**matter** 14:*7* 31:*5* 33:*4*

**matters** 14:*6* 15:*4, 10*
**mean** 25:*3* 27:*21, 23*
**meaningful** 17:*4*
**measure** 14:*10*
**measures** 4:*6*
**meet** 6:*8* 7:*24* 12:*13* 15:*17* 16:*2* 30:*18*
**meet-and-confer** 30:*10*
**meeting** 11:*8*
**memory** 8:*19* 11:*6* 20:*21*
**Menlo** 2:*1*
**mention** 27:*24*
**messy** 27:*17*
**met** 5:*6, 13, 18* 6:*3, 10* 7:*12*
**Methodist** 19:*5*
**MICHAEL** 2:*1* 3:*9*
**Mike** 21:*23*
**military** 23:*24* 24:*13*
**mind** 11:*25*
**minister** 19:*5* 22:*10*
**misplaced** 20:*6*
**MOOG** 1:*1* 2:*1* 3:*6* 4:*17, 18* 5:*4, 7, 8, 14, 18, 20* 6:*3, 10, 11, 13, 21* 7:*8, 24* 8:*6, 9* 9:*5, 11* 10:*22* 11:*3, 5, 8, 15, 18, 20* 12:*11, 17, 18, 20* 13:*7, 9, 10, 13, 14, 24* 14:*19, 21, 25* 15:*7, 13* 16:*1* 18:*6, 9* 19:*3, 11* 20:*9, 22* 21:*2, 24* 22:*6, 15* 23:*6* 24:*3, 12, 24* 25:*2, 6, 17, 23* 26:*1, 3, 12, 14, 15, 18, 21, 23* 27:*3, 8, 12, 15* 28:*5, 8, 12, 19, 22* 29:*2, 4, 12, 24* 30:*16* 31:*13*
**MOOG'S** 1:*1* 13:*17* 14:*14* 16:*5* 18:*16* 19:*8* 21:*11* 22:*5* 24:*17* 26:*7, 24* 27:*1, 10*
**morning** 21:*21, 22*
**MOTION** 1:*1* 9:*2* 10:*11, 22* 13:*14* 17:*18* 18:*16* 19:*8* 30:*18*
**motions** 10:*21*

move  19:*17*
21:*15*  30:*4*
moved  5:*23*  19:*24*
Mullin  2:*1*  21:*23*

< N >
name  3:*22*  4:*15*
named  16:*18*
necessarily  3:*19*
need  3:*25*  5:*12*
6:*6*  9:*14*  11:*23,
25*  12:*14*  21:*24*
23:*9, 12*
needle  21:*15*
needs  30:*21*
never  9:*4, 10*
13:*10*  14:*19*
New  2:*1*
night  4:*21*
noted  17:*9*
notion  20:*10*
nuance  29:*21*
nuanced  14:*9*
number  3:*5*  8:*23*
10:*3*  11:*9*  12:*16*
20:*15*
numerous  16:*21*
nuts  19:*23*

< O >
o0o  3:*2*  32:*15*
Oaks  1:*1*
oath  9:*9*
objected  4:*17*  5:*5*
objecting  5:*8*
14:*10*
OBJECTION  1:*1*
4:*3*  5:*25*  10:*6, 19*
13:*16*  21:*8*  22:*5,
22*  27:*1*  30:*6, 19*
obligation  26:*22*
obligations  14:*21*
15:*22*  18:*22*  19:*2*
obviously  24:*12*
25:*19*  31:*24*
occurs  10:*14*
Okay  4:*1, 11*
25:*16*  27:*16*
30:*12*  32:*1*
old  31:*4*
once  13:*18*  25:*16*
operate  28:*3*
opportunities  8:*23*
opportunity  10:*16,
25*  20:*22*  30:*6, 22*
opposition  5:*22*
13:*15*  30:*5*
ordained  19:*5*
Order  3:*3*  4:*24*
5:*3, 7, 16, 17, 19*
6:*4, 14*  7:*9*  8:*3*

