Rena Andoh (admitted *pro hac vice*)
  randoh@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Lai L. Yip (SBN 258029)
  lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

Travis J. Anderson (SBN 265540)
  tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691

Kazim A. Naqvi (SBN 300438)
  knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

Attorneys for Plaintiff and Counterdefendant Moog Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>         Plaintiff and<br>         Counterdefendant,<br><br>     v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>         Defendants and<br>         Counterclaimaint. | Case No. 2:22-cv-09094-GW-MAR<br><br>**PLAINTIFF MOOG INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SKYRYSE, INC.'S MOTION OBJECTING TO JUDGE ROCCONI'S JUNE 14, 2023 ORDER AT DKT. 534**<br><br>Hearing Date:  August 24, 2023<br>Time:   8:30 a.m.<br>Ctrm.:   9D, The Hon. George H. Wu<br><br>Complaint Filed:      March 7, 2022<br>Counterclaims Filed: January 30, 2023 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REDACTED VERSION OF**
**DOCUMENT PROPOSED TO BE**
**FILED UNDER SEAL**

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND ................................................................................3

    A.    Judge McCarthy Orders that Moog Is Entitled to Certain Discovery Before Making Its Trade Secret Identification ...................3

    B.    Despite Defendants' Delayed and Incomplete Productions, Moog Timely Identifies Its Trade Secrets........................................................5

III.  LEGAL STANDARD........................................................................7

    A.    A Magistrate's Order on Discovery Disputes Is Entitled to Deference.........................................................................................7

    B.    Judicial Decisions Must Be Interpreted in Context, Not "Literally"...........................................................................................8

IV.   ARGUMENT......................................................................................9

    A.    Judge Rocconi Correctly Interpreted Judge McCarthy's Order ............9

        1.    Judge Rocconi correctly interpreted the single quotation in the context of the record................................................................9

        2.    Judge Rocconi correctly interpreted the single quotation in the context of the entire order. ..................................................10

        3.    Judge Rocconi correctly interpreted the single quotation in the context of the circumstances of the case............................13

        4.    Even a "literal" interpretation of the single quotation does not require a line-by-line identification. ....................................15

    B.    Judge Rocconi's Order Is Not Contrary to Law ................................16

        1.    The Ninth Circuit does not require a line-by-line identification of source code. ....................................................16

        2.    Skyryse identifies no authority in support of its position...........18

        3.    The single quotation from the law school journal article has no applicable legal support. .................................................19

    C.    Judge Rocconi's Interpretation Is Correct, But Even If Not, the Court Has the Power to Reconsider Judge McCarthy's Order.............20

V.    CONCLUSION ................................................................................23

1

## <u>**TABLE OF AUTHORITIES**</u>

2

Page(s)

3

<u>Cases</u>

4

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc.*
5
   No. 14-cv-03053-MWF-AFM, 2016 WL 6821116 (C.D. Cal. June 17,
   2016) ...................................................................................................8
6

*Borden v. eFinancial, LLC*
7
   53 F.4th 1230 (9th Cir. 2022) ..............................................................8

8

*Citcon USA, LLC v. RiverPay Inc.*
9
   No. 18-cv-02585-NC, 2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ..............17

10

*Citcon USA, LLC v. RiverPay Inc.*
11
   No. 18-cv-02585-NC, 2019 WL 2603219 (N.D. Cal. June 25, 2019)... 12, 13, 18

12

*Columbia Pictures, Inc. v. Bunnell*
13
   245 F.R.D. 443 (C.D. Cal. 2007) .....................................................7

14

*Compuware Corp. v. Int'l Bus. Machines Corp.*
15
   No. 02-cv-70906, 2003 WL 23212863 (E.D. Mich. Dec. 19, 2003) ................20

16

*Hall v. Alternative Loan Trust*
   No. 2:13-cv-1732-KJM, 2013 WL 5934322 (E.D. Cal. 2013).........................20
17

*Integral Dev. Corp. v. Tolat*
18
   675 F. App'x 700 (9th Cir. 2017)...............................................1, 16

19

*Integral Dev. Corp. v. Tolat*
20
   No. 12-cv-06575-JSW, 2015 WL 674425 (N.D. Cal. Feb. 12, 2015) .........16, 17

21

*Keywords, LLC v. Internet Shopping Enterprises, Inc.*
22
   No. 05-cv-2488-MMM, 2005 WL 8156440 (C.D. Cal. June 29, 2005)............19

23

*Microvention, Inc. v. Balt USA, LLC*
24
   No. 20-cv-02400-JLS-KES, 2021 WL 4840786
   (C.D. Cal. Sept. 8, 2021)......................................................13, 18
25

*Muckleshoot Tribe v. Lummi Indian Tribe*
26
   141 F.3d 1355 (9th Cir. 1998).............................................................9

27

*Narramore v. United States*
28
   852 F.2d 485 (9th Cir. 1988)..............................................................9

*Nealy v. Warner Chappell Music, Inc.*
  60 F.4th 1325 (11th Cir. 2023)..................................................................8

*Proofpoint, Inc. v. Vade Secure, Inc.*
  2020 WL 836724 (N.D. Cal 2020)................................... 11, 12, 13, 18

*Rivera v. NIBCO, Inc.*
  364 F.3d 1057 (9th Cir. 2004).....................................................................8

*Samirah v. Holder*
  627 F.3d 652 (7th Cir. 2010)......................................................................9

*Social Apps, LLC v. Zynga, Inc.*
  No. 11-cv-04910-YGR, 2012 WL 2203063
  (N.D. Cal. June 14, 2012) ...................................................... 16, 17, 19

*St. Paul Mercury Ins. Co. v. Hahn*
  No. 13-CV-0424-AG-RNB, 2014 WL 12588631
  (C.D. Cal. July 25, 2014) ..........................................................................7

*United States v. Abonce-Barrera*
  257 F.3d 959 (9th Cir. 2001)......................................................................7

