**LATHAM & WATKINS LLP**
Douglas E. Lumish (SBN 183863)
*doug.lumish@lw.com*
Gabriel S. Gross (SBN 254672)
*gabe.gross@lw.com*
Arman Zahoory (SBN 306421)
*arman.zahoory@lw.com*
Rachel S. Horn (SBN 335737)
*rachel.horn@lw.com*
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and Counterclaimant Skyryse, Inc.*

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOOG INC.,<br>Plaintiff,<br>v<br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br>Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**DEFENDANT AND COUNTERCLAIMANT SKYRYSE, INC.'S REPLY IN SUPPORT OF OBJECTIONS TO AND MOTION FOR REVIEW OF MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDER (DKT. 534)** |
| SKYRYSE, INC.,<br>Counterclaimant,<br>v<br>MOOG INC.,<br>Counterclaim-Defendant. | Discovery Cut-Off: April 12, 2024<br>Trial: August 27, 2024<br><br>Hearing: August 24, 2023<br>Time: 8:30 a.m.<br>Judge: Hon. George H. Wu<br>Location: Ctrm. 9-D |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. MOOG MISSTATES THE RECORD. .......... 1

A. Judge McCarthy ordered Moog to identify its trade secrets with precision and including by lines of code. .......... 2

B. Moog's contention that Skyryse disclaimed the requirement to identify the relevant lines of code is false. .......... 4

C. Moog's claims of burden are overstated. .......... 6

III. THE LAW SUPPORTS SKYRYSE, NOT MOOG. .......... 7

A. Ninth Circuit law requires detailed identification of alleged trade secrets and supports Judge McCarthy's order. .......... 8

B. The cases Moog cites validate Judge McCarthy's order. .......... 9

IV. MOOG HAD NO GROUNDS TO CHALLENGE MAGISTRATE JUDGE MCCARTHY'S ORDER AND WAIVED ITS RIGHT TO DO SO. .......... 10

V. CONCLUSION .......... 12

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

SKYRYSE'S REPLY ISO OBJECTIONS TO MAGISTRATE'S NON-DISPOSITIVE ORDER
CASE NO. 2:22-cv-09094-GW-MAR

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Hall v. Alternative Loan Tr. 2006-7CB*,
No. 13-cv-1732-KJM-AC, 2013 WL 5934322 (E.D. Cal. Nov. 1, 2013) .......... 11

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) .......... 8

*Integral Development Corp. v. Tolat,*
675 F. App'x 700 (9th Cir. 2017) .......... 9

*Keywords, LLC v. Internet Shopping Enters., Inc.*,
No. CV 05-2488-MMM, 2005 WL 8156440 (C.D. Cal. June 29, 2005) .......... 8

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (N.D. Cal. 2016) .......... 8

*Microvention, Inc. v. Balt USA, LLC,*
No. 20-cv-02400-JLS-KESx, 2021 WL 4840786 (C.D. Cal. Sept. 8, 2021) .......... 10

*Social Apps, LLC v. Zynga, Inc.*,
No. 11-cv-04910-YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) .......... 8, 10

*WeRide Corp. v. Kun Huang,*
379 F. Supp. 3d 834 (N.D. Cal. 2019) .......... 9

*Whittaker Corp. v. Execuair Corp.*,
736 F.2d 1341 (9th Cir. 1984) .......... 2

*X6D Ltd. v. Li-Tek Corps. Co.*,
No. CV 10-2327-GHK, 2012 WL 12952726 (C.D. Cal. Aug. 27, 2012) .......... 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

SKYRYSE'S REPLY ISO OBJECTIONS TO MAGISTRATE'S NON-DISPOSITIVE ORDER
CASE NO. 2:22-cv-09094-GW-MAR

## STATUTES

18 U.S.C.
§ 1836(b)........................................................................................................ 7
§ 1839(3)........................................................................................................ 7
§ 1839(5)........................................................................................................ 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

