**LATHAM & WATKINS LLP**
Douglas E. Lumish (SBN 183863)
 *doug.lumish@lw.com*
Gabriel S. Gross (SBN 254672)
 *gabe.gross@lw.com*
Arman Zahoory (SBN 306421)
 *arman.zahoory@lw.com*
Rachel S. Horn (SBN 335737)
 *rachel.horn@lw.com*
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and Counterclaimant
Skyryse, Inc.*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>          Plaintiff,<br><br>     v<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>          Defendants. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**DEFENDANT AND COUNTERCLAIMANT SKYRYSE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF MOOG INC.'S AMENDED COMPLAINT** |
| SKYRYSE, INC.,<br><br>          Counterclaimant,<br><br>     v<br><br>MOOG INC.,<br><br>          Counterclaim-Defendant. | Discovery Cut-Off: April 12, 2024<br>Trial: August 27, 2024<br><br>Hearing:  October 5, 2023<br>Time:      8:30 a.m.<br>Judge:     Hon. George H. Wu<br>Location: Ctrm. 9-D |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

1   **TO THE ABOVE-CAPTIONED COURT, AND TO ALL PARTIES**

2   **AND THEIR COUNSEL OF RECORD:**

3   **PLEASE TAKE NOTICE** that at 8:30 a.m. on October 5, 2023, or as soon

4   thereafter as the matter may be heard before the Honorable George H. Wu in Court-

5   room 9-D of the United States District Court, Central District of California, located

6   at 350 West 1st Street, Los Angeles, California 90012, Defendant and Counterclaim-

7   ant Skyryse, Inc. will and hereby does move the Court to dismiss Counts II, V, VI,

8   and IX–XII of Plaintiff Moog Inc.'s Amended Complaint (Dkt. 579), pursuant to

9   Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.

10  This Motion is made on the grounds that:

11  • Moog's conversion claim (Count II) should be dismissed for lack of a

12     cognizable legal theory. No property right exists under California law

13     for "non-trade secret" confidential information, and the California Uni-

14     form Trade Secrets Act ("CUTSA") supersedes conversion claims

15     premised on the alleged theft of confidential information, whether or

16     not that information meets the definition of a trade secret;

17  • Moog's claims of conspiracy, unjust enrichment, and imposition of a

18     constructive trust (Counts V, X, and XI) are also superseded by CUTSA

19     because they are based on the same nucleus of fact as Moog's trade

20     secret claim. Moog's constructive trust claim is additionally deficient

21     because "imposition of a constructive trust" is an equitable remedy, not

22     a cause of action;

23  • Moog's claim for violation of California's Unfair Competition Law

24     ("UCL") (Count XII) should be dismissed because it is at least partially

25     superseded by CUTSA, and otherwise is unsupported by adequate fac-

26     tual allegations to state a plausible claim for relief and/or lacks a cog-

27     nizable legal theory;

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

- Moog has not pleaded sufficient facts to state a plausible claim for relief against Skyryse for breach of contract (Count VI); and
- Under either alleged factual predicate for Moog's claim that Skyryse breached the implied covenant of good faith and fair dealing (Count IX), Moog fails to state a plausible claim for relief.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and records on file herein, and upon all other arguments and evidence that may be presented to this Court.

This motion is made following the conference of counsel on August 4, 2023, pursuant to Local Rule 7-3.

Dated:  August 11, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By:  */s/ Gabriel S. Gross*

Douglas E. Lumish (SBN 183863)
Gabriel S. Gross (SBN 254672)
Arman Zahoory (SBN 306421)
Rachel S. Horn (SBN 335737)
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
gabe.gross@lw.com
arman.zahoory@lw.com
rachel.horn@lw.com

*Attorneys for Defendant and
Counterclaimant, Skyryse, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................... 2

III.   LEGAL STANDARD .................................................................... 5

IV.    ARGUMENT ................................................................................. 5

    A.   Moog's conversion claim fails because there is no
property right in "non-trade secret" information, and
CUTSA supersedes it. ........................................................ 6

        1.   Choice of Law ........................................................ 6

        2.   CUTSA supersedes common-law claims based on
alleged misappropriation of non-trade secret
information. ............................................................ 6

        3.   Moog's conversion claim is superseded by
CUTSA. .................................................................. 9

    B.   Moog's other non-contract common-law claims should
be dismissed because they, too, are superseded by
CUTSA. ............................................................................ 12

        1.   Conspiracy ........................................................... 12

        2.   Unjust Enrichment ............................................... 13

        3.   Constructive Trust ............................................... 14

    C.   Moog's UCL claim should be dismissed for lack of a
cognizable legal theory. ................................................... 15

    D.   Moog's breach of contract claim against Skyryse should
be dismissed for failure to state a plausible claim for
relief. ............................................................................... 17

    E.   Moog's breach of implied covenant claim should be
dismissed for failure to state a plausible claim for relief. ... 19

V.     CONCLUSION ........................................................................... 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Angelica Textile Services, Inc. v. Park*,
220 Cal. App. 4th 495 (2013).............................................................................9

*Artec Grp., Inc. v. Klimov*,
No. 15-cv-03449-EMC, 2016 WL 8223346 (N.D. Cal. Dec. 22,
2016).........................................................................................7, 8, 12, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................5, 10, 15, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................5

*Byton North America Corp. v. Breitfeld*,
No. 19-cv-10563-DMG, 2020 WL 3802700 (C.D. Cal. Apr. 28,
2020).........................................................................................9

*Digital Envoy, Inc. v. Google, Inc.*,
370 F. Supp. 2d 1025 (N.D. Cal. 2005) .........................................7, 13

*Emergy Inc. v. The Better Meat Co.*,
No. 21-cv-02417-KJM-CKD, 2022 WL 7101973 (E.D. Cal. Oct.
12, 2022)....................................................................................6, 13

*FLF, Inc. v. Barney & Barney, LLC*,
No. A131131, 2012 WL 4897750 (Cal. Ct. App. Oct. 16, 2012)
(unpublished)...............................................................................8

*Genasys Inc. v. Vector Acoustics, LLC*,
No. 22-cv-152-TWR, 2023 WL 4414222 (S.D. Cal. July 7, 2023).........8, 10, 14

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
17 F. Supp. 2d 275 (S.D.N.Y. 1998)...................................................19

*Haskel Eng'g & Supply Co. v. Hartford Acc. & Indem. Co.*,
78 Cal. App. 3d 371 (1978)...............................................................14

*Heller v. Cepia, LLC*,
No. 11-cv-01146-JSW, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012)...........8, 9, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

*Herbalife Int'l of Am., Inc. v. Eastern Comput. Exch. Inc.*,
No. 22-cv-00347-ODW, 2022 WL 17979752 (C.D. Cal. Dec. 28, 2022) ................................................................................... 12

