| | |
|---|---|
| 1 | Rena Andoh (admitted *pro hac vice*) |
| 2 | randoh@sheppardmullin.com.com<br>**SHEPPARD, MULLIN, RICHTER &** |
| 3 | **HAMPTON LLP**<br>30 Rockefeller Plaza |
| 4 | New York, NY 10112<br>Telephone: (212) 653-8700 |
| 5 | Facsimile: (212) 653-8701 |
| 6 | Lai L. Yip (SBN 258029)<br>lyip@sheppardmullin.com |
| 7 | Four Embarcadero Center, 17th Floor<br>San Francisco, CA 94111 |
| 8 | Telephone: (415) 434-9100<br>Facsimile: (415) 434-3947 |
| 9 | Travis J. Anderson (SBN 265540) |
| 10 | tanderson@sheppardmullin.com<br>12275 El Camino Real, Suite 100 |
| 11 | San Diego, CA 92130<br>Telephone: (858) 720-8900 |
| 12 | Facsimile: (858) 509-3691 |
| 13 | Kazim A. Naqvi (SBN 300438)<br>knaqvi@sheppardmullin.com |
| 14 | 1901 Avenue of the Stars, Suite 1600<br>Los Angeles, CA 90067 |
| 15 | Telephone: (310) 228-3700 |
| 16 | Facsimile: (310) 228-3701 |
| 17 | Attorneys for Plaintiff and<br>Counterdefendant Moog Inc. |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOOG INC., | Case No. 2:22-cv-09094-GW-MAR |
| Plaintiff, | **PLAINTIFF AND COUNTERDEFENDANT MOOG INC.'S OPPOSITION TO DEFENDANT AND COUNTERCLAIMANT SKYRYSE, INC.'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A SUPPLEMENTAL STATEMENT IN SUPPORT OF SKYRYSE'S PORTION OF JOINT REPORT (DKT. 601)** |
| v. | |
| SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS.1-50, | |
| Defendants. | |

-1-

1
2    *[Filed concurrently with Declaration of Michael K. Heins]*
3
4    Judge:   Hon. George H. Wu
     Ctrm.:   9D
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

Skyryse burdens this Court (and Moog) with another *ex parte* application (the "Application"), where there is no emergency justifying *ex parte* briefing and where Skyryse has no credible basis for the content in its supplemental brief even if such an emergency existed.

As an initial matter, Skyryse's Application and supplemental brief relates to a troublesome issue entirely of Skyryse's own making. As explained in Moog's section of the Joint Report (Dkt. 601), despite this Court's explicit order to produce a "complete forensic imag[e]" of Reid Raithel's Skyryse-issued laptop, Skyryse did no such thing. (Dkt. 601 at 2, 4-7.) Instead, Skyryse quietly produced an incomplete 14GB collection of files from Mr. Raithel's laptop, admitting during subsequent meet and confer that this collection was the only imaging of Mr. Raithel's computer that had been done. Skyryse gave no advance notice to the Court that it did not actually possess the complete image of Mr. Raithel's laptop. Nor did Skyryse give advance notice to Moog that it was not going to produce the complete image of Mr. Raithel's laptop, i.e., what it was compelled to produce. Skyryse is now trying to justify its failures by blaming Moog's alleged meet and confer deficiencies. Meanwhile, ironically, Skyryse itself refused to meet and confer further with respect to Mr. Raithel's laptop, even when Moog repeatedly offered the opportunity.

