1

**LATHAM & WATKINS LLP**
   Douglas E. Lumish (SBN 183863)
   *doug.lumish@lw.com*
   Gabriel S. Gross (SBN 254672)
   *gabe.gross@lw.com*
   Arman Zahoory (SBN 306421)
   *arman.zahoory@lw.com*
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

*Attorneys for Defendant and Counterclaimant*
*Skyryse, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC., | CASE NO. 2:22-cv-09094-GW-MAR |
|      Plaintiff, | |
|      v | **DEFENDANT SKYRYSE, INC.'S FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS** |
| SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50, | |
|      Defendants. | **DEMAND FOR JURY TRIAL** |
| SKYRYSE, INC., | |
|      Counterclaimant, | REDACTED VERSION |
|      v | |
| MOOG INC., | |
|      Counterclaim-Defendant. | |

## **INTRODUCTION**

Skyryse is a young, innovative company in El Segundo, California that has been revolutionizing the general aviation industry since its founding in 2016. With approximately 90 employees today, Skyryse has pioneered advanced, highly automated and autonomous flight technologies. Skyryse's innovations have the incredible potential to reduce general aviation fatalities and make flying easier, safer, and more affordable. Skyryse has never wanted or needed trade secrets from Moog, a seventy-year-old, 13,000-employee company that has been doing business the same way for decades. Quite the contrary, it was Moog that first approached Skyryse to try to learn about Skyryse's groundbreaking, highly automated flight systems and technologies, an area where Moog had failed to keep up and was quickly losing ground.

Desperate to stay relevant and competitive, Moog tried to get into this cutting-edge field by partnering with and promising to supply components to Skyryse. In the process, Moog gained access to vast amounts of Skyryse's valuable, confidential, and trade secret technologies and business information. Then, armed with Skyryse's confidential information and strategies, Moog used false pretenses to abandon Skyryse, put an end to their collaboration, and begin competing directly against it. Moog also knew it was losing the war for talent, as a number of its engineers had left Moog to pursue better opportunities with more exciting and modern companies like Skyryse. And Moog tried, through unsuccessful scare tactics that it knew had no legal basis, to stop its own at-will employees from daring to leave Moog and join Skyryse.

This is the backdrop against which Moog filed this lawsuit in March 2022, without any advance notice or effort to cooperate with Skyryse. Moog claimed to have learned that two of its engineers, Alin Pilkington and Misook Kim, while working at Moog and before they joined Skyryse, made copies of files they "easily accessed" at Moog. Moog didn't reach out to Skyryse to discuss these two engineers or try resolving any problems it saw with their hiring. Instead, Moog chose to wage an all-

1    out war through litigation in an effort to crush its smaller competitor. Moog accused
2    Mr. Pilkington and Ms. Kim of misappropriating alleged trade secrets and it sued
3    Skyryse too, advancing a fantastical conspiracy theory. The conspiracy Moog
4    concocted—without a factual basis—is that Skyryse secretly and nefariously directed
5    Mr. Pilkington to go and instruct Ms. Kim to use her employee credentials to access
6    Moog's computer systems, copy thousands of files indiscriminately, and deliver them
7    to Skyryse "for the advancement of Skyryse's business." Starting with this far-fetched
8    theory, Moog leveled a host of other baseless claims against Skyryse, all predicated
9    on the alleged misappropriation of some unspecified trade secrets.

10         Now more than a year into this lawsuit, Moog has utterly failed to explain (even
11   confidentially in the discovery process) what its purported trade secrets are. Skyryse
12   still does not know what trade secrets Moog believes it owns or which ones Skyryse
13   is accused of misappropriating, even though Moog has claimed to know in granular
14   detail the names, types, and locations of every file allegedly copied. Indeed, Moog has
15   gone to great lengths to delay identifying its own trade secrets and refused to help
16   Skyryse locate any such alleged trade secrets so that Skyryse can ensure they never
17   actually made it to the company or are rooted out if they did. At the same time, Moog
18   has inflicted massive discovery obligations and expense on Skyryse and the individual
19   defendants.  All of this speaks volumes about Moog's true motivation for this lawsuit.

20         Skyryse's goal was never litigation, but Moog's lawsuit forced Skyryse to take
21   a close look at Moog's behavior and to defend its rights vigorously. As will be shown
22   in this lawsuit, it was Moog, not Skyryse, that acted improperly and in violation of the
23   law and its contractual obligations. Under the ruse of a collaboration, Moog violated
24   Skyryse's trust and confidence, breached its confidentiality obligations to Skyryse,
25   misappropriated Skyryse's trade secrets, interfered with its business, and unlawfully
26   leveraged Skyryse's confidential information to compete directly against it. Through
27   its counterclaims Skyryse seeks to recover for this unlawful conduct to the full extent
28   under the law and obtain a court order putting a stop to Moog's illicit tactics for good.

## DEFENDANT SKYRYSE, INC.'S ANSWER TO
## PLAINTIFF MOOG INC.'S FIRST AMENDED COMPLAINT

Pursuant to Rules 7, 8, and 12 of the Federal Rules of Civil Procedure, Defendant Skyryse, Inc. ("Skyryse" or "Defendant"), by and through its undersigned counsel, responds to the allegations in Moog Inc.'s ("Moog" or "Plaintiff") FIRST amended complaint (the "Amended Complaint"). Skyryse denies all factual allegations set forth in the Amended Complaint unless expressly admitted. Any admission herein is limited to the express language of the response and shall not be deemed an implied admission of additional facts. Skyryse need not admit or deny legal conclusions or arguments. Skyryse does not repeat the headings set forth in the Amended Complaint. To the extent any headings require a response, including to the extent any headings contain any factual allegations, they are denied. Skyryse further answers the Amended Complaint as follows:

1. Skyryse denies the allegations in Paragraph 1.

2. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 2, and therefore, unless otherwise expressly admitted herein, denies them.

3. Skyryse admits only that Skyryse is a venture-backed tech aviation start-up company founded by CEO Mark Groden in 2016, that Moog and Skyryse began a business relationship in 2018, and that Skyryse and Moog entered into multiple NDAs to share information and denies the remaining allegations in Paragraph 3.

4. Skyryse admits only that on or around October 27, 2021, Skyryse issued a press release, which speaks for itself, and that it lawfully hired certain former Moog employees-at-will. Skyryse denies that it "engaged in a targeted campaign to poach" any former Moog employees. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and therefore, unless otherwise expressly admitted herein, denies them.

5. Skyryse lacks information or knowledge sufficient to form a belief as to

1  the truth of the allegations in Paragraph 5, and therefore, unless otherwise expressly
2  admitted herein, denies them. Further answering, Skyryse responds that after nearly
3  eighteen months of this litigation Moog still has not sufficiently identified its trade
4  secrets pursuant to the Court's orders requiring it to do so, and Moog's own experts
5  refused to confirm that the types of information identified by Moog in its complaint
6  constitute Moog's non-public information.

7          6.     Skyryse admits only that Moog purports to bring an action for breach of
8  contract, breach of the implied covenant of good faith and fair dealing,
9  misappropriation of trade secrets pursuant to the federal Defend Trade Secrets Act,
10  conversion, breach of fiduciary duty, aiding and abetting breach of fiduciary duty,
11  conspiracy, unjust enrichment, imposition of constructive trust, and violation of
12  California's unfair competition law and denies the remaining allegations in Paragraph
13  6. Skyryse denies that it has engaged in conduct establishing any of these causes of
14  action. Except as expressly admitted herein, denied.

15         7.     Skyryse denies the allegations in Paragraph 7. Further answering,
16  Skyryse asserts that Counts II, V, VI, IX, X, XI, and XII asserted against Skyryse fail
17  to state a claim upon which relief can be granted, including because they are
18  preempted by the California Uniform Trade Secrets Act, Cal. Civil Code §§ 3426 *et*
19  *seq*., which provides the exclusive remedy for trade secret misappropriation and
20  preempts other state law claims, which as here, are based on the same underlying facts.

21         8.     Skyryse denies the allegations in Paragraph 8.

22         9.     Skyryse denies the allegations in Paragraph 9.

23         10.    Skyryse admits only that Moog purports to seek injunctive relief and to
24  recover damages in this Action, and denies the remaining allegations in Paragraph 10.

25         11.    Skyryse lacks information or knowledge sufficient to form a belief as to
26  the truth of the allegations in Paragraph 11, and therefore, unless otherwise expressly
27  admitted herein, denies them.

28         12.    Skyryse admits only that it is a privately held Delaware corporation that

1    was founded by Mark Groden in 2016 that has its principal place of business at
2    777 Aviation Boulevard, El Segundo, California, that one of Skyryse's goals is to
3    build advanced, highly automated flying systems, including for already-developed
4    aircraft, that Skyryse has received funding from various sources, and that certain
5    former Moog personnel chose to leave Moog and work for Skyryse instead. Skyryse
6    otherwise lacks information or knowledge sufficient to form a belief as to the truth of
7    the remaining allegations in Paragraph 12 regarding Moog's knowledge, and therefore
8    denies those allegations.

9        13.    Skyryse lacks information or knowledge sufficient to form a belief as to
10   the truth of the allegations in Paragraph 13, and therefore, unless otherwise expressly
11   admitted herein, denies them.

12       14.    Skyryse lacks information or knowledge sufficient to form a belief as to
13   the truth of the allegations in Paragraph 14, and therefore, unless otherwise expressly
14   admitted herein, denies them.

15       15.    Skyryse lacks information or knowledge sufficient to form a belief as to
16   the truth of the allegations in Paragraph 15, and therefore, unless otherwise expressly
17   admitted herein, denies them.

18       16.    Skyryse denies the allegations in Paragraph 16.

19       17.    Paragraph 17 states legal conclusions to which no response is required.
20   To the extent a response is required, Skyryse admits only that federal courts have
21   jurisdiction over certain trade secret claims under 28 U.S.C. § 1331, and also that there
22   is diversity of citizenship between Moog and Skyryse. Skyryse otherwise denies the
23   remaining allegations contained in Paragraph 17.

24       18.    Paragraph 18 states legal conclusions to which no response is required.
25   To the extent a response is required, Skyryse admits only that 28 U.S.C. § 1367
26   provides federal courts supplemental jurisdiction to hear state law and common law
27   claims in certain circumstances. Skyryse otherwise denies the allegations contained in
28   Paragraph 18.

19.     Paragraph 19 states legal conclusions to which no response is required. To the extent a response is required, Skyryse denies the allegations contained in Paragraph 19.

20.     Paragraph 20 states legal conclusions to which no response is required. To the extent a response is required, for the purposes of this action only Skyryse does not contest venue or personal jurisdiction in this judicial district.

21.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore, unless otherwise expressly admitted herein, denies them.

22.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore, unless otherwise expressly admitted herein, denies them.

23.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore, unless otherwise expressly admitted herein, denies them.

24.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore, unless otherwise expressly admitted herein, denies them.

25.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore, unless otherwise expressly admitted herein, denies them.

26.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore, unless otherwise expressly admitted herein, denies them.

27.     Skyryse admits only that Paragraph 27 purports to be a cursory and incomplete description of "[m]odern flight control systems." Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27, and therefore, unless otherwise expressly admitted herein,

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

denies them.

28.     Skyryse admits only that Paragraph 28 purports to be a cursory and incomplete description of "[d]ifferent types of technologies relating to flight actuation." Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28, and therefore, unless otherwise expressly admitted herein, denies them.

29.     Skyryse denies the allegations in Paragraph 29.

30.     Skyryse denies the allegations in Paragraph 30, including any suggestion that Moog has sufficiently identified in its Amended Complaint or otherwise any trade secret or proprietary information allegedly misappropriated by Skyryse.

31.     Skyryse denies the allegations in Paragraph 31, including the heading.

32.     Skyryse denies the allegations in Paragraph 32.

33.     Skyryse denies the allegations in Paragraph 33.

34.     Skyryse denies the allegations in Paragraph 34, including the heading.

35.     Skyryse denies the allegations in Paragraph 35.

36.     Skyryse denies the allegations in Paragraph 36.

37.     Skyryse denies the allegations in Paragraph 37.

38.     Skyryse denies the allegations in Paragraph 38, including the heading.

39.     Skyryse denies the allegations in Paragraph 39, including the heading.

40.     Skyryse denies the allegations in Paragraph 40.

41.     Skyryse denies the allegations in Paragraph 41.

42.     Skyryse denies the allegations in Paragraph 42, including the heading.

43.     Skyryse denies the allegations in Paragraph 43, including the heading.

44.     Skyryse denies the allegations in Paragraph 44.

45.     Skyryse denies the allegations in Paragraph 45, including the heading.

46.     Skyryse denies the allegations in Paragraph 46, including Moog's allegation that there are any "Stolen Trade Secrets."

47.     Skyryse denies the allegations of Paragraph 47, including the heading.

48.     Skyryse denies the allegations of Paragraph 48.

49.     Skyryse denies the allegations of Paragraph 49.

50.     Skyryse denies the allegations of Paragraph 50.

51.     Skyryse admits only that flight control software must be tested and certified before it is approved by the Federal Aviation Administration ("FAA") or similar governing bodies around the world. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 51, and therefore, unless otherwise expressly admitted herein, denies them.

52.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 52, and therefore, unless otherwise expressly admitted herein, denies them.

53.     Skyryse denies the allegations in Paragraph 53.

54.     Skyryse denies the allegations of Paragraph 54, including the heading.

55.     Skyryse denies the allegations of Paragraph 55.

56.     Skyryse denies the allegations of Paragraph 56.

57.     Skyryse denies the allegations of Paragraph 57, including the heading.

58.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 58 and therefore denies them.

59.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 59 and therefore denies them.

60.     Skyryse denies there are any "Stolen Trade Secrets" or "Stolen Non-Trade Secret Data." Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 60, and therefore denies them.

61.     Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 61, and therefore, unless otherwise expressly admitted herein, denies them.

62.     Skyryse lacks information or knowledge sufficient to form a belief as to

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED
ANSWER, DEFENSES, AND COUNTERCLAIMS

1  the truth of the allegations in Paragraph 62, and therefore, unless otherwise expressly

2  admitted herein, denies them.

3       63.   Skyryse lacks information or knowledge sufficient to form a belief as to

4  the truth of the allegations in Paragraph 63, and therefore, unless otherwise expressly

5  admitted herein, denies them.

6       64.   Skyryse lacks information or knowledge sufficient to form a belief as to

7  the truth of the allegations in Paragraph 64, and therefore, unless otherwise expressly

8  admitted herein, denies them.

9       65.   Skyryse admits only that Exhibits A and B are documents attached to the

10  Amended Complaint, which speak for themselves. Skyryse otherwise lacks

11  information or knowledge sufficient to form a belief as to the truth of the allegations

12  in Paragraph 65 and therefore, unless otherwise expressly admitted herein, denies

13  them.

14       66.   Skyryse denies that Moog has or has implemented a "robust" policy

15  purporting to govern its intellectual property, denies that Moog has sufficiently

16  defined its allegedly proprietary or trade secret information, denies that Moog has

17  "strict protocols" regarding the same, and lacks information or knowledge sufficient

18  to form a belief as to the truth of the remaining allegations in Paragraph 66, and

19  therefore, unless otherwise expressly admitted herein, denies them.

20       67.   Skyryse lacks information or knowledge sufficient to form a belief as to

21  the truth of the allegations in Paragraph 67, and therefore, unless otherwise expressly

22  admitted herein, denies them.

23       68.   Skyryse lacks information or knowledge sufficient to form a belief as to

24  the truth of the allegations in Paragraph 68 and therefore, unless otherwise expressly

25  admitted herein, denies them.

