UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOG INC.,<br><br>       Plaintiff,<br><br>       v<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>       Defendants.<br><br>SKYRYSE, INC.,<br><br>       Counterclaimant,<br><br>       v<br><br>MOOG INC.,<br><br>       Counterclaim-Defendant. | CASE NO. 2:22-cv-09094-GW-MAR<br><br>**STIPULATION REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiff Moog Inc. ("Moog") and Defendants Skyryse, Inc., Robert Alin Pilkington, Misook Kim (collectively, "Defendants") (each, a "Party" and, collectively, the "Parties"), have stipulated and agreed to the following terms with respect to the production of electronically stored information ("ESI") in the above-captioned action (the "Action") as set forth herein (the "ESI Stipulation"):

**A.    General Provisions**

    1.    The Parties enter into the following ESI Stipulation to facilitate the collection, processing, production, and exchange of documents and information in

the Action in the form of ESI.  This ESI Stipulation is intended to govern productions of ESI made directly to the Parties, including productions of ESI pursuant to ECF No. 96-02, § IV.  The Parties expressly recognize and agree that this ESI Stipulation is solely limited to this Action and shall not govern any other future litigation between the Parties whether arising in this Court or any other court, mediation, or arbitration forum. (For clarity, this ESI Stipulation will apply to any arbitration or mediation that is conducted in an attempt to resolve this Action.)

      2.      To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs, while at the same time ensuring access to necessary and appropriate discovery in this case.  The terms of this ESI Stipulation should be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by the Court.

**B.**    **Definitions**

      1.      "Discovery Material" has the same meaning as defined in Section 1.6 of the Protective Order dated May 6, 2022 (ECF No. 89) ("Protective Order").

      2.      "Electronically Stored Information" or "ESI" includes, but is not limited to, emails and attachments and other electronic communications, word processing documents, text files, data files, hard drives, spreadsheets, graphics,

audio and video files, databases, calendars, transaction logs, event logs, audit logs, Internet usage files, offline storage or information stored on integrated or removable media, information contained on laptops or other portable devices and network access information and backup materials, cloud storage, Native Files and the corresponding Metadata. As the term is used herein, ESI is not to be deemed "inaccessible" based solely on its source or type of storage media. Inaccessibility is based on the burden and expense of recovering and producing the ESI and the relative need for the data.

3. "Inspection Material" has the same meaning as defined in Section I.1 of the Inspection Protocol entered by the Court at ECF No. 96-02.

4. "Load File" means a file that relates to a set of scanned or electronic images or electronically processed files that indicate where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File may also contain data relevant to the individual documents, such as Metadata, coded data, text, and the like. Load Files must be obtained and provided in prearranged formats to ensure transfer of accurate and usable production images and data.

5. "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; (ii) information generated automatically by the operation

of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, sent, received or otherwise manipulated by a user of such system; *or* (iii) the information identified in Section C.4.  Metadata is a subset of ESI.

6. "Native File(s)" means ESI in the electronic format of the application in which such ESI was created, viewed, and/or modified.  Native Files are a subset of ESI.

7. "OCR text" means text that is generated by converting Static Images into searchable text format.

8. "Producing Party" has the same meaning as defined in Section 1.16 of the Protective Order.

9. "Receiving Party" has the same meaning as defined in Section 1.19 of the Protective Order.

10. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard litigation support software.  The most common forms of Static Images used in litigation are provided in either Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or Joint Photographic Experts Group (JPEG or JPG).

C. **Production Formats**

1. ESI shall be produced in the form specified herein. No Producing Party may reformat, scrub or alter the ESI to intentionally downgrade the usability of the data.

2. Except for documents requested pursuant to Section IV.1 of the Inspection Protocol entered by the Court at ECF No. 96-02, the Parties shall produce the following files and file types in native format: Microsoft Excel, .csv, Microsoft PowerPoint, , MATLAB files, CAD files, audio files, and video files. Nothing herein prevents any Party from producing or re-producing any ESI as native files or from requesting that a document be produced or re-produced in native format.

