1

Rena Andoh (admitted *pro hac vice*)
 randoh@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

2

3

4

5

Lai L. Yip (SBN 258029)
 lyip@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

6

7

8

9

Travis J. Anderson (SBN 265540)
 tanderson@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691

10

11

12

Kazim A. Naqvi (SBN 300438)
 knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

13

14

15

16

Attorneys for Plaintiff and
Counterdefendant Moog Inc.

17

18

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

19

20

MOOG INC.,

            Plaintiff,

21

22

      v.

23

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM,
and DOES NOS. 1-50,

24

25

            Defendants.

26

27

28

Case No. 2:22-cv-09094-GW-MAR
*Hon. George H. Wu*

**PLAINTIFF MOOG INC.'S**
**OPPOSITION TO DEFENDANT**
**SKYRYSE, INC.'S MOTION TO**
**DISMISS AMENDED COMPLAINT**

Date:    October 5, 2023
Time:   8:30 a.m.
Ctrm.: 9-D
Complaint Filed:      March 7, 2022
Counterclaims Filed:  January 30, 2023

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND................................. 2

     A.   Moog's Original Complaint ............................................. 2

     B.   Skyryse Withdraws its 12(b)(6) Motion to Dismiss After
          Making Several Disclosures to the Court ............................. 3

     C.   Moog's Motion for Leave ................................................ 3

     D.   Skyryse's Opposition to Moog's Motion for Leave to Amend ........... 4

     E.   The Court's Ruling on Moog's Motion for Leave to Amend............... 4

     F.   Moog's Amended Complaint............................................... 6

III. LEGAL STANDARD ........................................................................ 7

IV.  ARGUMENT ................................................................................... 7

     A.   Skyryse Is Precluded From Moving to Dismiss Any Claims
          Other Than Conversion and Breach of the Implied Covenant ......... 7

          1.   Skyryse Cannot Move to Dismiss Claims After
               Answering Them ................................................. 7

          2.   Skyryse's Motion Exceeds the Scope of the Court's
               Order at Dkt. 572 ............................................... 8

     B.   The Conversion Claim is Sufficiently Pled ........................... 9

          1.   CUTSA Preemption Only Applies to Claims Involving
               Trade Secrets .................................................. 9

          2.   The Court Has Already Determined that Moog May
               Allege Conversion for the Stolen, Non-Trade Secret Data ........ 9

          3.   Moog's Amended Complaint Separates Trade Secret and
               Non-Trade Secret Data ........................................ 10

          4.   Skyryse Cannot Challenge Moog's TSID While
               Simultaneously Arguing Preemption Under CUTSA .............. 11

          5.   Skyryse's Legal Authority is Distinguishable................... 12

     C.   The Breach of the Implied Covenant Claim Is Sufficiently Pled ...... 14

          1.   The Court Has Already Ruled that Moog's Implied
               Covenant Claim Is Adequately Pled Regarding Skyryse's
               Hiring of Moog's Employees .................................. 14

2.    Moog has Sufficiently Alleged a Breach of the Implied Covenant Through Skyryse's Unlawful Use of Moog Confidential Information ............................................. 15

D.    The Breach of Contract Claim is Sufficiently Pled ............................. 17

E.    The Conspiracy Claim Is Sufficiently Pled ........................................ 18

F.    The Unjust Enrichment Claim Is Sufficiently Pled ............................. 19

G.    The Imposition of Constructive Trust Claim Is Sufficiently Pled ...... 20

H.    The UCL Claim Is Sufficiently Pled .................................................... 21

V.    CONCLUSION ............................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*Artec Grp., Inc. v. Klimov*
No. 15-CV-03449-EMC, 2016 WL 8223346 (N.D. Cal. Dec. 22, 2016)
.................................................................................................... 13, 19

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ......................................................................... 7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ......................................................................... 7

*Best Fresh LLC v. Vantaggio Farming Corp.*
No. 321CV00131BENWVG, 2022 WL 4112231 (S.D. Cal. Sept. 8,
2022).............................................................................................. 7

*Byton North America Corp. v. Breitfeld*
No. 2:19-cv-10563-DMG-(JEMx), 2020 WL 3802700 (C.D. Cal. Apr.
28, 2020)................................................................................... 9, 10

*Cahill v. Liberty Mut. Ins. Co.*
80 F.3d 336 (9th Cir. 1996) ............................................................ 7

*Casas v. Victoria's Secret Stores, LLC*
No. CV 14-6412-GW(VBKx), 2015 U.S. Dist. LEXIS 192469 (C.D. Cal.
Feb. 5, 2015) (Wu, J.)..................................................................... 8

*Copart, Inc. v. Sparta Consulting, Inc.*
277 F. Supp. 3d 1127 (E.D. Cal. 2017) ........................................ 19

*DJO Glob., Inc. v. Glader*
No. 316CV02208CABNLS, 2016 WL 11622009 (S.D. Cal. Dec. 22,
2016).......................................................................................... 19

*Dorset Indus., Inc. v. Unified Grocers, Inc.*
893 F. Supp. 2d 395 (E.D.N.Y. 2012)........................................... 14

*Emergy Inc. v. The Better Meat Co.*
No. 21-cv-02417-KJM-CKD, 2022 WL 7101973 (E.D. Cal. Oct. 12,
2022)......................................................................................... 20

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*
   No. 2:13-CV-00784-MCE, 2014 WL 466274 (E.D. Cal. Feb. 5, 2014)............18

*Genasys Inc. v. Vector Acoustics, LLC*
   No. 22-CV-152 TWR (BLM), 2023 WL 4414222 (S.D. Cal. July 7,
   2023).................................................................................................................14

*Granite Partners, L.P. v. Bear, Stearns & Co.*
   17 F. Supp. 2d 275 (S.D.N.Y. 1998)..................................................................15

*Heller v. Cepia, L.L.C.*
   No. C 11-01146 JSW, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012), *aff'd in
   part*, 560 F. App'x 678 (9th Cir. 2014).............................................................14

*Henessey Food Consulting LLC v. Prinova Sols., LLC*
   No. 520CV806FJSTWD, 2022 WL 160272 (N.D.N.Y. Jan. 18, 2022) ...........16

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*
   No. 08-cv-9116-PGG, 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) ..................15

*Lodging Sols., LLC v. Miller*
   No. 19-CV-10806 (AJN), 2020 WL 6875255 (S.D.N.Y. Nov. 23, 2020).........15

*Mattel, Inc. v. MGA Entm't, Inc.*
   616 F.3d 904 (9th Cir. 2010) ............................................................................20

*Mattel, Inc. v. MGA Entm't, Inc.*
   782 F. Supp. 2d 911 (2010)...............................................................................13