10:*9*  12:*2, 6, 13*
13:*2, 16*  18:*20, 25*
22:*3, 19*  23:*2, 3, 4*
26:*8*  30:*5, 11, 20*
orders  12:*3*
outside  12:*20*
24:*15*
outweigh  5:*12*
outweighs  5:*11*
6:*6*  9:*14*  11:*23*
12:*14*
OVERRULE  1:*1*
overruled  5:*25*
10:*19*

< P >
page  1:*1*  13:*24*
pages  30:*8*
paper  5:*22*
paragraph  12:*15*
29:*5, 6*
Park  2:*1*
part  7:*6*  9:*17*
14:*8*  19:*4*
participate  6:*13*
participating
13:*20*
participation  4:*14*
17:*16*
particular  4:*14*
10:*13*  11:*7, 9, 13*
particularity  10:*14*
parties  4:*13, 23*
5:*6*  6:*16*  10:*9*
16:*16*  17:*7*  21:*2*
22:*3*  26:*3, 9*  30:*9*
party  5:*8, 11*
6:*11*  14:*10*  19:*23*
23:*18*
Pasadena  1:*1*
passing  4:*21*
patent  15:*10, 11*
pending  10:*21*
people  21:*12*
Peroni  11:*5*  12:*16*
Peroni's  11:*11*
12:*15*  14:*15*
15:*15*  18:*11*
person  23:*13*
personally  9:*16*
persuasive  6:*24*
ph  11:*5*  23:*23*
piece  32:*7*
place  13:*3*  14:*22*
plainly  23:*5*
Plaintiff  1:*1*  2:*1*
3:*7, 10*
Plaza  2:*1*
please  3:*7*  13:*12*
28:*24*  29:*17, 18*

plenty  28:*20*
podium  3:*16*
point  6:*10*  8:*25*
9:*8*  13:*22*  16:*4*
21:*9*  27:*11*  31:*12*
32:*5*
pointed  14:*2*
policies  14:*3*
portion  11:*3*
position  4:*2*  30:*14*
possession  17:*9*
29:*2*
possible  11:*18*
potential  19:*14*
potentially  28:*8*
practice  15:*3*
prefer  3:*17*
prejudice  17:*17*
18:*14*  19:*14*
prejudiced  12:*19*
premise  18:*15, 16*
presentation  4:*4*
presentations
25:*20, 22*
President  33:*13*
pretenses  6:*21*
pretty  14:*12*  16:*9*
prior  20:*17*  23:*6*
privy  8:*18*
procedure  5:*17*
Proceedings  1:*1*
32:*14*  33:*3*
process  4:*23*  7:*21*
8:*15*  10:*14*  29:*10*
30:*10*
produced  1:*1*
program  3:*21, 22*
4:*7*  22:*11*  26:*6,
18*
programs  11:*13,
20*  25:*20*
prohibited  17:*22*
projects  24:*14*
promise  29:*25*
property  20:*16*
21:*13*
proprietary  25:*23*
protect  28:*6*
protected  28:*9, 12*
protection  27:*14*
protective  4:*24*
5:*3, 7, 17, 19*  6:*4*
7:*9*  8:*3*  12:*1, 2, 3,
13*  13:*2, 16*  18:*20,
25*  22:*3, 19*  23:*1,
3, 4*  30:*5, 11, 20*
provide  25:*9*  26:*4*
provided  5:*15, 20*
8:*1, 15, 25*  14:*19*
23:*20*

provides  9:*3*
providing  25:*13*
proving  5:*9*
provisionally  3:*24*
purpose  12:*7*
29:*9*
purposely  12:*19*
22:*18*  23:*1*
purposes  14:*18*
pursuant  26:*7*
put  9:*19*  30:*17*
puts  5:*19*  6:*4*

< Q >
qualifications
14:*23*  19:*4*
qualified  6:*7*
question  25:*17*
questions  21:*17*
quickly  28:*24*
quote  13:*25*