*United States v. Muckleshoot Indian Tribe*
  235 F.3d 429 (9th Cir. 2000)......................................................................9

*Upper Skagit Indian Tribe v. Sauk-Suiattle Indian Tribe*
  66 F.4th 766 (9th Cir. 2023)...................................................................8, 9

*WeRide Corp. v. Huang*
  2019 WL 1439394, No. 19-CV-07233-EJD (N.D. Cal. Apr. 1, 2019).. 12, 13, 16

*WeRide Corp. v. Kun Huang*
  379 F. Supp. 3d 834 (N.D. Cal. 2019)........................................ 1, 12, 13, 16

*Whittaker Corp. v. Execuair Corp.*
  736 F.2d 1341 (9th Cir. 1984)....................................................................8

*Yent v. Baca*
  No. 01- cv-10672-PA-VBK, 2002 WL 32810316 (C.D. Cal. Dec. 16,
  2002) ..........................................................................................................7

Rules

Fed. R. Civ. Proc.
    33(d) ...................................................................................................3, 4, 11
    72(a) .......................................................................................................3, 7

## I.      INTRODUCTION

Judge Rocconi was correct in finding that Judge McCarthy did not require Moog to identify its source code trade secrets line-by-line.  Judge Rocconi was correct in recognizing that the "original purpose" of Judge McCarthy's order was to determine whether "discovery was necessary to allow Moog to identify its trade secrets," not to impose "any specific requirements for Moog's trade secret identifications."  (Dkt. 534 at 5.)  Judge Rocconi was correct in recognizing that this was the only interpretation consistent with binding precedent, as "the Ninth Circuit does not require line-by-line identification in all cases."  (*Id.* (citing *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017) & *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834 (N.D. Cal. 2019)).)  Indeed, as Moog pointed out at the hearing before Judge Rocconi, in Skyryse's reply brief in support of the motion that resulted in Judge McCarthy's order, Skyryse specifically disclaimed any requirement for a line-by-line source code identification:  "Moog [] argues that providing a narrative response 'would require Moog to list each and every line of code from the tens of thousands of source code files.' Interrogatory No. 1 [Skyryse's interrogatory seeking a trade secret identification] requires no such thing. It asks Moog to identify its trade secrets, not 'every single line of non-public source code.'"[1]  As Judge Rocconi presumably noted, it makes no sense that Judge McCarthy would order relief that Skyryse had not even requested.

On the other hand, Skyryse's incorrect and unreasonable interpretation of Judge McCarthy's order, if accepted, would unfairly impose an extraordinary burden on Moog.  Defendants have stolen and misappropriated over 83,481 unique trade secret source code files.  Even if Moog engineers were to expend just 10 minutes per file to identify specific lines of source code (undoubtedly a sizable underestimate considering the complexity and length of many or most of these files), it would take

---

[1] Citations and internal quotations omitted throughout this brief.

13,913.50 hours.  This translates to approximately 14 Moog engineers working on *just this task* for nearly 6 months, ***full time***.  These engineer hours would be diverted from Moog's regular business—hours Moog does not have to spare, due not only to its ongoing business servicing its customers but also to Skyryse's largescale poaching of Moog engineering staff.  These engineer hours also represent real dollars in terms of engineering salary.  Moog would also have to incur significant expense for outside counsel to provide direction, coordination, and legal guidance for such a project.

Considering the above, Skyryse's claim that Moog failed to timely challenge Judge McCarthy's order simply makes no sense whatsoever.  Had Moog believed that Judge McCarthy's order actually imposed such a draconian and undue burden—a single project costing on the order of $1 million dollars or more in engineering time, opportunity cost to Moog's business, and attorney time—Moog would have had no choice but to object.  But, like Judge Rocconi, Moog did not interpret Judge McCarthy's order to require a source code identification line-by-line.  This makes sense given that literally 10 days before that order was issued, Skyryse specifically admitted that no line-by-line identification was required.  Likewise, Skyryse's argument that Judge Rocconi lacked authority to modify Judge McCarthy's order is a red herring.  Judge Rocconi never needed to make any such modification, as that order did not require a source code identification line-by-line in the first place.

In reality, Skyryse is trying to exploit a single sentence in Judge McCarthy's order—by stripping it of all relevant context and disregarding prevailing law—to gain an unfair and tactical litigation advantage.  Consideration of the entire order and the relevant context demonstrates that Skyryse's interpretation is untenable.  As Judge Rocconi recognized after reviewing the parties' extensive briefing and hearing substantial oral argument, Judge McCarthy was focused on whether Moog was entitled to limited discovery before making its trade secret identification.  Judge McCarthy was not passing judgment on the sufficiency of an existing trade secret identification, because none had been served yet.  Had Judge McCarthy intended to

impose the extraordinary burden of a line-by-line identification, he would presumably have done more than quote a single sentence from a law school journal article, with no other mention of it in his 6-page order, not even in the summary of relief on the last page.  The lack of merit in Skyryse's objection is underscored by the dearth of authority in its briefing.  Skyryse cites only seven cases in its objection and not a single one requires line-by-line identification of source code.  In fact, some stand for precisely the opposite.

Skyryse fails to satisfy its burden to demonstrate that Judge Rocconi's order was "clearly erroneous or contrary to law" as required by Rule 72(a).  Judge Rocconi's interpretation of Judge McCarthy's order is the right one.  It is the only interpretation that can possibly be correct given the procedural history of this case, the context of Judge McCarthy's entire order, applicable case law, and binding precedent.  Skyryse's objection should be overruled in its entirety.