SKYRYSE'S REPLY ISO OBJECTIONS TO MAGISTRATE'S NON-DISPOSITIVE ORDER
CASE NO. 2:22-cv-09094-GW-MAR

## I. INTRODUCTION

In the transferor court, Moog never objected to or sought reconsideration of Magistrate Judge McCarthy's fact-specific findings and order compelling Moog to identify its trade secrets with particularity, including by identifying its "source code secrets" by specific lines of code. Instead, Moog decided for itself that Judge McCarthy could not have meant what he expressly said, and so declined to comply with his order. When Moog eventually did disclose its trade secrets, it referenced thousands of source code files in their entirety, and refused to "identify the specific lines of code or programs claimed to be secret," contrary to the court's express instructions.

Moog now champions the principle that magistrate judges' decisions regarding discovery matters should be subject to "great deference," even as it has shown none whatsoever to Magistrate Judge McCarthy's ruling. Moog waves away the language of that order, misreads the record, and misconstrues Ninth Circuit case law to argue it forecloses Judge McCarthy's approach. Then, in the final pages of its opposition, Moog reveals its true strategy and asks the Court to excuse Moog's violation by "exercis[ing] its power to ***reconsider*** the order." (Opp. at 20-21.) But there is no reason to revisit a binding court order that was based on the judge's deep familiarity with the unique facts and circumstances of this case, is entirely consistent with the law of this Circuit, and was never timely challenged. Respectfully, Magistrate Judge Rocconi was wrong to find otherwise, and this Court should grant Skyryse's motion.

## II. MOOG MISSTATES THE RECORD.

In its briefing to Judge Rocconi, and now in opposition to Skyryse's motion to review her ruling, Moog has tried to re-frame Judge McCarthy's order as if it merely addressed the timing of discovery. But it was, on its face, a fact-based order compelling Moog to identify its alleged trade secrets with particularity, with explicit directions to Moog to identify such secrets in its source code by line, to differentiate

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

SKYRYSE'S REPLY ISO OBJECTIONS TO MAGISTRATE'S NON-DISPOSITIVE ORDER
CASE NO. 2:22-cv-09094-GW-MAR

them from what is generally known. (Dkt. 205 at 3-4.)

### A. Judge McCarthy ordered Moog to identify its trade secrets with precision and including by lines of code.

While Moog acknowledges that a "decision must be read in the context of its facts," it ignores the important context surrounding Judge McCarthy's order. (Opp. at 8 (citing *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1346 (9th Cir. 1984).) By the time he granted Skyryse's motion to compel and instructed Moog to identify by line any alleged trade secrets in its source code, Judge McCarthy had presided over at least seven hearings in this action, many lengthy and factually detailed. (*See, e.g.*, Dkt. 71 (April 8, 2022 hearing on discovery issues including whether identification of trade secrets was a threshold issue and compliance with the joint stipulation regarding document production); Dkt. 95 (April 26, 2022 hearing on former Skyryse employees and alleged spoliation); Dkt. 104 (May 5, 2022 hearing on discovery schedule, protective order, and forensic protocol); Dkt. 115 (May 17, 2022 hearing on setting monthly discovery conferences, discovery deadlines, and motions); Dkt. 170 (June 1, 2022 hearing on Moog's motion for scheduling orders); Dkt. 164 (June 16, 2022 hearing on Moog's motion to compel); Dkt. 204 (July 15, 2022 hearing on Skyryse's motion to compel trade secret identification).) There were over two hundred docket entries in the case to that point. Judge McCarthy had received and reviewed dozens of written submissions from the parties, in the form of pleadings, motions, letter-briefs, and emails to chambers detailing the parties' factual allegations and positions. (*See, e.g.*, Dkt. 1 (Complaint); Dkt. 6 (Moog's motion for expedited discovery); Dkts. 74 and 76 (April 19, 2022 Moog letter to Judge McCarthy and Skyryse letter to Judge McCarthy); Dkt. 142 (Moog motion to compel disclosures); Dkt. 176 (Moog motion to compel discovery responses); Dkt. 179 (Skyryse motion to compel document production).) And as Moog notes, Skyryse had raised Moog's failure to sufficiently identify its trade secrets several times before its motion to compel. (Dkt. 180 at 9.) Judge McCarthy

had intimate familiarity with the facts of the case and the parties' positions when he granted Skyryse's motion and made the findings he did—including his instruction that Moog was to specify the lines of code that contained the trade secrets it intends to assert in this action, which Moog has failed to do.[1]  (Dkt. 205 at 3-4.)