*Hooked Media Grp., Inc. v. Apple Inc.*,
55 Cal. App. 5th 323 (Cal. Ct. App. 2020) ........................... 16

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
No. 08-cv-9116-PGG, 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) ............ 19, 21

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
171 Cal. App. 4th 939 (2009) ............................................... 7

*Lodging Sols., LLC v. Miller*,
No. 19-cv-10806-AJN, 2020 WL 6875255 (S.D.N.Y. Nov. 23, 2020) ................................................................................ 20

*Mattel, Inc. v. MGA Entertainment, Inc.*,
782 F. Supp. 2d 911 (C.D. Cal. 2011) ........................ 7, 10, 14

*Mattel, Inc. v. MGA Entm't, Inc.*,
616 F.3d 904 (9th Cir. 2010) ............................................... 14

*Medidata Sol., Inc. v. Veeva Sys., Inc.*,
No. 17-cv-589-LGS, 2021 WL 467110 (S.D.N.Y. Feb. 9, 2021) ....................... 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .............................................. 5

*Negrete v. Citibank N.A.*,
187 F. Supp. 3d 454 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) ............................................................................ 18

*Newton v. Thomason*,
22 F.3d 1455 (9th Cir. 1994) ................................................ 6

*Phonexa Holdings, LLC v. O'Connor*,
No. B308548, 2022 WL 3698220 (Cal. Ct. App. Aug. 26, 2022) (unpublished) ........................................................................ 8

*Qiang Wang v. Palo Alto Networks, Inc.*,
No. 12-cv-05579-WHA, 2013 WL 415615 (N.D. Cal. Jan. 31, 2013) ...................................................................................... 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

*Race Winning Brands, Inc. v. Gearhart*,
   No. 22-cv-1446-FWS, 2023 WL 4681539 (C.D. Cal. Apr. 21,
   2023) ............................................................................................................ 8

*RSPE Audio Sols., Inc. v. Vintage King Audio, Inc.*,
   No. 12-cv-06863-DDP, 2013 WL 1120664 (C.D. Cal. Mar. 18,
   2013) ............................................................................................................ 8

*Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*,
   955 F. Supp. 2d 247 (S.D.N.Y. 2013) ....................................................... 6

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ............................................... 1, 7, 9, 12

*Singa v. Corizon Health, Inc.*,
   No. 17-cv-4482-BMC, 2018 WL 324884 (E.D.N.Y. Jan. 8, 2018) ................. 18

*SunPower Corp. v. SolarCity Corp.*,
   No. 12-cv-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11,
   2012) .................................................................................. 8, 9, 10, 11

*Swanson v. ALZA Corp.*,
   No. 12-cv-4579-PJH, 2013 WL 968275 (N.D. Cal. Mar. 12, 2013) ................ 14

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   313 F. Supp. 3d 1056 (N.D. Cal. 2018) ..................................................... 8

*Total Recall Techs. v. Luckey*,
   No. 15-cv-02281-WHA, 2016 WL 199796 (N.D. Cal. Jan. 16,
   2016) ...................................................................................... 8, 12

*Waymo LLC v. Uber Techs., Inc.*,
   256 F. Supp. 3d 1059 (N.D. Cal. 2017) ........................................... 8, 16, 17

*Whiteslate, LLP v. Dahlin*,
   No. 20-cv-1782-W, 2021 WL 2826088 (S.D. Cal. July 7, 2021) .................. 13

**STATUTES**

18 U.S.C. § 1836(b)(3)(B)(i)(II) ............................................................... 14

Cal. Civ. Code § 3426.3 ............................................................................ 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

**RULES**

Fed. R. Civ. P. 8 ................................................................................................ 18

Fed. R. Civ. P. 12(b)(6) .................................................................................... 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

v

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION[1]

Moog has maintained since day one that its claims "are all predicated upon the [alleged] misappropriation of trade secrets." (Dkt. 62 at 15.) But after more than a year of one-sided "expedited" discovery, Moog has had to face a major flaw in its case. Moog has been unable to sufficiently identify its trade secrets among the data it claims was taken from it, much less show that they are entitled to legal protection. This is not surprising, for many of Moog's purported "trade secrets" are not secret at all. Much of the information deals with complying with publicly available government regulations and certifications, is readily available from third parties, or consists of source code written using widely-known and accepted programming conventions. Although Moog claims that two of its former employees, Defendants Pilkington and Kim, copied over a million files, only a fragment of that information, if any, could possibly qualify as legally protectable trade secrets. This has left Moog with a hole in its central theory that all of its claims are "predicated on the misappropriation of trade secrets."

In its Amended Complaint, Moog attempts to remedy that critical gap by adding a cause of action for common-law conversion of what it now refers to as its "Non-Trade Secret Data." The problem with *that* claim is that under California law, "'information' cannot be 'stolen' unless it constitutes property," and "information is not property unless some law makes it so." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 (2010). Moog has identified no property right in its "Non-Trade Secret Data" and no such property right exists under California law. As a result, California's Uniform Trade Secrets Act supersedes Moog's conversion claim, along with Moog's other common-law tort claims against Skyryse that are grounded in the alleged theft of both trade secret and non-trade secret information.

---

[1] All emphasis in quotes has been added unless otherwise indicated.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

As another backstop, Moog seeks to assert claims against Skyryse for breach of contract and breach of an implied covenant of good faith and fair dealing arising out of two non-disclosure agreements that governed the parties' prior business relationship. But in attempting to distinguish its implied covenant claim from its express breach claim, Moog only demonstrates that both claims are legally invalid. First, Moog offers no factual allegations to plausibly suggest that Skyryse misused confidential information it lawfully obtained under the NDAs, so its breach of contract claim cannot survive dismissal. Second, those same NDAs do not fairly imply any duty as to *other* confidential information that was *not* exchanged in the parties' business dealings, nor as to hiring of employees (which is not even mentioned in the agreements), so the implied covenant claim also fails.

Although Moog's "non-trade secret" conversion claim and its breach claims against Skyryse fail as a matter of law, this does not leave Moog without recourse for the alleged theft of files by its former employees, if it can prove its case. For example, Moog is free to try to prove that the information it alleges was taken is actually protectable under the law as trade secrets. And Moog's other, "non-trade secret" information may be protected in other ways, including by employees' contractual obligations, and Moog can pursue (and is pursuing) contract remedies against its former personnel whom it contends violated duties of confidentiality. But Moog cannot create a novel "non-trade secret" *property* right where none exists, nor pursue speculative claims against Skyryse that are not plausibly supported by well-pleaded factual allegations. Respectfully, Moog's Amended Complaint should be dismissed as to Counts II, V, VI, and IX–XII.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Moog filed this lawsuit on March 7, 2022, after a number of its former at-will employees departed the company to take jobs at Skyryse. In its complaint, Moog described a prior business relationship between Moog and Skyryse and the disintegration of that relationship. It alleged that "Skyryse hir[ed] 20 of Moog's senior staff

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

and best software engineers," including Defendants Misook Kim and Alin Pilkington. (Dkt. 1 ¶ 1.) And it accused Ms. Kim and Mr. Pilkington of copying hundreds of thousands of files containing "Moog's most sensitive and proprietary data" concerning flight control software, and taking those files with them to Skyryse. (*Id.*) Based on those allegations, Moog asserted several claims, including trade secret misappropriation and breach of the non-disclosure agreements Moog and Skyryse had entered into in 2018 and 2019 during their business relationship. (*Id.* ¶¶ 160-179, 223-230.)