Skyryse claims a need to file a supplemental brief to address two purportedly "incorrect" statements in Moog's portion of the Joint Report: (1) that Mr. Raithel's laptop is missing email files; and (2) that Moog had raised the issue with Skyryse in advance. With respect to the first issue, Skyryse has no basis for claiming that Mr. Raithel's email files are not actually missing. During meet and confer correspondence with Skyryse (left out of Skyryse's exhibit), Moog specifically asked Skyryse's counsel how it could possibly know whether the admittedly ***missing*** Raithel laptop collection did not contain emails if Skyryse

-3-

*never collected* all of the files on the Raithel laptop:

> To be clear, are you representing that when Skyryse finally complies with the Court's order and produces a complete image of Mr. Raithel's laptop, there will be no more emails produced to Moog, including no .pst file? If you are representing this, please advise why Skyryse has this information but has not produced a complete image of Mr. Raithel's laptop to Moog. If Skyryse is not willing to make any such representation, please explain how Skyryse purportedly knows there are absolutely no missing emails despite not being in possession of a complete copy of Mr. Raithel's laptop as of April 2022.

(Heins Decl., Ex. 1 at p.8.) Skyryse did not respond to Moog's inquiry, and instead filed its application for *ex parte* relief after over 25 hours of silence following receipt of Moog's correspondence. (*Id*. at p. 8; Heins Decl., ¶5.)[1] Nonetheless, Skyryse affirmatively asserts to the Court that it has "has not withheld email files from Mr. Raithel's laptop." (Dkt. 606-1, Ex. A, p.7.) Moog believes it is highly unlikely that Skyryse's counsel has support for such an affirmative representation because: (1) Skyryse clearly did not preserve Mr. Raithel's entire laptop at the beginning of the case; (2) Skyryse did not produce an entire image of Mr. Raithel's laptop to Moog as ordered by this Court; and (3) Skyryse has refused to make that representation to Moog before and after the filing of this Application. Alternatively, Skyryse's statement that it "has not withheld email files from Mr. Raithel's laptop" is a carefully threaded way of saying that it has not *affirmatively* withheld email files—but it has not affirmatively collected all email files either (and potentially allowed them to be spoliated).

Skyryse's claim regarding the parties' meet and confer content is also incorrect (in addition to hypocritical given the lack of a good faith meet and confer with respect to this Application). When Moog discovered that Mr. Raithel's laptop was clearly missing relevant files, Moog sent correspondence regarding its

---

[1] Skyryse responded to Moog's email a day after filing its Application, but still did not answer whether it was representing that a complete image of Mr. Raithel's laptop would not include additional emails, including a .pst file. (Heins Decl., Ex. 1, p.7.)

findings. (Heins Decl., Ex. 2 at pp.15-16.) The parties met and conferred regarding the wide-ranging deficiencies of the Raithel laptop collection during the next week. Skyryse has always been well aware of what it produced. It did not, and still has not, produced a .pst of Mr. Raithel's email, nor has it provided Mr. Raithel's email in any other format. It certainly was not included in the highly deficient L01 that is the subject of the Joint Report. Whether or not emails were specifically discussed as one of the many missing file sets during the oral meet and confer conference should be irrelevant when Skyryse knows it has not produced otherwise them.

The parties exchanged their respective sections on August 11, 2023 at approximately 5:00pm Pacific. (Heins Decl., ¶8.) Skyryse did not inform Moog that it was disputing the accuracy of Moog's statement until over four days later, on August 15, 2023, after the close of business hours, at 6:18pm Pacific. (Heins Decl., Ex. 1 at pp. 11-12.) Skyryse then demanded a response authorizing Skyryse to file a supplemental brief **by 9:00am Pacific the next morning**. (*Id.* at p.12.) Despite this unreasonable timeline, Moog explained in two emails over the next business day why it believed Moog's statements are correct. (*Id.* at pp. 7-8, 9-10) Moog also offered a meet and confer time when the attorney who conducted the prior meet and confers was back from vacation, and, as quoted above, asked Skyryse how it possibly had knowledge to claim emails were not withheld at this time. (*Id.*) Rather than substantively responding to Moog's latest correspondence or waiting for a telephonic meet and confer, Skyryse filed *ex parte* (and never gave notice to Moog it intended to immediately file *ex parte* if an agreement could not be reached). (*See generally id.*) *Ex parte* applications should not be used in place of a good faith meet and confer.