26       69.   Skyryse denies that Moog has sufficiently defined its allegedly

27  proprietary or trade secret information, denies that Moog has "strict protocols"

28  regarding the same, and lacks information or knowledge sufficient to form a belief as

to the truth of the remaining allegations in Paragraph 69, and therefore, unless otherwise expressly admitted herein, denies them.

70.   Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 70, and therefore, unless otherwise expressly admitted herein, denies them.

71.   Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 71, and therefore, unless otherwise expressly admitted herein, denies them.

72.   Skyryse denies that Moog has "strict requirements" regarding its purportedly confidential or trade secret materials and lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 72, and therefore, unless otherwise expressly admitted herein, denies them.

73.   Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 73, and therefore, unless otherwise expressly admitted herein, denies them.

74.   Skyryse denies there are any "Stolen Trade Secrets," and lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 74, and therefore, unless otherwise expressly admitted herein, denies them.

75.   Skyryse admits only that Gonzalo Rey and Sathyanarayana Achar are former Moog employees and that Mr. Achar currently works for Skyryse. Skyryse denies that Dr. Rey is currently employed by Skyryse. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 75, including the heading, and therefore, unless otherwise expressly admitted herein, denies them.

76.   Skyryse admits only that Michael Hunter and Todd Schmidt discussed potential employment opportunities with Skyryse. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS

1  allegations in Paragraph 76, and therefore, unless otherwise expressly admitted herein,
2  denies them.

3       77.    Skyryse lacks information or knowledge sufficient to form a belief as to
4  the truth of the allegations in Paragraph 77, and therefore, unless otherwise expressly
5  admitted herein, denies them.

6       78.    Skyryse lacks information or knowledge sufficient to form a belief as to
7  the truth of the allegations in Paragraph 78, and therefore, unless otherwise expressly
8  admitted herein, denies them.

9       79.    Skyryse admits only that Eric Chung, Lawrence Chow, and Mario Brenes
10 are former Moog employees and that they subsequently worked for Skyryse. Skyryse
11 otherwise lacks information or knowledge sufficient to form a belief as to the truth of
12 the remaining allegations in Paragraph 79, and therefore, unless otherwise expressly
13 admitted herein, denies them.

14      80.    Skyryse lacks information or knowledge sufficient to form a belief as to
15 the truth of the allegations in Paragraph 80, and therefore, unless otherwise expressly
16 admitted herein, denies them.

17      81.    Skyryse lacks information or knowledge sufficient to form a belief as to
18 the truth of the allegations in Paragraph 81, including the heading, and therefore,
19 unless otherwise expressly admitted herein, denies them.

20      82.    Skyryse lacks information or knowledge sufficient to form a belief as to
21 the truth of the allegations in Paragraph 82, and therefore, unless otherwise expressly
22 admitted herein, denies them.

23      83.    Skyryse denies the allegations in the heading and lacks information or
24 knowledge sufficient to form a belief as to the truth of the remaining allegations in
25 Paragraph 83 and therefore, unless otherwise expressly admitted herein, denies them.

26      84.    Skyryse admits only that in 2018 Moog and Skyryse began exploring a
27 potential business opportunity with each other, and that Skyryse was formed by Mark
28 Groden in 2016. Skyryse otherwise, unless otherwise expressly admitted herein,

1    denies the allegations of Paragraph 84.

2         85.    Skyryse admits only that Dr. Groden was twenty-six years old when

3    Skyryse was founded. Skyryse lacks information or knowledge sufficient to form a

4    belief as to the truth of the remaining allegations in Paragraph 85 pertaining to how

5    others have described Dr. Groden, and therefore, unless otherwise expressly admitted

6    herein, denies them.

7         86.    Skyryse admits only that Moog's Jeff Ehret corresponded with Skyryse

8    CEO Mark Groden, which correspondence speaks for itself, and that Moog and

9    Skyryse engaged in a series of discussions and meetings. Skyryse otherwise, unless

10   otherwise expressly admitted herein, denies the remaining allegations of Paragraph

11   86.

12        87.    Skyryse admits that it shared confidential and trade secret business plan

13   information with Moog in 2018. Skyryse admits that "[b]ased on Skyryse's

14   explanations about its business plan, Moog believed there was real potential for

15   opportunity." Skyryse admits that the parties discussed aspects of a flight control

16   system to install in aircrafts, including helicopters. Unless otherwise expressly

17   admitted herein, Skyryse denies the remaining allegations in Paragraph 87.

18        88.    Skyryse admits only that Skyryse and Moog agreed that Skyryse would

19   own the Supplemental Type Certification ("STC") for the automated flight system

20   being built for Skyryse's flight system, and, unless otherwise expressly admitted

21   herein, denies the remaining allegations in Paragraph 88.

22        89.    Skyryse admits only that software, hardware, or other technology that

23   goes into a helicopter may require a STC issued by the FAA, and otherwise, unless

24   expressly admitted herein, denies the remaining allegations in Paragraph 89.

25        90.    Skyryse admits only that Skyryse's goal is to offer highly automated

26   aircraft for use by the general public through its revolutionary automated flight system

27   and also that Skyryse has intended in certain cases to have a pilot on board equipped

28   with a simplified user interface who can override the automated flight system and take

1    control if needed. Unless otherwise expressly admitted herein, Skyryse denies the

2    remaining allegations in Paragraph 90.

3        91.    Skyryse admits only that Skyryse and Moog entered into a Proprietary

4    Information and Nondisclosure Agreement, attached as Exhibit C to the Amended

5    Complaint, which document speaks for itself. Unless otherwise expressly admitted

6    herein, Skyryse denies the remaining allegations in Paragraph 91.

7        92.    Skyryse admits only that it participated in various funding rounds, which

8    raised $25 million in seed and Series A funding, which it announced on or around

9    August 28, 2018. Skyryse lacks information or knowledge sufficient to form a belief

10   as to the truth of the allegations in Paragraph 92 pertaining to statements in "press

11   articles," and therefore, unless otherwise expressly admitted herein, denies them.

12   Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations

13   in Paragraph 92.

14       93.    Skyryse admits only that Skyryse shared a presentation with various

15   Moog personnel in or around March 2019, attached as Exhibit D, which speaks for

16   itself.  Unless otherwise expressly admitted herein, Skyryse denies the remaining

17   allegations in Paragraph 93

18       94.    Skyryse admits only that Skyryse and Moog entered into a Proprietary

19   Information and Nondisclosure Agreement, attached as Exhibit E to the Complaint,

20   which document speaks for itself. Unless otherwise expressly admitted herein,

21   Skyryse denies the remaining allegations in Paragraph 94.

22       95.    Skyryse admits only that Skyryse and Moog entered into the NDAs,

23   which speak for themselves. Unless otherwise expressly admitted herein, Skyryse

24   denies the remaining allegations in Paragraph 95.

25       96.    Skyryse admits that Moog and Skyryse agreed that their business

26   relationship would be organized into phases, and that Moog and Skyryse agreed upon

27   a Statement of Work for Phase 1

28   ( "SOW 1"), certain pages of which are attached as Exhibit F to the

Complaint, which document speaks for itself. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 96.

97.    Skyryse admits only that SOW1 contains a Section 2, which speaks for itself. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 97.

98.    Skyryse admits only that SOW 1 contains a Section 3, which speaks for itself, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 98.

99.    Skyryse admits only that SOW 1 contains a Section 4, which speaks for itself, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 99.

100.    Skyryse admits only that SOW 1 contains a Section 4.1 and a Section 4.1.1, which sections speak for themselves. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 100.

101.    Skyryse admits only that SOW 1 contains a Section 4.1.2, which speaks for itself, and otherwise, unless otherwise expressly admitted herein, denies the remaining allegations in Paragraph 101.

102.    Skyryse admits only that Moog and Skyryse agreed upon SOW 1, which speaks for itself, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 102.

103.    Skyryse admits only that SOW 1 contains a Section 5, which speaks for itself, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 103.

104.    Skyryse admits only that SOW 1 contains a Section 7.2, which speaks for itself, and otherwise, unless expressly admitted herein, denies the remiaining allegations in Paragraph 104.

105.    Skyryse admits only that SOW 1 contains a Section 9, which speaks for itself, and otherwise, unless expressly admitted herein, denies the remaining

1    allegations in Paragraph 105.

2         106.   Skyryse admits only that Moog and Skyryse entered into a "Terms and

3    Conditions of Sale" effective June 3, 2019, attached as Exhibit G to the Complaint,

4    which document speaks for itself. Unless otherwise expressly admitted herein,

5    Skyryse denies the remaining allegations in Paragraph 106.

6         107.   Skyryse admits only that the T&C contains a Section 23, which speaks

7    for itself, and otherwise, unless expressly admitted herein, denies the remaining

8    allegations in Paragraph 107.

9         108.   Skyryse admits only that the T&C contains a Section 32, which speaks

10   for itself, and otherwise, unless expressly admitted herein, denies the remaining

11   allegations in Paragraph 108.

12        109.   Skyryse denies the allegations of Paragraph 109.

13        110.   Skyryse admits only that Skyryse's Gonzalo Rey and Moog's CEO John

14   Scannell corresponded by email on or around September 14 and 20, 2019, which

15   correspondence speaks for itself, and denies the remaining allegations in Paragraph

16   110.

17        111.   Skyryse denies the allegations of Paragraph 111.

18        112.   Skyryse admits only that it issued a press release on or around December

19   17, 2019, which speaks for itself. Skyryse otherwise denies the remaining allegations

20   of Paragraph 112.

21        113.   Skyryse admits only that Skyryse purchased an aircraft in or around

22   October 2017, retrofitted it with Skyryse's technology, and named the aircraft "Luna."

23   Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations

24   in Paragraph 113.

25        114.   Skyryse denies the allegations of Paragraph 114.

26        115.   Skyryse admits only that, on or around February 12, 2020, certain Moog

27   and Skyryse personnel held an in-person meeting at Moog and denies the remaining

28   allegations of Paragraph 115.

116.   Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 116, and therefore, unless otherwise expressly admitted herein, denies them.

117.   Skyryse admits only that, on or around February 28, 2020, Moog sent Skyryse a draft of SOW 2, which speaks for itself and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 117.

118.   Skyryse admits only that, on or around February 28, 2020, Mr. Rey corresponded with Moog via email regarding a draft SOW 2, which correspondence speaks for itself. Skyryse also admits that, on or around March 6, 2020, Moog sent Skyryse a revised draft SOW 2, which document speaks for itself. Skyryse otherwise denies the remaining allegations in Paragraph 118.

119.   Skyryse admits only that, on or around March 6, 2020, Moog's Alan Kresse corresponded with Skyryse, which correspondence speaks for itself and otherwise denies the remaining allegations in Paragraph 119.

120.   Skyryse admits only Skyryse's Gonzalo Rey and Moog's Dave Norman corresponded via email on or around March 6, 2020 and that the written correspondence referred to in Paragraph 120 speaks for itself, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 120.

121.   Skyryse admits only that Skyryse's Gonzalo Rey scheduled a meeting with Moog's David Norman on or around March 10, 2020. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 121.

122.   Skyryse admits only that, on or around March 16, 2020, Skyryse corresponded with Moog, which correspondence speaks for itself, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 122.

123.   Skyryse admits only that, on or around March 18, 2020, Moog's Gonzalo Rey corresponded with Moog's Dave Norman and Paul Stoelting by email, which correspondence speaks for itself and otherwise, unless expressly admitted herein,

1    denies the remaining allegations in Paragraph 123.

2        124.    Skyryse admits only that, on or around March 19, 2020, Moog's Tim

3    Abbott corresponded with Skyryse's Gonzalo Rey, which correspondence speaks for

4    itself and otherwise, unless expressly admitted herein, denies the remaining

5    allegations in Paragraph 124.

6        125.    Skyryse admits only that, on or around March, 23 and 25, 2020, Moog's

7    Tim Abbott corresponded with Skyryse's Gonzalo Rey, which correspondence speaks

8    for itself and otherwise, unless expressly admitted herein, denies the remaining

9    allegations in Paragraph 125.

10       126.    Skyryse admits only that it sent a letter to Moog on or around March 31,

11   2020, which speaks for itself, and otherwise denies the remaining allegations in

12   Paragraph 126.

13       127.    Skyryse admits only that it issued a press release on or around March 17,

14   2020, which speaks for itself, and otherwise denies the remaining allegations in

15   Paragraph 127.

16       128.    Skyryse admits only that on May 22, 2020, Tim Baptist sent Moog a

17   request for quote from Skyryse, attached as Exhibit I to the Complaint, which speaks

18   for itself. Skyryse lacks information or knowledge sufficient to form a belief as to the

19   truth of the remaining allegations in Paragraph 128 regarding Tim Baptist's role and

20   dates of employment at Moog, and therefore, unless otherwise expressly admitted

21   herein, denies them, and otherwise denies the remaining allegations in Paragraph 128.

22       129.    Skyryse admits only that there is an RFQ, which speaks for itself. Unless

23   otherwise expressly admitted herein, Skyryse denies the remaining allegations in

24   Paragraph 129.

25       130.    Skyryse admits only that there is an RFQ, which speaks for itself. Unless

26   otherwise expressly admitted herein, Skyryse denies the remaining allegations in

27   Paragraph 130.

28       131.    Skyryse admits only that there is an RFQ, which speaks for itself. Unless

1  otherwise expressly admitted herein, Skyryse denies the remaining allegations in

2  Paragraph 131.

3      132.   Skyryse denies the allegations in Paragraph 132.

4      133.   Skyryse admits only that on or around June 17, 2020, in response to

5  Skyryse's request for quote, Moog submitted an exorbitant bid knowing that Skyryse

6  could not accept it, which is attached as Exhibit J to the Amended Complaint and

7  speaks for itself, and otherwise denies the remaining allegations in Paragraph 133.

8      134.   Skyryse admits only that Moog submitted a bid in response to Skyryse's

9  RFQ, which speaks for itself. Unless otherwise expressly admitted herein, Skyryse

10 denies the remaining allegations in Paragraph 134.

11     135.   Skyryse admits only that, in August 2020, Tim Baptist corresponded with

12 Moog via email, which correspondence speaks for itself and otherwise, unless

13 expressly admitted herein, denies the remaining allegations in Paragraph 135.

14     136.   Skyryse admits only that on or around September 22, 2020, Moog

15 submitted a proposal, attached as Exhibit K to the Amended Complaint, that was

16 markedly disproportionate to the work to be performed knowing that Skyryse would

17 have no choice but to decline Moog's proposal in response to Skyryse's request for

18 quote in the amount of $46,195,870.  Skyryse otherwise denies the allegations of

19 Paragraph 136.

20     137.   Skyryse admits only that the Parties have not pursued any further

21 business opportunities and that the 2018 and 2019 NDAs have not been terminated

22 and otherwise denies the remaining allegations in Paragraph 137.

23     138.   Skyryse admits only that it issued a press release on or around October

24 27, 2021, which speaks for itself. Unless otherwise expressly admitted herein, Skyryse

25 denies the remaining allegations in Paragraph 138.

26     139.   Skyryse denies the allegations of Paragraph 139, including the heading.

27     140.   Skyryse denies the allegations of Paragraph 140.

28     141.   Skyryse denies the allegations of Paragraph 141.

1    142.   Skyryse denies the allegations of Paragraph 142.