3. ESI produced as Static Images shall be produced as single-page TIFF, with an Opticon .OPT Load File. ESI produced as Static Images shall be rendered at 300 dpi in black and white. Nothing herein prevents any Party from producing or re-producing any ESI in color or with greater resolution or from requesting that a document be produced or re-produced in color or with greater resolution. The Opticon .OPT Load File will contain the production BEGDOC or BEGBATES value (see Table in Section C.4 below) for each corresponding file and appropriate path or folder information to the corresponding images that comprise each document or item of ESI.

4. A Party receiving a request for production or re-production of a document in native format, color, or with greater than 300 dpi resolution will have five business days to make the (re-)production. The Parties agree that they will make such requests for production or re-production in good faith and based on reasonable need.

  a. For HTML files (.html, .htm, .chm), (re-)producing in native format means printing the HTML file to PDF: (1) from the device on which the HTML is found in the ordinary course of business (e.g., work laptop of a Producing Party's current/former employee); (2) from a forensic image of the device; or (3) through iDS, if iDS has either the device or the forensic image. To print from a forensic image, the folder containing the HTML file (including all subfolders) will first be exported (using forensic software such as EnCase) and the HTML file will be printed from within the exported folder structure. The foregoing printing processes need not involve any connection to the internet or the Producing Party's network. To the extent the Requesting Party identifies any issues with the PDF provided under this Paragraph being as complete as reasonably possible, the Producing Party agrees to meet and confer in good faith with the Requesting Party pursuant to Paragraph 13 to resolve such issues. To that end, the parties recognize the potential for certain circumstances in which it may not be possible or may present an unreasonable burden for the Producing Party to

produce a fully-rendered HTML page (for example, (i) where an image or document file linked from an HTML page sits on a third-party server not in the possession, custody, or control of the Producing Party and such image or document file is now unavailable or it would be unduly burdensome to include in the PDF, or (ii) where the folder structure referenced in file paths in the HTML code is presently different such that recreation of such folder structure now to produce a fully-rendered version of the HTML page presents an unreasonable burden for the Producing Party). In such instances, the Requesting Party and Producing Party shall meet and confer pursuant to Paragraph 13 to better understand the issue and determine what further, if anything, can be done by the Producing Party to produce a more fully-rendered HTML page short of obligating the Producing Party to undertake unduly burdensome measures. If disagreement remains, the Party seeking the discovery may follow the further procedures of Paragraph 13. While the parties agree to engage in good faith the processes in this Section 4.a. to avoid disputes over production of HTML files, nothing in this stipulation is or should be construed as a waiver or concession as to the discoverability of such information in any format, and the parties reserve all rights and arguments and objections they may have as to discoverability, such as to relevance, burden, and proportionality.

5.      The Parties shall produce Metadata Load Files for each ESI document which is to include the following Metadata, to the extent such Metadata is available for each ESI document:[1]

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 1 | BEGDOC or BEGBATES | The beginning bates number of the document | ABC00000001 |
| 2 | ENDDOC or ENDBATES | The last bates number of the document | ABC00000010 |
| 3 | BEGATTACH | The beginning bates number of the document family (i.e., the beginning bates number of the first document in the family) | ABC00000001 |
| 4 | ENDATTACH | The last bates number of the entire document family (i.e., the ending bates number of the last document in the family) | ABC00000027 |
| 5 | CUSTODIAN | Custodian to which the data is associated | John Doe |
| 6 | ALLCUSTODIAN | All custodians to which the data is associated | John Doe, Mary Smith |
| 7 | RECORDTYPE or DOCTYPE | Type of electronic record | Email, Attachments, eDoc |
| 8 | FROM | Author of the e-mail message, by email address and name (if available) | Smith, Mary <Mary.Smith@hotmail.com> |
| 9 | TO | Main recipient(s) of the e-mail message, by email address and name (if available) | Doe, John <JohnDoe@gmail.com> |
| 10 | CC | Recipient(s) of carbon copies of the e-mail message, by email address and name (if available). | Jones, Michael <Michael123@yahoo.com. |
| 11 | BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message, by email address and name (if available). | Help Desk <helpdesk@omnivere.com> |
| 12 | SUBJECT | Subject of the e-mail message. | Fw: Urgent |
| 13 | DATESENT | Date when the email was sent. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 14 | TIMESENT | Time when the email was sent. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 15 | DATERECEIVED | Date when the email was received. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 16 | TIMERECEIVED | Time when the email was received. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 17 | FILEEXT | File extension of native file. | .msg, .pst, .xls |
| 18 | AUTHOR | Author field from metadata of a native file or author of the document. | Msmith |