*Minidoka Irrigation Dist. v. DOI*
   406 F.3d 567 (9th Cir. 2005) ......................................................................10, 11

*P&G Auditors & Consultants, LLC v. Mega Int'l Commercial Bank Co., Ltd.*
   No. 18-CV-9232-JPO, 2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019).............16

*Pepper v. Apple Inc. (In re Apple iPhone Antitrust Litig.)*
   846 F.3d 313 (9th Cir. 2017) ..............................................................................7

*Postx Corp. v. Secure Data in Motion, Inc.*
   No. C 02-04483 SI, 2004 WL 2663518 (N.D. Cal. Nov. 20, 2004) .................22

*PQ Labs, Inc. v. Yang Qi*
   C 12–0450 CW, 2012 WL 2061527 (N.D. Cal. June 7, 2012) ......................9, 10

*Race Winning Brands, Inc. v. Gearhart*
    No. SACV 22-1446-FWS-DFM, 2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) ........................................................................................................ 13

*RSPE Audio Sols., Inc. v. Vintage King Audio, Inc.*
    No. CV 12-06863 DDP PJWX, 2013 WL 1120664, at *4 (C.D. Cal. Mar. 18, 2013) ........................................................................................................ 13

*Serv. Employees Int'l Union v. Roselli*
    No. C 09-00404WHA, 2009 WL 3013501 (N.D. Cal. 2009) ........................... 12

*SunPower Corp. v. SolarCity Corp.*
    No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .......... 12

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*
    313 F. Supp. 3d 1056 (N.D. Cal. Mar. 13, 2018) ............................................. 13

*Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*
    No. C 08-04166 SI, 2009 WL 902337 (N.D. Cal. Apr. 1, 2009) ...................... 12

*TMX Funding, Inc. v. Impero Techs., Inc.*
    No. C 10-00202 JF (PVT), 2010 WL 2509979 (N.D. Cal. June 17, 2010) ....... 12

*Waymo, LLC v. Uber Techs., Inc.*
    256 F. Supp. 3d 1059 (N.D. Cal. 2017) ..................................................... 13, 21

*Whiteslate, LLP v. Dahlin*
    No. 20-cv-1782-W, 2021 WL 2826088 (S.D. Cal. July 7, 2021) ..................... 20

*XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*
    No. 321CV00105BENKSC, 2022 WL 801743 (S.D. Cal. Mar. 15, 2022) ....... 22

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Civil Procedure
    Rule 8 .............................................................................................................. 17
    Rule 12 ............................................................................................................... 7
    Rule 12(b) ....................................................................................................... 7, 8
    Rule 12(b)(6) .............................................................................................. passim
    Rule 12(g) ........................................................................................................... 8
    Rule 12(g)(2) ...................................................................................................... 7
    Rules 12(g)-(h) ................................................................................................... 8

State: Statutes, Rules, Regulations, Constitutional Provisions

California Civil Code
§ 3426.7(b)................................................................................................................9

1   **I.      INTRODUCTION**

2           In May 2023, Moog sought the Court's leave to file an Amended Complaint,

3   to conform to the evidence adduced since the case was filed (the "Motion for

4   Leave"). (Dkt. 490.) Skyryse only objected to Moog's new proposed causes of

5   action for Conversion and Breach of the Implied Covenant of Good Faith and Fair

6   Dealing. (Dkt. 509.) The Court expressly held that: 1) "Moog could plead

7   conversion with respect to confidential or proprietary property that does not rise to

8   the level of a trade secret"; 2) Moog has sufficiently plead a breach of the implied

9   covenant as to "Skyryse's conduct in hiring 20 Moog employees [which] deprived

10  Moog of the benefits of the NDAs"; and 3) Moog could plead an implied covenant

11  claim based on Skyryse's unlawful use of Moog trade secrets and proprietary data.

12  (Dkt. 553 at 8, 13, 17.) The Court ultimately directed Moog to file its Amended

13  Complaint, and allowed Skyryse to move to dismiss by raising the same objections

14  it did in response to Moog's Motion for Leave. (Dkt. 572.) On July 21, Moog filed

15  its Amended Complaint, which addressed all the directives from the Court. (Dkt.

16  590.) Regarding the stolen non-trade secret data, Moog added dozens of detailed

17  allegations specifying the volume and type of data within this category underlying

18  Moog's Conversion claim.

19          Despite the Court's prior rulings, Skyryse now moves to dismiss seven

20  claims even though Skyryse previously answered four of them. Not only is Ninth

21  Circuit law unambiguous that Skyryse cannot move to dismiss claims after

22  previously answering them, but Skyryse's Motion expressly exceeds the scope of

23  the Court's order, Dkt. 572. By failing to challenge Moog's claims for Conspiracy,

24  Unjust Enrichment, Imposition of Constructive Trust, Violation of UCL, and

25  Breach of Contract (the "Answered Claims") at the earliest opportunity, Skyryse

26  has waived its ability to move to dismiss them now.

27          Moog's Conversion claim is proper for the same reasons the Court

28  previously found in Dkt. 553, which remain law of the case. Moog's Conversion

claim does not overlap with its DTSA claim, and is based on a separate, specifically-defined set of non-trade secret files stolen by Defendants. All of the CUTSA preemption cases relied upon by Skyryse involve scenarios where there was complete or substantial overlap between trade secret and conversion claims, and they involved the same set of data. Here, there is no overlap. Skyryse's preemption challenges to Moog's claims for Conspiracy, Unjust Enrichment, and Imposition of Constructive Trust fail for similar reasons.

Skyryse challenges Moog's Implied Covenant claim on the exact same grounds it previously advanced in opposition to Moog's Motion for Leave, but the Court rejected. The Court has already held that Moog has sufficiently alleged this claim as to Skyryse's raiding of Moog's employees. Moog has also sufficiently alleged that it was deprived of the benefits of the NDAs through Skyryse's unlawful theft and misappropriation of Moog data after the Parties' business relationship ended. Skyryse attempts to read limitations into the NDAs that do not exist.

Finally, Skyryse claims Moog's breach of contract claim is not supported by factual allegations demonstrating Skyryse's unlawful use of information provided by Moog during the Parties' business relationship. In reality, however, the Amended Complaint contains dozens of factual allegations demonstrating Skyryse used information it gained during the Parties' business relationship to specifically target and raid key Moog employees. Skyryse's Motion should be denied in full.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Moog's Original Complaint

Moog filed its original Complaint on May 7, 2022, asserting ten causes of action. (Dkt. 1.) Moog's claims were centered around Defendants' theft of Moog's most sensitive and proprietary data, and Skyryse's unlawful hiring of at least 20 of Moog's software engineers. At the time the Complaint was filed, Moog had discovered that prior to leaving Moog to join Skyryse, Kim had stolen over

136,000 files of Moog's most sensitive and proprietary data relating to its flight
control software (including over 43,000 source code files) that took over 15 years
to develop. (Dkt. 1, ¶ 1).