< R >
raised  13:*13, 16*
20:*4, 10*  21:*4*
30:*4*
raises  19:*12*
read  16:*16*
Real  2:*1*  20:*19*
really  5:*21*  6:*1*
9:*6, 11*  14:*8*
18:*11*  27:*1*
reason  3:*19*
11:*19*  12:*9*  13:*7*
18:*4, 22*  19:*6*
20:*19*  21:*6, 7*
22:*25*  23:*15*
26:*20*  29:*13*
reasons  6:*1*  16:*25*
recalls  29:*7*
receive  32:*7*
received  13:*18*
14:*6*
recognize  26:*8*
recollection  27:*8*
record  3:*8*  9:*12*
12:*16*  18:*19*  21:*6*
27:*4*  31:*12*
Recorded  1:*1*
recording  1:*1*
33:*3*
referencing  31:*9*
refreshing  27:*7*
relate  26:*5*
related  15:*4*
25:*25*
relates  11:*13, 21*
relationship  14:*6,
16*  15:*17*  22:*15*
24:*9, 11, 21, 25*
26:*24*

relevant  13:*19*
14:*7*  16:*14, 20*
17:*3, 14*  19:*4*
23:*17*  31:*2, 7, 22,
25*
relied  6:*14*
relief  6:*11*  13:*14*
relies  13:*24*  15:*7*
16:*3*
reluctant  14:*12*
remedy  16:*23*
remember  8:*7*
15:*21*  20:*8*  26:*17*
27:*8, 9*
remembers  29:*6*
remind  31:*3*
RENA  2:*1*  3:*9*
renowned  17:*10*
repeat  9:*18*
repeated  29:*15*
repeatedly  14:*19*
23:*16*
Reporter  1:*1*
Reporters  1:*1*
33:*14*
request  30:*2, 4*
require  24:*22*
required  5:*2*
8:*13*  30:*11*
requires  3:*23*  5:*7*
25:*1*
research  8:*16*
researched  18:*8*
resolve  4:*13*  5:*14*
13:*15*  27:*15*
respect  10:*12*
26:*4*  27:*24*
respond  5:*24*
6:*20*
response  5:*21*
responsible  12:*8*
restriction  12:*8*
retained  29:*2*
review  7:*14*
Richter  2:*1*
right  3:*13*  4:*10*
14:*4*  19:*19*  20:*1*
21:*19*  22:*21*
28:*15, 23*  31:*10*
32:*1*
risk  5:*9*  6:*5*
7:*13*  9:*12*  11:*23*
12:*12*  13:*1*  18:*9,
14*  21:*24*  22:*2, 5,
16*  23:*7*
risks  18:*9*
ROCCONI  1:*1*
Rockefeller  2:*1*
room  28:*10, 11*
rule  13:*22, 25*

28:2, 4  29:19
ruled  23:16

< S >
s/Ann  33:12
safeguard  12:9
safeguards  12:2
22:19
San  2:1
sanctions  10:23
satellite  17:11
saw  10:8
saying  6:12  9:21
15:21  22:9, 10
24:25  31:22
says  5:7  12:13
13:24  14:15
18:13  24:19
scenario  16:9
Scott  2:1
seal  3:25
sealed  3:24
sealing  3:23
Second  6:9  16:18
26:10
secondhand  18:13
secret  22:7  26:2,
4, 6, 16  31:3, 5
secrets  10:12
11:2, 9, 14, 15
25:25  28:6, 9, 13
31:14, 20
sectors  23:25
secure  12:7
See  1:1  12:4
19:14  30:23
seeing  7:22
seek  15:2, 9
seeking  6:11
10:23  13:14
14:11
seeks  27:15
seen  5:20
seizing  31:14
selected  31:16
selecting  9:17
sense  3:23
sensitive  24:14
25:19
sentences  7:4
service  1:1
services  9:3
severely  12:18
share  5:3  29:8
shared  5:10
Shepherd  21:23
Sheppard  2:1
ships  4:21
shocked  20:3
shortly  10:9