## II.    BACKGROUND

### A.    Judge McCarthy Orders that Moog Is Entitled to Certain Discovery Before Making Its Trade Secret Identification

On March 23, 2022, Skyryse served its first set of interrogatories on Moog.  Interrogatory No. 1 stated, "Identify, for each Defendant, each alleged Trade Secret that You contend that Defendant misappropriated."  (Dkt. 166-003, p. 7.)  The language of the interrogatory does not mention source code and does not ask for any line-by-line identification of source code.  (*Id.*)  On April 13, 2022, Moog responded to Interrogatory No. 1 by stating, "Pursuant to Federal Rule of Civil Procedure 33(d), Moog will make its trade secrets at issue in this case available for inspection by Defendant pursuant to an agreed upon Stipulated Protective Order and source code protocol."  (*Id.*, p. 7-8.)  As Moog explained in subsequent meet and confer with Skyryse, Moog believed that more discovery was necessary before it could make its trade secret identification, because Moog still did not know the full scope of the theft and misappropriation, especially given defendants' admitted spoliation of evidence.

-3-

(*See, e.g.*, Dkt. 166-005, p. 2.)  Nonetheless, on June 21, 2022, Skyryse filed a Motion to Compel Trade Secret Identification.  (Dkt. 166.)  This motion sought to compel a response to Skyryse's Interrogatory No. 1.  (*Id.*)  It was not about the sufficiency of an existing trade secret identification (because none had been served), but about whether Moog was required to make an immediate trade secret identification.  (*See* Dkt. 166-001, p. 17.)  Moog did not dispute that it would have to make a narrative identification (in addition to identifying files), but believed that an immediate identification was improper and premature.  (*See, e.g.,* Dkt. 180, p. 22.)

Moog had interpreted Skyryse's motion to demand a line-by-line identification of source code, and argued in opposition that this would be untenable given the volume of source code files likely to be at issue.  (*See* Dkt. 180, p. 9.)  Moog also noted there was no legal basis for any such requirement.  (*See id.*)  Skyryse, in its reply brief, disclaimed any demand for a line-by-line identification of source code:

> Moog [] argues that providing a narrative response "would require Moog to list each and every line of code from the tens of thousands of source code files." Interrogatory No. 1 requires no such thing. It asks Moog to identify its trade secrets, not "every single line of non-public source code."

(Dkt. 194, p. 13.)

On July 22, 2022, Judge McCarthy granted-in-part and denied-in-part Skyryse's motion, granting Skyryse's request that Moog identify its trade secrets through a "narrative response and not solely by invoking Rule 33(d)," but denying Skyryse's request for immediate identification.  (Dkt. 205 at 6 & n.3.)  Judge McCarthy found that Moog was entitled to limited discovery "necessary for Moog to make that disclosure."  (*Id.* at 6 n.3.)  Importantly, Judge McCarthy did not prohibit Moog from identifying its trade secrets by reference to documents, only that this could not be the "sole[]" method of identification.  (*See id.* at 6.)

On page 4 of Judge McCarthy's 6-page order, there is a single quotation from

a law school journal article that discusses methods for identifying source code:

> "Where the plaintiff alleges misappropriation of source code, it should identify the specific lines of code or programs claimed to be secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding." Graves & Range at 95.

The article was published in 2006 in the Northwestern Journal of Technology & Intellectual Property and authored by Charles Graves and Brian Range.  According to the article's first footnote, the authors were "associates at Wilson Sonsini Goodrich & Rosati" who prepared the article "in the interest of protecting employee mobility and the right to use information in the public domain."  (Dkt. 475-012, p. 16 n.a1.) Judge McCarthy never provides commentary in his own words on this quoted sentence or elucidates further on requirements for identifying source code.  Nor does he ever refer to source code again in the remainder of his order, not even on the last page where he summarizes the relief ordered by the Court.

**B.     Despite Defendants' Delayed and Incomplete Productions, Moog Timely Identifies Its Trade Secrets**

As noted above, in his July 22, 2022 order, Judge McCarthy ordered that "the parties shall discuss what steps are necessary for Moog to make that disclosure," i.e., what discovery was necessary for Moog to make its trade secret identification.  (Dkt. 205 at 6 n.3.)  However, the parties having reached an impasse regarding certain such discovery, Moog filed a Motion to Compel Discovery Necessary for Further Trade Secret Identification on August 3, 2022.  (*See* Dkt. 210.)  While this motion was pending, the individual defendants compounded Moog's lack of access to necessary discovery by unilaterally *rescinding* Moog's access to various of their respective devices hosted by the parties' neutral forensic vendor.  (*See* Dkts. 216, 217.)  This resulted in a multiplicity of further motion practice.  (*See, e.g.,* Dkts. 228, 229, 234,

-5-

236, 237.)  On August 29, 2022, Judge McCarthy ordered the restoration of Moog's access to the rescinded devices.  (*See* Dkt. 253.)  On November 10, 2022, Judge McCarthy orally ordered the production of certain materials before Moog would be required to make its trade secret identification.  (*See* Dkts. 278, 290, 292.)

On January 23, 2023, after the transfer of this case to this District, the Court ordered that Moog serve its trade secret identification by February 20, 2023, which rolled over to February 21 because February 20 was a federal holiday.  (*See* Dkts. 346 at 16; Dkt. 343.)  At this time, Moog still had not received discovery to which it was entitled before making its identification, including the individual defendants' communications for the period of March 7, 2019 through December 31, 2020.  Nonetheless, Moog timely made its trade secret identification on February 21 (hereafter, "Moog's TSID").[2]  This identification comprised approximately a hundred pages of narrative description for 30 trade secrets, identifying specific files names corresponding to each trade secret described in the narrative.  (*Compare* Dkt. 555-1, p. 9 (claiming that Moog made its identification "without identifying a single file by name") *with* Dkt. 475-055 & Dkt. 475-006 (directing the reader to specific tabs within an Excel spreadsheet that identifies the specific files names and file paths corresponding to each described trade secret).)