Moog is wrong in suggesting that Judge McCarthy was merely "adjudicating a dispute focused on the timing of Moog's identification." (Opp. at 9.) His order expressly resolved "Skyryse, Inc.'s motion to compel [the] trade secret identification" that Moog ultimately withheld for more than a year. (Dkt. 205 at 1.) He made findings about *where* Moog's alleged "trade secret information" is found (namely, in its "source code," "checklists," and "documents") and *how* Moog was to "precisely identify" the trade secrets within those documents, in order to enable the Defendants to prepare defenses, set the bounds of discovery, and allow the Court to draft "an appropriately specific order" if needed. (*Id.*; *see also id.* at 4-5.) Put simply, that order addressed *how* Moog should identify its trade secrets, not merely *when*, as Moog would have it.

Rather than engage with these facts, Moog speculates as to what the court was thinking, arguing: "it stands to reason that Judge McCarthy was not *intending* to impose corrective measures or bright light rules upon a trade secret identification that he had not yet seen"[2] (Opp. at 9-10), and that it "is *reasonable to infer* that Judge McCarthy did not order relief that Skyryse itself did not request and even specifically disclaimed." But Skyryse *did* request the granted relief (and disclaimed nothing), and Judge McCarthy's order is clear, specific, and directive. Moog simply chose not to comply with its express language.

It is true that, recognizing the need for some flexibility as to how Moog would sufficiently identify its trade secrets, Judge McCarthy did not prescribe an exact

---

[1] By contrast, the hearing on Skyryse's motion to enforce Judge McCarthy's order on June 7, 2023 was the first hearing in this action before Judge Rocconi. (Storey Decl., Ex. 1 at 3:23-25).

[2] All emphasis in quotes has been added unless otherwise indicated.

formula or method. But he plainly ordered Moog to "identify its trade secrets with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge." (Dkt. 205 at 3.) And, more to the point, he also ordered Moog to "sufficiently identif[y] its *source code secrets*" by "identify[ing] the specific lines of code or programs claimed to be secret," which it could do any number of ways, such as "by page and line number, by highlighting, or by color-coding." (*Id.* at 3-4.)

Moog's attempt to find ambiguity in Judge McCarthy's reference to identifying "specific lines of code or programs" (Opp. at 15) falls apart when considering the sentence as a whole. Again, the phrase "specific lines of code or programs" is followed by his examples of "printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding." (Dkt. 205 at 4.) The order thus requires identifying "specific lines of code or programs," whether those lines are contained within discrete segments of code or in the source code for a specific program.

Contrary to Moog's assertion that Skyryse is trying "exploit a single sentence," Judge McCarthy laid out over several pages and with examples what he was compelling Moog to do, and how Moog was to do it. This motion simply asks that Moog be compelled, at long last, to comply with that order.

### B. Moog's contention that Skyryse disclaimed the requirement to identify the relevant lines of code is false.

Moog contends in its opposition that "Skyryse *specifically admitted* that no line-by-line identification was required," "*specifically disclaimed* any requirement for a line-by-line source code identification," (Opp. at 1, 2; *see also id.* at 4, 10, 22 (repeating same)), and "did not request" Moog's source code trade secrets to be identified by line. (*Id.* at 1, 10.) None of this is true.

First, in moving to compel this discovery, Skyryse made clear that "[o]nly *Moog knows*, for example, *which specific lines or blocks of its source code*, which

information in its certification process documents, and which portions of its check-lists it alleges to be trade secrets." (Dkt. 166-1 at 13.) Judge McCarthy agreed. He found that some of the "trade secret information at issue is Moog's source code," noted that "Plaintiff is *the only one who can know* what it believes its trade secrets are," and ordered Moog to "identify the *specific lines*" of code it claims are trade secret. (Dkt. 205 at 1, 3, 4.)