Moog readily admitted from the outset that its claims were "all predicated upon the [alleged] misappropriation of trade secrets." (Dkt. 62 at 15.) But Moog's complaint did not meaningfully identify any of its alleged trade secrets, despite claiming it had granular forensic details about them. (*See, e.g.*, Dkt. 1 ¶¶ 110-120.) In fact, Moog continued to avoid disclosing them for months afterward. Instead, Moog repeatedly argued it needed expansive discovery into Skyryse's systems before it could identify its own trade secrets. But even after it received hundreds of millions of pages' worth of such discovery (while Skyryse was not permitted to take any), and even after the court in New York ordered it to follow specific instructions to identify the trade secrets it "intend[ed] to assert in this action" with the required particularity (Dkt. 205 at 6), Moog continued to delay.

It was only after the case was transferred and this Court gave Moog a firm deadline to provide a trade secret identification that Moog finally attempted to do so. But even then, Moog ignored nearly every instruction that the transferor court had set for it. As Magistrate Judge Rocconi recently found, for most of its alleged trade secret categories, Moog failed to "'identify specific key aspects' of the trade secrets with any particularity." (Dkt. 534 at 8.) And despite the transferor court's express instructions to "identify the specific lines of code or programs claimed to be secret" (Dkt. 205 at 4), Moog did not pinpoint a single line of source code that it could distinguish as its trade secret. (*See generally* Dkt. 555-1.) As a result of these

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

deficiencies, Skyryse is unable to discern what it is accused of misappropriating and the bounds of the alleged trade secrets Moog intends to assert. Moog's inability to adequately define its trade secrets reflects a persistent and substantive gap in its case.

On May 22, 2023, Moog moved for leave to file an amended complaint that would attempt to circumvent the defects in its theory of trade secret misappropriation. (Dkt. 490.) In addition to updating certain substantive allegations and attempting to conform the complaint to applicable California law, Moog sought to add two new claims that it believed would allow it to hold Skyryse liable for allegedly possessing and using confidential information, even if that information did not qualify for trade secret protection. Specifically, Moog sought to assert claims for common-law conversion, and for breach of the implied covenant of good faith and fair dealing based on the parties' NDAs. (*Id.* at 10.)

Skyryse opposed the amendment on the grounds that Moog's newly-asserted claims for conversion and breach of implied covenant would be futile as pleaded, and the Court agreed. (Dkt. 553 at 11, 16-17.) Specifically, the Court found Moog had not pleaded a conversion claim that was sufficiently factually distinct from its trade secret misappropriation claim to avoid being superseded by CUTSA. (*Id.* at 8, 11.) Additionally, the Court determined that Moog's implied covenant claim overlapped impermissibly with its express breach of contract claim. (*Id.* at 16-17.) The Court permitted Moog to try to remedy the deficiencies in its proposed complaint and granted leave to amend. (*Id.* at 11, 17.) However, the Court also permitted Skyryse to move to dismiss Moog's then-forthcoming amended complaint, holding that Skyryse was "not precluded from raising its same objections … to Plaintiff's conversion and breach of the implied covenant of good faith and fair dealing claims." (Dkt. 572.)

Moog filed its First Amended Complaint ("FAC") on July 21. While the FAC reflects Moog's attempts to implement the Court's instructions, it fails to save Moog's defective claims for conversion and breach of the implied covenant of good

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

faith and fair dealing. For instance, in an effort to distinguish its conversion claim from its trade secret claim, Moog limits the former to apply only to what it calls its "Stolen Non-Trade Secret Data" (FAC ¶¶ 270-274), but still fails to recognize that there *is* no property right, under California law, in such "non-trade secret data." Moog also attempts to separate its breach of contract claim from its implied covenant claim by asserting that they apply to Skyryse's alleged receipt and misuse of two different sets of information (FAC ¶¶ 308, 325), but in doing so, both alters its express breach claim such that it is no longer supported by any well-pleaded factual allegations *and* still fails to state a claim for breach of implied covenant.

## III.  LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Although the Court must accept as true all well-pleaded allegations of material fact, it is not required to accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] … the pleader is entitled to relief." *Id.*, 556 U.S. at 679 (citations omitted).

## IV.  ARGUMENT

Aside from its trade secret misappropriation claim, which Skyryse does not dispute Moog has adequately pleaded, none of Moog's causes of action against Skyryse states a viable claim. Moog's conversion, conspiracy, unjust enrichment, constructive trust, UCL, breach of contract, and implied covenant claims against Skyryse should all be dismissed pursuant to Rule 12(b)(6).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

**A.    Moog's conversion claim fails because there is no property right in "non-trade secret" information, and CUTSA supersedes it.**

In Count II, Moog asserts a conversion claim for the first time, alleging that Defendants wrongfully deprived it of possession of certain "Non-Trade Secret Data." But no property right exists under California law for such "non-trade secret" confidential information, and CUTSA supersedes conversion claims premised on the alleged theft of confidential information, *whether or not* that information meets the definition of a trade secret. Because Moog lacks a cognizable legal theory, its conversion claim fails as a matter of law and the Court should dismiss it.

1.    Choice of Law

As the Court noted when Moog moved to amend its complaint, California law governs Moog's proposed common-law conversion claim. (Dkt. 553 at 6.) New York choice-of-law rules apply following the transfer from the Western District of New York. *Newton v. Thomason*, 22 F.3d 1455, 1459 (9th Cir. 1994). An actual conflict exists between New York and California law, because "New York law does not preempt non-contract claims arising from the same operative facts as a trade secret misappropriation claim, while California law does." *Medidata Sol., Inc. v. Veeva Sys., Inc.*, No. 17-cv-589-LGS, 2021 WL 467110, at *12 (S.D.N.Y. Feb. 9, 2021). Since there is an actual conflict, the law of the state with the greater interest in the resolution of the claims prevails. *Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*, 955 F. Supp. 2d 247, 254 (S.D.N.Y. 2013). Here, that is California, where "the actual misappropriation, if any, apparently took place." (Dkt. 553 at 6.)