## II. THE *EX PARTE* APPLICATION SHOULD BE DENIED

Skyryse's *ex parte* application should be denied for procedural and substantive reasons.

### A. There Are No Exigent Circumstances

"*Ex parte* proceedings are exclusively reserved for emergency circumstances." *Honma Golf U.S., Ltd. v. Saddle Creek Corp.*, No. 21-cv-1131-CAB-WVG, 2021 WL 3171894, at *1 (S.D. Cal. July 26, 2021). "[A] party making an *ex-parte* application must show some justification for seeking emergency relief." *Blair v. California*, No. CV 09-4460-GW(AGRX), 2009 WL 10674870, at *1 (C.D. Cal. June 25, 2009). Indeed, *ex parte* applications "impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason. *In re Intermagnetics America, Inc.*, 101 B.R. at 193; *see also Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 Supp. 488, 491-92 (C.D. Cal. 1995) ("When an *ex parte* motion is filed . . . the judge drops everything," expecting that the "tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken.").

Skyryse's Application is completely unnecessary. There is no emergency requiring that "the judge drop[] everything." The parties were in the middle of meeting and conferring regarding this issue and Skyryse refused to answer Moog's questions regarding the representations Skyryse was planning to make to the Court in any supplemental statement. Skyryse had no immediate deadline necessitating cutting off the parties' meet and confer; there is no hearing scheduled to address the parties' submitted Joint Report at all, and the parties' next hearing in this case (on other issues) is August 24, 2023.

To the extent any emergency existed necessitating that Skyryse file its supplemental brief yesterday, that emergency was manufactured by Skyryse. Skyryse did not even raise its purported need for a supplemental brief until four days after the filing of the Joint Report, and then required that Moog prepare a response outside of business hours and provide it by the next morning.

Moreover, Skyryse's purported explanation for the missing email files does not change the relief sought by Moog. Even if Skyryse's explanation were to be believed (it should not), the image Skyryse provided would *still* be incomplete and *still* fail to comply with the Court's order. Thus, the relief sought by Moog is still the same, i.e., that Skyryse produce a complete image of the Raithel laptop as the Court previously ordered. This further underscores the lack of any "emergency" justifying an *ex parte* application.

### B. Skyryse's Supplemental Briefing Seeking To "Correct" Is Not Credible

Regardless of Skyryse's (lack of) need to file *ex parte*, the content Skyryse seeks to inject into this case, guised as an attempt to factually correct the record, is completely unsupported.

As explained in Moog's section of the Joint Report (Dkt. 601), Skyryse's collection process did not produce a complete image of Mr. Raithel's laptop. (Dkt. 601 at 4-7.) Skyryse does not dispute this but claims there was a technical error with the copying. Over the last six days, Moog discovered even more evidence of the obvious incompleteness of Skyryse's collection, which Moog communicated to Skyryse prior to the filing of Skyryse's Application. Moog's experts have determined that:

- The collection and copying of Mr. Raithel's "laptop" was completed in a mere 10 minutes.
- The collection produced to Moog consisted of a mere 14 GB of data (compared to 131 GB of data collected from Ms. Bird's laptop image).
- The forensic examiner taking the image had many other tools available to correct any purported copying issues, including "Recon" or using a method known as "Target Disk Mode," but none of them were apparently used.
- The most relevant Mac Unified logs are missing (which also only store data for 30 days, so they are likely permanently lost if they were not collected in

    April 2022). These logs track system activity including plugging in USB drives which are especially relevant to this case.

- None of the virtual computer files, including a virtual hard drive, were collected. These files also can track user activity including the connection of external storage devices.