2    143.   Skyryse admits only that the individuals identified in Paragraph 143,

3    except Tony Chirico, have worked for Skyryse. Skyryse denies that there are any

4    "Stolen Trade Secrets" or "Stolen Non-Trade Secret Data," denies that Tony Chirico

5    joined Skyryse, and otherwise lacks information or knowledge sufficient to form a

6    belief as to the truth of the remaining allegations in Paragraph 143, and therefore,

7    unless otherwise expressly admitted herein, denies them.

8    144.   Skyryse denies there are any "Stolen Trade Secrets" or "Stolen Non-

9    Trade Secret Data," lacks information or knowledge sufficient to form a belief as to

10   the truth of the remaining allegations in Paragraph 144, and therefore, unless

11   otherwise expressly admitted herein, denies them.

12   145.   Skyryse denies the allegations of Paragraph 145.

13   146.   Skyryse denies the allegations of Paragraph 146.

14   147.   Skyryse admits only that Gonzalo Rey and Todd Schmidt communicated

15   regarding potential employment opportunities at Skyryse, and otherwise denies the

16   allegations of Paragraph 147.

17   148.   Skyryse admits only that Dr. Rey and Mr. Schmidt communicated

18   regarding Skyryse and potential employment opportunities at the company and

19   otherwise denies the allegations in Paragraph 148.

20   149.   Skyryse admits only that Dr. Rey and Mr. Schmidt had communicated

21   regarding Skyryse, and otherwise denies the remaining allegations in Paragraph 149.

22   150.   Skyryse admits only that Dr. Rey and Mr. Schmidt communicated

23   regarding Skyryse and potential employment opportunities at the company and

24   otherwise denies the allegations in Paragraph 150.

25   151.   Skyryse admits only that Dr. Rey and Todd Schmidt communicated

26   regarding Skyryse and potential employment opportunities at the company and

27   otherwise denies the allegations in Paragraph 151.

28   152.   Skyryse lacks information or knowledge sufficient to form a belief as to

the truth of the allegations in Paragraph 152, and therefore denies them.

153.   Skyryse admits only that Mr. Pilkington and Mr. Hunter discussed Skyryse and potential employment opportunities at the company, and that Mr. Pilkington explained his view of some of the pros and cons to Skyryse being a new startup.  Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 153, and therefore, unless otherwise expressly admitted herein, denies them.

154.   Skyryse admits only that Deb Morisie and Jorge Lopez communicated on November 15, 2021 regarding Skyryse and potential employment opportunities at the company, and that Mr. Lopez informed Ms. Morisie over text that he was not interested at that time. Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations in Paragraph 154.

155.   Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 155, and therefore, unless otherwise expressly admitted herein, denies them.

156.   Skyryse admits only that it has lawfully communicated with certain Moog personnel regarding potential employment opportunities at Skyryse, and denies the remaining allegations of Paragraph 156.

157.   Skyryse admits only that it has lawfully communicated with certain Moog personnel regarding potential employment opportunities at Skyryse, and denies the remaining allegations of Paragraph 157.

158.   Skyryse admits only that it has lawfully hired certain former Moog employees. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 158, and therefore, unless otherwise expressly admitted herein, denies them.

159.   Skyryse denies the allegation in the heading and lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 159, and therefore, unless otherwise expressly admitted herein, denies

1    them.

2         160.    Skyryse denies the allegations in Paragraph 160.

3         161.    Skyryse lacks information or knowledge sufficient to form a belief as to

4    the truth of the allegations in Paragraph 161, and therefore, unless otherwise expressly

5    admitted herein, denies them.

6         162.    Skyryse lacks information or knowledge sufficient to form a belief as to

7    the truth of the allegations in Paragraph 162, and therefore, unless otherwise expressly

8    admitted herein, denies them.

9         163.    Skyryse lacks information or knowledge sufficient to form a belief as to

10   the truth of the allegations in Paragraph 163, and therefore, unless otherwise expressly

11   admitted herein, denies them, including the heading.

12        164.    Skyryse lacks information or knowledge sufficient to form a belief as to

13   the truth of the allegations in Paragraph 164, and therefore, unless otherwise expressly

14   admitted herein, denies them.

15        165.    Skyryse lacks information or knowledge sufficient to form a belief as to

16   the truth of the allegations in Paragraph 165, and therefore, unless otherwise expressly

17   admitted herein, denies them.

18        166.    Skyryse lacks information or knowledge sufficient to form a belief as to

19   the truth of the allegations in Paragraph 166, and therefore, unless otherwise expressly

20   admitted herein, denies them.

21        167.    Skyryse lacks information or knowledge sufficient to form a belief as to

22   the truth of the allegations in Paragraph 167, and therefore, unless otherwise expressly

23   admitted herein, denies them.

24        168.    Skyryse lacks information or knowledge sufficient to form a belief as to

25   the truth of the allegations in Paragraph 168, and therefore, unless otherwise expressly

26   admitted herein, denies them.

27        169.    Skyryse lacks information or knowledge sufficient to form a belief as to

28   the truth of the allegations in Paragraph 169, and therefore, unless otherwise expressly

1 | admitted herein, denies them.

2 |     170.   Skyryse lacks information or knowledge sufficient to form a belief as to

3 | the truth of the allegations in Paragraph 170, and therefore, unless otherwise expressly

4 | admitted herein, denies them.

5 |     171.   Skyryse lacks information or knowledge sufficient to form a belief as to

6 | the truth of the allegations in Paragraph 171, and therefore, unless otherwise expressly

7 | admitted herein, denies them.

8 |     172.   Skyryse lacks information or knowledge sufficient to form a belief as to

9 | the truth of the allegations in Paragraph 172, and therefore, unless otherwise expressly

10 | admitted herein, denies them.

11 |     173.   Skyryse lacks information or knowledge sufficient to form a belief as

12 | Moog's investigation. Skyryse otherwise, unless expressly admitted herein, denies the

13 | remaining allegations in Paragraph 173.

14 |     174.   Skyryse lacks information or knowledge sufficient to form a belief as to

15 | the truth of the allegations in Paragraph 174, and therefore, unless otherwise expressly

16 | admitted herein, denies them.

17 |     175.   Skyryse lacks information or knowledge sufficient to form a belief as to

18 | the truth of the allegations in Paragraph 175, and therefore, unless otherwise expressly

19 | admitted herein, denies them.

20 |     176.   Skyryse lacks information or knowledge sufficient to form a belief as to

21 | the truth of the allegations in Paragraph 176, and therefore, unless otherwise expressly

22 | admitted herein, denies them.

23 |     177.   Skyryse admits only that Exhibit L to Moog's Complaint purports to be

24 | a document titled "Supervisor Termination Checklist" that references Misook Kim,

25 | and speaks for itself, and otherwise denies the allegations in Paragraph 177.

26 |     178.   Skyryse admits only that large amounts of Moog's allegedly secret or

27 | confidential data could have been "easily accessed" by its personnel and otherwise

28 | lacks information or knowledge sufficient to form a belief as to the truth of the

1    allegations in Paragraph 178, and therefore, unless otherwise expressly admitted
2    herein, denies them.

3        179.   Skyryse lacks information or knowledge sufficient to form a belief as to
4    the truth of the allegations in Paragraph 179, and therefore, unless otherwise expressly
5    admitted herein, denies them.

6        180.   Skyryse lacks information or knowledge sufficient to form a belief as to
7    the truth of the allegations in Paragraph 180, and therefore, unless otherwise expressly
8    admitted herein, denies them.

9        181.   Skyryse lacks information or knowledge sufficient to form a belief as to
10   the truth of the allegations in Paragraph 181, including the heading, and therefore,
11   unless otherwise expressly admitted herein, denies them.

12       182.   Skyryse lacks information or knowledge sufficient to form a belief as to
13   the truth of the allegations in Paragraph 182, and therefore, unless otherwise expressly
14   admitted herein, denies them.

15       183.   Skyryse lacks information or knowledge sufficient to form a belief as to
16   the truth of the allegations in Paragraph 183, and therefore, unless otherwise expressly
17   admitted herein, denies them.

18       184.   Skyryse lacks information or knowledge sufficient to form a belief as to
19   the truth of the allegations in Paragraph 184, including the heading, and therefore,
20   unless otherwise expressly admitted herein, denies them.

21       185.   Skyryse lacks information or knowledge sufficient to form a belief as to
22   the truth of the allegations in Paragraph 185, and therefore, unless otherwise expressly
23   admitted herein, denies them.

24       186.   Skyryse lacks information or knowledge sufficient to form a belief as to
25   the truth of the allegations in Paragraph 186, and therefore, unless otherwise expressly
26   admitted herein, denies them.

27       187.   Skyryse lacks information or knowledge sufficient to form a belief as to
28   the truth of the allegations in Paragraph 187, and therefore, unless otherwise expressly

1    admitted herein, denies them.

2        188.    Skyryse lacks information or knowledge sufficient to form a belief as to

3    the truth of the allegations in Paragraph 188, and therefore, unless otherwise expressly

4    admitted herein, denies them.

5        189.    Skyryse lacks information or knowledge sufficient to form a belief as to

6    the truth of the allegations in Paragraph 189, and therefore, unless otherwise expressly

7    admitted herein, denies them.

8        190.    Skyryse lacks information or knowledge sufficient to form a belief as to

9    the truth of the allegations in Paragraph 190, and therefore, unless otherwise expressly

10   admitted herein, denies them.

11       191.    Skyryse lacks information or knowledge sufficient to form a belief as to

12   the truth of the allegations in Paragraph 191, and therefore, unless otherwise expressly

13   admitted herein, denies them.

14       192.    Skyryse denies that Kim acted in concert with Skyryse and lacks

15   information or knowledge sufficient to form a belief as to the truth of the remaining

16   allegations in Paragraph 192, and therefore, unless otherwise expressly admitted

17   herein, denies them.

18       193.    Skyryse denies it has "stolen" anything and lacks information or

19   knowledge sufficient to form a belief as to the truth of the remaining allegations in

20   Paragraph 193, including the heading, and therefore, unless otherwise expressly

21   admitted herein, denies them.

22       194.    Skyryse lacks information or knowledge sufficient to form a belief as to

23   the truth of the allegations in Paragraph 194, and therefore, unless otherwise expressly

24   admitted herein, denies them.

25       195.    Skyryse lacks information or knowledge sufficient to form a belief as to

26   the truth of the allegations in Paragraph 195, and therefore, unless otherwise expressly

27   admitted herein, denies them.

28       196.    Skyryse lacks information or knowledge sufficient to form a belief as to

1  the truth of the allegations in Paragraph 196, and therefore, unless otherwise expressly

2  admitted herein, denies them.

3      197.   Skyryse lacks information or knowledge sufficient to form a belief as to

4  the truth of the allegations in Paragraph 197, and therefore, unless otherwise expressly

5  admitted herein, denies them.

6      198.   Skyryse lacks information or knowledge sufficient to form a belief as to

7  the truth of the allegations in Paragraph 198, and therefore, unless otherwise expressly

8  admitted herein, denies them.

9      199.   Skyryse lacks information or knowledge sufficient to form a belief as to

10  the truth of the allegations in Paragraph 199, and therefore, unless otherwise expressly

11  admitted herein, denies them.

12      200.   Skyryse lacks information or knowledge sufficient to form a belief as to

13  the truth of the allegations in Paragraph 200, and therefore, unless otherwise expressly

14  admitted herein, denies them.

15      201.   Skyryse lacks information or knowledge sufficient to form a belief as to

16  the truth of the allegations in Paragraph 201, including the heading, and therefore,

17  unless otherwise expressly admitted herein, denies them.

18      202.   Skyryse lacks information or knowledge sufficient to form a belief as to

19  the truth of the allegations in Paragraph 202, and therefore, unless otherwise expressly

20  admitted herein, denies them.

21      203.   Skyryse lacks information or knowledge sufficient to form a belief as to

22  the truth of the allegations in Paragraph 203, and therefore, unless otherwise expressly

23  admitted herein, denies them.

24      204.   Skyryse admits only that, on or around January 29, 2022, Reid Raithel

25  sent an e-mail with the attachment "Listing 29Jan2022.xlsx" which speaks for itself

26  to the Skyryse e-mail addresses of Deb Morisie, Jeff Becker and Sathya Achar, which

27  Sathya Achar forwarded to Alin Pilkington on or around January 31, 2022. Skyryse

28  denies the remaining allegations in Paragraph 204.

205.   Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 205, including the heading, and therefore, unless otherwise expressly admitted herein, denies them.

206.   Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 206, and therefore, unless otherwise expressly admitted herein, denies them.

207.   Skyryse admits only that Moog's expert, Bruce Pixley, claims to have identified an "RBT spreadsheet" on Eric Chung's Skyryse laptop which specific file Mr. Pixley has not identified, and also that Mr. Pixley made certain claims and reached certain conclusions regarding the metadata and formatting of that spreadsheet. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 207, and therefore, unless otherwise expressly admitted herein, denies them.

208.   Skyryse admits only that Moog's expert, Bruce Pixley, claims to have identified eleven "RBT spreadsheets" on Eric Chung's Skyryse Laptop, which specific files Mr. Pixley has not identified, and also that Mr. Pixley made certain claims regarding the metadata and print header information for those spreadsheets. Skyryse denies that Eric Chung accessed and used stolen Moog files while at Skyryse. Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 208, and therefore, unless otherwise expressly admitted herein, denies them.

209.   Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 209, including the heading, and therefore, unless otherwise expressly admitted herein, denies them.

210.   Skyryse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 210, and therefore, unless otherwise expressly admitted herein, denies them.

211.   Skyryse lacks information or knowledge sufficient to form a belief as to

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED
ANSWER, DEFENSES, AND COUNTERCLAIMS

1  the truth of the allegations in Paragraph 211, and therefore, unless otherwise expressly

2  admitted herein, denies them.

3      212.   Skyryse lacks information or knowledge sufficient to form a belief as to

4  the truth of the allegations in Paragraph 212, including the heading, and therefore,

5  unless otherwise expressly admitted herein, denies them.

6      213.   Skyryse denies the allegations in Paragraph 213.

7      214.   Skyryse admits only that Lori Bird became a contractor for Skyryse

8  subsequent to her work for Moog, used a Skyryse e-mail account, and received a

9  Skyryse-issued computer, and lacks information or knowledge sufficient to form a

10 belief as to the truth of the remaining allegations in Paragraph 214 and therefore,

11 unless expressly admitted herein, denies them, including the heading.

12     215.   Skyryse denies the allegations in Paragraph 215.

13     216.   Skyryse admits only that any text messages exchanged between Ms. Bird

14 and Mr. Pilkington in December 2021 speak for themselves. Skyryse otherwise denies

15 the remaining allegations in Paragraph 216.

16     217.   Skyryse admits only that according to Moog, its personnel share

17 purportedly "proprietary" information with people outside the company, including

18 checklists and templates. Skyryse lacks information or knowledge sufficient to form

19 a belief as to the truth of the remaining allegations in Paragraph 217, and therefore,

20 unless otherwise expressly admitted herein, denies them.

21     218.   Skyryse admits only that according to Moog, its personnel share

22 purportedly "proprietary" information with people outside the company, including

23 checklists and templates. Skyryse lacks information or knowledge sufficient to form

24 a belief as to the truth of the remaining allegations in Paragraph 218, and therefore,

25 unless otherwise expressly admitted herein, denies them.

26     219.   Skyryse denies the allegations in Paragraph 219, including the header.

27     220.   Skyryse denies the allegations in Paragraph 220.

28     221.   Skyryse denies the allegations in Paragraph 221.

222. To the extent Paragraph 222 alleges conduct by Skyryse, Skyryse denies them. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 222, and therefore, unless otherwise expressly admitted herein, denies them.