---

[1] The "Field Name" identified should be broadly construed to encompass fields that are substantively the same even though the precise name may differ in a non-substantive way.  For example, BEGDOC should be read to encompass field names like BEG_DOC.

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 19 | DATECREATED | Date when the file was created according to the document itself. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 20 | DATE LAST MODIFIED | Date when the file was last modified according to the document itself. The date is formatted US format mm/dd/yyyy | 02/24/2007 |
| 21 | TIME CREATED | Time when the file was created according to the document metadata. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 22 | TIME LAST MODIFIED | Time when the file was last modified according to the document metadata. The time is formatted US format hh:mm:ss | 11:20:30 |
| 23 | CONFIDENTIALITY | Confidentiality designation | Confidential; Highly Confidential – Attorneys' Eyes Only |
| 24 | FILESIZE | Size of native file, in bytes | 2546683 |
| 25 | PAGECOUNT | Number of pages | 3 |
| 26 | FILENAME | Original filename of native file. Contains subject of e-mail message for e-mail records | Real estate holdings.xlsx |
| 27 | MD5HASH or HASH | Unique identifier, similar to a fingerprint, extracted from all files. | D564668821C34200FF3E32C9BFDCCC80 |
| 28 | TEXTPATH or TEXTLINK | Path to the extracted text file in the production, for mapping | Text\EFXAA00000001.txt |
| 29 | FILEPATH | Path to the file where it was stored | C:\Users\JaneDoe\Desktop\File.doc |
| 30 | NATIVELINK | Path to the native file in the production, for mapping | NATIVE\EFXA0000001.doc |
| 31 | FILEPATHALL | Complete paths of duplicate files or emails | [Path_1]\[filename]; [Path_2]\[filename] |
| 32 | CHANNEL NAME | Name of the communication channel, including in a chat room (e.g., Slack) | MyChannel |
| 33 | PARTICIPANTS | Individuals involved in a communication, including in a chat communication | John Doe, Mary Smith |
| 34 | CHATSTARTDATE | Date when the chat started. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 35 | CHATSTARTTIME | Time when the chat started. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 36 | CHATENDDATE | Date when the chat ended. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 37 | CHATENDTIME | Time when the chat ended. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 38 | COMPANY | Company to which the data is associated | Acme, Inc. |
| 39 | LASTEDITEDBY | Editor who last edited the file | Msmith |
| 40 | PRODVOL or PROD_VOL | Volume of the production | ABC_01 |
| 41 | DOCTITLE | Extracted metadata "TITLE" field | "Draft Letter" |
| 42 | REDACTION | Indicates whether document contains redactions | Contains redaction |

6. The terms of section C.5 of this ESI Stipulation shall apply retroactively to documents previously produced by the Parties' undersigned counsel. To the extent any Metadata was not included in prior productions by the Parties' undersigned counsel, the Producing Party shall produce an "overlay" file or equivalent that corresponds to the ESI in those productions. Such retroactive application of the ESI Stipulation, including the production of "overlay" files or equivalents for prior productions, shall be completed by within three weeks of the entry by the Court of this ESI Stipulation or by October 6, 2023, whichever is later.

7. The Parties shall provide extracted text for all files that originated in electronic form. When no extracted text is available for a file that originated in electronic format, OCR text shall be provided unless the production of OCR text for such document is not technologically feasible. Extracted or OCR text shall be provided with one text file per document. OCR text shall be provided for all documents that originated in hard copy, i.e., hard copy that was scanned for purposes of the production.

8. The Parties shall provide Bates-stamped placeholder images for the Native Files that are produced. The Load File will link the Native File with the Bates-stamped placeholder and all Metadata. Parent-child relationships present in the native format as collected will be maintained, and members of a message family or other parent-child grouping will be produced in sequence with each other.