**B.** <u>**Skyryse Withdraws its 12(b)(6) Motion to Dismiss After Making
Several Disclosures to the Court**</u>

On March 29, 2022, Skyryse filed a Rule 12(b)(6) Motion to Dismiss,
seeking to dismiss Moog's Claims for Violation of the DTSA, Trade Secret
Misappropriation, Unfair Competition, Conspiracy, Tortious Interference with
Prospective Economic Advantage, and Unjust Enrichment. (Dkt. 49.) Therein,
Skyryse generally argued that Moog's allegations lacked merit, and that it did not
possess or misappropriate Moog's trade secrets. (*Id.*)

In an April 26, 2022 Conference with the Court, Skyryse's counsel
disclosed: 1) Skyryse was in possession of a "concern[ing]" amount of Moog non-
public information; 2) relevant data had been deleted after the Complaint was filed
and may not be recoverable; and 3) Pilkington and Kim had been terminated, and
15 other employees had been placed on administrative leave.  (4/26/22 Transcript
(Dkt. 95) at 17-22.). As a result of these disclosures, on April 25, 2022, Skyryse
withdrew its then-pending Rule 12(b)(6) Motion to Dismiss. (Dkt. 79.) Skyryse
answered Moog's Complaint in its entirety on January 30, 2023. (Dkt. 348.)

**C.** <u>**Moog's Motion for Leave**</u>

Since the filing of the Complaint, Moog has discovered additional acts of
misappropriation by current and former Skyryse personnel. This includes a
massive theft of files by former employee Pilkington such that the volume of stolen
data exceeds 1.4 million files related to at least 20 Moog flight control programs
(including several sensitive government programs). (Dkt. 180, pp. 6-8; Dkts. 180-
001 to 180-004). Moog also discovered: (1) a theft of approximately 27,000 Moog
files by Reid Raithel; (2) possession of at least 81 Moog documents on Sathya
Achar's Skyryse laptop; (3) possession of at least 100 Moog spreadsheets on Eric

1  Chung's Skyryse laptop; 4) theft of tens of thousands of Moog documents by Tri
2  Dao; and 5) substantial evidence of Skyryse using, referencing, and disclosing to
3  third parties Moog's trade secrets and other non-public information. (Dkt. 400-3,
4  ¶¶ 8-21, 46-49); **(**Dkt. 400-5, ¶¶ 47-87.)

5  On May 22, 2023, Moog filed its Motion for Leave. (Dkt. 490.) Moog's
6  proposed amended complaint sought to: (1) add various allegations regarding
7  Defendants' additional acts of misappropriation discovered since the original
8  Complaint was filed; (2) amend the Moog trade secrets at issue to conform to the
9  trade secrets identified in Moog's then-current Trade Secret Identification, (Dkts.
10 473-2, 473-3, 474-4); (3) remove the causes of action for Misappropriation of
11 Trade Secrets and Tortious Interference with Prospective Economic Advantage; (4)
12 add Kim as a defendant to the claim for Aiding and Abetting Breach of Fiduciary
13 Duty; (5) conform Moog's existing cause of action for Unfair Competition such
14 that it is asserted under California's Unfair Competition Law; and (6) add causes of
15 action for Conversion against all Defendants and Breach of the Implied Covenant
16 against Skyryse. (*Id.*)

17 **D.    Skyryse's Opposition to Moog's Motion for Leave to Amend**

18 Skyryse opposed Moog's Motion for Leave to Amend ***solely*** on the grounds
19 that the proposed new causes of action for Conversion and Breach of the Implied
20 Covenant of Good Faith and Fair Dealing were futile. (Dkt. 509.)[1] Skyryse argued
21 the proposed Conversion claim was preempted by CUTSA, and the proposed
22 Breach of the Implied Covenant of Good Faith and Fair Dealing was duplicative of
23 its Breach of Contract claim. (*Id.*)

24 **E.    The Court's Ruling on Moog's Motion for Leave to Amend**

25 On June 28, 2023, the Court issued a tentative ruling which was adopted as
26 the final ruling. (Dkts. 553, 572.)

27

---

28 [1] Defendant Kim filed a joinder to Skyryse's Opposition (Dkt. 510), but Pilkington filed no joinder or opposition.

1    Regarding Moog's proposed Conversion claim, the Court determined that
2  California law applied. (*Id*. at 5-6.) The Court held it "would agree with Moog that
3  it can plead a claim for conversion based on the 1.1 million stolen files, which
4  constitute confidential or propriety property but do not rise to the level of a trade
5  secret." (*Id*. at 7.) However, the Court determined that the Proposed Amended
6  Complaint "is not clear that the conversion claim is predicated on separate
7  confidential and non-trade secret information" and did not sufficiently distinguish
8  between the stolen trade secrets and the other stolen non-trade secret files which
9  were labeled as "other stolen data." (*Id*. at 8.) Because "Moog could plead
10 conversion with respect to confidential or proprietary property that does not rise to
11 the level of a trade secret," the Court granted Moog leave to amend. (*Id*.)

12    Regarding the proposed Implied Covenant claim, the Court determined that
13 "Moog has sufficiently pled that Skyryse's conduct in hiring 20 Moog employees,
14 deprived Moog of the benefits of the NDAs . . . and therefore violated the implied
15 covenant of good faith and fair dealing." (*Id*. at 13.) Regarding the other portions
16 of the claim focused on Skyryse's theft and misappropriation of Moog data, the
17 Court granted Moog "leave to amend to clearly plead that: (1) its breach of
18 contract claim is limited to Skyryse's breaches under the NDAs between 2018-
19 2020 when the parties were pursuing a business relationship and (2) its implied
20 covenant claim is predicated on the 1.4 million files stolen from Moog between
21 2021-2022 after the parties' business relationship ended." (*Id*. at 17.)

22    The Court's final ruling granted Moog's Motion for Leave, and noted that
23 Skyryse "is not precluded from raising its same objections, which were previously
24 raised in opposition to Moog's Motion [490], to Plaintiff's conversion and breach
25 of the implied covenant of good faith and fair dealing claims in a motion to dismiss
26 Plaintiff's forthcoming amended complaint." (Dkt. 572). Notably, the Court did not
27 permit Skyryse to move to dismiss any other cause of action.

28

**F.  Moog's Amended Complaint**

On July 21, 2023, Moog filed its Amended Complaint ("AC"), which addressed all of the deficiencies identified by the Court. (Dkt. 579.)