show  6:5  7:10
12:13, 14  15:24
16:2  24:22
showed  15:9
showing  9:11
11:21  12:12
14:13, 14  25:22
shown  7:16  9:13
17:14  23:12
28:21
side  6:25  19:20,
23
sides  19:12
signed  16:21
25:8  27:4
signing  8:2
simple  24:7
simply  6:3  19:6
singularly  29:23
situation  15:7
skills  10:4
SKYRYSE  1:1
2:1  3:6, 12  4:12,
16  5:1, 3, 15, 23
6:16, 21  8:10
18:17  21:1, 10, 25
22:8, 14  24:4, 8
26:12, 21, 25  27:2
28:20  29:8, 22
30:6, 20  31:15
SKYRYSE'S  1:1
6:6  9:14  11:23
12:14  13:15
SOCCI  1:1  4:15
5:1  7:10, 14, 23
8:1, 24  9:8, 13, 16,
20  10:11, 20  11:2,
6  12:1, 18, 22
13:4  14:16  15:20
16:10  17:9, 20
18:2, 13, 17  19:11
20:10  21:3, 11
22:6, 9  23:21, 24
24:1, 2, 3, 18  25:8,
17  26:12, 13, 20
27:1, 3  28:7, 21
29:1  30:19  31:6,
22
Socci's  9:22  17:6
21:14  22:2  28:3
software  10:2
26:5
somebody  9:25
23:19
sorry  27:20  31:19
sort  11:22  15:7
18:14, 15  20:18
sound  1:1  16:25
33:3
South  1:1

Space  16:6  31:8
speaking  28:10
specialized  24:3
specific  5:18
11:21  12:18, 22
14:4
specifics  3:20
18:12
spoken  19:22
SSL  16:6  17:21,
23  29:18
SSL's  16:19
Staley  13:24  15:6,
8  29:17
stand  22:23  28:8
standard  13:13
14:1
stands  16:6
start  3:13
started  3:19
Starting  3:6
stated  27:2
statement  5:16
30:5
STATES  1:1
step  13:5
steps  30:18
stipulated  4:23
stipulation  23:20
stood  26:10
stop  21:17
stopped  17:1, 2
submission  5:24
6:17
submitting  32:6
substance  7:1
suffer  5:9  6:5
9:12
sufficient  18:8
sufficiently  11:16
suggest  18:19
21:5
Suite  1:1  2:1
summarily  16:17
21:16
supplement  30:8
supplemental
6:17  25:13  26:25
30:1
supports  6:16
26:23
sure  9:24  30:16,
20
surely  10:6
surprised  4:4
sustain  21:7
swear  15:24
switching  19:12,
20
swore  29:1

sworn  8:12  9:8
15:24  18:21  19:1
20:7
System  31:8
Systems  16:6

< T >
table  10:4
take  4:6  29:17, 18
talking  19:25
21:25  28:8
Target  9:2
technologies  20:18
technology  8:24
12:23  16:20
teed  30:9
tell  11:10, 12
24:2  26:21, 23
telling  26:11
tentatively  10:24
terabytes  27:7
terms  22:24  23:1
25:10, 11
Terri  1:1  33:9
test  14:8  24:7
25:1
testifying  17:23
Thank  3:15  4:10,
11  19:19  21:19,
20  27:16  28:23,
25  30:13  31:10,
11, 16  32:2, 3, 12
theme  19:7
thing  10:18  18:3
20:18  26:10
30:25
things  11:7  15:16
think  3:22  4:20
8:22  12:11  14:17
16:3, 5  18:11, 23
19:6, 7, 9, 13  20:2,
6, 14, 19, 23  21:6,
15, 24  27:23
29:15  30:16
thinks  30:21
third  6:15  21:2
22:3
thought  26:22
three  6:1  11:9
16:12  31:17, 23
time  4:24  8:8
10:8  13:7  15:25
19:10  20:13  29:4
31:4, 7
today  4:5, 12  6:2
14:22  31:7  32:2,
10
told  5:14  11:8
touch  7:6  13:12
touched  11:20
touching  4:5