Claiming Moog's TSID did not satisfy the particularity requirements in Judge McCarthy's order, Skyryse filed a Motion for Order for Enforcement of Order Compelling Trade Secret Identification.  (Dkts. 474, 475.)  Skyryse argued that Judge McCarthy's order required a line-by-line identification of source code, focusing on the single quotation from the law school journal article.  (*Id.*)  After a hearing on the motion, Judge Rocconi issued an order on June 14, 2023 finding that Moog had

---

[2] In fact, the individual defendants did not produce these communications until May 2023, after Moog was forced to file a motion to enforce Judge McCarthy's November 10 ruling.  (Dkts. 432, 469.)

-6-

1   adequately identified 9 out of the 30 trade secrets and directing that Moog supplement

2   its identification for the remainder.  (Dkt. 534.)  Significantly, Judge Rocconi found

3   that "Judge McCarthy was not requiring Moog to identify any source code secrets

4   line-by-line."  (*Id*. at 5.)  Judge Rocconi also stated that "[t]he Court interprets Judge

5   McCarthy's order to require Moog to identify their trade secrets in compliance with

6   applicable legal guidance," and the "Ninth Circuit does not require line-by-line

7   identification in all cases."  (*Id.* at 4, 5.)

8   **III.   LEGAL STANDARD**

9         **A.    A Magistrate's Order on Discovery Disputes Is Entitled to**

10               **Deference**

11        A "magistrate judge's decision in [] nondispositive matters is entitled to great

12   deference by the district court."  *United States v. Abonce-Barrera*, 257 F.3d 959,

13   969 (9th Cir. 2001).  Particularly as to discovery disputes such as the one at issue

14   here, a "Magistrate is afforded broad discretion."  *Columbia Pictures, Inc. v.*

15   *Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007); *see also St. Paul Mercury Ins. Co. v.*

16   *Hahn*, No. 13-CV-0424-AG-RNB, 2014 WL 12588631, at *1 (C.D. Cal. July 25,

17   2014) (noting that "magistrate judges' decisions concerning discovery are subject to

18   great deference by district courts").  "A district judge may reconsider a magistrate

19   judge's ruling on a non-dispositive motion only where it has been shown that the

20   magistrate [judge]'s order is clearly erroneous or contrary to law."  F.R.C.P. 72(a).

21   The "clearly erroneous" standard is applied to findings of fact and the "contrary to

22   law" standard is applied to legal conclusions.  *Yent v. Baca*, No. 01- cv-10672-PA-

23   VBK, 2002 WL 32810316, at *2 (C.D. Cal. Dec. 16, 2002).

24        Skyryse contends that "Judge Rocconi's determination of Judge McCarthy's

25   order is a legal determination and should be analyzed *de novo*."  (Dkt. 555-1, p. 8

26   n.3.)  Even if so, "de novo" review of a magistrate's legal determination is still

27   constrained by deference.  As the Ninth Circuit stated, "We may not overturn a

28   [magistrate's] order simply because we might have weighed differently the various

interests and equities; instead, we must ascertain whether the order was contrary to law." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).  "[T]he Court may not simply substitute its judgement for that of the Magistrate Judge." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc.*, No. 14-cv-03053-MWF-AFM, 2016 WL 6821116, at *2 (C.D. Cal. June 17, 2016).  An "order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id*.  As explained below, Judge Rocconi's order is not contrary to law.

## B.    Judicial Decisions Must Be Interpreted in Context, Not "Literally"

Skyryse's motion advocates for a "literal" interpretation of the single quotation in Judge McCarthy's order from the law school journal article.  (*See, e.g.*, Dkt. 555-1, pp. 2, 7, 9, 10, 11 (referring to literal interpretation of the single quotation at least 5 times, i.e., "literal instructions" (twice), "literal interpretation," "literal reading," and the single quotation "if taken literally").  But a "literal" interpretation, disregarding the context and record, is not the correct way to interpret a judicial decision.

The Ninth Circuit has repeatedly held that when interpreting a judicial decision, "a court reads the language of the decision in the context of the decision as a whole and the entire record before [the deciding judge]." *Upper Skagit Indian Tribe v. Sauk-Suiattle Indian Tribe*, 66 F.4th 766, 770 (9th Cir. 2023).  "Much like we do not interpret a statute by cherry-picking one word out of it, we should not pluck one sentence out of an opinion without looking at its context." *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1235 (9th Cir. 2022) (rejecting "an acontextual reading of a snippet divorced from the context of . . . the entire opinion").  Likewise, a "decision must be read in the context of its facts." *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1346 (9th Cir. 1984).  Other federal courts of appeal likewise hold that "when interpreting and applying words in a judicial opinion, we must consider the context, such as the question the court was answering, the parties' arguments, and facts of the case." *Nealy v. Warner Chappell Music, Inc.*, 60 F.4th

1325, 1332 (11th Cir. 2023); *see also, e.g.*, *Samirah v. Holder*, 627 F.3d 652, 660 (7th Cir. 2010) ("[I]t is important in interpreting judicial opinions . . . to read words in context.").  "Because '[o]pinions, unlike statutes, are not usually written with the knowledge or expectation that each and every word may be the subject of searching analysis,' we do not follow statutory canons of construction with their focus on 'textual precision' when interpreting judicial opinions." *Upper Skagit Indian Tribe*, 66 F.4th at 770 (citing *United States v. Muckleshoot Indian Tribe*, 235 F.3d 429, 433 (9th Cir. 2000)).  Moreover, a court must interpret a judicial decision "so as to give effect to the intention of the issuing court." *Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355, 1357 (9th Cir. 1998) (citing *Narramore v. United States*, 852 F.2d 485, 490 (9th Cir. 1988)).

As explained below, read in its proper context, the single quotation from the law school journal article cannot be correctly interpreted to mean that Judge McCarthy required a line-by-line identification of over 80,000 files of source code.