Moog next argues that Skyryse's Interrogatory No. 1 "does not mention source code and does not ask for any line-by-line identification of source code." (Opp. at 3.)[3] But the interrogatory is not limited to source code trade secrets, and applies to others such as "checklists and documents" for which identifying "specific lines of code" would make no sense. (Dkt. 205 at 1, 4.) Regardless, Judge McCarthy understood the scope of the interrogatory and ordered Moog to answer it by identifying any alleged source code trade secrets by line, and all of the alleged trade secrets "with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge." (*Id.*)

Moog then claims that Skyryse "admitted that no line-by-line identification was required." (Opp. at 2.) Skyryse admitted no such thing. Moog selectively quotes Skyryse's briefing to make this argument, but the full context belies its contention. Specifically, in responding to Moog's burden arguments, Skyryse made clear that it was not requesting "every single line of non-public source code" Moog owns, but *only* those lines of code corresponding to any alleged protectable trade secrets Moog actually intends to assert in this action:

[3] Moog further argues that "Judge Rocconi presumably noted" that Interrogatory No. 1 does not expressly mention lines of code. (Opp. at 1.) There is no basis for this "presumption," as Judge Rocconi does not mention the interrogatory at all in her order other than to note correctly that it requires the "identification of the trade secrets." (Dkt. 534 at 5.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

SKYRYSE'S REPLY ISO OBJECTIONS TO MAGISTRATE'S NON-DISPOSITIVE ORDER
CASE NO. 2:22-cv-09094-GW-MAR

> Moog also argues that providing a narrative response "would require Moog to list each and every line of code from the tens of thousands of source code files." Interrogatory No. 1 requires no such thing. ***It asks Moog to identify its trade secrets, not "every single line of non-public source code***." Moog cannot seriously contend that "each and every line" of its source code constitutes a protectable trade secret, nor could it possibly intend to assert such an unreasonably large number of trade secrets in proceedings before this Court or a jury.

(Dkt. 194 at 9 (internal citations removed).)[4]

In sum, the record is clear: Skyryse moved for precise identification of Moog's trade secrets including by lines of code, Judge McCarthy granted that motion, and Moog has yet to provide the compelled information. It should be ordered to do so now without further delay.

**C. Moog's claims of burden are overstated.**

Judge McCarthy's order does not require Moog to find and describe every trade secret it owns, or even every trade secret Moog thinks might be in the files its former employees allegedly copied upon leaving the company. Rather, the order compels Moog to provide disclosures sufficient to put the Defendants and the Court on notice of what trade secrets Moog actually intends to assert in this action. (Dkt. 205 at 6 ("Therefore, I will exercise that discretion by requiring Moog to 'answer in full Skyryse's Interrogatory No. 1 calling for Moog to identify with particularity every alleged trade secret *it intends to assert in this action* …'").)

This makes sense, for Moog cannot seriously intend to assert the "1.4 million files" it claims were copied, or the "83,481 unique trade secret source code files" it claims were misappropriated, before the Court or a jury. (Opp. at 1, 18.) It is Moog's burden to prove for *each* trade secret it asserts that it belonged to Moog to begin

---

[4] Moog does not contest Skyryse's point that source code necessarily includes some content that is generally known and required by programming conventions. (*See, e.g.*, Mot. at 1.) This undisputed fact undergirds Judge McCarthy's order that Moog provide enough information to "*separate the trade secret from matters of general knowledge*." (Dkt. 205 at 3.) Moog's identification of tens of thousands of source code files in their entirety—without attempting to show which portions are purportedly trade secrets—violates this requirement of the order as well.

with, that it was the subject of reasonable measures to protect its secrecy, that it derives independent economic value from not being generally known to or readily ascertainable by others, and that it was misappropriated. *See, e.g.*, 18 U.S.C. §§ 1836(b), 1839(3), (5). Moog might try to do this *several* times at a hearing or at trial, but not 1.4 million or even 80,000 times. It is hardly overly burdensome for Moog to identify with specificity the alleged trade secrets "it intends to assert in this action"—it of course must do so to present its case, and there is no excuse for its ongoing refusal to share this information with Skyryse.