2.    CUTSA supersedes common-law claims based on alleged misappropriation of non-trade secret information.

As this Court has recognized, California courts overwhelmingly hold that CUTSA supersedes certain civil common-law claims when they are based on the same core facts as a trade secret misappropriation claim. (*See* Dkt. 439 at 16 n.12 (citing *Emergy Inc. v. The Better Meat Co.*, No. 21-cv-02417-KJM-CKD, 2022 WL

6

7101973, at *8 (E.D. Cal. Oct. 12, 2022); *Artec Grp., Inc. v. Klimov*, No. 15-cv-03449-EMC, 2016 WL 8223346, at *6 (N.D. Cal. Dec. 22, 2016)).) That is because CUTSA "occupies the field" of common-law claims based on misappropriation of trade secrets. *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009). As a result, a claim premised on "the same nucleus of facts as the misappropriation of trade secrets claim for relief" cannot survive CUTSA's supersessive effect simply by relying on a different theory of liability. *Id.* at 958 (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).

What may be less apparent—but is no less well-established—is that CUTSA also supersedes claims based on the alleged misappropriation of *non*-trade secret information. That principle was cogently explained by Judge Carter in *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 985-87 (C.D. Cal. 2011). There, the court analyzed two California Court of Appeal cases, *K.C. Multimedia*, 171 Cal. App. 4th at 957-960, and *Silvaco*, 184 Cal. App. 4th at 239, both discussing the supersessive effect of CUTSA. The *Mattel* court acknowledged that CUTSA's legislative purpose was, in part, to create "a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information ... of value.'" *Mattel*, 782 F. Supp. 2d at 985 (quoting *Silvaco*, 184 Cal. App. 4th at 239 n.22 (ellipsis in original)). Accordingly, allowing a conversion claim for non-trade-secret information would "undermine[ ] the California Court of Appeals' interest in redeeming UTSA's purpose of 'providing unitary definitions of trade secret misappropriation.'" *Id.* at 996 (quoting *K.C. Multimedia*, 171 Cal. App. 4th at 957). Importantly, Judge Carter underscored *Silvaco*'s central finding that "information is not property unless some law makes it so," and concluded that "Mattel cannot identify any property right in its confidential information outside of trade secrets law, because no such property right exists under California law." *Id.* at 996-97 (citing *Silvaco*, 184 Cal. App. 4th at 239) (internal citation omitted). As one subsequent court

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

has noted, "the preemptive sweep of *Silvaco* [is] extraordinarily surprising as a de-
velopment in California law. Nevertheless, it must be respected and applied." *Total
Recall Techs. v. Luckey*, No. 15-cv-02281-WHA, 2016 WL 199796, at *7 (N.D. Cal.
Jan. 16, 2016).

Indeed, virtually every district court in California to directly consider this is-
sue in recent years has "respected and applied" *Silvaco* and *K.C. Multimedia* to find
that claims based on the misappropriation of confidential information—whether or
not it meets the definition of a trade secret—are superseded by CUTSA. *See, e.g.*,
*Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1081 (N.D. Cal.
2018); *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1063-64 (N.D. Cal.
2017); *Race Winning Brands, Inc. v. Gearhart*, No. 22-cv-1446-FWS, 2023 WL
4681539, at *6 (C.D. Cal. Apr. 21, 2023); *RSPE Audio Sols., Inc. v. Vintage King
Audio, Inc.*, No. 12-cv-06863-DDP, 2013 WL 1120664, at *4 (C.D. Cal. Mar. 18,
2013); *Genasys Inc. v. Vector Acoustics, LLC*, No. 22-cv-152-TWR, 2023 WL
4414222, at *22 (S.D. Cal. July 7, 2023); *Artec Grp.*, 2016 WL 8223346, at *6-7;
*SunPower Corp. v. SolarCity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at
*3 (N.D. Cal. Dec. 11, 2012); *Heller v. Cepia, LLC*, No. 11-cv-01146-JSW, 2012
WL 13572, at *7 (N.D. Cal. Jan. 4, 2012).[2]

As each of these decisions granting a motion to dismiss makes clear, the su-
perseding effect of CUTSA can and should be determined at the pleadings stage.
*See, e.g.*, *Waymo*, 256 F. Supp. 3d at 1064 (finding at pleadings stage that plaintiff's
UCL claim based on misappropriation of confidential information was superseded
"regardless of whether or not it would ultimately qualify for trade secret protection"
(citing *Qiang Wang v. Palo Alto Networks, Inc.*, No. 12-cv-05579-WHA, 2013 WL
415615, at *4 (N.D. Cal. Jan. 31, 2013))).

---

[2] California state courts are in accord. *See, e.g.*, *Phonexa Holdings, LLC v. O'Con-
nor*, No. B308548, 2022 WL 3698220, at *11 (Cal. Ct. App. Aug. 26, 2022) (un-
published); *FLF, Inc. v. Barney & Barney, LLC*, No. A131131, 2012 WL 4897750,
at *14 (Cal. Ct. App. Oct. 16, 2012) (unpublished).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

To Skyryse's knowledge, the only case that goes against this near-unanimous acceptance of *Silvaco* in the last decade is *Byton North America Corp. v. Breitfeld*, on which Moog heavily relied in seeking leave to amend. No. 19-cv-10563-DMG, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020) (finding plaintiffs had sufficiently pleaded conversion of "confidential or proprietary property that does not rise to the level of a trade secret"). But the court in *Byton* misread *Silvaco*. It quoted a passage stating that a UCL claim that did "not depend on the existence of a trade secret" (because it had nothing to do with the misappropriation of information) survived CUTSA supersession, *id.* at *8, but ignored *Silvaco*'s clear statement "emphatically reject[ing]" the suggestion that CUTSA does not "preempt common law conversion claims based on the taking of information that, *though not a trade secret, was nonetheless of value to the claimant.*"[3] *Silvaco*, 184 Cal. App. 4th at 239 n.22. As a result of this misreading, the *Byton* court reached a conclusion that is plainly contrary to California law. This Court should not perpetuate that legal error. The overwhelming weight of case law in this Circuit recognizes that, unless the plaintiff can show its data is made property by some other positive law, CUTSA supersedes any non-contract claim for the theft of non-trade secret data.