- The "Library" folder, which contains the MacMail folder Skyryse references in its supplemental statement (Dkt. 606-1, Ex. A, p. 7), appears fundamentally incomplete. The Library folder should contain items like user data, email, user settings, program settings, iPhone backups, and evidence of recent file activity. For means of comparison, Lori Bird's Library folder contained 83 subfolders (direct subfolders of Library). Raithel's Library folder only contained 11 subfolders (direct subfolders of Library), which Moog understands to be abnormal.

- Skyryse did not provide a .pst file of Mr. Raithel's emails to the extent those emails were stored on a server and not his local computer.

Given this evidence and the evidence already provided in the Joint Report, Moog's expert concluded that Mr. Raithel's laptop likely should have contained more than "32 Apple Mail draft emails," and Moog stands by its position that the evidence suggests Skyryse has either affirmatively withheld or failed to collect Mr. Raithel's emails.

As of today, Skyryse has no reasonable way to represent that the limited collection provided to Moog (that contained a mere 32 draft emails) in fact includes all of Mr. Raithel's emails because Skyryse clearly has not done the collection necessary to support that conclusion. During the meet and confer for this supplemental briefing, Skyryse outright refused to represent it had this knowledge or that any later production of Mr. Raithel's files would not contain emails. The Court should reject Skyryse's attempt to "correct" the record now based on Skyryse's insufficient and incomplete investigation, especially when that

investigation is occurring weeks after Mr. Raithel's entire computer was compelled to be produced. Skyryse has not earned the benefit of the doubt here.

### C. Skyryse's Footnote Number 1 Is Inappropriate and Incorrect

Unfortunately Moog feels compelled to address Skyryse's incorrect and gratuitous footnote blaming Moog for the parties' agreed-upon joint report process. (Dkt. 606-1, Ex. A, p.7, n1.) Throughout this case, Skyryse has repeatedly failed to send joint report sections when agreed, leading to increased burdens on Moog's counsel and staff. Moog will not burden the Court with papering this entire history, but it is remarkable that Skyryse would make this claim here, when even with respect to the very Joint Report at issue, Skyryse again failed to exchange its section at the agreed-upon time. (Heins Decl., Ex. 3 at p.18.) Adding additional exchange deadlines, which Skyryse will not adhere to, only burdens Moog, its counsel, and its staff even more.

With respect to the Joint Report at issue, the parties agreed to provide their respective sections at 3:00pm Pacific on Friday, August 11, 2023. (*Id*.) Moog's counsel even informed Skyryse such a deadline was needed based on familial obligations. (*Id*.) On the day before the filing deadline, Moog's counsel sought and received confirmation from Skyryse's counsel that the parties would exchange their portions of the Joint Report at 3PM Pacific on August 11. (*Id*.) Yet, rather than meet this deadline, Skyryse advised Moog a mere 24 minutes before the deadline that it needed until 6:00pm Pacific, Friday evening, to serve its section. (*Id*.) Moog scrambled staff to address Skyryse's last minute demand, and Skyryse eventually agreed to provide its sections by 5:00pm. (*See id*.) Skyryse's actions (which are not unique to this Joint Report) repeatedly lead to missed appointments and obligations, and are a burden on Moog counsel's non-attorney staff who have to suddenly stay late on a Friday night with no warning. Thus, Skyryse's footnote, blaming Moog for the joint filing procedures in this case (which Skyryse agrees to and then flouts), is particularly not well-taken.

## III. **CONCLUSION**

Moog respectfully requests that Skyryse's Application be denied in full. In the alternative, to the extent that the Court accepts Skyryse's supplemental brief, Moog respectfully requests the opportunity to submit a supplemental brief in response.

Dated: August 18, 2023

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By  */s/ Rena Andoh*
     Rena Andoh

Attorney for Plaintiff and Counterdefendant
MOOG INC.

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Moog Inc., certifies that this brief contains 2,342 words, which:

X   complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by Court order dated _____.

Dated:  August 18, 2023

                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                By      */s/ Rena Andoh*
                                   RENA ANDOH

                        Attorneys for Plaintiff and Counterdefendant
                                MOOG INC.