223. Skyryse denies the allegations in Paragraph 223, including the heading.

224. Skyryse admits only that, on or around June 7, 2022, Lori Bird corresponded with Skyryse personnel via email, which correspondence speaks for itself and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 224.

225. Skyryse admits only that, on or around July 11, 2022, certain plans were released by certain Skyryse personnel, and that those plans can be modified according to applicable procedures. Skyryse otherwise denies the remaining allegations in Paragraph 225.

226. Skyryse admits only that Skyryse's David Nguyen provided comments on a Skyryse software certification plan, which comments speak for themselves and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 226.

227. Skyryse denies the allegations in Paragraph 227, including the heading.

228. Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 228 relating to Moog's investments into the research and development into unmanned helicopters and in developing the Platform software, and therefore denies those allegations on that basis, and further denies the remaining allegations in Paragraph 228.

229. Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 229 attributable to Hummingbird, and therefore denies those allegations on that basis, and further denies the remaining allegations in Paragraph 229.

230. Skyryse lacks information or knowledge sufficient to form a belief as to

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS

1   the allegations in Paragraph 230 relating to Moog's use of architectural diagrams, and

2   therefore denies those allegations on that basis, and further denies the remaining

3   allegations in Paragraph 230.

4          231.   Skyryse denies the allegations in Paragraph 231.

5          232.   Skyryse lacks information or knowledge sufficient to form a belief as to

6   the allegations in Paragraph 232 and therefore, unless otherwise expressly admitted

7   herein, denies them.

8          233.   Skyryse lacks information or knowledge sufficient to form a belief as to

9   the allegations in Paragraph 233 regarding any alleged copying of Moog information

10   by Ms. Kim or Mr. Pilkington and unnamed "Skyryse personnel," and therefore denies

11   those allegations on that basis, and further denies the remaining allegations in

12   Paragraph 233.

13          234.   Skyryse denies the allegations in Paragraph 234.

14          235.   Skyryse lacks information or knowledge sufficient to form a belief as to

15   the allegations in Paragraph 235 and therefore, unless otherwise expressly admitted

16   herein, denies them.

17          236.   Skyryse lacks information or knowledge sufficient to form a belief as to

18   the allegations in Paragraph 236, and therefore, unless otherwise expressly admitted

19   herein, denies them.

20          237.   Skyryse lacks information or knowledge sufficient to form a belief as to

21   the allegations in Paragraph 237 and therefore, unless otherwise expressly admitted

22   herein, denies them.

23          238.   Skyryse admits only that it is working on flight control systems for

24   helicopters. Skyryse otherwise lacks information or knowledge sufficient to form a

25   belief as to the allegations in Paragraph 238 regarding the G280 project, and therefore,

26   unless otherwise expressly admitted herein, denies them on that basis, and further

27   denies the remaining allegations in Paragraph 238.

28          239.   Skyryse denies the allegations in Paragraph 239.

240.   Skyryse denies the allegations in Paragraph 240.

241.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 241 and therefore, unless otherwise expressly admitted herein, denies them.

242.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 242, and therefore, unless otherwise expressly admitted herein, denies them.

243.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 243, and therefore, unless otherwise expressly admitted herein, denies them.

244.   To the extent Paragraph 244 alleges conduct by Skyryse, Skyryse denies them. Skyryse otherwise lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 244, and therefore, unless otherwise expressly admitted herein, denies them.

245.   Skyryse denies that any alleged harm to Moog is not compensable with monetary damages and denies that Moog has been regarded as or has demonstrated that it is "excellent and trustworthy" as alleged. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 245 and therefore, unless otherwise expressly admitted herein, denies them.

246.   Skyryse admits only that Skyryse's prior counsel made certain statements to Moog and the Court during an April 26, 2022 conference and that the transcript speaks for itself, and denies the remaining allegations of Paragraph 246. Skyryse further asserts that contrary to Moog's allegations and intimations, the Court has found that "the deleted files do not appear to be 'lost' within the meaning of Rule 37(e) as all of that information has been 'restored or replaced through additional discovery'" and that "Moog was not prejudiced by the deletion." (Order, Dkt. 532.)

247.   Skyryse admits only that Skyryse's counsel made certain statements that speak for themselves, and denies the remaining allegations of Paragraph 247. Skyryse

1   further asserts that contrary to Moog's allegations and intimations, the Court has found

2   that "the deleted files do not appear to be 'lost' within the meaning of Rule 37(e) as

3   all of that information has been 'restored or replaced through additional discovery'"

4   and that "Moog was not prejudiced by the deletion." (Order, Dkt. 532.)

5   248.   Skyryse admits only that Skyryse's prior counsel disclosed that certain

6   employees had been terminated or placed on administrative leave, that the transcript

7   speaks for itself, that Skyryse withdrew its Rule 12(b)(6) Motion to Dismiss Moog's

8   original Complaint, and denies the remaining allegations of Paragraph 248.

9

10   **COUNT I**

11   249.   Skyryse hereby restates and incorporates by reference its responses to the

12   allegations from Paragraphs 1 through 248, as if fully set forth herein, and denies any

13   allegations in the heading to Paragraph 249.

14   250.   Paragraph 250 contains legal conclusions to which no response is

15   required. To the extent a response is required, Skyryse admits only that

16   18 U.S. Code § 1836(b) allows an owner of a trade secret that is misappropriated to

17   bring a civil action "if the trade secret is related to a product or service used in, or

18   intended for use in, interstate or foreign commerce." Unless otherwise expressly

19   admitted herein, Skyryse denies the remaining allegations in Paragraph 250.

20   251.   Paragraph 251 contains legal conclusions to which no response is

21   required. To the extent a response is required, Skyryse admits only that

22   18 U.S.C. § 1839(3) provides a definition of the term "trade secret," which speaks for

23   itself. Unless otherwise expressly admitted herein, Skyryse denies the remaining

24   allegations in Paragraph 251.

25   252.   Paragraph 252 contains legal conclusions to which no response is

26   required. To the extent a response is required, Skyryse admits only that

27   18 U.S.C. § 1839(5) provides a definition of the term "misappropriation," which

28   speaks for itself. Unless otherwise expressly admitted herein, Skyryse denies the

1    remaining allegations in Paragraph 252.

2        253.   Paragraph 253 contains legal conclusions to which no response is

3    required. To the extent a response is required, Skyryse admits only that 18 U.S.C.

4    § 1839(6) provides a definition of the term "improper means," which speaks for itself.

5    Unless otherwise expressly admitted herein, Skyryse denies the remaining allegations

6    in Paragraph 253.

7        254.   Skyryse denies the allegations in Paragraph 254, and denies that any of

8    the broad, generic descriptors Moog alleges as its "28 trade secrets" adequately

9    describe or identify information that qualify for trade secret protection.

10       255.   Skyryse denies the allegations in Paragraph 255.

11       256.   Skyryse denies the allegations in Paragraph 256.

12       257.   Skyryse lacks information or knowledge sufficient to form a belief as to

13   the allegations in Paragraph 257 and therefore, unless otherwise expressly admitted

14   herein, denies them.

15       258.   Skyryse admits only that it has signed NDAs with Moog in the past and

16   otherwise denies the remaining allegations in Paragraph 258.

17       259.   Skyryse denies the allegations in Paragraph 259.

18       260.   Paragraph 260 contains legal conclusions to which no response is

19   required. To the extent a response is required, Skyryse denies the allegations in

20   Paragraph 260.

21       261.   Skyryse denies the allegations in Paragraph 261.

22       262.   Skyryse denies the allegations in Paragraph 262.

23       263.   Skyryse denies the allegations in Paragraph 263.

24       264.   Skyryse denies the allegations in Paragraph 264.

25       265.   Skyryse denies the allegations in Paragraph 265.

26       266.   Skyryse denies the allegations in Paragraph 266.

27       267.   Skyryse denies the allegations in Paragraph 267.

28       268.   Skyryse denies the allegations in Paragraph 268.

**COUNT II**

269.   Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-268, as if fully set forth herein and denies any allegations in the heading to Paragraph 269.

270.   Skyryse denies the allegations in Paragraph 270.

271.   Skyryse denies the allegations in Paragraph 271.

272.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 272 and therefore, unless otherwise expressly admitted herein, denies them.

273.   Skyryse denies the allegations in Paragraph 273.

274.   Skyryse denies the allegations in Paragraph 274.

**COUNT III**

275.   Count III does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-274, as if fully set forth herein and denies any allegations in the heading to Paragraph 275.

276.   Count III does not assert a cause of action against Skyryse, and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 276 and therefore, unless otherwise expressly admitted herein, denies them.

277.   Count III does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 277 and therefore, unless otherwise expressly admitted herein, denies them.

278.   Count III does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 278 and therefore, unless otherwise expressly admitted herein, denies them.

279.   Count III does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 279 and therefore, unless otherwise expressly admitted herein, denies them.

280.   Count III does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse denies that Mr. Pilkington and Ms. Kim misappropriated Moog's trade secrets and confidential and proprietary information for the benefit of Skyryse, including, but not limited to, by soliciting Moog employees. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 280 regarding Mr. Pilkington and Ms. Kim and therefore, unless otherwise expressly admitted herein, denies them on that basis.

281.   Count III does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 281 and therefore, unless otherwise expressly admitted herein, denies them.

282.   Count III does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 282 and therefore, unless otherwise expressly admitted herein, denies them.

283.   Count III does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 283 and therefore, unless otherwise expressly admitted herein, denies them.

## **COUNT IV**

284.   Count IV does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-284, as if

1   fully set forth herein and denies any allegations in the heading to Paragraph 284.

2      285.   Count IV does not assert a cause of action against Skyryse and so no

3   response is required. To the extent a response is required, Skyryse lacks information

4   or knowledge sufficient to form a belief as to the allegations in Paragraph 285 and

5   therefore, unless otherwise expressly admitted herein, denies them.

6      286.   Count IV does not assert a cause of action against Skyryse and so no

7   response is required. To the extent a response is required, Skyryse lacks information

8   or knowledge sufficient to form a belief as to the allegations in Paragraph 286 and

9   therefore, unless otherwise expressly admitted herein, denies them.

10     287.   Count IV does not assert a cause of action against Skyryse and so no

11  response is required. To the extent a response is required, Skyryse lacks information

12  or knowledge sufficient to form a belief as to the allegations in Paragraph 287

13  regarding the independent actions of Mr. Pilkington or Ms. Kim and therefore denies

14  those allegations on that basis, and specifically denies the allegations relating to

15  Skyryse in Paragraph 287.

16     288.   Count IV does not assert a cause of action against Skyryse and so no

17  response is required. To the extent a response is required, Skyryse lacks information

18  or knowledge sufficient to form a belief as to the allegations in Paragraph 288

19  regarding the independent actions of Mr. Pilkington or Ms. Kim and therefore denies

20  those allegations on that basis, and specifically denies the allegations relating to

21  Skyryse in Paragraph 288.

22     289.   Count IV does not assert a cause of action against Skyryse and so no

23  response is required. To the extent a response is required, Skyryse lacks information

24  or knowledge sufficient to form a belief as to the allegations in Paragraph 289

25  regarding the independent actions of Mr. Pilkington or Ms. Kim and therefore denies

26  those allegations on that basis, and specifically denies the allegations relating to

27  Skyryse in Paragraph 289.

28     290.   Count IV does not assert a cause of action against Skyryse and so no

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED
ANSWER, DEFENSES, AND COUNTERCLAIMS

1   response is required. To the extent a response is required, Skyryse lacks information

2   or knowledge sufficient to form a belief as to the allegations in Paragraph 290 and

3   therefore, unless otherwise expressly admitted herein, denies them.

4       291.   Count IV does not assert a cause of action against Skyryse and so no

5   response is required. To the extent a response is required, Skyryse lacks information

6   or knowledge sufficient to form a belief as to the allegations in Paragraph 291 and

7   therefore, unless otherwise expressly admitted herein, denies them.

8       292.   Count IV does not assert a cause of action against Skyryse and so no

9   response is required. To the extent a response is required, Skyryse lacks information

10  or knowledge sufficient to form a belief as to the allegations in Paragraph 292 and

11  therefore, unless otherwise expressly admitted herein, denies them.

12      293.   Count IV does not assert a cause of action against Skyryse and so no

13  response is required. To the extent a response is required, Skyryse lacks information

14  or knowledge sufficient to form a belief as to the allegations in Paragraph 293 and

15  therefore, unless otherwise expressly admitted herein, denies them.

16  **COUNT V**

17      294.   Skyryse restates and incorporates by reference its responses to the

18  allegations in Paragraphs 1-293, as if fully set forth herein and denies any allegations

19  in the heading to Paragraph 294.

20      295.   Skyryse denies the allegations in Paragraph 295.

21      296.   Skyryse denies the allegations in Paragraph 296.

22      297.   Skyryse denies the allegations in Paragraph 297.

23      298.   Skyryse denies the allegations in Paragraph 298.

24      299.   Skyryse denies the allegations in Paragraph 299.

25      300.   Skyryse denies the allegations in Paragraph 300.

26  **COUNT VI**

27      301.   Skyryse restates and incorporates by reference its responses to the

28  allegations in Paragraphs 1-300, as if fully set forth herein and denies any allegations

in the heading to paragraph 301.

302.   Skyryse admits only that it entered into at least the NDAs with Moog dated October 24, 2018 and March 15, 2019, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 302.

303.   Skyryse admits only that Paragraph 303 purports to quote language from the 2018 and 2019 NDAs, which speak for themselves, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 303.

304.   Skyryse admits only that Paragraph 304 purports to quote language from the 2018 and 2019 NDAs, which speak for themselves, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 304.

305.   Skyryse admits only that the NDAs contain a Section 5, which speaks for itself, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 305.

306.   Skyryse admits only that Paragraph 306 purports to quote language from the 2018 and 2019 NDAs, which speak for themselves, and otherwise, unless expressly admitted herein, denies the remaining allegations in Paragraph 306.

307.   Skyryse denies the allegations in Paragraph 307.

308.   Skyryse denies the allegations in Paragraph 308.

309.   Skyryse denies the allegations in Paragraph 309.

## **COUNT VII**

310.   Count VIII does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-309, as if fully set forth herein and denies any allegations in the heading to Paragraph 310.

311.   Count VIII does not assert a cause of action against Skyryse and therefore no response is required from Skyryse. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 311 and therefore, unless otherwise expressly admitted herein, denies them.

312.   Count VIII does not assert a cause of action against Skyryse and therefore no response is required from Skyryse. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 312 and therefore, unless otherwise expressly admitted herein, denies them.

313.   Count VIII does not assert a cause of action against Skyryse and therefore no response is required from Skyryse. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 313 and therefore, unless otherwise expressly admitted herein, denies them.

314.   Count VIII does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse denies any allegation that Ms. Kim or Mr. Pilkington engaged in wrongful activity for the benefit of Skyryse. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 314 related to the independent actions of Ms. Kim or Mr. Pilkington, and therefore, unless otherwise expressly admitted herein, denies them on that basis.

315.   Count VIII does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 315 and therefore, unless otherwise expressly admitted herein, denies them.

316.   Count VIII does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 316 and therefore, unless otherwise expressly admitted herein, denies them.

317.   Count VIII does not assert a cause of action against Skyryse and so no response is required. To the extent a response is required, Skyryse denies any allegation that Ms. Kim usurped Moog's corporate opportunities to the benefit of Skyryse. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 317 related to the independent actions of Ms. Kim,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED
ANSWER, DEFENSES, AND COUNTERCLAIMS

1   and therefore, unless otherwise expressly admitted herein, denies them on that basis.