9. All Static Images must be endorsed with sequential Bates numbers on the lower right-hand corner of all images, with any designated confidentiality status as per the Protective Order.

10. The Parties may produce ESI via FTP transmission, via removable USB flash drives, via CD/DVD, or via other media as otherwise agreed, and shall identify the Bates range contained in the respective production.

11. If a document is redacted, the Producing Party shall produce OCR text of the un-redacted portions of the document.  No text from the redacted portion of the document will appear in the text file.  Failure to withhold OCR text from a redacted portion of a document by a Producing Party shall not be deemed a waiver of any privilege associated with that document.

12. Any redactions shall be clearly marked as such. Nothing herein shall be interpreted or deemed to waive any privilege recognized by law, including attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable, or shall be construed to imply that any documents produced under the terms of this ESI Stipulation are properly discoverable, relevant, or admissible in this Action or in any other litigation, mediation, or arbitration.  Additionally, nothing in this ESI Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain ESI, pursuant to Federal Rule of Civil Procedure 26(b)(2)(B) on the ground that the sources are not reasonably accessible because of

undue burden or cost, or are not proportional to the needs of the case, or are being withheld as documents subject to the attorney-client privilege or attorney work-product doctrine.  Where manual searching and reviewing of ESI for responsiveness and privilege may be unduly burdensome or costly to a Party, or not proportional to the needs of the case, the Parties may discuss the use of search terms or searching methodologies to aid in or make more efficient the ESI collection, review, and production process.  Use of search terms or searching methodologies by a Producing Party does not waive any objections to production pursuant to Federal Rule of Civil Procedure 26, including, but not limited to, objections relating to burden or proportionality.

13. The Parties agree to promptly alert each other concerning any technical problems associated with complying with this ESI Stipulation.  To the extent compliance with this ESI Stipulation imposes an undue burden, the Parties shall promptly meet and confer in good faith in an effort to resolve the issue.  If the Parties are unable to resolve the issue by mutual agreement after such conference, the Party seeking the discovery at issue may move the Court for relief for good cause shown.

14. The parties shall, in good faith, use their best efforts to consolidate or batch any requests for the reproduction of documents, production of native files, and/or production of metadata pursuant to this stipulation.

15. Nothing in this stipulation precludes any party from objecting to any request for the reproduction of documents, production of native files, and/or production of metadata on the grounds of burden or expense.

16. This ESI Stipulation may be changed by order of the Court or further written agreement of the Parties, and is without prejudice to the rights of any Party to move for relief from any of its provisions, or to seek or agree to different or additional procedures or protections for any particular ESI materials or information. In particular, any Party may seek to expand the Metadata and Native Files that are subject to production under this ESI Stipulation.

17. Nothing herein shall amend, alter, or otherwise change or supersede the terms and conditions contained in the Protective Order.

**AGREED TO ON AUGUST 29, 2023 BY**:

| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br><br><br>By: /s/ *Kazim A. Naqvi*<br>　　　Kazim A. Naqvi<br>Counsel for Plaintiff *Moog Inc*. | LATHAM & WATKINS, LLP<br><br>HARRIS BEACH PLLC<br><br>By: /s/ *Gabriel S. Gross*<br>　　　Gabriel S. Gross<br>Counsel for Defendant *Skyryse, Inc.* |
|---|---|
| ZWEIBACK, FISET & ZALDUENDO LLP<br><br><br>By: /s/ *Scott D. Tenley*<br>　　　Scott D. Tenley<br>Counsel for Defendant *Robert Alin Pilkington* | HALPERN MAY YBARRA GELBERG LLP<br><br><br>By: /s/ *Grant B. Gelberg*<br>　　　Grant B. Gelberg<br>Counsel for Defendant *Misook Kim* |

## **ATTESTATION**

Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, KAZIM NAQVI, attest that concurrence in the filing of this document has been obtained by all signatories.


Dated:  August 30, 2023                              /s/ *Kazim A. Naqvi*
                                                                   Kazim A. Naqvi