Regarding the stolen non-trade secret data, Moog alleged that the "Stolen Trade Secrets [are] reflected in approximately 300,000 files (as well as approximately a million duplicate or alternative versions of the same files)," but that "Defendants also stole from Moog approximately 107,000 files which Moog does not seek trade secret protection over in this case." (*Id*., ¶ 54.) Moog clarified that the "stolen non-trade secret files include sensitive files which are owned by Moog, have value to Moog, but do not rise to the level of trade secrets." (*Id*.) Moog then proceeded to identify twelve distinct categories of files within the approximately 107,000 non-trade secret files at issue, as well as descriptions for what those files reflect and how they are maintained by Moog. (*Id*.)

Moog also alleged that "former Moog employee and subsequent Skyryse employee Reid Raithel stole approximately 27,000 files on his way out the door from Moog before joining Skyryse," approximately 13,000 of which reflect Moog's trade secrets, and the remaining approximately 14,000 files of which represent stolen non-trade secret data. (*Id*., ¶ 55.) Moog identified six distinct categories of files within the approximately 14,000 non-trade secret files stolen by Raithel, as well as descriptions for what those files reflect and how they are maintained by Moog. (*Id*.) Moog refers to all of the stolen non-trade secret data described in Paragraphs 54 and 55 of the Amended Complaint as the "Stolen Non-Trade Secret Data." (*Id*., ¶ 56.) Accordingly, Moog amended its Conversion claim to make clear that it is predicated solely on Defendants' theft and possession of the Stole Non-Trade Secret Data. (*Id*., ¶¶ 270-274.)

Regarding Moog's contract claims, Moog added allegations to clarify that its "breach of contract claim against Skyryse is predicated on Skyryse's unlawful and unauthorized use of information, software, and hardware that Moog disclosed to

1    Skyryse between 2018-2020 and under the protections of the 2018 and 2019

2    NDAs." (*Id.*, ¶ 308.) Moog also added allegations to clarify that its "breach of the

3    implied covenant claim is predicated on the hiring of dozens of Moog employees

4    to circumvent the protections under the 2018 and 2019 NDAs, as well as Skyryse's

5    theft and use of the Stolen Trade Secrets and S[t]olen Non-Trade Secret Data

6    between 2021-2022 after the Parties' business relationship ended." (*Id.*, ¶ 325.)

7    **III.   LEGAL STANDARD**

8           On a motion to dismiss, the Court accepts allegations in the complaint as

9    true and draws all reasonable inferences in favor of the plaintiff. *Cahill v. Liberty*

10   *Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The complaint need only

11   contain enough factual content "to raise a reasonable expectation that discovery

12   will reveal evidence" of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

13   (2007). "[D]etailed factual allegations" are not necessary and "a complaint that

14   states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*,

15   556 U.S. 662, 678-799 (2009).

16   **IV.   ARGUMENT**

17          **A.    Skyryse Is Precluded From Moving to Dismiss Any Claims Other**

18                  **Than Conversion and Breach of the Implied Covenant**

19                  **1.    Skyryse Cannot Move to Dismiss Claims After Answering**

20                         **Them**

21          "Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-

22   state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in

23   a later pre-answer motion under Rule 12(b)(6)." *Pepper v. Apple Inc. (In re Apple*

24   *iPhone Antitrust Litig.)*, 846 F.3d 313, 318 (9th Cir. 2017).  "[A] defendant may

25   attack only new allegations or claims not contained in the original complaint. If an

26   amended complaint merely substantiates claims previously alleged, [a]llowing a

27   post-answer motion to dismiss the complaint would render the Rule 12(b)

28   restriction on post-answer motions meaningless." *Best Fresh LLC v. Vantaggio*

1 *Farming Corp.*, No. 321CV00131BENWVG, 2022 WL 4112231, at *10 (S.D. Cal.
2 Sept. 8, 2022) (internal citations omitted).

3          This Court in particular has strictly interpreted Rule 12(g). "Taken together,
4 Rules 12(g)-(h) require that all available 'failure to state a claim' arguments be
5 made in the first Rule 12(b) motion; if they are not, a defendant may not raise new
6 failure-to-state a claim objections until after answering… While technical, the
7 Court finds that the cases most faithful to the Federal Rules require the plaintiff to
8 bring every available 'failure to state a claim' argument in the first shot, even
9 where there are multiple rounds of pleading. . . .What the defendant cannot do,
10 however, is continue [to] supplement its initial motion by raising defects it could
11 — and should — have raised before." *Casas v. Victoria's Secret Stores, LLC*, No.
12 CV 14-6412-GW(VBKx), 2015 U.S. Dist. LEXIS 192469, at *15-17 (C.D. Cal.
13 Feb. 5, 2015) (Wu, J.).

14          Here, Skyryse withdrew its initial Rule 12(b)(6) Motion to Dismiss (Dkt. 79)
15 of its own volition (and not pursuant to any order or ruling of the Court), and then
16 made the decision to answer every cause of action in Moog's Original Complaint
17 (Dkt. 348). Skyryse has already answered the Answered Claims, which are all
18 predicated at least in part on the same alleged wrongful conduct set forth in the
19 Original Complaint. Skyryse cannot now use Moog's amendment to move to
20 dismiss causes of action it already answered.

21          **2.      Skyryse's Motion Exceeds the Scope of the Court's Order at**
22                **Dkt. 572**

23          In response to Moog's Motion for Leave, Skyryse argued only that the
24 proposed causes of action for Conversion and Breach of the Implied Covenant are
25 futile. (Dkt. 509.) Skyryse may argue that the Amended Complaint raised new
26 allegations or issues regarding the Answered Claims such that Skyryse could not
27 have moved to dismiss those claims before. Even if this is true (which it is not),
28 Skyryse could have challenged these cause of action in opposing Moog's Motion

for Leave. Skyryse's Opposition, which only argued futility, functionally served as a Rule 12(b)(6) motion to dismiss. There can be no dispute that Skyryse could have raised alleged deficiencies regarding the Answered Claims at an earlier point in the case. Skyryse has waived its ability to move to dismiss the Answered Claims

Further, the Court's Order at Dkt. 572 referenced Skyryse's raising objections to Moog's claims for Conversion and Breach of the Implied Covenant, and not any other claim. This makes sense because those are the only two claims that Skyryse objected to in opposing Moog's Motion for Leave. Skyryse's Motion to Dismiss unambiguously exceeds the scope of the Court's Order, and it should be denied for this additional reason.