trade  10:12  11:1,
9, 14, 15  22:7
25:25  26:2, 4, 6,
16  28:6, 9, 12
31:3, 5, 14, 20
Transcribed  1:1
TRANSCRIPT
1:1  3:24  33:2, 11
Transcription  1:1
33:14
TRANSCRIPTION
IST'S  33:1
transmitted  12:20
treat  15:15
treated  13:1
true  14:19  27:1, 6
trusted  18:17, 18
19:7  29:13
try  4:13
trying  14:11
29:22
turn  29:11
two  16:7  26:17
29:16, 19
two-part  24:7
typical  24:19  25:9
typically  7:21

< U >
unable  10:5
uncommon  15:6
undercurrent  19:8
underlying  19:7
understand  9:6
13:17  16:16  20:5
26:2  28:3, 18
29:21  31:21
Understood  7:5
30:10  31:17  32:1,
11
undertaking  8:2
undisputed  8:4, 25
unexceptional
12:23
unfold  29:10
unique  9:16  10:1,
4  23:21  28:21
uniquely  6:6
UNITED  1:1
unpack  6:18
unpacking  14:1
unspoken  18:16
untrustworthy
22:10
use  3:15  5:11
8:9  10:10, 11
12:6  13:6  15:25
18:3  23:10, 16
24:5, 7  25:2  29:8
usual  32:4

< V >
Valerie  1:*1*
Velasco  1:*1*
versus  3:*6*  21:*25*
  23:*7*
view  7:*11*
Vince  21:*11*
VINCENT  1:*1*
  4:*15*
volunteered  17:*20*
vs  1:*1*

< W >
waivers  14:*23, 25*
want  30:*25*
wanted  5:*3*
wants  5:*11*  24:*4*
Watkins  2:*1*  3:*11*
  26:*13*
way  4:*22*  13:*17*
  23:*2*
Wednesday  1:*1*
  3:*1*
weighing  7:*18*
welcome  7:*3*
  30:*17*
well  8:*2*  10:*25*
  11:*4*  20:*11*
went  15:*23*  19:*23*
We're  4:*12*  15:*19*
  19:*24*  22:*9, 19*
  24:*23*  30:*20*
WESTERN  1:*1*
we've  9:*19, 25*
  10:*4*  20:*24*
witness  4:*14*  11:*5*
  20:*10, 12*  21:*6, 16*
  27:*25*  28:*2, 11*
witnesses  7:*19*
  20:*15, 23*
words  22:*23*
work  4:*18*  5:*12*
  6:*6*  7:*19*  8:*5, 7,*
  *14*  9:*1, 15, 24*
  11:*12, 20, 21, 23*
  13:*9*  14:*17*  18:*6*
  20:*7, 20*  22:*11*
  23:*6*  25:*13, 21*
  26:*3, 18*  29:*12*
  31:*24*
worked  8:*9*
  10:*24*  11:*2, 10*
  13:*18*  16:*11, 13,*
  *19*  17:*13*  18:*6, 13*
  19:*11*  22:*6*  24:*3,*
  *20*  26:*15, 16, 21*
  27:*9*  28:*12, 22*
  29:*4*
working  13:*7*
  17:*1, 25*  19:*13*

23:*5*  25:*19*  26:*7,*
*13*  27:*2*  31:*15*
works  24:*13*
wrap  19:*18*

< Y >
Yeah  4:*8*
year  31:*2*
years  4:*19*  8:*6, 7,*
*18*  10:*1*  13:*8*
  14:*21*  16:*12*  17:*3,*
*5, 14*  18:*5*  19:*2*
  20:*7, 20*  25:*4, 11*
  26:*15, 18*
York  2:*1*