## IV.   ARGUMENT

### A.   Judge Rocconi Correctly Interpreted Judge McCarthy's Order

1.   <u>Judge Rocconi correctly interpreted the single quotation in the context of the record.</u>

As explained in Section II ("Background"), Judge McCarthy was adjudicating a dispute focused on the timing of Moog's identification, i.e., whether it would be made before or after certain discovery.  Importantly, Moog's TSID was not before Judge McCarthy at the time he issued his July 22, 2022 order (the order Skyryse sought to enforce before Judge Rocconi).  Thus, Judge McCarthy was not adjudicating the sufficiency of any existing trade secret identification (because none had been made).  Likewise, Judge McCarthy was not adjudicating the sufficiency of any identification of source code (again, because none had been made).  In light of this, it stands to reason that Judge McCarthy was not intending to impose corrective

measures or bright line rules upon a trade secret identification that he had not yet seen.

Indeed, when Judge McCarthy issued his July 22, 2022 order, he specifically tied it to Skyryse's Interrogatory No. 1.  (*See* Dkt. 205 at 6 (stating the Court would exercise its discretion "by requiring Moog to 'answer in full Skyryse's Interrogatory No. 1").)  Skyryse itself had tied the trade secret identification to that interrogatory, expressly stating in its reply brief that the interrogatory required "Moog to identify its trade secrets, not every single line . . . of source code."  (Dkt. 194, p. 13.)   It is reasonable to infer that Judge McCarthy did not order relief that Skyryse itself did not request and even specifically disclaimed (i.e., a line-by-line identification of source code).

### 2. Judge Rocconi correctly interpreted the single quotation in the context of the entire order.

Judge Rocconi interpreted the single quotation by "[r]eading the order in full."  (Dkt. 534 at 4-5 ("Reading the order in full supports [the finding that Moog was not required to identify its source code line-by-line] as the most reasonable interpretation.").)  This was the correct approach.  Reading the order in full, Judge Rocconi correctly found that the "original purpose" of the order was to stay discovery "except for what was necessary to allow Moog to identify their trade secrets, and then generously included ample legal guidance to allow Moog to provide a sufficient identification."  (Dkt. 534 at 5.)  Reading the order in full, Judge Rocconi also correctly found that "the purpose of the order was [not] to outline any specific requirements for Moog's trade secret identifications."  (*Id.*)

By contrast, Skyryse's interpretation of the single quotation is not reasonable when reading the order in full.  Skyryse characterizes the single quotation from the law school journal article as a "mandate" (twice), "central directive" (twice), and "central instruction[]."  (Dkt. 555-1, p. 6, 8 & n.3, 9.)  But this cannot be correct for several reasons.  *First*, Judge McCarthy does nothing to draw any specific attention

-10-

to that single quotation to indicate it is either a "mandate" or "central." Had Judge McCarthy intended either, he would presumably have referred to the substance of the single quotation again at the end of his order where he summarizes the relief ordered, or provided more commentary in his own words. Moreover, Judge McCarthy sprinkles at least 10 different quotes from the same law school journal article throughout the order. There is nothing to indicate that any of the quotes are any more "central" than any other, or that any one is a "mandate" whereas the others are not.

Second, the overall manner in which Judge McCarthy quotes the law school journal article suggests that the quotations are not mandates, but context and support for the relief actually ordered on page 6 (i.e., that Moog must identify its trade secrets "through a narrative response and not solely by invoking Rule 33(d)," that the identification need not be made "immediately," and that "the parties shall discuss what steps [i.e., discovery] are necessary for Moog to make that disclosure"). For example, many of the quotations address the consequences of certain actions, which may support the ultimate relief ordered, but could not constitute "mandates" themselves. (See, e.g., Dkt. 205 at 2 (stating that Skyryse's request for an immediate identification "'may cause new rounds of depositions and other discovery as the parties scramble to assess the newly-provided information'") (quoting the law school journal article).)

Third, the law school journal article was, according to its own footnote, written "in the interest of protecting employee mobility and the right to use information in the public domain." (Dkt. 475-012, p. 16 n.a1.) As an objective jurist, Judge McCarthy presumably did not intend to substitute a single quotation from a pro-defendant source as his "mandate."

Importantly, right before the single quotation at issue, Judge McCarthy quotes from the *Proofpoint* case (see green highlighted portion of snippet below from order):

-11-

> Therefore, Moog must "sufficiently identif[y] its source code secrets". *Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 836724, *2 (N.D. Cal. 2020). "Where the plaintiff alleges misappropriation of source code, it should identify the specific lines of code or programs claimed to be secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding." Graves & Range at 95.

This is the only case that the order refers to for "source code," and Judge McCarthy presumably read and considered it in formulating the relief he ordered. [3]   *Proofpoint* specifically does ***not*** require a line-by-line identification.  To the contrary, *Proofpoint* provides, as an "example of sufficient disclosure" of source code, a "'twenty-page identification of ten specific trade secrets' that 'described the functionality of each, along with named files from [plaintiff's] code base reflecting the source code specific to each trade secret.'" *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC, 2020 WL 836724, at *2 (N.D. Cal. Feb. 20, 2020) (quoting *Citcon USA, LLC v. RiverPay Inc.*, No. 18-cv-02585-NC, 2019 WL 2603219, at *2 (N.D. Cal. June 25, 2019)).  In other words, *Proofpoint* described a sufficient disclosure of source code that did ***not*** include a line-by-line identification.

Notably, *Citcon*, the case cited by *Proofpoint*, was itself describing the source code identification in the *WeRide* case—the same case that Judge Rocconi relied on in her order (*see* Dkt. 534, p. 5) and one of Moog's leading cases featured prominently in Moog's briefing to Judge Rocconi (*see* Dkt. 475, pp. 27, 29, 31).  Namely, the *Citcon* case found as follows:

---

[3] *Proofpoint* was also before Judge Rocconi.  (*See* Dkt. 475, pp. 14, 39.)  Therefore, Skyryse's suggestion that Judge Rocconi based her order entirely on Ninth Circuit law not before Judge McCarthy is incorrect.