In any event, Judge McCarthy duly considered Moog's burden argument in making his ruling. At every turn, as it does here, Moog repeated its claim over and again that Defendants Kim and Pilkington had allegedly copied 1.4 million files (Dkt. 204 at 22:22; Dkt. 180 at 1, 2, 3, 8, 15, 19, 20), and that it had identified tens of thousands of files it claimed were relevant, noting "the volume of source code is likely much higher." (Dkt. 180 at 20.) Moog had pounded that same drum from the onset of the case to Judge McCarthy who, nonetheless, still drafted a clear order requiring Moog to identify specific lines of code for those "source code secrets" that Moog "intends to assert in this action."[5] (Dkt. 205 at 4, 6.) Moog should be required to do that now, without further delay.

## III. THE LAW SUPPORTS SKYRYSE, NOT MOOG.

Moog argues that "the Ninth Circuit does not require a line-by-line identification of code in all cases." (Opp. at 16.) But Skyryse never asked for a ruling "*in all cases*," but rather laid out in detail why such a disclosure is imperative in *this* case. This is consistent with Ninth Circuit law which overwhelmingly supports Skyryse's motion and Judge McCarthy's order.

---

[5] Despite all this, at the hearing before Judge Rocconi, Moog repeated essentially the same argument that had failed to persuade Judge McCarthy. Counsel argued that "a line-by-line identification for tens of thousands of source code files, would be extremely burdensome and unreasonable, and in actuality, it would take many months to do something like that." (Storey Decl., Ex. 1 at 25:5-8.)

### A. Ninth Circuit law requires detailed identification of alleged trade secrets and supports Judge McCarthy's order.

Ninth Circuit law requires, in every case, that the plaintiff identify its trade secrets with enough specificity to allow the court and parties to distinguish the trade secrets asserted in that case from that which is generally known in the field. *See, e.g.*, *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) ("The plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade."). That demands a fact-specific analysis of the allegations in the case, including the relevant "trade" and the nature, complexity, and subject matter of the alleged trade secrets. *See, e.g.*, *id.* at 1167 (noting that because the alleged trade secrets were "sophisticated and highly complex" and the court would be unlikely to possess the necessary expertise to separate them from general knowledge, "[u]nder these facts, reasonable specificity could only be achieved by identifying the precise numerical dimensions and tolerances" plaintiff contended were trade secrets); *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1111 (N.D. Cal. 2016) (noting that "degree" of reasonable particularity required "will differ, depending on the alleged trade secrets at issue in each case").

Under this rubric, this Court has required the identification of specific portions of source code to separate the alleged trade secrets from other aspects of the source code at issue. *See, e.g.*, *Keywords, LLC v. Internet Shopping Enters., Inc.*, No. CV 05-2488-MMM, 2005 WL 8156440, at *17 (C.D. Cal. June 29, 2005) (requiring plaintiff to identify "what portions of the source codes" were trade secret); *see also Social Apps, LLC v. Zynga, Inc.*, No. 11-cv-04910-YGR, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) (requiring plaintiff to identify "specific lines of code or file names" and "specifically identify[ ] and describ[e] the actual architecture"). Relatedly, this Court has also noted that, especially when large

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

SKYRYSE'S REPLY ISO OBJECTIONS TO
MAGISTRATE'S NON-DISPOSITIVE ORDER
CASE NO. 2:22-cv-09094-GW-MAR

quantities of material are at issue, it is incumbent on the plaintiff to identify specifically where in the documents its alleged trade secrets may be found. *See, e.g.*, *X6D Ltd. v. Li-Tek Corps. Co.*, No. CV 10-2327-GHK, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012) (finding insufficient a disclosure that "cites and incorporates by reference hundreds of documents" because it "fail[s] to specifically identify what in these documents is a trade secret and where within these documents that information is located").