### 3. Moog's conversion claim is superseded by CUTSA.

In its Amended Complaint, Moog does not plausibly allege any property interest in its "Non-Trade Secret Data" that is "qualitatively different from any property interest conferred by CUTSA." *SunPower*, 2012 WL 6160472, at *3. Moog does not bring any other property claim, such as infringement of copyright, patent, or other intellectual property rights. Nor does Moog plausibly allege any wrongdoing by Skyryse that is "materially distinct from the wrongdoing alleged in" its trade

---

[3] The only other case *Byton* cites is *Angelica Textile Services, Inc. v. Park*, where the court *confirmed* that "disclosure or transfer of *information* that does not fit UTSA's definition of a trade secret does not give rise to any liability, even when that liability is couched in terms of a separate tort or statutory violation." 220 Cal. App. 4th 495, 506 (2013). While the court found CUTSA did not supersede a claim for conversion of "*tangible property*" (physical documents), *id.* at 508, Moog does not allege Skyryse took any tangible materials.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

secret claim. *Genasys*, 2023 WL 4414222, at *22. As a result, CUTSA supersedes Moog's claim for conversion of such "non-trade secret data," and the claim should be dismissed for lack of a cognizable legal theory.

As *Silvaco*, *Mattel*, and the cases that follow them make clear, no conversion claim lies for the theft of information unless the plaintiff can identify some property right in that information outside of trade secrets law, and "no such property right exists under California law." *Mattel*, 782 F. Supp. 2d at 997. Moog nevertheless tries three different tactics to identify a property interest, none of which succeeds.

**First**, Moog repeats the conclusory allegation that the "Non-Trade Secret Data" are "owned by Moog," suggesting that no one else may possess or even access the same information. (FAC ¶¶ 54-55.) The Court is not required to (and should not) accept as true such bare legal conclusions masquerading as factual allegations. *Iqbal*, 556 U.S. at 678. Merely asserting a legal claim of ownership, without factual allegations to make that claim plausible, cannot satisfy the requirement to "identify [a] property right … outside of trade secrets law." *Mattel*, 782 F. Supp. 2d at 997.

**Second**, Moog alleges it invested resources in developing the "Non-Trade Secret Data" and that those data "have value to Moog." (FAC ¶ 54.) That information may have economic value is not sufficient to demonstrate a proprietary interest distinct from those conferred by CUTSA. *See SunPower*, 2012 WL 6160472, at *3 (finding CUTSA's purpose was to provide "a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information ... of value.'" (citing *Silvaco*, 184 Cal. App. 4th at 239 n.22)).

**Third**, Moog alleges it has made efforts to ensure that the "Non-Trade Secret Data" are confidential and "are not disclosed to third parties or the public." (FAC ¶ 54; *see also id.* ¶¶ 57-60.) But the secrecy of information is precisely the type of proprietary interest that CUTSA was enacted to protect, and Moog's purported efforts to maintain the secrecy of its information go directly to an element of trade secret misappropriation, not some other amorphous property right. Accordingly, the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

information's alleged confidentiality does not distinguish Moog's purported interest from any interest conferred by CUTSA. *See SunPower*, 2012 WL 6160472, at *5 ("If the basis of the alleged property right is in essence that the information [is] 'not ... generally known to the public' … then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret.").

The reality is that Moog *cannot* distinguish between the property rights CUTSA seeks to establish and protect and the purported interest it has in its "non-trade secret data." That is fatal to Moog's conversion claim.

Just as critical is that Moog is unable to distinguish the alleged conduct underlying its trade secret misappropriation claim from the conduct underlying its conversion claim.  Throughout the FAC, Moog uses "trade secret," "non-trade secret," and "proprietary" in the same breath, to refer to the same groups of files,[4] and the same alleged wrongdoing by Defendants. (*See, e.g.*, FAC ¶ 29 (providing "an overview of the trade secrets and other proprietary data which have been stolen and misappropriated by Defendants"); *id.* ¶ 220 (giving examples of Skyryse's alleged "unauthorized possession, use and disclosure of the Stolen Trade Secrets and Stolen Non-Trade Secret Data" without further distinguishing between the two categories).) Moog does not allege that Skyryse's conduct was any different with respect to the "Non-Trade Secret Data" versus the alleged trade secrets, which underscores that Moog's conversion claim is premised on the same nucleus of facts.

The *only* distinction Moog attempts to draw is with respect to the trade secret status of the files allegedly taken. As explained above, the overwhelming weight of case law makes clear that that distinction is not relevant to CUTSA supersession. *See, e.g.*, *SunPower*, 2012 WL 6160472, at *3; *Heller*, 2012 WL 13572, at *7;

---

[4] Indeed, the FAC confirms that the "Stolen Non-Trade Secret Data" are commingled in the very same programs as the alleged trade secret data. (FAC ¶ 54 ("Files from each of the Programs discussed above [in section "Trade Secret Commercial and Military Programs"] are included in this group of non-trade secret data.").)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

*Herbalife Int'l of Am., Inc. v. Eastern Comput. Exch. Inc.*, No. 22-cv-00347-ODW, 2022 WL 17979752, at *6-7 (C.D. Cal. Dec. 28, 2022). The facts Moog pleads in support of its conversion claim are the same "nucleus of facts" supporting its trade secret misappropriation claim, and under California law, that is inadequate to state a claim for conversion.

### B. Moog's other non-contract common-law claims should be dismissed because they, too, are superseded by CUTSA.

Moog's conversion claim is not the only one that fails for being superseded by CUTSA. In fact, Moog fails to state a legally viable claim as to any of its non-contract common-law causes of action against Skyryse: conspiracy (Count V), unjust enrichment (Count X), and constructive trust (Count XI). Each of those claims is premised on the alleged misappropriation of trade secrets (or other confidential information), so each is superseded.

### 1.   Conspiracy

In Count V, Moog alleges that Skyryse and the other Defendants conspired to "commit[ ] the underlying tort of misappropriation and theft of the Stolen Trade Secrets, as well as conversion of the Stolen Non-Trade Secret Data." (FAC ¶ 295.) Courts regularly dismiss common-law conspiracy claims for which the underlying tort is trade secret misappropriation, because such claims are superseded by CUTSA. *See, e.g.*, *Artec Grp.*, 2016 WL 8223346, at *6 (granting motion to dismiss claim "alleging civil conspiracy to misappropriate Trade Secrets and Confidential Information" because the claim was "based on the same nucleus of facts" as plaintiff's trade secret claim). For the reasons discussed above, *supra* § IV.A, it makes no difference that Moog now alleges some of the data that was the subject of the alleged conspiracy was "Non-Trade Secret Data." CUTSA supersedes the conspiracy claim regardless of whether it is based on trade secrets or "non-trade secret proprietary information." *Id.* at *7 (citing *Silvaco*, 184 Cal. App. 4th at 239 n.22; *Total Recall*, 2016 WL 199796, at *8).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

1      Moog thus fails to state a conspiracy claim against Skyryse that is not super-

2  seded by CUTSA. The Court should dismiss this claim.