2      318.   Count VIII does not assert a cause of action against Skyryse and so no

3   response is required. To the extent a response is required, Skyryse lacks information

4   or knowledge sufficient to form a belief as to the allegations in Paragraph 318, and

5   therefore, unless otherwise expressly admitted herein, denies them.

6                                    **COUNT IX**

7      319.   Skyryse restates and incorporates by reference its responses to the

8   allegations in Paragraphs 1-318, as if fully set forth herein and denies any allegations

9   in the heading to Paragraph 319.

10     320.   Paragraph 320 states legal conclusions to which no response is required.

11  To the extent a response is required, Skyryse denies the allegations in Paragraph 320

12  insofar as they purport to allege a breach of any implied covenant against Skyryse.

13     321.   Skyryse admits only that Skyryse and Moog entered into the NDAs,

14  which speak for themselves. Unless otherwise expressly admitted herein, Skyryse

15  denies the remaining allegations in Paragraph 321.

16     322.   Skyryse denies the allegations in Paragraph 322.

17     323.   Skyryse denies the allegations in Paragraph 323.

18     324.   Paragraph 324 states legal conclusions to which no response is required.

19  To the extent a response is required, Skyryse denies the allegations in Paragraph 324

20  insofar as they purport to allege a breach of any implied covenant against Skyryse.

21     325.   Skyryse denies the allegations in Paragraph 325.

22     326.   Skyryse denies the allegations in Paragraph 326.

23     327.   Skyryse denies the allegations in Paragraph 327.

24                                    **COUNT X**

25     328.   Skyryse restates and incorporates by reference its responses to the

26  allegations in Paragraphs 1-327, as if fully set forth herein and denies any allegations

27  in the heading to Paragraph 328.

28     329.   Skyryse denies the allegations in Paragraph 329.

330.   Skyryse denies the allegations in Paragraph 330.

331.   Skyryse denies the allegations in Paragraph 331.

332.   Skyryse denies the allegations in Paragraph 332.

333.   Skyryse denies the allegations in Paragraph 333.

## COUNT XI

334.   Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-333, as if fully set forth herein and denies any allegations in the heading to Paragraph 334.

335.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 335 and therefore, unless otherwise expressly admitted herein, denies them.

336.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 336 and therefore, unless otherwise expressly admitted herein, denies them.

337.   Skyryse denies that it was involved in any scheme to copy or steal files or data from Moog. Skyryse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 337 and therefore, unless otherwise expressly admitted herein, denies them.

338.   Skyryse admits only that it entered into NDAs with Moog, which speak for themselves, and therefore, unless otherwise expressly admitted herein, denies the allegations in Paragraph 338.

339.   Skyryse admits only that it entered into NDAs with Moog, which speak for themselves, and also that Skyryse and Moog exchanged certain information, and unless otherwise expressly admitted herein, denies the remaining allegations in Paragraph 339.

340.   Skyryse denies the allegations in Paragraph 340.

341.   Skyryse denies the allegations in Paragraph 341.

342.   Skyryse denies the allegations in Paragraph 342.

**COUNT XII**

343.   Skyryse restates and incorporates by reference its responses to the allegations in Paragraphs 1-342, as if fully set forth herein and denies any allegations in the heading to Paragraph 343.

344.   Paragraph 344 states legal conclusions to which no response is required. To the extent a response is required, Skyryse denies the allegations in Paragraph 344 insofar as they purport to allege a violation of California's Unfair Competition Law against Skyryse.

345.   Skyryse denies the allegations in Paragraph 345.

346.   Skyryse denies the allegations in Paragraph 346.

347.   Skyryse admits only that it has lawfully hired former Moog employees, and Skyryse denies the remaining allegations in Paragraph 347.

348.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 348 and therefore, unless otherwise expressly admitted herein, denies them.

349.   Skyryse denies the allegations in Paragraph 349.

350.   Skyryse denies the allegations in Paragraph 350.

351.   Skyryse denies the allegations in Paragraph 351.

352.   Skyryse denies the allegations in Paragraph 352.

353.   Skyryse lacks information or knowledge sufficient to form a belief as to the allegations in Paragraph 353 relating to Moog's view of the market, predictions for market leadership, speculation about future market share, its alleged investments into the research and development into unmanned helicopters and in developing the Platform software, and therefore denies those allegations on that basis, and otherwise denies the remaining allegations in Paragraph 353.

354.   Skyryse denies the allegations in Paragraph 354.

355.   Skyryse denies the allegations in Paragraph 355.

356.   Skyryse denies the allegations in Paragraph 356.

Skyryse denies that Moog is entitled to the judgment or any of the other relief it seeks, including a permanent injunction, award of actual damages and lost profits, attorneys' fees, constructive trust, exemplary damages, costs, litigation expenses, compensatory damages, punitive damages, interest in any form, and any and all other relief.

**SKYRYSE'S DEFENSES**

By alleging the Defenses set forth below, Skyryse does not admit or concede liability on any claim brought by Moog, nor does Skyryse concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

**FIRST DEFENSE**

**(Failure to State a Claim)**

1.   Moog's claims are barred, in whole or in part, because Moog failed to state a claim upon which relief can be granted. For example, at least Moog's Counts II, V, X, and IX are superseded by the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civil Code §§ 3426 *et seq*., which provides the exclusive remedy for trade secret misappropriation under state law and supersedes other state law claims which, as here, are based on the same underlying facts, whether or not the information allegedly misappropriated qualifies for trade secret protection under the law. Moog's constructive trust claim is additionally deficient because "imposition of a constructive trust" (Count XI) is an equitable remedy, not a cause of action for which relief can be granted. Further, Moog's unfair competition claim (Count XII) is also superseded by the CUTSA to the extent it arises out of Skyryse's alleged misappropriation of trade secret or non-trade secret information, and otherwise is unsupported by adequate factual allegations to state a plausible claim for relief and/or lack of a cognizable legal theory. Further, Moog has not stated a plausible claim for relief against Skyryse for breach of contract or breach of the implied covenant of good faith and fair dealing

1  (Counts VI and IX).

2  **SECOND DEFENSE**

3  **(Readily Ascertainable – California CUTSA Claim Only)**

4  2.    Plaintiff's state law trade secret misappropriation claim, to the extent it

5  arises out of the California Uniform Trade Secrets Act, is barred, in whole or in part,

6  because Moog's alleged trade secrets are readily ascertainable through proper means.

7  **THIRD DEFENSE**

8  **(Failure to Qualify as Protectable Trade Secret)**

9  3.    Moog's claims are barred, in whole or in part, because Moog's alleged

10  trade secrets fail to qualify for trade secret protection under the law at least because

11  Moog's alleged trade secrets are readily ascertainable through proper means, Moog's

12  alleged trade secrets do not derive independent economic value from not being

13  generally known, Moog failed to take reasonable measures to keep its alleged trade

14  secret information secret.

15  **FOURTH DEFENSE**

16  **(Independent Invention)**

17  4.    Moog's claims are barred, in whole or in part, by the doctrine of

18  independent invention.

19  **FIFTH DEFENSE**

20  **(Unclean Hands)**

21  5.    Moog's claims are barred, in whole or in part, by the doctrine of unclean

22  hands.

23  **SIXTH DEFENSE**

24  **(Waiver)**

25  6.    Moog's claims are barred, in whole or in part, by the doctrines of express

26  and/or implied waiver.

27

28

**SEVENTH DEFENSE**

**(Acquiescence)**

7.      Moog's claims are barred, in whole or in part, by the doctrine of acquiescence.

**EIGHTH DEFENSE**

**(Estoppel)**

8.      Moog's claims are barred, in whole or in part, by the doctrine of estoppel.

**NINTH DEFENSE**

**(Time-Barred)**

9.      Moog's claims are time-barred.

**TENTH DEFENSE**

**(Laches)**

10.      Moog's claims are barred, in whole or in part, by the doctrine of laches. Moog's has inexcusably and unreasonably delayed commencement of this action to the prejudice of Skyryse.

**ELEVENTH DEFENSE**

**(Adequate Remedy at Law)**

11.      Moog is not entitled to a recovery of equitable relief because of the existence of an adequate remedy at law.

**TWELFTH DEFENSE**

**(Preemption/Supersession)**

12.      Moog's claims are barred, in whole or in part, by being preempted or superseded by California's Uniform Trade Secrets Act, California Civil Code §§ 3426 *et seq.*

**THIRTEENTH DEFENSE**

**(Covenant of Good Faith and Fair Dealing)**

13.      Moog's claims are barred, in whole or in part, by the doctrine of the covenant of good faith and fair dealing.

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED
ANSWER, DEFENSES, AND COUNTERCLAIMS

## RESERVATION OF RIGHTS

Skyryse has not knowingly or intentionally waived any applicable affirmative or other defenses and reserves the right to assert and rely on such other affirmative defenses as may later become available or apparent. Skyryse further reserves the right to amend its answer and/or defenses accordingly and/or to withdraw defenses that it determines are not applicable during the course of subsequent discovery. Nothing stated herein constitutes a concession as to whether or not Plaintiff bears the burden of proof on any issue.

## PRAYER FOR RELIEF

WHEREFORE, Skyryse prays for judgment as follows:

1. That Moog take nothing against Skyryse;
2. That judgment be entered against Moog in favor of Skyryse;
3. That Skyryse be awarded the costs of suit, including attorneys' fees incurred herein; and
4. That this Court award Skyryse such other and further relief as it may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Civil Local Rule 38-1, Skyryse, Inc. hereby demands a trial by jury.

## SKYRYSE, INC.'S COUNTERCLAIMS

Skyryse brings the following counterclaims against Moog:

## NATURE OF THE ACTION

1. Aviation technology has advanced by leaps and bounds in recent years, with innovators like Skyryse making groundbreaking strides in automating flight systems. Moog could not keep up. After decades of doing things the same way, Moog knew it could not legitimately compete against the younger, more exciting, and more technologically advanced Skyryse—which was leading the industry in advanced

1  automated flight systems and human-aircraft interfaces. Moog also knew it was losing
2  the battle for top engineering talent to Skyryse. So starting in 2018, Moog resorted to
3  a series of unlawful, bad-faith business practices in a desperate attempt to stay relevant
4  and crush its much smaller competitor, Skyryse.

5         2.     At first, Moog tried to catch up in the cutting-edge field of advanced
6  automated flight systems by partnering with Skyryse and gaining access to its
7  confidential, proprietary technologies and business information. Moog assured
8  Skyryse it would be a long-term partner, promising, among other things, to supply
9  components like actuators for Skyryse's aircraft, components Moog would fail to
10 deliver. Then, once it was armed with Skyryse's confidential information and business
11 strategies, Moog used false pretenses to abandon Skyryse, put an end to their
12 collaboration, and set out to unfairly compete directly against Skyryse. Moog
13 misappropriated Skyryse's trade secrets and confidential information to develop
14 copycat technologies, defrauded Skyryse, breached its contracts with Skyryse and
15 their implied covenants of good faith and fair dealing, interfered with Skyryse's
16 business relationships, and engaged in unlawful intimidation tactics to try to stop
17 Skyryse's legitimate hiring practices.

18        3.     Skyryse brings these counterclaims to put an end to Moog's unlawful
19 tactics.

20                                  **PARTIES**

21        4.     Skyryse is a start-up aviation company founded in 2016 with its principal
22 place of business in El Segundo, California. Skyryse is poised to revolutionize the
23 transportation and general aviation industries by bringing on-demand highly
24 automated aerial transportation technologies to the public.

25        5.     Moog has been around for more than seventy years. Today, it is a large,
26 multi-national corporation with its principal place of business in East Aurora,
27 New York and, as relevant to this action, it has engineering facilities in Torrance,
28 California.

**JURISDICTION AND VENUE**

6.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this matter involves claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and concerns trade secrets that relate to products and services that are used in or intended for interstate or foreign commerce.

7.     The Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

8.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), and Federal Rule of Civil Procedure 13, because these claims are so related to Skyryse's federal law claims in the action that they form part of the same case or controversy as those claims.

9.     This Court has personal jurisdiction over Moog by virtue of Moog's transacting and doing business in the State of California and this District, and committing tortious and unlawful acts and contractual breaches in the State of California and this District.   Accordingly, this Court has specific jurisdiction over Moog in connection with this action, and Moog's contacts with the State of California are continuous and systematic to such extent that Moog is subject to the general jurisdiction of the State of California and this Court.

10.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b), including because a substantial part of the events giving rise to these claims occurred in this District. Moog has offices in this District, conducted business for Skyryse in this District, stole and used Skyryse's trade secrets in this District, and interfered with Skyryse's business relationships in this District.

**A.     Skyryse sets out to revolutionize the aircraft industry while Moog is forced to confront its own failure to innovate**.

11.     Founded by Mark Groden in 2016, Skyryse's goal is nothing short of revolutionizing general aviation. With approximately 90 employees, today Skyryse is

one of the first companies in the world that has achieved real, workable solutions to the significant challenges created by modern urban mobility, including the fact that Americans spend over nine billion hours a year in traffic.

12.     Skyryse's mission statement reflects its guiding principles: "At Skyryse, we believe it's a moral imperative to reduce, and one day, eliminate general aviation fatalities through the application of our universal flight deck. A Skyryse-enabled aircraft makes it quicker and easier to earn a pilot's license and fly safely and affordably. With our technology, anyone can confidently experience the joy and freedom to travel, connect with others, and experience the world around us."

13.     Skyryse has invested heavily in developing a vehicle-agnostic highly automated system that allows for the operation of any aircraft, including vertical take-off and landing ("VTOL") aircraft, without a pilot. Skyryse has made groundbreaking achievements during its short history. By March 2017 it had flown a full-scale VTOL aircraft without a pilot over seventy times and became one of the only companies in the world approved by the FAA to fly its aircraft without a pilot onboard. This was a testament to Skyryse having built some of the most advanced highly automated VTOL technology in the world. By late 2017, Skyryse was well-positioned to be the first company of its kind to dramatically transform the national transportation market.

14.     By contrast, Moog was founded in 1951 and over the past seven decades has grown into a multi-national, multi-billion-dollar company with 13,000 employees. For years Moog has focused its business on conventional aviation components like actuators and related computers and software.

15.     Primarily focused on commercial and defense aviation, Moog has largely ignored the general aviation market, *e.g.*, for non-scheduled personal and business transport. Rather, Moog has served as a supplier of actuators and the computers to original equipment manufacturers (OEMs) and other aircraft suppliers in other segments of aviation.

16.     By 2017, while Skyryse was making technological strides that were unthinkable just a few years earlier, Moog was reckoning with the fact that its legacy business was rapidly slipping into obsolescence, because it had failed to keep up in the modern field of advanced, highly automated flight systems.

17.     In January 2017, ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ would force Moog to confront what was already obvious within the company: Moog had failed to innovate and needed to make a change if it wanted to stay relevant and competitive.

██ ██████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████

19.     To face these threats, Moog's ██████████████████ ████████████████████████████████████████ They warned, however, that ██████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████

20.     To stay relevant, Moog needed to shift its focus to the very type of business and technology Skyryse was already aggressively pursuing. The ██████████ ████████████████████████████ where Skyryse was forging new ground ████████████████████████████████████████

1

2

3    21.

4

5

6

7    22.    The take-home point ████████████████ was clear: Moog

8    lacked essential knowledge of and expertise in advanced, highly automated flight

9    systems, especially in the field of general aviation, and needed to catch up with the

10   competition.