**B.    The Conversion Claim is Sufficiently Pled**

**1.    CUTSA Preemption Only Applies to Claims Involving Trade Secrets**

While CUTSA preempts certain claims, it "does not affect . . . civil remedies that are not based upon the misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b). "If a claim is based on confidential information other than a trade secret, as that term is defined in CUTSA, it is not preempted." *PQ Labs, Inc. v. Yang Qi*, C 12–0450 CW, 2012 WL 2061527, at *5 (N.D. Cal. June 7, 2012) (internal quotes omitted).

**2.    The Court Has Already Determined that Moog May Allege Conversion for the Stolen, Non-Trade Secret Data**

Skyryse's Motion is confusing given that the Court has already ordered that "Moog could plead conversion with respect to confidential or proprietary property that does not rise to the level of a trade secret." (Dkt. 553 at 8.) The Court also held it "would agree with Moog that it can plead a claim for conversion based on the 1.1 million stolen files, which constitute confidential or propriety property but do not rise to the level of a trade secret." (*Id*. at 7.) In making these rulings, the Court found Moog's reliance on *Byton North America Corp. v. Breitfeld*, No. 2:19-cv-

1 | 10563-DMG-(JEMx), 2020 WL 3802700 (C.D. Cal. Apr. 28, 2020) to be

2 | "instructive." (*Id*.) The Court specifically cited to the following from *Byton*: "The

3 | extent to which any particular piece of property or information constitutes a trade

4 | secret, as opposed to merely proprietary or confidential information, is a factual

5 | matter unfit for resolution at the pleading stage. Once the parties have conducted

6 | enough discovery to define the scope of information or property that [was]

7 | divulged to [Skyryse], the Court can determine whether CUTSA preempts a

8 | conversion claim based on that information or property." (*Id*. at 7-8.)

9 |       Thus, Moog's ability to plead a conversion claim for stolen, non-trade secret

10 | data has already been established and is law of the case. *See Minidoka Irrigation*

11 | *Dist. v. DOI*, 406 F.3d 567, 573 (9th Cir. 2005) ("Under the 'law of the case'

12 | doctrine, a court is ordinarily precluded from reexamining an issue previously

13 | decided by the same court, or a higher court, in the same case.").

14 |       **3.**    **Moog's Amended Complaint Separates Trade Secret and**

15 |                **Non-Trade Secret Data**

16 |       The Court Order at Dkt. 572 directed Moog to more specifically define the

17 | non-trade secret data that was converted by Defendants. In accordance with that,

18 | Moog's Amended Complaint:

19 |     • Alleges the "Stolen Trade Secrets [are] reflected in approximately 300,000

20 |        files (as well as approximately a million duplicate or alternative versions of

21 |        the same files)," but that "Defendants also stole from Moog approximately

22 |        107,000 files which Moog does not seek trade secret protection over in this

23 |        case." (AC, ¶ 54.)

24 |     • Alleges the "stolen non-trade secret files include sensitive files which are

25 |        owned by Moog, have value to Moog, but do not rise to the level of trade

26 |        secrets." (*Id*.)

27 |

28 |

- Identifies twelve distinct categories of files within the approximately 107,000 non-trade secret files at issue, and described what those files reflect and how they are maintained by Moog. (*Id*.)

- Alleges that "former Moog employee and subsequent Skyryse employee Reid Raithel stole approximately 27,000 files on his way out the door from Moog before joining Skyryse," approximately 13,000 of which reflect Moog's trade secrets, and the remaining approximately 14,000 files of which represent stolen non-trade secret data. (*Id*., ¶ 55.)

- Identifies six distinct categories of files within the approximately 14,000 non-trade secret files stolen by Raithel, as well as descriptions for what those files reflect and how they are maintained by Moog. (*Id*.)

- Refers to all of the stolen non-trade secret data described in Paragraphs 54 and 55 of the Amended Complaint as the "Stolen Non-Trade Secret Data," which is used throughout the pleading. (*Id*., ¶ 56.)

- Amends Moog's Conversion claim to make clear that it is predicated solely on Defendants' theft and possession of the Stole Non-Trade Secret Data. (*Id*., ¶¶ 270-274.)

There can be no legitimate dispute that the Amended Complaint sufficiently delineates the trade secret and non-trade secret data stolen by Defendants.

### 4. Skyryse Cannot Challenge Moog's TSID While Simultaneously Arguing Preemption Under CUTSA

Throughout this case, Skyryse has argued that Moog's identified trade secrets are legally deficient. For example, Skyryse has argued regarding Moog's TSID that Moog "fails to sufficiently identify specific trade secrets" and even claims that "Skyryse and the Court are no closer to knowing what Moog's alleged trade secrets are today than they were a year ago." (Dkt. 475, p. 2.) Skyryse repeats these arguments in the instant Motion. (Mot. at 1, 3). But the law is clear that Skyryse cannot continually challenge the sufficiency of Moog's identified trade

secrets while simultaneously arguing that CUTSA preempts Moog's conversion claim based on purported overlap with those same (allegedly deficient) trade secrets.

Courts in the Ninth Circuit do not permit such contradictory litigation tactics. *See Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*, No. C 08-04166 SI, 2009 WL 902337, at *2 (N.D. Cal. Apr. 1, 2009) (rejecting defendants' preemption argument on motion to dismiss, holding that defendants "cannot have it both ways" because "defendants' current argument—that the 'trade secret' allegations are preempted by CUTSA—contradicts their primary defense that TVK's information does not constitute 'trade secrets.'"); *Serv. Employees Int'l Union v. Roselli*, No. C 09-00404WHA, 2009 WL 3013501, at *8 (N.D. Cal. 2009) (rejecting motion to dismiss' preemption argument regarding conversion claim, holding: "Defendants 'cannot have it both ways'–they cannot both claim on the one hand that material is a trade secret while arguing on the other that it is not."); *see also TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202 JF (PVT), 2010 WL 2509979, at *4-5 (N.D. Cal. June 17, 2010) ("Defendants also dispute that TMX sufficiently identifies any trade secret information. Regardless of whether the information is a trade secret, Defendants may be liable for . . . conversion if they wrongfully deprived TMX of possession of that information.").

### 5.   Skyryse's Legal Authority is Distinguishable

*SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) is distinguishable because there, the plaintiff used the terms "confidential information" and "non-confidential proprietary information" "to refer to the same computer files." *Id*. at *10. The court also noted the plaintiff did not make "any effort to assign particular data to particular categories." *Id*. Here, unlike in *SunPower*, Moog has clearly delineated the trade secret and non-trade secret data, and has defined the non-trade secret data.

1   *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911 (2010) is

2   distinguishable for similar reasons because the allegedly converted property

3   included ***both*** trade secret and non-trade secret information, and included "the

4   [trade secret] documents, materials, designs, names, and other information." *Id*. at

5   996. In contrast, Moog is alleging conversion solely over a specifically defined set

6   of non-trade secret data.