[A] court in this district recently found that the plaintiff in *WeRide* had sufficiently identified its source code trade secrets for purposes of a preliminary injunction motion when it filed a <u>twenty-page identification of ten specific trade secrets</u> and <u>described the functionality of each, along with named files from its code base reflecting the source code specific to each trade secret</u>. *WeRide Corp. v. Huang*, 2019 WL 1439394, No. 19-CV-07233-EJD, at *5–6 (N.D. Cal. Apr. 1, 2019).

2019 WL 2603219, at *2 (underlined portions are quoted by *Proofpoint*).   In other words, either directly or through intermediate authorities, both Judge McCarthy and Judge Rocconi relied on *WeRide*, a case where a sufficient source code identification did not include a line-by-line identification.

   3.   <u>Judge Rocconi correctly interpreted the single quotation in the context of the circumstances of the case.</u>

At the hearing on the motion before Judge Rocconi, in response to Her Honor's question, Moog estimated off-the-cuff that a line-by-line identification of source code would take "four to six months."  (June 7, 2023 Hrg. Tr. at 49:13-50:16.)  Judge Rocconi was correct to inquire about the burdens in this case.  *See Microvention, Inc. v. Balt USA, LLC*, No. 20-cv-02400-JLS-KES, 2021 WL 4840786, at *4 n.3 (C.D. Cal. Sept. 8, 2021) (considering the "extreme[]" burden to plaintiff in having to identify specific portions of each stolen document given the "scale" of the defendant's theft, noting that such "factual circumstances can be considered by the Court in determining whether Plaintiff has identified trade secrets with reasonable particularity").  Moog has looked more closely at the actual burden that would be involved in making a line-by-line identification, and it is extraordinary.  A line-by-line identification would be done against source code files that are written by humans in programming languages, such as C, C++, and Python.

1   Such source code files have extensions such as .c, .h, .cpp, and .py.  Counting the

2   unique number of .c, .h, .cpp, and .py files that were stolen by the defendants and

3   identified in Moog's TSID, there are 83,481 unique files.[4]  Any of these files could

4   have thousands of lines of code.  Even if a Moog engineer could parse a single file

5   for a line-by-line identification in approximately ten minutes (a very conservative

6   underestimate, given the complexity of the technology and size of many of the

7   files), it would require 13,913.50 hours of engineer time.  At that rate, it would take

8   14 Moog engineers nearly six months (i.e., 24.8 weeks at 40 hours per week per

9   engineer) to complete a line-by-line identification of source code.  On top of that,

10   outside counsel would need to provide direction, coordination, and legal guidance

11   for such a project.  Considering wages, fees, and the opportunity costs of diverting

12   engineers from their regular work, the project could cost on the order of $1,000,000

13   or more to Moog.

14          This would be an extreme burden in any case, but here in particular Moog

15   would be hard-pressed to set aside 14 Moog engineers for such a project, as Skyryse

16   has raided at least 20 of Moog's employees.  Moog has no engineers to spare full

17   time for a project that would take at least half-a-year.  Furthermore, it would be

18   inefficient and impractical for either technical outside counsel or retained experts to

19   conduct a line-by-line identification because Moog engineers are far more familiar

20   with the code and technology, which is highly specific to Moog.

21

22   _____

[4] Skyryse argues that in Moog's trade secret identification, its "alleged trade secrets

23   primarily consist of software" and that "virtually all of [the trade secrets]" comprise
source code or software programs."  (Dkt. 555-1, pp. 5, 14.)  This is incorrect.

24   Moog's investigation resulting and reflected in the TSID reveals that defendants
stole far more than originally thought, such that much or even the majority of the

25   stolen materials is not source code or software.  (*See* Dkts. 475-005 & 475-006.)
Such other stolen materials include documents relating to hardware, actuation, and

26   electronics.  (*See id.*)  This is consistent with the fact that all the unique .c, .h, .cpp,
.py files combined constitute less than one third of the 291,095 unique files

27   identified in Moog's TSID file listings.

28

4.      Even a "literal" interpretation of the single quotation does not require a line-by-line identification.

Skyryse contends that the single quotation from the law school journal article is susceptible to only one "literal" interpretation, i.e., that source code must be identified line-by-line.  This is incorrect.  The single quotation reads:

> Where the plaintiff alleges misappropriation of source code, it should identify the <u>specific lines of code or programs</u> claimed to be secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding.

(Underlining added.)   But the phrase "specific lines of code or programs" could actually be parsed in multiple ways, given the conjunctive "or":

- "specific lines of" could modify "code" and "programs," to mean that source code should be identified by *specific lines of code* or *specific lines of programs* (Skyryse's interpretation);

- "specific" could modify "lines of code" and "programs," to mean that source code should be identified by *specific lines of code* or *specific programs*;

- "specific" could modify "lines of code" but not "programs," to mean that source code should be identified by *specific lines of code* or *programs*.

Parsed according to the second or third bullets, the portion following "for example" would be examples of identifying "specific lines of code" rather than examples of identifying programs or specific programs.   In other words, there is nothing about the structure of the sentence that would "require" Skyryse's interpretation (i.e., the first bullet).   Notably, parsed according to the second or third bullets, there is no dispute that Moog has identified its trade secrets by programs or specific programs.   In fact, Moog's TSID has a section titled, "Moog's Identification

-15-

1   of Trade Secrets by Program."  (*See* Dkt. 475-006, p. 46.)

2   Judge Rocconi correctly found that the quote's use of the phrase "for example"

3   in the sentence suggests guidance rather than a mandate.  The use of the word "should"

4   rather than "shall" or "must" (in the phrase "it should identify") also suggests

5   guidance rather than a mandate.  This is a reasonable interpretation, and should not

6   be disturbed.

7   **B.      Judge Rocconi's Order Is Not Contrary to Law**

8   Judge Rocconi's interpretation of Judge McCarthy's order is not contrary to

9   law.  In fact, it is the only interpretation that actually comports with the law.

10          1.      The Ninth Circuit does not require a line-by-line identification of

11                  source code.