Judge McCarthy's order that Moog "identify the specific lines of code or programs claimed to be secret" is entirely consistent with this Ninth Circuit law. (Dkt. 205 at 4.)

**B. The cases Moog cites validate Judge McCarthy's order.**

None of Moog's cited authorities invalidates Judge McCarthy's order.

In *WeRide Corp. v. Kun Huang*, the court found that a plaintiff alleging misappropriation of source code was not *always* required, as a matter of law, to "identify the specific code." 379 F. Supp. 3d 834, 846 (N.D. Cal. 2019). Based on the particular factual circumstances before it, the court determined the plaintiff had identified its trade secrets with sufficient particularity by naming source code files specific to each alleged trade secret, and did not need to make a more granular identification. *Id.* But the court in *WeRide* did not hold that a plaintiff alleging misappropriation of source code is *never* required to identify specific lines of code or programs; its analysis simply confirms that a court should consider the sufficiency of a trade secret identification on a case-by-case basis. Similarly, *Integral Development Corp. v. Tolat* reversed a grant of summary judgment to the defendant, holding only that the district court erred in finding plaintiff's trade secret identification, which had identified specific file names, *in*sufficient as a matter of law. 675 F. App'x 700, 703 (9th Cir. 2017). Neither *Integral* nor any other case cited by Moog stands for the proposition that merely listing file names, without identifying the specific portions claimed to be trade secret, is sufficiently specific in every case.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

SKYRYSE'S REPLY ISO OBJECTIONS TO MAGISTRATE'S NON-DISPOSITIVE ORDER
CASE NO. 2:22-cv-09094-GW-MAR

Indeed, as Moog itself points out, *Microvention, Inc. v. Balt USA, LLC* underscores that the "unique factual circumstances" of a particular case "can be considered by the Court in determining whether Plaintiff has identified trade secrets with 'reasonable particularity' by referencing documents." No. 20-cv-02400-JLS-KESx, 2021 WL 4840786, at *4 n.3 (C.D. Cal. Sept. 8, 2021); *see also Social Apps, LLC v. Zynga, Inc.*, No. 11-cv-04910-YGR, 2012 WL 2203063, at *3 (N.D. Cal. June 14, 2012) (stating that a plaintiff must identify trade secrets "in a manner that is fair and proper *under all the circumstances*"). In *Microvention*, no source code was at issue, and the Court found that the alleged trade secret documents were "readily identifiable" and easily located based on the defendant's own production in a related case—circumstances which are not present here. *Id.* at *5.

In sum, Judge McCarthy considered the factual circumstances of this case, weighed Moog's many arguments protesting identifying where in the source code it alleges its trade secrets can be found, and compelled Moog to identify that code by line. That decision is consistent with the law and essential to a fair process in this action, and Moog's immediate compliance should be compelled.

## IV. MOOG HAD NO GROUNDS TO CHALLENGE MAGISTRATE JUDGE MCCARTHY'S ORDER AND WAIVED ITS RIGHT TO DO SO.

At the end of its opposition, Moog finally makes explicit its request that the Court exercise its "power to ***reconsider*** Judge McCarthy's Order." (Opp. at 20.) But any objection to Judge McCarthy's order was due within 14 days of issuance under Rule 72(a), and Moog chose not to file one. There is good reason why Moog never challenged Judge McCarthy's order before: Moog embraced and *relied* on that order insofar as it allowed it to take extensive, unbounded, one-sided discovery from Skyryse, all before Moog had to identify even a single trade secret. (*See, e.g.*, Dkt. 210 (Moog's motion to compel discovery); Dkt. 283 (Moog's motion for clarification regarding third-party discovery, arguing that third-party subpoenas were necessary to its trade secret identification).) Only after Moog had taken nearly a

year's worth of discovery, and once *this* Court required it to finally serve its trade secret identification, did Moog change its tune. Now, it argues that Judge McCarthy's order requiring it to identify its source code trade secrets by line does not mean what it says, and this Court should reconsider it. Moog cannot have it both ways, and should not be permitted to revisit that order now, over a year past its deadline to do so.