3             2.    <u>Unjust Enrichment</u>

4      In Count X, Moog asserts a cause of action for unjust enrichment, alleging

5  Skyryse was unjustly enriched by "the efforts and investments of Moog" in devel-

6  oping Moog's trade secrets and non-trade secret data. (FAC ¶¶ 328-30.) Here again,

7  this claim is premised on the same nucleus of facts as Moog's trade secret misap-

8  propriation claim (and its superseded conversion claim, *supra* § IV.A). Specifically,

9  Moog alleges that "Skyryse has *used the Stolen Trade Secrets and Stolen Non-Trade*

10  *Secret Data* … thereby saving Skyryse several years and many millions of dollars

11  that it would ordinarily take to develop this information and technology on its own."

12  (FAC ¶ 330.) That allegation makes plain that the conduct underlying Moog's unjust

13  enrichment claim *is* the alleged theft of trade secrets and non-trade secret infor-

14  mation. CUTSA supersedes such a claim as a matter of law. *See Digital Envoy*, 370

15  F. Supp. 2d at 1035 (finding CUTSA superseded plaintiff's unjust enrichment claim

16  because it was "based on the same nucleus of facts as the misappropriation of trade

17  secrets claim for relief").

18      Courts regularly dismiss unjust enrichment claims in this exact posture. For

19  example, in *Whiteslate, LLP v. Dahlin*, the plaintiff alleged the defendant "was un-

20  justly enriched via 'misappropriation of [plaintiff's] trade secrets and confidential

21  business and proprietary information.'" No. 20-cv-1782-W, 2021 WL 2826088, at

22  \*12 (S.D. Cal. July 7, 2021). The court determined that "[b]ased on its own words,

23  Plaintiff's unjust enrichment claim rests on the same nucleus of facts as its misap-

24  propriation of trade secrets claim" and dismissed the claim. *Id.*; *see also Emergy Inc*,

25  2022 WL 7101973 at \*10 (dismissing unjust enrichment claim where "sole unjust

26  enrichment allegation outside scope of misappropriation claims" was that defendants

27

28

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

1  "took the benefit of Emergy's innovations all for their own"); *Genasys*, 2023 WL

2  4414222, at *22 (similar).[5]

3          Likewise, here, Moog has failed to state an unjust enrichment claim against

4  Skyryse that is not based on the same allegations as its trade secret claim and is not

5  superseded by CUTSA. The Court should dismiss this claim.

6                          3.    Constructive Trust

7          In Count XI of the FAC, Moog attempts to plead a claim for "Imposition of

8  Constructive Trust" against Skyryse, alleging that Skyryse "promised not to use

9  Moog's confidential and trade secret information for its own gain" but "is using the

10 Stolen Trade Secrets and Non-Trade Secret Data to develop its own competing flight

11 control software to the direct harm of Moog." (FAC ¶¶ 339-341.) This claim, too,

12 should be dismissed.

13         As an initial matter, "[u]nder California law, a constructive trust is an equita-

14 ble remedy, not a cause of action." *Swanson v. ALZA Corp.*, No. 12-cv-4579-PJH,

15 2013 WL 968275, at *13 (N.D. Cal. Mar. 12, 2013) (citing *Mattel, Inc. v. MGA*

16 *Entm't, Inc.*, 616 F.3d 904, 908-09 (9th Cir. 2010); *Haskel Eng'g & Supply Co. v.*

17 *Hartford Acc. & Indem. Co.*, 78 Cal. App. 3d 371, 375 (1978)). That alone is reason

18 enough to dismiss Moog's constructive trust claim.

19         Even if it were possible to state a standalone claim for "imposition of a con-

20 structive trust," Moog has failed to do so here because, again, its claim is premised

21 on the same factual allegations as its trade secret claim. (*Compare, e.g.*, FAC ¶ 262

22 ("Defendants will continue to disclose and utilize Moog's trade secrets and confi-

23 dential and proprietary information by using this information to unfairly compete

24 with Moog") *with id.* ¶ 341 ("Skyryse is using the Stolen Trade Secrets and Stolen

25 Non-Trade Secret Data to develop its own competing flight control software to the

26

27 _____

[5] Unjust enrichment is also a statutory remedy for trade secret misappropriation un-
der CUTSA, Cal. Civ. Code § 3426.3, and DTSA, 18 U.S.C. § 1836(b)(3)(B)(i)(II).
28 Moog's claim is thus not only superseded by CUTSA, but "redundant of relief al-
ready available under other existing law." *Mattel*, 782 F. Supp. 2d at 1014.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

direct harm of Moog.").) As a result, the claim is superseded by CUTSA and should be dismissed. *See Artec Grp.*, 2016 WL 8223346, at *6-7 (dismissing as "preempted" constructive trust claim based on allegations that defendant took actions "to compete against Artec and to profit from the unauthorized sale of Artec Devices and devices based on Trade Secrets and Confidential Information").

### C.   Moog's UCL claim should be dismissed for lack of a cognizable legal theory.

In Count XII, Moog alleges Skyryse violated California's Unfair Competition Law by "employ[ing] unfair means" to compete, namely "inducing Pilkington and Kim to: violate their duties of loyalty to Moog; lure away key software development employees from Moog; and misappropriate and use Moog's trade secret, confidential, and proprietary information." (FAC ¶ 346.) Under any of these theories, Moog fails to state a valid UCL claim against Skyryse.

***First***, to the extent Moog's UCL claim is premised on Skyryse allegedly "inducing Pilkington and Kim" to do anything, Moog has alleged insufficient facts to plausibly support the claim. Moog alleges that "Kim, *in concert with Defendants*, stole large volumes of Moog's confidential and proprietary data." (FAC ¶ 192.)  But a conclusory statement that Skyryse supposedly worked "in concert with" Ms. Kim, or "coordinated with" her (FAC ¶ 258), with no facts whatsoever to illuminate the basis for that belief, does not "permit the court to infer more than the mere possibility of misconduct" on Skyryse's part. *Iqbal*, 556 U.S. at 679 (citations omitted). In any event, even if the Court were to accept those allegations as true, acting "in concert" is not the same thing as *inducing*.[6] Moog pleads no facts that could support its allegation that Skyryse "induced" Ms. Kim and Mr. Pilkington to violate any duties of loyalty owed to Moog, "lure away" Moog employees, or misappropriate any trade secret information.

---

[6] Indeed, Moog alleges it was Mr. Pilkington and Ms. Kim, *not* Skyryse, who "orchestrate[d]" the alleged "scheme" to copy files from Moog. (FAC ¶ 337.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

**Second**, to the extent it is premised on Skyryse allegedly "misappropriat[ing] and us[ing] Moog's trade secret, confidential, and proprietary information," Moog's UCL claim is superseded by CUTSA. *See supra* § IV.A-B. Numerous federal courts in California have found that CUTSA preempts UCL claims grounded in the alleged misappropriation of trade secret or non-trade secret information. For example, in *Waymo*, the plaintiff asserted a UCL claim based on defendants' "unlawful, unfair, and fraudulent business acts and practices" including "misappropriating Waymo's confidential and proprietary information," and alleged that such conduct was "unfair in that the substantial harm suffered by Waymo outweighs any justification that Defendants may have." 256 F. Supp. 3d at 1062-63; *cf.* FAC ¶¶ 350-52 (alleging "Skyryse misappropriated Moog's trade secrets and confidential and proprietary information" and "has no legitimate business justification for its actions and such actions were done in bad faith and with the intent to harm Moog"). The court found that "CUTSA supersedes Waymo's Section 17200 claim based on misappropriation of said information regardless of whether or not it would ultimately qualify for trade secret protection," and dismissed the claim. *Waymo*, 256 F. Supp. 3d at 1063-64. The Court should reach the same result here.