11   **B.    Moog tries to enter the advanced automated flight control space by**

12   **establishing a long-term partnership with Skyryse and gaining access to**

13   **Skyryse's confidential and proprietary information.**

14   23.    Seeking to join forces with a company with expertise in autonomous and

15   automated flight technologies, on August 30, 2018, Jeffrey Ehret from Moog's

16   business development group contacted Skyryse to pitch what he claimed would be a

17   "mutually beneficial" business opportunity.

18   24.    Mr. Ehret admitted Moog had not yet developed a "solution that offers

19   the ability for full autonomous flight including take-off and landing," as Skyryse had

20   already accomplished. He explained that Moog was particularly interested in the fact

21   "that [Skyryse's] strength lies in sensor fusion," ████████████████████

22   ████████████████. Mr. Ehret stated he "would appreciate the opportunity to talk

23   further with someone at Skyryse regarding how our two companies might explore this

24   market together utilizing our strengths."

25   25.    To facilitate the two companies' business discussions, and in order to

26   protect Skyryse's confidential and proprietary information, on October 24, 2018

27   Moog and Skyryse entered into a Proprietary Information and Nondisclosure

28

1   Agreement, in order to "[e]valuate business opportunities" (the "2018 NDA").

2   (Ex. A.)

3        26.   Under this NDA, Moog and Skyryse broadly defined "Proprietary

4   Information" and agreed not to disclose it to any third parties without express prior

5   written consent, and would use it "only for the limited purpose" to "[e]valuate business

6   opportunities" and "not for any other purpose." (*Id.* at §§ 1-4.)

7        27.   As the parties' discussions progressed, on March 15, 2019 Moog and

8   Skyryse entered into another confidentiality agreement, the "2019 NDA" to exchange

9   information for the more specific purpose of discussing the "integration of Moog's

10  flight control systems / subsystems / components and / components and associated

11  autonomous control technologies with Skyryse's aircraft platforms and associated

12  autonomous control technologies." (Ex. B.) This was in addition to Moog personnel

13  executing confidentiality agreements when they visited Skyryse.

14       28.   Skyryse told Moog from the start that Skyryse needed a long-term supply

15  partner as it developed highly automated aircraft technologies that would receive FAA

16  certification. Skyryse explained that the certification would start with an initial

17  Supplemental Type Certificate ("STC") for a fly-by-wire tail rotor system to control

18  the yaw axis on Skyryse's aircraft, which is a certificate issued by the Federal Aviation

19  Administration ("FAA") when an applicant has received approval to modify an

20  aeronautical product from its original design. Skyryse made clear that "[b]efore

21  embarking" on such a project with Moog, Skyryse needed Moog to confirm that

22  Skyryse would be "supported through the subsequent STCs and have an understanding

23  of what those designs, costs, and timelines would look like."

24       29.   Having a long-term partner to supply components like actuators was

25  critical to Skyryse, because each phase of Skyryse's development plans involved

26  building on the work done and certifications achieved in a prior phase. Losing a key

27  supply partner during such a multi-phase, long-term project would create substantial

28  financial exposure and business risk for Skyryse, including because it could force

Skyryse to restart its development efforts from scratch, which would impose a significant loss in investment and time, and disrupt Skyryse's development timelines.

30.     Skyryse and Moog knew that Skyryse's development project would require flexibility and adjustments over time, and therefore the parties agreed  to conduct the development work over multiple phases, which would allow the parties to update and adapt their plans as the project progressed. As Skyryse's CTO explained to Moog, "I expect that we will learn more about our needs as we go and this would give us structure to negotiate changes without surprises and ample lead-time so the commercial issues don't slow down progress."

31.     Memorializing these plans and their joint intention to proceed together on a long-term development initiative, on May 31, 2019 Moog and Skyryse agreed to a Statement of Work ("SOW 1") memorializing their mutual intention to proceed with a long term, four-phase project. (Ex. C.) They made explicit that they intended



They memorialized their mutual intent

32.     Skyryse and Moog in SOW 1                                          , for example:

• 

• 

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

- ████████████████████████
████

- ████████████████████████
██████

33.    While Skyryse and Moog committed to this long-term development project, they also recognized the need for flexibility over time. They agreed that ████
████████████████████████
████████████████

34.    Also on May 31, 2019, Skyryse ordered from Moog "████
████████████████. Skyryse placed its order through a letter from its CEO Dr. Groden to Moog's Group Director David Norman, which Skyryse and Moog would later refer to as a "purchase order" or "P.O."

35.    On June 3, 2019, Moog and Skyryse also agreed upon Terms and Conditions. While the parties agreed ████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
███████████ (Ex. D at § 23.)

36.    The Agreements did not provide Moog the right to ████
████████████████████████
████████████████████████
████████████████████████
████████████████████████

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED
ANSWER, DEFENSES, AND COUNTERCLAIMS

1     █████████████████████████████████████████████████

2     █████████████████████████████████████████████████

3     █████████████████████████████████████████████████

4     ████████████████████████████████████████████

5     ████████████████████████████████████ (Ex. C § 5.)

6         37.    Skyryse relied on these agreements and Moog's commitment to their

7 "████████████████████████ With Moog's then-existing off-the-shelf

8 products being inadequate to support Skyryse's aircraft development needs, Skyryse

9 began working with Moog to design and fund the development of the actuators for the

10 █████████████████████████ of Skyryse's aircraft.

11         38.    In the process, Skyryse shared valuable confidential information with

12 Moog through many interactions, including in-person meetings at Skyryse's

13 headquarters where Moog personnel inspected Skyryse's aircraft. Skyryse also shared

14 highly confidential technical information, drawings, schematics, computer aided

15 design (CAD) files, and business plans regarding Skyryse's test aircraft and

16 certification plans and roadmaps, and Skyryse's analysis of the general aviation

17 market and business opportunities related to urban transport.

18         39.    This included disclosing to Moog details of Skyryse's proprietary, highly

19 confidential, and state-of-the art trade secret flight control technology that allows

20 ██████████████████████████████████████████████████

21 █████████████████████████████████ This flight

22 control technology, which was confidentially developed over a number of years, is an

23 essential part of Skyryse's plan to revolutionize general aviation and urban

24 transportation. These confidential innovations result in a functional aircraft with

25 highly complex automated flight technology without taking up vital cabin space.

26 These innovations have uniquely positioned Skyryse to be the only company capable

27 of offering automated flight services using small rotorcraft that also could be used for

28 automated, hands-off-the-stick flight, certification testing, commercially viable urban

transportation, and offering technology packages that can be integrated into new or existing aircraft.

40.     Skyryse also confidentially shared with Moog how this system fits directly into Skyryse's highly secret certification development plans, and gives Skyryse a unique and accelerated path to market for its aircraft—an invaluable competitive advantage.

41.     Skyryse also shared with Moog a confidential "Skyryse Master Plan": (1) ███████████████████████████," (2) ████████████ ████████████████████████████████," and (3) "████ ████████████████"

42.     Skyryse further confidentially explained how it was uniquely positioned to implement the "Skyryse Master Plan" because Skyryse's aircraft designs had already received experimental certification from the FAA, and Skyryse could fly test flights, with a flight test engineer and a pilot as backup, accrue flight hours, and acquire data necessary for further certifications.

43.     Skyryse also shared with Moog confidential business information and strategies regarding its plans to develop automated flight systems. Skyryse explained, for example, that ████████████████████

1 ██████████████████████████████████████████████████

2 ████████████████████████████.

3      44.     Skyryse's Dr. Groden also introduced Moog's Jeff Ehret, to the CEO of

4 Erickson Inc., an American aerospace manufacturing and aviation provider and one

5 of the world's leading helicopter OEMs, to help Moog pitch its business as a fly-by-

6 wire component developer.

7 **C.**     **Moog uses false pretenses to end its partnership with Skyryse.**

8      45.     Throughout their partnership, Skyryse shared extensive amounts of

9 confidential information with Moog so Moog could develop actuators for Skyryse's

10 aircraft. In the process, Moog learned as much as it could about Skyryse's confidential

11 technologies and business plans.

12      46.     Unbeknownst to Skyryse, during its work under SOW 1, Moog secretly

13 decided it would walk away from the collaboration, cut Skyryse out, and develop

14 copycat flight technology on its own in direct competition with Skyryse.

15      47.     The problem for Moog was that it still owed many obligations to Skyryse

16 as part of their long-term, ████████████████████████." Knowing this, Moog

17 needed to come up with a plan to convince *Skyryse* to cancel the issued purchase order,

18 and it did so through dishonest and bad-faith tactics.

19      48.     Even after Moog's CEO and Chairman, John Scannell, had represented

20 to Skyryse that "[w]e look forward to continuing to work with Skyryse as you develop

21 your business model and solve some of the technical challenges on your way to market

22 success," Moog was internally preparing to abandon Skyryse and pursue competitive

23 technologies on its own.

24      49.     Unaware it was being duped, Skyryse kept sharing confidential and

25 proprietary information with Moog. And Skyryse worked with Moog to plan the

26 upcoming phases of the project that would build on the work performed in Phase 1 to

27 ultimately implement four-axis control.

28

50.     In the meantime, Moog began laying the groundwork to back out of the partnership.

51.     For example, seemingly hoping to slip it by Skyryse without recognizing the implications, and without discussing it with Skyryse in advance, on March 6, 2020 a Moog program administrator, Alan Kresse, wrote Skyryse claiming, "It is Moog's understanding that *Skyryse intends to cancel the referenced purchase order* associated with Phase 1 of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." This was a false statement that made no sense to Skyryse, which had no intention to cancel anything, as the parties still were working on Phase 1 of their four-phase project.

52.     Mr. Kresse continued, "termination *must be transmitted as a formal written notification*. Moog respectfully requests that Skyryse *provide formal written notification* of the intent to cancel the purchase order no later than March 18, 2020." And again, he instructed that "formal notification from Skyryse *must be provided*." But then Moog conspicuously attempted to make the cancellation of the purchase order self-executing. Even if Skyryse failed to send the notice Moog wanted, Mr. Kresse said Moog would "assume[] that the non-response represents formal acknowledgement of cancellation and termination of the contract will be executed per section 32 of the contract terms and conditions."

53.     Skyryse's then-CTO Gonzalo Rey responded that very day, stating that Skyryse did "not intend to cancel the existing purchase order" under SOW 1. Instead, until the parties had settled on updated "[d]eliverables, schedule and cost," Skyryse "intend[ed] to continue to fully execute the existing P.O." Dr. Rey explained Skyryse would be flexible to accommodate Moog, but its "formal direction [wa]s that no change takes place at this time with the exception of jointly agreed upon schedule accommodations that help Moog avoid waste should an agreement on a better win-win be found."

54.     Moog's Group Director for Innovation and Technology, David Norman, then entered the conversation and conceded that the suggestion in Mr. Kresse's email

1   that it was Skyryse's idea to cancel the purchase order was false. By email dated

2   March 9, 2020, he said it was at his direction Mr. Kresse had written Skyryse with

3   Moog's "cancellation" request. Mr. Norman claimed that this was necessary simply

4   so Moog and Skyryse could "come to agreement on *closing out on the original SOW*

5   *(Phase 1)* aimed at just the ███████████ *and agreeing on a new SOW (Phase 2)*"

6   for the work ahead.

7         55.     Mr. Norman assured Dr. Rey the two companies were on "our path

8   forward" together but explained that Moog needed to get paid for work already done,

9   even though it hadn't delivered the ████████████ Skyryse had ordered: "No

10  matter *the path forward*, Moog has put in a significant effort to this point and we've

11  made HW [hardware] commitments in support of the Phase 1 SOW that we will need

12  to reconcile before agreeing to Phase 2 SOW." Mr. Norman assured Dr. Rey it was

13  "in our mutual interest to formalize *our path forward*" in a "new SOW," but Moog

14  first had to get paid for work already performed. "This is the money part," he said.

15        56.     Thus, according to Moog, it needed Skyryse to provide "formal written

16  notification" of cancellation or termination of the Phase 1 purchase order so it could

17  get paid for services provided up to that point—the "money part"—and then Moog

18  and Skyryse could continue with their project.

19        57.     A couple weeks later, Moog's Timothy Abbott got in touch with

20  Skyryse's Gonzalo Rey to make arrangements for payment. On March 19, 2020,

21  Mr. Abbott represented that "we are close to agreement on a revised SoW" for the

22  next phase of work, and provided informal "takeaway numbers" for the next phase.

23  Notably, on behalf of Moog, Mr. Abbott included the amount at which Moog and

24  Skyryse were "close to agreement": "New Total PO Value: $4.22M." He also stated

25  that Moog needed to be paid "$970K for work completed" from Skyryse during

26  Phase 1.

27        58.     Mr. Abbott followed up on March 25, 2020 with a final figure for "work

28  complete to date" of $970,253.37, and represented that to "*facilitate the invoicing*

1  *process*, we will need you to provide a letter formally stating the intent to revise the

2  current statement of work and allowing us to invoice you for work completed to date."

3      59.    Skyryse justifiably relied on Moog's representations that it needed some

4  formal "cancellation," "termination," or "revision" of the purchase order so it could

5  "facilitate the invoicing process" and get paid for Phase 1 work before moving on to

6  the next phases. So on March 31, relying on the representations from Moog and its

7  representatives, Dr. Rey sent Moog the requested "formal notification of cancellation

8  of the Purchase Order," asked for an invoice, and confirmed that Skyryse "look[ed]

9  forward to finalizing the modified terms of the SOW shortly." Skyryse made the

10  requested payment to Moog—without having received the ███████████████

11  ███████████████—because it trusted Moog and was intent on pushing the project

12  forward.

13      60.    Despite its representations to the contrary, Moog secretly never intended

14  to continue with the project. So while Moog outwardly was messaging to Skyryse that

15  the partnership would continue, surreptitiously it was planning to use the

16  "cancellation" it coaxed out of Skyryse—along with an unreasonable and unworkable

17  quote for the next phase of work it would soon provide—to put an end to their

18  partnership.

19      61.    Skyryse, meanwhile, continued in good faith to proceed with the next

20  steps in the project. Skyryse sent Moog an updated SOW reflecting "a continuation to

21  the work Moog and Skyryse ha[d] collaborated over the past year."

22      62.    Skyryse's Senior Vice President, Tim Baptist, presented the draft SOW

23  to Moog by letter dated May 22, 2020 and requested a quote "for the general

24  parameters of a teaming agreement with Skyryse" for the next phase. In his letter,

25  Mr. Baptist explained Skyryse had "made a substantial investment in the collaborative

26  work, including by making "$1.25M in payments to Moog," and had adapted its own

27  technology to fit Moog's "constraints and properties."

28

63.    In that same letter, Skyryse shared with Moog more confidential information regarding valuable business opportunities pertaining to new potential consumer and commercial customers. Skyryse reminded Moog about how their collaboration would "allow[] Moog to profit from the combined investment in the subject FBW system beyond the Skyryse book of business."

64.    Rather than providing a straightforward, honest response to Skyryse's request for a quote, Moog continued its pattern of deception. On June 16, 2020 Moog's Tim Abbott delivered to Skyryse a quote for the next phase of work that Moog surely knew Skyryse could never accept. The quote for the next phase of work was a range of $47.5 to $75 million. This was an order of magnitude higher than the $4 million "takeaway number" Moog's Mr. Abbott had provided to Skyryse's Dr. Rey when Moog was extracting payment for work it never completed. Moog's quote was so exorbitant, unreasonable, and disproportionate to the scope of the work to be done and Moog's prior representations about the cost of that work, that Moog knew and intended that Skyryse would have no choice but to reject it. Compounding the disingenuousness of its position, Moog also qualified its quote so heavily that no one could reasonably rely on it, claiming it could not "provide firm pricing" (this, after Moog's many months working with and learning from Skyryse, and after decades of experience as an aircraft component supplier).