7       The other cases relied upon by Skyryse are all distinguishable because they

8   all deal with scenarios where, unlike here, there was ***complete or substantial***

9   ***overlap*** between the property underlying the conversion claim and the trade secret

10  claim. *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1081

11  (N.D. Cal. Mar. 13, 2018) (property underlying conversion claim had complete

12  overlap with trade secret claim, and there was no distinction between the trade

13  secret and non-trade secret data); *Waymo, LLC v. Uber Techs., Inc.*, 256 F. Supp.

14  3d 1059, 1064 (N.D. Cal. 2017) ("neither the amended complaint nor Waymo's

15  opposition brief attempts to distinguish its trade secrets from non-trade secret

16  'confidential information'"); *Race Winning Brands, Inc. v. Gearhart*, No. SACV

17  22-1446-FWS-DFM, 2023 WL 4681539, at *6 (C.D. Cal. Apr. 21, 2023) ("The

18  allegations underlying Plaintiff's claims for civil theft and conversion and unfair

19  competition under the UCL are indistinguishable from those forming the basis of

20  Plaintiff's CUTSA claim. Specifically, these claims concern Defendant's alleged

21  unauthorized misappropriation of Plaintiff's purported trade secrets."); *RSPE*

22  *Audio Sols., Inc. v. Vintage King Audio, Inc.*, No. CV 12-06863 DDP PJWX, 2013

23  WL 1120664, at *4 (C.D. Cal. Mar. 18, 2013) ("The information and conduct

24  described in the Second Cause of Action appears to be closely related, if not

25  identical, to that listed in the First Cause of Action under CUTSA."); *Artec Grp.,*

26  *Inc. v. Klimov*, No. 15-CV-03449-EMC, 2016 WL 8223346, at *7 (N.D. Cal. Dec.

27  22, 2016) (plaintiff failed to distinguish between trade secret and confidential

28  information in its non-contract claims, as its definition of "confidential"

-13-

information necessarily included trade secrets); *Heller v. Cepia, L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572, at *6 (N.D. Cal. Jan. 4, 2012), *aff'd in part*, 560 F. App'x 678 (9th Cir. 2014) (plaintiff failed to differentiate between trade secret and confidential information for purposes of its CUTSA claim and conversion and trespass claims); *Genasys Inc. v. Vector Acoustics, LLC*, No. 22-CV-152 TWR (BLM), 2023 WL 4414222, at *22 (S.D. Cal. July 7, 2023) (holding unjust enrichment claim was preempted in part because it "rel[ies] on the same facts as its CUTSA claim"). Such authority is therefore inapposite.

### C.   The Breach of the Implied Covenant Claim Is Sufficiently Pled

####   1.   The Court Has Already Ruled that Moog's Implied Covenant Claim Is Adequately Pled Regarding Skyryse's Hiring of Moog's Employees

Despite the Court's ruling on Moog's Motion for Leave, Skyryse argues that Moog's implied covenant claim premised on "Skyryse's hiring of approximately twenty of Moog's at-will employees" fails because Moog does not "sufficiently allege that the parties' non-disclosure agreement implied any sort of no-hire obligation." (Mot. at 19.) Skyryse further complains that the NDAs at issue "have nothing to do with the hiring of personnel." (*Id*. at 20.)

The Court's prior order at Dkt. 553 explains in detail why Skyryse's arguments fail (again). First, the fact that the NDAs are silent about hiring the other party's personnel "is not fatal to Moog's claim because "New York does not require that a breach of the duty of good faith and fair dealing be tied to a specific contractual provision." *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 407 (E.D.N.Y. 2012). (Dkt. 553 at 12.)

Second, based on the exact same allegations, the Court held that "Moog has plausibly alleged that Skyryse prevented it from obtaining the benefits of the NDAs" and that "Moog has sufficiently pled that Skyryse's conduct in hiring 20 Moog employees, deprived Moog of the benefits of the NDAs (which was to

1   purportedly share confidential information to explore projects between the parties),

2   and therefore violated the implied covenant of good faith and fair dealing." (Dkt.

3   553 at 13.)

4        Finally, the Court also explained why Skyryse's cited authority on this point

5   is inapposite. Skyryse again relies heavily on *Lodging Sols., LLC v. Miller*, No. 19-

6   CV-10806 (AJN), 2020 WL 6875255 (S.D.N.Y. Nov. 23, 2020). But, the Court

7   previously found this case "unhelpful" because that case involved an invalid and

8   unenforceable contract. (Dkt. 553 at 13.) Here, there is no dispute that the NDAs

9   are valid and enforceable.

10        Skyryse's citation to *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No.

11   08-cv-9116-PGG, 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) is also confusing

12   because that case helps Moog. As this Court noted, the court in *JPMorgan* denied a

13   motion to dismiss implied covenant claim where, like here, the plaintiff adequately

14   alleged that the defendant "deprived it of the benefits of the Agreements." *Id.* at *7.

15   (Dkt. 553 at 13.)

16        *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275 (S.D.N.Y.

17   1998) also does not advance Skyryse's position given that the court denied the

18   motion to dismiss the breach of implied covenant claim, and the court primarily

19   focused on plaintiff's use of the term "commercial reasonableness" as opposed to

20   "fair dealing" pursuant to the UCC.

21           **2.**     **Moog has Sufficiently Alleged a Breach of the Implied**

22                   **Covenant Through Skyryse's Unlawful Use of Moog**

23                   **Confidential Information**

24        The Court granted Moog "leave to amend to clearly plead that: (1) its breach

25   of contract claim is limited to Skyryse's breaches under the NDAs between 2018-

26   2020 when the parties were pursuing a business relationship and (2) its implied

27   covenant claim is predicated on the 1.4 million files stolen from Moog between

28

1    2021-2022 after the parties' business relationship ended." (Dkt. 553 at 17.) Moog

2    addressed the Court's directives in the Amended Complaint. (AC, ¶¶ 308, 325.)

3           Yet, Skyryse argues that Moog's Implied Covenant claim cannot be

4    predicated on "Skyryse's alleged use of confidential information taken from Moog

5    in 2021 and 2022" because "any such information is a different set of data than

6    was the subject of the parties' NDAs." (Mot. at 20-21.) Skyryse claims that the

7    "bargains" struck in the NDA pertain to sharing of "specific information" and did

8    not "concern information obtained outside the parties' business relationship." (*Id*.

9    at 21.)