12  Judge Rocconi was correct in finding that "the Ninth Circuit does not require

13  line-by-line identification in all cases."  (Dkt. 534 at 5.)  In *WeRide Corp. v. Kun*

14  *Huang*, a case Judge Rocconi cited, a defendant stole 1,192 files from the plaintiff,

15  and the court found that the plaintiff's TSID was sufficient because it "describes the

16  functionality of each trade secret" and "names numerous files in its code base . . . that

17  reflect the source code specific to each alleged trade secret."  379 F. Supp. 3d 834,

18  844 (N.D. Cal. 2019).  The court rejected defendant's argument that "the plaintiff

19  must identify the specific code," finding that "this argument is wrong on the law,"

20  citing *Integral Development*, *Citcon* (an earlier decision than the *Citcon* decision

21  referred to in Section IV.A.2, *supra*), and *Social Apps*.  (*Id.* at 846.)

22  In *Integral Dev. Corp. v. Tolat*, No. 12-cv-06575-JSW, 2015 WL 674425 (N.D.

23  Cal. Feb. 12, 2015), the district court found that a plaintiff's identification that

24  "list[ed] hundreds of file names without identifying the trade secret information

25  contained within the files, is insufficient."  *Id.* at *4.  The Ninth Circuit reversed,

26  finding that by alleging that the defendant had copied its files onto an external hard

27  drive shortly before leaving plaintiff's employ, describing the categories of

28  documents that contained trade secret material, and identifying those files that

-16-

contained trade secret material, the plaintiff had "identified specific key aspects" of its trade secrets and "sufficiently identified the information it alleges is a trade secret." *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017).  In other words, the Ninth Circuit rejected the district court's finding that the plaintiff must identify portions "within" the source code files claimed to be trade secret.

In *Citcon USA, LLC v. RiverPay Inc.*, No. 18-cv-02585-NC, 2018 WL 6813211, at *4 (N.D. Cal. Dec. 27, 2018), the court expressly found that identifying the "processing algorithms" for source code was sufficient:

> Citcon alleges that it owns source code for a variety of purposes, and lists the algorithms that were misappropriated.  This includes five identified payment processing algorithms.  The description provided of these algorithms is sufficiently particular to give the defendants notice of the boundaries of the case.  At this stage, Citcon is not required to hand over the algorithms themselves or otherwise disclose the source code to give the defendants notice of the contours of this claim in order to prepare a defense.

*Id.* at *4 (citation omitted).  In other words, the *Citcon* court found that identifying the "algorithms" was sufficient and, like the Ninth Circuit in *Integral Development*, did not require the plaintiff to identify specific portions within each file claimed to be trade secret.

In *Social Apps* the court stated, not once but twice, that identification of trade secrets by *file name* was permissible.  *See Social Apps, LLC v. Zynga, Inc.*, No. 11-cv-04910-YGR, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) (finding that disclosures "identifying specific lines of code *or* file names are sufficiently detailed to identify what it is that [plaintiff] claims is secret") (emphasis added); *id.* at *5 (finding that the "two instances where [plaintiff] identified a specific file name *or*

source code line numbers" was sufficient) (emphasis added).   In other words, identifying source code line-by-line was just one of *two* acceptable methods of identification, the other being a listing of file names (which Moog has done in addition to providing a narrative description).

Other district court authority from the Ninth Circuit is in accord.  For example, in *Microvention*, the plaintiff contended that "each document in and of itself . . . is the trade secret."  2021 WL 4840786, at *4 (underlining in original). The defendants countered that "identifying a document can never satisfy the [applicable] requirements" and that the plaintiff must identify the specific portions of the documents that constitute the trade secret.  The court rejected the defendant's argument, stating they cited no binding authority, as well as the following:

> [E]ven if only some of the information in the document is a
> trade secret, it would be extremely burdensome to require
> Plaintiff to list them all—a burden created by the scale of
> the allegations of theft against [defendant]. These unique
> factual circumstances can be considered by the Court in
> determining whether Plaintiff has identified trade secrets
> with "reasonable particularity" by referencing documents.

*Id.* at *4 n.3.  We have the same situation here.  The fact that we have over 80,000 unique source code files identified in our TSID is a result of the defendants' theft of 1.4 million files from Moog.

### 2.   Skyryse identifies no authority in support of its position.

Skyryse relies on seven cases in support of its objection.  (*See* Dkt. 555-001, Table of Authorities.)  Four of these pertain to trade secret identifications: *Proofpoint*,

*Citcon*, *Social Apps*, and *Keywords*.[5]   None of these four cases require a line-by-line identification of source code.   Both *Proofpoint* and *Citcon* specifically identified an example of sufficient disclosure of source code that did ***not*** include a line-by-line identification.   (*See* Section IV.A.2.)   *Social Apps*, meanwhile, expressly allowed for identification of trade secrets by ***file name***.   (*See* Section IV.B.1, *supra*.)

In *Keywords*, the court never found that a line-by-line identification of source code was necessary.   There, the plaintiff identified one trade secret, described as a "Method of Retrieving Information Using Combined Context Based Searching and Content Merging."   *Keywords, LLC v. Internet Shopping Enterprises, Inc.*, No. 05-cv-2488-MMM, 2005 WL 8156440, at *17 (C.D. Cal. June 29, 2005).   The court found that the identification was insufficient because the plaintiff had not explained the "nature of the Method" or indicated where the method was reflected in the allegedly stolen source code.   *Id*.   That is not what we have here, where Moog's TSID describes the "nature" of the trade secrets in a narrative approximately a hundred pages long and keys the narrative to the subject files.   *Keywords* also involved just one trade secret at issue (*see id.*), whereas here there are at least 30.