Moreover, none of the limited circumstances under which a transferee court may reconsider a ruling of the transferor court exists here. *See Hall v. Alternative Loan Tr. 2006-7CB*, No. 13-cv-1732-KJM-AC, 2013 WL 5934322, at *2 (E.D. Cal. Nov. 1, 2013) ("A court may reconsider a prior ruling of a transferor court when the governing law has been changed by the subsequent decision of a higher court or when new evidence becomes available. … [or] when a clear error has been committed or when it is necessary to prevent manifest injustice."). Moog does not argue there has been a change in the governing law, but contends this Court should consider two pieces of "new evidence": that there are allegedly "over 80,000 unique source code files … at issue" which will take time to process, and that some of the source code files do not contain "lines" but images instead. (Opp. at 21.) This so-called "new evidence" is not new and does not change the correctness of Judge McCarthy's findings. Judge McCarthy was well aware of Moog's assertion that "over one million" files were taken from it and factored that into his analysis and order. (Dkt. 205 at 1; *see also* Dkt. 204 (July 15 Hearing Tr. at 42:8-13 ("Here we're talking about over one million [files].").) And if some of the source code files contain images rather than lines of code in text, that does not excuse Moog from following Judge McCarthy's order by "identify[ing] the specific lines of code" where they do exist, and otherwise identifying them "with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge." (Dkt. 205 at 3, 4.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

SKYRYSE'S REPLY ISO OBJECTIONS TO
MAGISTRATE'S NON-DISPOSITIVE ORDER
CASE NO. 2:22-cv-09094-GW-MAR

Finally, as a last-ditch effort, Moog argues that Magistrate Judge McCarthy committed "clear error" in requiring a line-by-line source code identification, and that reading his order literally would work a "manifest injustice" on Moog given the alleged burden involved in conducting a line-by-line identification of 80,000 source code files. (Opp. at 22-23.) But, as detailed above, Moog must identify its trade secrets in order to meet its burden of proving it owned them in the first place, that they meet the legal requirements for trade secrets, and that they were misappropriated. That it is burdensome to do so does not relieve Moog of its obligation or justify keeping Skyryse in the dark about what it is accused of doing for the nearly two years this case has been active. And, again, the order does not require Moog to identify trade secrets in "over 80,000 unique source code files," only in those it actually intends to assert in this action. *See supra* § II.C.

Thus, in sum, there was no clear error on Judge McCarthy's part, no injustice will result from enforcing his order, and reconsideration of that order should be denied.

## V. CONCLUSION

For the foregoing reasons, Skyryse respectfully requests that the Court grant its motion and sustain its objection to Magistrate Judge Rocconi's order.

Dated: August 10, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Gabriel S. Gross*

Douglas E. Lumish (SBN 183863)
Gabriel S. Gross (SBN 254672)
Arman Zahoory (SBN 306421)
Rachel S. Horn (SBN 335737)
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
gabe.gross@lw.com
arman.zahoory@lw.com
rachel.horn@lw.com

Joseph H. Lee (SBN 248046)
Ryan Banks (SBN 318171)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com
ryan.banks@lw.com

Russell Mangas (Admitted *Pro Hac Vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: russell.mangas@lw.com

Julianne C. Osborne (SBN 342870)
Alexa L. Solimano (SBN 335740)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: julianne.osborne@lw.com
alexa.solimano@lw.com

Kelley M. Storey (Admitted *Pro Hac Vice*)
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: kelley.storey@lw.com

Cassandra M. Baloga (Admitted *Pro Hac Vice)*
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: cassandra.baloga@lw.com

*Attorneys for Defendant and Counter-claimant, Skyryse, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant-Counterclaimant Skyryse, Inc., certifies that this brief contains **4,109** words, which:

X complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order.

Dated: August 10, 2023

LATHAM & WATKINS LLP

By: */s/ Gabriel S. Gross*
Gabriel S. Gross
*Attorney for Defendant and Counterclaimant Skyryse, Inc.*