**Finally**, to the extent Moog bases its UCL claim on Skyryse's hiring of Moog software developers, Moog has failed to state a cognizable legal theory. As a matter of law, enticing a competitor's employees to leave their employer is not an unfair business practice under the UCL, even if it means the competitor is deprived of valuable skilled labor. *See, e.g.*, *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 416-17 (Cal. Ct. App. 2020) (affirming grant of summary judgment that defendant had not violated UCL by hiring plaintiff's engineers, even though it thereby "gained the expertise of the engineers and left Hooked without the skilled labor it needed to conduct its business"); *cf.* FAC ¶ 348 (alleging that "[r]eplacing these lost employees has impacted work production"). Moog's allegation that Skyryse somehow engaged in unfair business practices simply by hiring talented

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

1  employees-at-will (even "key" ones) is thus not legally valid.[7] For this reason, too,

2  Moog's UCL claim should be dismissed.

### D.  Moog's breach of contract claim against Skyryse should be dismissed for failure to state a plausible claim for relief.

5  In its amended pleading, Moog has revised the breach of contract claim it

6  originally asserted against Skyryse in an attempt to distinguish its express breach

7  claim from its newly-asserted breach of implied covenant claim.[8] As amended,

8  Moog's breach of contract claim now addresses *only* Skyryse's alleged misuse of

9  trade secret and confidential information that Skyryse legitimately obtained through

10 the parties' business relationship *between 2018 and 2020.* (FAC ¶ 308.) Specifically,

11 Moog alleges that "[i]n breach of the 2018 NDA and 2019 NDA, Skyryse used in-

12 formation gained from Moog regarding its flight control software *between 2018-*

13 *2020* … including to: 1) develop its own flight control systems and software; and 2)

14 raid and solicit Moog's key software engineering personnel." (*Id.*) But Moog has not

15 pleaded sufficient facts to state a plausible claim for relief.

16 Nearly all Moog's factual allegations concerning Skyryse's alleged misuse of

17 non-public information about Moog's flight control software pertain to information

18 Skyryse allegedly obtained in 2021 and onward—*after* the parties' business relation-

19 ship had concluded. (*See, e.g.*, FAC ¶¶ 155, 163-66 (describing Ms. Kim's departure

20 from Moog to Skyryse and alleged copying of files in November-December 2021);

21 *id.* ¶¶ 194-200 (describing Mr. Pilkington's departure from Moog to Skyryse and

22 alleged copying of files in September-November 2021); *id.* ¶ 220 (describing com-

23 munications between Skyryse and Hummingbird personnel in 2021 and 2022); *id.* ¶

24

---

25 [7] Further, to the extent Moog argues that Skyryse's hiring was somehow part of an
26 alleged "scheme to gain access to confidential, proprietary trade secret information" (FAC ¶ 349), that claim is "based on the same nucleus of facts as trade secret mis-
27 appropriation" and is superseded. *Waymo*, 256 F. Supp. 3d at 1062; *see supra* § IV.A-B.

28 [8] There is no dispute that Moog's contract-based claims are governed by New York law. (Dkt. 553 at 11.)

LATHAM&WATKINS␣␣␣
ATTORNEYS AT LAW
SILICON VALLEY

17

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

223 (describing documents transmitted by Lori Bird in 2021 and 2022).) These allegations, even if assumed to be true and to implicate Skyryse, do not support Moog's breach of contract claim, which Moog now limits to Skyryse's use of information gained from Moog *pursuant to* the parties' business relationship from 2018 to 2020.

Moog's amended complaint contains a single, conclusory allegation that Skyryse used confidential information gained from Moog between 2018 and 2020 to "develop its own flight control systems." Specifically, Moog alleges, "*Upon information and belief*, Skyryse attempted to or in fact did reverse engineer certain components of Moog's flight control systems disclosed to Skyryse between 2018-2020 in an effort to develop a competing flight control system." (FAC ¶ 308.) But pleading "upon information and belief," without "a statement of facts upon which the belief is founded," is insufficient to satisfy Rule 8's plausibility standard. *Negrete v. Citibank N.A.*, 187 F. Supp. 3d 454, 461 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019). Moog's speculation about Skyryse's supposed reverse-engineering, alleged solely "upon information and belief," lacks any factual support and does not permit the Court to "draw the reasonable inference" that Skyryse breached its contract with Moog. *Iqbal*, 556 U.S. at 678; *see also Singa v. Corizon Health, Inc.*, No. 17-cv-4482-BMC, 2018 WL 324884, at *4 (E.D.N.Y. Jan. 8, 2018) ("Alleging something 'upon information and belief' does not suffice to allege a fact under *Iqbal* and *Twombly* unless plaintiff can point to some facts that make the allegations more than pure speculation.").

Secondarily, Moog claims that Skyryse used confidential information gained from Moog during the parties' business relationship to "raid and solicit Moog's key software engineering personnel." (FAC ¶ 308.) According to the FAC, this alleged "raid of Moog" took place in 2021 and onward, after the parties' business dealings were already over. (FAC ¶¶ 146-158.) And Moog's pleading contains *zero* factual allegations to support Moog's conclusion that Skyryse used confidential information

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

gained in 2018-2020 in order to effectuate the alleged "raid."[9] (Indeed, if Skyryse sought to hire Moog software development personnel, Skyryse easily could have found information about those employees on LinkedIn or other public channels.) Again, Moog fails to supply any factual allegations that allow the Court to infer that it is plausibly entitled to relief from Skyryse on its breach of contract theories. The Court should dismiss this claim.

### E.   Moog's breach of implied covenant claim should be dismissed for failure to state a plausible claim for relief.

Count IX alleges that Skyryse breached an implied covenant of good faith and fair dealing inherent in the two non-disclosure agreements Skyryse and Moog had between 2018 and 2020. (FAC ¶¶ 319-327.) Moog's claim is predicated on two alleged actions by Skyryse: first, "the hiring of dozens of Moog employees," supposedly "to circumvent the protections under the 2018 and 2019 NDAs," and second, Skyryse's alleged "theft and use of the Stolen Trade Secrets and S[t]olen Non-Trade Secret Data between 2021-2022 after the Parties' business relationship ended." (FAC ¶ 325.) Neither theory supports a plausible claim for relief under an implied covenant cause of action.