65.    Still in the dark about Moog's true intentions to kill the partnership, Skyryse did its best to try to make the collaboration work. Skyryse updated and narrowed its proposal for the next phase trying to find a workable path forward with Moog. Moog responded on August 14, 2020 with questions, continuing to solicit confidential business information from Skyryse, which Skyryse quickly provided.

66.    Moog's David Norman even asked Skyryse's Tim Baptist for help understanding the nascent market and future business opportunities they could pursue after their development project. "Tim, Do you have a market overview you could share with us to help understand the potential future business for Moog after the

1  Development Activity[?]" Mr. Norman wanted specifics: "Details such as how many
2  systems and what is your price point would be helpful (at least the price point you are
3  assuming for FCC and Actuators)." Mr. Baptist then shared Skyryse's confidential
4  pricing plans and strategies.

5       67.  Meanwhile, Moog continued the charade and made more demands for
6  the next phase of the project it knew Skyryse could not accept. Moog proposed to
7  narrow the scope of work in the SOW so significantly that it caused Mr. Baptist to
8  note, it "[l]ooks as if Moog has completely re-written the SOW wasting everyone's
9  time." Skyryse's CTO, who previously worked as Moog's CTO, Gonzalo Rey, agreed:
10  "So here we stand, having lost one year in a two year program, empty handed and
11  scrambling to find a replacement, while Moog [is] in possession of vast knowledge of
12  our solution and $1.25M of Skyryse funding."

13       68.  It finally had become clear to Skyryse that Moog was acting in bad faith,
14  with an improper motive, and was intent on ensuring that Skyryse never would receive
15  the benefit of its bargain for a long-term supplier relationship with Moog.

16       69.  Moog acknowledged internally that its true intent was always to
17  unilaterally end the partnership with Skyryse. As Moog's David Norman later
18  admitted to Moog's CEO, it was Moog, not Skyryse, that simply "███████████
19  ████████████████████ after starting the collaboration, because Moog ████████
20  ████████████████" This demonstrates the falsity and deception of Moog
21  assuring Skyryse that Moog would proceed with the multi-phase project, claiming it
22  needed a cancellation notice merely "to facilitate the invoicing process," and
23  knowingly providing an unreasonable, unworkable, sham of a quote for the next phase
24  of work.

25  **D.**  **Moog misappropriates Skyryse's trade secrets and violates its**
26  **confidentiality obligations to unfairly compete directly against Skyryse.**

27       70.  Armed with knowledge of Skyryse's confidential information including
28  trade secrets, and even before it had extracted itself from its partnership with Skyryse,

1  Moog was trying to establish its own foothold in the automated flight technology
2  space and was fully intending to compete against Skyryse.

3      71.    While Moog was pretending it would work in good faith with Skyryse,
4  on information and belief Moog was actually simultaneously negotiating an
5  agreement to purchase Genesys Aerosystems, a company with automated flight
6  control technologies that competes directly against Skyryse.

7      72.    Although technologically lagging behind Skyryse, Genesys had focused
8  on developing autopilot technology for rotorcraft, including the HeliSAS system for
9  the Robinson R-44. As an acquisition target, Genesys presented Moog with an
10 opportunity to take what it learned from Skyryse and exploit it for its own benefit.

11     73.    Using Skyryse's confidential information, including information about
12 its state of the art optionally piloted flight control system, Moog recognized that its
13 own ███████████████████████████████████," and that "██
14 ████████████" ███████████████," including specifically
15 ████████ to become "████████████████." Doing so would permit Moog to
16 ██████████████████████████████████████████████████
17 ████████████████," or exactly the space in which Skyryse was operating.

18     74.    Moog used Skyryse's trade secrets and other confidential information to
19 develop plans to ██████████████████████████████████"
20 Moog ████████████████████ the very secrets that Skyryse had shared
21 with it in confidence regarding certification plans, including that ████████████
22 ████████████████████████████████████████████████."
23 In other words, Moog was using for its own competitive purposes confidential
24 business information that took Skyryse years to develop.

25     75.    In fact, the very same day it filed its lawsuit against Skyryse, Moog's
26 new subsidiary, Genesys, announced that it "started development of the 4th axis on"
27 its "HeliSAS Autopilot and Stability Augmentation System." On information and
28 belief, Moog has been using and exploiting confidential information it acquired from

1  Skyryse to enable Genesys to develop a "4-Axis Autopilot System," which Genesys
2  did not have prior to being acquired by Moog.

3      76.    Moog and Genesys have advertised to the public generally, and to
4  customers of Robinson helicopters specifically, that Genesys and Moog independently
5  developed a four-axis autopilot for the Robinson helicopter when in fact it was
6  Skyryse that developed and pioneered these advances. *See*, *e.g.*,  https://genesys-
7  aerosystems.com/news/genesys-aerosystems-developing-new-functionality-for-
8  helisas%C2%AE-autopilot-product-line;  https://www.flyingmag.com/genesys-adds-
9  4th-axis-hover-and-hold-to-autopilot-series/;
10  https://www.businessairnews.com/mag_story.html?ident=24008.

11     77.    Moog also has used Skyryse's confidential flight certification model to
12  unfairly compete against Skyryse in attracting business from other customers. For
13  example, Moog recently confirmed its plans to use its "███████████████████
14  ███████████████" for the ████████████████████████████████
15  ███████████████████████████████████████████████████████.
16  Mimicking  Skyryse's  own  plans  and  strategies,  Moog  is  exploiting  Skyryse's
17  confidential  information  to  help  ███████████████████████████
18  █████████████████████████" as ████████████████████████████
19  ███████████████████████████"

20     78.    Skyryse had shared with Moog the same type of product development
21  plans and strategies confidentially three years earlier. Skyryse's CEO described to
22  Moog his plans to develop a vehicle-agnostic system ██████████████████████
23  ████████████████████████████████████████████████████████
24  ████████████████████████████████████████████████████████
25  ████████████████████████████████████████████████████████
26  ███████████████████████████ This was a manifestation of the ███████
27  ██████" that Skyryse had confidentially shared with Moog.
28

79.     High-ranking executives at Moog have continued to recklessly access and use Skyryse's trade secret information without Skyryse's permission, even since Skyryse initially filed its counterclaims for misappropriation.  One specific example happened as recently as March 2023, when Moog's Chief Technical Officer, George Small, helped himself to some of Skyryse's confidential and proprietary information by accessing Skyryse's "DocSend" platform without authorization.

80.     Back in 2019 when the parties were exploring working together, Skyryse had given select Moog personnel a private link to access a DocSend repository, to review highly confidential and trade secret Skyryse information . Moog was to use this information under the parties' October 2018 Nondisclsoure Agreement solely for the ██████████████████████████████████████████ ████████ Skyryse and Moog stopped evaluating business opportunities well before Moog started this lawsuit. And they certainly have not been considering working together since, so there is no "other purpose" for which Moog was permitted to access this repository by 2023.

81.     Despite all this, in the middle of this lawsuit Mr. Small accessed Skyryse's DocSend platform in March 2023 to review some of Skyryse's most sensitive business information, namely a confidential presentation about Skyryse's highly secret aircraft certification development plans, which provided Skyryse a unique and accelerated path to market for its aircraft. Unbeknownst to Mr. Small, the steps he took to electronically access Skyryse's confidential information automatically alerted Skyryse that he was accessing the DocSend platform. When Skyryse raised this troubling development with Moog's counsel, Moog did not deny that Mr. Small had accessed and viewed Skyryse's materials. Rather, they claimed that the Skyryse information Mr. Small deliberately accessed was not actually "*used* by Moog" and tried to fault *Skyryse* for Mr. Small's intrusion, claiming Skyryse had not properly marked the document as proprietary or confidential or demanded its return, and arguing it was not confidential at all.

**E.**   **Moog engages in unlawful conduct to "_____" on Skyryse and interfere with Skyryse's lawful hiring of at-will employees.**

82.   By late 2021, Moog knew it was losing the battle to attract the top talent in the aviation industry. Many Moog engineers were dissatisfied and were either seeking or open to considering other opportunities, including at Skyryse. Hoping to stop losing engineers, Moog set about trying to block Skyryse's success in recruiting and put as much pressure on Skyryse as possible.

83.   On November 18 and 19, 2021, the Vice President of Moog's Aircraft Group, David Norman _____. Mr. Norman said it was "_____," while acknowledging that _____." Mr. Scannell responded, describing Skyryse's lawful hiring of at-will Moog employees as "_____" "_____," and challenged his executive team: "_____

84.   In response to his CEO's challenge, Mr. Norman came up with a number of ideas _____. This, despite the fact that Moog's executives, including global HR executive Jamie Daly and product development director Nick Bavaro, knew that _____."

85.   Among other things, Mr. Norman proposed _____. According to Moog, _____ Thus, on information and belief, Mr. Norman's goal was to get Moog's employees talking and intimidate them from leaving.

86.     Moog executives considered other ways to pressure on Skyryse and stop it from engaging in lawful hiring activities. Mr. Bavaro: "███████████████████████████████████████████████████████." " ████," Ms. Daly responded, "███████████████ ████—not to raise any legitimate legal claims.

87.     And indeed, Moog has had its lawyers send such "scare" letters with no legal basis for its demands. Even after filing this lawsuit, Moog's lawyers have repeatedly and cryptically accused Skyryse of wrongdoing in its hiring practices, demanding that it not recruit any Moog employees. Moog has ignored Skyryse's requests to discuss the issue and explain what, exactly, Moog thinks could be unlawful about Skyryse's legitimate recruiting efforts.

88.     In yet another proposal to "████████████" on Skyryse to impede it from lawfully hiring Moog employees, Mr. Norman sent an email advocating to "████████████████████████████ with other companies that work with Skyryse, in an attempt to glean Skyryse's confidential information from these third parties and disrupt Skyryse's business relationships with them.

89.     For example, on November 19, 2021, Moog's Mr. Norman stated to his CEO Mr. Scannell that his team was aware of Skyryse's specific business relationship with ██████████████████: "████████████████████████ ██████████████████."

90.     ████████████ was working with Skyryse in accordance with a ████ ████████████████████████t. ████ agreed, among other things, to ████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████. Significantly, ██████████ agreement with Skyryse restricted ████████████████████████████████████

1 ██████████████

2     91.   Well aware of Skyryse's business relationship with ██████

3 Moog's Mr. Norman explained to his CEO that his team would ████████

4 ████████████████████████████" would exert pressure on

5 Skyryse. Shortly thereafter, Moog's future CTO, George Small, responded to Mr.

6 Norman and confirmed that he had executed on this plan, and had visited California

7 where he "████████████████████" ██████████████

8 █████.

9     92.   On information and belief, Moog attempted to and did obtain ████

10 ████████████████████████, and also convinced ██████████ to

11 enter into a ████████████████. Moog interfered with the

12 Skyryse/██████████ relationship, convincing ████████████████

13 ████████████████████████████████████████

14 ████████████," ████████ after Moog filed its lawsuit against Skyryse.

15     93.   As another example, Mr. Norman made sure that his team was "████

16 ████████████████████████████████████████

17 ████████████████████████" On information and belief,

18 Moog was aware that Skyryse had agreements with ██████, as Moog knew

19 ████████████████████████████████████████

20 ██████████████. On information and belief, Moog also knew that Skyryse had

21 agreements with ██████████ that required ████████████████████

22 ████████████████████. Moog took actions to disrupt

23 Skyryse's relationship with ██████████ by pressuring ██████████████

24 ██████████ Since Moog contacted ████████████████████████

25 ████████████████████████.

26     94.   Moog also interfered with Skyryse's existing and prospective business

27 relationship with ████████████████ For example, on or around

28 June 2, 2021, ████████████████████████████████,

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████.

4 After substantial efforts towards that ████████████, during which time ████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████. On

7 information and belief, Moog unfairly competed with Skyryse and interfered with

8 ████████████████████████████████████████████████████

9 ████████████████████████.

10    95.   Moog also interfered with Skyryse's prospective business relationship

11 with ████████. Specifically, Skyryse and ████████████████████████

12 ████████████████ under which ████████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████. Skyryse confidentially shared information

15 about ████████████████████████ with senior Moog executive

16 (and Moog's current CTO) George Small, who at the time was communicating with

17 Skyryse under the pretext of interviewing for a senior position at Skyryse.   On

18 information and belief, Moog used the information Mr. Small confidentially obtained

19 from Skyryse under false pretenses to interfere with ████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████.

23                    *       *       *

24 ## FIRST COUNTERCLAIM

25 ### (Breach of Contract)

26    96.   Skyryse repeats and alleges paragraphs 1 through 95 of these

27 Counterclaims as if fully set forth herein.

28

97.   As alleged above, Skyryse and Moog entered into the 2018 NDA, the
2019 NDA,  SOW 1, and certain Moog employees entered into confidentiality
agreements with Skyryse when those individuals visited Skyryse (together, the
"Agreements").

98.   Skyryse materially performed its obligations under these valid and
enforceable Agreements, including by making significant monetary payments to
Moog and by protecting and not using for improper purposes the information Skyryse
received from Moog under the Agreements.

99.   Moog breached its obligations to Skyryse under the Agreements,
including at least by: (1) failing to maintain the confidentiality of, and by unlawfully
using or using for impermissible purposes, Skyryse's Proprietary Information, in
violation of the 2018 and 2019 NDAs and the provisions of other confidentiality
agreements; and (2) failing to comply with its obligations ████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████ as required under the SOW 1.

100.   Moog was not excused from performing all or substantially all of its
duties under the Agreements, and all conditions under the contract Agreements
required for Moog's performance occurred.

101.   Moog's breaches of its agreements with Skyryse have caused foreseeable
damage to Skyryse, including, at least the loss of value of Skyryse's Proprietary
Information and Intellectual Property, causing significant disruption, expense, and
delay in implementing Skyryse's business plans, and loss of business opportunities.
As a result, Skyryse is entitled to damages in an amount to be determined at trial and
equitable relief.

## SECOND COUNTERCLAIM

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

102. Skyryse repeats and alleges paragraphs 1 through 101 of these Counterclaims as if fully set forth herein.

103. As alleged above, Skyryse and Moog entered into the Agreements.

104. Skyryse did all or substantially all of the significant things that the Agreements required Skyryse to do.

105. All conditions required for Moog's performance under the Agreements were met.

106. The Agreements were all subject to an implied covenant of good faith and fair dealing that Moog would act in good faith and with reasonable effort to perform its contractual duties and to not impair Skyryse's rights to receive its rights, benefits, and reasonable expectations under the Agreements.

107. Moog unfairly interfered with Skyryse's right to receive the benefits of at least SOW 1 and subsequent SOWs, and breached the implied covenants of good faith and fair dealing applicable to those agreements, at least by abusing its discretion under them and insisting that Skyryse provide a written "cancellation," "termination," or "revision" of a purchase order or statement of work in order to secure Moog's continued performance; by providing Skyryse with a sham quote for services that Moog knew was unreasonable and intended not to be accepted; and by actively working to unfairly compete against Skyryse, rather than collaborating with it, in the field of advanced automated flight systems.

108. By doing so, Moog did not act fairly and in good faith, and deprived Skyryse of the full benefit of the parties' bargains under the Agreements.

109. Skyryse has been harmed by Moog's breach of the covenants of good faith and fair dealing and is entitled to damages in an amount to be proven at trial.