10          Skyryse misconstrues the NDAs and the applicable law. As plausibly alleged

11   by Moog, the benefits and purposes of the NDAs were to protect Moog's

12   confidential information from improper and unauthorized use and exploitation by

13   Skyryse, and to limit the use of such information to only the purposes of the

14   Parties' business relationship. By hiring several Moog employees using

15   information Moog provided to Skyryse during the business relationship, and then

16   having those same employees steal Moog data for Skyryse to use outside the scope

17   of the NDAs, Skyryse deprived Moog of the benefits of the NDAs. These factual

18   allegations sufficiently allege a breach of the implied covenant. *See P&G Auditors*

19   *& Consultants, LLC v. Mega Int'l Commercial Bank Co., Ltd.*, No. 18-CV-9232-

20   JPO, 2019 WL 4805862, at *6 (S.D.N.Y. Sept. 30, 2019) (upholding implied

21   covenant claim where the complaint alleged breaches based on "obtaining P&G's

22   most sensitive items under false pretenses and then secretly sharing [the] same

23   with P&G's competitor"); *Henessey Food Consulting LLC v. Prinova Sols., LLC*,

24   No. 520CV806FJSTWD, 2022 WL 160272, at *8 (N.D.N.Y. Jan. 18, 2022)

25   (denying motion to dismiss DTSA and breach of the implied covenant of good

26   faith and fair dealing claim which was predicated on the misappropriation of trade

27   secrets).

28

-16-

**D.    The Breach of Contract Claim is Sufficiently Pled**

Skyryse argues Moog's Breach of Contract claim is limited to "Skyryse's use of information gained from Moog pursuant to the parties' business relationship from 2018 to 2020" but that Moog's allegations are "insufficient to satisfy Rule 8's plausibility standard." (Mot. at 18.) Skyryse further claims that this claim only "contains a single, conclusory allegation" in support. (*Id*.)

Notwithstanding the fact that the Court already provided that Moog could state a claim for breach of contract based on information disclosed to Skyryse from 2018-2020, Paragraph 308 of the Amended Complaint contains various detailed, factual allegations that more than meet Rule 8's plausibility standard:

- "In breach of the 2018 NDA and 2019 NDA, Skyryse used information gained from Moog regarding its flight control software between 2018-2020 during the Parties' business relationship for purposes beyond the scope of the limited purpose of the Parties' business engagement in Phase 1 under the SOW, including to: 1) develop its own flight control systems and software; and 2) raid and solicit Moog's key software engineering personnel who have most knowledge of Moog's flight control software."

- "Upon information and belief, Skyryse attempted to or in fact did reverse engineer certain components of Moog's flight control systems disclosed to Skyryse between 2018-2020 in an effort to develop a competing flight control system, which is expressly prohibited under the 2018 and 2019 NDAs."

- "Skyryse used confidential information provided by Moog under the 2018 and 2019 NDAs regarding Moog's software engineering staff and technology to engage in targeted hiring and data theft practices a few years later."

Contrary to Skyryse's misrepresentations, two of the above allegations are ***not*** made upon information and belief. These allegations, which must be accepted as

-17-

true for purposes of a pleading challenge, plausibly demonstrate a basis for relief regarding Skyryse's unlawful use of Moog information provided during the Parties' business relationship.

Skyryse also argues that the Amended Pleading "contains zero factual allegations to support Moog's conclusion that Skyryse used confidential information gained in 2018-2020 in order to effectuate the alleged 'raid'" in 2021 and 2022 (Mot. at 18-19.) But, as shown in the final allegation in Paragraph 308 listed above, Moog expressly alleges that Skyryse used information provided under the NDAs to engage in targeted hiring *a few years later*.  Moog elsewhere provides detailed factual allegations regarding how Skyryse "engaged in a methodical, intentional, and pervasive raid of Moog's developers who built the Stolen Trade Secrets" and that certain key Skyryse personnel were "extremely familiar with and knowledgeable regarding the Stolen Trade Secrets and Stolen Non-Trade Secret Data, as well as the more capable members of Moog's software engineering teams who worked on these projects." (AC, ¶¶ 142, 144). Moog also alleges facts regarding how these personnel targeted specific Moog employees to join Skyryse. (*Id*., ¶¶ 146-158). All these factual allegations taken in aggregate provide a plausible basis to demonstrate that Skyryse used information it gained during the Parties' business relationship to specifically target and raid key Moog employees.

### E.    The Conspiracy Claim Is Sufficiently Pled

Skyryse argues Moog's conspiracy claim should be dismissed because it is superseded by CUTSA. (Mot. at 12.)

But, Moog's conspiracy claim is not solely predicated on the same facts underlying its DTSA claim. Moog's conspiracy claim is also based on the "conversion of the Stolen Non-Trade Secret Data," a separate agreement to form the conspiracy, and "Skyryse's targeted solicitation of Moog's software engineers." (AC, ¶¶ 295-298.) Ninth Circuit courts routinely find that conspiracy claims are not preempted by CUTSA under similar circumstances. *Farmers Ins.*

*Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE, 2014 WL 466274, at
*4 (E.D. Cal. Feb. 5, 2014) ("Farmers alleges additional facts, such as the
agreement to steal trade secrets and the formation of the conspiracy, that factually
differentiate this claim from a misappropriation claim, although the harm is the
same. Accordingly, Farmers' conspiracy claim is not preempted by the UTSA.");
*DJO Glob., Inc. v. Glader*, No. 316CV02208CABNLS, 2016 WL 11622009, at *6
(S.D. Cal. Dec. 22, 2016) (denying motion to dismiss conspiracy claim under
CUTSA preemption because "Plaintiffs' claim for civil conspiracy is not based
solely on Defendants' misappropriation of trade secrets").

Skyryse relies on *Artec Grp., Inc. v. Klimov*, No. 15-CV-03449-EMC, 2016
WL 8223346 (N.D. Cal. Dec. 22, 2016). (Mot. at 12.) However, in *Artec*, just like
all the other cases relied upon by Skyryse, there was complete or substantial
overlap between the property which plaintiff asserted was trade secret, on the one
hand, and confidential or non-trade secret information, on the other hand. *Id*. at *4.
This is not the case here, where Moog has made a clear delineation between trade
secret and non-trade secret property, and its conspiracy claim relies on facts
outside of its DTSA claim.

### F.   The Unjust Enrichment Claim Is Sufficiently Pled

Skyryse argues Moog's unjust enrichment claim should be dismissed
because it is "premised on the same nucleus of facts as Moog's trade secret
misappropriation claims." (Mot. at 13.)

However, Moog's unjust enrichment claim is not solely predicated on the
same facts underlying its DTSA claim. It is also based on Skyryse's unlawful
benefit from "Moog's effort and investment in a host of employees raided by
Defendants" as well as use of the "Stolen Non-Trade Secret Data" underlying
Moog's conversion claim. (AC, ¶¶ 329-331.) CUTSA pre-emption does not apply.
*See Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1160 (E.D. Cal.