3.   <u>The single quotation from the law school journal article has no applicable legal support.</u>

In the end, the only "authority" Skyryse has for the line-by-line requirement is the single quotation from the law school journal article.   However, that single quotation is itself lacking in any applicable legal support.   Instead, it was merely the authors' proposal, based on their admittedly pro-defendant policy goals, as to how source code trade secrets "should" be identified.   (Dkt. 475-012, pp. 11 & 13 (showing that the single quotation at issue is in a section titled "PROPOSALS"), p.

---

[5] The other three cases city by Skyryse pertain to the standard of review (*Taylor*) and to whether a transferee court may reconsider the order of a transferor court (*Danner* and *Hall*).

-19-

16 n.a1 (admitting that the article was written "in the interest of protecting employee mobility"); *see also* Section IV.A.2, *supra*.)  The authors cite a single case in connection with the sentence at issue (*see* Dkt. 475-012, p. 13 n.85), the *Compuware* case, which does not in fact support the proscriptive suggestion by the authors.  In that case, the defendant "emphatically denie[d] that it had access to any such [plaintiff] source code, and [plaintiff] has not submitted evidence of such access." *See Compuware Corp. v. Int'l Bus. Machines Corp.*, No. 02-cv-70906, 2003 WL 23212863, at *4 (E.D. Mich. Dec. 19, 2003).  The plaintiff failed to identify any source code that had "been taken by IBM," the defendant.  *Id*. at *5-6.  Thus, the issue in *Compuware* was not whether stolen source code was identified line-by-line, but whether source code was stolen **at all**.  By contrast, it is undisputed that defendants took source code files from Moog.  Nowhere in *Compuware* does the court require a line-by-line identification of source code.

### C.   Judge Rocconi's Interpretation Is Correct, But Even If Not, the Court Has the Power to Reconsider Judge McCarthy's Order

Judge Rocconi's interpretation of Judge McCarthy's order is correct and comports with Ninth Circuit law.  Contrary to Skyryse's argument, Her Honor's interpretation was not an "effective reversal" of the order, but instead a correct reading of it.  Even if the Court were to disagree with Judge Rocconi's interpretation, however, and find that Judge McCarthy's order does require a line-by-line identification of source code, this Court should exercise its power to reconsider the order.

In the *Hall* case, which Skyryse cites, the court stated that while "law of the case directs a court's discretion, it does not limit the tribunal's power."  *Hall v. Alternative Loan Trust*, No. 2:13-cv-1732-KJM, 2013 WL 5934322, at *2 (E.D. Cal. 2013).  As Skyryse acknowledges, a court may reconsider a prior ruling of a transferor court "when new evidence becomes available," "when a clear error has been committed," or "when it is necessary to prevent manifest injustice."  *Id*.

-20-

Here, there is "new evidence," namely, Moog's TSID.  This new evidence was not before Judge McCarthy when he issued his July 22, 2022 order, so he did not have the benefit of considering it.  Judge McCarthy did not have the new evidence, for example, that over 80,000 unique source code files are at issue, and that to conduct a line-by-line identification, assuming just 10 minutes per file, would take nearly 14,000 hours or more of Moog engineering time alone.  Judge McCarthy also did not have another piece of new evidence—that there are approximately 2,766 misappropriated Simulink source code files that have no "lines" to be identified.  As explained in Section IV.A.3, source code is written in a programming language.  But some programming languages are not textual, but graphical.  Simulink source code is one such example.  Simulink source code is constructed using a graphical interface, where the coder uses graphical blocks representing specific functions and arranges them in complex diagrams (later translated into text that can be compiled and executed by a computer).  An example of such a file from Moog's TSID is shown below:[6]

---

[6] The name of this file is "███████████████" and can be found in the TERN tab of the Excel attached as Exhibit 2 to Moog's TSID.  (*See* Dkt. 475-005, p. 1071 (flattened PDF version of the Excel that was submitted by Skyryse to Judge Rocconi).)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

Moog's TSID lists approximately 2,766 Simulink files (i.e., files ending in .slx or

19

.mdl).  These are source code files that are incapable of "line-by-line" identification.

20

Such identification of all of Moog's trade secret source code files is therefore not even

possible.

21

       To the extent the Court interprets Judge McCarthy to have required a line-by-

22

line identification, then "clear error has been committed" by Judge McCarthy.  As

23

explained in Section IV.B.1, requiring a trade secret identification to identify source

24

code line-by-line does not comport with Ninth Circuit law.  It would also result in

25

"manifest injustice" here, given Skyryse expressly disclaimed any requirement of a

26

line-by-line identification (*see* Section IV.A.1) and given the extraordinary burden it

27

would impose on Moog (*see* Section IV.A.3).  It was defendants' theft of 1.4 million

28

files that brought us here in the first place.  To require Moog to expend approximately 14,000 hours (and likely far more) of engineering time to conduct a line-by-line identification of the stolen source code files would only multiply Moog's injury, cause undue delay in this case, and thereby reward defendants for their theft.

**V.      CONCLUSION**

There is no reason to disturb Judge Rocconi's order, and every reason to affirm it.  Skyryse's objection to Judge Rocconi's order should be overruled.

Dated:  August 3, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
*Attorneys for Plaintiff Moog Inc.*

By      */s/ Rena Andoh*
Rena Andoh (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700

Lai L. Yip (SBN 258029)
Four Embarcadero Center, 17th Floor
San Francisco, California 94111
lyip@sheppardmullin.com
Telephone: (415) 434-9100

Travis J. Anderson (SBN 265540)
12275 El Camino Real, Suite 100
San Diego, California 92130
tanderson@sheppardmullin.com
Telephone: (858) 720-8900

Kazim A. Naqvi (SBN 300438)
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
knaqvi@sheppardmullin.com
Telephone: (310) 228-3700

-23-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Moog Inc., certifies that this brief contains 6,845 words, which complies with the word limit of L.R. 11-6.1.

Dated:  August 3. 2023          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By          */s/ Rena Andoh*

Rena Andoh (admitted *pro hac vice*)
Kazim A. Naqvi

Attorney for Plaintiff and Counterdefendant
MOOG INC.