***First***, to the extent Moog's claim is premised upon Skyryse's hiring of approximately twenty of Moog's at-will employees, Moog fails to sufficiently allege that the parties' non-disclosure agreements implied any sort of no-hire obligation. Under New York law, an implied covenant of good faith and fair dealing "arises out of the known reasonable expectations of the other party which arise out of the agreement entered into" but "does not create duties which are not fairly inferable from the express terms of that contract." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-cv-9116-PGG, 2009 WL 321222, at *4 (S.D.N.Y. Feb. 9, 2009); *see also Granite*

---

[9] Even Moog's allegation that Skyryse used a "targeted list of Moog employees" to "solicit and raid Moog's employees" (FAC ¶ 204) concerns information Mr. Raithel allegedly brought to Skyryse in 2022, well *after* the parties' business relationship had ended.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

1 *Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998)

2 (stating that implied covenant "cannot be used to create independent obligations be-

3 yond those agreed upon and stated in the express language of the contract").

4        The 2018 and 2019 agreements were expressly designated "Proprietary Infor-

5 mation and *Non-Disclosure Agreement*[s]." (FAC Exs. C & E.) Such agreements

6 inherently concern the treatment of sensitive information; they do not have anything

7 to do with the hiring of personnel. *See Lodging Sols., LLC v. Miller*, No. 19-cv-

8 10806-AJN, 2020 WL 6875255, at \*7 (S.D.N.Y. Nov. 23, 2020) (observing that "it

9 would be hard to conceive of any other rational reason for including a no-hire pro-

10 vision in a non-disclosure agreement, other than an illegitimate, anti-competitive

11 motive"). Nor do the specific NDAs here include a no-hire clause, nor mention an-

12 ything at all about hiring or personnel matters. (*See* FAC Exs. C & E.)

13        A non-disclosure agreement lacking an enforceable no-hire provision was pre-

14 cisely what was before the court in *Lodging Solutions*. In that case, like here, the

15 defendants had moved to dismiss plaintiff's claim that they violated an implied cov-

16 enant of good faith and fair dealing in a non-disclosure agreement by hiring a former

17 employee. 2020 WL 6875255, at \*9. The court found that the no-hire provision in

18 the parties' NDA was unenforceable, effectively striking it from the contract while

19 leaving the rest of the NDA intact. *Id.* at \*7. What remained was a run-of-the-mill

20 non-disclosure agreement without any no-hire obligations—just like Skyryse and

21 Moog's 2018 and 2019 NDAs. Under *that* contract, the court found defendants' hir-

22 ing of plaintiff's former employee "did not deprive Plaintiff of any fruit of the con-

23 tract to which it was entitled"—meaning that in the absence of the no-hire clause,

24 there was otherwise no implied duty not to hire the plaintiff's employees. *Id.* at \*9.

25 As a result, the court dismissed the implied breach claim. *Id.* The Court should reach

26 the same outcome here.

27        ***Second***, to the extent Moog's claim is premised upon Skyryse's alleged use

28 of confidential information taken from Moog in 2021 and 2022, any such

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

20

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

1   information is a different set of data than was the subject of the parties' NDAs. Moog

2   alleges that Skyryse "deprived Moog of the full benefit of the parties' bargains under

3   the 2018 and 2019 NDAs." (FAC ¶ 326.) But the "bargains" the parties struck in

4   those agreements necessarily pertained to the sharing of *specific* information—the

5   "business and technical information" exchanged for the "limited" purpose of fur-

6   thering the parties' evaluation of a potential business relationship. (FAC Ex. C at

7   173; Ex. E at 188.) Those contracts did not concern information obtained *outside* the

8   parties' business relationship, and any obligation as to the treatment of any such

9   externally-obtained information is "not fairly inferable from the express terms of"

10  the agreements. *JPMorgan Chase Bank*, 2009 WL 321222, at *4. Moog has thus not

11  plausibly alleged a claim for breach of implied covenant on this or any grounds, and

12  that claim should be dismissed.

13  **V.     CONCLUSION**

14         For the foregoing reasons, Skyryse respectfully requests that Counts II, V, VI,

15  and IX–XII of Moog's Amended Complaint be dismissed.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 11, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By:  */s/ Gabriel S. Gross*

      Douglas E. Lumish (SBN 183863)
      Gabriel S. Gross (SBN 254672)
      Arman Zahoory (SBN 306421)
      Rachel S. Horn (SBN 335737)
      Menlo Park, California 94025
      Telephone: (650) 328-4600
      Facsimile: (650) 463-2600
      Email: doug.lumish@lw.com
      gabe.gross@lw.com
      arman.zahoory@lw.com
      rachel.horn@lw.com

      Joseph H. Lee (SBN 248046)
      Ryan Banks (SBN 318171)
      650 Town Center Drive, 20th Floor
      Costa Mesa, California 92626
      Telephone: (714) 540-1235
      Facsimile: (714) 755-8290
      Email: joseph.lee@lw.com
      ryan.banks@lw.com

      Russell Mangas (Admitted *Pro Hac
      Vice*)
      330 North Wabash Avenue, Suite 2800
      Chicago, Illinois 60611
      Telephone: (312) 876-7700
      Facsimile: (312) 993-9767
      Email: russell.mangas@lw.com

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

22

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

Julianne C. Osborne (SBN 342870)
Alexa L. Solimano (SBN 335740)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: julianne.osborne@lw.com
alexa.solimano@lw.com

Kelley M. Storey (Admitted *Pro Hac
Vice*)
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: kelley.storey@lw.com

Cassandra M. Baloga (Admitted *Pro
Hac Vice)*
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: cassandra.baloga@lw.com

*Attorneys for Defendant and Counter-
claimant, Skyryse, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

SKYRYSE'S MOT. TO DISMISS
MOOG'S AMENDED COMPLAINT
CASE NO. 2:22-cv-09094-GW-MAR

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2   The undersigned, counsel of record for Defendant-Counterclaimant

3   Skyryse, Inc., certifies that this brief contains **6,994** words, which:

4   <u>X</u> complies with the word limit of L.R. 11-6.1.

5   __ complies with the word limit set by court order.

6

7   Dated: August 11, 2023

8                                          LATHAM & WATKINS LLP

9

10                                         By /s/ Gabriel S. Gross
                                           ————————————————————————
11                                         Gabriel S. Gross
                                           *Attorney for Defendant and Counterclaimant*
12                                         *Skyryse, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24                                         SKYRYSE'S MOT. TO DISMISS
                                           MOOG'S AMENDED COMPLAINT
                                           CASE NO. 2:22-cv-09094-GW-MAR