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS

## THIRD COUNTERCLAIM

### (Breach of Implied Contract)

110.   Skyryse repeats and alleges paragraphs 1 through 109 of these Counterclaims as if fully set forth herein.

111.   As alleged above Skyryse and Moog and Skyryse, through their conduct and relationship, as well as the circumstances described above, entered into an implied-in-fact contract to engage in a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

112.   Under Phase 1 of the agreement, Skyryse and Moog agreed to obtain a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

113.   Under Phase 2 of the agreement, Skyryse and Moog agreed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

114.   Under Phase 3 of the agreement, Skyryse and Moog agreed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

115.   Under Phase 4 of the agreement, Skyryse and Moog agreed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

116.   Skyryse materially performed its obligations under this valid contract, including as described above.

117.   Moog breached its obligations to Skyryse by failing to perform the acts required under Phase 2 and subsequent Phases of the parties' implied-in-fact contract.

118.   Moog was not excused from performing all or substantially all of its duties under the contract, and all conditions under the contract required for Moog's performance occurred.

119.   Moog's breaches of its contract with Skyryse have caused foreseeable damage to Skyryse, including, at least by causing significant disruption, expense, and delay in implementing Skyryse's business plans, and loss of business opportunities. As a result, Skyryse is entitled to damages in an amount to be determined at trial and equitable relief.

120.   Skyryse alleges this claim in the alternative to its First Counterclaim for Moog's breach of SOW 1, which agreement also reflected the parties' mutual intent to engage in a long-term multi-phase development initiative. This Court has noted that the "SOW is capable of two or more reasonable interpretations—specifically as to whether or not Moog was obligated to proceed to Phase 2." (Dkt. 439 at 23.) To the extent SOW 1 is found to not contain such an obligation, then Skyryse alleges that the parties had an implied-in-fact contract requiring Moog to proceed through subsequent phases of their long-term, multi-phase development initiative.

## FOURTH COUNTERCLAIM

**(Trade Secret Misappropriation Pursuant to the Defend Trade Secrets Act 18 U.S.C. § 1836 *et seq*.)**

121.   Skyryse repeats and alleges paragraphs 1 through 120 of these Counterclaims as if fully set forth herein.

122.   Skyryse is the sole and exclusive owner of confidential trade secret information misappropriated by Moog, including but not limited to Skyryse's proprietary automated flight technologies, certification, development, and testing plans, and other financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes regarding advanced automated flight control systems, general aviation, and urban transportation.

123. Skyryse intended to use, and continues to use, its confidential trade secret information in interstate commerce, including in connection with advanced automated flight control systems for general aviation and commercial use.

124. Skyryse derives economic value from the fact that its confidential trade secret information is not generally known to, and not readily ascertainable through proper means by, persons who can obtain economic value from it disclosure or use, outside of Skyryse.

125. Skyryse takes reasonable measures to protect the secrecy of such trade secrets and confidential and proprietary information, including, but not limited to (1) organizational measures; (2) technical measures; and (3) contractual measures. These measures include, among other things, that:

a. Skyryse requires prospective and hired employees, and other third parties, to sign confidentiality agreements before accessing any confidential or trade secret information;

b. Skyryse employees are made aware of the company's policies and procedures regarding the confidentiality obligations of employees;

c. Skyryse follows a principle of least privilege that limits access and sharing of its confidential information within the company to only those who need to know the information as part of the ordinary course of business and in order for the employee to fulfill their role and responsibilities;

d. Skyryse implements technical safeguards and practices to ensure access to trade secrets is limited including by making sure that information in Skyryse's networks, cloud drives, and hard drives is segregated and access is limited to only those employees who are specifically granted access;

e. Skyryse uses data security measures to prevent unauthorized access and activity related to confidential information including by ensuring that

Skyryse's IT systems are protected by password protection, with mandatory password changes required periodically, and two-factor authentication, and using identity and password management systems;

f.   Skyryse's offices and workspaces are also secured, including with alarm protection, to protect its trade secrets and other confidential information including by and ensuring that access to those facilities is highly restricted;

g.   All systems are protected from external and internal cybersecurity threats;

h.   Skyryse took measures to protect its trade secrets and other confidential information from misuse by Moog, including by providing confidential information and trade secrets to Moog only after Moog agreed to strict confidentiality and non-use obligations, and also by having Moog personnel sign confidentiality and nondisclosure agreements when visiting Skyryse.

126.   During the course of their business relationship, Moog acquired Skyryse's confidential trade secret information under circumstances giving rise to a duty to maintain the secrecy of Skyryse's confidential trade secret information, including specifically the confidentiality restrictions contained in the 2018 NDA, the 2019 NDA, and the confidentiality agreements entered into by Moog personnel when visiting Skyryse.

127.   During Skyryse's business relationship with Moog, and after the business relationship ended, Moog improperly accessed, copied, used, and disclosed to others Skyryse's confidential trade secret information, including for Moog's own benefit and in violation of its obligations to Skyryse.

128.   As a direct and proximate result of Moog's willful, improper, and unlawful misappropriation of Skyryse's confidential trade secret information, Skyryse

1   has suffered, and will continue to suffer, damages while Moog has been unjustly
2   enriched, in an amount to be prove an trial.

3       129.   Skyryse will be irreparably harmed unless Moog is enjoined from further
4   use and/or disclosure of Skyryse's confidential trade secret information under
5   18 U.S.C. § 1836(b)(3)(A).

6       130.   Pursuant to 18 U.S.C. § 1836(b)(3)(B), Skyryse is entitled to damages
7   for actual loss and unjust enrichment not addressed in computing damages for actual
8   loss, or a reasonable royalty.

9       131.   Moog's willful, improper, and unlawful misappropriation of Skyryse's
10   confidential trade secret information was and continues to be willful and malicious,
11   warranting an award of exemplary damages and reasonable attorneys' fees, as
12   provided by 18 U.S.C. § 1836(b)(3).

13   **FIFTH COUNTERCLAIM**
14   **(Fraud – Misrepresentation)**

15       132.   Skyryse repeats and alleges paragraphs 1 through 131 of these
16   Counterclaims as if fully set forth herein.

17       133.   Moog made numerous factual representations to Skyryse that were
18   untrue when made, including. This included making misrepresentations to Skyryse
19   about the nature of their business relationship, such as by claiming that Skyryse
20   needed to cancel, terminate, or revise a purchase order "to facilitate the invoicing
21   process" or for other accounting purposes, to secure continued performance from
22   Moog, or as a "means to come to agreement on closing out on the original SOW (Phase
23   1) aimed at just the ███████████ and agree[] on a new SOW (Phase 2)," and
24   that Moog's "takeaway numbers," i.e., its informal estimate of its quote for work it
25   would do in Phase 2 of the parties' collaboration was approximately $4 million.

26       134.   These statements were false when made, and were intended to deceive
27   and induce Skyryse into making payment to Moog before it had provide any
28   deliverables and ultimately into ending its collaboration with Moog, including so that

1  Moog could move forward with its acquisition of Skyryse's competitor Genesys and

2  compete directly against Skyryse.

3       135.   On information and belief, Moog knew that these representations were

4  false when made, or Moog made these representations recklessly and without regard

5  for their truth.

6       136.   Skyryse reasonably relied on Moog's misrepresentations.

7       137.   Skyryse was harmed by Moog's fraud, including because Skyryse would

8  not have cancelled a purchase order or paid Moog without receiving any deliverables

9  if it had known that Moog's representations were false and/or misleading or that Moog

10  had omitted material facts.

11      138.   Skyryse was harmed by Moog's misrepresentations and Skyryse's

12  reliance on Moog's representations and omitted material facts were a substantial factor

13  in causing Skyryse's injuries.

14                          **SIXTH COUNTERCLAIM**

15             **(Tortious Interference with Contractual Relationship)**

16      139.   Skyryse repeats and alleges paragraphs 1 through 138 of these

17  Counterclaims as if fully set forth herein.

18      140.   Skyryse and ████████████ entered into various contracts pursuant

19  to which ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████. On information and

22  belief, Moog was aware of these contracts.

23      141.   Skyryse also entered into agreements with ████████████ pursuant

24  to which ████████████████████████████████████████████

25  ████████████████. Moog was aware of these agreements.

26      142.   Skyryse also entered into a joint development agreement with ████

27  ████████████████████████████████████████████████

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT SKYRYSE, INC.'S FIRST AMENDED
ANSWER, DEFENSES, AND COUNTERCLAIMS

1 ██████████████████████████████████████████████████

2 ████████████.

3     143.   On information and belief, and as described in Paragraphs 91-94 above,

4 Moog was aware of these contractual relationships. This awareness is reflected in

5 communications between Moog's highest-level executives.   In addition, on

6 information and belief, Moog was also aware of Skyryse's relationship with ████████

7     144.   Moog's conduct either ███████████████████████████████████

8 ████████████████████████████████████████████████

9 ██████████████████████████, including, on information and belief, by causing

10 ██████████████████████████████████████████████████

11 ██████████████████████████████████████████████████

12 ██████████████████████████████████████████████████

13 ██████████████████████████████████████████████████

14 ██████████████████████████████████████████████████

15 ██████████████████████████████████████████████████

16 ████████████████████████

17     145.   As described above, these actions reflect that Moog intended to disrupt

18 the performance of Skyryse's contacts with these third parties or knew that disruption

19 of performance was certain or substantially certain to occur.

20     146.   Moog's conduct was a substantial factor in causing Skyryse's harm.

21                **SEVENTH COUNTERCLAIM**

22         **(Intentional Interference with Business Advantage)**

23     147.   Skyryse repeats and alleges paragraphs 1 through 146 of these

24 Counterclaims as if fully set forth herein.

25     148.   Skyryse has invested significant time, resources, and capital to develop

26 confidential and proprietary information regarding its existing and prospective

27 business relationships, including in relation to its customers and market, sourcing, and

28 opportunities for its technologies.

149.   Moog had direct knowledge of these existing and prospective business relationships and of Skyryse's confidential and proprietary information about them.

150.   For example, as described above, and including on information and belief, Moog was aware that Skyryse had business relationships with development partners such as ███████████ and customers such as ███████████ ███████ and that Skyryse intended to expand these relationships by hiring ████████████████████████████████████████████ ██████████████████████

151.   In committing the acts described above, Moog has intentionally interfered with these existing and potential business relationships including, among other things, by taking actions designed to interfere with or impede Skyryse's prospective business relationships and advantages in order to "exert pressure" on Skyryse and unfairly compete with it.

152.   This includes, on information and belief, by causing ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████

153.   Moog's intentional interference has resulted in the actual disruption of Skyryse's prospective business relationships and advantages.

154.   In addition to interfering with Skyryse's prospective business relationships and advantages, these intentional acts by Moog are wrongful.

155.   As a direct and proximate result of Moog's unlawful actions, Skyryse has suffered injuries and damages in an amount to be determined at trial.

## EIGHTH COUNTERCLAIM

### (Unfair Business Practices, Bus. & Prof. Code § 17200 *et seq.*)

156.   Skyryse repeats and alleges paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

157.   As a proximate result of Moog's unfair practices and acts alleged herein, Skyryse has suffered substantial and irreparable harm.

158.   Moog has engaged in unlawful conduct, including by defrauding Skyryse, by interfering with its prospective business relationships, and by interfering with Skyryse's contractual relationships.

159.   Moog has engaged in deceptive trade practices including by making false and misleading representations to Skyryse to induce it to take actions detrimental to its own interests, in violation of California Business or Professions Code § 17200 *et seq.* This includes by making misleading and deceptive statements to customers of Robinson helicopters, the target market of Skyryse's business, which have deceived customers into believing that Genesys developed a four-axis autopilot when in fact it was Skyryse that developed and pioneered these advances. *See supra* at ¶ 76.

160.   Moog has engaged in unfair conduct in violation of California Business or Professions Code § 17200 *et seq.*, including by interfering with Skyryse's business relationships, interfering with Skyryse's lawful hiring of Moog personnel, and inducing Skyryse to terminate its purchase order with Moog so that Moog could proceed with its purchase of the competitive business Genesys Aerosystems.

161.   Unless restrained, Moog will continue to engage in unlawful or unfair acts described above, resulting in irreparable harm to Skyryse, and Skyryse has no adequate remedy at law for Moog's continuing violation of Skyryse's rights.

162.   Pursuant to Business and Professions Code § 17203, Code of Civil Procedure §526, and this Court's equitable powers, Skyryse is entitled to an injunction restraining Moog from engaging in the unlawful, unfair, and misleading conduct described above.

163.   Moog has been unjustly enriched by its unlawful, unfair, and misleading conduct.

164.   Skyryse is entitled to the disgorgement of all profits gained by Moog as a result of the unlawful, unfair, and/or deceptive practices alleged above.

165.   Skyryse is informed and believes and thereon alleges that Moog's misconduct was willful and malicious and was taken with the deliberate intent to injure Skyryse's innovative business and improve their own, thereby warranting an award of exemplary damages, as provided by Civil Code § 3294(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Skyryse prays for relief as follows:

1.   Judgment against Moog and in favor of Skyryse on the claims set forth in Moog's Complaint, and that each of Moog's claims be dismissed with prejudice;

2.   Judgment in favor of Skyryse and against Moog on the claims set forth in Skyryse's Counterclaims;

3.   An award of damages in an amount to be determined at trial;

4.   Restitution for unjust enrichment;

5.   An order imposing a constructive trust on the monies wrongfully obtained;

6.   Injunctive relief as permitted by law;

7.   Punitive damages as permitted by law;

8.   Statutory damages as permitted by law;

9.   Attorneys' fees and costs of suit incurred herein;

10.   Pre-judgment interest as provided by law; and

11.   An award of any other and further relief the Court may deem just and proper.

1

## **JURY DEMAND**

2       Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Civil Local

3  Rule 38-1, Skyryse, Inc. hereby demands a trial by jury on all issues so triable in its

4  Counterclaims.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Dated: August 25, 2023             Respectfully submitted,

2

3                              LATHAM & WATKINS LLP

4                         By */s/Gabriel S. Gross*

5                             Douglas E. Lumish (SBN 183863)

6                             Gabriel S. Gross (SBN 254672)
                            Arman Zahoory (SBN 306421)

7                             Menlo Park, California 94025

8                             Telephone: (650) 328-4600
                            Facsimile: (650) 463-2600

9                             Email: doug.lumish@lw.com

10                           gabe.gross@lw.com

11                           arman.zahoory@lw.com

12                           Joseph H. Lee (SBN 248046)
                          Ryan T. Banks (SBN 318171)

13                           650 Town Center Drive, 20th Floor

14                           Costa Mesa, California 92626
                          Telephone: (714) 540-1235

15                           Facsimile: (714) 755-8290

16                           Email: joseph.lee@lw.com
                          ryan.banks.@lw.com

17

18                           Julianne C. Osborne (SBN 342870)
                          Alexa Solimano (SBN 335740)

19                           505 Montgomery Street, Suite 2000

20                           San Francisco, California 94111
                          Telephone: (415) 391-0600

21                           Facsimile: (415) 395-8095

22                           Email: julianne.osborne@lw.com
                          alexa.solimano@lw.com

23

24                           Kelley M. Storey (Admitted *Pro Hac Vice*)

25

26                           555 Eleventh Street NW, Suite 1000
                          Washington, D.C. 20004

27                           Telephone: (202) 637-2200
                          Facsimile: (202) 637-2201

28                           Email: kelley.storey@lw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cassandra M. Baloga (Admitted *Pro Hac Vice)*
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: cassandra.baloga@lw.com


Attorneys for Defendant and
Counterclaimant, Skyryse, Inc.