2017) ("Copart's unjust enrichment and unfair competition claims survive CUTSA preemption to the extent they rely on these other, non-theft related allegations.").

Neither of the cases Skyryse relies upon are on point. In *Whiteslate, LLP v. Dahlin*, No. 20-cv-1782-W, 2021 WL 2826088 (S.D. Cal. July 7, 2021), there was no delineation between trade secret information and confidential information, and the plaintiff did not plead "facts distinct from the facts that support the misappropriation claim." *Id.* at *12. Similarly, in *Emergy Inc. v. The Better Meat Co.*, No. 21-cv-02417-KJM-CKD, 2022 WL 7101973 (E.D. Cal. Oct. 12, 2022), there was complete overlap of the treatment of the trade secrets and confidential information.  Moreover, the plaintiff's *sole* unjust enrichment allegation beyond trade secret misappropriation was that the defendant "took the benefit of Emergy's innovations all for their own." *Id.* at *10. Here, there is a clear delineation between trade secret and non-trade secret data, and, Moog has alleged a broader spectrum of misconduct beyond mere misappropriation of trade secrets.

### G.     The Imposition of Constructive Trust Claim Is Sufficiently Pled

Skyryse argues Moog's constructive trust claim should be dismissed because it is not a cause of action, and it is premised on the same factual allegations as Moog's trade secret claims. (Mot. at 14.)

First, regardless of its form, there can be no dispute that Imposition of Constructive Trust is a remedy available to Moog, and that Moog has sufficiently pleaded its requirements. *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 909 (9th Cir. 2010) ("A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res (property or some interest in property); (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it.").

Second, the Imposition of Constructive Trust claim is predicated on much more than Moog's DTSA claim. It is also based on: 1) Skyryse's "promis[e] not to use Moog's confidential and trade secret information for its own gain beyond the

scope of the NDAs" (underlying Moog's implied covenant claim); 2) Skyryse's "raid[ing] and solicit[ing] Moog's most knowledgeable employees regarding its flight control software" (underlying Moog's implied covenant and UCL claims); and 3) Skyryse's use of Moog's "Stolen Non-Trade Secret Data" (underlying Moog's conversion claim). (AC, ¶¶ 339-341.) Therefore, the Imposition of Constructive Trust claim cannot be pre-empted by CUTSA.

### H.    The UCL Claim Is Sufficiently Pled

Skyryse argues Moog's UCL claim should be dismissed because it fails to articulate a cognizable legal theory. (Mot. at 15.) Skyryse first argues that Moog "pleads no facts that could support its allegation that Skyryse 'induced' Ms. Kim and Mr. Pilkington" to "do anything." (*Id*.) This argument is simply not congruent with the dozens of factual allegations in the Amended Complaint. Moog alleges detailed facts demonstrating how: 1) Pilkington and other former Moog personnel, while employed at Skyryse, engaged in a strategic effort to raid Moog's employees (AC, ¶¶ 144-158); 2) Pilkington, while employed by Skyryse, guided and assisted Kim in identifying what Moog files to download, steal, and misappropriate (*Id*., ¶¶ 173-175); and 3) "Kim, in concert with Defendants, stole large volumes of Moog's confidential and proprietary data on multiple occasions, used a number of devices and re-named them to avoid detection, and deliberately formatted and deleted the data such that Moog cannot follow the trail of what happened to its stolen data." (*Id*., ¶ 192). The Amended Complaint is replete with factual allegations demonstrating Skyryse's direct involvement in Kim and Pilkington's wrongful conduct.

Skyryse then argues that to the extent Moog's UCL claim is premised on the misappropriation or use of Moog's trade secret or other confidential information, it is superseded by CUTSA. (Mot. at 16.) Skyryse only cites to *Waymo*, but as described above, that case is distinguishable because there was no effort to distinguish the trade secret and non-trade secret information. *See Waymo, LLC*,

256 F. Supp. 3d 1059 at 1064.  Further, here Moog's UCL claim is predicated on conduct separate from Skyryse's trade secret misappropriation, including its unlawful raiding of Moog employees and its theft and use of non-trade secret data. (AC, ¶¶ 346-356). Under these circumstances, Ninth Circuit courts will not dismiss UCL claims on CUTSA pre-emption grounds. *See XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, No. 321CV00105BENKSC, 2022 WL 801743, at *18 (S.D. Cal. Mar. 15, 2022) ("Because the claims at issue have independent factual bases and are therefore, at least in part, not based on the same nucleus of facts involving the trade secret misappropriation claims, the Court would deny the motion to dismiss Plaintiffs' clai[m] for . . . violation of the UCL as preempted by CUTSA."); *Postx Corp. v. Secure Data in Motion, Inc.*, No. C 02-04483 SI, 2004 WL 2663518, at *3 (N.D. Cal. Nov. 20, 2004) (determining that CUTSA preemption did not apply and that the unfair competition "claim survives because it is based on an alternative theory of liability as well as on new facts").

Finally, Skyryse argues that "to the extent Moog bases its UCL claim on Skyryse's hiring of Moog software developers . . . enticing a competitor's employees to leave their employer is not an unfair business practice under the UCL." (Mot. at 16.) Moog has not alleged that Skyryse merely enticed Moog employees to leave. Instead, Moog alleges that Skyryse used information gained during the Parties' business relationship, subject to the protections of the NDAs, for improper purposes and to specifically target and raid over 20 Moog engineers with intimate knowledge of Moog's trade secrets. (AC, ¶¶ 144-158, 320-327.)  The Court has already ruled that such allegations are sufficient for a breach of the implied covenant claim.  (Dkt. 553 at 13.) Therefore, at minimum, Moog has established the "unlawful" prong of the UCL based on Moog's breaches of the implied covenant.

V.    **CONCLUSION**

For the foregoing reasons, Moog respectfully requests the Court deny Skyryse's Motion in its entirety.

Dated:  September 5, 2023      SHEPPARD MULLIN RICHTER & HAMPTON LLP

By    _____
                 */s/ Kazim A. Naqvi*
                 Kazim A. Naqvi

         Attorney for Plaintiff and Counterdefendant
                 MOOG INC.

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Moog Inc., certifies that this brief contains 6,902 words, which:

 X    complies with the word limit of L.R. 11-6.1.

___   complies with the word limit set by Court order dated _____.


Dated:  September 5, 2023      SHEPPARD MULLIN RICHTER & HAMPTON LLP

By   _____
                              */s/ Kazim A. Naqvi*
                              Kazim A. Naqvi

                    Attorney for Plaintiff and Counterdefendant
                              MOOG INC.